**UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CRED INC., *et al.*, | ) Case No. 20-12836 (JTD) |
|  | ) |
| Debtors.[1] | ) (Joint Administration Requested) |
|  | ) |

**DECLARATION OF DREW MCMANIGLE, FOUNDER AND CHIEF EXECUTIVE OFFICER, MACCO RESTRUCTURING GROUP, LLC**

I, Drew McManigle, hereby declare under penalty of perjury as follows:

**I.     INTRODUCTION**

   **A.     Scope of Engagement**

   1.    On November 7, 2020 (the "Petition Date"), the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court and I have been retained as financial advisor by the Debtors in the above captioned chapter 11 cases.

   2.    I am hereby submitting this declaration containing my understanding of the most recently available financial information (the "Declaration") to the Court in order to facilitate its review of the condition of the Debtors.

   **B.     Qualifications**

   3.    I am the Founder and Chief Executive Officer of MACCO Restructuring Group, LLC ("MACCO"), an interim management and financial advisory firm employing 17 professionals, based in Houston, Texas and having offices in New York, New York, Denver,

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

Case 20-12836-JTD    Doc 16    Filed 11/09/20    Page 2 of 15

Colorado and Wilmington, Delaware and website with address of (www.macco.group). MACCO regularly provides interim executive leadership, financial advisory and fiduciary services to businesses across a vast array of industries who find themselves in financial and operational distress. MACCO also serves as a financial or restructuring advisor to lenders, creditors, and creditor groups.

4. I have led numerous companies through both in and out-of-court restructurings. My experience extends across a variety of industries, including energy exploration, production and refining, healthcare, consumer products, defense, commercial construction, distribution, transportation, heavy equipment, and hospitality. During my 27-plus year career working with clients across the country, I have held leadership and fiduciary roles with titles such as operating chapter 11 trustee, chapter 11 plan, litigation or liquidating trustee, interim chief executive officer, chief restructuring officer, receiver and assignee.

5. I have also served as an independent director to various international and domestic companies in chapter 11 proceedings. I have advised or led debtor or creditor constituencies in bankruptcy and state courts. I have participated in complex litigation and testified in Federal, Bankruptcy, state, and international courts.

6. In February 2020, I was selected by the Office of The U.S. Trustee, Southern District of Texas, as one of six Subchapter V chapter 11 trustees under the recently enacted 11 U.S.C. Subchapter V (Small Business) statute. I also serve on the Houston Board of Directors of the Turnaround Management Association, am a member of the American Bankruptcy Institute, and the National Association of Bankruptcy Trustees.

7.  I have served at conferences on professionals' panels and have been quoted in multiple national publications including The Deal, Debtwire and The Houston Chronicle, among others.

8.  I attended Texas Tech University and received my bachelor's degree from the University of Houston – Downtown. Attached as Appendix A is my Curriculum Vitae.

9.  Based on my above experience, along with my education, training, and bankruptcy experience, I am qualified to offer this Declaration.

C.  **Statement of Compensation**

10. MACCO is being compensated for my work on this matter at my customary rate of $600 per hour. Professionals of MACCO rendering assistance are, likewise, being compensated at their normal hourly rates ranging from $100 to $600 per hour. All services and activities performed in connection with this engagement were either performed by me or under my supervision by employees of MACCO.

11. This compensation is not dependent in any way on the contents of this Declaration, the substance of any further opinions or testimony that I may provide, or the ultimate outcome of this matter.

D.  **Report Qualifications and Materials Relied Upon**

12. In preparing this Declaration, I have relied upon preliminary key balance sheet data, available 2020 balance sheet data through September 30, 2020, and forecasted income statements through December 31, 2020, all provided by Debtors' executives. Financials are currently in process of being updated by Debtors and figures presented may be materially revised pending additional investigation by MACCO.

13. The opinions and conclusions expressed herein are subject to change based on additional data, facts and information that may be received subsequent to the date of this report including, among other things, additional data, facts and information that becomes available in the public domain or that is made available by Debtors or other parties in interest during discovery or otherwise. In addition, it is possible that I may be asked at a future date to review and respond to a report or declaration issued by other parties in interest related to the confirmation of the plan.

## II. EXECUTIVE SUMMARY

### A. Debtors' Operations

14. The overall cryptocurrency market is projected to reach $1.40 billion dollars by 2024, at a CAGR of 6.18%. A cryptocurrency is a digital currency created and stored electronically in blockchain. It uses encryption techniques to control the creation of monetary units and to verify the transfer of funds, hence enhancing security and traceability. Cryptocurrency is a disruptive concept that is an alternative to fiat currency used in the present monetary system. It is expected that Cryptocurrency holders will increase their demand for access to liquidity services (lending and borrowing) wherever they hold their crypto assets. Gatekeepers will lose market share if the need is not satisfied and liquidity will is a key component. Hence, there is a need for a provider to build liquidity services between gatekeepers and alternative coin issuers.

15. The Debtors' operations, founded in 2018, deliver lending and borrowing services that enable clients of gatekeepers and alternative coin issuers to leverage value from their digital assets. The Debtors are headquartered in San Mateo, CA and offer technology solutions for crypto assets, partnering with leading wallet and exchange providers to enable liquidity in the

form of borrowing or lending. One solution the Debtors offer is "Cred Earn", which is a financial product that allows owners of crypto assets to earn interest on their crypto holdings. The Debtors are able to leverage their own returns by lending digital assets to a variety of customer segments, including crypto miners, digital asset companies, crypto investment funds, and retail investors. To ensure assets are safe, Debtors works with various collateral agents and leading custody partners to provide for the safety and security of customer digital assets.

  **B.**  **List of Key Accounts and Details**



*Chart 1: Debtors' Flow of Funds*

  16.  **Chart 1,** presented above, details the Debtors' flow of funds. Funds originate from electronic crypto-currency deposit accounts ("E-Wallets") owned by customers and are then transferred to E-Wallets controlled by the Debtors. Crypto-currency is then transferred to a centralized crypto-currency account from the Debtors' E-Wallets or, in the case of high net worth customers directly, which facilitates tracking, security and organization of all held assets. The centralized crypto-currency account then transacts directly with either i) a trading partner who facilitates the conversion to fiat currency or ii) with yielding investments and loans accepting crypto-currency. Once in fiat, funds are transferred to investments and loans requiring transactions in United States Dollar ("USD").

### III. PRESENTATION OF PRO FORMA ASSETS AND LIABILITIES

Cred, Inc. and its affiliates
**Pro-Forma Assets and Liabilities (A)**
As of: November 7, 2020
(in thousands)
**UNAUDITED**

| FN# | ASSETS | | FN# | LIABILITIES | |
|---|---|---:|---|---|---:|
| | **Cash & Cash Equivalents** | | | **Borrowed capital** | |
| 1) | Cash | 47 | 7) | Customer Deposits | 114,635 |
| 2) | Crypto-Currency | 14,709 | 8) | Customer Collateral | 20,880 |
| 3) | Crypto-Currency (Frozen) | 489 | | Total Borrowed capital | 135,515 |
| | Total Cash & Cash Equiv. | 15,245 | | | |
| | | | 9) | Agreements Payable | 983 |
| | **Loans & Assets Under Management** | | | | |
| 4) | Assets Under Management | 3,712 | | **TOTAL LIABILITIES** | 136,499 |
| 5) | Cred issued loans | 39,074 | | | |
| 6) | Customer loans | 9,808 | | | |
| | Total Loans & Inv. | 52,594 | | | |
| 10) | **TOTAL ASSETS** | 67,839 | | | |

*Table 1: Debtors' Pro-Forma Assets and Liabilities*

17. Table 1, presented above, details the Debtors' Pro-Forma Assets and Liabilities and corresponding footnotes are provided in Appendix B. Financials are in the process of being updated by the Debtors and, therefore, a partial balance sheet lacking the Debtors' equity accounts is provided. All items presented herein have been subject to mark-to-market adjustments as of the Petition Date.

18. Debtors' operations consist of utilizing pledged customer crypto-currency assets, denoted here as "Customer Deposits", in various yield-generating vehicles. Customer deposits form a liability of the Debtors which varies depending on market performance of the underlying crypto-currency.

19. As demonstrated in Chart 2, below, since 2020's lowest closing price of $4,944.70 which occurred on March 16, 2020, Bitcoin has increased by nearly two-hundred

percent (200%) to a closing of $14,783.98 as of the Petition Date. This increase is unfavorable to the Debtors' financial position as they would owe more in Customer deposit liabilities. Since the Debtors' investments are dollar denominated, they do not share in the upside of crypto-currency and there arises an opportunity for a potential shortfall in asset coverage.



Chart 2: Bitcoin (BTC) Closing Price in US Dollar (USD)

20.     In addition to extraordinarily unfavorable market price movements, the Debtors suffered a hack of their crypto-currency assets which added to their financial strain. The Debtors have locked down their crypto-currency assets, are working with law enforcement and have initiated litigation in order to recover assets.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 9, 2020
Houston, TX

/s/ Drew McManigle

Drew McManigle
Managing Director of MACCO Restructuring Group, LLC

**APPENDIX A**

**Curriculum Vitae of Drew McManigle**

Case 20-12836-JTD    Doc 16    Filed 11/09/20    Page 10 of 15



## Drew McManigle
Founder & Managing Director



**Drew McManigle** is the Founder and Managing Director of MACCO. He has led numerous companies through both in and out-of-court restructurings. Drew's global experience extends across a variety of industries, including energy exploration, production and refining, healthcare, consumer products, defense, food and pharmaceutical manufacturing, commercial construction, distribution, transportation, heavy equipment and hospitality where he has hands-on experience.

Across the country, Drew has held leadership and fiduciary roles with titles such as operating chapter 11 trustee, chapter 11 plan, litigation or liquidating trustee, interim CEO, CRO, receiver and assignee. He has also served as an independent director. He has represented company, debtor or creditor interests in bankruptcy and state courts across the country. His results-driven leadership style has led to successful outcomes in a variety of complex and distressed situations, including complex domestic and foreign litigation.

In February 2020, he was selected by the Department of Justice, Office of The U.S. Trustee, Southern District of Texas, Houston Division, as one of six, 11 U.S.C. Subchapter V small business chapter 11 trustees.

Prior to MACCO, Drew was a principal of his own firm for 22 years; he was employed by a Fortune 500 healthcare services provider leading its Baltimore operations; and, he established and led the SW region office for a west coast advisory firm. He attended Texas Tech University and received his bachelor's degree from the University of Houston. He has been quoted in multiple national publications including The Deal, Debtwire and The Houston Chronicle. Drew is a reputable panelist and public speaker on restructuring and related business topics.

Representative Examples of Engagements:

- Serve as Chief Restructuring Officer to a commodity brokerage company with annual revenues of $175 million found itself overleveraged and in covenant default with bank over-advances. In 2.5 months, MACCO successfully assessed the situation, modeled financial solutions and negotiated a forbearance agreement between the lender and borrower.

- Acted as Chief Restructuring Officer to a troubled, publicly traded Denver based, exploration and production company, prior to and subsequent to a chapter 11 filing.

- Chief Restructuring Officer - A Houston based exploration and production company and, its subsidiaries and affiliates, with significant holdings in North Texas filed 5 separate chapter 11 proceedings. Oversaw successful U.S.C. §363 (b) sales and development of a liquidating plan of reorganization.

- Acted as Chief Valuation Officer to lead the operational winddown and liquidation of an Oklahoma based drilling company that held international drilling contracts with

Pennzoil Place
700 Milam St. Suite 1300
Houston, TX 77002

www.MACCO.group

**Drew McManigle**
Founder & Managing Director



over $200MM in debt. Successfully completed the winddown of domestic operations, liquidation and resolution of litigation and asset recovery issues in under a year.

- Selected as Liquidating Trustee of a Liquidating Trust formed, pursuant to a confirmed plan of reorganization in a complex chapter 11 case, to prosecute complex litigation, avoidance and preference actions representing the unsecured creditors who held over $50 million in claims

- Selected as the independent director, collateral preservation agent and "sale czar" to a Chapter 11 debtor in the media and television industry. Oversaw the contentious negotiation and sale of a U.S.C. §363 (b) sale of 3 television stations.

- Acted as the independent director for a United Kingdom publicly traded exploration and production company with assets in the Delaware Basin of Colorado. Oversaw the chapter 11 filing and successful sale of the properties during its Delaware chapter 11 bankruptcy case.

- Acted as Interim President of a well-known Mid-Atlantic food manufacturer and fundraiser. Initiated an "emergency room triage", and in one year, successfully identified and mitigated financial risk due to substandard product costing, rebuilt a responsive management team and negotiated a comprehensive License Agreement that outsourced unsustainable fundraising operations.

- Serving as a Post-Chapter 11 Plan Administrator, successfully administered two post-confirmation estates, including making final creditor distributions. Conducted claim and preference litigation with both significant claim reductions and money recoveries.

- Selected as an independent Director to organic chemical manufacturer with operations in the U.S. and China, post chapter 11. Over saw the successful ale to a French chemical conglomerate.

- Served as Chief Restructuring Officer to a national leading value cosmetics brand in the food, drug, and mass channel markets. Assumed full authority for day to day operations and successfully prepared for, filed and managed a successful chapter 11 case that included leading a vibrant 11 U.S.C. 363(b) asset sale process that obtained court approval in 53 days from the petition date.

- Served as interim CEO to a highly troubled, money losing family office owned, hurricane shutter, custom architectural metal and metal roof manufacturer in South Florida. Stabilized operations, improved management and operating practices and returned to financial stability.

- Appointed Assignee in 12 separate Delaware Assignment for the Benefit of Creditors cases. Managed trusts, engaged professionals, reviewed creditor claims, initiated and successfully managed both litigation and resolution of complex disputes. Managed trust funds and multi-year payments, including multi-year distributions. In one case yielding an overall 40% return to creditors holding allowed claims.

## Drew McManigle
Founder & Managing Director



- Led as interim President a struggling home healthcare division of a $100 million organization. Stabilized operations, assured financing and within 13 months, divested 14 franchises (without litigation) and successfully sold operations at a $19.5 million profit.

- Served as Interim CEO and General Manager, in a contentious crisis situation, to a family office owned notable resort and spa. Replaced management, assured stable operations and transfer to new leadership.

- Functioned as President & Director in the negotiation and review of a competitive analysis in a highly successful $16 million cash sale of a non-bankrupt bulk lubricant and convenience store chain in Texas whose parent organization was in chapter 11.

- Principal Advisor-Provided strategic bankruptcy and acquisition advice to a Colorado-based multibillion-dollar meat producer and its financial sponsor in a proposed $225 million transaction. Served as primary strategist and spokesperson while coordinating all aspects of acquisition initiative.

- International Receiver-Conducted a worldwide forensic review of international corporations confirming an ongoing bank fraud. Named Receiver in U.S., British Virgin Islands, and Turks & Caicos Islands. Conducted domestic, offshore, and Swiss discovery/litigation. Recovered and sold operating Texas Corporation. Located and recovered previously unknown monies and accounts in Switzerland.

- As President, managed an energy production and investment Company in Houston, Texas with offshore mineral interests. Negotiated settlement with former stakeholders and guarantors. Successfully valued producing properties and sold business.

- Principal Advisor-Acted as a surrogate to redirect ineffective management actions during a critical period for multiple Chapter 11 debtors in Las Vegas, Nevada, in the home healthcare/durable medical goods business with subsidiaries in Arizona. Successfully managed, addressed, and resolved numerous complex legal, financial, and regulatory issues arising from the bankruptcy filing.

- Principal Advisor to a $50 million distressed building materials and tools distributor. Delivered critical strategic advice on business turnaround initiatives, lender negotiation, and exit strategies to principals. Obtained approval of exit plan, including satisfaction of lender claims from principals and lender.

- Acted as Managing Trustee over-seeing the post chapter 11 plan efforts of a Texas-based furniture retailer reorganized under Chapter 11. Undertook decisive action to secure inventory and assets after default on post-reorganization debt obligations, including authorizing and overseeing liquidation sale.

**Selection of Publications (not including interviews):**

i.  "Why the Experts Are Wrong About the Oil Industry"
    -The State Bar of Texas, Bankruptcy Law Newsletter, Volume 13, No. 2, May 2015

ii. "This is No Time for Scared Money"
    -YoungUpstarts: Voice of a New Generation [www.youngupstarts.com]

iii. Issues in International Receiverships or "Good morning, Mr. Phelps. Your mission should you decide to accept it…."
    -INSOL International

iv. Cracking the Code: Jurisdictional Issues in International Receiverships
    -American Bankruptcy Institute

**Videos:**

v. Drew McManigle talks about Scared Money [http://www.youtube.com/watch?v=GIJFpXm_4lk]

vi. Drew McManigle talks about the 2013 Business Forecast [http://www.youtube.com/watch?v=wcFQrwZJuNo



**APPENDIX B**

**Debtors' Pro-Forma Assets and Liabilities**



Pennzoil Place
700 Milam St. Suite 1300
Houston, TX 77002

MaccoRestructuringGroup.com

Declaration of Drew McManigle on behalf of Debtors
November 9, 2020

Cred, Inc. and its affiliates
**Pro-Forma Assets and Liabilities (A)**
As of: November 7, 2020
*(in thousands)*
<span style="color:red">**UNAUDITED**</span>

| FN# | ASSETS | | FN# | LIABILITIES | |
|---|---|---:|---|---|---:|
| | **Cash & Cash Equivalents** | | | **Borrowed capital** | |
| 1) | Cash | 47 | 7) | Customer Deposits | 114,635 |
| 2) | Crypto-Currency | 14,709 | 8) | Customer Collateral | 20,880 |
| 3) | Crypto-Currency (Frozen) | 489 | | Total Borrowed capital | 135,515 |
| | Total Cash & Cash Equiv. | 15,245 | | | |
| | **Loans & Assets Under Management** | | 9) | Agreements Payable | 983 |
| 4) | Assets Under Management | 3,712 | | **TOTAL LIABILITIES** | **136,499** |
| 5) | Cred issued loans | 39,074 | | | |
| 6) | Customer loans | 9,808 | | | |
| | Total Loans & Inv. | 52,594 | | | |
| 10) | **TOTAL ASSETS** | **67,839** | | | |

**FOOTNOTES**

General: all items presented herein have been subject to mark-to-market adjustments as of the Petition Date (November 7, 2020).

A) Pro-Forma assets and liabilities were derived from preliminary key balance sheet data provided by Debtors' executives, available 2020 balance sheet data through 09/30/2020 and forecasted income statement through 12/31/2020. Financials are currently in process of being updated and figures presented may be materially revised pending additional investigation by financial advisors.

1) Delineates funds available for operating in United States Dollar (USD).

2) Includes $964K of LibraToken, $8.5MM of TAP and $2.7MM of Universal Protocol Token which are considered illiquid crypto-currencies. For clarity, there is not enough volume traded daily to enable immediate monetization of amounts held.

3) Includes $226K of LibraToken and $94K of Universal Protocol Token deemed illiquid. Funds have been frozen by Uphold HQ Inc.

4) Estimate of funds to be returned by asset managers AX Momentum LP, Fifth Khagan LP and Reliz LTD (Blockfill).

5) Consists of $39MM to moKredit, an insider owned entity, which has not yet paid any outstanding principal. The account balance may be partially or completely uncollectible.

6) Consists of $9.8MM loans made to customers which would only be collected if collateral was returned. The account balance may be partially or completely uncollectible.

7) Debtors' operations consists of utilizing pledged customer crypto-currency assets, denoted here as "Customer Deposits", in various yield generating vehicles. Customers expect interest on their pledged assets as well as enough liquidity to be able to collect their pledged crypto-currency assets. Customer deposits form a liability of the Debtors which varies depending on market performance of the underlying crypto-currency.

8) Denotes underlying collateral for Customer loans asset. Total liability outstanding potentially set off by customer loans received.

9) Denotes amount payable outstanding to asset manager per formalized agreement.

10) Total assets does not include litigation claims, including, but not limited to, claims (a) against the Debtors' former employee Mr. James Alexander in the amount of approximately $3 million and (b) for the return of stolen bitcoin in the amount of more than $10 million. Total assets does not include potential value for furniture, computer or software of approximately $2.6MM.