**Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (__) |
|  | ) |  |
| Debtors.[1] | ) | (Joint Administration Requested) |
|  | ) |  |

**MOTION OF DEBTORS FOR ENTRY INTERIM AND FINAL
ORDERS (I) AUTHORIZING DEBTORS TO (A) CONTINUE TO OPERATE
THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN
EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM
INTERCOMPANY TRANSACTIONS; (II) GRANTING ADMINISTRATIVE
EXPENSE STATUS TO POSTPETITION INTERCOMPANY BALANCES; (III)
WAIVING THE REQUIREMENTS OF SECTION 345(b) OF BANKRUPTCY
CODE; AND (IV) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Cred Inc. ("Cred") and its affiliated debtors and debtors in possession (the "Debtors")

respectfully represent as follows in support of this motion:

**Relief Requested**

1.      By this motion, the Debtors request entry of interim and final orders, substantially

in the form attached as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order"),

respectively, authorizing the Debtors (a) to continue their existing cash management system (the

"Cash Management System") at their existing banks (the "Banks"), consistent with their

prepetition practices, (b) honor certain obligations related to the Cash Management System, (c)

maintain existing business forms, (d) continue to perform intercompany transactions, and (e)

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566).  The Debtors' headquarters are located at 3 East Third Avenue, Suite 200, San Mateo, California 94401.

waive the requirements of section 345(b) of the Bankruptcy Code.  In support of this motion, the

Debtors rely upon, and incorporate by reference, the *Declaration of Daniel Schatt in Support of*

*Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").[2]

## Jurisdiction, Venue, and Statutory Bases

2.      The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding

within the meaning of 28 U.S.C. § 157(b)(2).  In accordance with Rule 9013-1(f) of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"), the Debtors confirm their consent to the entry of a final

order by the Court in connection with this motion to the extent that it is later determined that the

Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested in this motion are sections 105(a), 345,

363, and 503(b)(1) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rules

2015-2 and 9013-1(m).

## Background

### 1.      Chapter 11 Cases

5.      On November 7, 2020 (the "Petition Date"), the Debtors each commenced a

voluntary case under chapter 11 of the Bankruptcy Code in this Court.  The Debtors are

authorized to continue operating their businesses as debtors in possession pursuant to sections

---

[2]      Capitalized terms used but not otherwise defined in this motion shall have the meanings set forth in the First Day Declaration.

1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

6.      The Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

7.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the First Day Declaration.

**2.      Debtors' Cash Management System**

8.      In the ordinary course of business, the Debtors maintain the Cash Management System to collect, pool, transfer, and disburse funds generated by their operations, which is summarized on the schematic attached as **Exhibit C**.

9.      The Cash Management System is critical to the Debtors' operations as it facilitates the streamlined transfer of its cryptocurrency into cash, as well as the efficient payment of financial obligations incurred by the Debtors, such as payments to employees and vendors.

10.      The Cash Management System is comprised of seventeen bank accounts, each of which is identified on **Exhibit D**.  The Debtors maintain seven bank accounts at Metropolitan Commercial Bank ("MCB"), five accounts at Silvergate Bank ("Silvergate"), three accounts at Evolve Bank & Trust, and two accounts at Provident Bank.

11.      In addition to the Debtors' Cash Management System, the Debtors also maintain a cryptocurrency management system (the "Cryptocurrency Management System") that allows them to accommodate customers with every major cryptocurrency and quickly liquidate cryptocurrency into cash.  The Cryptocurrency Management System consists of numerous E-Wallets, along with a centralized cryptocurrency account, which are all held with Fireblocks Inc.

3

("Fireblocks").  The Debtors pay a monthly subscription fee of $5,000 for their Fireblocks account.

12.     As described more fully in the proceeding paragraphs, the Cash Management System, as well as the Cryptocurrency Management System, are an essential component of the Debtors' businesses.  Any interruption of the Cash Management System or Cryptocurrency Management System would severely disrupt the Debtors' operations and result in harm to the Debtors' estates and their stakeholders.  Accordingly, the Debtors seek authority to continue using their Cash Management System and Cryptocurrency Management System in the ordinary course of business on a postpetition basis in a manner consistent with past practice, and to pay any prepetition fees related to the Cash Management System or the Cryptocurrency Management System.

### A.     Description of the Debtors' Bank Accounts

13.     The Cash Management System consists of two separate systems that interact regularly in the ordinary course of business.  The first system consists of the accounts held at Silvergate, which facilitates the Debtors' cryptocurrency transactions.  The second system consists of the accounts held at MCB, which the Debtors' use for payment of administrative costs and day-to-day operations.

### i.     The Silvergate Accounts

14.     As set forth in the First Day Declaration, the Debtors' primary source of income is from returns generated on cryptocurrency transferred to the Debtors by their customers. Cryptocurrency-denominated income is sent to one of the Debtors' e-wallets or their Fireblock account by moKredit Inc.[3] and their outside asset managers.

---

[3]     MoKredit Inc. is one of the companies to which the Debtors have issued a cryptocurrency loan.

15.     The Debtors convert the cryptocurrency in their e-wallets into cash on an as-needed basis to pay outstanding obligations.  To liquidate the cryptocurrency, the Debtors exchange it for cash at an over-the-counter market maintained by Galois Capital.  The cash is directly deposited into the Debtors' Silvergate network account (the "Network Account"), which allows for instant transfers of cash to and from counterparties.

16.     In addition to the Network Account, the Debtors also maintain an account at Silvergate that was established to receive loan proceeds from holders of the Debtors' unsecured promissory notes (the "Investment Account") and an account through which they route funds to their operational account at MCB (the "Silvergate Operations Account").

17.     A table describing the Debtors' bank accounts at Silvergate is included below.

| Accounts | Description |
|---|---|
| **Network Account**<br><br>Silvergate (-3135) | The Debtors maintain a Network Account to facilitate cryptocurrency transactions on a day-to-day basis.  The Network Account is held in the name of Debtor Cred Inc.<br><br>The Network Account mainly holds funds from liquidations of the Debtors' cryptocurrency assets and is mainly used for cryptocurrency related transactions.  Manual transfers to the Silvergate Operations Account are also made on an as needed basis to indirectly fund certain disbursements, such as customer or vendor obligations.  The Network Account also receives manual transfers from the Silvergate Operations Account in certain circumstances.<br><br>As of the Petition Date, the Network Account held $0. |
| **Investment Account**<br><br>Silvergate (-3143) | The Debtors maintain an Investment Account through which they received loan proceeds from their promissory noteholders.  The Investment Account is a zero-balance account.  Cash in the Investment Account is manually transferred to the Silvergate Operations Account.  Debtor Cred Inc. is the holder of the Investment Account.<br><br>As of the Petition Date, the Investment Account held $0. |

| **Silvergate Operations Account**<br><br>Silvergate (-3127) | The Silvergate Operations Account is used to link the Debtors cryptocurrency transactions to its administrative transactions.  In the ordinary course of business, funds are manually transferred from the Silvergate Operations Account as needed to cover the Debtors' AP and payroll.  The Debtors then manually transfer the funds from the Silvergate Operations Account to the Debtors' MCB accounts to pay creditor and payroll obligations.  The Silvergate Operations Account is a zero-balance account, all funds deposited in it are either transferred to the Network Account or the Debtors' MBC accounts.  Debtor Cred Inc. holds the Silvergate Operations Account.<br><br>As of the Petition Date, the Silvergate Operations Account held $0. |
|---|---|
| **Other Accounts**<br><br>Silvergate (-3986)<br>Silvergate (-3994) | The Debtors opened these accounts for a line of business that is not operational.  The accounts hold $0 and incur no service charges or bank fees.  The accounts are held by Debtor Cred Capital, Inc. |

### ii.      The MCB Accounts

18.      The Debtors use their MCB accounts to facilitate administrative functions like paying customers, vendors, and employees, most of which is done through their operating account (the "MCB Operating Account").

19.      The Debtor use the MCB Operating Account to pay outstanding amounts due to customers, accounts payable that have come due, and payroll.  In the ordinary course of business, the Debtors fund the MCB Operating Account from their cryptocurrency transactions.

20.      The MCB Operating Account also receives the Debtors' US dollar denominated income from Elevar Finance, LLC ("Elevar").[4]  The Debtors either transfer the funds from Elevar to the Silvergate Operating Account for redeployment in cryptocurrency transactions, or use the funds to meet administrative and operational obligations.

---

[4]      Elevar is one of the companies to which the Debtors have issued a cryptocurrency loan.

21.     In addition to the MCB Operating Account, the Debtors maintain several other accounts at MCB for various uses.  A table describing the Debtors' MCB accounts is included below.

| Accounts | Description |
|---|---|
| **MCB Operating Account**<br><br>MCB (-1141) | The Debtors maintain the MCB Operating Account to pay all operational expenses, such as customer, vendor, and employee obligations.  The MCB Operating Account is held by Debtor Cred Inc.<br><br>The MCB Operating Account is funded from two sources, US dollar denominated income and manual transfers from the Silvergate Operations Account on an as-needed basis.   To the extent the MCB Operating Account holds more cash than the Debtors' project they will need, the Debtors' manually transfer funds from the MBC Operating Account to the Silvergate Operations Account for the eventual purchase of cryptocurrency.<br><br>As of the Petition Date, the MCB Operating Account held $47,429.56. |
| **Credit Card Reserve Account**<br><br>MCB (-3314) | MCB is the issuer of two company credit cards to the Debtors.  In connection with the credit cards, MCB requires the Debtors maintain a reserve account with a $100,000 balance.  The Debtors do not use this account in the ordinary course of business, and there are no service charges or bank fees associated with this account.  Debtor Cred Inc. is the holder of the account.<br><br>Prior to the Petition Date, the Debtors transferred all the funds in this account to the MCB Operating Account.  As of the Petition Date, the account held $0. |
| **Cred (US) LLC Operating Account**<br><br>MCB (-1664) | Debtor Cred (US) LLC is a licensed lender under California law.  California requires all licensed lenders to maintain a minimum net worth, and so the Debtors have historically maintained this account at $100,000.  Although Debtor Cred (US) LLC is not currently engaged in business activities, this account does receive some deposits.  Historically, the Debtors manually swept this account for any amount over $100,000 on a monthly basis and transfer the excess to the MCB Operating Account. |

| | |
|---|---|
| | Prior to the Petition Date, the Debtors transferred all the funds in this account to the MCB Operating Account.  As of the Petition Date, the account held $0.  Debtor Cred (US) LLC is the holder of the account. |
| **Other Accounts**<br><br>MCB (-1672)<br>MCB (-3306)<br>MCB (-2989)<br>MCB (-2970) | The Debtors opened these accounts for lines of business that are not yet operational.  The accounts hold $0 and incur no service charges or bank fees.  The accounts are held either by Debtor Cred Inc. (-3306, -2989) or Debtor Cred (US) LLC (-1672, -2970). |

**B.     The Banks**

22.     All of the Banks are federally insured depository institutions.

23.     In the ordinary course of business, the Debtors incur service charges and other related fees, costs, and expenses charged by MCB and Silvergate (collectively, the "Bank Fees"). Further, to the extent the balance in a bank account decreases below a threshold established by an applicable bank, the Debtors may incur additional Bank Fees for sending and receiving wire transfers, clearing checks, ACH transfers, and other transactions.

24.     The Debtors have historically incurred Bank Fees between $1,000 and $2,000 per month, which are automatically withdrawn from the Debtors' bank accounts.  As of the Petition Date, the Debtors do not have unpaid Bank Fees.  Out of an abundance of caution, however, to ensure the Debtors have continued access to banking services, the Debtors seek authority to pay any Bank Fees that may have been incurred and to continue pay the Bank Fees in accordance with past practices.

**3.     Debtors' Business Forms**

25.     As part of the Cash Management System, the Debtors utilize numerous preprinted business forms, including, but not limited to, letterhead, purchase orders and business cards (the "Business Forms").  It should be noted, however, that the Debtors do not use checks in their

business, and thus none of their current business forms are inconsistent with the Operating

Guidelines for Chapter 11 Cases (the "Operating Guidelines") of the Office of the United States

Trustee for the District of Delaware (the "U.S. Trustee").

26.     Out of an abundance of caution, and to minimize unnecessary additional expenses

to their estates, the Debtors request that the Court authorize their continued use of Business

Forms in existence immediately before the Petition Date, without reference to the Debtors' status

as debtors in possession.

**4.      Intercompany Transfers**

27.     Historically, the Debtors only intercompany transfers were the sweeping of

Debtor Cred (US) LLC's operating account for any amount over $100,000, which funds were

then transferred to Debtor Cred Inc.  These transactions were largely de minimis, and averaged

approximately $20,000 per month.  Further, these transfers allowed the Debtors to utilize cash

that would otherwise would be unused for paying obligations or investing in cryptocurrency.

28.     The Debtors do not anticipate they will make any significant intercompany

transactions in the course of these chapter 11 cases.  The Debtors nevertheless seek authority to

make an intercompany transfer should the need arise in the ordinary course of business, with such

a transaction giving rise to a superpriority administrative claim under section 503(b)(1) of the

Bankruptcy Code.  The requested relief will allow the Debtors needed flexibility to maximize the

value of their estate.  Further, such relief is unlikely to harm creditors, as granting all postpetition

intercompany obligations superpriority reduces the risk these transactions will jeopardize the

recoveries available to each Debtor's respective creditors.

<u>**Basis for Relief**</u>

I.    **Continuation of Cash Management System Is Warranted Under Sections 363 and 105(a) of the Bankruptcy Code**

29.    Continuation of the Cash Management System is an appropriate exercise of the Debtors' business in the ordinary course.  Section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "use property of the estate in the ordinary course of business without notice or a hearing."[5]  The purpose of section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court.[6]  Included within the purview of section 363(c) is a debtor's ability to continue "routine transactions" necessitated by a debtor's cash management system.[7]

30.    Even if the continuation of the Cash Management System and other relief requested in this motion were outside the ordinary course of business, the Court may grant such relief pursuant to section 363(b) of the Bankruptcy Code, which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[8]

---

[5]    11 U.S.C. § 363(c)(1).

[6]    *In re Roth Am., Inc.,* 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (citation omitted).  *In re Vision Metals, Inc.,* 325 B.R. 138, 145 (Bankr. D. Del. 2005) (same).

[7]    *See, e.g., Nellson Nutraceutical, Inc.,* 369 B.R. 787, 796 (Bankr. D. Del. 2007); *In re Vision Metals, Inc.,* 325 B.R. at 142 ("when a chapter 11 debtor in possession continues to operate its business, as permitted by section 1108, no court authorization is necessary for the debtor to enter transactions that fall within the ordinary course of its business.").

[8]    11 U.S.C. § 363(b)(1).

31.     Under section 363, a court may authorize a debtor to use assets outside the ordinary course of business if a sound business purpose exists for doing so.[9]  The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."[10]  Moreover, if "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."[11]

32.     In addition, the Court has the authority to authorize the relief requested in this motion pursuant to its equitable powers under section 105(a) because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a).  Section 105 empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[12]  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of the debtor's creditors and other parties in interest.[13]

---

[9]     *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999).

[10]    *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985).

[11]    *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.,* 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule is a near-Herculean task.").

[12]    11 U.S.C. § 105.

[13]    *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)).  *See also In re Cybergenics Corp.*, 226 F.3d 237, 243 (3d Cir. 2000) ("A paramount duty of a trustee or debtor in possession in a bankruptcy case is to act on behalf of the bankruptcy estate, that is, for the benefit of the creditors."); *Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

33. Maintaining the existing cash management system is in the best interest of the Debtors' estates and all parties in interests and should therefore be approved. If the Debtors are required to alter the way in which they collect and disburse cash throughout the Cash Management System, their operations will experience severe disruptions, which would ultimately frustrate the Debtors' ability to maximize the values of their estates.

34. Further, the Cash Management System provides significant benefits to the Debtors, including the ability to (i) control corporate funds, (ii) ensure the maximum availability of funds when and where necessary, and (iii) reduce costs and administrative expenses by facilitating the movement of funds and the development of more timely and accurate account information. Accordingly, the Debtors request authority to maintain and continue their current Cash Management System.

## II.    Maintenance of Debtors' Existing Bank Accounts Is Warranted

35. The Operating Guidelines generally require that a chapter 11 debtor, among other things, (i) establish one debtor in possession account for all estate monies required for the payment of taxes, (ii) close all existing bank accounts and open new debtor in possession accounts, (iii) maintain a separate debtor in possession account for collateral, and (iv) obtain checks that bear the designation "Debtor in Possession."

36. The Debtors request, in accordance with Local Rule 2015-2, that the Court waive the requirements of the Operating Guidelines with respect to the Debtors' bank accounts. Strict enforcement of the Operating Guidelines would severely disrupt the Debtors' ordinary course financial operations by reducing efficiencies, increasing administrative burdens, and creating unnecessary expenses. These chapter 11 cases will be more orderly and efficient if the Debtors are permitted to maintain their Cash Management System and bank accounts as they were utilized prepetition.

37.     By preserving business continuity and avoiding likely disruption and delay to the

Debtors' disbursements, the relief requested in this motion will benefit all parties in interests.

Further, parties-in-interest will not be harmed by this relief, as the Debtors have, with the

assistance of their advisors, implemented internal control procedures that will ensure no

payments are made on account of prepetition debts without prior approval of the Court.

### III.   Authorizing Debtors' Banks to Continue to Maintain, Service, and Administer Their Bank Accounts in the Ordinary Course of Business Is Warranted.

38.     As discussed above, implementing the Operating Guidelines would interrupt the

Debtors' operations and impair the Debtors' efforts to preserve the value of their estates and

reorganize in an efficient manner.  Thus, the Debtors respectfully request that the Court also

authorize the Banks to continue to maintain, service, and administer the Debtor's bank accounts

without interruption and in the ordinary course of business.  In this regard, the Banks should be

authorized to receive, process, honor, and pay any and all ACH transfers, wires, credit card

payments, and other instructions, and drafts payable through, drawn, or directed on the Banks

after the Petition Date by holders, makers, or other parties entitled to issue instructions with

respect thereto.

### IV.   The Court Should Authorize the Debtors to Continue Using Their Existing Business Forms

39.     To avoid unnecessary expense, the Debtors request authorization to continue to

use the Business Forms substantially in the form existing immediately prior to the Petition Date,

without reference to their status as debtors in possession.  A failure to permit the Debtors to

utilize their existing Business Forms would be unduly burdensome and may unnecessarily hinder

the Debtors' business operations.

40.     Further, the Debtors do not use checks in their business, and thus none of their

current business forms are inconsistent with the Operating Guidelines for Chapter 11 Cases (the

"Operating Guidelines") of the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").  Accordingly, the Court authorize their continued use of Business Forms in existence immediately before the Petition Date, without reference to the Debtors' status as debtors in possession.

## V.    The Court Should Authorize the Debtors to Continue Conducting Intercompany Transactions in the Ordinary Course and Grant Superpriority Administrative Expense Status to Postpetition Intercompany Balances Between Debtors

41.    Allowing the Debtors to engage in Intercompany Transactions on a postpetition basis is in the best interests of the Debtors' estates and their creditors, and the Debtors seek authority to continue such Intercompany Transactions in the ordinary course of business.  The Debtors respectfully submit that Intercompany Transactions arising in the ordinary course are authorized as a matter of law pursuant to section 363(c)(1) of the Bankruptcy Code for which no additional relief is required.  To the extent that the Intercompany Transactions do not arise in the ordinary course, ample cause exists to continue such transactions on a postpetition basis so the Debtors can maintain maximum flexibility in pursuing value for their estates.

42.    The Debtors further request that pursuant to sections 364(b) and 503(b)(1) of the Bankruptcy Code, all postpetition payments between or among a Debtor and another Debtor on account of an Intercompany Transaction be accorded superpriority administrative expense status, which would result in a superpriority administrative expense claim in favor of the applicable Debtor-payor that has priority over any administrative expense claim that arises under section 503(b) of the Bankruptcy Code.  This relief will ensure that each entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtor's respective creditors.  For the avoidance of doubt, the relief requested in this motion with respect to the postpetition Intercompany Transactions and the intercompany

14

balances resulting therefrom shall not constitute an admission of the Debtors or any other party as to the validity, priority, or status of any prepetition intercompany balance or the Intercompany Transaction(s) from which such intercompany balance may have arisen.

## VI.    Waiver of the Requirements of Section 345(b) of the Bankruptcy Code

43.    Section 345(a) of the Bankruptcy Code authorizes a debtor in possession to make deposits or investments of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."[14]  If a deposit or investment is not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," however, section 345(b) of the Bankruptcy Code provides that a debtor must require that the entity with which the deposit or investment is made obtain a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety or deposit securities of the kind specified in 31 U.S.C. § 9303, unless the court for cause orders otherwise.[15]

44.    In chapter 11 cases such as these, strict adherence to the requirements of section 345(b) of the Bankruptcy Code would be inconsistent with the value-maximizing purpose of chapter 11 by creating additional administrative expense and burden, and unduly hampering a debtor's ability under section 345(a) to invest money "as will yield the maximum reasonable net return on such money."  As a result, in 1994, to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," Congress amended section 345(b) to provide that its strict investment

---

[14]    11 U.S.C. § 345(a).

[15]    *See* 11 U.S.C. § 345(b); *see also* 140 Cong. Rec. H10767 (1994) (stating that while the requirement under section 345(b) for debtor funds to be FDIC insured, collateralized, or bonded may be "wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, it can work to needlessly handcuff larger, more sophisticated debtors").

requirements may be waived of modified if the court so orders "for cause."  140 Cong. Rec. H.

10,767 (Oct. 4, 1994).  The Debtors submit cause exists here to warrant such relief.

45.     As of the Petition Date, all of the Debtors' bank accounts are in compliance with

section 345, however there may be occasions during these chapter 11 cases where the amount in

a Debtors' bank accounts exceeds the current FDIC insurance limits of $250,000.

46.     Additionally, the Debtors' regularly purchase cryptocurrencies in the course of

their business, which may be deemed "investments" under section 345.  Requiring the Debtors to

collateralize its cryptocurrency holdings would be prohibitively expensive (if possible at all).

Further, requiring the Debtors to liquidate its cryptocurrency holdings would likely harm

creditors, as it would essentially put the Debtors out of business and deprive them of their

primary source of revenue.

47.     To allay the concerns addressed by section 345(b) of the Bankruptcy Code, the

Debtors will engage with the U.S. Trustee in good faith discussion to determine potential

modifications to the Debtors' Cash Management System.

48.     In light of the above, the Debtors' respectfully submit that the burdens of section

345(b) in these chapter 11 cases would cripple their business, actively harm their creditors, and

provide little benefit to their estates.  Accordingly, the Court should waive the requirements of

section 345(b) in these chapter 11 cases.

## **Reservation of Rights**

49.     Nothing contained in this motion is intended or shall be construed as: (a) an

admission as to the amount of, basis for, or validity of any claim against the Debtors under the

Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to

dispute any claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d)

an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of

the Bankruptcy Code; (e) an admission as to the validity, enforceability, or perfection of any lien

on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver of

any claims or causes of action which may exist against any entity; or (g) a waiver or limitation of

the Debtors' rights under the Bankruptcy Code or any other applicable law.

### Debtors Have Satisfied Bankruptcy Rule 6003(b)

50.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid

immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to

use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a

motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one

(21) days after filing of the petition.  As described above and in the First Day Declaration, the

Debtors' Cash Management System is vital to its operations.  If the Debtors cannot continue

using their Cash Management System during the first twenty-one (21) days of these chapter 11

cases, the Debtors' operations would be severely disrupted to the detriment of its creditors and

estates.  Accordingly, the Debtors submit that the relief requested in this motion is necessary to

avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003(b) is satisfied.

### Bankruptcy Rule 6004(a) and (h)

51.     To implement the foregoing successfully, the Debtors request that the Court find

that notice of this motion is adequate pursuant to Bankruptcy Rule 6004(a) under the

circumstances, and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease

of property pursuant to Bankruptcy Rule 6004(h).  As explained above and in the First Day

Declaration, the relief requested in this motion is necessary to avoid immediate and irreparable

harm to the Debtors.  Accordingly, ample cause exists to justify finding that the notice

requirements pursuant to Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of

the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice

requirements and such stay apply.

### <u>Processing of Electronic Fund Transfers Should Be Authorized</u>

52.    The Debtors have sufficient funds to pay the amounts described in this motion in

the ordinary course of business by virtue of its access to liquid assets on hand and expected cash

flows from ongoing business operations.  Under the Debtors' existing cash management system,

the Debtors have made arrangements to readily identify electronic payment requests relating to

the payment of prepetition Bank Fees and Fireblock subscription fees, as applicable.

Accordingly, the Debtors believe that ACH or wire transfer requests that are not related to

authorized payments will not be honored inadvertently.  Therefore, the Debtors respectfully

request that the Court authorize all applicable financial institutions, when requested by the

Debtors, to receive, process, honor, and pay any and all electronic payment transfer requests in

respect of the relief requested in this motion.

### <u>Notice</u>

24.    Notice of this motion has been given to: (i) the U.S. Trustee; (ii) the Internal

Revenue Service; (iii) the United States Attorney for the District of Delaware; (iv) the parties

included on the Debtors' consolidated list of thirty (30) largest unsecured creditors.  As this

motion is seeking first-day relief, notice of this motion and any order entered hereon will be

served on all parties required by Local Rule 9013-1(m)(iii).  In light of the nature of the relief

requested in this motion, the Debtors respectfully submit that no further notice of this motion is

required.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Interim and

Final Order, substantially in the form attached hereto: (i) granting the relief requested in this

motion and (ii) granting such other and further relief as the Court may deem proper.

Dated: November 8, 2020
      Wilmington, Delaware

/s/  Scott D. Cousins
Scott D. Cousins (No. 3079)
**COUSINS LAW LLC**
Brandywine Plaza West
1521 Concord Pike, Suite 301
Wilmington, Delaware 19803
Telephone:    (302) 824-7081
Facsimile: :    (302) 295-0331
Email:       scott.cousins@cousins-law.com

- and -

James T. Grogan (admission *pro hac vice* pending)
Mack Wilson (admission *pro hac vice* pending)
**PAUL HASTINGS LLP**
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
Telephone:    (713) 860-7300
Facsimile:    (713) 353-3100
Email:       jamesgrogan@paulhastings.com
             mackwilson@paulhastings.com

- and -

G. Alexander Bongartz (admission *pro hac vice* pending)
Derek Cash (admission *pro hac vice* pending)
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone:    (212) 318-6000
Facsimile:    (212) 319-4090
Email:       alexbongartz@paulhastings.com
             derekcash@paulhastings.com

*Proposed Co-Counsel to the Debtors*

## Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (__) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) CONTINUE TO OPERATE
THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION
OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS
FORMS, AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS;
(II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION
INTERCOMPANY BALANCES; (III) WAIVING REQUIREMENTS OF SECTION
345(b) OF THE BANKRUPTCY CODE; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the debtors and debtors in possession (the

"Debtors") for entry of an order (this "Interim Order"), pursuant to sections 105(a), 345, 363,

and 503(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the

Debtors to (a) to continue their existing cash management system (the "Cash Management

System") at their existing banks (the "Banks"), consistent with their prepetition practices, (b)

honor certain obligations related to the Cash Management System, (c) maintain existing business

forms, (d) continue to perform intercompany transactions, and (e) waive the requirements of

section 345(b) of the Bankruptcy Code, all as more fully set forth in the Motion; and this Court

having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found

that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a

final order consistent with Article III of the United States Constitution; and this Court having

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number,
as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred
Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566).  The Debtors' headquarters are located at
3 East Third Avenue, Suite 200, San Mateo, California 94401.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the

best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court

having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion

were appropriate under the circumstances and no other notice need be provided; and the Court

having reviewed the Motion; and the Court having held a hearing to consider the relief requested

in the Motion on an interim basis (the "Hearing"); and upon the First Day Declaration, filed

contemporaneously with the Motion, and the record of the Hearing; and the Court having

determined that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid

immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy

Rule 6003, and is in the best interests of the Debtors, their estates, creditors, and all parties in

interest; and upon all of the proceedings had before the Court and after due deliberation and

sufficient cause appearing therefor,

**IT IS HEREBY ORDERD THAT:**

1.    The Motion is granted on an interim basis to the extent set forth herein.

2.    Except as otherwise provided herein, the Debtors are authorized, but not directed,

to: (a) continue operating the Cash Management System as described in the Motion, and (b)

honor their prepetition obligations related thereto; (c) maintain existing Business Forms; and (d)

continue to perform Intercompany Transactions consistent with historical practice.

3.    The Debtors are further authorized, but not directed, to: (a) continue to use, with

the same account numbers, their bank accounts in existence as of the Petition Date; (b) deposit

funds in and withdraw funds from their bank accounts by all usual means, including checks, wire

transfers, and other debits; (c) pay any Bank Fees (including any prepetition amounts) incurred

in connection with their bank accounts; (d) pay any fees due to Fireblock (including any

prepetition amounts) incurred in connection with their E-Wallets or cryptocurrency accounts;

and (e) perform their obligations under the documents governing their bank accounts.

4.      All postpetition payments from a Debtor to another Debtor under any postpetition

intercompany transfer authorized hereunder are hereby accorded superpriority administrative

expense status under section 503(b) of the Bankruptcy Code

5.      The requirements of the U.S. Trustee Guidelines that the Debtors close all bank

accounts and open new debtor-in-possession are hereby waived.  In addition, the requirements of

the U.S. Trustee Guidelines that the Debtors establish specific bank accounts are hereby waived.

6.      Except as otherwise expressly provided in this Interim Order, each of the Banks is

authorized to continue to maintain, service, and administer the Debtors' bank accounts without

interruption and in the ordinary course in accordance with prepetition practices, and to receive,

process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit

card payments, and ACH transfers issued, presented, or drawn on the Debtors' bank accounts

when presented for payment.

7.      Subject to the terms set forth herein, the Banks may rely upon the representations

of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued

by the Debtors prior to, on, or after the Petition Date should be honored pursuant to any order of

the Court, and no Bank shall be held liable for actions taken (a) at the direction of the Debtors or

(b) in a good-faith belief that the Court has authorized such action.

8.      The Debtors and each of the Banks are hereby authorized to continue to perform

pursuant to the terms of any unexpired prepetition cash management agreements that may exist

3

between them, except and to the extent set forth in this Interim Order and except as amended, modified, or supplemented by agreement between the Debtors and a Bank in the ordinary course of business.

9.      The requirements provided in section 345(b) of the Bankruptcy Code are hereby suspended for an interim period of thirty (30) days, without prejudice to the Debtors' rights to seek a further suspension.

10.      The Debtors are authorized to implement changes to the Cash  Management System and procedures related thereto in the ordinary course of business, including (a) opening any new bank accounts or closing any existing bank accounts and (b) entering into any ancillary agreements, including new deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate; *provided* that the Debtors give notice within 14 days to the U.S. Trustee and any statutory committees, if any, appointed in these chapter 11 cases.

11.      The relief granted in this Interim Order is extended to any new bank account opened by the Debtors after the date hereof.  As required herein, to the extent the Debtors open a new bank account, they shall provide notice to the U.S. Trustee and counsel to any official statutory committee, if any, appointed in these chapter 11 cases.

12.      Nothing contained in the Motion or this Interim Order, nor any action taken pursuant to the authority granted by this Interim Order, shall constitute or be construed as (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (e) an admission as to the validity, enforceability, or perfection of any lien

on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver of any claims or causes of action which may exist against any entity; or (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

13.     Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

14.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

15.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

16.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

17.     The Final Hearing shall be held on _____, **2020**, at ____ (ET) and any objections or responses to the Motion shall be in writing, filed with the Court, and served in accordance with the Local Rules.

18.     This Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; _provided_ that the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

19.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order.

20.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

## **Exhibit B**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CRED INC., et al., | ) | Case No. 20-12836 (__) |
|  | ) |  |
| Debtors[1] | ) | (Jointly Administered) |
|  | ) |  |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS; (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY BALANCES; (III) WAIVING REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the debtors and debtors in possession (the "Debtors") for entry of an order (this "Order"), pursuant to sections 105(a), 345, 363, and 503(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtors to (a) to continue their existing cash management system (the "Cash Management System") at their existing banks (the "Banks"), consistent with their prepetition practices, (b) honor certain obligations related to the Cash Management System, (c) maintain existing business forms, (d) continue to perform intercompany transactions, and (e) waive the requirements of section 345(b) of the Bankruptcy Code, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566).  The Debtors' headquarters are located at 3 East Third Avenue, Suite 200, San Mateo, California 94401.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and the Court having reviewed the Motion; and the Court having entered an order granted the relief requested in the Motion on an interim basis on November ____, 2020 [D.I. No. _____]; and the Court having held a hearing to consider the relief requested in the Motion on a final basis, if necessary (the "Hearing"); and upon the First Day Declaration, filed contemporaneously with the Motion, and the record of the Hearing, if necessary; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERD THAT:**

1.      The Motion is granted on a final basis to the extent set forth herein.

2.      Except as otherwise provided herein, the Debtors are authorized, but not directed, to: (a) continue operating the Cash Management System as described in the Motion, and (b) honor their prepetition obligations related thereto; (c) maintain existing Business Forms; and (d) continue to perform Intercompany Transactions consistent with historical practice.

3.      The Debtors are further authorized, but not directed, to: (a) continue to use, with the same account numbers, their bank accounts in existence as of the Petition Date; (b) deposit funds in and withdraw funds from their bank accounts by all usual means, including checks, wire

transfers, and other debits; (c) pay any Bank Fees (including any prepetition amounts) incurred

in connection with their bank accounts; (d) pay any fees due to Fireblock (including any

prepetition amounts) incurred in connection with their E-Wallets or cryptocurrency accounts;

and (e) perform their obligations under the documents governing their bank accounts.

4.     All postpetition payments from a Debtor to another Debtor under any postpetition

intercompany transfer authorized hereunder are hereby accorded superpriority administrative

expense status under section 503(b) of the Bankruptcy Code

5.     The requirements of the U.S. Trustee Guidelines that the Debtors close all bank

accounts and open new debtor-in-possession are hereby waived.  In addition, the requirements of

the U.S. Trustee Guidelines that the Debtors establish specific bank accounts are hereby waived.

6.     Except as otherwise expressly provided in this Final Order, each of the Banks is

authorized to continue to maintain, service, and administer the Debtors' bank accounts without

interruption and in the ordinary course in accordance with prepetition practices, and to receive,

process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit

card payments, and ACH transfers issued, presented, or drawn on the Debtors' bank accounts

when presented for payment.

7.     Subject to the terms set forth herein, the Banks may rely upon the representations

of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued

by the Debtors prior to, on, or after the Petition Date should be honored pursuant to any order of

the Court, and no Bank shall be held liable for actions taken (a) at the direction of the Debtors or

(b) in a good-faith belief that the Court has authorized such action.

8.     The Debtors and the Banks are hereby authorized to continue to perform pursuant

to the terms of any unexpired prepetition cash management agreements that may exist between

3

them, except and to the extent set forth in this Final Order and except as amended, modified, or supplemented by agreement between the Debtors and a Bank in the ordinary course of business.

9.      The requirements provided in section 345(b) of the Bankruptcy Code are hereby waived.

10.     The Debtors are authorized to implement changes to the Cash Management System and procedures related thereto in the ordinary course of business, including (a) opening any new bank accounts or closing any existing bank accounts and (b) entering into any ancillary agreements, including new deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate; *provided* that the Debtors give notice within 14 days to the U.S. Trustee and any statutory committees, if any, appointed in these chapter 11 cases.

11.     The relief granted in this Final Order is extended to any new bank account opened by the Debtors after the date hereof.  As required herein, to the extent the Debtors open a new bank account, they shall provide notice to the U.S. Trustee and counsel to any official statutory committee, if any, appointed in these chapter 11 cases.

12.     Nothing contained in the Motion or this Final Order, nor any action taken pursuant to the authority granted by this Final Order, shall constitute or be construed as (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (e) an admission as to the validity, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver of

any claims or causes of action which may exist against any entity; or (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

13. Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

14. Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

15. Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

16. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order.

17. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

**Exhibit C**

**Cash Management Schematic**



**Exhibit D**

**Debtors' Bank Accounts**

| # | Debtor | Account Bank | Country | Currency | Last Four Digits of Account Number | Account Type |
|---|---|---|---|---|---|---|
| (1) | Cred Inc. | Metropolitan Commercial Bank | USA | USD | 1141 | Operating |
| (2) | Cred Inc. | Metropolitan Commercial Bank | USA | USD | 3306 | Operating |
| (3) | Cred Inc. | Metropolitan Commercial Bank | USA | USD | 3314 | Credit Card Reserve |
| (4) | Cred Inc. | Metropolitan Commercial Bank | USA | USD | 2989 | F/B/O (Customers) |
| (5) | Cred Inc. | Silvergate Bank | USA | USD | 3127 | Operating |
| (6) | Cred Inc. | Silvergate Bank | USA | USD | 3135 | Network |
| (7) | Cred Inc. | Silvergate Bank | USA | USD | 3143 | Investments |
| (8) | Cred Inc. | Provident Bank | USA | USD | 8473 | Operating |
| (9) | Cred Inc. | Evolve Bank & Trust | USA | USD | 2846 | Operating |
| (10) | Cred Inc. | Evolve Bank & Trust | USA | USD | 2844 | Operating |
| (11) | Cred (US) LLC | Metropolitan Commercial Bank | USA | USD | 1664 | Operating |
| (12) | Cred (US) LLC | Metropolitan Commercial Bank | USA | USD | 1672 | Operating |
| (13) | Cred (US) LLC | Metropolitan Commercial Bank | USA | USD | 1270 | F/B/O (Customers) |
| (14) | Cred (US) LLC | Provident Bank | USA | USD | 8481 | Operating |
| (15) | Cred (US) LLC | Evolve Bank & Trust | USA | USD | 2842 | Sponsorship |
| (16) | Cred Capital, Inc. | Silvergate Bank | USA | USD | 3127 | Operating |
| (17) | Cred Capital, Inc. | Silvergate Bank | USA | USD | 3135 | Network |