**Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (___) |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I)
AUTHORIZING DEBTORS TO (A) PAY EMPLOYEE OBLIGATIONS
AND (B) CONTINUE EMPLOYEE BENEFIT PROGRAMS,
AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Cred Inc. ("Cred") and its affiliated debtors and debtors in possession (the "Debtors")

respectfully represent as follows in support of this motion:

**Relief Requested**

1.      By this motion, the Debtors request entry of interim and final orders, substantially

in the forms attached as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order"),

respectively, authorizing, but not directing, the Debtors to pay and honor certain prepetition

claims and obligations, continue programs, and maintain funding, in the exercise of their

discretion, relating to, among other things: (i) Employee Compensation Obligations; (ii)

Employee Benefit Programs; and (iii) Supplemental Workforce Obligations (each as defined

below, and collectively, the "Employee Obligations").  The various components and approximate

amounts of the Employee Obligations are each discussed below.  In support of this motion, the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566).  The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

Debtors rely upon, and incorporate by reference, the *Declaration of Daniel Schatt in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").[2]

### **Jurisdiction, Venue, and Statutory Bases**

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  In accordance with Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors confirm their consent to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested in this motion are sections 105(a), 363(b), 364(a), 507(a) of title 11 of the Bankruptcy Code, Bankruptcy Rules 4001, 6003 and 6004, and Local Rule 9013-1.

### **Background**

**1.      Chapter 11 Cases**

5.      On November 7, 2020 (the "Petition Date"), the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court.  The Debtors are authorized to continue operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

---

[2]     Capitalized terms used but not otherwise defined in this motion shall have the meanings set forth in the First Day Declaration.

6.       The Debtors have filed a motion requesting joint administration of their chapter 11 cases under Bankruptcy Rule 1015(b).

7.       Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the First Day Declaration.

**2.       The Debtors' Employees**

8.       The Debtors operate a financial services platform catering to cryptocurrency holders around the world.  The Debtors' employees perform a variety of critical functions, including sales and marketing, design, engineering, information technology, security, accounting and finance, administrative, and management-related tasks.  The experience and expertise of the Debtors' employees, their relationships with the Debtors' customers, and their knowledge of the Debtors' business and infrastructure are essential to the Debtors' ongoing operations.  Without the continued, uninterrupted services of the employees, the Debtors' business operations would be critically impacted and the administration of the estates would be greatly impaired.

9.       As of the Petition Date, the Debtors employ approximately 20 full-time employees.  In addition to its full-time staff, the Debtors have historically employed independent consultants and advisors supporting the Debtors' throughout all aspects of its business.  The Debtors currently employ one consultant.  Debtor Cred employs, and pays all of the Debtors' employees, consultants, and advisors.

**3.       Overview of Employee Obligations**

**A.       Employee Compensation Obligations**

10.       In the ordinary course of business, the Debtors incur several obligations related to employee compensation, including, program administration fees, salaries, commissions, and severance payments, Payroll Taxes (as defined below), Deductions (as defined below), and

3

Reimbursable Expenses (as defined below) (collectively, the "Employee Compensation Obligations"). Each of the Employee Compensation Obligations is described in more detail below.

### i.      Employee Program Administration

11.     The Debtors have historically used third-parties to manage their human resources tasks, including administering payroll and benefits.

12.     Prior to the Petition Date, Sequoia One PEO LLC ("Sequoia One") provided the Debtors' payroll processing system, managed enrollment, contribution, and payment in connection with the Employee Benefit Programs (as defined below), and provided most of the Debtors' employee-related services. However, Sequoia One terminated its relationship with the Debtors a few days before the Petition Date

13.     The Debtors anticipate licensing YourPeople, Inc.'s Zenefits software to manage the Debtors' human resources tasks going forward. The Debtors anticipate they will pay approximately $1,000 per month for Zenefits.

14.     The Debtors request authority to utilize Zenefits, and to pay all amounts owed on account of Zenefits as they come due.

### ii.      Salaries, Commissions, and Severance Payments

15.     The Debtors only payroll obligations are employee salaries and commissions. All of the Debtors' employees are salaried, and sales employees receive commissions in addition to their salary. In the ordinary course of business, the Debtors pay employees semi-monthly. The Debtors' average monthly payroll is approximately $300,000. The Debtors previously outsourced payroll to Sequoia One, but anticipate utilizing Zenefits for payroll services during the course of their chapter 11 cases. The Debtors remit the gross payroll to their payroll

administrator two to four days before each payday.  The payroll administrator then makes payroll by direct deposit.

16.     Although the Debtors have satisfied all payroll obligations that have come due to date, the Debtors make payroll in arrears and thus, as of the Petition Date, the Debtors estimate they owe approximately $75,000 to employees on account of prepetition payroll obligations, which amount is for accrued but unpaid salaries (the "Unpaid Compensation").  Prior to the Petition Date, the Debtors funded the Unpaid Compensation through a remittance to Sequoia One and understand that, despite Sequoia One's decision to terminate services with the Debtors, that payroll will be paid by Sequoia One in the ordinary course.  No employees are owed Unpaid Compensation in an amount exceeding the $13,650 priority cap imposed by section 507(a)(4) of the Bankruptcy Code as of the Petition Date.

17.     The Debtors request authority, in the exercise of their discretion, to pay pre-petition payroll obligations and to continue meeting their payroll obligations in the ordinary course of business.

18.     Additionally, the Debtors terminated the employment of nine individuals in the week prior to the Petition Date because their services would not be needed during the Debtors' chapter 11 cases.  In connection with this reduction in staff, the Debtors paid the terminated employees two weeks of severance pay, or approximately $50,000 in the aggregate, on the termination date.  No former employees were paid severance in an amount exceeding the $13,650 priority cap imposed by section 507(a)(4) of the Bankruptcy Code as of the Petition Date.

19.     Because the severance pay was paid on November 6, 2020, the Debtors request that the Court authorize all applicable financial institutions to receive, process, honor, and pay such payments.

20.     In addition, the Debtors request authority, in the exercise of their discretion, to continue offering two weeks of severance pay to any employee terminated during these chapter 11 cases.

### iii.     Payroll Taxes and Other Gross Pay Deductions

21.     Federal and state law require the Debtors to withhold amounts related to federal, state, and local income, Social Security, and Medicare taxes for remittance to the appropriate federal, state, or local taxing authorities (collectively, the "Withheld Amounts").  Sequoia One previously collected the Withheld Amounts from the Debtors' gross payroll, and Zenefits will do so in the future.  The Debtors must then match, from their own funds, the Withheld Amounts and must pay additional amounts for federal and state unemployment insurance based on a percentage of gross payroll (collectively the "Employer Payroll Taxes," together with the Withheld Amounts, the "Payroll Taxes").  The Debtors remit the Employer Payroll Taxes to their payroll administrator, which in turn remits the Payroll Taxes to the relevant government entities on the Debtors' behalf.  In aggregate, the Payroll Taxes total approximately $25,000 per month. As of the Petition Date, the Debtors estimate approximately $7,000 remains outstanding on account of prepetition Payroll Taxes.

22.     The Debtors, through their payroll administrator, also deduct certain amounts from each employee's gross payroll, including 401(k) contributions, garnishments, child support, and other pre- and after-tax deductions payable pursuant to certain of the employee benefit plans discussed below (collectively, the "Deductions").  A total of approximately $28,000 is deducted

from employee's paychecks per month on account of the Deductions, which is then remitted to the appropriate third-party recipients.

23.     As mentioned above, the Debtors have already remitted the funds for the Debtors' next payroll, as well as the Payroll Taxes and Deduction related to that payroll, to Sequoia One. Sequoia One may not have forwarded certain of the Deductions to the appropriate third-party recipients prior to the Petition Date.

24.     To the extent any of the Deductions or Payroll Taxes may not have been forwarded to the appropriate third-party recipients, the Debtors seek authority to forward prepetition Deductions and Payroll Taxes.  The Debtors seek further authority to continue forwarding Deductions and Payroll Taxes postpetition, through Zenefits, to the applicable third-party recipients in the ordinary course of business and consistent with past practice.

### iv.    Reimbursable Expenses

25.     In the ordinary course of business, the Debtors reimburse employees for reasonable and approved expenses incurred in connection with the performance of their assigned duties (the "Reimbursable Expenses").  The Reimbursable Expenses are largely on account of expenses related to (a) employee travel for reasonable business-related purposes, (b) supplies purchased by Employees, (c) cell phone, and (d) telecommuting.  Employees who pay Reimbursable Expenses with personal funds apply for reimbursement through Expensify, a third-party expense reporting application.  Once the Debtors determine the charges are for Reimbursable Expenses, it pays the Reimbursable Expenses.  The Debtors incur a monthly average of approximately $5,000 on account of Reimbursable Expenses.  As of the Petition Date, the Debtors estimate they owe approximately $0 on account of Reimbursable Expenses.

Nevertheless, there may be expenses submitted in the future of which the Debtors are currently unaware.

26.     In addition, the Debtors maintain three credit cards (the "Credit Cards") for business expenses.  One of the credit cards is issued by the American Express Company and is used to pay for general business-related expenses that need to be paid in the ordinary course of an employee's duties.  The other two credit cards are issued by Metropolitan Commercial Bank and are used by the Debtors' IT and Administrative groups to pay for related expenses.  If a Credit Card is used for non-business expenses, then the user may be held personally liable for the obligations.  As of the Petition Date, the Debtors estimate they owe approximately $40,000 on account of the Credit Cards.

27.     It is essential to the continued operation of the Debtors' businesses that they continue reimbursing employees for Reimbursable Expenses.  Accordingly, the Debtors seeks authority to pay any outstanding Reimbursable Expenses, or amounts due on the Credit Cards, in the ordinary course of business and consistent with past practice, and to continue to pay the Reimbursable Expenses and maintain and pay amounts due on the Credit Cards in the ordinary course of business on a postpetition basis.

**B.      Employee Benefit Programs**

28.     In the ordinary course of business the Debtors, maintain various employment benefit plans, programs, and policies, including the Health Care Plans, Life and Disability Plans, the HSA Program and the FSA Program, PTO and Leave, Other Employee Programs, a 401(k) Savings Plan, and the Token Loan Program (each as defined below, and collectively, the "Employee Benefit Programs").

29.     The Debtors seek authority, in the exercise of their discretion, to honor pre-petition Employee Benefit Programs obligations and continue the Employment Benefits Programs in the ordinary course of business, subject to the Debtors' rights to modify or discontinue any Employee Benefit Program to reduce applicable costs or the benefits provided thereunder.

### i.    Health Care Plans

30.     Prepetition, Sequoia One, on behalf of the Debtors, offered the Debtors' employees several medical plans (the "Medical Plans"), as well as a dental plan (the "Dental Plan"), a vision plan (the "Vision Plan", and collectively with the Medical Plans and Dental Plan, the "Health Care Plans").  The Health Care Plans were available to employees immediately upon their employment.  The Health Care Plans were administered by Sequoia One.  The Debtors remitted approximately $50,000 each month to Sequoia One on account of the Health Care Plans.

31.     Sequoia One offered the Debtors' employees several types of Medical Plans. Employees were able to select either a Health Management Organization ("HMO") Medical Plan insured by either Kaiser Permanente or Anthem, Inc. ("Anthem") or a Preferred Provider Organization ("PPO") Medical Plan insured by Anthem.  The Debtors paid the entire cost of employees' HMO Medical Plans.  The Debtors and the employee shared the costs of an employee's PPO plan.  All of the Debtors' employees were enrolled in Medical Plans.

32.     Sequoia One also offered the Debtors' employees a PPO Dental Plan through the Guardian Life Insurance Company of America ("Guardian"), and a PPO Vision plan through VSP Vision Care.  The costs of the Dental Plan and Vision Plan were shared between the Debtors and participating employees.

33.     In connection with Sequoia One's termination of its relationship with the Debtors, the Debtors no longer directly offer their employees the Health Care Plan.  However, under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), the Debtors' Health Care Plans remain available to their employees and recently terminated employees.  The Debtors propose to compensate their current employees, but not its former employees, for any costs incurred by such employees in maintaining the Health Care Plans under COBRA.

34.     As of the Petition Date, no employees participate in COBRA, although the Debtors anticipate many of its current and former employees will elect to do so in order to maintain their benefits.

### ii.     Life and Disability Plans

35.     The Debtors provide employees with life and short and long term disability insurance at no cost.  Life insurance coverage is based upon the employee's earnings (his or her annual salary, subject to a maximum of $250,000).  Disability insurance coverage is based upon the employee's earnings (60% of his or her salary, subject to a maximum benefit of $2,500 per week under the short term disability plan and $12,000 per month under the long term disability plan).  The maximum benefit period is 12 weeks under the short term disability plan, and until normal retirement age under the long term disability plan.

36.     The Debtors' Life and Disability Plans are available to employees immediately upon their employment.  The Life and Disability Plans are administered through Guardian, and the Debtors remits approximately $1,500 per month to Guardian in premiums on account of the Life and Disability Plans.

### iii.    HSA and FSA Programs

37.    The Debtors, also offer employees the opportunity to contribute a portion of their pre-tax compensation to pay for certain health care expenses or dependent care expenses through a health savings account (an "HSA") administered by Anthem or a flexible spending account (an "FSA") administered by Navia Benefit Solutions.  The Debtors will make monthly contributions towards participating employees' HSAs through Zenefits.  Employees' HSAs and FSAs are otherwise funded by designated withholdings from their pre-tax earnings.

38.    HSAs and FSAs are available to employees immediately upon employment. Approximately $1,200 per month is withheld from employees' paychecks in connection with employees' HSAs and FSAs.

### iv.    PTO & Leave

39.    The Debtors provide paid time off ("PTO") to full-time salaried employees as well as certain other employees in the form of vacation days, absence due to illness or injury, personal days, holidays, religious observance, and other permitted activities.  PTO is available to all employees for up to two-weeks at a time for PTO requests made in accordance with the Debtors' PTO guidelines and up to four (4) days at a time if the PTO was unplanned.  Because PTO is available to all of the Debtors' employees and is not limited in amount, PTO does not accrue.

40.    In addition to PTO, the Debtors provide certain other forms of paid and unpaid leave ("Leave"), including:

- twelve (12) paid holidays throughout the year, during which employees are not required to work;

- for employees who have been with the Debtors for more than 120 days, up to eight (8) weeks of paid leave within one year of the birth or placement of a child; and

- other paid and unpaid leaves of absence required by either federal or California law, including paid sick leave, paid voting leave, and unpaid leaves of absence for the performing of civic duties, family medical leaves, and military leaves.

41.     The Debtors' PTO and Leave policies do not involve incremental cash outlays beyond standard payroll obligations.

42.     The Debtors believe that the continuation of the PTO and Leave policies in accordance with prior practice is essential to maintaining employee morale during these chapter 11 cases, and, in many instances, are required under federal and California law.  Additionally, the Debtors' PTO and Leave policies do not involve any incremental cash outlays and thus do not create any material cash flow requirements beyond standard payroll obligations. Accordingly, the Debtors seek authority to continue their PTO and Leave programs in the ordinary course of business and consistent with past practice.

### v.     Other Employee Programs

43.     The Debtors have historically offered certain other practices, programs, and policies that provide benefits to their employees, including, but not limited to: (i) workers' compensation insurance, (ii) commuter amounts, and (iii) travel assistance (collectively, "Other Employee Programs").  The Debtors expect to continue these programs going forward, and incur approximately $1,500 per month on account of the Other Employee Programs.

### vi.     401(k) Savings Plan

44.     The Debtors offer employees a 401(k) savings retirement plan managed by the Massachusetts Mutual Life Insurance Company, under which employees may contribute a portion of their salary to a 401(k) account through payroll deductions (the "401(k) Savings Plan").  The Debtors' employees are automatically enrolled into the 401(k) Savings Plan upon

their hire, unless they waive participation.  The Debtors do not match their employees 401(k)

Savings Plan.

### vii.    The Token Loan Program

45.     The Debtors also offer a token loan incentive program (the "Token Loan

Program") to their employees.  Under the Token Loan Program, the Debtors lend cryptocurrency

to participating employees each quarter, repayable to the Debtors in a lump sum at the end of the

loan term with a nominal interest rate.  The amount of the loan is denominated in U.S. dollars

based on the value of cryptocurrency at the time of loan, and interest on the loan accrues in U.S.

dollars.  The loan can be repaid in either U.S. dollars or the amount of cryptocurrency originally

loaned.  Thus, when the loaned cryptocurrency appreciates in value against the dollar, employees

will sell the cryptocurrency and repay the loan in U.S. dollars, and when the cryptocurrency

depreciates they can return it to the Debtors to satisfy the loan.

46.     The Token Loan Program incentivizes loyalty from employees who are more

likely to remain with the Debtors because of the opportunity to hold cryptocurrencies and

enhance their income with relatively little risk.  The Token Loan Program further encourages

employees to participate in the cryptocurrency culture, which helps them better understand the

Debtors' business.

47.     As of the Petition Date, approximately 10 employees participate in the Token

Loan Program.  Collectively, the original issue value of loans under the Token Loan Program is

approximately $475,000.

48.     The Debtors previously offered a cash loan program to employees, which was

discontinued.  The Debtors are owed $315,000 plus interest under the cash loan program,

$250,000 of which has matured.

### D.    Supplemental Workforce Obligations

49.    The Debtors rely upon consultants and advisors to supplement their regular staff (the "Supplemental Workforce").  There is currently one member of the Debtors' Supplemental Workforce, and the Debtors' currently pay the Supplemental Workforce approximately $4,000 per month.  As of the Petition Date, the Debtors estimate they are current on all amounts owed to the Supplemental Workforce.

50.    The Debtors' request authority to pay, in their sole discretion, any unpaid amounts owed to the Supplemental Workforce in the ordinary course of business and consistent with past practice, and to continue to retain and pay the Supplemental Workforce in the ordinary course of business.

### Basis for Relief

### A.    Payment of Employee Obligations Is Warranted Under Section 363(b)(1) of the Bankruptcy Code and Doctrine of Necessity

51.    Section 363(b) of the Bankruptcy Code permits the Court to grant the relief requested in this motion.  It provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[3]

52.    Under section 363, a court may authorize a debtor to pay certain prepetition claims if a sound business purpose exists for doing so.[4]  The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."[5]  Moreover, if "the debtor

---

[3]    11 U.S.C. § 363(b)(1).

[4]    *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999).

[5]    *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985).

articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."[6]

53.     In addition, the Court has the authority to authorize the relief requested in this motion pursuant to its equitable powers under section 105(a) because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a).  Section 105 empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[7]  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of the debtor's creditors and other parties in interest.[8]

54.     The Court may also authorize the payment of prepetition claims in appropriate circumstances under section 105(a) and the doctrine of necessity when such payment is essential to the continued operation of a debtor's business.[9]

---

[6]     *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.,* 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule is a near-Herculean task.").

[7]     11 U.S.C. § 105.

[8]     *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)).  *See also In re Cybergenics Corp.*, 226 F.3d 237, 243 (3d Cir. 2000) ("A paramount duty of a trustee or debtor in possession in a bankruptcy case is to act on behalf of the bankruptcy estate, that is, for the benefit of the creditors."); *Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

[9]     *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that the bankruptcy court has "power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re CoServ, L.L.C.*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use § 105(a) of the Bankruptcy Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate.").

55.     This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.[10]  The United States Supreme Court has also recognized courts may authorize payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.[11]

56.     The relief requested in this motion is a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors, and is justified under sections 105(a) and 363(b).  Authorizing the Debtors to pay prepetition salaries, employee benefits and similar items will benefit the Debtors and their creditors by allowing the Debtors' business operations to continue without interruption.  Indeed, without the relief requested in this motion, the Debtors' employees may seek alternative opportunities, perhaps with the Debtors' competitors.  The loss of valuable employees, who are the lifeblood of the Debtors' operations, would deplete the Debtors' workforce, thereby hindering the Debtors' ability to meet their customer obligations and, likely, diminishing stakeholder confidence in the Debtors' ability to successfully carry out their chapter 11 strategy.  Additionally, employee attrition would cause the Debtors to incur additional expenses to find appropriate and experienced replacements, severely disrupting the Debtors' operations at a critical juncture.

---

[10]     *See In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if essential to the debtor's continued operation); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing "existence of a judicial power to authorize trustees . . . to pay claims . . . [for] goods or services indispensably necessary" to debtors' continued operation).

[11]     *See, e.g., Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of the continuance of [crucial] business relations"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), *cert. denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages,  salaries, expenses, and benefits).

57.     Further, failure to satisfy certain prepetition obligations will jeopardize the Debtors' remaining employees' morale and loyalty at a time when their support is critical to the Debtors' business.  The majority of the Debtors' employees rely exclusively on their compensation, benefits, and reimbursement of expenses to satisfy their daily living expenses. Thus, the Debtors' employees will be exposed to significant financial difficulties and other distractions if the Debtors are not permitted to honor their obligations for unpaid compensation, benefits and reimbursable expenses.  Furthermore, if the Court does not authorize the Debtors to honor their obligations under the Health Care Plans, their employees will not receive health coverage and, thus, may become obligated to pay certain health care claims in cases where Cred not paid the respective insurance providers.  The loss of health care coverage will result in considerable anxiety for the Debtors' employees at a time when the Debtors needs its employees to perform their jobs at peak efficiency.

58.     Lastly, the relief requested in this motion is unlikely to prejudice other parties in interest, because many of the obligations are entitled to priority treatment under section 507(a)(4) and (a)(5).

**2.     Payment of Certain Employee Obligations Is Required by Law**

59.     The Debtors seek authority to pay Deductions and Payroll Taxes to the appropriate entities.  These amounts principally represent employee earnings that governments, employees and judicial authorities have designated for deduction from employees' paychecks. Indeed, certain Deductions, including contributions to the Employee Benefit Programs and child support and alimony payments, are not property of the Debtors' estates because they have been withheld from employees' paychecks on another party's behalf.[12]  Further, federal and state laws

---

[12]     *See* 11 U.S.C.  § 541(b).

require the Debtors and their officers to make certain tax payments that have been withheld from its employees' paychecks.[13]

51.     Because the Deductions and Payroll Taxes are not property of the Debtors' estates, the Debtors request that the Court authorize it to transmit the Payroll Taxes to the proper parties in the ordinary course of business.

## Reservation of Rights

52.     Nothing contained in this motion is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (e) an admission as to the validity, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver of any claims or causes of action which may exist against any entity; or (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

## Debtors Have Satisfied Bankruptcy Rule 6003(b)

53.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one

---

[13]    *See, e.g.,* 26 U.S.C. § 6672 and 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *DuCharmes & Co., Inc. v. State of Mich* (*In re DuCharmes & Co.*), 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).

(21) days after filing of the petition.  As described above and in the First Day Declaration, the

Debtors' employees and its Supplemental Workforce are vital to its operations.  Failure to satisfy

obligations with respect to these persons in the ordinary course of business during the first

twenty-one (21) days of these chapter 11 cases will jeopardize their loyalty and trust, which may

cause such individuals to leave the Debtors' employ or service at a time when they are needed

most.  The disruption to the Debtors' business and operations by employee unrest would be

severe and potentially irreparable.  Moreover, the Debtors' employees and Supplemental

Workforce largely rely on the Debtors' compensation, benefits, and reimbursement of expenses

to pay their living expenses and the effect could be financially ruinous if the Debtors cannot

immediately pay them in the ordinary course of business.  Accordingly, the Debtors submit that

the relief requested in this motion is necessary to avoid immediate and irreparable harm, and,

therefore, Bankruptcy Rule 6003(b) is satisfied.

### Bankruptcy Rule 6004(a) and (h)

54.    To implement the foregoing successfully, the Debtors request that the Court find

that notice of this motion is adequate pursuant to Bankruptcy Rule 6004(a) under the

circumstances, and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease

of property pursuant to Bankruptcy Rule 6004(h).  As explained above and in the First Day

Declaration, the relief requested in this motion is necessary to avoid immediate and irreparable

harm to the Debtors.  Accordingly, ample cause exists to justify finding that the notice

requirements pursuant to Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of

the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice

requirements and such stay apply.

## Processing of Electronic Fund Transfers Should Be Authorized

55.     The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of its access to unencumbered cash on hand and expected cash flows from ongoing business operations.  Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify electronic payment requests relating to the payment of prepetition Employee Obligations, as applicable. Accordingly, the Debtors believe that electronic transfer requests that are not related to authorized payments will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all electronic payment transfer requests in respect of the relief requested in this motion.

## Notice

56.     Notice of this motion has been given to: (i) the U.S. Trustee; (ii) the Internal Revenue Service; (iii) the United States Attorney for the District of Delaware; and (iv) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors.  As this motion is seeking first-day relief, notice of this motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m)(iii).  In light of the nature of the relief requested in this motion, the Debtors respectfully submit that no further notice of this motion is required.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Interim and

Final Orders, substantially in the form attached hereto: (i) granting the relief requested in this

motion and (ii) granting such other and further relief as the Court may deem proper.

Dated: November 8, 2020
      Wilmington, Delaware

*/s/ Scott D. Cousins*
Scott D. Cousins (No. 3079)
**COUSINS LAW LLC**
Brandywine Plaza West
1521 Concord Pike, Suite 301
Wilmington, Delaware 19803
Telephone:   (302) 824-7081
Facsimile: :   (302) 295-0331
Email:     scott.cousins@cousins-law.com

- and -

James T. Grogan (admission *pro hac vice* pending)
Mack Wilson (admission *pro hac vice* pending)
**PAUL HASTINGS LLP**
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
Telephone:   (713) 860-7300
Facsimile:   (713) 353-3100
Email:     jamesgrogan@paulhastings.com
          mackwilson@paulhastings.com

- and -

G. Alexander Bongartz (admission *pro hac vice* pending)
Derek Cash (admission *pro hac vice* pending)
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone:   (212) 318-6000
Facsimile:   (212) 319-4090
Email:     alexbongartz@paulhastings.com
          derekcash@paulhastings.com

*Proposed Co-Counsel to the Debtors*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (___) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |

**INTERIM ORDER (I) AUTHORIZING
DEBTORS TO (A) PAY EMPLOYEE OBLIGATIONS AND (B) CONTINUE
EMPLOYEE BENEFIT PROGRAMS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the debtors and debtors in possession (the "Debtors")

for entry of an order (this "Interim Order"), pursuant to sections 105(a), 363, 364, and 507 of

title 11 of the United States Code (the "Bankruptcy Code"), authorizing, but not directing, the

Debtors to pay and honor certain prepetition claims and obligations, continue programs, and

maintain funding, in the exercise of their discretion, relating to, among other things: (i)

Employee Compensation Obligations; (ii) Employee Benefit Programs; and (iii) Supplemental

Workforce Obligations, all as more fully set forth in the Motion; and this Court having

jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final

order consistent with Article III of the United States Constitution; and this Court having found

that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§

1408 and 1409; and this Court having found that the relief requested in the Motion is in the best

interests of the Debtors' estates, their creditors, and other parties in interest; and this Court

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566).  The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing to consider the relief requested in the Motion on an interim basis (the "<u>Hearing</u>"); and upon the First Day Declaration, filed contemporaneously with the Motion, and the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERD THAT:**

1. The Motion is granted on an interim basis to the extent set forth herein.

2. The Debtors are authorized, but not directed, to pay and honor all prepetition obligations associated with the Employee Obligations and to continue programs and maintain funding in the ordinary course of business, to the extent requested in the Motion, on account of: (i) Employee Compensation Obligations; (ii) Employee Benefit Programs; and (iii) Supplemental Workforce Obligations; *provided*, that the Debtors are authorized, but not directed, to pay or honor only amounts or obligations that are or become due and payable between the Petition Date and the date that a final order on the Motion is entered, unless otherwise ordered by the Court; *provided*, *further*, that payments for Unpaid Compensation shall not exceed $13,650 for each individual.

3.     The Debtors are further authorized, but not directed, to modify or discontinue any Employee Benefit Program to reduce or eliminate program expenses or the benefits provided thereunder, at any time, in their sole discretion, subject to applicable requirements.

4.     The Debtors are authorized, but not directed, to pay all processing and administrative fees associated with all costs and expenses incidental to payment of Employee Obligations and Employee Benefits, including, but not limited to, licensing fees for Zenefits.

5.     Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the final hearing to consider the relief requested in the Motion (the "Final Hearing").

6.     Nothing contained in the Motion or this Interim Order, nor any action taken pursuant to the authority granted by this Interim Order, shall constitute or be construed as (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (e) an admission as to the validity, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver of any claims or causes of action which may exist against any entity; or (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

7.     Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

8.     The banks and financial institutions on which electronic payment requests were made in payment of the prepetition obligations approved herein are authorized to receive, process,

3

honor, and pay all such electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

9.      The Debtors are authorized to effect postpetition fund transfer requests, in replacement of any fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the Employee Compensation Obligations and Employee Benefit Programs

10.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

11.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

12.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

13.     The Final Hearing shall be held on _____, **2020**, at _____ (ET) and any objections or responses to the Motion shall be in writing, filed with the Court, and served in accordance with the Local Rules.

14.     This Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; *provided* that the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

15.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order.

16.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (___) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors.[1] | ) | |

**FINAL ORDER (I) AUTHORIZING**
**DEBTORS TO (A) PAY EMPLOYEE OBLIGATIONS AND (B) CONTINUE**
**EMPLOYEE BENEFIT PROGRAMS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the debtors and debtors in possession (the "Debtors")

for entry of an order (this "Final Order"), pursuant to sections 105(a), 363, 364, and 507 of title

11 of the United States Code (the "Bankruptcy Code"), authorizing, but not directing, the

Debtors to pay and honor certain prepetition claims and obligations, continue programs, and

maintain funding, in the exercise of their discretion, relating to, among other things: (i)

Employee Compensation Obligations (ii) Employee Benefit Programs; and (iii) Supplemental

Workforce Obligations (each as defined herein, and collectively, the "Employee Obligations"),

all as more fully set forth in the Motion; and this Court having jurisdiction over this matter

pursuant to 28 U.S.C. § 1334 and the Amended Standing Order of Reference, dated February 29,

2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. §

157(b)(2), and that this Court may enter a final order consistent with Article III of the United

States Constitution; and this Court having found that venue of this proceeding and the Motion in

this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566).  The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and the Court having reviewed the Motion; and the Court having entered an order granted the relief requested in the Motion on an interim basis on November

_____, 2020 [D.I. No. \_\_\_\_\_]; and the Court having held a hearing to consider the relief requested in the Motion on a final basis, if necessary (the "Hearing"); and upon the First Day Declaration, filed contemporaneously with the Motion, and the record of the Hearing, if necessary; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERD THAT:**

1.      The Motion is granted on a final basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, to pay and honor all prepetition obligations associated with the Employee Obligations and to continue programs and maintain funding in the ordinary course of business, to the extent requested in the Motion, on account of: (i) Employee Compensation Obligations (ii) Employee Benefit Programs; and (iii) Supplemental Workforce Obligations.

3.      The Debtors are further authorized, but not directed, to modify or discontinue any Employee Benefit Program to reduce or eliminate program expenses or the benefits provided thereunder, at any time, in their sole discretion, subject to applicable requirements.

2

4.      The Debtors are authorized, but not directed, to pay all processing and administrative fees associated with all costs and expenses incidental to payment of Employee Obligations and Employee Benefits, including, but not limited to, licensing fees for Zenefits..

5.      Nothing contained in the Motion or this Final Order, nor any action taken pursuant to the authority granted by this Final Order, shall constitute or be construed as (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (e) an admission as to the validity, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver of any claims or causes of action which may exist against any entity; or (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

6.      Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

7.      The banks and financial institutions on which electronic payment requests were made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular electronic payment request as approved by this Final Order without any duty of further inquiry and without liability for following the Debtors' instructions.

8.      The Debtors are authorized to effect postpetition fund transfer requests, in replacement of any fund transfer requests that are dishonored as a consequence of these chapter

3

11 cases with respect to prepetition amounts owed in connection with the Employee Compensation Obligations and Employee Benefit Programs.

9.      Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

10.      Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

11.      The Debtors are authorized to take all action necessary to effectuate the relief granted in this Final Order.

12.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Final Order.