# <u>EXHIBIT B</u>

## Engagement Letter



**November 14, 2020**

Mr. Dan Schatt
Co-Founder, CEO
Cred Inc.
Cred (US) LLC
Cred Capital, Inc.
Cred Merchant Solutions LLC
Cred (Puerto Rico) LLC
2121 South El Camino Real, Suite 500
San Mateo, California 94401

Re: Amended Engagement of Financial Advisor

Dear Mr. Schatt:

Thank you for allowing us the opportunity to work with you.

This Amended Engagement Letter (the **"Amended Engagement Letter"**), together with the Standard Terms attached hereto and incorporated herein as Exhibit "A", confirm and set forth the scope, terms and arrangements between (i) Cred Inc. and its subsidiaries and affiliates, including Cred (US) LLC, Cred Capital Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC (collectively, the "**Company**" or "**Client**") and (ii) MACCO Restructuring Group, LLC, A Delaware Limited Liability Company ("**MACCO**") acting as Client's financial advisor under the Agreement involving the scope of services as more particularly described below in Section I (overall, the "**Engagement**"). *Specifically, this **Amended Engagement Letter** removes only the Success Fee provisions and compensation related to any restructuring sale or reorganization referenced in the MACCO's original Engagement Letter accepted and executed on November 4, 2020 (the **"Original Engagement Letter"**).* The parties to this **Amended Engagement Letter** and the **Original Engagement Letter** understand that the services provided, and the subject matter of this Amended Engagement Letter may change and include additional services as may be mutually agreed upon.

I.    Scope of Engagement

Client shall, by executing this letter, engage MACCO for the purposes of providing business advice and consultation (the "**Services**"), including:

1) Evaluate near-term business plan/financial forecast;
   2) Assist counsel with the preparation of "first day" motions and bankruptcy petitions;
3) Facilitate organization of financial data, including by segment and location, as applicable;
4) Prepare a weekly 13-week cash flow forecast and related financial and business models;
5) Identify and implement both short-term and long-term liquidity generating initiatives;

6)  Assist in development of cost containment procedures;
7)  Evaluate and make recommendations and decisions in connection with strategic alternatives to maximize the value of the Client;
8)  Review assets to determine its salability and to provide monetization alternatives;
9)  Leverage analysis in order to develop comprehensive turnaround plan, making adequate prioritizations to ensure executability;
10) Prepare marketing materials, manage data rooms and discussions with interested parties for selling some or all of the Company;
11) Facilitate the confirmation of any plan of reorganization for some or all of the Company;
12) Provide business and debt restructuring advice, including business strategy and other key elements of the business, including preparation of the Statement of Financial Affairs and Schedules, Monthly Operating Reports and other similar Chapter 11 reporting requirements;
13) Evaluate and/or assist in developing a liquidation analysis;
14) Provide expert witness testimony on Chapter 11 case related issues;
15) Provide advisory services in litigation that may occur during a Chapter 11 case;
16) Assist Client in the analysis and tracking of creditor claims by type, entity and priority;
17) Provide advice on restructuring alternatives, including but not limited to, any asset sales or a plan of reorganization; and
18) Render such other restructuring, general business consulting or other assistance as may be requested and mutually agreed.

MACCO will also work with Client toward the implementation of selected strategies which are most appropriate to achieve the desired objectives.

II.    <u>Compensation</u>

For the services described in this Agreement, MACCO professionals shall be compensated at the following (collectively the "**<u>Fees</u>**"):

a.  Hourly Rates in accordance with time expended:

| | |
|---|---|
| Drew McManigle, CEO | $600 per hour |
| Patrick Stewart, MD | $550 per hour |
| Pablo Bonjour, MD | $525 per hour |
| Kathy Mayle, Sr. Dir. | $465 per hour |
| Frank Cottrell, Dir. | $465 per hour |
| Micah Miller, Dir. | $450 per hour |
| Arpna Chheda, Sr. FA | $425 per hour |
| Travel and Transit Time: | When applicable, fifty percent (50%) of Hourly Rates |

In addition to the Fees and the Success Fee, the Client shall be responsible for MACCO's Reimbursable Expenses.

MACCO acknowledges that in the event the Client seeks relief under Title 11 of the United States Code (the "**Bankruptcy Code**"), the payment of MACCO's Fees and Expenses shall be subject to Bankruptcy Court approval. The provisions of this paragraph shall not limit or restrict the indemnification and contribution provisions set forth in this Agreement.

    a.   Retainer

In order to commence the Engagement, MACCO requires a retainer payment in the amount of $150,000 for the representation of Client (the "**Retainer**"). The Retainer will be held and applied to MACCO's final Fees and Reimbursable Expenses at the conclusion of the Engagement. However, MACCO reserves the right to apply the Retainer, at any time, to any outstanding Fees and Expenses owed to MACCO by the Client.  MACCO must receive the Retainer payment as well as the signed copy of this letter before the firm will take any action or be deemed to represent Client.

    b.   Invoicing

MACCO's invoicing policies are more particularly described in the attached Exhibit "A", however each payment to MACCO shall be made via wire transfer to the following account:

**Name:** MACCO Restructuring Group, LLC
**Bank:** Capital One Bank (USA) N.A.
**Account Number:** 3027089224
**Routing/ABA:** 111901014

    b.   Amendment and Modification

This letter may not be amended or modified except in a writing signed by the parties hereto and shall be governed by and construed in accordance with the State laws of Delaware.

    c.   Headings

The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement or the scope of the Engagement.

    d.   Authorization

The Client represents that this Agreement and MACCO's Engagement have been duly approved and that the individual that signs this Agreement on behalf of the Client has been duly authorized to do so, including obtaining any necessary corporate consent.

If the terms and conditions set forth above are agreed, please indicate acceptance and approval by signing this letter in the space provided below.

We look forward to working with you on this important matter.

Sincerely,

Drew McManigle
Founder and Managing Director
**MACCO Restructuring Group, LLC**

I have read the Agreement and agree to its terms and provisions, CONFIRMED AND AGREED TO ON THIS __14th__ DAY OF NOVEMBER 2020:

ON BEHALF OF CRED LLC and COMPANY

By: *Dan Schatt*

Mr. Mr. Dan Schatt
Co-Founder, CEO



**Exhibit "A"**

**Standard Terms & Conditions**

The terms and conditions set forth below (the "**Standard Terms**") are incorporated by reference into the Amended Engagement Letter by and between MACCO as executed and made effective on or about November 4, 2020 by and between the Company or Client in the original Engagement Letter (the "**Amended Engagement Letter**") and together with the Standard Terms, the "**Agreement**"). Capitalized terms used and not otherwise defined herein have the meanings as set forth in the Original and Amended Engagement Letters.

EFFECTIVE DATE, FEES AND EXPENSES

1.  Effective Date.  As used in the Agreement, the term "**Effective Date**" shall mean November 4, 2020, the date upon which MACCO received: (a) the Original Engagement Letter signed by a person at the Company with the authority to enter into the Agreement and bind the Company, including, as applicable, confirmation that the necessary resolutions of the Company's board of directors or officers have been obtained authorizing the Company to appoint MACCO to provide a fiduciary to the Company, and obligating the Company to indemnify and hold such fiduciary harmless, AND (b) the Retainer, AND (c) documentation evidencing that either (i) the Company has obtained the D&O Policy (as defined below) naming the CRO and applicable MACCO Personnel as additional insureds or (ii) the Company has added the CRO and applicable MACCO Personnel to its existing D&O Policy; whichever is acceptable to MACCO under the Engagement Letter.

2.  Invoices.  MACCO will provide an invoice for Services to Company on a (weekly) or monthly basis, but no less frequently than monthly (each, an "**Invoice**").  Each Invoice will provide sufficient details identifying the Services rendered and the Reimbursable Expenses incurred.

3.  Payment of Invoices.  Each Invoice shall be due and payable by wire transfer within three (3) business days of receipt.  If any Invoice is not paid in full when due, Client agrees that MACCO has the rights and options, in its discretion until all outstanding Invoices are paid in full: (i) to deduct any and all unpaid Invoice balances from the Retainer, (ii) to suspend or terminate Services and/or (iii) to withold delivery of Services, testimony, Deliverables (as defined herein), reports or data (written or oral); in which event Client agrees that MACCO will not be liable for any resulting losses, damages, claims or expenses in connection with or resulting from such suspension, withholding or termination of Services or any delay in completion of or performance of the Services or compliance with any deadlines or timelines related to the Services.

4.  Adjustment of Hourly Rates.  In the ordinary course of business, MACCO revises the hourly rates of MACCO Professionals as set forth in the Engagement Letter (the "**Hourly Rates**") to reflect changes in responsibilities, increased experience, geographical differentials and increased costs of providing the Services (collectively, the "**Adjusted Rates**").  Company agrees to pay the Adjusted Rates as and when implemented.

5.  Reimbursable Expenses.  Client agrees to timely reimburse MACCO for any and all reasonable, actual out-of-pocket expenses incurred in connection with or related to the Services, including but not limited to airfare, hotel, car rental, photocopying charges, telephone calls, postage, shipping, meals, report preparation, delivery services, and other costs (collectively, the "**Reimbursable Expenses**").

6.  Taxes.  Company shall be responsible for any taxes imposed on, or levied in connection with, the Services or the Engagement, other than taxes imposed on MACCO in regard to employment withholding for MACCO Personnel, or taxes imposed on MACCO income or property.

INFORMATION, ASSISTANCE AND DELIVERABLES

7.  Information, Access to Information.  The Company shall use its best efforts to: (i) provide MACCO Personnel with access to Company management and other representatives of the Company; and (ii) furnish all data, material, and other information concerning the business, assets, liabities, operations, cash flows, properties, financial condition and prospects of the Company that MACCO Personnel request in connection with and in furtherance of their performance of the Services. MACCO Personnel may rely, without further independent verification, on the accuracy and completeness of all publicly available information and all information that is furnished to MACCO and MACCO Personnel by or on behalf of the Company and otherwise reviewed by MACCO Personnel in connection with the Services. Company acknowledges and agrees that MACCO and MACCO Personnel shall not be responsible for the accurary or completeness of such information and shall not be responsible to the Company or any Third Party (as defined below) for any inaccuracies or omissions therein. MACCO is under no obligation to update data submitted to MACCO or to review any other areas of the Company's business or operations unless specifically set forth in the Engagement Letter or as mutually agreed by and between the Company and MACCO in writing.  The source of such information, whether the Company's  management or a Third Party, as the case may be, shall be responsible for any and all financial information provided to MACCO pursuant to this Agreement.  Furthermore, unless specifically retained to do so, MACCO will not independently examine, compile or verify any financial information provided to MACCO by the Company and/or Company's management, as the case may be.  The Company shall use reasonable skill, care and attention to ensure that all information and documentation we may reasonably require is provided to us on a timely basis and is accurate and complete and relevant for the purpose for which it is required.  The Company shall also notify us promptly if it subsequently learns that the information or documentation provide is outdated, incorrect, incomplete or in accurate or otherwise should not be relied upon; and, in addition, the Company may not rely upon any Deliverable that contains outdated, incorrect, incomplete or inaccurate information which the Company knows, reasonably should know or has reason to believe is outdated, incorrect, incomplete or inaccurate.

8.  Cooperation and Responsiblities.  The Company shall cooperate with MACCO in the performance of the Services.  The Company shall be responsible for, among other things (a) the performance of its personnel and agents, (b) the accuracy and completeness of all data and

information provided to MACCO for purposes of the performance of the Services, (c) designating a competent, responsible person to facilitate the Services, (d) evaluating the adequacy and results of the Services, (e) accepting responsibility for the results of the Services, and (f) establishing and maintaining internal controls, including monitoring ongoing activities. MACCO's performance is dependent upon the timely and effective satisfaction of Company's responsibilities hereunder and timely decisions and approvals of Company in connection with the Services.

9.   Forward Looking Statements.  The Company acknowledges and agrees that the performance of the Services may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Company's operations, and that any such projections or other forward-looking statements prepared by MACCO may differ materially and/or adversely from such actual results.   Moreover, the Company acknowledges and agrees that MACCO will be relying upon information provided and/or representations made by the Company in the preparation of any projections and other forward-looking statements.

10. Deliverables.   The tangible items specified as deliverables or work product in the Engagement Letter (the "**Deliverables**") are complete only when presented in their entirety and only for the purpose stated therein.  Furthermore, (i) neither the Services nor any Deliverables, in whole or in part, shall constitute a fairness or solvency opinion; (ii) MACCO will not provide any legal advice or address any questions of law; and (iii) the performance of the Services does not constitute an audit conducted in accordance with generally accepted auditing standards, an examination of internal controls, or other attestation or review services in accordance with standards established by the American Institute of Certified Public Accountants ("**AICPA**"), the Public Company Accounting Oversight Board (the "**PCAOB**"), or other state or federal professional or regulatory body. Upon full payment to MACCO hereunder, and subject to the terms and conditions contained herein, the tangible items specified in the Deliverables shall be permanently transferred to the Company.

LIMITATIONS ON SERVICES

11. Use and Purpose of Advice and Deliverables.  Any advice given, communication (oral or written), report or other Deliverable issued by MACCO is provided solely for the use and benefit of Company, and only in connection with the Services.  Unless required by law or with the prior written consent of MACCO, Company shall not share or disclose any advice given, communication, report or other Deliverable, or reference the Services, to any person or entity not party to this Agreement (a "**Third Party**").  Neither the Services nor any Deliverables are intended for the express or implied benefit of any Third Party.  Unless otherwise agreed to in writing by MACCO, no Third Party is entitled to rely in any manner or for any purpose on the Services or any Deliverables.  Regardless of whether consent has been provided by MACCO or disclosure is mandated as a matter of law or disclosure is made in violation of the Standard Terms, under no circumstances shall MACCO be responsible to any Third Party to whom any such advice, communication, report or Deliverable is disclosed or otherwise made available. The Services and the Engagement do not create privity between MACCO and any Third Party.

12. <u>No Audit, Review or Compilation</u>. Company acknowledges and agrees that MACCO is not being retained to, and MACCO Personnel are not being requested to, perform an audit, review or compile, or prepare any other type of financial statement or report that is subject to the rules of AICPA, the SEC or any other state or federal professional or regulatory body.

13. <u>No Assurances</u>.  The Services will not result in the issuance of any written or oral communications by MACCO to the Company or any Third Party expressing any opinion, conclusion, or any other form of assurance with respect to, among other things, accounting policies, financial data, financial statements and related footnotes, appropriate application of generally accepted accounting principles, disclosure, operating or internal controls, compliance with the rules and regulations of the SEC or the PCAOB, compliance with the Sarbanes-Oxley Act of 2002 and related rules and regulations, or any similar matters, and our services cannot be relied upon to disclose errors or fraud should they exist. The Services will **not** include any predictions or provide any opinions, representations or other assurances concerning the outcomes of future events, including, without limitation, those that pertain to the operating results of any entity, the achievability of any business plan, the success of any investment, the recovery of any asset, or the ability to pay any debt.  Company expressly acknowledges that MACCO does not guarantee, warrant, or otherwise provide any assurances regarding the outcome of any of Company's strategies or objectives as set forth in this Agreement.

14. <u>No Assessment of Other Professionals' Work</u>.  The Services may include access to the work of other professional advisors or to financial statements or financial information or data reported on by such other professional advisors.  Company agrees that such access is not for the purpose of affirming or evaluating the procedures or professional standards used by such other professional advisors.  In this regard, we call your attention to the possibility that other professional advisors may perform procedures concerning the same information or data, and perhaps the same accounts and records, and reach different conclusions than MACCO for a variety of reasons, including the possibilities that additional or different information or data might be provided to them that was not provided to MACCO, or that they might perform different procedures than MACCO, or that professional judgments concerning, among others, complex, unusual, or poorly documented matters may differ.

15. <u>Strategic Decisions</u>.  Neither MACCO nor any MACCO Professional assume any responsibity for the Company's decision to pursue or not pursue any business strategy, or to effect or not to effect any transaction.  MACCO and MACCO Professionals shall only be responsible for implementation of the Services and only to the extent and in the manner directed and authorized by Company.

16. <u>Limitations on Warranties</u>.  This is a services engagement.  MACCO warrants that it shall perform the Services in good faith and with due professional care.  MACCO DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

17. <u>Limitations on Damages</u>.  MACCO, its subsidiaries and subcontractors, and their respective personnel shall not be liable to Company for any claims, liabilities, or expenses relating to this Engagement ("<u>Company Claims</u>"), except to the extent resulting from the gross negligence, bad

faith or intentional misconduct of MACCO, but in no event for an aggregate amount in excess of the Fees paid to MACCO pursuant to this Engagement. In no event shall MACCO, its subsidiaries or subcontractors, or their respective personnel be liable to Company for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute a direct Company Claim), or any consequential, special, indirect, incidental, punitive, or exemplary loss, damage, or expense relating to this Engagement. In circumstances where any limitation on damages or indemnification provision hereunder is unavailable, Client agrees that the aggregate liability of MACCO, its subsidiaries and subcontractors, and their respective personnel for any Company Claim shall not exceed an amount that is proportional to the relative fault that the conduct of MACCO its subsidiaries and subcontractors, and their respective personnel bears to all other conduct giving rise to such Company Claim.

18. <u>Expert Witness Services</u>. Unless specifically included in the description of Services contained in the Engagement Letter, it is understood that the engagement of MACCO and/or MACCO Professionals to provide services as an expert witness, with respect to written reports, testimony or otherwise, in connection with or related to any administrative or judicial proceeding, or perform any level of related investigation (collectively, "**<u>Expert Witness Services</u>**"), is excluded from the definition of Services in this Agreement.

19. <u>No Expert Advice on Securities Matters</u>. MACCO is not an expert under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, and will not consent to be a named expert in any Company filings with the SEC under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or otherwise.

20. <u>No Improper Purposes</u>. Under no circumstances will MACCO, its subsidiaries and subcontractors, and their respective personnel or any Professional abide by, assist or aid, directly or indirectly, any request by Company to violate or aid any violation of any state or federal statute, securities law, common law or regulatory rule or the terms and conditions of any loan agreement, security agreement or similar agreement to which the Company is a party. No person or entity on behalf of the Company shall take any action to impede MACCO, its subsidiaries and subcontractors, and their respective personnel from communicating with Company or appropriate authorities regarding a possible violation of a state or federal statute, securities law, common law or regulatory rule or the terms and conditions of any loan agreement, security agreement or similar agreement, including enforcing, or threatening to enforce, any confidentiality agreement, the confidentiality provisions of the Standard Terms or termination of this Agreement with respect to such communications if MACCO determines, in its discretion, that any such request exposes MACCO to any potential liability or harm to its professional reputation.

INDEMNIFICATION

21. <u>Indemnification, Generally</u>. As part of the consideration for MACCO's agreement to furnish the Services, Company agrees to indemnify and hold harmless MACCO, its subsidiaries, subcontractors, professionals and their respective personnel and MACCO and its owners, partners, members, managers, officers, directors, agents, employees, consultants, contractors, attorneys and agents and any successors or assigns thereof (individually or

collectively, "**MACCO Indemnified Parties**") to the fullest extent lawful from any and all claims, liabilities losses, damages, debts, judgments and/or expenses or actions (collectively, "**Indemnified Claims**") in respect thereof, incurred, related to or arising out of or in connection with the Services, the Engagement and/or this Agreement, including without limitation, any and all such MACCO Indemnified Parties' reasonable costs, fees and expenses incurred in connection with investigating, preparing, defending, or settling any Indemnified Claim arising from or relating to such liabilities, including all of such MACCO Indemnified Parties' reasonable legal fees and expenses; provided, however, that the Company shall not be responsible, subject to limitations herein, for any Indemnfied Claim to the extent, and only to the extent, that it is finally and judicially determined by a final, non-appealable Court Order, that such Indemnified Claim was caused primarily due to such MACCO's Indemnified Party's gross negligence, bad faith or intentional misconduct.    The indemnity and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Company may have to MACCO at common law or otherwise, (ii) shall survive the completion of the Engagement, as amended, modified or extended, and/or the termination of this Agreement, (iii) shall apply to any modification of this Agreement or revisions to the Services, and (iv) shall be binding on any successor or assign of Company and its successors or assigns.

22. Indemnification of MACCO Professionals Acting as Officers.    To the extent that any MACCO Proffesional is acting as an officer of the Company pursuant to the description of the Services, in addition to any other indemnification provided in this Agreement, the Company further agrees to indemnify the MACCO Professionals acting as an officer(s) of the Company, to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Company's charter, bylaws or other organizational documents, by contract or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to the MACCO Professionals.  The provisions of this Clause 22 are in the nature of a contractual obligation and no change in the applicable law or the Company's charter,  by-laws or other organizational documents or policies shall affect the CRO's or MACCO's Professionals rights hereunder.    This obligation shall be an administrative obligation and remain in effect regardless of the conditions upon which the Engagement concludes and/or this Agreement is terminated.

RELATIONSHIP OF THE PARTIES

23. Independent Contractor.  MACCO is an independent contractor under this Agreement.  This Agreement is not intended to create and does not create an employment agreement. No one on behalf of MACCO, or any members, managers, directors, employees, agents, independent consultants, contractors or professionals thereof, shall be considered to be a director, officer, member, manager, partner, control person, employee, representative, agent, or insider of the Company unless expressly agreed to in a writing signed by MACCO.  As an independent contractor, MACCO shall retain exclusive control over the management and operation of MACCO, including without limitation hiring and paying the wages or other compensation of its professionals. Unless expressly provided otherwise in the Agreement, MACCO and the MACCO Professionals that provide services hereunder may also provide services to other past,

present or future MACCO entities in connection with unrelated matters. In addition to the MACCO Professionals, MACCO may utilize the services of its own employees or services of qualified independent contractors to perform this Agreement.

24. No Fiduciary Relationship with MACCO. Nothing in this Agreement is intended to create, or shall be deemed or construed to create a fiduciary relationship between the Company, including without limitation, the Company's directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, agents, or creditors, on the one hand; and MACCO, MACCO Personnel, and MACCO's affiliates, consultants, members, control persons, shareholders, employees, representatives, contractors, attorneys, agents, successors or assigns, on the other hand.

25. No Agency Relationship. Except as set forth in this Agreement, the Services are not intended to and do not create an agency relationship between Company and MACCO.

26. No Tenancy Created. If MACCO is provided with access to or use of Company's facilities for the purpose of performing the Services, such facilities may not be dedicated solely for MACCO's use and MACCO will not be deemed a tenant of Company with respect to such facilities.

27. Non-Exclusivity. MACCO may (i) provide any services to any person or entity in matters or engagements unrelated to this Engagement, and (ii) develop for itself, or for others, any materials or processes, including those that may be similar to those produced as a result of the Services, provided that, MACCO complies with its obligations of confidentiality set forth herein.

CONFLICTS

28. Future Conflicts. MACCO is retained by other persons and entities in the ordinary course of its business. As a result, MACCO cannot assure that, following the completion of our internal conflict search in connection with the Engagement, a new engagement for or involving one of the Company's creditors or other parties-in-interest or their respective attorneys and accountants will not be accepted by MACCO or its affiliates. Should any potential conflict come to the attention of MACCO, we will endeavor to resolve such potential conflict and will determine what action needs to be taken. Client agrees that they shall inform MACCO of the parties-in-interest to the Engagement or of additions to, or name changes for, those parties-in-interest whose names shall be provided. MACCO's determination of conflicts is based on the substance of the work to be performed on an engagement as opposed to the parties involved. It is possible that some of MACCO's past, present or future clients may have disputes with and other matters relating to Company during the course of and subsequent to this Engagement. As a condition of this Engagement, Company agrees that MACCO may be engaged by persons or entities with interests that are adverse to and may not be consistent with the interests of Company. MACCO reserves the right to accept engagement with such other persons or entities consistent with its internal, prior practices without any right of objection by Company.

CONFIDENTIALITY

29.    <u>Duty to Maintain Confidentiality</u>. MACCO shall keep as confidential all Confidential Information received by MACCO in conjunction with the Engagement, except: (i) as requested by the Company or its legal counsel; (ii) as required by law or legal proceedings; or (iii) as reasonably required in the performance of this Engagement to the extent that such disclosure is (A) reasonably determined by the MACCO to be in furtherance of its duties to Company and not otherwise in contravention of applicable disclosure rules and/or an express direction of the Company or (B) to a person or entity that has agreed to be bound by confidentiality requirements at least as protective as those set forth herein.  All obligations as to non-disclosure shall cease to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision. For purposes of this Agreement, "Confidential Information" shall mean any information concerning the businesses and affairs of the Company that is not already generally available to the public.

30. <u>Disclosure</u>.  To the extent that, in connection with this Engagement, either party (the "receiving party") comes into possession of any Confidential Information of the other (the "disclosing party"), it will not disclose such information to any Third Party without the disclosing party's consent, using at least the same degree of care as it employs in maintaining in confidence its own Confidential Information of a similar nature, but in no event less than a reasonable degree of care.  Notwithstanding the foregoing, the disclosing party hereby consents to the receiving party disclosing such Confidential Information:  (i) to subcontractors, whether located within or outside of the United States, that are providing services in connection with this Engagement and that have agreed to be bound by confidentiality obligations similar to those herein; (ii) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards or rules, or in connection with litigation or arbitration pertaining hereto; or (iii) to the extent such information (a) is or becomes publicly available, other than as the result of a disclosure in breach hereof, (b) becomes available to the receiving party on a non-confidential basis from a source that the receiving party believes is not prohibited from disclosing such information to the receiving party, (c) is already known by the receiving party without any obligation of confidentiality with respect thereto, or (d) is developed by the receiving party independently of any disclosures made to the receiving party hereunder. Nothing in this Clause shall alter Company's obligations under any other Clause.  MACCO, however, may use and disclose any knowledge and ideas acquired in connection with the Services, to the extent they are retained in the unaided memory of its personnel.  Further, MACCO and its affiliates and related entities shall have the right to use Company's name as part of a general client listing and as a specific citation in proposals or similar directed marketing efforts.

31. <u>Subject Tax Planning Advice</u>.  No term of this Agreement is or is to be construed as a condition of confidentiality within the meaning of PCAOB Release 2005-014, Internal Revenue Code Sections 6011 and 6111 or the regulations thereunder, any related Internal Revenue Service guidance, or any other similar law, with respect to any Services, Deliverables or other materials of any kind provided hereunder relating to tax treatment or tax structure (collectively referred to as "**Subject Tax Planning Advice**").  Notwithstanding anything herein to the contrary, no provision of the Agreement shall place any limitation on Company's disclosure of

any Subject Tax Planning Advice.  In the event of any unauthorized reliance on any Subject Tax Planning Advice by a Third Party, Company agrees to indemnify and hold harmless MACCO, its subcontractors, and their respective personnel from any and all claims of any Third Party, liabilities, costs, and expenses, including, without limitation, attorneys' fees and expenses as provided for in Clauses 21 and 22 above.

TERMINATION

32. Termination with Notice.  Any party to this Engagement may terminate the Engagement upon five (5) days' prior written notice to the other party.  Upon receipt by the non-terminating party of such written notice, MACCO will stop all work immediately.  Upon any termination of this Engagement, MACCO shall be entitled to all incurred and unpaid Fees and Reimbursable Expenses for Services, in addition to all other fees and expenses described in the Agreement.

33. Termination at Completion of Engagement.  Unless terminated sooner as set forth herein, this Agreement shall terminate upon (i) the completion of the Services and the Engagement and (ii) the payment in full of all outstanding Invoices.

MISCELLANEOUS

34. Collection Costs.  If an action or proceeding is commenced by MACCO to collect any Invoice, fee, Reimbursable Expense or cost or enforce any other obligation of Company under this Agreement, whether commenced during or after termination of this Agreement (an "**Enforcement Action**"), Company agrees to pay and reimburse MACCO for all reasonable MACCO Personnel time, administration costs and expenses, including, without limitation, attorneys' fees, costs and expenses incurred in connection with such Enforcement Action.

35. Misc. Fees, Expenses & Costs. The Company shall compensate MACCO for all MACCO Professional's time and expenses, including, without limitation, attorneys' fees, costs and expenses, that MACCO incurs in connection with the Services (whether during the Engagement or after termination of this Agreement) with respect to the responding to discovery requests, subpoenas or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, arbitration, or other proceedings (including, without limitation, those unrelated to the matters that are subject to this Engagement) as a result of or in connection with the Services, the Engagement or this Agreement.

36. Survival and Interpretation.  All provisions which are intended by their nature to survive performance of the Services and/or the termination of this Agreement, shall survive such performance or termination and remain independent obligations of Company and of MACCO. Each of the provisions of these Standard Terms shall apply to the fullest extent of the law, whether in contract, statute, common law, or otherwise, notwithstanding the failure of the essential purpose of any remedy.  Any references herein to the term "including" shall be deemed to be followed by "without limitation".

37. Assignment.  Except as provided in this Agreement, neither party may assign any of its rights or obligations hereunder (including Indemnified Claims or Company Claims) without the prior written consent of the other party.

38. Severability.  If any portion of this Agreement is held to be void, invalid, or otherwise unenforceable, in whole or in part, the remaining portions shall remain in effect.

39. Successors and Assigns.  This Agreement shall be binding upon MACCO and Company, together with their respective heirs, successors, and assignees and any heir, successor, or assignee of a substantial portion of its businesses and/or assets.

40. Entire Agreement; Bankruptcy Court Order.  Subject to the terms of any order entered by any Bankruptcy Court in a bankruptcy case pertaining to MACCO and the Engagment or the Services, this Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the parties. This Agreement replaces and supersedes any previous proposal, draft letter of engagement, communication (oral or written), undertaking, representation, or correspondence – whether written or oral, regarding the Services.

41. Limited Disclosure of Engagement.  Notwithstanding anything herein to the contrary, MACCO may reference or list the Company's name and/or logo and /or a general description of the Services in MACCO's marketing materials, media, social media, website or in any disclosure to a court of law as appropriate.

42. Force Majeure.  No party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including fire, epidemic, pandemic or other casualty, hurricane, storms both named and unnamed, flooding, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

43. Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.  This Agreement may be executed by facsimile signatures, electronic signatures or signatures forwarded by email.

44. No Waiver.  No failure to delay in exercising any right, power or privilege related hereto, or any single or partial exercise thereof, shall operate as a direct or indirect waiver thereof.

45. Waiver of Trial by Jury.  THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT AND THE SERVICES.

46. Governing Law.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware (without giving effect to the choice of law principles thereof). Any action based upon or arising out of this Agreement shall be brought and maintained

exclusively in any state or federal court, in each case located in Wilmington, New Castle County, the State of Delaware. The parties hereto hereby declare that it is their intention that this Agreement shall be regarded as made under the laws of the State of Delaware and that the laws of said State shall be applied in interpreting its provisions in all cases where legal interpretation shall be required. Each of the parties hereto agrees (a) that this Agreement may involve at least $100,000.00, and (b) that this Agreement has been entered into by the parties hereto in express reliance upon 6 <u>Del. C.</u> § 2708. Each of the parties hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum.

47. <u>In the Event of a Bankruptcy Filing</u>. In the event the Company determines to commence any Chapter 11 or Sub-Chapter V of Chapter 11 bankruptcy proceedings (the "**Bankruptcy Proceeding**"), the Company shall apply promptly to the presiding Bankruptcy Court pursuant to the Bankruptcy Code, applicable rules and procedural orders of the Bankruptcy Court and procedural guidelines for approval of this Agreement, nunc pro tunc to the commencement date of such Bankruptcy Proceedings, and shall use its best efforts to obtain such Bankruptcy Court approval and authorization. The Company shall supply MACCO and its counsel with a draft of such application and proposed order authorizing MACCO's retention sufficiently in advance of the filing of such application and proposed order to enable MACCO and its counsel to review and comment thereon. After the commencement of any such Bankruptcy Proceeding, MACCO shall have no obligation to provide any services under this Agreement unless MACCO's retention under the terms of this Agreement is approved in the manner set forth above by order of the Bankruptcy Court and such order is acceptable to MACCO in all materials respects. MACCO acknowledges and accepts that, in the event that the Bankruptcy Court approves its retention by the Company, payment of MACCO's fees and expenses shall be subject to (i) the jurisdiction and approval of the Bankruptcy Court and the Bankruptcy Code, (ii) any applicable fee and expense guidelines and/or order and (iii) any requirements governing interim and final fee applications imposed in the Bankruptcy Case. The Company agrees that MACCO's fees and expenses post-filing, will be priority administrative expenses and that appropriate "carve-outs" will be obtained from any debtor-in-possession financing to cover all such fees and expense. The Company shall consult with MACCO as to the amount of "carve-out" for MACCO's fees and Reimbursable Expenses. In the context of a Bankruptcy Proceeding, "Reimbursable Expenses" shall include any and all MACCO Professional time, attorneys' fees, costs and expenses incurred by MACCO in reviewing retention applications, interim and final fee applications and any related or appropriate bankruptcy court pleading of bankruptcy.

[Remainder of page left blank intentionally]