# EXHIBIT B

**Engagement Letter**



Dated as of November 16, 2020

Attn: Daniel Schatt
Cred Inc.
3 East Third Avenue, Suite 200
San Mateo, CA 94401
SAN MATEO-CA

Dear  Daniel            :

This letter agreement (this "***Agreement***") will confirm our understanding that, subject to approval of the Court in *In re CRED INC, et al.*, No. 20-12836 (Bankr. D. Del.) (the "**Bankruptcy**"), Cred, Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LL, and Cred (Puerto Rico) LLC ("***CRED***" or the "***Company***"), has engaged Teneo Capital LLC, a Delaware limited liability company ("**Teneo**"), to act as the Company's exclusive investment banker in connection with a possible sale, financing, or other Transaction (as defined below), on the terms and conditions set forth below, to provide the following services, as appropriate under the circumstances:

- Assist the Company with the marketing and sale of its assets;
- Assist the Company with raising debtor-in-possession ("***DIP***") or exit ("Exit") financing;
- Review and analyze the businesses, operations and financial projections;
- Prepare and maintain a data room(s) for interested parties;
- Lead the process of preparing marketing materials to support the sale process and capital raise for a DIP or Exit loan;
- Assist the Company in identifying and evaluating candidates for any potential Transaction,
- Solicit interest from third parties in connection with a Transaction;
- Coordinate meetings with third parties and the Company to support due diligence;
- Advise the Company in connection with negotiations and aid in the consummation of any Transaction;
- Work with other professionals with the agreement of and at the direction of the Company, including accountants and legal advisers to assist in consummating a Transaction;
- Rendering financial advice to the Company and participating in meetings with stakeholders;
- Provide expert testimony, as may be needed, in connection with a potential Transaction;
- Perform a valuation of the Company, if requested by the Company or its legal advisors, based on historical and projected financials provided by the Company;
- Assist the Company with the formulation of a chapter 11 plan;
- Provide such other advisory services as are customarily provided in connection with the analysis; and negotiation of any of the transactions contemplated by this Agreement (as defined below), as requested and mutually agreed.

As used in this Agreement, (1)  the term "***Sale Transaction***" shall mean any transaction or series of transactions involving (i) any liquidation, sale, exchange, transfer or other disposition of all or any amount of the assets or the capital stock of the Company, (ii) any sale, merger, joint venture or other business/strategic combination involving the Company, or (iii) any other form of transaction or disposition including a sale of assets by the Company or investment in the Company which results, directly or indirectly, in the effective sale of the business and operations of the Company by the current owners, including, without limitation, any sale of all or substantially all of the Company's assets under section 363 of title 11 of the United States Bankruptcy Code ("***363 Sale***"); and (2) the term "***Financing***" shall mean any transaction or series of transactions involving the issuance, sale or placement of newly-

issued (including securities held in treasury) equity, equity-linked or debt securities, instruments or obligations or the Company, including any DIP financing or exit financing in connection with a case under the Bankruptcy Code; and (4) a Sale Transaction and a Financing shall each be a "***Transaction***" and, any combination thereof shall be "***Transactions***."  For purposes of the definitions of each Transaction, the term "Company" shall be deemed to include CRED and its subsidiaries (if any).

### Section 1.  Compensation.

*(a)* *Expense Retainer*.  Upon execution of this Agreement, in connection with the expenses to be incurred in performing the services provided hereunder by Teneo, the Company shall pay Teneo a fee of $75,000 (the "***Expense Retainer***").  The Expense Retainer will be credited against any fees or expenses incurred by Teneo during the term of this Agreement and shall be paid upon execution of this Agreement.

*(b)* *Monthly Fee.*  In connection with the services provided hereunder by Teneo in connection with the potential Transaction, regardless of whether or not such Transaction is completed, the Company shall pay Teneo a monthly fee of $50,000 per month (the "***Monthly Fee***").  The Monthly Fee shall be paid in advance with the first Monthly Fee paid upon execution of this Agreement.

(c) *Sale Transaction Fee.*  In the event a Sale Transaction is consummated, the Company will pay Teneo a "***Sale Transaction Fee***" in respect of such Sale Transaction, payable upon consummation of the Sale Transaction. The Transaction Fee shall equal:

a.  If the Enterprise Value of the Sale Transaction is $10,000,000 or less, an amount in dollars equal to 6.0% of the Enterprise Value of the Sale Transaction; and

b.  If the Enterprise Value of the Sale Transaction is greater than $10,000,000, an amount in dollars equal to the greater of (i) $600,000 (the "***Minimum Fee***") and (ii)  4.0% of the Enterprise Value of the Sale Transaction; provided that, if the Company has paid Teneo a Financing Fee and the counterparty to such Sale Transaction participated in the Financing, the Sale Transaction Fee shall be reduced by 50% of the Financing Fee (as defined below) paid to Teneo.

c.  For purposes of this Agreement, the term "***Enterprise Value***" shall include the total dollar value of any and all forms of consideration received in connection with a Transaction, including, but not limited to, (x) cash, stock, notes, assumed liabilities, working capital, retained assets and inventory, installments payments, lease payments, consulting contracts, payment for covenants not to compete, earn-outs and deferred payments amounts whether guaranteed or contingent, and any other similar assets, (y) equity value received or retained, and (z) any and all debt value received as a result of a Transaction.  The value of any securities or other property constituting all or a portion of the consideration shall be determined as follows: (i) for securities for which there is an established public market, the value will be equal to the average closing price of such securities over the 10 consecutive trading days up to and including the second trading day immediately preceding the applicable closing and (ii) securities that are not freely tradeable or have no established public market, or if the consideration utilized consists of property other than securities, the value of such property shall be the fair market value thereof as determined in good faith by the parties, or if the parties cannot agree then as reasonably determined in good faith by an independent third party mutually acceptable to Teneo and the Company; provided, however, that all debt securities, except zero coupon or deep securities, shall be valued at their stated principal amount without applying a discount thereto.

(d) *Financing Fee*. In the event one or more Financings is consummated, the Company shall pay Teneo a fee in dollars, due and payable upon of closing of any Financing, equal to the total gross proceeds received by the Company in such Financing (including all amounts committed under credit lines or other indebtedness, even if undrawn at closing) multiplied by 4.0%.

(e) Each of Sale Transaction Fee and Financing Fee is a "***Transaction Fee***" hereunder.

(f) The Transaction Fee with respect to a Transaction will be due and payable in U.S. dollars in immediately available funds upon the closing of such Transaction, except that amounts to be paid with respect to Enterprise Value which are based upon contingent future events, including earn-outs, shall be paid to Teneo at the time payment is received by the Company or its owners.

(g) Any amounts held in escrow or held back by a purchaser shall be deemed received at closing.

(h) If more than one fee becomes payable under this Section 2 in connection with a series of transactions, each such fee shall be payable to Teneo

**Section 2.  Expenses; Payments**.  In addition to compensation payable pursuant to Section 1, the Company shall reimburse Teneo for all documented reasonable out-of-pocket expenses incurred by Teneo in connection with this engagement, including reasonable fees and expenses of its legal counsel, if any, and any other advisor retained by Teneo (it being understood that the retention of any such advisor, other than legal counsel, will be made only with the Company's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed). Such expenses shall be reimbursable whether or not any transaction contemplated by this Agreement is consummated.

All fees, expenses, indemnification payments and other amounts payable hereunder (i) shall be paid in U.S. dollars in immediately available funds according to wire instruction provided by Teneo and (ii) are net of (x) all applicable withholding and similar taxes applicable to the Company, and (y) any fees that may be charged by any purchaser or any other party in connection with its participation in a Transaction or any other transaction contemplated herein. No fees, commissions or expenses payable to financial or other advisors used or retained by the Company or by any purchaser or any other party in a Transaction shall reduce or otherwise affect the fees payable, or expenses reimbursable, to Teneo under this Agreement.  If the consideration payable in connection with a Transaction is computed in a currency other than U.S. dollars, the value of such consideration expressed in such currency, for purposes of calculating Teneo's fees hereunder, shall be converted (without giving effect to all expenses to convert such currency to U.S. dollars) into U.S. dollars at the prevailing exchange rate on the date on which such Transaction is consummated.

**Section 3.  Confidentiality; Information.**  No advice rendered by Teneo, whether formal or informal, may be disclosed, in whole or in part, or summarized, excerpted from or otherwise referred to without Teneo's prior written consent, which shall not be unreasonably withheld, conditioned or delayed.  The aforesaid restrictions of this Section 3 shall not apply with respect to the Company's legal counsel, bankruptcy financial advisor, accountants or to any other Representatives of the Company who need to know such information and agree to abide by the confidentiality obligations of this Agreement as if they were a party hereto, nor shall it apply in any litigation between the Company and Teneo in any way related to the Transaction or this Agreement.  In addition, nothing herein shall prevent the Company from disclosing any information as may be required by valid subpoena, court order, or applicable law.

In connection with this engagement, certain confidential, non-public information concerning the Company's business and financial condition (collectively, "***Confidential Information***") has been or may be disclosed to Teneo or its affiliates' owners, officers, directors, employees, accountants, attorneys and other advisers or representatives and agents ("***Teneo Representatives***").  Teneo agrees to treat any such Confidential Information as confidential and will use all reasonable efforts not to disclose such Confidential Information except to Teneo Representatives, the Company's bankruptcy financial advisor or as authorized by the Company.  For the avoidance of doubt, Teneo may provide Confidential Information to prospective transaction parties as contemplated by this Agreement, subject to such parties executing appropriate confidentiality agreements.   The term "Confidential Information" does not include any information: (a) that was already in Teneo's possession, or that was available to Teneo on a non-

confidential basis, prior to the time of disclosure by the Company to Teneo; (b) obtained by Teneo from a third person which, to Teneo's knowledge, is not subject to any prohibition against disclosure; (c) which is or becomes generally available to the public through no breach of Teneo or any Teneo Representative; (d) was independently developed by or for Teneo or any affiliate thereof or any of their respective Representatives without the use of Confidential Information or (e) that Teneo reasonably believes is required to be disclosed under compulsion of law (whether by oral question, interrogatory, subpoena, civil investigative demand or otherwise), or by act of any court or governmental or self-regulatory authority.  Teneo also may disclose such information to those Teneo Representatives who need to know such information for purposes of performing the services contemplated herein, and to potential investors or other third parties who have executed confidentiality agreements for the benefit of the Company in a form reasonably satisfactory to the Company.  Teneo's obligations under the second sentence of this paragraph will terminate two years after the termination of the Agreement.  Damages in the event of breach of the provisions of this paragraph may be difficult, if not impossible, to ascertain, and it is therefore agreed that each party, in addition to and without limiting any other remedy or right it may have, will have the right to seek an injunction or other equitable relief in any court of competent jurisdiction, enjoining any such breach, and enforcing specifically the terms and provisions hereof, and each of the parties hereto hereby waives any and all defenses it may have on the ground of lack of jurisdiction or competence of the court to grant such an injunction or other equitable relief.  The existence of this right will not preclude any such party from pursuing any other rights and remedies at law or in equity which the party may have.

In connection with Teneo's engagement, the Company will furnish Teneo with, or cause to be furnished to Teneo, all information concerning the Company and any Transaction which Teneo reasonably deems appropriate and will provide Teneo with access to the Company's officers, directors, employees, accountants, counsel, bankruptcy financial advisor and other representatives (collectively, the "***Representatives***") of the Company and, to the extent practicable, prospective purchasers. Teneo shall be entitled to rely without independent investigation upon all information supplied by a Company and its Representatives, or by prospective purchasers and their Representatives, or publicly available, and shall not be responsible for the accuracy or completeness of, or have any obligation to verify, such information. The Company acknowledges its obligations under applicable anti-fraud law.  Any financial projections delivered to Teneo have been or will be reasonably prepared in good faith on bases reflecting currently available estimates and judgments of the future financial results and condition of the Company.  Upon reasonably becoming aware thereof, the Company will promptly notify Teneo in writing of any material changes in the business or financial condition of the Company and any inaccuracy or misstatement in, or material omission from, any information previously delivered to, or discussed with, Teneo, or any materials provided to any potential purchaser or other party. The Company acknowledges that Teneo will not conduct any appraisal of assets or liabilities (contingent or otherwise) of the Company or any other party. Teneo's role in reviewing any information is limited solely to performing such reviews as Teneo deems necessary to support Teneo's own advice and analysis and shall not be on behalf of the Company or any other person.

Within thirty (30) days following receipt by Teneo of a written request from the Company to such effect following the termination of this Agreement, Teneo shall, and shall cause each of Teneo's Representatives to, return or cause to be returned to the Company, all Confidential Information in Teneo's or such Representative's possession or custody, without retaining any copies thereof, except that Teneo (a) with respect to electronic information, will use commercially reasonable efforts to destroy such information and (b) should be entitled to retain a copy of any Confidential Information as is required by law, regulation or Teneo's internal record keeping policies; provided, however, that any such Confidential Information that is retained shall remain subject to the terms of this Section 3.

      **Section 4.  Indemnity**.  Since Teneo will be acting on behalf of the Company in connection with its engagement hereunder,  the Company and Teneo agree to the indemnity provisions and other matters set forth in Annex A which is incorporated in its entirety by reference into this Agreement and is an integral part hereof.

      **Section 5. Bankruptcy Court Approval.**  The Company agrees that it will use its best efforts to retain Teneo as of _____, as its investment banker on the terms and conditions set forth in this Agreement (including Annex A) under the provisions of and subject to the standard of review set forth in Section

328(a) of title 11 of the United States Code (the "***Bankruptcy Code***"), except that the United States Trustee may reserve the right to object pursuant to Section 330 of the Bankruptcy Code, and agrees that, except as otherwise provided in this Agreement, the arrangements hereunder are reasonable under the standards set forth in Section 328(a). Teneo shall be under no obligation to provide any services under this Agreement unless Teneo's retention under the terms of this Agreement, except as otherwise provided in this Agreement, is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court (the "***Retention Order***") and the Retention Order is acceptable to Teneo in its reasonable discretion. The retention application shall note that in so agreeing to seek Teneo's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that: (i) it believes that Teneo's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any restructuring, and that the value to the Company of Teneo's services hereunder derives in substantial part from that expertise and experience, and (ii) the various fees set forth herein have been agreed upon by the parties in anticipation that the commitment of professional time required of Teneo and its professionals hereunder over the life of the engagement may foreclose other opportunities for Teneo and that the actual time and commitment required of Teneo and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. Accordingly, in light of the foregoing, the Company acknowledges and agrees that the structure and amount of the fees is reasonable.

      **Section 6. Conduct of Transaction; Authority**. The Company represents and covenants to Teneo that the Company will qualify and conduct any Transaction pursuant to applicable law, including without limitation any applicable securities, anti-bribery and anti-money laundering laws, of any governmental or regulatory bodies of the United States, or other countries that relate to the Transaction and furnish such information as may be reasonably required for such purposes at the Company's expense.

Without limiting the generality of the foregoing, the Seller agrees to conduct and effect any Transaction or other transaction contemplated in this Agreement pursuant to any and all applicable laws and regulations, including without limitation the U.S. Foreign Corrupt Practices Act and the UK Bribery Law and any and all applicable anti-bribery, anti-money laundering and securities laws.

The Company represents to Teneo that, subject to approval of the court presiding over the Bankruptcy. (the "**Bankruptcy Court**"): (i) the Company has all requisite corporate power and authority to enter into this Agreement and the transactions contemplated hereby (including, without limitation, a Transaction) and (ii) this Agreement has been duly authorized by all necessary corporate action on the part of such Company and has been duly executed and delivered by such Company and constitutes a legal, valid and binding agreement of such Company, enforceable in accordance with its terms. Notwithstanding anything to the contrary set forth in this Agreement, the decision of whether to enter into or consummate a Transaction shall be within the sole and absolute discretion of the Company.

      **Section 7. Exclusivity; Termination**. To coordinate the Company's and Teneo's efforts with respect to matters contemplated by this engagement, the Company agrees to inform Teneo promptly of any inquiry or proposal received by the Company or its management regarding a possible Transaction or any participation therein, as well as any other strategic discussions about the Company that might impact a possible Transaction.

This engagement shall continue until terminated by the earliest of a writing in accordance with this Section 7, the confirmation of a plan in the Bankruptcy or the dismissal fo the petition in the Bankruptcy; provided that, in the event of any termination of Teneo's engagement hereunder, Teneo will continue to be entitled to the full amount of any Transaction Fee provided for herein in the event that at any time prior to the expiration of twelve months after the effective date of any such termination (such twelve month period, the "***Tail Period***") the Company (x) consummates a Transaction or (y) enters into an agreement (or agreement in principle) providing for a Transaction that is consummated subsequent to such termination or expiration date. Teneo's engagement hereunder may be terminated at any time, with or without cause by either Teneo or the Company upon 10 business days' prior written

notice thereof to the other party.  The terms and provisions of Sections 1, 2, 3, 4 (including Annex A), 7, 10 and 11 will survive, and remain in full force and effect, regardless of any completion, modification or termination of Teneo's engagement(s) or this Agreement...

**Section 8.  Other Teneo Activities**. Teneo is a full service strategic and financial advisory firm engaged in providing a variety of investment banking and financial and strategic advisory services. The Company acknowledges that, in the ordinary course of its activities, Teneo Capital LLC or its affiliates may provide services to, or may hold positions for its own account in equity, debt or other securities of, companies that may be involved in the Transaction or whose interests or businesses may be viewed to be in competition or conflict with those of the Company.  In connection with other business activities, Teneo or Teneo personnel may come into possession of confidential information that could affect the Transactions and/or the services provided herein, but shall have no obligation to disclose any such information to the Company or its representatives.

**Section 9.  Public Announcements**. The  Company acknowledges that Teneo may, , at its expense, after announcement of a Transaction, place announcements and advertisements or otherwise publicize the Transaction and Teneo's role in it (which may include the reproduction of the Company's logo and a hyperlink to the Company's website) on Teneo's internet website and in such financial and other newspapers and journals as it may choose, stating that Teneo has acted as exclusive investment banker to the Company in connection with the Transaction.

**Section 10.   Governing Law; Arbitration**.  This Agreement will be governed by, and construed in accordance with, the laws of the State of New York without regard to the provisions, policies or principals thereof relating to choice or conflicts of law.  Each of the parties hereto agrees to submit any claim or dispute arising out of or related to this Agreement to the Bankruptcy Court. If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in any New York state or federal court of competent jurisdiction sitting in Manhattan, to whose jurisdiction each of the parties hereto hereby irrevocably submits..  The Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its. directors, officers, personnel, security holders and creditors) waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to, arising out of or in connection with this engagement or in Annex A.

**Section 11.  Miscellaneous**.  It is understood and agreed that Teneo is retained to act solely as investment banker. Nothing in this Agreement or the nature of the services shall be deemed to authorize any party to make a commitment or agreement binding the other parties hereto or to create a fiduciary or other agency relationship between Teneo and the Company or their respective stockholders, creditors, employees or any other party.  Teneo is acting as investment banker only and not as an expert on, or advisor with respect to any opinion or advice regarding, matters that require legal, regulatory, appraisal, accounting, insurance, tax, executive compensation, environmental or other similar professional advice including, without limitation, whether or not  the Company, any prospective purchaser, their respective security holders or any other party is receiving or paying reasonably equivalent value in a Transaction or the solvency, creditworthiness or fair value of the Company, any prospective purchaser or any other participant in a Transaction, or any of their respective assets, under any applicable laws relating to bankruptcy, insolvency, fraudulent conveyance or similar matters. The Company agrees to consult with its other professional advisors concerning these matters before undertaking any proposed Transaction.

In rendering its services to the Company hereunder, Teneo does not assume any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any Transaction (as defined below), Financing (as defined below), and/or any other transaction.  Teneo shall have no obligation relating to the Company's operations, administration or cash management.  The Company is solely responsible for any decision regarding any transaction or other business arrangement, regardless of the advice provided by Teneo.  The Company acknowledges that its retention of Teneo does not guarantee the effectuation of any transaction or other outcome.

United States federal law requires all financial institutions to obtain, verify, and record information that identifies each person who either opens a securities account or engages a financial institution to facilitate a transaction with

the potential to involve securities.  As a result, when Teneo is engaged by the Company hereunder, Teneo may seek names, addresses, dates of birth and other information that will allow Teneo to identify certain executives of, or other persons associated with, the Company.  If necessary, Teneo may also request from them copies of passports, drivers licenses or other identifying documents. The Company represents that none of (i) the Company  (ii) any person controlling or controlled by the Company, (iii) any person having a beneficial ownership interest in the Company and (iv) any person for whom the Company  acts as an agent or nominee is (x) a country, territory, individual or entity named on the U.S. Treasury Department's Office of Foreign Assets Control ("**OFAC**") list, (y) a person or entity prohibited under the programs administered by OFAC ("**OFAC Programs**"), or (z) a country, territory, individual or entity named on another international sanctions list.  The Company further represents that none of the proceeds of the Transaction shall be derived from or used for any purpose prohibited under the OFAC Programs or other international sanctions programs.

The parties understand and expressly agree that this Agreement has been freely and voluntarily entered into (without any duress or undue influence), that no oral or written representations or promises of any kind (other than those contained in this Agreement) have been made by any party to induce or otherwise influence the other to enter into this Agreement, and that they have not relied upon any such oral or written representations or promises. Together with Annex A, this engagement letter constitutes the entire agreement among the parties hereto regarding the subject matter of this engagement, and supersedes any prior agreements and understandings with respect to the subject matter of this Agreement. This Agreement shall inure to the benefit of and be binding on the Company, Teneo and their respective successors. Each Indemnified Person (as defined in Annex A) shall be an express third party beneficiary of Section 4 and Annex A with the right to enforce the same.  Except as aforesaid, nothing in this Agreement shall be deemed to create any right in any person not a party hereto (other than the permitted successors and assigns of a party hereto) and this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third party. No party may assign its rights and obligations under this Agreement without the prior written consent of the other parties hereto; provided, however, that Teneo may assign its rights and obligations to its broker-dealer affiliate Teneo Securities LLC.  This Agreement may be amended, modified or supplemented only by the written agreement of the parties hereto.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.  Each provision of this Agreement shall be considered severable and if for any reason any provision of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid or unenforceable in any jurisdiction, such provision shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without invalidating the remaining provisions hereof, or the application of the affected provision to persons or circumstances other than those to which it was held invalid or unenforceable, and any such invalidity or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

We are delighted to accept this engagement and look forward to working with you on this assignment. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us this Agreement.


Very truly yours,

TENEO CAPITAL LLC



By: _____
Name:   Chris Wu
Title:     President, Restructuring Advisory and Senior
             Managing Director




Accepted and agreed to as of the date first written above:

CRED, INC.

By:   _Dan Schatt_____
Name: Dan Schatt
Title:   CEO

## ANNEX A

In further consideration of the agreements contained in our engagement letter between the Company and Teneo dated the date hereof to which this Annex A is attached (the "***Engagement Letter***") and into which this Annex A is incorporated, the Company shall indemnify Teneo and any of its affiliates and their respective directors, members, officers, employees, agents and controlling persons (Teneo and each such person being "***Indemnified Persons***") from and against  any and all losses, claims, damages and liabilities, joint or several (including actions or proceedings in respect thereof),  to which such Indemnified Persons may become subject under any applicable law, or otherwise (collectively, "***Losses***"), and related to, arising out of, or in connection with this engagement (the "***Engagement***") or any Indemnified Person's role therein or performance thereof or any Transaction contemplated thereby or any other matter referred to in the Engagement, except to the extent finally determined by a court of competent jurisdiction to have resulted primarily from the bad faith or gross negligence of such Indemnified Person. Without limiting the generality of the foregoing, the Company will also indemnify and hold harmless any Indemnified Person from and against, and the Company agrees that no Indemnified Person shall have any liability to the Company or its owners, parents, affiliates, security holders or creditors for, any Losses (A) related to or arising out of (i) the Company's actions or failures to act (including statements or omissions made or information provided by the Company or its agents) or (ii) actions or failures to act by an Indemnified Person with the Company's consent or in reliance on the Company's actions or failures to act or (B) otherwise related to or arising out of, or in connection with, the Engagement or Teneo's or any other Indemnified Person's performance thereof or role therein, or Transaction contemplated thereby or any other matter referred to in the Engagement, except that this clause (B) shall not apply to any Losses that are finally determined by a court of competent jurisdiction to have resulted primarily from the bad faith or gross negligence of such Indemnified Person.  If indemnification to which an Indemnified Party is entitled pursuant to the terms hereof is for any reason not available or insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses involved in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company, on the one hand, and by Teneo, on the other hand, with respect to the Engagement or, if such allocation is determined  to be unavailable by a court of competent jurisdiction, in such proportion as is appropriate to reflect other equitable considerations such as the relative fault of the Company and its affiliates on the one hand and of Teneo and the Indemnified Persons on the other hand; provided, however, that, to the extent permitted by applicable law, the Indemnified Persons shall not be responsible for amounts which in the aggregate are in excess of the amount of all fees actually received by Teneo from the Company in connection with the Engagement.  Relative benefits to the Company, on the one hand, and Teneo and the Indemnified Persons, on the other hand, with respect to the Engagement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be, pursuant to the transaction(s), whether or not consummated, contemplated by the Engagement, bears to (ii) all fees actually received by Teneo in connection with the Engagement.

The Company will reimburse each Indemnified Person for all reasonable expenses (including without limitation reasonable fees and disbursements of counsel and costs of vendors reasonably required to assist in the recovery, review and production of electronically stored data) as they are incurred by such Indemnified Person in connection with investigating, preparing for, responding to or defending any actual or threatened action, claim, suit, investigation, inquiry, arbitration or other proceeding ("***Action***") as to which an Indemnified Party would be entitled to indemnification hereunder (or enforcing this Agreement or any related engagement agreement), whether or not in connection with pending or threatened litigation in which any Indemnified Person is a party, and whether or not such Action is initiated or brought by Teneo.

Notwithstanding anything herein to the contrary, in no event shall any Indemnified Person be entitled to any special, incidental, consequential, exemplary, punitive or multiple damages from the Company.

The Company will not, without Teneo's prior written consent (nor will the Company facilitate efforts by its respective affiliates to), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any Action in respect of which indemnification may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless the Company has given Teneo reasonable prior written notice thereof under the

circumstances and such settlement, compromise, consent or termination includes an unconditional release of each Indemnified Person from any liabilities arising out of such Action. The Company will not permit any such settlement, compromise, consent or termination to include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of an Indemnified Person, without such Indemnified Person's consent.

In the event the Company is considering entering into one or a series of transactions involving a merger or other business combination or a dissolution or liquidation of all or a significant portion of the Company's assets, the Company shall promptly notify Teneo in writing. If requested by Teneo, the Company shall then establish alternative means of providing for the Company's obligations set forth herein on terms and conditions reasonably satisfactory to Teneo.

The Company's obligations hereunder shall be in addition to any rights that any Indemnified Person may have at common law or otherwise.  Notwithstanding the provisions of Section 10 of the Engagement Letter, solely for purposes of enforcing the Company's obligations hereunder, the Company consents to personal jurisdiction, service and venue in any court proceeding in which any claim subject to the provisions of Section 4 of the Engagement letter or this Annex A is brought by or against any Indemnified Person.  All actions and proceedings arising out of or relating to the provisions of Section 4 or this Annex A shall be heard and determined in any state or federal court sitting in the State of State of New York, or, during the pendency of the Company's chapter 11 proceedings or otherwise pursuant to the orders of such bankruptcy court, the Bankruptcy Court for the District of Delaware, and each of the Company and Teneo hereby submits to the jurisdiction of such courts. The Company and Teneo hereby irrevocably waive, to the fullest extent each may effectively do so, the defense of an inconvenient forum to the maintenance of all such actions and proceedings. The Company also irrevocably consents to the service of any and all process in all such actions and proceedings by the mailing of copies of such process to the Company at the address first written above or to the Company's successor, as applicable.

Teneo or an Indemnified Person shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services other than those provided under the Engagement Letter, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Bankruptcy Court.

If Teneo or any other Indemnified Person is requested or required to appear as a witness in any action brought by or on behalf of or against the Company or the purchaser in which such Indemnified Person is not named as a defendant, the Company will reimburse Teneo for all reasonable expenses incurred in connection with such party's appearing and preparing to appear as such a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel.

The provisions of this Annex A shall apply to the Engagement (including related activities prior to the date hereof) and any modification thereof and shall remain in full force and effect regardless of the investigation, completion or termination of the Engagement or the completion of Teneo's services thereunder.  If any term, provision, covenant or restriction herein is held by a court of competent jurisdiction to be invalid, void or unenforceable or against public policy, the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated.