**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CRED INC., *et al.*, | Case No. 20-12836 (JTD) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date: Dec. 9, 2020 at 2:00 p.m. (ET)** |
| | **Obj. Deadline: Dec. 2, 2020 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF ORDERS**
**(I)(A) APPROVING BIDDING PROCEDURES, (B) SCHEDULING AN**
**AUCTION AND SALE HEARING AND APPROVING FORM AND MANNER OF**
**NOTICE THEREOF, AND (C) APPROVING ASSUMPTION AND ASSIGNMENT**
**PROCEDURES AND FORM AND MANNER OF NOTICE THEREOF; AND (II)**
**AUTHORIZING (A) THE SALE(S), FREE AND CLEAR OF ALL LIENS,**
**CLAIMS, INTERESTS, AND ENCUMBRANCES, AND (B) ASSUMPTION AND**
**ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

TO THE HONORABLE BANKRUPTCY JUDGE JOHN T. DORSEY:

Cred Inc. ("Cred") and its affiliated debtors and debtors in possession, (the "Debtors")

respectfully represent as follows in support of this motion:

**Relief Requested**

1.    By this motion, the Debtors request the following relief:

    a.    Entry of an order, substantially in the form attached as **Exhibit A** (the "Bidding Procedures Order"):

        i.    approving the bidding procedures, including certain protections in connection with a Stalking Horse Bid (as defined below), substantially in the form attached as Exhibit 1 to the Bidding Procedures Order (the "Bidding Procedures");

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

ii.     scheduling an auction (the "Auction") (if necessary) for January 18, 2021 at a time to be determined;

iii.    scheduling a hearing for approval of sale(s) of the Debtors' assets (the "Sale Hearing") for February 3, 2021, or as soon thereafter as the Court's schedule permits;

iv.    authorizing and approving the notice of the Bidding Procedures, the Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as Exhibit 2 (the "Sale Notice"), including Publication Notice (as defined below);

v.     authorizing and approving procedures set forth herein (the "Assumption and Assignment Procedures") for the assumption and assignment of the executory contracts (the "Executory Contracts") and unexpired leases (the "Unexpired Leases" and, together with the Executory Contracts, the "Contracts") that the Debtors reasonably believe may be transferred as part of the Sale(s) (as defined below);

vi.    authorizing and approving notice, substantially in the form attached to the Bidding Procedures Order as Exhibit 3 (the "Notice of Proposed Assumed Contracts"), of the proposed assumption and assignment of the Contracts in connection with the Sale(s); and

vii.   granting certain related relief.

b.    Entry of a sale order (the "Sale Order"), a form of which is attached as **Exhibit B**:

i.   authorizing the Sale(s), free and clear of all liens, claims, interests, and encumbrances;

ii.  authorizing the assumption and assignment of certain Contracts in connection therewith; and

iii. granting certain related relief.

**Jurisdiction, Venue, and Statutory Bases**

2.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C.§ 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  In accordance with Rule 9013-1(f) of the Local

Rules, the Debtors confirm their consent to the entry of a final order by the Court in connection

with this motion to the extent that it is later determined that the Court, absent consent of the

parties, cannot enter final orders or judgments in connection herewith consistent with Article III

of the United States Constitution.

3.      Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105, 363, and 365

of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008, and Local Rules

6004-1.

**Background**

5.      On November 7, 2020 (the "Petition Date"), the Debtors each commenced with

this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are

authorized to continue operating their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory

committee of creditors has been appointed in these chapter 11 cases.

6.      The Debtors' chapter 11 cases are being jointly administered for procedural

purposes only pursuant to Bankruptcy Rule 1015(b), Local Rule 1015-1, and the *Order Granting*

*Motion of Debtors and Debtors in Possession for Order Directing Joint Administration of Their*

*Chapter 11 Cases* [Docket No. 27].

7.      Additional information regarding the Debtors' business is set forth in the

*Declaration of Daniel Schatt in Support of Debtors' Chapter 11 Petitions and First Day Motions*

[Docket No. 12] and the *Declaration of Drew McManigle, Founder and Chief Executive Officer,*

*MACCO Restructuring Group, LLC* [Docket No. 16] (together, the "First Day Declarations").

**Marketing Process**

8.        As described in the First Day Declarations the Debtors, with the assistance of
their advisors, have determined that a sale or sales (the "Sale(s)"), which may be consummated
pursuant to section 363 of the Bankruptcy Code or through a chapter 11 plan, of some or all of
the assets of one or more of the Debtors (such assets or any subset thereof, collectively, the
"Assets") would maximize the value of their estates for the benefit of all stakeholders.  In
particular, the Debtors are hopeful that the marketing process will yield multiple offers for the
purchase of the Debtors' business as a going concern, preserving the jobs of the Debtors' highly-
specialized engineering and trading staff and providing a new path forward for the business.
Additionally, the Debtors believe that their proprietary technology for cryptocurrency-lending
and investment is an attractive and valuable asset that could generate substantial value for the
estates.

9.        The Debtors believe that the proposed Bidding Procedures will enable them to
expeditiously complete these chapter 11 cases and maximize value for all stakeholders.  In
formulating the Bidding Procedures, the Debtors balanced the need to provide adequate notice to
potential purchasers and other parties in interest with appropriate concern to preserve the
Debtors' liquidity and minimize costs.   The Debtors believe that the time periods proposed in the
Bidding Procedures will provide all parties with sufficient time and information to formulate
competitive bids for the Assets.

**Bidding Procedures**

**A.    Overview**

10.        The Bidding Procedures are intended to ensure a fair, expeditious, and
competitive sale process.  Because the Bidding Procedures are attached to the proposed Bidding

Procedures Order, they are not restated here in their entirety.[2]  However, certain key terms of the

Bidding Procedures are highlighted below:

| Assets | The Assets subject to the Bidding Procedures are all Assets or any subset thereof. |
|---|---|
| **Prospective Bidders** | To be eligible to participate in the bidding process, each Prospective Bidder must first deliver to the Bid Notice Parties (i) if the Prospective Bidder wishes access to information regarding the Assets, an executed confidentiality agreement, in form and substance satisfactory to the Debtors, (ii) a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the Prospective Bidder has a *bona fide* interest in purchasing the specified Assets, and (iii) preliminary proof of the Prospective Bidder's financial capacity to close the proposed Sale. Any Prospective Bidder determined to be reasonably likely to be a Qualified Bidder, upon execution of a confidentiality agreement, will be granted access to information regarding the relevant Assets. The Debtors will be entitled to (a) restrict the due diligence access of any Prospective Bidder that the Debtors' determine (in their sole discretion) to be a competitor of the Debtors and (b) revoke due diligence access to any Prospective Bidder that fails to become a Qualified Bidder. |
| **Stalking Horse Bidders** | The Debtors are authorized, but not obligated, in an exercise of their business judgment and after consultation with the Consultation Parties, to (i) select one or more Stalking Horse Bidders and enter into a purchase agreement with such Stalking Horse Bidder(s) (each, a "Stalking Horse Agreement") and (ii) provide bid protections (the "Stalking Horse Bid Protections") to any such Stalking Horse Bidders, including a Termination Payment not to exceed three percent (3%) of the Stalking Horse Bidder's purchase price or a comparable amount as agreed upon by the Debtors plus the Stalking Horse Bidder's reasonable professional fees and necessary expenses.<br><br>For the avoidance of doubt, if the Stalking Horse Bid is selected as the Baseline Bid for the Assets (or a particular subset thereof), a topping bid must include a minimum purchase price in an amount equal to the sum of (a) the Baseline Bid, (b) the Termination Payment, and (c) the applicable Minimum Overbid (such topping bid, a "Stalking Horse Overbid"). |

---

[2] This summary is qualified by the provisions of the Bidding Procedures and the Bidding Procedures Order.  Any capitalized terms not otherwise defined in this summary have the respective meanings set forth in the Bidding Procedures.

| Proposal Deadline | Proposals are to be submitted no later than **January 6, 2021 at 5:00 p.m. (prevailing Eastern Time)**. |
|---|---|
| Proposal Requirements | Proposals must contain the following information: |

(continued in Proposal Requirements cell:)

- Identity of Purchaser and its Affiliates: A Proposal must specify the identity of the legal entity that would acquire the specified Assets, its ultimate parent company, the identity of all key shareholders and any relevant history and/or experience in the industry.

- Proposed Transaction: A Proposal must include the terms of the proposed transaction, including, but not limited to:

  o identification of all Assets included in the proposed Sale;

  o total purchase price (and its Allocation) and form of consideration;

  o structure, terms and conditions of the proposed Sale (including whether such sale would be implemented pursuant to section 363 of the Bankruptcy Code or a chapter 11 plan of reorganization);

  o evidence of financial wherewithal to close the proposed Sale; and

  o other economic matters to the extent material to the proposed transaction.

- Due Diligence: A Proposal must include a description of the due diligence the prospective purchaser needs to conduct, including a list of any due diligence items it needs to review or confirm in order to enter into a definitive agreement.

- Material Conditions: A Proposal must list any other material conditions to which the consummation of the proposed Sale would be subject.

- Sources of Financing: A Proposal must include an indication of expected sources of funds (including the amounts of debt and equity financing necessary, together with the indications from any third party sources of their commitment to provide such financing) and the steps required (and anticipated timing) to obtain definitive funding commitments. If the proposed purchaser is a newly-formed entity, the Proposal must identify the entity or entities that will provide a guarantee, an equity commitment letter, or any other credit support, and describe the nature of such support.

- Required Approvals & Timing: A Proposal must include a description of the level of review, authorization, and approval

| | |
|---|---|
| | within the proposed purchaser's organization that the potential Sale has received to date and an indication of any anticipated need (and associated timing) for further authorization, approvals and waivers and any other material conditions or time constraints related to closing.<br><br>• Governmental and Regulatory Approvals: A Proposal must include a statement or evidence of the Prospective Bidder's plan and ability to obtain all governmental, regulatory, or other third-party approvals to operate the Debtors' business from and after the closing of the Sale transaction and the proposed timing for the Prospective Bidder to undertake the actions required to obtain such approvals. |
| **Final Bid Deadline** | Any Prospective Bidder that intends to participate in the Auction must submit its Final Bid in writing to the Bid Notice Parties on or before **January 15, 2021 at 5:00 p.m. (prevailing Eastern Time)**; provided that the Debtors, after consultation with the Consultation Parties, shall have the discretion to extend in writing the Final Bid Deadline for any Prospective Bidder.  Any bid received after the Final Bid Deadline will not constitute a Qualified Bid. |
| **Qualified Bid Requirements** | In order for a Final Bid to qualify as a Qualified Bid, the Final Bid must satisfy the following requirements:<br><br>Purchased Assets: The Final Bid must identify: (i) the Assets to be purchased, and, solely to the extent applicable, the entity(ies) for which the Prospective Bidder would serve as the plan sponsor, and any Proposed Assumed Contracts; (ii) the liabilities, if any, to be assumed; (iii) the Purchase Price; provided that, if the Final Bid is for any Assets subject to one or more Stalking Horse Agreement(s), (a) the bid must allocate  the Purchase Price among the Assets subject to each such Stalking Horse Agreement(s) and (b) the Purchase Price must exceed the applicable Stalking Horse Overbid(s); (iv) the proposed form of adequate assurance of future performance with respect to the Proposed Assumed Contracts; (v) whether the Prospective Bidder intends to operate all or a portion of the Debtors' business as a going concern or to liquidate the applicable Assets;  and (vi) whether the Prospective Bidder intends to offer future employment to any of the Debtors' employees.<br><br>Identification of Bidder: The Final Bid must fully disclose the identity of each person or entity bidding for the applicable Assets or sponsoring, financing (including through the issuance of debt), or participating in such bid (including through license or similar arrangement), and the complete terms of any such participation, and must also disclose any past or present connections or agreements with the Debtors, any other known Prospective Bidder or Qualified Bidder, any officer or director of the foregoing, and |

any of the Debtors' prepetition secured lenders.

<u>Purchase Agreement</u>: The Final Bid must include (a) (X) an executed purchase agreement, based on (i) with respect to any Assets subject to a Stalking Horse Agreement, such Stalking Horse Agreement (including all exhibits and schedules thereto) and (ii) with respect to any other Assets, the Form Purchase Agreement or (Y) an executed plan support agreement that details the proposed classification and treatment of all claims, and all proposed representations, warranties, covenants and conditions precedent, (b) a proposed sale order, based on (i) with respect to any Assets subject to a Stalking Horse Agreement, the sale order proposed by the relevant Stalking Horse Bidder and (ii) with respect to any other Assets, the Sale Order, and (c) to the extent applicable, copies of the foregoing, marked to show any proposed modifications to each from the Sale Order or any Stalking Horse Agreement, as applicable.

<u>Financial Information</u>: The Final Bid must include a statement (i) representing that the Prospective Bidder is financially capable of consummating the contemplated Sale, together with the Prospective Bidder's audited financial statements for the prior two years and pro forma capital structure, or if such financial statements are not available, written evidence acceptable to the Debtors sufficient to support a conclusion that the Prospective Bidder is financially capable of consummating the contemplated Sale; <u>provided</u> that, if the Prospective Bidder is an entity specially formed for the purpose of purchasing the relevant Assets, the Final Bid must provide written evidence acceptable to the Debtors of the financial wherewithal of such Prospective Bidder's equity holder(s) and (ii) setting forth in reasonable detail the proposed structure and material terms of financing the contemplated Sale.

<u>Cash Component</u>: Each Qualified Bid must offer a minimum cash component sufficient to satisfy administrative expenses in the chapter 11 cases through conclusion.

<u>Good Faith Deposit</u>: Each Qualified Bid must be accompanied by a Good Faith Deposit in the form of cash (or other form acceptable to the Debtors in their sole and absolute discretion) in an amount equal to 10% of the Purchase Price. All Good Faith Deposits shall be held in escrow in a non-interest bearing account identified by the Debtors until no later than five (5) business days after the conclusion of the Auction and thereafter returned to the respective Qualified Bidders; <u>provided</u>, <u>however</u>, that if a bidder is selected as the Successful Bidder or a Backup Bidder, such bidder's Good Faith Deposit will be (i) in the case of the Successful Bidder, credited toward the Purchase Price and (ii) in the case of the Backup Bidder, returned on the earlier of five (5) business days after the

closing of the applicable Sale(s) or 60 days after the date of the Sale Hearing.  The Debtors reserve the right to increase the Good Faith Deposit in their sole and reasonable discretion.

Adequate Assurance: The Final Bid must include evidence of adequate assurance of the proposed purchaser's ability to perform future obligations under the Proposed Assumed Contracts, in a form that will permit immediate dissemination of such evidence to the applicable Counterparties.

Authorization: The Final Bid must include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the Final Bid, participation in the Auction and closing of the proposed Sale; provided that, if the Prospective Bidder is an entity specially formed for the purpose of purchasing the relevant Assets, the Final Bid must provide written evidence acceptable to the Debtors of the approval by the equity holder(s) of such Prospective Bidder.

Other Requirements: A Qualified Bid must: (i) state that the bid is not subject to or conditioned on any further due diligence or financing contingencies of any kind and be irrevocable until the selection of the Successful Bid; provided that if the Prospective Bidder is the Successful Bidder or the Backup Bidder with respect to any Assets, its bid must remain irrevocable until the earlier of (a) the consummation of the Sale(s) of the relevant Assets and (b) 60 days after the date of the Sale Hearing; (ii) if the bid is for any Assets subject to a Stalking Horse Agreement, state that the bid is not subject to conditions more burdensome than those in such Stalking Horse Agreement; (iii) state that the Prospective Bidder is committed to closing the Sale contemplated by the bid as soon as practicable; (iv) unless otherwise approved by the Court with respect to a particular Stalking Horse Bid, expressly acknowledge that the Prospective Bidder is not entitled to any bid protections; (v) expressly waive any right to assert an administrative expense claim for substantial contribution under section 503(b) of the Bankruptcy Code in connection with bidding on the applicable Assets and/or participating in the Auction; (vi) not contain any condition to the closing of the proposed Sale on the receipt of any third party approvals (excluding Court approval, any required regulatory approvals and/or effectiveness of a plan of reorganization); (vii) state that the Prospective Bidder agrees to serve as a Backup Bidder if such bidder's Qualified Bid is selected as the next highest or otherwise best bid after the Successful Bid for the applicable Assets; (viii) include contact information for the specific person(s) the Debtors should contact in the event they have any questions about such Final Bid; (ix) be received by the Bid Notice Parties by the Final Bid Deadline; (x) certify that the

| | |
|---|---|
| | Prospective Bidder did not collude with any other bidder(s) and is not otherwise a partnership, joint venture or another entity in which more than one bidder (or any of its affiliates) has a direct or indirect interest, unless consented to in writing by the Debtors, (xi) include a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Prospective Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements; and (xii) set forth each third-party regulatory and governmental approval required for the Prospective Bidder to consummate transaction and the time period within which the Prospective Bidder expects to receive such approvals and establishes to the satisfaction of the Debtors (after consultation with the Consultation Parties) a substantial likelihood that the Prospective Bidder will obtain such approvals by the stated time period. |
| | The Debtors, after consultation with the Consultation Parties, will make a determination regarding which Final Bids qualify as Qualified Bids, if any, and notify Prospective Bidders whether they have been selected as Qualified Bidders prior to the Auction. |
| **Bid Protections** | Other than any bid protections provided to Stalking Horse Bidder(s) approved by the Court, no party submitting a Final Bid will be entitled to a break-up fee, expense reimbursement, or any other bid protections. |
| **Auction** | <u>Time and Place</u>: If the Debtors receive more than one Qualified Bid for any Assets, the Debtors will conduct the Auction. The Auction, if required, will be conducted at the offices of Paul Hastings LLP, 600 Travis Street, Fifty-Eighth Floor, Houston, TX 77002 on **January 18, 2021**, **at a time to be determined**, or on such other date or at such other location as designated by the Debtors, provided that the Debtors may designate a telephonic or video-enabled platform in lieu of an in-person Auction.  If the Debtors receive no more than one Qualified Bid with respect to the Assets, the Debtors may determine, in their reasonable discretion, not to hold the Auction for such Assets and instead declare the applicable Qualified Bid as the Successful Bid for such Assets and request that the Court approve the applicable purchase agreement or plan support agreement at the Sale Hearing. |
| | Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or participating in the Auction and (ii) each Qualified Bid it |

| | submits at the Auction is a binding, good faith, and *bona fide* offer to purchase the Assets identified in such bid. |
|---|---|
| **Baseline Bids** | Prior to the commencement of the Auction, the Debtors will provide copies of the Baseline Bid for particular Assets to all other Qualified Bidders who have timely submitted Qualified Bids for such Assets. Bidding for such Assets at the Auction will commence at the amount of the Baseline Bid. |
| **Minimum Overbid** | At each round of bidding, Qualified Bidders will submit Bids for each subset of Assets that are higher than the Leading Bid for such Assets from the prior round (or, for the first round, the relevant Baseline Bid), by at least the Minimum Overbid; provided, however, that, to the extent that the Baseline Bid is a Stalking Horse Bid, the bidding for the relevant Assets will start at an amount equal to the sum of: (i) the Baseline Bid; (ii) the Minimum Overbid; and (iii) the aggregate amount of the applicable bid protections, if any.<br><br>The Debtors will, in their reasonable discretion, announce increases or reductions to the Minimum Overbids and the Stalking Horse Overbids, as applicable, at any time during the Auction.<br><br>Additionally, upon a Qualified Bidder's declaration of its bid, it must commit on the record that, if such bid is to be the Successful Bid or the Backup Bid, it will, following the Auction, pay the Incremental Deposit Amount. |
| **Leading Bid** | After the first round of bidding and before each subsequent round of bidding, the Debtors will announce, after consultation with the Consultation Parties, the Leading Bid and describe the material terms thereof. Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the Leading Bid.<br><br>The Debtors have the right to determine, in their sole discretion, and after consultation with the Consultation Parties, which bid (or combination of bids) is the highest or otherwise best bid with respect to any Assets and reject, at any time, without liability, any bid that the Debtors deem to be inadequate or insufficient, or not in conformity with, the requirements of the Bankruptcy Code, the Bidding Procedures, any order of the Court, or the best interests of the Debtors and their estates.<br><br>Each Leading Bid must remain open and binding on the applicable Qualified Bidder until and unless (i) the Debtors accept as a Leading |

| | |
|---|---|
| | Bid for the same Assets a bid by another Qualified Bidder during the Auction and (ii) such Leading Bid is not selected as the Backup Bid. |
| **No Round-Skipping** | To remain eligible to participate in the Auction for a particular subset of Assets, (i) each Qualified Bidder must submit a bid in each round of bidding for such Assets that is higher or otherwise better than the immediately preceding  bid submitted in such round of bidding and (ii) to the extent a Qualified Bidder fails to bid at each round of bidding or to submit a bid in each round of bidding that is higher or otherwise better than the immediately preceding bid for the applicable Assets submitted in such round of bidding, such Qualified Bidder will be disqualified from continuing to participate in the Auction for the applicable Assets. |
| **Successful Bid(s)** | Immediately prior to the conclusion of the Auction, the Debtors, after consultation with the Consultation Parties, will (i) determine, consistent with the Bidding Procedures, the Successful Bid(s) for the applicable Assets and (ii) notify all Qualified Bidders bidding for such Assets at the Auction of the identity of the Successful Bidder(s) for such Assets and the amount of the Purchase Price and other material terms of the Successful Bid.  As a condition to remaining the Successful Bidder, each Successful Bidder will wire to the Debtors, no later than one business day following the date on which the applicable Successful Bid is announced, the Incremental Deposit Amount in immediately available funds.<br><br>The determination of the Successful Bid(s) by the Debtors at the conclusion will be final, subject only to approval by the Court. |
| **Backup Bid(s)** | Prior to the conclusion of the Auction, the Debtors will (i) determine, after consultation with the Consultation Parties, the Backup Bid(s) for the applicable Assets and (ii) notify all Qualified Bidders bidding for the applicable Assets of the identity of the relevant Backup Bidder(s) and the amount of the Purchase Price and other material terms of the Backup Bid.  As a condition to remaining the Backup Bidder, each Backup Bidder will, no later than one business day following the date on which the applicable Backup Bid is announced, wire to the Debtors the Incremental Deposit Amount in immediately available funds.<br><br>The Backup Bid(s) will remain binding on the Backup Bidder(s) until the earlier of (i) the closing of the Sale(s) for the applicable Assets and (ii) 60 days after the date of the Sale Hearing.  If the Successful Bidder(s) for the applicable Assets fail to consummate the Sale(s), the Backup Bidder(s) will be deemed the new Successful Bidder(s) for the applicable Assets, and the Debtors will be |

| | |
|---|---|
| | automatically authorized, but not required, to consummate the Sale(s) of the applicable Assets with the Backup Bidder(s).<br><br>The determination of the Backup Bid(s) by the Debtors at the conclusion will be final, subject only to approval by the Court. |
| **As-Is-Where-Is** | Any Sale will be on an "as is, where is" basis and without representations or warranties of any kind by the Debtors, their advisors, representatives or agents, or the Debtors' chapter 11 estates, except, with respect to the Debtors only, solely to the extent expressly set forth in the Successful Bidder(s)' purchase agreement(s) or plan support agreement, as applicable. Each Successful Bidder's purchase agreement(s) or plan support agreement, as applicable, will include a statement that the Successful Bidder did not rely on any of the Debtors' or any of their advisors' or representatives' written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtors' businesses or the Assets or the completeness of any information provided in connection therewith, except, with respect to the Debtors only, solely to the extent expressly set forth in the purchase agreement(s) or plan support agreement, as applicable. |
| **Auction Results** | Promptly after the conclusion of the Auction, the Debtors will file with the Court, serve on the Sale Notice Parties and cause to be published on the website maintained by the Debtors' noticing agent (the "DRC Website"), the results of the Auction, which will include (i) copies of all Successful Bid(s) and Backup Bid(s), if any, (ii) the identities of the Successful Bidder(s) and Backup Bidder(s), and (iii) a copy of the Purchase Agreements(s) of the Successful Bidder(s). |

11.    The timeline on which the Debtors propose to conduct the Sale(s) is as follows:

| | |
|---|---|
| **Proposal Deadline** | January 6, 2021, at 5:00 p.m. (prevailing Eastern Time) |
| **Stalking Horse Bid Deadline** | January 6, 2020, at 5:00 p.m. (prevailing Eastern Time) |
| **Stalking Horse Designation Deadline** | January 12, 2020, at 5:00 p.m. (prevailing Eastern Time) |
| **Final Bid Deadline** | January 15, 2021, at 5:00 p.m. (prevailing Eastern Time) |

| Auction | January 18, 2021, at a time to be determined (subject to extension by Debtors) |
|---|---|
| Objection Deadline | January 27, 2021, at 5:00 p.m. (prevailing Eastern Time) |
| Deadline for Debtors to reply to any objections to Sale or assumption and assignment of Contracts | February 1, 2021, at 5:00 p.m. (prevailing Eastern Time) |
| Sale Hearing | February [3], 2021, as determined by, and subject to the availability of, the Court |

**B.      Notice Procedures**

12.      The Debtors request approval of the Sale Notice, substantially in the form attached to the Bidding Procedures Order as Exhibit 2.  Within two days of entry of the Bidding Procedures Order, the Debtors will serve the Sale Notice by first class mail or email on: (i) the Office of the United States Trustee, 844 N King St #2207, Wilmington, DE 19801, Attn: Joseph McMahon and John Schanne, joseph.mcmahon@usdoj.gov, john.schanne@usdoj.gov; (ii) the official committee of unsecured creditors (if any) appointed in these cases and its counsel; (iii) the Internal Revenue Service; (iv) the United States Attorney for the District of Delaware; (v) all of the Debtors' known creditors (for whom identifying information and addresses are known to the Debtors); (vi) all parties who have filed a notice of appearance and request for service of papers in these cases pursuant to Bankruptcy Rule 2002; (vii) all persons and entities known by the Debtors to have expressed an interest in the Assets during the past 12 months and (viii) all other persons and entities as directed by the Court (collectively, the "Sale Notice Parties").

13.      In addition, the Debtors will (i) post the Sale Notice and the Bidding Procedures Order on the website maintained by Donlin Recano & Company, the Debtors' claims and noticing agent (the "Noticing Agent"), located at https://www.donlinrecano.com/cred (the "DRC Website") and (ii) no later than five (5) business days after entry of the Bidding Procedures

Order, cause the Sale Notice to be published once in the *San Francisco Chronicle* and, in the Debtors' discretion, any appropriate local or trade periodicals (the "Publication Notice").

14.     The Debtors submit that the procedures described above, together with the Assumption and Assignment Procedures described below (collectively, the "Notice Procedures") constitute adequate and reasonable notice of the key procedures, dates and deadlines, including the Final Bid Deadline, the Auction, the potential assumption and assignment of the Contracts, and the deadlines to object to the Sale(s) and the proposed cure amounts (the "Cure Amounts").

**C.     Assumption and Assignment Procedures**

15.     In connection with each Sale, the Debtors propose to assume and assign to the Successful Bidder(s) the applicable Contracts in accordance with the following procedures:

a.     Notice of Proposed Assumed Contracts: Promptly after the Auction has concluded, the Debtors will file with the Court, serve on the Sale Notice Parties and cause to be published on the DRC Website, the Notice of Proposed Assumed Contracts, which will (i) identify the Contracts proposed to be assumed and assigned, (ii) list the Debtors' good faith calculation of the Cure Amount with respect to such Contracts, (iii) expressly state that assumption and assignment of any particular Contract is not guaranteed, and (iv) prominently display the deadline for filing objections to the assumption and assignment of the Contracts and/or the proposed Cure Amounts.

b.     Objections: Any counterparty to the Proposed Assumed Contracts (a "Counterparty") that wishes to object to the assumption and assignment of its Contract, including an objection to proposed Cure Amounts or objections based on adequate assurance of future performance must file its objection with the Court and serve it on the Objection Recipients (as defined in the Bidding Procedures Order) by no later than **January 27, 2021, at 5:00 p.m. (prevailing Eastern Time)**.  Such Objection must state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof.

i.     Resolution: If the parties (after consultation with the Consultation Parties) are unable to consensually resolve any Objection prior to the commencement of the Sale Hearing, the Court will make the determinations relating to

such Objection at or subsequent to the Sale Hearing; <u>provided</u> that the determination of whether an Objection may be heard at the Sale Hearing is in the Debtors' and the Court's discretion. An adjourned Objection may be resolved after the closing of the applicable Sale if the relevant purchase agreement provides for the establishment of a cash reserve equal to the cure amount the objecting Counterparty reasonably believes is required (or as otherwise ordered by the Court).

ii.     <u>Assumption and Assignment</u>: Upon resolution of an Objection, provided that neither the Debtors nor the applicable Successful Bidder have determined to exclude the relevant Contract from the applicable Sale, and upon the payment of the applicable Cure Amount, if any, the Contract will be deemed assumed and assigned to the applicable Successful Bidder as of the closing date of the applicable Sale.

iii.    <u>Failure to Timely Object</u>: If a Counterparty fails to timely file and serve an Objection, the Counterparty will be deemed to have consented to the Cure Amount and any proposed adequate assurance of future performance and forever will be barred from asserting any other cure amount or proposed adequate assurance against the Debtors, the applicable Successful Bidder, or their respective properties, and such Cure Amount will constitute the only amount necessary to cure outstanding monetary defaults under the applicable Contract in accordance with section 365(b) of the Bankruptcy Code, notwithstanding anything to the contrary in such Contract or any other document.

**<u>Proposed Form Sale Order</u>**

16.    The Debtors have prepared the proposed form Sale Order, which is attached hereto as **<u>Exhibit B</u>** and will be provided to all prospective bidders in connection with the Sale of the Assets. As set forth in further detail below and in the Bidding Procedures, potential bidders will be required to submit to the Debtors a modified proposed Sale Order, revised to reflect the

terms of their respective bids.  In accordance with Rule 6004-1(b)(iv) of the Local Rules, the

material terms of the proposed Sale Order are set forth in the following table:[3]

| Releases | The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential claims of Successor or Transferee Liability against the Buyer, which releases shall be deemed to have been given in favor of the Buyer by all holders of Encumbrances.<br><br>Sale Order ¶ 16.<br><br>Upon the assignment of the Assumed Contracts to the Buyer in accordance with the terms of the Purchase Agreement, the Buyer shall be deemed to be substituted for the applicable Debtor as a party to each Assumed Contract, and the Debtors and their estates shall be released, from any liability under the Assumed Contract occurring after such assignment<br><br>Sale Order ¶ 22 |
|---|---|
| **Relief from Bankruptcy Rule 6004(h) Stay** | The Debtors seek relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h) with respect to the effectiveness of the Sale Order.<br><br>Sale Order ¶¶ G, 33. |
| **Good Faith Deposit** | As noted in the Bidding Procedures, each Qualified Bid shall be accompanied by a good faith deposit (a "Good Faith Deposit") in the form of cash (or other form acceptable to the Debtors in their sole and absolute discretion) in an amount equal to 10% of the Purchase Price.  All Good Faith Deposits shall be held in escrow in a non-interest-bearing account identified by the Debtors until no later than five (5) business days after the conclusion of the Auction and thereafter returned to the respective Qualified Bidders; provided, however, that if a bidder is selected as the Successful Bidder or as a Backup Bidder such bidder's Good Faith Deposit shall be (i) in the case of the Successful Bidder, credited toward the Purchase Price, and (ii) in the case of the Backup Bidder, returned on the earlier of five (5) business days after the closing of the applicable Sale(s) or 60 days after the date of the Sale Hearing.  The Debtors reserve the right |

---

[3]  This summary is qualified, in its entirety by the provisions of the proposed Sale Order.  Capitalized terms used in this table but not previously defined have the meanings set forth in this Motion or in the Sale Order, as applicable.

| | |
|---|---|
| | to increase the Good Faith Deposit in their sole and reasonable discretion.<br><br>Sale Order ¶ 6. |
| **Record Retention** | Upon consummation of the Sale, and to the extent applicable, the Debtors shall retain originals or copies of, and preserve in accordance with their discovery obligations, all hard copy documents and data and information that constitute Acquired Assets and any other document, data or information stored on or in servers, backup devices, mobile devices, electronic storage devices, or miscellaneous IT equipment, in each case, that constitutes Acquired Assets, currently in the Debtors' possession, custody, or control pertaining to pending or threatened litigation or necessary to administer these cases ("Case Records").<br><br>Sale Order ¶ 34. |
| **Successor Liability** | Neither entry into the Purchase Agreement nor the sale, transfer or other disposition of the Acquired Assets pursuant to the Purchase Agreement will subject the Buyer or its affiliates, successors or assigns or any of their respective assets (including the Acquired Assets) to any liability for claims, obligations or Encumbrances asserted against the Debtors or the Debtors' interests in the Acquired Assets by reason of such actions under any laws.<br><br>By virtue of the consummation of the Sale, (i) the Buyer is not a continuation of the Debtors and their respective estates, there is no continuity or continuity of enterprise between the Buyer and the Debtors, there is no common identity between the Debtors and the Buyer, (ii) the Buyer is not holding itself out to the public as a continuation of the Debtors or their respective estates, and (iii) the Sale does not amount to a consolidation, merger or de facto merger of the Buyer and the Debtors and/or the Debtors' estates. Accordingly, the Buyer and its affiliates, successors and assigns are not and are not deemed to be a successor to the Debtors or their respective estates as a result of the consummation of the Sale<br><br>Sale Order ¶ P. |

**Basis for Relief**

**A.    The Bidding Procedures Are Appropriate and Are in the Best Interests of the Debtors and their Estates**

17.    The paramount goal of any proposed sale of property of the debtor's estate is to maximize the value of the proceeds received by the estate.[4] Courts uniformly recognize that this paramount goal is best served by establishing procedures to enhance competitive bidding.[5]

18.    The proposed Bidding Procedures are designed to facilitate a sale process for which will allow the Debtors to maximize the value of the Assets. With the assistance of their advisors, the Debtors have structured the Bidding Procedures to encourage competitive bidding, while providing that the Debtors will only review and analyze the bids submitted by Qualified Bidders who will have been vetted prior to the Auction. Even if no Auction is held for certain Assets because no more than one Qualified Bid is received for such Assets, the resulting purchase price will, conclusively, be fair because of the public and open marketing process.

19.    The Bidding Procedures will allow the Debtors to conduct the Auction in a fair, controlled, and transparent manner with bidders that demonstrate the financial wherewithal to close. The fairness and reasonableness of the consideration to be paid by the Successful Bidder(s) will be demonstrated by adequate market exposure—the best means for establishing

---

[4]    *See, e.g.*, *Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003) (the debtor has the "fiduciary duty to maximize the value of the bankruptcy estate."); *see also In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) ("a primary objective of the [Bankruptcy] Code [is] to enhance the value of the estate at hand").

[5]    *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 537 (3d Cir. 1999) (noting that bidding procedures that promote competitive bidding provide a benefit to a debtor's estate); *In re Fin'l News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1992) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for fair and efficient resolution of bankrupt estates.").

whether the estates will receive a fair price.  Courts in this and other districts routinely approve procedures substantially similar to the proposed Bidding Procedures.[6]

20.     Additionally, any Stalking Horse Agreement(s) the Debtors may be able to identify and execute will enable the Debtors to set a floor for the value of the applicable Assets, increasing the likelihood that the Debtors will receive the greatest possible consideration.  The Debtors will enter into a Stalking Horse Agreement only if the Debtors, in consultation with the Consultation Parties, believe that such agreement will maximize the ultimate sale price of the applicable Assets, and such agreements will limit any proposed Termination Payment to not more than three percent (3%) of the Stalking Horse Bidder's purchase price  Accordingly, the Debtors believe the Bidding Procedures, including the Stalking Horse Bid Protections contemplated therein are in the best interests of the Debtors and their estates, and will serve to maximize the value of the Assets.

**B.    Assumption and Assignment Procedures are Appropriate**

21.     The Assumption and Assignment Procedures are designed to ensure that the Counterparties' rights are fully protected.  Section 365 of the Bankruptcy Code, which contains the requirements for assuming executory contracts and unexpired leases, provides, in pertinent part, that the debtor may only assume (or assume and assign) an executory contract or unexpired lease if it: (a) cures, or provides adequate assurance that it (or its assignee) will promptly cure, any

---

[6]    *See, e.g.*, *In re M&G USA Corp.*, No. 17-12307 (BLS), [Docket No. 490] (Bankr. D. Del. Dec. 14, 2017); *In re Cent. Grocers, Inc.*, No. 17-10993 (LSS), [Docket No. 338] (Bankr. D. Del. June 2, 2017); *In re Golfsmith, Inc.*, Case No. 16-12033 (CSS) [Docket No. 196] (Bankr. D. Del. Oct. 6, 2016); *In re Fairway Group Holdings Corp.*, No. 20- 10161 (JLG), [Docket No. 202] (Bankr. S.D.N.Y. Feb. 21, 2020); *In re Fusion Connect, Inc.*, No. 19-11811 (SMB), [Docket No. 164] (Bankr. S.D.N.Y. July 3, 2019); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP), [Docket No. 2351] (Bankr. E.D. Va. Mar. 23, 2018); *In re Angelica Corp.*, No. 17-10870 (JLG), [Docket No. 137] (Bankr. S.D.N.Y. Apr. 28, 2017).

monetary defaults existing under such contract or lease; and (b) provides adequate assurance of future performance under such contract or lease, including by its assignee.[7]

22.      As set forth in the Assumption and Assignment Procedures, the Debtors propose to file with the Court, and serve on each Counterparty, the Notice of Proposed Assumed Contracts indicating the Debtors' calculation of the Cure Amount for each such Contract.  The Counterparties will have the opportunity to file objections to the proposed assumption and assignment, as well as to the proposed Cure Amount.

23.      While not defined in the Bankruptcy Code, the term "adequate assurance" has "a practical, pragmatic construction based upon the facts and circumstances of each case."[8]  While no single standard governs every case, the adequate assurance requirement "attempts to strike a balance between two sometimes competing interests, the right of the contracting non-debtor to get the performance it bargained for and the right of the debtor's creditors to get the benefit of the debtor's bargain."[9]  Adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of applicable business or property assigned.[10]

24.      The Bidding Procedures require all Qualified Bidders to provide financial and other information that would provide the Counterparties with adequate assurance of future performance

---

[7]   11 U.S.C. §§ 365(b); 365(f)(2).

[8]   *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (citation omitted); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance); *In re Alipat, Inc.*, 36 B.R. 274, 276-77 (Bankr. E.D. Mo. 1984) (recognizing that the term is "borrowed . . . from Section 2-609 of the Uniform Commercial Code," which "suggest[s] that adequate assurance is to be defined by commercial rather than legal standards . . . [and] factual considerations")

[9]   *In re Luce Industries, Inc.*, 8 B.R. 100, 107 (Bankr. S.D.N.Y. 1980).

[10]   *See, e.g.*, *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding that industrial expertise, past success in running a similar business, and financial wherewithal satisfied the adequate assurance requirement of section 365 of the Bankruptcy Code).

under the applicable Contracts.  Counterparties unsatisfied with the proposed adequate assurance of future performance will be able to lodge objections with respect thereto.

25.    To facilitate the assumption or assumption and assignment of the Contracts, the Debtors further request that the Court find that all anti-assignment provisions in the Contracts, whether such provisions expressly prohibit or have the effect of restricting or limiting assignment of such Contracts, are unenforceable under section 365(f) of the Bankruptcy Code.  Section 365(f) "performs an important function for maximizing the value in an estate for creditors [by] protec[ing] the body of creditors as a whole from provisions . . . that frustrate the estate's ability to convert the economic value . . . into cash that can increase creditor recoveries.  [It] can, and should, be used to invalidate provisions that frustrate those goals…"[11]

26.    Accordingly, the Debtors submit that the requirements of section 365 of the Bankruptcy Code with respect to the assumption and assignment of the Contracts have been satisfied, and that the Assumption and Assignment Procedures should be approved.

**C.    Proposed Timeline is Appropriate**

27.    The Debtors believe that conducting the sale process in the time frame proposed is reasonable and will provide parties in interest with sufficient time and information necessary to formulate and submit bids to purchase the Assets or any subset thereof. In determining the appropriate timeline, the Debtors balanced the need to provide an adequate period for potential purchasers to conduct due diligence and submit bids on a fully informed basis with the Debtors' need to sell the Assets as expeditiously as possible while they have sufficient funding to do so.

28.    The Debtors have significant business and financial imperatives to move quickly. In formulating the proposed timeline, the Debtors have considered their liquidity needs and

---

[11]    *In re Ames Dep't Stores, Inc.*, 316 B.R. 772, 794 (Bankr. S.D.N.Y. 2004) (citation omitted).

desire to shorten their time in chapter 11 bankruptcy. The proposed timeline offers the estates the best chance of maximizing value, while allowing the Debtors to fund the sale process.

**D.      The Notice Procedures Are Appropriate and Comply with Bankruptcy Rule 2002**

29.      Bankruptcy Rule 2002(a) requires the Debtors to provide creditors with twenty-one days' notice of the Sale Hearing. Bankruptcy Rule 2002(c) requires such notice to include the date, time, and place of the Auction and the Sale Hearing, and the deadline for filing any objections to the proposed Sale(s). The Sale Notice will be served in a manner that provides at least twenty-one (21) days' notice of, among other things, the Bidding Procedures, the Auction, and the Sale Hearing. Moreover, the Debtors are publishing the Publication Notice in the *San Francisco Chronicle* and may publish additional Publication Notices.

30.      The Debtors further believe that the Notice of Proposed Assumed Contracts is reasonably calculated to provide all counterparties to the Assigned Contracts with proper notice of the potential assumption and assignment of the applicable Assigned Contract and any Cure Amounts relating thereto.

31.      The Debtors submit that the Notice Procedures comply with Bankruptcy Rule 2002 and are reasonably calculated to provide all creditors and known parties in interest with adequate and timely notice of the Bidding Procedures, the Auction, the potential assumption and assignment of Contracts, the Sale Hearing, and the proposed Sale(s). Accordingly, the Debtors request that the Court approve the Notice Procedures, including the form and manner of the Sale Notice, and find that no other or further notice is necessary or required.

32.      For all of the foregoing reasons, the proposed Bidding Procedures are reasonable, appropriate and within the Debtors' sound business judgment. They provide the Debtors with the

best method for obtaining the maximum realizable value for the Assets. Thus, the Bidding

Procedures should be approved.

**E.      Approval of Sale(s) Is Warranted Under Section 363 of the Bankruptcy Code**

33.     Section 363 of the Bankruptcy Code provides that the debtor "after a notice and a

hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b).  Further, section 105(a) of the Bankruptcy Code provides that the

court "may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title."  11 U.S.C. § 105(a).

34.     While the Bankruptcy Code does not specify the appropriate standard for approving

the sale of property out of the ordinary course under section 363(b), courts uniformly agree that

the business judgment standard applies.[12]  Courts typically apply four factors in determining

whether a section 363 sale is appropriate under the business judgment standard—namely,

whether: (a) a sound business justification exists for the sale; (b) adequate and reasonable notice

of the sale was provided to interested parties; (c) the sale will produce a fair and reasonable price

for the property; and (d) the parties have acted in good faith.[13]

**1.      The Debtors Have Demonstrated a Sound Business Justification for
            the Proposed Sale(s)**

35.     When a debtor demonstrates a valid business justification for disposition of estate

property outside of the ordinary course of business, a presumption arises that the debtor's decision

---

[12]    *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513 (7th Cir. 1991)); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

[13]    *Id.* at 1070 (setting forth the "sound business" purpose standard for the sale of the debtor's assets under section 363 of the Bankruptcy Code); *In re Decora Indus., Inc.*, Case No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (adopting *Lionel* factors) (citing *Guilford Transportation Industries, Inc. v. Delaware & Hudson Ry. Co. (In re Delaware & Hudson Ry. Co.)*, 124 B.R. 169, 176 (D. Del. 1991) (listing non- exclusive factors that may be considered by a court in determining whether there is a sound business purpose for an asset sale).

24

was made "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."[14]

36.     As set forth above and in the First Day Declarations, the Debtors have a sound business justification for selling the Assets pursuant to the Bidding Procedures.  The Debtors' precarious financial position does not permit them to continue operating their business as it existed prior to the Petition Date.  The sale of the Assets is necessary in order to maximize the value of the Debtors' estates and consistent with their fiduciary duties to their economic stakeholders.

### 2.     The Notice Procedures Are Appropriate and Comply with Bankruptcy Rule 2002

37.     For the reasons previously articulated, the Debtors submit that adequate and reasonable notice of the sale will be provided to interested parties.

### 3.     The Sale(s) Will Produce a Fair and Reasonable Price

38.     The Debtors believe that the Bidding Procedures are reasonably designed to enable the Debtors to generate the highest or otherwise best value for the Assets.  The Bidding Procedures set up a controlled, fair and open process that the Debtors believe will encourage bidding only from seriously interested parties with the financial and operational capacity to purchase the Assets. The Bidding Procedures provide an appropriate framework for the Debtors to review, analyze, and compare all bids received to determine which bids are in the best interests of the Debtors' estates and their economic stakeholders.   The Bidding Procedures include an Auction that includes, among other features, Baseline Bids, a Minimum Overbid, the announcement of the Leading Bid after the first round of bidding and between each subsequent round, and no round-skipping.

---

[14]     *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

Further, each Qualified Bidder will confirm in writing that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction and (ii) each Qualified Bid it submits at the Auction is a binding, good faith and bona fide offer to purchase the Assets identified in such bid. The Bidding Procedures will serve the important objectives of obtaining not only a fair and reasonable purchase price for the Assets, but also the highest or best value for the Assets, which will inure to the benefit of all parties in interest in these chapter 11 cases. The Debtors' compliance with the Bidding Procedures Order and the Bidding Procedures will provide the basis to find that any sale of the Acquired Assets does not constitute a fraudulent transfer because the purchase price represents reasonably equivalent value and is fair and reasonable.

39.    Courts recognize that procedures established for the purpose of enhancing competitive bidding are consistent with the fundamental goal of maximizing value of a debtor's estate.[15]  As such, the Sale(s) will serve the paramount goal of maximizing the value of the Debtors' estates.

**4.    The Bidding Procedures Ensure a Good Faith Process and the Ultimate Purchaser of the Applicable Assets Is Entitled to the Protections of Section 363(m) of the Bankruptcy Code.**

40.    Section 363(m) of the Bankruptcy Code is designed to protect the sale of a debtor's assets to a good faith purchaser. Specifically, section 363(m) provides that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 363(m).

---

[15]    *See, e.g.*, *In re Integrated Res. Inc.*, 147 B.R. at 659 (observing that bid procedures "encourage bidding" and "maximize the value of the debtor's assets").

41.     While the Bankruptcy Code does not define good faith, the Third Circuit has held that indicia of bad faith typically include "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."[16]

42.     The Bidding Procedures are designed to produce a fair and transparent bidding process. The Successful Bidder(s) and the Debtors will have negotiated at arm's-length and in good faith, pursuant to a transparent process that, if necessary, will culminate in a public Auction. Notably, the Bidding Procedures require each Qualified Bidder to certify that it has not colluded with any other party in making its bid or participating in the Auction.  As such, the Debtors submit that any ultimate purchaser(s) of the Assets will be good faith purchasers, entitled to the protections of section 363(m) of the Bankruptcy Code.

**F.      Sale(s) Free and Clear of All Encumbrances Is Appropriate**

43.     The purpose of a sale order authorizing the transfer of assets free and clear of all claims, liens, interests, and other encumbrances is to provide an assurance to potential bidders that, after the sale closes, no party will be able to assert claims against the purchaser(s) arising from a seller's pre-sale conduct.  Without such assurances, potential bidders may not be willing to participate in the Auction, or may submit smaller bid amounts.  Accordingly, the Debtors request that the Court authorize the Sale(s) free and clear of any liens, claims, interests, and other encumbrances (with the exception of permitted encumbrances and assumed liabilities), with all such liens, claims, interests, and encumbrances attaching to the proceeds of the Sale(s) in the same order of priority, and with the same validity, force and effect as existed before the Sale(s).

---

[16]     *Cumberland Farms Diary, Inc. v. Abbotts Dairies of Penn., Inc. (In re Abbotts Diaries of Penn., Inc.)*, 788 F.2d 143, 147 (3d Cir. 1986) (quoting *Hoese Corp. v. Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983) (other citations omitted).

44.     Section 363(f) of the Bankruptcy Code authorizes a debtor in possession to sell assets "free and clear of any interest in such property of an entity other than the estate" if: (i) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (iii) such entity consents; (iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (iv) such interest is in bona fide dispute; or (v) such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.[17]

45.     As section 363(f) of the Bankruptcy Code is stated in the disjunctive, when proceeding pursuant to section 363(b), it is only necessary for a debtor to meet one of the five conditions of section 363(f).[18]

46.     The Debtors anticipate that, whichever Sale(s) they pursue, such Sale(s) will satisfy at least one of the five statutory prerequisites under section 363(f) of the Bankruptcy Code, either because the sale proceeds will be greater than the liens, claims, interests, and encumbrances on the Assets, the affected parties consent to the Sale of the applicable Assets, or such parties could be compelled, in legal or equitable proceeding, to accept a money satisfaction of their interests, to warrant the Sale(s) free and clear of all liens, claims, interests, and other encumbrances.

### **Reservation of Rights**

47.     Nothing contained in this motion is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any prepetition claim;

---

[17]   11 U.S.C. § 363(f)(1)-(5).

[18]   *See id.*

(d) an admission as to the validity, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (e) a waiver of any claims or causes of action which may exist against any entity; or (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

## **Bankruptcy Rule 6004(a) and (h)**

48.     To implement the foregoing successfully, the Debtors request that the Court find that notice of this motion is adequate pursuant to Bankruptcy Rule 6004(a) under the circumstances, and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property pursuant to Bankruptcy Rule 6004(h).  As explained above and in the First Day Declarations, the relief requested in this motion is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to justify finding that the notice requirements pursuant to Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## **Notice**

49.     Notice of this motion has been given to (i) the U.S. Trustee; (ii) the Internal Revenue Service; (iii) the United States Attorney for the District of Delaware; (iv) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (v) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (vi) all other parties entitled to notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this motion is required.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request the Court (i) enter the Bidding Procedures Order substantially in the form attached hereto as **Exhibit A**, (ii) enter the Sale Order(s), substantially in the form attached as **Exhibit B**, authorizing the Sale(s) of the Assets to the Successful Bidder(s), and (iii) grant such other and further relief as the Court may deem proper.

Dated: November 18, 2020
Wilmington, Delaware

/s/ Scott D. Cousins
Scott D. Cousins (no. 3079)
**COUSINS LAW LLC**
Brandywine Plaza West
1521 Concord Pike, Suite 301
Wilmington, Delaware 19803
Telephone:    (302) 824-7081
Facsimile: :    (302) 295-0331
Email: scott.cousins@cousins-law.com

- and -

James T. Grogan (admitted *pro hac vice*)
Mack Wilson (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
Telephone:    (713) 860-7300
Facsimile:    (713) 353-3100
Email:        jamesgrogan@paulhastings.com
              mackwilson@paulhastings.com

- and -

G. Alexander Bongartz (admitted *pro hac vice*)
Derek Cash (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone:    (212) 318-6000
Facsimile:    (212) 319-4090
Email:        alexbongartz@paulhastings.com
              derekcash@paulhastings.com

*Proposed Co-Counsel to the Debtors*