**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CRED INC., *et al.*, | Case No.:  20-12836 (JTD) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date: December 9, 2020 at 2:00 p.m. (ET)** |
| | **Objection Deadline: December 2, 2020 at 4:00 p.m. (ET)** |

**MOTION OF UPGRADEYA INVESTMENTS, LLC FOR RELIEF**
**FROM STAY UNDER BANKRUPTCY CODE SECTION 362**

UpgradeYa Investments, LLC ("UpgradeYa"), by and through its undersigned counsel, respectfully requests the entry of an order granting relief from the automatic stay pursuant to section 362(d) of title 11 of chapter 11 of the United States Code 11 U.S.C. §§ 101, *et seq.* (as amended or modified, the "Bankruptcy Code"), rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to allow UpgradeYa to recover its Collateral (defined below) held by the above-captioned debtors and debtors-in-possession (the "Debtors").  In support of this motion (the "Motion"), UpgradeYa filed contemporaneously herewith the *Declaration of Marc Parrish in Support of the Motion of UpgradeYa Investments, LLC for Relief from Stay under Bankruptcy Code Section 362* (the "Parrish Declaration") and respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

## PRELIMINARY STATEMENT[2]

The Debtors are holding (or should be holding) 478.17 of UpgradeYa's Bitcoins valued at approximately $7.3 million as of the Petition Date.  UpgradeYa pledged these Bitcoins as collateral (the "Collateral") to secure a $2 million prepetition Line of Credit issued by the Debtors that UpgradeYa has fully drawn.  The Collateral, which secures UpgradeYa's obligation to repay the Line of Credit, is not property of the Debtors' estates.  Instead, the Debtors are merely holding the Collateral as a bailee until the Line of Credit is paid off.  UpgradeYa repeatedly has informed the Debtors that it stands ready, willing and able to repay all of the obligations outstanding under the Line of Credit in return for its Collateral.  However, despite the fact UpgradeYa's offered repayment would result in the injection of $2 million in cash into estates that filed for bankruptcy with a cash balance of $47,000, the Debtors have been unresponsive to these offers.

In light of the Debtors' silence, UpgradeYa seeks relief from the automatic stay to obtain its Collateral upon repayment of the Line of Credit from the Debtors.[3]  As soon as UpgradeYa receives confirmation that its Collateral will be returned in full, it will repay all of the outstanding obligations under the Line of Credit and, as such, provide the Debtors with much needed liquidity for the benefit of the Debtors' estates and their creditors.

---

[2] Terms utilized but not otherwise defined in this Preliminary Statement shall have the meanings ascribed to them in the body of this Motion.

[3] UpgradeYa also by this Motion seeks return of the Collateral from any third-party vendor used by the Debtors to hold the Collateral and/or, in the event that the Collateral was stolen or otherwise misappropriated, the Debtors' applicable insurance provider.  As explained in the First Day Declaration, the Debtors' bankruptcy filing was precipitated by, among other things, a series of malfeasance and the theft of millions of dollars' worth of Bitcoin allegedly perpetrated by the Debtors' former Chief Capital Officer and an Imposter (as defined in the First Day Declaration).  *See* First Day Declaration, ¶¶ 18-29, 32-34.  While the Debtors have advised UpgradeYa that the Debtors are holding all of the Bitcoin UpgradeYa pledged as Collateral (*see* Parish Declaration at Exhibit J), UpgradeYa requests this relief out of an abundance of caution.

2

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  UpgradeYa confirms its consent, pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are Bankruptcy Code section 362(d), Bankruptcy Rule 4001 and Local Rule 4001-1.

## FACTUAL BACKGROUND

***The Debtors' Bankruptcy Case***

4.      On November 9, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      As set forth in the *Declaration of Drew McManigle, Founder and Chief Executive Officer, Macco Restructuring Group, LLC* [D.I. 16] (the "McManigle Declaration"), as of November 7, 2020, the Debtors had only $47,000 in cash "available for operating," total assets of approximately $67.8 million and total liabilities of approximately $136.5 million.  McManigle Declaration, p. 6; Appendix B.

7.    Additional information regarding the events leading up to the Petition Date are set forth in (i) the *Declaration of Daniel Schatt in Support of Debtors' Chapter 11 Petitions and First Day Motions* [D.I. 12] (the "First Day Declaration") and (ii) the McManigle Declaration.

***The Loan and Security Agreement***

8.    UpgradeYa and Debtor Cred (US) LLC ("Cred") are parties to that certain Loan and Security Agreement (the "Agreement") dated April 20, 2020.[4]  Pursuant to the Agreement, the Debtors agreed to provide UpgradeYa with a $2 million revolving line of credit (the "Line of Credit") secured by Bitcoin pledged by UpgradeYa as collateral in an amount equal to an initial maximum loan-to-value ratio of fifty percent (50%).  Agreement, § 2.1, Schedule A.  On April 21, 2020, Cred identified thirty (30) e-wallet accounts (the "Collateral Accounts") maintained by Fireblocks Inc. ("Fireblocks") to hold the Bitcoin to be deposited by UpgradeYa as collateral. Parrish Declaration, ¶ 3.  Pursuant to section 1.4 of the Agreement, UpgradeYa "may prepay principal in full or in part at any time without the payment of a prepayment fee or premium." Agreement, § 1.4.

9.    As set forth on the Form of Draw Certificate dated April 30, 2020 (the "Draw Certificate"),[5] UpgradeYa drew the full $2 million Line of Credit (the "LOC Draw").   In connection therewith, between April 23, 2020 and April 27, 2020, UpgradeYa deposited 531.3004746 Bitcoin as Collateral[6] into the Collateral Accounts.  Parrish Declaration, ¶ 3. Pursuant to the Draw Certificate, the Collateral is required to be returned to UpgradeYa "[u]pon payment in full of all principal, interest, and other amount due to [Cred]."  *See*, Draw Certificate, p. 2.

---

[4] A true and correct copy of the Agreement is attached to the Parrish Declaration as **Exhibit A**.

[5] A true and correct copy of the Draw Certificate is attached to the Parrish Declaration as **Exhibit B**.

[6] On April 27, 2020, the market value of the Collateral was $4,121,010.88.  Parrish Declaration, ¶ 3.

{1311.001-W0063572.}

10.     Pursuant to that certain Line of Credit Agreement dated April 30, 2020 between Debtor Cred LLC and UpgradeYa (the "<u>CredEarn Agreement</u>"),[7] UpgradeYa allocated $120,000 of the LOC Draw as a loan to the Debtors as part of the Debtors' CredEarn program that was to be used to pay the interest accrued on the Line of Credit while earning eight percent (8%) interest.  Parrish Declaration, ¶ 5.

11.     Between April 2020 and August 2020, the value of the Collateral increased substantially as a result of a rise in the price of Bitcoin.  *Id.* at ¶ 6.  Indeed, on August 20, 2020, the Collateral had a market value of $6,325,132.15 – an increase of over $2 million from the time it was initially pledged.  *Id.*  Accordingly, UpgradeYa requested to withdraw ten percent (10%) of the Bitcoin it had deposited into the Collateral Accounts to return the deposited Collateral to a loan-to-value ratio closer to the requisite fifty percent (50%).  *See id.* at ¶ 7.

12.     On August 13, 2020, the Debtors agreed to return 53.1200475 Bitcoin to UpgradeYa from the Collateral Accounts leaving 478.17 Bitcoin deposited as Collateral.  *See id.* at ¶ 9.  On August 14, 2020, the Debtors issued an updated Draw Certificate (the "<u>Updated Draw Certificate</u>") reflecting the reduction of the Collateral being held by the Debtors.  *See id.* at Exhibit F.

***UpgradeYa's Offer to Repay the Line of Credit and the Debtors' Bankruptcy Filing***

13.     On October 28, 2020, Cred informed UpgradeYa that it had experienced irregularities in the handling of specific corporate funds and had temporarily suspended all inflows and outflows of funds relating to the CredEarn program.  *See id.*  at ¶ 10.

14.     On October 29, 2020, UpgradeYa contacted the Debtors' Chief Executive Officer, Daniel Schatt, to inquire about the status of the Collateral being held by the Debtors and

---

[7] A true and correct copy of the CredEarn Agreement is attached to the Parrish Declaration as **<u>Exhibit C</u>**.

requested to settle the Line of Credit and withdraw the Collateral.  *See id.*  ¶ 11, Exhibit H.  On October 31, 2020, Mr. Schatt responded stating "unfortunately I won't be able to provide an update for 7-10 days." *See id.* at Exhibit I.  Again, on November 7, 2020, UpgradeYa contacted Mr. Schatt stating that it can fulfill its obligations and will repay the entire $2 million Line of Credit in return for its Collateral.  *See id.* at ¶ 13.  To date, the Debtors have not engaged UpgradeYa with respect to its offers to repay the Line of Credit and have its Collateral returned to it.  *Id.* at ¶ 14.

15.    On November 10, 2020, the Debtors confirmed in writing to UpgradeYa that "we are holding 478.170 BTC as collateral for your loan of $2,000,000" and that UpgradeYa had an active CredEarn program with a balance of $73,171.47.  *Id.* at Exhibit K.  As of the Petition Date, the Collateral held by the Debtors had a market value of $7,322,65.38 and the outstanding amount of all obligations under the Line of Credit was $2 million.  *Id.* at ¶ 16.

## RELIEF REQUESTED

16.    By this Motion, UpgradeYa seeks entry of an order pursuant to Bankruptcy Code section 362, Bankruptcy Rule 4001 and Local Rule 4001-1 (i) granting relief from the automatic as to the Collateral to permit UpgradeYa to seek its return or the value thereof from the Debtors, any third-part(ies) in possession of the Collateral and/or, in the event that the Collateral was stolen or otherwise misappropriated, the Debtors' applicable insurance provider pursuant to Bankruptcy Code section 362 and (ii) granting such other relief as the Court deems just and proper.

## BASIS FOR RELIEF

17.    The automatic stay set forth in Bankruptcy Code section 362(a) is not meant to be indefinite or absolute and this Court has the power to grant relief from the automatic stay in

appropriate circumstances.  *See In re Rexene Products Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *In re Wedgewood*, 878 F.2d 693, 697 (3d Cir. 1989)).

18.     Pursuant to Bankruptcy Code section 362(d)(1), upon notice and a hearing, a court may lift the automatic stay for "cause."  11 U.S.C. § 362(d).  The decision of whether to lift the stay for cause under section 362(d) is committed to the sound discretion of the bankruptcy court and is reviewed only for an abuse of discretion.  *In re C&S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995); *In re American Classic Voyages, Co.*, 298 B.R. 222, 225 (D. Del. 2003).

19.     "Cause" is not defined under section 362(d) of the Bankruptcy Code and is generally determined on a case-by-case basis after looking at the "totality of the circumstances." *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *Rexene Products*, 141 B.R. at 576 (citing *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991)).

20.     In evaluating whether "cause" exists to modify the stay, "[a] court may consider the policies reflected in the bankruptcy code, and the interests of the debtor, other creditors and any other interested parties."  *See In re Mu'min*, 374 B.R. 149, 164 (Bankr. E.D. Pa. 2007) (citing *In re Brown*, 311 B.R. 409, 412-13 (E.D. Pa. 2004)); *see also Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).  Courts will consider: (i) the hardship to the estate if stay relief is granted; (ii) the hardship to the movant if stay relief is not granted; and, where an underlying dispute is at issue, (iii) the underlying merits.  *See, e.g., In re Rexene Prods. Co.*, 141 B.R. at 576.  A balancing of the relative hardships in this case favors lifting the automatic stay to permit UpgradeYa to recover its Collateral.

21.     The Debtors' estates and their creditors will not suffer any hardship and will not be prejudiced by the requested modification of the automatic stay.  The Collateral is not property

7

of the Debtors' estates under Bankruptcy Code section 541.[8]   Under California law,[9] title to collateral does not pass upon hypothecation (*i.e.*, when such collateral is pledged to secure a debt). *MacDonald v. Pac. Nat. Bank*, 66 Cal. App. 2d 357, 361-362 (1944) (where legal title to collateral remains in pledgor, pledgee merely has a lien on the title, unless otherwise provided in the pledge contract); *Robinson v. Raquet*, 1 Cal. App. 2d 533, 544 (1934) (where personal property is pledged, the general property and title remain in the pledgor, subject only to a lien in favor of the pledgee for the amount of his debt). Instead, the party receiving the collateral to secure the debt receives only an unliquidated, contingent interest that extinguishes upon repayment of the debt. *See*, *In re Weiman*, 22 B.R. 49 (B.A.P. 9th Cir. 1982) ("This is characteristic of security interests, generally, which lead a contingent existence with respect to collateral until needed."). Bankruptcy Code section 541 is clear that only the interest held by a debtor at the commencement of the bankruptcy case becomes property of the estate. *In re Mortg. Lenders Network, USA, Inc.*, 380 B.R. 131, 137 (Bankr. D. Del. 2007). Thus, the Debtors are merely acting as bailee that have, at most, an unliquidated, contingent interest in the Collateral. *See In re Allonhill, LLC*, 2019 LEXIS 1304, *162 (Bankr. D. Del. Apr. 25, 2019) (stating that where property is held by the debtor as bailee, agent or trustee, the property does not become part of the debtor's estate). As such, any interest the Debtors hold in the Collateral shall be

---

[8] On November 23, 2020, certain parties in interest (the "Movants") filed the *Emergency Motion of Jaime Shiller, Takashi Yanagi, Wu Chi King, Joseph Richardson, Thomas Calvert, Clint Cowen, Robin Houck, Todd Wiseman, Matthew Dixon, Jonatan Ashurov, Daniel Becker, Teppei Miyauchi, Jean Vacca, Xian Su, and Emmanuel Beaufils to Compel the Debtors to Mak Demand of Certain Cryptocurrency Exchanges to Freeze the Transfer of Certain Accounts That May Hold the Debtors' Assets* [D.I. 75] (the "Emergency Motion") seeking to freeze certain accounts that hold assets of the Debtors. The relief requested in the Emergency Motion does not impact the relief requested by this Motion as the Movants only seek to protect assets of the Debtors' estates. As explained herein, the Collateral is not property of the Debtors' estates and, as such, is not subject to the Emergency Motion. The Movants themselves acknowledge that "there may be issues with respect to whether the bitcoin that were in the Debtors' possession are property of the Debtors' estates under Section 541, if that the Debtors were simply bailors for the actual owners who pledged or loaned their bitcoin to the Debtors." Emergency Motion, fn. 3.

[9] The Agreement is governed by the laws of California. Agreement, § 9.1.

terminated upon repayment and, pursuant to the terms of the Draw Certificate, the Collateral must be returned to UpgradeYa.

22.     Moreover, UpgradeYa has made clear to the Debtors that it is ready, willing and able to satisfy its outstanding obligations under the Line of Credit in full (and is entitled to do so pursuant to section 1.4 of the Agreement), which would extinguish any interest the Debtors possess in the Collateral.  In fact, pursuant to the Draw Certificate, upon satisfaction of all outstanding obligations under the Agreement, the Debtors are required to return the Collateral to UpgradeYa.  As such, the Debtors, their estates and their creditors will not be prejudiced if the requested stay relief is granted.

23.     By contrast, UpgradeYa may be prejudiced significantly by any further delay in the return of the Collateral.  As illustrated by the dramatic changes in the value of the Collateral over the last six (6) months as explained above, the value of Bitcoin – including the Collateral – fluctuates as its price rises and falls in the market.  As such, any delay in the return of the Collateral places UpgradeYa at substantial risk of devaluation of the Collateral.  Simply stated, there is no upside gained by the Debtors, their estates or their creditors by delaying UpgradeYa's repayment of the Line of Credit and the Debtors' return of the Collateral to UpgradeYa.  Not only is the Collateral not property of the Debtors' estates, but repayment of the Line of Credit as proposed will benefit the Debtors and their stakeholders as the Debtors' estates will receive $2 million in cash, when they otherwise only have $47,000 available for operating.  *See*, McManigle Declaration, Appendix B.

24.     Further, commencement of the Chapter 11 Cases did not enhance the Debtors' rights under the Agreement or give it greater rights in the Collateral.  *See In re TTS, Inc.*, 158 B.R. 583, 585-86 (D. Del. 1993) (explaining that a debtor does not have any greater rights to

{1311.001-W0063572.}

property than the debtor had before filing for chapter 11). The Debtors are not entitled to use chapter 11 as a shield to hold the Collateral hostage. UpgradeYa has the right to prepay the Line of Credit at any time under the Agreement. The Debtors cannot refuse repayment of the Line of Credit to stall or delay return of the Collateral to UpgradeYa. Accordingly, cause exists to grant UpgradeYa relief from the automatic stay to permit it to take any and all steps necessary to recover the Collateral.

## REQUEST FOR WAIVER OF STAY

25.     To proceed with the foregoing, UpgradeYa seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 4001(a)(3), any "order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." UpgradeYa submits that the imposition of the fourteen (14) day stay would be inconsistent with the relief requested herein and UpgradeYa's need for immediate relief from the stay imposed by Bankruptcy Code section 362. As explained above, any delay in the return of the Collateral places UpgradeYa at substantial risk of the value of the Collateral deteriorating to UpgradeYa's detriment. Accordingly, UpgradeYa submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent applicable.

## RESERVATION OF RIGHTS

26.     UpgradeYa expressly reserves, and does not waive, any and all of its rights, claims, causes of action, and defenses in connection with the Agreement, the Line of Credit, the Collateral, and the CredEarn Agreement under such applicable documents, the Bankruptcy Code, applicable law or otherwise against the Debtors, any successor in interest and any and all third-

parties, including, but not limited to, the right to seek recovery from any applicable insurance policies.  UpgradeYa further reserves its right to set off with respect to any and all outstanding obligations under the Line of Credit, the Agreement and the CredEarn Agreement.  UpgradeYa does not waive any rights with respect to its ability to file a proof of claim or otherwise assert claims in the Chapter 11 Cases by filing this Motion and reserves all rights with respect thereto.

## NOTICE AND NO PRIOR REQUEST

27.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known:  (a) the Debtors; (b) the Office of the United States Trustee; (c) the top twenty creditors; and (d) any party requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, UpgradeYa submits that no other or further notice is required.

28.     No previous request for the relief sought in this Motion has been made to this Court or any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

{1311.001-W0063572.}

WHEREFORE, UpgradeYa respectfully requests that the Court enter an order (i) lifting the automatic stay to permit the UpgradeYa to take any and all actions necessary to recover its Collateral from the Debtors, any third part(ies) in possession of the Collateral and/or, in the event the Collateral was stolen or otherwise misappropriated, the Debtors' applicable insurance provider and (ii) granting such other relief as the Court deems just and proper.

Dated: November 25, 2020
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

*Counsel to UpgradeYa Investments, LLC*

{1311.001-W0063572.}