# EXHIBIT C

# Line of Credit Agreement
## (corporate loan to Cred)

---

**Introduction.**

This Line of Credit Agreement (this "**Agreement**"), dated and effective as of the Effective Date set forth on Schedule A (the "**Effective Date**") is entered into between the undersigned person or entity (the "**Lender**"), and Cred LLC, a Delaware limited liability company (the "**Borrower**").

Lender is a sophisticated party experienced in making loans to enterprises like Cred LLC. Lender may not assign, sell or transfer this Agreement to any person and any purported assignment, sale or transfer of this Agreement is null and void. Lender understands and expects that each advance of fiat currency or cryptocurrency under this Agreement is a loan and not a sale and that Lender must be repaid the loaned currency in the same type and number of units loaned plus agreed-upon interest.

Therefore, Lender and Borrower agree to the following terms and conditions:

| **1.** | **LINE OF CREDIT** |
|---|---|

**1.1   Line of Credit Amount.**

(a)   During the availability period described below, the Lender will provide a line of credit to the Borrower (the "**Line of Credit**"). The amount and denomination of the Line of Credit (the "**Commitment**") is set forth on Schedule A.

(b)   Borrower may request advances under the Line of Credit (an "**Advance**"). The specific details of each Advance shall be set forth on Schedule A hereto (the "**Schedule of Advances**"), which will be prepared and updated by Borrower and will bind the parties. Upon making each Advance, the Borrower will update the Schedule of Advances and send it to Lender using standard notice procedures.

(c)   The Borrower agrees not to permit the principal balance outstanding to exceed the Commitment. If the Borrower exceeds this limit, the Borrower will immediately pay the excess to the Lender upon the Lender's demand.

**1.2   Availability and Advances.** The Line of Credit is available between the Effective Date and the Expiration Date set forth on Schedule A or such earlier date as the availability may terminate as provided in this Agreement (the "**Expiration Date**"). The availability period for this Line of Credit will be considered renewed if and only if the Borrower has sent the Lender a written notice of renewal for the Line of Credit (the "**Renewal Notice**") and Lender has not notified Borrower of Lender's objection to the renewal within 8 business days of receiving the Renewal Notice. If this Line of Credit is renewed, it will continue to be subject to all the terms and conditions set forth in this Agreement except as modified by the Renewal Notice. If this Line of Credit is renewed, the term "Expiration Date" means the date set forth in the Renewal Notice as the Expiration Date. The same process for renewal will apply to any subsequent renewal of this Line of Credit. If this Line of Credit is not renewed, the Lender in its sole discretion may allow the outstanding balance to be repaid in installments over a term specified by the Lender at the time.

Borrower expects to make its first draw (borrowing) within 15 business days of the Effective Date, as specified on Schedule A. The actual funding date (whether for the first advance or subsequent advances) will be the date Borrower confirms receipt of the loan advance into Borrower's wallet.

Borrower may request advances by notifying Borrower's designated third party custodian that a transfer of assets in the amount of the advance has been authorized by Lender and should be made from Lender's wallet to Borrower's wallet.  Borrower may do this at any time and on any day of the month but typically Borrower requests advances on the 1st and 15th day of each month.  Borrower will notify Lender each time that Borrower makes a draw (an advance to Borrower) under this line of credit and Borrower will do so after Borrower makes a draw.  Borrower may choose to include that notification in notification it sends to Lender.  Lender agrees to maintain sufficient assets at all times in the designated third party account to fund the entire Commitment.

**1.1    Repayment Terms.**  Borrower must repay any principal and interest accrued on an Advance as agreed in the Schedule of Advances for each Advance.  The Borrower may prepay principal in full or in part at any time without the payment of a prepayment fee or premium.  The prepayment may be applied to the most remote payment of principal due under this Agreement or in such other manner as determined by the Lender so as to minimize the total amount owed by Borrower.

**1.3    Interest Rate.**  The effective interest rate on an Advance will be, for each month, quarter, year or other period that the Advance is outstanding, the Applicable Rate set forth on Schedule A.  Interest is a simple interest rate compounded annually.  If Schedule A specifies a variable interest rate, that means that Borrower may increase or decrease the Applicable Rate in its sole discretion 15 days after notifying Lender of the upcoming change in the Applicable Rate (a "**Rate Change Notice**").  If Lender does not notify Borrower of Lender's decision to demand repayment of the loan within 8 business days of Borrower sending Lender a Rate Change Notice (such notice by Lender, a "**Closure Notice**"), then this Agreement will remain in effect with the new Applicable Rate in effect and Borrower will not repay this loan until the Expiration Date.  If Lender delivers a Closure Notice within 8 business days after Borrower sends a Rate Change Notice, then Borrower will repay the loan and all accrued interest within 45 days of receiving the Closure Notice and the Applicable Rate will accrue on the loan through the day the loan is repaid in full.

| **2.** | **LOAN ADMINISTRATION AND FEES** |
|---|---|

**2.1    Fees**.  Fees will be paid pursuant to Schedule B.

**2.2    Collection of Payments.**

(a)    Payments will be made by debit to a deposit account, if direct debit is provided for in this Agreement or is otherwise authorized by the Borrower.  For payments not made by direct debit, payments will be made by mail to the address designated by Lender, or by wire, or by such other method as may be communicated to Lender.

(b)    Each disbursement by the Lender and each payment by the Borrower will be evidenced by records kept by the Borrower which will, absent manifest error, be conclusively presumed to be correct and accurate and constitute an account stated between the Borrower and the Lender.

**2.3    Borrower's Instructions.**

Subject to the terms, conditions and procedures stated elsewhere in this Agreement, the Lender may honor instructions for advances or repayments and any other instructions under this Agreement given by any one of the individuals the Lender reasonably believes is authorized to sign loan agreements on behalf of the Borrower, or any other individual(s) designated by any one of such authorized signers (each an "**Authorized Individual**").  The Lender may honor any such instructions made by any one of the Authorized Individuals, whether such instructions are given in writing or by telephone, Internet and intranet websites or other means designated by the Lender.

**2.4     Business Days.**  Unless otherwise provided in this Agreement, a business day is a day other than a Saturday, Sunday or other day on which commercial banks are authorized to close, or are in fact closed, in the State of California.  All payments and disbursements which would be due or which are received on a day, which is not a business day will be due or applied, as applicable, to the credit on the next business day.

**2.5     Interest Calculation.**  Except as otherwise stated in this Agreement, all interest and fees, if any, will be computed on the basis of a 365-day year and the actual number of days elapsed.  Installments of principal, which are not paid when due under this Agreement will continue to bear interest until paid.

**2.6     Default Rate.**  Upon the occurrence of any default or after maturity or after judgment has been rendered on any obligation under this Agreement, all amounts outstanding under this Agreement, including any unpaid interest, fees, or costs, will at the option of the Lender bear interest at a rate which is one percentage point higher than the rate of interest otherwise provided under this Agreement.  This will be calculated so as to not result in compounding of interest.  This will not constitute a waiver of any default.

**3.     CONDITIONS**

Within 10 days of the first advance hereunder, Lender must receive the items specifically listed below.

**3.1     Authorizations.**  Evidence that the execution, delivery and performance by the Borrower of this Agreement and any instrument or agreement required under this Agreement have been duly authorized.

**3.2     Governing Documents.**  If requested by the Lender, a copy of the Borrower's organizational documents.

**3.3     Payment of Fees.**  Payment of all fees, expenses and other amounts due and owing to the Lender.  If any fee is not paid in cash, the Lender may, in its discretion, treat the fee as a principal advance under this Agreement or deduct the fee from the loan proceeds.

**4.     REPRESENTATIONS AND WARRANTIES**

When the Borrower signs this Agreement, and until the Lender is repaid in full, the Borrower makes the following representations and warranties.  Each request for an extension of credit constitutes a renewal of these representations and warranties as of the date of the request:

**4.1     Formation.**  The Borrower is duly formed and existing under the laws of the state or other jurisdiction where organized.

**4.2     Authorization.**  This Agreement, and any instrument or agreement required of Borrower under this Agreement, are within the Borrower's powers, have been duly authorized, and do not conflict with any of its organizational documents.

**4.3     Good Standing.**  In each state in which the Borrower does business, it is properly licensed, in good standing, and, where required, in compliance with fictitious name statutes.

**4.4     Financial Information.**  All financial and other information that has been or will be supplied to the Lender is sufficiently complete to give the Lender accurate knowledge of the Borrower's financial condition, including all material contingent liabilities.  Since the date of the most recent financial statement provided to the Lender, there has been no material adverse change in the business condition (financial or otherwise), operations, properties or prospects of the Borrower.

**4.5    Lawsuits.**  There is no lawsuit, tax claim or other dispute pending or threatened against the Borrower, which, if lost, would impair the Borrower's financial condition or ability to repay the loan, except as have been disclosed in writing to the Lender.

**4.6    Other Obligations.**  The Borrower is not in default on any obligation for borrowed money, any purchase money obligation or any other material lease, commitment, contract, instrument or obligation, except as have been disclosed in writing to the Lender.

**4.7    Tax Matters.**  The Borrower has no knowledge of any pending assessments or adjustments of its income tax for any year and all taxes due have been paid, except as have been disclosed in writing to the Lender.

**4.8    No Event of Default.**  There is no event, which is, or with notice or lapse of time or both would be, a default under this Agreement.

Lender is empowered and authorized to enter into and perform its obligations under this Agreement and Lender holds all permits, licenses and registrations (or exemptions therefrom) necessary to lend to Borrower under this Agreement.

| **5.** | **COVENANTS** |
|---|---|

The Borrower agrees, so long as credit is available under this Agreement and until the Lender is repaid in full:

**5.1    Use of Proceeds.**  To use the proceeds of the Line of Credit only for business purposes.

**5.2    Maintenance of Assets.**

(a)    Not to sell, assign, lease, transfer or otherwise dispose of any part of the Borrower's business or the Borrower's assets except inventory sold and loans made in the ordinary course of the Borrower's business.

(b)    Not to sell, assign, lease, transfer or otherwise dispose of any assets for less than fair market value, or enter into any agreement to do so.

(c)    To maintain and preserve all rights, privileges, and franchises the Borrower now has.

**5.3    Additional Negative Covenants.**  Not to, without the Lender's written consent:

(a)    Enter into any consolidation, merger, or other combination, or become a partner in a partnership, a member of a joint venture, or a member of a limited liability company.

(b)    Liquidate or dissolve the Borrower's business.

**5.4    Notices to Lender.**  To promptly notify the Lender in writing of:

(a)    Any event of default under this Agreement, or any event, which, with notice or lapse of time or both, would constitute an event of default.

(b)    Any change in the Borrower's name, legal structure, state of registration, place of business, or chief executive office if the Borrower has more than one place of business.

**5.5    Insurance.**  To maintain insurance as is usual for the business it is in.

**5.6     Compliance with Laws.**  To comply with the laws (including any fictitious or trade name statute), regulations, and orders of any government body with authority over the Borrower's business.  The Lender has no obligation to make any advance to the Borrower except in compliance with all applicable laws and regulations and the Borrower will fully cooperate with the Lender in complying with all such applicable laws and regulations.

**5.7     Books and Records.**  To maintain adequate books and records.

**5.8     Cooperation.**  To take any action reasonably requested by the Lender to carry out the intent of this Agreement.

### 6.     DEFAULT AND REMEDIES

Without limiting any of the Lender's rights and remedies in this Agreement, if any of the following events of default occurs, the Lender may do one or more of the following without prior notice: declare the Borrower in default, stop making any additional credit available to the Borrower, and require the Borrower to repay its entire debt immediately.  If an event, which, with notice or the passage of time, will constitute an event of default has occurred and is continuing, the Lender has no obligation to make advances or extend additional credit under this Agreement.  In addition, if any event of default occurs, the Lender will have all rights, powers and remedies available under any instruments and agreements required by or executed in connection with this Agreement, as well as all rights and remedies available at law or in equity.  If an event of default occurs under *Section 6.3* with respect to the Borrower, then the entire debt outstanding under this Agreement will automatically be due immediately.

**6.1     Failure to Pay.**  The Borrower fails to make a payment under this Agreement when due.

**6.2     Covenants.**  Any default in the performance of or compliance with any obligation, agreement or other provision contained in this Agreement (other than those specifically described as an event of default in this Article), and with respect to any such default that by its nature can be cured, such default continues for a period of 30 business days from its occurrence.

**6.3     Bankruptcy/Receivers.**  The Borrower, any Obligor, or any general partner of the Borrower or of any Obligor files a bankruptcy petition, a bankruptcy petition is filed against any of the foregoing parties and such petition is not dismissed within a period of forty-five (45) days after the filing, or the Borrower, any Obligor, or any general partner of the Borrower or of any Obligor makes a general assignment for the benefit of creditors; or a receiver or similar official is appointed for a substantial portion of Borrower's or any Obligor's business; or the business is terminated, or such Obligor is liquidated or dissolved.

**6.4     Judgments.**  Any judgments or arbitration awards are entered against the Borrower or any Obligor.

**6.5     Government Action.**  Any government authority takes action that the Lender believes materially adversely affects the Borrower's or any Obligor's financial condition or ability to repay.

### 7.     THE LENDER'S ADDITIONAL REMEDIES

**7.1     The Lender's Additional Remedies After Default**.  In the event of any default, the Lender may do any one or more of the following, to the extent permitted by law:

(a)     Declare any indebtedness immediately due and payable, without notice or demand.

(b)     Exercise any other remedies available to the Lender at law or in equity.

**8. ENFORCING THIS AGREEMENT; MISCELLANEOUS**

**8.1 Governing Law.** Except to the extent that any law of the United States may apply, this Agreement will be governed and interpreted according to the laws of California (the "**Governing Law State**"), without regard to any choice of law, rules or principles to the contrary. Nothing in this *Section 8.1* may be construed to limit or otherwise affect any rights or remedies of the Lender under federal law.

**8.2 Venue and Jurisdiction.** The Borrower agrees that any action or suit against the Lender arising out of or relating to this Agreement must be filed in federal court or state court located in San Francisco, California. The Borrower agrees that the Lender will not be deemed to have waived its rights to enforce this *Section 8.2* by filing an action or suit against the Borrower in a venue outside of the Governing Law State. If the Lender does commence an action or suit arising out of or relating to this Agreement, the Borrower agrees that the case may be filed in federal court or state court in the Governing Law State. The Borrower consents to personal jurisdiction and venue in such forum selected by the Lender and waives any right to contest jurisdiction and venue and the convenience of any such forum. The provisions of this *Section 8.2* are material inducements to the Lender's acceptance of this Agreement.

**8.3 Successors and Assigns.** This Agreement is binding on the Borrower's and the Lender's successors and assignees. Lender and Borrower agree that neither of them may assign this Agreement without the other party's prior written consent.

**8.4 Waiver of Jury Trial.** EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION HEREWITH OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (a) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (b) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER DOCUMENTS CONTEMPLATED HEREBY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS *SECTION 8.4* AND (c) CERTIFIES THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE.

**8.5 Severability; Waivers.** If any part of this Agreement is not enforceable, the rest of the Agreement may be enforced. The Lender retains all rights, even if it makes a loan after default. If the Lender waives a default, it may enforce a later default. Any consent or waiver under this Agreement must be in writing.

**8.6 Expenses.**

(a)   The Borrower must pay to the Lender immediately upon demand the full amount of all payments, advances, charges, costs and expenses, including reasonable attorneys' fees, expended or incurred by the Lender. Such fees shall not be incurred unless expressly agreed to by Borrower.

(b)   The Borrower will indemnify and hold the Lender harmless from any loss, liability, damages, judgments, and costs of any kind relating to or arising directly or indirectly out of, other than credit losses (i) this Agreement or any document required hereunder, and (ii) any litigation or proceeding related to or arising out of this Agreement, (except if such litigation is between the Borrower and Lender),. This *Section 8.6(b)* will survive this Agreement's termination for a period of 1 year, and will benefit the Lender and its officers, employees, and agents.

(c)   The Borrower must reimburse the Lender for any reasonable costs and attorneys' fees incurred by the Lender in connection with (i) the enforcement or preservation of the Lender's rights and

remedies and/or the collection of any obligations of the Borrower which become due to the Lender and in connection with any "workout" or restructuring, and (ii) the prosecution or defense of any action in any way related to this Agreement, the credit provided hereunder or any related agreements, including without limitation, any action for declaratory relief, whether incurred at the trial or appellate level, in an arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter or motion brought by the Lender or any other person) relating to the Borrower, capped at USD $10,000.

**8.7** **One Agreement.**  This Agreement and any related security or other agreements required by this Agreement constitute the entire agreement between the Borrower and the Lender with respect to each credit subject hereto and supersede all prior negotiations, communications, discussions and correspondence concerning the subject matter hereof.  In the event of any conflict between this Agreement and any other agreements required by this Agreement, this Agreement will prevail.

**8.8** **Notices.**  Unless otherwise provided in this Agreement or in another agreement between the Lender and the Borrower, all notices required under this Agreement shall be (a) in writing (including electronic mail), (b) delivered by electronic mail or overnight courier, and (c) deemed delivered upon electronic or written acknowledgment of receipt. Notices shall be sent to the addresses set forth on the signature page to this Agreement or such other address as specified and delivered pursuant to this *Section 8.8*.

Borrower is responsible for all calculations of interest, payment dates, advance dates and other calculations and determinations hereunder.  Borrower's calculations as to the assets it borrows and repays, the amounts of accrued and paid interest, valuations of non-fiat currencies and tokens, and all other calculations and determinations Borrower makes are binding on Lender and conclusive for all purposes unless Lender obtains a final, non-appealable judgment to the contrary.

**8.9** **Headings.**  Article and section headings are for reference only and will not affect the interpretation or meaning of any provisions of this Agreement.

**8.10** **Counterparts**.  This Agreement may be executed in any number of counterparts, each of which, when so executed, will be deemed to be an original, and all of which when taken together will constitute one and the same Agreement.  Delivery of an executed counterpart of this Agreement (or of any agreement or document required by this Agreement and any amendment to this Agreement) by DocuSign will be as effective as delivery of a manually executed counterpart of this Agreement.

**8.11** **Amendments.**  This Agreement may be amended or modified only in writing signed by each party hereto.

[Balance of page left blank.]

This Agreement is executed as of the Effective Date.

**SIGNATURES**

| Borrower: | Lender: |
|---|---|
| **CRED LLC**, a Delaware limited liability company | UpgradeYa Investments LLC |
| By: *Dan Schatt* | By: *Marc Parrish* |
| Name: Dan Schatt | Name: Marc Parrish |
| Title: CEO | Title: Owner |

8

## SCHEDULE A

**Effective Date:** April 28, 2020 [*date the Agreement takes effect*]

**Expiration Date**: June 30, 2020 [*date on which Cred LLC must repay the loan*]

**Currency / Token type loaned to Cred LLC**:   [**X**]  USD

**Commitment amount:**  $120,000 USD [*the maximum aggregate number / amount of the Currency / Token type to be loaned to Cred*]

**Applicable Rate:**  8% simple interest [*the interest rate in USD payable by Cred LLC to Lender at the end of each calendar quarter*]

      [**X**]  fixed rate

**Interest payment dates:** All principal and accrued and unpaid interest will be paid in full on the Expiration Date.  Prior to the Expiration Date, accrued interest will be paid:

      [**X**]    quarterly within 2 days after quarter-end

## SCHEDULE B

**Schedule of Fees**

1. <u>General Fees.</u>

    a. The Borrower agrees to pay any loan and documentation fees requested by the Lender and agreed to by the Borrower.

    b. <u>Late Fee</u>.  N/A

2. <u>Additional Fees</u>.  The Borrower and the Lender agree to pay any other fees set forth on the Schedule of Advances.