**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CRED INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-12836 (JTD)<br><br>(Jointly Administered)<br><br>**Hearing Date: Dec. 17, 2020 at 11:00 a.m. (ET)**<br>**Obj. Deadline: Dec. 10, 2020 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING EMPLOYMENT AND RETENTION OF SONORAN
CAPITAL ADVISORS, LLC TO PROVIDE DEBTORS A CHIEF RESTRUCTURING
OFFICER AND CERTAIN ADDITIONAL PERSONNEL AND (II) DESIGNATING
MATTHEW FOSTER AS DEBTORS' CHIEF RESTRUCTURING OFFICER**

TO THE HONORABLE BANKRUPTCY JUDGE JOHN T. DORSEY:

Cred Inc. ("Cred") and its affiliated debtors and debtors in possession (the "Debtors")

respectfully state as follows in support of this motion:

**Relief Requested**

1.      By this motion, the Debtors seek entry of an order substantially in the form

attached as **Exhibit A** (the "Proposed Order"), (i) authorizing the employment and retention,

effective as of November 30, 2020, of Sonoran Capital Advisors, LLC ("Sonoran") to provide

the Debtors a Chief Restructuring Officer and certain additional personnel (the "Additional

Personnel") and (ii) designating Matthew K. Foster, effective as of November 30, 2020, as the

Debtors' Chief Restructuring Officer (the "CRO" and, together with the CRO, the "Sonoran

Personnel").  In support of this motion, the Debtors submit (a) the declaration of Matthew K.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566).  The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

Foster, which is attached as **<u>Exhibit C</u>** (the "<u>Foster Declaration</u>"), and (b) a copy of Matthew K.

Foster's biography, which is attached as **<u>Exhibit D</u>** (the "<u>Foster Biography</u>").

**<u>Jurisdiction, Venue, and Statutory Predicates</u>**

2.      The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>")

has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding

within the meaning of 28 U.S.C. § 157(b)(2).  In accordance with Rule 9013-1(f) of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "<u>Local Rules</u>"), the Debtors confirm their consent to the entry of a final

order by the Court in connection with this motion to the extent that it is later determined that the

Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.

3.      Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a) and 363(b)

of the Bankruptcy Code.

**<u>Background</u>**

5.      On November 7, 2020 (the "<u>Petition Date</u>"), the Debtors each commenced with

this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are

authorized to continue operating their businesses as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of

creditors has been appointed in these chapter 11 cases.

6.      The Debtors' chapter 11 cases are being jointly administered for procedural

purposes only pursuant to Bankruptcy Rule 1015(b), Local Rule 1015-1, and the *Order Granting*

*Motion of Debtors and Debtors in Possession for Order Directing Joint Administration of Their*

*Chapter 11 Cases* [Docket No. 27].

7.      Additional information regarding the Debtors' business, capital structure, and the

circumstances leading to the commencement of these chapter 11 cases is set forth in the

*Declaration of Daniel Schatt in Support of Debtors' Chapter 11 Petitions and First Day Motions*

[Docket No. 12] and the *Declaration of Drew McManigle, Founder and Chief Executive Officer,*

*MACCO Restructuring Group, LLC* [Docket No. 16] (together, the "First Day Declarations").

## Sonoran's Qualifications

8.      Based on the complexities associated with administering the these chapter 11

cases and the estates, the Debtors have determined that they require the assistance of a Chief

Restructuring Officer with specialized experience in bankruptcy and financial advisory services.

Accordingly, the Debtors desire to employ and retained Sonoran and to designate Matthew K.

Foster as the CRO for the Debtors.

9.      Sonoran is a turnaround, crisis management, and financial advisory firm that

specializes in interim executive management, turnaround consulting, operational due diligence,

creditor advisory services, and financial and operational restructuring. Sonoran's debtor advisory

services include a wide range of activities targeted at stabilizing and improving a company's

financial position, including developing or validating forecasts and business plans and related

assessments of a business's strategic position, monitoring and managing cash, cash flow, and

supplier relationships, assessing and recommending cost-reduction strategies, and designing and

negotiating financial restructuring packages.

10.     Mr. Foster is Sonoran's Managing Director and based in Mesa, Arizona.  As

detailed in the Foster Biography and the Foster Declaration, Mr. Foster has extensive experience

corporate restructuring, private equity, consulting, and executive management. His experience

spans a variety of industries, primarily focusing on distressed middle-market companies. Prior

to joining Sonoran in 2017, Mr. Foster was a Director at KRyS Global USA (formerly Odyssey

Capital Group, LLC), a restructuring financial advisory firm. Mr. Foster also has served as Chief

Restructuring Officer for, among others, an oil field services company, a public pharmaceutical

company, a regional airline, a charter coach company, as well as served as Interim Chief

Financial Officer for, among others, a refrigerated trucking company, a snack food manufacturer,

and a technology company.

11.     The Debtors have determined that the retention of Sonoran is necessary and

appropriate, and is in the best interests of the Debtors' estates, due to Sonoran's and Mr. Foster's

expertise and qualifications in performing the analyses required in these particular chapter 11

cases and for the reasons enumerated herein.

## Scope of Services

12.     As provided in the Engagement Letter, attached hereto as **Exhibit B**, Sonoran has

agreed that Mr. Foster will serve as the Debtors' CRO and will assist the Debtors in evaluating

and implementing strategic options. In addition, Sonoran has agreed to provide the Additional

Personnel to assist the CRO in the execution of the CRO's duties.

13.     As detailed in the Engagement Letter, the CRO's duties include the following:

- The CRO shall lead and direct Additional Personnel and/or Macco Restructuring Group LLC, the Debtors' financial advisor ("Macco") in performing a financial review of the Debtors, including, but not limited to, a review and assessment of financial information as well as short and long-term projected cash flows (collectively, the "Financial Review");

- The CRO shall, with the assistance of Additional Personnel and/or Macco, if necessary, together and in cooperation with other applicable officers of the Debtors and the Debtors' other engaged professionals and counsel, (a) liaise with Debtors' counsel, board members, and creditor constituencies, (b) assist with cash

4

flow and budgeting, (c) oversee creation of statements and schedules, (d) oversee and participate in initial debtor interview and other interaction with U.S. Trustee, (e) participate in the meeting with creditors as required by § 341 of the Bankruptcy Code, (f) oversee and sign monthly operating reports, (g) oversee, as necessary, the creation of plan and/or sale and/or settlement projections, analyses, and related court requirements, and (h) provide testimony as may be required in connection with any of the foregoing or may otherwise be required in a chapter 11 case;

- To the extent the Debtors file a plan under the Bankruptcy Code (a "Plan"), the CRO shall oversee the business aspects of the confirmation process including but not limited to (a) feasibility of the Plan, (b) completion of a chapter 7 comparison, (c) solicitation of votes from creditors, (d) testimony at a confirmation hearing, and (e) execution of the Plan after the effective date;

- To the extent the Debtors elect to sell certain assets under section 363 of the Bankruptcy Code, the CRO shall, at the discretion of the Board, oversee or assist in the sales process, as needed;

- To the extent the Debtors seek postpetition debtor-in-possession financing, the CRO shall, at the discretion of the Debtors' board, oversee or assist in the process of obtaining such financing;

- The CRO, with the assistance of Additional Personnel, Macco, or the Debtors' employees, shall evaluate potential sources of cash and other asset recovery for the Debtors and shall lead negotiations with these third parties; and

- The CRO and the Additional Personnel shall perform such other services as may be reasonably requested or directed by the Debtors' board and/or other authorized Debtor personnel; provided, however, that such services are not duplicative of work others are performing for the Debtors.

### Sonoran's Connections with Debtors and Parties in Interest

14.     The Debtors do not believe that Sonoran is a "professional" whose retention is subject to approval under section 327 of the Bankruptcy Code.  However, Sonoran has or will provide information with respect to its connections with the Debtors, their creditors, or their related parties, as more specifically described herein and in the Foster Declaration.

15.     To the best of the Debtors' knowledge, information and belief, neither Sonoran nor any professional employee or independent contractor of Sonoran has any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest known to

Sonoran, or their respective attorneys and accountants, except as may be set forth in the Foster Declaration.

16.     As set forth in further detail in the Foster Declaration, the Debtors do not owe Sonoran or any of its affiliates any amount for services performed or expenses incurred prior to the commencement of these chapter 11 cases, and, thus, Sonoran and its affiliates are not prepetition creditors of the Debtors.  As noted in the Foster Declaration, neither Sonoran nor its affiliates received any payments from the Debtors within the ninety (90) days prior to the Petition Date.

17.     The Debtors attach the Foster Declaration, which discloses, among other things, any relationship that Sonoran have with the Debtors, their creditors, or other parties in interest known to Sonoran.  In addition, as set forth in the Foster Declaration, if Sonoran discovers any information that is contrary or pertinent to the statements made in the Foster Declaration, Sonoran will promptly disclose such information to the Court.

18.     As stated above and in the Foster Declaration, the Debtors do not believe that Sonoran holds or represents any interest adverse to the Debtors' estates.  Accordingly, the Debtors submit that the retention of Sonoran is in the best interests of the Debtors, their estates, and their creditors, and should be approved by the Court.

### **Professional Compensation**

19.     As detailed in the Engagement Letter, Sonoran will be compensated as follows:

- Sonoran will be paid by the Debtors for the services of the CRO at a billing rate of $35,000 per calendar month ("Monthly Fee").  The Monthly Fee will be paid on the 1st of every month.

- Sonoran will be paid by the Debtors for the services of the Additional Personnel at the hourly billing rates outlined below ("Hourly Fees").

    o   Managing Directors = $450 per hour
    o   Senior Consultants = $395 per hour

- o   Senior Associates = $325 per hour
- o   Associates = $295 per hour
- o   Analysts = $195 per hour

- In addition, Sonoran will be reimbursed for its reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, duplicating, messenger and telephone charges. All fees and expenses will be billed on a monthly basis and payable upon receipt.

20.     In addition, Sonoran will receive a $15,000 security retainer prior to the commencement of its activities to be held throughout this engagement.  The retainer secures final payment of Sonoran's invoices for services rendered and expenses incurred.  The retainer will be returned to the Debtors upon payment in full of Sonoran's outstanding invoices or applied to any outstanding invoices at the conclusion of this engagement.

21.     Because Sonoran is not being employed as a professional under section 327 of the Bankruptcy Code, the Debtors request, on behalf of Sonoran, that Sonoran not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  However, to maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel under section 363 of the Bankruptcy Code, Sonoran will file reports of compensation (the "Monthly Reports") earned and expenses incurred and paid on a monthly basis with the Court and provide notice to (i) the U.S. Trustee and (ii) Counsel to any official committees appointed in these chapter 11 cases (collectively, the "Notice Parties").  The Monthly Reports will (a) include the names and functions filled by the individuals assigned, (b) include a summary chart that describes the compensation earned by each Additional Personnel involved in these chapter 11 cases for the month, and (c) itemize the expenses incurred for the relevant period.  The time records for the Additional Personnel shall (i) be appended to such reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category (but may be redacted to protect any attorney-client privilege or other

7

applicable privilege).  Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in half-hour increments and corresponding charge (multiplied by hourly rate) for each task.

22.     The Notice Parties shall have fourteen (14) days after the date of each Monthly Report is served on the Notice Parties to object to such staffing report.  In the event an objection is raised and not consensually resolved between the Debtors and the objecting party, the objected to portion of the Monthly Report shall be subject to review of the Court.  No payments shall be made to Sonoran on account of the objected to portion of such report until such objection is resolved.  The Monthly Report, Sonoran's staffing decisions, and all compensation identified will be subject to review by the Court in the event an objection is filed.

23.     For the avoidance of doubt, the Debtors submit that Mr. Foster and the Additional Personnel are not, and shall not, be required to comply with Local Rule 2016-2.

## Basis for Relief

24.     The Debtors believe that the retention of a chief restructuring officer (including supporting personnel) constitutes an act in the ordinary course of business, and consequently is permissible under section 363(c) without Court approval.  However, out of an abundance of caution, by this motion, the Debtors are seeking the Court's approval under section 363(b) of the Bankruptcy Code.

25.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[2]  In addition, section 105(a) of the Bankruptcy Code provides

---

[2]   11 U.S.C. § 363(b)(1).

that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]."[3]

26.    The proposed use, sale, or lease of property of the estate may be approved pursuant to section 363(b) if it is supported by a sound business justification.[4]  Although established in the context of a proposed sale, the "business judgment" standard has been applied in non-sale situations.[5]  Moreover, pursuant to section 105, this Court has expansive equitable powers to fashion any order or decree which is in the interest of preserving and protecting the value of a debtor's assets.[6]

27.    For the reasons set forth in this motion and the Foster Declaration, the Debtors submit that the retention of Sonoran and the designation of Mr. Foster as the CRO for the Debtors is supported by a sound business justification.  In his role as CRO, Mr. Foster will provide additional independent oversight of the Debtors, in addition to the appointment of Mr. Grant Lyon as independent director of the Debtors.

28.    Courts in this jurisdiction routinely authorize the retention of Chief Restructuring Officers.[7]

---

[3]    11 U.S.C. § 105(a).

[4]    *See In re Montgomery Ward*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions").

[5]    *See, e.g.*, *Inst. Creditors of Cont'l Air Lines v. Cont'l Air Lines (In re Cont'l Air Lines)*, 780 F. 2d 1223, 1226 (5th Cir. 1986) (applying the business judgment standard in context of proposed use of estate property).

[6]    11 U.S.C. § 105(a).

[7]    *See, e.g.*, *In re GCX Limited,* Case No. 19-12031 (CSS) (Bankr. D. Del. November 4, 2019); *In re Open Road Films, LLC*, Case No. 18-12012 (LSS) (Bankr. D. Del. Oct. 2, 2018); *In re School Specialty, Inc.*, Case No. 13-10125 (KJC) (Bankr. D. Del. Feb. 25, 2013); *In re Vertis Holdings, Inc.*, Case No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012).

**<u>Notice</u>**

29.     Notice of this motion has been given to (i) the U.S. Trustee; (ii) the Internal Revenue Service; (iii) the United States Attorney for the District of Delaware; (iv) the parties included on the Debtors' consolidated list of thirty largest unsecured creditors; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request entry of the Proposed Order (a) granting the relief requested in this motion and (b) granting such other relief as is just and proper.

Dated: December 1, 2020
       Wilmington, Delaware

/s/  Scott D. Cousins
Scott D. Cousins (No. 3079)
**COUSINS LAW LLC**
Brandywine Plaza West
1521 Concord Pike, Suite 301
Wilmington, Delaware 19803
Telephone:    (302) 824-7081
Facsimile:    (302) 295-0331
Email:       scott.cousins@cousins-law.com

- and -

James T. Grogan (admitted *pro hac vice*)
Mack Wilson (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
Telephone:    (713) 860-7300
Facsimile:    (713) 353-3100
Email:       jamesgrogan@paulhastings.com
                mackwilson@paulhastings.com

- and -

G. Alexander Bongartz (admitted *pro hac vice*)
Derek Cash (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone:    (212) 318-6000
Facsimile:    (212) 319-4090
Email:       alexbongartz@paulhastings.com
                derekcash@paulhastings.com

*Proposed Co-Counsel to the Debtors*