# **EXHIBIT B**

**Engagement Letter**



Matthew Foster
Sonoran Capital Advisors, LLC
1733 N Greenfield Rd, Suite 104
Mesa, AZ 85205

November 30, 2020

Grant Lyon, Member of the Board of Directors and Chair, Restructuring Committee
Cred Inc. and its subsidiaries
2121 S. El Camino Real, Suite 500
San Mateo, CA 94401

This letter confirms and sets forth the terms and conditions of the engagement between Sonoran Capital Advisors, LLC ("Sonoran") and Cred Inc. and its assigns and successors as well as its affiliates Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC (together, the "Company"), including the scope of the services to be performed and the basis of compensation for those services. The Chief Restructuring Officer (the "CRO") shall report to and take direction from the Company's Board of Directors (the "Board").

1.  Description of Services.

    (a)  Officers. In connection with this engagement, Sonoran shall make available to the Company:

        (i)  Matthew Foster to serve as the CRO; and

        (ii) Sonoran will provide additional employees or independent contractors of Sonoran and/or its affiliates ("Additional Personnel") as may be required from time to time (collectively, with the CRO, the "Engagement Personnel"), to assist the CRO in the execution of the duties set forth more fully in this Agreement.

    (b)  Duties.

        (i)   The CRO shall have those powers and duties set forth in this Agreement along with such other powers and duties as may be prescribed by the Board;

        (ii)  The CRO shall lead and direct Additional Personnel and/or Macco Restructuring Group LLC, the Company's Financial Advisor ("Macco") in performing a financial review of the Company, including, but not limited to, a review and assessment of financial information as well as short and long-term projected cash flows (collectively, the "Financial Review");

        (iii) It is the CRO's understanding that the Company filed a petition for relief under Title 11 of the United States Code ("Bankruptcy Code") under lead case #20-12836 in the District of Delaware. The CRO shall, with the assistance of Additional Personnel and/or Macco, if necessary, together and



        in cooperation with other applicable officers of the Company and the Company's other engaged professionals and counsel, (a) liaise with debtor's counsel, board members, and creditor constituencies, (b) assist with cash flow and budgeting, (c) oversee creation of statements and schedules, (d) oversee and participate in initial debtor interview and other interaction with U.S. Trustee, (e) participate in the meeting with creditors as required by § 341 of the Bankruptcy Code, (f) oversee and sign monthly operating reports, (g) oversee, as necessary, the creation of plan and/or sale and/or settlement projections, analyses, and related court requirements, and (h) provide testimony as may be required in connection with any of the foregoing or may otherwise be required in a chapter 11 case;

(iv)    To the extent the Company files a plan under the Bankruptcy Code (a "<u>Plan</u>"), the CRO shall oversee the business aspects of the confirmation process including but not limited to (a) feasibility of the Plan, (b) completion of a Chapter 7 comparison, (c) solicitation of votes from creditors, (d) testimony at a confirmation hearing, and (e) execution of the Plan after the effective date;

(v)    To the extent the Company elects to sell certain assets under § 363 of the Bankruptcy Code, the CRO shall, at the discretion of the Board, oversee or assist in the sales process, as needed;

(vi)    To the extent the Company seeks postpetition debtor-in-possession financing, the CRO shall, at the discretion of the Board, oversee or assist in the process of obtaining such financing;

(vii)    The CRO, with the assistance of Additional Personnel, Macco, or Company employees, shall evaluate potential sources of cash and other asset recovery for the Company and shall lead negotiations with these third parties; and

(viii)    The CRO and the Additional Personnel shall perform such other services as may be reasonably requested or directed by the Board and/or other authorized Company personnel; provided, however, that such services are not duplicative of work others are performing for the Company.

(c)    Sonoran is a firm that provides turnaround, crisis management, and financial advisory services. In some cases, Sonoran provides these services as advisors to management, in other cases one or more of its staff serve as corporate officers and other of its staff fill positions as full or part time employees. To be clear, this engagement letter sets forth Sonoran's engagement as CRO and the Company shall seek approval of this agreement under Bankruptcy Code section 363.

The application of Sonoran shall disclose the individual identified for CRO as well as the names and proposed functions of the Additional Personnel.

(d)    The Engagement Personnel shall not be employees of the Company, but will continue to be employed by, or contracted through, Sonoran. While rendering



services to the Company, the CRO will not do anything to interfere with his duties to the Company; <u>provided</u>, <u>however</u>, that notwithstanding the foregoing, the CRO may fulfill his management and administrative obligations for Sonoran and existing engagements. The Additional Personnel may continue to work with other personnel at Sonoran in connection with unrelated matters that will not unduly interfere with the services rendered by the Engagement Personnel pursuant to this Agreement. With respect to the Company, however, the Engagement Personnel shall operate under the direction of the Board and Sonoran shall have no liability to the Company for the acts or omissions of the Engagement Personnel related to the performance or non-performance of services at the direction of the Board and consistent with the requirements of the Engagement and this Agreement. In addition, and notwithstanding the non-employee status of the Engagement Personnel, the CRO and any Additional Personnel who are designated as "officers" shall provide written acknowledgement of their agreement to comply with the Company's Code of Ethics and Business Conduct Policy (the "<u>Code of Ethics</u>"); <u>provided</u>, <u>however</u>, that it is understood that the Engagement Personnel's roles as employees and/or equity holders of Sonoran or any of its affiliates (as well as any engagements they participate in for other Sonoran clients) shall not be a violation of the Conflict of Interest section of the Code of Ethics unless such Engagement Personnel are directly involved on behalf of Sonoran in representing interests adverse to the Company.

2. <u>Information Provided by Company and Forward Looking Statements</u>.

The Company shall use all reasonable efforts to (i) provide the Engagement Personnel with access to management and other representatives of the Company and (ii) furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that Engagement Personnel reasonably request in connection with the services to be provided to the Company. The Engagement Personnel shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and information that is furnished by or on behalf of the Company and otherwise reviewed by Engagement Personnel in connection with the services performed for the Company. The Company acknowledges and agrees that the Engagement Personnel are not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein, provided that if Sonoran or any of the Engagement Personnel become aware of material inaccuracies or errors in any such information they shall promptly notify the Board of such errors, inaccuracies or concerns. Sonoran and Engagement Personnel are under no obligation to update data submitted to them or to review any other areas unless specifically requested by the Company to do so.

The Company understands that the services to be rendered by the Engagement Personnel may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections. In addition, Engagement Personnel will be relying in good faith on information provided by the Company in the preparation of those projections and other forward-looking statements.



3. <u>Limitation of Duties</u>.

Neither Sonoran, nor the Engagement Personnel make any representations or guarantees that, *inter alia,* (i) an appropriate restructuring proposal or strategic alternative can be formulated for the Company, (ii) any restructuring proposal or strategic alternative presented to the Company's management or the Board will be more successful than all other possible restructuring proposals or strategic alternatives, (iii) restructuring is the best course of action for the Company, or (iv) if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents. Further, neither Sonoran, nor the Engagement Personnel, assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction. The Company agrees that Sonoran shall not have any obligation or responsibility to provide accounting, audit, management, tax, or legal services, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management, or liquidity improvements, or to provide any fairness or valuation opinions, or any advice or opinions with respect to solvency in connection with any transaction. The Engagement Personnel shall be responsible for implementation only of the restructuring proposal or alternative approved by the Board and only to the extent and in the manner authorized and directed by the Board.

4. <u>Compensation</u>.

   (a) Sonoran will be paid by the Company for the services of the CRO at a billing rate of $35,000 per calendar month ("<u>Monthly Fee</u>"). The Monthly Fee will be paid on the 1st of every month.

   (b) Sonoran will be paid by the Company for the services of the Additional Personnel at the hourly billing rates outlined below ("<u>Hourly Fees</u>").

   (i)   Managing Directors = $450 per hour

   (ii)  Senior Consultants = $395 per hour

   (iii) Senior Associates = $325 per hour

   (iv)  Associates = $295 per hour

   (v)   Analysts = $195 per hour

   (c) In addition, Sonoran will be reimbursed for its reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, duplicating, messenger and telephone charges. All fees and expenses will be billed on a monthly basis and payable upon receipt.

   (d) It is Sonoran's policy in these cases to receive a security retainer prior to the commencement of our activities to be held throughout this engagement. The retainer secures final payment of Sonoran's invoices for services rendered and



expenses incurred. Given the magnitude and scope of the services you have requested, we require an advance of $15,000. This advance will be returned to the Company upon payment in full of Sonoran's outstanding invoices or applied to any outstanding invoices at the conclusion of this engagement.

5. <u>Termination</u>.

   (a) This Agreement will apply from the date hereof and may be terminated with immediate effect by either party without cause by written notice to the other party; <u>provided</u>, <u>however</u>, that if such notice is provided by Sonoran, such notice shall not become effective until the earlier of (a) thirty days after the date of such notice, and (b) such date that the Company notifies Sonoran that it no longer requires Sonoran's services.

   (b) On termination of the Agreement, any undisputed fees and expenses due to Sonoran shall be remitted promptly (including fees and expenses that accrued prior to, but are duly invoiced subsequent to, such termination).

   (c) The provisions of this Agreement that give the parties rights or obligations beyond its termination shall survive and continue to bind the parties.

6. <u>No Audit</u>.

   Company acknowledges and agrees that Sonoran and Engagement Personnel are not being requested to perform an audit, review, or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

7. <u>No Third Party Beneficiary</u>.

   The Company acknowledges that all advice (written or oral) provided by Sonoran and the Engagement Personnel to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its Board and management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without Sonoran's prior approval (which shall not be unreasonably withheld), except as required by law, regulation (including stock exchange rules) or legal or administrative process.

8. <u>Conflicts</u>.

   Sonoran is not currently aware of any relationship that has created or would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware. Because Sonoran serves clients in numerous cases, both in and out of court, it is possible that Sonoran may have rendered or will render services to or have business associations with other entities or individuals which had or have or may have relationships with the Company, including creditors of the Company. Sonoran will not be restricted by



virtue of providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's, provided Sonoran makes appropriate arrangements to ensure that the confidentiality of information is maintained and provided that Sonoran will not represent the interests of any such entities or individuals directly in connection with the matters in which the Engagement Personnel are serving the Company.

9. Confidentiality/Non-Solicitation.

Sonoran and the Engagement Personnel shall keep as confidential all non-public information received from the Company in conjunction with this Agreement, except: (i) as requested by the Company or its legal personnel; (ii) as required by legal proceedings; or (iii) as reasonably required in the performance of this Agreement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision. The Company, on behalf of itself and its subsidiaries, agrees that, until two years subsequent to the termination of this engagement, it will not solicit, recruit, hire or otherwise engage for services any employee of Sonoran or any of its affiliates who worked with the Company's employees or representatives on this engagement while employed by Sonoran or its affiliates ("Solicited Person"). Should the Company or any of its subsidiaries or affiliates extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, Sonoran shall be entitled to a fee from the Company that will reflect the loss that Sonoran would suffer, as mutually agreed in good faith by the Company and Sonoran, but in no event shall be more than $1.0 million in the case of a Managing Director, or $500,000 in the case of any other employee.

Further, without the Company's prior written consent, none of Sonoran's directors, officers or employees who have worked with the Company on this engagement will, for a period of two years subsequent to the termination of this engagement, directly or indirectly solicit, recruit, hire or otherwise engage for services any employee of the Company or any of its affiliates who have worked with Sonoran's employees or representatives on this engagement while employed by the Company (a) for employment by Sonoran or by any of its affiliates or (b) to provide consulting or other services to or on behalf of Sonoran or any of its affiliates.

10. Indemnification/Limitations on Liability.

The Company shall indemnify the CRO and such other Engagement Personnel, if any, acting as officers (the "Indemnified Professionals") to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Company's bylaws, its certificate of incorporation, by contract or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to the Indemnified Professionals. The Indemnified Professionals shall be covered as officers under the Company's existing director and officer liability insurance policy. As a condition of Sonoran accepting this engagement; an endorsement to such director and officer liability policy evidencing such coverage shall be furnished to Sonoran prior to the effective date of this Agreement. The Company shall give thirty (30) days' prior written

Case 20-12836-JTD    Doc 95-3    Filed 12/01/20    Page 8 of 9



notice to Sonoran of cancellation, non-renewal, or material adverse change in coverage, scope, or amount of such director and officer liability policy. The provisions of this section are in the nature of contractual obligations and no change in applicable law or the Company's charter, bylaws or other organizational documents or policies shall affect the Indemnified Professionals' rights hereunder. The attached indemnity and limitation on liability provisions are incorporated into this Agreement, and the termination of this Agreement or the engagement shall not affect those provisions, which shall remain in full force and effect.

11. <u>Chapter 11 Proceedings.</u>

This Agreement is subject to the approval of the Bankruptcy Court for the District of Delaware (the "Court"). The Company shall use its best efforts to promptly apply to the Court for the approval of this Agreement and Sonoran's retention by the Company under the terms of this Agreement. The Company shall supply Sonoran with a draft of such application and any proposed order authorizing Sonoran's retention that is proposed to be submitted to the bankruptcy court sufficiently in advance of the filing of such application or the submission of such order, as the case may be, to enable Sonoran and its counsel to review and comment on such application or order.

12. <u>Miscellaneous.</u>

This Agreement (together with the attached indemnity provisions), including, without limitation, the construction and interpretation thereof, and all claims, controversies, and disputes arising under or relating thereto, shall be governed and construed in accordance with the laws of the State of Delaware, without regard to principles of conflict of law that would defer to the laws of another jurisdiction. The Company and Sonoran agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the engagement or the performance or non-performance of Sonoran under this Agreement. The Company and Sonoran agree, to the extent permitted by applicable law, that any Federal Court sitting within the District of Delaware shall have exclusive jurisdiction over any litigation arising out of this Agreement; to submit to the personal jurisdiction of the Courts of the United States District Court for the District of Delaware; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of Delaware for any litigation arising in connection with this Agreement.

Subject only to Court approval, this Agreement shall be binding upon Sonoran and the Company, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of Sonoran's or the Company's respective businesses and/or assets, including any chapter 11 trustee. This Agreement incorporates the entire understanding of the parties with respect to the subject matter of this Agreement and supersedes all prior written or oral agreements and understandings with respect thereto; and may not be amended or modified except in writing executed by the Company and Sonoran. Notwithstanding anything in this Agreement to the contrary, Sonoran may

- 7 -



reference or list the Company's name and/or a general description of the services in Sonoran's marketing materials, including, without limitation, on Sonoran's website.

Sincerely,

Matthew Foster
Managing Director
Sonoran Capital Advisors, LLC


Accepted and agreed to:

By: _____

Name: Grant Lyon

Title:  Member of the Board of Directors