# EXHIBIT D

EFiled: Nov 04 2020 03:35PM EST
Transaction ID 66080817
Case No. 2020-0941-

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| JAMES ALEXANDER, | |
| Plaintiff, | |
| v. | |
| DANIEL BRIAN SCHATT and JOSEPH PODULKA, | C.A. No. _____ |
| Defendants, | |
| v. | |
| CRED CAPITAL, INC., | |
| Nominal Defendant. | |

## VERIFIED COMPLAINT
## PURSUANT TO 8 *DEL. C.* § 225

James Alexander ("Alexander" or "Plaintiff"), by and through his undersigned counsel, brings this Verified Complaint pursuant to 8 *Del. C.* § 225 against Daniel Brian Schatt ("Schatt") and Joseph Podulka ("Podulka" and collectively with Schatt, "Defendants"), and Cred Capital, Inc. ("Cred Capital" or the "Company") as Nominal Defendant, and alleges as follows:

## NATURE OF THE ACTION

1.      This action seeks to stop a corporate coup d'état by Defendants Daniel Brian Schatt and Joseph Podulka, as they try to seize control of Cred Capital without any authority to do so.

2.     Plaintiff James Alexander brings this action for expedited relief pursuant to 8 *Del. C.* § 225 ("Section 225") of the Delaware General Corporation Law (the "DGCL") seeking a declaration that:

   a.  The Contribution Agreement dated March 16, 2020 between Cred and Cred Capital is valid and enforceable;

   b.  The Asset Management Agreement dated March 31, 2020 between Cred and Cred Capital is valid and enforceable

   c.  Alexander is the sole director and President of Cred Capital;

   d.  Schatt is not a director or officer of Cred Capital;

   e.  Podulka is not a director of Cred Capital; and

   f.  Schatt's actions purporting to "reincorporate" and recapitalize" Cred Capital are in breach of their prior oral and written agreements and are invalid and of no force.

3.     Cred Capital was incorporated in Delaware in the spring of 2020. It is a financial asset management company focused on cryptocurrency assets. Upon incorporation in March 2020, Plaintiff James Alexander was Cred Capital's President and sole director, and had proxy voting rights for its sole voting shareholder.

4.     Cred Capital was derived from Cred, Inc. ("Cred"), a digital asset lending platform whose co-founder and CEO is Defendant Schatt. However, Cred Capital was created and intended to be a separately capitalized and operated company. At all relevant times, Plaintiff Alexander was the sole director and President of Cred Capital.

2

5.      After disagreements arose between Alexander and Schatt, Schatt engineered a legally unsupportable squeeze out of Alexander from his position as the sole director and President of Cred Capital. Although Schatt was, legally speaking, a total stranger to Cred Capital, he nevertheless purported to reincorporate Cred Capital based on a perceived error in the original incorporation documents and the purported unavailability of the original incorporator. Both conditions – the unavailability of the original incorporator and her error in failing to sign a document appointing Alexander as the sole director – were necessary for Schatt to swoop in and effect his scheme.

6.      However, at the time he acted, neither condition was true – the error had already been spotted and corrected by the original incorporator.  In fact, the error Schatt seized upon had already been discovered – and fixed – by *his own* General Counsel. And as for the unavailability of the original incorporator, her name and mailing address were in the original Certificate of Incorporation, and she worked for Schatt's own General Counsel's former law firm – which he no doubt would have known if he had simply asked.

7.      Since improperly attempting to squeeze Alexander out of Cred Capital in late June 2020, Schatt has taken a number of actions that have seriously – likely irretrievably – damaged the Company, and also damaged Alexander's career, income, and reputation. Schatt did this in an effort to exert control over a company

as to which he was a legal stranger – a company that was intentionally set up outside his control.  Because his own company was in danger of insolvency, Schatt tried to unwind Cred Capital's independence and fold it into Cred. When Alexander did not go along with Schatt's plan, Schatt attempted to take by force what he could not gain by agreement.

8.      By this action, Plaintiff Alexander asks this Court to declare that (i) the Contribution Agreement between Cred and Cred Capital dated March 16, 2020 is valid and enforceable; (ii) the Asset Management Agreement between Cred and Cred Capital dated March 31, 2020 is valid and enforceable; (iii) Alexander is the sole director and President of Cred Capital; (iv) Neither Schatt nor Podulka are directors of Cred Capital; (v) Schatt is not an officer of Cred Capital; and (vi) Schatt's actions purporting to "reincorporate" and "recapitalize" Cred Capital are in breach of their prior oral and written agreements and are invalid and of no force.

9.      Mr. Alexander's authority is clear, and Messrs. Schatt's and Podulka's efforts to interfere with it must be stopped.

## THE PARTIES

10.     Plaintiff James Alexander is an adult individual resident of California who has spent nearly thirty years in the financial services industry, with experience in traditional banking, capital markets, research and institutional sales. Since 2010 he has been dedicated to building online, financial technology ("FinTech")

4

companies. Alexander began working for Cred, Inc. in August 2018 as its Head of Capital Markets. Upon the creation of Cred Capital in March of 2020, Alexander became its President and sole director, and had proxy voting rights for the Company's sole voting shareholder.

11.     Defendant Daniel Brian Schatt is an adult individual resident of California. Schatt was a co-founder of Cred, Inc. and serves as its Chief Executive Officer. Since June of 2020, Schatt has been holding himself out as the sole director and President of Cred Capital and causing the Company and Plaintiff James Alexander irreparable harm.

12.     Defendant Joseph Podulka is an adult individual resident of California. At the times relevant to this Complaint, Podulka was the Chief Financial Officer (CFO) of Cred, Inc. Since June of 2020, Podulka has been holding himself out as a director of Cred Capital and causing the Company and Plaintiff James Alexander irreparable harm.

13.     Nominal Defendant Cred Capital is a Delaware corporation formed on March 10, 2020. Cred Capital is a financial asset management company concentrating on blockchain-based cryptocurrency assets. Upon its incorporation, Alexander became Cred Capital's President and sole director. Since June of 2020, Schatt has been holding himself out as a director and the President of Cred Capital and causing the Company and Plaintiff James Alexander irreparable harm.

## RELEVANT NON-PARTIES

14.    Non-Party Cred, Inc. is a financial services company incorporated under the laws of the state of California that handles digital assets and offers lending and borrowing services comparable to those one might find offered by a bank or investment manager, but utilizes blockchain and cryptocurrency technology to do so. Defendant Dan Schatt was a co-founder of Cred and serves as its Chief Executive Officer. Plaintiff James Alexander began working for Cred in August 2018 as Head of Capital Markets. In March of 2020, the investment management and capital markets activities of Cred were separated and moved to a new, isolated entity, Cred Capital, Inc.

15.    Non-Party Daniel Wheeler is an adult individual resident of California. Wheeler is a former Partner at Bryan Cave Leighton & Paisner LLP ("Bryan Cave"). He currently serves as the General Counsel of Cred and as General Counsel and Corporate Secretary of Cred Capital. He was responsible for overseeing the incorporation of Cred Capital in March of 2020 and, as Corporate Secretary of Cred Capital, was responsible for maintaining the Register of Directors and Officers.

16.    Non-Party Rebecca Floren is an adult individual resident of Illinois. At the times relevant to this Complaint, Floren was a paralegal employed by Bryan Cave in its Chicago office. Floren handled the ministerial steps to incorporate Cred Capital in Delaware and, as a result, was Cred Capital's sole incorporator.

6

## JURISDICTION

17.     The Court of Chancery has subject matter jurisdiction over this matter

pursuant to 8 *Del. C.* § 111, 8 *Del. C.* § 225, 10 *Del. C.* § 341 and 10 *Del. C.* § 6501.

18.     The Court of Chancery has personal jurisdiction over the Defendants

by reason of their holding themselves out to be the directors of Cred Capital, Inc., a

Delaware Corporation, pursuant to 10 *Del. C.* § 3114.

## FACTUAL ALLEGATIONS

**A.     Cred, Inc. and Cred Capital, Inc.**

19.     Cred is a financial services company that handles digital assets. It offers

lending and borrowing services comparable to those offered by a bank or investment

manager, but focused on cryptocurrencies. Defendant Daniel Schatt was a co-

founder of Cred and serves as its Chief Executive Officer. Plaintiff James Alexander

began working for Cred in August 2018 as its Head of Capital Markets.

20.     Cred has assets under management equivalent to tens of millions of

U.S. dollars. Over the course of the fall and winter of 2019, some of the senior

management of Cred discussed separating the investment management and capital

markets activities of Cred into a separate entity. It was discussed and agreed that this

new entity should be separate from Cred – not a wholly-owned subsidiary, but

instead an entity with an actual separate ownership and management structure. These

7

discussions took place largely among Mr. Alexander, Mr. Schatt, Joe Podulka, Cred's Chief Financial Officer, and Dan Wheeler, Cred's General Counsel.

21.    These discussions culminated with the creation of a separate entity – Cred Capital, Inc. – in March 2020. Cred Capital was incorporated in Delaware on March 10, 2020. A true and correct copy of its Certificate of Incorporation is attached hereto as Exhibit 1. Upon its incorporation, James Alexander became its sole director, and was named President of the corporation, with Mr. Podulka serving as Treasurer and Dan Wheeler as its General Counsel and Corporate Secretary.

22.    As reflected in the Certificate of Incorporation, Cred Capital was established with two classes of common stock. Class A common stock was designated as having voting power, while Class B common stock did not have any voting power. As explained below, to reinforce the separateness of Cred Capital from Cred, Cred became a non-voting investor in Cred Capital, and James Alexander was Cred Capital's sole corporate director.

23.    At all times relevant to this action, Alexander has maintained control of substantially all of the assets of Cred Capital. In conjunction with litigation currently pending between Cred and Alexander, Alexander has been preliminarily enjoined from transferring, transmitting, or using these assets.

**B.    Cred Capital Distributes Shares And Begins Operations**

24.    On April 1, 2020, Cred Capital entered into a Stock Purchase Agreement[1] to sell 450,045 Series A shares, which have voting rights, to an investor (the "Series A Investor").  On April 6, 2020, the Series A Investor entered into an agreement granting to Mr. Alexander a proxy[2] to vote his shares. Other than the Series A Investor, no one else held Series A shares. As a result of the proxy grant, Mr. Alexander holds sole voting rights for Cred Capital.

25.    Additionally, Cred Capital received commitments for investments in the spring of 2020 from two different investors in exchange for (non-voting) Series B shares.[3] Cred was one of the two Series B investors.

26.    One element of Cred's contribution in exchange for shares was through the execution of an Asset Management Agreement between Cred and Cred Capital,[4] under which Cred Capital gained the sole and exclusive right to manage Cred's assets for a period of two years. That agreement was executed by Alexander, on behalf of Cred Capital, and Dan Schatt as CEO of Cred.

---

[1] A true and correct copy of the Stock Purchase Agreement is attached hereto as Exhibit 2.

[2] A true and correct copy of the Series A Investor Proxy is attached hereto as Exhibit 3.

[3] These Contribution Agreements are attached hereto as Exhibits 4 and 5.

[4] A true and correct copy of the Asset Management Agreement is attached hereto as Exhibit 6.

### C.    Cred Cannot Claim Ignorance Regarding Cred Capital's Structure, As Its Own General Counsel Was Responsible for It.

27.    Cred and Schatt have expressed shock that Cred was only a non-voting shareholder of Cred Capital, and that James Alexander was its sole director. It is impossible to take their incredulity seriously. As to the non-voting shares, Mr. Schatt himself signed the Contribution Agreement under which Cred was issued "B" Shares. Setting aside the discussions among the individuals, simply getting "B" Shares is an indication that there are "A" Shares that have more rights.

28.    But one need not rely on such inferences. Cred and Cred Capital shared the same General Counsel, Dan Wheeler.  Mr. Wheeler serves as General Counsel of Cred, Inc., and as both the General Counsel and Corporate Secretary for Cred Capital.  Mr. Wheeler was responsible for overseeing the incorporation of Cred Capital. As a former partner at the law firm Bryan Cave, Mr. Wheeler used the assistance of attorneys and paralegals (including Rebecca Floren, a paralegal who was the original incorporator of Cred Capital) at Bryan Cave in doing so. Thus, Mr. Wheeler worked with James Alexander on the incorporation, and presented Mr. Alexander with the documents he needed to sign. He also prepared the Contribution Agreement that Mr. Schatt signed in exchange for Series B shares.

29.    As the Corporate Secretary for Cred Capital, Mr. Wheeler was responsible for maintaining the Register of Directors and Officers for Cred Capital,

a true and correct copy of which is attached hereto as Exhibit 7. That document clearly shows that Alexander was the sole director of Cred Capital.

### D.    Schatt Attempts To Undermine Cred Capital's Independence

30.    Over the course of the spring of 2020, Schatt continually tried to treat Cred Capital as a wholly-owned subsidiary of Cred, even though the Company was specifically established as separate and independent from Cred; Cred Capital had different investors and its sole voting shareholder was not an investor in Cred and gave his voting proxy to Alexander. Cred knew all of this, because 1) it was always the intent of the parties to structure Cred Capital as a separate entity; 2) Mr. Schatt signed the agreement for Class B shares; and 3) Mr. Wheeler, Cred's General Counsel, knew it because he was responsible for overseeing the incorporation and investments. Despite this, Schatt and Cred sought administrative control of Cred Capital's bank accounts, administration of Cred Capital's employee benefits, and excessive and unnecessary allocation of expenses to Cred Capital.

31.    It was in this same time period that an analysis indicated that Cred was undercapitalized and in danger of being declared insolvent. Schatt therefore decided to discard the actual legal separation between Cred and Cred Capital.

32.    Thus, on June 3, 2020, Schatt sent Alexander an email, a true and correct copy of which is attached hereto as Exhibit 8, seeking Alexander's agreement to eliminate Cred Capital's independence. Pursuant to the proposal in his email: 1)

Cred would be granted 2 of 3 seats on the Board of Directors of Cred Capital; 2) Cred would receive voting shares with 85% of the voting rights while the Series A Investor would have his voting rights diluted to 15%; and 3) the term of the Asset Management Agreement – which was Cred's major contribution in exchange for its shares in Cred Capital – would be reduced from two years to one year. Thus, Cred would gain the majority of voting rights on the Board, would gain the majority of voting rights of the shareholders; and would be contributing in exchange less (a reduced term to the asset management agreement). In effect, Schatt was proposing a hostile takeover of Cred Capital.

33.     Alexander did not agree to these terms. Although he attempted to resolve the dispute through an outside mediation, Schatt refused to engage. Instead, Schatt decided to try to take by force what Alexander would not voluntarily surrender.

### E.     Schatt Seizes Control of Cred Capital

34.     On June 23, Schatt sent an email to Alexander, a true and correct copy of which is attached hereto as Exhibit 9, asserting that there was a defect in the incorporation papers for Cred Capital, and that he had used this purported defect to "undo" and then "redo" Cred's incorporation. He stated:

> [W]e discovered that the initial board of directors was not properly
> constituted, as the incorporator of the company, Rebecca Floren, never
> signed resolutions transferring control of the company to the initial
> board of directors as required by Delaware law. James had signed an

"action of incorporator" naming himself as a director (attachment #1), but this was an invalid action because Rebecca Floren was named as the incorporator in the original certificate of incorporation. As a result, all of the subsequent actions James purportedly took as a director were also invalid, such as naming officers and approving the issuance and sale of stock.

To cure these defects, on the advice of outside counsel, after determining that Rebecca Floren was not available, Cred executed a new action of incorporator in reliance on Section 108(d) of the DGCL (attachment #2) appointing myself and Joe Podulka as directors. In our capacity as the new board, we confirmed that all prior purported stock issuances and authorizations were void and approved a new issuance and sale of 1,000 shares of Class A Common Stock to Cred Inc. This action made Cred the sole stockholder and parent company of Cred Capital. We also named a new slate of officers (myself, Joe and Dan) and amended and restated the certificate of incorporation of Cred Capital, Inc. to simplify the capital structure and create a single class of common stock….

35.    Rebecca Floren, a paralegal employed by Dan Wheeler's former law firm, Bryan Cave, in its Chicago office, handled the ministerial steps to incorporate Cred Capital in Delaware and, as a result, was the sole incorporator. After Cred Capital was incorporated, she was supposed to then transfer the company to Alexander. Initially, this transfer mistakenly was not made.

36.    At all relevant times, it was always understood and intended that, after incorporation, Cred Capital would be transferred to Alexander. At all relevant times, everyone proceeded as if Alexander was the sole director and President of Cred Capital. Accordingly, on behalf of Cred Capital he executed the stock purchase agreement with the Series A Investor, the Founder Contribution Agreements with

Cred (counter-signed by Schatt) and with Lu Hua, and the Asset Management Agreement with Cred (again counter-signed by Schatt). At all times, everyone understood and acted as if Alexander was the proper director and President of Cred Capital – including Mr. Schatt. Indeed, as his email earlier in June demonstrated, he was seeking Alexander's agreement on behalf of Cred Capital to effect the changes that he proposed. But when Schatt saw what he perceived as an opportunity to remove Alexander, he pounced.

37.     After Schatt discovered this purported error, he did not contact Alexander to correct this simple error nor did he make any inquiry of Wheeler, his own General Counsel, who had overseen the incorporation, and who easily could have put him in touch with Ms. Floren, since she worked at his old law firm.  He also did not attempt to contact Ms. Floren, whose street address in Chicago was prominently listed on the Certificate of Incorporation. Instead, rather than correct what was clearly a simple mistake, he saw as an opportunity to seize control of Cred Capital and wipe out its independence: thus, he purported to re-incorporate Cred Capital, appoint himself and his CFO as directors, and recapitalize the company and wipe out the Series A investor, leaving Cred as the sole investor.

38.     Having purportedly stripped Alexander of his authority as the sole director, the person holding proxy voting power for the Series A shares, and as

14

President, Schatt thereafter purported to terminate Alexander. Cred and Cred Capital
then brought suit against Alexander.

### F.      Schatt's Efforts Were Based On A False Premise

39.      There is a problem with Schatt's scheme: by the time he moved to seize
control, the so-called "problem" that purportedly justified these shenanigans had
been fixed. Well before his triumphant June 23 email, Alexander and Wheeler
(again, Cred's own General Counsel) had discovered the error in the incorporation
documents and corrected it.  Ms. Floren, as mentioned, is a paralegal employed by
Bryan Cave.  She was not "unavailable." Once the error was discovered, Mr.
Wheeler arranged for Ms. Floren to execute the missing document, which she then
did. A true and correct copy of the "Action by Written Consent of the Sole
Incorporator," signed by Rebecca Floren, transferring Cred Capital to Alexander, is
attached hereto as Exhibit 10. This was all done well before Schatt's email of June
23. If he had asked Alexander, or even his own General Counsel, before taking these
rash and unwarranted steps, he would have known this. Instead, without even
consulting his own General Counsel to learn the actual facts, he hired outside
counsel, who purport to represent both Cred and Cred Capital, and began this
quixotic – and legally unsupportable– campaign. This is a classic example of a
putsch.

15

40.     Because the original error in the incorporation documents was cured, Schatt's efforts to "reincorporate" and "recapitalize" Cred Capital are null and void. Schatt was a stranger to Cred Capital with no authority to take any of the steps that he has taken. Alexander was and is the proper sole director of Cred Capital, with the sole voting Shareholder authority. All of Schatt's efforts to the contrary he took with no authority and are legally meaningless.

**G.     Since Taking Control, Schatt Has Damaged Cred Capital And Now Seems Intent On Dissolving It As A Separate Entity**

41.     Since attempting to install himself and eject Alexander from Cred Capital, Schatt has pursued certain actions that have harmed the company's ongoing prospects.

42.     While Cred Capital held an Asset Management Agreement with Cred, Schatt has rewritten and purported to sign a new Asset Management Agreement on behalf of Cred Capital that substantially revised the already-agreed terms of the existing agreement and substantially reduced the benefit to Cred Capital. This new agreement would cause a loss of at least $1 million of revenue over two years to Cred Capital.

43.     Cred Capital was in the process of diversifying and expanding its clients and investments. Alexander's background is in asset management. He had assembled a team to handle asset management. At least one potential client decided

not to place his assets – worth at least $1 million – with Cred Capital after Schatt interfered with Alexander's management of Cred Capital.

44.    While Cred Capital maintained bank accounts at Silvergate Bank, Schatt has improperly attempted to gain control of these accounts.

45.    The human resources benefits for Cred Capital were established at Sequoia One. Schatt has attempted to lock Alexander out of all Cred Capital HR management services administered by Sequoia One.

46.    The technology infrastructure of Cred Capital was established at Google, including email, document storage, and calendar and contacts services. Schatt has attempted to lock Alexander out of all Cred Capital domain services. Schatt continues to have unauthorized access to all the confidential and proprietary data owned by Cred Capital. Schatt has reviewed Alexander's private email correspondence and contacted various prospects, service providers and clients.

47.    Cred Capital engaged various service providers and consultants to execute its business plan. Schatt has attempted to block payment of outstanding invoices from individuals and companies. This has causing the resignation of key stakeholders in the success of Cred Capital and created significant liabilities for this failure of Cred Capital to perform on its commitments.

48.    Schatt improperly directed Cred Capital employees to stop work on certain Cred Capital initiatives and start work on projects that would benefit Cred.

## COUNT I
### (Declaration Pursuant to Section 225 of the DGCL)

49.     Plaintiff repeats and realleges each allegation contained above as though fully set forth herein.

50.     A dispute exists as to who is Cred Capital's sole director and the rights and obligations of the parties as directors and/or officers of Cred Capital. Specifically, Defendant has directly interfered with Plaintiff's rights as the sole director and President of Cred Capital by, *inter alia*, purporting to "reincorporate" and recapitalize" Cred Capital in breach of prior oral and written agreements.

51.     Accordingly, a declaratory judgment is necessary and proper to determine who Cred Capital's proper director is and whether Defendant's actions after June 3, 2020, in purportedly removing Plaintiff as Cred Capital's sole director and President and reincorporating and recapitalizing Cred Capital, were invalid and improper.

52.     Plaintiff seeks a declaration pursuant to 8 *Del. C.* § 225 that:

   a. The Contribution Agreement between Cred and Cred Capital dated March 16, 2020 is valid and enforceable;

   b. The Asset Management Agreement between Cred and Cred Capital dated March 31, 2020  is valid and enforceable

   c. Alexander is the sole director and President of Cred Capital;

   d. Schatt is not a director or officer of Cred Capital;

   e. Podulka is not a director of Cred Capital; and

f.  Schatt's actions purporting to "reincorporate" and recapitalize" Cred Capital are in breach of their prior oral and written agreements and are invalid and of no force.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that judgment be granted in his favor as follows:

(a)  Pursuant to 8 *Del. C.* § 225, a declaration that:

(i)  The Contribution Agreement between Cred and Cred Capital dated March 16, 2020 is valid and enforceable;

(ii)  The Asset Management Agreement between Cred and Cred Capital dated March 31, 2020 is valid and enforceable

(iii)  Alexander is the sole director and President of Cred Capital;

(iv)  Neither Schatt nor Podulka is a director of Cred Capital;

(v)  Schatt is not an officer of Cred Capital;

(vi)  Podulka is not a director of Cred Capital; and

(vii)  Schatt's actions purporting to "reincorporate" and recapitalize" Cred Capital are in breach of their prior oral and written agreements and are invalid and of no force.

(b)  Attorneys' fees, costs, and expenses to the extent permitted by law;

(c)  Such other and further relief as this Court deems just and appropriate under these circumstances.


**BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Geoffrey G. Grivner*
Geoffrey G. Grivner (# 4711)
Kody M. Sparks (# 6464)

19

919 North Market Street, Suite 990
Wilmington, DE 19801
Telephone:  (302) 552-4200
Facsimile:   (302) 552-4295
*geoffrey.grivner@bipc.com*
*kody.sparks@bipc.com*

Dated: November 4, 2020          *Attorneys for Plaintiff*