# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CRED INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case No. 20-12836 (JTD)<br>(Jointly Administered)<br>**Re: D.I. 62, 97 & 109** |

**REPLY TO DEBTORS' OBJECTION TO THE MOTION OF KRZYSZTOF MAJDAK AND PHILIPPE GODINEAU FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 1112(b)(1) DISMISSING THE CASES; (II) CONVERTING THE CASES TO A CHAPTER 7 LIQUIDATION; OR (III) APPOINTING A CHAPTER 11 TRUSTEE**

Krzysztof Majdak and Philippe Godineau (the "Moving Creditors"), by and through their undersigned counsel, hereby file this Reply (the "Reply") to the Debtors' opposition (the "Opposition" or "Opp'n") [Dkt. no. 109] to Moving Creditors motion for entry of an order pursuant to section 1112(b) of title 11 of the United States Code (the "Bankruptcy Code") directing that these Chapter 11 cases be (i) dismissed; (ii) converted to cases under Chapter 7 of the Bankruptcy Code; or alternatively (iii) for the appointment of a Chapter 11 trustee (the "Motion" or "Motion to Convert") [Dkt. no. 62]. In support hereof, the Moving Creditors respectfully state as follows:

## ARGUMENT

1. Debtors' oppose the Motion to Convert claiming, in summary, (i) that there is no substantial or continuing loss to or diminution of the estate, (ii) there is no gross mismanagement

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

{00029713. }

of the estate, and lastly, (iii) that any malfeasance or incompetence by Debtors' principals prepetition is now effectively being administered by competent, independent officers.

2. Respectfully, the facts that have come to light in the intervening weeks since the Motion was filed have shown that none of these arguments is true. These facts show that the Debtors' have been running a Ponzi Scheme for most of the past year, if not going back further. See Decl. of Daniyal Inamullah in Support of the Motion, the "Inamullah Decl.," Dkt. no. 97, ¶¶ 12, 14, 15, 17). Debtors' "business" is to borrow from Peter to pay back Paul. It is inconceivable that they would be permitted by this Court to continue their fraudulent scheme under the cover of bankruptcy protection.

    A. <u>The Estates Continue to Suffer Loss and Diminution</u>

3. Debtors continue to insist on a fantasy narrative wherein a team of very expensive and qualified restructuring professions could turn their "business" around and give it a new life as a going concern. (Opp'n at ¶ 3). The strategy requires the retention of Debtors' "platform technology" and its "highly talented employees." *Id.* They point to "cost saving measures" and a "value maximizing sales process." *Id.* ¶ 5.

4. Yet, Debtors' never had a real business model to begin with. Their CredEarn "business" consisted of simply borrowing money (in the form of cryptocurrencies) from individuals and entities around the world and promising them high interest rates. While CredEarn customers may have believed that they were the owners of segregated accounts, in fact the money they lent was immediately commingled with corporate funds. (Inamullah Decl. ¶ 7). On a good day, this model would be extremely difficult to sustain. Debtors would have had to make consistently brilliant investments with the borrowed money to repay the loans and cover overhead costs.

5.      However, Debtors own pleadings and declarations tell a story of only bad days (and months, possibly losing over $100 million in less than 180 days). (Decl. of Daniel Schatt in Supp. of Debtors' Chapter 11 Petitions, Dkt. no. 12, ¶¶ 18-40). Debtors lost the borrowed money through extremely poor investments, criminal thefts, and high overhead costs. In other words, from early on, the only way that Debtors could have possibly paid back early CredEarn "customers" was to raise money from new CredEarn "customers." CredEarn is, by definition, a Ponzi Scheme. While legitimate businesses can, and routinely do, borrow new money to pay back older loans, in the Debtors' case that is simply all that Debtors ever did.

6.      The "CredBorrow" program was even worse. One such CredBorrow user named UpgradeYa Investments, LLC ("UpgradeYa") has already moved this Court to lift the stay to recover its cryptocurrency collateral. (Dkt. no. 89). In the CredBorrow program, users would deposit their cryptocurrencies with Cred as "collateral," granting a security interest. (Decl. of Mark Parrish in Supp. of Motion for Relief of Stay, Dkt. no. 91, Ex. "A" attached thereto). They would then borrow money against that collateral. *Id.* at 2. While it represented a smaller part of Debtors' "business," CredBorrow involved elevated levels of misrepresentation, followed by criminal defalcation of the CredBorrow user's collateral. (Inamullah Decl. ¶ 17). To summarize what happened, the Debtors simply appropriated the CredBorrow collateral and used it for corporate expenses and for CredEarn redemptions. All the while, CredBorrow users like UpgradeYa assumed that their collateral was being preserved in a segregated account, to be accessed by Debtors' only in the event of a default on their loan, as per the agreement.

7.      In other words, whereas CredEarn was a pure Ponzi Scheme, CredBorrow was a pure swindle that served to fund the Ponzi Scheme. Debtors' Chief Executive Officer Dan Schatt would distort the English language to make this pyramid scheme into a "business." In his

fantasy world, he referred to CredEarn lenders as "customers," when every other business would consider these people to be general unsecured noteholders.  Schatt referred to the cryptocurrency assets that CredEarn "customers" handed over to Cred as "revenue."  Any money that came in over the value of loan redemptions and distributions, even if it was simply money borrowed from creditor-"customers", was called "profit."

> B. There is Already Postpetition Gross Mismanagement of the Estates, Practiced by by Highly Conflicted Professionals

8.        In the Opposition papers, Debtors' go to pains to show that they are moving to actively preserve estate assets, including through the prosecution of claims against third parties like borrower moKredit, former officer James Alexander, and against a purported "Imposter." (Decl. of Grant Lyon, Dkt. no. 109-1, ¶ 10).  Yet, it is what they have *not* done that speaks loudest.

9.        Perhaps unsurprisingly, the professionals that Dan Schatt hired have not yet turned on Dan Schatt, the architect of the Cred catastrophy, who, incredibly, is *still* the Chief Executive Officer.  Indeed, Debtors' counsel Paul Hastings has independently represented Schatt in the past (as well as third party Uphold, where Schatt was on the board of directors).  (Decl. of James T. Grogan, Dkt. no. 64-3, ¶ 21).  As an example, in Debtors' opposition [Dkt. no. 116] to UpgradeYa's lift stay motion [Dkt. no. 89], the Debtors gloss over the fact that Schatt allowed Debtors to simply steal UpgradeYa's collateral, despite the clear language of the CredBorrow agreement between Debtors and UpgradeYa.  (Dkt. no. 116 ¶¶ 3, 12-13).  Instead of calling the authorities to report the defalcation of millions of dollars' worth of Bitcoin, Debtors have deployed their "independent" professionals to circle the wagon around their real client, Dan Schatt.  Debtors' counsel argues, bizarrely, that UpgradeYa was "not granted a security interest

in any property." *Id.* ¶ 12.  In fact, it was UpgradeYa that granted *Debtors* the security interest in *its* property.  (Dkt. no. 91-1 at 2, ¶ 2.1).

        C. <u>It is Not Too Early in the Cases to Convert to Chapter 7 or to Appoint a Chapter 11 Trustee</u>

10.      Through their conflicted professionals, Debtors' have asserted the false and self-serving narrative of "rehabilitation," even while they pay themselves millions of dollars in salaries and hourly fees.  It is astounding that Debtors continue in possession of the estates, notwithstanding the nominal independence of their professionals.  The estates cannot afford for this charade to continue and this Court should intervene swiftly to end it, before the limited estate resources are all gone.

11.      The Moving Creditors reserve their rights to raise additional facts and arguments at the hearing.

[*Remainder of Page Intentionally Left Blank*]

**CONCLUSION**

For the above reasons, the Moving Creditors respectfully reiterate their request that the Court enter an order either (i) converting these cases to cases under Chapter 7 of the Bankruptcy Code; (ii) dismissing these Chapter 11 cases; or (iii) appointing a Chapter 11 trustee.

Respectfully submitted,

Date:  December 4, 2020
Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

*/s/ Jason A. Gibson*
Jason A. Gibson (DE 6091)
824 N. Market St., Suite 810
Wilmington, Delaware 19801
Tel: (302) 777-111
Email: gibson@teamrosner.com

and

SARACHEK LAW FIRM
Joseph E. Sarachek (admitted *pro hac vice*)
Zachary E. Mazur (admitted *pro hac vice)*
670 White Plains Road
Penthouse Fl.
Scarsdale, New York 10583
Telephone: (646) 517-5420
Facsimile: (646) 861-4950
joe@saracheklawfirm.com
zachary@saracheklawfirm.com

*Counsel to Krzysztof Majdak and Philippe Godineau*