**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re*<br><br>CRED INC., *et al.*,[1]<br><br>            Debtors. | :   Chapter 11<br>:<br>:   Case No. 20-12836 (JTD)<br>:   (Jointly Administered)<br>:<br>:   **Re: D.I. 64**<br>:<br>:   **Hearing Date: December 9, 2020 at 2:00 P.M. ET** |

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE DEBTORS'
APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING
RETENTION OF PAUL HASTINGS LLP AS COUNSEL TO THE DEBTORS,
EFFECTIVE AS OF PETITION DATE**

In support of his objection to the above-captioned Debtors' (the "Debtors" or "Cred") application (the "Application") for entry of an order authorizing and approving the retention of Paul Hastings LLP as counsel to the Debtors, effective as of November 7, 2020 (the "Petition Date") [D.I. 64], Andrew R. Vara, United States Trustee for Regions Three and Nine ("U.S. Trustee"), through his counsel, avers:

**INTRODUCTION**

1.     This Court has jurisdiction over the above-captioned cases pursuant to 28 U.S.C. § 1334. This Court is authorized to hear and determine the Application pursuant to 28 U.S.C. § 157(a, b), and the amended standing order of reference issued by the United States District Court for the District of Delaware dated February 29, 2012. Venue of the cases is proper in this District pursuant to 28 U.S.C. § 1408(1).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

1

2. Under 28 U.S.C. § 586, the U.S. Trustee is generally charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog"). Specifically, the U.S. Trustee is charged with "monitoring applications filed under section 327 of title 11 and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications." 28 U.S.C. § 586(a)(3)(I).

3. The U.S. Trustee has standing to be heard with respect to the Application pursuant to 11 U.S.C. § 307.

**FACTUAL BACKGROUND**

4. On November 18, 2020, the Debtors filed the Application, which is supported by the declaration of James T. Grogan (the "<u>Grogan Declaration</u>").

5. In paragraph 6 of the Grogan Declaration, Paul Hastings states that "it has represented one or more of the Debtors in connection with certain corporate and litigation matters since June 2018." In addition to the litigation matters specifically discussed in paragraph 21 of the Declaration, based upon the U.S. Trustee's inquiries of Paul Hastings made after the Application was filed, the U.S. Trustee learned that "certain corporate … matters" include the following:

   a. Paul Hastings assisted the Debtors with corporate and transaction work in connection with a convertible notes private placement offering in August and September 2020. The new notes raised $2.6 million in capital that constitutes the Debtors' only outstanding funded debt. Ostensibly, no reasonable third-party investor would commit capital to an insolvent entity on an unsecured basis, so the convertible notes issuance,

    the information provided to investors, and the role(s) of professionals involved will undoubtedly be scrutinized.

b. Paul Hastings advised the Debtors in connection with the corporate steps for Cred to obtain stock ownership and board control of its subsidiary Cred Capital Inc., including preparation of related corporate governance documents. The corporate governance of Cred Capital, Inc., including the validity of the steps taken by Cred in the summer of 2020, is now the subject of litigation in both California and Delaware, and may impact whether Cred Capital's bankruptcy filing is properly authorized.

c. In the Grogan Declaration, Paul Hastings indicates that it currently represents, and has in the past represented, Uphold Inc., Uphold HQ Inc., and Uphold Ltd. (collectively, "Uphold") in connection with "certain corporate and litigation matters **unrelated** to the Debtors." Grogan Decl. ¶ 21(c) (emphasis in original). Paul Hastings states that it "has imposed (and will continue to impose) certain screening procedures in the form of ethical walls between the attorneys, files, and information relating to Paul Hastings' representation of the Debtors and those relating to Paul Hastings' representation of Uphold." *Id.* Paul Hastings also states that, to the extent that any matters arise during the chapter 11 cases involving Uphold, Cousins Law LLC, as co-counsel to the Debtors will handle such matters on behalf of the Debtors.

In communicating with Paul Hastings, the U.S. Trustee inquired as to whether Paul Hastings received a written conflict waiver from Uphold which authorized Paul Hastings to be adverse to Uphold in connection with the above-captioned chapter 11 cases. As of the time this objection was filed, the U.S. Trustee had not received the requested written conflict waiver. Given Paul Hastings' statement that Cousins Law will represent the Debtors vis-à-vis Uphold, the U.S. Trustee inferred that Paul Hastings would not be representing the Debtors vis-à-vis Uphold in these chapter 11 cases.

Uphold is a cloud-based platform that enables users to store, buy and convert various assets. Uphold was a partner of Cred from the inception of Cred's operations. Uphold's users availed themselves of Cred's products through Uphold. For its part, Uphold has issued communications announcing its intention to bring legal action against Cred, including litigation to benefit its customers who loaned monies to Cred. See **Exhibit A**, attached. The claims of Uphold – and in particular its customers – are not a peripheral issue in these cases.

6.     In paragraph 14 of the Grogan Declaration, Paul Hastings states that it was paid a total of approximately $917,581.98 during the 90-day period prior to the Debtors' bankruptcy filing. An accounting summary of invoiced amounts and payments received by Paul Hastings in the 90-day period prior to the Petition Date, based on Paul Hastings' review of its internal records,

is set forth on Schedule 3 to the Application. Based upon certain additional information provided by Paul Hastings to the Office of the U.S. Trustee, it appears that the payment received by Paul Hastings on November 5, 2020 (shortly before the Debtors' bankruptcy filings) in the amount of $431,619.33 was applied to the series of invoices beginning on August 25, 2020 noted in the grid below. The full or partial payment of the August 25, 2020 invoice seventy-two (72) days from the date of its issuance and, separately, the payment of the September 14, 2020 invoice fifty-two (52) days after its issuance both appear to be preferential. A copy of the payment history provided in response to the U.S. Trustee's informal inquiry is attached as **Exhibit B**.

| Invoice Date | Invoice Number | Invoice Amount | Period of Service Covered by Invoice |
|---|---|---|---|
| 8/25/2020 | 2244542 | $133,342.96 | Jul-20 |
| 9/14/2020 | 2246758 | $216,134.30 | Aug-20 |
| 9/30/2020 | 2248593 | $ 18,658.13 | Aug-20 |
| 10/9/2020 | 2249298 | $ 17,189.62 | Sep-20 |

## **GROUNDS/BASIS FOR RELIEF**

*Paul Hastings' Rule 2014(a) Disclosures Were Insufficiently Detailed*

7.   Federal Rule of Bankruptcy Procedure 2014(a) states:

> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. The application shall be filed and, unless the case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a

4

verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

8. The disclosure requirement contained in Bankruptcy Rule 2014(a) is "considered sacrosanct because the complete and candid disclosure by a [professional] seeking employment is indispensable to the court's discharge of its duty to assure the [professional's] eligibility for employment . . . and to make an informed decision on whether the engagement is in the best interest of the estate." *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005) (Walrath, C.J.) (citations omitted). Under Bankruptcy Rule 2014(a), professionals are required to disclose "all connections with parties in interest in the case, rather than furnishing only those which appear to implicate 'disinterestedness' or 'adverse interest' concerns." *eToys*, 331 B.R. at 190 (emphasis in original, citations omitted). Additionally, under 11 U.S.C. § 328(c), this Court has the power to deny allowance of compensation and reimbursement of expenses to a professional if, "at any time during the professional person's employment," the professional holds an interest adverse to the estate with respect to the matter on which such professional person is employed. Accordingly, the duty to disclose under Bankruptcy Rule 2014(a) is a continuing obligation to facilitate this Court's critical role in ensuring that impermissible conflicts of interest are rooted out. *See Rome v. Braunstein*, 19 F.3d 54, 57-58 (1st Cir. 1994); *In re Granite Partners, L.P.*, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998); *In re CF Holding Corp.*, 164 B.R. 799, 804-05 (Bankr. D. Conn. 1994).

9. The disclosure requirements of Bankruptcy Rule 2014(a) have been construed strictly by the courts in furtherance of the Rule's protective function. *See In re Jore Corp.*, 298 B.R. 703, 725 (Bankr. D. Mont. 2003). Accordingly, any and all information which has any bearing on a professional's eligibility for employment must be disclosed. *See Jore Corp.*, 298 B.R. at 725 (the disclosure requirements of Rule 2014(a) "do not give the attorney the right to withhold

information because it is not apparent to him or her that a conflict exists"); *In re Southmark Corp.*, 181 B.R. 291, 296 (Bankr. N.D. Tex. 1995) ("The professional person must disclose and continue to disclose all connections that may effect [sic] employment eligibility" (citation omitted)); *In re The Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994) ("All facts that may have any bearing on the disinterestedness of a professional must be disclosed" (emphasis added)); *In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992) (in complying with disclosure obligations, professionals are not free to "pick and choose which connections are irrelevant and trivial"). This Court is under no obligation to sift through the record for the purposes of policing professional conflicts of interest – under Bankruptcy Rule 2014(a), it is the professional's exclusive duty to bring the requisite information to the Court's attention. *See In re BH & P, Inc.*, 949 F.2d 1300, 1317-18 (3d Cir. 1991).

10.    To protect the integrity of the self-reporting system established by Bankruptcy Rule 2014(a), courts have strictly enforced Rule 2014's requirements both at the employment stage and after entry of an employment order. *See, e.g., United States v. Azevedo (In re Azevedo)*, 92 B.R. 910, 910-11 (Bankr. E.D. Cal. 1988) (denying employment application for failure to comply with Rule 2014(a)). Courts have also consistently held that a professional's failure to disclose connections constitutes grounds for termination of employment and disallowance/disgorgement of compensation and reimbursement sought by and/or paid to the professional. *See Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 836 (7th Cir. 1998) ("Though [Bankruptcy Rule 2014(a)] allows the fox to guard the proverbial hen house, counsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation") (quoted in *I.G. Petroleum, L.L.C. v. Fenasci (In re West Delta Oil Co.)*, 432 F.3d 347, 355 (5th Cir. 2005); *Leslie Fay*, 175

B.R. at 533 ("So important is the duty of disclosure that the failure to disclose relevant connections is an independent basis for the disallowance of fees") (quoted in *eToys*, 331 B.R. at 190).

11. Here, Paul Hastings' generic statement that "it has represented one or more of the Debtors in connection with certain corporate and litigation matters since June 2018" provided an insufficient level of detail to understand the counseling services (as opposed to litigation services) which Paul Hastings provided to the Debtors prior to the Petition Date. Additionally, the prepetition payment history provided was insufficient to evaluate Paul Hastings' disinterestedness. Paul Hastings assisted the Debtors with corporate and transaction work in connection with a capital raising convertible notes private placement offering within the ninety-day period prior to the Debtors' bankruptcy filing. Paul Hastings advised the Debtors in connection with the corporate steps for Cred to obtain for stock ownership and board control of its subsidiary Cred Capital Inc., including preparation of related corporate governance documents. There was a substantial payment lag in connection with satisfaction of the invoices referenced above. Neither this Court nor parties in interest should have to "dig" to obtain detail which should have been disclosed in the Application at the time it was filed.

*Paul Hastings Holds or Represents an Interest Adverse to the Debtors' Estates and/or Is Not a Disinterested Person*

12. Section 327(a) states:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

13. Courts have defined the "interest adverse" language in 11 U.S.C. § 327(a) as follows:

(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or

(2) to possess a predisposition under circumstances that render such a bias against the estate.

*See I.G. Petroleum, L.L.C. v. Fenasci (In re West Delta Oil Co.)*, 432 F.3d 347, 356 (5th Cir. 2005) (citations omitted); *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005).

14. 11 U.S.C. § 327(c) provides:

In a case under chapter 7, 12, or 11 of this title, a person is not disqualified from employment under this section solely because of such person's employment by or representation of a creditor, unless there is [an] objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

15. The United States Court of Appeals for the Third Circuit has neatly reduced conflicts analysis for attorneys proposed to be retained under 11 U.S.C. § 327(a) to a basic set of principles: actual conflicts of interest require disqualification; potential conflicts of interest may be disqualifying in the exercise of the Court's discretion; and the mere appearance of conflict, without more, is insufficient to disqualify counsel. *See In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 476 (3d Cir. 1998).

16. The term "disinterested person" is defined in part as a person who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C). This provision, better known as the "catch-all" provision, "has been held broad enough to include anyone who 'in the slightest degree might have some interest or relationship that might faintly color the independence and impartial attitude required [of estate professionals] by the Code and the Bankruptcy Rules.'" *In re BH & P, Inc.*, 949 F.2d 1300, 1309 (3d Cir. 1991) (internal citations omitted).

17. Here, Paul Hastings' broad range of prepetition services to the Debtors puts the firm in a position of conflict vis-à-vis the estates or, alternatively, renders the firm not disinterested and materially adverse to the Debtors' noteholders and customer/"investors."  Any review of the Debtors' prepetition conduct will inevitably involve a review of Paul Hastings' role in connection with the Debtors' operations.  Paul Hastings advised the Debtors in connection with the convertible notes offering made shortly before the Debtors' bankruptcy filings.  Paul Hastings provided advice and litigation services to Cred Capital in connection with the corporate steps for Cred to obtain for stock ownership and board control of its subsidiary Cred Capital Inc., including preparation of related corporate governance documents.  The corporate governance of Cred Capital, Inc., including the validity of the steps taken by Cred in the summer of 2020, is now the subject of litigation in both California and Delaware, and may impact whether Cred Capital's bankruptcy filing is properly authorized.

18. Further, Paul Hastings' current client Uphold has announced that it will sue the Debtors for "breach of contract, fraud and reputational damage."  Notwithstanding the U.S. Trustee's request for a written conflict waiver which permits Paul Hastings to be adverse to Uphold in connection with these chapter 11 cases, Paul Hastings had not produced the requested waiver as of the time this objection was filed.  Uphold has announced its intention to pursue claims and causes of action against the Debtors, and Paul Hastings' relationship with Uphold is such where the firm will apparently not represent the Debtors vis-à-vis Uphold (and shift that task to Cousins Law).  The use of "conflicts counsel," however, does not cure Paul Hastings' inability to be adverse to Uphold.

19. Finally, the Third Circuit has previously held that counsel which has received preferential transfers is not a "disinterested person."  *See In re Pillowtex, Inc.*, 304 F.3d 246, 255

(3d Cir. 2002) ("We hold that when there has been a facially plausible claim of a substantial preference, the district court and/or the bankruptcy court cannot avoid the clear mandate of the statute by the mere expedient of approving retention conditional on a later determination of the preference issue"); *see also United States Trustee v. First Jersey Secs., Inc. (In re First Jersey Secs., Inc.)*, 180 F.3d 504 (3d Cir. 1999).  Here, based upon the detail pertaining to Paul Hastings' application of payments received during the preference period, it appears that application of the November 5, 2020 payment in partial or complete satisfaction of the August 25, 2020 and September 14, 2020 invoices would be preferential.

*Other Issues*

20. Subject to the Court's ruling regarding Paul Hastings' eligibility to be employed under 11 U.S.C. § 327(a), the U.S. Trustee requested that the firm make certain revisions to the proposed form of order:

- Adding to the end of paragraph 5 the following sentence:  "The United States Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code;

- Deleting paragraph 7 of the proposed form of order; Paragraph 7 of order – application of retainer to amounts due re:  prepetition services – delete same (Paul Hastings represents itself not to be a "creditor," so it is not necessary).

- Amending paragraph 10 of the proposed form of order to provide that, to the extent the Debtors want one or more employment orders applicable to/effective in any subsequent bankruptcy filings by affiliates, they have to file a motion on notice;

- Adding a provision to the proposed form of order providing that:  the cost of independent contractors (the "Contractors") shall be billed to the Debtors at the same rate that Paul Hastings pays the Contractors; (ii) Paul Hastings shall seek reimbursement for actual costs only; (iii) the Contractors are subject to the same conflicts checks as required for Paul Hastings; and (iv) the Contractors shall file with this Court disclosures pertaining to such use required by Bankruptcy Rule 2014.

## **CONCLUSION**

WHEREFORE the U.S. Trustee requests that this Court enter an order denying the Application.

Dated: December 6, 2020  
       Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 and 9**

By: */s/ Joseph J. McMahon, Jr.*
Joseph J. McMahon, Jr.
Trial Attorney
John Schanne
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
(302) 573-6497 (Fax)
joseph.mcmahon@usdoj.gov
john.schanne@usdoj.gov