## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 20-12836 (JTD) |
| CRED INC., *et al.*, | Jointly Administered |
| Debtors. | Hearing Date: Dec., 9, 2020 at 2:00 p.m. |
| | Obj. Deadline: Dec., 2, 2020 at 4:00 p.m. |

## MOTION OF JAMES ALEXANDER TO
## DISMISS THE CRED CAPITAL, INC. CASE

James Alexander ("Alexander") respectfully requests that the Cred Capital, Inc. ("Cred Capital") case be dismissed because it was filed without valid corporate authorization.

## INTRODUCTION

1.      Alexander is the sole rightful director of debtor Cred Capital, which is the debtor at case 20-12838.

2.      Alexander respectfully seeks dismissal of the Cred Capital case because it was filed without valid corporate authorization.

## BACKGROUND

3.      Alexander's principal role in this case is as the sole valid director of Cred Capital and the holder of a voting proxy from Cred Capital's sole, valid voting shareholder. Alexander is a defendant in an adversary proceeding brought by the Debtors alleging misconduct.[1]

4.      Daniel Schatt ("Schatt") and Joseph Podulka ("Podulka") (collectively, the "Disputed Directors") claim they are the directors of Cred Capital. But, as explained in this motion, they are not.

---

[1] A copy of the adversary complaint is attached as Exhibit 1

### The Formation of Cred Capital

5.      Cred Capital is a newly formed entity, without substantial operations, which was capitalized by non-debtor funds. It was formed on March 10, 2020 by a paralegal from the Chicago office of Bryan Cave[2] named Rebecca Floren (the "Sole Incorporator").[3]

### The Sole Incorporator Appoints Alexander as the Sole Director

6.      On April 16, 2020, the Sole Incorporator signed a written consent, dated as of March 10, 2020,[4] appointing Alexander as the sole director of Cred Capital.[5]   Pursuant to the written consent, the Sole Incorporator assigned all of the Sole Incorporator's rights, responsibilities and duties as incorporator to Alexander.[6]

### The Voting and Non-Voting Classes of Stock

7.      The Certificate of Incorporation established two classes of common stock: Series "A" and Series "B".[7] The Series "A" shareholders are the only shareholders with voting rights.[8] The Series "B" shareholders have no voting rights.[9]

8.      The Certificate of Incorporation for Cred Capital provides the board of directors is elected by the Series "A" shareholders.[10]

---

[2] Exhibit 2. The law firm's Chicago address is listed as the address of the incorporator in the certificate of incorporation.
[3] Exhibit 2
[4] The metadata for the PDF files shows it was created on April 16, 2020.
[5] Exhibit 3
[6] Exhibit 3
[7] Exhibit 2
[8] Exhibit 2
[9] Exhibit 2
[10] Exhibit 2

**Series "A" Voting Stock is Issued**

9.     On April 1, 2020, Cred Capital issued series "A" preferred stock to third party investor, Zobar Agha (the "Voting Shareholder"), pursuant to a stock purchase agreement.[11] The series "A" preferred stock was the only voting stock issued by Cred Capital[12] and the Voting Shareholder was the only shareholder entitled to vote pursuant to the certificate of incorporation.[13]

**Series "B" Non-Voting Stock is Issued**

10.     Pursuant to a contribution agreement dated as of March 16, 2020, Cred Capital issued fifty percent (50%) of the Series "B" non-voting stock to Cred, LLC.[14]

11.     The contribution agreement required Cred, LLC[15] to pay $300,000 of Cred Capital's expenses and provide $2 million in fees to Cred Capital over time pursuant to an asset management agreement[16] between Cred Capital and Cred LLC.[17]

12.     The contribution agreement provided the failure of Cred LLC to make any portion of the $2 million contribution would result in the proportionate forfeiture of the stock.[18]

13.     Cred, LLC did not make any of the capital contribution required by the contribution agreement.

---

[11] Exhibit 4
[12] Exhibit 2, article 2
[13] Exhibit 2
[14] Exhibit 5
[15] Cred, LLC appears to be the debtor in case number 20-12837 although the debtor in that case is designated as "Cred (US) LLC."
[16] Exhibit 6
[17] Exhibit 5
[18] Exhibit 5

14.    The contribution agreement[19] and asset management agreement[20] between Cred Capital and Cred, LLC were both electronically signed by Schatt on behalf of Cred, LLC. Schatt is one of the Disputed Directors and the chief executive of the Debtors except for Cred Capital.

15.    The contribution agreement[21] and asset management agreement[22] were also signed by Alexander in his capacity as an officer of Cred Capital.

16.    Pursuant to a second contribution agreement dated March 31, 2020,[23] Cred Capital issued the remaining fifty percent (50%) of the Series "B" non-voting stock to non-debtor Lu Hua ("Hua") who is a founder and insider of the Debtors. This contribution agreement was electronically signed by Alexander in his capacity as president and chief executive officer of Cred Capital. [24]

17.    The contribution agreement between Cred Capital and Hua required Hua, pursuant to a separate assignment agreement,[25] to contribute 300 bitcoin to Cred Capital which are estimated to have a value of around $3,000,000.

18.    Contrary to the position taken by the Debtors[26], the contribution agreement establishes Hua did not loan the bitcoin to the Debtors for contribution to Cred Capital.[27] Rather, Hua made a direct contribution of the 300 bitcoin to Cred Capital.[28] This is important because the other Debtors made zero investment into Cred Capital and the funds remaining in Cred Capital

---

[19] Exhibit 5
[20] Exhibit 6
[21] Exhibit 5
[22] Exhibit 6
[23] Exhibit 7
[24] Exhibit 7
[25] Exhibit 8
[26] ECF 12, paragraphs 21 to 25
[27] If the Debtors file schedules pursuant to 11 U.S.C. § 521 listing Hua as a creditor for this amount, those schedules will be false.
[28] Exhibit 7

came from Hua and not the other Debtors. The other Debtors' only property interest in Cred Capital is the 50% ownership of the non-voting Series "B" stock which is subject to forfeiture because Cred, LLC has not made the required $2 million contribution.[29]

### Debtors' General Counsel was Involved at Every Step

19.     The formation of Cred Capital was at all times overseen by the Debtors' former general counsel Daniel Wheeler ("Wheeler") who is a former shareholder at Bryan Cave. Specifically, while employed as general counsel for the Debtors, Wheeler reviewed, and drafted or contributed to the drafting of, the operative documents including the certificate of incorporation, the Series "A" stock purchase agreement, the Series "B" contribution agreements and the asset management agreement.

### Voting Shareholder Gives Proxy to Alexander

20.     Pursuant to an irrevocable proxy[30] dated April 6, 2020, the Voting Shareholder delegated his right to vote to the Alexander.

### The Falling Out Between Schatt and Alexander

21.     As the Debtors' collapse, which was mostly caused by the uncollectability of the $39 million bad loan to Hua's company, became increasingly likely, there was a falling out between Schatt and Alexander. Schatt began blaming Debtors' precarious position on Alexander including the assertion the $10 million fraud perpetrated by a third-party was Alexander's fault even though the transaction was approved by both Schatt and the appropriate committee at Cred.

22.     Schatt apparently desired to improve the Debtors' liquidity and consolidated balance sheet and an easy way to do that would bring the 300 bitcoin held by Cred Capital, with

---

[29] Exhibit 5
[30] Exhibit 9

an approximate value of $3 million, under the umbrella of the Debtors. This was a change of strategy for Schatt because the initial plan for Cred Capital was for Cred Capital to be independent of the other Debtors[31] so it would not be brought down by the impending financial collapse.[32]

23.     Debtors now claim Alexander was assigned the job of organizing Cred Capital as if it was a ministerial task to be performed by Alexander in his capacity as an employee of the other Debtors. However, this characterization is at odds with the written correspondence between Schatt and Alexander which reflect negotiations between the parties.[33] Instead of being merely a tool for the creation of Cred Capital, the parties treated Alexander as being in charge of Cred Capital which is why Schatt was negotiating with Alexander and not directing Alexander's conduct.

24.     When the negotiations failed, Schatt fired Alexander from his employment with the other Debtors.

### The Unauthorized Amendments to Cred Capital's Corporate Documents

25.     Schatt took steps to change operative corporate documents of Cred Capital to cut Alexander and the Voting Shareholder out.

26.     Even though Schatt signed the Series "B" contribution agreements months earlier, Schatt claims he "discovered that Cred Capital was not organized in accordance with Cred's

---

[31]  Schatt stated in a June 3, 2020 email to Alexander "I'd like to make sure Cred Capital has its autonomy while we work to set up both companies for success." (Exhibit 9).  Schatt's email also stated: "To ensure you have the autonomy you need to operate Cred Capital, we can put together a Board Approved 'Delegation of Authority' document." (Exhibit 10)

[32] Paragraph 22 of the complaint in the adversary proceeding against Alexander states Cred Capital was formed as part of a "broader corporate strategy aimed at diversifying Cred's fund allocations." This statement may be a euphemism considering the Debtors' collapsing financial position put it in much more of a survival mode than in a strategic diversification mode.

[33] Exhibit 11

specifications" on or about May 30, 2020.[34] Schatt, through the Debtors, complains the Series "B" shares have no voting rights[35] yet Schatt signed the Series "B" contribution agreement on behalf of Cred, LLC.[36]

27.    On June 22, 2020, Podulka filed an amended and restated certificate of incorporation[37] for Cred Capital which recited it was "duly adopted by the board of directors of [Cred Capital] and by the stockholders of [Cred Capital] in accordance with sections 242 and 245 of the Delaware General Corporation Law and by the written consent of the stockholders of the corporation in accordance with Section 228 of the Delaware General Corporation Law."

28.    The problem is the board of directors did not approve the amendment because Alexander was the sole director pursuant to the March 10, 2020 written consent of the Sole Incorporator.[38] The shareholders did not approve the amendment either because Alexander held the Voting Shareholder's proxy[39] and the Series B shareholders had no right to vote.[40]

29.    On June 28, 2020, about a week after filing the amended and restated certificate of incorporation, Podulka signed and then filed a certificate of correction for the certificate of incorporation which added a provision to the certificate of incorporation to name the Disputed Directors as the initial directors of Cred Capital.[41]

30.    To use a cliché, Podulka's filings put the cart before the horse.

---

[34] Exhibit 1, paragraph 25
[35] Exhibit 1, paragraph 25
[36] Exhibit 5
[37] Exhibit 12
[38] Exhibit 3
[39] Exhibit 9
[40] Exhibit 2
[41] Exhibit 12

31.     Neither of these filings assert there was a mistake in the original creation of Series "A" and Series "B" stock. The only asserted mistake made by the filings is that the original certificate of incorporation failed to name the Disputed Directors as directors.[42]

32.     Even though no mistake was asserted in the classification of the stock, and Schatt actually signed the Series "B" contribution agreement for Cred LLC, the amended and restated certificate of incorporation, among other things, eliminated the distinction between the Series A and Series B stock.[43] The amendment also converted the Series "A" stock, which the amendment defines as the "Old Common Stock", to one (1) share of new common stock.[44] Instead of having 100% of the voting stock, the Voting Shareholder now has 0.1% of the new voting stock according to the Debtors. No mistake was alleged but the Disputed Directors took away the Voting Shareholder's control rights anyway. This is something directors are not permitted to do. The original certificate of incorporation required the consent of the Voting Shareholder to modify the Voting Shareholder's voting rights.[45]

33.     Podulka's two filings are facially defective. The June 22, 2020 filing is premised on Podulka being a director of Cred Capital but he wasn't appointed a director, according to the papers he signed and filed, until June 28, 2020.[46] The two filed documents are out of temporal order which highlights the fatal flaw that they were not appropriately authorized in the first place.

34.     By filing two papers with the secretary of state, the Disputed Directors attempted a *de facto* coup to gain control over Cred Capital. Prior to filing these two papers, the Disputed Directors were not directors or shareholders of Cred Capital. They did not represent any

---

[42] Exhibit 11, paragraph 3
[43] Exhibit 12
[44] Exhibit 12
[45] Exhibit 2, article 3.3
[46] Exhibit 12

shareholders with voting rights because the Series "B" shareholders, Cred LLC and Hua, were not entitled to vote. And because they were not authorized to file the documents, they have no effect.

35.     Simply put, unauthorized persons cannot appoint themselves directors of a company merely by filing papers with the Department of State.

36.     The amendments to the corporate documents were ostensibly made pursuant to 8 Del. Code §108(d) which authorizes the principal of the incorporator to take action in the event the incorporator is not available. There are, at least, three problems with the Disputed Directors' invocation of section 108(d).

37.     First, section 108(d) requires the instrument to recite the incorporator's unavailability and the reason why. But neither document filed by Podulka states the Sole Incorporator's unavailability or the reason for the unavailability.

38.     Second, it is difficult to imagine the Sole Incorporator, a paralegal at a large and preeminent law firm, would not be available to correct any error unless it wasn't an error and the Sole Incorporator refused to take inappropriate action requested by the Disputed Directors.

39.     Third, the Sole Incorporator had already appointed the board of directors before the filings by Podulka. As a result, the Sole Incorporator, and anybody acting in place of the Sole Incorporator, lacked authority to modify the incorporation documents. Rather, that authority rested solely with Alexander as the sole member of the board of directors and the Voting Shareholder.

### The Pending Chancery Court Matter

40.     Presently pending in the Chancery Court is Alexander's complaint seeking, *inter alia*, a determination that Alexander is the sole director of Cred Capital and that the Disputed Directors have never been directors of Cred Capital.[47]

41.     The Chancery Court halted proceedings on the complaint based on the automatic stay.

### <u>ANALYSIS</u>

**A.     The Cred Capital case should be dismissed for lack of corporate authorization.**

42.     The Cred Capital case must be dismissed because Cred Capital lacked valid corporate authority to file the case in the first place. A "party cannot subject an entity to bankruptcy without authority." *In re FKF Madison Park Grp. Owner, LLC*, 2011 WL 350306, at *3 (Bankr. D. Del. Jan. 31, 2011).

43.     A bankruptcy court lacks subject matter jurisdiction over a bankruptcy petition filed without the required corporate authority. *In re Mid-South Business Associates, LLC*, 555 B.R. 565, 570 (Bankr. N.D. Miss. 2016) (citing *In re Delta Starr Broadcasting, L.L.C.*, 422 F. App'x 362, 368 (5th Cir. 2011)).

44.     As the Supreme Court held, "[i]f the [court] finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." *Price v. Gurney*, 324 U.S. 100, 106 (1945). *See also, In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 206-8 (5th Cir. 2018), as revised (June

---

[47] The complaint also seeks a determination any action taken by the Disputed Directors is invalid. However, Alexander does not intend to seek Chancery Court relief on this issue because that relief would implicate two issues which are probably more appropriately addressed by this Court: (1) the corporate authority of Cred Capital to file the bankruptcy petition; and (2) the stock issued by the Disputed Directors to Cred LLC.

14, 2018)("If the petitioners lack authorization under state law, the bankruptcy court 'has no alternative but to dismiss the petition.' *Price*, 324 U.S. at 106, 65 S.Ct. 513. . . . Absent a duly authorized petition, the bankruptcy court has no power 'to shift the management of a corporation from one group to another, to settle intracorporate disputes, and to adjust intracorporate claims.' *Id*."); *Hager v. Gibson*, 108 F.3d 35, 39 (4th Cir. 1997) ("[W]here a voluntary petition for bankruptcy is filed on behalf of a corporation, the bankruptcy court does not acquire jurisdiction unless those purporting to act for the corporation have authority under local law to institute the proceedings.") (citation and internal quotation marks omitted); *Keenihan v. Heritage Press, Inc.*, 19 F.3d 1255, 1258 (8th Cir. 1994) ("A person filing a voluntary bankruptcy petition on a corporation's behalf must be authorized to do so . . . ."); *In re S & R Grandview, LLC*, 2013 WL 5525729, at *1 (Bankr. E.D.N.C. Oct. 4, 2013) ("A bankruptcy court cannot establish jurisdiction over a petitioning entity where the individual instituting the proceeding lacks authority under state law or the corporate governing instruments.").

### Schatt Did Not Have Authority to File the Cred Capital Petition

45.    State law governs corporate authority to file petitions for relief under the Bankruptcy Code. *Price* at 106; *see also In re Nica Holdings, Inc.*, 810 F.3d 781, 789 (11th Cir. 2015); *In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 206-8 (5th Cir. 2018), as revised (June 14, 2018) ("State law thus determines who has the authority to file a voluntary petition on behalf of the corporation. If the petitioners lack authorization under state law, the bankruptcy court 'has no alternative but to dismiss the petition.'") (citations omitted). In this case, Delaware corporate law governs the question of authority to file because Cred Capital is a Delaware corporation.

46.    Under 8 *Del. C.* § 141(a), "[t]he business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors, except as may be otherwise provided in this chapter or in its certificate of incorporation."

47.    Cred Capital's Certificate of incorporation (either the original or the unauthorized amendment) does not change the default rule under section 141(a).  Therefore, Cred Capital's board of directors is vested with the authority to file petitions for relief under the Bankruptcy Code.

48.    Because Alexander was the sole rightful director and held the voting proxy for the sole Voting Shareholder, only Alexander could authorize the bankruptcy filing by Cred Capital. That did not happen and the filing made by Schatt was ineffective. As discussed previously, the Disputed Directors were not valid or legitimate directors and lack the authority to approve the filing of the Cred Capital bankruptcy case.

49.    As a result, Cred Capital was not authorized to file the bankruptcy petition and the Cred Capital case must be dismissed.

WHEREFORE, Alexander respectfully requests that the Cred Capital case be dismissed.

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

*/s/  Geoffrey G. Grivner*
Geoffrey G. Grivner (#4711)
Mark Pfeiffer (admitted *pro hac vice*)
919 North Market Street, Suite 990
Wilmington, DE 19801
Telephone:  (302) 552-4200
Facsimile:   (302) 552-4295
Email: geoffrey.grivner@bipc.com

*Attorneys for James Alexander*

Dated:  December 8, 2020