**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| ) | Chapter 11 |
| In re: ) |  |
| ) | Case No. 20-12836 (JTD) |
| CRED INC., *et al.*, ) |  |
| ) | (Jointly Administered) |
| Debtors.¹ ) |  |
| ) | **Hearing Date: Dec. 17, 2020 at 11:00 a.m. (ET)** |
| ) | **RE: Docket Nos. 6, 34, 61** |
| ) |  |

**DEBTORS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER**
**AUTHORIZING DEBTORS TO REDACT OR WITHHOLD PUBLICATION OF**
**CERTAIN PERSONAL IDENTIFICATION INFORMATION ON A FINAL BASIS AND**
**FILE SUCH INFORMATION UNDER SEAL**

TO THE HONORABLE BANKRUPTCY JUDGE JOHN T. DORSEY:

Cred Inc. ("Cred") and its affiliated debtors and debtors in possession (the "Debtors")

submit this reply (the "Reply") in support of (a) the Debtors' motion requesting, among other

things, entry of a final order authorizing the Debtors to redact or withhold publication of certain

personal identification information [Docket No. 6] (the "Consolidated List Motion") and (b) the

Debtors' motion to seal such information [Docket No. 61] (the "Motion to Seal");² and in

opposition to the objection of the United States Trustee (the "U.S. Trustee") [Docket No. 132]

(the "Objection").   In support of this reply, the Debtors submit the declaration of Christopher

Wu (the "Wu Declaration"), which is attached as **Exhibit A**, and the declaration of Pablo

Bonjour (the "Bonjour Declaration"), which was filed at Docket No. 116-1, which are both

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566).  The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

² Capitalized terms used but not defined in this Reply have the meanings set forth in the Consolidated List Motion and the Motion to Seal, as applicable.

incorporated by reference into this Reply.  In further support of this Reply, the Debtors
respectfully state as follows:

## PRELIMINARY STATEMENT

1.      This Court should keep the names and addresses of the Debtors' customers
confidential.  The reasons are two-fold.  <u>First</u>, the customer list (which comprises over 6,500
active names) has substantial value to a potential buyer of the Debtors' business because one of
the key features of cryptocurrencies is anonymity.  This anonymity regarding the identity of
cryptocurrency investors makes it difficult, and expensive, for the Debtors' competitors to
identify potential customers who may want to utilize a platform (such as the Debtors') to transfer
cryptocurrencies.  As detailed in the Wu Declaration, the customer list is one of the key assets
that Teneo Capital LLC, the Debtors' investment banker, is marketing for sale.  Indeed, given the
significant cost of acquiring new customers, potential buyers are very much focused on retaining
the Debtors' existing customers.

2.      <u>Second</u>, if the identities of the Debtors' customers were revealed, the customers
could become the target of scammers and hackers.  These risks are exacerbated again by the
nature of cryptocurrencies, including that transactions are done exclusively over the internet,
transactions in cryptocurrency are anonymous, and there is limited to no regulation in the
cryptocurrency markets.

3.      The Objection filed by the U.S. Trustee is unpersuasive.  The U.S. Trustee's
arguments—including the claim that revealing the customer names would provide "no
meaningful ability" for competitors to reverse engineer the Debtors' valuable customer list, or
the claim that any corporate entity involved in cryptocurrencies is "undoubtedly" known by other
participants—are founded on unsupported assumptions that are directly contradicted by Mr. Wu

in his Declaration.  Likewise, the U.S. Trustee's argument that this Court is unauthorized to keep the Debtors' customers' names under seal is belied by the statutory language quoted in the Objection itself.  The U.S. Trustee identifies no public or private interest significant enough to justify the potential harm to the Debtors' customers or the value of the Debtors' estates that would be dissipated by making the Debtors' customers' names public.

4.      For these reasons, and as further detailed below, the Consolidated List Motion and the Motion to Seal should be granted and the Objection should be overruled.

## FACTUAL BACKGROUND

5.      One of the reasons for the popularity of bitcoin and many other cryptocurrencies is that transactions are both transparent and anonymous.  Each bitcoin is registered to a certain address, which is also identifiable to the world by a public key.  The owner of the address also owns the bitcoin at the address.  Ownership of the address is determined by whoever holds the private key to the address, *i.e.*, a specific number or passcode that is required to exercise control of the bitcoin located at the address.

6.      Bitcoin ownership can also be completely anonymous.  As mentioned above, the holder of an address' private key owns all the bitcoin at the address.  Usually, the only person with knowledge of the private key is the owner of the address, and thus no one else—no bank, no government, no counter-party—necessarily knows *who* owns the address.  So while the specific address location of all bitcoin in circulation is publicly available, the identity of the owner of the address is rarely identifiable.

## PROCEDURAL BACKGROUND

7.      On November 8, 2020, the Debtors filed the Consolidated List Motion.  In the Consolidated List Motion, the Debtors requested, among other things, that the Court authorize

the Debtors to redact and withhold from publication personal identification information of the

Debtors' customers, including the schedules, the Creditor Matrix, and the Top 30 List.  In

addition, the motion requested that the Claims Agent be authorized (a) to suppress such

information from the claims register, (b) to file affidavits of service without disclosing such

information, and (c) to withhold publication of proofs of claims filed by customers.

8.      On November 10, 2020, the Court heard oral argument on the Consolidated List

Motion.  At the hearing, the United States Trustee objected to this request.  *See* Nov. 10, 2020

Hr'g Tr. 35-58.  The Court overruled the United States Trustee's objection, and entered an order

[Docket No. 34] (the "Interim Order") authorizing, on the interim basis, the Debtors and the

Claims Agent to not disclose customers' personal identification information.  Interim Order ¶¶ 5,

6.  The Interim Order set the final hearing on the relief granted in that order for December 9,

2020 at 2:00 pm (ET).

9.      On November 18, 2020, upon the request of the Clerk of Court, the Debtors filed

the Motion to Seal, pursuant to which the Debtors requested to be authorized to file customer

information under seal.

10.     On December 12, 2020, Maple Partners LLC ("Maple Partners") filed its joinder

in the Debtors' Motion to Seal [Docket No. 98] (the "Joinder").  The Joinder argues that the

Motion to Seal should be granted because, if customer information is made publicly available,

the Debtors' customers are likely to "become the primarily targets of persistent—and likely

daily—attempts at attacks on their accounts, which could include phishing, SIM porting, viruses,

doxing, blackmail and impostor emails, to name a few."  Joinder ¶ 8.

11.     On December 4, 2020, the U.S. Trustee filed its Objection to the Consolidated

List Motion.  In its Objection, the U.S. Trustee state that it "does not oppose redaction of the

residential addresses of the Debtors' individual creditors" but does demand that individual

creditor names be disclosed.  Objection ¶ 4.  The U.S. Trustee also opposes any request to redact

information regarding entities.  *Id*.

## ARGUMENT

12.     This Court should authorize the Debtors and the Claims Agent to maintain the

confidentiality of the Debtors' customer list.  First, doing so will preserve the commercial value

of that list, thereby allowing the Debtors to pursue a value-maximizing sale of their business.

Second, preserving the anonymity of the Debtors' customers will reduce the risk that the

customers will be subject to threats by hackers and other nefarious individuals.

### A.     Customer Lists Have a Significant Value to Debtors' Estates

13.     This Court should allow the Debtors and the Claims Agent the keep customer

names and address information confidential, including on the schedules, the creditor matrix, the

list of largest unsecured creditors, the claims register, and affidavits of service.  The customer list

is one of the Debtors' key assets that is being marketed for sale.  Because the ability to retain

anonymity is one of the key features of holding cryptocurrencies, there is limited to no public

information available as to which individuals or entities hold cryptocurrencies.  Accordingly, it is

expensive and time consuming for companies that operate asset management platforms (like the

Debtors) to identify potential customers, attract them, enroll them, and ultimately activate them

as customers.  The significant investments required to build a customer base make it a valuable

asset of an asset management platform like that of the Debtors.  Therefore, potential buyers of

the Debtors' assets will likely ascribe value to the customer lists, provided, of course, that it is

kept confidential so as to protect the customers from being targeted.

14.      In fact, potential buyers have expressed interest in Debtors' customer lists,

including because the list itself confers a competitive advantage over other competing asset

management platforms.  These potential buyers are interested in the Debtors' customers because they are hoping to retain them post-acquisition.  If the customer lists were made public, the value of those lists (and as a result the Debtors' business itself) could be materially diminished or dissipated.  Likewise, if customers were exposed to the risk of scams and hacks (for example, because their personal information is publicly available), it would make it harder for a buyer of the Debtors' business to retain the Debtors' customers, which in turn, could depress interest and/or the sale price ultimately obtained.

15.    In its Objection, the U.S. Trustee claims that the disclosure of the names of the Debtors' customers "would provide no meaningful ability for competitors to engineer a customer list of the Debtors."  Objection ¶ 17.  This is wrong.

16.    First, because virtually all of the Debtors' creditors are its customers, disclosing the creditors list itself is largely tantamount to disclosing the customer list—no further engineering would be necessary.  Moreover, the fact that the names of the Debtors' customers will be disclosed, but not their other identifying information, will provide no protection.  A simple search of an individual's name on Google can reveal enormous amounts of personal information, including addresses, phone numbers, business and personal contacts, and other information.  Moreover, a sophisticated internet researcher (or one that has access to information on the "dark" web), may be able to turn up even more sensitive or compromising information on an individual.  Indeed, the very people who are likely to target the Debtors' customers for nefarious purposes are those most likely to conduct such sophisticated research.

17.    Likewise, the U.S. Trustee claims that "[a]ny corporate entity operating in the cryptocurrency market undoubtedly is known by the other participants in this space."  Objection ¶ 17.  But the U.S. Trustee's claim is wholly unsupported by evidence or law, and is directly

contradicted by Mr. Wu, who explains in his Declaration that one of the main draws of cryptocurrency investing is the ability to be anonymous, and there is virtually no public information about who participates in the cryptocurrency space.

### B.        Keeping Debtors' Customer List Confidential Will Protect Customers

18.        Moreover, keeping the customer lists confidential will protect the Debtors' customers (who make up the vast majority of the Debtors' creditors) from harm.  Because of the confidential nature of cryptocurrency transactions and the general lack of regulation, holders of cryptocurrencies are subject to elevated risk of scams and hacks.  The same security safeguards that protect traditional financial assets do not exist for cryptocurrencies.  Even if the Debtors' customers do not ultimately suffer losses as a result of a scam or hack caused by their personal information becoming public, they may be forced to spend considerable additional resources to protect their cryptocurrency assets.  In addition, exposing the Debtors' customers to such risk will make it harder for a buyer of the Debtors' business to retain the Debtors customers, which in turn, could depress interest and/or the sale price ultimately obtained.

19.        The U.S. Trustee's claim that this Court is not authorized to keep the Debtors' customers' names under seal is based on a misreading of the statute.  Under section 107(c)(1) of the Bankruptcy Code, a bankruptcy court is empowered to protect "[a]ny means of identification (as defined in section 1028(d) of title 18)" if the Court finds that the disclosure of such information "would create undue risk of identity theft or other unlawful injury to the individual or the individuals' property."  Section 1028(d) of Title 18 defines "means of identification" as "any *name* or number that may be used, alone or in conjunction with any other information, to identify a specific individual . . ." (emphasis added).  Of course, a person's "name" can be used to identify a specific individual.

20.     The U.S. Trustee claims that "the name of an individual creditor ***without any
additional information*** is not the type of "means of identification" contemplated for protection
under section 1028(d)(7)(A)," Objection ¶ 19, is belied by the statute itself, which provides that
"any name . . . that may be used, ***alone*** . . . to identify a specific information" can be a means of
identification.  *See* 18 U.S.C. § 1028(d)(7) (emphasis added).  And as noted above and in the Wu
Declaration, a person's name can be used to find other sensitive personal information as well.

21.     Finally, because the Debtors' customers have similar claims against the Debtors,
there is no public interest served in making the list of these customers public.  Indeed, aside from
generic claims about public access, the U.S. Trustee's Objection fails to identify any particular
interest of the public in making the list of customers public, and certainly nothing that would
counteract the significant risks to the Debtors' estates and the Debtors' customers if this
information was made public.  In any event, any party in interest that believes that it has a
legitimate reason to access the customer lists is free to file a motion with the Court requesting
access that list.

## REVISED PROPOSED ORDER

22.     In the interest of avoiding duplicate and overlapping orders, the Debtors have
consolidated into a single order (a) the proposed final order attached to the Consolidated List
Motion (the "Proposed Final Order") and (b) the proposed order attached to the Motion to Seal
(the "Proposed Sealing Order").  A copy of the revised proposed order is attached as **Exhibit B**.
A blackline marked to show changes against the Proposed Final Order is attached as **Exhibit C**,
and a blackline marked to show changes against the Proposed Sealing Order is attached as
**Exhibit D**.

WHEREFORE, the Debtors respectfully request entry of the revised proposed order,

substantially in the form attached as **Exhibit A** (i) granting the relief requested in the

Consolidated List Motion and the Motion to Seal and (ii) granting the Debtors such other and

further relief as is just and proper.

Dated:  December 14, 2020
        Wilmington, Delaware

/s/  *Scott D. Cousins*
Scott D. Cousins (No. 3079)
**COUSINS LAW LLC**
Brandywine Plaza West
1521 Concord Pike, Suite 301
Wilmington, Delaware 19803
Telephone:   (302) 824-7081
Facsimile: :   (302) 295-0331
Email:       scott.cousins@cousins-law.com

- and -

James T. Grogan (admitted *pro hac vice*)
Mack Wilson (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
Telephone:   (713) 860-7300
Facsimile:   (713) 353-3100
Email:      jamesgrogan@paulhastings.com
            mackwilson@paulhastings.com

- and -

G. Alexander Bongartz (admitted *pro hac vice*)
Derek Cash (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone:   (212) 318-6000
Facsimile:   (212) 319-4090
Email:      alexbongartz@paulhastings.com
            derekcash@paulhastings.com

*Proposed Co-Counsel to the Debtors*