IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Cred Inc., *et al.*,[1] | ) | Case No. 20-12836 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 61** |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' JOINDER TO DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE FILING UNDER SEAL OF CERTAIN CONFIDENTIAL INFORMATION**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 bankruptcy cases (the "Chapter 11 Cases") of Cred Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") hereby submits this joinder (the "Joinder") to the *Debtors' Motion for Entry of an Order Authorizing the Filing Under Seal of Certain Confidential Information Pursuant to Order (I) Authorizing Debtors to File a Consolidated List of Debtors' 30 Largest Unsecured Creditors, (II) Authorizing Debtors to Serve Certain Parties by E-Mail, (III) Authorizing Debtors to Redact or Withhold Publication of Certain Personal Identification Information on an Interim Basis, and (IV) Granting Related Relief* [Docket No. 61] (the "Motion to Seal").[2] In support of the Motion to Seal and this Joinder, the Committee submits the declaration of Mark Friedler (the "Friedler Declaration"), attached hereto as **Exhibit A**, and the declaration of Joshua Segall (the "Segall Declaration"), attached hereto as **Exhibit B**. In further support, the Committee respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion to Seal.

## **JOINDER**

1.Bankruptcy Code section 107(b) *mandates* that a bankruptcy court protect confidential commercial information upon request of a party in interest.  *See* 11 U.S.C. § 107(b) ("On request of a party in interest, *the bankruptcy court shall* . . . protect an entity with respect to confidential . . . commercial information) (emphasis added); *see also In re Anthracite Capital, Inc.*, 492 B.R. 162, 177–78 (Bankr. S.D.N.Y. 2013) (noting that "the Code mandates that a bankruptcy court grant the requested relief if the information is 'confidential commercial information.'").

2.This provision "protects parties from the release of information [like the Confidential Creditor Information in these cases] that could cause [entities] harm or give competitors an unfair advantage."  *Anthracite Capital*, 492 B.R. at 178 (quoting *Gowan v. Westford Asset Mgmt. LLC (In re Dreier, LLP)*, 485 B.R. 821, 823 (Bankr. S.D.N.Y. 2013)); *see also In re Borders Grp., Inc.*, 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011) ("Commercial information need not rise to the level of a trade secret to qualify for protection under section 107(b)").

3.In addition, Bankruptcy Code section 107(c) gives the Court broad discretion to protect an individual with respect to any information, including identifying information, in a paper filed or to be filed with the court to the extent that the court finds that disclosure of the information would create an undue risk of identity theft or unlawful injury to the individual or the individual's property.  *See* 11 U.S.C. § 107(c); *see also* 2 Collier on Bankruptcy ¶ 107.04[1] (16th ed. 2020) (explaining that, under this section, "[t]he types of information that can be protected by the court are unlimited.").

4. Given the unique nature of the Debtors' business and, more specifically, the Debtors' customers, the requirements of both section 107(b) and 107(c) are satisfied, and thus sealing the Confidential Creditor Information is appropriate.

5. As set forth in the Friedler Declaration, disclosure of Debtors' customer information poses severe and unusual risk.[3] *Friedler Declaration*, at ¶ 5. Publishing the Confidential Creditor Information in these Chapter 11 Cases will increase the likelihood that the Debtors' customers will be the subjects of attacks by malefactors. *Id*. at ¶ 6. The Debtors' customers are a "pre-qualified cohort" because they are far more likely to be holding substantial cryptocurrency assets than the average person. *Id.* at ¶ 5. Even if the disclosed information was limited to names without addresses or other identifying information, a sophisticated malefactor could still correlate significant additional customer information from public databases (except with respect to customers with the most common of names). *Id.* at ¶ 6. The release of any additional information beyond names would make the thief's job even easier. Moreover, crypto assets are ideal targets for theft because the assets can be quickly liquidated and cannot be easily traced. *Id.* at ¶ 11.

6. Indeed, every primary means of cryptocurrency theft would be made far easier to perpetrate with the Confidential Creditor Information and additional correlated information. *Id.* at ¶ 7. As Mr. Friedler explains, there are several common ways that thieves target cryptocurrency holders:

- **Stealing an Online Wallet**. The most common way to steal digital assets is by stealing a digital wallet. If a criminal knows or suspects that a person holds a wallet on a crypto exchange, as they would correctly know or suspect of most of

---

[3] Mr. Friedler is a Senior Adviser with Dundon Advisers LLC (the Committee's financial adviser) and an expert on blockchain and cryptocurrency matters.

3

the Debtors' creditors, they will try a variety of means to access that wallet and steal the assets. For this reason, releasing the Debtors' customers' names is tantamount to handing thieves a list of potential targets. *Friedler Declaration*, at ¶ 9.

- **Theft of Private Keys**. A slightly more sophisticated consumer can manage the private keys necessary to transact their cryptocurrency on the related blockchain in "hardware wallets." If the private keys are stolen, the wallet's contents can be emptied. Again, a would-be thief can use the Confidential Creditor Information and correlated additional information in variety of ways to trick a user into surrendering their private keys, including phishing emails, phone calls, and phony donation request. *Friedler Declaration*, at ¶ 10.

- **Physical Robbery**. Cryptocurrency holders have also been the victims of physical robbery. Holders can be forced to surrender hardware wallets, passwords, and other access credentials to online wallets. Sophisticated thieves can easily determine the addresses of creditors with all but the most common of names merely by the disclosure of those names. Targeting of known holders of cryptocurrency to steal their wallets or keys is becoming increasingly common. *Friedler Declaration*, at ¶ 11.

- **SIM Swapping**. "SIM swapping" is when a criminal gains access to a victim's cell phone account through an accomplice at a wireless provider. Because most providers of online wallets rely upon text messaging for security in password resets, a criminal who has obtained a SIM-swapped device can effortlessly take over any such online wallet. The only "defense" is that hiring an accomplice can

be expensive. However, the cost of paying an accomplice will be justified with the pre-qualification that being a creditor of the Debtors constitutes. *Friedler Declaration*, at ¶ 12.

7. In short, releasing Confidential Creditor Information, even if such information is limited to customer names, will make it significantly easier for thieves to locate and target the Debtors' customers. This is precisely the type of harm that Congress had in mind when drafting Bankruptcy Code section 107(c).

8. The Segall Declaration further corroborates these risks from the perspective of one of the Debtors' customers. Mr. Segall is a member of Maple Partners LLC, one of the members of the Committee. Maple Partners' members were so concerned with the risks highlighted in the Friedler Declaration that they formed a new entity (Maple Partners) for the specific purpose of protecting the names and other identifying information of Maple Partners' members in these Chapter 11 Cases. Although Maple Partners' members were able to take these extraordinary steps, not all of the Debtors' customers have the means to do so.

9. Finally, the Committee joins in the arguments raised by the Debtors in the Motion to Seal under Bankruptcy Code section 107(b) because publication of the Confidential Creditor Information would in all likelihood destroy any prospect of a successful sale process.

10. For these reasons, the Court should overrule the U.S. Trustee's Objection and grant the Motion to Seal.

| | |
|---|---|
| Dated: Wilmington, Delaware<br>December 14, 2020 | **MCDERMOTT WILL & EMERY LLP**<br><br>*/s/ David R. Hurst*<br>David R. Hurst (I.D. No. 3743)<br>1007 North Orange Street, 4th Floor<br>Wilmington, DE 19801<br>Telephone: (302) 485-3900<br>Facsimile: (302) 351-8711<br><br>- and -<br><br>Timothy W. Walsh (*pro hac vice* pending)<br>Darren Azman (*pro hac vice* pending)<br>340 Madison Avenue<br>New York, NY 10173<br>Telephone: (212) 547-5400<br>Facsimile: (212) 547-5444<br><br>*Proposed Counsel to the Official Committee of Unsecured Creditors* |