**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CRED INC., *et al.*, | Case No.: 20-12836 (JTD) |
| Debtors.[1] | Jointly Administered |
| | **Ref. Nos. 89, 91, 97, 116, 126, 128, & 190** |

**UPGRADEYA INVESTMENTS, LLC'S REPLY TO THE OBJECTION
OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO MOTION OF UPGRADEYA INVESTMENTS, LLC FOR RELIEF
FROM STAY UNDER BANKRUPTCY CODE SECTION 362**

UpgradeYa Investments, LLC ("UpgradeYa"), by and through its undersigned counsel, submits this reply (the "Reply") to the objection [D.I. 190] (the "Committee RFS Objection") filed by the Official Committee of Unsecured Creditors appointed in the above-captioned cases (the "Committee") to the *Motion of UpgradeYa Investments, LLC for Relief from Stay Under Bankruptcy Code Section 362* [D.I. 89] (the "RFS Motion")[2] and respectfully states as follows:

**PRELIMINARY STATEMENT**

When UpgradeYa filed its Lift Stay Motion it was with a glimmer of hope that the allegations of the Debtors' misconduct, deceit and fraud were not so pervasive that they had impacted the Collateral UpgradeYa pledged pursuant to a loan and security agreement with the Debtors to secure a $2 million loan the Debtors advanced to UpgradeYa under its CredBorrow program. UpgradeYa's hope stemmed in part from the Debtors' written advice to UpgradeYa after

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

[2] Terms utilized but not otherwise defined herein shall have the meanings ascribed to them in the RFS Motion or *UpgradeYa Investments, LLC's (I) Reply to Objection of Debtors to Motion of UpgradeYa Investments, LLC for Relief from Stay under Bankruptcy Code Section 362 and (II) Limited Joinder in the Motion for an Order Converting the Chapter 11 Cases to Chapter 7* [D.I. 126] (the "Initial Reply"), as applicable.

{1311.001-W0063742.}

the bankruptcy filing that they were holding all of UpgradeYa's Collateral. If true, UpgradeYa was prepared, as expressly provided in the Agreement, to repay the $2 million loan to the Debtors in return for its Collateral – thereby injecting much needed cash into these bankruptcy cases. However, given the lack of clarity in Mr. Schatt's First Day Declaration regarding what Bitcoin was stolen from the Debtors and the various allegations made of deception, malfeasance and outright thievery, UpgradeYa also requested relief from the automatic stay out of an abundance of caution so that it might try to recover its Collateral or the value thereof from non-debtor third parties and any applicable insurance proceeds.

After the RFS Motion was filed, UpgradeYa's hopes for the safe return of its Collateral quickly were crushed under the weight of the emerging facts of Cred's pre- and postpetiton malfeasance. By the Debtors' own admission and as the Committee itself acknowledges, the Debtors misappropriated UpgradeYa's Collateral and used it for their own purposes. Neither the Debtors nor the Committee have shown (nor can they show) that the Debtors had the authority or right to do so. In fact, pursuant to the express terms of the Agreement – which the Committee entirely ignores – the Debtors' ability to use, sell or otherwise dispose of UpgradeYa's Collateral was contemplated *only* in the event of a default. As the evidence at the hearing will show, the Debtors never noticed any default and UpgradeYa is not (and was never) in default under the Agreement.

Despite all of this, the Committee brashly asks this Court to bless the Debtors' theft (*i.e.*, find that the Collateral became property of the Debtors' estates because they took it, converted it for their own use, and did who knows what with it) and prohibit UpgradeYa from going after its own property or the value thereof from non-debtor third parties on the basis that the Collateral and any causes of action related to the misappropriation thereof are property of the Debtors' estates. This Court cannot allow the Debtors, their estates or the Committee to profit from the Debtors'

own bad acts. Such a result would be contrary to common sense, fairness and applicable law.

## REPLY[3]

1.      UpgradeYa's Collateral never was or became property of the Debtors or the Debtors' estates. The Committee's objection focuses almost entirely on discussing whether a trust relationship exists between the Debtors and UpgradeYa (which no one, including UpgradeYa, has asserted to date) and whether UpgradeYa's Collateral is traceable within such trust.[4] However, these discussions are irrelevant to the narrow issue before this Court, which is whether under California law, collateral pledged to secure a loan is property of the Debtors' estates.[5]

2.      As explained in the RFS Motion and the Initial Reply, the Debtors have at best a bare possessory interest in UpgradeYa's Collateral. Under California law, title to collateral does not pass when it is pledged. *See*, *MacDonald v. Pac. Nat. Bank*, 66 Cal. App. 2d 357, 361-362 (1944) (where legal title to collateral remains in pledgor, pledgee merely has a lien on the title, unless otherwise provided in the pledge contract); *Robinson v. Raquet*, 1 Cal. App. 2d 533, 544 (1934) (where personal property is pledged, the general property and title remain in the pledgor, subject only to a lien in favor of the pledgee for the amount of his debt).

3.      Under the Agreement (*i.e.*, the operative pledge contract), UpgradeYa granted the Debtors merely a security interest in UpgradeYa's Collateral. *See* Agreement, § 2.1 (UpgradeYa grants Cred "a security interest in the following described Collateral"). Courts have widely held,

---

[3] As this is the second reply UpgradeYa is submitting in support of the RFS Motion, it will not reiterate the facts and arguments set forth in the RFS Motion and the Initial Reply, but instead shall incorporate them herein by reference.

[4] The trust and tracing discussions are particularly unhelpful here, where the Debtors have admitted in the Bonjour Declaration that the Debtors are no longer in possession of UpgradeYa's Collateral. Bonjour Declaration, ¶ 24.

[5] State law (and here, pursuant to the Agreement, the law of the state of California) determines whether a debtor has a property interest for the purposes of section 541 of the Bankruptcy Code. *Butner v. United States*, 440 U.S. 48, 54-57, L. Ed. 2d 136, 99 S. Ct. 914 (1979); *Slobodian v. United States IRS (In re Net Pay Sols., Inc.)*, 822 F.3d 144, 158 n.13 (3d Cir. 2016) (explaining that under *Butner* "we look to state law to determine the nature of a debtor's interest in property").

with respect to a variety of personal property, that a security interest is not the same thing as legal and equitable title. *See In re Emergency Monitoring Technologies, Inc.*, 366 B.R. 476, 499 n.19 (Bankr. W.D. Pa. 2007) ("Tepsic ... possessed, by virtue of the Assignment of Accounts Receivable, at best nothing more than a security interest in accounts receivable, [] the [borrower], therefore, would have owned both legal title to, *and the equitable interest in* ... the accounts receivable") (emphasis in original); *In re Dobek*, 278 B.R. 496, 510 (Bankr. N.D. Ill. 2002) ("[T]he original [lender] is not the owner of the Motorcycle; it possessed a perfected security interest in [borrower's] property. The original [lender] was not and Bombardier is not the owner of the Motorcycle; they possessed only a perfected security interest in [borrower's] property."); *In re Richards*, 336 B.R. 722, 730 (Bankr. E.D. Va. 2004) ("The document plainly granted Rapid a security interest but did not vest legal title to the accounts in Rapid Funding."). Accordingly, UpgradeYa's pledge of the Collateral under the Agreement did not transfer legal or equitable title in the Collateral to the Debtors. *See In re Transp. Design and Tech., Inc.*, 48 B.R. 635, 639 (Bankr. S.D. Cal. 1985) ("a security interest protects the secured [lender] ***against the [borrower] [later] transferring title*** to the collateral free of its interest") (emphasis added).

4.  Moreover, the Debtors' misappropriation and/or theft of UpgradeYa's Collateral did not enhance their or their estates' interests in or rights to such Collateral as the Committee suggests. What the Committee is asking this Court to do is to reward the Debtors and their estates for the Debtors' bad acts by converting UpgradeYa's Collateral, in which the Debtors have no title and had only a bare possessory interest, into property of the Debtors' estates based on the Debtors' misappropriation, conversion and/or theft of such Collateral. However, courts expressly have held that property stolen by a debtor does not become property of the debtors or their estates by virtue of their thievery. *See Kitchen v. Boyd (In re Newpower)*, 233 F.3d 922, 934 (6th Cir. 2000) (affirming the district court's conclusion that property misappropriated by the debtor was not

property of the debtor's estate and affirming the district court's decision to lift the automatic stay to allow the movants to seek to recover their property or the proceeds thereof, wherever they may be found, to the extent allowed by law); *see also In re Motor Freight Express*, 91 B.R. 705, 712 (Bankr. E.D. Pa. 1988) (explaining that "[c]learly, property stolen or improperly received by a debtor during a bankruptcy cannot be retained by a debtor on the ground that it is property of the estate."). As such, despite the Debtors' misappropriation of UpgradeYa's Collateral, such Collateral is not (and was never) property of the Debtors or their estates.

5. While acknowledging "Movant does not need relief from the automatic stay to pursue third-parties that are in possession of Movant's property[,]" the Committee incorrectly contends that any claims UpgradeYa may have against third parties to recover the value of UpgradeYa's Collateral are claims of the Debtors' estates. *See* Committee RFS Objection, ¶¶ 33-34. However, UpgradeYa has not requested (and is not seeking) authority to pursue ***derivative*** claims on behalf of the Debtors. Instead, UpgradeYa seeks to pursue its own ***direct*** claims against non-debtor third parties that may be liable for a variety of direct claims UpgradeYa may pursue against them, including (without limitation) the misappropriation and/or theft of UpgradeYa's Collateral. Caselaw is clear that property of the estate does not include direct claims for damages caused to individual creditors or stockholders of the debtor. *See In re DSI Renal Holdings, LLC*, 574 B.R. 446, 479-80 (Bankr. D. Del. 2017). Unlike claims that are property of the estate, the bankruptcy code does not confer standing on the trustee or debtor to assert creditors' direct claims. *Id.*; *see also In re Opus East, LLC*, 480 B.R. 561, 575 (Bankr. D. Del. 2012) (holding that the trustee did not have standing to assert a direct claim alleging that the debtor's wholly-owned subsidiary suffered an injury based on tortious interference with, or conversion of, the subsidiary's property and, further, that the Trustee failed to plead a derivative claim on behalf of the wholly-owned subsidiary). As such, neither the Debtors, their estates nor any successors in interest thereto

(whether by receiving derivative standing or otherwise) have standing to pursue UpgradeYa's direct claims.

6. Thus, for all the reasons set forth in the RFS Motion, the Initial Reply and herein, and as the evidence will show at the hearing on the RFS Motion, the automatic stay should be lifted to permit UpgradeYa to recover its Collateral or the value thereof from non-debtor third parties.

WHEREFORE, UpgradeYa respectfully requests that the Court overrule the Committee RFS Objection; (ii) grant the Motion and enter an order (A) lifting the automatic stay to permit UpgradeYa to take any and all actions necessary to recover its Collateral or the value thereof from third parties and any applicable insurance providers and (B) granting such other relief as the Court deems just and proper.

Dated: December 16, 2020
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ Matthew R. Pierce
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:  landis@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com

*Counsel to UpgradeYa Investments, LLC*