**<u>Exhibit A</u>**

**Proposed Bidding Procedures Order**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 65** |

### ORDER (A) APPROVING BIDDING PROCEDURES, (B) SCHEDULING AN AUCTION AND SALE HEARING AND APPROVING FORM AND MANNER OF NOTICE THEREOF, (C) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES AND FORM AND MANNER OF NOTICE THEREOF; AND (D) <u>GRANTING RELATED RELIEF</u>

Upon the motion (the "<u>Motion</u>")[2] of the debtors and debtors in possession (the "<u>Debtors</u>") for entry of an order (a) approving the bidding procedures, including certain protections in connection with a Stalking Horse Bid, substantially in the form attached hereto as **<u>Exhibit 1</u>** (the "<u>Bidding  Procedures</u>"), (b) scheduling an auction (the "<u>Auction</u>") (if necessary), (c) scheduling a hearing (the "<u>Sale Hearing</u>") for approval of the sale(s) of some or all of the assets of one or more of the Debtors (such assets, collectively, the  "<u>Assets</u>"), (d) authorizing and approving the notice (including Publication Notice) of the Bidding Procedures, the Auction, and the Sale Hearing, substantially in the form attached hereto as **<u>Exhibit 2</u>**, (e) authorizing and approving the procedures for assumption and assignment of executory contracts and unexpired leases in connection with the Sale(s) (the "<u>Assumption and Assignment Procedures</u>"), (f) authorizing and approving the Notice of Proposed Assumed Contracts, substantially in the form attached hereto

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566).  The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

as **Exhibit 3**, and (g) granting certain related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having the authority to enter a final order in connection with this Motion consistent with Article III of the United States Constitution; and this Court having found that venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and upon consideration of the First Day Declarations; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND AND DETERMINED THAT**:[3]

A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

B.    Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    The statutory bases for the relief requested in the Motion are sections 105, 363, and 365 of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008, and Local Rules 6004-1.

---

[3]    The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

D.      Notice of the Motion and the hearing on the Bidding Procedures was sufficient under the circumstances and no other or further notice need be provided except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures.  A reasonable opportunity to object and be heard regarding the relief requested in the Motion has been afforded to parties in interest.

E.      The Debtors have articulated good and sufficient business reasons for this Court to approve the Bidding Procedures, and the Bidding Procedures are fair, reasonable and appropriate, and designed to maximize the value of the Assets.

F.      The Assumption and Assignment Procedures set forth below are fair, reasonable and appropriate and comply with the provisions of section 365 of the Bankruptcy Code.

G.      Each of the Sale Notice, Publication Notice, and the Notice of Proposed Assumed Contracts is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction, the Assumption and Assignment Procedures, the Debtors' good faith calculation of the Cure Amounts, the Sale Hearing, and of all dates and deadlines relevant to the foregoing.

H.      Entry of this Order is in the best interests of the Debtors' estates, their creditors and all other interested parties.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, hereby are overruled and denied on the merits with prejudice.

**Bidding Procedures**

3.       The Bidding Procedures attached hereto as **Exhibit 1** are approved and fully incorporated into this Order.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.

4.       The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

5.       The Debtors may, as they deem necessary and appropriate in the prudent exercise of their business judgment and with the consent of the Official Committee of Unsecured Creditors of Cred Inc., *et al.* (the "Committee"), execute one or more "stalking horse" agreements (each the "Stalking Horse Agreement") for the Assets (or any subset of the Assets). The Stalking Horse Bid Protections are approved as set forth in the Bidding Procedures.

6.       If the Debtors have not executed a binding Stalking Horse Agreement for the Assets on or prior to January 15, 2021, the Debtors shall terminate any sale process, which shall include the termination of Teneo Capital LLC, unless the Debtors and the Committee agree that Teneo Capital LLC shall continue to be retained.

7.       For the avoidance of doubt, the Assets shall not include any cryptocurrency without the written consent of the Committee.

8.       The Auction, if required, shall be conducted at the offices of Paul Hasting LLP, 600 Travis Street, Fifty-Eighth Floor, Houston, Texas 77002 on **January 18, 2021**, at a time to be determined, or at such other time and location as designated by the Debtors, provided that the Debtors may designate a telephonic or video-enabled platform in lieu of an in-person Auction.

9.      Promptly after the conclusion of the Auction, the Debtors shall file with the Court, serve on the Sale Notice Parties and cause to be published on the website maintained by Donlin Recano & Company, the Debtors' claims and noticing agent, at https://www.donlinrecano.com/cred (the "DRC Website"), the results of the Auction, which will include (i) a copy of all Successful Bid(s) and Backup Bid(s), if any, (ii) the identities of the Successful Bidder(s) and Backup Bidder(s), and (iii) a copy of the Purchase Agreements(s) of the Successful Bidder(s).

10.      The hearing to approve the Sale(s) (the "Sale Hearing") shall take place on February [3], 2021 at [ :_] [a/p].m. (prevailing Eastern Time) before the Honorable John T. Dorsey, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Delaware, located at 824 N. Market St, Wilmington, Delaware 19801.  The Sale Hearing may be adjourned or rescheduled by the Debtors.

11.      Objections to a Sale, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code (each, a "Sale Objection"), or to entry of a Sale Order must (i) be in writing and specify the nature of such objection, (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; and (iii) be filed with the Court and served on the Objection Recipients by **January 27, 2020, at 5:00 p.m. (prevailing Eastern Time**) (the "Objection Deadline").

12.      All Sale Objections not resolved by the parties (with the consent of the Committee) prior thereto shall be heard at the Sale Hearing.  The failure of any party to timely file and serve a Sale Objection forever shall bar such party from asserting, at the applicable Sale Hearing or thereafter, any objection to the relief requested in the Motion, or to the consummation

of the applicable Sale(s), including the transfer of the Assets to the applicable Successful

Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to section

363(f) of the Bankruptcy Code.

13.    If a Successful Bidder fails to consummate the approved Sale, a hearing to

authorize the assumption and assignment of Proposed Assumed Contracts to the applicable

Backup Bidder(s) shall be held on no less than five (5) business days' notice, with objections due

at least one (1) business day prior to such hearing, unless otherwise ordered by the Court.  For

the avoidance of doubt, the scope of such hearing will be limited to issues relating to the adequate

assurance of future performance by the applicable Backup Bidder(s).

14.    Sale Objections must be served on: (i) the Debtors, 3 East Third Avenue, Suite

200, San Mateo, CA 94401; (ii) Paul Hastings LLP, 600 Travis Street, Fifty-Eighth Floor,

Houston, TX, 77002, Attn: James T. Grogan, Esq., Mack Wilson, Esq., Alexander Bongartz,

Esq., and Derek Cash, Esq., proposed counsel for the Debtors, jamesgrogan@paulhastings.com,

mackwilson@paulhastings.com, alexbongartz@paulhastings.com, derekcash@paulhastings.com;

(iii) Cousins Law LLC, Brandywine Plaza West, 1521 Concord Pike, Suite 301, Wilmington, DE

19803, Attn: Scott D. Cousins, proposed counsel for the Debtors, scott.cousins@cousins-

law.com, (iv) the Office of the United States Trustee, 844 N. King St #2207, Wilmington, DE

19801, Attn: Joseph McMahon and John Schanne, joseph.mcmahon@usdoj.gov,

john.schanne@usdoj.gov; (v) proposed counsel to the Committee (a) McDermott Will & Emery

LLP, 340 Madison Avenue, New York, NY 10173-1922, Attn. Timothy Walsh and Darren

Azman (twwalsh@mwe.com, dazman@mwe.com) and (b) McDermott Will & Emery LLP, The

Nemours Building, 1007 North Orange Street, 4th Floor, Wilmington, DE 19801, Attn.  David

Hurst (dhurst@mwe.com); (vi) the Internal Revenue Service; and (vii) the United States

Attorney for the District of Delaware (the foregoing, collectively, the "Objection Recipients").

**Sale Notice**

15.    The Sale Notice attached hereto as **Exhibit 2** is approved.  No other or further

notice of the sale(s) of the Assets, the Auction, the Sale Hearing, or the deadlines for Sale

Objections shall be required if the Debtors serve and publish such notice in the manner provided

in the Bidding Procedures.  The Sale Notice contains the type of information required by

Bankruptcy Rule 2002 and Local Rule 2002-1, and complies in all respects with applicable

provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

16.    Within two days of entry of this Order, the Debtors shall serve the Sale Notice by

first class mail or email on: (i) the Office of the United States Trustee, 844 N. King St #2207,

Wilmington, DE 19801, Attn: Joseph McMahon and John Schanne,

joseph.mcmahon@usdoj.gov, john.schanne@usdoj.gov; (ii) proposed counsel to the Committee

(a) McDermott Will & Emery LLP, 340 Madison Avenue, New York, NY 10173-1922, Attn.

Timothy Walsh and Darren Azman (twwalsh@mwe.com, dazman@mwe.com) and (b)

McDermott Will & Emery LLP, The Nemours Building, 1007 North Orange Street, 4th Floor,

Wilmington, DE 19801, Attn.  David Hurst (dhurst@mwe.com); (iii) the Internal Revenue

Service; (iv) the United States Attorney for the District of Delaware; (v) all of the Debtors'

known creditors (for whom identifying information and addresses are known to the Debtors);

(vi) all parties who have filed a notice of appearance and request for service of papers in these

cases pursuant to Bankruptcy Rule 2002; (vii) all persons and entities known by the Debtors to

have expressed an interest in the Assets during the past 12 months; and (viii) all other persons

and entities as directed by the Court (collectively, the "Sale Notice Parties").

17.     In addition, the Debtors shall (i) post the Sale Notice and this Order on the DRC Website, and (ii) no later than five (5) business days after entry of this Order, cause the Publication Notice to be published once in the *San Francisco Chronicle* and, in the Debtors' discretion, any appropriate local or trade periodicals.

## Assumption and Assignment Procedures

18.     The Notice of Proposed Assumed Contracts attached hereto as **<u>Exhibit 3</u>** is approved.  The Notice of Proposed Assumed Contracts (i) identifies the Contracts, (ii) lists the Debtors' good faith calculation of the Cure Amount with respect to each Contract, (iii) expressly states that assumption and assignment of any particular Contract is not guaranteed, and (iv) prominently displays the deadline for filing objections to the assumption and assignment of the Contracts and/or the proposed Cure Amounts.

19.     The Notice of Proposed Assumed Contracts is reasonable, fair, and appropriate, contains the type of information required by Bankruptcy Rule 2002, Local Rule 2002-1, and otherwise complies with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and no other or further notice shall be required if the Debtors file and serve such notice on each Counterparty.

20.     Promptly after the conclusion of the Auction, the Debtors will (a) file with the Court, serve on the Sale Notice Parties, by email, and cause to be published on the DRC Website, (i) the Notice of the Proposed Assumed Contracts and (ii) each Successful Bidder's and Backup Bidder's proposed form of adequate assurance of future performance with respect to the relevant Proposed Assumed Contracts and (b) mail the Notice of Proposed Assumed Contracts to all relevant Counterparties.

21.     Any Counterparty that wishes to object to the assumption and assignment of its Contract must file its objection with the Court and serve it on the Objection Recipients by no later than the Objection Deadline.

22.     Any Counterparty that wishes to object to the proposed Cure Amount with respect to its Contract (each, a "Cure Objection") must file with the Court and serve on the Objection Recipients its Cure Objection (which must state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof) by no later than the Objection Deadline.

23.     If the parties (with the consent of the Committee) are unable to consensually resolve any Cure Objection prior to the commencement of the Sale Hearing, the Court shall make the determinations relating to such Cure Objection at or subsequent to the Sale Hearing; provided that the determination of whether a Cure Objection may be heard at the Sale Hearing is in the Debtors' and the Court's discretion.  An adjourned Cure Objection may be resolved after the closing of the applicable Sale if the relevant purchase agreement provides for the establishment of a cash reserve equal to the cure amount the objecting Counterparty reasonably believes is required (or as otherwise ordered by the Court).  Upon the Court's resolution of any Cure Objection, whether or not such resolution occurs prior to or after the closing of the applicable Sale, the Debtors or the applicable Successful Bidder, as applicable, shall have the right to exclude the relevant Contract from the Assets being purchased.

24.     Upon resolution of a Cure Objection, provided that neither the Debtors nor the applicable Successful Bidder have determined to exclude the relevant Contract from the applicable Sale, and upon the payment of the applicable cure amount, if any, the Contract shall

be deemed assumed and assigned to the applicable Successful Bidder as of the closing date of the applicable Sale.

25.     If a Counterparty fails to timely file and serve a Cure Objection, the Counterparty shall be deemed to have consented to the Cure Amount set forth in the Notice of Proposed Assumed Contracts and forever shall be barred from asserting any other cure amount against the Debtors, the applicable Successful Bidder, or their respective properties, and such Cure Amount shall constitute the only amount necessary to cure outstanding monetary defaults under the applicable Contract in accordance with section 365(b) of the Bankruptcy Code, notwithstanding anything to the contrary in such Contract or any other document.

26.     Any Counterparty that wishes to object to the proposed adequate assurance of future performance by the applicable Successful Bidder (each, an "Adequate Assurance Objection") must file with the Court and serve on the Objection Recipients an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases thereof, including any appropriate documentation in support thereof, by no later the Objection Deadline.

27.     If the parties (with the consent of the Committee) are unable to consensually resolve an Adequate Assurance Objection prior to the commencement of the Sale Hearing, such objection and all issues of adequate assurance of future performance by the applicable Successful Bidder shall be determined by the Court at the Sale Hearing.

28.     If a Counterparty fails to timely file and serve an Adequate Assurance Objection, such Counterparty shall be deemed to have accepted the adequate assurance of future performance offered in connection with its Contract and consented to the assumption and assignment of such Contract (unless the Counterparty has filed a timely Cure Objection with respect thereto) and forever shall be barred from asserting any objection with regard to such

assumption and assignment or adequate assurance of future performance.  The applicable

Successful Bidder shall be deemed to have provided adequate assurance of future performance

with respect to the applicable Contract in accordance with section 365(f)(2)(B) of the

Bankruptcy Code, notwithstanding anything to the contrary in such Contract or any other

document.

29.     The inclusion of any Contract on Schedule 1 of the Notice of Proposed Assumed

Contracts shall not constitute or be deemed a determination or admission by the Debtors, the

applicable Successful Bidder(s), or any other party in interest that such Contract is an executory

contract or an unexpired lease within the meaning of the Bankruptcy Code or that the stated

Cure Amount is due (all rights with respect thereto being expressly reserved).

30.     The Debtors shall have the right to amend, modify or supplement the Notice of

Proposed Assumed Contracts; provided that the Debtors shall obtain the consent of the

Committee prior to making any material modification to the Notice of Proposed Assumed

Contracts.  The inclusion of any Proposed Assumed Contract in any subsequently filed Notices

of Proposed Assumed Contracts (collectively, the "Contract Notices") shall be without

prejudice to the Debtors' or any Successful Bidder's rights to subsequently exclude such

Contract from assumption and assignment prior to the closing of the applicable Sale.

31.     The deadline for any Counterparty added to an amended Contract Notice or

whose Cure Amount is reduced thereby to file (a) a Cure Objection shall be **5:00 p.m.**

**(prevailing Eastern Time)** on the date that is seven (7) days following service of the

applicable amended Contract Notice and (b) an Adequate Assurance Objection shall be the

**earlier of one (1) business day following the service of the applicable amended Contract**

**Notice or the date of the Sale Hearing**; provided, however, that if such date is after the date of

11

the Sale Hearing, the Counterparty need not file a written Adequate Assurance Objection and may instead make its Adequate Assurance Objection on the record at the Sale Hearing.

### **Related Relief**

32.     After the selection of a Successful Bid, and only if the Sale(s) includes the transfer of customer information, the U.S. Trustee is directed to appoint a consumer privacy ombudsman (an "Ombudsman") in accordance with section 332(a) of the Bankruptcy Code by no later than the date that is seven (7) days prior to the date of the Sale Hearing. Subject to further order of the Court, the Ombudsman shall perform the functions set forth in section 332(b) of the Bankruptcy Code, and shall at all times comply with section 332(c) of the Bankruptcy Code. The Ombudsman shall be compensated pursuant to section 330 of the Bankruptcy Code, upon approval by the Court of a request for compensation, for time charges and reimbursable expenses of the Ombudsman and that of any professionals or paraprofessionals who assist the Ombudsman in carrying out her duties.  This paragraph shall not apply if the Sale(s) are consummated under section 1123(b)(4) of the Bankruptcy Code as part of a plan.

33.     Except as expressly provided herein, nothing in this Order shall be construed as a determination of the rights of any party in interest in these chapter 11 cases.

34.     All objections to the relief granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits with prejudice.

35.     All persons and entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Bidding Procedures, the Auction, and any Sale and

waived the right to a jury trial in connection with any disputes relating to the Auction, the Sale(s) and the construction and enforcement of any Stalking Horse Agreement(s) and all other agreements entered into in connection with any Sale(s).

36.    All rights of the U.S. Trustee to object to the Sale Order are preserved.

37.    In the event there is a conflict between this Order and the Motion, this Order shall control.

38.    The requirements of Bankruptcy Rule 6004(a) are satisfied.

39.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

40.     The Debtors are authorized to take all steps necessary or appropriate to carry out the provisions of this Order.

41.    This Court shall retain jurisdiction to hear and determine all matters arising from the interpretation or implementation of this Order.

## Exhibit 1

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |

**BIDDING PROCEDURES**

On December __, 2020, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an Order (the "Bidding Procedures Order") approving the following procedures (the "Bidding Procedures") for the sale of some or all of the assets or equity interests of one or more of the above-captioned debtors in possession (collectively, the "Debtors") (such assets and equity interests, collectively, the "Assets").

## I.    Key Dates and Deadlines

| | |
|---|---|
| **Proposal Deadline** | January 6, 2021, at 5:00 p.m. (prevailing Eastern Time) |
| **Stalking Horse Bid Deadline** | January 6, 2021, at 5:00 p.m. (prevailing Eastern Time) |
| **Stalking Horse Designation Deadline** | January 12, 2020, at 5:00 p.m. (prevailing Eastern Time) |
| **Final Bid Deadline** | January 15, 2021, at 5:00 p.m. (prevailing Eastern Time) |
| **Auction** | January 18, 2021, at a time to be determined (subject to extension by Debtors) |
| **Objection Deadline** | January 27, 2021, at 5:00 p.m. (prevailing Eastern Time) |
| **Deadline for Debtors to reply to any objections to Sale or assumption and assignment of Contracts** | February 1, 2021, at 5:00 p.m. (prevailing Eastern Time) |
| **Sale Hearing** | February [3], 2021, as determined by, and subject to the availability of, the Court |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566).  The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

II.    **Prospective Bidders**

To be eligible to participate in the bidding process for any or all of the Assets, any interested party (each, a "Prospective Bidder") shall first deliver to each of the Bid Notice Parties (as defined in Section X.A):

- if the Prospective Bidder wishes access to information regarding the Assets, an executed confidentiality agreement, in form and substance satisfactory to the Debtors;

- a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the Prospective Bidder has a *bona fide* interest in purchasing the specified Assets; and

- preliminary proof of the Prospective Bidder's financial capacity to close a proposed Sale.

Any Prospective Bidder identified by the Debtors as reasonably likely to be a Qualified Bidder (as defined in Section VI.A), upon execution of a confidentiality agreement, shall be granted access to information regarding the relevant Assets.  The Debtors shall be entitled to (a) restrict the due diligence access of any Prospective Bidder that the Debtors' determine (in their sole discretion) to be a competitor of the Debtors and (b) revoke due diligence access to any Prospective Bidder that fails to become a Qualified Bidder.

The Debtors will work to accommodate all reasonable requests for additional information and due diligence access from Prospective Bidders.

The Debtors and their advisors, representatives and agents are not responsible for, and will bear no liability with respect to, any information obtained by any Prospective Bidder in connection with any Sale transaction.

III.    **Proposals**

A.    **Proposal Deadline**

Written preliminary indications of interest (each, a "Proposal") are to be submitted no later than **January 6, 2021 at 5:00 p.m. (prevailing Eastern Time)** (the "Proposal Deadline").

B.    **Proposal Requirements**

Proposals must contain the following information:

1. Identity of Purchaser and its Affiliates:  A Proposal must specify the identity of the legal entity that would acquire the specified Assets, its ultimate parent company, the identity of all key shareholders and any relevant history and/or experience in the industry.

2. <u>Proposed Transaction</u>: A Proposal must include the terms of the proposed transaction, including, but not limited to:

    a.  identification of the Assets included in the proposed Sale;[2]

    b.  the liabilities, if any, to be assumed;

    c.  total purchase price (and its Allocation (as defined in Section VI.A.1.c)) and form of consideration;

    d.  a description of any significant assumptions on which the Proposal is based;

    e.  structure, terms and conditions of the proposed Sale (including whether such sale would be implemented pursuant to section 363 of the Bankruptcy Code or a chapter 11 plan of reorganization);

    f.  evidence of financial wherewithal to close the proposed Sale; and

    g.  other economic matters to the extent material to the proposed transaction.

3. <u>Due Diligence</u>: A Proposal must include a description of the due diligence the Prospective Bidder needs to conduct, including a list of any due diligence items it needs to review or confirm in order for it to enter into a definitive agreement.

4. <u>Material Conditions</u>: A Proposal must list any other material conditions to which the consummation of the proposed Sale would be subject.

5. <u>Sources of Financing</u>: A Proposal must include an indication of expected sources of funds (including the amounts of debt and equity financing necessary to fund the Sale together with the indications from any third party sources of their commitment to provide such funds) and the steps required (and anticipated timing) to obtain definitive funding commitments. If the Prospective Bidder is a newly-formed entity, the Proposal must identify the entity or entities that will provide backstops for the Proposal in the form of a guarantee, equity commitment letter, or any other credit support, and describe the nature of such support.

6. <u>Required Approvals & Timing</u>: A Proposal must include a description of the level of review, authorization and approval within the Prospective Bidder's organization that the potential Sale has received to date and an indication of any anticipated need (and associated timing) for further corporate, shareholder, or

---

[2]  The Debtors will consider bids for any or all of the Assets in a single bid from a single bidder or in multiple bids from multiple bidders. Any bid for particular Assets, even if such bid is the highest or otherwise best bid for particular Assets, is subject to higher or otherwise better bids (i) on larger subsets of Assets that include the same Assets or (ii) multiple bids that, in the aggregate, constitute a higher or otherwise better bid.

regulatory authorization, approvals and waivers and any other material conditions or time constraints related to closing.

7. <u>Governmental and Regulatory Approvals</u>. A Proposal must include a statement or evidence of the Prospective Bidder's plan and ability to obtain all governmental, regulatory, or other third-party approvals to operate the Debtors' business from and after the closing of the Sale transaction and the proposed timing for the Prospective Bidder to undertake the actions required to obtain such approvals. A Prospective Bidder further agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel to discuss and explain such Prospective Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in (a) with respect to any Assets subject to a Stalking Horse Agreement (as defined below), such Stalking Horse Agreement (including all exhibits and schedules thereto), and (b) with respect to any other Asset, the Form Purchase Agreement (as defined below).

## IV.    Stalking Horse Agreements

The Debtors may, as they deem necessary and appropriate in the prudent exercise of their business judgment, and with the consent of the Committee, execute with one or more potential bidders, one or more "stalking horse" agreements (each such agreement, a "<u>Stalking Horse Agreement</u>," each such bidder, a "<u>Stalking Horse Bidder</u>," and each such bid a, "<u>Stalking Horse Bid</u>") for any subset of the Assets.

The deadline for any party wishing to submit a Stalking Horse Bid to the Debtors shall be **January 6, 2020, at 5:00 p.m., (prevailing Eastern Time)** (the "<u>Stalking Horse Bid Deadline</u>"). Upon evaluation of potential Stalking Horse Bid(s), the Debtors may, in exercise of their business judgment, and with the consent of the Committee, designate which, if any, of such bids shall serve as Stalking Horse Bid in connection with the Auction by **January 12, 2020 at 5:00 p.m. (prevailing Eastern Time)** (the "<u>Stalking Horse Designation Deadline</u>").

In connection with such Stalking Horse Agreement, the Debtors may provide certain bid protections (the "<u>Stalking Horse Bid Protections</u>") to the Stalking Horse Bidder. The Stalking Horse Bid Protections may include a Termination Payment not to exceed three percent (3%) of the Stalking Horse Bidder's purchase price or a comparable amount as agreed upon by the Debtors <u>plus</u> the Stalking Horse Bidder's reasonable professional fees and necessary expenses.

If the Stalking Horse Bid is selected as the Baseline Bid for the Assets (or a particular subset thereof), a topping bid must include a minimum purchase price in an amount equal to the sum of (a) the Baseline Bid; (b) the Termination Payment; and (c) the applicable Minimum Overbid (such topping bid, a "<u>Stalking Horse Overbid</u>").

## V.    Bid Deadline

Any Prospective Bidder that intends to participate in the Auction must submit its final, binding bid (a "<u>Final Bid</u>") in writing to the Bid Notice Parties on or before **January 15, 2021 at 5:00 p.m. (prevailing Eastern Time)** (the "<u>Final Bid Deadline</u>"); <u>provided</u> that the Debtors,

with the consent of the Committee, shall have the discretion to extend in writing the Final Bid Deadline for any Prospective Bidder. Any bid received after the Final Bid Deadline will not constitute a Qualified Bid.

## VI.   Qualified Bids

### A.   Qualified Bid Requirements

In order for a Final Bid to qualify as a "Qualified Bid" (and any bidder that submits a Qualified Bid, a "Qualified Bidder"), the Final Bid must satisfy the following requirements:

1. Purchased Assets.  The Final Bid shall identify the following:

   a. the Assets to be purchased, and solely to the extent applicable, the entity(ies) for which the Prospective Bidder would serve as plan sponsor, as applicable, and any Contracts that would be assumed in connection with the relevant Sale (the "Proposed Assumed Contracts");

   b. the liabilities, if any, to be assumed;

   c. the consideration offered (the "Purchase Price"); provided that, if the Final Bid is for any Assets subject to one or more Stalking Horse Agreement(s), (a) the bid shall allocate the Purchase Price among the Assets subject to each such Stalking Horse Agreement (the "Allocation") and (b) the Purchase Price shall exceed the applicable Stalking Horse Overbid(s) (as defined in Section VII.B.2);

   d. the proposed form of adequate assurance of future performance with respect to the Proposed Assumed Contracts;

   e. whether the Prospective Bidder intends to operate all or a portion of the Debtors' business as a going concern or to liquidate the applicable Assets; and

   f. whether the Prospective Bidder intends to offer future employment to any of the Debtors' employees.

2. Identification of Bidder: The Final Bid shall fully disclose the identity of each person or entity bidding for the applicable Assets or sponsoring, financing (including through the issuance of debt in connection with such bid), participating in such bid (including through license or similar arrangement), and the complete terms of any such participation, and shall also disclose any past or present connections or agreements with the Debtors, any other known Prospective Bidder or Qualified Bidder, and any officer or director of the foregoing.

3. Purchase Agreement: The Final Bid shall include (a) either (X) an executed purchase agreement, based on (i) with respect to any Assets subject to a Stalking

Horse Agreement, such Stalking Horse Agreement (including all exhibits and schedules thereto), and (ii) with respect to any other Asset, the form purchase agreement provided by the Debtors (including all exhibits and schedules thereto, the "<u>Form Purchase Agreement</u>")[3] or (Y) an executed plan support agreement that details the proposed classification and treatment of all claims, and all proposed representations, warranties, covenants, and conditions precedent, (b) a proposed sale order, based on (i) with respect to any Assets subject to a Stalking Horse Agreement, the sale order proposed by the relevant Stalking Horse Bidder and (ii) with respect to any other Assets, the Sale Order, and (c) to the extent applicable, copies of the foregoing, marked to show any proposed modifications to each from the Sale Order or any Stalking Horse Agreement, as applicable.

4. <u>Financial Information</u>: The Final Bid shall include a statement:

    a.  representing that the Prospective Bidder is financially capable of consummating the contemplated Sale, together with the Prospective Bidder's (i) *pro forma* capital structure and (ii) if available, audited financial statements for the prior two years, or if such financial statements are not available, written evidence acceptable to the Debtors sufficient to support a conclusion that the Prospective Bidder is financially capable of consummating the contemplated Sale; <u>provided</u> that, if the Prospective Bidder is an entity specially formed for the purpose of purchasing the relevant Assets, the Final Bid must provide written evidence acceptable to the Debtors of the financial wherewithal of such Prospective Bidder's equity holder(s); and

    b.  setting forth in reasonable detail the proposed structure and material terms of such financing.

The Debtors reserve the right, in their sole discretion, to reasonably request additional financial information from any Prospective Bidder.

5. <u>Cash Component</u>: Each Qualified Bid must offer a minimum cash component sufficient to satisfy administrative expenses in the chapter 11 cases through conclusion.

6. <u>Good Faith Deposit</u>: Each Qualified Bid shall be accompanied by a good faith deposit (a "<u>Good Faith Deposit</u>") in the form of cash (or other form acceptable to the Debtors in their sole and absolute discretion) in an amount equal to 10% of the Purchase Price. All Good Faith Deposits shall be held in escrow in a non-interest-bearing account identified by the Debtors until no later than five (5) business days after the conclusion of the Auction and thereafter returned to the respective Qualified Bidders; <u>provided</u>, <u>however</u>, that if a bidder is selected as the Successful Bidder (as defined in Section VII.C.1) or as a Backup Bidder (as

---

[3]  Within five (5) business days after the Proposal Deadline, the Debtors will provide a copy of the Form Purchase Agreement to Prospective Bidders that submit a timely Proposal.

defined in Section VI.A.9.h), such bidder's Good Faith Deposit shall be (i) in the case of the Successful Bidder, credited toward the Purchase Price, and (ii) in the case of the Backup Bidder, returned on the earlier of five (5) business days after the closing of the applicable Sale(s) or 60 days after the date of the Sale Hearing. The Debtors reserve the right to increase the Good Faith Deposit in their sole and reasonable discretion.

7.  <u>Adequate Assurance</u>: The Final Bid shall include evidence of the Prospective Bidder's ability to perform future obligations arising under the Proposed Assumed Contracts, in a form that will permit immediate dissemination of such evidence to the applicable Counterparties.

8.  <u>Authorization</u>: The Final Bid shall include evidence of authorization and approval from the Prospective Bidder's board of directors (or comparable governing body) with respect to the Final Bid, participation in the Auction and closing of the proposed Sale; <u>provided</u> that, if the Prospective Bidder is an entity specially formed for the purpose of purchasing the relevant Assets, the Final Bid must provide written evidence acceptable to the Debtors of the approval by the equity holder(s) of such Prospective Bidder.

9.  <u>Other Requirements</u>: A Qualified Bid must:

    a.  state that the bid is not subject to or conditioned on any further due diligence or financing contingencies of any kind; and be irrevocable until the selection of the Successful Bid (as defined in Section VII.C.1); <u>provided</u> that if the Prospective Bidder is the Successful Bidder or the Backup Bidder with respect to any Assets, its bid must remain irrevocable until the earlier of (i) the consummation of a Sale(s) with the Successful Bidder(s) and (ii) 60 days after the date of the Sale Hearing;

    b.  state that the Prospective Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the relevant Assets in making its bid and did not rely on any of the Debtors' or any of their advisors' or representatives' written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtors' businesses or the Assets or the completeness of any information provided in connection therewith, except, with respect to the Debtors only, as expressly stated in the representations and warranties contained in the Prospective Bidder's purchase agreement(s) or plan support agreement, as applicable, ultimately accepted and executed by the Debtors;

    c.  if the bid is for any Assets subject to a Stalking Horse Agreement, state that the bid is not subject to conditions more burdensome than those in such Stalking Horse Agreement;

d.  state that the Prospective Bidder is committed to closing the Sale contemplated by the bid as soon as practicable;

e.  unless otherwise approved by the Court with respect to a particular Stalking Horse Bid, expressly acknowledge that the Prospective Bidder shall not be entitled to any bid protections;

f.  expressly waive any right to assert an administrative expense claim for substantial contribution under section 503(b) of the Bankruptcy Code in connection with bidding for the applicable Assets and/or participating in the Auction;

g.  not contain any condition to the closing of the proposed Sale on the receipt of any third party approvals (excluding Court approval, any required regulatory approvals and/or effectiveness of a plan of reorganization);

h.  state that the Prospective Bidder agrees to serve as a backup bidder (a "Backup Bidder") if such bidder's Qualified Bid is selected as the next highest or otherwise best bid after the Successful Bid for the applicable Assets;

i.  include contact information for the specific person(s) the Debtors should contact in the event they have any questions about such Final Bid;

j.  be received by the Bid Notice Parties by the Final Bid Deadline;

k.  certify that the Prospective Bidder did not collude with any other bidders and is not otherwise a partnership, joint venture or other entity in which more than one bidder (or any of its affiliates) has a direct or indirect interest, unless consented to in writing by the Debtors;

l.  include a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Prospective Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements; and

m.  set forth each third-party, regulatory and governmental approval required for the Prospective Bidder to consummate the transaction and the time period within which the Prospective Bidder expects to receive such approvals and establishes to the satisfaction of the Debtors (with the consent of the Committee) a substantial likelihood that the Prospective Bidder will obtain such approvals by the stated time period.

### B.     Selection of Qualified Bid

The Debtors, with the consent of the Committee, will evaluate each Qualified Bid using any and all factors that the Debtors deem reasonably pertinent, including, without limitation (i) the amount of the Purchase Price, including the form of consideration, (ii) the risks and timing associated with consummating the applicable Sale, (iii) the Assets included in or excluded from the Qualified Bid, including the Proposed Assumed Contracts, and (iv) the ability to obtain any and all necessary regulatory or other approvals for the proposed Sale.  For the avoidance of doubt, the Debtors shall not, without the consent of the Committee, sell any of the Debtors' cryptocurrency.

The Debtors, with the consent of the Committee, will make a determination regarding which Final Bid(s) qualify as Qualified Bid(s) and notify all Prospective Bidders whether they have been selected as Qualified Bidders prior to the Auction.

## VII.   The Auction

If the Debtors receive more than one Qualified Bid for any of the Assets, the Debtors will conduct the Auction.  The Auction, if required, will be conducted at the offices Paul Hastings LLP, 600 Travis Street, Fifty-Eighth Floor, Houston, Texas 77002 on **January 18, 2021, at a time to be determined**, or at such other time and location as designated by the Debtors, <u>provided</u> that the Debtors may designate a telephonic or video-enabled platform in lieu of an in-person Auction.

If the Debtors receive no more than one Qualified Bid with respect the Assets, the Debtors may determine, with the consent of the Committee, not to hold the Auction for such Assets and instead declare the applicable Qualified Bid as the Successful Bid for such Assets and request that the Court approve the applicable purchase agreement or plan support agreement at the Sale Hearing.

### A.     Participants and Attendees

At least one business day prior to the Auction, each Qualified Bidder must inform the Debtors whether it intends to attend the Auction.  Qualified Bidders participating in the Auction must appear at the Auction in person or through a duly authorized representative.  Subject to the Auction procedures set forth in Section VII.B, the Auction will be conducted openly, and all Qualified Bidders and the Committee are permitted to attend; <u>provided</u> that the Debtors may, in their sole and exclusive discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder at the Auction.

Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction and (ii) each Qualified Bid it submits at the Auction is a binding, good faith and *bona fide* offer to purchase the Assets identified in such bid.

B.    **Auction Procedures**

The Auction will be governed by the following procedures, subject to the Debtors' right to modify such procedures in their reasonable discretion and with the consent of the Committee:

1.  Baseline Bids.  Prior to the commencement of the Auction, the Debtors will provide copies of the Qualified Bid(s) that they determine, with the consent of the Committee, to be the highest or otherwise best Qualified Bid(s) for particular Assets (each, the "Baseline Bid") to all other Qualified Bidders who have submitted Qualified Bid(s) for such Assets. Bidding for such Assets at the Auction will commence at the amount of the Baseline Bid.

2.  Minimum Overbid.  At each round of bidding, Qualified Bidders will submit Bids for each subset of Assets that are higher than the Leading Bid (as defined in Section VII.B.4) for such Assets from the prior round (or, for the first round, the relevant Baseline Bid), by at least the increment (the "Minimum Overbid") the Debtors determine and announce prior to such round of bidding; provided, however, that, to the extent that the Baseline Bid is a Stalking Horse Bid, the bidding for the relevant Assets will start at an amount equal to the sum of (i) the Baseline Bid, (ii) the Minimum Overbid, and (iii) the aggregate amount of the applicable bid protections, if any (collectively, the "Stalking Horse Overbid"). The Debtors will, in their reasonable discretion, announce increases or reductions to the Minimum Overbids or the Stalking Horse Overbids, as applicable, at any time during the Auction.

3.  Incremental Deposit Amount.  Additionally, upon a Qualified Bidder's declaration of its bid, it will commit on the record that, if such bid is to be the Successful Bid or the Backup Bid, it will, following the Auction, pay the additional Good Faith Deposit, calculated on the basis of the increased Purchase Price (the "Incremental Deposit Amount").

4.  Highest or Best Offer.  After the first round of bidding and between each subsequent round of bidding, the Debtors will announce, with the consent of the Committee, the bid that they believe to be the highest or otherwise best offer for the applicable Assets (each, the "Leading Bid") and describe the material terms thereof.  Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the Leading Bid.

The Debtors shall have the right to determine, with the consent of the Committee, which bid (or combination of bids) is the highest or otherwise best bid with respect to the applicable Assets and reject, at any time, without liability, any bid that the Debtors deem to be inadequate or insufficient, or not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, any order of the Court, or the best interests of the Debtors and their estates.

Each Leading Bid will remain open and binding on the applicable Qualified Bidder until and unless (i) the Debtors accept as a Leading Bid for the same Assets a bid by another Qualified Bidder during the Auction and (ii) such Leading Bid is not selected as the Backup Bid.

5.  No Round-Skipping.  To remain eligible to participate in the Auction for a particular subset of Assets, (i) each Qualified Bidder must submit a bid in each round of bidding for such Assets that is higher or otherwise better than the immediately preceding bid submitted in such round of bidding and (ii) to the extent a Qualified Bidder fails to bid at each round of bidding or to submit a bid in each round of bidding that is higher or otherwise better than the immediately preceding bid for the applicable Assets submitted in such round of bidding, such Qualified Bidder will be disqualified from continuing to participate in the Auction for the applicable Assets.

**C.    Auction Results; As-Is-Where-Is**

1.  Successful Bids.  Immediately prior to the conclusion of the Auction, the Debtors, with the consent of the Committee, will (a) determine, consistent with the Bidding Procedures, which bid(s) constitutes the highest or otherwise best bid(s) for the applicable Assets (each, a "Successful Bid") and (b) notify all Qualified Bidders bidding for such Assets at the Auction of the identity of the bidder(s) that submitted the Successful Bid(s) (each, the "Successful Bidder") for such Assets and the amount of the Purchase Price and other material terms of the Successful Bid(s).  As a condition to remaining the Successful Bidder, each Successful Bidder will wire to the Debtors, no later than one business day following the date on which the applicable Successful Bid is announced, the Incremental Deposit Amount in immediately available funds.

2.  Backup Bids.  Prior to the conclusion of the Auction, the Debtors will, with the consent of the Committee, (i) determine which Qualified Bid is the next highest or otherwise best Qualified Bid after the Successful Bid for the applicable Assets (each, a "Backup Bid") and (ii) notify all Qualified Bidders bidding for the applicable Assets of the identity of the relevant Backup Bidder and the amount of the Purchase Price and other material terms of its Backup Bid.  As a condition to remaining the Backup Bidder, each Backup Bidder will, no later than one business day following the date on which the applicable Backup Bid is announced, wire to the Debtors the Incremental Deposit Amount in immediately available funds.

3.  The Backup Bid(s) will remain binding on the Backup Bidder(s) until the earlier of (i) the closing of the Sale for the applicable Assets and (ii) 60 days after the date of the Sale Hearing.  If the Successful Bidder(s) for the applicable Assets fail to consummate the Sale(s), the Backup Bidder(s) will be deemed the new Successful Bidder(s) for the applicable Assets, and the Debtors will be automatically authorized, but not required, to consummate the Sale(s) of the applicable Assets to the Backup Bidder(s).

4. The determination of the Successful Bid(s) and the Backup Bid(s) by the Debtors, with the consent of the Committee, at the conclusion of the Auction will be final, subject only to approval by the Court.

5. Any Sale will be on an "as is, where is" basis and without representations or warranties of any kind, express or implied, by the Debtors, their advisors, representatives, or agents, or the Debtors' chapter 11 estates except, with respect to the Debtors only, solely to the extent expressly set forth in the Successful Bidder(s)' purchase agreement(s) or plan support agreement, as applicable.  All Successful Bidders and Backup Bidders must acknowledge and agree that neither the Debtors nor any of their advisors, representatives, or agents will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining to the Assets or relating thereto that the Debtors, any advisor or agent representing or purporting to represent the Debtors might have made or furnished to whomever, directly or indirectly, orally or in writing, unless, with respect to the Debtors only, specifically set forth in the Court's order approving the Sale.

Promptly after the conclusion of the Auction, the Debtors shall file with the Court, serve on the Sale Notice Parties (as defined in the Bidding Procedures Order) and cause to be published on the website maintained by Donlin Recano & Company, the Debtors' claims and noticing agent, at https://www.donlinrecano.com/cred (the "DRC Website"), the results of the Auction, which will include (i) a copy of all Successful Bid(s) and Backup Bid(s), if any, (ii) the identities of the Successful Bidder(s) and Backup Bidder(s), and (iii) a copy of the Purchase Agreements(s) of the Successful Bidder(s).

Promptly after the conclusion of the Auction, the Debtors will (a) file with the Court, serve on the Sale Notice Parties, by email, and cause to be published on the DRC Website, (i) the Notice of the Proposed Assumed Contracts and (ii) each Successful Bidder's and Backup Bidder's proposed form of adequate assurance of future performance with respect to the relevant Proposed Assumed Contracts and (b) mail the Notice of Proposed Assumed Contracts to all relevant Counterparties.

## D.    Return of Good Faith Deposits

The Good Faith Deposits will be held by the Debtors in a non-interest-bearing escrow or trust account and will not become property of the Debtors' estates.  The Good Faith Deposits will be retained by the Debtors, notwithstanding the Court's approval of any Sale(s) for the applicable Assets, until no later than five (5) business days after the conclusion of the Auction, except for the Good Faith Deposit(s) of Successful Bidder(s) and Backup Bidder(s); provided that, if a Stalking Horse Bidder is not the Successful Bidder or Backup Bidder, its Good Faith Deposit will be returned to such Stalking Horse Bidder in accordance with the applicable Stalking Horse Agreement.  The Debtors will retain the Good Faith Deposits of Backup Bidders until the earlier of (i) five (5) business days after the closing of the Sale(s) of the applicable Assets and (ii) 60 days after the date of the Sale Hearing.

At the closing of a Sale, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit.  If a Successful Bidder fails to consummate a Sale because of a breach that entitles the Debtors to terminate the applicable purchase agreement or plan support agreement, then, the Debtors will be entitled to retain such Successful Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtors and their estates as a result of such breach or failure to perform.

## VIII.   Sale Hearing

Each Successful Bid (including any Backup Bid that is subsequently deemed a Successful Bid) will be subject to approval by the Court. The hearing to approve the Sale(s) (the "Sale Hearing") will take place on **February [3], 2021 at [ :_] [a/p].m. (prevailing Eastern Time)** before the Honorable John T. Dorsey, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market St, Wilmington, Delaware 19801.

The Debtors may reject at any time, before entry of the applicable Sale Order, any bid that, in the Debtors determine, with the consent of the Committee, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors and their estates.

Objections to a Sale, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code (each, a "Sale Objection"), or to entry of a Sale Order must (i) be in writing and specify the nature of such objection, (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court, and (iii) be filed with the Court and served on the Objection Recipients by **January 27, 2021, at 5:00 p.m. (prevailing Eastern Time) (the "Objection Deadline")**.

All Sale Objections not resolved by the parties prior thereto will be heard at the Sale Hearing.  The failure of any party to timely file and serve a Sale Objection forever will bar such party from asserting, at the applicable Sale Hearing or thereafter, any objection to the relief requested in the Motion, or to the consummation of the applicable Sale(s), including the transfer of the Assets to the applicable Successful Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

If a Successful Bidder fails to consummate the approved Sale, a hearing to authorize the assumption and assignment of Proposed Assumed Contracts to the applicable Backup Bidder(s) will be held before the Court on no less than five (5) business days' notice, with objections due at least one business day prior to such hearing, unless otherwise ordered by the Court.  For the avoidance of doubt, the scope of such hearing will be limited to issues relating to the adequate assurance of future performance by the applicable Backup Bidder(s).

## IX.   Modification of Procedures

The Debtors may, in any manner consistent with applicable law, and with the consent of the Committee, modify the procedures and deadlines set forth herein (including, without limitation, extending the Final Bid Deadline, modifying the Qualified Bid requirements,

modifying the procedures for conducting the Auction, rescheduling the Auction or adjourning the Sale Hearing) or adopt new rules, procedures and deadlines in order to, in their sole and reasonable discretion, maximize value for their estates; <u>provided</u> that the Debtors may not amend these Bidding Procedures or the bidding process to reduce their obligations to obtain the consent of the Committee without the consent of the Committee or further order of the Court. All such modifications and additional rules will be communicated to each the Committee, the Sale Notice Parties, Prospective Bidders and Qualified Bidders; <u>provided</u> that, to the extent such modifications occur at the Auction, disclosure of such modifications may be limited to those in attendance at the Auction.

**X.     Noticing**

**A.     Bid Notice Parties**

Qualified Bids will be submitted in writing to: (i) the Debtors, 3 East Third Avenue, Suite 200, San Mateo, CA 94401; (ii) Paul Hastings LLP, 600 Travis Street, Fifty-Eighth Floor, Houston TX, 77002, Attn: James T. Grogan, Esq., Mack Wilson, Esq., Alexander Bongartz, Esq., and Derek Cash, Esq., proposed counsel for the Debtors, jamesgrogan@paulhastings.com, mackwilson@paulhastings.com, alexbongartz@paulhastings.com, derekcash@paulhastings.com; and (iii) Teneo Capital LLC, 280 Park Avenue, 4th Floor, New York, NY, 10017, Attn: Chris Wu, the Debtors' proposed investment banker, chris.wu@teneo.com (the foregoing entities in clauses (i) through (iii), the "<u>Bid Notice Parties</u>").

**B.     Sale Notice Parties**

1.  <u>Sale Notice Parties</u>.  The "<u>Sale Notice Parties</u>" include the following: (i) the Office of the United States Trustee, 844 N King St #2207, Wilmington, DE 19801, Attn: Joseph McMahon and John Schanne, joseph.mcmahon@usdoj.gov, john.schanne@usdoj.gov; (ii) proposed counsel to the Committee (a) McDermott Will & Emery LLP, 340 Madison Avenue, New York, NY 10173-1922, Attn. Timothy Walsh and Darren Azman (twwalsh@mwe.com, dazman@mwe.com) and (b) McDermott Will & Emery LLP, The Nemours Building, 1007 North Orange Street, 4th Floor, Wilmington, DE 19801, Attn. David Hurst (dhurst@mwe.com); (iii) the Internal Revenue Service; (iv) the United States Attorney for the District of Delaware; (v) all of the Debtors' known creditors (for whom identifying information and addresses are known to the Debtors); (vi) all parties who have filed a notice of appearance and request for service of papers in these cases pursuant to Bankruptcy Rule 2002; (vii) all persons and entities known by the Debtors to have expressed an interest in the Assets during the past 12 months and (viii) all other persons and entities as directed by the Court.

**C.     Objection Recipients**

1.  Sale Objections must be served on (i) the Debtors, 3 East Third Avenue, Suite 200, San Mateo, CA 94401; (ii) Paul Hastings LLP, 600 Travis Street, Fifty-

Eighth Floor, Houston TX, 77002, Attn: James T. Grogan, Esq., Mack Wilson, Esq., Alexander Bongartz, Esq., and Derek Cash, Esq., proposed counsel for the Debtors, jamesgrogan@paulhastings.com, mackwilson@paulhastings.com, alexbongartz@paulhastings.com, derekcash@paulhastings.com, (iii) Cousins Law LLC, Brandywine Plaza West, 1521 Concord Pike, Suite 301, Wilmington, DE 19803, Attn: Scott D. Cousins, proposed counsel for the Debtors, scott.cousins@cousins-law.com, (iv) the Office of the United States Trustee, 844 N. King St #2207, Wilmington, DE 19801, Attn: Joseph McMahon and John Schanne, joseph.mcmahon@usdoj.gov, john.schanne@usdoj.gov; (v) proposed counsel to the Committee (a) McDermott Will & Emery LLP, 340 Madison Avenue, New York, NY 10173-1922, Attn. Timothy Walsh and Darren Azman (twwalsh@mwe.com, dazman@mwe.com) and (b) McDermott Will & Emery LLP, The Nemours Building, 1007 North Orange Street, 4th Floor, Wilmington, DE 19801, Attn.  David Hurst (dhurst@mwe.com); (vi) the Internal Revenue Service; and (vii) the United States Attorney for the District of Delaware.

## XI.    Consent by the Committee

The Debtors will obtain the consent of the Committee (a) as set forth in the Bid Procedures and the Order and (b) to the extent not explicitly required by the Bid Procedures or the Order, in any event before making any material decision with respect to the Sale or Auction.

## **Exhibit 2**

**Sale Notice**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |

## NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, SALE OBJECTION, SALE HEARING AND OTHER DEADLINES RELATED THERETO

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1.      On December __, 2020, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an Order (the "Bidding Procedures Order") authorizing certain procedures (the "Bidding Procedures") to be used in connection with the sale(s) (the "Sale(s)") (including pursuant to section 363 of the Bankruptcy Code or a chapter 11 plan of reorganization) of some or all of the assets or equity interests of one or more of the above-captioned debtors in possession (collectively, the "Debtors") (such assets and equity interests, collectively, the "Assets").[2]

2.      Copies of the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge on the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent, Donlin Recano & Company, at https://www.donlinrecano.com/cred (the "DRC Website"). Copies of these documents are also available for inspection during regular business hours at the Office of the Clerk of the Court, located at 824 N. Market St, Wilmington, Delaware 19801, and may be viewed for a fee on the internet at the Court's website (https://www.deb.uscourts.gov/) by following the directions for accessing the ECF system on such website.

3.      On **February [3], 2021 at [_:_] [a/p].m. (prevailing Eastern Time),** a hearing (the "Sale Hearing") will take place before the Honorable John T. Dorsey, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market St, Wilmington, Delaware19801, where the Debtors will present for the Court's approval one or more bid(s) for the Assets (each, a "Successful Bid").

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566).  The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures.

4.      Pursuant to the Bidding Procedures Order, written preliminary indications of interest (each, a "Proposal") are to be submitted no later than **January 6, 2021 at 5:00 p.m. (prevailing Eastern Time)** (the "Proposal Deadline") to the following parties: (i) the Debtors, 3 East Third Avenue, Suite 200, San Mateo, CA 94401; (ii) Paul Hastings LLP, 600 Travis Street, Fifty-Eighth Floor, Houston TX, 77002, Attn: James T. Grogan, Esq., Mack Wilson, Esq., Alexander Bongartz, Esq., and Derek Cash, Esq., [proposed] counsel for the Debtors, jamesgrogan@paulhastings.com, mackwilson@paulhastings.com, alexbongartz@paulhastings.com, derekcash@paulhastings.com; and (iii) Teneo Capital LLC, 280 Park Avenue, 4th Floor, New York, NY, 10017, Attn: Chris Wu, the Debtors' proposed investment banker, chris.wu@teneo.com (the foregoing entities in clauses (i) through (iii), the "Bid Notice Parties").

5.      To be eligible to participate in the bidding process for any or all Assets, a Prospective Bidder must deliver to the Bid Notice Parties: (i) if the Prospective Bidder wishes access to information regarding the Assets, an executed confidentiality agreement, in form and substance satisfactory to the Debtors; (ii) a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the Prospective Bidder has a *bona fide* interest in purchasing the specified Assets; and (iii) preliminary proof of the Prospective Bidder's financial capacity to close the proposed Sale.

6.      Any party that intends to participate in the Auction (each, a "Prospective Bidder") must submit its final, binding bid (a "Final Bid") in writing to the Bid Notice Parties on or before **January 15, 2021 at 5:00 p.m. (prevailing Eastern Time)** (the "Final Bid Deadline"); provided that the Debtors, with the consent of the Committee, shall have the discretion to extend in writing the Final Bid Deadline for any Prospective Bidder. Any bid received after the Final Bid Deadline will not constitute a Qualified Bid (as such term is defined in the Bidding Procedures). Contemporaneously with the submission of its Final Bid, each Prospective Bidder must provide a Good Faith Deposit (as such term is defined in the Bidding Procedures) by wire transfer or certified check pursuant to delivery instructions to be provided by the Debtors prior to the Final Bid Deadline.

7.      The Debtors, with the consent of the Committee, will evaluate each Qualified Bid using any and all factors that the Debtors deem reasonably pertinent, including, without limitation: (i) the amount of the Purchase Price, including the form of consideration; (ii) the risks and timing associated with consummating the applicable Sale, (iii) the Assets included in or excluded from the Qualified Bid, including the Proposed Assumed Contracts, and (iv) the ability to obtain any and all necessary regulatory or other approvals for the proposed Sale.

8.      The Debtors, with the consent of the Committee, will make a determination regarding which Final Bid(s) qualify as Qualified Bid(s) and notify all Prospective Bidders whether they have been selected as Qualified Bidders prior to the Auction.

9.      If the Debtors receive more than one Qualified Bid for any of the Assets, the Debtors will conduct the Auction.  The Auction, if required, will be conducted at the offices of Paul Hastings LLP, 600 Travis Street, Fifty-Eighth Floor, Houston, Texas 77002 on **January 18, 2021, at a time to be determined,** or at such other time and location as designated by the

Debtors, provided that the Debtors may designate a telephonic or video-enabled platform in lieu of an in-person Auction.

10.     If the Debtors receive no more than one Qualified Bid with respect to any of the Assets, the Debtors may determine, with the consent of the Committee, not to hold an auction for such Assets and instead declare the applicable Qualified Bid as the Successful Bid for such Assets and request that the Court approve the applicable Purchase Agreement at the Sale Hearing.

11.     Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction and (ii) each Qualified Bid it submits at the Auction is a binding, good faith and bona fide offer to purchase the Assets identified in such bid.

12.     Pursuant to the Bidding Procedures Order, the Debtors may, as they deem necessary and appropriate in the prudent exercise of their business judgment, with the consent of the Committee execute one or more "stalking horse" agreements (each the "Stalking Horse Agreement") for any subset of the Assets of such Stalking Horse Agreement(s), including any bid protections that may be provided therein; *provided*, *however* that the Assets shall not include cryptocurrency without the consent of the Committee.

13.     Promptly after the conclusion of the Auction, the Debtors shall file with the Court, serve on the Sale Notice Parties (as defined in the Bidding Procedures Order) and cause to be published on the website maintained by Donlin Recano & Company, the Debtors' claims and noticing agent, at https://www.donlinrecano.com/cred (the "DRC Website"), the results of the Auction, which will include (i) a copy of all Successful Bid(s) and Backup Bid(s), if any, (ii) the identities of the Successful Bidder(s) and Backup Bidder(s), and (iii) a copy of the Purchase Agreements(s) of the Successful Bidder(s).

14.     Promptly after the conclusion of the Auction, the Debtors will (a) file with the Court, serve on the Sale Notice Parties, by email, and cause to be published on the DRC Website, (i) the Notice of the Proposed Assumed Contracts and (ii) each Successful Bidder's and Backup Bidder's proposed form of adequate assurance of future performance with respect to the relevant Proposed Assumed Contracts and (b) mail the Notice of Proposed Assumed Contracts to all relevant Counterparties.

15.     The Good Faith Deposits will be held by the Debtors in a non-interest-bearing escrow or trust account and will not become property of the Debtors' estates.  The Good Faith Deposits will be retained by the Debtors, notwithstanding the Court's approval of any Sale(s) for the applicable Assets, until no later than five (5) business days after the conclusion of the Auction, except for the Good Faith Deposit(s) of Successful Bidder(s) and Backup Bidder(s); provided that, if a Stalking Horse Bidder is not the Successful Bidder or Backup Bidder, its Good Faith Deposit will be returned to such Stalking Horse Bidder in accordance with the applicable Stalking Horse Agreement.  The Debtors will retain the Good Faith Deposits of Backup Bidders until the earlier of (i) five (5) business days after the closing of the Sale(s) of the applicable Assets and (ii) 60 days after the date of the Sale Hearing.

16.     At the closing of a Sale, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit.  If a Successful Bidder fails to consummate a Sale because of a breach that entitles the Debtors to terminate the applicable Purchase Agreement, then, the Debtors will be entitled to retain such Successful Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtors and their estates as a result of such breach or failure to perform.

17.     Each Successful Bid (including any Backup Bid that is subsequently deemed a Successful Bid) will be subject to approval by the Court.  The Sale Hearing will take place on **February [3], 2021 at [ : ] [a/p].m. (prevailing Eastern Time)** before the Honorable John T. Dorsey, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market St, Wilmington, Delaware 19801.

18.     At the Sale Hearing, the Debtors will seek entry of order(s) (each, a "Sale Order") approving, among other things, the Sale(s) of some or all of the Assets to the Successful Bidder(s). The Sale Hearing may be adjourned or rescheduled by the Debtors.

19.     The Debtors may reject at any time, before entry of the applicable Sale Order, any bid that, the Debtors determine, with the consent of the Committee is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors and their estates.

20.     Objections to a Sale, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code (each, a "Sale Objection"), or to entry of a Sale Order must (i) be in writing and specify the nature of such objection, (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court, and (iii) be filed with the Court and served on: (i) the Chambers of the Honorable John T. Dorsey, United States Bankruptcy Court for the District of Delaware, 824 N. Market St, Wilmington, DE 19801; (ii) the Debtors, 3 East Third Avenue, Suite 200, San Mateo, CA 94401; (iii) Paul Hastings LLP, 600 Travis Street, Fifty-Eighth Floor, Houston TX, 77002, Attn: James T. Grogan, Esq., Mack Wilson, Esq., Alexander Bongartz, Esq., and Derek Cash, Esq., proposed counsel for the Debtors, jamesgrogan@paulhastings.com, mackwilson@paulhastings.com, alexbongartz@paulhastings.com, derekcash@paulhastings.com (iv) Cousins Law LLC, Brandywine Plaza West, 1521 Concord Pike, Suite 301, Wilmington, DE 19803, Attn: Scott D. Cousins, proposed counsel for the Debtors, scott.cousins@cousins-law.com, (v) the Office of the United States Trustee, 844 N. King St #2207, Wilmington, DE 19801, Attn: Joseph McMahon and John Schanne, joseph.mcmahon@usdoj.gov, john.schanne@usdoj.gov; (vi) proposed counsel to the Committee (a) McDermott Will & Emery LLP, 340 Madison Avenue, New York, NY 10173-1922, Attn. Timothy Walsh and Darren Azman (twwalsh@mwe.com, dazman@mwe.com) and (b) McDermott Will & Emery LLP, The Nemours Building, 1007 North Orange Street, 4th Floor, Wilmington, DE 19801, Attn.  David Hurst (dhurst@mwe.com); (vii) the Internal Revenue Service; and (viii) the United States Attorney for the District of Delaware (collectively, the "Objection Recipients") by **January 27, 2021, at 5:00 p.m. (prevailing Eastern Time)**.

21.     All Sale Objections not resolved by the parties prior thereto will be heard at the Sale Hearing.  **THE FAILURE OF ANY PARTY TO TIMELY FILE AND SERVE A SALE**

**OBJECTION FOREVER WILL BAR SUCH PARTY FROM ASSERTING, AT THE APPLICABLE SALE HEARING OR THEREAFTER, ANY OBJECTION TO THE RELIEF REQUESTED IN THE MOTION, OR TO THE CONSUMMATION OF THE APPLICABLE SALE(S), INCLUDING THE TRANSFER OF THE ASSETS TO THE APPLICABLE SUCCESSFUL BIDDER(S), FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE.**

22.     If a Successful Bidder fails to consummate the approved Sale, a hearing to authorize the assumption and assignment of Proposed Assumed Contracts to the applicable Backup Bidder(s) will be held before the Court on no less than five (5) business days' notice, with objections due at least one (1) business day prior to such hearing, unless otherwise ordered by the Court.  For the avoidance of doubt, the scope of such hearing will be limited to issues relating to the adequate assurance of future performance by the applicable Backup Bidder(s).

23.     The Debtors may, in any manner consistent with applicable law, and with the consent of the Committee, modify the procedures and deadlines set forth herein (including, without limitation, extending the Final Bid Deadline, modifying the Qualified Bid requirements, modifying the procedures for conducting the Auction, rescheduling the Auction or adjourning the Sale Hearing) or adopt new rules, procedures and deadlines in order to, in their sole and reasonable discretion, maximize value for their estates; provided that the Debtors may not amend these Bidding Procedures or the bidding process to reduce their obligations to obtain the consent of the Committee without the consent of the Committee or further order of the Court.  All such modifications and additional rules will be communicated to each of the Sale Notice Parties, Prospective Bidders and Qualified Bidders; provided that, to the extent such modifications occur at the Auction, disclosure of such modifications may be limited to those in attendance at the Auction.

24.     This Notice is subject to the full terms and conditions set forth in the Bidding Procedures Order and the Bidding Procedures.  The Debtors reserve the right to, in their reasonable discretion, modify the Bidding Procedures at any time, including, without limitation, to extend the deadlines and proposed dates set forth therein, including the Final Bid Deadline, changing the date of the Auction, and adjourning and/or rescheduling the Sale Hearing; provided that the Debtors may not amend the Bidding Procedures to reduce or otherwise modify their obligations to obtain the consent of the Committee without the consent of the Committee or further Court Order.

25.     Copies of the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge on the DRC Website.  Copies of these documents are also available for inspection during regular business hours at the Office of the Clerk of the Court, located at 824 N. Market St, Wilmington, Delaware 19801, and may be viewed for a fee on the internet at the Court's website (https://www.deb.uscourts.gov/) by following the directions for accessing the ECF system on such website.

26.     Parties interested in receiving additional information about the Debtors, the Bidding Procedures, the Sale(s), the Assets, or the Auction may make requests to Teneo, the Debtors' proposed investment banker

Dated: December ___, 2020
      Wilmington, Delaware

Scott D. Cousins (No. 3079)
**COUSINS LAW LLC**
Brandywine Plaza West
1521 Concord Pike, Suite 301
Wilmington, Delaware 19803
*[Proposed] Co-Counsel to the Debtors*

**<u>Exhibit 3</u>**

**Notice of Proposed Assumed Contracts**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

## <u>NOTICE OF PROPOSED ASSUMED CONTRACTS</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1.    On December __, 2020, the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") entered an Order (the "<u>Bidding Procedures Order</u>") authorizing certain procedures (the "<u>Bidding Procedures</u>") to be used in connection with the sale(s) (the "<u>Sale(s)</u>") (including pursuant to section 363 of the Bankruptcy Code or a chapter 11 plan of reorganization) of some or all of the assets or equity interests of one or more of the above-captioned debtors in possession (collectively, the "<u>Debtors</u>") (such assets and equity interests, collectively, the "<u>Assets</u>").[2]

2.    On **February [3], 2021 at [_: ] [a/p].m. (prevailing Eastern Time)**, a hearing (the "<u>Sale Hearing</u>") will be held before the Honorable John T. Dorsey, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, at 824 N. Market St, Wilmington, Delaware 19801, where the Debtors will present for the Court's approval one or more bid(s) for the Assets (each, a "<u>Successful Bid</u>").

3.    In connection with the Sale(s), potential purchasers may wish to assume certain of the Debtors' executory contracts or unexpired leases (collectively, the "<u>Contracts</u>"). Pursuant to the Bidding Procedures Order, the Debtors hereby notify all counterparties to such Contracts that _____ [has/have] submitted the Successful Bid[s] (each, a "<u>Successful Bidder</u>") and that the Successful Bidder[s] [has/have] designated the Contracts on **<u>Schedule 1</u>** for assumption and assignment.  Schedule 1 lists for each such Contract the amount, if any, that the Debtors believe is required to be paid to the applicable Counterparty to cure any monetary defaults under such Contract pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code ("<u>Cure Amount</u>s").  **The inclusion of any Contract on Schedule 1 or any other notice served in connection with**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566).  The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures Order.

the Sale(s) is not a guarantee that such Contract ultimately will be assumed or assigned to any Successful Bidder.

4.     Any Counterparty that wishes to object to the assumption and assignment of its Contract must file its objection with the Court and serve it on the Objection Recipients by **January 27, 2021, at 5:00 p.m. (prevailing Eastern Time) (the "<u>Objection Deadline</u>").**

5.     Any Counterparty that wishes to object to the proposed Cure Amount with respect to its Contract (each, a "<u>Cure Objection</u>") must file with the Court and serve on the Objection Recipients its Cure Objection (which must state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof) by no later than the Objection Deadline.

6.     If the parties are unable to consensually resolve (with the consent of the Committee) any Cure Objection prior to the commencement of the Sale Hearing, the Court will make the determinations relating to such Cure Objection at or subsequent to the Sale Hearing; <u>provided</u> that the determination of whether a Cure Objection may be heard at the Sale Hearing is in the Debtors' and the Court's discretion.  An adjourned Cure Objection may be resolved after the closing of the applicable Sale if the relevant purchase agreement provides for the establishment of a cash reserve equal to the cure amount the objecting Counterparty reasonably believes is required (or as otherwise ordered by the Court).  Upon the Court's resolution of any Cure Objection, whether or not such resolution occurs prior to or after the closing of the applicable Sale, the Debtors or the applicable Successful Bidder, as applicable, will have the right to exclude the relevant Contract from the Assets being purchased.

7.     Upon resolution of a Cure Objection, provided that neither the Debtors nor the applicable Successful Bidder have determined to exclude the relevant Contract from the applicable Sale, and upon the payment of the applicable cure amount, if any, the Contract will be deemed assumed and assigned to the applicable Successful Bidder as of the closing date of the applicable Sale.

8.     **If a Counterparty fails to timely file and serve a Cure Objection, the Counterparty will be deemed to have consented to the Cure Amount set forth in this Notice of Proposed Assumed Contracts and forever will be barred from asserting any other cure amount against the Debtors, the applicable Successful Bidder, or their respective properties, and such Cure Amount will constitute the only amount necessary to cure outstanding monetary defaults under the applicable Contract in accordance with section 365(b) of the Bankruptcy Code, notwithstanding anything to the contrary in such Contract or any other document.**

9.     The Debtors have filed with the Court and published on the DRC Website each Successful Bidder's and Backup Bidder's proposed form of adequate assurance of future performance with respect to the relevant Proposed Assumed Contracts.  Any Counterparty that wishes to object to the proposed adequate assurance of future performance by the applicable Successful Bidder (each, an "<u>Adequate Assurance Objection</u>") has to file with the Court and serve on the Objection Recipients an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases thereof, including any appropriate documentation in support thereof, by no later than the Objection Deadline.

10.     If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, such objection and all issues of adequate assurance of future performance by the applicable Successful Bidder will be determined by the Court at the Sale Hearing.

11.     If a Counterparty fails to timely file and serve an Adequate Assurance Objection, such Counterparty will be deemed to have accepted the adequate assurance of future performance offered in connection with its Contract and consented to the assumption and assignment of such Contract (unless the Counterparty has filed a timely Cure Objection with respect thereto) and forever will be barred from asserting any objection with regard to such assumption and assignment or adequate assurance of future performance.  The applicable Successful Bidder will be deemed to have provided adequate assurance of future performance with respect to the applicable Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code, notwithstanding anything to the contrary in such Contract or any other document.

12.     The inclusion of any Contract on Schedule 1 or on any subsequently filed list(s) of the Proposed Assumed Contracts (collectively, the "Contract Notices") does not constitute or is deemed a determination or admission by the Debtors, the applicable Successful Bidder(s), or any other party in interest that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Amount is due (all rights with respect thereto being expressly reserved).

13.     The Debtors reserve the right to amend, modify or supplement the Contract Notices; provided that the deadline for any Counterparty added to an amended Contract Notice or whose Cure Amount is reduced thereby to file (a) a Cure Objection will be **5:00 p.m. (prevailing Eastern Time) on the date that is seven days** following service of the applicable amended Contract Notice and (b) an Adequate Assurance Objection by the earlier **of one business day following the service of the applicable amended Contract Notice or the date of the Sale Hearing**; provided, however, that if such date is after the date of the Sale Hearing, the Counterparty need not file a written Adequate Assurance Objection and may instead make its Adequate Assurance Objection on the record at the Sale Hearing.

14.     The inclusion of any Proposed Assumed Contract in any Contract Notice will be without prejudice to the Debtors' or any Successful Bidder's rights to subsequently exclude such Contract from assumption and assignment prior to the closing of the applicable Sale.

15.     The Debtors' assumption and assignment of a Contract is subject to approval by the Court and consummation of the relevant Sale.  Absent entry of a Sale Order approving the assumption and assignment of a Contract and the consummation of the relevant Sale, the Contract will be neither assumed nor assigned.

16.     Copies of the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge on the DRC Website.  Copies of these documents are also available for inspection during regular business hours at the Office of the Clerk of the Court, 824 N. Market St, Wilmington, Delaware 19801, and may be viewed for a fee on the internet at the Court's website (https://www.deb.uscourts.gov/) by following the directions for accessing the ECF system on such website.

Dated: _____ ___, 2020
       Wilmington, Delaware

                    Scott D. Cousins (No. 3079)
                    **COUSINS LAW LLC**
                    Brandywine Plaza West
                    1521 Concord Pike, Suite 301
                    Wilmington, Delaware 19803

                    *[Proposed] Co-Counsel to the Debtors*

4

**Schedule 1**

| Counterparty | Counterparty Address | Title/Description of Contract/Lease | Cure Amount |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |