**Exhibit A**

Dekrypt Plaintiffs' November 13, 2020, Complaint

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| DEKRYPT CAPITAL, LLC, a Delaware company, DEKRYPT MASTER FUND L.P., a British Virgin Islands company, DEKRYPT VENTURES I L.P., a British Virgin Islands company, ARRINGTON XRP CAPITAL CAYMAN SPV, LTD., a Cayman Islands company, and ARRINGTON CAPITAL MANAGEMENT, LLC, a Washington company,<br><br>Plaintiffs,<br><br>v.<br><br>UPHOLD LTD., a Cayman Islands exempted limited liability company, UPHOLD, INC., a Washington corporation, UPHOLD HQ INC., a South Carolina corporation, JUANPABLO THIERIOT, individually and the marital community comprised thereof, and DANIEL SCHATT, individually and the marital community comprised thereof,<br><br>Defendants. | No.<br><br>AMENDED COMPLAINT FOR DAMAGES |

Plaintiffs Dekrypt Capital, LLC ("Dekrypt Capital"), Dekrypt Master Fund L.P. ("Dekrypt MF"), Dekrypt Ventures I L.P. ("Dekrypt Ventures") (collectively, "Dekrypt"), Arrington XRP Capital Cayman SPV, Ltd. ("AXRP"), and Arrington Capital Management, LLC ("ACM") (collectively, "Plaintiffs"), by way of complaint against

COMPLAINT FOR DAMAGES – Page 1

Defendants Uphold Ltd., Uphold, Inc., Uphold HQ Inc., ("Uphold HQ"),[1] Juan Pablo Thieriot ("Thieriot"), and Daniel Schatt ("Schatt") (collectively "Defendants"), allege as follows:

Plaintiffs file this amended complaint after serving Defendants pursuant to CR 3. The original complaint included Cred (US) LLC ("Cred US") as a defendant. Since service of the original complaint, Cred (US) filed for bankruptcy protection. As such, rather than perfecting service against Cred (US) by filing the original complaint, Plaintiffs exercise their right under CR 15 to amend the complaint so as to remove Cred (US) as a defendant.

## I.   INTRODUCTION

1.1   Defendants promoted, offered, and sold unregistered and non-exempt securities, called Universal Protocol Tokens ("UPT"), in the United States and in violation of federal and state securities laws. Not only did Defendants fail to register the UPT tokens or qualify for an exemption to registration, as required under both federal and state law, but they also misrepresented and omitted highly material information to investors regarding the token sale. Plaintiffs purchased UPT, and bring claims to recover the consideration they paid for UPT tokens, together with interest thereon, as well as damages, attorneys' fees, costs, and other relief.

1.2   A digital token is a type of digital asset that exists on a "blockchain," which is essentially a decentralized digital ledger that records transactions. Various digital assets can reside on blockchains, including cryptocurrencies, such as Bitcoin.

1.3   Certain of these digital tokens are classified as "utility tokens" and are associated with particular projects. A utility token's primary purpose is to allow the

---

[1] Except as otherwise noted, Uphold Ltd., Uphold, Inc., and Uphold HQ Inc. are collectively referred to herein as "Uphold."

COMPLAINT FOR DAMAGES – Page 2

holder to use or access the associated project. For example, a nightclub might issue utility tokens to participants in its membership program, who can then use those tokens to gain access to special events held at the nightclub. A utility token necessarily presumes a functional network (in this example, a membership program connected to an operating nightclub) on which the token can be used (i.e., a utility).

1.4    Other tokens are speculative, and are referred to as "security tokens." Like traditional securities such as stocks, security tokens essentially represent one's investment in a project with the expectation of future profits derived from the efforts of others. Purchase of these tokens provides funds to the startup, but do not give the holder ownership in that startup. Rather, investors purchase these tokens as an investment. They anticipate that the value of the tokens will increase in the future based upon the managerial efforts of the issuer and those developing the project. Because such "security tokens" are properly classified as securities under federal and state law, the issuers of these tokens are required to file registration statements with the United States Securities and Exchange Commission ("SEC") and applicable state authorities. Defendants, however, failed to do so in connection with the UPT tokens.

1.5    In 2018 through 2019, Defendants promoted and Uphold sold UPT tokens to investors in the United States through a series of Token Sale Agreements ("TSA"). Although UPT was a security, it was not registered as a security with the SEC or relevant state authorities, and did not qualify for an exemption from registration.

1.6    Additionally, in promoting, offering, and selling UPT tokens, Uphold and its CEO, Thieriot, along with Schatt, made numerous misrepresentations that induced investors to purchase the unregistered and non-exempt securities. For example, Defendants represented that Uphold was raising over $20 million through the UPT token sale, and Thieriot "confirmed" in writing that the token sale would, in fact, generate $28 million. Through these misrepresentations and others, Defendants led investors to believe

COMPLAINT FOR DAMAGES – Page 3

that their investments would be part of a $20 million+ capital raise involving many investors, and that those funds would be used "to develop and launch a viable Platform and subsequently to commercialize it to the point users can realize utility and value." In reality, Uphold raised around $5 million from only four investors, including Plaintiffs, and spent the majority of those funds not "to develop and launch a viable Platform and subsequently to commercialize it to the point users can realize utility and value," but instead on preexisting legal fees and related regulatory expenses.

1.7   The UPT token offering constituted the sale of at least $5 million in unregistered and non-exempt securities. By selling these unregistered and non-exempt UPT tokens to investors, Defendants illegally reaped millions of dollars in profits in violation of state securities laws, and also did so based upon numerous misstatements and omissions of material fact. Plaintiffs bring this action to redress those serious wrongs.

## II.   PARTIES

2.1   Plaintiff Arrington XRP Capital Cayman SPV, Ltd. ("AXRP") is a Cayman Islands corporation. AXRP is an investment fund managed and operated by Arrington Capital Management, LLC ("ACM").

2.2   ACM is a Washington limited liability company whose principal place of business is Seattle, Washington, and does business in King County, Washington.

2.3   Plaintiff Dekrypt Capital, LLC is a Delaware limited liability company whose principal place of business is San Francisco, California.

2.4   Plaintiff Dekrypt Master Fund L.P. is a British Virgin Islands limited partnership whose principal place of business is San Francisco, California.

2.5   Plaintiff Dekrypt Ventures I L.P. is a British Virgin Islands limited partnership whose principal place of business is San Francisco, California.

2.6   On information and belief, Defendant Uphold Ltd. is a Cayman Islands exempted limited liability company whose principal place of business is Grand Cayman,

COMPLAINT FOR DAMAGES – Page 4

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Cayman Islands. On information and belief, Uphold Ltd. is a subsidiary and/or affiliate of Uphold HQ and Uphold, Inc.

2.7    Uphold Inc. is a Washington corporation doing business in King County, Washington.

2.8    On information and belief, Defendant Uphold HQ is a South Carolina corporation whose principal place of business is in Larkspur, California, and does business in King County, Washington.

2.9    On information and belief, Defendant Juan Pablo Thieriot is an individual residing in San Francisco County, California.

2.10    On information and belief, Defendant Daniel Schatt is an individual residing in San Mateo County, California.

### III.    JURISDICTION AND VENUE

3.1    This Court has jurisdiction over the subject matter of this action pursuant to RCW 2.08.010.

3.2    Venue properly lies in King County by virtue of RCW 4.12.010 and RCW 4.12.020.

### IV.    FACTS

**A.    Blockchain Technology, Cryptocurrencies, and ICOs**

4.1    A blockchain is a form of a digital ledger maintained by a distributed network of computers, rather than a single central party. Participants in the network—called "nodes"—broadcast transactions to the network and the nodes validate the transactions. Computers on the network aggregate valid transactions into a "block" (i.e., a group of transactions) and write the block into the ledger. Through the use of cryptography, each block relates back to the previous block, which in turn forms an interconnected chain (hence, the term "blockchain"). The end result is that data written to

COMPLAINT FOR DAMAGES – Page 5

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

the blockchain is, as a practical matter, immutable—that is, it cannot be manipulated or deleted.

4.2     A cryptocurrency is a digital asset that implements blockchain technology. Cryptocurrencies rely upon a variety of cryptographic principles to secure transactions, control the creation of additional units, and verify the transfer of the underlying digital asset.  There are many blockchain-based cryptocurrencies currently in existence.  Some cryptocurrencies—such as Bitcoin and XRP—are designed as general-purpose mediums-of-exchange, while others are designed for use within a specific ecosystem or platform.

4.3     Cryptocurrencies are often created and disseminated in the form of virtual "tokens" or "coins."  A token or coin may entitle its holders to certain rights related to an underlying venture, such as right to profits, shares of assets, rights to use certain services provided by the issuer, and/or voting rights.

4.4     Seeking to capitalize on growing enthusiasm for cryptocurrencies, many entrepreneurs sought to raise funds through the sale of tokens.  However, many of these issuers, including Uphold, improperly decided not to register their securities offerings and/or qualify for an exemption.

**B.     Uphold and its Related Entities and Individuals**

4.5     Uphold is a cryptocurrency and blockchain company that seeks to provide financial services, including foreign exchange and cross-border remittances, of various currencies and cryptocurrencies.  Uphold, Inc. is a Washington corporation formed on January 13, 2014.  On December 15, 2014, Uphold HQ registered to do business in this State, and identified the Corporate Service Company as its registered agent for service of process.  Thieriot is a governor of both Uphold, Inc. and Uphold HQ.

4.6     On information and belief, Uphold Ltd. is a subsidiary and/or affiliate of Uphold, Inc. and Uphold HQ.

COMPLAINT FOR DAMAGES – Page 6

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

4.7     At all relevant times, Thieriot has been the CEO of Uphold, and, on information and belief, has acted as an officer, employee or agent of all Uphold entities.

**C.     The Uphold Token Sale**

4.10    In 2018, Defendants represented that they had set out to universalize the process of trading cryptocurrencies by "build[ing] the Universal Protocol Platform ('Platform'), a digital reserve ecosystem that provides interoperability for blockchain-based assets, allowing instant and seamless transfers of units of value across decentralized networks."

4.11    To raise money for that effort, Defendants began promoting a sale of UPT tokens to investors, including Plaintiffs.  Acting individually and as an agent of the Uphold entities, Thieriot represented to Plaintiffs that Uphold was raising more than $20 million for this project, and subsequently "confirmed" in writing that Uphold was "raising $28m."  Schatt made similar representations to Plaintiffs.

4.12    In the summer of 2018, Uphold began selling UPT securities to investors, including to Plaintiffs, through a TSA.  A sample TSA is attached hereto as **Exhibit A**.

4.13    The TSA also provides that "UPT is the native token of the Universal Protocol Platform ecosystem.  UPT holders are buying discounted access to any tokenized asset issued through the Universal Protocol Platform."  At the time, however, no tokenized assets were issued (or even capable of being issued) through the Universal Protocol Platform because the Universal Protocol Platform did not yet exist.

4.14    As such, the UPT tokens had no utility at the time they were issued. Uphold acknowledged that fact in the TSA:  "The Platform has not yet been fully developed by the Project Group and it will require significant capital funding, expertise of the Project Group's management, time, and effort in order to develop and successfully launch the ecosystem."

COMPLAINT FOR DAMAGES – Page 7

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

4.15    Indeed, Defendants represented to investors that the proceeds of the token sale – i.e., their investments – would be used "to develop and launch a viable Platform and subsequently to commercialize it to the point users can realize utility and value."

4.16    On August 3, 2018, Uphold and AXRP, acting through its managing entity, ACM, executed a TSA. Pursuant to the TSA, AXRP agreed to transfer $2 million to Uphold and, in exchange, Uphold promised to transfer 250,000,000.00 UPT tokens to AXRP at the price of $0.008 per token.

4.17    On September 21, 2018, Uphold and Dekrypt MF, acting through its general partner, Dekrypt Capital, executed a TSA. Pursuant to the TSA, Dekrypt MF agreed to transfer $1 million to Uphold and, in exchange, Uphold promised to transfer 125,000,000 UPT tokens to Dekrypt MF.

4.18    On March 1, 2019, Uphold and Dekrypt Ventures executed a TSA. Pursuant to the TSA, Dekrypt Ventures agreed to transfer $500,000 to Uphold and, in exchange, Uphold promised to transfer 62,500,000 UPT tokens to Dekrypt Ventures.

4.19    Uphold's CEO, Thieriot, and Schatt negotiated the UPT token sale and TSAs with Plaintiffs, and Thieriot signed the relevant TSAs on behalf of Uphold. Under the TSAs, Uphold purported to act as "proxy" for an unformed company that would be incorporated by Defendants at a future date.

4.20    Upon information and belief, Uphold only raised approximately $5 million through the UPT token sale, and used the majority of those funds not "to develop and launch a viable Platform and subsequently to commercialize it to the point users can realize utility and value," as represented by Defendants, but instead on preexisting legal fees and related regulatory expenses.

COMPLAINT FOR DAMAGES – Page 8

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**D.     The UPT Tokens Sold to Plaintiffs Were Securities**

4.21    Throughout the UPT token sale, as described above, Uphold proceeded as if the UPT tokens were *not* securities – for example, by representing as such in the TSA and by failing to file a registration statement with the SEC.

4.22    However, under the *Howey* test (as recognized and applied by state and federal courts), the UPT tokens are securities because, among other reasons, they constituted an investment of money in a common enterprise with a reasonable expectation of profits to be derived from the efforts of others.

4.23    As discussed further below, Defendants did not satisfy these requirements.  Indeed, the UPT tokens and the TSAs through which they were transacted clearly constituted an offer and sale of unregistered and non-exempt securities.

4.24    First, Plaintiffs invested money or other valuable consideration to purchase the UPT tokens.

4.25    Second, Plaintiffs were passive participants in the UPT token sale, and the profits of each Plaintiff, as an investor, was intertwined with those of both Uphold and of other investors.  Upon information and belief, Uphold and/or entities and individuals under its control were responsible for supporting UPT, Uphold pooled investors' assets, and Uphold ultimately controlled those assets.  On information and belief, Uphold also retained a significant stake in UPT, thus sharing in the profits and risk of the venture.

4.26    Third, Plaintiffs made their investments with a reasonable expectation of profits.  And, as expressly acknowledged in the TSA, UPT tokens were sold to investors prior to development of a network or "ecosystem" on which they could be used – i.e., when the tokens had no utility.

4.27    Fourth, Plaintiffs, as purchasers of pre-functional tokens, such as UPT, necessarily rely on the managerial efforts of others to realize value from their investments.

COMPLAINT FOR DAMAGES – Page 9

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

The success of these managerial efforts in developing the networks on which these tokens will operate is the primary factor in their price. The UPT tokens were (and are) securities because, among other reasons, profits from UPT would be (and still are) derived primarily from the managerial efforts of Defendants in developing the associated network on which UPT would function.

4.28   In sum, Plaintiffs who bought UPT tokens invested money or other valuable consideration in a common enterprise—Uphold's Universal Protocol Platform. Plaintiffs had a reasonable expectation of profit based upon Uphold's efforts. The UPT tokens were securities.

**E.   The UPT Tokens Were Never Registered**

4.29   The UPT token sale was not registered with the Securities Exchange Commission, any federal agency responsible for overseeing securities offerings, the Washington State Department of Financial Institutions, or any Washington state agency responsible for overseeing securities offerings.

**F.   Defendants Subsequently Rescind a UPT Token Sale to Non-Party FBG**

4.30   On information and belief, only one outside party other than Plaintiffs – an entity called FBG – purchased UPT tokens.[2]

4.31   On information and belief, FBG agreed to transfer $200,000 to Uphold and, in exchange, Uphold promised to transfer 2,500,000 UPT tokens to FBG at the price of $0.008 per token.

4.32   On information and belief, Defendants subsequently caused Uphold to rescind the FBG token sale, but did not file a registration statement in connection with that transaction, nor did Defendants inform Plaintiffs of the transaction.

---

[2] On information and belief, Cred, a related-party, also purchased approximately $1 million in UPT tokens.

COMPLAINT FOR DAMAGES – Page 10

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

## V. FIRST CAUSE OF ACTION
**(Violations of Washington State Securities Act, RCW 21.20, et seq.)**
**(RCW 21.20.140 Claim Against Uphold Ltd.; RCW 21.20.010 Claim Against All Defendants)**

5.1   Plaintiffs repeat and reallege the allegations set forth the prior paragraphs of the Complaint as if fully set forth herein.

5.2   UPT tokens are securities within the meaning of RCW 21.20.005(17)(a).

5.3   Defendants' offer to sell and/or sale of securities to Plaintiffs violated various provisions of the Washington State Securities Act.

5.4   By engaging in the conduct described above, Uphold Ltd. violated RCW 21.20.140 by offering to sell and/or selling UPT securities to Plaintiffs that were not registered by coordination or qualification under RCW 21.20.140, and were not exempt from the statute.

5.5   In addition, Defendants violated RCW 21.20.010 by making untrue statements of material fact and/or omitting to state material facts regarding the UPT securities, as described herein. Defendants' misstatements and omissions were part of a device, scheme, and/or artifice to defraud or mislead Plaintiffs in connection with the offer and sale of said securities. Defendants' misrepresentations were material and related to Plaintiffs' purchase of the UPT securities, as set forth herein.

5.6   As a direct and proximate cause of the foregoing conduct, Plaintiffs have been damaged as specified herein.

5.7   Under RCW 21.20.430, Plaintiffs are entitled to rescission of the TSA, together with interest at eight percent per annum, costs, and reasonable attorneys' fees.

## VI. SECOND CAUSE OF ACTION
**(Control Person Liability Against Individual Defendants, Uphold, Inc., and Uphold HQ, Under RCW 21.20.430(3))**

6.1   Plaintiffs repeat and reallege the allegations set forth the prior paragraphs of the Complaint as if fully set forth herein.

COMPLAINT FOR DAMAGES – Page 11

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

6.2   Each of the Individual Defendants, Uphold, Inc., and Uphold HQ, by virtue of his or its office, stock ownership, agency, agreements or understandings, and specific acts, at the time of the wrongs alleged herein, had the power and authority to direct the management and activities of Uphold Ltd. and its employees, and to cause Uphold Ltd. to engage in the wrongful conduct complained of herein.  Each Individual Defendant, Uphold, Inc. and Uphold HQ, had and exercised the power and influence to cause the unlawful solicitation of unregistered and non-exempt UPT tokens.

6.3   The Individual Defendants, Uphold, Inc., and Uphold HQ, had and have the power to direct or cause the direction of the management and policies of Uphold Ltd.

6.4   The Individual Defendants, Uphold, Inc., and Uphold HQ, separately or together, jointly participated in, and/or aided and abetted, Uphold Ltd.'s solicitation of securities.

6.5   By virtue of the conduct alleged herein, the Individual Defendants, Uphold, Inc., and Uphold HQ are jointly and severally liable with and to the same extent as Uphold Ltd. for the wrongful conduct complained of herein, as set forth in RCW 21.20.430(3).

### VII.   THIRD CAUSE OF ACTION
### (Negligent Misrepresentation)
### (All Defendants)

7.1   Plaintiffs repeat and reallege the allegations set forth the prior paragraphs of the Complaint as if fully set forth herein.

7.2   In the course of promoting a sale of UPT tokens to investors, Defendants represented, among other things, that they were raising more than $20 million for their project and that the proceeds of their token sale would be used "to develop and launch a viable Platform and subsequently to commercialize it to the point users can realize utility and value," and omitted material information necessary to make those representations not misleading.

COMPLAINT FOR DAMAGES – Page 12

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

7.3 Defendants' misrepresentations and omissions were inaccurate.

7.4 Defendants knew or should have known that said misrepresentations and omissions were supplied to Plaintiffs in connection with their purchase of UPT tokens under the TSAs.

7.5 Defendants' misrepresentations and omissions were material.

7.6 Defendants acted negligently in communicating said misrepresentations and omissions to Plaintiffs.

7.7 Plaintiffs reasonably relied on Defendants' misrepresentations and omissions.

7.8 As a direct and proximate result of the foregoing conduct, Plaintiffs have been damaged in an amount to be determined at trial, but in no event less than $3,500,000.

## VIII. RESERVATION OF RIGHTS

8.1 Plaintiffs respectfully reserve the right to amend and supplement this Complaint.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment to be entered against Defendants, jointly and severally, as follows:

A. An award of all damages suffered by Plaintiffs in amounts to be proven at trial

B. An award of all Plaintiffs' reasonable attorneys' fees, costs, and all other expenses, as required under RCW 21.20.430, and as otherwise permitted by law or in equity;

C. Rescission of Plaintiffs' TSAs in connection with the UPT token sale;

D. Pre-judgment and post-judgment interest, to the maximum extent allowed by law; and

E. Such other relief as the Court deems just and proper.

COMPLAINT FOR DAMAGES – Page 13

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

DATED this 13th day of November, 2020.

McNAUL EBEL NAWROT & HELGREN PLLC

By: *s/ Timothy B. Fitzgerald*
    Timothy B. Fitzgerald, WSBA No. 45103
    Charles Wittmann-Todd, WSBA No. 54229
    Ai-Li Chiong-Martinson, WSBA No. 53359
    600 University Street, Suite 2700
    Seattle, Washington 98101
    Tel:    (206) 467-1816
    Fax:   (206) 624-5128
    Email:  tfitzgerald@mcnaul.com
            cwittmanntodd@mcnaul.com
            achiongmartinson@mcnaul.com

*Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES – Page 14

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816