## Exhibit B

**Plan Support Agreement**

## B<small>INDING</small> P<small>LAN</small> S<small>UPPORT</small> A<small>GREEMENT</small> T<small>ERM</small> S<small>HEET</small>

This Binding Plan Support Agreement Term Sheet (the "Term Sheet"), dated December 14, 2020, sets forth the material terms of a plan support agreement between (a) Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC (collectively, the "Debtors") and (b) the Official Committee of Unsecured Creditors appointed in the Debtors' Chapter 11 Cases (as defined below) (the "Committee" and, together with the Debtors, the "PSA Parties").

The PSA Parties hereby agree that the terms set forth in this Term Sheet shall be binding and enforceable effective as of the date hereof. During the Support Period (as defined below), the PSA Parties shall take all necessary or appropriate actions reasonably required to more fully memorialize the transactions and arrangements effectuated hereby, including entering into the Definitive Documents (as defined below).

**THIS TERM SHEET DOES NOT CONSTITUTE AN OFFER OF SECURITIES OR A SOLICITATION OF THE ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN FOR PURPOSES OF SECTIONS 1125 AND 1126 OF TITLE 11 OF THE UNITED STATES CODE (THE "BANKRUPTCY CODE"). ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.**

**THIS TERM SHEET CONTAINS A SERIES OF ASSUMPTIONS, COMPROMISES AND SETTLEMENTS OF ISSUES AND DISPUTES THAT WILL BE RESOLVED IN CONNECTION WITH A POTENTIAL SALE PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND CONFIRMATION OF A CHAPTER 11 PLAN. ACCORDINGLY, THIS TERM SHEET IS PROTECTED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE, THE ABSOLUTE MEDIATION PRIVILEGE, AND ANY OTHER APPLICABLE STATUTES OR DOCTRINES PROHIBITING THE USE OR DISCLOSURE OF CONFIDENTIAL SETTLEMENT DISCUSSIONS. THIS TERM SHEET IS SUBJECT TO ALL EXISTING CONFIDENTIALITY AGREEMENTS.**

CRED INC.
PLAN SUPPORT AGREEMENT TERM SHEET

## I. Plan Support Agreement

| | |
|---|---|
| **Overview** | On November 7, 2020, the Debtors commenced chapter 11 bankruptcy cases (the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Chapter 11 Cases have been consolidated for procedural purposes and are being jointly administered under the case *Cred Inc.*, Case No. 20-12836 (JTD) (Bankr. D. Del.). The Restructuring Transaction (as defined below) will be consummated through the Chapter 11 Cases. |
| | The Term Sheet contemplates the wind-down of the Debtors through a potential sale (the "In-Court Sale") of certain of the Debtors' assets pursuant to Bankruptcy Code sections 105(a), 363(b), (f), (k) and (m), and 365, followed by a chapter 11 plan of liquidation (the "Plan") to be confirmed by the Bankruptcy Court. The Plan will provide for (i) distribution of the net proceeds realized from the In-Court Sale as provided herein, and (ii)(x) through the Cred Liquidation Trust (as defined below), the liquidation and distribution of proceeds from the claims, causes of action and avoidance actions and other assets included therein, net of any costs of liquidation or distribution, and (y) the funding of such wind-down efforts (collectively, the "Restructuring Transaction"). |
| **Support Period** | "Support Period" means the period commencing on the date of execution of the Plan Support Agreement (the "PSA") and ending on the earliest of (i) the date on which the Debtors' confirmed Plan becomes effective (the "Effective Date") and (ii) the date on which the PSA is terminated according to its terms. |
| **Milestones** | The Restructuring Transaction shall be implemented in accordance with the following case milestones (the "Milestones") (unless waived by the Committee in its sole discretion)[1], and the Debtors shall cooperate and use commercially reasonable efforts to confirm and effectuate the Plan as soon as practicable:<br><br>• No later than December 16, 2020<br>    o File motion seeking the Bankruptcy Court's approval of the Debtors' entry into the PSA and/or this Term Sheet<br>• No later than December 31, 2020<br>    o File motion seeking the Bankruptcy Court's approval of the Disclosure Statement (as defined below) and Solicitation Materials (as defined below) |

---

[1] All dates and deadlines listed herein are subject to extension by mutual agreement of the Debtors and the Committee without Court approval.

| | |
|---|---|
| |   ○  Obtain entry of an order approving bidding procedures for the In-Court Sale<br><br>  ○  Obtain entry of an order authorizing the Debtors to enter into the PSA and/or this Term Sheet<br><br>• No later than January 7, 2021<br><br>  ○  File the Debtors' schedules and statements of financial affairs<br><br>• No later than January 29, 2021<br><br>  ○  Obtain entry of an order approving the Disclosure Statement<br><br>  ○  Obtain entry of an order by the Bankruptcy Court scheduling a hearing on the Plan and an objection deadline with respect thereto, or<br><br>  ○  Seek interim approval of a combined Plan and Disclosure Statement under Local Bankruptcy Rule 3017-2, and schedule a combined hearing on final approval of the Disclosure Statement and Confirmation of the Plan.<br><br>• No later than March 17, 2021<br><br>  ○  Entry of an order confirming the Plan<br><br>  ○  Obtain entry of an order approving the In-Court Sale, if applicable<br><br>• No later than March 31, 2021– The Effective Date of the Plan |
| **Estate Causes of Action** | The Debtors will cooperate with the Committee, including the production of documents, in connection with the Committee's investigation of claims and causes of action that the Debtors and their estates could potentially assert against any party, including all causes of action arising under chapter 5 of the Bankruptcy Code (each, a "<u>Cause of Action</u>" and collectively, the "<u>Causes of Action</u>").<br><br>The Debtors hereby consent, subject to Bankruptcy Court approval, to the Committee having derivative standing to pursue all Causes of Action against any current or prior insider, affiliate, or employee of any Debtor. Upon reasonable request by the Committee, the Debtors will grant the Committee derivative standing, subject to Bankruptcy Court approval, to pursue any other Cause of Action on behalf of the Debtors' estates that the Committee in good faith, and after consultation with the Debtors, believes must be pursued prior to the Effective Date of the Plan because of exigent circumstances, but only if the Debtors' estates have sufficient funds to pursue such Cause of Action.<br><br>The Debtors will consult with the Committee prior to asserting or commencing any Cause of Action. The Debtors will not commence any Cause of Action without Committee consent unless the Debtors, in good faith and in consultation with the Committee, believe such Cause of Action must be pursued prior to the Effective Date of the Plan because of exigent circumstances, but only if the Debtors' estates have sufficient funds to pursue |

3

| | |
|---|---|
| | such Cause of Action. If such a determination is made by the Debtors, then the Debtors and the Committee will in good faith determine whether it is appropriate to grant the Committee derivative standing to pursue such Cause of Action on behalf of the Debtors' estates.<br><br>For the avoidance of doubt, the Debtors will not compromise, resolve, or settle any Cause of Action without the Committee's consent.<br><br>Following confirmation of the Plan, and pursuant to the Plan's terms, all Causes of Action will be transferred to the Cred Liquidation Trust for prosecution by the Liquidation Trustee (as defined below). |
| **Budget and Reporting** | The Debtors' use of cash shall be subject to (and limited by) a 13-week cash flow forecast commencing on the date hereof, which forecast shall include an itemized list of expenses to be incurred during each week along with information sufficient to denote the purpose of such expenses and shall be in form and substance acceptable to the Committee (the "Approved Budget," a copy of which is attached as Exhibit A to this Term Sheet) and shall, at a minimum, contain:<br><br>(A) operating receipts:<br><br>    (i) redemption from third-party asset managers;<br><br>    (ii) interest paid on loans to moKredit/Elevar;<br><br>    (iii) return of principal on or net proceeds of sale of moKredit loan;<br><br>    (iv) net proceeds of sales of cryptocurrency;<br><br>    (vi) insurance proceeds;<br><br>    (vii) collection of accounts receivable;<br><br>    (viii) all other operating receipts<br><br>(B) non-operating receipts:<br><br>    (i) draws on debtor-in-possession financing facility, if any<br><br>    (ii) all other non-operating receipts<br><br>(C) operating outflows:<br><br>    (i) payroll, including taxes and benefits;<br><br>    (ii) contractor payments;<br><br>    (iii) insurance premiums;<br><br>    (iv) taxes; |

|  | (v) rent; |
|---|---|
|  | (vi) payment of accounts payable; |
|  | (vii) all other operating outflows |
|  | (D) non-operating outflows: |
|  | (i) Debtor's professionals; |
|  | (ii) McDermott, Will & Emery LLP; |
|  | (iii) Dundon Advisers, LLC; |
|  | (iv) U.S. Trustee fees; |
|  | (v) interest paid on debtor-in-possession financing facility, if any; |
|  | (vi) principal paid on debtor-in-possession financing facility, if any; and |
|  | (vii) other non-operating outflows. |
|  | (F) beginning cash |
|  | (G) ending cash |
|  | (H) accrued post-petition payables |
|  | (I) liquid cryptocurrency (Bitcoin, Ether and Ripple) expressed in dollar value and number of coins |
|  | (J) key assets, including: |
|  | (i) assets held by third-party asset managers or custodians; and |
|  | (ii) illiquid cryptocurrency (everything excluding Bitcoin, Ether and Ripple), expressed in dollar value and number coins |
|  | (K) calculated values based on the above including: |
|  | (i) operating cash flow (total operating receipts less total operating outflows) |
|  | (ii) cash flow (all receipts less all outflows) |
|  | (iii) liquidity (sum of ending cash, dollar value of liquid cryptocurrency, and availability under debtor-in-possession financing facility, if any) |
|  | (each, a "<u>Reporting Category</u>"). |

| | |
|---|---|
| | By no later than 12:00 pm ET on the second business day of each week, commencing with the first full week after the date hereof (each, a "Reporting Date"), the Debtors shall provide to the Committee an updated 13-week cash flow forecast, containing line items of sufficient detail to reflect the Debtors' projected cash receipts and disbursements for such 13-week period on a weekly basis (the "13-Week Forecast"). Each 13-Week Forecast shall be acceptable to the Committee, and upon acceptance by the Debtors, such 13-Week Forecast shall become the new Approved Budget, and promptly after the Committee's consent of the new Approved Budget, the Debtors shall deliver the new Approved Budget, together with any amendments or modifications thereto approved by the Committee and its counsel. In the event that the Committee and the Debtors do not agree to an updated Approved Budget, the Approved Budget shall be the then-existing Approved Budget or such Approved Budget as may be approved by the Bankruptcy Court after a hearing.<br><br>On each Reporting Date, the Debtors shall deliver to the Committee a variance report (each, a "Variance Report") showing comparisons of actual results for each line item against such line item in the Approved Budget. Each Variance Report shall indicate whether there are any adverse variances that exceed the allowed variances, which means, in each case measured on a cumulative basis for each week and for the period from the date hereof, (x) up to 15.0% of each Reporting Category, or (y) up to 10.0% in the aggregate for all cash receipts and cash disbursements (in either case, a "Permitted Variance").<br><br>The Debtors shall also deliver to the Committee the following:<br><br>(i) on each Reporting Date, a summary of all assets under management (the "Assets Under Management Report") and a detailed list of each crypto-currency held (the "Crypto-Currency Summary Report") ;<br><br>(ii) on each Reporting Date, a report setting forth for the most recent 13-Week Forecast, a computation of receipts and expenses set forth in such 13-Week Forecast broken down by Reporting Category; and<br><br>(iii) on the first Reporting Date and every other Reporting Date thereafter, (A) accounts receivable listings and ageings for the preceding two-week period; and (B) accounts payable listings and ageings as of such Reporting Date. |
| **Debtors' Other Reporting Obligations** | To the extent the Debtors receive any information or documents from third parties, including, without limitation, former employees, asset managers, and cryptocurrency exchanges, the Debtors shall: (i) notify the Committee immediately of the receipt of such information or documents; and (ii) send |

6

|  | such information or documents to the Committee within one (1) business day. |
|---|---|
|  | As reasonably requested by the Committee, the Debtors shall provide to the Committee and/or its professionals: |
|  | i. draft copies of all material motions and applications that the Debtors intend to file with the Bankruptcy Court at least three (3) calendar days prior to the date on which the Debtors are to file such documents, to the extent reasonably practicable under the circumstances; |
|  | ii. reasonable access to the Debtors' management and advisors for the purposes of evaluating the Debtors' finances and operations and participating in the planning process with respect to the Restructuring Transaction; and |
|  | iii. such additional financial or other information concerning the acts, conduct, property, assets, liabilities, operations, financial condition, and transactions of any of the Debtors, or concerning any matter that may affect the administration of any of the Debtors' estates, as the Committee may from time to time reasonably request. |
| **Asset Sale(s)** | The Debtors may, solely with the consent of the Committee, enter into an agreement providing for the sale of one or more material asset (defined as any asset the net sale proceeds of which are $100,000 or higher). |
|  | If the Debtors have not executed a binding stalking horse agreement to sell all or substantially all of their assets on or prior to January 15, 2021, the Debtors shall terminate any sale process, which shall include the termination of Teneo Capital LLC, unless the Debtors and Committee agree that Teneo shall continue to be retained to solicit and negotiate potential exit financing to, among other things, fund the costs of litigation by the Cred Liquidation Trust. |
|  | Other than as permitted by an Approved Budget, the Debtors shall not, without the prior consent from the Committee, sell any of the Debtors' cryptocurrency. |
|  | The Debtors shall provide the Committee's professionals, upon reasonable request to the Debtors' professionals, information concerning all sale processes. |
| **Debtor-in-Possession Financing Facility** | The Debtors may, solely with the consent of the Committee, enter into an agreement providing for a debtor-in-possession financing facility, provided that no such facility shall provide for the requirement of additional collateral, or acceleration of maturity, on account of any change in the value of liquid cryptocurrency property of the Debtors.  Such facility shall remain subject to the Debtors' determination of their fiduciary obligations and thereafter to approval of the Court. |
|  | The Debtors shall provide the Committee's professionals, upon reasonable request to the Debtors' professionals, information concerning any debtor-in- |

7

| | |
|---|---|
| | possession financing facility solicitation, negotiating, and consummation process. |
| **Governance Issues** | Daniel Schatt and Joseph Podulka shall not serve in any capacity with the Debtors, including, without limitation, as an officer, board member, or employee, except that Daniel Schatt may remain employed by the Debtors as an "at will" employee with a monthly salary of $10,000 through no later than January 15, 2021.  To the extent the Debtors desire to retain either individual in any other capacity, such retention shall be subject to the Committee's prior written consent, and only for the specific purpose requested and authorized. |
| **Affirmative Covenants** | During the Support Period, the PSA Parties' shall: <br><br> i. support the Restructuring Transaction, which shall be in form and substance consistent with this Term Sheet; <br><br> ii. support and not object to entry of any orders proposed in the Chapter 11 Cases that are consistent with this Term Sheet; <br><br> iii. in good faith, negotiate the Definitive Documents (as defined below), which shall be in form and substance consistent in all respects with this Term Sheet; <br><br> iv. consent to those actions contemplated by this Term Sheet or otherwise required to be taken to effectuate the Restructuring Transaction, including entering into all documents and agreements necessary to consummate the Restructuring Transaction; and <br><br> v. support entry of orders approving the Disclosure Statement and confirming the Plan that are in form and substance consistent with this Term Sheet. <br><br> "Definitive Documents" means the documents (including any related orders, agreements, instruments, schedules, or exhibits) that are necessary or desirable to implement or otherwise relate to the Restructuring Transaction, including, but not limited to:  (a) a motion to approve the Debtors' entry into this Term Sheet and/or the PSA, (b) an order approving the Debtors' entry into this Term Sheet and/or the PSA, (c) all documents in connection with the In-Court Sale (including, without limitation, the sale agreement and order approving the sale), (d) the Plan (and all exhibits thereto), (e) the disclosure statement (the "Disclosure Statement") for the Plan, (f) the solicitation materials (the "Solicitation Materials") for the Plan; (g) an order approving the Disclosure Statement, (h) the order confirming the Plan (the "Confirmation Order"), (i) the agreement establishing the Cred Liquidation Trust (the "Liquidation Trust Agreement"), (j) the PSA; and (k) any other documents or exhibits related to or contemplated in the foregoing clauses (a) through (j), in each case in form and substance consistent with this Term Sheet and reasonably acceptable to the Committee. |
| **Negative Covenants** | During the Support Period, no PSA Party shall take any action materially inconsistent with the Restructuring Transaction that is expressly contemplated by this Term Sheet and the Definitive Documents. |

8

|  | |
|---|---|
|  | During the Support Period, subject to the Debtors' fiduciary duties (as set forth below), and provided the Definitive Documents are consistent with this Term Sheet, no PSA Party shall support any Alternative Transaction (as defined below) or take any action materially inconsistent with the Restructuring Transaction that is expressly contemplated by this Term Sheet, the PSA, or the Definitive Documents.<br><br>During the Support Period, no PSA Party shall take any action, or fail to take any action, that would result in (or that with the giving of notice or the passage of time, or both would result in) a Debtor Termination Event, or a Committee Termination Event (each as defined below).<br><br>"Alternative Transaction" shall mean any reorganization, merger, consolidation, tender offer, exchange offer, business combination, joint venture, partnership, sale of a material portion of assets (excluding a sale process separately governed above), financing (excluding a debtor-in-possession financing facility separately governed above), recapitalization, workout or restructuring of the Debtors (including, for the avoidance of doubt, a transaction premised on a chapter 11 plan or a sale of a material portion of assets under section 363 of the Bankruptcy Code), other than the Restructuring Transaction. |
| **Termination** | Upon three (3) business days' written notice to the Committee, during which time the Committee may cure any Debtor Termination Event (as defined below) that is susceptible to cure within such 3-business day period, the Debtors may terminate the PSA upon the occurrence, and during the continuation of, any of the following events (each, a "Debtor Termination Event"):<br><br>i. the Committee's material breach of any of their obligations under the PSA;<br><br>ii. the Debtors determine in good faith that continued performance under the PSA would be inconsistent with the exercise of its fiduciary duties under applicable law (as set forth below);<br><br>iii. the Bankruptcy Court grants relief that is materially inconsistent with the PSA or would reasonably be expected to materially frustrate the purpose of the PSA;<br><br>iv. the Committee files for approval of or otherwise supports any Alternative Transaction or other transaction that is inconsistent with the Plan or the Restructuring Transaction;<br><br>v. any of the orders approving the Plan or the Disclosure Statement are reversed, stayed, dismissed, vacated, reconsidered, modified, or amended without the consent of the Debtors and the Committee; and<br><br>vi. the Bankruptcy Court's confirmation of a competing plan that is inconsistent with the terms of the Restructuring Transaction.<br><br>Upon three (3) business days' written notice to the Debtors, during which time the Debtors may cure any Committee Termination Event (as defined |

9

| | |
|---|---|
| | below) that is susceptible to cure within such 3-business day period, the Committee may terminate the PSA after the occurrence, and during the continuation of, any of the following events (each, a "Committee Termination Event"): |
| | i. the Debtors' material breach of any of their obligations under the PSA; |
| | ii. the Debtors fail to comply with, satisfy, or achieve any of the Milestones; |
| | iii. the Debtors fail to provide the Committee and its advisors with reasonable access to the Debtors' books, records, and management through the Effective Date; |
| | iv. any of the Definitive Documents filed in the Chapter 11 Cases contain terms and conditions materially inconsistent with the PSA or this Term Sheet; |
| | v. conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, appointment of a chapter 11 trustee, a responsible officer, or an examiner with enlarged powers (beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the Debtors, or dismissal of the Chapter 11 Cases; |
| | vi. the Bankruptcy Court grants relief that is materially inconsistent with the PSA or would reasonably be expected to materially frustrate the purpose of the PSA; |
| | vii. the Debtors file for approval of or otherwise support any Alternative Transaction or other transaction that is inconsistent with the Plan, PSA, or the Restructuring Transaction; and |
| | viii. the Bankruptcy Court's approval of an Alternative Transaction or other transaction that is inconsistent with the terms of the Restructuring Transaction. |
| | The PSA may also be terminated by mutual written agreement among the PSA Parties. |
| | The PSA shall automatically terminate on the Effective Date. |
| **Effectiveness** | The PSA will become effective and binding upon each PSA Party upon the delivery of duly authorized and executed signature pages by such PSA Party. Until the PSA is duly executed and delivered, this Term Sheet shall control. |
| **Governing Law** | The PSA and this Term Sheet shall be governed by and construed in accordance with the internal laws of the State of Delaware, without regard to any conflict of law provisions that would require the application of the law of any other jurisdiction. |
| **Venue** | Any disputes between the PSA Parties arising out of, or in connection with, the PSA or this Term Sheet shall be brought in the Bankruptcy Court (for so long as the Debtors are subject to the jurisdiction of the Bankruptcy Court) |

10

| | or, to the extent the Bankruptcy Court does not have jurisdiction, in a court located in New Castle County, Delaware, and the PSA Parties hereby submit to the exclusive jurisdiction of the federal and state courts of the State of Delaware located in New Castle County with respect to any action or legal proceeding commenced by any PSA Party arising out of, or in connection with, the PSA or this Term Sheet, and irrevocably waive any objection the PSA Parties now or hereafter may have respecting the venue of any such action or proceeding brought in such a court or respecting the fact that such court is an inconvenient forum. |
|---|---|

## II. Plan Treatment of Allowed Claims and Interests

| Class of Claim or Interest | Treatment of Claims and Interests Under the Plan |
|---|---|
| **Administrative Expense Claims** | All allowed Administrative Expense Claims (as defined below) shall be paid in full in cash on the Effective Date or as otherwise provided in the Bankruptcy Code or approved by the Bankruptcy Court, except to the extent that a holder of such claim agrees to different treatment.<br><br>"Administrative Expense Claims" means any claim (including, but not limited to, Professional Fee Claims (as defined below)) for costs and expenses of administration of the Chapter 11 Cases that is entitled to priority pursuant to Bankruptcy Code sections 503(b), 507(a)(2), or 507(b). |
| **Professional Fee Claims** | All allowed Professional Fee Claims (as defined below) shall be paid in full in cash in such amounts as may be allowed by the Bankruptcy Court (a) as soon as practicable after the later of the Effective Date and the date on which the Court enters a final order allowing any such Professional Fee Claim, (b) as otherwise provided in the Bankruptcy Code or approved by the Bankruptcy Court, or (c) as may be agreed upon between the holder of any such Professional Fee Claim and the Debtor.<br><br>"Professional Fee Claim" means any claim of a professional approved by the Bankruptcy Court for compensation, indemnification, or reimbursement of costs and expenses incurred on or before the Effective Date pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b), or 1103(a), plus any fees and expenses related to the final fee application of a professional. |
| **Priority Claims** | Holders of tax claims entitled to priority treatment under Bankruptcy Code sections 502(i) or 507(a)(8) ("Priority Tax Claims") shall receive either payment in full (a) in cash on the Effective Date or (b) such other less favorable treatment to the holder of an allowed Priority Tax Claim as to which the Debtor, the Plan Sponsor, and the holder of such allowed Priority Tax Claim shall have agreed upon in writing.  All allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.<br><br>Each allowed Other Priority Claim (as defined below) will receive either (i) payment in full, in cash, of the unpaid portion of its Other Priority Claim or (ii) |

| Class of Claim or Interest | Treatment of Claims and Interests Under the Plan |
|---|---|
| | treatment consistent with the provisions of Bankruptcy Code section 1129(a)(9), in each case, on or as soon as practicable after the later of (x) the Effective Date and (y) the date on which such claim becomes allowed. All allowed Other Priority Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.<br><br>"Other Priority Claims" means any claim, other than an Administrative Expense Claim, Professional Fee Claim, or Priority Tax Claim, entitled to priority in right of payment under Bankruptcy Code section 507(a). |
| **General Unsecured Claims** | Each holder of an allowed General Unsecured Claim shall receive one or more distributions equal to its share of the interests in the Cred Liquidation Trust, as such distributions become available as is reasonably practicable in the reasonable discretion of the Liquidation Trustee.<br><br>"General Unsecured Claim" means any claim other than an Administrative Expense Claim, Professional Fee Claim, Other Secured Claim, Priority Tax Claim, Other Priority Claim, Prepetition Lender Claim, or DIP Financing Claim. |

### III. Miscellaneous Plan Terms and Conditions

| | |
|---|---|
| **Establishment of Liquidation Trust** | Pursuant to the Bankruptcy Court's order confirming the Plan, the Debtors will be dissolved, and a trust known as the "Cred Liquidation Trust" will be established. The Cred Liquidation Trust will be intended to qualify as a "liquidating trust" as described in Treasury Regulations Section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684, and will be treated for federal income tax purposes as a "grantor trust" under Internal Revenue Code sections 671-677. The Cred Liquidation Trust shall be managed by a trustee (the "Liquidation Trustee"), who shall be selected by the Committee in its sole discretion who shall be subject to a Trust Advisory Board consisting of each member of the Official Committee of Unsecured Creditors who wishes to continue in such role, and such additional members nominated by the Official Committee, if any, as are required for the initial complement of the Trust Advisory Board to be an odd number greater than one. The Cred Liquidation Trust shall be administered in accordance with the terms of the Liquidation Trust Agreement. |
| **Means for Plan Implementation** | On the Plan Effective Date, the Plan shall be funded by the proceeds of the In-Court Sale and any other cash or other assets then held by the Debtors, which shall be used satisfy the claims against the Debtors in the manner set forth in the Plan. |
| **Releases** | Except as expressly set forth in the Definitive Documents, the Definitive Documents shall include full customary debtor and "third party" releases from liability in favor of the Debtors' professionals, Grant Lyon as the Debtors' independent director, the Debtors' chief restructuring officer and any other temporary staff supplied by Sonoran Capital, the Committee's professionals, and each Committee member (the "Released Parties"). |

| | |
|---|---|
| | For the avoidance of doubt, no person other than the Released Parties, including any present or former insider of the Debtors, will receive a release of any kind under the Plan, whether from the Debtors or otherwise. |
| **Conditions to Plan Confirmation** | i. The PSA and/or this Term Sheet shall not have been terminated.<br>ii. The Confirmation Order shall be in a form and substance reasonably acceptable to the Committee, as determined by the consent of the Committee.<br>iii. The final version of all of the schedules, documents, and Plan exhibits, including a Plan supplement, shall have been filed in form and substance acceptable to the Committee in its reasonable discretion, as determined by the consent of the Committee.<br>iv. No breach or failure to comply with the terms of the Definitive Documents, the Confirmation Order or any other material final order of the Bankruptcy Court shall have occurred and be continuing. |
| **Conditions to Effective Date** | i. The PSA and/or this Term Sheet shall not have been terminated.<br>ii. No breach or failure to comply with the terms of the Definitive Documents, the Confirmation Order, or any other material final order of the Bankruptcy Court shall have occurred and be continuing<br>iii. The conditions to confirmation delineated in the Plan shall have either been satisfied or waived in accordance with the Plan.<br>iv. All documents required under the Plan shall have been delivered.<br>v. The Confirmation Order in form and substance reasonably satisfactory to the Committee shall have been entered by the Bankruptcy Court, and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto. |
| **Cancellation of Instruments, Certificates, and Other Documents** | On the Effective Date, except to the extent otherwise provided herein, all instruments, certificates, and other documents evidencing debt or equity interests in the Debtors shall be cancelled and the obligations of the Debtors thereunder, or in any way related thereto, shall be discharged. |
| **Other Plan Terms** | The Plan shall contain all other customary terms for chapter 11 plans of this type, which shall be reasonably acceptable to the Committee, including, without limitation, provisions dealing with retention of jurisdiction, claims allowance and objections, and exemption from stamp and other transfer taxes pursuant to Bankruptcy Code section 1146. |

13

IN WITNESS WHEREOF the parties have executed this document on the respective dates specified below with effect from the date specified on the first page of this document.

| **DEBTORS** | **THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |
|---|---|
| By: | By: |
| Name: Matthew Foster<br>Title: Chief Restructuring Officer<br>Date: December 14, 2020 | Name: Michael Michelin<br>Title: Committee Co-Chair<br>Date: December 14, 2020 |

IN WITNESS WHEREOF the parties have executed this document on the respective dates specified below with effect from the date specified on the first page of this document.

| **DEBTORS** | **THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |
|---|---|
| By: | By: *Michael Michelin* |
| Name: | Name: Michael Michelin |
| Title: | Title: Committee Co-Chair |
| Date: | Date: December 14, 2020 |

14

# **EXHIBIT A**

**Budget**

[Forthcoming]