**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CRED INC., *et al.*, | Case No. 20-12836 (JTD) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date: Jan. 6, 2020 at 10:00 a.m. (ET)** |
| | **Obj. Deadline: Dec. 30, 2020 at 4:00 p.m. (ET)** |
| | **RE: Docket No. 152** |

## DEBTORS' OBJECTION TO MOTION OF JAMES ALEXANDER TO DISMISS THE CRED CAPITAL, INC. CASE

TO THE HONORABLE BANKRUPTCY JUDGE JOHN T. DORSEY:

Cred Inc. ("Cred") and its affiliated debtors and debtors in possession (the "Debtors") object (the "Objection") to the *Motion of James Alexander to Dismiss the Cred Capital, Inc. Case* [Docket No. 152] (the "Motion"). In support of this Objection, the Debtors respectfully state as follows:

### PRELIMINARY STATEMENT

1.    At its core, the Motion is nothing more than a thinly veiled litigation tactic by James Alexander ("Alexander") to hamstring the Debtors' ability to recover cryptocurrency currently worth more than $6 million belonging to the Debtors and with which Alexander fraudulently absconded. Alexander's fraudulent scheme is already the subject of an adversary

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

proceeding brought before this Court[2] and an action removed from California state court to the United States Bankruptcy Court for the Northern District of California and to be transferred to this Court,[3] the results of which the Debtors believe will generate more than $6 million in additional recoveries for the Debtors' creditors.

2.      As both a procedural and substantive matter, the Motion should be denied and the Debtors awarded costs and fees for the time and expense incurred in having to defend against the Motion.  Alexander has not, and cannot, demonstrate that he has any standing in these chapter 11 cases.  He has not alleged that he is a creditor or equity holder of the Debtors and otherwise fails to satisfy the requirement that he is a party in interest with standing to seek the dismissal of the bankruptcy filing of Cred Capital, Inc. ("Cred Capital").

3.      The only basis on which Alexander argues that he has standing is his status as a director of Cred Capital.  However, at best, Alexander is a former director and there is no case law to which Alexander can point to holding that a former director who is neither a creditor nor equity holder of a debtor is a party in interest with standing in a bankruptcy case.  Indeed, Cred Capital's duly appointed board of directors properly authorized Cred Capital's filing under Delaware law, and no shareholder or creditor of Cred Capital has ever contested its filing, nor asserted that they believe Alexander is the actual director of Cred Capital.  Alexander knows this – he has in fact brought two unsuccessful state court actions predicated on the fact that he is not the legally recognized director of Cred Capital.

4.      While both Alexander's lack of legal standing, and the Debtor's proper filing of Cred Capital's bankruptcy consistent with its legally binding incorporation documents are

---

[2]    *Cred Inc., et al. v. Alexander* (Bankr. D. Del. Adv. Proc. 20-51006).

[3]    *Cred Inc., et al v. Alexander* (Bankr. N.D. Cal. Adv. Proc. 20-03134).

independently sufficient for this Court to dispense with the Motion, an examination of the purported basis of Alexander's claim of control of Cred Capital is illuminating of the pretext of his entire Motion, and the overall fraud he is attempting to continue to perpetuate.

5.      To credit Alexander's claim he asks the Court to suspend disbelief, and reject the legally filed corporate structure of Cred Capital as not reflecting Cred's intentions in setting up Cred Capital. Instead, Alexander claims that Cred, which created Cred Capital as its subsidiary and transferred 300 of its own bitcoin to Cred Capital, knew it would be granted *zero* control over its own wholly owned subsidiary that bears its name, would be granted *no* board seats, nor *any* voting shares.  Instead, Alexander claims that Cred wanted Alexander to be installed as a sole director, and that *all* of the voting shares in Cred Capital be granted to an unknown "investor" who Cred knew nothing about, who contributed nothing to Cred Capital, and who gave Alexander an irrevocable proxy to vote all of Cred Capital's voting shares on his behalf, thus giving Alexander unfettered and unchallengeable control of Cred Capital into perpetuity. And then Alexander asks the Court to accept that it is proper that the first thing that Alexander did with that allegedly granted power was to have approximately $6 million in Cred Capital's assets transferred to his private e-wallet; funds that to this day Alexander refuses to return.

6.      Of course, none of this is true. The truth is Cred entrusted its employee Alexander to set up a subsidiary in which Cred would control the majority of a three person board and at least half of the voting stock (allowing for the possibility of other investors that ultimately never materialized). Alexander, in turn, betrayed that trust by first having improper corporate documents filed that installed himself as the sole director of Cred Capital, with no shareholder retaining a voting right to question his actions, and then immediately stole the funds Cred provided Cred Capital to operate. As soon as Cred learned of Alexander's duplicity, it terminated

him for cause, corrected Cred Capital's corporate structure in accordance with Delaware law to be consistent with its intent, and brought legal proceedings, including before this Court, to seek the return of the stolen funds from Alexander. No shareholder, including the mystery investor, has ever challenged the propriety of the current revised corrected corporate structure, nor, that Alexander is not a director of Cred Capital.

7.    Given that Cred Capital has never operated separately from its parent Cred, and Cred Capital's primary asset is its and Cred's claim against James Alexander for the turnover of the more than $6 million in estate assets he stole from Cred and Cred Capital, it is transparent that Alexander's sole interest in bringing this improper Motion is to somehow attempt to scuttle the turnover of valuable assets belonging to the Debtors.  Indeed, Alexander offers no explanation for why the insolvent Cred Capital should not be in bankruptcy, nor why dismissing Cred Capital's chapter 11 case is in the best interests of the estate, because he cannot. The reality is that the only beneficiary of a dismissal is Alexander, who hopes doing so will aid in his attempt to prevent the return of the funds he stole.

8.    The Motion also fails because Alexander can only seek to challenge Cred's ownership and control over Cred Capital in an adversary proceeding.  It is beyond dispute that Cred's ownership interest and control over the governance of Cred Capital represents an asset of Cred, which constitutes property of Cred's bankruptcy estate under section 541 of the Bankruptcy Code.[4]  The Motion is a direct attack on that property interest and Bankruptcy Rule 7001 expressly requires an adversary proceeding for any determination of interest in that property.

---

[4]    Cred expressly reserves all of its rights and remedies against Alexander stemming from Alexander's breach of Cred's automatic stay as an "act to obtain possession of property of the estate … or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).

9.      Accordingly, for the reasons set forth herein, the Motion should be denied.

**FACTUAL BACKGROUND**

I.      **Cred Capital's Formation**

10.      In early 2020, Cred decided to create a subsidiary asset management business titled Cred Capital to work in concert with its CredEarn and CredBorrow platforms. It was intended that this business would be part of Cred's single, unified corporate enterprise and that all strategic decisions would be made by Cred. The new business would use Cred's name and the funds managed would largely come from cryptocurrency placed with CredEarn and CredBorrow. It was understood that Cred Capital would be bound by the traditional parent-subsidiary relationship with Cred, with Cred controlling Cred Capital, Cred Capital acting in coordination with the other Cred affiliates, and in fact, being managed by Cred employees (including Alexander).

11.      Specifically, Cred intended that Cred Capital would be governed by a three-person board of directors with two Cred employees on the board.[5] Cred also intended to establish Cred Capital's capitalization structure so that Cred was a majority shareholder, with majority voting rights, in the subsidiary.[6] This capital and governance structure was naturally important to Cred because it would allow Cred to maintain ultimate control over its subsidiary bearing its own name and using its resources.

12.      Because Alexander was Cred's Chief Capital Officer and would be responsible for Cred's asset management business, Cred tasked him with organizing Cred Capital.

---

[5]      *See* **Exhibit A**.

[6]      *Id.*

13.     Instead of following Cred's directive, Alexander secretly set-up Cred Capital's governance structure so that he, and not Cred, would have control over it.  Under Alexander's governance scheme, Cred Capital would have a single board member purportedly elected solely by Cred Capital's outside investors (the sole member being, of course, Alexander), with no input from Cred.  Additionally, Alexander made it so that Cred would only have non-voting shares, and thus would have no way of controlling its subsidiary, or to challenge Alexander as sole director.

14.     Not only was Cred Capital's governance scheme at odds with Cred's intent, it was a farce because Cred Capital had no outside investors.  The only outside investor Alexander allegedly sourced was an Iraqi businessman named Zobar Agha, who Alexander claimed would invest $150,000 in Cred Capital, but Agha never actually invested in Cred Capital.  In fact, no one at Cred (other than allegedly Alexander) ever even communicated with Agha.

15.     Nevertheless, under Alexander's fictitious corporate structure, Agha was granted complete control of Cred Capital's voting shares. Under Alexander's scheme, Agha without any consultation with Cred immediately abrogated the controlling interest he was just granted, executing an irrevocable voting proxy in favor of Alexander.  Furthermore, according to Alexander, around this same time, Alexander appointed himself as the sole director of Cred Capital's board.  The impact of these machinations was to grant Alexander absolute control of Cred Capital, with no shareholder having any ability to challenge Alexander going forward.

## II.     Discovery of Alexander's Duplicity, Alexander's Termination, and His Theft of Cred Assets

16.     In late May 2020, Cred discovered Alexander had not organized Cred Capital as he was instructed.  Cred asked Alexander to correct the documents to provide Cred with board control and voting shares, but Alexander refused.

17.    On June 24, 2020, Cred fired Alexander.

18.    Cred quickly moved to rectify Cred Capital's governance structure, in accordance with Delaware law.  Consistent with the provisions of Delaware law to account for mistaken filings, Cred through its legal counsel took all appropriate steps to remedy its filings, as recognized by the Delaware Secretary of State.

19.    On June 22, 2020, Cred filed an Amended and Restated Certificate of Incorporation (the "Amended Charter"), adopted bylaws, and appointed Daniel Schatt and Joseph Podulka – Cred's Chief Executive Officer and Chief Financial Officer – as directors of Cred Capital.[7]

20.    Cred Capital's board, then appointed officers that did not include Alexander and confirmed that Cred Capital's prior stock issuances were null and void and authorized a new issuance of voting stock to Cred.[8]  Cred, consistent with its intentions from the outset, thereby became the sole valid stockholder of Cred Capital.[9]

21.    Furthermore, on June 29, 2020, Cred filed a certificate of correction, pursuant to section 103(f) of the DGCL, amending Cred's original Certificate of Incorporation (the "Original Charter") filed by Alexander to provide that Schatt and Podulka were Cred Capital's initial directors.[10]

22.    That same day, June 29, 2020, Cred discovered that Alexander had transferred about $204,656 of USD Coin (a "stable" coin linked to the US Dollar) and about 225 bitcoin

---

[7]    *See* Declaration of John Mark Zeberkiewicz (attached as **Exhibit B**).

[8]    *Id.*

[9]    Notably, Mr. Agha has never brought a legal action or even reached out to Cred or Cred Capital to protest his divestment.

[10]   8 Del. C. § 103(f) provides that incorrectly filed Certificates of Incorporation may be corrected by the filing of a corrected Certificate of Incorporation, and that such filing is retroactive to the original filing date. *See also* Zeberkiewicz Declaration.

(worth more than $2 million at the time, and currently close to $6 million) to himself on June 24, 2020, the same day he was fired.

## III.    <u>Cred's Litigation with Alexander</u>

23.    Upon his termination for cause from Cred, Alexander brought a lawsuit against Schatt (but notably not Cred, or Cred Capital) in California state court before Judge Elizabeth Hill seeking a determination that Alexander was Cred Capital's sole officer and director.

24.    Cred filed its own lawsuit against Alexander in California state court, also before Judge Hill, upon discovering that Alexander had stolen Cred Capital's cryptocurrency.[11]  Five days after Cred filed its lawsuit against Alexander, Judge Hill entered a temporary restraining order restricting Alexander's use of the stolen cryptocurrency.[12]

25.    In late August, Judge Hill converted the TRO against Alexander into an injunction prohibiting him from using the stolen cryptocurrency.  In her tentative ruling, which she later adopted, Judge Hill found that Cred had, among other things, "demonstrated a likelihood of success on the merits of its conversion and breach of duty claims."[13]

26.    Simultaneously, Judge Hill denied Alexander's request for a preliminary injunction in his lawsuit against Schatt seeking a declaration that he is Cred Capital's sole director, finding that Alexander "cannot show a likelihood of success on the merits."[14]

27.    After failing to convince Judge Hill of his spurious claims, on November 4, 2020, Alexander sued Schatt and Podulka (again, not including Cred and naming Cred Capital as a

---

[11]    The Debtors recently removed this action to the United States Bankruptcy Court for the Northern District of California (*see* Bankr. N.D. Cal. Adv. Proc. 20-03134), and will soon file a motion to transfer the action to this Court.

[12]    *See* **Exhibit C**.

[13]    *See* **Exhibit D**.

[14]    *Id.*

"nominal defendant") in Delaware Chancery Court before Vice Chancellor Kathaleen McCormick seeking substantially similar relief as he sought in his California lawsuit – a declaration that he is Cred Capital's sole officer and director.

28.     On November 7, 2020 (the "Petition Date"), the Debtors, including Cred and Cred Capital filed voluntary chapter 11 petitions commencing these cases.

29.     Even though the Debtors filed a Suggestion of Bankruptcy in the Chancery Court case on November 9, 2020, Alexander nonetheless continued his attempt to gain control of Cred Capital in the Chancery Court, claiming that Cred Capital's chapter 11 petition was invalid because it was filed without proper corporate authority.

30.     At the Chancery Court's November 19, 2020, hearing, Vice Chancellor McCormick decided that the automatic stay applied to Alexander's claims, and that Alexander could not proceed with his claims unless he received stay relief from this Court.[15]  Alexander has never received stay relief from this Court.  And, notably, neither the Vice Chancellor, nor Judge Hill has found that Alexander is a director of Cred Capital.

31.     Finally, as the Court is well aware, on November 18, 2020, the Debtors filed an adversary proceeding against Alexander, seeking the turnover of the cryptocurrency he stole.

**IV.    Cred Capital's Activities**

32.     As conceded by Alexander, Cred Capital is not (nor has it ever been) an operating business.[16]  Moreover, it has never been intended to, nor has it ever, acted independently of its parent Cred.

---

[15]    Chancery Tr. 21:19—23:7 (the transcript of the Chancery court proceedings are attached as **Exhibit E**).

[16]    Motion ¶ 1.

## ARGUMENT

### A.    Alexander Does Not Have Standing to Bring This Motion

33.    Bankruptcy standing and Article III standing are effectively co-extensive.[17]  Thus, standing to bring a motion to dismiss is limited to parties that "have demonstrated some injury-in-fact, i.e. some 'specific identifiable trifle or injury,' or 'personal stake in the outcome of the litigation' that is fairly traceable to [Cred Capital's bankruptcy filing]."[18]

34.    Alexander has not suffered any injury from Cred Capital's bankruptcy filing, and thus has no standing to bring the Motion.  Alexander is not a shareholder or creditor of Cred Capital and has no relation to Cred Capital other than as the target of a turnover action.  Thus, he has no basis to bring a motion to dismiss.

35.    Alexander's claim that he *should* be the sole director does not change the fact that he is not a director.  Cred Capital's organizational documents on the Petition Date – both the Certificate of Incorporation and the Bylaws – provided that Schatt and Podulka were Cred Capital's directors, and it is now Mr. Lyon.  Although Alexander claims that he is the "rightful" director of Cred Capital, no court has yet agreed with him.  In fact, the California state court explicitly found that Alexander was unlikely to prevail on the merits of his claims.

36.    Alexander knows he has no standing.  Alexander's Chancery Court action asked the Court to review this very issue.  The Chancery Court declined to do so on the basis that Cred Capital is property of Cred's bankruptcy estate under section 541(a)(1) and that Alexander's claims were subject to the automatic stay pursuant to 362(a)(3).[19]  The Chancery Court

---

[17]    *In re Global Indus. Technologies, Inc.*, 645 F.3d 201, 211 (3d Cir. 2011).

[18]    *Id.* at 211-12 (quoting *Bowman v. Wilson*, 672 F.3d 1145, 1151 (3d Cir. 1982) and *In re The Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir. 2000)).

[19]    *See* Chancery Tr. 21:19—22:1.

specifically stated that "this sort of case seems to be one of the primary reasons why the automatic stay exists, and that's to eliminate any inefficiencies of questions in other proceedings regarding **control over property of the estate**."[20]

37.    Alexander has done neither.  Instead, of requesting this Court determine his rights with respect to the ownership of Cred Capital or the right to appoint directors of Cred Capital, Alexander has, instead, sought to dismiss Cred Capital's chapter 11 cases as if it were already judicially determined that he has sole authority to control Cred Capital and all its assets. Alexander's demands put the cart before the horse.

**B.    Alexander's Claim to Control Cred Capital Must Be Adjudicated Prior to Any Determination of the Motion**

38.    Of course, to the extent Alexander wishes to challenge the ownership of the equity of Cred Capital or the right to appoint the directors of Cred Capital, he must first seek a determination as to whether the equity of Cred Capital and the right to control its governance is property of Cred's bankruptcy estate.[21]

39.    The only proper way to do so is through an adversary proceeding[22] before this Court, not to assume his conclusion through the current Motion.

**C.    Cred Capital's Chapter 11 Was Validly Authorized**

40.    To the extent the Court decides to consider the merits of the Motion, it should be denied as there is no basis for the relief requested.

---

[20]    Chancery Tr. 22:13—17.

[21]    Again, Alexander is aware of this as this is the identical argument Cred made in the Chancery Court and that the Court accepted in finding that the automatic stay barred Alexander's Chancery Court action.

[22]    FED. R. BANKR. P. 7001(1), (2), (7), and (9).

41.     Section 141 of the DGCL provides that "[t]he business affairs of every corporation under this chapter shall be managed by or under the direction of a board of directors, except as may be otherwise provided in this or in its certificate of incorporation."[23]

42.     Cred Capital's Certificate of Incorporation on file with the Delaware Secretary of State on the Petition Date – the Amended Certificate – identified Schatt and Podulka as the two members of Cred Capital's board of directors.[24]  Although Alexander alleges defects in the corporate documents prevented Schatt and Podulka from validly authorizing Cred Capital's bankruptcy filing, Cred's actions in rectifying those defects were proper.

43.     Cred Capital filed a Certificate of Correction correcting the Original Charter pursuant to section 103(f) of the DGCL, which permits filed instruments to be corrected if they are inaccurate and is "effective as of the date the original instrument was filed".[25]  Because the Original Charter inaccurately reflected the relationship between Cred and its subsidiary Cred Capital, the Certificate of Correction was valid and Schatt and Podulka were thus made the initial directors of Cred Capital as of March 10, 2020.  Thus, any acts taken by Schatt and Podulka after March 10, 2020, were valid and have legal effect.

44.     Accordingly, Podulka and Schatt were vested with the authority to manage the business affairs of Cred Capital.  This includes filing Cred Capital's bankruptcy case.  Therefore, Podulka and Schatt's authorization for Cred Capital to file a voluntary chapter 11 petition was valid, as is Mr. Lyon's determination to maintain the filing.

45.     All of the documents Alexander cites to support his allegation that Cred Capital lacked corporate authority were filed on behalf of Alexander as a legal matter mistakenly, and as

---

[23]    8 Del. C. § 141(a).

[24]    Presently, Grant Lyon is the sole director of Cred Capital.

[25]    8 Del. C. § 103(f).

a practical matter fraudulently, and have been superseded by Cred Capital's corrected current governance documents.  Not only were the current legally binding governance documents correctly filed and accepted by the Delaware Secretary of State, but no one other than Alexander has ever challenged the propriety of the correction and the current corporate governance structure or stated they want Alexander as a director.[26]  Most notably, Agha – the mystery investor who supposedly lost his investment and his control of Cred Capital with the corrections and who gave Alexander an irrevocable proxy – has *never* challenged the corrections.

46.     The properly appointed board of Cred Capital duly and reasonably authorized its filing of a voluntary chapter 11 petition.  Cred Capital's petition, in turn, is an integral part of the Debtors' chapter 11 cases as the value of the cryptocurrency Alexander stole represents a significant asset to the Debtors' estates and its creditors.  Accordingly, the Motion is unsupportable and Cred Capital's case should not be dismissed.

**D.     The Motion Is a Transparent Attempt to Prevent the Turnover of What Alexander Stole from Cred and Cred Capital**

47.     Finally, Alexander's motives in seeking to control Cred Capital are highly questionable.  Cred Capital is plainly insolvent.  It has no income and no business operations.  The only assets ever transferred to it were from Cred.  Its only current asset is its claim against Alexander for the cryptocurrency he stole, which are currently worth more than $6 million and are due back to Cred and Cred Capital for the benefit of their estates.

48.     Alexander has not articulated any reason for why Cred Capital, which has no hope of reorganizing outside of bankruptcy, should not be in bankruptcy or its chapter 11 case should be dismissed.

---

[26]    At this point, given the record of Alexander's impropriety and mismanagement, there is no basis to reinstall him as a director in the place of Lyon.

## CONCLUSION

49.    At bottom, Alexander's Motion is an attempt to abscond with the $6 million he stole from the Debtors to the detriment of the Debtors' estates and their creditors.  Predictably, the law provides him with no basis to do so.  Not only does he lack standing to bring the Motion, the Motion is procedurally defective and asserts claims that are belied by subsequent factual developments.

50.    Accordingly, the Debtors respectfully submit that Court should deny the Motion and award the Debtors their costs and fees for the time and expense incurred in having to defend against the Motion.

[*Remainder of Page Left Intentionally Blank*]

WHEREFORE, the Debtors respectfully request that the Court (a) deny the Motion, (b) award the Debtors their costs and fees for the time and expense incurred in having to defend against the Motion, and (c) grant the Debtors such other and further relief as is just and proper.

Dated:  December 30, 2020
      Wilmington, Delaware

/s/  Scott D. Cousins
Scott D. Cousins (No. 3079)
**COUSINS LAW LLC**
Brandywine Plaza West
1521 Concord Pike, Suite 301
Wilmington, Delaware 19803
Telephone:    (302) 824-7081
Facsimile: :    (302) 295-0331
Email:      scott.cousins@cousins-law.com

*Co-Counsel to the Debtors*

- and -

James T. Grogan (admitted *pro hac vice*)
Mack Wilson (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
Telephone:    (713) 860-7300
Facsimile:    (713) 353-3100
Email:      jamesgrogan@paulhastings.com
             mackwilson@paulhastings.com

- and -

Pedro Jimenez (*pro hac vice* pending)
Avram E. Luft (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone:    (212) 318-6000
Facsimile:    (212) 319-4090
Email:      pedrojimenez@paulhastings.com
             aviluft@paulhastings.com

*Proposed Co-Counsel to the Debtors*