## Exhibit E

**Transcript of November 19, 2020, Hearing Before the Chancery Court**

1

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

JAMES ALEXANDER,                    :
                                    :
            Plaintiff,              :
                                    :
        v                           :  C. A. No.
                                    :  2020-0941-KSJM
DANIEL BRIAN SCHATT and             :
JOSEPH PODULKA,                     :
                                    :
            Defendants,             :
                                    :
        and                         :
                                    :
CRED CAPITAL, INC.,                 :
                                    :
            Nominal Defendant. :

                    - - -

                Chancery Court Chambers
                Leonard L. Williams Justice Center
                500 North King Street
                Wilmington, Delaware
                Thursday, November 19, 2020
                3:15 p.m.


                    - - -

BEFORE HON. KATHALEEN St.J. McCORMICK, Vice Chancellor

                    - - -


TELEPHONIC ORAL ARGUMENT AND RULINGS OF THE COURT ON
    PLAINTIFF'S MOTION TO EXPEDITE PROCEEDINGS

------------------------------------------------------
            CHANCERY COURT REPORTERS
        Leonard L. Williams Justice Center
        500 North King Street - Suite 11400
            Wilmington, Delaware 19801
                (302) 255-0533

2

1   APPEARANCES:

2        GEOFFREY G. GRIVNER, ESQ.
         KODY M. SPARKS, ESQ.
3        Buchanan, Ingersoll & Rooney PC
            for Plaintiff
4
         J. CLAYTON ATHEY, ESQ.
5        Prickett, Jones & Elliott, P.A.
            for Defendants and Nominal Defendant
6

7   ALSO PRESENT:

8        SCOTT D. COUSINS, ESQ.
         Cousins Law LLC
9
         JAMES T. GROGAN, ESQ.
10       of the Texas Bar
         Paul Hastings LLP
11
         SCOTT CARLTON, ESQ.
12       of the California Bar
         Paul Hastings LLP
13
         AVRAM EMMANUEL LUFT, ESQ.
14       of the New York Bar
         Paul Hastings LLP
15

16                            -  -  -

17

18

19

20

21

22

23

24

1              THE COURT:  Can I get appearances for

2   the record, please?

3              MR. GRIVNER:  Good afternoon, Your

4   Honor.  This is Geoffrey Grivner of Buchanan,

5   Ingersoll & Rooney on behalf of plaintiff James

6   Alexander.  And also on the line with me is my

7   colleague, Kody Sparks.

8              MR. SPARKS:  Good afternoon, Your

9   Honor.

10             MR. ATHEY:  Good afternoon, Your

11  Honor.  This is Clayton Athey of Prickett, Jones &

12  Elliott for defendants Daniel Schatt and Joseph

13  Podulka, as well as nominal defendant Cred Capital,

14  Inc.

15             Also on the phone is my associate,

16  Robert Lackey.  He's got a provisional practice

17  application that's pending.  And then there are a few

18  others on the line who are representing various

19  parties in the larger dispute in other jurisdictions.

20  And one of those is Scott Carlton from Paul Hastings

21  in Los Angeles.  And he is counsel to Cred Capital and

22  Cred, Inc., and Mr. Schatt in the two pending

23  California actions.

24             MR CARLTON:  One correction, Clay.

4

 1   Not Mr. Schatt, just Cred.

 2                MR. ATHEY:  Apologies.  So Cred

 3   Capital and Cred, Inc.?

 4                MR CARLTON:  Yes.

 5                MR. ATHEY:  All right.  And also on

 6   the line from Delaware is Scott Cousins of Cousins Law

 7   LLC.  He's Delaware counsel in the Delaware bankruptcy

 8   actions.  And I believe he's going to introduce some

 9   others with whom he's working.

10                MR. COUSINS:  Good afternoon, Your

11   Honor.  Scott Cousins from Cousins Law.  And my

12   co-counsel James Grogan from Paul Hastings is on the

13   line, and Avi Luft from Paul Hastings is too.  And I

14   believe that's everybody.  We're debtor's counsel in

15   the pending Chapter 11 before Judge Dorsey.

16                THE COURT:  All right.  Are there any

17   more introductions?

18                (No response.)

19                THE COURT:  If not, this is

20   plaintiff's motion.  Please proceed.

21                MR. GRIVNER:  Thank you, Your Honor.

22                First, I know this hearing was

23   rescheduled a couple of different times, and I do want

24   to thank Your Honor for making time available this

1   afternoon to have our motion heard.

2                    This action began as a fairly

3   run-of-the mill 225 action when we filed on

4   November 4th.  However, certain actions taken by

5   defendants and the entity or entities that they

6   purport to control taking action in Bankruptcy Court

7   have made our circumstances a bit more complicated.

8                    In our complaint, we allege that the

9   entity at issue here in this action, Cred Capital,

10  Inc., was incorporated in March of this year as an

11  independent spin-off of Cred, Incorporated.  And Cred,

12  Incorporated's co-founder and CEO is defendant Schatt

13  in this action.

14                   And upon the incorporation of Cred

15  Capital, plaintiff James Alexander became its sole

16  director and was named president of that corporation.

17  Additionally, there was an independent nonparty to

18  this action who was the sole owner of Class A voting

19  shares in the company.  That stockholder had given

20  Mr. Alexander a proxy to vote those shares.

21                   Cred, Inc., was the holder of certain

22  nonvoting Class B stock in Cred Capital.  And, in

23  fact, it was Mr. Schatt himself who signed the

24  contribution agreement under which Cred, Inc., was

6

1   issued those Class B shares.

2                Thereafter, and to the bewilderment of

3   Mr. Alexander, Mr. Schatt expressed surprise regarding

4   the board composition and equity structure of Cred

5   Capital.  And over the course of the spring -- of this

6   past spring, Mr. Schatt continuously tried to treat

7   Cred Capital as a wholly-owned subsidiary of Cred,

8   Inc., even though the company was specifically

9   established as a separate stand-alone independent

10  entity from Cred.

11                Thereafter, in June, Mr. Schatt sought

12  Mr. Alexander's agreement to eliminate Cred's

13  independence through a signed agreement, and

14  Mr. Alexander declined to sign that agreement.

15                Then, on June 23, Mr. Schatt wrote,

16  "[We] discovered that the initial board of directors

17  was not properly constituted, as the incorporator of

18  the company, Rebecca Floren, never signed resolutions

19  transferring control of the company to the initial

20  board of directors as required by Delaware law."

21                Mr. Schatt took that information as an

22  opportunity which he believed would allow him to

23  reincorporate Cred Capital, appoint himself and Cred,

24  Inc., CFO, our other defendant, James Podulka, as the

1 | sole directors of Cred Capital and engage in a

2 | recapitalization whereby the company's sole

3 | shareholder would be Cred, Inc.

4 | However, this error, this ministerial

5 | error, was caught well before that June 23rd email.

6 | And it was, in fact, corrected by Ms. Floren, who was

7 | the paralegal tasked as being the incorporator of Cred

8 | Capital, at the direction and advice of Dan Wheeler

9 | who acted as Cred Capital's general counsel.

10 | And that is the gist of this dispute

11 | and what's ultimately led us to file this 225 action.

12 | And the 225 action that we're bringing before Your

13 | Honor asks a simple question:  Who is the proper

14 | director of -- board of directors of Cred Capital?

15 | And, as we assert in our papers, the answer to that

16 | question is Mr. Alexander.

17 | Now, a significant wrench was thrown

18 | at us, however, after we filed on November 4th when,

19 | on November 7th, Cred, Inc., filed a Chapter 11

20 | bankruptcy petition on behalf of itself, as well as

21 | filing a petition on behalf of Cred Capital as a

22 | wholly-owned subsidiary of Cred, Inc.

23 | A suggestion of bankruptcy was filed

24 | in this action on November 10th.  And then, on

1   November 12th, defendants went ahead and filed an

2   opposition to plaintiff's motion to expedite and

3   motion for *status quo* order, which we have

4   subsequently replied to.

5                    It appears that the primary opposition

6   to our motion today is that the bankruptcy code's

7   automatic stay applies to this proceeding, such that

8   this action should be stayed.  But, as we state in our

9   reply, Your Honor, questions of corporate governance

10  brought in this Court against nondebtors are not

11  subject to the automatic stay.  And this Court has

12  jurisdiction to make the determination as to whether

13  or not the automatic stay should apply.

14                   And here, we present to Your Honor

15  that the automatic stay should not, in fact, be

16  applicable to this question of corporate governance.

17                   We cite to a variety of other cases

18  where similar questions involving corporate governance

19  were answered without implicating the automatic stay

20  when a company was, in fact, in Chapter 11 bankruptcy.

21                   There was an additional question --

22                   THE COURT:  In those cases, was it

23  also the case that the parent -- I know that you

24  dispute whether Cred is the parent entity.  But was

1   the parent entity also the debtor in the cases on

2   which you rely?

3                   MR. GRIVNER:  I don't think any of

4   those cases involve a parent-subsidiary relationship.

5   And that's a very good point you raised, Your Honor.

6                   In the letters that have been

7   exchanged, both with the Court and amongst counsel,

8   there is concern regarding the stock ownership of Cred

9   Capital and whether that stock ownership is at issue

10  in this action.

11                  And to be candid and frank with Your

12  Honor, I think on the face of our filings we were

13  seeking a declaration with respect to the stock

14  ownership as well.  In the letter that we filed with

15  the Court last night we wanted to clarify that we are

16  not seeking -- (interruption) -- in light of the

17  bankruptcy filing.

18                  THE COURT:  You might have to restate

19  the last part, because all I heard was someone's

20  ringtone.

21                  MR. GRIVNER:  I heard that as well.

22  Thank you, Your Honor.  I said we are not seeking a

23  declaration -- we are no longer seeking a declaration

24  with respect to the stock ownership of Cred Capital.

1    We acknowledge that that ultimately will be a decision

2    to be made in the course of the bankruptcy proceeding.

3                    That said, we do believe that the 225

4    action regarding the proper identity of the board of

5    directors can and should go forward and can very well

6    be instructive to a question that would ultimately

7    have to be answered in the Bankruptcy Court.

8                    THE COURT:  Thank you, Mr. Grivner.

9    Anything further?

10                   MR. GRIVNER:  No.  Well, one last

11   thing, Your Honor, and it wasn't clear regarding --

12   when we scheduled this, with respect to the *status quo*

13   motion.  I don't know if Your Honor wants to hear

14   anything with respect to the *status quo* motion.

15                   I think that the bankruptcy filing

16   changes that analysis or the particulars of that as

17   well.  Would you like me to address that at this time?

18                   THE COURT:  No need.  Thank you.

19                   MR. GRIVNER:  Thank you, Your Honor.

20                   THE COURT:  Let's hear from the

21   defendants.

22                   MR. ATHEY:  Your Honor, Clayton Athey

23   from Prickett Jones for the defendants.  I'm not going

24   to go into a lot of background about the dispute

1  between the parties.  I think we address that in our

2  papers.

3              Needless to say, there are competing

4  California actions, the first of which was filed by

5  Mr. Alexander against Mr. Schatt on July 2nd of this

6  year.  And it alleged some intertwined breach of oral

7  contract conversion and related claims against

8  Mr. Schatt.

9              And Cred and Cred Capital then filed

10  an action against Mr. Alexander in the California

11  court alleging that Mr. Alexander's actions in forming

12  Cred were in breach of his employment contract and

13  were part of a larger scheme to steal more than

14  $2 million worth of cryptocurrency assets.

15              I think where we are today is really

16  talking about what the effect of these bankruptcy

17  proceedings will be on, I guess, primarily this action

18  and maybe somewhat on the California action as well.

19              But I wanted to turn first to the

20  automatic bankruptcy stay and the letter that

21  Mr. Grivner filed with the Court last night.  The

22  letter asserts -- and it's in the second paragraph --

23  that the plaintiff is "not seeking any relief against

24  any of the bankruptcy debtors or their property."  And

1   that's just factually inaccurate.

2                    Nominal defendant Cred Capital is a

3   debtor.  It filed for Chapter 11 bankruptcy

4   protection, and it's under the jurisdiction of the

5   Bankruptcy Court.  The two primary defendants in the

6   Chancery action are Mr. Schatt and Mr. Podulka, and

7   they're serving as directors of Cred Capital, and

8   that's the whole reason why the defendant is here.

9                    So this is exactly the type of

10  litigation that the bankruptcy automatic stay statute

11  addresses.  Specifically it's Section 362(a)(1) that

12  provides for a stay for "[any] judicial,

13  administrative ... action or proceeding against the

14  debtor."  So the fact that this action is proceeding

15  against debtor Cred Capital makes this action subject

16  to the automatic stay.

17                   That's not the end of the analysis,

18  though, because there are other subparts to

19  Section 362(a).  One of those is 362(a)(3).  And that

20  says that the stay applies to "any act to obtain

21  possession of property of the estate or of property of

22  the estate" -- and the important part -- "or to

23  exercise control over property of the estate."

24                   So that means that the automatic stay

13

1  does not just apply if the debtor is a party to the

2  litigation.  The statute looks at the substance of the

3  action and how the action will affect the debtor's

4  property, and particularly at the exercise of control

5  over the property of the debtor estate.

6              So the substance of this action is to

7  determine who may exercise control over Cred Capital

8  and its property.  And Cred, Inc., is currently

9  exercising control over Cred Capital and its property

10  through its officers Mr. Podulka and Mr. Schatt.

11              Mr. Alexander's litigation, both here

12  and in California, is seeking to impair that exercise

13  of control over Cred Capital and its property.  And in

14  fact, it's seeking to invalidate the voting stock that

15  Cred has in Cred Capital.  And they may not explicitly

16  be asking the Court to do that with Mr. Grivner's

17  statement today, but that's the practical effect of

18  what the Court's ruling would be if the Court allows

19  this 225 proceeding to proceed.

20              So this is explicitly the type of

21  litigation that 362(a)(3) of the bankruptcy code

22  addresses.  So plaintiff's suggestion that this is not

23  about a bankruptcy debtor or its property is just

24  wrong.  This impacts Cred Capital's exercise of

1  control over its assets.

2              And the action also implicates --

3  impacts Cred, Inc., which is the debtor before the

4  Bankruptcy Court, and its exercise of control over its

5  subsidiary, Cred Capital.

6              There's another statement in

7  plaintiff's papers that we wanted to point out, and

8  that was in Footnote No. 1 of plaintiff's reply.  And

9  the plaintiff states, "If Alexander prevails in this

10  action, he, and *not* Defendants, is the proper, sole

11  director of Cred Capital, and the Cred Capital

12  Petition" -- that's the bankruptcy petition -- "is

13  invalid as lacking proper corporate authority."

14              So with that statement, the plaintiff

15  appears to be acknowledging that control of Cred

16  Capital is a threshold determination facing even the

17  Bankruptcy Court.  And that's true.  And Judge Dorsey

18  is going to need to decide any challenges to Cred's

19  control of Cred Capital in the Bankruptcy Court

20  because that control will affect how the Chapter 11

21  proceedings as to Cred Capital go forward.

22              It's worth noting that plaintiff's

23  conduct in misappropriating the approximately

24  $2 million worth of cryptocurrency is part of the

1   reason for these Chapter 11 bankruptcy proceedings.

2   So as I understand it, when word got out that

3   Mr. Alexander had taken these assets, it led investors

4   to withdraw substantial amounts of capital,

5   approximately $25 million.  And that lack of investor

6   support limited the company's options and helped force

7   the entities into Chapter 11.

8                   So turning to some language in

9   plaintiff's reply with which we strongly disagree.

10  Plaintiff makes some sweeping pronouncements.  And

11  looking at paragraph 10 of the reply, there's a quote

12  there that, "Actions involving corporate governance

13  brought in this Court against non-debtors are not

14  subject to the automatic stay."  And that's just not

15  the law.

16                  And the cases the plaintiff cite are

17  inapposite.  Both of those cases are in the 211

18  context of stockholders who are seeking -- debtor

19  corporations that are -- stockholders of debtor

20  corporations seeking to compel annual stockholder

21  meetings.  And those cases discuss why a 211

22  proceeding is straightforward enough that the Court

23  has allowed them to proceed notwithstanding the

24  automatic stay.

1              Looking at the first of the cases,

2   it's a Bankruptcy Court decision, *In re SS Body Armor*.

3   It explains the rationale for allowing these 211

4   actions to proceed.  And there's a quote in that case

5   at page 605, "If the primary purpose of Chapter 11 is

6   the rehabilitation of debtor corporations, there is no

7   reason to disenfranchise equity holders *so long as*

8   *their exercise of voting rights does not impair such*

9   *rehabilitation*."

10             So the Bankruptcy Court in *Body Armor*

11  was actually quoting from a second of the two

12  authorities that plaintiff relies on, that's the

13  Chancery Court's decision in *Fogel v. U.S. Energy*

14  *Systems*.  And the rationale of both of those cases was

15  not merely questions of corporate governance, but it

16  was that 211 proceedings don't impede the Bankruptcy

17  Court's work with respect to the debtor corporations

18  and their property.

19             And that's the opposite of this case.

20  Here, plaintiffs are seeking what would directly

21  impact the property and control issues that are before

22  the Bankruptcy Court.

23             So moving away from the automatic stay

24  for a minute.  We cited some authorities about this

1   Court's inherent -- or this Court's authority to stay

2   225 actions.  So -- in cases where it's warranted in

3   the Court's discretion.  And we discuss the line of

4   cases, probably most prominently the *Carvel v. Andreas*

5   *Holdings* case from Vice Chancellor Jacobs.

6               That case involved a situation where a

7   court in a sister state -- in that case it was New

8   York -- was in a better position to decide a broader

9   dispute, where the corporate control issues were just

10  part of the fight.

11              And in *Carvel*, Vice Chancellor Jacobs

12  identified the "real battleground for the dispute" and

13  determined that it was New York and not Delaware and

14  that the New York court was capable of determining the

15  control issues.

16              So absent the bankruptcy proceedings,

17  we probably would be here today arguing that the real

18  battleground for this dispute is in California.  With

19  the bankruptcy proceedings, it appears that the

20  battleground has moved to the District of Delaware's

21  Bankruptcy Court.

22              We would respectfully request that to

23  the extent the Court finds the automatic stay doesn't

24  apply here -- and we suggest that it does -- but that

18

1   the Court exercise its discretion to stay this action

2   in favor of the bankruptcy action.

3              And I can -- I was planning to address

4   the *status quo* order briefly, but I will refrain from

5   doing so unless Your Honor would like me to.

6              THE COURT:  No need.  Thank you.

7              Mr. Grivner?

8              MR. GRIVNER:  Yes, Your Honor.  Just

9   very briefly, a few quick points.

10             First, with respect to the argument

11  that Cred Capital or Cred, Inc., are necessary or

12  parties that are fundamentally implicated such that

13  the automatic stay should apply.  There are many cases

14  in which a 225 action does not name the company as a

15  nominal defendant.

16             Additionally, the bankruptcy -- and

17  perhaps more fundamentally here -- Cred Capital's

18  filing of a bankruptcy petition is based on a premise

19  that defendants did have control of the company, were

20  authorized to make such a filing.  That is a question

21  that needs to be answered in a corporate governance

22  context, not in the context of a bankruptcy but in the

23  context of this governance dispute.

24             And the proper forum for such a

1  dispute and one that can be heard in a summary

2  proceeding in an expedited proceeding is a 225 action

3  heard before Your Honor.  And from our perspective,

4  having this heard is both prudent from a judicial

5  economy perspective and also permissible under the

6  laws of both this Court as well as the Bankruptcy

7  Court.

8          THE COURT:  Thank you, Mr. Grivner.

9  Does anyone else have prepared remarks?

10         (No response.)

11         THE COURT:  All right.  I am prepared

12  to give you a bench ruling.  I'll begin with a brief

13  background.

14         Cred, Incorporated, which I'll refer

15  to as "Cred," is a financial asset management company

16  focused on cryptocurrency.  Daniel Brian Schatt is the

17  CEO of Cred and Joseph Podulka is the CFO.  And I'll

18  refer to them collectively as "defendants."

19         In 2018, Cred hired plaintiff James

20  Alexander, who I'll refer to as "plaintiff," to be its

21  head of capital markets.  In March 2020, nominal

22  defendant Cred Capital, Incorporated, which I'll refer

23  to as "Cred Capital" was formed.  And I use the

24  passive voice here intentionally because the

1  circumstances surrounding its formation are in

2  dispute.

3            Plaintiff contends that Cred Capital

4  was formed to exist wholly separate from Cred and that

5  he is its president and sole director.  Defendants

6  disagree, contending that Cred wholly owns Cred

7  Capital.

8            A few months after Cred Capital's

9  formation, defendants terminated plaintiff's

10  employment, or purported to.  In response, plaintiff

11  filed suit against Schatt on July 2nd, 2020, in a

12  California state court.  Cred and Cred Capital then

13  filed a complaint against plaintiff in the same

14  California court on July 15, 2020.

15            On August 27, 2020, the California

16  court denied plaintiff's motion for a preliminary

17  injunction.

18            On November 4, 2020, plaintiff filed a

19  complaint in this court seeking a declaration pursuant

20  to Section 225 of the Delaware General Corporation Law

21  concerning who comprises Cred Capital's directors and

22  officers.  With his complaint, plaintiff filed a

23  motion for expedited proceedings and a motion for a

24  *status quo* order.

1          Defendants filed an opposition to both

2   motions as well as a notice of suggestion of Chapter

3   11 bankruptcy as an automatic stay of proceedings.

4   Defendants opposed the motion to expedite and the

5   motion for a *status quo* order based on the suggestion

6   of bankruptcy.

7          When a debtor files for Chapter 11

8   bankruptcy, Section 362 of the Bankruptcy Code imposes

9   an immediate automatic stay on proceedings involving

10  that debtor or its property.

11         Section 362(a)(1) applies a stay to

12  "the commencement or continuation, including the

13  issuance or employment of process, of a judicial,

14  administrative, or other action or proceeding against

15  the debtor that was or could have been commenced

16  before the commencement of the case under this title

17  ...."  And that appears, to me, to apply to the these

18  proceedings against defendant and debtor Cred Capital.

19         Section 362(a)(3) stays "any act to

20  obtain possession of property of the estate or

21  property from the estate or to exercise control over

22  property of the estate."  That appears to be

23  implicated by the fact that Cred has filed Chapter 11

24  proceedings as well and claims to be the sole owner of

1   Cred Capital.

2                   Although it is true that this court

3   has permitted limited corporate governance disputes

4   concerning the exercise of voting rights to proceed

5   despite application of an automatic stay where those

6   disputes had no effect over the debtor's assets, this

7   case does not appear to fall within that limited

8   exception.  As plaintiff himself stated in his reply

9   brief, if he prevails in this action he, and not

10  defendants, is the proper sole director of Cred

11  Capital and the Cred Capital bankruptcy proceeding

12  lacks corporate authority.

13                  So this sort of case seems to be one

14  of the primary reasons why the automatic stay exists,

15  and that's to eliminate any inefficiencies or

16  questions in other proceedings regarding control over

17  the property of the estate.

18                  So, in my view, the automatic stay

19  applies.  And, consequently, there's no reason for me

20  to grant or deny any motions because the beauty of the

21  automatic stay is that it's automatic.

22                  Now, plaintiff has claims he has

23  brought here.  And if he wants to proceed forward with

24  those claims, I think the next course of action is to

23

1  go to Judge Dorsey in the bankruptcy proceedings and

2  seek to lift the automatic stay to permit these

3  proceedings to move forward.  And, if successful, I

4  will hear plaintiff's arguments and any motions he

5  wishes to pursue.

6                  But, short of that, I do not intend to

7  do anything further with this action.

8                  So, with that, Counsel, are there any

9  questions?

10                  MR. GRIVNER:  No, Your Honor.  Thank

11  you.

12                  MR. ATHEY:  No questions, Your Honor.

13                  THE COURT:  Okay.  Well, thank you for

14  your presentations today.  We are adjourned.

15                  (Proceedings concluded at 3:40 p.m.)

16                        -  -  -

17

18

19

20

21

22

23

24

24

1                              CERTIFICATE

2

3              I, KAREN L. SIEDLECKI, Official Court

4    Reporter for the Court of Chancery of the State of

5    Delaware, Registered Merit Reporter, and Certified

6    Realtime Reporter, do hereby certify that the

7    foregoing pages numbered 3 through 23 contain a true

8    and correct transcription of the proceedings as

9    stenographically reported by me at the hearing in the

10   above cause before the Vice Chancellor of the State of

11   Delaware, on the date therein indicated, except for

12   the rulings at pages 19 through 23, which were revised

13   by the Vice Chancellor.

14                  IN WITNESS WHEREOF I have hereunto set

15   my hand at Wilmington, this 28th day of November,

16   2020.

17

18

19

20              /s/Karen L. Siedlecki
21              ---------------------------
                     Karen L. Siedlecki
22               Official Court Reporter
                 Registered Merit Reporter
23               Certified Realtime Reporter

24

                   CHANCERY COURT REPORTERS