# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CRED INC., *et al.*, | ) Case No. 20-12836 (JTD) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. 271** |

### PROOF OF PUBLICATION OF DIANE FITZGIBBON OF NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, SALE OBJECTION, SALE HEARING AND OTHER DEADLINES RELATED THERETO IN SAN FRANCISCO CHRONICLE

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566). The Debtors' headquarters are located at 3 East Third Avenue, Suite 200, San Mateo, California 94401.

# DECLARATION OF PUBLICATION OF
## SAN FRANCISCO CHRONICLE

DIANE FITZGIBBON

declares that:

The annexed advertisement has been regularly published in the

**SAN FRANCISCO CHRONICLE**

which is and was at all times herein mentioned established as newspaper of general circulation in the City and County of San Francisco, State of California, as that term is defined by Section 6000 of the Government Code.

SAN FRANCISCO CHRONICLE
(Name of Newspaper)

901 Mission Street
San Francisco, CA 94103

From  12/24/2020
To    12/24/2020
Namely, on  12/24/2020

(Dates of Publication)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  12/28/2020

at San Francisco, California.

*Diane Fitzgibbon*

DIANE FITZGIBBON

---

[Annexed newspaper advertisement — two notices from the United States Bankruptcy Court for the District of Delaware, In re: Cred Inc., et al., Case No. 20-12836 (JTD), Jointly Administered:

1. NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, SALE OBJECTION, SALE HEARING AND OTHER DEADLINES RELATED THERETO — setting forth the Bidding Procedures Order entered December 21, 2020; Proposal Deadline January 6, 2021 at 5:00 p.m.; Final Bid Deadline January 15, 2021 at 5:00 p.m.; Auction January 18, 2021 at Paul Hastings LLP, 600 Travis Street, Fifty-Eighth Floor, Houston, TX 77002; Sale Objection Deadline January 27, 2021 at 5:00 p.m.; Sale Hearing February 3, 2021 at 1:00 p.m. before the Honorable John T. Dorsey, United States Bankruptcy Judge, 824 N. Market St, Wilmington, Delaware 19801. Notice parties include Paul Hastings LLP (James T. Grogan, Mack Wilson, Alexander Bongartz, Derek Cash); Teneo Capital LLC (Chris Wu); Cousins Law LLC (Scott D. Cousins); Dated December 21, 2020, Wilmington, Delaware. Scott D. Cousins (No. 3079), COUSINS LAW LLC, Brandywine Plaza West, 1521 Concord Pike, Suite 301, Wilmington, Delaware 19803, Co-Counsel to the Debtors. Debtors listed: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566). Debtors' mailing address: 3 East Third Avenue, Suite 200, San Mateo, California 94401.

2. NOTICE OF BAR DATES FOR FILING PROOFS OF CLAIM, INCLUDING SECTION 503(b)(9) CLAIMS — Petition Date November 7, 2020; Bar Date Order entered December 21, 2020; (a) General Bar Date February 10, 2021 at 5:00 p.m.; (b) Governmental Bar Date May 6, 2021 at 5:00 p.m. Proofs of Claim to be filed with Donlin, Recano & Company, Inc., Re: Cred Inc., et al., P.O. Box 199043, Blythebourne Station, Brooklyn, NY 11219 (U.S. Mail) or 6201 15th Avenue, Brooklyn, NY 11219 (Hand Delivery/Overnight). Electronic filing via https://www.donlinrecano.com/Clients/cred/FileClaim. Debtors' Schedules to be filed on or before January 7, 2021. Contact DRC toll free at 1-877-739-9988 or credinfo@donlinrecano.com. Scott D. Cousins, COUSINS LAW LLC, Brandywine Plaza West, 1521 Concord Pike, Suite 301, Wilmington, Delaware 19803, Co-Counsel to the Debtors.]

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 11 |
| CRED INC., *et al.*, ) | Case No. 20-12836 (JTD) |
| Debtors.[1] ) | (Jointly Administered) |

**NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, SALE OBJECTION, SALE HEARING AND OTHER DEADLINES RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On December 21, 2020, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an Order (the "Bidding Procedures Order") authorizing certain procedures (the "Bidding Procedures") to be used in connection with the sale(s) (the "Sale(s)") (including pursuant to section 363 of the Bankruptcy Code or a chapter 11 plan of reorganization) of some or all of the assets or equity interests of one or more of the above-captioned debtors in possession (collectively, the "Debtors") (such assets and equity interests, collectively, the "Assets").[2]

2. Copies of the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge on the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent, Donlin Recano & Company, at https://www.donlinrecano.com/cred (the "DRC Website"). Copies of these documents are also available for inspection during regular business hours at the Office of the Clerk of the Court, located at 824 N. Market St, Wilmington, Delaware 19801, and may be viewed for a fee on the internet at the Court's website (https://www.deb.uscourts.gov/) by following the directions for accessing the ECF system on such website.

3. On **February 3, 2021 at 1:00 p.m. (prevailing Eastern Time),** a hearing (the "Sale Hearing") will take place before the Honorable John T. Dorsey, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market St, Wilmington, Delaware 19801, where the Debtors will present for the Court's approval one or more bid(s) for the Assets (each, a "Successful Bid").

4. Pursuant to the Bidding Procedures Order, written preliminary indications of interest (each, a "Proposal") are to be submitted no later than **January 6, 2021 at 5:00 p.m. (prevailing Eastern Time)** (the "Proposal Deadline") to the following parties: (i) the Debtors, 3 East Third Avenue, Suite 200, San Mateo, CA 94401; (ii) Paul Hastings LLP, 600 Travis Street, Fifty-Eighth Floor, Houston TX, 77002, Attn: James T. Grogan, Esq., Mack Wilson, Esq., Alexander Bongartz, Esq., and Derek Cash, Esq., proposed counsel for the Debtors, jamesgrogan@paulhastings.com, mackwilson@paulhastings.com, alexbongartz@paulhastings.com, derekcash@paulhastings.com; and (iii) Teneo Capital LLC, 280 Park Avenue, 4th Floor, New York, NY, 10017, Attn: Chris Wu, the Debtors' investment banker, chris.wu@teneo.com (the foregoing entities in clauses (i) through (iii), the "Bid Notice Parties").

5. To be eligible to participate in the bidding process for any or all Assets, a Prospective Bidder must deliver to the Bid Notice Parties: (i) if the Prospective Bidder wishes access to information regarding the Assets, an executed confidentiality agreement, in form and substance satisfactory to the Debtors; (ii) a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the Prospective Bidder has a *bona fide* interest in purchasing the specified Assets; and (iii) preliminary proof of the Prospective Bidder's financial capacity to close the proposed Sale.

6. Any party that intends to participate in the Auction (each, a "Prospective Bidder") must submit its final, binding bid (a "Final Bid") in writing to the Bid Notice Parties on or before **January 15, 2021 at 5:00 p.m. (prevailing Eastern Time)** (the "Final Bid Deadline"); provided that the Debtors, with the consent of the Committee, shall have the discretion to extend in writing the Final Bid Deadline for any Prospective Bidder. Any bid received after the Final Bid Deadline will not constitute a Qualified Bid (as such term is defined in the Bidding Procedures). Contemporaneously with the submission of its Final Bid, each Prospective Bidder must provide a Good Faith Deposit (as such term is defined in the Bidding Procedures) by wire transfer or certified check pursuant to delivery instructions to be provided by the Debtors prior to the Final Bid Deadline.

7. The Debtors, with the consent of the Committee, will evaluate each Qualified Bid using any and all factors that the Debtors deem reasonably pertinent, including, without limitation: (i) the amount of the Purchase Price, including the form of consideration; (ii) the risks and timing associated with consummating the applicable Sale, (iii) the Assets included in or excluded from the Qualified Bid, including the Proposed Assumed Contracts, and (iv) the ability to obtain any and all necessary regulatory or other approvals for the proposed Sale.

8. The Debtors, with the consent of the Committee, will make a determination regarding which Final Bid(s) qualify as Qualified Bid(s) and notify all Prospective Bidders whether they have been selected as Qualified Bidders prior to the Auction.

9. If the Debtors receive more than one Qualified Bid for any of the Assets, the Debtors will conduct the Auction. The Auction, if required, will be conducted at the offices of Paul Hastings LLP, 600 Travis Street, Fifty-Eighth Floor, Houston, Texas 77002 on **January 18, 2021, at a time to be determined**, or at such other time and location as designated by the Debtors, provided that the Debtors may designate a telephonic or video-enabled platform in lieu of an in-person Auction.

10. If the Debtors receive no more than one Qualified Bid with respect to any of the Assets, the Debtors may determine, with the consent of the Committee, not to hold an auction for such Assets and instead declare the applicable Qualified Bid as the Successful Bid for such Assets and request that the Court approve the applicable Purchase Agreement at the Sale Hearing.

11. Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction and (ii) each Qualified Bid it submits at the Auction is a binding, good faith and bona fide offer to purchase the Assets identified in such bid.

12. Pursuant to the Bidding Procedures Order, the Debtors may, as they deem necessary and appropriate in the prudent exercise of their business judgment, with the consent of the Committee execute one or more "stalking horse" agreements (each the "Stalking Horse Agreement") for any subset of the Assets of such Stalking Horse Agreement(s), which may, subject to Court approval, include bid protections; *provided, however* that the Assets shall not include cryptocurrency without the consent of the Committee.

13. Promptly after the conclusion of the Auction, the Debtors shall file with the Court, serve on the Sale Notice Parties (as defined in the Bidding Procedures Order) and cause to be published on the website maintained by Donlin Recano & Company, the Debtors' claims and noticing agent, at https://www.donlinrecano.com/cred (the "DRC Website"), the results of the Auction, which will include (i) a copy of all Successful Bid(s) and Backup Bid(s), if any, (ii) the identities of the Successful Bidder(s) and Backup Bidder(s), and (iii) a copy of the Purchase Agreements(s) of the Successful Bidder(s).

14. Promptly after the conclusion of the Auction, the Debtors will (a) file with the Court, serve on the Sale Notice Parties, by email, and cause to be published on the DRC Website, (i) the Notice of the Proposed Assumed Contracts and (ii) each Successful Bidder's and Backup Bidder's proposed form of adequate assurance of future performance with respect to the relevant Proposed Assumed Contracts and (b) mail the Notice of Proposed Assumed Contracts to all relevant Counterparties.

15. The Good Faith Deposits will be held by the Debtors in a non-interest-bearing escrow or trust account and will not become property of the Debtors' estates. The Good Faith Deposits will be retained by the Debtors, notwithstanding the Court's approval of any Sale(s) for the applicable Assets, until no later than five (5) business days after the conclusion of the Auction, except for the Good Faith Deposit(s) of Successful Bidder(s) and Backup Bidder(s); provided that, if a Stalking Horse Bidder is not the Successful Bidder or Backup Bidder, its Good Faith Deposit will be returned to such Stalking Horse Bidder in accordance with the applicable Stalking Horse Agreement. The Debtors will retain the Good Faith Deposits of Backup Bidders until the earlier of (i) five (5) business days after the closing of the Sale(s) of the applicable Assets and (ii) 60 days after the date of the Sale Hearing.

16. At the closing of a Sale, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit. If a Successful Bidder fails to consummate a Sale because of a breach that entitles the Debtors to terminate the applicable Purchase Agreement, then, the Debtors will be entitled to retain such Successful Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtors and their estates as a result of such breach or failure to perform.

17. Each Successful Bid (including any Backup Bid that is subsequently deemed a Successful Bid) will be subject to approval by the Court. The Sale Hearing will take place on **February 3, 2021 at 1:00 p.m. (prevailing Eastern Time)** before the Honorable John T. Dorsey, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market St, Wilmington, Delaware 19801.

18. At the Sale Hearing, the Debtors will seek entry of order(s) (each, a "Sale Order") approving, among other things, the Sale(s) of some or all of the Assets to the Successful Bidder(s). The Sale Hearing may be adjourned or rescheduled by the Debtors.

19. The Debtors may reject at any time, before entry of the applicable Sale Order, any bid that, the Debtors determine, with the consent of the Committee is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors and their estates.

20. Objections to a Sale, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code (each, a "Sale Objection"), or to entry of a Sale Order must (i) be in writing and specify the nature of such objection, (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court, and (iii) be filed with the Court and served on: (i) the Chambers of the Honorable John T. Dorsey, United States Bankruptcy Court for the District of Delaware, 824 N. Market St, Wilmington, DE 19801; (ii) the Debtors, 3 East Third Avenue, Suite 200, San Mateo, CA 94401; (iii) Paul Hastings LLP, 600 Travis Street, Fifty-Eighth Floor, Houston TX, 77002, Attn: James T. Grogan, Esq., Mack Wilson, Esq., Alexander Bongartz, Esq., and Derek Cash, Esq., proposed counsel for the Debtors, jamesgrogan@paulhastings.com, mackwilson@paulhastings.com, alexbongartz@paulhastings.com, derekcash@paulhastings.com (iv) Cousins Law LLC, Brandywine Plaza West, 1521 Concord Pike, Suite 301, Wilmington, DE 19803, Attn: Scott D. Cousins, proposed counsel for the Debtors, scott.cousins@cousins-law.com, (v) the Office of the United States Trustee, 844 N. King St #2207, Wilmington, DE 19801, Attn: Joseph McMahon and John Schanne, joseph.mcmahon@usdoj.gov, john.schanne@usdoj.gov; (vi) proposed counsel to the Committee (a) McDermott Will & Emery LLP, 340 Madison Avenue, New York, NY 10173-1922, Attn. Timothy Walsh and Darren Azman (twwalsh@mwe.com, dazman@mwe.com) and (b) McDermott Will & Emery LLP, The Nemours Building, 1007 North Orange Street, 4th Floor, Wilmington, DE 19801, Attn. David Hurst (dhurst@mwe.com); (vii) the Internal Revenue Service; and (viii) the United States Attorney for the District of Delaware (collectively, the "Objection Recipients") by **January 27, 2021, at 5:00 p.m. (prevailing Eastern Time)**.

21. All Sale Objections not resolved by the parties prior thereto will be heard at the Sale Hearing. **THE FAILURE OF ANY PARTY TO TIMELY FILE AND SERVE A SALE OBJECTION FOREVER WILL BAR SUCH PARTY FROM ASSERTING, AT THE APPLICABLE SALE HEARING OR THEREAFTER, ANY OBJECTION TO THE RELIEF REQUESTED IN THE MOTION, OR TO THE CONSUMMATION OF THE APPLICABLE SALE(S), INCLUDING THE TRANSFER OF THE ASSETS TO THE APPLICABLE SUCCESSFUL BIDDER(S), FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE.**

22. If a Successful Bidder fails to consummate the approved Sale, a hearing to authorize the assumption and assignment of Proposed Assumed Contracts to the applicable Backup Bidder(s) will be held before the Court on no less than five (5) business days' notice, with objections due at least one (1) business day prior to such hearing, unless otherwise ordered by the Court. For the avoidance of doubt, the scope of such hearing will be limited to issues relating to the adequate assurance of future performance by the applicable Backup Bidder(s).

23. The Debtors may, in any manner consistent with applicable law, and with the consent of the Committee, modify the procedures and deadlines set forth herein (including, without limitation, extending the Final Bid Deadline, modifying the Qualified Bid requirements, modifying the procedures for conducting the Auction, rescheduling the Auction or adjourning the Sale Hearing) or adopt new rules, procedures and deadlines in order to, in their sole and reasonable discretion, maximize value for their estates; provided that the Debtors may not amend these Bidding Procedures or the bidding process to reduce their obligations to obtain the consent of the Committee without the consent of the Committee or further order of the Court. All such modifications and additional rules will be communicated to each of the Sale Notice Parties, Prospective Bidders and Qualified Bidders; provided that, to the extent such modifications occur at the Auction, disclosure of such modifications may be limited to those in attendance at the Auction.

24. This Notice is subject to the full terms and conditions set forth in the Bidding Procedures Order and the Bidding Procedures. The Debtors reserve the right to, in their reasonable discretion, modify the Bidding Procedures at any time, including, without limitation, to extend the deadlines and proposed dates set forth therein, including the Final Bid Deadline, changing the date of the Auction, and adjourning and/or rescheduling the Sale Hearing; provided that the Debtors may not amend the Bidding Procedures to reduce or otherwise modify their obligations to obtain the consent of the Committee without the consent of the Committee or further Court Order.

25. Copies of the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge on the DRC Website. Copies of these documents are also available for inspection during regular business hours at the Office of the Clerk of the Court, located at 824 N. Market St, Wilmington, Delaware 19801, and may be viewed for a fee on the internet at the Court's website (https://www.deb.uscourts.gov/) by following the directions for accessing the ECF system on such website.

26. Parties interested in receiving additional information about the Debtors, the Bidding Procedures, the Sale(s), the Assets, or the Auction may make requests to Teneo, the Debtors' proposed investment banker

Dated: December 21, 2020, Wilmington, Delaware

Scott D. Cousins (No. 3079), **COUSINS LAW, LLC,** Brandywine Plaza West, 1521 Concord Pike, Suite 301, Wilmington, Delaware 19803, *Co-Counsel to the Debtors*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures.

# NATION

## WASHINGTON

# Angry response to pardons in Blackwater case

**By Eric Tucker**

WASHINGTON — The courtroom monitors carried the image of a smiling 9-year-old boy as his father pleaded for the punishment of four U.S. government contractors convicted in shootings that killed that child and more than a dozen other Iraqi civilians.

"What's the difference," Mohammad Kinani al-Razzaq asked a Washington judge at an emotional 2015 sentencing hearing, "between these criminals and terrorists?"

The shootings of civilians by Blackwater employees at a crowded Baghdad traffic circle in September 2007 prompted an international outcry, left a reputational black eye on U.S. operations at the height of the Iraq war and put the government on the defensive over its use of private contractors in military zones. The resulting criminal prosecutions spanned years in Washington but came to an abrupt end Tuesday when President Trump pardoned the convicted contractors, an act that human rights activists and some Iraqis decried as a miscarriage of justice.

"The infamous Blackwater company killed Iraqi citizens at Nisoor Square. Today we heard they were released upon personal order by President Trump, as if they don't care for the spilled Iraqi blood," said Saleh Abed, a Baghdad resident walking in the square.

The United Nations' Human Rights office said Wednesday that it was "deeply concerned" by the pardons, which it said "contributes to impunity and has the effect of emboldening others to commit such crimes in the future." The Iraqi Foreign Ministry said the pardons "did not take into account the seriousness of the crime committed," and that it would urge the U.S. to reconsider.

Al-Razzaq, father of the slain boy, told the BBC that the pardon decision "broke my life again."

Lawyers for the contractors, who had aggressively defended the men for more than a decade, offered a different take.

They have long asserted that the shooting began only after the men were ambushed by gunfire from insurgents and then shot back in defense. They argued that the trial that ended with their convictions was tainted by false testimony and withheld evidence.

The FBI and Congress opened investigations. The guards would later be charged in the deaths of 14 civilians, including women and children, in what U.S. prosecutors said was a wild, unprovoked attack by sniper fire, machine guns and grenade launchers against unarmed Iraqis.

Adding to the angry fallout among Iraqis was the involvement of Blackwater, a security firm founded by Erik Prince, a former Navy SEAL who is a Trump ally and brother of Education Secretary Betsy DeVos. The company had already developed an unfavorable reputation for acting with impunity, its guards frequently accused of firing shots at the slightest pretext, including to clear their way in traffic.

*Eric Tucker is an Associated Press writer.*


Associated Press
From left: Former Blackwater guards Dustin Heard, Evan Liberty, Nicholas Slatten and Paul Slough were convicted in a 2007 massacre in Baghdad that killed 14 Iraqi civilians.

# Trump vetoes defense bill, setting up override vote

**By Kevin Freking**

WASHINGTON — President Trump on Wednesday vetoed the annual defense policy bill, following through on threats to veto a measure that has broad bipartisan support in Congress and potentially setting up the first override vote of his presidency.

The bill affirms 3% pay raises for U.S. troops and authorizes more than $740 billion in military programs and construction.

The action came while Trump was holed up at the White House, stewing about his election loss and escalating his standoff with Republicans as he tried to pressure them to back his efforts to overturn the results.

The House was poised to return Monday, and the Senate on Tuesday, to consider votes to override the president's veto of the National Defense Authorization Act, or NDAA.

Trump's move provoked swift condemnation, with House Speaker Nancy Pelosi calling it "an act of staggering recklessness that harms our troops, endangers our security and undermines the will of the bipartisan Congress."

Sen. Jim Inhofe, R-Okla., chairman of the Senate Armed Services Committee, avoided any criticism of Trump, but called the NDAA "absolutely vital to our national security and our troops. ... Our men and women who volunteer to wear the uniform shouldn't be denied what they need — ever."

Long before issuing the veto, Trump offered a series of rationales for rejecting it. He has called for lawmakers to include limits on social media companies he claimed are biased against him — and to strip out language that allows for the renaming of military bases such as Fort Benning and Fort Hood that honor Confederate leaders. He has claimed the biggest winner from the defense bill would be China.

Trump cited those objections and stated that the measure "fails to include critical national security measures, includes provisions that fail to respect our veterans and our military's history, and contradicts efforts by my Administration to put America first in our national security and foreign policy actions. It is a 'gift' to China and Russia."

Both the House and Senate passed the measure by margins large enough to override a veto from the president. Trump had vetoed eight bills previously, but those vetoes were sustained because supporters did not gain the two-thirds vote needed in each chamber for the bill to become law without Trump's signature.

Senate Majority Leader Mitch McConnell had urged passage despite Trump's threat to veto it. McConnell said it was important for Congress to continue its nearly six-decade-long streak of passing the defense policy bill.

*Kevin Freking is an Associated Press writer.*

## COLORADO

# Election worker sues president's campaign, media

**By David Bauder**

NEW YORK — An election systems worker driven into hiding by death threats has filed a defamation lawsuit against President Trump's campaign, two of its lawyers and some conservative media figures and outlets.

Eric Coomer, security director at the Colorado-based Dominion Voting Systems, said he wants his life back after being named in false charges as a key actor in "rigging" the election for President-elect Joe Biden. There has been no evidence that the election was rigged.

His lawsuit, filed Tuesday in district court in Denver County, Colo., names the Trump campaign, lawyers Rudy Giuliani and Sidney Powell, conservative columnist Michelle Malkin, the website Gateway Pundit, Colorado conservative activist Joseph Oltmann, and conservative media Newsmax and One America News Network.

"I have been thrust into the public spotlight by people with political and financial agendas but, at heart, I am a private person," Coomer said in a statement.

"While I intend to do everything I can to recapture my prior lifestyle, I have few illusions in this regard," he said. "And so, today, I put my trust in the legal process, which has already exposed the truth of the 2020 presidential election."

Dominion, which provided vote-counting equipment to several states, has denied accusations that it switched Trump votes in Biden's favor, and no evidence has emerged to support those charges.

Dominion and another voting technology company, Smartmatic, have begun to fight back against being named in baseless conspiracy theories. After legal threats were made, Fox News Channel and Newsmax in recent days have aired retractions of some claims made on their networks.

His lawyers said Coomer has become "the face of the false claims." Coomer's name first got public exposure in a podcast by Oltmann, who claimed to have heard a strategy call of Antifa activists. When the prospect of a Trump victory was brought up, Oltmann said a man identified as "Eric from Dominion" supposedly said, "Don't worry about the election, Trump is not going to win. I made ... sure of that," adding an expletive.

In an opinion piece written for the Denver Post, Coomer wrote that he has no connections to Antifa, was never on any call and the idea that there is some recording of him is "wholly fabricated."

Coomer said earlier this month that right-wing websites posted his photo, home address and details about his family. Death threats began almost immediately.

*David Bauder is an Associated Press writer.*

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

In re:   ) Chapter 11
CRED INC., *et al.*,  ) Case No. 20-12836 (JTD)
   Debtors.[1]  ) (Jointly Administered)

**NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, SALE OBJECTION, SALE HEARING AND OTHER DEADLINES RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On December 21, 2020, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an Order (the "Bidding Procedures Order") authorizing certain procedures (the "Bidding Procedures") to be used in connection with the sale(s) (the "Sale(s)") (including pursuant to section 363 of the Bankruptcy Code or a chapter 11 plan of reorganization) of some or all of the assets or equity interests of one or more of the Debtors in the above-captioned debtors in possession (collectively, the "Debtors") (such assets and equity interests, collectively, the "Assets").[2]

2. Copies of the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge on the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent, Donlin Recano & Company, at https://www.donlinrecano.com/cred (the "DRC Website"). Copies of these documents are also available for inspection during regular business hours at the Office of the Clerk of the Court, located at 824 N. Market St, Wilmington, Delaware 19801, and may be viewed for a fee on the internet at the Court's website (https://www.deb.uscourts.gov/) by following the directions for accessing the ECF system on such website.

3. On **February 3, 2021 at 1:00 p.m. (prevailing Eastern Time)**, a hearing (the "Sale Hearing") will take place before the Honorable John T. Dorsey, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market St, Wilmington, Delaware 19801, where the Debtors will present for the Court's approval one or more bid(s) for the Assets (each, a "Successful Bid").

4. Pursuant to the Bidding Procedures Order, written preliminary indications of interest (each, a "Proposal") are to be submitted no later than **January 6, 2021 at 5:00 p.m. (prevailing Eastern Time)** (the "Proposal Deadline") to the following parties: (i) the Debtors, 3 East Third Avenue, Suite 200, San Mateo, CA 94401; (ii) Paul Hastings LLP, 600 Travis Street, Fifty-Eighth Floor, Houston TX, 77002, Attn: James T. Grogan, Esq., Mack Wilson, Esq., Alexander Bongartz, Esq., and Derek Cash, Esq., proposed counsel for the Debtors, jamesgrogan@paulhastings.com, mackwilson@paulhastings.com, alexbongartz@paulhastings.com, derekcash@paulhastings.com; and (iii) Teneo Capital LLC, 280 Park Avenue, 4th Floor, New York, NY, 10017, Attn: Chris Wu, the Debtors' investment banker, chris.wu@teneo.com (the foregoing entities in clauses (i) through (iii), the "Bid Notice Parties").

5. To be eligible to participate in the bidding process for any or all Assets, a Prospective Bidder must deliver to the Bid Notice Parties: (i) if the Prospective Bidder wishes access to information regarding the Assets, an executed confidentiality agreement, in form and substance satisfactory to the Debtors; (ii) a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the Prospective Bidder has a *bona fide* interest in purchasing the specified Assets; and (iii) preliminary proof of the Prospective Bidder's financial capacity to close the proposed Sale.

6. Any party that intends to participate in the Auction (each, a "Prospective Bidder") must submit its final, binding bid (a "Final Bid") in writing to the Bid Notice Parties on or before **January 15, 2021 at 5:00 p.m. (prevailing Eastern Time)** (the "Final Bid Deadline"); provided that the Debtors, with the consent of the Committee, shall have the discretion to extend in writing the Final Bid Deadline for any Prospective Bidder. Any bid received after the Final Bid Deadline will not constitute a Qualified Bid (as such term is defined in the Bidding Procedures). Contemporaneously with the submission of its Final Bid, each Prospective Bidder must provide a Good Faith Deposit (as such term is defined in the Bidding Procedures) by wire transfer or certified check pursuant to delivery instructions to be provided by the Debtors prior to the Final Bid Deadline.

7. The Debtors, with the consent of the Committee, will evaluate each Qualified Bid using any and all factors that the Debtors deem reasonably pertinent, including, without limitation: (i) the amount of the Purchase Price, including the form of consideration; (ii) the risks and timing associated with consummating the applicable Sale, (iii) the Assets included in or excluded from the Qualified Bid, including the Proposed Assumed Contracts, and (iv) the ability to obtain any and all necessary regulatory or other approvals for the proposed Sale.

8. The Debtors, with the consent of the Committee, will make a determination regarding which Final Bid(s) qualify as Qualified Bid(s) and notify all Prospective Bidders whether they have been selected as Qualified Bidders prior to the Auction.

9. If the Debtors receive more than one Qualified Bid for any of the Assets, the Debtors will conduct the Auction. The Auction, if required, will be conducted at the offices of Paul Hastings LLP, 600 Travis Street, Fifty-Eighth Floor, Houston, Texas 77002 on **January 18, 2021, at a time to be determined**, or at such other time and location as designated by the Debtors, provided that the Debtors may designate a telephonic or video-enabled platform in lieu of an in-person Auction.

10. If the Debtors receive no more than one Qualified Bid with respect to any of the Assets, the Debtors may determine, with the consent of the Committee, not to hold an auction for such Assets and instead declare the applicable Qualified Bid as the Successful Bid for such Assets and request that the Court approve the applicable Purchase Agreement at the Sale Hearing.

11. Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction and (ii) each Qualified Bid it submits at the Auction is a binding, good faith and bona fide offer to purchase the Assets identified in such bid.

12. Pursuant to the Bidding Procedures Order, the Debtors may, as they deem necessary and appropriate in the prudent exercise of their business judgment, with the consent of the Committee execute one or more "stalking horse" agreements (each the "Stalking Horse Agreement") for any subset of the Assets of such Stalking Horse Agreement(s), which may, subject to Court approval, include bid protections; *provided, however* that the Assets shall not include cryptocurrency without the consent of the Committee.

13. Promptly after the conclusion of the Auction, the Debtors shall file with the Court, serve on the Sale Notice Parties (as such term is defined in the Bidding Procedures Order) and cause to be published on the website maintained by Donlin Recano & Company, the Debtors' claims and noticing agent, at https://www.donlinrecano.com/cred (the "DRC Website"), the results of the Auction, which will include (i) a copy of all Successful Bid(s) and Backup Bid(s), if any, (ii) the identities of the Successful Bidder(s) and Backup Bidder(s), and (iii) a copy of the Purchase Agreement(s) of the Successful Bidder(s).

14. Promptly after the conclusion of the Auction, the Debtors will (a) file with the Court, serve on the Sale Notice Parties, by email, and cause to be published on the DRC Website, (i) the Notice of the Proposed Assumed Contracts and (ii) each Successful Bidder's and Backup Bidder's proposed form of adequate assurance of future performance with respect to the relevant Proposed Assumed Contracts and (b) mail the Notice of Proposed Assumed Contracts to all relevant Counterparties.

15. The Good Faith Deposits will be held by the Debtors in a non-interest-bearing escrow or trust account and will not become property of the Debtors' estates. The Good Faith Deposits will be retained by the Debtors, notwithstanding the Court's approval of any Sale(s) for the applicable Assets, until no later than five (5) business days after the conclusion of the Auction, except for the Good Faith Deposit(s) of Successful Bidder(s) and Backup Bidder(s); *provided* that, if a Stalking Horse Bidder is not the Successful Bidder or Backup Bidder, its Good Faith Deposit will be returned to such Stalking Horse Bidder in accordance with the applicable Stalking Horse Agreement. The Debtors will retain the Good Faith Deposits of Backup Bidders until the earlier of (i) five (5) business days after the closing of the Sale(s) and (ii) 60 days after the date of the Sale Hearing.

16. At the closing of a Sale, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit. If a Successful Bidder fails to consummate a Sale because of a breach that entitles the Debtors to terminate the applicable Purchase Agreement, then, the Debtors will be entitled to retain such Successful Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtors and their estates as a result of such breach or failure to perform.

17. Each Successful Bid (including any Backup Bid that is subsequently deemed a Successful Bid) will be subject to approval by the Court. The Sale Hearing will take place on **February 3, 2021 at 1:00 p.m. (prevailing Eastern Time)** before the Honorable John T. Dorsey, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market St, Wilmington, Delaware 19801.

18. At the Sale Hearing, the Debtors will seek entry of order(s) (each, a "Sale Order") approving, among other things, the Sale(s) of some or all of the Assets to the Successful Bidder(s). The Sale Hearing may be adjourned or rescheduled by the Debtors.

19. The Debtors may reject at any time, before entry of the applicable Sale Order, any bid that, the Debtors determine, with the consent of the Committee is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors and their estates.

20. Objections to a Sale, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code (each, a "Sale Objection"), or to entry of a Sale Order must (i) be in writing and specify the nature of such objection, (ii) comply with the Bankruptcy Rules, Local Rules, and all orders of the Court, and (iii) be filed with the Court and served on: (i) the Chambers of the Honorable John T. Dorsey, United States Bankruptcy Court for the District of Delaware, 824 N. Market St, Wilmington, DE 19801; (ii) the Debtors, 3 East Third Avenue, Suite 200, San Mateo, CA 94401; (iii) Paul Hastings LLP, 600 Travis Street, Fifty-Eighth Floor, Houston TX, 77002, Attn: James T. Grogan, Esq., Mack Wilson, Esq., Alexander Bongartz, Esq., and Derek Cash, Esq., proposed counsel for the Debtors, jamesgrogan@paulhastings.com, mackwilson@paulhastings.com, alexbongartz@paulhastings.com, derekcash@paulhastings.com; (iv) Cousins Law LLC, Brandywine Plaza West, 1521 Concord Pike, Suite 301, Wilmington, DE 19803, Attn: Scott D. Cousins, proposed counsel for the Committee, scott.cousins@cousins-law.com, (v) the Office of the United States Trustee, 844 N. King St #2207, Wilmington, DE 19801, Attn: Joseph McMahon and John Schanne, joseph.mcmahon@usdoj.gov, john.schanne@usdoj.gov; (vi) proposed counsel to the Committee (a) McDermott Will & Emery LLP, 340 Madison Avenue, New York, NY 10173-1922, Attn. Timothy Walsh and Darren Azman (twwalsh@mwe.com, dazman@mwe.com) and (b) McDermott Will & Emery LLP, The Nemours Building, 1007 North Orange Street, 4th Floor, Wilmington, DE 19801, Attn. David Hurst (dhurst@mwe.com); (vii) the Internal Revenue Service; and (viii) the United States Attorney for the District of Delaware (collectively, the "Objection Recipients") by **January 27, 2021, at 5:00 p.m. (prevailing Eastern Time)**.

21. All Sale Objections not resolved by the parties prior thereto will be heard at the Sale Hearing. **THE FAILURE OF ANY PARTY TO TIMELY FILE AND SERVE A SALE OBJECTION FOREVER WILL BAR SUCH PARTY FROM ASSERTING, AT THE APPLICABLE SALE HEARING OR THEREAFTER, ANY OBJECTION TO THE RELIEF REQUESTED IN THE MOTION, OR TO THE CONSUMMATION OF THE APPLICABLE SALE(S), INCLUDING THE TRANSFER OF THE ASSETS TO THE APPLICABLE SUCCESSFUL BIDDER(S), FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE.**

22. If a Successful Bidder fails to consummate the approved Sale, a hearing to authorize the assumption and assignment of Proposed Assumed Contracts to the applicable Backup Bidder(s) will be held before the Court on no less than five (5) business days' notice, with objections due at least one (1) business day prior to such hearing, unless otherwise ordered by the Court. For the avoidance of doubt, the scope of such hearing will be limited to issues relating to the adequate assurance of future performance by the applicable Backup Bidder(s).

23. The Debtors may, in any manner consistent with applicable law, and with the consent of the Committee, modify the procedures and deadlines set forth herein (including, without limitation, extending the Final Bid Deadline), modifying the Qualified Bid requirements, modifying the procedures for conducting the Auction, rescheduling the Auction or adjourning the Sale Hearing) or adopt new rules, procedures and deadlines in order to, in their sole and reasonable discretion, maximize value for their estates; provided that the Debtors may not amend these Bidding Procedures or the bidding process to reduce their obligations to obtain the consent of the Committee without the consent of the Committee or further order of the Court. All such modifications and additional rules will be communicated to each of the Sale Notice Parties, Prospective Bidders and Qualified Bidders; *provided* that, to the extent such modifications occur at the Auction, disclosure of such modifications may be limited to those in attendance at the Auction.

24. This Notice is subject to the full terms and conditions set forth in the Bidding Procedures Order and the Bidding Procedures. The Debtors reserve the right to, in their reasonable discretion, modify the Bidding Procedures at any time, including, without limitation, to extend the deadlines and proposed dates set forth therein, including the Final Bid Deadline, changing the date of the Auction, and adjourning and/or rescheduling the Sale Hearing; *provided* that the Debtors may not amend and/or modify the Bidding Procedures to reduce or otherwise modify their obligations to obtain the consent of the Committee without the consent of the Committee or further Court Order.

25. Copies of the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge on the DRC Website. Copies of these documents are also available for inspection during regular business hours at the Office of the Clerk of the Court, located at 824 N. Market St, Wilmington, Delaware 19801, and may be viewed for a fee on the internet at the Court's website (https://www.deb.uscourts.gov/) by following the directions for accessing the ECF system on such website.

26. Parties interested in receiving additional information about the Debtors, the Bidding Procedures, the Sale(s), the Assets, or the Auction may make requests to Teneo, the Debtors' proposed investment banker

Dated: December 21, 2020, Wilmington, Delaware

Scott D. Cousins (No. 3079), **COUSINS LAW LLC**, Brandywine Plaza West, 1521 Concord Pike, Suite 301, Wilmington, Delaware 19803, *Co-Counsel to the Debtors*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures.

---

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

In re:   ) Chapter 11
CRED INC., *et al.*,  ) Case No. 20-12836 (JTD)
   Debtors.[1]  ) (Jointly Administered)

**NOTICE OF BAR DATES FOR FILING PROOFS OF CLAIM, INCLUDING SECTION 503(b)(9) CLAIMS**

**PLEASE TAKE NOTICE THAT:**

On November 7, 2020 (the "Petition Date"), Cred Inc. and its affiliated the debtors and debtors in possession (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

On December 21, 2020 the Court entered an order (the "Bar Date Order")[2] in the Debtors' chapter 11 cases in accordance with Bankruptcy Rule 3003(c) fixing:

(a) **February 10, 2021 at 5:00 p.m.** (prevailing Eastern Time) (the "General Bar Date") as the last date for persons or entities, other than governmental units, to file proofs of claim against any of the Debtors on account of claims arising, or deemed to have arisen, prior to the Petition Date, including, for the avoidance of doubt, claims arising under section 503(b)(9) of title 11 of the United States Code (the "Bankruptcy Code"); and

(b) **May 6, 2021 at 5:00 p.m.** (prevailing Eastern Time) (the "Government Bar Date") as the last date for all governmental units, as defined in section 101(27) of the Bankruptcy Code, to file proofs of claim against any of the Debtors on account of claims arising, or deemed to have arisen, prior to the Petition Date.

Copies of the Bar Date Order and the Proof of Claim Form may be viewed and downloaded free of charge at the website of the Debtors' claims agent, Donlin, Recano & Company, Inc. ("DRC"), *i.e.*, www.donlinrecano.com/cred, and also may be obtained by written request to DRC at credinfo@donlinrecano.com.

All proofs of claim shall be filed with DRC pursuant to the procedures provided herein **so as to actually be received** on or before the applicable Bar Date at the following address if delivered by first class mail, hand delivery, or overnight courier:

**If sent by United States Postal Service, send to:** Donlin, Recano & Company, Inc., Re: Cred Inc., et al., P.O. Box 199043, Blytheboune Station, Brooklyn, NY 11219

**If sent by Hand Delivery or Overnight Delivery, send to:** Donlin, Recano & Company, Inc., Re: Cred Inc., et al., 6201 15th Avenue, Brooklyn, NY 11219.

**Proofs of claim sent by fax or email will not be accepted.**

Alternatively, proofs of claim may be submitted electronically by using the interactive website in the following website maintained by DRC in connection with these chapter 11 cases (https://www.donlinrecano.com/Clients/cred/FileClaim).

To be properly filed, each proof of claim must (i) be signed, (ii) be written in the English language, (iii) be denominated in currency of the United States, (iv) to the extent the claim is based on one or more forms of cryptocurrency, (x) convert such cryptocurrency into U.S. currency using the conversion rate in effect as of 12:00 a.m. (prevailing Eastern Time) on the Petition Date and (y) for each form of cryptocurrency, identify the number of units, name of cryptocurrency, and conversion rate(s) used to convert the cryptocurrency into U.S. currency, (v) conform substantially with the Proof of Claim Form provided with this Notice, and (vi) be submitted with copies of supporting documents (or a summary if voluminous) or an explanation of why the supporting documents are not available. In addition, any proof of claim asserting a section 503(b)(9) claim must (a) include the value of the goods delivered to and received by the Debtors in the twenty (20) days prior to the Petition Date, (b) attach any documentation identifying the date such goods were received by the Debtors, (c) state whether the amount asserted in the proof of claim represents a combination of goods and services and, if applicable, the portion of the claim that relates solely to the value of goods, and (d) identify the particular invoices on which the section 503(b)(9) claim is based.

Any person or entity that is required, but fails, to file a Proof of Claim in accordance with the Bar Date Order on or before the applicable Bar Date: (i) shall not receive any distribution in the Debtors' chapter 11 cases on account of that claim; and (ii) shall not be permitted to vote on any chapter 11 plan for the Debtors on account of the barred claim or receive further notices regarding such claim. In addition, the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to or arising from such claim.

**Please note that the Debtors' Schedules will be filed on or before January 7, 2021.**

If you require additional information regarding this Notice, you may contact DRC toll free at 1-877-739-9988 or submit an inquiry via e-mail to credinfo@donlinrecano.com. **If you believe that you hold a claim against the Debtors, you should consult an attorney if you have any questions regarding this Notice, including whether you should file a proof of claim.**

Scott D. Cousins, **COUSINS LAW LLC**, Brandywine Plaza West, 1521 Concord Pike, Suite 301, Wilmington, Delaware 19803, *Co-Counsel to the Debtors*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

[2] Capitalized terms used by not otherwise defined in this Notice have the meanings set forth in the Bar Date Order.