**<u>Exhibit F</u>**

## ASSET MANAGEMENT AGREEMENT

This ASSET MANAGEMENT AGREEMENT (this "Agreement") is entered into as of the Effective Date set forth below between **Cred Capital, Inc.**, a Delaware corporation (the "Asset Manager"), and **Cred LLC**, a Delaware limited liability company (the "Company").

W I T N E S S E T H:

WHEREAS, the Company facilitates retail and institutional lending and borrowing on a global basis and has developed proprietary methods for leveraging cryptocurrencies and blockchain to do so;

WHEREAS, the Company desires to appoint the Asset Manager as the sole and exclusive asset manager of the Company pursuant to the terms of this Agreement; and

WHEREAS, the Asset Manager desires to accept such appointment and render such services to the Company as set forth herein for the fees specified herein;

NOW, THEREFORE, in consideration of the mutual covenants hereinafter contained, and other good and valuable consideration, the receipt and sufficiency of which is acknowledged and agreed, the Company and the Asset Manager agree as follows:

1. Services and Duties.

(a) The Asset Manager is designated as the sole asset manager for Company and is hereby granted, the discretionary authority, power, and right, for the account and in the name of the Company to take such action for and on behalf of the Company and in the name of the Company as the Asset Manager may determine to be necessary, appropriate, advisable or convenient to carry on the Company's investment and asset allocation businesses, purposes and activities, including, without limitation,

   (i) borrowing fiat and cryptocurrency from retail and institutional lenders;

   (ii) facilitating, structuring and originating loans to retail and institutional borrowers;

   (iii) selling assets to securitization vehicles and servicing those assets;

   (iv) advising Company on hedging, trading, buying, selling and transacting in cryptocurrency and fiat currency transactions and implementing such asset allocation advice; and

1

    (v) engaging in such other lawful activities incidental or ancillary thereto.

The duties of the Asset Manager include (a) monitoring applicable markets, preparing market research and data, conducting due diligence on prospective investments, loans and borrowing opportunities, analyzing and evaluating investment and credit proposals, preparing reports regarding prospective investments and credits, monitoring and evaluating the performance of the investments and credits, structuring and negotiating the terms and conditions of the Company's transactions, managing relationships with the Company's investors, lenders and borrowers and negotiating the terms of financing agreements, evaluating and executing financing agreements, managing relationships with joint venture partners, affiliates and securitization vehicles, (b) managing communications with stakeholders; (c) performing certain administrative and other functions that may be agreed upon in writing by the Asset Manager from time to time.

The Company and Asset Manager will collaborate and agree upon a written Asset Management Policy to provide specific guidance to the services to be provided by Asset Manager hereunder.

Asset Manager is not required to engage in any activity that would be illegal for it to engage in or for which it is advised by legal counsel that it should not engage in. The fee schedule applies regardless of whether Asset Manager can engage in any particular activity or not.

  (b) In discharging any of its duties under this Agreement, the Asset Manager may utilize the services of consultants, custodians, attorneys, accountants, advisers, investment bankers, brokers, appraisers, engineers and others. The Asset Manager may cause the Company to enter into agreements with broker dealers, consultants, accountants, transfer agents, third party administrators, lenders, technical managers, attorneys, corporate fiduciaries, escrow agents, depositaries, custodians, agents for collection, insurers, insurance agents, developers, and construction companies selected by the Asset Manager in accordance with the terms of this Agreement.

  (c) It is expressly understood that the management and the conduct of the activities of the Company remain the sole responsibility of the Company and that all decisions relating to the selection and disposition of the Company's investments will be made exclusively by the Company and its officers and managers; provided that, notwithstanding anything to the contrary, the Asset Manager is hereby authorized to take all actions necessary to accomplish its duties hereunder.

  2. <u>Asset Management Fee</u>. The Asset Manager will calculate (subject to Company's verification) and Company will pay the Asset Manager the fees set forth on <u>Schedule 1</u> hereto on a monthly basis. Company agrees to pay a minimum of an aggregate of $2 million in fees by no later than the two-year anniversary of the effective date. Asset Manager may, in its sole discretion, allow Company to make in-kind contributions in lieu of cash payments towards the minimum fee commitment.

2

3. <u>Liability and Indemnification</u>.

(a) **Company acknowledges that no rate of return, or any return on or of invested or allocated assets, is guaranteed and that Company may suffer a complete loss of assets that it entrusts to Asset Manager.**

(b) Company represents and warrants that it is solvent and able to pay and satisfy its obligations as they become due and that Company is receiving adequate and fair consideration for entering into and performing under this Agreement.

(c) Company will indemnify and defend Asset Manager, its shareholders, officers, directors, employees, agents, Affiliates, and other representatives (collectively, "<u>Indemnified Persons</u>") against any claim, cost or expense arising from or related to any claims or demands asserted by or on behalf of any customer or creditor of Company or its affiliates who has pledged or loaned fiat currency or digital assets to Company or its affiliates or to whom Company owes money.

(d) The Company and the Asset Manager hereby agree that the Asset Manager and the Indemnified Persons have no liability to Company or its creditors other than for fraud or intentional misconduct.

4. <u>No Personal Liability</u>. Each of the Company and the Asset Manager understands and agrees that other persons not parties hereto are not personally be bound by or liable hereunder, nor may any resort to their personal property be had for the satisfaction of any obligation or claim hereunder.

5. <u>Duration and Termination</u>. This Agreement will be in effect for two years and may be terminated only for cause (gross negligence, material breach of contract not remedied after 30 days' notice, or bankruptcy or dissolution of the non-terminating party).

6. <u>Miscellaneous</u>.

(a) <u>Services Not Exclusive</u>. The services of the Asset Manager are not exclusive to the Company. The Asset Manager and any partner, director, officer, controlling person, employee, Affiliate or agent of the Asset Manager render similar services to others and engage in additional activities so long as the Asset Manager performs its obligations hereunder.

(b) <u>Applicable Law</u>. THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER ARE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED WHOLLY WITHIN THAT JURISDICTION. The prevailing party in any claim, dispute, proceeding or litigation must be awarded their reasonable attorneys fees, which will be presumed to be the amount charged absent conclusive proof that such

3

fees are not reasonable. Any amounts proven to have not been paid as agreed will accrue interest at the highest lawful rate applicable to unpaid debts and liabilities, which will be no less than 10% per annum unless the law requires a lesser rate of interest and in which case the lesser rate will apply.

(c) <u>Successors and Assigns</u>. The Asset Manager may assign its rights under this Agreement in its entirety or delegate certain of its duties under this Agreement to any of its Affiliates without the approval of the Company so long as the Asset Manager remains liable for any appointed Affiliate's performance. Subject to the foregoing, this Agreement inures to the benefit of the parties hereto and the Indemnified Persons, and is binding upon the parties, and their respective successors, permitted assigns and, in the case of individual Indemnified Persons, heirs and legal representatives.

(d) <u>Independent Contractor Status</u>. The Asset Manager will for all purposes herein be deemed to be an independent contractor and will, unless otherwise expressly provided herein, have no authority to act for or represent the Company in any way or otherwise be deemed an agent of the Company.

(e) <u>Severability</u>. Every term and provision of this Agreement is intended to be severable. If any term or provision hereof is illegal or invalid for any reason whatsoever, such term or provision will be enforced to the maximum extent permitted by law and, in any event, such illegality or invalidity will not affect the validity of the remainder of this Agreement.

(f) <u>Entire Agreement</u>. This Agreement constitutes the entire agreement among the parties with respect to the subject matter hereof and supersedes any prior agreement or understanding among them with respect to such subject matter.

(g) <u>Headings</u>. The headings of the sections of this Agreement are inserted for convenience only and are not be deemed to constitute a part hereof or affect the interpretation thereof.

(h) <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which taken together will constitute a single agreement.

(i) <u>Survival of Certain Provisions</u>. The provisions of Section 3, 4, 5 and 6 of this Agreement will survive any termination or expiration of this Agreement and the dissolution, termination and winding up of the Company.

(j) <u>Waiver</u>. No waiver of the provisions of this Agreement will be valid unless in writing and signed by the party to be bound. No failure or delay by any party in exercising any right or remedy hereunder will operate as a waiver thereof, and a waiver of a particular right or remedy on one occasion may not be deemed a waiver of any other right or remedy or a waiver on any subsequent occasion.

4

[Balance of page intentionally left blank.]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective representatives hereunto duly authorized as of the date first above written.

Effective Date: March ___, 2020

ASSET MANAGER: **Cred Capital, Inc.**

By: _____*James Alexander*_____
Name: James Alexander
Title: Officer

COMPANY: **Cred LLC**

By: _____*Dan Schatt*_____
Name: Dan Schatt
Title: CEO

6

## Schedule 1

| Fee per annum | Asset category and management description |
|---|---|
| 30 bps | Non-securitized balance of moKredit loan – compensation to Asset Manager for serving as backup servicer and subservicer. |
| 150 bps | Large commercial loan balances on loans facilitated by Asset Manager – compensation to Asset Manager for acting as subservicer. |
| 20 bps | Loan balances on loans not facilitated by Asset Manager – compensation to Asset Manager for acting as backup servicer and subservicer. |
| 75 bps | Securitized balance of moKredit loan – Company's obligation to pay fee may be assumed by a securitization vehicle; compensation for subservicing activities, including investor communications and processing crypto. |
| 200 bps | Balance of non-moKredit backed IOL bonds – Company's obligation to pay fee may be assumed by a securitization vehicle; compensation for subservicing activities, including investor communications and processing crypto. |
| 200 bps | Asset management fee for managing Company crypto and fiat balances. |
| TBD | Compensation to Asset Manager for engaging in other trading or activities not covered by above categories to be confirmed to Company at the time of trade or activity. |

7