# Exhibit A

**Committee Support Letter**

Case 20-12836-JTD    Doc 393-1    Filed 01/21/21    Page 1 of 7

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**Of CRED INC.,** ***ET AL.***

Chapter 11 Case No. 20-12836 (JTD)
In the United States Bankruptcy Court
for the District of Delaware

c/o McDermott Will & Emery LLP
340 Madison Avenue
New York, New York 10173

---

All communications from the Committee to General Unsecured Creditors are available at
**https://cases.stretto.com/Credcommittee/**

All pleadings and other court filings in these Chapter 11 Cases are available at
**https://www.donlinrecano.com/Clients/cred/Index**

---

**To: Holders of General Unsecured Claims**

The Official Committee of Unsecured Creditors (the "Committee") was appointed by the Office of the United States Trustee to represent the interests of all unsecured creditors in the chapter 11 bankruptcy cases (the "Chapter 11 Cases") of Cred Inc., *et al*. (collectively, the "Debtors"). We write to advise you of the Committee's position regarding the *Amended Combined Joint Plan of Liquidation and Disclosure Statement of Cred Inc. and its Subsidiaries Under Chapter 11 of the Bankruptcy Code* (the "Plan")[1] filed by the Debtors, which we strongly urge all unsecured creditors to accept.

The Committee is conscious of the unique challenges of these Chapter 11 Cases, being the first of their kind in the United States to deal with certain cryptocurrency issues. Furthermore, the large majority of unsecured creditors in these Chapter 11 Cases are also the Debtors' former customers. The involvement of more than 6,500 customers in a case of this kind has posed considerable logistical challenges, and the Committee is very grateful for the unsecured creditors' patience and support.

---

[1] All capitalized terms used but not defined herein have the meanings ascribed to them in the Plan.

## BACKGROUND

A.  The Committee's Efforts

Since its appointment,[2] the Committee has been actively involved in the Chapter 11 Cases. Among other things, the Committee, with the advice of its professionals, McDermott Will & Emery LLP and Dundon Advisors LLC, has (i) scrutinized the proposed sale of the Debtors' assets; (ii) focused on reducing the costs and expenses of administering the Debtors' estates; (iii) tracing and attempting to freeze the Debtors' fraudulently transferred cryptocurrency assets; (iv) investigated certain of the Debtors' prepetition and postpetition conduct and affairs; (v) analyzed and gained an in-depth understanding of the value of the Debtors' assets; and (vi) evaluated immediate action items to maximize the recovery for all unsecured creditors.  Notably, however, the Debtors did not maintain organized books and records, which has resulted in the need for considerable reconciliation of the Debtors' financial transactions to build a more coherent picture of the Debtors' assets and liabilities.

The Committee and its professionals continue to work tirelessly to secure inflows of value to the Debtors' estates, which efforts include, among other things: (i) discussions with moKredit and Lu Hua; (ii) evaluating the Debtors' various insurance policies, correspondence with the Debtors' insurance brokers and agents, and pursuing claims under these policies; (iii) evaluating the Debtors' illiquid cryptocurrency holdings and their respective valuations; (iv) seeking return of assets from asset managers and other third parties; (v) seeking the repayment of loans to the Debtors; (vi) overseeing the careful management of the Debtors' liquid cryptocurrency; and (vii) continuing the ongoing recovery efforts against James Alexander and the Quantacoin impostor.

Moreover, the Committee continues to work closely with the Debtors in order to: (i) conclude the Chapter 11 Cases as quickly as possible; (ii) minimize administrative costs; and (iii) transition the Debtors' assets, including causes of action, into a liquidation trust (the "Trust"). The primary purpose of the Trust is to litigate the Debtors' claims against third parties to maximize recoveries for creditors.  It is important to note that the bankruptcy process is time consuming and expensive; thus, quickly transitioning to a Liquidation Trust may greatly reduce administrative costs for the benefit of creditors.

B.  The Sale Process

As you know, the Committee and the Debtors entered into a Plan Support Agreement (the "PSA"), which, among other things, sets forth certain milestones, culminating in confirmation of

---

[2] On January 8, 2021, the Bankruptcy Court entered an Order approving the appointment of Robert J. Stark as the examiner in these Chapter 11 Cases (the "Examiner"). The Examiner's role is to investigate the Debtors' conduct. The Examiner will provide a report of his findings. The Committee's investigations will not be duplicative of the Examiner's investigation.

a chapter 11 plan of liquidation (the "Plan") that is scheduled to be heard by the Court on March 8, 2020. Another milestone in the PSA relates to the Debtors' efforts to sell their assets.[3] Specifically, if the Debtors have not executed a binding stalking horse agreement to sell all or substantially all of their assets on or prior to January 15, 2021, the Debtors are obligated to terminate the sale process, which includes the termination of Teneo Capital LLC ("Teneo"), the Debtors' investment banker.

Unfortunately, despite receiving various forms of interest from prospective purchasers, no purchaser submitted an acceptable offer. Moreover, the various indications of interest received by the Debtors were of uncertain benefit to the Debtors' estate after taking into account administrative costs that would result from consummating a transaction. Accordingly, in an effort to minimize administrative costs, the Committee immediately requested that the Debtors terminate Teneo, as well as all employees who are no longer necessary to assist with the sale process. On January 15, 2021, the Debtors terminated (i) Teneo and (ii) all but two Debtor employees who are necessary for matters unrelated to the sale process. To be clear, Mr. Schatt is no longer employed by the Debtors and is not receiving any form of compensation.

Although the sale process is currently at a standstill, if a future purchaser presents an offer, either to the Debtors prior to Plan confirmation or to the Liquidation Trustee after all assets are transferred to the Trust, the Committee will diligently review such offer and determine whether the sale is in the best interests of creditors.

C.     The Plan

The Debtors have the exclusive right to file a proposed chapter 11 plan through March 7, 2021.[4] Upon the expiration of the exclusivity period, any interested party may file a proposed chapter 11 plan. Given the multitude of interested parties, analyzing multiple plans, explaining the benefits thereof, and soliciting votes from creditors will further increase the administrative costs incurred by the Debtors and the Committee and likely significantly delay the conclusion of the Chapter 11 Cases. Avoiding such an unfavorable outcome is one of the advantages of working collaboratively with the Debtors.

The Committee has worked with the Debtors to establish an expedited timeline to confirm the Plan, which will transfer all of the Debtors' assets, including all claims and causes of

---

[3] In addition to the milestones set forth in this paragraph the milestones also include, among other things: (i) sets forth certain milestones, culminating in a confirmation hearing on the Plan no later than March 17, 2021; (ii) establishes a budget for the administration of the Chapter 11 Cases; (iii) requires the Debtors to provide the Committee with weekly financial reports; (iv) requires the Debtors to cooperate with the Committee; and (v) grants the Committee derivative standing to pursue certain causes of action held by the Debtors.

[4] The Debtors may seek court approval to extend the exclusivity period. If the Debtors' seek such relief, the Committee will analyze whether such an extension is appropriate.

action, into the Trust.  The Trust will be managed by a Liquidation Trustee, which will be selected by the Committee.  In turn, the Liquidation Trustee will be overseen by a Trust Advisory Board, which will be comprised of at least three members of the Committee.  Under the guidance of the Trust Advisory Board, the Liquidation Trustee will be directed to pursue a comprehensive and aggressive strategy to recover value through various causes of action, including, without limitation, avoidance actions, fraud, breach of fiduciary duty, malfeasance, gross negligence, negligence, other torts, and/or breach of contract in relation to the directors, officers, insiders, partners, professionals, advisers, custodians, associates, and third parties (collectively, the "Causes of Action").  The chapter 11 bankruptcy process is extremely costly, and therefore it is more cost effective for the Debtors to quickly conclude these Chapter 11 Cases and assign the Causes of Action to the Trust.  In the meantime, the Committee's cryptocurrency tracing and freezing efforts will continue, along with any other actions that are necessary to prevent the dissipation of assets.

The bankruptcy process provides substantial safeguards to ensure that the Debtors discharge their fiduciary obligations to creditors and submit a chapter 11 plan that, among other things, is in the creditors' best interests.  On or before February 24, 2021, we anticipate that the Debtors will submit a brief to the Court demonstrating that the Plan is in the best interests of creditors.  All interested parties, including the United States Trustee, will have an opportunity to object to confirmation of the Debtors' Plan.

D.       The Committee Urges Unsecured Creditors to Accept the Plan

It is the Committee's firm belief that confirming the Plan and transitioning to the Trust as soon as possible is the best, and perhaps only, way to maximize recovery for unsecured creditors and minimize the costs associated with the Chapter 11 Cases.  It is primarily for these reasons the Committee has worked with the Debtors and its professionals to get to this stage, and **the Committee strongly supports the Plan**.

E.       Plan Voting

Detailed instructions regarding how to vote on the Plan are contained on your ballot (the "Ballot"), which is enclosed in the same package as this letter.  In order to vote on the Plan, you must return your Ballot so that it is actually received by the Claims Agent on or before _____, 2021 at __:00 p.m., prevailing Eastern Time (the "Voting Deadline").

F.       <u>Plan Alternatives</u>

If the Plan is not confirmed, the Debtors retain the right to amend, modify, or revoke the Plan and set forth an alternative plan that the Committee would not support. If the Plan is revoked, amended, or modified, the process will almost certainly delay concluding these Chapter 11 Cases and, as a result, increase the costs associated therewith. Furthermore, such a delay may result in alternative plans being proposed, which may cause confusion, prolong the bankruptcy process, and increase administrative costs to the detriment of unsecured creditors.

G.       <u>Unsecured Creditors' Concerns</u>

The Committee will continue to monitor concerns expressed by creditors through various social media channels, including Telegram and Discord. Although we cannot respond to creditors directly, we will continue to communicate with you through the Committee Website to the extent we can. Thank you again for your understanding and support.

Best regards,

The Official Committee of Unsecured Creditors of Cred Inc., *et al.*

**DISCLAIMER**

The Committee strongly recommends that, prior to voting on the Plan, each unsecured creditor carefully review the materials provided to them, including, without limitation, the Plan, all of which are available at https://www.donlinrecano.com/Clients/cred/Index.

This letter is not and should not be construed as legal advice, and may not be relied upon by any person for any reason. To the extent you wish to seek legal advice, you should consult with your own legal counsel. Please note that, although the Committee, by this letter, expresses its support of the Plan, this letter does not necessarily reflect the views of any of the individual members of the Committee, each of which reserves any and all of its rights. If you have any questions with respect to the Plan, the proposed treatment of your claims or the information contained in this letter, please consult with your own legal counsel.

YOU ARE URGED TO CAREFULLY READ THE PLAN AND THE EXHIBITS ATTACHED THERETO IN THEIR ENTIRETY. THIS LETTER MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN THE COMMITTEE'S RECOMMENDATION ON HOW TO VOTE ON THE PLAN. REGARDLESS OF HOW YOU VOTE ON THE PLAN, THERE REMAINS A RISK THAT FURTHER LITIGATION AND/OR A LATER SETTLEMENT COULD RESULT IN HIGHER OR LOWER RECOVERIES FOR UNSECURED CREDITORS. THE COMMITTEE DOES NOT GUARANTEE ANY PARTICULAR RESULT IN THE CHAPTER 11 CASES. ALTHOUGH THE BANKRUPTCY COURT HAS AUTHORIZED THE DEBTORS TO INCLUDE THIS RECOMMENDATION LETTER AS PART OF THE SOLICITATION PACKAGE, SUCH AUTHORIZATION DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE MERITS OF THE PLAN OR THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN. THIS COMMUNICATION DOES NOT CONSTITUTE, AND SHALL NOT BE CONSTRUED AS, A SOLICITATION BY ANY INDIVIDUAL MEMBER OF THE COMMITTEE OR ANY OF ITS REPRESENTATIVES. THE COMMITTEE RESERVES THE RIGHT TO CHANGE ITS POSITION AND RECOMMENDATION REGARDING THE PLAN, OR FILE ANY OBJECTION, RESPONSE OR OTHER PLEADING IN RESPONSE TO THE PLAN OR ANY OTHER MATTER IN THE DEBTORS' CHAPTER 11 CASES, TO THE EXTENT THAT SUBSEQUENT DEVELOPMENTS SO WARRANT, AS DETERMINED BY THE COMMITTEE, OR OTHERWISE.