```
1                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
2

3   IN RE:                       .  Chapter 11
                                 .  Case No. 20-12836 (JTD)
4   CRED, INC., et al.,          .
                                 .  (Jointly Administered)
5                                .
                                 .  Courtroom
6                                .  824 Market Street
             Debtors.           .  Wilmington, Delaware 19801
7                                .
                                 .  Thursday, January 21, 2021
8   . . . . . . . . . . . . . .  .  3:07 p.m.

9            TRANSCRIPT OF HYBRID TELEPHONIC/ZOOM HEARING
               BEFORE THE HONORABLE JOHN T. DORSEY
10                 UNITED STATES BANKRUPTCY JUDGE

11  APPEARANCES:

12  For the Debtors:           Scott D. Cousins, Esquire
                               COUSINS LAW, LLC
13                             Brandywine Plaza West
                               1521 Concord Pike
14                             Suite 301
                               Wilmington, Delaware 19803
15
                               -and-
16
                               James T. Grogan, Esquire
17                             PAUL HASTINGS, LLP
                               600 Travis Street
18                             58th Floor
                               Houston, Texas 77002
19
    (APPEARANCES CONTINUED)
20  Electronically
    Recorded By:               Aida Torres, ECRO
21
    Transcription Service:     Reliable
22                             1007 N. Orange Street
                               Wilmington, Delaware 19801
23                             Telephone: (302) 654-8080
                               E-Mail:  gmatthews@reliable-co.com
24
    Proceedings recorded by electronic sound recording:
25  transcript produced by transcription service.
```

1  APPEARANCES (CONTINUED):

2  For the Debtors:          Scott C. Shelley, Esquire
                             PAUL HASTINGS, LLP
3                            200 Park Avenue
                             New York, New York 10166

4

5  For the Trustee:          James J. McMahon Jr., Esquire
                             UNITED STATES DEPARTMENT OF JUSTICE
6                            OFFICE OF THE UNITED STATES TRUSTEE
                             844 King Street
7                            Suite 2207, Lockbox 35
                             Wilmington, Delaware 19801

8

9  For the Official
   Committee of Unsecured
10 Creditors:                Darren Azman, Esquire
                             MCDERMOTT WILL & EMERY, LLP
11                           340 Madison Avenue
                             New York, New York 10173

12

13 For Robert J. Stark:      Andrew M. Carty, Esquire
                             BROWN RUDNICK, LLP
14                           Seven Times Square
                             New York, New York 10036

15

16

17

18

19

20

21

22

23

24

25

1                              INDEX

2    MOTIONS:                                            PAGE

3    Agenda
     Item 1:   Debtors' Motion for Entry of Order (I)      4
4              Approving, on an Interim Basis, the Debtors'
               Disclosure Statement; (II) Establishing Voting
5              Record Date; (III) Approving Solicitation
               Packages and Distribution Procedures; (IV)
6              Approving Forms of Ballots and Establishing
               Procedures for Voting on Joint Plan of
7              Liquidation; (V) Approving Forms of Notices to
               Non-Voting Classes Under Plan; (VI)
8              Establishing Voting Deadline to Accept or
               Reject Plan; (VII) Approving Procedures for
9              Vote Tabulations; and (VIII) Establishing
               Hearing Date for Final Approval of Disclosure
10             Statement and Confirmation of Joint Plan of
               Liquidation and Related Notice and Objection
11             Procedures
               [Docket No. 303, 12/31/20]
12
       Court's ruling                                     17
13

14   Transcriptionist's Certificate                       21

15

16

17

18

19

20

21

22

23

24

25

1           (Proceedings commenced at 3:07 p.m.)

2                THE COURT:  All right.  We are on the record in

3     Cred, Inc., Case Number 20-12836.

4                I'll go ahead and turn it over to debtors' counsel

5     to run the agenda.

6                You have to -- you're muted, Mr. Cousins.  I can't

7     hear you.

8                MR. COUSINS:  (Indiscernible.)

9                THE COURT:  All right.  Now I think I can hear

10    you.

11               Go ahead, Mr. Cousins, I'm sorry.

12               Could everyone hear me with the introduction?

13               MR. COUSINS:  Yes.

14               THE COURT:  Okay.  Thank you.

15               MR. COUSINS:  Good afternoon, Your Honor.  Scott

16    Cousins on behalf of the debtors.

17               Can you hear me okay?

18               THE COURT:  I can, thank you.

19               MR. COUSINS:  Okay.  Thank you very much, Your

20    Honor.

21               This is the date I scheduled for the one matter,

22    which is the (indiscernible) in this case, the approval of

23    the interim disclosure statement.

24               Mr. Grogan is going to make the presentation on

25    that.

1          THE COURT:  Okay.  Mr. Grogan?  Mr. Grogan, go

2   ahead.

3          MR. GROGAN:  Thank you, Your Honor.

4          THE COURT:  Even though it says RA left on your

5   Zoom screen, but that's okay.

6          MR. GROGAN:  I noticed that.  I was going to

7   apologize.  We spent a little time before this started just

8   trying to fix it, and I apologize, it hasn't been resolved

9   yet.

10          Your Honor, thank you for hearing us today.  We,

11  as Mr. Cousins mentioned, we're here on our solicitation

12  motion, which was filed at Docket Number 303 and we're also

13  requesting interim approval of our amended, Chapter 11

14  combined plan and disclosure statement.  An amended version

15  was filed earlier today at Docket Number 380.

16          The amendments are primarily to incorporate

17  comments we have received both, informally and formally, from

18  the U.S. Trustee's Office, the SEC, the Department of

19  Justice, Upgrade Ya, and I may be forgetting one or two

20  others.  But we have tried to -- oh, and the committee, of

21  course -- to -- who is a key constituency that is in support

22  of our Chapter 11 plan.

23          Your Honor, the plan provides a viable path

24  forward for these estates.  It is a liquidating plan.  The

25  plan contemplates that all of the estate assets, whether it

1    be cryptocurrency, cash, causes of action, or various

2    physical assets, will be contributed to a liquidating trust.

3    The committee will be tasked with picking and appointing the

4    liquidating trustee who will oversee the process of

5    liquidating all of the estate's assets and then making

6    distributions to our creditors.

7            Your Honor, in advance of this plan, we have, as

8    you may recall, been running a sale process.  We worked very

9    hard for about a month and a half, actually up until

10   January 15th, which was the deadline that we had agreed to

11   with the committee, for completing a going-concern sale and

12   obtaining a stalking horse bidder.

13           We did actually receive some offers.  We had one

14   particular that we were deep in negotiations with; we're

15   working on an asset purchase agreement.  Unfortunately, there

16   were a couple of things that we could just not get past, one

17   of which, and probably the most important of which, was the

18   extended closing date that this buyer required in order to

19   fund the purchase price.  And given the burn rates of the

20   cases, potential delay, and confirmation of the plan, in

21   consultation with the committee, we ultimately terminated

22   those negotiations.

23           We are continuing to dialogue with that party, as

24   well as one other party, regarding sales of discrete assets

25   which could be closed much more quickly.  But as a result of

1 the termination of the stalking horse bidding process, we did

2 have a headcount reduction on January 15th, where we

3 terminated all but, I think, three employees.  The remaining

4 employees will stick around through the end of the case in

5 order to facilitate getting the plan confirmed, as well as

6 responding to inquiries from the examiner, helping us produce

7 manageable records, monthly operating reports, and that kind

8 of thing.

9          And, Your Honor, we do have one remaining issue

10 that we were not able to resolve with respect to the

11 solicitation motion.  That concern and objection was filed by

12 the U.S. Trustee's Office and my colleague Scott Shelley will

13 be addressing that particular issue.  We did file a reply

14 brief in response to it.

15          But at this time, unless you have any questions

16 for me, I will turn over the speaker to whoever might want to

17 be heard on the plan and disclosure statement.

18          THE COURT:  Okay.  Thank you.

19          I don't have any questions.

20          Let's go to Mr. McMahon, since he has the

21 outstanding objection.

22          MR. MCMAHON:  Your Honor, Joseph McMahon for the

23 United States Trustee.

24          Can you hear me?

25          THE COURT:  I can, thank you.

1           MR. MCMAHON:  Thank you.

2           Your Honor, before I get into the specific

3    arguments to go over the relevant Code sections which are

4    germane to the five points.

5           Who gets to vote?

6           Code Section 1126(a) tells us that the holder of a

7    claim or interest allowed under Section 502 of this title may

8    accept or reject the plan.  And Code Section 502(a) tells us

9    that once a complaint is timely filed, it is allowed.

10          What do the debtors have to do to solicit notes?

11          Code Section 1125(b) gives us that answer.  It

12   says they can solicit an acceptance or rejection of a plan

13   from a holder of a claim or interest until you transmit to

14   them the Court-approved disclosure statement.

15          How much notice do creditors get regarding

16   confirmation?

17          Rule 2002(b) tells us 28 days' notice of the

18   confirmation objection deadline.

19          And, finally, how are votes tabulated for votes to

20   the confirmation?

21          Code Section 1126(c) gives us that answer.  It is

22   that a class of claims has accepted the plan if the number

23   within the class that holds at least two-thirds in amount or

24   more than one-half of the number of the allowed claims of

25   such class held by the creditors have carried.  So, that term

1  allowed, Your Honor, is often -- is in the Code and it is a

2  significant one for today's purposes.

3          My first starting point is a discussion with the

4  debtors is every creditor that is scheduled as having a claim

5  (indiscernible) alternative, files a proof of claim, has an

6  allowed claim (indiscernible) properly solicited

7  (indiscernible).

8          The debtors argue in paragraph 3 in the reply that

9  was filed (indiscernible) earlier today that our office has

10  it wrong.  That we will send solicitation packages out based

11  upon scheduled creditors, as of the proposed (indiscernible)

12  date, notwithstanding the fact that the claims bar date in

13  these cases won't occur until February 10th.  And the rest of

14  them, whichever creditors that are not scheduled, but file a

15  claim by that February 10th date, they can call us, meaning

16  the debtors, and request the solicitation package after they

17  file a proof of claim.

18          And, Your Honor, our position is that's not the

19  way it works.  Going back to the definition of allowed in

20  Section 502(a), when that proof of claim is timely filed, it

21  is allowed, entitled to vote, and counts for purposes of

22  Section 1126, as far as the tabulation.  So, that's our

23  position, with respect to the need to solicit

24  (indiscernible), Your Honor.

25          With respect to the second issue here, is the

1  amount that's relevant for tabulation purposes.  And our

2  quote here is simply that every creditor with a claim should

3  be tabulated as to that amount.  The relevant method under

4  1126 for tabulation, Your Honor, is allowed claims, then once

5  a claimant files a noncontingent proof of claim in a

6  liquidated amount timely by that February 10th date you have

7  upcoming, its claim is allowed in the amount stated.  That's

8  what the Code says.

9           So, here, the debtors are trying to avoid these

10  basic concepts by making the voting record date a date in

11  advance of the claims bar date.  But for the debtors, the

12  scheduled amount of the claim will control and if a creditor

13  wants to (indiscernible), the creditor, notwithstanding the

14  fact that it may hold an allowed claim, has to ask this Court

15  for permission under Rule 3018 for its claims to be tabulated

16  in the liquidated amount if it's not (indiscernible) proof of

17  claim.  That seems to get the things backwards from our

18  perspective.

19           So, Your Honor is always looking at these things

20  practically.  What's the fix or solution?

21           Several points.  Point one, setting the day after

22  the claims bar date, which is February 11th, as the voting

23  record date for purposes of these cases.  Two, requiring that

24  the debtor solicit all holders of filed proofs of claim that

25  have not received a solicitation package prior to that date.

1   Three, requiring that the debtors tabulate all claims in an

2   allowed amount as of the revised voting record date of

3   February 11th.  Four, adjusting the confirmation timetable

4   accordingly.  And then fifth, if the debtors want to object

5   to an allowed claim for voting purposes, they should be

6   required to do so by a date sufficiently in advance of the

7   voting deadline, such that the claimant can file a Rule 3018

8   motion to have their claim allowed for voting purposes.

9         And finally, Your Honor, a couple of things here.

10  First, the debtors stated in their final disclosure statement

11  that they could not associate specific liabilities with

12  specific debtors who in the condition of the debtors' books

13  and records (indiscernible) where they had the request for

14  consolidation for plan purposes (indiscernible).  If that's

15  the case, Your Honor, then it would seem to me that we should

16  be careful here to respect -- respecting the rights of

17  creditors and their right to vote in these cases.

18        Second, this is more than -- this has to be more

19  than a caution exercise, meaning the interest of creditors

20  has to prevail over any desire by the debtors not to have to

21  be deemed proofs of claims that are filed and solicit them or

22  object to them.  In other words, all these procedures is put

23  the onus on the creditors, and, Your Honor, it seems to me

24  that in light of the prepetition, as Your Honor called it,

25  shenanigans went on, it seems to us to be fitting to be very,

1  very respectful of their right to be heard in connection with

2  the Chapter 11 plan process.

3          So, basically, Your Honor, all we want in these

4  cases is the same procedure that's filed in virtually every

5  other case that comes before Your Honor to be respected, and

6  that means that we've got to be on the schedules and that's

7  (indiscernible) allowed.  If you file a proof of claim,

8  you're entitled to be solicited in terms of the total

9  (indiscernible) count.

10          That's all I have for you today, Your Honor.

11          THE COURT:  Thank you, Mr. McMahon.

12          MR. MCMAHON:  Thank you.

13          THE COURT:  Anyone else want to speak in support

14  of Mr. McMahon's position?

15      (No verbal response)

16          THE COURT:  All right.  Mr. Shelley, you were

17  going to speak for the debtors.

18          MR. SHELLEY:  Yes.  Good afternoon, Your Honor.

19          Scott Shelley from Paul Hastings for the debtors.

20          Can you hear me, Your Honor?

21          THE COURT:  I can, thank you.

22          MR. SHELLEY:  Thank you.  So, as Mr. Grogan noted,

23  this is the last remaining issue.  We think the U.S.

24  Trustee's proposal is not necessary.  We believe the impact

25  on the creditors for the (indiscernible) which the debtors

1 have proposed in our reply is sufficient.

2         No creditor here is going to disenfranchised.  The

3 purpose of the voting record date is to determine where the

4 solicitation packages go.  That's all that Rule 3017

5 requires.  It doesn't require that they have an allowed claim

6 on the date the solicitation was sent out.  All it requires

7 is that the votes to be counted and it has to have an allowed

8 claim.

9         So, our claims agent is preparing the electronic

10 ballots.  This is the most efficient way to get notice out to

11 creditors with the solicitation packages.  When the proofs of

12 claim come in, they'll have an easy method.  Most of the

13 claims are going to be filed on the electronic platform.  So,

14 the claims will come in.  It will be a simple matter for the

15 claims agent to reconcile the proofs of claim that were filed

16 with the amounts that were set forth on the ballot.

17         I think using the schedules as the basis for the

18 solicitation is the most appropriate means here.  The debtors

19 do not anticipate there will be any additional creditors who

20 filed proofs of claim.  To the extent there are creditors out

21 there that were unscheduled, we have implemented a procedure

22 in the proposed order that will allow them to simply contact

23 the debtors, say, hey, we've got a claim that wasn't

24 scheduled, we would like to receive a ballot, and we'll work

25 with them.

1          And to the extent the businesspeople determine

2   that there is a valid claim there, we'll send them a ballot

3   right away and they'll be entitled to vote, and their vote

4   will be counted.  So, we think these procedures are the most

5   efficient way to go.  If we're forced to delay this, as the

6   U.S. Trustee proposes for several weeks or a month, there's

7   going to be a lot of costs associated with that and it's

8   going to be a tremendous burden on the debtors.

9          THE COURT:  Okay.  Thank you, Mr. Shelley.

10         Anyone want to speak on behalf of the debtors'

11  proposal?

12         MR. AZMAN:  Yes, Your Honor.  Good afternoon.

13  Darren Azman, McDermott Will & Emery, counsel to the

14  committee.

15         Your Honor, the committee represents the unsecured

16  creditor body, of course.  While we understand the concerns

17  raised by the U.S. Trustee, we just don't agree with the

18  legal analysis.  This is not the first case in this district

19  where a solicitation would occur before a bar date and it

20  certainly won't be the last.

21         And unless I'm misunderstanding something, I think

22  under Mr. McMahon's proposal, creditors would now only have

23  12 days to submit a vote from when they receive a

24  solicitation package.  If I'm misunderstanding that, you

25  know, I'm sure Mr. McMahon will correct me, but if that is

1 | the case, I would argue that is far more prejudicial

2 | (indiscernible) the concerns that Mr. McMahon is raising

3 | regarding unscheduled claimants receiving a ballot and having

4 | to go through a process of reaching out to the debtors.

5 | And on top of that, everyone can file a claim

6 | earlier.  The bar date is not the date on which you have to

7 | file a claim.  People could file a claim today if they want,

8 | if they want to get a solicitation, and everybody can read

9 | the document and understand what's going to be required if

10 | they want to receive, you know, proactively, the solicitation

11 | packages as opposed to having to reach out to the debtors to

12 | receive that.

13 | So, Your Honor, for those reasons, we would ask

14 | the Court to deny the U.S. Trustee's objection.

15 | THE COURT:  Okay.  Thank you.

16 | Anyone else?

17 | (No verbal response)

18 | THE COURT:  All right.  Mr. McMahon, last word?

19 | MR. MCMAHON:  Thank you, Your Honor.

20 | With respect to the point about anyone can file a

21 | proof of claim before the claims bar date, that's correct,

22 | but as a technical matter, Your Honor, when the voting record

23 | date is set this far in advance of the actual claims bar date

24 | and we're talking about a matter of weeks, there's going to

25 | be some prejudice there.

1          Now, the debtors have come out and stated that

2   it's not that many in number, so my question is what are we

3   doing arguing about it; meaning, that if they've properly

4   solicited substantially all of the creditor body, save for a

5   few stragglers, so to speak, that they've come in by the

6   claims bar date that the debtors were aware of, then what's

7   the prejudice in requiring the debtors to actively solicit

8   those people (indiscernible) Bankruptcy Code (indiscernible).

9          You know, if this is not a process by way of

10  (indiscernible), that's not the way it works.  To have an

11  allowed claim that will be timely filed by the bar date, it

12  should be the debtors' job to view the claims register and

13  determine who's there, and then to the extent that they want

14  to solicit it by that date, to go ahead and send them a

15  solicitation package.  That's their right as creditors.  I

16  don't know exactly what it is that we're arguing about.

17         With respect to the generic argument regarding

18  cost, Your Honor, there have been a lot of costs in these

19  cases, including the (indiscernible) sale process that

20  Mr. Grogan spoke about earlier.  So, it doesn't seem to be

21  appropriate to take the rights of proper creditors, to the

22  extent that they filed their proof of claim timely, and then

23  effectively disenfranchise them by (indiscernible) these

24  procedures.

25         The debtors have an obligation.  If they want the

1  vote to count, they have to solicit them.  Have them send a

2  solicitation package to those with a timely filed proof of

3  claim.  That's all we want.

4         With respect to the tabulation amount, Your Honor,

5  that's another issue that's affected by this, which is set

6  the vote record date the way the debtors want you to, then if

7  a party files a proof of claim timely, after the voting

8  record date, but before the claims bar date, numerically,

9  their claim is going to be counted in the scheduled amount,

10 so -- if it is scheduled.  So, those are two (indiscernible)

11 here, Your Honor.

12         All we want is, frankly, for creditors to be heard

13 and to be counted.

14         THE COURT:  Okay.  Well, thank you, Mr. McMahon.

15         I'm going to overrule the objection.  I think the

16 debtors have established a procedure that will ensure that no

17 creditors are disenfranchised in this case with the changes

18 that they proposed to the solicitation.  So, I will overrule

19 the objection and I will approve the order.

20         Anything else for today?

21         MR. CARTY:  Your Honor, Andrew Carty from Brown

22 Rudnick.

23         Can you hear me?

24         THE COURT:  I can, yes.

25         MR. CARTY:  I'll be very brief, Your Honor.

1    We're here as proposed counsel to Robert Stark as

2  court-appointed examiner.  Mr. Stark is in the virtual

3  courtroom.  I believe we also have Greg Taylor from Ashby &

4  Geddes on, as proposed counsel.

5    Your Honor, I just wanted to note that we filed,

6  the examiner filed his proposed work plan yesterday at

7  ECF 376.  I don't know if Your Honor has had a chance to

8  review it.  Whether it's today, tomorrow, or, you know, at

9  some point in the future, if Your Honor has any questions,

10 we'd be happy to address them.

11   Otherwise, we have met and conferred with the U.S.

12 Trustee, the debtors, the creditors committee regarding the

13 work plan and the examination.  We anticipate further

14 dialogue with them and having dialogue with other case

15 constituents regarding the examination.

16   Our goal is pretty aggressive.  We want to

17 complete the examination and file a report in advance of the

18 plan confirmation hearing, which I believe is presently

19 March 8th.  That's predicated on, you know, that's assuming

20 that we get a level of cooperation that we -- that the

21 documents and information are in a -- you know, the universe

22 of information is manageable and it's in a form that we can

23 review expeditiously.

24   But that is our goal and so, you know, we want to

25 be helpful to this process and not slow things up.  So,

1  otherwise, Your Honor, we just wanted to appear.  We're here,

2  we're observing, and we appreciate the opportunity, and we

3  look forward to working with folks.

4           THE COURT:  Okay.  I did see the submission and

5  reviewed it.  It seems reasonable to me.

6           Are there any parties so far who are asking for

7  revisions to that proposal?

8           MR. CARTY:  Thus far, Your Honor, no.  We have

9  now -- and, again, we spoke with the U.S. Trustee, the

10 debtors, and the committee prior to filing it.  I don't want

11 to say that we have addressed all of their concerns.  We

12 tried to incorporate comments and feedback that we received.

13 And since filing, we have not received any subsequent

14 feedback.

15          THE COURT:  Okay.  Is it scheduled for a hearing?

16          MR. CARTY:  We filed it on notice, seven days'

17 notice to parties.  To the extent we receive comments,

18 we'll -- we can schedule it for a hearing; otherwise, I think

19 we were hopeful that the order approving it would be entered

20 after the notice period is filed.

21          THE COURT:  Okay.  That's fine.  Hopefully, we can

22 get it entered under COC so you can go ahead and get started

23 on this process if you haven't already.

24          Are you already started or are you waiting?

25          MR. CARTY:  We already started, Your Honor.

1          THE COURT:  Okay.  Good.  Good.

2          I'll wait to see, then, if there are any

3  objections; if not, I'll enter the order under COC once I get

4  it.

5          MR. COUSINS:  Your Honor, one housekeeping matter.

6  We will upload a form of the order that we have

7  (indiscernible).

8          THE COURT:  Okay.  Thank you.

9          All right.  Anything else for today?

10          MR. GROGAN:  Your Honor, James Grogan again.

11          Are we confirmed for March 8th?  Does that work

12  for the Court?

13          THE COURT:  Let me check my calendar here.

14          I'm trying to avoid scheduling on   the 8th.  How

15  about the 9th at 2:00 p.m.?

16          MR. GROGAN:  That works for me, Your Honor.

17          THE COURT:  All right.  So, we'll schedule for

18  March 9th at 2:00 p.m.

19          MR. GROGAN:  Thank you very much.

20          THE COURT:  All right.  Anything else?

21      (No verbal response)

22          THE COURT:  All right.  Thank you very much.

23          We are adjourned.

24          COUNSEL:  Thank you, Your Honor.

25      (Proceedings concluded at 3:32 p.m.)

1                        CERTIFICATION

2          I certify that the foregoing is a correct

3 transcript from the electronic sound recording of the

4 proceedings in the above-entitled matter to the best of my

5 knowledge and ability.

6

7

8

9 /s/ William J. Garling                    January 22, 2021

10 William J. Garling, CET**D-543

11 Certified Court Transcriptionist

12 For Reliable