**EXHIBIT A**



James Alexander
4501 Finley Ave, #6
Los Angeles, CA 90027


Dear James Alexander:

 On behalf of Cred U.S., LLC (the "Company"), I am pleased to offer you employment at the Company's office in California commencing on August 1, 2018 You will initially have the position of Chief Capital Officer and report to the Company's President.

 Your annual salary will be $240,000 plus 120 ETH less applicable withholdings and deductions, in accordance with the Company's normal payroll procedures. You will be eligible to participate in the Company's health insurance plan and other employee benefit plans established by the Company for its employees, subject to the terms, conditions, limitations, and exclusions contained in the applicable plan documents and insurance policies. This agreement is not intended to limit the Company's right, in its sole discretion, to add to, modify, or eliminate its benefit plans and policies from time to time.

 You will receive 4,000,000 LBA tokens, subject to certain vesting requirements, which will be specified in a separate agreement.

 The Company is excited about your joining and we look forward to a mutually beneficial relationship. Nevertheless, please note that your employment with the Company is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any or no reason. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice. We request that, in the event of resignation, you give the Company at least two weeks' notice. Please note that the Company may modify your job title, duties, compensation and benefits from time to time as it deems necessary.

 The Company reserves the right to conduct background investigations and/or reference checks on all of its potential employees, in accordance with applicable state and federal law. Your job offer, therefore, is contingent upon a clearance of such a background investigation and/or reference check, if applicable.

 For purposes of federal immigration law, you will be required to provide to the Company documentary evidence of your identity and eligibility for employment in the United States. Such documentation must be provided to us within three (3) business days of your date of hire, or our employment relationship with you may be terminated.

12086671.1

We also ask that, if you have not already done so, you disclose to the Company any and all agreements relating to your prior employment that may affect your eligibility to be employed by the Company or limit the manner in which you may be employed.  It is the Company's understanding that any such agreements will not prevent you from performing the duties of your position and you represent that such is the case.  Moreover, you agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to the Company.  Similarly, you agree not to bring any third-party confidential information to the Company, including that of your former employer, and that in performing your duties for the Company you will not in any way utilize any such information. You will be expected to devote your full business time and best efforts to performing your job duties for the Company during your employment.

As a condition of your employment, you will be required to sign and comply with a Confidentiality, Non-Solicitation and Inventions Agreement, a copy of which is enclosed.

To accept the Company's offer, please sign and date this letter in the space provided below. This letter, along with any agreements relating to proprietary rights between you and the Company, set forth the terms of your employment with the Company and supersede any prior representations or agreements including, but not limited to, any representations made during your recruitment, interviews or pre-employment negotiations, whether written or oral.  This letter, including, but not limited to, its at-will employment provision, may not be modified or amended except by a written agreement signed by Dan Schatt and you.  This offer of employment will terminate if it is not accepted, signed and returned by August 31, 2018.

We look forward to your favorable reply and to working with you.


Sincerely,

Dan Schatt
President, Cred


*Dan Schatt*


Agreed to and accepted:

Signature: _____

Printed Name: _____

Date: _____

12086671.1

Enclosure
Confidentiality, Non-Solicitation and Inventions Agreement

12086671.1

**Confidentiality, Non-Solicitation and Inventions Agreement**

This CONFIDENTIALITY, NON-SOLICITATION AND INVENTIONS AGREEMENT ("Agreement") is made this 26th day of August, 2018, by and between Cred U.S., LLC (the "Company") and James Alexander ("Employee").

RECITALS

A. The Company is a decentralized lending ecosystem that facilitates open access to credit based on the Ethereum blockchain to be developed by Cred (the "Business").

B. The Company has expended, and will continue expend, a great deal of time, money and effort to develop and maintain proprietary, trade secret and other confidential business information relating to the Business which, if misused or disclosed, could be very harmful to the Business. Employee recognizes that, as a result of Employee's employment or continued employment with the Company, Employee has had or will have access to (among other things) the Company's proprietary, trade secret, or other confidential information of or relating to the Business.

C. Employee recognizes and acknowledges that the Company, in all fairness, needs certain protection in order to ensure that Employee does not misappropriate or misuse any proprietary, trade secret, or other confidential information relating to the Company's Business.

D. Employee desires to be (i) employed, or to continue to be employed, by the Company, (ii) eligible for opportunities for advancement, additional responsibilities and compensation increases, (iii) given responsibility for developing and/or maintaining (or supervising the development and/or maintenance of) customer relationships, and (iv) given access to certain proprietary, trade secret and other confidential information -- some or all of which would not be available but for Employee's execution of this Agreement.

NOW THEREFORE, in consideration of the above and of the mutual covenants and agreements hereinafter set forth, Employee and the Company agree as follows:

1. <u>Definitions</u>. For purposes of this Agreement:

(a) "Trade Secret Information" of the Company shall mean all information, regardless of the form or medium in which it is or was created, stored, reflected or preserved, that is not commonly known by or available to the public and that: (i) derives or creates economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. The Company's Trade Secret Information may include, but is not limited to, all confidential information relating to or reflecting the Company's, and/or its parent, subsidiaries, and/or affiliates', research and development plans and activities; compilations of data; product plans; sales, marketing and business plans and strategies; presentations for actual and/or potential customers; internal financial information; pricing, price lists, pricing methodologies and profit margins; personnel; inventions, concepts, ideas, designs and formulae; current, past and prospective customer lists; current, past and anticipated customer needs, preferences and requirements; methodology for

scoring assets and determining how much to lend to consumers based on a unique algorithm, market studies; computer software and programs (including object code and source code); and computer and database technologies, systems, structures and architectures.

(b)     "Confidential Information" means all non-public information regarding the Company's business or other affairs, which includes, but is not limited to, all confidential information of the Company, affiliates, contractors, vendors, and other persons or entities with whom Company has a business relationship, regardless of the form or medium in which it is or was created, stored, reflected or preserved, and includes, but is not limited to, Trade Secret Information.  Employee understands that Confidential Information may or may not be labeled as "confidential," and Employee will treat all information as confidential unless otherwise informed by Employee's supervisor.

2.      Restrictions Relating to Confidential Information and Other Company Property.

(a)     All Confidential Information shall be deemed property of the Company.  Employee shall use Employee's best efforts and diligence to protect the Confidential Information and other Company property for an on behalf of the Company.  Employee shall not, directly or indirectly, use or disclose any Confidential Information except as may be required for the proper performance of Employee's duties as an Employee for and on behalf of the Company, and in accordance with the Company's policies and procedures relating thereto.

(b)     Employee will not access, copy, download, email, reproduce or otherwise duplicate, record, abstract or summarize any Confidential Information, or use any Company computers, computer systems, equipment, tools or other property of the Company, except as expressly permitted or required for the proper performance of Employee's duties for and on behalf of the Company.  Employee is not authorized to, and shall not, access any Company computer or computer system, or access, copy, download, email, reproduce or otherwise duplicate, record, abstract or summarize any Confidential Information (among other things) to compete or prepare to compete against the Company, or for or on behalf of any competitor of the Company.

(c)     Employee shall deliver promptly to the Company, or the Company's designee, at the termination of Employee's employment or at any other time upon the Company's request, all Confidential Information (including all copies thereof, regardless of the medium in which such information may be stored) and all computers, equipment, tools and other property of the Company.

(d)     Each of Employee's obligations in this section shall also apply to all confidential, trade secret and proprietary information learned or acquired by Employee during Employee's employment with the Company from or about others with whom the Company has, had or contemplated having a business relationship.

(e)     Employee's obligations under this section continue after his or her employment with the Company; provided that Employee's post-employment obligations not to use Confidential Information shall not apply if and to the extent Employee demonstrates that: (i) the same information was in Employee's possession prior to Employee's employment by the Company;

(ii) the same information is or becomes generally available to the public and such public availability is not the result, directly or indirectly, of any fault of, or improper taking, use or disclosure by, Employee or anyone working in concert or participation with Employee; or (iii) Employee obtains the information properly, from a source that was free to disclose it, and under circumstances such that Employee neither knew nor had reason to know that such information had been acquired, used or disclosed improperly.

3. <u>Duties; Noncompetition during Employment</u>. Employee shall have such title and duties as may be assigned from time to time by the Company. This Agreement shall apply to Employee regardless of the Company subsidiary or business for which Employee works or provides services, or the duties to which Employee is or may in the future be assigned. Employee agrees that while employed by the Company, Employee shall not provide any services in competition against the Company

4. <u>Nonsolicitation of Employees</u>. During Employee's employment and the one year immediately following Employee's last day of employment with the Company, Employee shall not directly or indirectly, on Employee's behalf or for or on behalf of any other person, firm, corporation or entity, solicit or induce, or attempt to solicit or induce, any employee of the Company to leave the employ of the Company or to work for any competitor of the Company. The running of the one year period referenced in this Section 4 shall be tolled during any period of time during which Employee violates any of Employee's obligations contained herein.

5. <u>Assignment of Inventions</u>.

(a) <u>Ownership</u>. Employee acknowledges and agrees that all copyrightable Work Product prepared by Employee within the scope of Employee's employment by the Company are "works made for hire" and, consequently, that the Company owns all copyrights thereto. To the extent any Work Product is not a work made for hire, Employee hereby assigns, and agrees to assign, to Company all of Employee's rights, title, and interest (including but not limited to all patent, trademark, copyright and trade secret rights) in and to all Work Product. For purposes of this Agreement, "Work Product" means any and all materials, information, concepts, or work whatsoever that (i) are prepared or developed by Employee, individually or jointly with others, during Employee's employment by the Company, whether or not during working hours, and (ii) relate to, are connected with or arise in any way out of (1) current and/or anticipated businesses and/or activities of the Company, (2) the Company's current and/or anticipated research or development, (3) any work performed by Employee for the Company, and/or (4) any information or assistance provided by the Company, including but not limited to Confidential Information, and shall include without limitation, all literary works, products, websites (or portions thereof), software, documentation, memoranda, musical works, photographs, artwork, sound recordings, audiovisual works, ideas, designs, inventions, discoveries, improvements, processes, and algorithms. Employee shall not retain any right, title or interest whatsoever in the Work Product, including, without limitation: (i) rights of attribution; (ii) claims based on Employee's "moral rights" and similar theories; and (iii) liens, encumbrances and the like. Employee hereby irrevocably waives any claims based on (i)-(iii). Employee agrees to and does hereby irrevocably constitute and appoint the Company as Employee's true attorney-in-fact with full power of substitution and re-substitution, in Employee's name, place, and stead, in any and all capacities, to execute, verify, acknowledge, and

3

deliver any document necessary or appropriate to effectuate the provisions of this Section 5 and to do any act necessary to be done to effectuate the purposes of this Section 5. Such appointment will be a power coupled with an interest.

(b) <u>Disclosure</u>. As used in this Agreement, the term "Inventions" means inventions, improvements, designs, original works of authorship, formulas, processes, compositions of matter, computer software programs, databases, mask works, confidential information and trade secrets. Employee will promptly disclose in confidence to the Company, or to any person designated by it, all Inventions that Employee makes, creates, conceives or first reduces to practice, either alone or jointly with others, during the period of Employee's employment, whether or not in the course of Employee's employment, and whether or not patentable, copyrightable or protectable as trade secrets. All Work Product is and shall forthwith become the property of the Company, or its designee, whether or not patentable or copyrightable. Employee will execute promptly upon request any documents or instruments at any time deemed necessary or proper by the Company in order to formally convey and transfer to the Company or its designee title to such Work Product, or to confirm the Company's or its designee's title therein, and in order to enable the Company or its designee to obtain and enforce Patents, Trademarks, Copyrights, or any other rights therein. Employee will perform Employee's obligations under this Section 5 without further compensation, except for reimbursement of reasonable out-of-pocket expenses incurred at the request of the Company.

(c) <u>Preexisting Inventions Not Assigned</u>. Employee shall specify, on Attachment A hereto, all preexisting Inventions, if any, that may relate to the Company's business or actual or demonstrably anticipated research and development and that were made by Employee or acquired by Employee prior to employment with the Company, and which are not to be assigned to the Company. If no such specification is made on Attachment A, or if Employee writes "none" or similar designation thereon, Employee shall be conclusively deemed not to have any such Inventions, and all Inventions shall be property of the Company hereunder.

(d) <u>Original Development</u>. Employee further represents and warrants to the Company that all work that Employee performs for or has performed for the Company, and all Work Product that Employee produces will not knowingly infringe, dilute, misappropriate, or otherwise violate any patent, copyright, trade secret, or other right of any of Employee's former employers or of any other third party. Employee will not disclose to the Company, or use in any of Employee's Work Product, any confidential or proprietary information belonging to others, unless both the owner thereof and the Company have consented in writing.

**SPECIAL NOTICE TO EMPLOYEE:** The obligations of this Section 5 do not apply to any invention for which no equipment, supplies, facility, or Confidential Information of the Company was used and which was developed entirely on Employee's own time, unless (a) the invention relates (i) to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by Employee for the Company. Employee's obligation to assign Employee's right, title and interest in Work Product under this Section 5 does not apply to any Work Product which qualifies fully under the provisions of California Labor Code Section 2870, which is set forth on Attachment B hereto.

4

6. <u>Rights to Photographs, Videos, Recordings and Electronic Images</u>. Employee agrees that the Company may use, publish, modify and/or otherwise exploit in any manner or medium now known or hereafter devised all photographs, videos, audio and other recordings or images of Employee, and/or the Company's property, which are made during Employee's employment by the Company (and/or any derivative works made thereafter). Employee's appearance in, and other contributions to, such recordings and images will be deemed Work Product. Without limitation and for clarity, the Company may use publish, modify and/or otherwise exploit in any manner or medium now known or hereafter devised such photographs, videos, audio and other recordings and images without additional consideration for any advertising, publishing or other business purposes on behalf of the Company during and/or subsequent to Employee's employment by the Company in all media now known or hereafter devised. Employee will receive no additional consideration for such use, including, without limitation, crediting, rights of attribution, approval rights, or additional remuneration.

7. <u>Choice of Law and Jurisdiction</u>. This Agreement shall be construed in accordance with and governed by the laws of the State of California, without reference to the conflicts or choice of law principles thereof. Any litigation arising out of and/or relating to this Agreement shall be subject to the Company's Dispute Resolution Policy, with the exception of either party's right to seek a restraining order or preliminary injunction to the extent provided by California Code of Civil Procedure section 1281.8. Such an action shall be pursued exclusively in the State or Federal courts encompassing the County of San Mateo, State of California, and the parties hereto consent to the jurisdiction of and venue in such courts.

8. <u>Company's Right to Injunctive Relief</u>. In the event of a breach or threatened breach of any of Employee's duties or obligations under the terms or provisions of Sections 2, 3, 4, 5, 6 or 7 hereof, the Company shall be entitled, in addition to any other legal or equitable remedies it may have in connection therewith (including any right to damages that it may suffer), to temporary, preliminary and permanent injunctive relief restraining such breach or threatened breach. Employee hereby expressly acknowledges that the harm which might result to the Company as a result of any noncompliance by Employee with any of the provisions of Section 2, 3, 4, 5, 6 or 7 would be largely irreparable.

9. <u>At-Will Relationship</u>. Employee acknowledges that Employee is in an at-will relationship with the Company which can be terminated, with or without cause, and with or without notice, at any time, at the option of the Company or Employee. Nothing herein shall alter or affect this at-will relationship.

10. <u>Assignment, Amendments and Other Provisions</u>.

(a) This Agreement and the rights hereunder shall be freely assignable by the Company. This Agreement shall inure to the benefit of, and be binding upon, any other entity which shall succeed to the Company's business. Except as otherwise specifically provided herein, neither this Agreement nor any rights hereunder shall be assigned by Employee, and any such attempted or purported assignment shall be null and void.

(b) No modification or amendment of any of the provisions of this Agreement shall be effective unless made in writing and duly executed by all parties hereto. The

5

paragraph headings or captions appearing in this Agreement are for convenience only, are not part of this Agreement and are not to be considered in interpreting this Agreement.

(c) All notices and other communications required or permitted to be given hereunder or by reason of this Agreement shall be in writing and shall be deemed to have been properly given (a) when delivered in person to the party to whom such notice is directed; or (b) three (3) days after being deposited in the United States mail, return receipt requested, postage prepaid, to the party(ies) addressed as shown below their respective signatures to this Agreement (and for notices to the Company with a copy to its President, or as such party may designate thereafter by notice in accordance with this Section.

(d) Whenever possible, each provision, or subpart thereof, of this Agreement shall be interpreted so as to be valid and enforceable under applicable law. If any provisions, or any subparts thereof, of this Agreement shall be prohibited or invalid under applicable law, they shall be modified and, to the maximum extent permissible under applicable law, enforced.

(e) No delay or failure of either party to exercise any right under this Agreement, and no partial or single exercise of any right, shall constitute a waiver of that or any other right unless expressly so provided in writing, and no such waiver shall operate or be construed as the waiver of the same or of another breach on a prior or subsequent occasion.

(f) This Agreement may be executed in counterparts, and each counterpart hereof shall be deemed to be an original instrument, but all counterparts hereof taken together shall constitute but a single instrument. Signatures provided by facsimile or in portable document format (a/k/a pdf) shall be as binding as original signatures.

(g) There are no oral or other verbal understandings or agreements which in any way change the terms, covenants, or conditions herein set forth. This Agreement shall supplement, and not supersede, any of Employee's obligations under the Company's rules, policies and procedures.

(h) The Company may disclose this Agreement in whole or in part, to any person or entity, including without limitation one that is considering employing or engaging in a business relationship with, Employee.

(i) Employee represents that the execution and delivery of the Agreement and Employee's employment with the Company do not violate any previous employment agreement or other contractual obligation of Employee with any other party. Employee has not disclosed, and will not disclose, to the Company any information, whether confidential, proprietary, or otherwise, which Employee is not legally free to disclose. Employee shall abide by the terms of any nondisclosure or confidentiality agreements between the Company and any other parties.

(j) To ensure a clear understanding of this Agreement and Employee's compliance therewith, Employee agrees to engage in an exit interview with the Company, prior to Employee's last day of employment with the Company, at a time and place designated by the Company and at the Company's expense. Employee understands and agrees that during said exit

6

interview, Employee may be required to confirm that Employee will comply with Employee's obligations under this Agreement.  The Company may elect, at its option, to conduct the exit interview by telephone.

        (k)     Employee acknowledges that, in performing services for the Company, Employee may use personal electronic equipment such as a laptop computer, personal computer, personal data assistant, smart-phone, cell phone, tablet, pager and/or other electronic, communication and/or memory devices owned by Employee (collectively, "Personal Electronic Equipment").  All Company information, including Confidential Information contained on any Personal Electronic Equipment, is the sole and exclusive property of the Company.  Employee agrees that the Company has the right to access and review such Company information, including Confidential Information, at any time and may take possession of and review any Personal Electronic Equipment, including any information contained therein, to inspect, analyze and/or recover any Company information stored and/or communicated therein or therewith.  If Employee has Personal Electronic Equipment that is not located on Company premises, Employee shall immediately deliver such equipment to the Company upon its request.  Employee agrees that the Company is not liable for any damage caused to Employee's Personal Electronic Equipment while in its possession or for inadvertently damaging or deleting any personal Employee information contained therein.  All Confidential Information stored on any Personal Electronic Equipment is subject to the applicable restrictions set forth above.

        (l)     Notwithstanding any provision of this Agreement or any other agreement executed by Employee to the contrary, there shall be no restriction on Employee's ability to (a) report violations of any law or regulation, (b) provide truthful testimony or information pursuant to subpoena, court order, or similar legal process, (c) provide truthful information to government or regulatory agencies, or (d) otherwise engage in whistleblower activity protected by the Securities Exchange Act of 1934, the Dodd-Frank Wall Street Reform and Consumer Protection Act, or any rules or regulations issued thereunder, including, without limitation, Rule 21F-17. In addition, 18 U.S.C. §1833(b) provides, "An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal." Nothing in this Agreement, any other agreement executed by Employee, or any Company policy is intended to conflict with this statutory protection.

        11.    <u>Attorneys' Fees and Costs</u>.  In the event of a breach or threatened breach of this Agreement, the non-breaching party shall be entitled to recover such party's attorneys' fees and costs incurred as a result of such breach or threatened breach.

**PLEASE NOTE:  BY SIGNING THIS AGREEMENT, EMPLOYEE IS HEREBY CERTIFYING THAT EMPLOYEE:  (A) HAS RECEIVED A COPY OF THIS AGREEMENT FOR REVIEW AND STUDY BEFORE EXECUTING IT; (B) HAS READ THIS AGREEMENT CAREFULLY BEFORE SIGNING IT; (C) HAS HAD SUFFICIENT OPPORTUNITY BEFORE SIGNING THE AGREEMENT TO ASK ANY QUESTIONS EMPLOYEE HAS ABOUT THE AGREEMENT AND HAS RECEIVED**

7

**SATISFACTORY ANSWERS TO ALL SUCH QUESTIONS; (D) HAS HAD THE OPPORTUNITY TO HAVE AN ATTORNEY REVIEW THE AGREEMENT ON BEHALF OF EMPLOYEE; AND (E) UNDERSTANDS EMPLOYEE'S RIGHTS AND OBLIGATIONS UNDER THE AGREEMENT.**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first above written.

**EMPLOYEE**

Name:
Address:


**CRED U.S., LLC**

By: *Dan Schatt*
President
Address:   123 Mission Street
           San Francisco, CA 94125

8

## Attachment A

## Employee's Preexisting Inventions (See Section 5(c) of the Agreement)

List below, or check box if "none":

☐ List:


☐ None

**Attachment B**

In accordance with California Labor Code section 2872, you are hereby notified that your Confidentiality, Non-Solicitation and Inventions Agreement does not require you to assign to the Company any invention for which no equipment, supplies, facility, or trade secret information of the Company was used and that was developed entirely on your own time, and does not relate to the business of the Company or to the Company's actual or demonstrably anticipated research or development, or does not result from any work performed by you for the Company.

Following is the text of California Labor Code section 2870:

(a)     Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

  (1)   Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

  (2)   Result from any work performed by the employee for the employer.

(b)     To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

I hereby acknowledge receipt of this written notification.


DATED: _____                    _____
                                                                  Employee