**EXHIBIT C**

**From:** Dan Schatt
**To:** Joe Podulka
**Subject:** Fwd: AMA and other docs for Cred LLC to sign
**Date:** Monday, June 1, 2020 6:13:02 PM

Sent from my iPhone

Begin forwarded message:

> **From:** James Alexander <james.alexander@credcapital.io>
> **Date:** March 31, 2020 at 10:00:33 PM PDT
> **To:** Dan Schatt <dan@mycred.io>
> **Cc:** Daniel Wheeler <dan.wheeler@mycred.io>, Joe Podulka <joe@mycred.io>
> **Subject: Re: AMA and other docs for Cred LLC to sign**
>
> This is the agreement we reached as compromise for the investor. We don't have any leverage until we repay the investor. He wants everything to ensure he gets repaid. I expect we will have greater latitude for negotiation and flexibility once we repay investor and when we raise additional capital. Until then we need to live with this agreement or lose the investor.
>
> On Tue, Mar 31, 2020, 19:52 Dan Schatt <dan@mycred.io> wrote:
>
>> Hi guys,
>>
>> I had some questions on the most recent Cred Capital agreement, as well as the asset management agreement. Just wanted to make sure we are aligned, we've collectively reviewed them, and we are structuring these in a way that could give us the best chance of obtaining future equity in both entities… We also want to ensure that the fee and compensation structures all roll up centrally to the parent financials…
>>
>> **Cred Capital Agreement**
>>
>> - Why do we have and why do we need more than one class of stock? What is Class A versus Class B?
>> - We discussed Cred LLC "in-kind" equity but the wording seems to suggest absolutely no room for this
>> - Seems like we should make the Assignment of this agreement free and clear if we ever take equity in Cred LLC, this could become a point of friction…
>>
>>> -   Appendix 1, Point 1 seems a bit too strong if this is window dressing…"Contributor's failure to make the full contribution of $2 million as agreed will result in a forfeiture of shares proportionate to the

portion of the $2 million that was not paid to Corporation."

- Appendix 1, Point 2 seems like this is the other way around – we are closing Cred Capital with $1M, and can draw on that to pay for expenses…Not sure this is really needed to close an outside investor…?

**Asset Management Agreement**

- Seems like we should consider in the mandate that if it so chooses, the asset manager can also lend to Cred LLC as one of its activities…this is not something we'll likely need, but would be good to have that flexibility…
- The statement "Asset Manager may, in its sole discretion, allow Company to make in-kind contributions in lieu of cash payments towards the minimum fee commitment." – seems like we should make this mutual, or have a written statement allowing for in-kind contributions…If not, this could impede future investment opportunities
- Again, for purposes of ensuring maximum investment opportunities to Cred, should we really have Cred Capital be the "sole and exclusive" asset manager, while also being absolved of any liability in a 1-way indemnification on 3c?
- It also seems we should allow for a mutual termination if we need to restructure this agreement in the future
- Why are we stating that the services of the Asset manager are non-exclusive while the Cred LLC names the Asset Manager as exclusive? Again, seems like it'll be harder to attract money into the parent with these terms favoring Cred Capital over an even agreement…?
- 6c seems to be a one-way assignment…seems to me we should make it mutual as to give the best opportunity to future investors in the parent as well…
- Fee structure – as discussed and previously agreed, although this appears to be a very specific fee structure, we will collectively decide these things as we execute, so we can support the best interests of the entire organization from a compensation perspective…

Thanks,

Dan