**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CRED INC., *et al.*, | Case No.: 20-12836 (JTD) |
| Debtors.[1] | Jointly Administered |
| | Ref. Nos. 303 & 399 |

**OBJECTION OF UPGRADEYA INVESTMENTS, LLC TO FINAL APPROVAL OF THE ADEQUACY OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN**

UpgradeYa Investments, LLC ("UpgradeYa") hereby submits this objection (the "Objection"),[2] by and through its undersigned counsel, to final approval of the adequacy of the above-captioned debtors' and debtors'-in-possession (the "Debtors") disclosure statement (the "Disclosure Statement") contained in the *First Amended Combined Joint Plan of Liquidation and Disclosure Statement of Cred Inc. and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code* (as amended, modified, or supplemented, the "Plan") and confirmation thereof. In support hereof, UpgradeYa respectfully states as follows:

**PRELIMINARY STATEMENT**

The Plan cannot be confirmed because it violates substantive and procedural requirements of the Bankruptcy Code as well as bedrock notions of due process and fundamental fairness,

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

[2] Pursuant to the *Order Authorizing UpgradeYa Investments, LLC to (a) File under Seal the Supplemental Brief in Support of the Motion of UpgradeYa Investments, LLC for Relief from Automatic Stay Under Bankruptcy Code Section 362 and Any Subsequent Pleadings Referencing the Confidential Information Contained Therein and (b) Ruling that No Privileges Have Been Waived by Filing the Supplemental Brief or Any Subsequent Pleadings Related to the Confidential Information Disclosed Therein* [D.I. 463] (the "Sealing Order"), portions of this Objection have been filed under seal. In accordance with the Sealing Order, UpgradeYa hereby reserves all applicable claims, rights, privileges, and defenses it may have in connection with the information set forth herein and nothing herein shall be deemed a waiver of any such claims, rights, privileges, or defenses.

leaving creditors like UpgradeYa with presumptively disallowed claims against the estates and no ability to pursue their independent, direct claims against third parties.

First, sections 1.57 and 14.7 of the Plan violate the Bankruptcy Code and settled law by deeming claims disallowed pursuant to Bankruptcy Code section 502(d) prior to a judicial determination of the claimant's liability.

Next, the Plan violates due process and fairness considerations by ***permanently and indefinitely*** extending the automatic stay with no carve out to permit creditors and other stakeholders to pursue their independent, direct claims and causes of action against non-debtor third parties. To accomplish this impermissible result, section 18.5 of the Plan includes what effectively is a disguised, non-consensual third-party release, binding creditors to a permanent extension of the stay to parties who are not identified and defined as Released Parties under the Plan.[3] Not only is this wholly inappropriate and unfair, but it is in direct conflict with this Court's recent ruling on the RFS Motion that the automatic stay does not preclude creditors from pursuing their direct claims against non-debtor third parties.

Finally, as a result of the Debtors' failure to provide adequate information regarding the scope of the Plan's permanent extension of the automatic stay and its material adverse impact on creditors and their substantive rights, UpgradeYa also objects to final approval of the Disclosure Statement. As set forth herein, the Disclosure Statement omits critical facts necessary to enable parties in interest to make informed judgments about the Plan. The Disclosure Statement neglects to provide any information indicating that the intent of the Plan is to enjoin creditors permanently from pursuing their direct claims against non-debtor third parties and, therefore, is fatally

---

[3] Notably, the Examiner's investigation is ongoing and will not be complete by the deadline to vote on, or object to, the Plan. Creditors should not and must not be deprived of potential direct claims against non-debtor parties that may be discovered through the Examiner's investigation or otherwise after confirmation of the Plan.

inadequate.

Accordingly, UpgradeYa requests that the Court deny confirmation of the Plan and final approval of the Disclosure Statement.

## BACKGROUND

*The Stay Relief Litigation[4]*

1.      On November 25, 2020, UpgradeYa filed the *Motion of UpgradeYa Investments, LLC for Relief from Stay Under Bankruptcy Code Section 362* [D.I. 89] (the "RFS Motion") seeking to have certain Bitcoin it pledged as Collateral returned to it or, in the event the Debtors were no longer in possession of UpgradeYa's Collateral, authority to pursue claims against non-debtor third parties for the damages it suffered at their hands. The Debtors and the Official Committee of Unsecured Creditors (the "Committee") opposed the relief requested.

2.      In connection with the litigation on the RFS Motion, the Debtors and the Committee (whose members are proposed to serve as the Liquidation Trustees and control the Trust Advisory Board post-confirmation) took the position that any claim or cause of action related to the transfer of cryptocurrency to Cred is an estate cause of action. *See,* Hr'g Tr. 29:3-6; 185:22-24, Jan. 6, 2021 (Committee arguing that "[i]t is the estate and only the estate that has a claim against third parties to recover Bitcoin because that Bitcoin is no longer identifiable…" and that "[a]ny claim that's related to damage or loss of that bitcoin that was transferred to Cred, which again became property of the debtors' estates after the comingling, is necessarily an estate cause of action."); *see also* (1) *Objection of Debtors' to Motion of UpgradeYa Investments, LLC for Relief from Stay*

---

[4] As the factual background and legal arguments in support of the RFS Motion have been briefed extensively, they will not be reiterated herein, but instead are hereby incorporated by reference as if fully set forth herein. Specifically, UpgradeYa incorporates by reference herein the following pleadings: D.I. 89, 91, 126, 128, 223, 396, and 505 (collectively, the "UpgradeYa RFS Pleadings"). Terms utilized but not defined herein shall have the meanings ascribed to them in the UpgradeYa RFS Pleadings or the Plan, as applicable.

*Under Bankruptcy Code Section 362* [D.I. 116]; (2) *Objection of the Official Committee of Unsecured Creditors to Motion of UpgradeYa Investments, LLC for Relief from Stay Under Bankruptcy Code Section 362* [D.I. 190]; (3) *[SEALED] The Official Committee of Unsecured Creditors' Reply Brief to the Supplemental Brief in Support of the Motion of UpgradeYa Investments, LLC for Relief from Automatic Stay Under Bankruptcy Code Section 362* [D.I. 475] (hereinafter, the "Comm. Br."); and (4) *[SEALED] Supplemental Brief in Opposition to the Motion of UpgradeYa Investments, LLC for Relief from Automatic Stay Under Bankruptcy Code Section 362* [D.I. 477] (hereinafter, the "Debtors' Br.").

3. On February 26, 2021, the Court entered the *Memorandum Order* [D.I. 565] (the "RFS Order") concluding that "[c]laims against non-debtor third parties, such as those that UpgradeYa represents it will pursue, do not generally fall within the purview of Section 362(a) and UpgradeYa is free to pursue such claims." RFS Order, p. 4.

**The Disclosure Statement & the Plan**

4. On December 31, 2020, the Debtors filed the *Debtors' Motion for Entry of Order (I) Approving, on an Interim Basis, the Debtors' Disclosure Statement; (II) Establishing Voting Record Date; (III) Approving Solicitation Packages and Distribution Procedures; (IV) Approving Forms of Ballots and Establishing Procedures for Voting on Joint Plan of Liquidation; (V) Approving Forms of Notices to Non-Voting Classes Under Plan; (VI) Establishing Voting Deadline to Accept or Reject Plan; (VII) Approving Procedures for Vote Tabulations; and (VIII) Establishing Hearing Date for Final Approval of Disclosure Statement and Confirmation of Joint Plan of Liquidation and Related Notice and Objection Procedures* [D.I. 303] (the "Solicitation Motion"). On January 21, 2021, the Court granted the Solicitation Motion [D.I. 399] approving the Disclosure Statement on an interim basis and establishing procedures for solicitation

of the Plan.

5.      On January 21, 2021, the Debtors filed the first amended combined Disclosure Statement and Plan [D.I. 399].

***Certain Plan Provisions Violate the Bankruptcy Code and Settled Law***

6.      The Plan improperly shifts the burden for allowance and disallowance of claims from the Debtors' estates to their creditors. The Plan defines "Disallowed" to mean, with reference to any Claim, in pertinent part as follows:

> where the holder of a Claim is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such Property, for which such Person, Entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code

Plan § 1.57. Further, section 14.7 of the Plan provides that:

> [a]ny Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or by an Entity that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, ***shall be deemed Disallowed*** pursuant to section 502(d) of the Bankruptcy Code

Plan, § 14.7 (emphasis added). As such, read together, sections 1.57 and 14.7 of the Plan disallow a claim pursuant to Bankruptcy Code section 502(d) prior to the estates obtaining a judgment in their favor against the creditor. This burden shifting is contrary to both the requirements of the Bankruptcy Code and established caselaw, as explained further below.

7.      The Plan also provides for the permanent and indefinite extension of the automatic stay, the effect of which will impermissibly release third parties from liability to creditors ▮ ▮. Specifically, section 18.5 of the Plan states:

> [t]he stay arising under section 362(a) of the Bankruptcy Code and the injunctions set forth in Section 18.4 hereof or provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Combined Plan and Disclosure Statement or the Confirmation Order), shall ***permanently*** remain in full force and effect.

Plan § 18.5 (emphasis added). As explained below, the language of section 18.5 and the facts and circumstances of these cases place at issue the scope and breadth of the extension of the automatic stay under the Plan. Based on this language and the positions taken by the Debtors and the Committee, the intent, language and practical effect of the Plan is to force non-consensual third-party releases on the Debtors' entire creditor body, without any disclosure, as discussed herein.

*Insufficient Disclosures*

8. The Disclosure Statement fails to adequately describe certain key information necessary to make an informed decision on the Plan. As an initial matter, the Examiner's investigation is still ongoing and no report has yet been issued. Among other things, the Examiner should be investigating whether any claims or causes of action exist against any of the Released Parties.

9. The Disclosure Statement also fails to describe with sufficient particularity the Claims and Causes of Action that the Debtors (and the Committee) believe are property of the estates, which, as noted above, likely includes any and all claims and causes of action related to the transfer of cryptocurrency to Cred. As such, for the reasons set forth below, the Disclosure Statement is inadequate and final approval should be denied.

**OBJECTION**

    A.    ***The Plan Cannot Be Confirmed Because "Deemed Disallowance" of Claims Prior to a Judicial Determination Violates Bankruptcy Code Section 502(d)***

10. Pursuant to Bankruptcy Code section 502(a) "[a] claim or interest, proof of which

is filed under section 501…is deemed allowed, unless a party in interest…objects." 11 U.S.C. § 502(a). The Plan, however, establishes an inappropriate end-run around the plain language of section 502(a) by permitting the Liquidation Trustees to deem disallowed certain otherwise timely and properly filed claims without first obtaining a judgment against the claimant.

11. Specifically, pursuant to the Plan, including sections 1.57 and 14.7, the Liquidation Trustees are vested with the discretion and authority to deem Claims Disallowed pursuant to Bankruptcy Code section 502(d) on the mere assertion that the holder of a claim received a recoverable or preferential transfer. Plan, §§ 1.57; 14.7. This violates both section 502(d) and well-established precedent in this Court, in which the mere assertion of an avoidable transfer is insufficient to trigger disallowance of a claim under Bankruptcy Code section 502(d). *See*, *In re Lids Corp.*, 260 B.R. 680, 684 (Bankr. D. Del. 2001) (holding that "merely commenc[ing] an adversary proceeding [] is not enough to determine that [the claimant] is liable" and finding that "[t]he fact that the Debtor states that it is confident that it will be successful in the [adversary] is immaterial. Until the Debtor obtains a judgment against [the claimant] upon which [the claimant] is liable…, section 502(d) is not applicable"). In *Giuliano v. Mitsubishi Digital Elecs. America, Inc. (In re Ultimate Acquisition Partners, LP)*, 2012 Bankr. LEXIS 1905 (Bankr. D. Del. 2012), this Court made clear "[a] debtor or trustee 'wishing to avail itself of the benefits of section 502(d) must first obtain a judicial determination on the preference complaint.'" 2012 Bankr. LEXIS 1905 at *9-10 (quoting *In re Lids Corp.*, 260 B.R. at 684). There, the Court ruled that because the trustee had not obtained any judicial determination of the claimant's liability, the trustee had no basis to disallow a claim under Bankruptcy Code section 502(d). *Id.* at *10.

12. Accordingly, the Plan cannot permit the Liquidation Trustees to avail themselves of the benefit of Bankruptcy Code section 502(d) by deeming Claims to be Disallowed without

first obtaining a judicial determination of the claimant's liability. Accordingly, the Plan cannot be confirmed.

### B. *The Plan Cannot Be Confirmed Because Permanently and Indefinitely Extending the Automatic Stay is a Disguised, Non-Consensual Third-Party Release*

13. The Debtors may not rewrite sections of the Bankruptcy Code or effectuate broad third-party releases without creditors' knowledge and consent. Section 18.5 of the Plan provides, in pertinent part, that the automatic stay "shall ***permanently*** remain in full force and effect." Plan § 18.5 (emphasis added). However, the automatic stay under Bankruptcy Code section 362 is neither absolute nor permanent. *See* 11 USC 362(c); *see also In re Peregrine Sys.*, 314 B.R. 31, 44 (Bankr. D. Del. 2004) (quoting *Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991)) ("Although the scope of § 362(a) is intended to be broad, the automatic stay is not permanent. Once it is triggered it 'continues until the bankruptcy case is closed, dismissed, or discharge is granted or denied, or until the bankruptcy court grants some relief from the stay.'") *rev'd in part on other grounds sub nom, AW Treuhand Wirtschaftsprufungsgesellschaft v. Peregrine Sys. (In re Peregrine Sys.)*, 2005 U.S. Dist. LEXIS 21707 (D. Del. Sept. 29, 2005). Thus, the extension of the automatic stay ***permanently*** pursuant to section 18.5 of the Plan is violative of the Bankruptcy Code and controlling authority. Any extension of the automatic stay under the Plan may continue only until the earlier of dismissal or closure of these cases or as otherwise ordered by the Court.

14. Moreover, while section 18.5 appears relatively innocuous on its face (aside from seeking to extend the stay permanently in contravention of the Bankruptcy Code), given the positions the Debtors and the Committee have taken in these cases – that any and all claims and causes of action related to a creditor's transfer of cryptocurrency to Cred are property of the

Debtors' estates subject to the automatic stay[5] – section 18.5 essentially operates as a disguised non-consensual third-party release.

15. The Plan may not deprive UpgradeYa – and, indeed, all creditors – of the right to pursue their own direct claims against non-debtor third parties in perpetuity without their consent. Courts in this District expressly have held that "any [third-party] release must be based on consent of the releasing party (by contract or the mechanism of voting in favor of the plan)." *In re Washington Mut., Inc.*, 442 B.R. 314, 352 (Bankr. D. Del. 2011); *See In re Indianapolis Downs, LLC.*, 486 B.R. 286, 305 (Bankr. D. Del. 2013) ("Courts in [the District of Delaware] have consistently held that a [Chapter 11 bankruptcy] plan may provide for a release of third-party claims against a non-debtor ***upon consent*** of the party affected.") (emphasis added).

16. Moreover, "[t]he Bankruptcy Code is intended to provide for the fair and equitable distribution of an estate's assets. It is not based upon a policy which permits a court . . . to deny permanently the due process rights of creditors to pursue their own claims against third parties." *Apostolou v. Fisher (In re Lake States Commodities, Inc.)*, 188 B.R. 958, 971 (N.D. Ill. 1995) (quoting and discussing approvingly *Amazing Enters. v. Jobin (In re M & L Business Mach. Co.)*, 136 B.R. 271, 278 (Bankr. D. Colo. 1992)). The Debtors cannot through the Plan or otherwise strip creditors of their direct claims without their consent and especially without disclosure or their knowledge. As this Court ruled in connection with the RFS Motion, the automatic stay does not preclude creditors from commencing actions against non-debtor third parties for monetary damages arising from the loss of their cryptocurrency. RFS Order, p. 4. As this Court explained,

---

[5] [redacted]

> [b]y its words, Section 362(a) operates only to stay actions against the Debtors or the Debtors' property. Claims against non-debtor third parties, such as those that UpgradeYa represents it will pursue, do not generally fall within the purview of Section 362(a) and UpgradeYa is free to pursue such claims.

RFS Order, p. 4. Thus, the Debtors cannot use section 18.5 of the Plan (or any current provision thereof) to effectuate releases by creditors of their direct claims against non-debtor third parties, unless they have consented pursuant to section 18.2.

17. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

### I.  The Disclosure Statement Should Not Be Finally Approved Due to Failure to Provide Adequate Information

18. The Disclosure Statement fails to provide parties in interest with critical information required to assess the Plan and its impact on them. Pursuant to Bankruptcy Code section 1125, the Debtors must provide "adequate information" regarding their proposed Plan to holders of impaired claims and interests entitled to vote on the Plan. Section 1125(a)(1) provides, in relevant part, as follows:

> 'adequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan[.]

11 USC § 1125(a)(1).

19. Adequate information is determined on a case-by-case basis through the factual circumstances at hand. *Oneida Motor Freight, Inc. v. United Jersey Bank* (*In re Oneida Motor Freight, Inc.*), 848 F.2d 414, 417 (3d Cir. 1988) (citing H.R. Rep. No. 595, 97th Cong., 2d Sess. 266 (1977)). Section 1125 sets a floor of adequate information, not a ceiling, and favors disclosure. *In re Ferretti*, 128 B.R. 16, 20 (Bankr. D.N.H. 1991) (citing *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988)). Section 1129(a)(2) conditions confirmation of the Debtors' Plan on its compliance with the adequate information disclosure requirements of Section 1125. *See* 11 U.S.C. 1129(a)(2); *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).

20. The Plan cannot be confirmed because the Debtors have not met their disclosure requirements. As an initial matter, creditors must be afforded the opportunity to review the Examiner's report before being asked to vote on the Plan and decide whether to opt-out of the releases proposed therein. As noted above, the Examiner should be investigating whether any claims or causes of action exist against the Released Parties. It is impossible for parties in interest to make an informed decision regarding the appropriateness of the proposed releases without first understanding the claims and causes of action they are being asked to release.

21. Additionally, the Disclosure Statement contains only general, broad descriptions of the estates' Causes of Action "which may be of significant value." Plan §§ 1.20, 1.21, 7.1. While

the Disclosure Statement explains "the Liquidation Trustee specifically retains and reserves the right to assert, after the Effective Date, any and all of the claims, Causes of Action (including but not limited to those Causes of Action listed on the Causes of Action List) and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing" it fails to disclose that the Debtors' and the Committee's interpretations of the term "Causes of Action" in these cases includes any and all claims against non-debtor third parties related to a creditor's transfer of cryptocurrency to Cred, which, based on the Debtors' prepetition business practices, implicates every single customer of the Debtors.  This vital information – missing from the Disclosure Statement – is necessary for parties in interest to make an informed judgment about the Plan, particularly with respect to the release, injunction and automatic stay provisions in section 18.  As explained above, section 18.5 of the Plan provides that the automatic stay shall *permanently* remain in full force and effect.  Plan § 18.5.  As such, the Plan operates to provide all potential third-party defendants with releases from all of the Debtors' creditors as they will be permanently enjoined and prevented by the Plan from pursuing their claims and causes of action against such potential third-party defendants – all without the creditors' knowledge or consent.  Accordingly, the Disclosure Statement does not adequately inform parties that the Plan permanently enjoins them from bringing claims against non-debtor third parties and that they could be subject to sanctions for violating the automatic stay if they were to bring such claims.

22. These are not theoretical issues that only potentially could impact creditors.  To the contrary, the failure to disclose specifically how the Plan will impact creditors' claims is a material, prejudicial, and fatal flaw that impairs stakeholders and parties in interest from evaluating and determining how the Plan impacts their rights and third-party claims.  To be sure, the Disclosure Statement defines the Released Parties as a narrow group of professionals who will receive third-

party releases under section 18.2 of the Plan. Plan §§ 1.113, 18.2. Nowhere does the Disclosure Statement provide any indication that creditors will be enjoined from pursuing claims against non-debtor third parties that are not included in the list of Released Parties (effectively providing a non-consensual third-party release to all non-debtor entities). ███████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ Without information of this sort, the Disclosure Statement cannot meet the "adequate information" requirement of section 1125.

## RESERVATION OF RIGHTS

23.    UpgradeYa reserves all rights, *inter alia*, to: object to the Plan on any and all grounds in advance of or at the hearing on confirmation of the Plan, regardless of whether or not addressed herein; complement, supplement, augment, alter or modify this objection; or to join in the objections of other parties in interest. UpgradeYa reserves all rights with respect to its claims for allowance and distribution purposes and does not waive any rights with respect thereto by submitting any ballots for voting purposes. UpgradeYa does not waive any rights with respect to its ability to assert, amend or modify its proofs of claims in these cases and reserves all rights with respect thereto. Furthermore, UpgradeYa reserves, and does not waive, any and all of its rights, claims, causes of action, remedies, and defenses, in any and all courts, under law or in equity, in connection therewith against the Debtors, any successor in interest to the Debtors, any litigation or liquidation trustee appointed pursuant to a confirmed plan, and any and all third-parties.

## CONCLUSION

24. WHEREFORE, for the reasons set forth herein, UpgradeYa respectfully requests that the Court (i) condition confirmation of the Plan and approval of the Disclosure Statement on the modifications proposed herein and (ii) grant such other and further relief as the Court deems necessary and appropriate.

| | |
|---|---|
| Dated: March 1, 2021<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>/s/ *Kimberly A. Brown*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>Nicolas E. Jenner (No. 6554)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone:   (302) 467-4400<br>Facsimile:    (302) 467-4450<br>Email: landis@lrclaw.com<br>           brown@lrclaw.com<br>           pierce@lrclaw.com<br>           jenner@lrclaw.com<br><br>*Counsel to UpgradeYa Investments, LLC* |