## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x
                             :

In re:                         :    **Chapter 11**

                             :

**CRED INC.,** *et al.,*         :    **Case No. 20-12836 (JTD)**

                             :

         **Debtors.**[1]        :    **Jointly Administered**

                             :

                             :

-------------------------------------------------------------x

### DEBTORS' MEMORANDUM OF LAW (I) IN SUPPORT OF (A) FINAL APPROVAL OF THE ADEQUACY OF DISCLOSURE STATEMENT UNDER SECTION 1125 OF THE BANKRUPTCY CODE AND (B) CONFIRMATION OF THE MODIFIED FIRST AMENDED COMBINED JOINT PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT OF CRED INC. AND ITS SUBSIDIARIES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) IN RESPONSE TO OBJECTIONS TO APPROVAL OF, AND CONFIRMATION OF <u>COMBINED PLAN AND DISCLOSURE STATEMENT</u>

**PAUL HASTINGS LLP**
James T. Grogan (admitted *pro hac vice*)
Mack Wilson (admitted *pro hac vice*)
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
Telephone: (713) 860-7300
Facsimile: (713) 353-3100
Email: jamesgrogan@paulhastings.com
mackwilson@paulhastings.com

- and -

**PAUL HASTINGS LLP**
Irena M. Goldstein (admitted *pro hac vice*)
Avram E. Luft (admitted *pro hac vice*)
Scott M. Shelley (admitted *pro hac vice*)
G. Alexander Bongartz (admitted *pro hac vice*)

**COUSINS LAW LLC**
Scott D. Cousins (No. 3079)
Brandywine Plaza West 1521 Concord Pike,
Suite 301 Wilmington, Delaware 19803
Telephone: (302) 824-7081
Facsimile: (302) 295-0331
Email: scott.cousins@cousins-law.com

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268); Cred (US) LLC (5799), Cred Capital Inc. (4064), Cred Merchant Solutions LLC (3150); and Cred (Puerto Rico LLC (3566). The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
Email: irenagoldstein@paulhastings.com
aviluft@paulhastings.com
scottshelley@paulhastings.com
alexbongartz@paulhastings.com

INTRODUCTION ........................................................................................................ 1

PRELIMINARY STATEMENT .................................................................................. 2

BACKGROUND ......................................................................................................... 4

ARGUMENT .............................................................................................................. 9

I.     FINAL APPROVAL OF THE DISCLOSURE STATEMENT IS WARRANTED
       AND THE DEBTORS COMPLIED WITH THE SOLICITATION
       PROCEDURES ORDERS ................................................................................ 9

       A.     The Combined Disclosure Statement and Plan Satisfies the Requirements
              of the Bankruptcy Code ........................................................................ 9

       B.     The Debtors Substantially Complied with the Scheduling Order ....................... 11

              1.     The Debtors Substantially Complied with the Notice Requirements
                     Set Forth in the Scheduling Order ............................................ 11

              2.     The Ballots Used to Solicit Holders of Claims Entitled to Vote on
                     the Plan Complied with the Scheduling Order ..................................... 12

              3.     The Debtors' Solicitation Period Complied with the Scheduling
                     Order and Bankruptcy Rule 3018(b) ........................................... 13

              4.     The Debtors' Vote Tabulation Procedures Complied with the
                     Scheduling Order ................................................................ 13

              5.     Solicitation of the Plan Complied with the Bankruptcy Code and
                     Was in Good Faith .............................................................. 13

II.    THE PLAN SATISFIES THE REQUIREMENTS OF BANKRUPTCY CODE
       SECTION 1129 AND SHOULD BE CONFIRMED ........................................ 14

       A.     The Plan Complies with the Applicable Provisions of the Bankruptcy
              Code (§ 1129(a)(1)) ............................................................................ 14

              1.     The Plan Satisfies the Classification Requirements of Bankruptcy
                     Code Section 1122 .............................................................. 14

              2.     The Plan Satisfies the Mandatory Plan Requirements of
                     Bankruptcy Code Section 1123(a) ............................................. 17

              3.     The Plan Complies with the Discretionary Provisions of
                     Bankruptcy Code Section 1123(b) ............................................ 20

              4.     The Plan Complies with Bankruptcy Code Section 1123(d) .................. 34

       B.     The Debtors Complied with the Applicable Provisions of the Bankruptcy
              Code (§ 1129(a)(2)) ............................................................................ 34

              1.     The Debtors Complied with Bankruptcy Code Section 1125 ................. 35

              2.     The Debtors Complied with Bankruptcy Code Section 1126 ................. 35

       C.     The Plan Is Proposed in Good Faith (§ 1129(a)(3)) ........................................... 36

D.    The Plan Provides that the Debtors' Payment of Professional Fees and Expenses Are Subject to Court Approval (§ 1129(a)(4)) ................................... 37

E.    The Debtors Disclosed All Necessary Information Regarding Directors, Officers, and Insiders (§ 1129(a)(5)) .................................................................. 38

F.    The Plan Does Not Require Governmental Regulatory Approval (§ 1129(a)(6)) ........................................................................................................ 40

G.    The Plan Satisfies the Best Interests Test (§ 1129(a)(7)) ................................... 40

H.    The Plan Is Confirmable Notwithstanding the Requirements of Bankruptcy Code Section 1129(a)(8) .................................................................. 41

I.    The Plan Provides for Payment in Full of All Allowed Priority Claims (§ 1129(a)(9)) ....................................................................................................... 42

J.    At Least One Class of Impaired, Non-Insider Claims Accepted the Plan (§ 1129(a)(10)) ..................................................................................................... 43

K.    The Plan Is Feasible (§ 1129(a)(11)) .................................................................. 43

L.    All Statutory Fees Have Been or Will Be Paid (§ 1129(a)(12)) .......................... 44

M.    Bankruptcy Code Sections 1129(a)(13)-(a)(16) Are Inapplicable...................... 45

N.    The Plan Should be Approved Under Bankruptcy Code Section 1129(b) .......... 46

O.    Bankruptcy Code Section 1129(c) Is Inapplicable ............................................. 48

P.    The Plan Complies with the Other Provisions of Bankruptcy Code Section 1129 (Section 1129(d)-(e)) .................................................................... 48

Q.    Modification of the Plan ...................................................................................... 48

R.    Good Cause Exists to Waive the Stay of the Confirmation Order ...................... 49

III.    THE UNRESOLVED OBJECTIONS SHOULD BE OVERRULED............................ 50

CONCLUSION................................................................................................................................ 50

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 500 Fifth Ave. Assocs.*,
  148 B.R. 1010 (Bankr. S.D.N.Y. 1993) ...................................................................................15

*ACC Bondholder Grp. V. Adelphia Commc'ns Corp.*
  *(In re Adelphia Commc'ns Corp.)*,
  361 B.R. 337 (Bankr. S.D.N.Y. 2007) .................................................................................22, 40

*In re Apex Oil Co.*,
  118 B.R. 683 (Bankr. E.D. Mo. 1990) ...................................................................................39

*In re Armstrong World Indus.*,
  432 F.3d 507 (3d Cir. 2005) ...................................................................................................47

*In re Armstrong World Indus., Inc.*,
  348 B.R 136 (D. Del. 2006) .....................................................................................................15

*Bank of Am. Nat'l Tr. & Savs. Ass'n v. 203 N. LaSalle St. P'ship*,
  526 U.S. 434 (1999) ..................................................................................................................40

*Berkeley Fed. Bank & Tr. v. Sea Garden Motel & Apartments*
  *(In re Sea Garden Motel & Apartments)*,
  195 B.R. 294 (D. N.J. 1996) ....................................................................................................44

*In re Burns & Roe Enters., Inc.*,
  No. 08-4191 (GEB), 2009 WL 438694 (D.N.J. Feb. 23, 2009) .............................................49

*Cadle Co. II, Inc. v. PC Liquidation Corp. (In re PC Liquidation Corp.)*,
  383 B.R. 856 (E.D.N.Y. 2008) ................................................................................................10

*In re Capmark Fin. Grp. Inc.*,
  No. 09-13684 (CSS), 2011 WL 6013718 (Bankr. D. Del. Oct. 5, 2011) ...............................44

*Century Glove, Inc. v. First Am. Bank of N.Y.*,
  860 F.2d 94 (3d Cir. 1988) .............................................................................................. *passim*

*In re Chapel Gate Apartments, Ltd.*,
  64 B.R. 569 (Bankr. N.D. Tex. 1986) ......................................................................................38

*Chateaugay Corp.. v. LTV Steel Co. (In re Chateaugay Corp.)*,
  10 F.3d 944 (2d Cir. 1993) .......................................................................................................15

*In re Coram Healthcare Corp.*,
315 B.R. 321 (2004)................................................................................................22, 23, 25

*In re DBSD N. Am., Inc.*,
419 B.R. 179 (Bankr. S.D.N.Y. 2009) ..................................................................................28

*In re Dex One Corp.*,
No. 13-10533 (Apr. 29, 2013) ..............................................................................................50

*In re Drexel Burnham Lambert Grp. Inc.*,
138 B.R. 723 (Bankr. S.D.N.Y. 1992)..................................................................................15

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992)..................................................................................................33

*In re Exaeris, Inc.*,
380 B.R. 741 (Bankr. D. Del. 2008) .....................................................................................25

*In re Exide Techs.*,
303 B.R. 48 (Bankr. D. Del. 2003) .................................................................................22, 26

*Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*,
116 F.3d 790 (5th Cir. 1997) ................................................................................................37

*First Am. Bank of N.Y. v. Century Glove, Inc.*,
81 B.R. 274 (D. Del. ), *aff'd in part*, 860 F.2d 94 (1988).......................................................9

*In re Flintkote Co.*,
486 B.R. 99 (Bankr. D. Del. 2012) .................................................................................43, 44

*In re Future Energy Corp.*,
83 B.R. 470 (Bankr. S.D. Ohio 1988)...................................................................................38

*In re Gatehouse Media, Inc.*,
No. 13- 12503 (MFW) (Bankr. D. Del. Nov. 6, 2013) .........................................................50

*In re Genesis Health Ventures, Inc.*,
266 B.R. 591 (Bankr. D. Del. 2001) .....................................................................................29

*In re Geokinetics Inc.*,
No. 13-10472 (KJC) (Bankr. D. Del. Apr. 25, 2013) ...........................................................50

*Gillman v. Cont'l Airlines (In re Cont'l Airlines)*,
203 F.3d 203 (3d Cir. 2000)..................................................................................................29

*In re Global Eagle Entertainment Inc.*,
Case No. 20-11835 (JTD) ....................................................................................................29

ii

*In re Global Safety Textiles Holdings LLC*,
  No. 09-12234 (KG), 2009 WL 6825278 (Bankr. D. Del. Nov. 30, 2009)...............................49

*In re GSE Envtl., Inc.*,
  No. 14-11126 (MFW) (Bankr. D. Del. July 25, 2014) ...........................................................50

*In re Heritage Org., L.L.C.*,
  375 B.R. 230 (Bankr. N.D. Tex. 2007).................................................................................15

*In re Indianapolis Downs, LLC*,
  486 B.R. 286 (Bankr. D. Del. 2013) .........................................................................28, 29, 33

*In re Insys Therapeutics, Inc.*,
  Case No. 19-11292(KG), (Bankr. Del. January 16, 2020) ....................................................29

*In re Integrated Health Serv., Inc.*,
  No. 00-389 (MFW), 2001 Bankr. LEXIS 100 (Bankr. D. Del. Jan. 3, 2001).........................23

*In re Jersey City Med. Ctr.*,
  817 F.2d 1055 (3d Cir. 1987)...............................................................................................15

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
  987 F.2d 154 (3d Cir. 1993).................................................................................................15

*Kane v. Johns-Manville Corp.*,
  843 F.2d 636 (2d Cir. 1988)...........................................................................................43, 44

*Key3Media Grp., Inc. v. Pulver.com, Inc.* (*In re Key3Media Grp., Inc.*),
  No. 03-10323 (MFW), 05-828-SLR, 2006 WL 2842462 (D. Del. Oct. 2, 2006)...................22

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
  337 F.3d 314 (3d Cir. 2003)...................................................................................................9

*In re Lapworth*,
  No. 97-34529 (DWS), 1998 WL 767456 (Bankr. E.D. Pa. Nov. 2, 1998)..............................34

*In re Lason, Inc.*,
  300 B.R. 227 (2003)..............................................................................................................41

*In re Lisanti Foods, Inc. v. Lubetkin (In re Lisanti Foods, Inc.)*,
  329 B.R. 491 (D.N.J. 2005), *aff'd*, 241 F. App'x 1 (3d Cir. 2007) ..................................10, 38

*In re Local Insight Media Holdings, Inc.*,
  No. 10-13677 (Nov. 3, 2011)................................................................................................30

*In re Majestic Star Casino, LLC*,
  No. 09-14136 (KG) (Bankr. D. Del. Mar. 10, 2011) .............................................................30

*In re Metrocraft Publ'g Servs., Inc.*,
  39 B.R. 567 (Bankr. N.D. Ga. 1984) ................................................................10

*Myers v. Martin (In re Martin)*,
  91 F.3d 389 (3d Cir. 1996)........................................................................22, 23

*In re NII Holdings, Inc.*,
  288 B.R. 356 (Bankr. D. Del. 2002) ................................................................37

*In re Nutritional Sourcing Corp.*,
  398 B.R. 816 (2008)..............................................................................14, 22

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
  848 F.2d 414 (3d Cir. 1988)........................................................................9

*In re Phx. Petroleum Co.*,
  278 B.R. 385 (2001)................................................................................10

*In re Physiotherapy Holdings, Inc.*,
  No. 13-12965 (Dec. 23, 2013) ......................................................................50

*In re Pizza of Haw. Inc.*,
  761 F.2d 1374 (9th Cir. 1985) ......................................................................44

*In re PQ New York*,
  Case No. 20-11266................................................................................29

*In re Premier Int'l Holdings, Inc.*,
  No. 09-12019 (CSS), 2010 WL 2745964 (Bankr. D. Del. Apr. 29, 2010) ..........................31

*In re Prussia Assocs.*,
  322 B.R. 572 (2005)................................................................................44

*In re PWS Holding Corp.*,
  228 F.3d 224 (3d Cir. 2000)...............................................................31, 33, 37

*In re River Village Assocs.*,
  181 B.R. 795 (E.D. Pa. 1995) ......................................................................10

*In re S & W Enter.*,
  37 B.R. 153 (1984)................................................................................14

*In re Scioto Valley Mortg. Co.*,
  88 B.R. 168 (Bankr. S.D. Ohio 1988)................................................................10

*In re SFP Franchise Corp.*,
  Case No. 20-10134 (JTD) ..........................................................................29

*In re Source Home Entm't, LLC*,
No. 14-11553 (KG) (Bankr. D. Del, Feb. 20, 2015)..............................................50

*In re Spansion, Inc.*,
No. 09-10690 (KJC), 2010 WL 2905001 (Bankr. D. Del. Apr. 16, 2010) .............................31

*In re Tex. Extrusion Corp.*,
844 F.2d 1142 (5th Cir. 1988) ..............................................9

*In re Texaco, Inc.*,
84 B.R. 893 (Bankr. S.D.N.Y. 1988) ..............................................39

*In re Tribune Co.*,
464 B.R. 126 (Bankr. D. Del. 2011) ..............................................44

*In re Tribune Co.*,
972 F. 3d 228 (3rd Cir. 2020) ..............................................47

*In re TSIC, Inc.*,
393 B.R. 71 (Bankr. D. Del. 2008) ..............................................23

*U.S. Bank Nat'l Ass'n v. Wilmington Tr. Co. (In re Spansion, Inc.)*,
426 B.R. 114 (Bankr. D. Del. 2010) ..............................................25, 26, 28

*In re U.S. Brass Corp.*,
194 B.R. 420 (Bankr. E.D. Tex. 1996) ..............................................10

*In re U.S. Truck Co.*,
47 B.R. 932 (E.D. Mich. 1985), *aff'd*, 800 F.2d 581 (6th Cir. 1986) ..............................................43

*United Artists Theatre Co. v, Walton (In re United Artists Theatre Co.)*,
315 F.3d 217 (3d Cir. 2000)..............................................29

*Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.)*,
326 B.R. 497 (S.D.N.Y. 2005)..............................................33

*In re Verso Corp.*,
No. 16-10163 (KG) (Bankr. D. Del. June 24, 2016) ..............................................32

*In re W.R. Grace & Co.*,
475 B.R. 34 (D. Del. 2012)..............................................37, 43, 44

*In re W.T. Grant Co.*,
699 F.2d 599 (2d Cir. 1983)..............................................25

*In re Wash. Mut., Inc.*,
442 B.R. 314 (Bankr. D. Del. 2011) ..............................................25, 26, 29, 31

v

*Will v. Nw. Univ. (In re Nutraquest, Inc.),*
    434 F.3d 639 (3d Cir. 2006)................................................................22

*In re World Health Alts., Inc.,*
    344 B.R. 291 (Bankr. D. Del. 2006) ...................................................25

*In re Worldcom, Inc.,*
    No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) .......................34

*In re Zenith Elecs. Corp.,*
    241 B.R. 92 (Bankr. D. Del. 1999) ....................................................26, 28, 29

**Statutes**

11 U.S.C. § 101(51D)(B) ..................................................................48

11 U.S.C. § 328(a) ..........................................................................38

11 U.S.C. § 330(a)(1)(A) ..................................................................38

11 U.S.C. § 1114(a) .........................................................................45

11 U.S.C. § 1123(b)(1)–(3), (5-6)....................................................20, 21

11 U.S.C. § 1125(a)(1)........................................................................9

11 U.S.C. § 1126(a), (f) ...................................................................35

11 U.S.C. § 1129(a)(5)(A)(ii) ...........................................................39

11 U.S.C. § 1129(a)(5)(B) ................................................................39

11 U.S.C. § 1129(a)(11).....................................................................43

11 U.S.C. § 1129(a)(13)-(16).........................................................45, 46

11 U.S.C. § 1129(b)(1) .....................................................................46

11 U.S.C. §§ 1129(b)(2)(B)(ii), (C)(ii) ..............................................47

11 U.S.C. § 1129(d) .........................................................................48

11 U.S.C. § 1129(e) .........................................................................48

28 U.S.C. § 1930.........................................................................44, 45

**Other Authorities**

Fed. R. Bankr. P. 9019(a) ................................................................22

H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 ...........................................14

S. Rep. No. 95-989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787................................................14

## INTRODUCTION

1.      Cred Inc. and its affiliated debtors in possession in the above-captioned cases (the "Debtors" or the "Company"), submit this memorandum of law (this "Memorandum") in support of the Debtors' request for entry of an order, substantially in the form filed concurrently herewith, (a) granting final approval of the adequacy of disclosure under Bankruptcy Code section 1125, and (b) confirming and approving the *Modified First Amended Combined Joint Plan of Liquidation and Disclosure Statement of Cred Inc. and its Subsidiaries Under Chapter 11 of the Bankruptcy Code*" (the "Combined Disclosure Statement and Plan or the "Plan").[2] This Memorandum is the legal support for confirmation of the Plan pursuant to Bankruptcy Code section 1129 and response to the objections filed by UpgradeYa Investments, LLC ("UpgradeYa"), the United States Trustee ("U.S. Trustee") and James Alexander.[3]

2.      The Debtors also submit the: (a) *Declaration of Grant Lyon in Support of Confirmation of Modified First Amended Combined Joint Plan of Liquidation and Disclosure Statement of Cred Inc. and its Subsidiaries under Chapter 11 of the Bankruptcy Code* (the "Lyon Declaration"), filed concurrently herewith; and (b) *Declaration of Matthew K. Foster* (the "Foster Declaration," and together with Lyon Declaration, the "Confirmation Declarations"); (c) *Declaration of John Burlacu of Donlin Recano & Company, Inc. Regarding the Solicitation and Tabulation of Votes Cast on the First Amended Combined Joint Plan of Liquidation and*

---

[2]     Capitalized terms used herein, but not otherwise defined, shall have the meanings ascribed thereto in the Plan.

[3]     *See Objection of Upgradeya Investments LLC to Final Approval of the Adequacy of the Disclosure Statement and Confirmation of the Plan* [Docket No. 570]; *Objection of the United States Trustee to the First Amended Combined Joint Plan of Liquidation and Disclosure Statement of Cred Inc. and its Subsidiaries Under Chapter 11 of the Bankruptcy Code* [Docket No. 571]; and *Objection of James Alexander to Debtors' Combined Joint Plan of Liquidation* [Docket No. 569].  The United States, on behalf of the Internal Revenue Service, also filed an objection [Docket No. 568], but such objection was resolved pursuant to certain agreed amendments to the Combined Plan and Disclosure Statement and to the proposed order confirming the Plan described herein.

*Disclosure Statement of Cred Inc. and its Subsidiaries Under Chapter 11 of the Bankruptcy Code*, filed on March 4, 2021 [Docket No. 593] (the "Ballot Report").

## PRELIMINARY STATEMENT

3.    The Plan is the product of months of negotiations between the Debtors and the official committee of unsecured creditors (the "Committee") that resulted in the parties agreeing to the terms of a consensual plan as outlined in the Amended Plan Support Agreement (the "Amended PSA").[4]  The Combined Disclosure Statement and Plan was approved, on an interim basis on January 21, 2021, as containing adequate information under Bankruptcy Code section 1125[5], and as set forth herein, the Debtors now seek final approval of the adequacy of the disclosures contained therein.  Under the Plan, the Debtors' assets, cryptocurrency and estate causes of action will be transferred into a liquidation trust to be managed by three Liquidation Trustees.  The Liquidation Trustees, who are members of the Committee, will monetize the assets in a manner that will maximize the value of such assets for the benefit of holders of Class 4 General Unsecured Claims, under the supervision of the Trust Advisory Board.

4.    As set forth in the Ballot Report, the Classes entitled to vote on the Plan (Class 4 and Class 5, together, "the Voting Classes") overwhelmingly voted in favor of the Plan:  (a) 93.97% of Holders of Class 4 Claims voted in favor of the Plan; and (b) 92.3% of Holders of Class 5 Claims voted in favor of the Plan.[6]

5.    The Debtors received four formal objections and one informal objection to the Plan.  The Debtors were able to resolve the informal objection of the Ad Hoc Committee of

---

[4]    Docket No. 464.

[5]    Docket No. 399.

[6]    Holders of claims and interests in Class 1 (Other Priority Claims), Class 2 (Secured Tax Claims), Class 3 (Other Secured Claims), Class 6 (Subordinated Securities Claims), and Class 7 (Equity Interests in Debtors (the "Non-Voting Classes") are conclusively presumed to accept or reject the Plan, as applicable.

Bitcoin Lenders (the "Ad Hoc Committee") by making certain changes to the proposed Confirmation Order as detailed below and in the objection chart attached hereto as **Exhibit A** (the "Objection Chart").

6.      The Ad Hoc Committee resolution was reached after extensive negotiations between the Committee and the Ad Hoc Committee, with input from the Debtors, and provides as follows: (a) the Ad Hoc Committee can appoint two members of the Trust Advisory Board; (b) the Plan and Confirmation Order would not constitute a determination that a General Unsecured Claim must be calculated as of the Petition Date; and (c) the members of the Ad Hoc Committee's acceptance of the Plan would not be deemed to be acceptance of the Third Party Release (defined below).

7.      Additionally, the Debtors are hopeful they can resolve the formal objection of the United States, on behalf of the Internal Revenue Service, and are working constructively to that end.  However, at this time, no final resolution has been reached, and so the Debtors have responded to the United States' concerns in the Objection Chart.

8.      The Debtors were unable to reach resolution with the other objectors to the Combined Plan and Disclosure Statement.  In this regard, the U.S. Trustee argues, among other things, that the releases in the Plan do not comply with Third Circuit law.  But these contentions do not square with applicable precedent and the dozens of other plans with similar provisions that have been confirmed by the Bankruptcy Courts in this District.  As set forth below and in the Objection Chart, the Debtors believe that the objections raised by the U.S. Trustee are without merit or are adequately addressed by new language in the Confirmation Order and certain modifications to the Plan, and should be overruled.

9.      UpgradeYa asserts that the disclosure of the Causes of Action and the potential defenses thereto is not adequate within the meaning of Bankruptcy Code section 1125, and that the Plan improperly (a) disallows Claims under Bankruptcy Code section 502(d) and (b) extends the automatic stay, and therefore, should not be confirmed.  As set forth in the Objection Chart, each of UpgradeYa's assertions is without merit, and should be overruled with prejudice.

10.      Alexander objects to the Plan on the basis that he is the sole director of Debtor Cred Capital, Inc. ("Cred Capital") and, therefore, the Debtors are not authorized to, among other things, administer the assets of Cred Capital.  As set forth in the Objection Chart, this Court has already ruled against Alexander on these issues, and therefore, Alexander's objections, even if he has standing to assert an objection, should be overruled.[7]

11.      For the reasons set forth herein and in the Confirmation Declarations, the Plan satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129.

## BACKGROUND

**A.      The Chapter 11 Cases**

12.      On November 7, 2020, the Debtors commenced these Chapter 11 Cases by filing petitions for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Daniel Schatt in Support of Debtors' Chapter 11 Petitions and First Day Motions*.[8]

13.      The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

---

[7]      *See Order Denying Motion of James Alexander to Dismiss the Cred Capital, Inc. Case.* [Docket No. 487]

[8] Docket No. 12.

4

14.     On December 3, 2020, the U.S. Trustee appointed the Committee to serve in these Chapter 11 Cases.

**B.     Postpetition Negotiations and Investigations.**

15.     On November 18, 2020, the Debtors filed a motion[9] seeking entry of an order to approve bidding procedures for the sale of substantially all of the Debtors' assets, and schedule an auction for, and a hearing to approve the sale, and other related relief (the "Bid Procedures Order").  On December 21, 2020, the Bankruptcy Court entered the Bid Procedures Order.  The Bid Procedures Order provided that any stalking horse bidder was subject to the consent of the Committee.  The Debtors did not receive a bid acceptable to the Committee.

16.     Since the Committee's appointment, the Debtors and the Committee negotiated a consensual resolution of the Chapter 11 Cases.  Thereafter, the parties entered into a plan support agreement term sheet (the "Initial PSA") on or about December 23, 2020.[10]  The Initial PSA contemplated a sale of all or part of the Debtors' assets under Bankruptcy Code section 363 consistent with the Bid Procedures Order.  Thereafter, the Committee and the Debtors entered into the Amended PSA under which, among other things, any sale of the Debtors' assets would take place post-effective date by the Liquidation Trustees and the Debtors consented, subject to Bankruptcy Court approval, to the Committee having derivative standing to pursue all "Causes of Action against (i) any current or prior insider, affiliate, or employee of any Debtor and (ii) any person to recover cryptocurrency that was fraudulently transferred from the Debtors' digital wallets."  On February 25, 2021, the Bankruptcy Court entered the *Order Approving Stipulation*

---

[9] Docket No. 65.

[10]    Docket No. 279.

*Granting Derivative Standing to the Official Committee Unsecured Creditors to Commence Litigation.*[11]

17.    On January 8, 2021, in response to a motion filed by the U.S. Trustee,[12] the Court approved the appointment of Robert J. Stark as the examiner (the "Examiner") in the Chapter 11 Cases.[13]  Pursuant to the Court-approved Work Plan, the Examiner will investigate "allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the Debtors of or by current or former management of the Debtors."[14]  The Examiner has indicated he will endeavor to file a report detailing the results of his investigation prior to the hearing on confirmation of the Debtors' Plan.

**C.    The Solicitation Process**

18.    On January 21, 2021, the Court entered an *Order Pursuant to Bankruptcy Code Sections 105, 502, 1125, 1126 and 1128, Bankruptcy Rules 2002, 3003, 3017, 3018 and 3020, and Local Rules 3017-1, 3017-2, 3018-1, and 3020-1: (I) Approving, on an Interim Basis, the Debtors' Disclosure Statement; (II) Establishing Voting Record Date; (III) Approving Solicitation Packages and Distribution Procedures; (IV) Approving Forms of Ballots and Establishing Procedures for Voting on Joint Plan of Liquidation; (V) Approving Forms of Notices to Non-Voting Classes Under Plan; (VI Establishing Voting Deadline to Accept or Reject Plan; (VII) Approving Procedures for Vote Tabulations; and (VIII) Establishing Hearing Date for Final Approval of Disclosure Statement and Confirmation of Joint Plan of Liquidation*

---

[11]    Docket No. 557.

[12]    *Motion of the United States Trustee for Entry of an Order Directing the Appointment of a Trustee, or in the Alternative, (I) Directing the Appointment of an Examiner, or (II) Converting the Cases to Chapter 7 Cases.* [Docket No. 133]

[13]    Docket No. 338

[14]    *Order Approving Examiner's Proposed Scope, Work Plan, and Budget for Investigation* [Docket No. 431]; *Notice of Filing of Proposed Scope, Work Plan, and Budget for Investigation, Prepared and Submitted by Robert J. Stark, as Examiner.*  [Docket No. 376]

*and Related Notice and Objection Procedures* (the "Scheduling Order," and the motion granted

thereby, the "Scheduling Motion").[15]  Pursuant to the Scheduling Order, the Court, among other

things, conditionally approved the Disclosure Statement and established certain solicitation and

voting procedures (the "Solicitation and Voting Procedures").  Specifically, January 14, 2021

was established as the Voting Record Date and March 1, 2021 was established as the deadline to

file objections to the adequacy of the Disclosure Statement and/or confirmation of the Plan and

the deadline by which all Ballots to except or reject the Plan and the Opt-Out Election Forms

must be submitted to the Voting Agent.  In addition, under the Scheduling Order, the hearing to

consider final approval of the Disclosure Statement and confirmation of the Plan was scheduled

for March 9, 2021 (the "Combined Hearing").  The Scheduling Order also approved, among

other things, notice of the Combined Hearing (the "Combined Hearing Notice") and certain

notices to the holders of claims and interests in the Non-Voting Classes (the "Notice of

Unimpaired Non-Voting Status" and "the Notice of Impaired Non-Voting Status," together, "the

Notice of Non-Voting Status").

19.    Following entry of the Scheduling Order, the Debtors distributed solicitation

packages containing the Combined Hearing Notice, a letter from the Committee in favor of the

Plan, the Combined Disclosure Statement and Plan, the Scheduling Order, and the applicable

Ballot to holders of General Unsecured Claims in the Voting Classes as of the Voting Record

Date.[16]

---

[15] Docket No. 399.

[16]    *See Affidavit of Donlin, Recano and Company, Inc. Regarding Service of Solicitation Packages With Respect to The First Amended Combined Joint Plan of Liquidation and Disclosure Statement of Cred Inc. and its Subsidiaries Under Chapter 11 of the Bankruptcy Code* [Docket Nos. 491] (the "First Affidavit of Service") After entry of the Scheduling Order, an additional 570 holders of general unsecured claims in the approximate amount of $178,600.00 were identified and added to the Debtors' Schedules of Liabilities, and thereafter, the Debtors' Voting Agent mailed solicitation packages to such new creditors (the "New Creditors").    *See Supplemental Affidavit of Donlin, Recano and Company, Inc. Regarding Service of Solicitation Packages With*

20.     The Debtors distributed the Combined Hearing Notice, the applicable Notice of Non-Voting Status, and the Opt-Out Election Form to all known Holders of Claims and Interests in the Non-Voting Classes.[17]

21.     On February 19, 2021, the Debtors filed the *Notice of Filing of Plan Supplement for First Amended Combined Joint Plan of Liquidation and Disclosure Statement of Cred Inc. and its Subsidiaries Under Chapter 11 of the Bankruptcy Code* (the "Plan Supplement Notice").[18]  Included within the Plan Supplement was a list of executory contracts to be assumed and assigned.  Pursuant to the Plan Supplement Notice, the deadline for filing objections to the Debtors' assumption and assignment, and cure payment for any executory contract was March 1, 2021.

**D.     The Voting Results**

22.     The Ballot Report sets forth the dollar amounts of Claims and number of Holders voting in favor of the Plan in each Class, with respect to the votes actually cast, summarized in the charts below:

**Dollars Actually Voted**

| Class | Class Description | Total Dollars Voted | Dollars Accepted (% Accepting) | Dollars Rejected (% Rejecting) |
|---|---|---|---|---|
| 4 | General Unsecured Claims | $131,145,194.74 | $104,796,824.33 (79.91%) | $26,348,370.41 (20.09%) |
| 5 | Convenience Claims | $131,520.87 | $125,030.92 (95.07%) | $6,489.95 (4.93%) |

**Numbers Actually Voted**

---

*Respect to The First Amended Combined Joint Plan of Liquidation and Disclosure Statement of Cred Inc. and its Subsidiaries Under Chapter 11 of the Bankruptcy Code.* [Docket No. 497]

[17]     *See* First Affidavit of Service.

[18]     Docket No.533.

| Class | Class Description | Total Number Voted | Number Accepted (% Accepting) | Number Rejected (% Rejecting) |
|---|---|---|---|---|
| 4 | General Unsecured Claims | 431 | 405 (93.97%) | 26 (6.03%) |
| 5 | Convenience Claims | 389 | 359 (92.29%) | 30 (7.71%) |

23.    Accordingly, the Voting Classes have overwhelmingly voted in favor of confirmation of the Plan, and it should be confirmed.

## ARGUMENT

I.    **Final Approval of the Disclosure Statement Is Warranted and the Debtors Complied with the Solicitation Procedures Orders.**

A.    **The Combined Disclosure Statement and Plan Satisfies the Requirements of the Bankruptcy Code.**

24.    The primary purpose of a disclosure statement is to provide material information, or "adequate information," that allows parties entitled to vote on a proposed plan to make an informed decision about whether to vote to accept or reject the plan.[19] "Adequate information" is a flexible standard, based on the facts and circumstances of each case.[20] Courts within the Third Circuit and elsewhere acknowledge that determining what constitutes "adequate information" for the purpose of satisfying Bankruptcy Code section 1125 resides within the broad discretion of the court.[21]

---

[19]    *See, e.g., Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003) ("Under 11 U.S.C. § 1125(b), a party seeking chapter 11 bankruptcy protection has an affirmative duty to provide creditors with a disclosure statement containing adequate information to enable a creditor to make an informed judgment about the Plan.") (internal quotation marks omitted); *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote.").

[20]    11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records."); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. ) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources), *aff'd in part*, 860 F.2d 94 (1988).

[21]    *See, e.g., In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is

25.     Courts look for certain information when evaluating the adequacy of the

disclosures in a proposed disclosure statement, including:

a.      the events which led to the filing of a bankruptcy petition and the relationship of a debtor with the affiliates;

b.      a description of the available assets and the value the present condition of a debtor while in chapter 11;

c.      the anticipated future of the company and the claims asserted against a debtor;

d.      the source of information stated in the disclosure statement;

e.      the estimated return to creditors under a chapter 7 liquidation;

f.      the future management of a debtor;

g.      the chapter 11 plan or a summary thereof;

h.      the financial information, valuations, and projections relevant to the claimants' decision to accept or reject the chapter 11 claim;

i.      the information relevant to the risks posed to claimants under the plan;

j.      the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;

k.      the litigation likely to arise in a nonbankruptcy context; and

l.      the tax attributes of a debtor.[22]

---

adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court."); *In re River Village Assocs.*, 181 B.R. 795, 804 (E.D. Pa. 1995) (same); *In re Phx. Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (same); *see also Cadle Co. II, Inc. v. PC Liquidation Corp. (In re PC Liquidation Corp.)*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes adequate information in any particular situation is determined on a case-by-case basis, with the determination being largely within the discretion of the bankruptcy court.") (internal quotation marks and citations omitted); *In re Lisanti Foods, Inc. v. Lubetkin (In re Lisanti Foods, Inc.)*, 329 B.R. 491, 507 (D.N.J. 2005) (same), *aff'd*, 241 F. App'x 1 (3d Cir. 2007)

[22]     *In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Metrocraft Publ'g Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same). Disclosure regarding all topics is not necessary in every case. *Phx. Petroleum*, 278 B.R. at 393; *U.S. Brass*, 194 B.R. at 425.

26.     The Combined Disclosure Statement and Plan contains, among other things, descriptions and summaries of: (i) the classification and treatment of claims and interests under the Plan, including who is entitled to vote and how to vote on the Plan; (ii) the Debtors' corporate history and corporate structure, business operations, and prepetition capital structure and indebtedness; (iii) events leading to these Chapter 11 Cases; (iv) certain important effects of confirmation of the Plan; (v) the releases and exculpations contemplated by the Plan; (vi) certain financial information about the Debtors, including liquidation and valuation analyses; (vii) the statutory requirements for confirming the Plan; and (viii) certain risk factors holders of claims should consider before voting to accept or reject and the Plan and information regarding alternatives to confirmation of the Plan.

27.     For the reasons set forth above, the Debtors submit that the Combined Disclosure Statement and Plan contains adequate information within the meaning of Bankruptcy Code section 1125(a) in satisfaction of section 1126(b)(2) and should be approved on a final basis.

**B.      The Debtors Substantially Complied with the Scheduling Order.**

28.     As set forth above, on January 21, 2021, the Court entered the Scheduling Order, and approved, among other things, the Combined Hearing Notice, voting record date, voting deadline, solicitation procedures, forms of ballots, and voting tabulation procedures.[23]  The Debtors substantially complied with the procedures approved in these Solicitation Procedures Orders.

**1.      The Debtors Substantially Complied with the Notice Requirements Set Forth in the Scheduling Order.**

29.     The Debtors substantially satisfied the notice requirements set forth in the Scheduling Order, Bankruptcy Rule 3017, and Local Rule 3017-1.  On January 26, 2021 and

---

[23]     *See* Scheduling Order ¶¶ 5-30.

January 27, 2021, the Debtors Voting Agent mailed the solicitation materials (by First Class US Mail and electronically), which included the Combined Plan and Disclosure Statement and Combined Hearing Notice, the applicable ballots to holders of claims in the Voting Classes as of the voting record date entitled to vote to accept or reject the Plan, the Unimpaired Non-Voting Status Notice, and the Opt-Out Election Form, as applicable.[24]  On February 7, 2021 and February 8, 2021, the Voting Agent electronically mailed the Combined Plan and Disclosure Statement, the Combined Hearing Notice, and the applicable ballots to holders of claims in the Voting Classes as of the voting record date who had recently been added to the Debtors schedules of liabilities.[25]  Further, the Combined Hearing Notice included instructions on how to obtain the Combined Plan and Disclosure Statement without a fee through the Debtors' restructuring website, https://donlinrecano.com/clients/cred/Index, or at the Court's PACER website, www.deb.uscourts.gov.  In addition, no party has asserted defective service.

**2.      The Ballots Used to Solicit Holders of Claims Entitled to Vote on the Plan Complied with the Scheduling Order.**

30.      The form of ballots used complied with the Bankruptcy Rules and were approved by the Court pursuant to the Scheduling Order.[26]  No party has objected to the sufficiency of the ballots.  Based on the foregoing, the Debtors submit that they complied with the Scheduling Order and satisfied the requirements of Bankruptcy Rule 3018(c).

---

[24]    Affidavit of Service. [Docket No. 491].

[25]    Affidavit of Service [Docket No. 497]; *Notice of Filing of Amended Schedule F With Respect to Cred Inc.* [Docket No. 446].  The Debtors will count any ballot submitted by any New Creditor provided that it is received on or before March 8, 2021, the date that is twenty-eight (28) days from service of the Combined Plan and Disclosure Statement to such New Creditors.

[26]    *See* Scheduling Order ¶ 5

**3.      The Debtors' Solicitation Period Complied with the Scheduling Order and Bankruptcy Rule 3018(b).**

31.      The Debtors' solicitation period complied with the Scheduling Order and Bankruptcy Rule 3018(a).  ***First***, as demonstrated above, the Combined Plan and Disclosure Statement was transmitted to all holders of claims entitled to vote on the Plan.  ***Second***, the solicitation period complied with the Scheduling Order[27] and was adequate under the particular facts and circumstances of these Chapter 11 Cases, except with respect to the holders of Claims in the Voting Classes that were not identified until after entry of the Scheduling Order. Accordingly, the Debtors submit that they substantially complied with the Scheduling Order and satisfied the requirements of Bankruptcy Rule 3018(a).

**4.      The Debtors' Vote Tabulation Procedures Complied with the Scheduling Order.**

32.      The Voting Agent reviewed all ballots received in accordance with the procedures described in the Scheduling Order and the Scheduling Motion.[28]  Because the Voting Agent substantially complied with the solicitation procedures, the Debtors respectfully submit that the Court should approve the Debtors' tabulation of votes confirming that in Classes 4 and 5, the only two Classes entitled to vote on the Plan, the requisite majorities in amount and number of Claims voted to accept the Plan pursuant to Bankruptcy Code section 1126(c).

**5.      Solicitation of the Plan Complied with the Bankruptcy Code and Was in Good Faith.**

33.      Bankruptcy Code section 1125(e) provides that "a person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title .

---

[28]   *See generally* Ballot Report.

. . is not liable" on account of such solicitation for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan.

34.     As demonstrated by the Debtors' substantial compliance with the Scheduling Order, the Debtors at all times engaged in arm's-length, good-faith negotiations and took appropriate actions in connection with the solicitation of the Plan in compliance with Bankruptcy Code section 1125.  Therefore, the Debtors respectfully request that the Court grant the parties the protections provided under Bankruptcy Code section 1125(e).

## II.     The Plan Satisfies the Requirements of Bankruptcy Code Section 1129 and Should Be Confirmed.

### A.     The Plan Complies with the Applicable Provisions of the Bankruptcy Code (§ 1129(a)(1)).

35.     Under Bankruptcy Code section 1129(a)(1), a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]."  The legislative history of Bankruptcy Code section 1129(a)(1) explains that this provision also encompasses the requirements of Bankruptcy Code sections 1122 and 1123, which govern the classification of claims and the content of a plan of reorganization, respectively.[29]  As explained below, the Plan complies with the requirements of Bankruptcy Code sections 1122, 1123, and 1129, as well as other applicable provisions.

### 1.     The Plan Satisfies the Classification Requirements of Bankruptcy Code Section 1122.

36.     The classification requirement of Bankruptcy Code section 1122(a) provides, in pertinent part, as follows:

> Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim

---

[29]     S. Rep. No. 95-989, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912; H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368; *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008); *In re S & W Enter.*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984) ("An examination of the Legislative History of [section 1129(a)(1)] reveals that although its scope is certainly broad, the provisions it was most directly aimed at were [s]ections 1122 and 1123.") (citation omitted).

or interest is substantially similar to the other claims or interests of
such class.

37.     For a classification structure to satisfy Bankruptcy Code section 1122, not all

substantially similar claims or interests need to be grouped in the same class.[30]  Instead, claims

or interests designated to a particular class must be substantially similar to each other.[31]  Courts

in this jurisdiction and others have recognized that plan proponents have significant flexibility in

placing similar claims into different classes, provided there is a rational basis to do so.[32]

38.     The Plan's classification of claims and interests satisfies the requirements of

Bankruptcy Code section 1122 because the Plan places claims and interests into separate classes,

with claims and interests in each class differing from the claims and interests in each other class

in a legal or factual way or based on other relevant criteria.[33]  Specifically, the Plan provides for

the separate classification of claims and interests into the following classes:

    a.    Class 1: Other Priority Claims;

    b.    Class 2: Secured Tax Claims;

---

[30]   *See In re Armstrong World Indus., Inc.*, 348 B.R 136, 159 (D. Del. 2006).

[31]   *See id.*

[32]   Courts have identified grounds justifying separate classification, including: (i) where members of a class
possess different legal rights, and (ii) where there are good business reasons for separate classification. *See
John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158–59 (3d Cir. 1993) (as long
as each class represents a voting interest that is "sufficiently distinct and weighty to merit a separate voice in the
decision whether the proposed reorganization should proceed," the classification is proper); *In re Jersey City
Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987) (recognizing that separate classes of claims must be reasonable
and allowing a plan proponent to group similar claims in different classes); *see also Chateaugay Corp.. v. LTV
Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 956–57 (2d Cir. 1993) (finding separate classification
appropriate because classification scheme had a rational basis on account of the bankruptcy court-approved
settlement); *In re Heritage Org., L.L.C.*, 375 B.R. 230, 303 (Bankr. N.D. Tex. 2007) ("[T]he only express
prohibition on separate classification is that it may not be done to gerrymander an affirmative vote on a
reorganization plan"); *In re 500 Fifth Ave. Assocs.*, 148 B.R. 1010, 1018 (Bankr. S.D.N.Y. 1993) (although
discretion is not unlimited, "the proponent of a plan of reorganization has considerable discretion to classify
claims and interests according to the facts and circumstances of the case") (internal quotations omitted); *In re
Drexel Burnham Lambert Grp. Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) ("Courts have found that the
Bankruptcy Code only prohibits the identical classification of dissimilar claims. It does not require that similar
classes be grouped together . . . .").

[33]   *See* Plan, Art. VIII.

c.      <u>Class 3</u>: Other Secured Claims;

d.      <u>Class 4</u>: General Unsecured Claims;

e.      <u>Class 5</u>: Convenience Claims;

f.      <u>Class 6</u>: Subordinated Securities Claims; and

g.      <u>Class 7</u>: Equity Interests in Debtors.

39.      The Claims and interests assigned to each particular class described above are substantially similar to the other claims and interests in such class.  In addition, valid business, legal, and factual reasons justify the separate classification of the particular Claims or interests into the classes created under the Plan, and no unfair discrimination exists between or among holders of Claims and interests.  Namely, the Plan separately classifies the Claims because each holder of such Claims or interests may hold (or may have held) rights in the Debtors' estates legally dissimilar to the claims or interests in other classes or because substantial administrative convenience resulted from such classification.  For example:

a.   Other Priority Claims (Class 1) are classified separately due to their required treatment under the Bankruptcy Code.

b.   Secured Tax Claims are classified separately due to the fact that any such claims are secured.

c.   Convenience Claims are separately classified from General Unsecured Claims pursuant to Bankruptcy Code section 1122(b) because it is "reasonably and necessary for administrative convenience" of the Plan.  In that regard, there are more than 2,000 Convenience Claims (Claims that are less than $1,000) which would be a burden for the Liquidation Trustees to administer.  In contrast to Class 4 General Unsecured Claims, which will receive Distributions from the Liquidation Trust over time as assets are monetized, holders of Convenience Claims will receive Distributions on or as reasonably practicable after the later of (i) the Effective Date or (ii) thirty (30) days after the date on which such Claim becomes Allowed.  Classification of Convenience Claims in a separate Class thus greatly reduces the administrative burden on the Liquidation Trust.

40.   Accordingly, the Claims or interests assigned to each particular Class under the Plan are substantially similar to the other Claims or interests in each such Class and the distinctions among Classes are based on valid business, factual, and legal distinctions.  The Debtors submit that the Plan fully complies with and satisfies Bankruptcy Code section 1122.

**2.   The Plan Satisfies the Mandatory Plan Requirements of Bankruptcy Code Section 1123(a).**

41.   Bankruptcy Code section 1123(a) sets forth seven criteria that every chapter 11 plan must satisfy.  The Plan satisfies each of these requirements.

**a.   Designation of Classes of Claims and Equity Interests (§ 1123(a)(1)).**

42.   Bankruptcy Code section 1123(a)(1) requires that a chapter 11 plan designate classes of claims and equity interests, subject to Bankruptcy Code section 1122.  As discussed above, the Plan designates six Classes of Claims and one Class of Equity Interests, subject to

17

Bankruptcy Code section 1122.[34]   Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1123(a)(1).

### b.   Classes that Are Not Impaired (§ 1123(a)(2)).

43.   Bankruptcy Code section 1123(a)(2) requires that a chapter 11 plan specify which classes of claims or equity interests are unimpaired under the plan.  The Plan meets this requirement by setting forth the treatment of each Class in Article X that is not impaired.

### c.   Treatment of Impaired Classes (§ 1123(a)(3)).

44.   Bankruptcy Code section 1123(a)(3) requires that the Plan "specify the treatment of any class of claims or interests that is impaired under the plan."  The Plan meets this requirement by setting forth the treatment of each impaired Class in Article X.

### d.   Equal Treatment within Classes (§ 1123(a)(4)).

45.   Bankruptcy Code section 1123(a)(4) requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."  The Plan meets this requirement because holders of allowed Claims or interests will receive the same rights and treatment as other holders of allowed Claims or interests within such holders' respective class, except to the extent otherwise agreed to by the Debtors and any such holder.

### e.   Means for Implementation (§ 1123(a)(5)).

46.   Bankruptcy Code section 1123(a)(5) requires a plan provide "adequate means" for its implementation.  Article XII of the Plan and elsewhere in the Plan provide a detailed description of the transactions that will occur under the Plan.  Specifically, the Plan and the Plan Supplement provide, among other things: (i) the deemed substantive consolidation of the Debtors; (ii) the global settlement of numerous inter-Debtor, Debtor-Creditor, and inter-creditor

---

[34]   Plan, Art. X.

issues; (iii) liquidation of the Debtors and the transfer of all their Assets to the Liquidation Trust; (iv) the appointment of the Liquidation Trustees, and their responsibilities and duties; (v) the establishment of the Liquidation Trust; (vi) the disposition of the Debtors' books and records; and (vii) the closing of the Chapter 11 Cases.  The precise terms governing the execution of these transactions are set forth in the applicable definitive documents or forms of agreements included in the Plan Supplement.  Moreover, the Debtors will have sufficient Cash to make all payments required upon the Effective Date pursuant to the terms of the Plan.  Thus, the Plan satisfies Bankruptcy Code section 1123(a)(5).

### f.      Issuance of Non-Voting Securities (§ 1123(a)(6)).

47.      Bankruptcy Code section 1123(a)(6) prohibits the issuance of non-voting equity securities, and requires amendments to debtor's corporate governance documents to so provide. The Plan is a liquidating plan pursuant to which all the Debtors' Assets will be transferred to the Liquidation Trust and each of the Debtors will ultimately be dissolved.  As such, the Plan does not provide for the issuance of non-voting equity securities, and the Plan satisfies Bankruptcy Code section 1123(a)(6).

### g.      Directors and Officers (§ 1123(a)(7)).

48.      Bankruptcy Code section 1123(a)(7) requires that plan provisions with respect to the manner of selection of any director, officer, or trustee, or any other successor thereto, be "consistent with the interests of creditors and equity security holders and with public policy." Pursuant to Section 12.3 of the Plan, the Liquidation Trustees were selected by the Committee and shall act in a "fiduciary capacity on behalf of the interests of all Holders of Claims that will

receive Distributions pursuant to the terms hereof."[35]   Accordingly, the Plan satisfies the

requirements of Bankruptcy Code section 1123(a)(7).

> ### 3.    The Plan Complies with the Discretionary Provisions of Bankruptcy Code Section 1123(b).
>
> #### a.    Overview of the Plan's Compliance with Bankruptcy Code Section 1123(b).

49.     Bankruptcy Code section 1123(b) sets forth various discretionary provisions that

may be incorporated into a chapter 11 plan.  Among other things, Bankruptcy Code

section 1123(b) provides that a plan may: (i) impair or leave unimpaired any class of claims or

interests; (ii) provide for the assumption or rejection of executory contracts and unexpired leases;

(iii) provide for the settlement or adjustment of any claim or interest belonging to the debtor or

the estates; (iv) modify the rights of holders of claims and interests; and (v) include any other

appropriate provision not inconsistent with the applicable provisions of chapter 11.[36]

> #### b.    Impairment/Unimpairment of Claims and Interests (§ 1123(b)(1)).

50.     Bankruptcy Code section 1123(b)(1) provides that a plan may "impair or leave

unimpaired any class of claims, secured or unsecured, or of interests."  Under Article X of the

Plan, Classes 1, 2, and 3 are unimpaired because the Plan leaves unaltered the legal, equitable,

and contractual rights of the holders of claims and interests within such classes.[37] On the other

hand, Classes 4, 5, 6, and 7 are impaired since the Plan modifies the rights of the holders of

claims and interests within such classes as contemplated in Bankruptcy Code

---

[35]    Section 7.3(i) of the Plan.

[36]    *See* 11 U.S.C. § 1123(b)(1)–(3), (5-6).

[37]    *See* Plan, Art. X.

20

section 1123(b)(1).[38]  Accordingly, the Plan is consistent with Bankruptcy Code section

1123(b)(1).

### c.    Assumption/Rejection of Executory Contracts and Leases (§ 1123(b)(2)).

51.    Bankruptcy Code section 1123(b)(2) allows a Plan to provide for the assumption,

assumption and assignment, or rejection of executory contracts and unexpired leases pursuant to

Bankruptcy Code section 365.  Article XV of the Plan provides that on the Effective Date, all of

the Debtors' Executory Contracts and Unexpired Leases will be deemed rejected unless (a) the

Debtors previously assumed, assumed and assigned, or rejected such Executory Contract or

Unexpired Lease, (b) prior to the Effective Date, the Debtors moved to assume, assume and

assign, or reject an Executory Contract or Unexpired Leases and such motion is still pending,

(c) an Executory Contract or Unexpired Lease is identified in the Plan Supplement as an

Executory Contract or Unexpired Lease to be assumed, or assumed and assigned under the Plan,

or (d) with respect to Executory Contracts and Unexpired Leases under which the non-Debtor

counterparty has consented to an extension of the time by which the Debtors must assume or

reject to a date beyond the Effective Date, the date specified in such consent.  Accordingly, the

treatment of executory contracts and unexpired leases in the Plan is authorized by, and its

consistent with, Bankruptcy Code section 1123(b)(2).

### d.    Settlement, Releases, Exculpation, Injunction, and Cancellation of Liens (§ 1123(b)(3)).

52.    Bankruptcy Code section 1123(b)(3)(A) allows a Plan to provide for "the

settlement or adjustment of any claim or interest belonging to the debtor or to the estate."

---

[38]    *See id.*

### (i)    <u>Global Settlement</u>

53.    Pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019, the Plan

incorporates a global settlement of inter-Debtor, Debtor-Creditor, and inter-Creditor issues,

including the validity and enforceability of Intercompany Claims and the allocation of Assets

among the Estates.  The global settlement will be implemented through the deemed substantive

consolidation of the Debtors' Estates, for the purposes of voting on, and Distributions under the

Plan.

54.    Compromises and settlements are "a normal part of the process of

reorganization"[39] and are one of the Bankruptcy Code's primary objectives.[40]  Bankruptcy Rule

9019 provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing,

the court may approve a compromise and settlement."[41]  This standard also applies when the

settlement is incorporated into a chapter 11 plan.[42]  To approve a compromise and settlement

under Rule 9019(a), the court does not have to be convinced that the settlement is the best

possible compromise.[43]  Rather, the court must only determine that the compromise or

settlement is fair and equitable and falls within the reasonable range of litigation possibilities

---

[39]    *In re Exide Techs.*, 303 B.R. 48, 66 (Bankr. D. Del. 2003) ("A plan may include a provision that settles or adjusts any claim belonging to the debtor or the estate") (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)); *see also In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004) (citing *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) and noting that "[c]ompromises are generally favored in bankruptcy").

[40]    "To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *Martin*, 91 F.3d at 393 (internal quotation marks omitted); *see also Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) ("[s]ettlements are favored [in bankruptcy]"); *Key3Media Grp., Inc. v. Pulver.com, Inc. (In re Key3Media Grp., Inc.)*, No. 03-10323 (MFW), 05-828-SLR, 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006) (same); *ACC Bondholder Grp. V. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 348 (Bankr. S.D.N.Y. 2007) (same).

[41]    Fed. R. Bankr. P. 9019(a).

[42]    *See Nutritional Sourcing,* 398 B.R. at 832 ("the standards for approving settlements as part of a plan of reorganization are the same as the standards for approving settlements under Fed. R. Bankr. P. 9019"); *Coram Healthcare*, 315 B.R. at 334 (holding that the "standards for approval of a settlement under section 1123 are generally the same as those under Rule 9019[.]").

[43]    *Coram Healthcare*, 315 B.R. at 330.

somewhere above the lowest point in the range of reasonableness.[44]  In determining whether a proposed settlement is fair and equitable, courts have found the following factors to be the most pertinent: (i) the probability of success on the merits in the litigation being settled; (ii) the likely difficulties in collecting a judgment; (iii) the complexity of the litigation and the attendant expense, inconvenience, and delay; and (iv) the paramount interest of creditors.[45]

55.     Here, the settlements embedded in the Plan are the result of extensive good faith and arm's-length negotiations between the Debtors and the Committee.  In reaching these settlement terms providing for the limited substantive consolidation of the Debtors' Estates, the Debtors considered, among other things: (i) the prepetition Debtors did not accurately reflect which Assets and Liabilities were attributable to each Debtor; (ii) the cost and expense of determining which of the Debtors' Customers are creditors of Cred Inc. or Cred (US) LLC; and (iii) a forensic analysis would deplete recoveries for the Debtors' General Unsecured Creditors.[46]

56.     Absent the approval of the Global Settlement, the potential costs to each of the Debtors' Estates of litigating Debtor-creditor and inter-creditor issues would be prohibitive. Moreover, it is likely that the result of any further due diligence and litigation regarding the various Debtor-creditor and inter-creditor issues would lead to the same conclusion upon which the Plan's Global Settlement is based—litigating every Debtor-creditor and every inter-creditor dispute over value allocation is a futile and cost-prohibitive endeavor.

---

[44]   *Id.* at 330; *see also In re Integrated Health Serv., Inc.*, No. 00-389 (MFW), 2001 Bankr. LEXIS 100, at *7 (Bankr. D. Del. Jan. 3, 2001) ("The responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised . . . but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness.") (ellipses in original) (citations omitted).

[45]   *Martin*, 91 F.3d at 393; *see also In re TSIC, Inc.*, 393 B.R. 71, 78 (Bankr. D. Del. 2008).

[46]   *See* Foster Declaration, ¶¶ 12-15.

57.     The implementation of the global settlement is a critical Plan mechanism providing significant benefit and net value for the Estates, and therefore, pursuant to Bankruptcy Code section 1123(b)(6) and Bankruptcy Rule 9019, the Court is authorized to approve the Global Settlement on the terms of and subject to the conditions set forth in the Plan.

### (ii)     Release and Exculpation Provisions

58.     The Plan also contains release and exculpation provisions that were integral components of the complex negotiations and compromises underlying the Plan.  Specifically, the Plan contains:

- Releases in Article XVIII.2 of the Plan by the Debtors, the Estates, and the Liquidation Trust in favor of the Released Parties[47] (collectively, the "Debtor Release");

- Releases in Article XVIII.2 of the Plan in favor of the Released Parties by Holders of Claims or Interests (including certain Insiders and parties related to the Debtors) who (a) vote in favor the Plan or (2)(A) abstain from voting, are not entitled to vote, or vote to reject the Combined Plan and Disclosure Statement and (B) do not opt out of the release by timely submitting a Ballot or the Opt-Out Election Form, excluding any Insider that is not a Released Party (the "Third Party Release"); and

- An exculpation provision in ArticleXVIII.1 of the Plan in favor of certain Insiders, employees, and Professionals with respect to actions taken in or arising out of these Chapter 11 Cases.

These provisions, among other things: (i) are the product of extensive, good-faith, arms-length negotiations; (ii) were a material inducement for parties to vote for or otherwise support the Plan; (iii) are supported by the Debtors and the Committee; and (iv) are consistent with applicable precedent.

---

[47]  "Released Parties" means the Professionals retained by the Debtors, Grant Lyon as the Debtors' independent director, Matthew Foster as the Debtors' chief restructuring officer, any other staff supplied by Sonoran Capital Advisors, LLC, the Professionals retained by the Committee, and the respective agents and representatives of each of the foregoing.

**(I)      The Debtor Release Is Appropriate.**

59.      The Debtor Release is extremely narrow and is limited to the Debtors' and the

Committee's Professionals, the disinterested director, the Debtors' Chief Restructuring Officer,

staff provided by Sonoran Capital Advisors, LLC, and each of the foregoings' respective agents

and representatives.  In particular, the Plan provides for releases by the Debtors of any and all

Causes of Action that the Debtors or parties derivatively on behalf of the Debtors could assert

against the Released Parties.

60.      Bankruptcy Code section 1123(b)(3)(A) provides that a chapter 11 plan may

provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to

the estate."[48]  Further, a debtor may release claims under Bankruptcy Code

section 1123(b)(3)(A) "if the release is a valid exercise of the debtor's business judgment, is fair,

reasonable, and in the best interests of the estate."[49]  In determining whether a debtor release is

proper, courts in Delaware and elsewhere generally may consider the following five factors:

      a.      whether the non-debtor has made a substantial contribution to the debtor's
reorganization;

      b.      whether the release is essential to the debtor's reorganization;

      c.      agreement by a substantial majority of creditors to support the release;

      d.      identity of interest between the debtor and the third party; and

---

[48]    *See Coram Healthcare,* 315 B.R. at 334–35 (holding that standards for approval of settlement under Bankruptcy
Code section 1123 are generally the same as those under Bankruptcy Rule 9019). Generally, courts in the Third
Circuit approve a settlement by the debtors if the settlement "exceed[s] the lowest point in the range of
reasonableness." *E.g.*, *In re Exaeris, Inc.*, 380 B.R. 741, 746 (Bankr. D. Del. 2008) (citation omitted); *see In re
W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (examining whether settlement "fall[s] below the lowest point
in the range of reasonableness") (alteration in original) (citations omitted); *In re World Health Alts., Inc.*, 344
B.R. 291, 296 (Bankr. D. Del. 2006) (stating that settlement must be within reasonable range of litigation
possibilities).

[49]    *U.S. Bank Nat'l Ass'n v. Wilmington Tr. Co. (In re Spansion, Inc.)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010);
*see also In re Wash. Mut., Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("In making its evaluation [whether to
approve a settlement], the court must determine whether 'the compromise is fair, reasonable, and in the best
interest of the estate.") (alteration added) (internal quotation marks and citation omitted).

e.      whether a plan provides for payment of all or substantially all of the claims in the class or classes affected by the release.[50]

Not all of the above factors need to be satisfied for a court to approve a debtor release.[51]

61.      The Debtors have satisfied the business judgment standard in granting the Debtor Release under the Plan.  The Debtor Release meets the applicable standard because it is fair, reasonable, and in the best interests of the Debtors' estates.

62.      ***First***, each of the Released Parties has made a substantial contribution to the Debtors' Estates.  The Released Parties played an integral role in the formulation of the Plan as amended and contributed to the Plan by expending significant time and resources analyzing and negotiating the issues presented by the Debtors' prepetition transactions.  The Committee agreed to support the Debtors' Plan and negotiated to provide its constituents the best possible outcome given the facts of these Chapter 11 Cases.  Further, the Debtors' independent director, Chief Restructuring Officer, and the Debtors' and Committee's Professionals have been instrumental in negotiating, formulating, and implementing the transactions contemplated under the Initial PSA, the Amended PSA, and the Plan.

63.      ***Second***, as evidenced by the Voting Declaration, an overwhelming number of holders of claims in the Voting Classes voted in support of the Plan.  Additionally, the Committee, as a fiduciary of all general unsecured creditors in the Chapter 11 Cases, actively negotiated the terms of the Plan, including the scope of the releases by the Debtors, and supports the Plan's release, exculpation, and injunction provisions.  Given the critical nature of the

---

[50]   *E.g.*, *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (citing *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994)), *aff'd sub nom. Nordoff Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180 (3d Cir. 2001); *Spansion*, 426 B.R. at 143 n.47 (citing the *Zenith* factors).

[51]   *E.g.*, *Wash. Mut.*, 442 B.R. at 346 ("These factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the [c]ourt's determination of fairness."); *Exide Techs.*, 303 B.R. at 72 (finding that *Zenith* factors are not exclusive or conjunctive requirements).

Releases to the Plan, this degree of consensus evidences the Debtors' stakeholders' support for the Debtor Release and the Plan.

64.     **Third**, with respect to the release of any of the Debtors' Claims against Paul Hastings LLP ("Paul Hastings"), Paul Hastings paid for the Debtor Release by agreeing to credit the "Debtors' retainer in the amount of $313,330.40" to satisfy any claim that the Debtors may have against Paul Hastings with respect to any prepetition payment to Paul Hastings.[52]  No party has raised any other credible allegations against Paul Hastings, whether related to its prepetition limited representation of the Debtors or its postpetition conduct.

65.     **Fourth**, the Plan specifically excludes from the Releases and Exculpation, any "Insider that is not a Released Party, including without limitation, James Alexander, Lu Hua, Dan Schatt, Joseph Podulka, and Daniyal Inamullah" (collectively, the "Excluded Parties").[53] The Excluded Parties' actions are the subject of the Examiner's investigation.  All Causes of Actions against the Excluded Parties are preserved and will be transferred to the Liquidation Trust upon the Effective Date of the Plan.  In this regard, the U.S. Trustee and UpgradeYa argue that the Court should delay Confirmation until after the Examiner issues his report.  This is a red herring.  It is the Debtors' business judgment that the Released Parties should be released and the Debtors ensured that, with the Committee's agreement, the Excluded Parties would not benefit from a release under the Plan.

66.     For these reasons, the Debtor Release is justified, is in the best interests of creditors, is an integral part of the Plan, and satisfies key factors considered by courts in determining whether a debtor release is proper.

---

[52]   *See Order Authorizing and Approving the Retention and Employment of Paul Hastings LLP as Counsel to Debtors, Effective as of Petition Date*, at ¶ 2 [Docket No. 327]; and *First Supplemental Declaration of James T. Grogan in Support of Debtors' Application for Entry of an Order Authorizing and Approving retention and Employment of Paul Hastings LLP as Counsel to Debtors*, at ¶ 17.  [Docket No. 192]

[53]   Plan, Art. 18.2.

    **(II)  The Third-Party Release Is Consensual and Appropriate.**

  67.  The Plan provides an appropriately tailored release by third parties in Article 18.2 of the Plan that applies only to consenting parties and, therefore, should be approved.[54] Specifically, the Plan provides for a discharge and release of claims against the Released Parties (*i.e.*, parties who actively participated in the Debtors' Plan negotiations and whose contributions and concessions have facilitated and made possible the Debtors' proposed Plan), in their respective capacities, for, among other things, acts arising out of these Chapter 11 Cases and transactions related thereto. Numerous courts have recognized that a chapter 11 plan may include a release of non-debtors by other non-debtors when such release is consensual.[55] For example, a release is consensual if it only binds parties that voted in favor of a plan, or who abstained from voting but did not otherwise opt out of the release.[56] Moreover, the Third Party Release was a material inducement for the respective support that the Released Parties have provided in connection with the Plan and the Debtors' restructuring and, accordingly, the Released Parties have required that the Third Party Release be included in the Plan. The Third-Party Release, like the Debtor Release, is a necessary and integral element of the Plan. As described above in the context of the Debtor Release, the Released Parties made substantial contributions to these Chapter 11 Cases and the Debtors' restructuring. In light of such contributions, a release is appropriate and warranted.

---

[54] The Debtors have agreed to further narrow the scope of parties providing the Third Party Release as set forth in the Objection Chart.

[55] *See, e.g., In re Indianapolis Downs, LLC*, 486 B.R. 286, 305 (Bankr. D. Del. 2013) (collecting cases); *Spansion*, 426 B.R. at 144 (stating that "a third party release may be included in a plan if the release is consensual").

[56] *See, e.g., In re DBSD N. Am., Inc.*, 419 B.R. 179, 218–19 (Bankr. S.D.N.Y. 2009) (binding impaired creditors to a release when they abstained from voting but did not affirmatively opt out of the release), *aff'd*, 2010 WL 1223109 (S.D.N.Y. Mar. 24, 2010), *judgment aff'd in part, rev'd in part on other grounds*, 627 F.3d 496 (2d Cir. 2010); *Zenith*, 241 B.R. at 111 (approving non-debtor releases for creditors who voted in favor of the plan).

68.     It is clear in this jurisdiction that a chapter 11 plan may provide for a release of claims by third parties against non-debtor parties where the releasing parties accept the plan or do not opt out of the release.[57]  For any opt-out parties, the Debtors have included language in the proposed Confirmation Order carving out those parties as it relates to their inclusion as a releasing party under the Plan's Third-Party Release.

69.     Courts in the Third Circuit have held that a non-consensual release may be approved if such release is fair and necessary to the reorganization, and the court makes specific factual findings to support such conclusions.[58]  In addition, the Third Circuit has found that, for such releases to be permissible, fair consideration must be given in exchange for the release.[59]

70.     The circumstances of these Chapter 11 Cases warrant the Third-Party Release because it is critical to the success of the Plan.  There is no dispute that the Released Parties supplied integral services, even prior to the Petition Date, which enabled the Debtors to propose the Plan and proceed to confirmation swiftly.  These Chapter 11 Cases have progressed particularly efficiently and, ultimately, the Debtors and the Committee were able to reach consensus through extensive and hard-fought negotiations.  As described above, each of the

---

[57]    *See Wash. Mut.*, 442 B.R. at 352 (observing that consensual third-party releases are permissible); *Zenith*, 241 B.R. at 111 (approving non-debtor releases for creditors that voted in favor of the plan); *see also Indianapolis Downs*, 486 B.R. at 304-05 (approving as consensual third-party release that applied to unimpaired holders of claims deemed to accept the plan); *In re SFP Franchise Corp.*, Case No. 20-10134 (JTD) [Docket No. 601]; *In re PQ New York*, Case No. 20-11266 (JTD) [Docket No. 597]; *In re Global Eagle Entertainment Inc.*, Case No. 20-11835 (JTD) [Docket No. 753]; *In re Insys Therapeutics, Inc.*, Case No. 19-11292(KG), (Bankr. Del. January 16, 2020) [Docket No. 1115] (Each confirming plan providing for opt-out releases).

[58]    *See, e.g.*, *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 214 (3d Cir. 2000) (noting that the "hallmarks of permissible non-consensual releases [are] fairness, necessity to the reorganization, and specific factual findings to support these conclusions"); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 607-08 (Bankr. D. Del. 2001); *cf. Wash. Mut.*, 442 B.R. at 355 ("[T]he Court concludes that any third party release is effective only with respect to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases.").

[59]    *See United Artists Theatre Co. v, Walton (In re United Artists Theatre Co.)*, 315 F.3d 217, 227 (3d Cir. 2000) (citing *In re Cont'l Airlines*, 203 F.3d at 215).

Released Parties was responsible for assisting the Debtors during the Chapter 11 Cases and, as such, is an appropriate recipient of the Third-Party Release.

71.     Furthermore, the third parties bound by the Releases have received sufficient consideration in exchange for the release of their Claims against the Released Parties to justify the Third-Party Release.  For example, Paul Hastings credited more than $300,000 to the Debtors' Estates and all the Debtors assets are being transferred to the Liquidation Trust for the benefit of Class 4 General Unsecured Creditors.

72.     Each of the Released Parties, as critical participants in the Debtors' Chapter 11 Cases, share a common goal with the Debtors in seeing the Plan succeed.  Accordingly, there is an identity of interests between the Debtors and the entities that will benefit from the Third-Party Release.  Each Released Party has made a substantial contribution to these Chapter 11 Cases.[60] Accordingly, the Third-Party Release should be approved.

73.     Ultimately, given the substantial contributions provided by the Released Parties to the restructuring—both pre and postpetition—in addition to the consideration being provided to the third parties bound by the releases as a result of the settlements embodied and set forth in the Plan, the Third-Party Release is a lynchpin to the Committee's agreement to the Plan and it is imperative that the Third-Party Release be included in the Plan to effectuate the successful completion of these Chapter 11 Cases.

74.     Accordingly, the Debtors submit that the Third-Party Release, which is consensual within the meaning of applicable case law, is appropriately tailored under the

---

[60]    *See, e.g.*, *In re Local Insight Media Holdings, Inc.*, No. 10-13677 (KG) (Bankr. D. Del. Nov. 3, 2011) (Docket No. 1037) (confirming plan that treated holders of claims and interest that did not vote to reject plan or were not members of a class deemed to reject plan as releasing parties); *In re Majestic Star Casino, LLC*, No. 09-14136 (KG) (Bankr. D. Del. Mar. 10, 2011) (confirming plan that treated holders of claims and interests that did not vote to accept plan as releasing parties) (Docket No. 1059).

circumstances of these Chapter 11 Cases, is justified by the record of these Chapter 11 Cases, is consistent with the practices of this jurisdiction, and should be approved.

**(III)    The Exculpation Provision Is Appropriate.**

75.    Exculpation provisions that apply only to estate fiduciaries, and are limited to claims not involving actual fraud, willful misconduct, or gross negligence, are customary and generally approved in this district under appropriate circumstances.[61]  Unlike third party releases, exculpation provisions do not affect the liability of third parties *per se*, but rather set a standard of care of gross negligence or willful misconduct in future litigation by a non-releasing party against an "Exculpated Party" for acts arising out of the Debtors' restructuring.[62]

76.    Here, the Plan exculpates the following parties:

> the Debtors-in-Possession and the current or former directors, officers employees, Affiliates, agents, accountants, financial advisors, investment bankers, restructuring advisors, attorneys, representatives, and other Professionals of or to the Debtors and the Debtors-in-Possession who served or were employed in such capacities after the Petition Date, and each of their respective agents and representatives, the Released Parties, the Committee, the members of the Committee and the Professionals retained by the Committee.[63]

77.    The exculpated parties have participated in good faith in formulating and negotiating the Plan as it relates to the Debtors and they should be entitled to protection from exposure to any lawsuits filed by disgruntled creditors or other unsatisfied parties.

---

[61]    *See Wash. Mut.*, 442 B.R. at 350-51 (holding that an exculpation clause that encompassed "the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the [c]ommittees and their members, and the [d]ebtors' directors and officers" was appropriate).

[62]    *See In re PWS Holding Corp.*, 228 F.3d 224, 245 (3d Cir. 2000) (finding that an exculpation provision "is apparently a commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code"); *see also In re Premier Int'l Holdings, Inc.*, No. 09-12019 (CSS), 2010 WL 2745964, at *10 (Bankr. D. Del. Apr. 29, 2010) (approving a similar exculpation provision as that provided for under the Plan); *In re Spansion, Inc.*, No. 09-10690 (KJC), 2010 WL 2905001, at *16 (Bankr. D. Del. Apr. 16, 2010) (same).

[63]    *See* Plan, Section 18.1.

78.     Moreover, the exculpation provision and the liability standard it sets represents a conclusion of law that flows logically from certain findings of fact that the Court must reach in confirming the Plan as it relates to the Debtors.

79.     As discussed above, this Court must find, under Bankruptcy Code section 1129(a)(2), that the Debtors have complied with the applicable provisions of the Bankruptcy Code.  Additionally, this Court must find, under Bankruptcy Code section 1129(a)(3), that the Plan has been proposed in good faith and not by any means forbidden by law.  These findings apply to the Debtors and, by extension, to the Debtors' officers, directors, employees, and professionals.  Further, these findings imply that the Plan was negotiated at arm's length and in good faith.

80.     Here, the Debtors and their officers, directors, and professionals actively negotiated with the Committee and holders of claims in connection with the Plan and these Chapter 11 Cases.  Such negotiations were extensive and the resulting agreements were implemented in good faith with a high degree of transparency, and as a result, the Plan enjoys support from impaired accepting classes sufficient to satisfy the Bankruptcy Code's requirements for confirmation of the Plan.[64]  The exculpated parties played a critical role in negotiating, formulating, and implementing the Initial PSA and Amended PSA, the Disclosure Statement, the Plan, the Plan Supplement, and related documents in furtherance of the restructuring transactions.[65]  Accordingly, the Court's findings of good faith vis-à-vis the Debtors' Chapter 11 Cases should also extend to the Exculpated Parties.

---

[64]   *See, e.g.*, Ballot Report at _.

[65]   *See* Hr'g Tr. 58:18–19, *In re Verso Corp.*, No. 16-10163 (KG) (Bankr. D. Del. June 24, 2016) (Docket No. 1231) ("[T]he debtors did not do this alone; they did it with the help of many others.").

81.     Additionally, the promise of exculpation played a significant role in facilitating Plan negotiations.  All of the Exculpated Parties played a key role in developing the Plan that paved the way for a successful confirmation, and likely would not have been so inclined to participate in the plan process without the promise of exculpation.  Exculpation for parties participating in the plan process is appropriate where plan negotiations could not have occurred without protection from liability.[66]

82.     Further, the exculpation provision is necessary and appropriate to protect parties who have made substantial contributions to the Debtors' reorganization from future collateral attacks related to actions taken in good faith in connection with the Debtors' restructuring.

83.     Accordingly, under the circumstances, it is appropriate for the Court to approve the exculpation provision, and to find that the exculpated parties have acted in good faith and in compliance with the law.[67]

(iii)     **The Injunction Provision Is Appropriate.**

84.     The injunction provision set forth in Article 18.4 of the Plan implements the Plan's release, discharge, and exculpation provisions, in part, by permanently enjoining all entities from commencing or maintaining any action against the Debtors, the Debtors' Estates, the Liquidation Trust, or the Liquidation Trustees, or taking any action which would interfere with the implementation or Consummation of the Plan.  Thus, the injunction provision is a key provision of the Plan because it enforces the release and exculpation provisions that are centrally important to the Plan.  Moreover, this injunction provision is narrowly tailored to achieve its

---

[66]     *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 293 (2d Cir. 1992); *Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.)*, 326 B.R. 497, 503 (S.D.N.Y. 2005) (excising similar exculpation provisions would "tend to unravel the entire fabric of the Plan, and would be inequitable to all those who participated in good faith to bring it into fruition").

[67]     *See PWS Holding*, 228 F.3d at 246–47 (approving plan exculpation provision with willful misconduct and gross negligence exceptions); *Indianapolis Downs*, 486 B.R. at 306 (same).

purpose.  As such, to the extent the Court finds that the exculpation and release provisions are appropriate, the Debtors respectfully submit that the injunction provision must also be appropriate.

### 4.    The Plan Complies with Bankruptcy Code Section 1123(d).

85.    Bankruptcy Code section 1123(d) provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and nonbankruptcy law."

86.    The Plan complies with Bankruptcy Code section 1123(d).  Section 15.1 of the Plan provides for the satisfaction of any cure amounts associated with Executory Contracts to be assumed pursuant to the Plan in accordance with Bankruptcy Code section 365(b)(1).  In accordance with Section 15.1 of the Plan and Bankruptcy Code section 365, the Debtors will satisfy any monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan on the Effective Date or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree.

### B.    The Debtors Complied with the Applicable Provisions of the Bankruptcy Code (§ 1129(a)(2)).

87.    The Debtors have satisfied Bankruptcy Code section 1129(a)(2), which requires that the proponent of a plan of reorganization comply with the applicable provisions of the Bankruptcy Code.  The legislative history of Bankruptcy Code  section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements set forth in Bankruptcy Code sections 1125 and 1126.[68]  As discussed below, the Debtors have substantially

---

[68]    *In re Worldcom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928, at *49 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that section 1129(a)(2) requires plan proponents to comply with applicable provisions of the Bankruptcy Code, including "disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code"); *In re Lapworth*, No. 97-34529 (DWS), 1998 WL 767456, at *3 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2).").

complied with Bankruptcy Code sections 1125 and 1126 regarding disclosure and solicitation of the Plan.

### 1. The Debtors Complied with Bankruptcy Code Section 1125.

88.     As discussed in Part I of this memorandum, the Debtors substantially complied with the notice and solicitation requirements of Bankruptcy Code section 1125.

### 2. The Debtors Complied with Bankruptcy Code Section 1126.

89.     Bankruptcy Code section 1126 specifies the requirements for acceptance of a plan of reorganization.  Specifically, under Bankruptcy Code section 1126, only holders of allowed claims and allowed interests in impaired classes of claims or interests that will receive or retain property under a plan on account of such claims or interests may vote to accept or reject such plan.  Bankruptcy Code section 1126 provides, in pertinent part, that:

> (a)     The holder of a claim or interest allowed under section 502 of [the Bankruptcy Code] may accept or reject a plan. . . .

> (b)     Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.[69]

90.     As set forth above, in accordance with Bankruptcy Code section 1125, the Debtors solicited acceptances or rejections of the Plan from the holders of allowed claims in Classes 4 and 5—the only impaired classes entitled to vote under the Plan.

91.     The Debtors did not solicit votes from holders of Claims and interests in Classes 1, 2 and 3 because holders of Claims and interests in these classes are unimpaired and, pursuant to Bankruptcy Code section 1126(f), are conclusively presumed to have accepted the Plan.

---

[69]   11 U.S.C. § 1126(a), (f).

92.     Additionally, holders of Claims and interests in Classes 6 and 7 are deemed to reject the Plan because they will receive no distribution on account of their claims or interests. Thus, pursuant to Bankruptcy Code section 1126(a), only holders of claims in Classes 4 and 5 were entitled to vote to accept or reject the Plan.[70]

93.     Bankruptcy Code sections 1126(c) and 1126(d) specify the requirements for acceptance of a plan by classes of claims and interests:

> (c)     A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

> (d)     A class of interests has accepted a plan if such plan has been accepted by holders of such interests, other than any entity designated under subsection (e) or this section, that hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

94.     As described above, the class of claims voting to accept the Plan did so in sufficient number and by sufficient amounts as required by the Bankruptcy Code.[71]  Based upon the foregoing, the Debtors submit that they satisfy the requirements of Bankruptcy Code section 1129(a)(2).

**C.     The Plan Is Proposed in Good Faith (§ 1129(a)(3)).**

95.     Bankruptcy Code section 1129(a)(3) requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law."  Where a plan satisfies the purposes of the Bankruptcy Code and has a good chance of succeeding, the good faith requirement of

---

[70]   *See* Plan, Art. X.

[71]   *See* Ballot Report.

Bankruptcy Code section 1129(a)(3) is satisfied.[72]  To determine whether a plan seeks relief consistent with the Bankruptcy Code, courts consider the totality of the circumstances surrounding the development of the plan.[73]

96.    The Debtors negotiated, developed, and proposed the Plan in accordance with Bankruptcy Code section 1129(a)(3).  The Plan was negotiated with, and is supported by, the Committee and other key stakeholders of the Debtors who came to consensus after arm's length negotiations.  The Plan provides significant value to the Debtors' General Unsecured Creditors. The Debtors believe that the Plan was proposed in good faith and not by any means forbidden by law, has a high likelihood of success, and will achieve a result consistent with the objectives of the Bankruptcy Code.

97.    The Plan will enable the holders of Class 4 General Unsecured Claims to recover on account of such claims, and holders of Class 5 Convenience Claims will be able to obtain a distribution in an expeditious manner without having to wait for the Liquidation Trustees to monetize the Assets transferred to the Liquidation Trust.

98.    Throughout the negotiation of the Plan and these Chapter 11 Cases, the Debtors upheld their fiduciary duties to stakeholders and protected the interests of all constituents with an even hand.  Accordingly, the Plan and the Debtors' conduct satisfy Bankruptcy Code section 1129(a)(3).

---

[72]    *E.g., PWS Holding*, 228 F.3d at 242 (quoting *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986)); *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 802 (5th Cir. 1997) (quoting *In re Sun Country Dev., Inc.,*  764 F.2d 406, 408 (5th Cir. 1985)); *Century Glove*, 1993 WL 239489, at *4 ; *In re NII Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002).

[73]    *E.g.*, *T-H New Orleans*, 116 F.3d at 802 (quoting *Sun Country Dev.,* 764 F.2d at 408); *In re W.R. Grace & Co.*, 475 B.R. 34, 87 (D. Del. 2012); *Century Glove*, 1993 WL 239489, at *4.

**D.    The Plan Provides that the Debtors' Payment of Professional Fees and Expenses Are Subject to Court Approval (§ 1129(a)(4)).**

99.    Bankruptcy Code section 1129(a)(4) requires that certain fees and expenses paid by the plan proponent, by the debtor, or by a person receiving distributions of property under the plan, be subject to approval by the Court as reasonable.  Courts have construed this section to require that all payments of professional fees paid out of estate assets be subject to review and approval by the Court as to their reasonableness.[74]

100.    The Plan satisfies Bankruptcy Code section 1129(a)(4).  The Debtors submit that payment of the Professional Fee Claims is the only category of payments that fall within the ambit of Bankruptcy Code section 1129(a)(4) in these Chapter 11 Cases, and the Debtors may not pay professional claims absent Court approval.[75]  Further, all such Professional Fee Claims and corresponding payments are subject to prior Court approval and the reasonableness requirements under Bankruptcy Code sections 328 and 330.[76]  Article 9.2 of the Plan, moreover, provides that the Professionals shall file all final requests for payment of Professional Fee Claims no later than 60 days after the Effective Date, thereby providing an adequate period of time for interested parties to review such professional claims.

**E.    The Debtors Disclosed All Necessary Information Regarding Directors, Officers, and Insiders (§ 1129(a)(5)).**

101.    Bankruptcy Code section 1129(a)(5)(A)(i) requires that the proponent of a plan disclose the identity and affiliations of the proposed officers and directors of the reorganized

---

[74]    *See Lisanti Foods*, 329 B.R. at 503 ("Pursuant to § 1129(a)(4), a [p]lan should not be confirmed unless fees and expenses related to the [p]lan have been approved, or are subject to the approval, of the Bankruptcy Court."); *In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988); *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (noting that before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation").

[75]    *See, e.g., Order Authorizing and Approving the Retention and Employment of Paul Hastings LLP as Counsel to the Debtors, Nunc Pro Tunc to the Petition Date* [Docket No. 166].

[76]    11 U.S.C. §§ 328(a), 330(a)(1)(A).

debtors.  Bankruptcy Code section 1129(a)(5)(B) requires a plan proponent to disclose the identity of an "insider" (as defined by Bankruptcy Code section 101(31)) to be employed or retained by the reorganized debtor and the "nature of any compensation for such insider."[77] Additionally, the Bankruptcy Code provides that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy.[78]  The "public policy requirement would enable [the court] to disapprove plans in which demonstrated incompetence or malevolence is a hallmark of the proposed management."[79] The Debtors satisfied Bankruptcy Code section 1129(a)(5).

102.    As set forth in the Plan, the new "management" will be the Liquidation Trustees who will be authorized to take all actions necessarily to monetize the Assets transferred to the Liquidation Trust, and to close the Chapter 11 Cases and dissolve the Debtors.  The Plan Supplement identifies the Liquidation Trustees and the members of the Trust Advisory Board. The fees and expenses of the Liquidation Trustees will be paid from the Liquidation Trust Assets pursuant to the terms of the Plan and the Liquidation Trust Agreement.  In addition, pursuant to the Liquidation Trust Agreement and the Plan, the Liquidation Trustees shall act in fiduciary capacities on behalf of the interests of all Holders of Claims that will receive Distributions from the Liquidation Trust.  No Liquidation Trustee or member of the Trust Advisory Board is an Insider of the Debtors.

---

[77]    11 U.S.C. § 1129(a)(5)(B); *see also In re Texaco, Inc.*, 84 B.R. 893, 908 (Bankr. S.D.N.Y. 1988) (finding requirements of § 1129(a)(5)(B) satisfied where the plan discloses debtors' existing officers and directors who will continue to serve after plan confirmation); *In re Apex Oil Co.*, 118 B.R. 683, 704-05 (Bankr. E.D. Mo. 1990) (finding § 1129(a)(5)(B) satisfied where plan fully disclosed that certain insiders will be employed by reorganized debtor and the terms of employment of such insiders).

[78]    11 U.S.C. § 1129(a)(5)(A)(ii).

[79]    7 Collier on Bankruptcy ¶ 1129.02[5][b] (16th ed. 2018).

**F.      The Plan Does Not Require Governmental Regulatory Approval
(§ 1129(a)(6)).**

103.     Bankruptcy Code section 1129(a)(6) permits confirmation only if any regulatory

commission that has or will have jurisdiction over a debtor after confirmation has approved any

rate change provided for in the plan.  The Debtors businesses are not regulated.  Thus,

Bankruptcy Code section 1129(a)(6) is inapplicable to the Plan.

**G.      The Plan Satisfies the Best Interests Test (§ 1129(a)(7)).**

104.     Bankruptcy Code section 1129(a)(7) , commonly known as the "best interests

test," provides, in relevant part:

> With respect to each impaired class of claims or interests—
>
> (a)      each holder of a claim or interest of such class—
>
> (i)  has accepted the plan; or
>
> (ii) will receive or retain under the plan on account of
> such claim or interest property of a value, as of the
> effective date of the plan, that is not less than the
> amount that such holder would so receive or retain
> if the debtor were liquidated under chapter 7 of [the
> Bankruptcy Code] on such date . . . .

105.     The "best interests test" applies to individual dissenting holders of impaired

claims and interests rather than classes, and is generally satisfied through a comparison of the

estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that

debtor's estate against the estimated recoveries under that debtor's plan of reorganization.[80] As

Bankruptcy Code section 1129(a)(7) makes clear, the best interests test applies only to holders of

non-accepting impaired claims or interests.  Classes 4 and 5 voted to accept the Plan.  Holders of

---

[80]   *Bank of Am. Nat'l Tr. & Savs. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best
interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to
accept the plan."); *Century Glove*, 1993 WL 239489, at *7; *Adelphia Commc'ns*, 368 B.R. at 251 (stating that
section 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would
receive in a hypothetical chapter 7 liquidation").

interests in Classes 6 and 7 are impaired, are receiving no distribution on account of their interests, and are, thus, deemed to reject the Plan. Accordingly, to satisfy the "best interests test," the Debtors must demonstrate that each of the holders in Classes 6 and 7 will receive at least as much under the Plan as that holder would receive in a chapter 7 liquidation.[81]

106.    The Plan satisfies Bankruptcy Code section 1129(a)(7) and the "best interests test." As set forth in the Disclosure Statement[82] and the Foster Declaration, the Debtors, with the assistance of their financial advisors, prepared a Liquidation Analysis that estimates recoveries for members of each of the Classes under the Plan. The projected recoveries for these classes under the Plan are equal to or in excess of the recoveries estimated in a hypothetical chapter 7 liquidation.[83] Specifically, as demonstrated by the Liquidation Analysis, each Class of General Unsecured Claim (Classes 4 and 5) will receive a greater recovery under the Plan than under a hypothetical chapter 7 liquidation. Classes 6 and 7 (Equity Interests in Debtors) will not receive a recovery under the Plan and would not receive a recovery if the Debtors' Chapter 11 Cases were converted to ones under Chapter 7 of the Bankruptcy Code.

**H.      The Plan Is Confirmable Notwithstanding the Requirements of Bankruptcy Code Section 1129(a)(8).**

107.    Bankruptcy Code section 1129(a)(8) requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.

108.    Classes 4 and 5 voted to accept the Plan, but holders of interests in Classes 6 and 7 are deemed to have rejected the Plan and, thus, were not entitled to vote. Consequently, while the Plan does not satisfy Bankruptcy Code section 1129(a)(8) with respect to Classes 6 and 7, the

---

[81]   *See In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. 2003) ("Section 1129(a)(7)(A) requires a determination whether 'a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization.'") (internal citations omitted).

[82]   *See* Plan and Disclosure Statement, Ex. B.

[83]   *See id.*

Plan is confirmable nonetheless because it satisfies Bankruptcy Code sections 1129(a)(10) and 1129(b), as discussed below.

I.      **The Plan Provides for Payment in Full of All Allowed Priority Claims (§ 1129(a)(9)).**

109.    Bankruptcy Code section 1129(a)(9) requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments.  In particular, pursuant to Bankruptcy Code section 1129(a)(9)(A), holders of claims of a kind specified in Bankruptcy Code section 507(a)(2)—administrative claims allowed under Bankruptcy Code section 503(b)—must receive on the Effective Date cash equal to the allowed amount of such claims.  Bankruptcy Code section 1129(a)(9)(B) requires that each holder of a claim of a kind specified in Bankruptcy Code sections 507(a)(1) or (4) through (7) of the Bankruptcy Code—generally wage, employee benefit, and deposit claims entitled to priority—must receive deferred cash payments of a value, as of the Effective Date of the Plan, equal to the allowed amount of such claim (if such class has accepted the plan), or cash of a value equal to the allowed amount of such claim on the effective date of the plan (if such class has not accepted the plan).  Finally, Bankruptcy Code section 1129(a)(9)(C) provides that the holder of a claim of a kind specified in Bankruptcy Code section 507(a)(8)—*i.e.*, priority tax claims—must receive cash payments over a period not to exceed five years from the petition date, the present value of which equals the allowed amount of the claim.

110.    The treatment of Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims under Article IX of the Plan and Other Priority Claims under Article X of the Plan, satisfies the requirements of, and complies in all respects with, Bankruptcy Code section 1129(a)(9).

**J.      At Least One Class of Impaired, Non-Insider Claims Accepted the Plan (§ 1129(a)(10)).**

111.     Bankruptcy Code section 1129(a)(10) provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan, "without including any acceptance of the plan by any insider," as an alternative to the requirement under Bankruptcy Code section 1129(a)(8) that each class of claims or interests must either accept the plan or be unimpaired under the plan.

112.     Here, Class 4 and Class 5, which are impaired, voted to accept the Plan independent of any insiders' votes.  Thus, the Plan has been accepted by at least one voting Class holding non-insider Claims.

**K.      The Plan Is Feasible (§ 1129(a)(11)).**

113.     Bankruptcy Code section 1129(a)(11) requires that the Court find that a plan is feasible as a condition precedent to confirmation.  Specifically, the Court must determine that: "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, *unless such liquidation or reorganization is proposed in the plan*."[84]

114.      In this case, the "liquidation" of the Debtors' Assets is "proposed in the Plan." Further, the Debtors are able to make all payments due on the Effective Date or thereafter required under the Plan.

115.     To demonstrate that a plan is feasible, it is not necessary for a debtor to guarantee success.[85]  Rather, a debtor must provide only a reasonable assurance of success.[86]  There is a

---

[84]   11 U.S.C. § 1129(a)(11) (emphasis supplied).

[85]   *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *In re Flintkote Co.*, 486 B.R. 99, 139 (Bankr. D. Del. 2012); *W.R. Grace & Co.*, 475 B.R. at 115; *In re U.S. Truck Co.*, 47 B.R. 932, 944 (E.D.

relatively low threshold of proof necessary to satisfy the feasibility requirement.[87]  As

demonstrated below, the Plan is feasible within the meaning of Bankruptcy Code

section 1129(a)(11).

116.    *First*, the Debtors expect to have sufficient funds to make all payments

contemplated by the Plan to be paid on the Effective Date and to satisfy Professional Fee Claims.

*Second*, all of the Debtors' Assets will be transferred to the Liquidation Trust, including any

excess Cash not required to pay Convenience Claims, Professional Fee Claims, and other

payments having priority over General Unsecured Claims.  The Debtors will eventually be

dissolved and, therefore, there will not be a need for further reorganization.  For the reasons set

forth above, the Plan satisfies Bankruptcy Code section 1129(a)(11).

### L.    All Statutory Fees Have Been or Will Be Paid (§ 1129(a)(12)).

117.    Bankruptcy Code section 1129(a)(12) requires the payment of "[a]ll fees payable

under section 1930 of title 28 [of the United States Code], as determined by the court at the

hearing on confirmation of the plan."  Bankruptcy Code section 507(a)(2) provides that "any fees

and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are

afforded priority as administrative expenses.

---

Mich. 1985) ("'Feasibility' does not, nor can it, require the certainty that a reorganized company will succeed."), *aff'd*, 800 F.2d 581 (6th Cir. 1986).

[86]    *Kane*, 843 F.2d at 649; *Flintkote Co.*, 486 B.R. at 139; *W.R. Grace & Co.*, 475 B.R. at 115; *see also In re Pizza of Haw. Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) (holding that "[t]he purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation") (citation omitted) ; *accord In re Capmark Fin. Grp. Inc.*, No. 09-13684 (CSS), 2011 WL 6013718, at *61 (Bankr. D. Del. Oct. 5, 2011) (same).

[87]    *E.g.*, *In re Prussia Assocs.*, 322 B.R. 572, 584 (Bankr. E.D. Pa. 2005) (quoting approvingly that "[t]he Code does not require the debtor to prove that success is inevitable, and a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility") (citation omitted); *Berkeley Fed. Bank & Tr. v. Sea Garden Motel & Apartments (In re Sea Garden Motel & Apartments)*, 195 B.R. 294, 305 (D. N.J. 1996); *In re Tribune Co.*, 464 B.R. 126, 185 (Bankr. D. Del. 2011), *on reconsideration*, 464 B.R. 208 (Bankr. D. Del. 2011).

118.    The Plan satisfies the requirements of Bankruptcy Code section 1129(a)(12) because Article 20.8 of the Plan provides for the payment of all fees due and payable by the Debtors under 28 U.S.C. § 1930.

**M.    Bankruptcy Code Sections 1129(a)(13)-(a)(16) Are Inapplicable.**

119.    Bankruptcy Code section 1129(a)(13) requires that all "retiree benefits," as defined in Bankruptcy Code section 1114, continue to be paid post-confirmation at any levels established in accordance with Bankruptcy Code section 1114.[88]  Bankruptcy Code section 1114 defines "retiree benefits" as those payments made for the purpose of providing or reimbursing payments for retired employees, their spouses, and their dependents for medical benefits.[89]  The Debtors do not provide retiree benefits within the meaning of Bankruptcy Code section 1114. Therefore, Bankruptcy Code section 1129(a)(13) does not apply to the Plan.

120.    Bankruptcy Code section 1129(a)(14) requires domestic support obligations to be paid, if required by judicial or administrative order or statute, which first become payable after the date of filing the petition.[90]  The Debtors do not owe any domestic support obligations. Therefore, Bankruptcy Code section 1129(a)(14) does not apply to the Plan.

121.    Bankruptcy Code section 1129(a)(15) requires that an individual Chapter 11 debtor, in a case in which the holder of an allowed unsecured claim objects to plan confirmation, either pay all unsecured claims in full or that the debtor's plan devote an amount equal to five years' worth of the debtor's disposable income to unsecured creditors.[91]  None of the Debtors is an "individual" as contemplated by this section of the Bankruptcy Code.  Therefore, Bankruptcy Code section 1129(a)(15) does not apply to the Plan.

---

[88]    *See* 11 U.S.C. § 1129(a)(13).

[89]    *See id.* § 1114(a).

[90]    *See id.* § 1129(a)(14).

[91]    *See id.* § 1129(a)(15).

122.    Bankruptcy Code section 1129(a)(16) conditions confirmation of a plan on the fact that all transfers under the plan will be made in accordance with applicable provisions of "nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust."[92]   None of the Debtors is a nonprofit corporation or trust as contemplated by this section of the Bankruptcy Code.  Therefore, Bankruptcy Code section 1129(a)(16) does not apply to the Plan.

### N.    The Plan Should be Approved Under Bankruptcy Code Section 1129(b).

123.    Bankruptcy Code section 1129(b) allows a debtor to confirm a plan even though all impaired classes and interests have not accepted the plan.  The mechanism for obtaining confirmation over dissenting classes of claims and interests is known as a "cram down."  Bankruptcy Code section 1129(b) provides in pertinent part:

> [I]f all of the applicable requirements of [section 1129(a) of the Bankruptcy Code] other than [the requirement contained in section 1129(a)(8) that a plan must be accepted by all impaired classes] are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan.[93]

124.    Thus, under Bankruptcy Code section 1129(b), the Bankruptcy Court may "cram down" a plan over rejection by impaired classes of claims or interests as long as the plan does not "discriminate unfairly," and is "fair and equitable" with respect to such classes.  As set forth above, the only impaired Class that rejected the Plan are Classes 6 and 7.  The Plan may nonetheless be confirmed over the rejection of the Plan by Classes 6 and 7 because the impaired

---

[92]    *See id.* § 1129(a)(16).

[93]    *See id.* § 1129(b)(1).

Voting Classes voted to accept the Plan and the Plan does not discriminate unfairly and is fair

and equitable to the non-accepting impaired class.

### 1.  The Plan Does Not Discriminate Unfairly

125.    "The Bankruptcy Code does not define unfair discrimination."[94]  Nevertheless,

"[g]enerally speaking, this standard ensures that a dissenting class will receive relative value

equal to the value given to all other similarly situated classes."[95]  In these Chapter 11 Cases, the

only impaired rejecting class are Class 6 (subordinated security claims) and Class 7 (equity

interests).  Because there is no other "similarly situated class" by definition, the Plan does not

discriminate.

### 2.  The Plan is Fair and Equitable

126.    Bankruptcy Code sections 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii) provide that a

plan is fair and equitable with respect to a class of impaired unsecured claims or interests if the

plan provides that the holder of any claim or interest that is junior to the claims or interests of

such class will not receive or retain any property under the plan on account of such junior claim

or interest.[96]  The fair and equitable rule is a codification of the "absolute priority rule."[97]

127.    As illustrated by the Liquidation Analysis, each Class of General Unsecured

Claims (Classes 4 and 5) are not expected to receive full payment.  The Plan satisfies the

absolute priority rule because Class 6 Claims are statutorily subordinated to level of equity and

no class junior to either Class 6 or 7 is receiving a distribution.  For this reason the Plan is "fair

---

[94]    *In re Tribune Co.*, 972 F. 3d 228, 240 (3rd Cir. 2020).

[95]    *Id., citing, In re Armstrong World Indus. Inc.*, 348 B.R. at 121 (D. Del. 2006) (quoting *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986)).

[96]    *See* 11 U.S.C. §§ 1129(b)(2)(B)(ii), (C)(ii).

[97]    *In re Armstrong World Indus.*, 432 F.3d 507, 513 (3d Cir. 2005)

and equitable," and thereby also satisfies the requirements for "cram down" under Bankruptcy Code section 1129(b).

**O.        Bankruptcy Code Section 1129(c) is Inapplicable.**

128.    Bankruptcy Code section 1129(c) prohibits confirmation of multiple plans[98] and is not implicated because there is only one proposed plan of reorganization before the Court.

**P.        The Plan Complies with the Other Provisions of Bankruptcy Code Section 1129 (Section 1129(d)-(e)).**

129.    The Plan satisfies the remaining provisions of Bankruptcy Code section 1129.

130.    Bankruptcy Code section 1129(d) provides that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."[99]  The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933.  Moreover, no governmental unit or any other party has requested that the Court decline to confirm the Plan on such grounds.  Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(d).

131.    Lastly, Bankruptcy Code section 1129(e) is inapplicable because none of the Debtors' Chapter 11 Cases is a "small business case."[100]  Thus, the Plan satisfies the Bankruptcy Code's mandatory confirmation requirements.

**Q.        Modifications to the Plan.**

132.    Bankruptcy Code section 1127(a) provides that a plan proponent may modify its plan at any time before confirmation as long as such modified plan meets the requirements of Bankruptcy Code sections 1122 and 1123.  Further, when the proponent of a plan files the plan

---

[98]    *See* 11 U.S.C. § 1129(c).

[99]    *See id*. § 1129(d).

[100]   *See* 11 U.S.C. § 1129(e).  A "small business debtor" cannot be a member "of a group of affiliated debtors that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $2,490,925[] (excluding debt owed to 1 or more affiliates or insiders)."  11 U.S.C. § 101(51D)(B).

with modifications with the court, the plan as modified becomes the plan.  Bankruptcy Rule 3019

provides that modifications after a plan has been accepted will be deemed accepted by all

creditors and equity security holders who have previously accepted the plan if the court finds that

the proposed modifications do not adversely change the treatment of the claim of any creditor or

the interest of any equity security holder.  Interpreting Bankruptcy Rule 3019, courts consistently

have held that a proposed modification to a previously accepted plan will be deemed accepted

where the proposed modification is not material or does not adversely affect the way creditors

and stakeholders are treated.[101]

133.    Contemporaneously with the filing of this brief, the Debtors filed a modified

version of the Plan, which makes technical clarifications and resolves certain formal and

informal comments to the Plan by parties in interest.  The modifications are immaterial and thus

comply with Bankruptcy Code section 1127 and Bankruptcy Rule 3019.  Accordingly, the

Debtors submit that no additional solicitation or disclosure is required on account of the

modifications, and that such modifications should be deemed accepted by all creditors that

previously accepted the Plan.

### R.    Good Cause Exists to Waive the Stay of the Confirmation Order.

134.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed

until the expiration of 14 days after the entry of the order, unless the Court orders otherwise."

Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale

or lease of property (other than cash collateral) and orders authorizing a debtor to assign an

---

[101]    *See, e.g.*, *In re Global Safety Textiles Holdings LLC*, No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009) (finding that nonmaterial modifications to plan do not require additional disclosure or resolicitation); *In re Burns & Roe Enters., Inc.*, No. 08-4191 (GEB), 2009 WL 438694, at *23 (D.N.J. Feb. 23, 2009) (confirming plan as modified without additional solicitation or disclosure because modifications did "not adversely affect creditors").

executory contract or unexpired lease under Bankruptcy Code section 365(f).  Each rule also permits modification of the imposed stay upon court order.

135.    The Debtors submit that good cause exists for waiving and eliminating any stay of the proposed Confirmation Order pursuant to Bankruptcy Rules 3020, 6004, and 6006 so that the proposed Confirmation Order will be effective immediately upon its entry.[102]  As noted above, the issues in these Chapter 11 Cases and the terms of the Plan have been negotiated and implemented in good faith and with a high degree of transparency and public dissemination of information.  Additionally, each day the Debtors remain in chapter 11 they incur significant administrative and professional costs.

136.    For these reasons, the Debtors, their advisors, and other key constituents are working to expedite the Debtors exit from bankruptcy as swiftly as possible after the confirmation date.  Based on the foregoing, the Debtors request a waiver of any stay imposed by the Bankruptcy Rules so that the proposed Confirmation Order may be effective immediately upon its entry.

## III.    The Unresolved Objections Should Be Overruled.

137.    As set forth in the Objection Chart, each of the unresolved objections should be overruled.

## CONCLUSION

138.    For all of the reasons set forth herein and in the Confirmation Declarations, and as will be further shown at the Confirmation Hearing, the Debtors respectfully request that the

---

[102]    *See, e.g.*, *In re Source Home Entm't, LLC*, No. 14-11553 (KG) (Bankr. D. Del, Feb. 20, 2015) (Docket No. 650) (waiving stay of confirmation order and causing it to be effective and enforceable immediately upon its entry by the court); *In re GSE Envtl., Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. July 25, 2014) (Docket No. 340) (same); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Dec. 23, 2013) (Docket No. 197) (same); *In re Gatehouse Media, Inc.*, No. 13- 12503 (MFW) (Bankr. D. Del. Nov. 6, 2013) (Docket No. 137) (same); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Apr. 29, 2013) (Docket No. 192) (same); *In re Geokinetics Inc.*, No. 13-10472 (KJC) (Bankr. D. Del. Apr. 25, 2013) (Docket No. 280) (same).

Court approve the disclosure in the Combined Plan and Disclosure Statement as adequate under Bankruptcy Code section 1125 on a final basis and confirm the Combined Plan and Disclosure Statement as fully satisfying all of the applicable requirements of the Bankruptcy Code by overruling any remaining objections, entering the proposed Confirmation Order, and granting such other and further relief as is just and proper.

[*Remainder of page intentionally left blank*]

Dated: March 4, 2020
      Wilmington, Delaware

*/s/ Scott D. Cousins*

Scott D. Cousins

**COUSINS LAW LLC**

Brandywine Plaza West

1521 Concord Pike, Suite 301

Wilmington, Delaware 19803

Telephone:    (302) 824-7081

Facsimile: :    (302) 295-0331

Email:       scott.cousins@cousins-law.com

- and -

James T. Grogan (admitted *pro hac vice*)

Mack Wilson (admitted *pro hac vice*)

**PAUL HASTINGS LLP**

600 Travis Street, Fifty-Eighth Floor

Houston, Texas 77002

Telephone:    (713) 860-7300

Facsimile:    (713) 353-3100

Email:      jamesgrogan@paulhastings.com
             mackwilson@paulhastings.com

- and -

Irena M. Goldstein (admitted *pro hac vice*)

Avram E. Luft (admitted *pro hac vice*)

Scott C. Shelley (admitted *pro hac vice*)

G. Alexander Bongartz (admitted *pro hac vice*)

**PAUL HASTINGS LLP**

200 Park Avenue

New York, New York 10166

Telephone:    (212) 318-6000

Facsimile:    (212) 319-4090

Email:      irenagoldstein@paulhastings.com
             aviluft@paulhastings.com
             scottshelley@paulhastings.com
             alexbongartz@paulhastings.com

*Co-Counsel to the Debtors*

## <u>Exhibit A</u>

**Objection Chart**

**Cred – Confirmation Objection Chart**

| Objecting Party | Docket Number | Objection | Response | Status |
|---|---|---|---|---|
| *Confirmation Objections (Filed)* | | | | |
| 1. U.S. Trustee | 571 | **I. The Examination Is Not Complete**<br>• The UST asserts that confirmation of the Plan should be delayed so the Examiner can complete his investigation prior to confirmation. | • The Court does not need the guidance of the Examiner's report to determine whether or not to confirm the Plan.  As set forth in the Memorandum, the Debtors have satisfied the requirements under the Bankruptcy Code for confirmation.<br><br>• Further, there is no requirement in the Bankruptcy Code or the Bankruptcy Rules that a plan cannot be confirmed until an examiner's report is filed.  Indeed, the Debtors have a statutory duty to file a plan as soon as practicable pursuant to Bankruptcy Code section 1106(a)(5). The Debtors are fulfilling their statutory duty by proposing the Plan that has been overwhelmingly accepted by the Debtors' General Unsecured Creditors. | Open |

| Objecting Party | Docket Number | Objection | Response | Status |
|---|---|---|---|---|
| | | **II. Alleged Involuntary Releases by Claimants**<br>• The UST objects to the Plan's settlement of claims against the Debtors pursuant to Bankruptcy Rule 9019 without express consent from claimants [§§ 12.2, 17.1]. According to the UST, Rule 9019 is limited to situations where parties have expressly entered into a settlement agreement, and claims against the Debtors can only be settled under the standards provided by 1129 and 1141, which do not allow for the release of claims against liquidating debtors. *See In re Coram Healthcare Corp.*, 315 B.R 321, 335-37 (Bankr. D. Del. 2011). | • Section 12.2 of the Plan sets forth a Global settlement that resolves various inter-Debtor and creditor issues through the "substantive consolidation of the Debtors' Estates, solely for purposes of voting on, and Distributions" under the Plan. Creditors are not "releasing" their claims; rather, the treatment of those claims is being resolved by means of substantive consolidation.<br><br>• Similarly, Section 17.1 of the Plan provides that the Plan reflects "a good faith compromise" of Claims against and Equity Interests in the Debtors. Unlike the plan in *Coran Healthcare,* the Plan does not release the Debtors. Indeed, the word "release" is not found in either provision.<br><br>• Further, it is indisputable that the Debtors can substantively consolidate and modify creditors' and equity interest holder's rights under the Plan. They become party to, and accept the treatment under such settlement if the Plan is accepted by the requisite majorities. The UST's arguments to the contrary should be overruled. | |

| Objecting Party | Docket Number | Objection | Response | Status |
|---|---|---|---|---|
| | | **III. Debtor Releases**<br>• The UST objects to the Debtors' release of the Released Parties [§ 18.2]. The Debtors have not shown their releases of the Released Parties are appropriate under the 5 *Zenith* factors: 1) identity of interests between debtor and non-debtor releasee; 2) substantial contribution to the plan by non-debtor; 3) necessity of release to the reorganization; 4) overwhelming acceptance of plan and release by creditors; and 5) payment of substantially all of the claims of creditors. *See In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999).<br><br>**IV. Third-Party Releases**<br>• The U.S. Trustee objects to the Third-Party Releases [§Art. 18.2]. The Debtors have not demonstrated either: (a) that silence may be construed as acceptance as required by *Emerge*; or (b) that non-consensual releases for the Released Parties are appropriate in accordance with the *Tribune/Genesis* factors. *In re Emerge Energy Services LP*, Case No. 19-11563 (Bankr. D. Del. 2019) [Docket No. 671, p.23]; *In re Tribune Co.*, 464 B.R. 126, 177-78 (Bankr. D. Del. 2011); *In re Genesis Health Ventures*, 266 B.R. 591, 607-09 (Bankr. D. Del. 2011). | • The Debtor releases are appropriate for the reasons set forth in the Memorandum (¶¶ 59-66). Moreover, the Plan, including the Debtor releases, was overwhelmingly accepted by General Unsecured Creditors. Also, the evidence to be adduced at the Confirmation Hearing will demonstrate that the Debtor releases are justified under the circumstances.<br><br>• Accordingly the U.S. Trustee's objection should be overruled<br><br><br>• The Third-Party Releases are consensual for the reasons set forth in the Memorandum. (¶¶67-74)<br><br>• Furthermore, the Plan, including the Third-Party Releases, was overwhelmingly accepted by General Unsecured Creditors.<br><br>• Moreover, the Third-Party Releases are more than justified by the facts of this case. | |

| Objecting Party | Docket Number | Objection | Response | Status |
|---|---|---|---|---|
| | | | • There is no dispute that the Debtors commenced these cases in the midst of a crisis. As the Court is aware, the Debtors had experienced stolen bitcoin, officer terminations, and a lack of liquidity. Nevertheless, the Released Parties have worked tirelessly to steer these cases toward confirmation approximately three months after the commencement of the Chapter 11 Cases.<br><br>• The Debtors, working cooperatively with the Committee and the other Released Parties, also managed to generate significant value for the Debtors' General Unsecured Creditors. In this regard, the U.S. Trustee's repeated statements that creditors may receive little to no recovery in these Chapter 11 Cases (Objection at pp. 9, 12, 13, 18) are belied by the fact that the Debtors, in their initial Liquidation Statement projected a twenty-two (22%) percent distribution to Holders of Allowed Class 4 Claims, and the updated Liquidation Statement reflects a projection of a thirty (30%) distribution to Holders of Allowed Class 4 Claims.<br><br>• The increase in distributions is due, not only to the increase in the value of cryptocurrencies, but also to the hard work of the Released Parties to unwind transactions and secure the bitcoin pilfered by James Alexander. | |

| Objecting Party | Docket Number | Objection | Response | Status |
|---|---|---|---|---|
| | | | • Nevertheless, as set forth in the Combined Plan and Disclosure Statement, as modified, the Debtors have revised the Third Party Release section as follows: "In addition, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and in consideration of the services of the Released Parties, the settlements and compromises contained herein, and the Distributions to be made pursuant to the Combined Plan and Disclosure Statement, (a) each of the Debtors, and (b) all Holders of Claims or Equity Interests, who (1) vote in favor of the Combined Plan and Disclosure Statement or (2) (A) abstain from voting, are not entitled to vote, or vote to reject the Combined Plan and Disclosure Statement and (B) do not opt out of the this release on a timely submitted Ballot or the Opt-Out Election Form, and (c) with respect to the foregoing subparagraph (b), the current and former Affiliates thereof, and such Entities' and their current and former Affiliates' current and former members, directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, each in their capacity as such, shall be deemed to have released and discharged each Released Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether | |

| Objecting Party | Docket Number | Objection | Response | Status |
|---|---|---|---|---|
| | | | individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' prepetition operations and activities, existing or hereinafter arising in law, equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence taking place before the Effective Date."<br><br>• As modified, the consensual Third Party Release set forth in the Plan is well within the parameters of plan releases that have been frequently approved in this District. Accordingly, the UST objection should be overruled. | |
| | | **V. Liquidation Trust Governance**<br>• The UST requests clarification on Liquidating Trust governance. | • The Debtors and Committee have made necessary modifications to the Plan and Liquidation Trust Agreement to clarify the governance of the Liquidation Trust. | |
| | | **VI. Liquidation Trust Indemnity**<br>• The UST objects to the Liquidation Trust indemnity provision on several bases [§12.3(k)], including that it prospectively precludes liability in advance of services being provided, provides an absolute advice of counsel defense, and limits liability to Liquidation Trust Assets although there may be no assets to cover any losses. | • This argument is not well founded. All indemnity provisions are, in effect, prospective. For example, corporate bylaws provide that directors are indemnified unless, for example, the director acted in bad faith. The indemnification of the Liquidation Trustees is consistent with corporate practice. There are more than 4,000 holders of Class 4 Claims. It is unimaginable that any person would agree to be a Liquidation Trustee without protections in place. | |

| Objecting Party | Docket Number | Objection | Response | Status |
|---|---|---|---|---|
| | | | • Section 12.3(k) is not intended to provide an absolute advice of counsel defense and is subject to the general exceptions for willful misconduct, gross negligence or actual fraud.<br><br>• Therefore, the U.S. Trustee's objections should be overruled. | |
| 2.  UpgradeYa | 570 | **UpgradeYa Plan Objections**<br><br>**I. Deemed Disallowance**<br>• UpgradeYa objects to the deemed disallowance of claims under Bankruptcy Code of the on the mere assertion of an avoidable transfer [§§ 1.57 and 14.7].  This violates both the Bankruptcy Code and precedent, which requires a Debtor to obtain a judgment against the claimant before disallowing its claim under section 502(d).  *See In re Lids Corp.*, 260 B.R. 680, 684 (Bankr. D. Del. 2001). | • UpgradeYa misreads the Plan.  Section 14.7 tracks the language of Bankruptcy Code section 502(d) and explicitly provides that a claim is Disallowed until it has "been settled or a Final Order with respect thereto has been entered."<br><br>• There is no requirement that a debtor pay a disputed claim in advance of resolution of the dispute when it has a good faith basis for believing that the holder of the claim owes funds to the debtor's estate.  That would harm the creditor body as a whole.<br><br>• The Debtors have numerous potential claims against UpgradeYa -including, without limitation, claims for avoidable transfers, breach of contract, conversion, tortious interference, turnover and fraud - and should not be required to make a distribution to UpgradeYa until these serious claims are resolved. | Open |

| Objecting Party | Docket Number | Objection | Response | Status |
|---|---|---|---|---|
| | | | • UpgradeYa's rights are protected through the establishment of a disputed claims reserve.<br><br>• Nevertheless, as set forth in the Confirmation Order, the Debtors have provided that: "Notwithstanding any other language in the Combined Plan and Disclosure Statement or the Confirmation Order, anything in Sections 1.57 and 14.7 of the Combined Plan and Disclosure Statement Disallowing a Claim on the basis of section 502(d) of the Bankruptcy Code will be deemed to no longer apply to the Claim of UpgradeYa upon the earlier of (a) the Bankruptcy Court entering a Final Order in favor of UpgradeYa in connection with an action brought against UpgradeYa under Chapter 5 of the Bankruptcy Code or (b) the statute of limitations expires without any action under Chapter 5 of the Bankruptcy Code having been brought against UpgradeYa." | |

| Objecting Party | Docket Number | Objection | Response | Status |
|---|---|---|---|---|
| | | **II. Extension of the Automatic Stay**<br>• UpgradeYa objects to the extension of the automatic stay beyond the Effective Date [§18.5]. This is inappropriate because the automatic stay is not permanent. *Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991). Further, given the position taken by the Debtors and the Committee in these cases – that all claims related to a transfer of cryptocurrency to Cred are claims of the Debtors – this provision acts as a *de facto* non-consensual third-party release, because UpgradeYa and other creditors will not be able to pursue their own, direct claims against non-debtor third parties in perpetuity. | • The "automatic" nature of the stay, triggered by the bankruptcy filing, is not permanent, nor are the Debtors contending as such. There is no law, however, preventing this Court from extending the stay or entering an injunction. Indeed, the Bankruptcy Rules explicitly contemplate the inclusion of plan injunctions and, as a result, most chapter 11 plans contain injunctions to ensure that consummation of the plan is successful. *See, e.g.,* Bankruptcy Rules 2002, 3016, 3020, and 7001.<br><br>• Moreover, extending the stay and issuing an injunction has no impact whatsoever on UpgradeYa's ability to pursue a cause of action against a non-debtor to the extent that it has a direct, non-derivative, claim. Indeed, the Court ruled that the automatic stay would not prevent UpgradeYa from bringing such an action. *See Memorandum Order* denying UpgradeYa's motion for relief from stay. [Docket No.565]<br><br>• The only Plan provision which may impact UpgradeYa's ability to pursue causes of action against non-Debtor parties is the Third Party Release. UpgradeYa submitted an Opt-Out Election, and, therefore, is not bound by the Third Party Release. | |

**UpgradeYa Disclosure Statement Objections**

- UpgradeYa objects to final approval of the Combined Plan and Disclosure Statement because creditors should be allowed to review the Examiner's report before being asked to release the Released Parties.

- UpgradeYa submitted an Opt-Out Election and has no standing to argue on behalf of other General Unsecured Creditors.

- Further, the Court does not need the guidance of the Examiner's report to rule on the appropriateness of the Released Parties receiving releases. In the Debtors' business judgment, in consultation with the Committee, the Debtor Releases and the Third Party Releases are appropriately tailored to ensure that the persons who contributed to the Debtors' Chapter 11 Cases are released, and the Excluded Parties, who in part contributed to the Debtors' bankruptcy filings, are not released.

- Finally, it is reasonable to presume that the Examiner would have requested a delay if he were troubled by the Released Parties receiving the releases under the Plan.

- Therefore, UpgradeYa's objections to confirmation of the Plan should be overruled.

- UpgradeYa objects to final approval of the Combined Plan and Disclosure Statement because it does not provide adequate information regarding Causes of Action to be transferred to the Liquidation Trust. Specifically, it does not disclose that the term "Causes of Action" includes all claims related to a transfer of cryptocurrency to

- The Combined Plan and Disclosure Statement contains sufficient information for creditors to make an informed judgment with respect to the Plan. It identifies the types of Causes of Action that are being transferred to the Liquidation Trust, and does not state that

| Objecting Party | Docket Number | Objection | Response | Status |
|---|---|---|---|---|
| | | Cred, and thus does not adequately inform creditors that they are granting *de facto* third-party releases.  Further, creditors are not adequately informed that the Debtors may be barred from bringing certain Causes of Action under the *in pari delicto* doctrine. | such transfer grants a third party release because it does not.<br><br>• UpgradeYa's in pari delicto defense, if any, is an affirmative defense and UpgradeYa would have the burden of proof on such a defense.  There is no confirmation or disclosure provision in sections 1125 or 1129 of the Bankruptcy Code that requires the Debtors to demonstrate each and every affirmative defense that a prospective defendant may seek to prove when they are sued.  In essence, UpgradeYa is inappropriately seeking to shift the burden of proof to the Debtors.  Moreover, reasonable creditors will presume that defendants will assert defenses to any Cause of Action and will not simply capitulate to a demand.<br><br>• However, to ensure that Causes of Action against UpgradeYa are properly described, the Debtors will amend the Cause of Action List to include specific Causes of Action that can be brought against UpgradeYa.<br><br>• Accordingly, UpgradeYa's objection to the adequacy of the disclosure in the Combined Plan and Disclosure Statement should be overruled. | |

| Objecting Party | Docket Number | Objection | Response | Status |
|---|---|---|---|---|
| 3.  James Alexander | 569 | • Alexander objects, in his purported capacity as sole director of Cred Capital, to any administration of Cred Capital's estate and assets. | • This Court previously ruled that the certificate of incorporation of Cred Capital was improperly filed. *See Order Denying Motion of James Alexander to Dismiss the Cred Capital, Inc. Case.* [Docket No. 487] Therefore, any appointment of Mr. Alexander as the sole director is void.<br>• Further, Mr. Alexander has no standing to assert any rights to assets of Cred Capital. Mr. Alexander is currently a debtor in a case under Chapter 7 of the Bankruptcy Code, and therefore, only the Chapter 7 trustee of Mr. Alexander's Chapter 7 liquidation has standing to pursue such rights. See *In re Alexander,* Case No. 21-10214 (Bankr. C.D. Cal. 2021) [Docket No. 53]; and *Truong v. Nguyen (In re Truong),* 2006 Bankr. LEXIS 4525, **11-12 (Bankr. D. N.J. 2006) (collecting cases) ("[W]hen a trustee is appointed he or she is generally the only party vested with standing to bring a cause of action on behalf of the estate.").<br><br>• Accordingly, Mr. Alexander's objections are without merit and should be overruled. | Open |
| 4.  United States, on behalf of the Internal Revenue Service | 568 | • Plan does not provide for the payment of pre-petition and post-petition interest on tax claims [§§ 9, 13.13].<br><br>• U.S. has not waived sovereign immunity and does not consent to the Plan's compromise or settlement of the U.S.'s potential claims [§ 17.1]. | • Tax claims will be paid in accordance with the Bankruptcy Code.<br><br>• The IRS filed a proof of claim and, thus, waived sovereign immunity. | Open. |

| Objecting Party | Docket Number | Objection | Response | Status |
|---|---|---|---|---|
|  |  | • U.S. opts out of and objects to the releases, exculpations and injunctions against the Released Parties [art 18.1, 2, and 4]. The Debtors have not demonstrated either: (a) that silence may be construed as acceptance as required by *Emerge*; or (b) that non-consensual releases for the Released Parties are appropriate in accordance with the *Tribune*/*Genesis* factors. *In re Emerge Energy Services LP*, Case No. 19-11563 (Bankr. D. Del. 2019) [Docket No. 671, p.23]; *In re Tribune Co.*, 464 B.R. 126, 177-78 (Bankr. D. Del. 2011); *In re Genesis Health Ventures*, 266 B.R. 591, 607-09 (Bankr. D. Del. 2011).<br><br>• Plan fails to preserve setoff and recoupment rights of the United States.<br><br>• U.S. objects to the Bankruptcy Court's retention of exclusive jurisdictions [Art. XIX]. | • The U.S. is within its rights to opt out of the Third Party Release.<br><br>• The Debtors are willing to discuss language to address this concern, but are not aware of how the Plan improperly fails to preserve such rights, if any.<br><br>• The Debtors believe the Bankruptcy Court may retain exclusive jurisdiction over the listed matters under the "close nexus" test enumerated by the Third Circuit. *See In re Resorts Int'l, Inc.*, 372 F.3d 154, 167 (3d Cir. 2004). The Court is retaining jurisdiction over matters that affect integral aspects of the bankruptcy process, including administration of the plan, and thus the U.S.'s objection should be overruled. |  |

13

| Objecting Party | Docket Number | Objection | Response | Status |
|---|---|---|---|---|
| | | • U.S. objects to the expungement of claims filed after the Effective Date because the Government Bar Date does not expire until May, well after the proposed Effective Date [§ 14.8]. | • The Debtors will either add or discuss language for the Confirmation Order to address this concern. | |
| | | • U.S. objects to deeming distributions made after Effective Date as being made on the Effective Date because it allows the Debtors to avoid paying interest [§13.12]. | • Tax claims will be paid in accordance with the Bankruptcy Code. | |
| | | • U.S. objects to the parts of the Combined Plan and Disclosure Statement that provide for a discharge of liquidating Debtors because it is not allowed under section 1141(d)(3) of the Bankruptcy Code. | • The Debtors are not seeking a discharge under Bankruptcy Code section 1141(d)(3). | |
| | | • U.S. objects to the extent claims entitled to payment under section 1129(a)(9)(A) and (C) of the Bankruptcy Code are not paid in accordance with the Bankruptcy Code. | • Tax claims will be paid in accordance with the Bankruptcy Code. | |
| *Confirmation Objections (Informal)* | | | | |
| 5.  Ad Hoc Committee of Bitcoin Lenders ("Ad Hoc Comittee") | N/A | • The Ad Hoc Committee raised concerns regarding the determination of the amount of individual General Unsecured Claims under the Combined Plan and Disclosure Statement [§§. 1.8, 1.63, 1.68, 10.4]. | • The Debtors added language to the Confirmation Order providing that confirmation of the Plan shall not constitute a determination of the Amount of an Allowed General Unsecured Claim and that holders of Allowed General Unsecured Claims reserve their rights to assert their Claims should be valued as of a date other than the Petition Date. | Resolved. |

14

| Objecting Party | Docket Number | Objection | Response | Status |
|---|---|---|---|---|
| | | • The Ad Hoc Committee raised concerns regarding claimants' Cryptocurrency Elections [§§ 10.4(b), 13.3, 13.6, 14.6]. | • The Debtors added language to the Confirmation Order requiring the Liquidation Trustees to use their best efforts to honor claimants' Cryptocurrency Elections, and to consult with the Ad Hoc Committee before making a distribution contrary to a claimant's Cryptocurrency Election. | |
| | | • The Ad Hoc Committee raised concerns about language in the Combined Plan and Disclosure Statement potentially releasing non-Released Parties [§§ 18.2, 18.4]. | • The Debtors added language to the Confirmation Order providing that only the Debtors and Released Parties are released by the Combined Plan and Disclosure Statement. | |
| | | • The Ad Hoc Committee requested to accept the Plan and opt-out releasing the Released Parties [§ 18.2]. | • The Debtors added language to the Confirmation Order providing that members of the Ad Hoc Committee are not releasing the Released Parties. | |
| | | • The Ad Hoc Committee requested representation on the Trust Advisory Board [§§ 1.122, 12.3(b), 12.3(f)]. | • The Debtors modified provisions to the Combined Plan and Disclosure Statement allowing for Ad Hoc Committee representation on the Trust Advisory Board. | |