**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
| | ) | |
| Debtors.[1] | ) | |
| | ) | |

## DECLARATION OF MATTHEW K. FOSTER

I, Matthew K. Foster, declare and state under penalty of perjury as follows:

1.      I submit this declaration (the "Declaration") in support of confirmation of the First Amended Combined Joint Plan of Liquidation and Disclosure Statement of Cred, Inc. and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code (the "Plan") [Docket No. 380].[2] I am over the age of 18 and am authorized to make this Declaration on behalf of the Debtors.

2.      I am a Managing Director of Sonoran Capital Advisors, LLC ("Sonoran"), a turnaround, crisis management, and financial advisory firm that maintains an office at 1733 N. Greenfield Road, Mesa, Arizona 85205. I have over fifteen (15) years of experience in corporate restructuring, private equity, consulting, and executive management. My experience spans a variety of industries, primarily focusing on distressed middle-market companies.

3.      The Debtors hired me as their Chief Restructuring Officer pursuant to an engagement letter dated November 30, 2020, which was approved by order of this Court on

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

[2]    Capitalized terms used but not otherwise defined in this Declaration have the meanings set forth in the Plan.

Case 20-12836-JTD    Doc 595-1    Filed 03/04/21    Page 2 of 20

December 21, 2020.[3]  In this role, I report directly to the Debtors' sole director – Grant Lyon.  I am responsible for managing the day-to-day operations of the Debtors and assessing and implementing the restructuring of the Debtors' businesses.  In this capacity, I have been involved in the formulation and negotiation of the Plan.

4.      I am familiar with the matters set forth herein and, if called as a witness, I could and would testify as set forth herein.  Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by the Debtors' professionals, or the Debtors' employees, or learned from my review of other documents.

### The Debtors' Bankruptcy Filing

5.      On November 7, 2020, the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  On December 3, 2020 the Office of the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Creditors' Committee") to serve in these chapter 11 cases.  On January 8, 2021, the Court entered an order approving the appointment of Robert J. Stark as examiner in these cases.

6.      Following the appointment of the Creditors' Committee, the Debtors and the Creditors' Committee engaged in extensive discussions and negotiations concerning the terms of a potential chapter 11 plan for the Debtors.  These discussions resulted in a plan support agreement (the "PSA"), which set forth the key terms of the Plan.

---

[3]  *See Order Authorizing Employment and Retention of Sonoran Capital Advisors, LLC to Provide Debtors a Chief Restructuring Officer and Certain Additional Personnel and (II) Designating Matthew Foster as Debtors' Chief Restructuring Officer* [Docket No. 267].

2

## Overview of the Debtors' Chapter 11 Plan

7.      On December 31, 2020, the Debtors filed the Combined Joint Plan and Disclosure Statement [Docket No. 301], and on January 21, 2021, filed the Plan.  The Plan contemplates a chapter 11 plan of liquidation centered on an expeditious liquidation of the Debtors' assets the transfer of all of the Debtors' assets, including sale proceeds, if any, cryptocurrency, and estate causes of action into a liquidation trust.

8.      Under the Plan, all of the Debtors' Assets -- including all property of the Estates under and pursuant to section 541 of the Bankruptcy Code, Cash, Causes of Action, rights, interests and property, real and personal, tangible and intangible, including all files, books and records of the Estates -- will be transferred to the Liquidation Trust, which will monetize those assets and distribute the proceeds to creditors.  Plan, § 12.3.  The Liquidation Trust will be administered by three Liquidation Trustees selected by members of the Creditors' Committee.  The Liquidation Trustees will administer the Plan and the Liquidation Trust, serve as a representatives of the Estates under section 1123(b) of the Bankruptcy Code for the purpose of enforcing Causes of Action belonging to the Estates, and make Distributions to creditors.  Plan, § 12.3(a), (b).

## Global Settlement

9.      The Plan incorporates a compromise and settlement of numerous inter-Debtor, Debtor-Creditor, and inter-Creditor issues designed to achieve an economic settlement of Claims against the Debtors and an efficient resolution of the Chapter 11 Cases.  This global settlement constitutes a settlement of Claims as provided in the Plan, including the validity and enforceability of Intercompany Claims, and the allocation of Assets among the Debtors' Estates.

10.    The compromises and settlements that comprise the global settlement, including the limited substantive consolidation of the Debtors' Estates (described in the Plan), will avoid the need for expensive and protracted analysis and/or litigation to allocate assets and liabilities among the Debtors' Estates.  In the absence of the global settlement, the Debtors' estates (and other parties) would be required to incur significant expense, inconvenience, and delay that would hinder and reduce creditor recoveries.

11.    The global settlement is the product of extensive arms'-length, good faith negotiations among multiple stakeholders in the Debtors' bankruptcy cases, and I believe it represents a fair and reasonable compromise of the Claims, Interests and controversies that it resolves.  I believe that entering into the Global Settlement represents a sound exercise of the Debtors' business judgment and is in the best interests of the Debtors' estates.

**Limited Substantive Consolidation**

12.    As noted above, the Plan provides for limited substantive consolidation (or "deemed consolidation" of the Assets and Liabilities of the Debtors.  Accordingly, for purposes of the Plan only, the Assets and Liabilities of the Debtors are treated as the Assets and Liabilities of a single substantively consolidated entity.  Claims filed against multiple Debtors seeking recovery of the same debt shall be treated as a single, non-aggregated Claim against the consolidated Estates to the extent that such Claim is an Allowed Claim.

13.    I believe that deemed consolidation is appropriate under the facts present here. Specifically, prior to the Petition Date, the Debtors' books and records did not precisely record Assets and Liabilities attributable to each of the Debtors individually.  As a result, it would be a painstaking and costly endeavor to try to unwind the Debtors' business affairs and allocate assets and Liabilities on a Debtor-by-Debtor basis, to the extent such unwinding and allocation

is even possible.  To the extent it is possible, such an allocation would be extremely time consuming and costly, and would greatly diminish the pool of assets available for Distribution to Creditors.

14.     For example, without substantial costs and efforts, including a review of all contracts of the more than 6,500 Customers, the Debtors cannot verify which Customers are creditors of Cred Inc. or Cred (US) LLC.  Based on an initial analysis, several Customer contracts appear to be with Cred Inc., but used a Cred (US) LLC signature block.  The Debtors believe it will be difficult if not impossible to properly allocate the assets and liabilities associated with such contracts on a Debtor by Debtor basis.  Furthermore, a detailed forensic analysis would be needed to identify and reconcile all intercompany transfers, including transfers of Cash and transfers of Cryptocurrencies through Fireblocks or other Cryptocurrency wallets.  Moreover, the Debtors are unable to identify the specific Debtor entity that owns the remaining bitcoin, as there was significant movement in bitcoin between the Debtors during normal operations, including commingling of such assets, making tracing of bitcoin to any particular Debtor entity practically impossible.  Finally, the Debtors' platform was used by all operating Debtor entities, and it is practically impossible to allocate the value of that platform to these Debtor entities.  Deemed consolidation for voting and Distribution purposes will avoid these delays and expenses, without causing prejudice to any group of creditors.  Under the Plan, each Creditor within a Class will be treated equally.

15.     Based on the foregoing, I believe that the limited substantive consolidation of the Debtors' Estates proposed under the Plan is in the best interests of the Debtors, their estates and their creditors, is necessary to effectuate the terms of the Plan, and is fair and equitable under the circumstances.

## The Plan Satisfies Chapter 11 Requirements

16.     On the basis of my understanding of the Plan, the events that have occurred

throughout the Debtors' chapter 11 bankruptcy cases, discussions I have had with the

Debtors' legal counsel and financial advisors regarding the requirements of the Bankruptcy

Code, I believe that the Plan is a compromise plan that is a product of vigorous, arms' length

negotiations by the Debtors with the Committee and individual creditors. The Plan complies

with the applicable provisions of the Bankruptcy Code, including but not limited to §§ 1125

and 1129 for approval of a disclosure statement and confirmation of a chapter 11 plan of

reorganization.

17.     Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). On the basis

of my understanding and discussions with the Debtors' legal and financial advisors, I believe

that the Plan complies with § 1129(a)(1) of the Bankruptcy Code, which incorporates other plan

confirmation requirements, as follows:

a. Section 1122 of the Bankruptcy Code: Section 1122 of the Bankruptcy Code

governs the classification of claims and interests. With respect to the requirements of §

1122, the Plan provides for the separate classification of claims and interests into

classes based upon differences in the legal nature including recourse to other sources of

payment or priority of such claims and interests.  Under the Plan, the Debtors have

arranged the classification and treatment of claims and interests in the following

groups: Class 1 (Other Priority Claims); Class 2 (Secured Tax Claims); Class 3 (Other

Secured Claims); Class 4 (General Unsecured Claims); Class 5 (Convenience Claims);

Class 6 (Subordinated Securities Claims); and Class 7 (Equity Interests in Debtors).

No party has objected to the classification of Claims and Equity Interests as reflected in

the Plan. I have been advised that such classification complies with § 1122 of the Bankruptcy Code because each Class contains only Claims or Equity Interests that are substantially similar to each other. With respect to Convenience Claims, I understand that more than 2,000 Claims fall within this class. Under the Plan, Holders of Convenience Claims are to receive their Distributions on or as reasonably practicable after the later of (i) the Effective Date or (ii) thirty (30) days after the date on which such Claim becomes Allowed, whereas General Unsecured Claims are expected to receive multiple Distributions. Plan, §§ 10.4, 10.5. The inclusion of Class 5 will therefore promote tremendous efficiency in administering the Debtors' Estates.

b. Section 1123(a)(1) of the Bankruptcy Code: Article VII of the Plan designates the classes of Claims and Equity Interests, other than the Claims of the type described in §§ 507(a)(2), 507(a)(3), and 507(a)(8) of the Bankruptcy Code.

c. Section 1123(a)(2) of the Bankruptcy Code: Article VII of the Plan specifies any Class of Claims that is not impaired under the Plan within the meaning of § 1124 of the Bankruptcy Code.

d. Section 1123(a)(3) of the Bankruptcy Code: Article VII of the Plan sets forth the treatment of each Class of Claims and Equity Interests that are impaired under the Plan.

e. Section 1123(a)(4) of the Bankruptcy Code: Article VII of the Plan sets forth the treatment for holders of Claims and Equity Interests in each Class, and the treatment within each Class is the same among the Class members.

f. Section 1123(a)(5) of the Bankruptcy Code: Article XII of the Plan sets forth the means for implementing the Plan, including the limited substantive consolidation of the Debtors' Estates, the global settlement, the establishment of the Liquidation Trust, the

appointment of the Liquidation Trustees, and the winding up of the Debtors' Estates.
The Plan, together with the documents and agreements contemplated therein, provides
adequate means for implementation of the Plan as required by section 1123(a)(5) of the
Bankruptcy Code.

g. Section 1123(a)(6): Non-Voting Securities and Officers/Directors: The Plan is a
liquidating plan pursuant to which all of the Debtors' Assets will be transferred to the
Liquidation Trust and each of the Debtors will ultimately be dissolved.  The Plan thus
satisfies the requirements of 1123(a)(6) of the Bankruptcy Code.

h. Section 1123(a)(7) of the Bankruptcy Code: As disclosed by the Debtors in the
Plan, the Liquidation Trustees of the Liquidation Trust shall be selected by the
Creditors' Committee.  The provisions of the Plan regarding the creation and funding
of Liquidation Trust, and the appointment of the Liquidation Trustees, are therefore
consistent with public policy, as required in § 1123(a)(7).

18.    <u>Permissive Provisions in the Plan (11 U.S.C. § 1123(b))</u>.  The Plan also contains
a number of provisions that I understand to be permissive, rather than mandatory, under the
requirements of the Bankruptcy Code.

a. Impairment/Unimpairment of Claims/Equity Interests (11 U.S.C. § 1123(b)(1)).
As discussed above, Claims in Classes 1, 2, and 3 are unimpaired.  Claims and Interests
and Classes 4, 5, 6, and 7 are unimpaired.  Therefore, I believe that the Plan complies
with § 1123(b)(1).

b. Assumption of Executory Contracts and Unexpired Leases (11 U.S.C. §
1123(b)(2)).  Pursuant to Article V.A of the Plan, all executory contracts or unexpired
leases of the Debtors, shall be deemed rejected in accordance with the provisions and

requirements of §§ 365 and 1123 of the Bankruptcy Code as of the Effective Date,
except to the extent (a) the Debtors previously have assumed, assumed and assigned, or
rejected such Executory Contract or Unexpired Lease, (b) prior to the Effective Date,
the Debtors have filed a motion to assume, assume and assign, or reject an Executory
Contract or Unexpired Lease on which the Bankruptcy Court has not ruled, (c) an
Executory Contract and Unexpired Lease is identified in the Plan Supplement as an
Executory Contract or Unexpired Lease to be assumed or assumed and assigned
pursuant hereto, or (d) Executory Contracts and Unexpired Leases under which the
counterparty has consented to the extension of the time by which the Debtors must
assume or reject to a date beyond the Effective Date.  Entry of the Confirmation Order
by the Bankruptcy Court shall constitute approval of all rejections of Executory
Contracts and Unexpired Leases pursuant to Section 15.1 of the Plan and sections
365(a) and 1123 of the Bankruptcy Code.  Therefore, I believe that the Plan complies
with section 1123(b)(2).

   c.  Preservation of Claims (11 U.S.C. § 1123(b)(3)(B)).  Section 17.3 of the Plan
provides for the preservation of claims for the benefit of the Liquidation Trust.  Section
18.3 of the plan provides that the Liquidation Trustees shall have the right to prosecute
any and all avoidance or equitable subordination actions, recovery Causes of Action,
and objections to Claims under sections 105, 502, 510, 542 through 551, and 553 of the
Bankruptcy Code that belong to the Debtors or a Debtor-in-Possession, as well as all
Causes of Action, including, without limitation, all Causes of Action based upon fraud,
theft, conversion, unfair competition, tortious interference, common law tort, breach of
fiduciary duty and similar and related legal theories and Causes of Action.  I believe

9

that the provisions regarding Causes of Action in the Plan are appropriate and are in the best interests of Debtors, their estates, Creditors, and other parties in interest.

d. Modification of Creditor Rights (11 U.S.C. § 1123(b)(5)). The Plan does not modify the rights of the holders of secured claims. Therefore, I believe that the Plan complies with section 1123(b)(5) or that this subsection is inapplicable.

e. Releases and Exculpations (11 U.S.C. § 1123(b)(6)). It is my understanding that section 1123(b)(6) of the Bankruptcy Code provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1123(b)(6). Article XVIII of the Plan contains release and exculpation provisions. I understand that the release provision in Section 18.2 of the Plan provides for a broad release of each Released Party (as defined in the Plan), subject to a carve out for claims resulting from the willful misconduct, actual fraud, or gross negligence of any Released Party, and that parties in interest had an opportunity to opt out of such releases. I understand that the exculpation provision in Section 18.3 of the Plan limits liability arising out of postpetition acts and omissions of the Debtors and certain parties related to them. Like the release provision, the exculpation provision expressly carves out and does not apply to any claims against any of the exculpated parties resulting from acts or omissions determined by a court to have constituted actual fraud, willful misconduct, or gross negligence. It is my understanding that these release and exculpation provisions are integral to the Plan and the compromises contained therein, are not inconsistent with applicable provisions of the Bankruptcy Code, and therefore comport with section 1123(b)(6) of the Bankruptcy Code.

19.     <u>The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  On the basis of my understanding and discussions that I have had with the Debtors' legal advisors, I believe that the Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126 of the Bankruptcy Code regarding disclosure and Plan solicitation.  In addition, the disclosures in the Plan contained adequate information as required by the Bankruptcy Code.  To the best of my knowledge and belief, the Debtors have complied with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in transmitting the Plan, and related documents and notices to known holders of Claims for purposes of soliciting and tabulating votes on the Plan.  Counsel for the Debtors has advised me that good sufficient, and timely notice of the Confirmation Hearing has been provided to all known record holders of Claims and Equity Interests and all other parties in interest to whom notice was required to have been provided.

20.     Additionally, it is my understanding, as is shown in the certification of ballots filed concurrently with this Declaration (the "<u>Ballot Report</u>"), that the Debtors have properly solicited and tabulated votes with respect to the Plan.  I believe that the Debtors have complied with the requirements of section 1129(a)(2) of the Bankruptcy Code.

21.     <u>The Plan Was Proposed in Good Faith and Not By Any Means Forbidden By Law (11 U.S.C. § 1129(a)(3))</u>.  I believe that the Plan was proposed in good faith and not by any means forbidden by law because the Plan has been proposed with the legitimate and honest purpose of liquidating the Debtors' assets in an expeditious and efficient manner, thereby maximizing the distribution to creditors.  The Plan (including all documents necessary to effectuate the Plan) is the result of extensive arms-length negotiations among the Debtors, the Committee and other creditors, and their respective advisors.  Each of these parties has acted in

good faith.  The Plan achieves and effectuates the goals embodied in the Bankruptcy Code, including the liquidation of the Debtors' estates and the equitable distribution of value of creditors.  I believe that, inasmuch as the Plan promotes the objectives and purposes of the Bankruptcy Code, while also providing for a recovery to creditors, the Plan and the related documents have complied with the requirement of section 1129(a)(3) of the Bankruptcy Code that the Plan be proposed in good faith.

22.    <u>Payments of Costs or Expenses in Connection with the Bankruptcy Cases (11 U.S.C. § 1129(a)(4))</u>.  Any payment made or to be made by the Debtors for services or for costs and expenses incurred prior to the Effective Date in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable.  I believe that such payments are reasonable, represent a reasonable exercise of sound business judgment, and are in the best interests of the Debtors, their Estates, Creditors, and parties in interest.

23.    <u>Officers and Directors of the Successor to the Debtors (11 U.S.C. § 1129(a)(5)</u>.  As discussed herein, the Plan provides that the Debtors will be liquidated and ultimately dissolved, and all of their assets transferred to the Liquidation Trust.  The Debtors have disclosed the identities of the Liquidation Trustees and the members of the Trust Advisory Board in the Plan Supplement, satisfying the requirements of Bankruptcy Code section 1129(a)(5).

24.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  I understand that the Debtors are not changing any rates that require approval by a governmental agency.

25.    <u>The Best Interest of Creditors Test (11 U.S.C. § 1129(a)(7))</u>.  On the basis of my understanding, as well as discussions that I have had with the Debtors' legal advisors, I

believe that the Plan complies with § 1129(a)(7) of the Bankruptcy Code. In order to satisfy the "best interests" test under this section, each holder within an Impaired Class must either (a) vote to accept the Plan or (b) receive no less than such holder would have received in a liquidation. For purposes of determining whether the Plan meets this requirement, I have consulted with the Debtors' legal and financial advisors and reviewed the estimated liquidation analysis as set forth in Exhibit B to the Plan (the "Original Liquidation Analysis"). The Original Liquidation Analysis has been updated to reflect (i) the increased value of the Estates based on increased prices of cryptocurrencies, including Bitcoin, (ii) recovery of funds from James Alexander, and (iii) disbursements relating to the Debtors' investments in AX Momentum L.P. and Fifth Khagan, L.P. The updated liquidation analysis (the "Liquidation Analysis"), which is attached as **Exhibit A** to the Declaration, reflects increased value of the Estates of more than $13 million.

26.     I believe the Liquidation Analysis demonstrates that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. I further believe that the assumptions underlying the Liquidation Analysis are reasonable and that the Liquidation Analysis provides a reasonable estimate of the chapter 11 liquidation value of the Debtors' assets and the distribution that holders of Claims and Equity Interests would receive in a chapter 7 liquidation of the Debtors, subject to fluctuations in the value of cryptocurrency in which the Debtors have an interest and other factors that could impact the value of the Debtors' Estates.

27.     As set forth in the Liquidation Analysis, the value to be distributed to non-accepting holders of Claims and Interests upon disposition of the Debtors' assets pursuant to a

chapter 7 liquidation would be less than the value to be distributed to such holders under the Plan.

28.    The Liquidation Analysis concludes that creditors with prepetition unsecured claims will recover more value under the proposed Plan than through a liquidation.  Subject to the qualifications specified, the Liquidation Analysis estimates that a range of asset values, net of liquidation costs, trustee fees, chapter 11 professional fees, and payment of administrative claims will provide an approximate, potential distribution of 30% to holders of general unsecured creditors, in comparison to a recovery of 29% in the hypothetical chapter 7 liquidation. representing almost $2.2 million in lower recovery under the chapter 7.  As set forth in the Liquidation Analysis, Holders of Class 5 Convenience Claims would receive a Distribution of 30% of their Allowed Claims on or as soon as reasonably practicable after the Effective Date, or within 30 days after the date their Claims are Allowed, thereby avoiding the delay in distribution that may apply to Class 4.  Plan, Article X.

29.    Based upon that analysis, I believe that each holder of an impaired Claim that has not accepted the Plan would receive a distribution or retain property under the Plan, on account of its respective Claim, of a value as of the Effective Date that is not less than the amount that such holder of a Claim would receive or retain were the Debtors liquidated under chapter 7 of the Bankruptcy Code.  Accordingly, I believe that (a) the Plan is in the best interests of the holders of Allowed Claims, including General Unsecured Claims (Class 4) and Convenience Claims (Class 5), (b) the Plan maximizes the overall recovery for the holders of General Unsecured Claims (Class 4) and Convenience Claims (Class 5), and (c) liquidation of the Debtors under the Plan rather than a liquidation in chapter 7 will allow the overall realization of greater value for Creditors.

30.     <u>Acceptance or Unimpairment (11 U.S.C. § 1129(a)(8))</u>:  Holders of claims in Classes 1, 2 and 3 are unimpaired under the Plan.  As reflected in the Ballot Report, Classes 4 and 5, each of which are impaired Classes of Claims eligible to vote, have affirmatively voted to accept the Plan.  As such, I believe that section 1129(a)(8) is satisfied with respect to these Classes of Claims.  Holders of claims in Classes 6 and 7 are impaired under the Plan and it is my understanding that they are presumed to have rejected the Plan.  Nevertheless, as discussed below, it is my understanding that the Plan may be confirmed under section 1129(b) with respect to Classes 6 and 7.

31.     <u>Treatment of Administrative Claims, Priority Tax Claims and Other Priority Claims (11 U.S.C. § 1129(a)(9))</u>.  On the basis of my understanding, as well as discussions that I have had with the Debtors' legal advisors, I believe that the Plan complies with section 1129(a)(9) of the Bankruptcy Code because holders of Allowed Administrative Claims, fees to the U.S. Trustee, and Allowed Priority Tax Claims, to the extent they are Allowed Claims, will either be paid in full on the Effective Date or paid in a manner as otherwise agreed upon by the holders of such Claims.

32.     <u>Acceptance of the Plan by At Least One Impaired Classes of Claims (11 U.S.C. § 1129(a)(10))</u>.  As has been set forth in the Ballot Report, Classes 4 and 5 are impaired under the Plan and have affirmatively accepted the Plan by the requisite majority in such Class, without including the acceptance of the Plan by insiders.  Accordingly, I believe the Plan will satisfy section 1129(a)(10) of the Bankruptcy Code because at least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by an insider in such Classes.

33.     <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. On the basis of my understanding, as well as discussions I have had with the Debtors' legal advisors, I am aware that section 1129(a)(11) of the Bankruptcy Code permits a plan to be confirmed if it is not likely to be followed by a further financial liquidation or reorganization, unless such liquidation or reorganization is contemplated by the plan.  Here, the Plan provides for the liquidation of the Debtors' estates.  Accordingly, I believe that the Plan satisfies the requirements of section 1129(a)(11).

34.     <u>Payment of Statutory Fees (11 U.S.C. § 1129(a)(12))</u>.  It is my understanding that Debtors have paid all chapter 11 statutory and operating fees required to be paid during these chapter 11 cases and filed all fee statements required to be filed.  Section 20.8 of the Plan provides that on and after the Effective Date the Debtors shall pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6).

35.     <u>Inapplicability of Sections 1129(a)(13)-(16)</u>.  I have been advised by counsel that sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code are inapplicable to the Debtors.

36.     <u>Section 1129(b)</u>: I have been advised by counsel that for each class of claims that is impaired and has not accepted the Plan pursuant to section 1129(a)(8), the Plan must not discriminate unfairly and must be fair and equitable pursuant to section 1129(b)(1).  I believe that the Plan does not discriminate unfairly and is fair and equitable with respect to Class 6 because holders of Claims in Class 6 because holders of claims or interests in Classes junior to Class 6 will not receive or retain property on account of such claims or interests.  It is my understanding that Class 7 consists of holders of Equity Interests.  The Plan does not discriminate unfairly and is fair and equitable with respect to Class 7 because holders of

16

Equity Interests in that Class will not receive any distributions, and there are no classes junior to Class 7.

37.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  I believe that the Plan has not been filed for the purpose of avoidance of taxes or the avoidance of the application of § 5 of the Securities Act of 1933.  Rather, the principal purpose of the Plan is to liquidated the Debtors' Estates in a timely and efficient manner, and distribute the proceeds to creditors.

## Conclusion

38.     Based upon the facts and opinions set forth herein and the law as I understand it, I believe that the Debtors have formulated, negotiated, and proposed a Plan that treats all Classes of Claims and Equity Interests fairly, equitably, and reasonably, and satisfies all of the confirmation requirements contained in the Bankruptcy Code.  I further believe that due and adequate notice of the Confirmation Hearing, the deadline for Creditors in impaired Classes 4 and 5 to vote to determine whether to vote to accept or reject the Plan, and the deadline for objecting to confirmation of the Plan was properly given.  I believe the Debtors have sufficient funds to carry out the provisions of the Plan, and that the Plan is feasible.

*[signature page follows]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Executed on: March 4, 2020
Mesa, Arizona

*/s/* Matthew K. Foster
Matthew K. Foster
Managing Director of
Sonoran Capital Advisors, LLC

**Exhibit A**

**Liquidation Analysis**

Cred Inc. & Subsidiaries
Chapter 7 Liquidation Analysis

| Assets | Notes | Proposed Plan of Liquidation | | | Chapter 7 Liquidation | | |
|---|---|---|---|---|---|---|---|
| Unrestricted Cash as of Effective Date | A | | | $2,444,168 | | | $2,444,168 |
| Liquidation of Cryptocurrency Holdings | B | | | 20,248,214 | | | 20,248,214 |
| MoKredit Note | C | | | 32,192,681 | | | 32,192,681 |
| Additional Liquid Assets | C | | | 664,165 | | | 664,165 |
| Total estimated proceeds available | | | | 55,549,227 | | | 55,549,227 |
| **Reserves Budgeted for Administration expenses** | | | | | | | |
| Estimated Operating Liabilities | D | | | (50,000) | | | (50,000) |
| Estimated UST fees | E | | | (125,000) | | | (125,000) |
| Total estimated for distribution | | | | 55,374,227 | | | 55,374,227 |
| **Administrative Fees** | | | | | | | |
| Chapter 7 Professionals | F | 100% | - | | 100% | 2,000,000 | (2,000,000) |
| Chapter 7 Trustee Commissions | G | 100% | - | | 100% | 1,661,227 | (1,661,227) |
| Chapter 11 Professionals | H | 100% | 2,319,420 | (2,319,420) | 100% | 2,319,420 | (2,319,420) |
| Liquidating Trust Budget | I | 100% | 1,500,000 | (1,500,000) | 100% | - | - |
| Estimated UST fees | J | 100% | 553,742 | (553,742) | 100% | 553,742 | (553,742) |
| Net estimated proceeds available after distribution | | | | 51,001,065 | | | 48,839,838 |
| **Administrative Claims** | | | | | | | |
| Administrative Claims | | 100% | - | - | 100% | - | - |
| Net estimated proceeds available after distribution | | | | 51,001,065 | | | 48,839,838 |
| **Priority & Secured Claims** | | | | | | | |
| Other Priority Claims (Class 1) | | 100% | - | - | 100% | - | - |
| Secured Tax Claims (Class 2) | | 100% | - | - | 100% | - | - |
| Other Secured Claims (Class 3) | | 100% | - | - | 100% | - | - |
| Net estimated proceeds available after distribution | | | | 51,001,065 | | | 48,839,838 |
| **Unsecured Claims & Equity Interest** | | | | | | | |
| General Unsecured Claims (Class 4) | K | 30% | 170,138,236 | (50,851,065) | 29% | 170,138,236 | (48,696,729) |
| Convenience Claims (Class 5) | L | 30% | 500,000 | (150,000) | 29% | 500,000 | (143,109) |
| Subordinated Securities Claims (Class 6) | | 100% | - | | 0% | | |
| Equity Interests in Debtors (Class 7) | | 100% | - | | 0% | | |
| Net estimated proceeds available after distribution | | | | - | | | (0) |

Notes:
A) Based on updated budget as of 2/26/21 and assumes Effective Date of 4/2/21. Does not include funds held in professional fee escrow account.
B) Cryptocurrency value based on rolling four week historical average as of 2/26/21; assumes illiquid cryptocurrency is liquidated at a discount to that value.
C) Assumes collection of accounts and notes receivable as well as liquidation of certain physical assets over time. Discounts are applied to these assets based on Debtors' estimate of collectibility.
D) The Debtors don't anticipate additional operating liabilities due to the cessation of operations but are keeping a $50k reserve.
E) Estimated UST fees through Effective Date.
G) 3% of distributions.
H) Estimated outstanding professional fees that would need to be paid prior to plan going effective.
I) Estimated budget for Liquidating Trust to liquidate cryptocurrency and prosecute collections actions regarding Additional Liquid Assets.
J) Estimated UST fees for the remainder of the case.
K) A liquidating trust would make interim distributions to Class 4 claimants whereas a Chapter 7 trustee would make distributions at the end of the case; which is potentially several years. The Debtors did not complete an analysis to incorporate the time value of money but the present value of the Chapter 7 recovery would be negatively impacted by any discount rate that is applied.
L) Debtors' estimate of creditors that elect to participate as a Convenience Class Claim. This analysis does not assume any creditors with claims greater than $1k make the Convenience Class Election.