**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF GRANT LYON IN SUPPORT OF CONFIRMATION OF
FIRST AMENDED COMBINED JOINT PLAN OF LIQUIDATION AND
DISCLOSURE STATEMENT OF CRED INC. AND ITS SUBSIDIARIES
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

I, Grant Lyon, hereby declare under penalty of perjury as follows:

1.        I submit this declaration (the "Declaration") in support of confirmation of the

*First Amended Combined Join Plan of Liquidation and Disclosure Statement of Cred Inc. and Its*

*Subsidiaries Under Chapter 11 of the Bankruptcy Code* (the "Plan").[2]

2.        I am over the age of 18 and authorized to submit this Declaration on behalf of the

Debtors.  If called upon to testify, I could and would testify competently to the facts set forth

herein.

3.        Except as otherwise indicated herein, all facts set forth in this Declaration (a) are

based on my personal knowledge and/or information supplied to me by others at the Debtors and

the Debtors' professionals, (b) were learned from my review of relevant documents, or (c) are

my opinion based upon my experience and knowledge of the Debtors' operations and financial

condition.

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566).  The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

[2]     Capitalized terms used but not otherwise defined in this Declaration have the meanings set forth in the Plan.

**Background**

4.      I am the co-founder of Arete Capital Partners, LLC.  I have over 30 years of experience in the financial restructuring world.  I have advised clients in the purchase, restructuring and divestiture of assets totalling over $35 billion.  I have sat on over 25 boards of directors of companies as an independent member and have served many times as a Chapter 11 trustee or state court receiver.  I have been a Chief Financial Officer of a public company and a Chief Executive Officer of private companies.  I have served clients on boards and as an advisor in numerous industries, including real estate, retail, airlines, gaming, securities, and hospitality and as an advisor to the Bahamian government.

5.      On November 3, 2020, I was appointed as an independent director or manager (as the case may be) of the Debtors to replace Lu Hua.  I was also appointed as the chair and sole member of the Restructuring Committee of Cred Inc.'s board of directors and thus was solely responsible for making restructuring decisions at the board level.  Since early December 2020, I have served as the Debtors' sole director.

6.      Since I joined the Debtors, I have been involved in several efforts to preserve and maximize the Debtors' estates.  The Debtors' overall strategy has been to preserve and maximize the assets that Debtors currently hold for the eventual transfer to a liquidation trust, and to expeditiously file a plan of liquidation and conclude this bankruptcy case.

7.      In order to ensure that the Debtors' restructuring proceeded as smoothly and effectively as possible, I suggested that Debtors hire a Chief Restructuring Officer.  The Debtors have since hired on my recommendation Matthew Foster as Chief Restructuring Officer.  Mr. Foster and I have provided independent oversight over the administration of the Debtors' chapter 11 cases.  Mr. Foster and I have also been actively working with parties-in-interest to formulate

and refine a chapter 11 plan that is consistent with the Debtors' fiduciary duties and satisfies the requirements of the Bankruptcy Code.

**The Debtors' Bankruptcy Filing**

8.      On November 7, 2020, the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  On December 3, 2020 the Office of the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Creditors' Committee") to serve in these chapter 11 cases.  On January 8, 2021, the Court entered an order approving the appointment of Robert J. Stark as examiner in these cases.

9.      Following the appointment of the Creditors' Committee, the Debtors and the Creditors' Committee engaged in extensive discussions and negotiations concerning the terms of a potential chapter 11 plan for the Debtors.  These discussions resulted in a plan support agreement (the "PSA"), which set forth the key terms of the Plan.

**Overview of the Debtors' Chapter 11 Plan**

10.      On December 31, 2020, the Debtors filed the Combined Joint Plan and Disclosure Statement [Docket No. 301], and on January 21, 2021, filed the Plan.  The Plan contemplates a chapter 11 plan of liquidation centered on an expeditious liquidation of the Debtors' assets through the transfer of all of the Debtors' assets, including sale proceeds, if any, cryptocurrency, and estate causes of action into a liquidation trust.

11.      Under the Plan, all of the Debtors' Assets -- including all property of the Estates under and pursuant to section 541 of the Bankruptcy Code, Cash, Causes of Action, rights, interests and property, real and personal, tangible and intangible, including all files, books and records of the Estates -- will be transferred to the Liquidation Trust, which will monetize those assets and distribute the proceeds to creditors.  Plan, § 12.3.  The Liquidation Trust will be

administered by three Liquidation Trustees selected by members of the Creditors' Committee. The Liquidation Trustees will administer the Plan and the Liquidation Trust, serve as a representatives of the Estates under section 1123(b) of the Bankruptcy Code for the purpose of enforcing Causes of Action belonging to the Estates, and make Distributions to creditors.  Plan, § 12.3(a), (b).

12.    The Plan embodies a global settlement amongst the Debtors and the Creditors' Committee.  The global settlement involves a compromise and settlement of numerous inter-Debtor, Debtor-Creditor, and inter-Creditor issues designed to achieve an economic settlement of Claims against the Debtors and an efficient resolution of the Chapter 11 Cases.  This global settlement constitutes a settlement of Claims as provided in the Plan, including the elimination of Intercompany Claims, and the allocation of Assets among the Debtors' Estates.

13.    The compromises and settlements that comprise the global settlement, including the limited substantive consolidation of the Debtors' Estates (described in the Plan), will avoid the need for expensive and protracted analysis and/or litigation to allocate assets and liabilities among the Debtors' Estates.  In the absence of the global settlement, the Debtors' estates (and other parties) would be required to incur significant expense, inconvenience, and delay that would hinder and reduce creditor recoveries.  I believe the terms of the global settlement are fair and reasonable, from the perspective of the Debtors and their estates, easily fall within the range of reasonableness.  I believe the global settlement, as embodied in the Plan, is in the best interests of the Debtors and their estates, as it will facilitate a prompt resolution of these cases and distributions to creditors.

## Releases Under The Debtors' Chapter 11 Plan

14.     An important aspect of the global settlement are the release and exculpation provisions included in the Plan.  The Plan provides releases and exculpation for the Released Parties, defined in the Plan as including the Professionals retained by the Debtors, myself (Grant Lyon) as the Debtors' independent director, Matthew Foster as the Debtors' chief restructuring officer, any other staff supplied by Sonoran Capital Advisors, LLC, the Professionals retained by the Committee, and the respective agents and representatives of each of the foregoing.

15.     Specifically, section 18.2 of the Plan provides that effective as of the Confirmation Date (but subject to the occurrence of the Effective Date), the Debtors, their respective Estates, the Liquidation Trust, and the Liquidation Trustees shall release, waive, and discharge each of the Released Parties from any and all Claims, Causes of Action, and Liabilities whatsoever based in whole or in part on any act, omission, transaction, event or other occurrence: (i) taking place before the Petition Date in connection with the Debtors; and (ii) in connection with or arising out of the Debtors' Chapter 11 Cases, the pursuit of confirmation of the Combined Plan and Disclosure Statement, the Consummation thereof, the administration thereof or the property to be distributed thereunder, but excluding the waiver or release from any Causes of Action resulting from the willful misconduct, actual fraud, or gross negligence of any Released Party arising under chapter 5 of the Bankruptcy Code.

16.     I believe that the releases and exculpation represents a valid exercise of the Debtors' business judgment.  I have engaged in numerous discussions with employees and representatives of the Debtors to ascertain whether there are any viable claims or causes of action the Releasing Parties could pursue against the Released Parties.  Based on these discussions, and my own observations in these cases, I am not aware of any such claims or causes of action.

Accordingly, it is my business judgment that the further investigation and pursuit of any such claims against the Released Parties is not in the best interests of the Estates or the various constituencies in these cases.  The releases and exculpation, like the Plan itself, were negotiated in good faith by sophisticated parties represented by able counsel and financial advisors.  The releases and exculpation are therefore the result of arms'-length negotiation and appropriately offer protection to parties that participated in, and contributed to, the Debtors' restructuring process.

17.    The Released Parties all played important roles in the Plan process.  All share a common goal with the Debtors in seeing the Plan succeed and implementing the compromise and settlement set forth therein.  I believe the releases and exculpation are fair and equitable and are warranted, based on and in consideration of the services of the Released Parties in formulating, negotiating, and implementing the Plan.

18.    I understand that one or more parties in interest raised the possibility of potential claims against Paul Hastings LLP, the Debtors' counsel in these cases.  *See Objection of the United States Trustee to the Debtors' Application for Entry of an Order Authorizing and Approving Retention of Paul Hastings LLP as Counsel to the Debtors, Effective as of Petition Date* (the "UST Objection") [ECF No. 139].  I understand that in response to the allegation that Paul Hastings received a preferential payment prior to the Petition Date, the firm agreed to return more than $300,000 in compensation it received for prepetition services, and that the firm's retention was approved by this Court by order dated January 7, 2021 [ECF No. 327].  I have reviewed the facts and circumstances surrounding Paul Hasting's engagement by the Debtors, and in my judgment, there do not appear to be any viable claims against the firm.  In light of the services rendered by the firm in connection with these cases, it is my judgment that Paul

Hastings should be included in the Release and Exculpation provisions along with the other Released Parties.

### Third Party Releases

19.    The Plan also provides for consensual third-party releases, pursuant to which each of the Debtors, and all Holders of Claims or Equity Interests who (1) vote in favor of the Plan or (2) (a) abstain from voting, are not entitled to vote, or vote to reject the Plan and (b) do not opt out of the release on a timely submitted Ballot or the Opt-Out Election Form, and with respect to the foregoing, the current and former Affiliates thereof, and such Entities' and their current and former Affiliates' current and former members, directors, managers, employees, agents, advisors and other representatives, shall be deemed to have released and discharged each Released Party from any and all claims and Causes of Action.

20.    The Third Party Releases were negotiated by the Debtors and the Creditors' Committee at arm's length and in good faith, and are an integral part of the Plan.  I understand that the Third Party Releases are deemed consensual because all parties are given the opportunity to opt out of the releases.  Given the facts and circumstances of these cases, including the important contributions in these cases by the Released Parties, I believe the Third Party Releases are fair and reasonable, and in the best interests of the Debtors and their estates.

*[signature page follows]*

7

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed on March 4, 2021
New York, NY


*/s/ Grant Lyon*
Grant Lyon
Independent Director of the Debtors and Sole Member of
Restructuring Committee