# EXHIBIT B

Status Conference Transcript

```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE


IN RE:                          .  Chapter 11
                                .  Case No.: 20-12836 (JTD)
CRED INC., et al.,              .
                                .  (Jointly Administered)
                                .
              Debtors.          .
                                .
. . . . . . . . . . . . . . . . .
                                .
CRED INC., CRED CAPITAL,        .
INC.,                           .  Adversary Proceeding No.:
and CRED (US) LLC,              .  20-51006 (JTD)
                                .
              Plaintiffs,       .
                                .
v.                              .
                                .  Courtroom
JAMES ALEXANDER,                .  824 Market Street
                                .  Wilmington, Delaware 19801
              Defendant.        .
                                .  Wednesday, February 10, 2021
. . . . . . . . . . . . . . . .    3:01 p.m.



          TRANSCRIPT OF HYBRID TELEPHONIC/ZOOM HEARING
             BEFORE THE HONORABLE JOHN T. DORSEY
                 UNITED STATES BANKRUPTCY JUDGE




Electronically
Recorded By:          Jason Spencer, ECRO

Transcription Service:   Reliable
                         1007 N. Orange Street
                         Wilmington, Delaware 19801
                         Telephone: (302) 654-8080
                         E-Mail: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording:
transcript produced by transcription service.
```

```
 1  APPEARANCES (CONTINUED):

 2  For the Debtors:         Scott D. Cousins, Esquire
                             COUSINS LAW, LLC
 3                           1521 Concord Pike
                             Suite 301
 4                           Wilmington, Delaware 19803

 5                           -and-

 6                           Avi Luft, Esquire
                             PAUL HASTINGS, LLP
 7                           200 Park Avenue
                             New York, New York 10166

 8
    For the Official
 9  Committee of Unsecured
    Creditors:               Joseph B. Evans, Esquire
10                           Timothy W. Walsh, Esquire
                             MCDERMOTT WILL & EMERY, LLP
11                           340 Madison Avenue
                             New York, New York 10173

12

13  For James Alexander:     Mark Pfeiffer, Esquire
                             BUCHANAN INGERSOLL & ROONEY
14                           700 Alexander Park
                             Suite 300
15                           Princeton, New Jersey 08540-6347

16                           -and-

17                           David B. Golubchik, Esquire
                             LEVENE, NEALE, BENDER, YOO
18                             & BRILL, LLP
                             10250 Constellation Boulevard
19                           Suite 1700
                             Los Angeles, California 90067

20

21

22

23

24

25
```

1  was advised by California counsel to no longer participate in
2  that deposition.
3         My client has turned over substantial amounts of
4  funds, Your Honor:  funds in cryptocurrency; 1.9 million in
5  Bitcoin on Friday; 2.7 million in USD, which I have assumed
6  on Friday incorrectly, meant U.S. dollars.  It's actually a
7  cryptocurrency tied to the U.S. dollar.  That was turned over
8  on Friday.  Friday, in connection with the Zoom video call,
9  when the 2.7 million was turned over, Mr. Alexander shared
10 his screen with the experts who were able to walk him through
11 transferring the 2.7 million.
12        I believe the experts are of the opinion that
13 there are another 50 to $75,000 in cryptocurrency that are
14 still present, and the experts and my client collaboratively
15 tried to get that transferred on Friday night, but they were
16 unable to do that and the parties agreed that they were going
17 to revisit that issue because the imposed technical issues
18 that are beyond my grasp, Your Honor.
19        I understand the debtors pointed out the next day
20 that there, or the following day after that, that there may
21 be some cryptocurrency that is branded in the name of Cred
22 and they requested that back.  I requested a wallet for the
23 cryptocurrency to be transferred and the debtor informed me
24 that they provided the wallet.  They informed me that we
25 should probably run a test transaction to make sure that it's

1  going to the right place.  I have to coordinate that.  I
2  haven't heard from the -- I don't think the Cred brand, the
3  cryptocurrency is probably not a big issue, because I
4  understand it is valueless.
5              That said, it is probably now part of the
6  bankruptcy estate in California.  There are assets that the
7  debtors are seeking to turn over at this juncture,
8  particularly, assets out of the bank accounts, or let me be
9  more precise, a Wells Fargo account and a JPMorgan account.
10             My client wired $50,000 out of the Wells Fargo
11 account I believe yesterday, and I think there's $885
12 remaining in that account.  And my client attempted to wire
13 the full, or 80,000, which is almost the full amount of the
14 JPMorgan account, as well, but, apparently, JPMorgan held
15 some of the funds back and refused to wire them.
16             There are -- and let me back up.  Those two
17 accounts appear to be denominated in the name of Mr.
18 Alexander.  The Wells Fargo account is titled, "James
19 Alexander, dba James Alexander Cred."  I don't know the
20 implications or the legal implications as to who owns that
21 account, but it appears that, at least in argument, that the
22 bankruptcy estate in California has and set claim to it.
23             The JPMorgan account is in the name of James
24 Alexander.  There are transactions that occurred recently out
25 of those accounts and the debtors are seeking those back.  My

1 debtor is asking.

2       MR. GOLUBCHIK:  Your Honor --

3       THE COURT:  Well, I guess the immediate issue is,

4 we need more information and it's unfortunate that Mr.

5 Alexander decided to terminate his deposition in the middle

6 of it before we could get the answers to these questions.

7       Mr. Golubchik, is your client going to agree to

8 participate in discovery so that the debtors in my case can

9 find out whether he still possesses some of their property or

10 am I going to have to send them out there to settle this

11 thing?

12       MR. GOLUBCHIK:  Your Honor, David Golubchik with

13 Levene, Neale, Bender, Yoo & Brill.

14       I am not trying to play games or push the question

15 aside; I just don't have any information.  This is too new.

16       I'll tell Your Honor, without discussing attorney-

17 client communication, what I tell all of my debtors:  every

18 single dollar and every single asset on the petition date

19 needs to be accounted for.  A debtor-in-possession account

20 will be opened.  Every dollar will be deposited, whether it's

21 in another bank account, in cash, in the trunk, in the

22 mattress, wherever it is.  So, to the extent there are

23 assets, they will go into a debtor-in-possession account.

24       As to cooperating in further discovery, I don't

25 know if it will be in connection with this adversary

1  salary that he has been paying himself and for potentially
2  personal tax liabilities he believes he has.
3         So, these are all -- and mind you, of course, Your
4  Honor, he made sure to file this bankruptcy before he turned
5  over any information regarding his personal finances, as Your
6  Honor had ordered him to do so; noting that, in fact, Your
7  Honor did not require him to do that until yesterday.  So, he
8  waited to make sure that the filing was done right before
9  he'd hand over any of that information, as well.  So, there's
10 a huge deficit of information and that, I hope, helps the
11 Court understand not just of the money we found, but also
12 where much of the missing money is.
13        THE COURT:  Well, I think at this point, the only
14 thing I can do is to ask Mr. Pfeiffer and Mr. Golubchik to
15 talk to their client to see if he will agree to continue the
16 discovery process in this case and if he's not going to do
17 that, then I think the debtors and the committee here are
18 going to have to go out there and ask the judge in California
19 to lift the stay to allow the discovery to continue.  I don't
20 know what else I can do at this point.
21        MR. PFEIFFER:  Your Honor, I will do that.
22        THE COURT:  Okay, Mr. Pfeiffer.  Thank you.
23        UNIDENTIFIED:  Your Honor, it's --
24        MR. GOLUBCHIK:  Your Honor, it's --
25        THE COURT:  Hang on.  Let me hear from