**EXHIBIT C**

**California Action Verified Complaint**

Electronically
**FILED**
by Superior Court of California, County of San Mateo
ON _____ 7/15/2020
By_____ /s/ Rjay Dominia _____
Deputy Clerk

1  PAUL HASTINGS LLP
   PETER M. STONE (SB# 157994)
2  peterstone@paulhastings.com
   1117 S. California Avenue
3  Palo Alto, CA 94304-1106
   Telephone: 1(650) 320-1800
4  Facsimile: 1(650) 320-1900

5  D. SCOTT CARLTON (SB# 239151)
   scottcarlton@paulhastings.com
6  515 South Flower Street
   Twenty-Fifth Floor
7  Los Angeles, CA 90071-2228
   Telephone: 1(213) 683-6000
8  Facsimile: 1(213) 627-0705

9  Attorneys for Plaintiffs
   Cred Inc. (f/k/a Cred LLC) and Cred Capital,
10 Inc.

11          SUPERIOR COURT OF THE STATE OF CALIFORNIA

12       FOR THE COUNTY OF SAN MATEO – UNLIMITED JURISDICTION

13

14 CRED INC. (F/K/A CRED LLC) and CRED          CASE NO. 20-CIV-02915
   CAPITAL, INC.,
15                                              *VERIFIED* **COMPLAINT FOR:**
16                 Plaintiffs,
                                                   **(1) CONVERSION**
17        vs.                                      **(2) DECLARATORY AND**
                                                       **INJUNCTIVE RELIEF;**
18 JAMES ALEXANDER,                                 **(3) BREACH OF EMPLOYMENT**
                                                       **CONTRACT;**
19                 Defendant.                       **(4) BREACH OF THE IMPLIED**
                                                       **COVENANT OF GOOD FAITH**
20                                                     **AND FAIR DEALING; AND**
                                                   **(5) BREACH OF FIDUCIARY**
21                                                     **DUTY OF LOYALTY/**
                                                       **VIOLATION OF CAL. LABOR**
22                                                     **CODE § 2863**

23

24                                              **DEMAND FOR JURY TRIAL**

25

26

27

28

**INTRODUCTION**

1.      Plaintiffs Cred Inc. (f/k/a Cred LLC) ("Cred") and Cred Capital, Inc. ("Cred Capital," and collectively with Cred, the "Plaintiffs") bring the above-captioned action seeking relief to prevent Defendant James Alexander ("Defendant" or "Alexander") from absconding with over $2 million dollars' worth of cryptocurrency that he was entrusted with pursuant to his employment at Cred but which he has taken for his own use.  Plaintiffs also seeks compensatory and punitive damages for Alexander's conversion; breach of his employment contract; breach of the implied covenant of good faith and fair dealing; and breach of the fiduciary duty of loyalty.

2.      The facts of this action are egregious.  In 2018, Cred hired Alexander, as an at-will employee, for a position as Cred's Chief Capital Officer.  As an officer of Cred, Alexander owed Cred a fiduciary duty of loyalty.  And, among such other duties to Cred, Alexander agreed in his employment agreement to not "engage in any other employment, occupation, consulting or other business activity directly related to the business in which [Cred] is now involved or becomes involved during the term of [his] employment, nor will [he] engage in any other activities that conflict with [his] obligations to the Company."

3.      In early 2020, Cred assigned Alexander to set up and manage Cred Capital, Inc. ("Cred Capital"), a Cred subsidiary that was to use the Cred brand name, house a new business line for the Cred enterprise, and to facilitate the organization of Cred Capital.  Cred Capital was supposed to be managed by a three-member board of directors, made up of two Cred employees and a third-party investor, with Cred owning a majority of the subsidiary's voting stock.

4.      On March 15, 2020, Alexander informed Cred that Cred Capital was organized in accordance to this structure.  But in actuality, Alexander tried to usurp control over Cred Capital.  Contrary to the Cred's directives, Alexander purported to unilaterally appoint himself as the sole director of the subsidiary.  He did this, in part, by purporting to issue all of Cred Capital's voting stock to a third-party, which "investor" never provided any investment to Cred Capital but instead supposedly gave a proxy to Alexander to vote his shares.  Cred was to be left only with non-voting shares and no control over its own subsidiary bearing its own name and using its resources.

5.      Despite Alexander's conduct, Plaintiffs tried to resolve this dispute out of Court.

1    Once Cred learned of Alexander's wrongful actions, Cred informed Alexander that Cred Capital

2    was not organized and managed in accordance to Cred's specifications and that all Cred entities,

3    including subsidiaries like Cred Capital, were to operate as *one enterprise*.   Yet, Alexander

4    rebuffed Cred's attempts to provide an opportunity to correct his misconduct.  Alexander instead

5    asserted his alleged unilateral control over Cred Capital and suggested that the subsidiary was

6    completely independent of, and adverse to, Cred.

7          6.     Cred was therefore forced to fix Alexander's malfeasance.  Acting under Delaware

8    governing law, Cred has filed and the Delaware Secretary of State has accepted a proper corporate

9    charter for Cred Capital that seats the Cred officers in control of Cred Capital and fixes the stock

10   ownership so that Cred properly owns and controls its own subsidiary bearing its name and using

11   its resources.

12         7.     Upon reassuming proper control of Cred Capital, however, Plaintiffs have now

13   discovered that Alexander also caused the unauthorized transfer of over $2 million dollars' worth

14   of Bitcoin and USD Coin ("USDC") (the "Digital Assets") that belong to Plaintiffs to blockchain

15   addresses not in Plaintiffs' control or in the control of Plaintiffs' asset managers or custodians.

16   Instead, Alexander surreptitiously and intentionally transferred the Digital Assets to addresses that

17   are owned or controlled by him.

18         8.     Plaintiffs wrote Alexander demanding the return of the Digital Assets, but

19   Alexander has refused to return the over $2 million dollars' worth of the Digital Assets back to

20   Plaintiffs.  In order to prevent further dissipation of its assets, Plaintiffs are thus forced to take swift

21   measures, including initiating this action, to regain control over their property.

22         9.     Plaintiffs are entitled to injunctive relief preventing Alexander from any further

23   dissipation of Plaintiffs' property or assets, including the Digital Assets that do not belong to him.

24   Plaintiffs also seek a declaratory judgment that Cred's actions to properly set the board of directors

25   of Cred Capital and to properly issue the voting shares of Cred Capital to Cred were legally correct.

26   Finally, Plaintiffs are entitled to an award of compensatory and punitive damages against

27   Alexander due to Alexander's improper and illegal conversion, breach of his employment contract,

28   breach of the implied covenant of good faith and fair dealing and breach of his fiduciary duty of

loyalty.

**THE PARTIES**

10.     Plaintiff Cred is a Delaware corporation, with offices at 2121 S. El Camino Real, Ste 500, San Mateo, California, 94403, United States of America.  Cred is a decentralized lending ecosystem based on an Ethereum-based blockchain developed by the company.

11.     Plaintiff Cred Capital is a Delaware corporation, with its primary offices also at 2121 S. El Camino Real, Ste 500, San Mateo, California, 94403, United States of America.  Cred Capital was created to provide bond securitization and asset management for Cred.

12.     Defendant James Alexander is an individual who resides in Los Angeles, California, and is a citizen of the State of California.  On August 27, 2018, Alexander was hired as an at-will employee by Cred to the position of Chief Capital Officer, and reported to the Cred's President, Daniel Schatt, in San Mateo.  As part of his employment agreement, Alexander received a base annual salary of $240,000.  Moreover, in 2019, as part of his benefits as a Cred employee, Alexander also received an employee loan of $250,000 and a loan of LBA, Cred's general utility token.  In 2020, Alexander also received a $100,000 advance against a future profit share.  On or around June 26, 2020, Cred fired Alexander and removed his access to Plaintiffs' email server. But while employed by Cred, Alexander received the most compensation of any individual, including any other director or officer, at the company.

**JURISDICTION AND VENUE**

13.     Jurisdiction is proper in the Superior Court for the State of California in and for the County of San Mateo pursuant to Section 4.10 of the California Code of Civil procedure because it has general subject matter jurisdiction and no statutory exceptions to jurisdiction exist.  The amount in controversy exceeds the jurisdictional minimum of this Court.

14.     Venue is proper in the County of San Mateo pursuant to section 395 of the California Code of Civil Procedure because the acts complained of involve a dispute over Alexander's performance and obligations arising under an employment contract that was to be performed in that county.  In addition, Alexander himself has recently instituted litigation in this County that is related to this dispute such that venue is proper here.

**FACTS**

**A.    Alexander's Duties to Cred as a Cred Officer and Employee**

15.    On August 27, 2018, Cred hired Alexander, as an at-will employee, for a position as Cred's Chief Capital Officer.  Alexander reported to Mr. Schatt, Cred's Chief Executive Officer.  As an officer of Cred, Alexander owed Cred fiduciary duties, including a duty of loyalty

16.    Furthermore, as part of his employment agreement, Alexander agreed to not "engage *in any other* employment, occupation, consulting or other business activity directly related to the business in which [Cred] is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to the Company."  Alexander also agreed that he was "expected to devote [his] full business time and best efforts to performing [his] job duties *for the Company* during [his] employment" with Cred.  The employment agreement also specified that it "may not be modified or amended except by a *written agreement* signed by Dan Schatt [Cred's CEO] and [Alexander]."

17.    As part of his employment, Alexander also signed a Confidentiality, Non-Solicitation, and Inventions Agreement (the "Confidentiality Agreement") in which he agreed that while he was employed by Cred, he would "not provide any services in competition against [Cred]."  The Confidentiality Agreement also specified that this duty applies to Alexander "regardless of the *Company subsidiary or business* for which [he] works or provides services, or the duties which [he] is or may in the future be assigned."  The Confidentiality Agreement further provides that Alexander retains no rights, titles, or interests whatsoever in any "Work Product," or "materials, information, concepts, or work whatsoever that (i) are prepared or developed by Employee, individually or jointly with others, during Employee's employment by the Company, whether or not during working hours, and (ii) relate to, are connected with or arise in any way out of (1) current and/or anticipated businesses and/or activities of the Company," including "any work performed by the Employee for the Company, and/or (4) any information or assistance provided by the Company[.]"

18.    Based on the employment agreement, Alexander received a base annual salary of $240,000.  In 2019, as an additional employee benefit, Alexander also received an employee loan

of $250,000 and a loan of LBA, Cred's general utility token. In 2020, Alexander also received a $100,000 advance against a future profit share. During his employment at Cred, Alexander received the most amount of compensation out of any individual at the company.

### B.     The Formation of Cred Capital

19.     In early 2020, Cred assigned Alexander to organize and manage Cred Capital, a Cred subsidiary that was to be created to provide bond securitizations and manage digital funds for Cred. Alexander was to oversee the organization of Cred Capital, which was supposed to be bound by the traditional parent-subsidiary relationship with Cred, and have a typical governance framework with board control of the subsidiary and with Cred owning and controlling the stock of the subsidiary.

20.     Cred specifically instructed Alexander to organize Cred Capital so that it was governed by a three-person board of directors with two Cred employees controlling a three-person board of directors. Cred also instructed Alexander to organize Cred Capital's capitalization structure so that Cred was a majority shareholder, with voting rights, in the subsidiary. This capital and governance structure, which was conveyed to Alexander, was naturally important to Cred because it would allow Cred to maintain some control over its subsidiary bearing its own name and using its resources.

21.     On March 15, 2020, Alexander affirmed via email that Cred Capital was to be organized with a three-person board of directors made up of two officers of Cred as well as a third-party "investor." Alexander also assured them that Cred Capital was capitalized with only two shareholders, the third-party "investor" and Cred, each holding a 50% equity-stake of the subsidiary. Cred understood this to mean that Cred Capital would be organized in the manner that was previously specified to Alexander—i.e., with Cred having majority voting shares in Cred Capital.

### C.     Alexander's Attempt to Take Over Cred Capital and Conversion of $2 Million Dollars' Worth of Plaintiffs' Assets is Revealed

22.     On or around May 30, 2020, Mr. Schatt discovered that Cred Capital was not organized to Cred's specifications. Instead of being managed by a three-person board of directors,

Alexander simply installed himself as the sole director of Cred Capital.  Moreover, rather than assigning the majority of Cred Capital's voting shares to Cred, Alexander assigned only Class B shares with no voting rights to Cred—and assigned Class A voting shares to a purported third-party "investor" who never made any investment but supposedly gave Alexander his proxy to control Cred Capital in his name.

23.     This discovery—that Alexander failed to provide any Credit Capital voting shares to Cred and did not properly constitute its initial board of directors—blindsided Cred, since Cred had communicated to Alexander on multiple occasions that Cred Capital, while being a legally distinct entity separate from Cred, was nevertheless part of Cred's larger strategic enterprise. Indeed, Cred's CEO had communicated this plan to Alexander in as early as March 27, 2020, where Cred indicated that changes to Cred Capital's compensation structure should be collectively decided by Cred's CEO, CFO, and Alexander to ensure that they are acting *as one company*. Cred's CEO had also reiterated to Alexander on April 28, 2020 that the purpose of creating Cred Capital was to create a "clear division of legal and regulatory responsibilities," where Cred operated as a lender, while Cred Capital operated as an asset manager and securitization provider for Cred.

24.     Consistent with his understanding that Cred Capital was Cred's subsidiary, Cred's CEO had instructed Alexander to coordinate key expenditures, like employment and consulting contracts between the two entities.  For example, on May 7, 2020, Cred's CEO instructed Alexander to ensure that there were "strong controls and systems in place at the parent level [i.e., Cred] to support the cash flow / expenses of our overall organization . . . ."

25.     Cred was also dismayed because Cred had communicated to Alexander on multiple occasions that Cred Capital was to be managed by a three-person board of directors made up by two officers of Cred and a third-party investor.  For example, on May 22, 2020, Cred's CEO sent Alexander an email following a phone call the two of them had.  In this email, Cred's CEO said that while he recalled that the Cred Capital documents that he signed had the three-person board structure he required of Cred Capital, he wanted Alexander to ensure that Cred Capital was organized accordingly.  Cred's CEO also instructed Alexander to "follow-up" and review Cred

Capital's capitalization structure so that it was beneficial to both Cred Capital and Cred. And, he again reiterated that they will be working to build "one great, successful organization together."

26. Meanwhile, Alexander never provided any communication or information whatsoever to contradict Cred's understanding that Cred Capital was an ordinary subsidiary of Cred, with the parent company owning the majority of Cred Capital's voting shares, and that Cred Capital was managed by a three-person board of directors controlled by Cred officers. Nor did Alexander voice any dissent to these instructions or provide any indication that he would not obey the instructions.

27. Accordingly, later on May 30, 2020, Cred's CEO reached out to Alexander to seek clarification as to why Cred Capital was not organized and managed to Cred's instructions. Cred's CEO again emphasized that all Cred entities, included Cred Capital, was one branded enterprise, and all employees of the Cred entities, like Alexander, were expected to work together as a team.

28. The next day, on May 31, 2020, Alexander responded to Cred's CEO's overtures by asserting that Cred Capital was in dispute with Cred.

**D.    Cred Begins to Discover the Scope of Alexander's Deceit**

29. Cred's CEO realized that Alexander may have intentionally disobeyed Cred's directive to organize Cred Capital as Cred's subsidiary, and had begun to investigate Cred Capital's organizational documents. The results of this investigation were deeply disturbing.

30. Cred found that a certificate of incorporation was filed for Cred Capital in Delaware on March 10, 2020, which identified Rebecca Floren as the "sole incorporator." On information and belief, Plaintiffs believed that Ms. Floren was a former paralegal with the San Francisco office of the law firm Schiff Hardin LLP. Plaintiffs, through their counsel, had attempted to reach Ms. Floren at her offices, but was informed by a receptionist that Ms. Floren was no longer employed by Schiff Hardin. Plaintiffs also attempted to reach the relationship partner at Schiff Hardin for Cred Capital, but did not receive any response.

31. Cred also found that, on March 16, 2020, Alexander had executed an "action of incorporator" to falsely appoint himself as the sole initial director of the corporation, even though he was not an incorporator of Cred Capital, since Ms. Floren was the sole incorporator of the

company. Alexander, acting upon his false authority as director of Cred Capital, then purported to execute a board consent authorizing the issuance of non-voting class B common stock to Cred and voting class A preferred stock to a third-party investor that was loyal to him.

32.    But in any event, in March 16, 2020, Alexander was still a Cred employee, and owed fiduciary duties to Cred and was bound by the agreements that he signed in August 27, 2018. In the Confidentiality Agreement, Alexander had assigned to Cred all rights, titles, and interests, in any materials or works that were prepared by him that "are connected with or arise in any way out of" Cred's current or anticipated businesses or activities, whether or not they were developed during working hours. Additionally, Alexander had agreed that Cred was his true attorney-in-fact with "full power of substitution and re-substitution, in Employee's name, place, and stead, in any and all capacities, to execute, verify, acknowledge, and deliver any document necessary or appropriate to effectuate" Cred's ownership over Alexander's works, including any corporate documents for Cred Capital that were created by him or at his request. Likewise, Alexander had agreed that while employed by Cred he would not provide any services in competition against the company, which includes the creation of any entities adverse to the Cred.

33.    On June 22, 2020, Cred, acting as a substitute incorporator of Cred Capital under Section 107(d) of the Delaware General Corporation Law ("DGCL"), and under its authority as the attorney-in-fact and owner over any work product created by Alexander, executed a valid action of incorporator to adopt bylaws and appoint Messrs. Schatt and Podulka as the initial directors of Cred Capital. Cred Capital's board, which was now constituted with Messrs. Schatt and Podulka as directors, then appointed a set of officers that did not include Alexander. The board also confirmed that Cred Capital's prior stock issuances were null and void and authorized a new issuance of voting stock to Cred. Cred thereby became the sole valid stockholder of Cred Capital.

34.    On or about June 27, 2020, Cred discovered that Rebecca Floren, who was previously employed at Schiff Hardin LLP, did not act as the sole incorporator of Cred Capital. Instead, another paralegal employed at Bryan Cave Leighton Paisner LLP, also named Rebecca Floren, was the paralegal who purportedly incorporated Cred Capital.

35.    Thus, on June 29, 2020, to remove any doubt as to the status of Cred Capital's true

board of directors (and the validity of the board's actions undertaken on June 22, 2020), Mr. Podulka, in his capacity as an officer of Cred Capital, filed a Certificate of Correction to correct Cred Capital's corporate charter, pursuant to Section 103(f) of the DGCL. This Certificate of Correction corrected Alexander's omission of the names of Cred Capital's initial board of directors by adding an article to the charter, identifying Messrs. Schatt and Podulka as Cred Capital's initial directors. Since the Certificate of Correction is deemed effective as of March 10, 2020, the date of the filing of Cred Capital's charter, pursuant to Section 103(f) of the DGCL, Messrs. Schatt and Podulka were duly constituted as Cred Capital's board of directors as of March 10, 2020. Thus, Cred Capital's board of directors actions undertaken on June 22, 2020 were valid and have legal effect.

### E.    Alexander Misappropriates Cred and Cred Capital's Digital Assets

36.    After reassuming proper control of Cred Capital, Cred learned on the evening of June 24, 2020, Alexander instructed Daniyal Inamullah, the Vice President of Capital Markets at Cred Capital, to move the Digital Assets—a multi-million dollar amount of Bitcoin and USDC—from Cred Capital accounts to blockchain addresses that do not belong to Plaintiffs or any of Plaintiffs' custodians or asset managers.[1] Alexander communicated with Mr. Inamullah via Telegram Messenger—rather than through Plaintiffs' email server—presumably to evade detection of his conversion of the Digital Assets. Alexander subsequently deleted the conversation thread on Telegram Messenger so as to destroy additional evidence of his malfeasance.

37.    On information and belief, Plaintiffs allege that Alexander owns, or is in control over, the following blockchain addresses to which he moved the Digital Assets:

- **BTC Address**:  0x58ac █████████████████
  - 224.98993 BTC

    463362 ████████████████████
  - 0.1 BTC

    2329c3 ████████████████████

---

[1] These Digital assets had been loaned by a third party on or around March 30, 2020 to Cred. Cred then used these Bitcoin, as well as its own money, to fund Cred Capital in the form of a loan.

- **USDC Address**: 3GGyZc██████████████████
  - $204,656 USDC
    2329c3████████████████████████████
  - $1 USDC
    0xf225████████████████████████████

38.     On or around June 26, 2020, Cred fired Alexander and removed his access to Plaintiffs' email servers.

39.     On July 2, 2020, Alexander filed a complaint in the Superior Court of the State of California, County of San Mateo against Mr. Schatt.  This matter, which is styled as *Alexander v. Schatt*, Case No. 20-CIV-02728, is related to this instant action.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (*Conversion*)

40.     Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

41.     Plaintiffs own and/or have the right to control the Digital Assets that Defendant transferred to accounts that are not in Plaintiffs' control or the control of Plaintiffs' managers or custodians.

42.     Defendant substantially interfered with Plaintiffs' property by knowingly and intentionally transferring these Digital Assets to addresses that are not in Plaintiffs' control or the control of Plaintiffs' managers or custodians.  On information and belief, Plaintiffs allege that Defendant had transferred these Digital Assets to his own accounts, or accounts that he controls. Defendant has refused to return these Digital Assets after Plaintiffs demanded their return. Defendant had thus taken possession of Plaintiffs' Digital Assets and prevented Plaintiffs from accessing the Digital Assets.

43.     Plaintiffs did not consent to Defendant's taking of the Digital Assets.  They were also harmed by Defendant's misappropriation of their Digital Assets.  Not only were Plaintiffs completely deprived of over $2 million dollars' worth of Digital Assets, they are still making

interest payments on the loan associated with these Digital Assets, and have suffered opportunity costs associated with their inability to leverage the Digital Assets as part of their overall investment plan and incurred costs associated with moving alternative assets to support Cred's ongoing operations due to their loss of these Digital Assets, which are causing ongoing harm and damages to Cred.  On information and belief, Plaintiffs allege that they have been damaged in an amount that exceeds well over $2 million.  Plaintiffs are therefore entitled to recover damages from Defendant for their share of said losses.

44.    Based on the foregoing acts and conduct, Defendant has acted towards Plaintiffs with a conscious disregard of their rights, with the intent to defraud, vex, injure and annoy Plaintiffs so as to constitute oppression, fraud, or malice justifying an award of punitive and exemplary damages in an amount sufficient to punish and set an example of Defendant.

### SECOND CAUSE OF ACTION

#### (*Declaratory and Injunctive Relief*)

45.    Plaintiffs repeats and re-allege each and every allegation set forth above as if fully set forth herein.

46.    An actual and justiciable controversy exists as to the rightful ownership and control over Cred Capital in that Plaintiffs contend and seek a declaratory judgment that:

a.    Defendant had no right to transfer the assets of Cred Capital, including the Digital Assets and/or any cryptocurrency at Cred Capital, to accounts not controlled by Plaintiffs' or by Plaintiffs' asset managers or custodians;

b.    Defendant had no right to issue Cred Capital's Class B non-voting common stock to Cred, and Class A preferred stock to a third-party investor;

c.    Defendant had falsely executed an action of an incorporator to appoint himself as the sole director of Cred Capital, and therefore, is not and was never a director of Cred Capital;

d.    Defendant had wrongfully transferred Plaintiffs' assets, including the Digital Assets referred to herein, to accounts that are not in Plaintiffs' custody or control;

e.    Any other actions undertaken by Defendant purportedly as the sole director

1   of Cred Capital is null and void;

2         f.    Alternatively, because Defendant and/or Ms. Rebecca Floren were acting as

3   Cred's agent when they incorporated Cred Capital, Cred thus has the sole ownership

4   interest in Cred Capital;

5         g.    Similarly, because Defendant was bound by the duties of the Confidentiality

6   Agreement—where he expressly relinquished his rights and interest in his work product,

7   named Cred as his attorney-in-fact over any work product, and agreed not to provide any

8   services in competition against Cred—Cred has sole ownership interest in Cred Capital;

9         h.    Cred's actions as the substitute incorporator of Cred Capital on June 22,

10  2020 are valid and lawful;

11        i.    Cred is the sole stockholder of Cred Capital; and

12        j.    Messrs. Daniel Schatt and Joseph Podulka (and not Defendant) are Cred

13  Capital's directors.

14      28.    On information and belief, Plaintiffs allege that Defendant disputes the

15  aforementioned contentions and contend otherwise.

16      29.    Plaintiffs has no adequate remedy at law.

17      30.    A judicial determination of these issues and the respective duties of Plaintiffs and

18  Defendant is necessary and appropriate at this time because Defendant has wrongfully asserted

19  control and ownership of Cred Capital and all of the subsidiary's assets.

20      31.    Thus, Plaintiffs also request injunctive relief prohibiting Defendant from any further

21  dissipation of Plaintiffs' assets, including the Digital Assets referred to herein.

22  **THIRD CAUSE OF ACTION**

23  ***(Breach of Employment Contract)***

24  ***(Asserted by Cred Against Defendant)***

25      32.    Cred repeats and re-alleges each and every allegation set forth above as if fully set

26  forth herein.

27      33.    On August 27, 2018, Cred and Defendant entered into an at-will employment

28  relationship.  Defendant was hired for the position of Chief Capital Officer, and reported to Mr.

Daniel Schatt.

34.     Pursuant to this employment relationship, Defendant had agreed to "not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of your employment, nor will [he] engage in any other activities that conflict with [his] obligations to the Company."

35.     Defendant also agreed to devote his "full business time and best efforts to performing [his] job duties for the Company during [his] employment."

36.     Similarly, Defendant agreed that "while employed by the Company, [he] shall not perform any service in competition against the Company." Defendant further agreed that his duties to Cred applied "regardless of the Company subsidiary or business for which [he] works or provides services, or the duties to which [he] is or may in the future be assigned."

37.     Defendant also agreed to utilize his "best efforts and diligence to protect the Confidential Information and other Company property for an[d] on behalf of the Company."

38.     Furthermore, Defendant agreed not to "access any Company computer or computer system, or access, copy, download, email, reproduce or otherwise duplicate, record, abstract or summarize any Confidential Information (among other things) to compete or prepare to compete against the Company, or for or on behalf of any competitor of the Company."

39.     Defendant's obligations to Cred to safeguard the company's property and Confidential Information continued even after his employment at Cred.

40.     Despite his obligations to Cred and Cred's directives to the contrary, Defendant unlawfully attempted to wrest control of Cred Capital away from the Cred. Among other things, Defendant planned on directing Cred Capital to sue Cred, to fulfill his goal of taking control over Cred Capital, and position the subsidiary as an entity that competes with, and is separate from, Cred.

41.     In contradiction of his duty to safeguard Cred's assets and property, Defendant also directed the transfer of over $2 million dollars' worth of the Digital Assets to blockchain addresses that are not in Cred's control, or the control of Cred's custodians. On information and belief, Cred

alleges that Defendant owns, or is in control over, these blockchain addresses.

42.    Meanwhile, Cred substantially performed its duties under Defendant's employment agreement, which was to provide an annual salary of $240,000, less applicable withholdings and deductions in accordance with Cred's payroll procedures, as well as a one-time transfer of 4,000,000 LBA tokens, subject to certain vesting requirements.  Additionally, Alexander enjoyed other benefits as an employee of Cred, including a loan of $250,000, a loan of LBA, Cred's general utility token, and a $100,000 advance against a future profit share.

43.    Cred was harmed as a direct result of Defendant's breach of the employment agreement.  Not only was Cred forced to expend substantial time and resources to discover and remedy Defendant's misconduct, Cred has lost access to over $2 million dollars' worth of Bitcoin and USDC as a direct result of Defendant's misappropriation.  Furthermore, Plaintiffs are still making interest payments on the loan associated with these Digital Assets, and have suffered opportunity costs associated with their inability to leverage the Digital Assets as part of their overall investment plan and incurred costs associated with moving alternative assets to support Cred's ongoing operations due to their loss of these Digital Assets, which are causing ongoing harm and damages to Cred.  Defendant's breach of his employment agreement was thus a substantial factor in causing Cred's harm.

44.    On information and belief, Cred allege that it has been damaged in an amount that exceeds well over $2 million.  Cred is therefore entitled to recover damages from Defendant for its share of said losses.  Moreover, pursuant to the Confidentiality Agreement entered into by the parties, Cred is also entitled to recover its attorneys' fees and costs incurred as a result of Defendant's breach.

## FOURTH CAUSE OF ACTION

### (*Breach of Implied Covenant of Good Faith and Fair Dealing of an Employment Contract*)

### (*Asserted by Cred Against Defendant*)

45.    Cred repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

46.    Defendant's actions as alleged above breached the implied covenant of good faith

1  and fair dealing in the employment agreement set forth above.

2  47.   Defendant's conduct prevented Cred from receiving the benefit of the employment

3  agreement—i.e., a Chief Capital Officer that is loyal to Cred and acting in Cred's best interests,

4  even though Cred had performed all conditions required for Defendant's performance.

5  48.   By disobeying Cred's express instructions to establish and operate Cred Capital as

6  Cred's subsidiary and asset manager, subverting Cred's rightful ownership and control over Cred

7  Capital, and misappropriating Cred Capital's assets to his own control, Defendant did not act fairly

8  or in good faith.

9  49.   Cred was harmed by Defendant's misconduct.  As a result of his misconduct, Cred

10  was forced to expend time and resources, including pursuing this action, and has lost access to over

11  $2 million dollars' worth of Bitcoin and USDC.  Furthermore, Plaintiffs are still making interest

12  payments on the loan associated with these Digital Assets, and have suffered opportunity costs

13  with their inability to leverage the Digital Assets as part of their overall investment plan and

14  incurred costs associated with moving alternative assets to support Cred's ongoing operations due

15  to their loss of these Digital Assets, which are causing ongoing harm and damages to Cred.

16  50.   On information and belief, Cred allege that they have been damaged in an amount

17  that exceeds well over $2 million.  Cred is therefore entitled to recover damages from Defendant

18  for its share of said losses.  Moreover, pursuant to the Confidentiality Agreement entered into by

19  the parties, Cred is also entitled to recover its attorneys' fees and costs incurred as a result of

20  Defendant's breach.

**FIFTH CAUSE OF ACTION**

***(Breach of the Fiduciary Duty of Loyalty/Violation of Cal. Labor Code § 2863)***

***(Asserted by Cred Against Defendant)***

24  51.   Cred repeats and re-alleges each and every allegation set forth above as if fully set

25  forth herein.

26  52.   From August 28, 2018, the date of his hire, to June 26, 2020, the date of his

27  termination, Defendant was a corporate officer of Cred.  As such, Defendant had a fiduciary

28  relationship with Cred, and owed the company his undivided loyalty.

53.     Believing that Defendant would honor his fiduciary duties and his duty of loyalty to the company, Cred entrusted Defendant to organize and operate Cred Capital as a subsidiary to Cred.    While Cred understood Cred Capital was to have differing legal and regulatory responsibilities, since it would operate as Cred's asset manager and securitization provider, Cred still understood Cred Capital to be, and operate as, its subsidiary.    Cred communicated its requirements for the creation and operation of Cred Capital to Defendant on multiple occasions.

54.     Defendant nevertheless knowingly acted against Cred's interests in connection with the organization and operation of Cred Capital.    Instead, Defendant acted in his own interests in attempting to take over Cred Capital, and by transferring Cred Capital's assets to accounts that are not in Plaintiffs' control or the control of Plaintiffs' asset managers or custodians.    Upon information and belief, Cred alleges that Defendant transferred these assets to accounts that are owned by him or in his control.

55.     Cred did not give informed consent, or any consent whatsoever, to Defendant's conduct.    Cred was also harmed as a direct and proximate result of Cred's breach of his fiduciary duties and duty of loyalty owed to the company.    On information and belief, Cred allege that they have been damaged in an amount that exceeds well over $2 million.    Not only were Plaintiffs completely deprived of over $2 million dollars' worth of Digital Assets, they are still making interest payments on the loan associated with these Digital Assets, and have suffered opportunity costs with their inability to leverage the Digital Assets as part of their overall investment plan and incurred costs associated with moving alternative assets to support Cred's ongoing operations due to their loss of these Digital Assets, which are causing ongoing harm and damages to Cred.    Cred is therefore entitled to recover damages from Defendant for its share of said losses.

56.     Based on the foregoing acts and conduct, Defendant has acted towards Cred with a conscious disregard of its rights, with the intent to defraud, vex, injure, and annoy Cred so as to constitute oppression, fraud, or malice justifying an award of punitive and exemplary damages in an amount sufficient to punish and set an example of Defendant.

1

## PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

2          WHEREFORE, Plaintiffs, and each of them, demand a jury trial and pray for judgment

3    against Defendant as follows:

4          1.       For a temporary restraining order, preliminary injunction, and permanent injunction

5    freezing the Digital Assets and thereafter requiring Defendant to cease and desist from his breaches

6    of fiduciary duties, and preventing Defendant from withdrawing, removing, assigning, transferring,

7    pledging, encumbering, disbursing, dissipating, converting, selling, liquidating, or otherwise

8    disposing any Plaintiffs' property under his control, including the Digital Assets referred to herein;

9          2.       For a declaration that Defendant is not a director or officer of Cred Capital, that his

10   issuance of voting securities to a third-party investor is null and void, that his transfers of Plaintiffs'

11   assets were unlawful, and that Cred is the controlling, voting shareholder of Cred Capital;

12         3.       For an award of compensatory damages in an amount to be proven at trial;

13         4.       For their First and Fifth Causes of Actions, an award of punitive damages;

14         5.       For their Third and Fourth Causes of Action, an award of attorneys' fees; and

15         6.       Such other and further relief as this Court deems to be just and proper.

16

17   DATED:  July 15, 2020                          PAUL HASTINGS LLP

18

19                                                         *D. Scott Carlton*

20                                                 By:  D. SCOTT CARLTON

21

22                                                 Attorneys for Plaintiffs
                                                   Cred Inc. (f/k/a Cred LLC) and Cred
23                                                 Capital, Inc.

24

25

26

27

28

## VERIFICATION

### FORM No. 2

**Verification of Pleading (Code Civ. Proc., § 446)**
**Declaration under Penalty of Perjury Form (Code Civ. Proc., §§ 446, 2015.5)**

by Party

CASE TITLE   Cred, LLC v. James Alexander

I, Daniel Brian Schatt , declare:
(Name)

I am the CEO of Cred, LLC and a Director of Cred Capital, Inc. in the above-entitled matter.

I have read the foregoing
(pleading, e.g., complaint) and know the contents thereof.

The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true.

Executed on July 15 , 20 20 at San Mateo County, California.

I declare (or certify) under penalty of perjury that the foregoing is true and correct.

(Signature of Party)