**EXHIBIT F**

**Alexander Response to Interrogatories**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CRED INC., *et al.*, | Case No. 20-12836 (JTD) |
| Debtors.[1] | Jointly Administered |
| | Adv. Proc. No: 20-51006 |
| CRED INC., CRED CAPITAL, INC., and CRED (US) LLC, | |
| Plaintiffs, | |
| v. | |
| JAMES ALEXANDER | |
| Defendant. | |

**JAMES ALEXANDER'S RESPONSES AND OBJECTIONS TO THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS' INTERROGATORIES**
**AND DEMANDS FOR PRODUCTION OF DOCUMENTS – PART I**

James Alexander ("Alexander") hereby provides these objections and responses to Cred

Inc.'s, et al., ("Debtors") Interrogatories and Requests for Production of Documents.

Alexander's responses indicating that documents will or will not be produced does not

necessarily indicate that any such documents exist, but merely that such documents will be

produced to the extent they do exist and are within Alexander's possession, custody, and control.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each debtor's tax
    identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799),
    Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC
    (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

### GENERAL OBJECTIONS

Alexander makes the following General Objections to Debtors' Interrogatories and Requests for Production of Documents.

1.     Alexander objects to the location of the document production to the extent that the location of such document production is not mutually agreeable and is not coordinated as between Debtors and Alexander.

2.     Alexander objects to the dates for which the document production has been noticed to the extent that it is not mutually agreeable and is not coordinated as between Debtors and Alexander.

3.     Alexander objects to the Interrogatories and Requests for Production as seeking information that is protected from discovery by the attorney-client privilege or the work product doctrine, or that is otherwise immune or protected from discovery.   Inadvertent disclosure of such information shall not constitute a waiver of any privilege or other basis for objecting to discovery, nor shall it constitute a waiver of the right of Alexander to object to the use of, and/or seek the return of, any such information.

4.     Alexander objects to the Interrogatories and Requests for Production to the extent they seek information or documents that are neither relevant to any claim or defense of any party in the underlying action or the subject matter of the underlying action, nor reasonably calculated to result in the discovery of admissible evidence.

5.     Alexander objects to the Interrogatories and Requests for Production to the extent they seek information or documents that contain trade secrets or any other proprietary information of Alexander or other parties.  No such information can be produced by Alexander before the confidentiality of the documents is adequately protected.

6.      Alexander objects to the Interrogatories and Requests for Production to the extent that they request that Alexander provide information or documents that do not exist or are not within Alexander's present possession, custody, or control.

7.      Alexander objects to the Interrogatories and Requests for Production to the extent that they request information and/or documents already in the possession, custody, or control of Debtors. Documents responsive to many of the Requests for Production would be stored on the company's Google infrastructure which Alexander cannot access to produce.

8.      Alexander objects to the Requests for Production to the extent they would require Alexander to create any document or to produce documents which never were or no longer are in Alexander's possession, custody, or control on the grounds such disclosure is not required by the Federal Rules of Civil Procedure.

9.      Alexander provides the responses below without conceding the relevance or materiality of the subject matter of any answer or response, and without prejudice to its right to object to further discovery, or to object to the admissibility of any additional proof on the subject matter of any answer or response at the time of hearing or trial.

10.      Alexander objects to the definitions of "DOCUMENT" or "DOCUMENTS" to the extent they seek to broaden the scope of discovery beyond that provided for in Federal Rule of Civil Procedure 34(a).

11.      Alexander objects to the definitions of "COMMUNICATION" or "COMMUNICATIONS" to the extent they seek to broaden the scope of discovery beyond that provided for in Federal Rule of Civil Procedure 34(a).

12.     The foregoing General Objections are incorporated by reference into each and every specific response that follows, as if they had been expressly set forth therein.   Alexander's responses are made without waiving any of these General Objections.

Subject to and without waiving the foregoing General Objections (hereinafter, collectively referred to as "General Objections"), Alexander responds as follows:

## INTERROGATORIES

## INTERROGATORY NO. 1:

State Your full legal name, and any alias or aliases You have used.

## RESPONSE TO INTERROGATORY NO. 1:

James Alexander

## INTERROGATORY NO. 2:

Identify all persons with knowledge or information relevant to the June 24, 2020 transfer of Cryptocurrency from Cred to You, and the subsequent disposition of those assets. For each such person identified, provide a description of their responsive knowledge or information.

## RESPONSE TO INTERROGATORY NO. 2:

Alexander identifies the following persons with relevant knowledge or information:

Daniyal Inamullah, James Alexander and Chris Spadafora.   The disposition of those assets are

detailed in the file called "ledgerlive-operations-2021.02.07.csv".

## INTERROGATORY NO. 3:

Identify all persons with knowledge or information concerning Your transactions of Bitcoin, Ether, USDC, or any other cryptocurrency, from June 2020 to present. For each such person identified, provide a description of their responsive knowledge or information.

## RESPONSE TO INTERROGATORY NO. 3:

Alexander identifies the following persons with knowledge or information concerning

cryptocurrency transactions: Daniyal Inamullah, Chris Spadafora, John Sarson.   With each of

these persons, Alexander engaged in general discussions regarding a variety cryptocurrency

transactions.

## INTERROGATORY NO. 4:

Identify all cryptocurrency in Your possession, custody, or control, including its present location
and estimated value as of February 6, 2020.

## RESPONSE TO INTERROGATORY NO. 4:

Alexander has already provided this information.    Specifically, the information can be

found in the previously provided Coinbase account statements and "ledgerlive-operations-

2021.02.07.csv".    In addition, there are IDLE, ETH, USDC and COMP assets with a current

market value of approximately $90,676 held in https://idle.finance/#/ platform.    Lastly, the

technical issues associated with transferring these assets are under investigation, per a February

5, 2021 call with cryptocurrency consultants.    Once those assets are available, they will be

transferred to the Debtor.


## INTERROGATORY NO. 5:

Identify each Cryptocurrency Exchange account You hold, or have held from January 1, 2020 to
the present, and the current status of that account.

## RESPONSE TO INTERROGATORY NO. 5:

Alexander has already provided this information.    Specifically, this information can be

found in the previously provided Coinbase account statements.    One Coinbase account

(customer: james@levelcapital.io) was closed in order to sweep the assets to the Hardware

Wallet.    Alexander plans to close the other account (customer: alexander.james@gmail.com)

and sweep the remaining assets with an approximate market value of $3,439.55 comprised of

ETH and USDC to the Hardware Wallet.   These proceeds will be transferred to the Debtor as soon as possible.

## INTERROGATORY NO. 6:

Identify each Digital Wallet You hold, or have held from January 1, 2020 to the present, and the current status of that account.

## RESPONSE TO INTERROGATORY NO. 6:

Alexander has already provided this information.   Specifically, this information can be found in the previously provided Coinbase statements and file called "ledgerlive-operations-2021.02.07.csv".

## INTERROGATORY NO. 7:

Explain the June 24, 2020 transactions. The transaction IDs are set forth in the footnote below.[2]   For each of the June 24, 2020 transactions, identify the (a) sender; (b) recipient; (c) where the proceeds of the transaction are currently located; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

## RESPONSE TO INTERROGATORY NO. 7:

Alexander is without sufficient information to identify the transactions and provide a response to this interrogatory at this time.

## INTERROGATORY NO. 8:

Identify all cryptocurrency transactions that were executed using proceeds of the June 24, 2020 transactions referenced in Interrogatory No. 7.

## RESPONSE TO INTERROGATORY NO. 8:

---

[2]  June 24, 2020 Transaction ID 1: 46336█████████████████████████████
    June 24, 2020 Transaction ID 2:  2329█████████████████████████████████
    June 24, 2020 Transaction ID 3:  2329████████████████████████████████
    June 24, 2020 Transaction ID 4: 0xf22████████████████████████████████

Alexander has already provided this information.   Specifically, this information can be found in the previously provided Coinbase statements and file called "ledgerlive-operations-2021.02.07.csv".

**INTERROGATORY NO. 9:**

Identify all cryptocurrency transactions that You executed from June 24, 2020 to the present.

**RESPONSE TO INTERROGATORY NO. 9:**

Alexander has already provided this information.   Specifically, this information can be found in the previously provided Coinbase statements and file called "ledgerlive-operations-2021.02.07.csv".

**INTERROGATORY NO. 10:**

Explain the July 1, 2020 transactions. The transaction IDs are set forth in the footnote below.[3]
For each of the July 1, 2020 transactions, identify the (a) sender; (b)recipient; (c) where the proceeds of the transaction are currently located; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 10:**

Alexander is without sufficient information to identify the transactions and provide a response to this interrogatory at this time.

**INTERROGATORY NO. 11:**

Explain the July 16, 2020 transactions. The transaction IDs are set forth in the footnote below.[4]
For the July 16, 2020 transactions, identify the (a) sender; (b) recipient; (c) where the proceeds of the transaction are currently located; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 11:**

---

[3] July 1, 2020 Transaction ID 1: 43f3█████████████████████████████████████; July 1, 2020 Transaction ID 2: f809a█████████████████████████████

[4] July 16, 2020 Transaction ID 1: 00843███████████████████████████████████

Alexander is without sufficient information to identify the transactions and provide a

response to this interrogatory at this time.

## INTERROGATORY NO. 12:

Explain the January 16, 2021 transaction. The transaction ID is set forth in the footnote below.[5]
For the January 16, 2020 transaction, identify the (a) sender; (b) recipient; (c) where the proceeds
of the transaction are currently located; (f) if the proceeds of the transaction were spent, how
they were spent; and (g) all communications related to this transaction.

## RESPONSE TO INTERROGATORY NO. 12:

Alexander is without sufficient information to identify the transactions and provide a

response to this interrogatory at this time.

## INTERROGATORY NO. 13:

Explain the January 17, 2020 transaction. The transaction ID is set forth in the footnote below.[6]
For the January 17, 2020 transaction, identify the (a) sender; (b) recipient; (c) where the proceeds
of the transaction are currently located; (f) if the proceeds of the transaction were spent, how
they were spent; and (g) all communications related to this transaction.

## RESPONSE TO INTERROGATORY NO. 13:

Alexander is without sufficient information to identify the transactions and provide a

response to this interrogatory at this time.

## INTERROGATORY NO. 14:

Explain each transaction involving Ethereum and ERC-20 compliant tokens. The transaction IDs
related to these transactions is set forth in the footnote below.[7]  Identify the (a) sender; (b)



[5]  January 16, 2020 Transaction ID 1: 08b98

[6]  January 17, 2020 Transaction ID 1: 5febc

[7]  ETH Transaction ID 1: 0x58a
ETH Transaction ID 2: 0xe6c
ETH Transaction ID 3: 0x873
ETH Transaction ID 4: 0x3f2
ETH Transaction ID 5: 0x9a0
ETH Transaction ID 6: 0x6ba
ETH Transaction ID 7: 0x654

recipient; (c) where the proceeds of the transaction are currently located; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 14:**

Alexander is without sufficient information to identify the transactions and provide a

response to this interrogatory at this time.

**INTERROGATORY NO. 15:**

Explain each transaction You executed on July 17, 2020, which was the day of the hearing in the California Action. Identify the (a) sender; (b) recipient; (c) where the proceeds of the transaction are currently located; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 15:**

Based on the transaction log, there is only a July 16, 2020 transaction.   With regard to

that transaction, Alexander sold 65 BTC to provide working capital for Cred Capital.   Alexander

transferred the BTC from Hardware Wallet to Coinbase, where the BTC were sold for U.S.

dollars and the proceeds were transferred to Alexander's JPMorgan Chase account and

subsequently into a dedicated Wells Fargo account.   There remains a balance of these assets in

the JPMorgan Chase account and these assets, along with Wells Fargo dedicated account, will be

transferred as soon as possible to Debtor.

**INTERROGATORY NO. 16:**

Identify every transaction or expense that You claim was a business expense for Cred, Inc. or Cred Capital, including:
  a.    The purpose of the business expense
  b.    The parties involved in the service rendered to Cred, Inc. or Cred Capital
  c.    The amount spent on each business expense.

**RESPONSE TO INTERROGATORY NO. 16:**

--------------------

Alexander has already provided this information.   Specifically, this information can be found in the monthly bank statements for the dedicated Wells Fargo account.   Given the large number of transactions, it would require significantly more time to review each line item and provide additional detail.

## INTERROGATORY NO. 17:

Identify every instance where You used the proceeds of Cred Cryptocurrency for personal use or personal expenses, including:
      a.     The purpose of the personal expense
      b.     The amount spent on each expense
      c.

## RESPONSE TO INTERROGATORY NO. 17:

Alexander considers all expenses to be business expenses related to the proceeds of Cred Capital Cryptocurrency.   A separate Wells Fargo account was established to manage the proceeds of Cred Capital assets.   Statements for this account ending 9285 have already been provided.

## INTERROGATORY NO. 18:

Explain the entirety of Your involvement in the Quantacoin Transactions, including involvement in Cred's decision making to enter the Quantacoin Transactions, and any votes you made for the Quantacoin Transactions.

## RESPONSE TO INTERROGATORY NO. 18:

Alexander was a member of Cred's Investment Committee ("IC") during 1Q20 when a decision was made to allocate capital to third-party managers.   A consultant was hired, and prospective managers were sourced and screened.   Mr. Schatt served as a reference for Quantacoin following a meeting with the manager in New York at a CoinDesk cryptocurrency conference around May of 2019.   Along with several other managers, allocations were made in January-February 2020.   Based on Alexander's knowledge and understanding, additional allocations were made to Quantacoin after he left Cred to become President of Cred Capital.

10

Mr. Schatt was ultimately in charge of all IC decisions.    Mr. Schatt held—and regularly

exercised—unilateral control over the IC decisions.    These decisions include, but are not limited

to, setting Earn rates or, in this case, selecting a manager solely based on the highest promised

returns, ignoring the potential risks.    The minutes of the IC committee meeting are not in

Alexander's custody or control.

By way of further answer, Mr. Schatt chose the Quantacoin investment.    On a phone call

on or about February 3, 2020, he demanded higher returns be produced, despite the many

warnings from the IC members about the risk of stretching for unrealistic returns.    Quantacoin

was offering among the highest rates of managers the IC was screening.    Based upon

Alexander's understanding, a fraud of some sort occurred related to this manager.    However,

these events unfolded after his departure from Cred.

**INTERROGATORY NO. 19:**

Who actually received the Quantacoin Transactions?

**RESPONSE TO INTERROGATORY NO. 19:**

Transactions for all investments were processed by an operations team, the composition

of which changed after Alexander's departure from Cred.    Alexander lacks the information or

knowledge with regard to who specifically sent the various Quantacoin transactions or where

they sent the transactions.    Based upon Alexander's understanding, Heidi Ng, Daniyal

Inamullah and some compliance and accounting personnel of Cred processed these transactions.

Mr. Schatt signed the subscription documents that gave the operations team the authority to

make these transactions.

**INTERROGATORY NO. 20:**

Did You receive any proceeds from the Quantacoin Transactions?

**RESPONSE TO INTERROGATORY NO. 20:**

No.

**INTERROGATORY NO. 21:**

Explain why You closed a Coinbase account on February 5, 2021. Also Identify the closed Coinbase account (including providing the digital address, username, password, and all emails You received by Coinbase concerning this account) and state whether that Coinbase account received any proceeds, directly or indirectly, from the January 16, 2021 and/or January 17, 2021 transactions, or any other cryptocurrency or funds traceable to Cred.

**RESPONSE TO INTERROGATORY NO. 21:**

This account was closed in order to sweep remaining assets into the Hardware Wallet.

*See* Response to Interrogatory 5.

**INTERROGATORY NO. 22:**

Provide the seed words for Your Ledger Account.[8]

**RESPONSE TO INTERROGATORY NO. 22:**

Alexander provides the following words: immune, obtain, beyond, size, exact, attend, festival, exit, camp, diary, nose, jewel, total, magic, learn, organ, rice, shell, dice, gasp, able, slab, amused, Scene.

**INTERROGATORY NO. 23:**

Identify every physical device which holds digital wallets.

**RESPONSE TO INTERROGATORY NO. 23:**

Alexander identifies the following device: Ledger Wallet.

**INTERROGATORY NO. 24:**

---

[8] Seed words are a series of words that are used to open a Ledger Account. Users are directed to write those words down for safekeeping. During the recorded zoom conference on February 5, 2021, Alexander admitted what seed words were.

Identify all Accounts that You have access to at any cryptocurrency exchange, digital wallet
provider, or any other service in which transacting and storing cryptocurrency is possible.

**RESPONSE TO INTERROGATORY NO. 24:**

Alexander identifies the following accounts: Coinbase and Ledger.   These accounts have

been provided.   Alexander also identifies a Bittrex account holding LBA and 1 BTC but he does

not have access to the Authenticator app.   In order to access the personal assets, he will need to

recover the Bittrex account.   Based upon Alexander's belief, Coinbase and Ledger offer

additional services through third parties that enable crypto transactions.   All those transactions

are reflected within the Hardware Wallet, which is required to make such purchases because you

need to be logged into Ledger.   Alexander also has DeFi accounts with Idle and Zapper that are

linked to the Hardware Wallet.   Alexander notes that, as part of his ongoing role in the

cryptocurrency industry, he often investigates new exchanges or platforms.   As a result, he may

have signed up for various platforms over the years but to the best of his recollection, none are

active nor contain any assets.


**INTERROGATORY NO. 25:**

Identify all Accounts that You have had access to since January 1, 2020 (irrespective of whether
You currently have access) at cryptocurrency exchanges, cryptocurrency custodians, and any
other service in which transacting and/or storing cryptocurrency is possible.

**RESPONSE TO INTERROGATORY NO. 25:**

*See* Response to Interrogatory 24.

**INTERROGATORY NO. 26:**

Identify all Accounts that You closed at cryptocurrency exchanges, cryptocurrency custodians,

and any other service in which transacting and/or storing cryptocurrency is possible.

**RESPONSE TO INTERROGATORY NO. 26:**

Alexander closed one account at Coinbase.    *See* Response to Interrogatory 5.

## INTERROGATORY NO. 27:

Identify all DeFi transactions that You entered into, including all DAI transactions.[9]

## RESPONSE TO INTERROGATORY NO. 27:

Alexander has already provided this information.    Specifically, the information is contained "ledgerlive-operations-2021.02.07".    Alexander will need technical assistance to unlock the Idle platform assets.    Based on Alexander's knowledge, cryptocurrency consultants are currently working on how to complete this transaction.    Alexander is willing to provide the hardware wallet or to work with Debtors' consultants to complete this transaction.    His understanding is that the current issues are: 1) an error linking the Hardware Wallet to the Idle platform preventing access to USDC 56,277.52; and 2) an error with regard to where to receive the reward tokens, notably COMP and IDLE tokens.

## INTERROGATORY NO. 28:

Identify all cryptocurrency or fiat transactions between Yourself and Daniyal Inamullah.

## RESPONSE TO INTERROGATORY NO. 28:

225 BTC and approximately 200,000 stable coin were transferred to Alexander by Inamullah.

## INTERROGATORY NO. 29:

Identify all transactions that You executed with Sarson Funds.

## RESPONSE TO INTERROGATORY NO. 29:

---

[9] As discussed during the recorded zoom conference on February 5, 2021, You are currently in possession of Cred assets that are subject to certain DeFi transactions. You have claimed that You are unable to provide Cred with that cryptocurrency because this cryptocurrency is subject to DeFi transactions and smart contracts.

Alexander has never directly executed a transaction with Sarson Funds.    That relationship was controlled by Daniyal Inamullah.

**INTERROGATORY NO. 30:**

Explain Your current relationship with Sarson Funds.

**RESPONSE TO INTERROGATORY NO. 30:**

On or about January 15, 2020, Alexander received a proposal related to Sarson Funds soliciting an investment in Sarson Funds options strategy.    The proposal was in the context of an eventual dismissal of Cred Capital from bankruptcy that would have allowed for an allocation of Cred Capital balance sheet reserves to an actively managed strategy.

**INTERROGATORY NO. 31:**

Explain Your relationship with Christopher Giovanni Silvio Spadafora and the website alwayshodl.com.

**RESPONSE TO INTERROGATORY NO. 31:**

Christopher Giovanni Silvio Spadafora served as a consultant to Cred Capital during 1-2Q20.    He and Alexander worked together during that time period sourcing and screening Bitcoin mining firms that could benefit from Cred Capital's structured lending product.

**INTERROGATORY NO. 32:**

Identify all transactions with Mr. Spadafor and alwayshodl.com.

**RESPONSE TO INTERROGATORY NO. 32:**

Christopher Giovanni Silvio Spadafora was the initial recipient of Cred Capital assets as he was a consultant to Cred Capital at the time.    He received these assets from Daniyal Inamullah at Cred Capital.    These assets, circa 225 BTC and 200,000 stable coin, were subsequently transferred to Alexander's Ledger Hardware device.

**INTERROGATORY NO. 33:**

Identify the existence, custodian, location and general description of all documents relevant to the subject matter of the Action, including Your cryptocurrency trading history, any relevant physical evidence, or information of a similar nature.

**RESPONSE TO INTERROGATORY NO. 33:**

Alexander is without sufficient information to identify this information and provide a

response to this interrogatory at this time.

**INTERROGATORY NO. 34:**

Identify all persons with knowledge or information concerning the corporate formation of Cred Capital. For each such person identified, provide a description of their responsive knowledge or information.

**RESPONSE TO INTERROGATORY NO. 34:**

Alexander has already provided this information.   The information is provided in the

various legal filings related to Cred Capital.

**INTERROGATORY NO. 35:**

Identify all persons with knowledge or information concerning policies and procedures at Cred, Inc., related to the authorization and transfer of cryptocurrency. For each such person identified, provide a description of their responsive knowledge or information.

**RESPONSE TO INTERROGATORY NO. 35:**

Alexander is without sufficient information to identify this information and provide a

response to this interrogatory at this time.   Indeed, the composition of the operations team

changed over time.

**INTERROGATORY NO. 36:**

Itemize each cryptocurrency trade You have executed between June 24, 2020 and the present.

**RESPONSE TO INTERROGATORY NO. 36:**

Alexander has already provided this information.   Specifically, this information can be found in the previously provided Coinbase account statements and "ledgerlive-operations-2021.02.07.csv".

**INTERROGATORY NO. 37:**

Identify all natural persons that have access to the Wells Fargo Account.

**RESPONSE TO INTERROGATORY NO. 37:**

James Alexander

**INTERROGATORY NO. 38:**

What is Alexander J Custom Management?

**RESPONSE TO INTERROGATORY NO. 38:**

Based on Alexander's information and knowledge, Alexander J Custom Management is the brand Wells Fargo uses for a current checking account.

**INTERROGATORY NO. 39:**

Explain Your relationship with Alexander J Custom Management.

**RESPONSE TO INTERROGATORY NO. 39:**

Alexander J Custom Management is Alexander's current checking account at Wells Fargo.

**INTERROGATORY NO. 40:**

Identify the owners, equity holders, directors, officers, and beneficial owners of Alexander J Custom Management.

**RESPONSE TO INTERROGATORY NO. 40:**

James Alexander

**INTERROGATORY NO. 41:**

What is Custom Management?

**RESPONSE TO INTERROGATORY NO. 41:**

Based on Alexander's information and knowledge, Custom Management is the brand

Wells Fargo uses for a current checking account.   *See* Response to Interrogatory 38

**INTERROGATORY NO. 42:**

Explain Your relationship with Custom Management.

**RESPONSE TO INTERROGATORY NO. 42:**

Custom Management is Alexander's current checking account at Wells Fargo.   *See*

Response to Interrogatory 39.

**INTERROGATORY NO. 43:**

Identify the owners, equity holders, directors, officers, and beneficial owners of Custom
Management.

**RESPONSE TO INTERROGATORY NO. 43:**

James Alexander.   *See* Response to Interrogatory 40

**INTERROGATORY NO. 44:**

Who is Meghan Gardler?

**RESPONSE TO INTERROGATORY NO. 44:**

Meghan Gardler is the former Marketing executive for Cred.   She has also served as a

marketing consultant to Consultant to Cred Capital.   Alexander is not aware of her formal title.

**INTERROGATORY NO. 45:**

Explain Your relationship with Meghan Gardler.

**RESPONSE TO INTERROGATORY NO. 45:**

Meghan Gardler and Alexander worked as colleagues together at Cred and she has

consulted for Alexander at Cred Capital.

**INTERROGATORY NO. 46:**

What is Bird Marella?

**RESPONSE TO INTERROGATORY NO. 46:**

Bird Marella is a Law Firm.

**INTERROGATORY NO. 47:**

Explain Your relationship with Bird Marella.

**RESPONSE TO INTERROGATORY NO. 47:**

The information requested in Interrogatory No. 47 is protected from discovery by the

attorney-client privilege or the work product doctrine, or is otherwise immune or protected from

discovery.

**INTERROGATORY NO. 48:**

Identify the owners, equity holders, directors, officers, and beneficial owners of Bird Marella.

**RESPONSE TO INTERROGATORY NO. 48:**

Alexander is without sufficient information to identify this information and provide a

response to this interrogatory at this time.

**INTERROGATORY NO. 49:**

Explain the December 31, 2021 $39,998.73 transaction in the Wells Fargo Account. Identify the
(a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the
transaction; (e) where the proceeds of the transaction are currently held; (f) if the proceeds of the
transaction were spent, how they were spent; and (g) all communications related to this
transaction.

**RESPONSE TO INTERROGATORY NO. 49:**

Based on Alexander's knowledge, the transaction appears to involve proceeds from

Coinbase used for Cred Capital working capital.

**INTERROGATORY NO. 50:**

Explain the December 31, 2021 $6,000 transaction in the Wells Fargo Account. Identify the (a)
the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction;

(e) where the proceeds of the transaction are currently held; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 50:**

Based on Alexander's knowledge, the transaction involved a bi-monthly consulting fee to

Meghan Gardler for marketing services to Cred Capital.   The transaction was executed by

Alexander as the individual in sole control of the account.

**INTERROGATORY NO. 51:**

Explain the December 31, 2021 $6,000 transaction in the Wells Fargo Account to Meghan Gardler. Identify the (a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction; (e) where the proceeds of the transaction are currently held; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 51:**

Based on Alexander's knowledge, the transaction involved a bi-monthly consulting fee to

Meghan Gardler for marketing services to Cred Capital.   The transaction was executed by

Alexander as the individual in sole control of the account.   *See* Response to Interrogatory 50.


**INTERROGATORY NO. 52:**

Explain the December 30, 2021 $10,000 transaction in the Wells Fargo Account. Identify the (a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction; (e) where the proceeds of the transaction are currently held; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 52:**

Based on Alexander's knowledge, the transaction reflected Alexander's December salary.

**INTERROGATORY NO. 53:**

Explain the December 8, 2021 $13,813.87 transaction in the Wells Fargo Account to Bird Marella. Identify the (a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction; (e) where the proceeds of the transaction are currently held; (f) if the

proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 53:**

The information requested in Interrogatory No. 53 is protected from discovery by the

attorney-client privilege or the work product doctrine, or is otherwise immune or protected from

discovery.

**INTERROGATORY NO. 54:**

Explain the December 4, 2020 $50,000 transaction in the Wells Fargo Account from Coinbase. Identify the (a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction; (e) where the proceeds of the transaction are currently held; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 54:**

Based on Alexander's knowledge, the Coinbase transactions in the Wells Fargo account

are related to funding the working capital needs of Cred Capital.

**INTERROGATORY NO. 55:**

Explain the November 2020 cash withdrawals in the Wells Fargo Account, including November 12, 2020 ($6,010), November 6, 2020 ($6,400), November 13, 2020 ($6,000), November 13, 2020 ($5,000), and November 27, 2020 $10,000. Identify the (a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction; (e) where the proceeds of the transaction are currently held; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 55:**

Based on Alexander's knowledge, the withdrawals are transfers or counter-checks for

payment to consultants or service providers with Wells Fargo accounts.   In other words, to avoid

wire transfer fees where possible, a counter-check is drawn and deposited in the consultant or

service provider's account.

**INTERROGATORY NO. 56:**

Explain the November 27, 2020 $10,000 transaction in the Wells Fargo Account to "Custom Management." Identify the (a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction; (e) where the proceeds of the transaction are currently held; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

## RESPONSE TO INTERROGATORY NO. 56:

Alexander has already provided this information.   Specifically, this information can be found in the previously provided statement with a notation.   The transaction reflects his bi-monthly salary payment.

## INTERROGATORY NO. 57:

Explain the October 9, 2020 $46,851.05 transaction in the Wells Fargo Account to Bird Marella. Identify the (a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction; (e) where the proceeds of the transaction are currently held; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

## RESPONSE TO INTERROGATORY NO. 57:

The information requested in Interrogatory No. 57 is protected from discovery by the attorney-client privilege or the work product doctrine, or is otherwise immune or protected from discovery.

## INTERROGATORY NO. 58:

Explain the October 2020 transactions in the Wells Fargo Account to "Custom Management," including October 9, 2020 ($2,000), October 15, 2020 ($10,000),
October 15, 2020 ($3,000), October 20, 2020 ($3,862.95), and October 30, 2020 ($10,000). Identify the (a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction; (e) where the proceeds of the transaction are currently held; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

## RESPONSE TO INTERROGATORY NO. 58:

Alexander has already provided this information.   Specifically, this information can be found in the previously provided statement with notations.

**INTERROGATORY NO. 59:**

Explain the September 9, 2020 $300,000 transaction in the Wells Fargo Account. Identify the (a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction; (e) where the proceeds of the transaction are currently held; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 59:**

Based on Alexander's knowledge, the transaction reflects proceeds from the July 16 sale of Cred Capital BTC assets to fund working capital for Cred Capital.

**INTERROGATORY NO. 60:**

Explain the September 2020 transactions in the Wells Fargo Account to Custom Management, including September 2, 2020 ($1,605.14), September 8, 2020 ($3,000), September 30, 2020 ($10,000), and September 30, 2020 ($6,000). Identify the (a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction; (e) where the proceeds of the transaction are currently held; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 60:**

Alexander has already provided this information.   Specifically, this information can be found in the previously provided statement with notations.

**INTERROGATORY NO. 61:**

Explain the September 2020 transactions in the Wells Fargo Account to Coinbase.com, including September 14, 2020 ($24,435), and September 11, 2020 ($25,000). Identify the (a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction; (e) where the proceeds of the transaction are currently held; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 61:**

Based on Alexander's knowledge, the transactions reflect the transfer of assets back to Coinbase.   Alexander has already provided this information.   Specifically, this information can be found in the previously provided statement with notations.

**INTERROGATORY NO. 62:**

Explain the September 30, 2020 cash withdrawal from the Wells Fargo Account. Identify the (a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction; (e) where the proceeds of the transaction are currently held; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 62:**

Alexander is without sufficient information to identify this withdrawal and provide a

response to this interrogatory at this time.

**INTERROGATORY NO. 63:**

Explain the August 2020 transactions in the Wells Fargo Account to Custom Management, including August 20, 2020 ($10,000) and August 31, 2020 ($10,000). Identify the (a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction; (e) where the proceeds of the transaction are currently held; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 63:**

Alexander has already provided this information.   Specifically, this information can be

found in the previously provided statement with notations.

**INTERROGATORY NO. 64:**

Explain the August 12, 2020 $27,000 transaction in the Wells Fargo Account from Custom Management. Identify the (a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction; (e) where the proceeds of the transaction are currently held; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 64:**

Based on Alexander's knowledge, that transaction came from his personal account to the

dedicated account.   He does not recall the accounting for this transaction and is without

sufficient information to provide a response to this interrogatory at this time.

24

**INTERROGATORY NO. 65:**

Explain the August 12, 2020 $19,325 transaction in the Wells Fargo Account to Meghan E Gardler. Identify the (a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction; (e) where the proceeds of the transaction are currently held; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 65:**

Based on Alexander's knowledge, the transaction reflects the payment for one year of

Hubspot CRM services.

**INTERROGATORY NO. 66:**

Explain the August 20, 2020 $12,000 transaction in the Wells Fargo Account from Coinbase. Identify the (a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction; (e) where the proceeds of the transaction are currently held; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 66:**

Alexander has already provided this information.   Specifically, this information can be

found in the previously provided Coinbase statement with notations.

**INTERROGATORY NO. 67:**

Explain the August 26, 2020 $5,000 cash withdrawal from the Wells Fargo Account. Identify the (a) the sender; (b) recipient; (c) reason for the transaction; (d) source of the funds for the transaction; (e) where the proceeds of the transaction are currently held; (f) if the proceeds of the transaction were spent, how they were spent; and (g) all communications related to this transaction.

**RESPONSE TO INTERROGATORY NO. 67:**

Based on Alexander's knowledge, the transaction reflects a payment to consultant or

service provider as counter-check.

## DOCUMENT REQUESTS

**REQUEST NO. 1:**

All Records concerning all cryptocurrency exchanges and digital wallets You own or have access to.

**RESPONSE TO REQUEST NO. 1:**

Alexander has already provided this information.

**REQUEST NO. 2:**

All documents and communications concerning to all cryptocurrency exchanges and digital wallets You own or have access to.

**RESPONSE TO REQUEST NO. 2:**

Alexander has already provided this information.

**REQUEST NO. 3:**

All Records from each cryptocurrency exchange and Digital Wallet identified in Your response to Interrogatories 5 and 6, including account activities, transaction histories, tax documents, account details, transaction confirmation, and any emails confirming transactions.

**RESPONSE TO REQUEST NO. 3:**

Alexander has already provided this information. Specifically, the information can be found in the previously provided Coinbase statements and screen shots and the transaction log for Hardware wallet.

**REQUEST NO. 4:**

All documents, communications, and records concerning the June 24, 2020 transactions, in which Mr. Inamullah sent Bitcoin and USDC to digital addresses You control.

**RESPONSE TO REQUEST NO. 4:**

Alexander is not in possession or control of any responsive documents. Based on his recollection, the communications were via WhatsApp and Alexander does not have any record of the conversation.

**REQUEST NO. 5:**

All documents, communications, and records concerning the disposition of the cryptocurrency transferred to You on June 24, 2020.

**RESPONSE TO REQUEST NO. 5:**

Alexander is not in possession or control of any responsive documents. Based on his recollection, the communications were via WhatsApp and Alexander does not have any record of the conversation. *See* Response to Request No. 4.

**REQUEST NO. 6:**

All documents, communications, and records and information related to the use of the cryptocurrency transferred to You on June 24, 2020.

**RESPONSE TO REQUEST NO. 6:**

Alexander is without sufficient information and thus is unable to provide any additional documents, communications and records due to the vague and broad nature of this request.

**REQUEST NO. 7:**

All documents, communications, and records concerning the July 1, 2020 transaction of 225 BTC from the digital wallet address beginning with "3GGyZ" to a wallet address beginning with "bc1qz."

**RESPONSE TO REQUEST NO. 7:**

Alexander has already provided this information. Specifically, the information can be found in the previously provided Coinbase account records.

**REQUEST NO. 8:**

All documents, communications, and records concerning the use or disposition of BTC from the wallet address beginning with "bx1qz" referenced in the previous Request.

**RESPONSE TO REQUEST NO. 8:**

Alexander is without sufficient information and thus is unable to provide any additional documents, communications and records due to the vague and broad nature of this request.

**REQUEST NO. 9:**

All documents, communications, and records concerning the July 1, 2020 transfer of 10 BTC from the digital wallet address beginning with "3KHSeh," including but not limited to the ultimate use or disposition of those 10 BTC.

**RESPONSE TO REQUEST NO. 9:**

Alexander has already provided this information.  Specifically, the information can be found in the previously provided Coinbase account records.

**REQUEST NO. 10:**

All documents, communications, and records concerning the July 16, 2020 transfer of 65 BTC from the wallet address beginning with "bc1qzz," including but not limited to the ultimate use or disposition of those 65 BTC.

**RESPONSE TO REQUEST NO. 10:**

Alexander has already provided this information.  Specifically, the information can be found in the previously provided Coinbase account records.

**REQUEST NO. 11:**

All documents, communications, and records concerning the January 16, 2021 transfer of 50 BTC from a wallet beginning with "bc1qc," including but not limited to documents demonstrating the ultimate use or disposition of those 50 BTC.

**RESPONSE TO REQUEST NO. 11:**

Alexander has already provided this information.  Specifically, the information can be found in the previously provided Coinbase account records.

**REQUEST NO. 12:**

All documents, communications, and records concerning the January 17, 2021 transfer of 50 BTC from a wallet beginning wtih "bc1qc," including but not limited to the ultimate use or disposition of those 50 BTC.

**RESPONSE TO REQUEST NO. 12:**

Alexander has already provided this information. Specifically, the information can be found in the previously provided Coinbase account records.

**REQUEST NO. 13:**

All invoices for goods or services rendered that You claim to be business expenses for Cred, as listed in response to interrogatory 16.

**RESPONSE TO REQUEST NO. 13:**

Based on the large number of documents requested, Alexander would require significantly more time to provide responsive documents. *See* Response to Interrogatory No. 16.

**REQUEST NO. 14:**

All documents, communications, and records related to the personal expenses listed in response to interrogatory 17.

**RESPONSE TO REQUEST NO. 14:**

Alexander considers all the expenses in the dedicated Wells Fargo account to be business expenses related to Cred Capital and thus is not in the possession of any responsive documents.

**REQUEST NO. 15:**

All documents, communications, and records concerning the Wells Fargo Account.

**RESPONSE TO REQUEST NO. 15:**

Alexander has already provided this information. Specifically, the information can be found in the previously provided Wells Fargo Account statements.

**REQUEST NO. 16:**

All documents, communications, and records concerning the Account that deposited $100,000 into the Wells Fargo Account on August 19, 2020, which is identified as follows: "WT Fed#07148 Jpmc Internal Acco /Org=James Alexander Srf# ███████ 32Es Trn# ██████ 6017 Rfb# Os1 of 20/08/19."

**RESPONSE TO REQUEST NO. 16:**

Alexander has already provided this information.  Specifically, the information can be found in the previously provided JPMorgan Chase account statements

**REQUEST NO. 17:**

All agreements, contracts, or documents reflecting the relationship between Alexander and the following persons or entities: (A) Alexander J Custom Management; (B) Custom Management; (C) Meghan Gardler; and (D) Bird Marella

**RESPONSE TO REQUEST NO. 17:**

Based on the large number of documents requested as well as the broad, vague nature of the request, Alexander lacks sufficient information to respond to this request at this time. Alexander would require significantly more time to provide responsive documents.   In addition, the documents requested are protected from discovery by the attorney-client privilege or the work product doctrine, or is otherwise immune or protected from discovery.

**REQUEST NO. 18:**

All emails concerning the Company.

**RESPONSE TO REQUEST NO. 18:**

Based on the large number of documents requested as well as the broad, vague nature of the request, Alexander lacks sufficient information to respond to this request at this time. Alexander would require significantly more time to provide responsive documents.

**REQUEST NO. 19:**

All contracts or agreements of any kind with the Company.

**RESPONSE TO REQUEST NO. 19:**

Based on the large number of documents requested as well as the broad, vague nature of the request, Alexander lacks sufficient information to respond to this request at this time. Alexander would require significantly more time to provide responsive documents.

**REQUEST NO. 20:**

All documents and communications concerning the Company.

**RESPONSE TO REQUEST NO. 20:**

Based on the large number of documents requested as well as the broad, vague nature of the request, Alexander lacks sufficient information to respond to this request at this time. Alexander would require significantly more time to provide responsive documents.

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

*/s/   Geoffrey G. Grivner*
Geoffrey G. Grivner (#4711)
Mark Pfeiffer (admitted *pro hac vice*)
919 North Market Street, Suite 990
Wilmington, DE 19801
Telephone:   (302) 552-4200
Facsimile:    (302) 552-4295
Email: geoffrey.grivner@bipc.com

*Attorneys for James Alexander*

Dated:   February 8, 2021