**EXHIBIT I**

**Stay Relief Motion**

1 | Gregory R. Jones (Cal. Bar No. 229858)
**McDermott Will & Emery LLP**
2 | 2049 Century Park East, Suite 3200
Los Angeles, California 90067-3206
3 | Telephone: (310) 284-6140
Facsimile: (310) 277-4730
4 | E-mail: gjones@mwe.com

5 | Timothy W. Walsh (NY Bar No. 4911673) (*pro hac vice* pending)
Darren Azman (NY Bar No. 2436152) (*pro hac vice* pending)
6 | **McDermott Will & Emery LLP**
340 Madison Avenue
7 | New York, NY 10173
Telephone: (212) 547-5400
8 | Facsimile: (212) 547-5444

9 | Counsel to the Official Committee of Unsecured Creditors of Cred Inc., *et al.*

10 | Justin Rawlins (Cal. Bar No. 209915)
**PAUL HASTINGS LLP**
11 | 515 South Flower Street Twenty-Fifth Floor
Los Angeles, CA 90071
12 | Telephone: (213) 683-6130
Facsimile: (213) 996-3130
13 |
James T. Grogan (TX Bar No. 24027354) (*pro hac vice* pending)
14 | **PAUL HASTINGS LLP**
600 Travis St., Floor 58
15 | Houston, Texas 77002
Telephone: (212) 318-6000
16 | Facsimile: (212) 319-4090

17 | Counsel to Cred Inc., *et al.*

18 |                    UNITED STATES BANKRUPTCY COURT
19 |                    CENTRAL DISTRICT OF CALIFORNIA
                       SAN FERNANDO VALLEY DIVISION
20 |

| | |
|---|---|
| In re: | Case No. 21-10214-MB |
| | |
| ALEXANDER, JAMES, | Chapter 11 |
| | |
| Debtor. | **CRED INC., *ET AL.* AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CRED INC., *ET AL.*'S NOTICE OF JOINT EMERGENCY OMNIBUS MOTION FOR (I) RELIEF FROM THE AUTOMATIC STAY AND (II) TRANSFER OF VENUE** |
| | |
| | [LBR 2080-1, 9075-1] |

PRELIMINARY STATEMENT .................................................................................. - 2 -
BACKGROUND ........................................................................................................ - 4 -
    A.    Cred's Business and Chapter 11 Bankruptcy ............................................ - 4 -
    E.    Cryptocurrency Tracing Reveals Alexander Transferred Cred
    Cryptocurrency on January 16, 2021 and January 17, 2021 in Violation of the
    California Freeze Orders ............................................................................... - 6 -
    F.    The Motion for TRO and Preliminary Injunction Before the Delaware
    Bankruptcy Court ......................................................................................... - 7 -
    G.    Alexander's Conduct Since Entry of the Delaware Order ......................... - 7 -
    H.    The February 9, 2021 Deposition ............................................................... - 8 -
RELIEF REQUESTED ............................................................................................... - 9 -
BASIS FOR RELIEF ................................................................................................. - 9 -
    A.    The Court Should Lift the Stay to Enforce the Delaware Order Because
    the Debtor is Not Trustworthy and the Chapter 11 Case was Filed in Bad Faith .................. - 9 -
        i.    Alexander Engaged in Significant Improper Conduct Prepetition ................ - 11 -
        ii.    The Timing of the Bankruptcy Filing Demonstrates Bad Faith
        and was Done Solely to Create the Automatic Stay ................................................ - 13 -
    B.    The Automatic Stay Does Not Bar Discovery Against Debtors Related
    to Claims Against Third Parties .................................................................. - 14 -
    C.    If Relief from the Automatic Stay is Granted, the Court Should Waive
    the Stay Imposed by Bankruptcy Rule 4001 .............................................. - 15 -
    D.    The Chapter 11 Case Should be Transferred to the Delaware
    Bankruptcy Court in the Interest of Justice ............................................... - 16 -
CONCLUSION ......................................................................................................... - 21 -

i

**Cases**

*Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 226 (9th Cir. 1989)............................................... - 13 -

*Groner v. Miller (In re Miller)*, 262 B.R. 499, 503-04 (B.A.P. 9th Cir. 2001) ................................ - 15 -

*In re ACI Sunbow, LLC*, 206 B.R. 213, 217 (Bankr. S.D. Cal. 1997) ........................................ - 10 -

*In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986)........................................................ - 10 -

*In re Chu*, 253 B.R. 92, 95 (S.D. Cal. 2000)........................................................... - 11 -

*In re Duvar Apt., Inc.*, 205 B.R. 196, 200 (B.A.P. 9th Cir. 1996) ................................. - 10 -

*In re Ellis*, 60 B.R. 432, 435 (B.A.P. 9th Cir. 1985)........................................... - 10 -

*In re Gould*, 401 B.R. 415, 426 (B.A.P. 9th Cir. 2009)....................................... - 10 -

*In re Little Creek Dev. Co.,* 779 F.2d 1068, 1072-73 (5th Cir. 1986) .................... - 11 -

*In re Manley Toys, Ltd.*, 2018 Bankr. LEXIS 504, at *15 (Bankr. D. N.J. 2018) ................... - 15 -

*In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994)........................................... - 11 -

*In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394-95 (11th Cir. 1988)................... - 11 -

*In re Silicon Valley Innovation Co.*, No. 12-52706-ASW, 2012 WL 3778853, at *4-*5 (Bankr. N.D. Cal. Aug. 30, 2012)..................................................................... - 16 -

*Rocket Electric Co., Ltd. L.A. v. one in All JC Corp.*, 2010 WL 11597857, at *7 (C.D. Cal. April 7, 2010) ......................................................................................... - 20 -

*Sternberger v. Johnston*, 595 F.3d 937, 945 (9th Cir. 2010) ........................... - 13 -

**Statutes**

11 U.S.C. § 362 ............................................................................... - 10 -

**Rules**

F. Rule Bankr. P. 4001(a)(3)............................................................... - 15 -

1" = "1" "DM_US 177067318-8.113270.0011" "" "" DM_US 177067318-8.113270.0011

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE:**

**PLEASE TAKE NOTICE** that Cred Inc. and its affiliated debtors and debtors in possession (collectively, "Cred") and the Official Committee of Unsecured Creditors of Cred Inc., *et al.* (the "Committee" and, together with Cred, the "Movants") submit the attached motion (the "Motion") pursuant to section 362(d)(1) of title 11 of the United States Code, rules 1014 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 2081-1 and 9075-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, and section 1412 of title 28 of the United States Code, for entry of an order: (i) granting Movants relief from the automatic stay to seek enforcement of a temporary restraining order against the above-captioned debtor ("Alexander") entered by the United States Bankruptcy Court for the District of Delaware; (ii) finding that the automatic stay does not apply to the Movants' pursuit of discovery against Alexander or, in the alternative, granting Movants relief from the automatic stay to pursue discovery against Alexander; (iii) waiving the 14-day stay on the relief requested herein pursuant to Bankruptcy Rule 4001(a)(3); (iv) transferring the venue of this chapter 11 case to the United States Bankruptcy Court for the District of Delaware; and (v) granting Movants such other and further relief to which Movants are justly entitled.  The documents and declarations that support the Motion are attached thereto as **Exhibits A-N**.

**CRED INC.,** ***ET AL.*** **AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF**
**CRED INC.,** ***ET AL.*****'S JOINT EMERGENCY OMNIBUS MOTION FOR**
**(I) RELIEF FROM THE AUTOMATIC STAY AND (II) TRANSFER OF VENUE**

Cred Inc. and its affiliated debtors and debtors in possession (collectively, "Cred") and the

Official Committee of Unsecured Creditors of Cred Inc., *et al.* (the "Committee" and, together with

Cred, the "Movants") submit this motion (the "Motion"), pursuant to sections 105 and 362(d)(1) of

title 11 of the United States Code (the "Bankruptcy Code"), rules 1014 and 4001 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 2081-1 and 9075-1 of the Local Bankruptcy

Rules of the United States Bankruptcy Court for the Central District of California (the "Local Rules"),

and section 1412 of title 28 of the United States Code (the "U.S. Code"), for entry of an order (i)

granting Movants relief from the automatic stay to seek enforcement of a temporary restraining order

against the above-captioned debtor ("Alexander") entered by the United States Bankruptcy Court for

the District of Delaware (the "Delaware Bankruptcy Court") in Cred's jointly administered Case No.

20-12836 (the "Delaware Bankruptcy Case");[1] (ii) finding that the automatic stay does not apply to the

Movants' pursuit of discovery against Alexander or, in the alternative, granting Movants relief from

the automatic stay to pursue discovery against Alexander; (iii) waiving the 14-day stay on the relief

requested herein pursuant to Bankruptcy Rule 4001(a)(3); (iv) transferring the venue of Alexander's

chapter 11 case (the "Chapter 11 Case") to the Delaware Bankruptcy Court; and (v) granting Movants

such other and further relief to which Movants are justly entitled. The Movants rely upon the

documents and declarations attached hereto as **Exhibits A-N**. In further support of the Motion, the

Movants respectfully state as follows:

---

[1] Movants request that this Court take judicial notice of the docket (the "Cred Bankruptcy Docket") and all filings of the Delaware Bankruptcy Case. Movants attach certain key filings hereto. Movants also request that the Court take judicial notice of the file-stamped copies of filings in the California Action (defined *infra*), including those that are attached hereto.

# **PRELIMINARY STATEMENT**

1. Alexander absconded with at least 225 Bitcoin (valued today at approximately $10m) from Cred during his employment with Cred, a chapter 11 debtor in a case pending before the Delaware Bankruptcy Court. Indeed, less than one week ago, the Delaware Bankruptcy Court entered an order (the "Delaware Order"):[2]

   a. finding that:

      i. Alexander had: "transfer[ed] funds during the pendency of [the Delaware Bankruptcy Case], funds that were assets of the [Cred] debtors" and that

      ii. "there's [not] any question that he owns those funds. They belong to the [Cred] debtors and I think they need to be turned over to the [Cred] debtors."

   b. and ordering Alexander to:

      i. "immediately, within the next 30 minutes after this [February 5, 2021] hearing is over, transfer th[e] Bitcoin" that "he has that's related to what was transferred to him from Cred Capital,"

      ii. "by the end of the day today, transfer whatever cash that he has that he alleges or that he admits is the proceeds of the cryptocurrency which was taken from Cred Capital [including, at a minimum, the approximately $2.7 million that Alexander's counsel told the Court were cash "proceeds" from Cred's cryptocurrency],"

      iii. submit a declaration that would "provide an explanation for each of the transfers subsequent to the initial transfer of all [of at least the 225 Bitcoin he took]," as well as "an explanation for why he liquidated the Bitcoin and where that money is located,"

      iv. sit for a deposition to "start answering some difficult questions and do so in a way that gives the parties and the Court the ability to understand what's going on here," and

---

[2] The Delaware Order consists of (i) an order from the Delaware Bankruptcy Court entered as Docket No. 468 in the Delaware Bankruptcy Case and that is attached hereto as Ex. A, (ii) the findings of fact and rulings from the Delaware Bankruptcy Court at a hearing on February 5, 2021, with such findings and rulings highlighted in the transcript (the "Delaware Court Transcript") (appended to the filed Delaware Order as Ex. 1 (*see* Delaware Court Transcript at 41:20-42:7 ("Well, I'm not sure how to formulate one order. I've ordered a lot of things today. So I think what I'm going to do is so order the transcript with all of my rulings today. And Mr. Luft, if you want to submit a form of order that just says -- incorporates my rulings on the record today. You don't have to do them specifically; just say the Court held a hearing today, made numerous rulings on the record relating to various issues and, for the reasons stated on the record, the record is so ordered. And I think that will -- we'll have to go with that because it will be impossible to try to put together a comprehensive order on this on a short period of time …")).

- 2 -

v.  produce all relevant written records on an expedited basis and respond to written discovery that the Movants issued on an expedited basis.[3]

2.      Since the Delaware Bankruptcy Court entered the Delaware Order, Alexander has flagrantly refused to comply with it.  Each time the Movants learned new information from Alexander, they discovered that Alexander was intentionally withholding other information.  And each time he reluctantly divulged the whereabouts of a portion of the stolen funds, we discovered that there were additional funds that were either unaccounted for, or being unjustifiably withheld.  Alexander is abusing the bankruptcy system to steal and hide property that does not belong to him. This Chapter 11 Case is merely the latest maneuver by Alexander to avoid complying with court orders.

3.      Alexander's abbreviated deposition testimony revealed even more troubling and startling facts.  For example, on February 4, 2020, one day after the Committee filed its emergency motion seeking the Delaware Order, Alexander withdrew or transferred to himself $170,000 of Cred's cash—$60,000 of which he stated under oath is in the trunk of his car.  The deposition culminated in Alexander requesting a five-minute break for alleged medical reasons, only to file this Chapter 11 Case during that break and then assert through counsel that the automatic stay prevents the deposition from continuing.

4.      Movants ask that this Court immediately lift the stay to allow the Movants to seek enforcement of the Delaware Order and prevent Alexander's continued dissipation of Cred's assets.  Alexander has admitted under oath that these assets belong to Cred.  Alexander's actions to date have already caused significant harm to Cred's 6,500 creditors who are owed more than $150 million.

5.      The Movants further request that this Court transfer the Chapter 11 Case to the Delaware Bankruptcy Court in the interest of justice to allow the Delaware Bankruptcy Court to

---

[3] Delaware Court Transcript at 8:8-11; 20:8-20; 23:23-24:11; 30:13-14; 31:4-9; 29:11-13; 31:15-19; 34:22-35:1-6.

1" = "1" "DM_US 177067318-8.113270.0011" "" DM_US 177067318-8.113270.0011

oversee the Chapter 11 Case because it is intimately familiar with the foregoing circumstances and

Alexander's obligations are inextricably intertwined with those of Cred.

## BACKGROUND

**A.    Cred's Business and Chapter 11 Bankruptcy**

6.    Cred is a lender whose business involved transactions made in cryptocurrency.[4]

Alexander was Cred's former Chief Capital Officer.  Cred terminated Alexander's employment on

June 26, 2020 as a result of Alexander initiating a series of actions against the interest and directions of

Cred.[5]  Two days before Cred fired Alexander, Alexander caused the transfer of 224.98993 BTC[6] (the

"Cred Bitcoin") and $204,567 in United States Dollar Coin (USDC) (the "Cred USDC" and, together

with the Cred Bitcoin, the "Cred Cryptocurrency") constituting Cred assets to digital addresses

Alexander controls (the "Alexander Transfers").[7]

7.    On November 7, 2020, Cred and its other debtor affiliates[8] filed the jointly administered

Cred Bankruptcy Case before the Honorable John T. Dorsey.[9]

8.    Alexander's misconduct while he was an officer of Cred was a contributing factor to

Cred's downfall.  When Cred commenced the Delaware Bankruptcy Case, a lawsuit was pending by

Cred against Alexander in California state court, captioned *Cred Inc. (f/k/a Cred LLC) and Cred*

---

[4] *See generally* Delaware Bankruptcy Case at Docket No. 12.

[5] *See* Ex. B – Transcript of Deposition of Alexander on February 9, 2021 (the "Deposition Transcript") at 82:21-83:3. Cred has also demanded repayment of an employee loan of $250,000 and a loan of the cryptocurrency LBA (collectively, the "Alexander Loan"), which has now matured and is payable on demand; *see* Ex. C, at ¶ 7.  Alexander has not repaid the Alexander Loan.  *Id.*

[6] Totaling approximately $10.08 million (USD) based on the price of BTC as of February 10, 2021

[7] *See* Ex. B - Deposition Transcript at 72:6-15; 78:5-9; Clegg Decl. ¶ 10 (providing transaction details); *see also* Ex. A – Delaware Transcript at 24:9-11; 29:11-13 (ordering Alexander to return the Cred Cryptocurrency to Cred and account for any missing Cred Cryptocurrency).

[8] These Cred entities include Cred Inc., Cred (US) LLC, Cred Merchant Solutions LLC, Cred Capital, Inc. and Cred (Puerto Rico) LLC.)  *See* Delaware Bankruptcy Case at Docket No. 1.

[9] *See* Cred Bankruptcy Docket.

*Capital, Inc. v. James Alexander*, 20-CIV-02915 (the "California Action"), asserting causes of action for, *inter alia*, conversion of digital assets and requesting declaratory and injunctive relief.[10]

9.     On July 17, 2020, the California Court, finding that Cred was likely to succeed on the merits, entered a temporary restraining order (the "California TRO Order") directing that Alexander not "transfer, transmit, or use" any of the Cred Cryptocurrency in Alexander's control.[11]  The California Court, again finding that Cred was likely to succeed on the merits, extended the California TRO Order on August 27, 2020 (the "California PI Order" and, together with the California TRO Order, the "California Freeze Orders"), which again prohibited Alexander from transferring Cred Cryptocurrency while the California Action remained pending.[12]

10.     On November 18, 2020, Cred filed an adversary proceeding (the "Adversary Proceeding") (Adv. P. No. 20-51006) in the Delaware Bankruptcy Case against Alexander seeking turnover of the Cred Cryptocurrency and other Cred property in his possession (the "Adversary Complaint").[13]  On January 25, 2021, Alexander filed his answer to the Adversary Complaint and admitted that he took possession of the Cred Cryptocurrency, but he contended these assets "were moved for safekeeping."[14]

---

[10] Ex. D (the "California Complaint").

[11] Ex. E, at ¶ 1 ("[Alexander] and his agents are hereby ordered not to transfer, transmit, or use, or cause or permit anyone else to transfer, transmit, or use, any Cred and/or Cred Capital digital assets in their possession, custody and/or control, including but not limited to digital assets contained in the following blockchain addresses: (i) BTC Address: 0x58a█████████████████████████ and (ii) USDC Address: 3GGquR9█████████████.").

[12] *See* Ex. F, at ¶ 7 – California PI Order; Ex. N – Answer to California Complaint (Alexander admitted in his answer in the California Action that he "placed certain assets beyond the reach of Cred in order to preserve them based on his recognition that Cred had become insolvent and was likely seeking them for improper purposes.").

[13] Ex. G – Adversary Complaint.

[14] Ex. H at ¶ 35.

- 5 -

**B.      Cryptocurrency Tracing Reveals Alexander Transferred Cred Cryptocurrency on January 16, 2021 and January 17, 2021 in Violation of the California Freeze Orders**

11.     The Cred Cryptocurrency laid dormant, as it was legally required to be under the California Freeze Orders (and because it was not Alexander's property), in Alexander's digital address for six months, until January 16, 2021 and January 17, 2021, when Alexander, in flagrant violation of both the California Freeze Orders and the Delaware Bankruptcy Case automatic stay, absconded with Cred's property.[15]  CipherTrace,[16] an expert cryptocurrency tracing firm, conducted tracing analyses of Alexander's digital wallets and uncovered that Alexander had hidden or spent most of the Cred Cryptocurrency and Cred USDC:

a.  On July 1, 2020, Alexander transferred 10 Bitcoin (today, worth approximately $477,000);

b.  On July 16, 2020, the day before the California TRO Order was issued, Alexander transferred 65 Bitcoin (today, worth approximately $3.1 million) that is directly traceable to Cred;

c.  On July 17, 2020, hours before the California TRO Order was issued, between 3:12 AM and 3:19 AM (PT), Alexander emptied one of the digital addresses holding Cred Cryptocurrency in four transactions that completely emptied the digital address holding the $204,567 in Cred USDC, except for a nominal amount of cryptocurrency;

d.  On January 16, 2021, during the Delaware Bankruptcy Case and in violation of the automatic stay, Alexander transferred 50 BTC of Cred Cryptocurrency (today, worth approximately $2.4 million) that is directly traceable to Cred; and

e.  On January 17, 2021, during the Delaware Bankruptcy Case and in violation of the automatic stay, Alexander transferred another 50 BTC of Cred Cryptocurrency that is directly traceable to Cred.[17]

---

[15] *See* Ex. I at ¶ 14 (the "Clegg Declaration").

[16] The Committee retained CipherTrace, one of the world's leading cryptocurrency tracing consultants to trace cryptocurrency relating to Cred, including tracing the Alexander Transfers.  *Id.*  In an initial report (the "Alexander Report"), CipherTrace found that, as of July 16, 2020, Alexander owned and controlled at least one digital address, which held 149.998 BTC (totaling approximately $6.723 million (USD)).  *Id.* at ¶¶ 11-15.

[17] Ex. I, ¶¶ 18, 41.  The Clegg Declaration and the Alexander Report explain in meticulous detail the steps taken by CipherTrace to conclude that Alexander executed these transfers of Cred Cryptocurrency.  *Id.*, ¶¶ 28-39, Ex. 1.  Essentially, there are only six transactions at issue.  *Id.*, ¶ 28-39.  Importantly, CipherTrace concluded that it was Alexander who owned the digital address that held 149.99882 BTC of Cred Cryptocurrency from July 16, 2020 until he diverted 100 BTC of Cred Cryptocurrency in two transactions on January 16, 2021 and January 17, 2021.  *Id.*, ¶ 15.

CipherTrace also determined that at least 49.99840974 BTC of Cred Cryptocurrency remained in a digital address owned and controlled by Alexander.[18]  Alexander has admitted to making the foregoing transfers in sworn testimony.[19]

**C.    The Motion for TRO and Preliminary Injunction Before the Delaware Bankruptcy Court**

12.    After CipherTrace informed the Committee of the January 16, 2021 and January 17, 2021 transfers, the Committee filed an emergency motion on February 3, 2021 for a temporary restraining order and preliminary injunction against Alexander in the Delaware Bankruptcy Case.[20] The Delaware Bankruptcy Court granted the emergency motion and entered the Delaware Order directing Alexander to turnover all of Cred's property and account for that property.[21]

**D.    Alexander's Conduct Since Entry of the Delaware Order**

13.    Alexander has <u>not</u> complied with the Delaware Order.  Specifically, Alexander:

   a.    did not transfer all Cred Cryptocurrency within 30 minutes of the conclusion of the hearing, instead only transferring 49.998 BTC initially, then, late at night, transferring 2,773,438.24 USDC to Cred, which amount fell at least $664,518.29 short of the $3,437,956.53 (USD) that Alexander admittedly transferred and liquidated from the Cred Cryptocurrency;[22]

   b.    did not submit the explanatory declaration; instead, he submitted a nine-paragraph, conclusory document well after the deadline set by the Delaware Bankruptcy Court;[23] and

   c.    failed to produce the required records, but the records he did produce revealed a Wells Fargo business account named "James Alexander DBA James Alexander Cred" that Alexander has admitted is a "dedicated" accounts containing only Cred assets; and that Alexander has used the Cred Cryptocurrency proceeds as his

---

[18] *Id.* at ¶ 18.

[19] Ex. B at 92:20-23 ("Q. Mr. Alexander . . . did you transfer Cred Capital crypto after this order or not?  A. I did, Yes."); 104:23-105:24 ("Q.  Did there come a time where you moved 50-Bitcoin on January 16, 2021? A. Yes. . . . Q.  And on January 16, 2021, you were aware there was a court order precluding you from moving any cryptocurrency that was related to Cred Capital, right? A. Yes."); 106:11-19 ("Q. And on January 17, 2021, you executed an additional 50 Bitcoin transaction didn't you? A. Yes, that's right. Q. And on both of those days when you executed the transactions you knew that was in violation of the Court's Order, right? A. I did.  Yes.").

[20] *See* Ex. J.

[21] *See* Ex. A.

[22] *See* Ex. B at 110:7-111:3; 115:5-15.

[23] Ex. K.

personal piggybank, including funding lavish personal trips during the Cred Bankruptcy Case, significant cash withdrawals, and the day after the Committee moved seeking the Delaware Order, transferring $100,000 to himself, writing a check for $10,000 to himself, and withdrawing $60,000 in cash and placing it in the trunk of his car. The bank records also revealed that there are other key bank accounts containing the proceeds of the Cred Cryptocurrency that Alexander has not disclosed.[24]

**E.    The February 9, 2021 Deposition**

14.    On February 9, 2021, Alexander sat for the court-ordered deposition. Alexander admitted that he had violated the California TRO.[25] *He also revealed that he had transferred $170,000 in traceable proceeds from the Cred Cryptocurrency that he testified he would not return, and had put $60,000 of that cash* <u>*in the trunk of his car*</u> *and that some of that was now unaccounted for*:

> Q.  You took $60,000 out in cash a week ago, you say it's in the trunk of your car, and now you can't tell me how much of the 60,000 is still in the trunk of your car? Is that your answer?
> A.  Yes. I'm sorry. I -- I need to deposit it, and then I'll give you the exact number of what's -- what's -- when the deposit is made.[26]

15.    Throughout the deposition, Alexander consistently refused to provide clear answers as to where Cred's missing property was located or how it was spent.[27] When asked to provide the location of the missing $664,518.29, Alexander requested that the parties take a five-minute break. During the break, Alexander filed a voluntary petition for relief commencing the Chapter 11 Case. When the deposition recommenced, Alexander's counsel informed the undersigned counsel of the

---

[24] Ex. L, at Response to Interrogatory Nos. 16 and 17; *see also*, Ex. B, at 82:12-85:9; 98:17-99:10; Ex. M (Wells Fargo Bank Statements).

[25] Ex. B, at 89:9-92:3.

[26] *Id.*, at 56:9-15 (discussing cash in car); 42:2-50:8 (discussing $170,000 in proceeds, $10,000 check written to himself, $60,000 in trunk, and $100,000 cashier's check that "should have been deposited").

[27] *Id.* at 82:12-85:9; 115:6-117:13 (Q. Okay, so the proceeds from the January 16th and January 17th Bitcoin transactions were 3,437,956.53 you provided the debtors with 2,773,488. Where is the additional 664,467.53? A. This has been the subject of back and forth e-mails ongoing. And I don't -- I don't have a complete answer for you today . . . Q. Where is the 664,000? A. That question remains open and I can't answer it as I have described. Q. Well, you are not answering the question. The question is where is the 664,000? A. I have answered the best of the questions to the best of my ability and recollection . . .").

Chapter 11 Case filing, instructed Alexander to cease answering questions, and took the position that the automatic stay prevented the deposition from going forward.[28]

16.     On February 10, 2021, the Delaware Bankruptcy Court held an emergency status conference in the Cred Bankruptcy Case, at which the Movants updated the Court of Alexander's Chapter 11 Case.  The Delaware Bankruptcy Court instructed the parties to confer to obviate the need for this Motion.  Despite repeated requests by the Movants for the turnover of Cred's property and the continued production of discovery, Alexander has refused and would not consent to lifting the automatic stay.  Instead, he is insisting on using this Court and the automatic stay to give him cover to continue to flaunt court orders and to put off his day of reckoning in this two-party dispute.

## RELIEF REQUESTED

17.     By this Motion, Movants respectfully request that the Court enter an order: (i) granting Movants relief from the automatic stay to seek enforcement of the Delaware Order; (ii) finding that the automatic stay does not apply to the Movants' pursuit of discovery against Alexander or, in the alternative, granting Movants relief from the automatic stay to pursue discovery against Alexander; (iii) waiving the 14-day stay on the relief requested herein pursuant to Bankruptcy Rule 4001(a)(3); (iv) transferring the venue of the Chapter 11 Case to the Delaware Bankruptcy Court; and (v) granting Movants such other and further relief to which Movants are justly entitled.

## BASIS FOR RELIEF

**A.     The Court Should Lift the Stay to Enforce the Delaware Order Because the Debtor is Not Trustworthy and the Chapter 11 Case was Filed in Bad Faith**

18.     Bankruptcy Code section 362(d)(1) states: "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this

---

[28] *Id.*, at 119:4-124:7.

section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest."[29]

19.    "Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis."[30]  Importantly, both pre- and post-petition conduct is relevant in analyzing whether cause exists to lift the automatic stay.[31]

20.    Once a movant makes a *prima facie* case that cause exists to lift the stay, the burden shifts to the debtor to show that cause does not exist.[32]  If the debtor cannot meet its burden, stay relief must be granted.[33]

21.    Cause exists in this Chapter 11 Case to grant relief from the automatic stay pursuant to Bankruptcy Code section 362(d)(1) because: (i) the Movants need to find out where the Cred assets are located before Alexander moves them again (*e.g.*, $60,000 in the trunk of Alexander's car); (ii) Alexander has proven that he is untrustworthy and has shown total disregard for court orders; and (iii) the Chapter 11 Case was filed in bad faith.

22.    Bad faith alone can constitute cause for lifting the automatic stay.[34]  The analysis of bad faith under section 362(d) proceeds in much the same way as the analysis of whether to dismiss a case for cause under section 1112(b).[35]

---

[29] 11 U.S.C. § 362(d)(2).

[30] *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985); *see also In re Castlerock*, 781 F.2d 159, 163 (9th Cir. 1986) ("relief from the stay must be determined on a case-by-case basis."); *In re Mila, Inc.*, 423 B.R. 537, 542 (B.A.P. 9th Cir. 2010) ("Section 362(d)(1) authorizes the bankruptcy court broad discretion to grant relief from the automatic stay . . . for 'cause.'").

[31] *In re Mack*, 347 B.R. 911, 916 (Bankr. M.D. Fla. 2006).

[32] *In re Gould*, 401 B.R. 415, 426 (B.A.P. 9th Cir. 2009); *In re Ellis*, 60 B.R. 432, 435 (B.A.P. 9th Cir. 1985).

[33] *Id.* at 435.

[34] *See, e.g.*, *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986); *In re Duvar Apt., Inc.*, 205 B.R. 196, 200 (B.A.P. 9th Cir. 1996); *In re ACI Sunbow, LLC*, 206 B.R. 213, 217 (Bankr. S.D. Cal. 1997).

[35] *See, e.g., In re Trident Ass'n Ltd. P'ship*, 52 F.3d 127, 131 (6th Cir. 1995).

1" = "1" "DM_US 177067318-8.113270.0011" "" "" DM_US 177067318-8.113270.0011

23.   Findings of bad faith are based upon an "amalgam of factors and not upon a specific fact."[36]  The good faith requirement is tested by considering whether a debtor is "attempting to unreasonably deter and harass creditors" or is "attempting to effect a speedy, efficient reorganization on a feasible basis."[37]   As another Bankruptcy Judge in this District put it: "Chapter 11 bankruptcy is not supposed to be like a '7–11' convenience store, where the debtor merely drops in and picks up that which the debtor wants . . . and then, after having the protection of the bankruptcy court, leaves bankruptcy, at will, as soon as the debtor has obtained its goal (obstruction and delay) but without the creditors obtaining any of the protections and benefits (reorganization or liquidation) which the Bankruptcy Code gives to creditors."[38]

24.   Several recurrent factors that often accompany a bad faith filing include that: (i) the debtor engaged in improper prepetition conduct; (ii) the timing of the debtor's filing evinces an intent to delay or frustrate the legitimate efforts of the debtor's creditors to enforce their rights; and (iii) the debtor filed solely to create the automatic stay.[39]

i.   <u>Alexander Engaged in Significant Improper Conduct Prepetition</u>

25.   Only two days before Alexander's termination from Cred, Alexander absconded with the Cred Cryptocurrency, which began a series of further misconduct by Alexander.

26.   First, despite conceding that the Cred Cryptocurrency is Cred's property, Alexander emptied the digital address holding the Cred USDC two days after Cred commenced the California Action.

---

[36] *In re Arnold*, 806 F.2d at 939.

[37] *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994).

[38] *In re Silberkaus*, 253 B.R. 890, 903 (Bankr. C.D. Cal. 2000).

[39] *See, e.g.*, *In re MacGibbon*, No. 05-15099, 2006 WL 6810935, at *12 (9th Cir. BAP Aug. 14, 2006) (identifying factors (i) and (iii)); *In re St. Paul Self Storage Ltd. Partnership*, 185 B.R. 580, 583 (9th Cir. BAP 1995) (identifying factors (ii) and (iii));  *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394-95 (11th Cir. 1988); *In re Thirtieth Place, Inc.*, 30 B.R. 503, 505 (9th Cir. BAP 1983) (identifying factors (ii) and (iii)).

27.    Second, despite being prohibited from transferring the Cred Cryptocurrency pursuant to the California Freeze Orders (and in the face of the pending turnover Adversary Proceeding), on January 16, 2021 and January 17, 2021, Alexander diverted 100 BTC of Cred Cryptocurrency from his digital addresses.

28.    Third, Alexander has used proceeds from the Cred Cryptocurreny to fund personal expenses, including: (i) on January 28, 2021, Alexander transferred $350,000 to Quinn Emmanuel Urquhart & Sullivan (apparently to fund legal defense costs for Cred's former General Counsel, Dan Wheeler, in exchange for Wheeler filing a declaration in support of pleadings filed by Alexander in the Delaware Bankruptcy Case *one week prior to the transfer*); and (ii) on February 4, 2021, one day after the Committee's emergency TRO motion was filed, when Alexander (a) withdrew $60,000 in cash; (b) transferred $100,000 to himself; and (c) wrote a $10,000 check to himself.

29.    Fourth, Alexander consistently violated the Delaware Order by failing to provide directly to the Movants: (i) all Cred Cryptocurrency in his possession "within 30 minutes" after the hearing concluded; (ii) all cash in Alexander's possession related to Cred by close of business the day of the hearing; (iii) a detailed declaration by 4:00 p.m. describing all of the transfers of Cred Cryptocurrency and any other assets of Cred that were in Alexander's possession; (iv) an explanation of the reasons for each of these transactions; (v) discovery on all of the Cred Cryptocurrency transactions and fiat transactions relating to Cred by February 8, 2021; and (vi) discovery on all of Alexander's personal assets by February 10, 2021.[40]

30.    Fifth, as discussed below, Alexander has now filed the Chapter 11 Case in an effort to prevent the Movants from enforcing the Delaware Order.

---

[40] Ex. A.

1" = "1" "DM_US 177067318-8.113270.0011" "" DM_US 177067318-8.113270.0011

ii.     The Timing of the Bankruptcy Filing Demonstrates Bad Faith and was Done Solely to Create the Automatic Stay

31.     The fundamental purpose of the automatic stay is to give a debtor a "breathing spell"[41] and time to work constructively with its creditors to propose a plan of reorganization.[41]  Alexander filed this bankruptcy proceeding not for a "breathing spell," but rather to forestall, by virtue of the automatic stay, the Movants' enforcement of the Delaware Order.[42]

32.     Shortly following entry of the Delaware Order, the Committee scheduled a deposition of Alexander on February 9, 2021 to identify and trace Cred's stolen assets.  Alexander's conduct at the deposition was consistently obstructive and evasive.  Indeed, the series of questions and events that prompted the conclusion of the deposition aptly demonstrate Alexander's bad faith.

33.     As noted, the Delaware Bankruptcy Court required that Alexander turnover the Cred Cryptocurrency within 30 minutes after the hearing.  Following a series of excuses and delays, Alexander initiated the turnover (although not in the time frame required); however, there was approximately $664,000 missing.

34.     During the deposition, Alexander was questioned about the turnover and the missing $664,000.[43]  Alexander's responses were evasive, stating that the missing funds "remain an open question" and are "being debated by counsel and others."[44]  Instead of providing an answer, Alexander requested a five-minute break.[45]  Upon returning from the break, Alexander's counsel informed the

---

[41] See Sternberger v. Johnston, 595 F.3d 937, 945 (9th Cir. 2010); Goichman v. Bloom (In re Bloom), 875 F.2d 224, 226 (9th Cir. 1989).

[42] See, e.g., Meadowbrook Investors' v. Thirtieth Place, Inc. (In re Thirtieth Place, Inc.), 30 B.R. 503, 505 (9th Cir. BAP 1983) ("A petition filed in bad faith may manifest an intent to cause hardship or to delay creditors by resort to the chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize his financial activities."); In re Sullivan, 522 B.R. 604, 615 (9th Cir. BAP 2014) (citing In re Marsch, 36 F.3d at 828) ("If . . . a debtor seeks to use a chapter 11 filing to 'unreasonably deter and harass creditors,' such a filing lacks good faith.").

[43] See Ex. B, at 115:9-118:2.

[44] Id. at 117:16-22.

[45] Id. at 117:7.

- 13 -

undersigned counsel that they had been instructed by Alexander's bankruptcy counsel, who prior to the

contact at the deposition was unknown to them, that Alexander had filed the Chapter 11 Case, and

instructed Alexander to cease answering questions, and informed the undersigned counsel that the

automatic stay is in effect, effectively ending the deposition.[46]

35.     Alexander, clearly, had his voluntary petition for chapter 11 relief prepared in advance

of the deposition as a defensive weapon that he could use to cease answering difficult questions.  And,

upon being asked questions that would further demonstrate his misconduct – the disappearance of

approximately $664,000 – Alexander refused to answer and requested a five-minute break for the sole

purpose of filing such voluntary petition and ending the deposition.

36.     Alexander's conduct demonstrates a transparent pattern of inappropriate (at best)

conduct and complete disregard of court orders to further his efforts of misappropriating Cred's assets.

The filing of the Chapter 11 Case is simply his most recent tactic.  That is, Alexander is using

bankruptcy solely as a means to circumvent the Delaware Order and frustrate the Movants' efforts to

recover property that Alexander has admitted is Cred's property.[47]  Accordingly, cause exists to lift the

automatic stay to allow the Movants to enforce the Delaware Order.

**B.    The Automatic Stay Does Not Bar Discovery Against Debtors Related to Claims Against
       Third Parties**

37.     For the same reasons that the Court shift lift the stay to permit Movants to enforce the

Delaware Order, the Court should also lift the stay to permit Movants to continue taking expedited

discovery of Alexander.  Indeed, the Delaware Order explicitly provided that Movants could take

---

[46] *Id*. at 119:4-124:7.

[47] *See In re Detienne Associates Ltd. Partnership*, 342 B.R. 318, 326 (Bankr. D. Mont. 2006) (noting that using chapter 11 as a device "merely for the purpose of invoking the automatic stay" is evidence of bad faith); *Thirtieth Place*, 30 B.R. at 506 (noting that where a petition is filed in bad faith, "there is no basis for access to chapter 11 and the protective machinery of the automatic stay.").

- 14 -

expedited discovery of Alexander in order to ensure that he complied with his turnover obligations under the Delaware Order (which as discussed above, he has not done).

38. Moreover, under established Ninth Circuit law, the automatic stay does not protect a debtor from discovery requests that pertain to claims against third parties.[48] As discussed above, Alexander has transferred Cred property to a number of third parties, and the Movants have every reason to believe that there are additional transfers that have not yet come to light. Accordingly, it is immediately necessary for Movants to continue obtaining discovery and information from Alexander to identify such transferees and pursue claims against third parties. This urgency is further enhanced by the ease with which cryptocurrency can be transferred. Although Ninth Circuit precedent affords the Movants the opportunity to continue such discovery without violating the automatic stay, the Movants nonetheless request that the Court enter an order clarifying that the stay does not apply to such discovery, particularly given that Alexander has refused to continue with such discovery.

**C. If Relief from the Automatic Stay is Granted, the Court Should Waive the Stay Imposed by Bankruptcy Rule 4001**

39. Bankruptcy Rule 4001(a)(3) states that "an order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, *unless the court orders otherwise*.[49] The Movants respectfully request that the 14-day stay imposed by Bankruptcy Rule 4001(a)(3) be waived so that the Movants may immediately enforce the Delaware Order.

---

[48] *See Groner v. Miller (In re Miller)*, 262 B.R. 499, 503-04 (B.A.P. 9th Cir. 2001) ("Information is information, and we believe the discovery of it as part of the development of a case against non-debtor parties is permissible, even if that information could later be used against the party protected by the automatic stay."); *see also In re Manley Toys, Ltd.*, 2018 Bankr. LEXIS 504, at *15 (Bankr. D. N.J. 2018) ("obtaining information from a Debtor in pursuit of a claim against a third party does not violate the automatic stay . . . .").

[49] Fed. R. Bankr. P. 4001(a)(3) (emphasis added).

- 15 -

1

**D.    The Chapter 11 Case Should be Transferred to the Delaware Bankruptcy Court in the Interest of Justice**

2

3       40.    Under 28 U.S.C. § 1412, a court may transfer a case or proceeding to another federal

4   district: (i) if the transfer is in the interest of justice *or* (ii) for the convenience of the

5   parties.[50]  Although section 1412 refers to a "district court," the bankruptcy court, as a unit of the

6   district court, stands in the place of the district court for purposes of addressing venue.[51]

7       41.    The decision of whether to transfer venue is within the court's discretion based on an

8   individualized case-by-case analysis of convenience and fairness.[52]  This "elastic approach is necessary

9   because "venue does not easily submit to hard and fast rules."[53]

10          i.    The Interests of Justice Support Transferring Venue

11      42.    When applying the "interest of justice" test, "the court applies a broad and flexible

12  standard," considering whether transfer of venue "will promote the efficient administration of the

13  estate, judicial economy, timeliness and fairness."[54]  The element of fairness concerns whether a

14  transfer will serve "the integrity of the bankruptcy system."[55]

15

16          a.    *Fairness and Integrity of the Bankruptcy System*

17      43.    Transferring the Chapter 11 Case to the Delaware Bankruptcy Court will protect the

18  integrity of the bankruptcy system by stopping Alexander's efforts to use this Court solely as a means

19

---

20  [50] Notably, the case may be transferred to any other district, regardless of whether the transferee venue would not have been a proper original venue under 28 U.S.C. § 1408.  *See In re B.L. of Miami, Inc.*, 294 B.R. 325, 328–29 (Bankr. D. Nev. 2003) (citing Fed. R. Bankr. P. 1014(a)(1)).

21

22  [51] *See In re Ross,* 312 B.R. 879, 884 (Bankr. W.D. Tenn. 2004) (followed by *In re Barrington Spring House, LLC*, 509 B.R. 587, 604 (Bankr. S.D. Ohio 2014)) ("*Barrington*").

23  [52] *In re Cytodyn of New Mexico, Inc.*, 374 B.R. 733, 742 (Bankr. C.D. Cal. 2007); *In re B.L. of Miami, Inc.*, 294 B.R. at 328–29 (citations omitted).

24  [53] *In re Abacus Broad. Corp.,* 154 B.R. 682, 685 (Bankr. W.D. Tex. 1993); *B.L. of Miami, Inc.*, 294 B.R. at 329.

25  [54] *B.L. of Miami, Inc.*, 294 B.R. at 334 (citing *In re Enron Corp.*, 284 B.R. 376, 386 (Bankr. S.D.N.Y. 2002); *see also In re Silicon Valley Innovation Co.*, No. 12-52706-ASW, 2012 WL 3778853, at *4-*5 (Bankr. N.D. Cal. Aug. 30, 2012); *see also In re Enron Corp.*, 284 B.R. at 386 ("While '[i]t is true that generally what serves the convenience of the parties will also serve the interest of justice, but the contrary is not necessarily true.'"); *TIG Ins. Co. v. Smolker*, 264 B.R. 661, 668 (Bankr. C.D. Cal. 2001).

26

27  [55] *Barrington*, 509 B.R. at 606.

28

- 16 -

to circumvent the Delaware Bankruptcy Court.  Indeed, that is exactly why we are before this Court.  As discussed above, Alexander was ordered by a California court to freeze the accounts holding Cred's assets, and then he was ordered by the Delaware Bankruptcy Court to turn over Cred's assets, provide discovery, and sit for a deposition.  Despite these orders, Alexander liquidated, spent, and transferred Cred's assets to a variety of yet unknown locations, refused to turn over all of the assets, refused to provide an accounting for those assets, and failed to finish the deposition.  Moreover, he armed himself with a chapter 11 petition, which he rushed to file during a break in the deposition.  Alexander is not a good faith debtor seeking rehabilitation.  Rather, he is an individual who has been caught red-handed (more than once) misappropriating Cred assets, who now seeks to impose the automatic stay to prevent enforcement of an order entered by a sister court.

44.    The similarities between Alexander's antics and the individual debtor in *Barrington* (the "Barrington Debtor") are striking.   In both cases, an insider sought to frustrate the disposition of a corporate battle that they were losing in one district filing bankruptcy in a different district.  As in *Barrington,* Alexander "regarded all of the assets [owned by affiliated companies] as his own to do with as he pleases."[56]  Like Barrington, Alexander acted "in bad faith and contemptuous of [another] court's orders," including orders "forbidding any sale, encumbrance or hypothecation of the subject personal or real property," with Alexander here refusing to turn over assets pursuant to the Delaware Order.[57]  Here, as in *Barrington*, Alexander showed brief indications of cooperation, but shortly

---

[56] *Barrington*, 509 B.R. at 597; Ex. B at 42:3-11 ("Q: the $60,000 in cash that is currently in the trunk of your car [that Alexander withdrew post-petition] *those are the [Cred] debtors assets and they need to be return[ed] immediately*.  *A. No.  Those are liabilities that were owed to me* and so they are -- whatever the timing was and whatever form I took those out I believed *as a sole director as I continue to believe that I am owed that compensation for tax liabilities and salary and if I want to take them out in pennies I can take them out in pennies.  That is my position*.").

[57] *Id.* at 594 (*Barrington* concerned parallel litigation in state court and the request to transfer the bankruptcy case to the bankruptcy court in that district.  So, while the Barrington Debtor was only abusing the privileges of one bankruptcy court, here, Alexander is abusing two, this Court and the Delaware Bankruptcy Court); Ex. B, at 34:19-35:2 (("Q: Do you intend on returning that $100,000 [that Alexander admitted he took] to the debtors?  A.  What does that mean returning the money.  Q.  Will you return the money, Mr. Alexander?  A.  To whom.  Q.  To the debtors.  To Cred.  To the persons that you took it from?  A.  I can't answer that."); at 44: 8-14 ("Q: of the $60,000 that you pulled out from this bank account how much of that is still in the trunk of your car?  A.  I don't know exactly.  I -- I don't know.  I don't know.  Q.  So you spent

- 17 -

thereafter, filed the Chapter 11 Case in this district to use the automatic stay as a shield from further

cooperation.

45.     In *Barrington*, the court transferred the Barrington Debtor's case to Florida, where his

corporate dispute was pending, because the *Barrington* court determined that the Barrington Debtor's

forum-shopping evidenced bad faith:

> The Florida Litigation precipitated the filing of these bankruptcy cases and
> ***it is not unreasonable to regard this as largely a two party dispute, a fight
> between the Mawardis and Edelsten over their rights in what remains of
> the Venture Properties . . . . By filing his cases in Ohio, he knew it would
> be much more difficult and expensive for them to assert their rights***
> … The Debtors' choice of forum in this instance, ***with the apparent
> intention to punish their primary creditors and continue their
> manipulative and bad faith litigation tactics***, undermines the integrity of
> the bankruptcy system and is fundamentally unfair . . . .[58]

46.     Alexander has flagrantly disobeyed the California Freeze Orders and the Delaware

Order and has admitted to misappropriating Cred assets for his own personal benefit.  Alexander's

motivation is clear – he "knew it would be much more difficult and expensive" for the Movants to

assert their rights in this Court than in the Delaware Bankruptcy Court, which entered the Delaware

Order less than one week ago.

47.     In this inquiry, the Court should not "elevate form [over whether a filing is technically

proper in a district] over substance" where the result would be an "affront to the purpose of the

bankruptcy venue statute and the integrity of the bankruptcy system."[59]  Here, Alexander should be

equitably and judicially estopped from the "form" argument because, as discussed above, the Chapter

11 Case was filed in bad faith.  Accordingly, allowing the Chapter 11 Case to proceed before this

Court is an affront to the entire bankruptcy system.

---

some of it?  A.  I don't know.  I can't answer that.  I have to defer that question apologies."); at 26: 8-11 (Q.  I'm asking for your recollection James you worked there [at a cred debtor].  For two years what were your job responsibilities at Cred?  A. I can't provide you with a more precise answer from what I've provided [that he provided "financial services"].).

[58] *Barrington*, 509 B.R. at 607-08 (emphasis added).

[59] *In re Patriot Coal Corp.*, 482 B.R. 718, 743-44 (Bankr. S.D.N.Y. 2012) (citing *In re Jitney Jungle,* (Bankr. D. Del. Dec. 7, 1999), Hr'g. Tr. at 168:20–21 ("finding that [venue] is not illegal does not establish that it is fair")).

- 18 -

ii.    *Judicial Economy and Timeliness Support Transferring Venue*

48.    Another factor considered when determining transfer of venue is "the desirability of having a judge familiar with applicable law hear and determine issues arising in the case."[60]   Where a "bankruptcy court ha[s] developed a substantial learning curve [of the underling facts of the case, this] weigh[s] in favor of [that court adjudicating] the case."[61]

49.    Alexander, in his individual capacity, has been actively involved in the Cred Bankruptcy Cases, including: (i) responding to motions filed by third parties; (ii) filing a motion to dismiss and a declaration in support thereof; (iii) objecting to Cred's sale motion; and (iv) filing pleadings in the Adversary Proceeding.[62]   Moreover, as a result of the Delaware Bankruptcy Case, the Delaware Bankruptcy Court has a deep understanding of cryptocurrency tracing and, more importantly, the specific Cred property that is at issue and Alexander's conduct with regard to same. Indeed, in Alexander's response to the emergency TRO motion, he did not provide any facts, instead merely noting that, "[t]he [Delaware Bankruptcy] Court is aware of the background of this matter . . . ."[63]   Further, Alexander described his dispute with Cred as "a corporate control battle that has been going on for many months," and the Delaware Bankruptcy Court has overseen it all.[64]   It was, of course, these facts and circumstances that supported the Delaware Order.  Alexander's financial fortunes (or lack thereof) are deeply intertwined in the Cred Bankruptcy Cases, and the same Delaware Bankruptcy Court that has considered the matter for months, should hear Alexander's own bankruptcy.[65]

---

[60] *In re Enron Corp.*, 284 B.R. at 403 (citing *In re Raytech Corp.,* 222 B.R. 19, 26 (Bankr. D. Conn. 1998)).

[61] *Id.* (citing *In re Manville Forest Prod. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990)).

[62] *See* Delaware Bankruptcy Case [Docket Nos. 103, 152, 428, and 440]; Adversary Proceeding [Docket Nos. 4 and 13].

[63] Adversary Proceeding [Docket No. 13].

[64] *Id.*

[65] *See In re Luell*, 2018 WL 9988767, at *3 (Bankr. D. Nev. Oct. 17, 2018) (considering "whether the "[transferee court] has more familiarity with the law applicable in th[e] matter, or has some cognizable interest that would favor that venue as

- 19 -

iii.  *The Efficient Administration of Alexander's Estate*

50.   There is no evidence that the Delaware Bankruptcy Court, during the virtual-hearing age, cannot administer Alexander's estate in an efficient manner or that Alexander will be prevented from defending himself there in an efficient manner.   Indeed, as discussed above, Alexander has been actively involved in the Cred Bankruptcy Cases since his counsel, well-resourced firm, filed a notice of appearance in the Cred Bankruptcy Cases on December 2, 2020.[66]  As recently as February 5, 2021, Alexander appeared before the Delaware Bankruptcy Court to argue the Alexander Motion to Dismiss, and on February 10, 2021, Alexander's counsel appeared at an emergency status conference in the Cred Bankruptcy Cases on short notice.

51.   The Delaware Bankruptcy Court has immense knowledge about Alexander and the principal assets in his (wrongful) possession – the missing Bitcoin and their proceeds – and it is more efficient **for all parties,** notably those with "money on the line," for the Delaware Bankruptcy Court to administer this Chapter 11 Case side-by-side with the Cred Bankruptcy Cases.[67]  For the foregoing reasons, the Chapter 11 Case should be transferred to the Delaware Bankruptcy Court.

**E.    The Chapter 11 Case Should be Transferred Pursuant to Bankruptcy Code Section 105 as an Abuse of Process**

52.   Pursuant to Bankruptcy Code section 105(a), the Court has the power to transfer the Chapter 11 Case *sua sponte* "notwithstanding the reference in Rule 1014(a) to a motion by a party in

---

a matter of comity" as relevant to Section 1412 transfer inquiry where "the interests in the [] bankruptcy proceeding[s] are directly related.").

[66] *See* Delaware Bankruptcy Case at Docket No. 101.

[67] *See In re Houghton Mifflin Harcourt Pub. Co.*, 474 B.R. 122, 124 (Bankr. S.D.N.Y. 2012); *see also Rocket Electric Co., Ltd. L.A. v. one in All JC Corp.*, 2010 WL 11597857, at *7 (C.D. Cal. April 7, 2010) (as a factor in support of venue transfer, finding that administration of the bankruptcy estate would be more efficient if all disputes were adjudicated in a single forum).  Further, (i) during the COVID-19 pandemic, with both this and the Delaware Bankruptcy Courts mandating virtual hearings for the near-future, inquiries ordinarily explored in analyzing this factor such as travel time etc., are largely moot, and (ii) given the egregious behavior and assault on the integrity of the bankruptcy process that Alexander has initiated, this factor is less consequential.  *In re Patriot Coal Corp.*, 482 B.R. 718, 747 (Bankr. S.D.N.Y. 2012) (transferring case in interests of justice even where "evidence that it would be administratively efficient to conduct the cases in this District").

interest . . . ."[68]  "When § 105(a) is employed by a court, the crucial question is whether the process utilized fairly placed appellant on notice of what was at stake and afforded an opportunity to respond."[69]  In invoking section 105, the Court may transfer venue, *sua sponte*, in order to "prevent an abuse of process."[70]

53.    Here, Alexander has effectuated an abuse of process.  He is not seeking to reorganize – he is seeking to evade compliance with the Delaware Order, as evidenced by Alexander and his counsel's unwillingness to agree to turn over Cred property, produce discovery, and consent to relief from the automatic stay.  Alexander's Chapter 11 Case is a gross abuse of the process, which threatens the bankruptcy system.  Accordingly, Alexander should answer for his actions in the Delaware Bankruptcy Court, and should not be given refuge here.

## CONCLUSION

54.    For the foregoing reasons, the Movants respectfully request that the Court enter an order: (i) granting Movants relief from the automatic stay to seek enforcement of the Delaware Order; (ii) finding that the automatic stay does not apply to the Movants' pursuit of discovery against Alexander or, in the alternative, granting Movants relief from the automatic stay to pursue discovery against Alexander; (iii) waiving the 14-day stay on the relief requested herein pursuant to Bankruptcy Rule 4001(a)(3); (iv) transferring the venue of the Chapter 11 Case to the Delaware Bankruptcy Court; and (v) granting Movants such other and further relief to which Movants are justly entitled.

---

[68] *In re Donald*, 328 B.R. 192, 198–99 (B.A.P. 9th Cir. 2005) (citations omitted).

[69] *Id.*

[70] *Id.* (citing 11 U.S.C. § 105(a)).

Dated:  February 12, 2021
            Los Angeles, California

**McDERMOTT WILL & EMERY, LLP**

By:  /s/ *Gregory R. Jones*
Gregory R. Jones
2049 Century Park East, Suite 3200
Los Angeles, California 90067-3206
Telephone:  (310) 284-6140
Facsimile:  (310) 277-4730

-and-

Timothy W. Walsh (*pro hac vice* pending)
Darren Azman (*pro hac vice* pending)
340 Madison Avenue
New York, NY 10173-1922
Telephone:  (212) 547-5400
Facsimile:  (212) 547-5444

*Counsel to the Official*
*Committee of Unsecured Creditors*
*of Cred Inc., et al.*

**PAUL HASTINGS LLP**

By: /s/ *Justin Rawlins*
Justin Rawlins
515 South Flower Street Twenty-Fifth Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6130
Facsimile: (213) 996-3130

-and-

James T. Grogan (*pro hac vice* pending)
Casey W. Doherty Jr. (*pro hac vice* pending)
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
Telephone:   (713) 860-7300
Facsimile:   (713) 353-3100
Email:        jamesgrogan@paulhastings.com
               caseydoherty@paulhastings.com

-and-

Avram E. Luft (*pro hac vice* pending)
200 Park Avenue
New York, New York 10166
Telephone:   (212) 318-6000
Facsimile:   (212) 319-4090
Email:        aviluft@paulhastings.com

*Counsel to Cred Inc., et al.*

1" = "1" "DM_US 177067318-8.113270.0011" "" DM_US 177067318-8.113270.0011

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
200 Park Ave, New York, NY 10166

A true and correct copy of the foregoing document entitled: **Cred Inc., et al. and the Official Committee of Unsecured Creditors of Cred Inc., et al.'s Notice of Joint Emergency Omnibus Motion for (I) Relief From the Automatic Stay and (II) Transfer of Venue** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **2/12/2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Russell Clementson    russell.clementson@usdoj.gov
- David B Golubchik    dbg@lnbyb.com, stephanie@lnbyb.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **2/12/2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**See attached service list**

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **2/12/2021** served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/12/2021 | Winnie Wu | /s/ Winnie Wu |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                    **F 9013-3.1.PROOF.SERVICE**

**SERVICE LIST**
**Cases No. 21-10214**

James Alexander
13535 Ventura Blvd
Ste C, PMB 405
Sherman Oaks, CA 91423

David B. Golubchik
Levene, Neale, Bender, Yoo & Brill L . L
.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067

U . S . Trustee San Fernando Valley
915 Wilshire Blvd.
Suite 1850
Los Angeles, CA 90011

Barclay's Bank Delaware
PO BOX 8803
Wilmington , DE 19899

Capital One Bank USA
PO BOX 31293
Salt Lake City, UT 84131

Citicard
PO BOX 6241
Sioux Falls, SD 57117

Cred Inc . et al,
c/o Scott Sousins, Esq.
1521 Concord Pike , Suite 301
Wilmington, DE 19803

Discover Student Loans
PO BOX 30948
Salt Lake City, UT 84130

Franchise Tax Board
Special Procedures
POB 2952
Sacramento, CA 95812

Internal Revenue Service
Insolvency I Stop 5022
300 N Los Angeles St., #4062
Los Angeles, CA 90012-9903

JPMCB HOME
700 KANSAS LN
Monroe , LA 71203

Los Angeles County Tax Collector
P. 0. Box 54018
Los Angeles, CA 90054- 0018

SOFI
2750 E COTTONWOOD PKWY
Salt Lake City, UT 84121

US Bank
PO BOX 13
Hillsboro, OH 45133

USAA
PO BOX 47504
San Antonio , TX 78265

Wells Fargo Bank
PO BOX 14517
Des Moines , IA 50306

WF Credit Services
PO BOX 14517
Des Moines , IA 50306

Gregory K. Jones
10100 N. Santa Monica Blvd.,Suite 1400
Los Angeles, CA 90067

James Alexander
13535 Ventura Blvd., Ste. C PMB 405
Sherman Oaks, CA 91423