```
                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE


IN RE:                              .    Chapter 11
                                    .    Case No. 20-12836 (JTD)
CRED INC., et al.,                  .
                                    .    (Jointly Administered)
                                    .
                                    .
                                    .    824 Market Street
            Debtors.                .    Wilmington, Delaware 19801
                                    .
                                    .    Wednesday, March 17, 2021
. . . . . . . . . . . . . . . . .        2:01 p.m.

            TRANSCRIPT OF HYBRID TELEPHONIC/ZOOM HEARING
              BEFORE THE HONORABLE JOHN T. DORSEY
                  UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:          Scott D. Cousins, Esquire
                          Scott Jones, Esq.
                          COUSINS LAW, LLC
                          Brandywine Plaza West
                          1521 Concord Pike
                          Suite 301
                          Wilmington, Delaware 19803

                          -and-

                          James T. Grogan, Esquire
                          PAUL HASTINGS, LLP
                          600 Travis Street
                          58th Floor
                          Houston, Texas 77002

(APPEARANCES CONTINUED)
Electronically
Recorded By:              Jason Spencer, ECRO

Transcription Service:    Reliable
                          1007 N. Orange Street
                          Wilmington, Delaware 19801
                          Telephone: (302) 654-8080
                          E-Mail:   gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording:
transcript produced by transcription service.
```

```
 1  APPEARANCES (CONTINUED):

 2  For the Debtors:         Avram Luft, Esquire
                             PAUL HASTINGS, LLP
 3                           200 Park Avenue
                             New York, New York 10166
 4

 5  For the Trustee:         James J. McMahon Jr., Esquire
                             UNITED STATES DEPARTMENT OF JUSTICE
 6                           OFFICE OF THE UNITED STATES TRUSTEE
                             844 King Street
 7                           Suite 2207, Lockbox 35
                             Wilmington, Delaware 19801
 8

 9  For the Official
    Committee of Unsecured
10  Creditors:               Darren Azman, Esquire
                             David Hurst, Esquire
11                           MCDERMOTT WILL & EMERY, LLP
                             340 Madison Avenue
12                           New York, New York 10173

13
    For Robert J. Stark:     Andrew M. Carty, Esquire
14                           BROWN RUDNICK, LLP
                             Seven Times Square
15                           New York, New York 10036

16  For James Alexander:     Mark Pfeiffer, Esquire
                             BUCHANAN INGERSOLL & ROONEY
17                           700 Alexander Park
                             Suite 300
18                           Princeton, New Jersey 08540-6347

19

20

21

22

23

24

25
```

INDEX

| MATTERS GOING FORWARD: | PAGE |
|---|---|
| Agenda Item 1: Motion to Withdraw as Attorney of Record for James Alexander [Docket No. 542, 2/23/21] | 4 |
| Court's ruling | 13, 17 |
| Transcriptionist's Certificate | 19 |

1  (Proceedings commenced at 2:01 p.m.)

2  THE COURT: Good afternoon. Can everyone hear me
3  okay? All right.

4  This is Judge Dorsey. We're on the record in Cred
5  Inc., Case Number 20-12836. I'll go ahead and turn it over
6  to debtors' counsel to run the agenda.

7  MR. COUSINS: Good afternoon, Your Honor, Scott
8  Cousins on behalf of debtors Cred Inc.

9  There are two matters on the agenda, one is a
10  status conference. The first is Mr. Pfeiffer's motion to
11  withdraw as counsel for Mr. Alexander.

12  THE COURT: All right. Mr. Pfeiffer, are you on?

13  MR. PFEIFFER: Good afternoon, Your Honor, Mike
14  Pfeiffer on behalf of Buchanan Ingersoll & Rooney in
15  connection with our firm's motion to withdraw as counsel for
16  Mr. Alexander.

17  I would like to make one correction to the motion
18  before starting, Your Honor. We have a citation to RPC
19  1.16(a)(3) in our motion, which deals with a discharge of the
20  attorney. That has not occurred, that is an errant citation.
21  This is a matter under RPC 1.16(b).

22  As with these types of motions, Your Honor, we've
23  alleged that there are irreconcilable differences which make
24  it difficult, if not impossible, for this firm to continue to
25  represent this debtor -- or Mr. Alexander. In addition, Mr.

1  Alexander is in his own Chapter 7 case in California and does
2  not have the ability to continue to retain us in this matter.
3              As with these types of motions, we are available
4  if the Court has questions as to the specific reasons for the
5  withdrawal or for the termination of the relationship, and we
6  can provide those reasons to the Court in camera.
7              There has been an objection to the motion to
8  withdraw filed by the committee.  And, essentially, the
9  committee takes the position that it would be difficult for
10 this firm to withdraw at the present time because there are
11 unfinished issues with respect to the Court's order from
12 February 5th, 2021.
13             We have filed this morning -- or this afternoon,
14 not filed, but we submitted to debtors' counsel, the
15 committee, and to chambers a supplemental affidavit, and we
16 have also provided discovery in connection with what's been
17 called the Phase II discovery, which deals with the debtors'
18 personal financial information.  And as the Court could
19 imagine, because the debtor filed a Chapter 7 bankruptcy,
20 much of the information is already in the debtor's statement
21 of financial affairs and bankruptcy schedules in his personal
22 bankruptcy case.
23             With regard to the Court's order as far as
24 unfinished business, we took the Court's order very
25 seriously.  And, rightfully, you know, the Court was

1 concerned about immediately getting back bitcoin that was in
2 my client's possession that were derived from the debtors.
3 And on the day of the hearing my client turned over
4 approximately 50 bitcoin worth approximately $1.9 million at
5 the time and approximately $2.7 million in USDT, which is a
6 cryptocurrency that is tied to the United States dollar.
7 　　　　　We have also provided or helped the debtor -- or
8 Mr. Alexander provide information that the Court was
9 concerned about.  If the Court recalls, there was a dispute
10 as to whether or not the debtor held 225 bitcoin or 150
11 bitcoin.  We've provided information to the debtor that 75
12 bitcoin were liquidated prepetition, and the proceeds of that
13 liquidation went into a coin-based account and ultimately
14 into Wells Fargo accounts and JPMorgan accounts.
15 　　　　　We also provided information to the debtor and the
16 committee concerning a liquidation of 100 bitcoin in January
17 2021.  Again, it went into a bitcoin account and ultimately
18 into the USDT coin that was turned over to the debtor on
19 February 5th.  Some of the proceeds apparently wound up in
20 the Wells Fargo and the JPMorgan accounts.
21 　　　　　We provided information concerning the JPMorgan
22 account, the Wells Fargo account, and the coin-based accounts
23 to the debtor and to the committee, and, specifically, we
24 provided what I believe are the relevant account statements
25 for those accounts.  And, ultimately, those accounts or

1  subsequently the DIP account into which those accounts flowed
2  were turned over to the debtor.
3           So, from my perspective, a large portion of the
4  Court's order from February 5th was to get the property back
5  to the debtor and get information to the debtor about the
6  transactions, and I believe that has occurred.  What has not
7  finally occurred or fully occurred is the deposition.  That
8  was still out there, that was interrupted by the debtor's
9  bankruptcy filing.  From our perspective, the debtor can sit
10 through a deposition.  Whether the debtor chooses to sit
11 through a deposition or not, that's not necessarily within
12 the control of our firm.
13          So the short of it, from our perspective, is that
14 if we get out of this case as a firm now, you know, the
15 committee and the debtor or the liquidating trustee still
16 have whatever rights they have against the debtor or against
17 Mr. Alexander.
18          I'm aware of no other material bitcoin that was
19 derived from -- or any crypto that was derived from Cred that
20 has not been turned over.  There are accountings that
21 probably need to be done and figured out, but the debtor and
22 the committee have all that information.  They probably need
23 to ask some deposition questions about it, but that can be
24 done without our firm and if the debt -- if Mr. Alexander
25 agrees to submit to a deposition.

1            But at this point, Your Honor, the continued
2   representation of Mr. Alexander by our firm is, regrettably,
3   not something that we can continue with in the scope of --
4   well, it's not something we can continue and we would request
5   that we be permitted to withdraw pursuant to RPC 1.16(b).
6            THE COURT:  Has Mr. Alexander undertaken steps to
7   obtain replacement counsel in this case?
8            MR. PFEIFFER:  Mr. Alexander has been advised that
9   he should undertake steps to retain replacement counsel.  I
10  believe he has communicated with replacement counsel, I do
11  not know if he has retained replacement counsel.
12           THE COURT:  Is Mr. Alexander's California counsel
13  on the call today?
14           MR. PFEIFFER:  If I may scroll through the list,
15  Your Honor?
16           THE COURT:  Yes.
17      (Pause)
18           THE COURT:  It doesn't appear on the list that I
19  have.
20           MR. PFEIFFER:  Your Honor, I don't see either the
21  bankruptcy lawyer or the general California counsel on the
22  list of today's hearing.
23           THE COURT:  What -- who's -- I didn't know there
24  was general California counsel.  I thought he had a
25  bankruptcy counsel in California, what's the general counsel

1  that he has?
2         MR. PFEIFFER:  Bird, Marella is the general
3  counsel or the litigation counsel handling various matters.
4  And the principal lawyer there is referenced in the
5  declaration, Thomas Reichert, who also has in his possession
6  some of the equipment that the Court instructed be turned
7  over to Mr. Reichert.
8         THE COURT:  All right.  Let me hear from UCC's
9  counsel who objected.
10        MR. AZMAN:  Good afternoon, Your Honor, Darren
11 Azman, McDermott Will & Emery, counsel to the committee.
12        Your Honor, the withdrawal motion is very much
13 tied to the contempt motion, as well as the original
14 emergency order that Your Honor entered.  The fact is, as we
15 sit here today, Mr. Alexander has not complied with the
16 order.  If it is acceptable, I think it would be beneficial
17 for us to address the contempt motion, as Mr. Pfeiffer did,
18 because it does lay the foundation for why we're asking the
19 Court to deny the withdrawal motion.  That is, once the order
20 is complied with, we have no objection to Buchanan's
21 withdrawal.  We understand the circumstances they're in right
22 now, but we're not there quite yet.
23        So, if it's acceptable, I'd like to address some
24 issues with the contempt motion.
25        THE COURT:  All right.  I'm not going to -- I'm

1  certainly not hearing the contempt motion, but you can
2  address whatever you think is necessary --
3             MR. AZMAN:  Yeah.
4             THE COURT:  -- to deal with the withdrawal motion.
5             MR. AZMAN:  Understood.  Your Honor, the emergency
6  order that you entered was very clear about what Alexander
7  was required to do and when he was required to do it.  As I
8  said a moment ago, as we sit here right now, he has not
9  complied with that order.  Yes, he has complied in some
10 respects and that's great, but he is nowhere near satisfying
11 the obligations that you laid out very explicitly, which
12 includes turnover of assets that Alexander has admitted are
13 Cred Capital's property and, equally important, a declaration
14 and discovery on a host of issues that will allow the
15 committee and ultimately the liquidation trust to recover
16 estate property and discharge their fiduciary obligations.
17            Time and time again, Your Honor, Mr. Alexander has
18 come up with excuse after excuse.  As you know, Mr.
19 Alexander's thrilling line of excuses culminated in his
20 personal bankruptcy filing in the middle of our deposition.
21 We had informally asked Mr. Alexander to consent to lifting
22 the stay so that we could enforce Your Honor's order.
23 Perhaps unsurprisingly, he declined.  So we went out to
24 California and the judge very quickly entered an oral order
25 from the bench immediately lifting the stay for us to proceed

1 on these issues before Your Honor.

2 Since that time, since that court had lifted the
3 automatic stay, we have gotten practically nothing from
4 Alexander other than around $130,000 of cash.  But up until
5 yesterday, late afternoon, we had not received a single piece
6 of additional information that Your Honor had ordered
7 Alexander to provide, including any information regarding
8 Alexander's assets that he deems to be his personal assets,
9 but we're all very skeptical in terms of characterizing it
10 that way.

11 This needs to end and we need to execute on the
12 order that Your Honor granted us, and Mr. Alexander needs to
13 respect the law.  We're under no illusion that the relief we
14 asked for in the contempt motion is extraordinary, there's no
15 other way to put it, but at the same time we don't see that
16 there's any other relief that would coerce Alexander to
17 comply with the order.  The estate already has significant
18 claims against Alexander, we believe in excess of $50
19 million.  There's questions about whether the automatic stay
20 would preclude monetary sanctions from being issued.  So Your
21 Honor has nothing left but jail time for Mr. Alexander, in
22 our view, until he complies with the order.  So that's why we
23 asked the Court to issue a bench warrant and to take that
24 action.

25 Now, late yesterday afternoon, around 4 o'clock,

1  we did receive additional discovery from Mr. Alexander.  And
2  then shortly before today's hearing, I would say about an
3  hour ago, we received a new declaration.  We received it the
4  same time it was sent to Your Honor's chambers.  We're still
5  reviewing everything, but there are already very obvious and
6  significant deficiencies, and I'm sure that list is going to
7  grow once we finish our review.  We're happy to walk through
8  our initial issues list for why he's not complying still.
9  I'm not sure that would be a productive use of the Court's
10 time, but the point is that Mr. Alexander is going to
11 continue to be evasive in his responses until there are
12 serious consequences imposed on him for noncompliance.
13         Now, that ties directly into -- excuse me just a
14 moment -- that ties directly into Buchanan's motion to
15 withdraw because the job is not done.  They're the ones who
16 are most inured with these matters, they received whatever
17 benefit it is that they received representing Mr. Alexander
18 for the past several months in the case, and we think the
19 case law is there to support the proposition that they should
20 be -- they should continue in that representation until the
21 job is done.
22         And, you know, I think the quote from our briefing
23 on this issue is probably best:  "An attorney has certain
24 obligations and duties to apply once representation is
25 undertaken that do not evaporate because the case becomes

1  more complicated or the work more arduous.  Attorneys must
2  never lose sight of the fact that the profession is a branch
3  of the administration of justice and not a mere money-getting
4  trade."
5            Your Honor, we don't think that Buchanan should be
6  able to withdraw, the job is not done.
7            THE COURT:  Thank you, Mr. Azman.
8            Anyone else wish to be heard before I go back to
9  Mr. Pfeiffer?
10           All right.  Mr. Pfeiffer, I sympathize with your
11 position and I understand the difficult position that you are
12 in, but at this point, given the fact that we have this
13 contempt motion pending, I think it would be inadvisable for
14 me to allow you to withdraw at this time until we can see
15 where this case is going to go.  And I'll talk about the
16 contempt motion in a moment, but -- so at this point I'm
17 going to -- I'll deny the motion to withdraw without
18 prejudice to renew it again, and I will actually bring it up
19 myself in the future to see where things are.
20           And hopefully Mr. Alexander understands the
21 seriousness of the situation that he is in at this time and
22 would seek to obtain new counsel, because if the contempt
23 motion goes forward, you know, there's a risk that he could
24 end up in jail.  And if he is in fact a fugitive from the law
25 in the U.K., he could end up in serious criminal -- a

1  criminal position as well.
2          So, for those reasons, I think it's not advisable
3  for me to allow you to withdraw at this time.
4          On the contempt motion, because it is asking for
5  Mr. Alexander's incarceration, there are serious questions
6  about whether or not a bankruptcy court as an Article 3 court
7  has the authority to do that.  And to avoid those issues and
8  also because, as I said, if Mr. Alexander is in fact a
9  fugitive from the U.K., it resulted in further criminal
10 allegations against him, then I think it's important that
11 this be heard by the district court and not by me.
12         And I'd point out that Rule 9020 provides that
13 Rule 9014 governs motions for contempt, and 9014 provides
14 that a person before contempt can be entered has to be given
15 notice and an opportunity to be heard.  And the notice under
16 9014 has to be the type of notice that is provided under Rule
17 7004 for summons -- for issuance of a summons and complaint.
18         So it's certainly not something that can be done
19 off the cuff because it wasn't -- the contempt is not alleged
20 to be something that occurred in front of me, it was
21 something that occurred outside the Court's purview.  So it
22 would require a full hearing and an opportunity for Mr.
23 Alexander to be heard before any contempt could be granted.
24         So I would -- well, what you should do -- and I've
25 actually already contacted the district court to give them a

1  heads-up that this might be coming -- is to file a motion to
2  withdraw the reference to allow the contempt motion to be
3  heard before the district court and proceed in that manner.
4           Does that -- does anybody have any questions about
5  that?
6           MR. AZMAN:  Thank you, Your Honor.  Would Your
7  Honor be willing to hear that motion for the withdrawal of
8  the reference on shortened notice?
9           THE COURT:  I think that gets heard by the
10 district court, not by me.
11          MR. AZMAN:  The district court, that's right,
12 that's right.  Okay, thank you.
13          THE COURT:  But, as I said, I did give the
14 district court a heads-up that this would be coming, likely
15 be coming.  So if it is something you want to do, I would go
16 ahead, and make the request and make the request on an
17 expedited fashion and see if the district court will agree to
18 do that.
19          MR. JONES:  Your Honor, I'm sorry to jump in, but
20 does your Court need to make a core/non-core determination
21 for the benefit of the district court or can we go right to
22 the district court.
23          THE COURT:  I think it can go just straight to the
24 district court to withdraw the reference.  I don't think
25 there's any need for me to make a determination on that, but

1  if you need to -- yeah, I don't know if this would be a core
2  or non-core matter, to be honest with you, Mr. Cousins.  I've
3  never dealt with this situation before either in practice or
4  on the bench, but --
5              MR. JONES:  Yeah, Your Honor, the only reason I
6  raise it, if I recall, there's some old case law that
7  requires Your Honor to make the core/non-core determination
8  to help the district court make a decision, but I think
9  because of the criminal overlay, I understand where the Court
10 is going.  And I'm sorry to intervene; I just want to make
11 sure this goes as quickly as possible.
12             THE COURT:  No, I understand, and it should be
13 done quickly and I think it's something that can be done
14 quickly.  If there is an issue, if the district court raises
15 a question about whether or not it's a core or non-core and
16 they need me to make a decision, I certainly would do that on
17 an expedited basis, but I don't think you need to -- in this
18 circumstance, I don't think you need to do that.  We're all
19 treading new ground here.
20             MR. JONES:  Yes.
21             THE COURT:  All right.  Anything else for today?
22             MR. AZMAN:  Not from the committee, Your Honor.
23 Thank you.
24             THE COURT:  Mr. Pfeiffer, if there is anything
25 that you think I should know that -- with regard to your

1  representation of Mr. Alexander, you can certainly submit
2  that to me in camera, and I will look at that and consider
3  that as we go forward on reconsidering your motion for
4  withdrawal later on down the road.
5        MR. PFEIFFER:  Your Honor, I appreciate that.
6  Would the Court consider just generally adjourning this
7  motion in lieu of denying it without prejudice, so that if
8  something does develop we don't have to go through the
9  process again?
10       THE COURT:  That's fine with me.  Yeah, we can do
11 that.  I'll just adjourn the motion until some undetermined
12 time in the future -- or why don't we -- hopefully, this
13 moves very quickly.  When is our next omnibus in this case?
14       MR. JONES:  Your Honor, it's April 1st, I believe.
15       THE COURT:  All right.  Why don't we -- why don't
16 you go ahead and re-notice it for April 1st, Mr. Pfeiffer,
17 and we'll consider it then --
18       MR. PFEIFFER:  We will.  Thank you, Your Honor.
19       THE COURT:  -- and we'll look at it again at the
20 next omnibus hearing.  Hopefully, by then we'll be a little
21 further down the road with the district court and we'll know
22 what's going on.  All right?
23       Is there anything else just status-wise or
24 housekeeping-wise that we can talk about as long as we're on
25 the call today?  Nothing?  Everything else is going smoothly

1  except for this one hiccup?
2              MR. AZMAN:  Your Honor, it's Darren Azman again
3  for the committee.  The only status update I think that is
4  worthwhile is we're moving towards going effective under the
5  plan.  So we're -- you know, we don't have a time frame, but
6  we're working through those issues now.  And there are some,
7  you know, unique circumstances as always in this case with
8  transferring assets from the debtors to the trust and some
9  other related issues, but that's the direction we're heading
10 in and we're hopeful to go effective soon.
11             THE COURT:  Okay.  Thank you, Mr. Azman.
12             All right.  Well, if there's nothing else for
13 today, then we are adjourned and I'll see everybody on April
14 1st.
15             COUNSEL:  Thank you, Your Honor.
16             THE COURT:  Thank you.  We're adjourned.
17       (Proceedings concluded at 2:24 p.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

/s/ Tracey Williams                              March 17, 2021

Tracey Williams, CET-914

Certified Court Transcriptionist

For Reliable