IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CRED INC., *et al.*, | ) ) ) | Case No. 20-12836 (JTD) |
|  | ) ) | (Jointly Administered) |
| Debtors.[1] | ) ) ) |  |

**EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR WITHDRAWAL OF THE REFERENCE
WITH RESPECT TO THE MOTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR AN ORDER (I) HOLDING JAMES ALEXANDER IN
CONTEMPT OF COURT AND (II) ISSUING A BENCH WARRANT FOR
THE ARREST AND DETENTION OF JAMES ALEXANDER**

The Official Committee of Unsecured Creditors (the "Committee") of Cred Inc., *et al.* (the "Debtors") hereby submits this emergency motion (the "Withdrawal Motion"), pursuant to 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 5011-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order by the United States District Court for the District of Delaware (the "District Court"), substantially in the form of the proposed order attached hereto as **Exhibit A**, withdrawing the reference with respect to the *Motion of the Official Committee of Unsecured Creditors for an Order (I) Holding James Alexander in Contempt of Court and (II) Issuing a Bench Warrant for the Arrest and Detention of James Alexander* [Bankr. Docket No. 643] (the "Contempt Motion"). In support of the Withdrawal Motion, the Committee respectfully states as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

**PRELIMINARY STATEMENT**

1.      This matter arises from the Contempt Motion filed by the Committee in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which seeks an order: (i) holding James Alexander ("Alexander") in contempt of court for failing to comply with the Bankruptcy Court's *Order Approving the Emergency Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting (I) Temporary Restraining Order and Preliminary Injunction Against James Alexander and (II) Related Relief* (the "Emergency Order"); and (ii) issuing a bench warrant for Alexander's arrest and detention until he complies with the Emergency Order.[2]

2.      Given (i) the substantial question as to whether the Bankruptcy Court, as an Article I court, has authority to impose incarceration as a coercive sanction and (ii) the complexity of the matter in light of recent findings that Alexander may be a fugitive in the United Kingdom,[3] the Bankruptcy Court instructed the Committee to file this Withdrawal Motion so that the Contempt Motion could be heard by the District Court.[4] Moreover,

---

[2] *See* Bankr. Docket No. 486.

[3] On January 8, 2021, the Bankruptcy Court approved the appointment of Robert J. Stark (the "Examiner"), as the Examiner in the Debtors' cases. *See* Bankr. Docket No. 338. On March 8, 2021, the Examiner filed his report. *See* Bankr. Docket No. 605 (the "Examiner's Report"). The Examiner's Report contained a series of findings concerning Alexander's past, including that he used a series of different names, had been convicted in the United Kingdom, and had escaped from a prison in England. *See* Bankr. Docket No. 338, at 11 ("Mr. Alexander was convicted on December 3, 2007 in the United Kingdom for crimes related to illegal money transfers, for which he was sentenced to three years and four months in prison to be served at HMP Ford Prison in West Sussex, England. At the time of his incarceration, there was a prison break at this facility. Mr. Alexander has been identified by the UK government as a fugitive."), 89-90 ("On December 3, 2007, Alexander was convicted in the United Kingdom for crimes related to illegal money transfers. He was sentenced to three years and four months in prison to be served at HMP Ford Prison in West Sussex, England. On October 15, 2008, while serving his sentence, there was a prison break at the HMP Ford Prison. It appears that Alexander is a fugitive in the United Kingdom.") (internal citations omitted).

[4] *See* March 17, 2021 Hr'r Tr. at 14:4-11 ("On the contempt motion, because it is asking for Mr. Alexander's incarceration, there are serious questions about whether or not a bankruptcy court as an Article [I] court has the authority to do that. And to avoid those issues and also because . . . if Mr. Alexander is in fact a fugitive from the U.K., it resulted in further criminal allegations against him, then I think it's important that this by heard by the district court and not by me."). The March 17, 2021 Hr'r Tr. is attached hereto as **Exhibit B**.

considerations of judicial economy support withdrawing the reference because: (i) there is a pending appeal in the District Court of the Emergency Order; and (ii) if the Bankruptcy Court does not have authority to enter an order on the Contempt Motion, then the District Court will ultimately be asked to review the Bankruptcy Court's findings of fact and conclusions of law and issue a ruling on the Contempt Motion.[5]  Thus, judicial economy supports withdrawing the reference.  For these reasons, "cause" exists for the District Court to withdraw the reference.

3.      Additionally, the Committee respectively requests that the Withdrawal Motion be heard on an emergency basis.  The Emergency Order directed Alexander to immediately turnover the Debtors' estates' assets in his possession, including cryptocurrency, provide expedited discovery, and sit for a deposition.[6]  Alexander has not fully complied with these obligations.  Moreover, Alexander has shown that he will not hesitate to take defensive measures when his feet get close to the fire.[7]  On multiple occasions, Alexander transferred and/or liquidated the Debtors' assets in direct response to pleadings being filed against him (including withdrawing $60,000 in cash and storing it in the trunk of his car).[8]

4.      The need for Alexander to produce discovery is similarly urgent.  Alexander's improper transactions involved the transfer of cryptocurrency, which is very difficult to track and

---

[5] *See* Docket Nos. 526 & 529.

[6] *See* Feb. 5, 2021 Hr'g Tr. at 24:12-17; 33:17-22; 34:24- 35:6; 37:1-5; 31:4-5 attached hereto as **Exhibit C**.

[7] For example: (i) shortly after a complaint was filed against Alexander by the Debtors in California state court, Alexander transferred and liquidated Debtor assets, *id*. at 80:8-13; (ii) shortly after the Committee filed the *Emergency Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting (I) Temporary Restraining Order and Preliminary Injunction Against James Alexander and (II) Related Relief* (the "Emergency Motion") in the adversary proceeding captioned *Cred Inc., Cred Capital, Inc., and Cred (U.S.) LLC v. Alexander*, Case No. 20-12836 (JTD), Docket No. 6 (Bankr. D. Del.) (the "Adversary Proceeding"), Alexander withdrew $170,000 in cash, storing $60,000 of which in the trunk of his car, *see* Bankr. Docket No. 645-7 at 42:12-50:7; and (iii) Alexander had a bankruptcy petition prepared in advance of a Bankruptcy Court-ordered deposition, which he then filed during a five-minute break in the deposition to end his questioning.  *See id*. at 119:4-11.

[8] *Id*. at 42:12-50:7.

trace. Accordingly, there is a justifiable concern that a delay in adjudication of this Withdrawal Motion (and subsequently, the Contempt Motion) may result in Alexander's (or a third-party transferee's) depletion or transfer of the Debtors' assets, which would cause irreparable harm.

## JURISDICTION

5. The District Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334(b).

6. Venue in the District Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory and legal predicates for the relief sought herein are 28 U.S.C. § 157(d), Bankruptcy Rule 5011, and Local Rule 5011-1.

## STATEMENT OF FACTS

A.  **Summary Background**

**(1)   The Chapter 11 Cases**

8. On November 7, 2020, the Debtors commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

9. On December 3, 2020, the Office of the United States Trustee appointed the Committee.[9]

10. On March 8, 2021, the Examiner filed the Examiner's Report, which contained a series of findings concerning Alexander's past, including that he used a series of different names, had been convicted in the United Kingdom, and had escaped from a prison in England.[10]

---

[9] Bankr. Docket No. 120.

[10] See supra, n. 3.

**(2)     The Emergency Motion**

11.     Alexander was employed as the Debtors' Chief Capital Officer from August 27, 2018 until his termination on June 26, 2020.[11] Two days before Alexander's termination, Alexander caused a significant amount of the Debtors' assets (the "<u>Assets</u>") to be transferred to him without authorization.[12]

12.     On July 15, 2020, the Debtors commenced an action against Alexander in California state court to, among other things, recover the Assets.[13] In that action, the California court issued two orders (the "<u>California Freeze Orders</u>") freezing the Assets and forbidding Alexander from making any transfers thereof.[14]

13.     On January 16, 2021 and January 17, 2021, Alexander violated the California Freeze Orders by transferring the Assets.[15]

14.     As a result, on February 3, 2021, the Committee filed the Emergency Motion, which sought a temporary restraining order: (i) restraining Alexander from executing further transactions involving the Assets; (ii) directing Alexander to immediately transfer the Assets into escrow; and (iii) directing Alexander to produce expedited discovery to develop further information related to the Assets and Alexander's personal finances.[16]

15.     On February 5, 2021, the Bankruptcy Court held an emergency hearing, granted the Emergency Motion, and directed Alexander to provide to the Debtors and the Committee:

---

[11]   See Adv. Pro. Docket No. 1, ¶¶ 15, 22-24, 32.

[12]   See id. at ¶ 35.

[13]   See Bankr. Docket No. 645-3.

[14]   See Bankr. Docket Nos. 645-1-2.

[15]   See Adv. Pro. Docket No. 8, ¶ 15, Ex. B.

[16]   Adv. Pro. Docket No. 6.

(i) certain of the Assets within 30 minutes after the hearing concluded; (ii) all cash proceeds from the liquidation of the Assets by close of business the day of the hearing; (iii) a detailed declaration by 4:00 p.m. describing all of the transfers of the Assets and any other assets of the Debtors that were in Alexander's possession; (iv) an explanation of the reasons for each of these transactions; (v) discovery on all of the transactions relating to the Debtors by February 8, 2021; (vi) discovery on all of Alexander's personal assets by February 10, 2021; and (vii) a deposition with the Debtors and the Committee.[17]

16.    As set forth in the Contempt Motion, Alexander did not comply with the Emergency Order.[18]

### (3)    The Contempt Motion

17.    As a result of Alexander's noncompliance, on March 15, 2021, the Committee filed the Contempt Motion, which seeks entry of an order: (i) finding Alexander in contempt for failing to comply with the Emergency Order; and (ii) issuing a bench warrant for Alexander's arrest and detention until he complies.[19]

18.    On March 17, 2021, the Bankruptcy Court held a status conference with respect to the Contempt Motion. At the March 17 status conference, the Bankruptcy Court instructed the Committee to file a motion to withdraw the reference because the Contempt Motion "is asking for Mr. Alexander's incarceration, [and] there are serious questions about whether or not a bankruptcy court as an Article [I] court has the authority to do that. And to avoid those issues and also because . . . if Mr. Alexander is in fact a fugitive from the U.K., it resulted in further

---

[17]   *See* Ex. C at 24:12-17; 33:17-22; 34:24- 35:6; 37:1-5; 31:4-5.

[18]   *See* Contempt Motion, ¶¶ 27-64.

[19]   *Id.*, ¶ 69.

criminal allegations against him, then I think it's important that this by heard by the district court and not by me.[20]

### (4) Alexander's Appeals

19. Alexander appealed two Bankruptcy Court orders,[21] and those appeals are pending in the District Court (collectively, the "Alexander Appeals"). Specifically, on February 19, 2021, Alexander appealed the: (i) Emergency Order; and (ii) *Order Denying the Motion of James Alexander to Dismiss the Cred Capital, Inc. Case* (the "Dismissal Order").[22]

20. On March 8, 2021, Alexander filed designations of records and statements of issues on appeal in both Alexander Appeals.[23]

## RELIEF REQUESTED

21. By this Motion, the Committee respectfully requests that the District Court withdraw the reference from the Bankruptcy Court with respect to the Contempt Motion.

## BASIS FOR RELIEF

22. Bankruptcy courts derive their jurisdiction from the district court's referral of bankruptcy matters pursuant to 28 U.S.C. 157(a), which states that "[e]ach district court may provide that . . . any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Indeed, the District Court has referred such proceedings to the Bankruptcy Court pursuant to the *Amended Standing Order of Reference*, entered by the District Court on February 9, 2012.

---

[20] *See* Ex. B at 14:4-11.

[21] *See* Bankr. Docket Nos. 526 & 529.

[22] *See* Bankr. Docket No. 487.

[23] *See* Bankr. Docket Nos. 607 & 609.

23.     Because the Bankruptcy Court's jurisdiction is acquired by reference from the District Court, the District Court "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, *for cause shown*." 28 U.S.C. 157(d) (emphasis added).  Although "cause" is not defined by the statute, the Third Circuit has articulated certain factors that should be considered, including: (i) considerations of judicial economy; (ii) promoting uniformity in bankruptcy administration; (iii) reducing forum shopping and confusion; (iv) fostering the economical use of resources; and (v) expediting the bankruptcy process.  *See In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990).

24.     These factors, however, are not exhaustive.  *See In re Smalls*, No. 15-02174-CMB, 2016 WL 1639673, at *3 (W.D. Pa. Apr. 26, 2016) (stating that the *Pruitt* factors are non-exhaustive).  "Cause" has also been established when: (i) the proceeding is exceptionally complex such that the proceeding is "better served by the presumed expertise of [the district court]";[24] or (ii) where "there is a substantial question as to whether a bankruptcy judge has authority to make dispositive rulings."[25]

A.     **The Withdrawal Motion is Timely**

25.     "[A] motion to withdraw is timely if it was made as promptly as possible in light of the developments in the bankruptcy proceeding." *Pruitt*, 910 F.2d at 1171.  The Contempt Motion was filed on March 15, 2021.  The Bankruptcy Court held a status conference on the Contempt Motion on March 17, 2021, at which the Bankruptcy Court instructed the Committee

---

[24] S*ee In re Enron Creditors Recovery Corp.*, 410 B.R. 374, 384-85 (S.D.N.Y. 2008) (noting that there is ample authority for withdrawing the reference where a proceeding is exceptionally complex) (citing *In re Braniff Int'l Airlines, Inc.*, 159 B.R. 117, 126 (E.D.N.Y. 1993); *In re Complete Mgmt. Inc.*, No. 02 Civ. 1736, 2002 WL 31163878, at *3 (S.D.N.Y. Sept. 27, 2002); *In re Leedy Mortgage Co.*, 62 B.R. 303, 306 (E.D. Pa. 1986)).

[25] *See In re Wisconsin Steel Corp.*, 48 B.R. 753, 767 (N.D. Ill. 1985); *see also In re Dow Corning Corp.*, 215 B.R. 526 (Bankr. E.D. Mich. 1997) (bankruptcy court recommended to district court that it withdraw the reference because the district court would be better able to make *Daubert* determinations).

to file this Withdrawal Motion.  *See* Ex. B at 14:7-11.  The Committee filed this Withdrawal Motion on March 23, 2021, only four business days after the March 17 status conference.  Accordingly, this Withdrawal Motion is timely.

**B.     Permissive Withdrawal is Appropriate Because There is a Substantial Question of Whether the Bankruptcy Court Has the Authority to Impose Coercive Incarceration**

26.     As noted by the Bankruptcy Court, "there are serious questions about whether or not a bankruptcy court as an Article [I] court has authority [to incarcerate Alexander]."  *See* Ex. B at 14:4-7.  Indeed, for that reason, bankruptcy courts have deferred to their respective district courts with regard to coercive incarceration sanctions.  *See e.g., In re Hughes*, No. 06-32726, 2007 WL 1087784, at *7, n. 1, 8 (Bankr. N.D. Tex. April 4, 2007) (noting concern as to the bankruptcy court's Constitutional authority as a non-Article III court, to incarcerate a person for civil contempt and thus, recommending withdrawal of the reference to the district court); *BKS Properties, Inc. v. Shumate*, 271 B.R. 794, 805 (N.D. Tex. 2002) (recommending withdrawal of reference "[t]o avoid any issue concerning constitutional authority to incarcerate a person for civil contempt . . . ."); *In re de Kleinman*, 923 F. Supp. 24, 27 (S.D.N.Y. 1996) (upon a question of the bankruptcy court's jurisdiction to find civil contempt and direct incarceration, the district court heard the matter); *In re GGW Brands, LLC, et al.*, No. 13-bk-15130-SK, Docket No. 645 (Bankr. C.D. Cal. Aug. 4, 2014) (the bankruptcy court recommending withdrawal of reference to the district court for the limited purpose of considering issuing arrest warrants for civil contempt).[26]

---

[26] *Contra In re 1990s Caterers Ltd.*, 531 B.R. 309, 320 (Bankr. E.D.N.Y. 2015) (bankruptcy court imposing incarceration after a finding of civil contempt); *In re Baker*, No. 15-ap-01535-BB, 2019 WL 2896137, at *1 (Bankr. C.D. Cal. April 29, 2019) (same); *In re Vaso*, 514 B.R. 416, (Bankr. D. Del. 2014) (although not imposing incarceration, noting that bankruptcy courts have the authority to do so).

9

27.     The concern over the Bankruptcy Court's authority is further justified by the Examiner's findings regarding Alexander potentially being a fugitive from the United Kingdom. Particularly, as stated by the Bankruptcy Court, if Alexander is a fugitive then there may be "further criminal allegations against him."[27]  *See* Ex. B at 14:7-11.

28.     Pursuant to the Contempt Motion, the Committee is seeking an order issuing a bench warrant for the arrest and detention of Alexander.  Given the substantial question of whether or not the Bankruptcy Court has the authority to issue such a ruling, "cause" exists to withdraw the reference.  *See id.* (the Bankruptcy Court stating that because of this question "it's important that this be heard by the district court . . . ."); *see also Wisconsin Steel Corp.*, 48 B.R. at 767 (finding cause to exist where "there is a substantial question as to whether a bankruptcy judge has authority to make dispositive rulings . . . ."); *see Dow Corning Corp.*, 215 B.R. at 526 (recommending that the district court withdraw the reference because the district court would be better able to make *Daubert* determinations).  For that reason, the Withdrawal Motion should be granted.

C.     **Permissive Withdrawal is Appropriate Because of the Complexity of the Circumstances**

29.     District courts are within their discretion to withdraw the reference where a proceeding "is exceptionally complex" and "would be better served by the presumed expertise of the [district court] . . . ."  *Enron Creditors Recovery Corp.*, 410 B.R. at 384-85 (noting that there is ample authority for withdrawing the reference where a proceeding is exceptionally complex) (citing *In re Braniff Int'l Airlines, Inc.*, 159 B.R. 117, 126 (E.D.N.Y. 1993); *In re Complete*

---

[27]  The Committee is not seeking any relief related to Alexander potentially being a fugitive, nor is the Committee affirmatively stating that the Examiner's findings are correct.  The relief sought by the Committee in the Contempt Motion is limited to Alexander's non-compliance with the Emergency Order.

*Mgmt. Inc.*, No. 02 Civ. 1736, 2002 WL 31163878, at *3 (S.D.N.Y. Sept. 27, 2002); *In re Leedy Mortgage Co.*, 62 B.R. 303, 306 (E.D. Pa. 1986)).

30. In addition to the question of authority, the existence of potential criminal allegations against Alexander creates a level of complexity that is best served by the District Court. Although the Committee is not seeking relief as to Alexander's alleged criminal past, if criminality becomes an issue with respect to the Contempt Motion, the Bankruptcy Court does not have authority to enter an appropriate order. *See In re Vaso Active Pharmaceuticals, Inc.*, 514 B.R. 416, 421-22 (Bankr. D. Del. 2014) (noting that bankruptcy courts do not possess criminal jurisdiction). For that reason also, "cause" exists to withdraw the reference and the Withdrawal Motion should be granted.

**D.    "Cause" Exists to Withdraw the Reference in the Interests of Judicial Economy**

31. Judicial economy weighs in favor of granting permissive withdrawal for two reasons.

32. *First*, Alexander has appealed the Emergency Order (and the Dismissal Order) to the District Court. Thus, the District Court is well-versed (or soon will be) in the facts and circumstances underlying the Emergency Order. *See In re The IT Group*, No. 05-100, 2005 WL 936992, at *2 (D. Del. Apr. 21, 2005) (withdrawing the reference when adversary proceeding concerned similar facts underlying pending district court action). Of course, the Emergency Order and the Contempt Motion are intertwined in that the entire basis for the Contempt Motion is Alexander's noncompliance with the Emergency Order. Accordingly, withdrawing the reference and adjudicating the Contempt Motion and the Emergency Order appeal in the same forum promotes judicial economy.

33. *Second*, as discussed above, there is a question as to whether the Bankruptcy Court has the authority to enter an order on the Contempt Motion. Thus, the Bankruptcy Court

would be limited to issuing findings of fact and conclusions of law, which would then have to be reviewed by the District Court in order to issue a ruling. *See Hatzel & Buehler, Inc. v. Orange & Rockland Utlis.*, 107 B.R. 34, 40 (D. Del. 1989) (finding permissive withdrawal appropriate "in light of considerations of judicial economy" when the bankruptcy court could not enter a final judgment and the district court would be forced to review the facts and proposed findings of fact and conclusions of law anyway); *see also In re NDEP Corp.*, 203 B.R. 906, 907 (D. Del. 1996) (quoting *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993) ("district courts might reasonably conclude that 'in a given case unnecessary costs could be avoided by a single proceeding in the district court.'")). Withdrawing the reference obviates the need for two different forums to examine the same facts and circumstances and thus, promotes judicial economy.

34.     For these reasons, considerations of judicial economy support permissive withdrawal of the Contempt Motion.

**E.     The Committee Respectfully Requests that the Withdrawal Motion be Heard on an Emergency Basis**

35.     The Committee respectfully requests that the District Court hear this Withdrawal Motion on an emergency basis because any further delay will likely result in irreparable harm for the following reasons:

36.     *First*, Alexander has demonstrated a pattern of taking defensive measures in response to pleadings filed against him, including: (i) transferring and liquidating certain of the Assets shortly after the Debtors filed a California state court action against him; (ii) withdrawing $170,000 in cash proceeds of the Assets shortly after the Emergency Motion was filed; and (iii) preparing a bankruptcy petition to be filed in the middle of a Bankruptcy Court-ordered deposition to halt the deposition. *See supra*, n. 7. Accordingly, the Committee is justifiably

12

concerned that Alexander will take similar defensive measures while the Contempt Motion (and now the Withdrawal Motion) are pending.

37. *Second*, the Assets in question and the transfers thereof involve cryptocurrency, which is easily transferred and extremely difficult to trace. To make matters worse, the nature of the various cryptocurrency transactions present here are even more difficult to trace because many of the transactions were "off exchange" transactions where cryptocurrency is traded privately between parties (as opposed to through cryptocurrency exchanges). *See* Contempt Motion, ¶¶ 76-80. Detailed discovery is needed to track these transactions in order to, among other things, identify the transferees and attempt to prevent any further transfers of the Assets or the proceeds thereof. *Id*. At any given moment, further transactions may be conducted, which will make it increasingly more difficult for the Committee to recover the Assets.

38. It has been over six weeks since the Bankruptcy Court ordered Alexander to immediately turnover the Assets and produce expedited discovery. Alexander has not turned over or accounted for all of the Assets. Nor has Alexander complied with the Committee's discovery demands in accordance with the Emergency Order. The Committee is already facing a delay in the adjudication of the Contempt Motion, which was filed in the Bankruptcy Court as an emergency motion on shortened notice, due to the necessity of filing this Withdrawal Motion. Any further delay in adjudicating this Withdrawal Motion may result in irreparable harm by permitting the further depletion of the Assets and potentially hindering the Committee's ability to trace and recover the Assets. For these reasons, the Committee respectfully requests that the District Court hear this Withdrawal Motion on an emergency basis.

## NOTICE

39. Notice of the Withdrawal Motion has been provided to (i) counsel to the Debtors, (ii) the Office of the United States Trustee for the District of Delaware, (iii) counsel to Alexander

in the Chapter 11 Cases, (iv) counsel to Alexander in Alexander's personal bankruptcy case pending before the California bankruptcy court, and (v) parties that have requested notice pursuant to Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Committee submits that no other or further notice is required.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, for the reasons stated above, the Committee respectfully requests that the District Court enter an order withdrawing reference from the Bankruptcy Court with respect to the Contempt Motion.

Dated: Wilmington, Delaware
March 23, 2021

**MCDERMOTT WILL & EMERY LLP**

/s/ *David R. Hurst*
David R. Hurst (I.D. No. 3743)
The Nemours Building
1007 North Orange Street, 10th Floor
Wilmington, DE 19801
Telephone: (302) 485-3900
Facsimile: (302) 351-8711

-and-

Timothy W. Walsh (admitted *pro hac vice*)
Darren Azman (admitted *pro hac vice*)
Joseph B. Evans (admitted *pro hac vice*)
340 Madison Avenue
New York, NY 10173-1922
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

*Counsel to the Official
Committee of Unsecured Creditors*