**Exhibit B**

**March 17, 2021 Hearing Transcript**

1

```
 1                    UNITED STATES BANKRUPTCY COURT
                           DISTRICT OF DELAWARE
 2

 3   IN RE:                        .  Chapter 11
                                   .  Case No. 20-12836 (JTD)
 4   CRED INC., et al.,            .
                                   .  (Jointly Administered)
 5                                 .
                                   .
 6                                 .  824 Market Street
               Debtors.           .  Wilmington, Delaware 19801
 7                                 .
                                   .  Wednesday, March 17, 2021
 8   . . . . . . . . . . . . . . .  2:01 p.m.

 9           TRANSCRIPT OF HYBRID TELEPHONIC/ZOOM HEARING
                BEFORE THE HONORABLE JOHN T. DORSEY
10                 UNITED STATES BANKRUPTCY JUDGE

11   APPEARANCES:

12   For the Debtors:          Scott D. Cousins, Esquire
                               Scott Jones, Esq.
13                             COUSINS LAW, LLC
                               Brandywine Plaza West
14                             1521 Concord Pike
                               Suite 301
15                             Wilmington, Delaware 19803

16                             -and-

17                             James T. Grogan, Esquire
                               PAUL HASTINGS, LLP
18                             600 Travis Street
                               58th Floor
19                             Houston, Texas 77002

20   (APPEARANCES CONTINUED)
     Electronically
21   Recorded By:             Jason Spencer, ECRO

22   Transcription Service:   Reliable
                              1007 N. Orange Street
23                            Wilmington, Delaware 19801
                              Telephone: (302) 654-8080
24                            E-Mail: gmatthews@reliable-co.com

25   Proceedings recorded by electronic sound recording:
     transcript produced by transcription service.
```

1   <u>APPEARANCES (CONTINUED)</u>:

2   For the Debtors:            Avram Luft, Esquire
                                PAUL HASTINGS, LLP
3                               200 Park Avenue
                                New York, New York 10166

4

5   For the Trustee:            James J. McMahon Jr., Esquire
                                UNITED STATES DEPARTMENT OF JUSTICE
6                               OFFICE OF THE UNITED STATES TRUSTEE
                                844 King Street
7                               Suite 2207, Lockbox 35
                                Wilmington, Delaware 19801

8

9   For the Official
    Committee of Unsecured
10  Creditors:                  Darren Azman, Esquire
                                David Hurst, Esquire
11                              MCDERMOTT WILL & EMERY, LLP
                                340 Madison Avenue
12                              New York, New York 10173

13
    For Robert J. Stark:        Andrew M. Carty, Esquire
14                              BROWN RUDNICK, LLP
                                Seven Times Square
15                              New York, New York 10036

16  For James Alexander:        Mark Pfeiffer, Esquire
                                BUCHANAN INGERSOLL & ROONEY
17                              700 Alexander Park
                                Suite 300
18                              Princeton, New Jersey 08540-6347

19

20

21

22

23

24

25

1                               INDEX

2    MATTERS GOING FORWARD:                            PAGE

3    Agenda
     Item 1:    Motion to Withdraw as Attorney of Record    4
4               for James Alexander [Docket No. 542,
                2/23/21]
5

6    Court's ruling                                  13, 17

7

8

9    Transcriptionist's Certificate                     19

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commenced at 2:01 p.m.)

2               THE COURT:  Good afternoon.  Can everyone hear me

3  okay?  All right.

4               This is Judge Dorsey.  We're on the record in Cred

5  Inc., Case Number 20-12836.  I'll go ahead and turn it over

6  to debtors' counsel to run the agenda.

7               MR. COUSINS:  Good afternoon, Your Honor, Scott

8  Cousins on behalf of debtors Cred Inc.

9               There are two matters on the agenda, one is a

10  status conference.  The first is Mr. Pfeiffer's motion to

11  withdraw as counsel for Mr. Alexander.

12               THE COURT:  All right.  Mr. Pfeiffer, are you on?

13               MR. PFEIFFER:  Good afternoon, Your Honor, Mike

14  Pfeiffer on behalf of Buchanan Ingersoll & Rooney in

15  connection with our firm's motion to withdraw as counsel for

16  Mr. Alexander.

17               I would like to make one correction to the motion

18  before starting, Your Honor.  We have a citation to RPC

19  1.16(a)(3) in our motion, which deals with a discharge of the

20  attorney.  That has not occurred, that is an errant citation.

21  This is a matter under RPC 1.16(b).

22               As with these types of motions, Your Honor, we've

23  alleged that there are irreconcilable differences which make

24  it difficult, if not impossible, for this firm to continue to

25  represent this debtor -- or Mr. Alexander.  In addition, Mr.

1  Alexander is in his own Chapter 7 case in California and does
2  not have the ability to continue to retain us in this matter.

3        As with these types of motions, we are available
4  if the Court has questions as to the specific reasons for the
5  withdrawal or for the termination of the relationship, and we
6  can provide those reasons to the Court in camera.

7        There has been an objection to the motion to
8  withdraw filed by the committee.  And, essentially, the
9  committee takes the position that it would be difficult for
10  this firm to withdraw at the present time because there are
11  unfinished issues with respect to the Court's order from
12  February 5th, 2021.

13        We have filed this morning -- or this afternoon,
14  not filed, but we submitted to debtors' counsel, the
15  committee, and to chambers a supplemental affidavit, and we
16  have also provided discovery in connection with what's been
17  called the Phase II discovery, which deals with the debtors'
18  personal financial information.  And as the Court could
19  imagine, because the debtor filed a Chapter 7 bankruptcy,
20  much of the information is already in the debtor's statement
21  of financial affairs and bankruptcy schedules in his personal
22  bankruptcy case.

23        With regard to the Court's order as far as
24  unfinished business, we took the Court's order very
25  seriously.  And, rightfully, you know, the Court was

1  concerned about immediately getting back bitcoin that was in

2  my client's possession that were derived from the debtors.

3  And on the day of the hearing my client turned over

4  approximately 50 bitcoin worth approximately $1.9 million at

5  the time and approximately $2.7 million in USDT, which is a

6  cryptocurrency that is tied to the United States dollar.

7          We have also provided or helped the debtor -- or

8  Mr. Alexander provide information that the Court was

9  concerned about.  If the Court recalls, there was a dispute

10  as to whether or not the debtor held 225 bitcoin or 150

11  bitcoin.  We've provided information to the debtor that 75

12  bitcoin were liquidated prepetition, and the proceeds of that

13  liquidation went into a coin-based account and ultimately

14  into Wells Fargo accounts and JPMorgan accounts.

15          We also provided information to the debtor and the

16  committee concerning a liquidation of 100 bitcoin in January

17  2021.  Again, it went into a bitcoin account and ultimately

18  into the USDT coin that was turned over to the debtor on

19  February 5th.  Some of the proceeds apparently wound up in

20  the Wells Fargo and the JPMorgan accounts.

21          We provided information concerning the JPMorgan

22  account, the Wells Fargo account, and the coin-based accounts

23  to the debtor and to the committee, and, specifically, we

24  provided what I believe are the relevant account statements

25  for those accounts.  And, ultimately, those accounts or

1  subsequently the DIP account into which those accounts flowed

2  were turned over to the debtor.

3          So, from my perspective, a large portion of the

4  Court's order from February 5th was to get the property back

5  to the debtor and get information to the debtor about the

6  transactions, and I believe that has occurred.  What has not

7  finally occurred or fully occurred is the deposition.  That

8  was still out there, that was interrupted by the debtor's

9  bankruptcy filing.  From our perspective, the debtor can sit

10  through a deposition.  Whether the debtor chooses to sit

11  through a deposition or not, that's not necessarily within

12  the control of our firm.

13          So the short of it, from our perspective, is that

14  if we get out of this case as a firm now, you know, the

15  committee and the debtor or the liquidating trustee still

16  have whatever rights they have against the debtor or against

17  Mr. Alexander.

18          I'm aware of no other material bitcoin that was

19  derived from -- or any crypto that was derived from Cred that

20  has not been turned over.  There are accountings that

21  probably need to be done and figured out, but the debtor and

22  the committee have all that information.  They probably need

23  to ask some deposition questions about it, but that can be

24  done without our firm and if the debt -- if Mr. Alexander

25  agrees to submit to a deposition.

1        But at this point, Your Honor, the continued

2   representation of Mr. Alexander by our firm is, regrettably,

3   not something that we can continue with in the scope of --

4   well, it's not something we can continue and we would request

5   that we be permitted to withdraw pursuant to RPC 1.16(b).

6        THE COURT:  Has Mr. Alexander undertaken steps to

7   obtain replacement counsel in this case?

8        MR. PFEIFFER:  Mr. Alexander has been advised that

9   he should undertake steps to retain replacement counsel.  I

10  believe he has communicated with replacement counsel, I do

11  not know if he has retained replacement counsel.

12       THE COURT:  Is Mr. Alexander's California counsel

13  on the call today?

14       MR. PFEIFFER:  If I may scroll through the list,

15  Your Honor?

16       THE COURT:  Yes.

17    (Pause)

18       THE COURT:  It doesn't appear on the list that I

19  have.

20       MR. PFEIFFER:  Your Honor, I don't see either the

21  bankruptcy lawyer or the general California counsel on the

22  list of today's hearing.

23       THE COURT:  What -- who's -- I didn't know there

24  was general California counsel.  I thought he had a

25  bankruptcy counsel in California, what's the general counsel

1  that he has?

2          MR. PFEIFFER:  Bird, Marella is the general

3  counsel or the litigation counsel handling various matters.

4  And the principal lawyer there is referenced in the

5  declaration, Thomas Reichert, who also has in his possession

6  some of the equipment that the Court instructed be turned

7  over to Mr. Reichert.

8          THE COURT:  All right.  Let me hear from UCC's

9  counsel who objected.

10          MR. AZMAN:  Good afternoon, Your Honor, Darren

11  Azman, McDermott Will & Emery, counsel to the committee.

12          Your Honor, the withdrawal motion is very much

13  tied to the contempt motion, as well as the original

14  emergency order that Your Honor entered.  The fact is, as we

15  sit here today, Mr. Alexander has not complied with the

16  order.  If it is acceptable, I think it would be beneficial

17  for us to address the contempt motion, as Mr. Pfeiffer did,

18  because it does lay the foundation for why we're asking the

19  Court to deny the withdrawal motion.  That is, once the order

20  is complied with, we have no objection to Buchanan's

21  withdrawal.  We understand the circumstances they're in right

22  now, but we're not there quite yet.

23          So, if it's acceptable, I'd like to address some

24  issues with the contempt motion.

25          THE COURT:  All right.  I'm not going to -- I'm

1  certainly not hearing the contempt motion, but you can

2  address whatever you think is necessary --

3           MR. AZMAN:  Yeah.

4           THE COURT:  -- to deal with the withdrawal motion.

5           MR. AZMAN:  Understood.  Your Honor, the emergency

6  order that you entered was very clear about what Alexander

7  was required to do and when he was required to do it.  As I

8  said a moment ago, as we sit here right now, he has not

9  complied with that order.  Yes, he has complied in some

10 respects and that's great, but he is nowhere near satisfying

11 the obligations that you laid out very explicitly, which

12 includes turnover of assets that Alexander has admitted are

13 Cred Capital's property and, equally important, a declaration

14 and discovery on a host of issues that will allow the

15 committee and ultimately the liquidation trust to recover

16 estate property and discharge their fiduciary obligations.

17          Time and time again, Your Honor, Mr. Alexander has

18 come up with excuse after excuse.  As you know, Mr.

19 Alexander's thrilling line of excuses culminated in his

20 personal bankruptcy filing in the middle of our deposition.

21 We had informally asked Mr. Alexander to consent to lifting

22 the stay so that we could enforce Your Honor's order.

23 Perhaps unsurprisingly, he declined.  So we went out to

24 California and the judge very quickly entered an oral order

25 from the bench immediately lifting the stay for us to proceed

1   on these issues before Your Honor.

2           Since that time, since that court had lifted the

3   automatic stay, we have gotten practically nothing from

4   Alexander other than around $130,000 of cash.  But up until

5   yesterday, late afternoon, we had not received a single piece

6   of additional information that Your Honor had ordered

7   Alexander to provide, including any information regarding

8   Alexander's assets that he deems to be his personal assets,

9   but we're all very skeptical in terms of characterizing it

10  that way.

11          This needs to end and we need to execute on the

12  order that Your Honor granted us, and Mr. Alexander needs to

13  respect the law.  We're under no illusion that the relief we

14  asked for in the contempt motion is extraordinary, there's no

15  other way to put it, but at the same time we don't see that

16  there's any other relief that would coerce Alexander to

17  comply with the order.  The estate already has significant

18  claims against Alexander, we believe in excess of $50

19  million.  There's questions about whether the automatic stay

20  would preclude monetary sanctions from being issued.  So Your

21  Honor has nothing left but jail time for Mr. Alexander, in

22  our view, until he complies with the order.  So that's why we

23  asked the Court to issue a bench warrant and to take that

24  action.

25          Now, late yesterday afternoon, around 4 o'clock,

1  we did receive additional discovery from Mr. Alexander.  And

2  then shortly before today's hearing, I would say about an

3  hour ago, we received a new declaration.  We received it the

4  same time it was sent to Your Honor's chambers.  We're still

5  reviewing everything, but there are already very obvious and

6  significant deficiencies, and I'm sure that list is going to

7  grow once we finish our review.  We're happy to walk through

8  our initial issues list for why he's not complying still.

9  I'm not sure that would be a productive use of the Court's

10 time, but the point is that Mr. Alexander is going to

11 continue to be evasive in his responses until there are

12 serious consequences imposed on him for noncompliance.

13         Now, that ties directly into -- excuse me just a

14 moment -- that ties directly into Buchanan's motion to

15 withdraw because the job is not done.  They're the ones who

16 are most inured with these matters, they received whatever

17 benefit it is that they received representing Mr. Alexander

18 for the past several months in the case, and we think the

19 case law is there to support the proposition that they should

20 be -- they should continue in that representation until the

21 job is done.

22         And, you know, I think the quote from our briefing

23 on this issue is probably best:  "An attorney has certain

24 obligations and duties to apply once representation is

25 undertaken that do not evaporate because the case becomes

1  more complicated or the work more arduous.  Attorneys must

2  never lose sight of the fact that the profession is a branch

3  of the administration of justice and not a mere money-getting

4  trade."

5          Your Honor, we don't think that Buchanan should be

6  able to withdraw, the job is not done.

7          THE COURT:  Thank you, Mr. Azman.

8          Anyone else wish to be heard before I go back to

9  Mr. Pfeiffer?

10         All right.  Mr. Pfeiffer, I sympathize with your

11 position and I understand the difficult position that you are

12 in, but at this point, given the fact that we have this

13 contempt motion pending, I think it would be inadvisable for

14 me to allow you to withdraw at this time until we can see

15 where this case is going to go.  And I'll talk about the

16 contempt motion in a moment, but -- so at this point I'm

17 going to -- I'll deny the motion to withdraw without

18 prejudice to renew it again, and I will actually bring it up

19 myself in the future to see where things are.

20         And hopefully Mr. Alexander understands the

21 seriousness of the situation that he is in at this time and

22 would seek to obtain new counsel, because if the contempt

23 motion goes forward, you know, there's a risk that he could

24 end up in jail.  And if he is in fact a fugitive from the law

25 in the U.K., he could end up in serious criminal -- a

1  criminal position as well.

2       So, for those reasons, I think it's not advisable

3  for me to allow you to withdraw at this time.

4       On the contempt motion, because it is asking for

5  Mr. Alexander's incarceration, there are serious questions

6  about whether or not a bankruptcy court as an Article 3 court

7  has the authority to do that.  And to avoid those issues and

8  also because, as I said, if Mr. Alexander is in fact a

9  fugitive from the U.K., it resulted in further criminal

10 allegations against him, then I think it's important that

11 this be heard by the district court and not by me.

12      And I'd point out that Rule 9020 provides that

13 Rule 9014 governs motions for contempt, and 9014 provides

14 that a person before contempt can be entered has to be given

15 notice and an opportunity to be heard.  And the notice under

16 9014 has to be the type of notice that is provided under Rule

17 7004 for summons -- for issuance of a summons and complaint.

18      So it's certainly not something that can be done

19 off the cuff because it wasn't -- the contempt is not alleged

20 to be something that occurred in front of me, it was

21 something that occurred outside the Court's purview.  So it

22 would require a full hearing and an opportunity for Mr.

23 Alexander to be heard before any contempt could be granted.

24      So I would -- well, what you should do -- and I've

25 actually already contacted the district court to give them a

1 heads-up that this might be coming -- is to file a motion to

2 withdraw the reference to allow the contempt motion to be

3 heard before the district court and proceed in that manner.

4         Does that -- does anybody have any questions about

5 that?

6         MR. AZMAN:  Thank you, Your Honor.  Would Your

7 Honor be willing to hear that motion for the withdrawal of

8 the reference on shortened notice?

9         THE COURT:  I think that gets heard by the

10 district court, not by me.

11         MR. AZMAN:  The district court, that's right,

12 that's right.  Okay, thank you.

13         THE COURT:  But, as I said, I did give the

14 district court a heads-up that this would be coming, likely

15 be coming.  So if it is something you want to do, I would go

16 ahead, and make the request and make the request on an

17 expedited fashion and see if the district court will agree to

18 do that.

19         MR. JONES:  Your Honor, I'm sorry to jump in, but

20 does your Court need to make a core/non-core determination

21 for the benefit of the district court or can we go right to

22 the district court.

23         THE COURT:  I think it can go just straight to the

24 district court to withdraw the reference.  I don't think

25 there's any need for me to make a determination on that, but

1    if you need to -- yeah, I don't know if this would be a core

2    or non-core matter, to be honest with you, Mr. Cousins.  I've

3    never dealt with this situation before either in practice or

4    on the bench, but --

5              MR. JONES:  Yeah, Your Honor, the only reason I

6    raise it, if I recall, there's some old case law that

7    requires Your Honor to make the core/non-core determination

8    to help the district court make a decision, but I think

9    because of the criminal overlay, I understand where the Court

10   is going.  And I'm sorry to intervene; I just want to make

11   sure this goes as quickly as possible.

12             THE COURT:  No, I understand, and it should be

13   done quickly and I think it's something that can be done

14   quickly.  If there is an issue, if the district court raises

15   a question about whether or not it's a core or non-core and

16   they need me to make a decision, I certainly would do that on

17   an expedited basis, but I don't think you need to -- in this

18   circumstance, I don't think you need to do that.  We're all

19   treading new ground here.

20             MR. JONES:  Yes.

21             THE COURT:  All right.  Anything else for today?

22             MR. AZMAN:  Not from the committee, Your Honor.

23   Thank you.

24             THE COURT:  Mr. Pfeiffer, if there is anything

25   that you think I should know that -- with regard to your

1  representation of Mr. Alexander, you can certainly submit

2  that to me in camera, and I will look at that and consider

3  that as we go forward on reconsidering your motion for

4  withdrawal later on down the road.

5          MR. PFEIFFER:  Your Honor, I appreciate that.

6  Would the Court consider just generally adjourning this

7  motion in lieu of denying it without prejudice, so that if

8  something does develop we don't have to go through the

9  process again?

10          THE COURT:  That's fine with me.  Yeah, we can do

11  that.  I'll just adjourn the motion until some undetermined

12  time in the future -- or why don't we -- hopefully, this

13  moves very quickly.  When is our next omnibus in this case?

14          MR. JONES:  Your Honor, it's April 1st, I believe.

15          THE COURT:  All right.  Why don't we -- why don't

16  you go ahead and re-notice it for April 1st, Mr. Pfeiffer,

17  and we'll consider it then --

18          MR. PFEIFFER:  We will.  Thank you, Your Honor.

19          THE COURT:  -- and we'll look at it again at the

20  next omnibus hearing.  Hopefully, by then we'll be a little

21  further down the road with the district court and we'll know

22  what's going on.  All right?

23          Is there anything else just status-wise or

24  housekeeping-wise that we can talk about as long as we're on

25  the call today?  Nothing?  Everything else is going smoothly

1  except for this one hiccup?

2          MR. AZMAN:  Your Honor, it's Darren Azman again

3  for the committee.  The only status update I think that is

4  worthwhile is we're moving towards going effective under the

5  plan.  So we're -- you know, we don't have a time frame, but

6  we're working through those issues now.  And there are some,

7  you know, unique circumstances as always in this case with

8  transferring assets from the debtors to the trust and some

9  other related issues, but that's the direction we're heading

10  in and we're hopeful to go effective soon.

11          THE COURT:  Okay.  Thank you, Mr. Azman.

12          All right.  Well, if there's nothing else for

13  today, then we are adjourned and I'll see everybody on April

14  1st.

15          COUNSEL:  Thank you, Your Honor.

16          THE COURT:  Thank you.  We're adjourned.

17       (Proceedings concluded at 2:24 p.m.)

18

19

20

21

22

23

24

25

1                          CERTIFICATION

2               I certify that the foregoing is a correct

3   transcript from the electronic sound recording of the

4   proceedings in the above-entitled matter to the best of my

5   knowledge and ability.

6

7

8

9   /s/ Tracey Williams                    March 17, 2021

10  Tracey Williams, CET-914

11  Certified Court Transcriptionist

12  For Reliable

13

14

15

16

17

18

19

20

21

22

23

24

25