# <u>EXHIBIT B</u>

**Lyon Declaration**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
|  | ) |  |
| Debtors.[1] | ) |  |
|  | ) |  |

## DECLARATION OF GRANT LYON IN SUPPORT OF AMENDED APPLICATION OF INVICTUS GLOBAL MANAGEMENT, LLC FOR ALLOWANCE AND PAYMENT OF FEES PURSUANT TO BANKRUPTCY CODE SECTIONS 503(b)(3)(D) AND 503(b)(4)

I, Grant Lyon, declare and state under penalty of perjury as follows:

1.       I submit this declaration (the "Declaration") in support of the *Amended Application of Invictus Global Management, LLC for Allowance and Payment of Fees Pursuant to Bankruptcy Code Sections 503(b)(3)(D) and 503(b)(4)* (the "Application").[2]

2.       I am the co-founder of Arete Capital Partners, LLC, and have over 30 years' experience in the financial restructuring world.  I have sat on over 25 boards of directors of companies as an independent director and have served many times as a Chapter 11 trustee or state court receiver.  I was duly appointed as the Debtors' independent director or manager (as the case may be) and currently serve as the sole member of Debtor Cred Inc.'s board of directors.  I am over the age of 18 and am authorized to make this declaration (the "Declaration") on behalf of the Debtors.

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566).  The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

[2]   Capitalized terms used but not otherwise defined in this Declaration have the meanings set forth in the Application.

3.      I am familiar with the matters set forth herein and, if called as a witness, I could and would testify as follows.

4.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by the Debtors and the Debtors' professionals, or learned from my review of other documents.

**The Debtors' Need for Postpetition Financing and Substantial Contribution from Invictus**

5.      In my judgment, formed based on the unique facts and circumstances of these chapter 11 cases, at the commencement of these cases the Debtors required access to postpetition financing to ensure they were able to preserve the value of their estates and maximize recoveries to all of the Debtors' creditors.  Invictus's agreement to provide DIP Financing to the Debtors protected the Debtors against uncertainty in the collection of outstanding receivables and the downside risk in the cryptocurrency market that existed at all times during these Chapter 11 Cases.

6.      Because the Debtors did not have a prepetition lender and largely shuttered their operations prepetition, finding postpetition financing was difficult but deemed necessary in light of, among other things, prepetition business issues and liquidity concerns that were ever present during the Chapter 11 Cases given the uncertainty associated with collection efforts and the volatility of cryptocurrency.

7.      In an effort to obtain the most attractive financing terms possible, the Debtors solicited financing offers from more than 35 different lenders.  From this group, the Debtors received five indications of interest and two term sheets.   Based upon the Debtors' negotiations with potential lenders and the term sheets received, it was clear that the proposal for financing from Invictus represented the best available option for the Debtors.  The DIP financing from

Invictus was the only proposal that could meet both the potential sizing and flexibility needs of these Chapter 11 Cases and represented the best source of post-petition financing available to the Debtors.

8.       After Invictus and the Debtors agreed to a DIP financing term sheet, the parties engaged in good-faith, arms-length discussions and document negotiations, which ultimately led to a fully negotiated DIP Financing including a Debtor-in-Possession Term Loan Promissory Note and a related DIP order, DIP motion and proposed budget.

9.       Fortunately, the Debtors were able to recover millions of dollars in cash and cryptocurrency from third parties during February 2021.  As a result, the Debtors ultimately were able to have sufficient assets to cover their disbursements that would be incurred through confirmation of the liquidating plan without the need for the DIP Financing.  However, in the period between the signing of the term sheet and the Debtors recovery of cryptocurrency from the third parties, the Debtors were mindful that additional liquidity very well could have been required in the event that the Debtors' most valuable hard assets – cryptocurrency – decreased in value or the Debtors' attempts to collect on outstanding receivables were unsuccessful.  These risks prompted the Debtors to determine that having financing available to the Debtors through Invictus was essential to protecting the Debtors' estates during the balance of the Chapter 11 Cases, and in the best interests of the Debtors as it would have allowed the Debtors to not have to liquidate cryptocurrency if collections were unsuccessful from various third parties.

10.      The postpetition financing that Invictus was willing and able to provide mitigated the significant risk that the Debtors would be unable to preserve and maximize the value of their estates, and administer these chapter 11 cases.

11.      Further, the Debtors could have converted the DIP Financing into an Exit Facility, which would have given the Debtors liquidity to continue and pursue further litigation postconfirmation.  Moreover, I understand that Invictus is well positioned to provide funding for the liquidation trust that will be formed under the confirmed chapter 11 plan as a result of the diligence and work that was completed during the Chapter 11 Cases.

**<u>Conclusion</u>**

12.      In light of the foregoing, I believe it was essential that the Debtors have DIP Financing available to them from Invictus during the Chapter 11 Cases to ensure that the Debtors would not face administrative insolvency in connection with a failure to collect on various accounts receivables and the very real risk of a drop in cryptocurrency values.  Accordingly, in my opinion, the approval of the Application is warranted as it reflects the substantial contributions that was made by Invictus to the Debtors' estates and is a proper exercise of the Debtors' business judgment to support approval of the Application.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Executed on: March 23, 2021
New York, New York

                                                                    */s/ Grant Lyon*
                                                                    Grant Lyon
                                                                    Debtors' Independent Director