**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

**MODIFIED FIRST AMENDED COMBINED JOINT PLAN OF LIQUIDATION AND
DISCLOSURE STATEMENT OF CRED INC. AND ITS SUBSIDIARIES
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**PAUL HASTINGS LLP**
James T. Grogan (admitted *pro hac vice*)
Mack Wilson (admitted *pro hac vice*)
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
Telephone: (713) 860-7300
Facsimile: (713) 353-3100
Email: jamesgrogan@paulhastings.com
mackwilson@paulhastings.com

- and -

**PAUL HASTINGS LLP**
G. Alexander Bongartz (admitted *pro hac vice*)
Derek Cash (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
Email: alexbongartz@paulhastings.com
derekcash@paulhastings.com

**COUSINS LAW LLC**
Scott D. Cousins (No. 3079)
Brandywine Plaza West 1521 Concord
Pike, Suite 301 Wilmington, Delaware
19803 Telephone: (302) 824-7081
Facsimile: (302) 295-0331
Email: scott.cousins@cousins-law.com

*Co-Counsel to the Debtors and Debtors in Possession*

Dated: March 10, 2021

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566).  The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

# TABLE OF CONTENTS

**PAGE**

**Article  I. DEFINED TERMS** ....................................................................................1

**Article  II. INTERPRETATION OF COMBINED PLAN AND DISCLOSURE STATEMENT** ....................................................................13

    **2.1**    **Application of Definitions; Rules of Construction; Computation of Time**............................................................................................13

    **2.2**    **Relief Sought by Filing the Combined Plan and Disclosure Statement**.........13

**Article  III. BACKGROUND – THE DEBTORS' CORPORATE HISTORY, STRUCTURE, AND BUSINESS OVERVIEW**..........................................14

    **3.1**    **General Background – Overview of the Debtors** ....................................14
    **3.2**    **The Debtors' Prepetition Capital Structure**.........................................15
    **3.3**    **Events Leading to the Chapter 11 Cases** ............................................15
    **3.4**    **The Chapter 11 Cases** ..................................................................19

**Article  IV. TAX CONSEQUENCES** ......................................................................25

    **4.1**    **Tax Consequences.** .......................................................................25

**Article  V. CERTAIN RISK FACTORS TO BE CONSIDERED** ...........................26

    **5.1**    **Risk Factors to Be Considered**........................................................26
    **5.2**    **Alternatives to this Combined Plan and Disclosure Statement** ................31

**Article  VI. BEST INTERESTS AND FEASIBILITY** ...........................................31

    **6.1**    **Best Interests Test**........................................................................31
    **6.2**    **Feasibility**..................................................................................31

**Article  VII. SUMMARY OF ASSETS AND TREATMENT OF CLAIMS AND INTERESTS**..................................................................................32

    **7.1**    **Summary of Assets**......................................................................32
    **7.2**    **Summary of Treatment of Claims and Equity Interests** ........................33

**Article  VIII. CONFIRMATION AND VOTING PROCEDURES** .........................35

    **8.1**    **Combined Hearing**.......................................................................35
    **8.2**    **Procedure for Objections** ..............................................................35
    **8.3**    **Voting Procedures**........................................................................35

**Article IX. PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND OTHER UNCLASSIFIED CLAIMS ...................... 38**

9.1     Administrative Expense Claims ................................................................. 38
9.2     Professional Fee Claims .......................................................................... 40
9.3     Priority Tax Claims ................................................................................. 41

**Article X. TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ........ 41**

10.1    Class 1: Other Priority Claims ................................................................. 41
10.2    Class 2: Secured Tax Claims .................................................................... 41
10.3    Class 3: Other Secured Claims ................................................................. 42
10.4    Class 4: General Unsecured Claims. ......................................................... 42
10.5    Class 5: Convenience Claims. ................................................................... 43
10.6    Class 6: Subordinated Securities Claims .................................................. 43
10.7    Class 7: Equity Interests in Debtors ........................................................ 43
10.8    Reservation of Rights Regarding Claims and Equity Interests ...................... 44

**Article XI. ACCEPTANCE OR REJECTION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ................................................................ 44**

11.1    Voting of Claims ..................................................................................... 44
11.2    Elimination of Vacant Classes ................................................................. 44
11.3    Nonconsensual Confirmation ................................................................... 45
11.4    Revocation of the Combined Plan and Disclosure Statement ....................... 45

**Article XII. MEANS OF IMPLEMENTATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ................................................................ 45**

12.1    Limited Substantive Consolidation ........................................................... 45
12.2    Global Settlement ................................................................................... 46
12.3    Liquidation of the Debtors ....................................................................... 46
12.4    Effectuating Documents; Further Transactions .......................................... 53
12.5    Cancellation of Instruments and Stock ..................................................... 53
12.6    Disposition of Books and Records ............................................................ 53
12.7    Corporate Existence and Dissolution of Debtors ........................................ 54
12.8    Closing the Chapter 11 Cases .................................................................. 54

**Article XIII. DISTRIBUTIONS UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT ................................................................ 54**

13.1    Distributions on Allowed General Unsecured Claims ................................... 54
13.2    Timing of Distributions ........................................................................... 54
13.3    Delivery of Distributions ......................................................................... 55
13.4    Undeliverable and Unclaimed Distributions .............................................. 56
13.5    Transfer of Claims ................................................................................. 56
13.6    Manner of Payment ................................................................................ 57
13.7    Time Bar to Cash Payments by Check ....................................................... 57

**13.8**   **No Fractional Cents** ..................................................................**57**
**13.9**   **Setoffs and Recoupment** ........................................................**57**
**13.10** **Allocation of Plan Distributions Between Principal and Interest** .......**57**
**13.11** **Distributions After Effective Date** .....................................**58**
**13.12** **Interest on Claims** ................................................................**58**
**13.13** **No Distribution in Excess of Allowed Amount of Claim** ........**58**
**13.14** **Payment of Taxes on Distributions Received Pursuant to the**
       **Combined Plan and Disclosure Statement** ...........................**58**
**13.15** **Reserves** ...............................................................................**58**
**13.16** **Withholdings** ...........................................Error! Bookmark not defined.
**13.17** **De Minimis Distributions** .....................................................**59**

**Article XIV. PROCEDURES FOR RESOLVING CONTINGENT,**
          **UNLIQUIDATED, AND DISPUTED CLAIMS** ...........................**59**

**14.1**   **Claims Administration Responsibilities** .................................**59**
**14.2**   **Claims Objections** ..................................................................**59**
**14.3**   **Estimation of Claims** .............................................................**60**
**14.4**   **Adjustment to Claims Without Objection** ..............................**60**
**14.5**   **No Distributions Pending Allowance** .....................................**61**
**14.6**   **Distributions After Allowance** ..............................................**61**
**14.7**   **Disallowance of Certain Claims** ............................................**61**
**14.8**   **Amendments to Claims** ..........................................................**61**
**14.9**   **Claims Paid and Payable by Third Parties** ...........................**61**

**Article XV. EXECUTORY CONTRACTS AND LEASES** ........................**62**

**15.1**   **Executory Contracts and Unexpired Leases Deemed Rejected** ........**62**
**15.2**   **Bar Date For Rejection Damages** ..........................................**62**

**Article XVI. CONDITIONS PRECEDENT TO THE CONFIRMATION AND THE**
          **EFFECTIVE DATE** ........................................................**63**

**16.1**   **Conditions Precedent to Confirmation of the Combined Plan and**
       **Disclosure Statement** .............................................................**63**
**16.2**   **Conditions Precedent to the Effective Date** ..........................**63**
**16.3**   **Waiver of Conditions Precedent to the Effective Date** ..........**64**
**16.4**   **Satisfaction of Conditions** .....................................................**64**

**Article XVII. EFFECT OF CONFIRMATION** ........................................**65**

**17.1**   **Compromise and Settlement of Claims, Equity Interests, and**
       **Controversies** .........................................................................**65**
**17.2**   **Binding Effect** ........................................................................**65**
**17.3**   **Reservation of Causes of Action/Reservation of Rights** .......**65**

**Article  XVIII. EXCULPATION, INJUNCTION, AND RELATED PROVISIONS**............66

    **18.1**    **Exculpation**................................................................................66
    **18.2**    **Releases by Debtors, the Estates, the Liquidation Trust, and the Liquidation Trustee; Third Party Releases**.....................................66
    **18.3**    **Avoidance Actions/Objections**...............................................67
    **18.4**    **Injunction**...............................................................................67
    **18.5**    **Terms of Stays and Injunctions**.............................................68

**Article XIX. RETENTION OF JURISDICTION**.....................................68

**Article XX. MISCELLANEOUS PROVISIONS**.......................................70

    **20.1**    **Effectuating Documents and Further Transactions**.................70
    **20.2**    **Date of Distributions and Other Actions**..............................70
    **20.3**    **Withholding and Reporting Requirements**.............................70
    **20.4**    **Corporate Action**...................................................................70
    **20.5**    **Modification of the Combined Plan and Disclosure Statement**.......70
    **20.6**    **Revocation or Withdrawal of the Combined Plan and Disclosure Statement**.........................................................................71
    **20.7**    **Plan Supplement**....................................................................71
    **20.8**    **Payment of Statutory Fees**.....................................................71
    **20.9**    **Dissolution of the Committee**.................................................72
    **20.10**  **Continued Confidentiality Obligations**....................................72
    **20.11**  **Exemption from Transfer Taxes**............................................72
    **20.12**  **Expedited Tax Determination**.................................................72
    **20.13**  **Exhibits/Schedules**................................................................72
    **20.14**  **Substantial Consummation**....................................................72
    **20.15**  **Severability of Combined Plan and Disclosure Statement Provisions**...........73
    **20.16**  **Governing Law**......................................................................73
    **20.17**  **Reservation of Rights**............................................................73
    **20.18**  **Computation of Time**..............................................................73
    **20.19**  **Post-Confirmation Reporting**.................................................73
    **20.20**  **Notices**..................................................................................74

**NOTICE**

THE INFORMATION CONTAINED HEREIN IS INCLUDED FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE COMBINED JOINT PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT OF CRED INC. AND ITS SUBSIDIARIES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT.  NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT, REGARDING THE COMBINED PLAN AND DISCLOSURE STATEMENT OR THE SOLICITATION OF ACCEPTANCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT.  THIS COMBINED PLAN AND DISCLOSURE STATEMENT WAS SUBSTANTIALLY COMPILED FROM THE DEBTORS' BOOKS AND RECORDS TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF.

UNLESS ANOTHER TIME IS SPECIFIED, THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF.  THE DELIVERY OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS COMBINED PLAN AND DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(c) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER RULES GOVERNING DISCLOSURE OUTSIDE THE CONTEXT OF CHAPTER 11 OF THE BANKRUPTCY CODE.  NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OF THE INFORMATION CONTAINED HEREIN.

**THIS COMBINED PLAN AND DISCLOSURE STATEMENT PROVIDES FOR THE SUBSTANTIVE CONSOLIDATION OF THE ASSETS AND LIABILITIES OF THE DEBTORS FOR CERTAIN PURPOSES AND CONTEMPLATES THE APPOINTMENT OF LIQUIDATION TRUSTEES TO WIND-DOWN THE DEBTORS' ESTATES.**

NO REPRESENTATION CONCERNING THE DEBTORS OR THE VALUE OF THE DEBTORS' ASSETS HAS BEEN AUTHORIZED BY THE BANKRUPTCY COURT OTHER THAN AS SET FORTH IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT OR ANY OTHER DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT. THE DEBTORS ARE NOT RESPONSIBLE FOR ANY INFORMATION,

REPRESENTATION OR INDUCEMENT MADE TO OBTAIN YOUR ACCEPTANCE, WHICH IS OTHER THAN OR INCONSISTENT WITH INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ON THE DEBTORS OR HOLDERS OF CLAIMS OR EQUITY INTERESTS.  CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS.  THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

EACH HOLDER OF A CLAIM OR EQUITY INTEREST SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL HEREIN.  HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE.  THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED PLAN AND DISCLOSURE STATEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

**FOR EASE OF REFERENCE ONLY, AND WITH CERTAIN EXCEPTIONS, ARTICLE I THROUGH ARTICLE VI HEREIN GENERALLY CONTAIN THE DISCLOSURE STATEMENT PROVISIONS AND ARTICLE VII THROUGH ARTICLE XX HEREIN GENERALLY CONTAIN THE PLAN PROVISIONS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

# INTRODUCTION

The Debtors in these Chapter 11 Cases hereby propose their Combined Plan and Disclosure Statement pursuant to sections 1125 and 1129 of the Bankruptcy Code. The Debtors are the proponents of the Combined Plan and Disclosure Statement within the meaning of section 1129 of the Bankruptcy Code. Capitalized terms used and not otherwise defined herein have the meanings ascribed to such terms in Article I hereof.

The Combined Plan and Disclosure Statement constitutes a liquidating Chapter 11 plan for the Debtors and provides for Distribution of the Debtors' Assets already liquidated or to be liquidated over time to Holders of Allowed Claims in accordance with the terms of the Combined Plan and Disclosure Statement and the priority provisions of the Bankruptcy Code. The Combined Plan and Disclosure Statement contemplates the appointment of Liquidation Trustees to implement the terms of the Combined Plan and Disclosure Statement and make Distributions in accordance with its terms. Except as otherwise provided by Order of the Bankruptcy Court, Distributions will occur at various intervals after the Effective Date as determined by the Liquidation Trustees.

Since the Petition Date, the Debtors and their professionals have worked tirelessly to develop a plan that would maximize the value of the Debtors' Estates for the benefit of creditors and minimize the amount of time spent in chapter 11. After a thorough analysis of potential restructuring alternatives and extensive negotiation with the Committee, the Debtors reached a global settlement with the Committee that is embodied in the Combined Plan and Disclosure Statement.

The Debtors believe that the Combined Plan and Disclosure Statement presents the best path forward and is in the best interests of the Debtors, their Creditors, and all parties in interest. The Combined Plan and Disclosure Statement is premised on the creation of the Liquidation Trust, which will succeed to all rights, interests and property of the Debtors, and to which the Debtors will transfer their Assets, including proceeds from any pre-Effective Date sales, the Debtors' Cryptocurrency, and Causes of Action of the Debtors' Estates (other than Causes of Action that are being released under the Combined Plan and Disclosure Statement). The Liquidation Trustees, who will be selected by members of the Committee, will be tasked with, among other things, monetizing the Debtors' remaining Assets and making Distributions to Holders of Allowed General Unsecured Claims in Class 4 and Holders of Convenience Claims in Class 5. **The Debtors believe that the Plan is in the best interest of the Debtors' Estates and all stakeholders, and recommend that all Holders of Claims entitled to vote, vote in favor of the Plan.**

**The Combined Plan and Disclosure Statement provides for limited substantive consolidation of the Assets and Liabilities of the Debtors. Accordingly, for purposes of the Combined Plan and Disclosure Statement only, the Assets and Liabilities of the Debtors are treated as the Assets and Liabilities of a single substantively consolidated entity. Claims filed against multiple Debtors seeking recovery of the same debt shall be treated as a single, non-aggregated Claim against the consolidated Estates to the extent that such Claim is an Allowed Claim.**

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtors expressly reserve the right to alter, amend or modify the Combined Plan and Disclosure Statement one or more times before substantial consummation thereof.

## ARTICLE  I.
## DEFINED TERMS

**1.1**     **"A/P/S Claim"** means any Claim that is an Administrative Expense Claim, Other Priority Claim, Priority Tax Claim, or Secured Claim.

**1.2**     **"Administrative Expense Claim"** means any claim (including, but not limited to, Professional Fee Claims) for costs and expenses of administration of the Chapter 11 Cases that is entitled to priority pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code; provided, however, that any fees or charges assessed against the Debtors' Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930 are excluded from the definition of Administrative Expense Claim and shall be paid in accordance with Section 20.8 hereof.

**1.3**     **"Administrative Expense Claims Bar Date"** means the date as set forth in Section 9.1(b) hereof.

**1.4**     **"Affiliate"** has the meaning set forth in section 101(2) of the Bankruptcy Code.

**1.5**     **"Allowed"** means, with reference to any Claim against the Debtors (including any Administrative Expense Claim) or portion thereof, (a) any Claim that has been listed by the Debtors in the Schedules (as such Schedules may be amended by the Debtors or the Liquidation Trustee from time to time in accordance with Bankruptcy Rule 1009) as liquidated in amount other than zero or unknown and not Disputed or Contingent, and for which no Proof of Claim has been filed, (b) any timely filed Proof of Claim or request for payment of Administrative Expense Claim, as to which no objection to the allowance thereof, or action to subordinate, avoid, classify, reclassify, expunge, estimate, or otherwise limit recovery with respect thereto, has been filed within the applicable period of limitation fixed by the Combined Plan and Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, and which applicable period of limitations has expired, (c) any Claim expressly allowed by a Final Order or under the Combined Plan and Disclosure Statement, or (d) any Claim that is compromised, settled or otherwise resolved pursuant to the authority granted to the Liquidation Trustees under Section 14.1 hereof and the Liquidation Trust Agreement; provided, however, that Claims temporarily allowed solely for the purpose of voting to accept or reject the Combined Plan and Disclosure Statement pursuant to an order of the Bankruptcy Court shall not be considered Allowed Claims; provided, further, that any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code shall not be considered an Allowed Claim.

**1.6**     **"Applicable Cryptocurrency"** means, with respect to any Holder of a Customer Claim, the Cryptocurrency or Cryptocurrencies used by such Holder in its Cryptocurrency Transactions with each applicable Debtor.  To the extent a Customer engaged in Cryptocurrency Transactions involving more than one form of Cryptocurrency, the amount and denomination of Applicable Cryptocurrency for each Equivalent Cryptocurrency Distribution shall be determined based on the Applicable Cryptocurrency Ratio.

**1.7**     **"Applicable Cryptocurrency Ratio"** means, with respect to a denomination of Cryptocurrency used by a Holder of a Customer Claim in a Cryptocurrency Transaction, the

ratio, expressed as a percentage, of (x) the Dollar Denominated Value of such Cryptocurrency to (y) the Dollar Denominated Value of all Cryptocurrencies used by such Holder in all of its Cryptocurrency Transactions.  For example, if a Holder of a Customer Claim engaged in Cryptocurrency Transactions involving Peercoin valued at $1,000 as of the Petition Date and Vertcoin valued at $4,000 as of the Petition Date, the Applicable Cryptocurrency Ratio for Peercoin would be 20%, and the Applicable Cryptocurrency Ratio for Vertcoin would be 80%.

**1.8**    **"Assets"** means the assets of each of the Debtors, of any nature whatsoever, including all property of the Estates under and pursuant to section 541 of the Bankruptcy Code, Cash, Causes of Action, rights, interests and property, real and personal, tangible and intangible, including all files, books and records of the Estates.

**1.9**    "**Auction**" means the competitive bidding process in relation to the sale of the Debtors' assets, conducted pursuant to the Bid Procedures Order.

**1.10**    **"Avoidance Actions"** means any and all avoidance, recovery, subordination, or other actions or remedies that may be brought on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502(d), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and/or 553 of the Bankruptcy Code.

**1.11**    **"Ballot"** means the form distributed to each Holder of an Impaired Claim or Equity Interest that is entitled to vote to accept or reject the Combined Plan and Disclosure Statement on which is to be indicated an acceptance or rejection of the Combined Plan and Disclosure Statement.

**1.12**    **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

**1.13**    **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware.

**1.14**    **"Bankruptcy Rules"** means (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and the Local Bankruptcy Rules, as amended from time, (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code, (iii) the applicable Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware, and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Case or proceedings therein, as the case may be.

**1.15**    **"Bar Date"** means (i) February 10, 2021, at 5:00 p.m. (prevailing Eastern Time) and (ii) such other date(s) fixed by order(s) of the Bankruptcy Court, by which all Entities, including Governmental Units, asserting a Claim against any Debtor must have filed a Proof of Claim against such Debtor or be forever barred from asserting such Claim in the Chapter 11 Cases.

**1.16**    "**Bid Procedures Order**" means the order of the Bankruptcy Court, dated December 21, 2020 [Docket No. 270], setting forth the procedures for competitive bidding for the Sale Transaction, as amended or supplemented from time to time.

**1.17**    "**Business Day**" means any day, other than a Saturday, Sunday, or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.18**    "**Cash" or "$**" means the legal tender of the United States of America, including any wire transfer or instrument negotiable for legal tender of the United States of America.

**1.19**    "**Causes of Action**" means all claims, actions, causes of action, third-party claims, counterclaims, crossclaims, third-party claims, contribution claims, or any other claims whatsoever (including any Causes of Action described herein) of the Debtors and/or their Estates that may be pending on the Effective Date (including all such Causes of Action brought by the Committee pursuant to the Plan Support Agreement) or instituted after the Effective Date against any Entity based in law, equity, or otherwise, including under the Bankruptcy Code, whether known or unknown, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted as of the date of entry of the Confirmation Order, including Avoidance Actions.

**1.20**    "**Causes of Action List**" means the non-exclusive list of Causes of Action attached hereto as **Exhibit A**.

**1.21**    "**Chapter 11 Cases**" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court and jointly administered under Case No. 20-12836 (JTD).

**1.22**    "**Claim**" means any right to payment from the Debtors, from property of the Debtors or from the Debtors' Estates, whether or not such right is reduced to judgment, liquidated, Unliquidated, fixed, Contingent, matured, unmatured, Disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown, or asserted; or any right to an equitable remedy for breach of performance by the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, Contingent, matured, unmatured, Disputed, undisputed, secured, or unsecured.

**1.23**    "**Claim Objection**" means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate, or estimate any Claim (including the resolution of any request for payment of any Administrative Expense Claim).

**1.24**    "**Claims Agent**" means the Debtors' claims agent, Donlin, Recano & Company, Inc., or its successors and assigns.

**1.25**    "**Claims Register**" means the official register of Claims maintained by the Claims Agent.

**1.26**    "**Class**" means a category of Holders of Claims or Equity Interests set forth in Section 7.2 hereof.

**1.27** **"Clerk"** means the clerk of the Bankruptcy Court.

**1.28** **"Collateral"** means any property or interest in property of the Debtors' Estates subject to a Lien, charge, right of setoff, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.29** **"Combined Hearing"** means the hearing held by the Bankruptcy Court to consider (i) final approval of the Combined Plan and Disclosure Statement as providing information pursuant to section 1125 of the Bankruptcy Code and (ii) pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Combined Plan and Disclosure Statement, as such hearing may be adjourned or continued from time to time.

**1.30** **"Combined Hearing Notice"** has the meaning set forth in Section 8.3(d).

**1.31** **"Combined Plan and Disclosure Statement"** means this combined disclosure statement and chapter 11 plan of liquidation, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as the same may be altered, amended, or modified from time to time.

**1.32** **"Committee"** means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

**1.33** **"Confirmation Date"** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the Docket.

**1.34** **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code.

**1.35** **"Consummation"** means the occurrence of the Effective Date.

**1.36** **"Contingent"** means, with reference to a Claim, a Claim the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened, or been triggered as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the Holder of such Claim and whether or not a relationship between the Holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

**1.37** **"Convenience Claim"** means a Claim, subject to Section 13.1 hereof, against one or more of the Debtors that would otherwise be a General Unsecured Claim that (a) was scheduled or filed on or prior to the Bar Date in an amount less than or equal to $1,000 or (b) is in an amount that has been reduced to $1,000 pursuant to a Convenience Class Election made by the Holder of such Claim; provided, however, that: (i) where any portion(s) of a Claim has been transferred on or after the Petition Date, any transferred portion(s) shall continue to be treated together with such Claim as a single Claim for purposes of determining whether such Claim qualifies as a Convenience Claim; and (ii) any General Unsecured Claim that was originally

Allowed in excess of $1,000 may not be subdivided into multiple General Unsecured Claims of $1,000 or less for purposes of receiving treatment as a Convenience Claim.

**1.38** **"Convenience Class Election"** means an irrevocable election made on the Ballot by the Holder of a Claim against the Debtors that would otherwise be a General Unsecured Claim in an amount greater than $1,000 to reduce such Claim to $1,000 in order to be treated as a Convenience Claim. Subject to the occurrence of the Effective Date, such election shall be deemed to amend such General Unsecured Claim to reduce the amount of such Claim to $1,000.

**1.39** **"Convertible Notes"** means those certain convertible notes issued by Cred in August and September 2020 in the amount of approximately $2.6 million, bearing interest at a rate of 3% per annum and that were scheduled to mature 48 months after issuance.

**1.40** **"Cred"** means Cred Inc.

**1.41** **"Cred Capital"** means Cred Capital, Inc.

**1.42** **"Creditor"** means any Entity that is the Holder of a Claim against a Debtor.

**1.43** **"Cryptocurrency"** means any digital asset that is not backed by a government. The term "cryptocurrency" is to be interpreted broadly to include all forms of digital assets, virtual currency, cryptocurrency, tokens, security tokens, utility tokens and stablecoins. This includes bitcoin, ether, LBA tokens, Peercoin, Vertcoin, any ERC-20 compliant token, any altcoin, and any other cryptocurrency.

**1.44** **"Cryptocurrency Election"** means the election of any Holder of a Customer Claim to receive its Distribution in the Cryptocurrency utilized by such Holder in its Cryptocurrency Transaction(s) with the Debtors, which election was made on a Proof of Claim timely submitted by such Holder.

**1.45** **"Cryptocurrency Election E-Wallet Address"** means the E-Wallet alphanumerical sequence provided by Holders of Claims that make a Cryptocurrency Election.

**1.46** **"Cryptocurrency Transaction"** means a prepetition transaction involving any transfer by an Entity of Cryptocurrency to the Debtors, whether directly or indirectly.

**1.47** **"Customer"** means an Entity that engaged in a Cryptocurrency Transaction with one or more of the Debtors.

**1.48** **"Customer Claim"** means a General Unsecured Claim and/or an Other Secured Claim of a Customer arising from a Cryptocurrency Transaction.

**1.49** **"De Minimis Distribution"** means a Distribution to be made in accordance with the terms of this Combined Plan and Disclosure Statement that is $25.00 or less.

**1.50** **"Debtors"** means each of Cred, Cred (US) LLC, Cred Capital, Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC.

**1.51** **"Debtors-in-Possession"** means the Debtors in their capacity as debtors-in-possession in the Chapter 11 Cases under sections 1107(a) and 1108 of the Bankruptcy Code.

**1.52** **"Definitive Documents"** means the documents (including any related orders, agreements, instruments, schedules, or exhibits) that are necessary or desirable to implement or otherwise relate to the restructuring transaction, including, but not limited to: (a) the motion to approve the Debtors' entry into the Plan Support Agreement [Docket No. 279], (b) the order approving the Debtors' entry into the Plan Support Agreement [Docket No. 480], (c) the Combined Plan and Disclosure Statement (and all exhibits thereto), (d) the solicitation materials for the Combined Plan and Disclosure Statement; (e) the Disclosure Statement Order, (f) the Confirmation Order, (g) the Liquidation Trust Agreement; and (h) any other documents or exhibits related to or contemplated in the foregoing clauses (a) through (g), in each case in form and substance consistent with the Plan Support Agreement and reasonably acceptable to the Committee.

**1.53** **"DIP Financing Agreement"** means any future Senior Secured Super-Priority Debtor in Possession Credit Agreement, by and among the Debtors and any future lender, as amended, restated, modified, supplemented, or replaced from time to time.

**1.54** **"DIP Financing Claim"** means a claim arising under the DIP Financing Agreement and the DIP Orders.

**1.55** **"DIP Orders"** means any Interim and/or Final Order approving the DIP Financing Agreement.

**1.56** **"Disallowed"** means, with reference to any Claim, (a) a Claim, or any portion thereof, that has been disallowed by a Final Order, (b) a Claim, or any portion thereof, that is expressly disallowed under the Combined Plan and Disclosure Statement, (c) a Claim listed in the Schedules as zero or as Disputed, Contingent, or unliquidated and in respect of which a Proof of Claim has not been timely filed or deemed timely filed pursuant to the Combined Plan and Disclosure Statement, the Bankruptcy Code, or any Final Order, notwithstanding anything in section 506(d) of the Bankruptcy Code to the contrary, (d) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code, (e) where the holder of a Claim is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such Property, for which such Person, Entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, or (f) is for reimbursement or contribution that is contingent as of the time of allowance or disallowance of such claim.

**1.57** **"Disclosure Statement Order"** means the order of the Bankruptcy Court approving, among other things, on an interim basis, the adequacy of the disclosures contained herein pursuant to section 1125 of the Bankruptcy Code and establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Combined Plan and Disclosure Statement, entered by the Bankruptcy Court on January 21, 2021.

**1.58**   **"Disputed"** means, with reference to any Claim, a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim.

**1.59**   **"Distribution"** means a delivery of Cash and/or Cryptocurrency, as the case may be, by the Liquidation Trustee to the Holders of Allowed Claims pursuant to the Combined Plan and Disclosure Statement.

**1.60**   **"Distribution Pro Rata Share"** means the ratio (expressed as a percentage) of (x) the amount of an Allowed General Unsecured Claim against the Debtors to (y) the aggregate amount of all (A) Allowed General Unsecured Claims against the Debtors on the date of a Distribution *plus* (B) the aggregate Disputed Claim amount of all remaining Disputed General Unsecured Claims against the Debtors.

**1.61**   **"Docket"** means the docket in the Chapter 11 Cases maintained by the Clerk.

**1.62**   **"Dollar Denominated Value"** means, with reference to any form of Cryptocurrency, the value of such Cryptocurrency determined in lawful currency of the United States as of the Petition Date.

**1.63**   **"E-Wallet"** means digital Cryptocurrency storage platforms that allow end-users to manage and store Cryptocurrency.

**1.64**   **"Effective Date"** means a Business Day selected by the Debtors, after consultation with the Committee, on or after the Confirmation Date, on which (a) no stay of the Confirmation Order is in effect and (b) the conditions precedent to the effectiveness of the Combined Plan and Disclosure Statement specified in Section 16.2 hereof shall have been satisfied or waived as provided in Section 16.3 hereof.

**1.65**   **"Entity"** has the meaning set forth in section 101(15) of the Bankruptcy Code.

**1.66**   **"Equity Interest"** means, as of the Petition Date, any capital stock or other ownership interest in the Debtors, whether or not transferable, and any option, call, warrant or right to purchase, sell or subscribe for an ownership interest or other equity security in any of the Debtors.

**1.67**   "**Equivalent Cryptocurrency Distribution**" means, with respect to any Holder of a Customer Claim that has made a Cryptocurrency Election, a Distribution in the Applicable Cryptocurrency equal in value (as of the applicable Distribution date) to such Holder's Distribution Pro Rata Share, reduced by the actual transaction costs and fees associated with making such Distribution in the Applicable Cryptocurrency.  To the extent a Customer engaged in Cryptocurrency Transactions involving more than one Cryptocurrency, the amount and denomination of Applicable Cryptocurrency for each Equivalent Cryptocurrency Distribution shall be determined by multiplying the value (as of the applicable Distribution date) of such Holder's Distribution Pro Rata Share by the Applicable Cryptocurrency Ratios.

**1.68**   **"Estate"** means the estate of the Debtors in the Chapter 11 Cases that was created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

**1.69** **"Examiner"** means the examiner appointed by the U.S. Trustee on January 7, 2021, pursuant to the *Order Approving Appointment of Examiner* [Docket No. 338], and in accordance with that certain *Order Denying in Part, and Granting in Part, the Trustee/Examiner Motions* [Docket No. 281].

**1.70** **"Executory Contract"** means a contract to which one or more of the Debtors are party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

**1.71** **"File, Filed, or Filing"** means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases.

**1.72** **"Final Order"** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending or, (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 9024 of the Federal Rules of Bankruptcy Procedure, or any applicable analogous rule, may be (but has not been) filed relating to such order shall not prevent such order from being a Final Order.

**1.73** **"General Unsecured Claim"** means any Claim other than an Administrative Expense Claim, Convenience Claim, Intercompany Claim, Other Priority Claim, Other Secured Claim, Priority Tax Claim, Professional Fee Claim, Secured Tax Claim, Subordinated Securities Claim, or Equity Interest.  For the avoidance of doubt, (a) any Customer Claim is a General Unsecured Claim to the extent that is not secured by a valid and enforceable right of setoff under section 553 of the Bankruptcy Code or for any portion that is in excess of any such right of setoff and (b) a claim for principal and accrued interest on account of the Convertible Notes is a General Unsecured Claim.

**1.74** **"Governmental Unit"** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

**1.75** **"Holder"** means an Entity holding a Claim or an Equity Interest, as applicable. "Hold" and "Held" shall have the correlative meanings.

**1.76** **"Impaired"** means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

**1.77** **"Imposter"** has the meaning set forth in Section 3.3(d) hereof.

**1.78** **"Insider"** has the meaning set forth in section 101(31) of the Bankruptcy Code.

**1.79** **"Intercompany Claim"** means any Claim by a Debtor against another Debtor, subject to the limitations set forth in Section 12.1 hereof.

**1.80** **"IRS"** means the Internal Revenue Service.

**1.81** **"JST"** means JST Capital, LLC.

**1.82** **"Liabilities"** mean any and all costs, expenses, damages, losses, penalties, fines, judgments, Claims, Liens, obligations, demands, injuries, settlements, awards, fines, taxes, fees, indebtedness, or other liabilities of any nature, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, liquidated or Unliquidated, matured or not matured, Contingent or direct, whether arising at common law, in equity, or under any statute, based in whole or in part on any act or omission or other occurrence arising or taking place prior to the Effective Date.

**1.83** **"Lien"** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.84** **"Liquidation Trust"** means the liquidation trust established by the Combined Plan and Disclosure Statement and described in Section 12.3 hereof and in the Liquidation Trust Agreement.

**1.85** **"Liquidation Trust Agreement"** means the agreement establishing and delineating the terms and conditions of the Liquidation Trust and filed prior to the Combined Hearing.

**1.86** **"Liquidation Trust Assets"** means all of the Estates' Assets transferred to the Liquidation Trust pursuant to Section 12.3(c) hereof.

**1.87** **"Liquidation Trust Beneficiaries"** means the Holders of Allowed Claims that are entitled to receive Distributions pursuant to the terms of the Combined Plan and Disclosure Statement, whether or not such Claims are Allowed as of the Effective Date.

**1.88** **"Liquidation Trust Expenses"** means all actual and necessary costs and expenses incurred by the Liquidation Trust in connection with carrying out the obligations of the Liquidation Trust pursuant to the terms of the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement.

**1.89** **"Liquidation Trust Parties"** has the meaning set forth in Section 12.3(k) hereof.

**1.90** **"Liquidation Trustee"** means one of the three Persons who will be appointed to act as trustee of the Liquidation Trust in accordance with the terms of the Combined Plan and Disclosure Statement, the Confirmation Order, and the Liquidation Trust Agreement, or any successor appointed in accordance with the terms of the Combined Plan and Disclosure Statement and the Liquidation Trust Agreement. The identity of each of the Liquidation Trustees, as well as the terms of the compensation paid to the Liquidation Trustees, will be disclosed prior to the Combined Hearing.

**1.91** **"Litigation Proceeds"** means the proceeds from all Causes of Action pursued by or for the benefit of the Liquidation Trust (including any proceeds recovered by the Liquidation Trust from Avoidance Actions).

**1.92** **"Local Bankruptcy Rules"** means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

**1.93** **"moKredit"** means the Hong Kong-based entity founded by Lu Hua, which provides micro-loans to online gaming publisher sites through the provision of credit (in the form of gaming tokens) to video game enthusiasts.

**1.94** **"Net Distributable Assets"** means (a) the gross amount available from the liquidation of the Assets (including any Litigation Proceeds) minus (b) (i) the amount of all Allowed A/P/S Claims Allowed against the Debtors, (ii) U.S. Trustee Fees, (iii) the Liquidation Trust Expenses, and (iv) Distributions to Holders of Allowed Convenience Claims.

**1.95** **"Opt-Out Election Form"** is the opt-out form, as approved in the Disclosure Statement Order, pursuant to which holders of claims or interests may elect to opt out of the third party release in accordance with Section 18.2 hereof.

**1.96** **"Other Priority Claim"** means any claim, other than an Administrative Expense Claim, Professional Fee Claim, or Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

**1.97** **"Other Secured Claim"** means any Secured Claim other than a Secured Tax Claim.  For the avoidance of doubt, to the extent a Customer Claim is secured by a valid and enforceable right of setoff under section 553 of the Bankruptcy Code, such Customer Claim shall be an Other Secured Claim; *provided*, *however*, that any portion of a Customer Claim in excess of the amount secured by such a right of setoff shall be a General Unsecured Claim.

**1.98** **"Person"** shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

**1.99** **"Petition Date"** means November 7, 2020, the date on which the Debtors commenced the Chapter 11 Cases.

**1.100** **"Plan Supplement"** means the supplement or supplements to the Combined Plan and Disclosure Statement containing certain documents relevant to the implementation of the Combined Plan and Disclosure Statement, including the list of Executory Contracts and Unexpired Leases to be assumed pursuant to Section 15.1 hereof

**1.101** "**Plan Support Agreement**" means the binding term sheet executed by the Debtors and the Committee setting forth the material terms of a plan support agreement among such parties.

**1.102** **"Priority Tax Claim"** means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.103** **"Professional"** means any professional Person employed in the Chapter 11 Cases pursuant to section 327, 328, 363 or 1103 of the Bankruptcy Code pursuant to an Order of the

Bankruptcy Court and to be compensated for services rendered pursuant to sections 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code.

**1.104  "Professional Fee Claim"** means any claim of a Professional approved by the Bankruptcy Court for compensation, indemnification, or reimbursement of costs and expenses incurred on or before the Effective Date pursuant to sections 327, 328, 330, 331, 503(b), or 1103(a) of the Bankruptcy Code, plus any fees and expenses related to the final fee application of a Professional.

**1.105  "Professional Fee Escrow"** means an escrow account to be established and funded on the Effective Date in an amount equal to the Professional Fee Reserve Amount in accordance with Section 9.2 hereof.

**1.106  "Professional Fee Reserve Amount"** means the total amount of unpaid compensation and unreimbursed expenses incurred by Professionals retained by the Debtors or the Committee through and including the Effective Date, in ease case as determined in good faith by the applicable Professional.

**1.107  "Proof of Claim"** means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

**1.108  "Rejection Bar Date"** means the deadline by which a counterparty to an Executory Contract or an Unexpired Lease of the Debtors rejected under the Combined Plan and Disclosure Statement must file a Proof of Claim for damages arising from such rejection by the Debtors of such Executory Contract or Unexpired Lease, which shall be thirty (30) calendar days after the Effective Date or such other deadline established for filing a Rejection Claim by a Final Order of the Bankruptcy Court; provided, however, that if an earlier rejection bar date was established by order of the Bankruptcy Court with respect to a rejected Executory Contract or Unexpired Lease, then such earlier rejection bar date shall apply.

**1.109  "Rejection Claim"** means any Claim for damages as a result of the rejection under the Combined Plan and Disclosure Statement of any Executory Contract or Unexpired Lease.  All Rejection Claims shall be treated as General Unsecured Claims under the Combined Plan and Disclosure Statement.

**1.110  "Released Parties"** means the Professionals retained by the Debtors, Grant Lyon as the Debtors' independent director, Matthew Foster as the Debtors' chief restructuring officer, any other staff supplied by Sonoran Capital Advisors, LLC, the Professionals retained by the Committee, and the respective agents and representatives of each of the foregoing.

**1.111  "Reserve"** has the meaning given to such term in Section 13.15 hereof.

**1.112  "Sale Motion"** means the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures, (B) Scheduling an Auction and Sale Hearing and Approving Form and Manner of Notice Thereof, and (C) Approving Assumption and Assignment Procedures and Form and Manner of Notice Thereof; and (II) Authorizing (A) The Sale(s), Free and Clear of All Liens, Claims, Interests, and Encumbrances, and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 65].

**1.113** **"Sale Transaction"** means any sale of Assets of the Debtors prior to the Effective Date under section 363 of the Bankruptcy Code.

**1.114** **"Schedules"** means, collectively, the schedules of Assets and Liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the official bankruptcy forms in the Chapter 11 Cases, as the same may have been amended or supplemented through the Confirmation Date pursuant to Bankruptcy Rules 1007 and 1009. For the avoidance of doubt, Schedules do not include any schedules or exhibits to the Combined Plan and Disclosure Statement or the Plan Supplement.

**1.115** **"Secured Claim"** means any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

**1.116** **"Secured Tax Claim"** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code (determined irrespective of any time limitations therein and including any related Secured Claim for penalties).

**1.117** **"Solicitation Package"** has the meaning set forth in Section 8.3(d) hereof.

**1.118** **"Subordinated Securities Claim"** means any Claim arising from rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors, for damages arising from the purchase or sale of such security, or for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such a Claim.

**1.119** **"Trust Advisory Board"** means the committee appointed pursuant to Section 12.3 hereof to oversee the activities of the Liquidation Trust and the Liquidation Trustees, consisting of those parties identified in the Plan Supplement, and at no time greater than four members.

**1.120** **"U.S. Trustee"** means the Office of the United States Trustee for the District of Delaware.

**1.121** **"U.S. Trustee Fees"** means fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

**1.122** **"Unclassified Claim"** means any Claim that is an Administrative Expense Claim or a Priority Tax Claim.

**1.123** **"Unexpired Lease"** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

**1.124** **"Unimpaired"** means, with respect to a Claim or Equity Interest, that such Claim or Equity Interest is not Impaired as a result of being paid in full in Cash under the Combined Plan and Disclosure Statement.

**1.125** **"Unliquidated"** means with reference to a Claim, a Claim, the amount of Liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is asserted or sought to be estimated.

**1.126** **"Voting Agent"** has the meaning set forth in Section 8.3(c) hereof.

**1.127** **"Voting Deadline"** means March 1, 2021, at 4:00 p.m. (prevailing Eastern Time).

**1.128** **"Voting Record Date"** has the meaning set forth in Section 8.3(b) hereof.

**1.129** **"Voting Report"** has the meaning set forth in Section 8.3(g) hereof.

## ARTICLE II.
## INTERPRETATION OF COMBINED PLAN AND DISCLOSURE STATEMENT

**2.1** **Application of Definitions; Rules of Construction; Computation of Time**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender. For purposes of the Combined Plan and Disclosure Statement, (a) any reference in the Combined Plan and Disclosure Statement to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Combined Plan and Disclosure Statement to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented and (c) unless otherwise specified, all references in the Combined Plan and Disclosure Statement to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the Combined Plan and Disclosure Statement. The words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection or clause contained in the Combined Plan and Disclosure Statement. A capitalized term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code or in the Exhibits hereto. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Combined Plan and Disclosure Statement. The headings in the Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions of the Combined Plan and Disclosure Statement. Unless otherwise indicated herein, all references to dollars means United States dollars. In computing any period of time prescribed or allowed by the Combined Plan and Disclosure Statement, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006 shall apply.

**2.2** **Relief Sought by Filing the Combined Plan and Disclosure Statement**

The filing of the Combined Plan and Disclosure Statement constitutes, among other things, a motion by the Debtors pursuant to Bankruptcy Rules 9019 to approve the settlements and comprises set forth in Section 12.2 hereof, and for limited substantive consolidation of the Debtors' Estates, as set forth in Section 12.1 hereof.

## ARTICLE III.
## BACKGROUND – THE DEBTORS' CORPORATE HISTORY, STRUCTURE, AND BUSINESS OVERVIEW

**3.1     General Background – Overview of the Debtors**

The Debtors were founded in 2018 by Lu Hua and Dan Schatt.  Prior to the Petition Date, the Debtors operated a global financial services platform serving retail and institutional clients in 183 countries.  The Debtors, which are lenders, utilized financial technology to provide business and retail credit and to allow Customers to earn a yield on more than 15 Cryptocurrencies and fiat currencies through the Debtors' partner network.  As of the Petition Date, the Debtors employed a staff of approximately 20 employees, consisting primarily of software and technology engineers.

As part of the Debtors' businesses, Customers transferred Cryptocurrency to the Debtors, generally pursuant to a loan agreement or a financing agreement.[2]  The Debtors then utilized the Cryptocurrency in a variety of investment strategies involving third-party asset managers.  The Debtors earned revenue through the returns generated by their investments, as well as through interest on lines of credit extended to certain of the Debtors' Customers in connection with the loans and financings referenced above.

The Debtors' business consisted of two key components: (a) the transfer of Cryptocurrency or other assets by Customers to the Debtors and the investment of those assets in order to earn returns ("CredEarn"); and (b) lending by the Debtors to certain Customers ("CredBorrow").

The Debtors' CredEarn business involved the transfer of Cryptocurrency from Customers to the Debtors, generally pursuant to a loan or financing agreement.  The Debtors then invested the Cryptocurrency with third-party asset managers or lenders to generate returns.  Such investments could take the form of (a) the Debtors directly providing Cryptocurrencies to asset managers or (b) the Debtors converting Cryptocurrencies into other Cryptocurrencies or fiat currencies and providing the proceeds thereof to asset managers or lenders.  The Debtors earned revenue through the returns generated by these investments.

The Debtors' obligations to Customers were repaid, with interest, as set forth in the relevant Customer's contract.  Generally, Customers who transferred Cryptocurrency to the Debtors were entitled to receive their principal and interest back in the type of Cryptocurrency the Customers transferred to the Debtors.  Because the Debtors' business model was premised on generating a return for Customers by investing the deposited Cryptocurrencies with asset managers, the Debtors generally did not themselves hold significant amounts of Cryptocurrency. When Customers terminated accounts with the Debtors, the Debtors generally had to withdraw Cryptocurrency from asset managers to purchase new Cryptocurrency in the open market at then-prevailing prices in order to repay Customers

---

[2]     Shortly before the Petition Date, the Debtors began using contracts to "rent" Cryptocurrency from Customers. As of the Petition Date, rental contracts accounted for less than 1% of the Debtors' Customer contracts.

Generally, the CredBorrow program was only available to the Debtors' domestic Customers.  Under the CredBorrow program, Customers were generally permitted to borrow against Cryptocurrency or other assets that they transferred to the Debtors, and were obligated to make periodic repayments as specified in the relevant Customer's contract.  The Debtors earned revenue on CredBorrow contracts through interest and fees assessed on Customers' borrowings.

## 3.2    The Debtors' Prepetition Capital Structure

As of the Petition Date, the former book value of the Debtors' total Assets was approximately $69 million.  Book value is generally computed in accordance with various accounting pronouncements and may not (and in the case of the Debtors, likely does not) correlate to fair value of any Asset or the enterprise value of the Debtors as a whole.  Moreover, the Debtors have not conducted the impairment analysis which would be required under GAAP for such former book value to be considered a current and reliable book value.  Such impairment analysis would likely result in a book value significantly less than the former book value referred to above.

The Debtors have not issued any secured debt.  In August and September 2020, Cred issued the Convertible Notes.  As of the Petition Date, approximately $2.6 million (which includes accrued interest) remained outstanding on the Convertible Notes.  Other than the Convertible Notes, the Debtors do not have any outstanding funded indebtedness.

As of the Petition Date, the Debtors' Liabilities to Customers were in excess of $160 million.

## 3.3    Events Leading to the Chapter 11 Cases

(a)    <u>JST Transactions</u>

The Debtors maintained accounts with JST.  Through JST, the Debtors held substantial "long" futures positions on bitcoin and other Cryptocurrencies, which included margin holdings. In addition, the Debtors' contracts with JST included certain "stop positions," whereby when the price of a Cryptocurrency dropped below a certain threshold, JST sold the Cryptocurrency. These stop positions are referred to as "stop loss sale orders."

In March 2020, the drop in bitcoin prices (and other Cryptocurrency prices) triggered the Debtors' stop loss sale orders, which had the effect of: (i) "locking in" losses on the sale of bitcoin; and (ii) eliminated the Debtors' margin on bitcoin and other Cryptocurrencies.  As a result, the Debtors acquired new Cryptocurrencies at substantially higher prices, which had a material negative effect on the Debtors' liquidity.

As described in greater detail below, following the losses with JST, the Debtors sought and obtained a 300 bitcoin capital contribution from Lu Hua.

(b)    <u>Over-Exposure on Loans Made to moKredit</u>

In late 2018, Cred started making loans to moKredit – an entity founded by Cred co-founder Lu Hua – under that certain Loan and Security Agreement dated December 27, 2018,

by and between moKredit Technology (Hong Kong) Company Limited, a Hong Kong company, and moKredit, Inc., an exempted company incorporated in the Cayman Islands with limited liability, as borrowers, and Cred, as lender.  It is the Debtors understanding that under the Loan and Security Agreement, Cred extended moKredit a $100 million line of credit.  The Debtors believe that as security for the line of credit, Cred received a security interest in substantially all of moKredit's personal property.[3]  Cred has not taken any affirmative steps to perfects its security interest in this collateral.

By 2019, the Debtors' primary revenue generator was its relationship with moKredit.  At one point, moKredit had drawn approximately $70 million on the line of credit.  As of the Petition Date, the amount of the Debtors' outstanding loans with moKredit was approximately $39 million.

As a result of the Debtors' JST losses in March 2020, the Debtors undertook an effort to recover principal from moKredit and reestablish their hedging positions to protect against Cryptocurrency price fluctuations.  That effort failed because of the restrictions imposed by the Chinese government in response to the COVID-19 pandemic.  Due to the restrictions, moKredit could not meet its obligations under the Loan and Security Agreement, and was only able to return $300,000 of principal to the Debtors over the course of March and April, 2020.  In May 2020, moKredit renegotiated its repayment schedule, whereby it would continue making approximately $582,000 per month in interest payments.

(c)    Cred Capital Problems

In March 2020, the Debtors directed the then-Chief Capital Officer, James Alexander, to incorporate Cred Capital as a Delaware entity to be controlled by Cred for the purposes of: (a) creating a vehicle to assist the Debtors with arranging bond offerings for companies in need of capital; and (b) overseeing the Debtors' asset management strategies.  Cred also transferred the 300 bitcoin capital contribution made by Lu Hua to Cred Capital to provide the Debtors with a natural hedge against rising bitcoin prices.

Based on the Debtors' understanding, these plans were derailed, however, when Mr. Alexander attempted to take control of Cred Capital away from its corporate parent, Cred, and used Cred Capital's assets for his personal benefit.  Mr. Alexander attempted to take control of Cred Capital by: (i) installing himself as its sole director; (ii) assigning only Class B, non-voting shares to Cred (instead of voting shares); and (iii) assigning Class A voting shares to a purported

---

[3]    Cred's security interest covered "[a]ll accounts, chattel paper, instruments, deposit accounts, letter of credit rights, and general intangibles related thereto; and all returned or repossessed goods which, on sale or lease, resulted in an account, including all Customer Loans and [moKredit's] rights related thereto", "[a]ll inventory", "[a]ll equipment and fixtures now owned or hereafter acquired by [moKredit]", "[a]ll of [moKredit's] deposit accounts with Cred", "[a]ll instruments, chattel paper, documents, certificates of deposit, securities (including equity interests) and investment property of every type", "[a]ll general intangibles" including "all goodwill connected with or symbolized by any of such intangibles", "[a]ll negotiable or nonnegotiable documents of title covering any Collateral", "[a]ll accessions, attachments and other additions to the Collateral, and all tools, parts and equipment used in connection with the Collateral", "[a]ll substitutes or replacements for any Collateral, all cash or non-cash proceeds (including insurance proceeds), products, rents and profits of the Collateral, and all income, benefits and property receivable on account of the Collateral, and all supporting obligations covering any Collateral", "[a]ll books, data and records pertaining to any Collateral, whether in the form of a writing, photograph, microfilm, or electronic media, including but not limited to any computer-readable memory and any computer software necessary to process such memory".

third-party "investor" who Mr. Alexander contends gave him a proxy to control the voting shares.

Neither Cred nor Cred Capital ever received any capital contribution from this so-called "investor." In addition, Mr. Alexander did not use the 300 bitcoin to establish hedging positions as he had been instructed to do, but instead used a portion of these funds to make a series of vendor payments.

When Cred became aware of Mr. Alexander's actions, Cred terminated his employment and took corrective action under Delaware law to re-file Cred Capital's charter and appoint a board of directors.

Thereafter, Cred discovered that Mr. Alexander absconded with 225 of the 300 bitcoin (valued at approximately $6 million as of December 31, 2020). Despite the Debtors' demands, Mr. Alexander has refused to return the bitcoin to the Debtors.

The foregoing events spawned significant litigation against Mr. Alexander, including, California state court litigation seeking, among other things, injunctive relief, compensatory and punitive damages, breaches of contract, and breach of the implied covenant of good faith and fair dealing.[4] Moreover, as described in greater detail below, after the Petition Date, certain of the Debtors initiated an adversary proceeding against Mr. Alexander seeking turnover of the misappropriated and improperly retained Assets.[5]

After the Petition Date, the Debtors also filed a notice of removal with the California state court. The Debtors are in the process of transferring the California state court litigation to the Bankruptcy Court.

(d)    Theft of Bitcoin by an Imposter

In August 2020, the Debtors discovered that they had been the victims of a social engineering scheme that resulted in the theft of 800 bitcoin (valued at approximately $10 million as of October 2020).

In February 2020, Mr. Alexander informed the Debtors' of a potential investment opportunity with an entity that purported to be Quantcoin (the "Imposter"). Based on Mr. Alexander's representations and purported due diligence, Mr. Alexander was given permission to hire the Imposter to manage a portion of the Debtors' bitcoin.

In a series of transactions in February and April 2020, Mr. Alexander directed the transfer of a total of 800 bitcoin to the Imposter. After transferring the bitcoin, an administrator purporting to be Scott Foster with Kingdom Trust Company, a Cryptocurrency custodian ("Kingdom Trust"), was in contact with the Debtors regarding their 800 bitcoin. Initially, the

---

[4]    Case No. 20-CIV-02915, Superior Court of the State of California; County of San Mateo, Southern Branch.

[5]    Adv. Pro. No. 20-51006.

alleged Mr. Foster provided what appeared to be performance updates to the Debtors on a monthly basis.

It is the Debtors' understanding that the fraudulent scheme came to light when the Debtors requested a withdrawal of $2 million from their account with the Imposter and the Imposter ceased responding to e-mails.  The Debtors then contacted Kingdom Trust directly to inquire as to a monthly statement and learned that the Debtors not only did not have accounts at Kingdom Trust, but the e-mail address associated with Mr. Foster was fake.

Upon learning of the deception, the Debtors promptly contacted the pertinent law enforcement agency, which initiated an investigation into the matter.  However, as of [December 31, 2020], the Debtors have yet to recover any of the stolen bitcoin.

In addition, in late November 2020, the Debtors served notices to more than 20 Cryptocurrency exchanges advising them of the theft or conversion of the Debtors' Cryptocurrency Assets.  In such notices, the Debtors identified the relevant E-Wallets (both with respect to the theft by the Imposter and the misappropriation by Mr. Alexander) and requested that the exchanges freeze any accounts that may contain property of the Debtors.

     (e)     Claims Against Mr. Inamullah

Several of the foregoing events are also attributable to, or were facilitated by, the Debtors' former Vice President of Capital Markets, Mr. Daniyal Inamullah, who was hired by the Debtors in December 2019.  Mr. Inamullah was the primary person responsible for identifying potential investment opportunities, performing due diligence with respect to such opportunities, and producing reports and proposals to the Debtors with respect to potential investments.  Accordingly, Mr. Inamullah's duties necessarily included verifying the accuracy of information provided to the Debtors with respect to their investment portfolio.

The Debtors believe that Mr. Inamullah failed at his responsibilities.  For example: (i) Mr. Inamullah admitted in sworn testimony that he never conducted any due diligence with respect to the Imposter transactions; (ii) Mr. Inamullah contributed to Mr. Alexander's misappropriation of bitcoin by both initiating and authorizing the transfer of bitcoin into Mr. Alexander's personal E-Wallets; and (iii) violating the Debtors' security protocols, which were instituted by Mr. Inamullah.

Accordingly, the Debtors believe that they have multiple claims and causes of action against Mr. Inamullah, including, without limitation, breach of the duty of care, breach of the duty of loyalty, and civil conspiracy.

     (f)     Customer Loss and Adverse Market Conditions

Negative press in connection with the Imposter transactions, Mr. Alexander's conduct, and the Debtors' worsening financial condition resulted in (i) certain of the Debtors' core partners to close their accounts with the Debtors and (ii) potential investments of outside capital failing to materialize during the third fiscal quarter of 2020.  In particular, the Debtors' former management was exploring business expansion opportunities with other financial services companies that were looking at opportunities in the Cryptocurrency space.

As of the Petition Date, the Debtors' balance sheet reflected an approximately 1:2.2 asset to liability ratio. A lack of liquidity and reduced prospects for attracting new business diminished the Debtors' prospects for reducing this asset-liability gap and for staking out new positions to hedge against fluctuations in the price of Cryptocurrency.

The asset-liability gap was in part due to a rapid 30% increase in the price of bitcoin in October 2020, which exacerbated the Debtors' distressed financial position. By late October, 2020, the Debtors determined to cease the inflow and outflow of all Cryptocurrency Assets to assess their financial position. Unable to remedy the situation, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on the Petition Date, initiating the Chapter 11 Cases.

Although the Debtors remain committed to working with other constituents in the capital structure on the terms of superior restructuring transactions, the Debtors believe that the Combined Plan and Disclosure Statement, which now incorporates the global settlement with the Committee outlined in the Plan Support Agreement, represents the best available alternative to maximize value for all stakeholders.

### 3.4    The Chapter 11 Cases

The following is a brief description of certain major events that occurred during the Chapter 11 Cases.

(a)    <u>First Day Relief</u>

On or shortly after the Petition Date, the Debtors filed a number of motions and applications seeking certain "first day" relief, including the following:

i.    Pursuant to the *Motion of Debtors and Debtors in Possession for Order Directing Joint Administration of their Chapter 11 Cases* [Docket No. 3], the Debtors sought entry of an order directing the joint administration of the Chapter 11 Cases and consolidation thereof for procedural purposes only. On November 11, 2020, the Bankruptcy Court entered an order granting this relief [Docket No. 27].

ii.    Pursuant to the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to File a Consolidated List of Debtors' 30 Largest Unsecured Creditors (II) Authorizing Debtors to Serve Certain Parties by E-mail, (III) Authorizing Debtors to Redact or Withhold Publication of Certain Personal Identification Information, and (IV) Granting Related Relief* [Docket No. 6], the Debtors sought entry of interim and final orders authorizing the Debtors to: (i) file a consolidated list of the Debtors' 30 largest unsecured creditors; (ii) serve certain documents on parties-in-interest via email; and (iii) redact certain Customer information. The Bankruptcy Court granted the relief on an interim basis on November 10, 2020 [Docket No. 34] and on a final basis on December 21, 2020 [Docket No. 264].

iii.   Pursuant to the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; (III) Waiving the Requirements of Section 345(b) of Bankruptcy Code; and (IV) Granting Related Relief* [Docket No. 7], the Debtors sought entry of interim and final orders authorizing the Debtors to, among other things: (i) continue use of their cash management system; (ii) honor certain fees and charges associated therewith in the ordinary course of business; and (iii) maintain existing business forms.  The Bankruptcy Court granted the relief on an interim basis on November 10, 2020 [Docket No. 29] and on a final basis on December 21, 2020 [Docket No. 268].

iv.   Pursuant to the *Debtors' Motion for Entry of Order (I) Restating and Enforcing Worldwide Automatic Stay, Anti-Discrimination Provisions, and Ipso Facto Protections of Bankruptcy Code, (II) Permitting Debtors to Modify Automatic Stay, (III) Approving Form and Manner of Notice, and (IV) Granting Related Relief* [Docket No. 8], the Debtors sought relief to advise parties outside the United States of the existence, reach, and effects of the protections of the Bankruptcy Code, including the worldwide application of the automatic stay.  The Bankruptcy Court granted the motion on November 10, 2020 [Docket No. 32].

v.   Pursuant to the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Maintain Insurance Policies, (B) Pay All Related Obligations, and (II) Granting Related Relief* [Docket No. 10], he Debtors sought authorization to maintain insurance policies, which included: (i) directors and officers; (ii) errors and omissions; (iii) cyber; (iv) property; (v) damage, general commercial; (vi) commercial automobile; and (vii) general umbrella liability.  The Bankruptcy Court granted the relief on an interim basis on November 10, 2020 [Docket No. 31] and on a final basis on December 18, 2020 [Docket No. 248].

vi.   Pursuant to the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Employee Obligations and (B) Continue Employee Benefit Programs and (II) Granting Related Relief* [Docket No. 11], the Debtors sought authorization to: (i) pay and honor certain prepetition employee claims and obligations; and (ii) continue certain employee programs and obligations.  The Bankruptcy Court granted the relief on an interim basis on November 30, 2020 [Docket No. 30] and on a final basis on December 21, 2020 [Docket No. 263].

(b)   <u>Appointment of Committee</u>

On December 3, 2020, the U.S. Trustee appointed the Committee pursuant to section 1102(a) of the Bankruptcy Code.  Additional information regarding the members of the Committee is included in the Notice of Appointment of the Committee [Docket No. 120].

(c)    Retention of Professionals

Paul Hastings LLP ("Paul Hastings") has served as the Debtors' restructuring counsel since it was engaged in late October, and the Debtors applied to retain Paul Hastings as their counsel shortly after the commencement of these chapter 11 cases.  *See Debtors' Application for Entry of an Order Authorizing and Approving Retention and Employment of Paul Hastings LLP as Counsel to Debtors, Effective as of the Petition Date* [Docket No. 64].  On December 6, 2020, the U.S. Trustee objected to Paul Hastings' retention on several bases, including that Paul Hastings' initial disclosures were inadequate and that Paul Hastings had an adverse interest to the Debtors because it provided prepetition services to the Debtors, represents a creditor of the Debtors in unrelated matters, and allegedly received a preferential transfer from the Debtors.  *See Objection of the United States Trustee to the Debtors' Application for Entry of an Order Authorizing and Approving Retention of Paul Hastings LLP as Counsel to Debtors, Effective as of the Petition Date* [Docket No. 139].

At the hearing on January 6, 2021, the Bankruptcy Court approved Paul Hastings' retention and overruled the U.S. Trustee's objection.  In doing so, the Bankruptcy Court held that Paul Hastings' initial disclosures were adequate and that Paul Hastings did not hold any interest adverse to the Debtors in violation of section 327(a) of the Bankruptcy Code.  Specifically, the Bankruptcy Court found there was nothing in the record that Paul Hastings's prepetition advice to the Debtors and its representation of a creditor on matters unrelated to the Chapter 11 Cases rendered it adverse to the Debtors.[6]  Moreover, the Bankruptcy Court found Paul Hastings had resolved the issues regarding the alleged preferential transfer by returning approximately $313,000 to Paul Hastings' client trust account for the Debtors and waiving prepetition fee claims in the same amount.  On January 7, 2021, the Bankruptcy Court entered an order approving the Debtors' retention of Paul Hastings [Docket No. 327].

On November 11, 2020 and December 18, 2020, the Bankruptcy Court also entered orders authorizing the Debtors to retain Donlin, Recano & Company, Inc. as claims agent [Docket No. 28] and as administrative agent [Docket No. 246], respectively.  On December 18, 2020, the Bankruptcy Court entered an order authorizing the Debtors to retain Cousins Law LLC, as Delaware bankruptcy counsel [Docket No. 245].  On December 21, 2020, the Bankruptcy Court entered orders authorizing the Debtors to retain Teneo Capital Group LLC as the Debtors' investment banker [Docket No. 261], MACCO Restructuring Group LLC, as the Debtors' financial advisor [Docket No. 272], and Sonoran Capital Advisors, LLC to provide the Debtors with Matthew Foster, as Chief Restructuring Officer, and related personnel.

In addition, to assist the Committee in carrying out its duties, the Committee has sought Bankruptcy Court approval authorizing the retention and employment of McDermott Will & Emery LLP to serve as its bankruptcy counsel [Docket No. 282] and Dundon Advisors, LLC to serve as financial advisor [Docket No. 305].

---

[6]    Matters related to such creditor are being handled by Cousins Law, the Debtors' Delaware bankruptcy counsel and conflicts counsel.

(d)    Plan Support Agreement

Promptly after its appointment, the Committee engaged in negotiations with the Debtors regarding a consensual path forward that would maximize the value of the Debtors' Estates for the benefit of all Creditors. Such negotiations culminated in the execution of the Plan Support Agreement, which contemplates a chapter 11 plan of liquidation centered on an expeditious liquidation of the Debtors' Assets, first through the Debtors' Sale Transaction, and, irrespective of whether the Sales Transaction comes to fruition, the transfer of all of the Debtors' Assets into a liquidation trust. The Debtors and the Committee believe that the restructuring process set forth in the Plan Support Agreement is in the best interests of the Debtors' Estates and all stakeholders.

On December 23, 2020, the Debtors filed the *Motion Pursuant to Bankruptcy Code Sections 363(b) and 105(a) for Authorization to Enter Into and Perform Under a Plan Support Agreement Term Sheet* [Docket No. 279], which is scheduled to be heard on February 3, 2021.

(e)    Sale Process

On November 18, 2020, the Debtors filed the Sale Motion. Pursuant to the Sale Motion, the Debtors sought to establish certain deadlines and bidding procedures by which the Debtors could obtain proposals for the purchase of the Debtors' businesses as a going concern or, alternatively, for the purchase of the Debtors' Assets, to be sold at the Auction. On December 21, 2020, the Bankruptcy Court entered the Bid Procedures Order approving such relief [Docket No. 270].

The Bid Procedures Order provided, among other thing, that the selection of a stalking-horse bidder was subject to consent of the Committee. To date, the Debtors have not received a bid acceptable to the Committee. The Debtors are continuing to entertain offers from prospective buyers of various assets.

(f)    Post-Petition Litigation

(i)    *Motions to Convert or Dismiss the Chapter 11 Cases or Appoint a Trustee/Examiner*

On November 11, 2020, certain of the Debtors' creditors filed the *Motion of Krzysztof Majdak and Philippe Godineau for Entry of an Order Pursuant to 11 U.S.C. § 1112(b) (I) Dismissing the Cases; (II) Converting the Cases to a Chapter 7 Liquidation; or (III) Appointing a Chapter 11 Trustee* [Docket No. 62] (the "Creditor Motion"). On December 4, 2020, the U.S. Trustee filed the *Motion of the United States Trustee for Entry of an Order Directing the Appointment of a Trustee, or in the Alternative, (I) Directing the Appointment of an Examiner, or (II) Converting the Cases to Chapter 7 Cases* [Docket No. 133] (the "U.S. Trustee Motion" and, together with the Creditor Motion, the "Motions to Convert"). The Motions to Convert both seek entry of an order dismissing the Chapter 11 Cases, converting the Chapter 11 Cases to liquidating cases under chapter 7 of the Bankruptcy Code, or appointing a chapter 11 trustee.[7]

---

[7]    Certain creditors and parties-in-interest joined or partially joined in the Motion to Convert. *See Response of James Alexander to the Motion of Kryszyof Majdak and Philippe Godinea for Entry of an Order Pursuant to 11*

Moreover, the U.S. Trustee Motion seeks, in the alternative, the appointment of an independent Examiner.

The Debtors and the Committee objected to the relief sought in the Motions to Convert. *See* Docket Nos. 109, 191, and 195.

Following a two-day evidentiary hearing on the Motions to Convert, the Bankruptcy Court: (i) denied the Creditor Motion; and (ii) denied in part and granted in part the U.S. Trustee Motion. As a result, the U.S. Trustee was directed to appoint an examiner. *See* Docket No. 281.

On January 7, 2021, the U.S. Trustee appointed Robert J. Stark as the Examiner in the Chapter 11 Cases [Docket No. 338]. In his role as the Examiner, and pursuant to section 1106(a)(3) and (4) of the Bankruptcy Code, Mr. Stark is investigating allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the Debtors' management, and will, as soon as practicable, file a written report that will be made available on the Docket in these Chapter 11 Cases, which can be viewed at the following link: https://www.donlinrecano.com/Clients/cred/Dockets.

        (ii)    *Motion of UpgradeYa Investments, LLC for Relief from Stay Under Bankruptcy Code Section 362* ("Lift Stay Motion")

On November 25, 2020, UpgradeYa Investments, LLC ("UpgradeYa"), filed the Lift Stay Motion, seeking relief from the automatic stay to permit it to pursue remedies in connection with certain bitcoin it transferred to the Debtors. The Debtors and the Committee filed objections to the Lift Stay Motion. *See* Docket Nos. 116 and 190. On January 6, 2021, the Bankruptcy Court held an evidentiary hearing on the Lift Stay Motion. At the conclusion of the January 6, 2021 hearing, the Bankruptcy Court took the matter under advisement and ordered UpgradeYa to file further briefing regarding whether the remedy it seeks – authority to bring potential litigation claims against third parties – implicates property of the Debtors' estates on or before January 21, 2021, with reply briefs due on or before February 4, 2021, and responses to any reply briefing due on or before February 11, 2021.

        (iii)    *Motion of James Alexander to Dismiss the Cred Capital, Inc. Case* ("Cred Capital Motion")

On December 8, 2020, Mr. Alexander filed the Cred Capital Motion seeking the dismissal of Cred Capital's Chapter 11 Case. *See* Docket No. 152. The Cred Capital Motion alleges Mr. Alexander is the sole rightful officer and director of Cred Capital and that Cred's

---

*U.S.C. § 1112(b) (I) Dismissing the Cases; or (II) Converting the Cases to a Chapter 7 Liquidation; or (III) Appointing a Chapter 11 Trustee* [Docket No. 103]; *Partial Joinder of Jamie Shiller, Takashi Yanagi, Wu Chi King, Joseph Richardson, Thomas Calvert, Clint Cowen, Robin Houck, Todd Wiseman, Mathew Dion, Jonatan Ashurov, Daniel Becker, Teppei Miyauchi, Jean Vacca, Xian Su, and Eric Schurman to Motion to Dismiss the Bankruptcy Cases, Convert Cases to Chapter 7, or Appoint a Chapter 11 Trustee* [Docket No. 107]; *UpgradeYa Investments, LLC's (I) Reply to Objection of the Debtors to Motion of UpgradeYa Investments, LLC for Relief from Stay Under Bankruptcy Code Section 362 and (II) Limited Joinder in the Motion for an Order Converting the Chapter 11 Cases to Chapter 7* [Docket No. 126].

corrective action to re-take control of Cred Capital in June 2020 was invalid and of no effect. Mr. Alexander thus believes that Cred Capital's Chapter 11 Case should be dismissed because only he had the power to authorize it, and he did not. The Debtors filed an objection to the Cred Capital Motion and the Committee joined in the Debtors' objection. *See* Docket Nos. 296 and 297. The Cred Capital Motion is scheduled to be heard on February 3, 2021.

  (g)    Section 341(a) Meeting of Creditors

The section 341 meeting is scheduled to take place on February 2, 2021.

  (h)    Schedules and Statements

The Debtors Filed their Schedules on January 7, 2021 [Docket Nos. 331-335, as amended by Docket Nos. 343, 346, and 350], which, among other things, set forth the Claims of known Creditors against the Debtors as of the Petition Date, based upon the Debtors' books and records. The Debtors retain the right to amend the Schedules during the pendency of the Chapter 11 Cases.

  (i)    Claims Process and Bar Dates

Pursuant to the *Order (I) Fixing Deadlines for Filing Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* dated December 21, 2020 [Docket No. 271] (the "Bar Date Order"), the Bankruptcy Court established, among others, the following bar dates for filing Proofs of Claim:

- General Bar Date: February 10, 2021 at 5:00 p.m. (prevailing Eastern Time) as the deadline for all Persons or Entities (other than Governmental Units) holding or wishing to assert pre-petition Claims to file Proofs of Claims in the Chapter 11 Cases.

- Government Bar Date: May 6, 2021 at 5:00 p.m. (prevailing Eastern Time) as the deadline for all Governmental Units (as defined in section 101(27) of the Bankruptcy Code) holding or wishing to assert pre-petition Claims to file Proofs of Claim in the Chapter 11 Cases.

- Amended Schedules Bar Date: With respect to Holders of Claims affected, as described in the Bar Date Order, by the Debtors' amendment or supplement of their Schedules, such Holders shall have until the later of (i) the General Bar Date or, if the creditor is a Governmental Unit, the Government Bar Date, and (ii) twenty-one (21) days from the date of service of notice of the amendment or supplement to the Schedules.

- Rejection Damages Bar Date: With respect to counterparties to an Executory Contract or an Unexpired Lease of the Debtors, which has been rejected under this Combined Plan and Disclosure Statement, such counterparty must file a Proof of Claim for damages arising from such rejection by the later of (i) the General Bar Date or thirty-days after service of an order by the Bankruptcy Court authorizing such rejection,

24

and (ii) such other date, if any, as the Bankruptcy Court may fix in the order authorizing such rejection.

(j)    Assumption and Rejection of Executory Contracts and Unexpired Leases

Pursuant to the *Motion of Debtors for Entry of Order Authorizing Debtors to (I) Reject Unexpired Leases of Nonresidential Real Property and (II) Abandon Property in Connection Therewith* [Docket No. 4], the Debtors sought entry of an order permitting the Debtors to reject leases in connection with their office space in San Mateo and Sherman Oaks, California. On December 18, 2020, the Bankruptcy Court entered an order granting this relief [Docket No. 243].

(k)    DIP Financing

The Debtors are currently in negotiations with potential lenders to provide debtor in possession financing to the Debtors. The Debtors are also negotiating for the right to convert such debtor-in-possession financing into an exit financing that would be available to fund expenses of the Liquidation Trust to the extent it is not repaid on the Effective Date of the Combined Plan and Disclosure Statement.

To the extent that the Debtors obtain debtor in possession financing, the terms of such financing, including the treatment of any DIP Financing Claims, will be included in the Plan Supplement. Parties interested in learning more about any such debtor in possession financing should monitor the Docket in these Chapter 11 Cases, which can be viewed at the following link: https://www.donlinrecano.com/Clients/cred/Dockets.

## ARTICLE IV.
## TAX CONSEQUENCES

**4.1    Tax Consequences.**

The confirmation and execution of the Combined Plan and Disclosure Statement may have tax consequences to Holders of Claims and Equity Interests. The Debtors do not offer an opinion as to any federal, state, local or other tax consequences to Holders of Claims and Equity Interests as a result of the confirmation of the Combined Plan and Disclosure Statement.

Under certain circumstances, an individual may be entitled to claim a theft-loss dependent on its individual circumstances. Such losses that arise out of property used in a trade or business or a transaction entered into for profit are deductible in the year in which the loss is sustained and in an amount not to exceed the adjusted tax basis of the property involved. Individuals should consult with their own tax advisors to determine if a theft loss deduction is permissible, as well as the timing, amount, and applicable limitations for any such theft loss deduction.

**All Holders of Claims and Equity Interests are urged to consult their own tax advisors with respect to the federal, state, local and foreign tax consequences of this Combined Plan and Disclosure Statement. The Combined Plan and Disclosure Statement is not intended, and should not be construed, as legal or tax advice to any Creditor, Equity Interest Holder or other party in interest.**

## ARTICLE  V.
## CERTAIN RISK FACTORS TO BE CONSIDERED

**5.1     Risk Factors to Be Considered**

Holders of Claims should read and consider carefully the risk factors set forth below before voting to accept or reject the Combined Plan and Disclosure Statement.  Although there are many risk factors discussed below, these factors should not be regarded as constituting the only risks present in connection with the Debtors' business or the Combined Plan and Disclosure Statement and its implementation.

(a)     <u>Bankruptcy Law Considerations</u>

The occurrence or non-occurrence of any or all of the following contingencies, and any others, could affect Distributions available to Holders of Allowed Claims under the Combined Plan and Disclosure Statement, but will not necessarily affect the validity of the vote of the Impaired Classes to accept or reject the Combined Plan and Disclosure Statement or necessarily require a re-solicitation of the votes of Holders of Claims in such Impaired Classes.

(i)     <u>Parties in Interest May Object to the Combined Plan and Disclosure Statement's Classification of Claims and Interests</u>.  Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class.  The Debtors believe that the classification of the Claims and Equity Interest under the Combined Plan and Disclosure Statement complies with the requirements set forth in the Bankruptcy Code because the Debtors created Classes of Claims and Interests each encompassing Claims or Equity Interest, as applicable, that are substantially similar to the other Claims or Interests, as applicable, in each such Class.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

(ii)     <u>The Conditions Precedent to the Effective Date May Not Occur</u>.  As more fully set forth in Article XVI hereof, the Confirmation Date and the Effective Date are subject to a number of conditions precedent.  If such conditions precedent are not met or waived, the Confirmation Date or the Effective Date will not take place.

(iii)     <u>The Debtors May Fail to Satisfy Voting Requirements</u>.  If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Combined Plan and Disclosure Statement, the Debtors intend to seek, as promptly as practicable thereafter, confirmation of the Combined Plan and Disclosure Statement.  In the event that sufficient votes are not received, the Debtors, with the consent of the Committee, may seek to confirm an alternative chapter 11 plan.  There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims as those proposed in the Combined Plan and Disclosure Statement.

(iv)    The Debtors May Not Be Able to Secure Confirmation of the Combined Plan and Disclosure Statement.  There can be no assurance that the requisite acceptances to confirm the Combined Plan and Disclosure Statement will be received.  Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Combined Plan and Disclosure Statement.  A non-accepting Holder of an Allowed Claim might challenge either the adequacy of the Combined Plan and Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules.  Even if the Bankruptcy Court determines that the Combined Plan and Disclosure Statement, the balloting procedures, and the voting results are appropriate, the Bankruptcy Court could still decline to confirm the Combined Plan and Disclosure Statement if it finds that any of the statutory requirements for confirmation are not met.

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, a finding by the Bankruptcy Court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of Distributions to non-accepting Holders of claims and equity interests within a particular class under such plan will not be less than the value of Distributions such Holders would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

Confirmation of the Combined Plan and Disclosure Statement is also subject to certain conditions as described in Article IX hereof.  If the Combined Plan and Disclosure Statement is not confirmed, it is unclear what Distributions, if any, Holders of Allowed Claims will receive on account of such Allowed Claims.

The Debtors, subject to the terms and conditions of the Combined Plan and Disclosure Statement, reserve the right, upon reasonable prior notice to and with the consent of the Committee, to modify the terms and conditions of the Combined Plan and Disclosure Statement as necessary for confirmation.  Any such modifications could result in less favorable treatment of any non-accepting Class, as well as any Class junior to such non-accepting Class, than the treatment currently provided in the Combined Plan and Disclosure Statement.  Such a less favorable treatment could include a Distribution of property with a lesser value than currently provided in the Combined Plan and Disclosure Statement or no Distribution whatsoever under the Combined Plan and Disclosure Statement.

(v)    Nonconsensual Confirmation.  In the event that any Impaired class of claims or interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm a plan at the proponents' request if at least one Impaired class (as defined under section 1124 of the Bankruptcy Code) has accepted the plan (with such acceptance being determined without including the vote of any Insider in such class), and, as to each Impaired class that has not accepted the

plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting Impaired class(es).  The Debtors believe that the Combined Plan and Disclosure Statement satisfies these requirements, and the Debtors may request such nonconsensual confirmation in accordance with subsection 1129(b) of the Bankruptcy Code.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion.  In addition, the pursuit of nonconsensual confirmation or Consummation of the Combined Plan and Disclosure Statement may result in, among other things, increased expenses relating to professional compensation.

(vi)    The Chapter 11 Cases May Be Converted to Cases under Chapter 7 of the Bankruptcy Code.  If the Bankruptcy Court finds that it would be in the best interests of Creditors and/or the debtor in a chapter 11 case, the Bankruptcy Court may convert a chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code.  In such event, a chapter 7 trustee would be appointed or elected to liquidate the debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code.  The Debtors believe that liquidation under chapter 7 would result in significantly smaller Distributions being made to Creditors than those provided for in the Combined Plan and Disclosure Statement because of the (a) likelihood that the Assets, including any Cryptocurrency, would have to be sold or otherwise disposed of in a disorderly fashion over a short period of time rather than reorganizing or selling in a controlled manner affecting the business as a going concern, (b) additional administrative expenses involved in the appointment of a chapter 7 trustee, and (c) additional expenses and Claims, some of which would be entitled to priority, that would be generated during the liquidation, including Claims resulting from the rejection of Unexpired Leases and Executory Contracts.

(vii)    The Debtors May Object to the Amount or Classification of a Claim.  Except as otherwise provided in the Combined Plan and Disclosure Statement, the Debtors reserve the right to object to the amount or classification of any Claim under the Combined Plan and Disclosure Statement.  The estimates set forth in the Combined Plan and Disclosure Statement cannot be relied upon by any Holder of a Claim, as the Debtors or the Liquidation Trustee may seek to investigate, File, and prosecute Claims and may object to Claims after confirmation of the Combined Plan and Disclosure Statement.

(viii)    Contingencies Could Affect Votes of Impaired Classes to Accept or Reject the Combined Plan and Disclosure Statement.  The Distributions available to Holders of Allowed Claims under the Combined Plan and Disclosure Statement can be affected by a variety of contingencies, including, without limitation, whether the Bankruptcy Court orders certain Allowed Claims to be subordinated to other Allowed Claims.  The occurrence of any and all such contingencies, which could affect Distributions available to Holders of Allowed Claims under the Combined Plan and Disclosure Statement, will not affect the validity of the vote taken by the Impaired Classes to accept or reject the Combined Plan and Disclosure Statement or require any sort of revote by the Impaired Classes.

The estimated Claims and Creditor recoveries set forth in the Combined Plan and Disclosure Statement are based on various assumptions. Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual Allowed amounts of Claims may vary from the estimated Claims contained herein. Moreover, Creditor recoveries will depend on the outcome of litigation that may be brought by the Liquidation Trust for the benefit of Creditors. Litigation outcomes are inherently uncertain and, if the litigation pursued by the Liquidation Trust is unsuccessful, may materially and adversely impact Creditor recoveries. Furthermore, the Debtors cannot determine with any certainty at this time, the number or amount of Claims that ultimately will be Allowed. Such differences may materially and adversely affect, among other things, the percentage recoveries to Holders of Allowed Claims under the Combined Plan and Disclosure Statement.

(ix)     Releases, Injunctions, and Exculpations Provisions May Not Be Approved. Article XVIII hereof provides for certain releases, injunctions, and exculpations, including a release of Liens and third party releases that may otherwise be asserted against the Debtors or the Released Parties. The releases, injunctions, and exculpations provided herein are subject to objection by parties in interest and may not be approved.

(x)     Risk of Non-Occurrence of the Effective Date. Although the Debtors believe that the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing or as to whether the Effective Date will, in fact, occur. If the Effective Date does not occur, the Combined Plan and Disclosure Statement shall be null and void in all respects and nothing contained herein shall: (a) constitute a waiver or release of any Claims by or Claims against or Equity Interest in the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holder of a Claim or Equity Interest, or any other Entity; (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Equity Interest, or any other Entity in any respect; or (d) be used by the Debtors or any Entity as evidence (or otherwise) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments, or claims.

(xi)     Risk of Loss of Exclusive Right to Propose a Plan. At the outset of the Chapter 11 Cases, the Bankruptcy Code provides the Debtors with the exclusive right to propose a plan and prohibits creditors and others from proposing a plan. If the Bankruptcy Court terminates that right, however, or the exclusivity period expires, there could be a material adverse effect on the Debtors' ability to achieve confirmation of the Combined Plan and Disclosure Statement in order to achieve the Debtors' stated goals.

(b)     <u>Risks Related to Recoveries Provided Under the Combined Plan and Disclosure Statement</u>.

(i)     <u>Timing and Amount of Distributions</u>.  Various factors will impact the amount of recoveries that Holders of Allowed Claims receive, including, without limitation, the degree to which objections to Claims are successful.  Further, due to the nature of litigation, it may take years to fully adjudicate, decide, or resolve objections to Claims.  As a result, Holders of Allowed Claims may not receive final Distributions in accordance herewith for a prolonged period of time following the Effective Date.

(ii)    <u>Uncertainty of Distribution</u>.  No assurances can be made that Holders of Allowed Claims will receive a Distribution as it is possible the Liquidation Trust Expenses will exceed the realizable value of the Liquidation Trust Assets.  In such a scenario, there would be no recovery to Holders of Allowed Claims.

(iii)   <u>Cryptocurrency Distributions</u>.  The Liquidation Trustee shall make good faith efforts to make Equivalent Cryptocurrency Distributions; however, there can be no assurance that the ability to make such Equivalent Cryptocurrency Distributions is guaranteed.  If the Liquidation Trustee cannot make Equivalent Cryptocurrency Distributions for any reason, Distributions will be made to Holders of Customer Claims that made a Cryptocurrency Election in Cash consistent with this Combined Plan and Disclosure Statement.

(iv)    <u>Certain Tax Implications of the Combined Plan and Disclosure Statement</u>.  Consummation may result in significant tax implications for the Debtors and Holders of Claims.  Holders of Allowed Claims should abide by Article IV hereof to determine how the tax implications of the Combined Plan and Disclosure Statement and the Chapter 11 Cases may adversely affect the Holders of Claims.

(c)     <u>The Debtors May Not Be Able to Generate Sufficient Cash to Continue in Chapter 11</u>.

The Debtors may not be able to generate sufficient Cash to continue operating in chapter 11 for a prolonged period of time.  It is also unclear whether the Debtors will be able to obtain postpetition financing to fund administrative expenses through confirmation of an alternative chapter 11 plan.

(d)     <u>The Debtors May Be Adversely Affected by Litigation</u>.

The Debtors may become parties to litigation, and litigation in which the Debtors are already a party may not be resolved in their favor.  In general, litigation can be expensive and time consuming to bring or defend.  Litigation could result in settlements or damages that could significantly affect the Debtors' financial positions.  It is also possible that certain parties will commence litigation with respect to the treatment of their Claims under the Combined Plan and Disclosure Statement.  It is not possible to predict the potential litigation that the Debtors may become party to, nor the final resolution of any litigation.  The impact of any such litigation on the Debtors' business and financial stability, however, could be material.

**5.2      Alternatives to this Combined Plan and Disclosure Statement**

In the event the Debtors are unable to obtain sufficient votes or are unable to satisfy the legal requirements to confirm the Combined Plan and Disclosure Statement, the Debtors, with the consent of the Committee, may seek to confirm an alternative chapter 11 plan or convert the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.  There can be no assurance that the terms of any such alternative chapter 11 plan or sale pursuant to section 363 of the Bankruptcy Code would be similar or as favorable to the Holders of Allowed Claims as those proposed in the Combined Plan and Disclosure Statement.  As set forth in Article VI hereof, the Debtors believe it is unlikely that conversion of the Chapter 11 Cases to cases under chapter 7 will result in greater Distributions to stakeholders.

**ARTICLE  VI.**
**BEST INTERESTS AND FEASIBILITY**

**6.1      Best Interests Test**

Section 1129(a)(7) of the Bankruptcy Code requires that each Holder of an Impaired Claim or Equity Interest either (a) accept the plan or (b) receive or retain under the plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  Because of the increased expenses that would be incurred in the event of a conversion of the Chapter 11 Cases to cases under chapter 7, the value of any Distributions to Holders of Claims or Equity Interests if the Chapter 11 Cases were converted to cases under chapter 7 would be less than the value of Distributions hereunder.  This is because conversion of the Chapter 11 Cases to chapter 7 would require the appointment of a chapter 7 trustee, and in turn, such chapter 7 trustee's likely retention of new professionals.

The "learning curve" that the chapter 7 trustee and new professionals would be faced with comes with additional costs to the Estates and delay compared to the time of Distributions under the Combined Plan and Disclosure Statement.  As a result, the Debtors believe that their Estates would have fewer funds available for Distribution in a hypothetical chapter 7 liquidation than they would if the Combined Plan and Disclosure Statement is confirmed, and, therefore, Holders of Allowed Claims will recover less in the hypothetical chapter 7 cases.[8]  Accordingly, the Debtors believe that the "best interests" test of section 1129 of the Bankruptcy Code is satisfied.

**6.2      Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the Combined Plan and Disclosure Statement is not likely to be followed by liquidation, or the need for further financial reorganization, of the Debtors or any successors to the Debtors, unless such liquidation or reorganization is proposed in the Combined Plan and Disclosure Statement.  As set forth herein, the Debtors commenced the Chapter 11 Cases to allow for an efficient and orderly sale of their Assets, followed by a wind-down process, which the Combined Plan and Disclosure

---

[8]      A hypothetical chapter 7 liquidation analysis is attached hereto as **Exhibit B**.

Statement accomplishes. The Debtors will not be conducting any business operations after the Effective Date. As such, provided that the Combined Plan and Disclosure Statement is Consummated, the Debtors' Estates will not be subject to future reorganization or liquidation. Accordingly, the Debtors believe that the Combined Plan and Disclosure Statement is feasible and meets the requirements of section 1129(a)(11) of the Bankruptcy Code.

# ARTICLE VII.
## SUMMARY OF ASSETS AND TREATMENT OF CLAIMS AND INTERESTS

### 7.1    Summary of Assets

As of the Petition Date, the former book value of the Debtors' Assets was approximately $69 million. Book value is generally computed in accordance with various accounting pronouncements and may not correlate with the fair value of an individual Asset or of the enterprise value of the Debtors as a whole. Moreover, the Debtors have not conducted the impairment analysis which would be required under GAAP for such former book value to be considered a current and reliable book value. Such impairment analysis would likely result in a book value significantly less than the former book value referred to above. The Debtors' Assets broadly consist of Cash and Cash equivalents, Cryptocurrency, technological platforms, loan obligations, and certain other Assets under management.

As of December 31, 2020, the Debtors held approximately $970,000 in Cash. In addition, the Debtors hold a variety of Cryptocurrencies. Certain of these Cryptocurrencies are "liquid" and can be readily converted to Cash. As of December 31, 2020, the Debtors held approximately $5.3 million in liquid Cryptocurrencies. A portion of the Cryptocurrency held by the Debtors is considered "illiquid," the value of which is difficult to determine with any level of certainty and which require the Debtors to overcome additional barriers (which may require additional marketing efforts and/or liquidation in smaller quantities) to convert these "illiquid" Cryptocurrencies into Cash.

The Debtors' Assets also include obligations under customer loans and loans issued by the Debtors. Of note, moKredit is obligated to repay the Debtors approximately $39 million. However, as discussed above, moKredit is currently not making payments on the outstanding principal, and thus the account balance may be partially or completely uncollectible.

The Debtors are owed approximately $8 million for loans issued under the CredBorrow program. However, these creditors may argue that obligations would only be collected if Collateral was returned, and thus the account balance may be partially or completely uncollectible. For the purposes of this Plan, the Debtors cannot ascribe value to the moKredit loan obligation as there is no market for any fair valuation purposes nor have the Debtors been able to conduct an impairment analysis which would be necessary to present a book value for the loan.

The Debtors also have certain "assets under management" valued at approximately $3.6 million, as of December 31, 2020, to be returned by certain third-party asset managers.

Additionally, the Debtors own a proprietary technological platform and various Causes of Action, which may be of significant value.

## 7.2    Summary of Treatment of Claims and Equity Interests

The following table (a) designates the Classes of Claims against, and Equity Interests in, the Debtors, (b) specifies the Classes of Claims and Equity Interests that are Impaired by the Combined Plan and Disclosure Statement and therefore are deemed to reject the Combined Plan and Disclosure Statement or are entitled to vote to accept or reject the Combined Plan and Disclosure Statement in accordance with section 1126 of the Bankruptcy Code, and (c) specifies the Classes of Claims and Equity Interests that are Unimpaired by the Combined Plan and Disclosure Statement and therefore are deemed to accept the Combined Plan and Disclosure Statement in accordance with section 1126 of the Bankruptcy Code.

| Class | Description | Impairment | Entitled to Vote | Estimated Allowed Claim Amounts | Estimated Recovery Percentage |
|---|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) | $0 | 100% |
| 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) | $0 | 100% |
| 3 | Other Secured Claims | Unimpaired | No (deemed to accept) | Unknown | 100% |
| 4 | General Unsecured Claims | Impaired | Yes | $170.9 million | Unknown |
| 5 | Convenience Claims | Impaired | Yes | $0.5 million | 30%[9] |
| 6 | Subordinated Securities Claims | Impaired | No (deemed to reject) | $0 | 0% |
| 7 | Equity Interests in Debtors | Impaired | No (deemed to reject) | Not applicable | 0% |

## 7.3    Deemed Consolidation

The Combined Plan and Disclosure Statement provides for deemed consolidation of the Debtors' Estates solely for the purposes hereof, including making any Distributions to Holders of

---

[9]    The estimated recovery percentage for General Unsecured Claims that exercise the Convenience Class Election is less than 30%.

Allowed Claims. Deemed consolidation is a type of substantive consolidation, "under which a consolidation is deemed to exist for purposes of voting and satisfying creditor claims, voting for or against the Plan, and making distributions for allowed claims under it." *In re Owens Corning*, 419 F.3d 195, 202 (3d Cir. 2005); *see also In re Genesis Health Ventures, Inc.*, 402 F.3d 416, 423-24 (3d Cir. 2005). It is an equitable remedy that bankruptcy courts may apply in appropriate circumstances. *See In re Owens Corning*, 419 F.3d 195, 216 (3d Cir. 2005).

Substantive consolidation is appropriate where (i) prepetition the debtors disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity or (ii) postpetition the debtors' assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors. *In re Owens Corning*, 419 F.3d at 211.; *see also In re Augie/Restivo Baking Co., Ltd.,* 860 F.2d 515, 518 (2d Cir. 1988) (noting that decisions approving substantive consolidation emphasize whether creditors dealt with the entities as a single economic unit or whether the affairs of the debtors are so entangled that consolidation will benefit all creditors).

The Debtors submit that deemed consolidation is appropriate under the law and the facts present here. Prior to the Petition Date, the Debtors' books and records did not precisely record Assets and Liabilities attributable to each of the Debtors individually. As a result, it would be a painstaking and costly endeavor to try to unwind the Debtors' business affairs and allocate assets and Liabilities on a Debtor by Debtor basis, to the extent such unwinding and allocation is even possible. To the extent it is possible, such an allocation would be extremely time consuming and costly, and would greatly diminish the pool of assets available for Distribution to Creditors.

For example, without substantial costs and efforts, including a review of all contracts of the more than 6,500 Customers, the Debtors cannot verify which Customers are creditors of Cred Inc. or Cred (US) LLC. Based on an initial analysis, several Customer contracts appear to be with Cred Inc., but used a Cred (US) LLC signature block. The Debtors believe it will be difficult if not impossible to properly allocate the assets and liabilities associated with such contracts on a Debtor by Debtor basis. Furthermore, a detailed forensic analysis would be needed to identify and reconcile all intercompany transfers, including transfers of Cash and transfers of Cryptocurrencies through Fireblocks. Moreover, the Debtors are unable to identify the specific Debtor entity that owns the remaining bitcoin, as there was significant movement in bitcoin between the Debtors during normal operations, including commingling of such assets, making tracing of bitcoin to any particular Debtor entity practically impossible. Finally, the Debtors' platform was used by all operating Debtor entities, and it is practically impossible to allocate the value of that platform to these Debtor entities.

Deemed consolidation for voting and Distribution purposes will avoid these delays and expenses, without causing prejudice to any group of creditors. Under the Combined Plan and Disclosure Statement, each Creditor within a Class will be treated equally.

## 7.4    Third Party Releases

It is the Debtors' position that the consideration for the third party releases set forth in Section 18.2 hereof and the mechanism by which Holders of Claims who are impaired under the Plan to consent to such releases meet the requirements for third party releases and are consistent

with recent chapter 11 cases.  All Impaired Holders of Claims, irrespective of whether they are entitled to vote on the Plan, will receive a Solicitation Package which will include materials allowing such Holders to opt out of the third party release via their Ballot or an Opt-Out Election Form that can mailed or hand-delivered to the Voting Agent.  In addition, the Debtors believe the third party releases are entirely consensual under the established case law in the United States Bankruptcy Court for the District of Delaware.  *See*, *e.g.*, *In re Indianapolis Downs, LLC, 486 B.R. 286, 304-06* (Bankr. D. Del. 2013).  The Debtors will be prepared to meet their burden to establish the basis for the releases, exculpations, and injunctions for each of the Released Parties as part of confirmation of the Combined Plan and Disclosure Statement.

## ARTICLE  VIII.
## CONFIRMATION AND VOTING PROCEDURES

**8.1     Combined Hearing**

A hearing before the Honorable John T. Dorsey has been scheduled for **March 9, 2021 at 2:00 p.m. (prevailing Eastern Time)**, at the Bankruptcy Court, 824 North Market Street, 5th Floor, Courtroom No. 5, Wilmington, Delaware 19081, to consider (i) final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (ii) confirmation of the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code.  The Combined Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Combined Hearing or by Filing a notice with the Bankruptcy Court.

**8.2     Procedure for Objections**

Any objection to approval or confirmation of this Combined Plan and Disclosure Statement must: (a) be in writing, (b) conform to the Bankruptcy Rules and Local Bankruptcy Rules, and (c) be filed with the Bankruptcy Court and served so as to be **actually received on or before March 1, 2021 at 4:00 p.m. (prevailing Eastern Time)**, by: (i) counsel to the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, Texas 77002, Attn: James T. Grogan, Esq., and Cousins Law LLC, Brandywine Plaza West, 1521 Concord Pike, Suite 301, Wilmington, Delaware 19803, Attn: Scott D. Cousins; and (ii) counsel to the Committee, McDermott Will & Emery LLP, 340 Madison Avenue, New York, NY 10173, Attn: Timothy W. Walsh and Darren Azman, and 1007 North Orange Street, 4th Floor, Wilmington, DE 19801, Attn: David R. Hurst.

**8.3     Voting Procedures**

(a)     Who May Vote on the Combined Plan and Disclosure Statement

Each Holder of a Class 4 or Class 5 Claim that is not a Disallowed Claim and for which no objection to the allowance thereof, motion to estimate, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed and remains unresolved, or the Holder of a Class 4 or Class 5 Claim that has been temporarily allowed for voting purposes only under Bankruptcy Rule 3018(a) shall be entitled to vote separately to accept or reject the

Combined Plan and Disclosure Statement, subject to the procedures set forth in the Disclosure Statement Order or any other applicable order of the Bankruptcy Court. An Impaired Class of Claims shall have accepted the Combined Plan and Disclosure Statement if: (i) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Combined Plan and Disclosure Statement, and (ii) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Combined Plan and Disclosure Statement.

Classes 1, 2, and 3 are Unimpaired under the Combined Plan and Disclosure Statement, are each deemed to accept the Combined Plan and Disclosure Statement by operation of law, and are not entitled to vote on the Combined Plan and Disclosure Statement.

Classes 6 and 7 are Impaired under the Combined Plan and Disclosure Statement and are deemed to reject the Combined Plan and Disclosure Statement by operation of law, and are not entitled to vote on the Combined Plan and Disclosure Statement.

Without limiting the foregoing, in the event that any Class of Claims entitled to vote on the Combined Plan and Disclosure Statement fails to accept the Combined Plan and Disclosure Statement as required by section 1129(a) of the Bankruptcy Code, the Combined Plan and Disclosure Statement may be amended or modified in accordance with the terms herein and, in any event, the Debtors, subject to any consent that may be required herein or under the Plan Support Agreement, reserve the right to seek confirmation hereof over such rejection pursuant to section 1129(b) of the Bankruptcy Code.

      (b)    <u>Voting Record Date</u>

The Bankruptcy Court has approved the close of business on January 14, 2021 as the voting record date (the "<u>Voting Record Date</u>"). The Voting Record Date is the date for determining (1) which Holders of Claims are entitled to vote to accept or reject the Combined Plan and Disclosure Statement and receive the Solicitation Package and (2) whether Claims have been properly assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of a Claim. The Voting Record Date shall apply to all of the Debtors' creditors and other parties in interest.

      (c)    <u>Voting Agent</u>

The Debtors have retained Donlin, Recano & Company, Inc. (the "<u>Voting Agent</u>") to, among other things, act as claims and solicitation agent in connection with the solicitation of votes to accept or reject the Combined Plan and Disclosure Statement. Inquiries relating to the solicitation process, voting instructions, related procedures and copies of the solicitation materials may be directed to the Voting Agent at no charge by: (a) accessing the Debtors' restructuring website at https://www.donlinrecano.com/Clients/cred/Dockets; (b) calling the Voting Agent at (877) 739-9988 (toll free); or (c) emailing DRCvote@DonlinRecano.com. The

Voting Agent, however, is not authorized to provide, and will not provide, legal or financial advice.

      (d)    <u>Solicitation Package, Ballots and Notices</u>

      The following materials constitute the solicitation package with respect to the Combined Plan and Disclosure Statement enclosed herewith (the "<u>Solicitation Package</u>"):

    i.    The appropriate form of Ballot and instructions for completing the Ballot;

    ii.    The voting instructions and solicitation procedures approved by the Bankruptcy Court (the "<u>Voting Procedures</u>");

    iii.    The Combined Plan and Disclosure Statement with all exhibits;

    iv.    A notice of the Combined Hearing approved by the Bankruptcy Court for transmission to Holders of Claims and other parties in interest (the "<u>Combined Hearing Notice</u>");

    v.    A copy of the Disclosure Statement Order;

    vi.    a letter from the Committee urging creditors to vote to accept the Combined Joint Plan and Disclosure Statement; and

    vii.    Such other materials as the Bankruptcy Court may direct.

      Only Holders of General Unsecured Claims (Class 4) and Holders of Convenience Claims (Class 5) are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

      (e)    <u>Notices of Non-Voting Status</u>

      As set forth above, certain Holders of Claims and Equity Interests are not entitled to vote on the Combined Plan and Disclosure Statement.  As a result, such parties will not receive Solicitation Packages but, instead, will receive the Combined Hearing Notice that explains, among other things, (i) that Classes 1, 2, and 3 are Unimpaired under the Combined Plan and Disclosure Statement and, therefore, are presumed to have accepted the Combined Plan and Disclosure Statement pursuant to section 1126(f) of the Bankruptcy Code; (ii) that Classes 6 and 7 are Impaired under the Combined Plan and Disclosure Statement and are presumed to have rejected the Combined Plan and Disclosure Statement pursuant to section 1126(g) of the Bankruptcy Code; (iii) instructions for how such Holders of Claims and Equity Interests may obtain a copy of the Combined Plan and Disclosure Statement; (iv) the deadline by which to object to confirmation of the Combined Plan and Disclosure Statement; and (v) the Combined Hearing date and time.  In addition, such parties will receive a Notice of Non-Voting Status and an Opt-Out Election Form.

(f)    Contract and Lease Counterparties

Parties to certain of the Debtors' Executory Contracts and Unexpired Leases may not have Claims pending the disposition of their Executory Contracts and Unexpired Leases by assumption or rejection under the Combined Plan and Disclosure Statement.  Such parties nevertheless will receive the Combined Hearing Notice.

(g)    Submission of Ballots and Opt-Out Election Forms

To be counted as a vote to accept or reject the Combined Plan and Disclosure Statement, such Holder's properly completed and executed Ballot must be received by the Voting Agent by the Voting Deadline and in accordance with the voting instructions attached to each Ballot.  The Voting Agent will process and tabulate received Ballots and will File a voting report (the "Voting Report") as soon as practicable on or after the Voting Deadline but prior to the Combined Hearing.  The Voting Report will include (a) a list of all Ballots received but not counted and the reason for not counting such Ballots and (b) a list of all non-compliant, deficient Ballots for which the Debtors have waived such non-compliance or deficiency.  Parties may contact the Voting Agent with any questions related to the Voting Procedures applicable to their Claims.

In addition, Opt-Out Election Forms must also be received by the Voting Agent on or before the Voting Deadline.

# ARTICLE  IX.
# PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND OTHER UNCLASSIFIED CLAIMS

**9.1    Administrative Expense Claims**

(a)    Treatment of Non-Professional Fee Administrative Expense Claims

Except to the extent that a Holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each Holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) shall receive, in full, final, and complete satisfaction, settlement, release, and discharge of such Allowed Administrative Expense Claim, Cash in an amount equal to such Allowed Administrative Expense Claim on the latest of: (i) on or as soon as practicable after the Effective Date if such Administrative Expense Claim is Allowed as of the Effective Date; (ii) on or as soon as reasonably practicable after the date such Administrative Expense Claim is Allowed; and (iii) on the date such Allowed Administrative Expense Claim becomes due and payable, or as soon thereafter as is practicable.

(b)    Administrative Expense Claims Bar Date

Holders of Administrative Expense Claims (other than Professional Fee Claims) arising during the period from November 7, 2020 through the Effective Date must File requests for payment of Administrative Expense Claims **on or before 4:00 p.m. (prevailing Eastern Time) on the day that is thirty (30) calendar days after the Effective Date** (the "Administrative

Expense Claims Bar Date") and serve such Administrative Expense Claims on the Claims Agent so as to be **actually received on or before the Administrative Expense Claims Bar Date** at the following addresses (the "Claims Agent Service Addresses"):

> If by first-class mail:
>
>> Cred Inc. Claims Processing Center
>> c/o Donlin, Recano & Company, Inc.
>> P.O. Box 199043 Blythebourne Station
>> Brooklyn, NY 11219
>
> If by hand delivery or overnight:
>
>> Cred Inc. Claims Processing Center
>> c/o Donlin, Recano & Company, Inc.
>> 6201 15th Avenue
>> Brooklyn, NY 11219

All such requests for payment must: (i) be signed by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant; (ii) be written in the English language; (iii) denominate the claim in lawful currency of the United States as of the Administrative Expense Claims Bar Date; (iv) indicate the particular Debtor against which the claim is asserted; and (v) include supporting documentation (or, if such documentation is voluminous, include a summary of such documentation) or an explanation as to why such documentation is not available.  The notice of the Effective Date delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f), substantially in the form included in the Plan Supplement, shall set forth the Administrative Expense Claims Bar Date and shall constitute notice of such bar date.

The following claims are **not** required to be filed on or before the Administrative Expense Claims Bar Date:

> (a)  Professional Fee Claims;
>
> (b)  Any Administrative Expense Claims that (i) have been previously paid by the Debtors in the ordinary course of business or otherwise or (ii) have otherwise been satisfied;
>
> (c)  Any Administrative Expense Claim that has been Allowed by prior order of the Bankruptcy Court;
>
> (d)  Any claims by any current officer, manager, or director of the Debtors immediately prior to the Effective Date;
>
> (e)  Any claims for fees payable to the Clerk;
>
> (f)  Any U.S. Trustee Fees; and
>
> (g)  Any claim by a Governmental Unit for a tax or penalty described in

section 503(b)(1)(B) and (C) of the Bankruptcy Code, as provided for in
section 503(b)(1)(D).

Any Entity that is required to file a request for payment of an Administrative Expense
Claim (other than Professional Fee Claims) under the Combined Plan and Disclosure Statement
and that fails to do so by the Administrative Expense Claims Bar Date shall be forever barred,
estopped, and enjoined from asserting such Administrative Expense Claim, and such
Administrative Expense Claim shall not be enforceable against the Liquidation Trust, the
Liquidation Trustees, the Debtors, the Estates, and their respective properties, and the
Liquidation Trust, the Liquidation Trustees, Debtors, the Estates, and their respective properties
shall be forever discharged from any and all Liability with respect to such Administrative
Expense Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided
herein.  All such Administrative Expense Claims shall, as of the Effective Date, be subject to the
permanent injunction pursuant to Section 18.4 hereof and the Confirmation Order.

**9.2     Professional Fee Claims**

All Persons seeking awards by the Bankruptcy Court of compensation for services
rendered or reimbursement of expenses incurred through and including the Effective Date under
sections 330, 331, 363, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code
shall (a) file, on or before the date that is sixty (60) days after the Effective Date, their respective
applications for final allowances of compensation for services rendered and reimbursement of
expenses incurred and (b) be paid in full, in Cash, in such amounts as are Allowed by the
Bankruptcy Court in accordance with the order relating to or allowing any such compensation
and reimbursement of expenses.  The Liquidation Trustees are authorized to pay reasonable
compensation for professional services rendered and reimbursement of expenses incurred after
the Effective Date in the ordinary course and without the need for Bankruptcy Court approval in
accordance with the Liquidation Trust Agreement.

All Allowed Professional Fee Claims shall be paid in full in Cash in such amounts as
may be Allowed by the Bankruptcy Court (a) as soon as practicable after the later of the
Effective Date and the date on which the Bankruptcy Court enters a final order allowing any
such Professional Fee Claim, (b) as otherwise provided in the Bankruptcy Code or approved by
the Bankruptcy Court, or (c) as may be agreed upon between the Holder of any such Professional
Fee Claim and the Debtors.  Professional Fee Claims shall be satisfied from the Professional Fee
Escrow.  If the amount in the Professional Fee Escrow is insufficient to pay in full all Allowed
Professional Fee Claims, the deficiency shall be promptly paid by the Liquidation Trustees from
the Liquidation Trust Assets, without any further action or order of the Bankruptcy Court.

Professionals shall reasonably estimate their unpaid Professional Fee Claims as of the
Effective Date, and shall deliver such estimates to the Debtors no later than five days before the
Effective Date; *provided*, *however*, that such estimates shall not be deemed to limit the amount
of the Professional Fee Claims that are the subject of each Professional's final request for
payment in the Chapter 11 Cases.  If a Professional does not provide an estimate, the Debtors
may estimate the unpaid and unbilled fees and expenses of such Professional.

On or before the Effective Date, the Debtors shall establish the Professional Fee Escrow and shall fund such reserve with Cash equal to the Professional Fee Reserve Amount.  The Professional Fee Escrow and the funds therein shall be used for the sole purpose of paying the Allowed Professional Fee Claims and shall not constitute property of the Debtors, their Estates, or the Liquidation Trust; *provided*, that the Liquidation Trust shall hold a residual interest in the Professional Fee Escrow and, upon the satisfaction of all Allowed Professional Fee Claims, any funds remaining in the Professional Fee Escrow shall vest in the Liquidation Trust.

**9.3    Priority Tax Claims**

Each Holder of an Allowed Priority Tax Claim shall receive, in full, final, and complete satisfaction, settlement, release, and discharge of such Allowed Priority Tax Claim, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, either (a) payment in full in Cash on the Effective Date, (b) payment in regular installment payments within five (5) years of the Petition Date, or (c) such other less favorable treatment to the Holder of an Allowed Priority Tax Claim as to which the Debtor and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

**ARTICLE  X.**
**TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**10.1    Class 1: Other Priority Claims**

(a)    <u>Classification</u>: Class 1 shall consist of the Other Priority Claims.

(b)    <u>Treatment</u>: Except to the extent that a Holder of an Other Priority Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each Holder of an Allowed Other Priority Claim shall receive, in full, final, and complete satisfaction, settlement, release, and discharge of such Allowed Other Priority Claim, Cash in the amount equal to such Allowed Claim, without interest, on or as soon as practicable after the later of (x) the Effective Date and (y) the date that such Claim becomes an Allowed Claim.

(c)    <u>Voting</u>: Class 1 is Unimpaired under the Combined Plan and Disclosure Statement.  Holders of Claims in Class 1 are conclusively deemed to have accepted the Combined Plan and Disclosure Statement pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Claims in Class 1 are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

**10.2    Class 2: Secured Tax Claims**

(a)    <u>Classification</u>: Class 2 shall consist of the Secured Tax Claims.

(b)    <u>Treatment</u>: Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each Holder of an Allowed Secured Tax Claim shall

receive, in full, final, and complete satisfaction, settlement, release, and discharge of such Allowed Secured Tax Claim and any Liens securing such Claim, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, Cash in the amount of such Allowed Secured Tax Claim (a) on, or as soon as practicable after, the latest of: (i) the Effective Date and (ii) the date such Allowed Secured Tax Claim becomes an Allowed Claim; or (b) in regular payments over a period of time not to exceed five (5) years after the Petition Date with interest at a rate determined in accordance with section 511 of the Bankruptcy Code; provided, that the first such regular payment shall represent a percentage recovery at least equal to that expected to be received by the most favored Holders of Allowed General Unsecured Claims; provided further, that the Liquidation Trustees may prepay the entire amount of the Allowed Secured Tax Claim at any time in its sole discretion.

(c)   Voting: Class 2 is Unimpaired under the Combined Plan and Disclosure Statement.  Holders of Claims in Class 2 are conclusively deemed to have accepted the Combined Plan and Disclosure Statement pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Claims in Class 2 are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

**10.3    Class 3: Other Secured Claims**

(a)   Classification: Class 3 shall consist of the Other Secured Claims.

(b)   Treatment: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, each Holder of an Allowed Other Secured Claim shall receive, in full, final, and complete satisfaction, settlement, release, and discharge of such Allowed Other Secured Claim and any Liens securing such Claim, at the sole option of the Debtors or the Liquidation Trustees, as applicable, (i) Cash in an amount equal to such Allowed Other Secured Claim on or as soon as practicable after the Effective Date, or (ii) the Collateral securing its Allowed Other Secured Claim, in full and complete satisfaction of such Allowed Other Secured Claim on or as soon as practicable after the Effective Date.

(c)   Voting: Class 3 is Unimpaired under the Combined Plan and Disclosure Statement.  Holders of Claims in Class 3 are conclusively deemed to have accepted the Combined Plan and Disclosure Statement pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Claims in Class 3 are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

**10.4    Class 4: General Unsecured Claims.**

(a)   Classification: Class 4 shall consist of the General Unsecured Claims.

(b)   Treatment: Except to the extent that a Holder of an Allowed General Unsecured Claim in Class 4 agrees to a less favorable treatment or has been paid by any of the Debtors prior to the Effective Date, each Holder of an Allowed General

Unsecured Claim in Class 4 shall receive, in full and final satisfaction, settlement, and release of such Allowed General Unsecured Claim either: (i) a Cash payment equal to such Holder's Distribution Pro Rata Share of Net Distributable Assets; or, if permitted, (ii) with respect to any such Holder that makes a Cryptocurrency Election, a good faith effort shall be made to make distributions in an Equivalent Cryptocurrency Distribution.

(c)   Voting:  Class 4 is Impaired under the Combined Plan and Disclosure Statement. Holders of Claims in Class 4 are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

**10.5    Class 5: Convenience Claims.**

(a)   Classification: Class 5 shall consist of the Convenience Claims.

(b)   Treatment:  Except to the extent that a Holder of an Allowed Convenience Claim in Class 5 agrees to a less favorable treatment or has been paid by any of the Debtors prior to the Effective Date, each Holder of an Allowed Convenience Claim in Class 5 shall receive, in full and final satisfaction, settlement, and release of such Allowed Convenience Claim, Cash in an amount equal to 30.0% of the amount of such Allowed Convenience Claim on or as reasonably practicable after the later of (i) the Effective Date or (ii) thirty (30) days after the date on which such Claim becomes Allowed.

(c)   Voting:  Class 5 is Impaired under the Combined Plan and Disclosure Statement. Holders of Claims in Class 5 are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

**10.6    Class 6: Subordinated Securities Claims**

(a)   Classification: Class 6 shall consist of all Subordinated Securities Claims.

(b)   Treatment: Each Holder of an Allowed Subordinated Securities Claim will not receive or retain any property under the Combined Plan and Disclosure Statement on account of such Allowed Subordinated Securities Claim.  The treatment of Subordinated Securities Claims under the Combined Plan and Disclosure Statement is in accordance with and gives effect to the provisions of section 510(b) of the Bankruptcy Code.

(c)   Voting: Class 6 is Impaired, and Holders of Class 6 Claims are conclusively presumed to have rejected the Combined Plan and Disclosure Statement under section 1126(g) of the Bankruptcy Code.

**10.7    Class 7: Equity Interests in Debtors**

(a)   Classification: Class 7 shall consist of the Equity Interests in the Debtors.

(b)   Treatment: On the Effective Date, the Equity Interests in the Debtors shall be

cancelled and the Holders of the Equity Interests shall not be entitled to, and shall not receive or retain, any property on account of such Equity Interests under the Combined Plan and Disclosure Statement.

(c)    Voting: Class 7 is Impaired, and such Holders of Class 7 Claims are conclusively presumed to have rejected the Combined Plan and Disclosure Statement under section 1126(g) of the Bankruptcy Code.

**10.8    Reservation of Rights Regarding Claims and Equity Interests**

Except as otherwise explicitly provided herein, nothing shall affect either the Debtors' or the Liquidation Trustees' rights and defenses, both legal and equitable, with respect to any Claims or Equity Interests, including all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

## ARTICLE  XI.
## ACCEPTANCE OR REJECTION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT

**11.1    Voting of Claims**

(a)    Classes Entitled to Vote

Each Holder of a Claim, that is not a Disallowed Claim and for which no objection to the allowance thereof, motion to estimate, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed and remains unresolved, in Classes 4 and 5, or the Holder of a Claim that has been temporarily allowed for voting purposes only under Bankruptcy Rule 3018(a) in such Classes, shall be entitled to vote separately to accept or reject the Combined Plan and Disclosure Statement, as provided in the Disclosure Statement Order or any other applicable order of the Bankruptcy Court.

(b)    Classes Deemed to Accept

Each of Classes 1, 2, and 3 are Unimpaired under the Combined Plan and Disclosure Statement, and each such Class is conclusively presumed to have accepted the Combined Plan and Disclosure Statement pursuant to section 1126(f) of the Bankruptcy Code.

(c)    Classes Deemed to Reject

Subordinated Securities Claims in Class 6 and Equity Interests in Class 7 will not receive or retain any property on account of such Claims or Equity Interests under the Combined Plan and Disclosure Statement.  In accordance with section 1126(g) of the Bankruptcy Code, Classes 6 and 7 are conclusively presumed to have rejected the Combined Plan and Disclosure Statement.

**11.2    Elimination of Vacant Classes**

Any Class of Claims or Equity Interests that does not contain, as of the date of the Confirmation Hearing, a Holder of an Allowed Claim or Allowed Equity Interest, or a Holder of a Claim temporarily Allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Combined Plan and Disclosure Statement for all purposes, including for purposes of determining acceptance of the Combined Plan and Disclosure Statement by such Class under section 1129(a)(8) of the Bankruptcy Code.

**11.3    Nonconsensual Confirmation**

If any Impaired Class of Claims entitled to vote shall not accept the Combined Plan and Disclosure Statement by the requisite statutory majority provided in section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend the Combined Plan and Disclosure Statement in accordance with Section 20.5 hereof or undertake to have the Bankruptcy Court confirm the Combined Plan and Disclosure Statement under section 1129(b) of the Bankruptcy Code, or both.  With respect to Impaired Classes of Claims that are deemed to reject the Combined Plan and Disclosure Statement, the Debtors shall request that the Bankruptcy Court confirm the Combined Plan and Disclosure Statement pursuant to section 1129(b) of the Bankruptcy Code.

**11.4    Revocation of the Combined Plan and Disclosure Statement**

Subject to Section 20.6 hereof, the Debtors, after consultation with the Committee, may revoke and withdraw the Combined Plan and Disclosure Statement in its entirety at any time prior to entry of the Confirmation Order.  If the Combined Plan and Disclosure Statement is so revoked or withdrawn, then it shall be deemed null and void.

**ARTICLE  XII.**
**MEANS OF IMPLEMENTATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT**

In addition to the provisions set forth elsewhere in the Combined Plan and Disclosure Statement, the following shall constitute the means for implementation of the Combined Plan and Disclosure Statement:

**12.1    Limited Substantive Consolidation**

The Combined Plan and Disclosure Statement provides for substantive consolidation of the Debtors' Estates, but solely for the purposes hereof, including making any Distributions to Holders of Allowed Claims.

On the Effective Date, (i) all Assets and Liabilities of the Debtors will, solely for Distribution purposes, be treated as if they were merged, (ii) all Intercompany Claims will be eliminated, (iii) each Claim Filed or to be Filed against the Debtors will be deemed a single nonaggregated Claim against, and a single non-aggregated obligation of, the Debtors, (iv) all guarantees of any Debtor of the payment, performance, or collection of obligations of another Debtor shall be eliminated and canceled; and (v) all transfers, disbursements and Distributions on account of Claims made by or on behalf of any of the Debtors' Estates hereunder will be deemed to be made by or on behalf of all of the Debtors' Estates.  Holders of Allowed Claims entitled to

Distributions under this Combined Plan and Disclosure Statement shall be entitled to their Distribution Pro Rata Share on account of such Claim without regard to which Debtor was originally liable for such Claim.  Except as set forth herein, such limited substantive consolidation shall not (other than for purposes related to this Combined Plan and Disclosure Statement) affect the legal and corporate structures of the Debtors.

## 12.2   Global Settlement

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Combined Plan and Disclosure Statement incorporates a compromise and settlement of numerous inter-Debtor, Debtor-Creditor, and inter-Creditor issues designed to achieve an economic settlement of Claims against the Debtors and an efficient resolution of the Chapter 11 Cases.  This global settlement constitutes a settlement of Claims as provided herein, including the validity and enforceability of Intercompany Claims, and the allocation of Assets among the Estates.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromises and settlements underlying the substantive consolidation of the Debtors' Estates and all other compromises and settlements provided herein.  The Bankruptcy Court's findings shall constitute its determination that such compromises and settlements, and the substantive consolidation of the Debtors' Estates, are in the best interests of the Debtors, their Estates, their Creditors, and other parties-in-interest, and are fair, equitable, and within the range of reasonableness.  Each provision of the global settlement shall be deemed non-severable from each other and from the remaining terms hereof.  As set forth in detail below, the global settlement will be implemented as set forth herein, through the substantive consolidation of the Debtors' Estates, solely for purposes of voting on, and Distributions hereunder.

## 12.3   Liquidation of the Debtors

On the Effective Date, the Debtors will transfer all of their Assets to the Liquidation Trust, for Distribution in accordance herewith.  The Confirmation Order shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Combined Plan and Disclosure Statement.

(a)     Appointment of Liquidation Trustees

The Liquidation Trustees shall be selected by the members of the Committee and shall be identified in the Liquidation Trust Agreement.  The appointment of the Liquidation Trustees shall be approved in the Confirmation Order, and the Liquidation Trustees' duties shall commence as of the Effective Date.  The Liquidation Trustees shall administer the Combined Plan and Disclosure Statement and the Liquidation Trust and shall serve as a representative of the Estates under section 1123(b) of the Bankruptcy Code for the purpose of enforcing Causes of Action belonging to the Estates.

In accordance with the Liquidation Trust Agreement, the Liquidation Trustees shall serve in such capacity through the earlier of (i) the date on which the Liquidation Trust is dissolved in accordance with Section 12.3(j) hereof and (ii) the date on which a Liquidation Trustee resigns, is terminated, or is otherwise unable to serve; provided, however, that, in the event that a

Liquidation Trustee resigns, is terminated, or is otherwise unable to serve, the Trust Advisory Board shall appoint a successor to serve as a Liquidation Trustee in accordance with the Liquidation Trust Agreement.  If the Trust Advisory Board does not appoint a successor within the time periods specified in the Liquidation Trust Agreement, then the Bankruptcy Court, upon the motion of any party-in-interest, including counsel to the Liquidation Trust, shall approve a successor to serve as a Liquidation Trustee.  Any such successor Liquidation Trustee shall serve in such capacity until the Liquidation Trust is dissolved.

      (b)    <u>Responsibilities of Liquidation Trustees</u>

Responsibilities of the Liquidation Trustees, subject to a Trust Advisory Board consisting of those parties identified in the Plan Supplement, and at no time greater than four members, shall include, but are not limited to:

      (i)    Administering the implementation hereof, including the making of the Distributions contemplated herein;

      (ii)    Marshalling, marketing for sale, and liquidating the Estates' Assets;

      (iii)    Conducting an analysis of any and all Claims and Equity Interests and prosecuting objections thereto or settling or otherwise compromising such Claims and Equity Interests, if necessary and appropriate, in accordance with Article XIV hereof;

      (iv)    Maintaining and administering the Reserves in accordance with the terms hereof;

      (v)    Commencing, prosecuting, or settling claims and Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges in accordance herewith and paying all associated costs;

      (vi)    Recovering and compelling turnover of the Debtors' property;

      (vii)    Adjudicating third-party claims assigned, purchased, or otherwise transferred to the Liquidation Trust;

      (viii)    Paying Liquidation Trust Expenses;

      (ix)    Abandoning any property constituting the Estates' Assets that cannot be sold or otherwise disposed of for value and whose Distribution to Holders of Allowed Claims would not be feasible or cost-effective in the Liquidation Trustees' reasonable judgment;

      (x)    Preparing and filing post-Effective Date operating reports;

      (xi)    Filing appropriate tax returns in the exercise of the Liquidation Trustees' fiduciary obligations;

(xii)   Retaining such Professionals as are necessary and appropriate in furtherance of the Liquidation Trustees' fiduciary obligations; and

(xiii)  Taking such actions as are necessary and reasonable to carry out the purposes of the Liquidation Trust, including winding down the Debtors' business affairs.

(c)    <u>Establishment of a Liquidation Trust</u>

Pursuant to the Confirmation Order, the Liquidation Trust, which may be referred to as the "Cred Inc. Liquidation Trust," will be established. The Liquidation Trust shall be the successor-in-interest to the Committee. The Liquidation Trust will be intended to qualify as a "liquidating trust" as described in Treasury Regulations Section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684, and will be treated for federal income tax purposes as a "grantor trust" under Internal Revenue Code sections 671-677. The Liquidation Trust shall be managed by the Liquidation Trustees, who shall be selected by the Committee in its sole discretion, and subject to a Trust Advisory Board consisting of each member of the Committee who wishes to continue in such role, and such additional members nominated by the Committee, if any. The Liquidation Trust shall be administered in accordance with the terms of the Liquidation Trust Agreement.

Prior to the Effective Date, any and all of the Estates' Assets shall remain Assets of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and on the Effective Date shall, subject to the Liquidation Trust Agreement, be transferred to and vest in the Liquidation Trust. For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, assigned or sold pursuant to a prior Order or the Combined Plan and Disclosure Statement, the Liquidation Trustees specifically retain and reserve the right to assert, after the Effective Date, any and all of the claims, Causes of Action (including but not limited to those Causes of Action listed on the Causes of Action List) and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing.

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the Liquidation Trust and the Liquidation Trustees shall have the right to pursue or not to pursue, or, subject to the terms hereof and the Liquidation Trust Agreement, compromise or settle any Liquidation Trust Assets. From and after the Effective Date, the Liquidation Trust and the Liquidation Trustees may commence, litigate, and settle any Causes of Action or Claims relating to the Liquidation Trust Assets or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the Liquidation Trust and Liquidation Trustees on or after the Effective Date, except as otherwise expressly provided herein and in the Liquidation Trust Agreement. The Liquidation Trust shall be entitled to enforce all defenses and counterclaims to all Claims asserted against the Debtors and their Estates, including setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code.

Other than as set forth herein, no other Entity may pursue such Liquidation Trust Assets on or after the Effective Date. The Liquidation Trustees shall be deemed hereby substituted as plaintiff, defendant, or in any other capacity for the Debtors in any Causes of Action pending before the Bankruptcy Court or any other court that relates to a Liquidation Trust Asset without the need for filing any motion for such relief. On the Effective Date, the Debtors and the

48

Liquidation Trustees shall execute the Liquidation Trust Agreement and shall have established the Liquidation Trust pursuant hereto.  In the event of any conflict between the terms of this Article XII and the terms of the Liquidation Trust Agreement, the terms of the Liquidation Trust Agreement shall control.

     (d)    <u>Liquidation Trust Assets</u>

Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date and periodically thereafter if additional Liquidation Trust Assets become available, the Debtors shall be deemed, subject to the Liquidation Trust Agreement, to have automatically transferred to the Liquidation Trust all of their right, title, and interest in and to all of the Liquidation Trust Assets, in accordance with section 1141 of the Bankruptcy Code, including the Debtors' attorney-client privilege.  All such Assets shall automatically vest in the Liquidation Trust free and clear of all Claims, Liens, and other interests, subject only to the Allowed Claims as set forth herein and the expenses of the Liquidation Trust as set forth herein and in the Liquidation Trust Agreement.  Thereupon, the Debtors shall have no interest in or with respect to the Liquidation Trust Assets or the Liquidation Trust.

     (e)    <u>Treatment of Liquidation Trust for Federal Income Tax Purposes; No Successor-in-Interest</u>

The Liquidation Trust shall be established for the primary purpose of liquidating and distributing the Assets transferred to it, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust.  Accordingly, the Liquidation Trustees may, in an expeditious but orderly manner, liquidate the Liquidation Trust Assets, make timely Distributions to the Liquidation Trust Beneficiaries and not unduly prolong its duration.  The Liquidation Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidation Trust Agreement.  The record holders of beneficial interests shall be recorded and set forth in a register maintained by the Liquidation Trustees expressly for such purpose.

The Liquidation Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidation Trust Beneficiaries treated as grantors and owners of the Liquidation Trust.  For all federal income tax purposes, all parties (including the Debtors, the Liquidation Trustees, and the Liquidation Trust Beneficiaries) shall treat the transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust, as set forth in the Liquidation Trust Agreement, as a transfer of such Assets by the Debtors to the Holders of Allowed General Unsecured Claims entitled to Distributions from the Liquidation Trust Assets, followed by a transfer by such Holders to the Liquidation Trust.  Thus, the Liquidation Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

As soon as practicable after the Effective Date, the Liquidation Trustees shall make a good faith determination of the fair market value of the Estates' Assets as of the Effective Date, <u>provided</u>, <u>however</u>, that the Liquidation Trustees shall not be required to hire an expert to make such a valuation.  This valuation shall be used consistently by all parties (including the Debtors, the Liquidation Trustees, and the Holders of General Unsecured Claims) for all federal income

tax purposes.  The Bankruptcy Court shall resolve any dispute regarding the valuation of the Liquidation Trust Assets.

The right and power of the Liquidation Trustees to invest the Liquidation Trust Assets, the proceeds thereof, or any income earned by the Liquidation Trust, shall be limited to the right and power that a liquidating trust, within the meaning of Section 301.7701-4(d) of the Treasury Regulations, is permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings or other IRS pronouncements.  The Liquidation Trustees may expend the Cash of the Liquidation Trust (i) as reasonably necessary to meet Contingent Liabilities and to maintain the value of the respective Assets of the Liquidation Trust during liquidation, (ii) to pay the respective reasonable administrative expenses (including any taxes imposed on the Liquidation Trust) and (iii) to satisfy other respective Liabilities incurred by the Liquidation Trust in accordance herewith and with the Liquidation Trust Agreement (including the payment of any taxes).

(f)    The Trust Advisory Board.

The Trust Advisory Board shall consist of those parties identified in the Plan Supplement, and at no time greater than four members.  To the extent any act of the Trust Advisory Board requires a majority vote of the Trust Advisory Board and such vote ends in a tie, then such act shall be subject to the approval of the Bankruptcy Court by the motion of the Liquidation Trustees.

The Trust Advisory Board shall have the responsibility to review and advise the Liquidation Trustees with respect to the liquidation and Distribution of the Estates' Assets in accordance herewith and the Liquidation Trust Agreement.  For the avoidance of doubt, in advising the Liquidation Trustees the Trust Advisory Board shall maintain the same fiduciary responsibilities as the Liquidation Trustee delineated in Article 12.3(b)(i)-(xiii) herein.  The Debtors or the Committee shall File a notice identifying the final members of the Trust Advisory Board no later than the date of the Combined Hearing.  Vacancies on the Trust Advisory Board shall be filled by a Person designated by the remaining member or members of the Trust Advisory Board from among the Holders of General Unsecured Claims, and the Trust Advisory Board shall use reasonable efforts to maintain such composition of the members of the Trust Advisory Board as existed prior to the resignation of such member.  The Liquidation Trustees shall have the authority to seek an order from the Bankruptcy Court removing or replacing members of the Trust Advisory Board for cause.  Any successor appointed pursuant to this Section 12.3(f) shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor.  For the avoidance of doubt, no member of the Trust Advisory Board shall be compensated for serving as a member of the Trust Advisory Board; provided, however, that such members may be reimbursed from the Liquidation Trust for reasonable out of pocket expenses.

The Liquidation Trustees will need the consent of the Trust Advisory Board, or approval of the Bankruptcy Court, before pursuing any potential Avoidance Actions under 11 U.S.C. § 547.

(g)    Expenses of Liquidation Trustees

The Liquidation Trust Expenses shall be paid from the Liquidation Trust Assets.

(h)    Insurance; Bond

The Liquidation Trustees, in their sole discretion, may obtain insurance coverage (in the form of an errors and omissions policy or otherwise) with respect to the Liabilities and obligations of the Liquidation Trustees and the Trust Advisory Board under the Liquidation Trust Agreement. Unless otherwise agreed to by the Trust Advisory Board, the Liquidation Trustees shall serve with a bond, the terms of which shall be agreed to by the Trust Advisory Board, and the cost and expense of which shall be paid by the Liquidation Trust.

(i)    Fiduciary Duties of the Liquidation Trustees

Pursuant hereto and the Liquidation Trust Agreement, the Liquidation Trustees shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims that will receive Distributions pursuant to the terms hereof.

(j)    Termination of the Liquidation Trust

The Liquidation Trust will terminate on the earlier of: (a) final liquidation, administration and Distribution of the Liquidation Trust Assets in accordance with the terms of the Liquidation Trust Agreement and the Combined Plan and Disclosure Statement, and its full performance of all other duties and functions as set forth herein or in the Liquidation Trust Agreement; and (b) the fifth (5th) anniversary of the Effective Date. Notwithstanding the foregoing, multiple fixed term extensions can be obtained so long as Bankruptcy Court approval is obtained within six (6) months before the expiration of the term of the Liquidation Trust and each extended term provided that any further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust within the meaning of Section 301.7701-4(d) of the Treasury Regulations for federal income tax purposes. After (a) the final Distributions pursuant hereto, (b) the Filing by or on behalf of the Liquidation Trust of a certification of dissolution with the Bankruptcy Court, and (c) any other action deemed appropriate by the Liquidation Trustees, the Liquidation Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

(k)    Liability of Liquidation Trustees; Indemnification

Neither the Liquidation Trustees, the Trust Advisory Board, their respective members, employees, employers, designees or professionals, or any of their duly designated agents or representatives (each, a "Liquidation Trust Party" and collectively, the "Liquidation Trust Parties") shall be liable for losses, claims, damages, liabilities or expenses in connection with the affairs of the Liquidation Trust or for the act or omission of any other Liquidation Trust Party, nor shall the Liquidation Trust Parties be liable for any act or omission taken or omitted to be taken pursuant to the discretion, powers and authority conferred, or in good faith believed to be conferred by the Liquidation Trust Agreement or the Combined Plan and Disclosure Statement other than for specific acts or omissions resulting from such Liquidation Trust Party's willful misconduct, gross negligence or actual fraud. Subject to the Liquidation Trust Agreement, the Liquidation Trustees shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee, and the Trust Advisory Board shall be entitled to enjoy all of

the rights, powers, immunities and privileges of an official committee of unsecured creditors. The Liquidation Trustees, or the Trust Advisory Board, may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, neither the Liquidation Trustees nor the Trust Advisory Board shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Liquidation Trustees or Trust Advisory Board or their respective members and/or designees, unless such determination is based on willful misconduct, gross negligence, or actual fraud. The Liquidation Trust shall indemnify and hold harmless the Liquidation Trust Parties (in their capacity as such), from and against and in respect of all Liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) that such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidation Trust or the Combined Plan and Disclosure Statement or the discharge of their duties hereunder; provided, however, that no such indemnification will be made to such Persons for actions or omissions as a result of willful misconduct, gross negligence, or actual fraud. Persons dealing or having any relationship with the Liquidation Trustees shall have recourse only to the Liquidation Trust Assets and shall look only to the Liquidation Trust Assets to satisfy any liability or other obligations incurred by the Liquidation Trustees or the Trust Advisory Board to such Person in carrying out the terms of the Liquidation Trust Agreement, and neither the Liquidation Trustees nor the Trust Advisory Board shall have any personal obligation to satisfy any such liability. The Liquidation Trustees and/or the Trust Advisory Board members shall not be liable whatsoever except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into the Liquidation Trust Agreement against any of them. The Liquidation Trust shall promptly pay expenses reasonably incurred by any Liquidation Trust Party in defending, participating in, or settling any action, proceeding or investigation in which such Liquidation Trust Party is a party or is threatened to be made a party or otherwise is participating in connection with the Liquidation Trust Agreement or the duties, acts or omissions of the Liquidation Trustees or otherwise in connection with the affairs of the Liquidation Trust, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Liquidation Trust Party hereby undertakes, and the Liquidation Trust hereby accepts his or her undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Exculpated Party is not entitled to be indemnified therefor under the Liquidation Trust Agreement. The foregoing indemnity in respect of any Liquidation Trust Party shall survive the termination of such Liquidation Trust Party from the capacity for which they are indemnified.

      (l)     <u>Full and Final Satisfaction Against Liquidation Trust</u>

      On and after the Effective Date, the Liquidation Trust shall have no liability on account of any Claims or Equity Interests except as set forth herein and in the Liquidation Trust Agreement. All payments and all Distributions made by the Liquidation Trustees hereunder

shall be in full and final satisfaction, settlement, and release of and in exchange for all Claims or Equity Interests against the Debtors.

## 12.4 Effectuating Documents; Further Transactions

The appropriate officer(s) and/or director(s) of the Debtors or the Liquidation Trustees, as applicable, shall be, and hereby are, authorized to execute, deliver, file, and record such contracts, instruments, releases, indentures, certificates, and other agreements or documents, and take such other actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

## 12.5 Cancellation of Instruments and Stock

On the Effective Date, except to the extent otherwise provided herein, all notes, instruments, certificates, and other documents evidencing debt or Equity Interests in the Debtors shall be cancelled and the obligations of the Debtors thereunder, or in any way related thereto, shall be discharged, including any and all warrants, options, rights, or interests with respect to such Equity Interests that have been issued, could be issued, or that have been authorized to be issued but that have not been issued; provided, however, that Cred shall: (i) maintain one (1) share of common stock of each Debtor subsidiary; and (ii) issue one (1) share of common stock to the Liquidation Trust.  After the Effective Date, the Liquidation Trustees shall serve as the officers, directors, or managers of each of the Debtors, as applicable, under applicable state law, and shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and to take such actions on behalf of the Debtors as may be necessary or appropriate subject to the terms and conditions of the Combined Plan and Disclosure Statement.

The Holders of, or parties to, the cancelled notes, membership interests, share certificates, and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates, and other agreements and instruments or the cancellation thereof, except the rights provided pursuant hereto.

## 12.6 Disposition of Books and Records

After the Effective Date, the Debtors shall transfer the Debtors' books and records in the Debtors' possession to the Liquidation Trust.  From and after the Effective Date, the Liquidation Trustees shall continue to preserve and maintain all documents and electronic data transferred to the Liquidation Trust by the Debtors, and the Liquidation Trustees, subject to Section 12.8 hereof, shall not destroy or otherwise abandon any such documents and records (in electronic or paper format) absent further order of the Bankruptcy Court after a hearing upon notice to parties-in-interest; provided, however, that the Liquidation Trustees may destroy or abandon such books and records upon entry of a Final Order closing the last Chapter 11 Case.  Subject to further order of the Court, the Examiner and his Professionals shall retain all documents, files and

records pertaining to the Debtors in their possession, custody or control and may not share, produce or transmit such documents, files and records to any other Entity.

## 12.7    Corporate Existence and Dissolution of Debtors

Immediately after the Effective Date, the Liquidation Trustees shall be authorized to take, in their sole and absolute discretion, all actions reasonably necessary to dissolve one or more of the Debtors under applicable laws, including under the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation. Upon the final Distributions, any Debtors that have not been previously dissolved shall be deemed dissolved for all purposes without the necessity for other or further actions to be taken by or on behalf of the Debtors, and the Liquidation Trustees shall be authorized to file any certificate of cancellation or other documents as may be necessary or desirable to terminate the legal existence of the Debtors.

## 12.8    Closing the Chapter 11 Cases

Upon the Effective Date, the Chapter 11 Cases for the Debtors, except for Cred, shall be deemed closed, and the Liquidation Trustees shall submit separate orders to the Bankruptcy Court under certification of counsel closing each such Chapter 11 Case. After all Causes of Action and Disputed Claims have been resolved, the U.S. Trustee Fees have been paid, all of the Estates' Assets have been distributed in accordance herewith, or at such earlier time as the Liquidation Trustees deem appropriate, the Liquidation Trustees shall seek authority from the Bankruptcy Court to close the Chapter 11 Case for Cred, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

## ARTICLE XIII.
## DISTRIBUTIONS UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT

## 13.1    Distributions on Allowed General Unsecured Claims

All Allowed General Unsecured Claims held by a single creditor against one or more Debtors shall be aggregated and treated as a single Claim. At the written request of the Liquidation Trustees, any Creditor holding multiple Allowed General Unsecured Claims shall provide to the Liquidation Trustees a single address to which any Distributions shall be sent.

## 13.2    Timing of Distributions

(a)    Distributions on Account of Allowed A/P/S Claims. The Liquidation Trustees shall pay any Allowed A/P/S Claim against the Debtors, as soon as practicable after the later of (a) the Effective Date and (b) the date upon which any such Claim becomes an Allowed Claim.

(b)    Interim Distributions on Account of Allowed General Unsecured Claims. Subject to approval of the Trust Advisory Board as set forth in the Liquidation Trust Agreement, (a) the Liquidation Trustees may make an interim Distribution to Holders of Allowed General Unsecured Claims at least semi-annually provided that any such Distribution is not unduly burdensome to the Liquidation Trust, and (b) may make more frequent interim Distributions if

the Liquidation Trustees determine that such interim Distributions are warranted and economical; provided, however, that any such Distribution shall only be made if the Liquidation Trustees retain amounts reasonably necessary to meet Contingent Liabilities, to maintain the value of the Liquidation Trust Assets during liquidation, and to satisfy other Liabilities or expenses incurred by the Liquidation Trust in accordance herewith or with the Liquidation Trust Agreement.

(c)     Final Distributions on Allowed General Unsecured Claims. Notwithstanding anything else herein, upon the settlement and satisfaction of all A/P/S Claims, the completion of the prosecution and/or settlement of all Claims Objections and Causes of Action, and the completion of the sale and/or liquidation of all Assets, the Liquidation Trustees shall distribute, as soon as practicable, all remaining Liquidation Trust Assets to Holders of Allowed General Unsecured Claims.

## 13.3    Delivery of Distributions

Except as set forth herein, all Distributions to any Holder of an Allowed Claim shall be made: (i) by wire transfer; (ii) at the address of such Holder as set forth on the Schedules Filed with the Bankruptcy Court or on the books and records of the Debtors or its agents, as applicable, unless the Debtors or the Liquidation Trustees have been notified in writing of a change of address, including by the filing of a Proof of Claim by such Holder that contains an address for such Holder different than the address of such Holder as set forth on the Schedules, if being paid in Cash; or, if applicable (iii) with respect to any Holder of a Customer Claim entitled to an Equivalent Cryptocurrency Distribution at the Cryptocurrency Election E-Wallet Address; provided, however, that to receive an Equivalent Cryptocurrency Distribution, Holders of Customer Claims that made a Cryptocurrency Election shall provide their Cryptocurrency Election E-Wallet Address to the Liquidation Trustees.  Nothing herein shall require the Debtors or the Liquidation Trustees to attempt to locate any Holder of an Allowed Claim.

The Liquidation Trustees shall require any Holders of Allowed Claims or other distributee to furnish to the Liquidation Trustees in writing: (i) an Employer Identification Number or Taxpayer Identification Number as assigned by the IRS; (ii) if applicable, bank account and routing numbers; and (iii) if applicable, a Cryptocurrency Election E-Wallet Address, and the Liquidation Trustees may condition any Distribution to any Holders of Allowed Claims or other distributee upon receipt of such identification number and, if applicable, the Cryptocurrency Election E-Wallet Address.  If the Employer Identification Number, Taxpayer Identification Number, if necessary, bank account or routing number, or, if applicable, Cryptocurrency Election E-Wallet Address are not provided by the required deadline established by the Liquidation Trustees, the Claim of any Holders of Allowed Claims or other distributee may be expunged and no Distribution will be made by the Liquidation Trustees to such Holders of Allowed Claims or other distributee.  The Liquidation Trustees may withhold from distributions any withholding tax it determines in its reasonable discretion must be so withheld, including, without limitation, to foreign creditors who have not provided instruments supporting exemption from withholding tax reasonably satisfactory to the Liquidation Trustees.

**13.4    Undeliverable and Unclaimed Distributions**

(a)    <u>Holding Undeliverable and Unclaimed Distributions</u>

If the Distribution to any Holder of an Allowed Claim is returned as undeliverable or is otherwise unclaimed, no additional Distributions shall be made to such Holder unless and until the Liquidation Trustees are notified in writing of such Holder's then-current address.  Nothing contained herein shall require the Liquidation Trustees to attempt to locate any Holder of an Allowed Claim.

The Liquidation Trustees shall make all Distributions that have become deliverable as soon as reasonably practicable after such Distribution has become deliverable or has been claimed.

(b)    <u>Failure to Claim Unclaimed/Undeliverable Distributions</u>

Subject to Section 13.7 hereof, any Holder of an Allowed Claim that does not assert a Claim pursuant hereto for an undeliverable or unclaimed Distribution within six (6) months after the Distribution is made shall be deemed to have its Claim expunged and shall have forfeited its right to such undeliverable or unclaimed Distribution and any subsequent Distribution on account of its Allowed Claim and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution or any subsequent Distribution on account of its Allowed Claims against the Debtors, their Estates, their property or the Assets.  In such cases, such unclaimed/undeliverable Distributions shall be redistributed and paid to Holders of Allowed Claims in accordance herewith, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary.

(c)    <u>Charitable Donations</u>

On or about the time that a final Distribution is made and upon the Liquidation Trustees determining that there are insufficient funds remaining to warrant a further Distribution to Holders of Claims hereunder, the Liquidation Trustees, with the approval of the Trust Advisory Board, may donate any undistributed funds to one or more charities selected by the Liquidation Trustees, provided that any charity selected shall not be affiliated with or connected to the Debtors or the Liquidation Trustees.

**13.5    Transfer of Claims**

The Claims Register shall remain open after the Effective Date, and the Liquidation Trustees shall recognize any transfer of Claims in accordance with Bankruptcy Rule 3001(e) at any time thereafter, provided that for purposes of each Distribution, the Liquidation Trustees will not recognize any transfer during the period commencing thirty (30) calendar days prior to making any Distribution.  Except as otherwise provided herein, any transfer of a Claim, whether occurring prior to or after the Confirmation Date, shall not affect or alter the classification and treatment of such Claim hereunder, and any such transferred Claim shall be subject to classification and treatment hereunder as if such Claim was held by the transferor who held such Claim on the Petition Date.

**13.6    Manner of Payment**

At the option of the Liquidation Trustees, any Cash payment to be made hereunder may be made by a check, wire transfer, E-Wallet to E-Wallet transfer of Cryptocurrencies, if applicable, or as otherwise required or provided in applicable agreements.

**13.7    Distributions to Cryptocurrency Election E-Wallet Addresses**

The Liquidation Trustees shall maintain records of all distributions made to Cryptocurrency Election E-Wallet Addresses, including confirmations of E-Wallet to E-Wallet transfers.  The Liquidation Trustees are only required to initiate such E-Wallet to E-Wallet transactions.  The Liquidation Trustees are not responsible, and shall not be held liable, for any actions involving transferred Cryptocurrency after the initiation of such E-Wallet to E-Wallet transfers.

**13.8    Time Bar to Cash Payments by Check**

Checks issued by, or on behalf of, the Debtors or the Liquidation Trust on account of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof.  Requests for reissuance of any check shall be made in writing directly to the Liquidation Trustees by the Holder of the Allowed Claim with respect to which such check originally was issued on or before the later of (a) the first anniversary of the Effective Date, (b) the first anniversary of the date on which the Claim at issue became an Allowed Claim, and (c) nine (9) months after the date the check was issued.  After such dates, all Claims in respect of void checks shall be expunged, extinguished, discharged, and forever barred, and the proceeds of such checks shall revest in the Liquidation Trust.

**13.9    No Fractional Cents**

Notwithstanding any other provision hereof to the contrary, no payment of fractional cents shall be made pursuant hereto. Whenever any payment of a fraction of a cent hereunder would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down) with half cents or more being rounded up and fractions less than half of a cent being rounded down.

**13.10   Setoffs and Recoupment**

The Liquidation Trustees may, but shall not be required to, set off against or recoup from any Claim and the payments to be made pursuant hereto in respect of such Claim any Claims of any nature whatsoever that the Debtors may have against the claimant; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Liquidation Trust of any such claim they may have against such claimant.

**13.11   Allocation of Plan Distributions Between Principal and Interest**

To the extent that any Allowed Claim entitled to a Distribution hereunder consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such Distribution

shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

## 13.12   Distributions After Effective Date

Distributions made after the Effective Date shall be deemed to have been made on the Effective Date.

## 13.13   Interest on Claims

Except as specifically provided for herein or in the Confirmation Order, interest shall not accrue on Claims, and no Holders of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date through the date such Claim becomes an Allowed Claim.  Except as expressly provided herein, no Claim shall be Allowed to the extent that it is for postpetition interest or other similar charges.

## 13.14   No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim.

## 13.15   Payment of Taxes on Distributions Received Pursuant to the Combined Plan and Disclosure Statement

All Entities that receive Distributions hereunder shall be responsible for reporting and paying, as applicable, all appropriate federal, state and local taxes on account of such Distributions.  This includes, but is not limited, any amount of tax due to be withheld from Distributions which the Liquidation Trustees did not withhold.

## 13.16   Reserves

On the Effective Date, and after making all Distributions required to be made on the Effective Date hereunder, the Liquidation Trustees shall establish and maintain a separate reserve (each, a "Reserve") for the estimated amount of the Liquidation Trust Expenses, as well as each Class of Claims and Unclassified Claims, which Reserve shall be administered by the Liquidation Trustees.  To the extent that Reserves are established and maintained for the benefit of any Holder of a Disputed Claim, such Reserves shall include a combination of Cryptocurrency and Cash equal to the Distributions that would have been made to the Holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (a) the amount of the Disputed Claim, (b) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code for purposes of allowance, which amount, unless otherwise ordered by the Bankruptcy Court, shall constitute and represent the maximum amount in which such Claim ultimately may become an Allowed Claim, or (c) such other amount as may be agreed upon by the Holder of such Disputed Claim and the Liquidation Trustees.

13.17 *De Minimis* **Distributions**

All De Minimis Distributions will be held by the Liquidation Trustees for the benefit of the Holders of Allowed Claims entitled to such De Minimis Distributions.  When the aggregate amount of De Minimis Distributions held by the Liquidation Trustees for the benefit of a Holder of a Claim exceeds $25.00, the Liquidation Trustees will distribute such De Minimis Distributions to such Holder.  If, at the time that the final Distribution hereunder is to be made, the De Minimis Distributions held by the Liquidation Trustees for the benefit of a Holder of a Claim total less than $25.00, such funds shall not be distributed to such Holder, but rather, such Claims shall be deemed expunged and such Distribution shall vest in the Liquidation Trust and be distributed to other Holders of Allowed Claims in accordance with the terms hereof.

## ARTICLE  XIV.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

**14.1    Claims Administration Responsibilities**

Except as otherwise specifically provided herein and in the Liquidation Trust Agreement, after the Effective Date, the Liquidation Trustees shall have the sole authority, including assumption of the authority of the Debtors with respect to any dispute in respect of a Claim or Equity Interest initiated prior to the Effective Date, (a) to File, withdraw, or litigate to judgment objections to Claims or Equity Interests, (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, (c) to amend the Schedules in accordance with the Bankruptcy Code, and (d) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

**14.2    Claims Objections**

Unless a Claim is expressly described as an Allowed Claim pursuant to or under the Combined Plan and Disclosure Statement, or otherwise becomes an Allowed Claim prior to the Effective Date, upon the Effective Date, the Liquidation Trustees shall be deemed to have a reservation of any and all objections of the Estates to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, priority, secured or unsecured, including any and all objections to the validity or amount of any and all alleged Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Secured Claims, Convenience Claims, General Unsecured Claims, Subordinated Securities Claims, Equity Interests, Liens and security interests, whether under the Bankruptcy Code or other applicable law or contract.  The Debtors' or the Liquidation Trustees' failure to object to any Claim in the Chapter 11 Cases shall be without prejudice to the Liquidation Trustees' rights to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the Holder of such Claim.

Unless otherwise provided herein or by order of the Bankruptcy Court, any objections to Claims (including Administrative Expense Claims but excluding Professional Fee Claims) by the Liquidation Trustees shall be filed and served not later than 180 days after the later of (i) the

Effective Date or (ii) the date such Claim is filed (the "Claims Objection Deadline"); provided that the Liquidation Trustees may request (and the Bankruptcy Court may grant) an extension of such deadline by filing a motion with the Bankruptcy Court, based upon a reasonable exercise of the Liquidation Trustees' business judgment; provided further that with respect to Claims that, as of the Claims Objection Deadline, are subject to a pending objection (an "Initial Objection") wherein the objection to such Claim is ultimately denied, the Claims Objection Deadline shall be extended to the later of sixty (60) calendar days from the date on which (a) the Bankruptcy Court enters an order denying such Initial Objection or (b) any appellate court enters a Final Order reversing or vacating an order of the Bankruptcy Court granting such Initial Objection. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment hereto.

**14.3    Estimation of Claims**

The Liquidation Trustees may (but are not required to) at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidation Trustees, as applicable, previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidation Trustees may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**14.4    Adjustment to Claims Without Objection**

Any Claim that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Claims Agent at the direction of the Liquidation Trustees without the Liquidation Trustees having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court.

**14.5    No Distributions Pending Allowance**

Notwithstanding any other provision hereof, if any portion of a Claim is Disputed, no payment or Distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes Allowed.

**14.6    Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions hereof.

**14.7    Disallowance of Certain Claims**

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or by an Entity that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and such Entities may not receive any Distributions on account of their Claims until such time as such Causes of Action against such Entities have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtors by such Entity have been turned over or paid to the Liquidation Trust; provided, however that no claim of UpgradeYa shall be deemed Disallowed pursuant to Bankruptcy Code section 502(d) unless and until the Liquidating Trust obtains a judgment and Final Order from the Bankruptcy Court determining that estate property is recoverable from UpgradeYa pursuant to Bankruptcy Code sections 542, 543, 550, or 553 or that a transfer made to UpgradeYa is avoidable under Bankruptcy Code sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a).

The Liquidation Trustees may, in their sole discretion, deem that any Claim is a Disputed Claim unless otherwise provided in a Final Order of the Bankruptcy Court, agreed to by the Liquidation Trustees or until expiration of the Claims Objection Deadline as set forth in section 14.2.  To the extent that there is no claim objection pending on the Claims Objection Deadline and a Claim has not otherwise been Disallowed pursuant to the terms of the Combined Plan and Disclosure Statement, such claim shall then be deemed an Allowed Claim.

**14.8    Amendments to Claims**

On or after the Effective Date, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Liquidation Trustees, and any such new or amended Claim filed without prior authorization shall be deemed Disallowed in full and expunged without any further action.

**14.9    Claims Paid and Payable by Third Parties**

A Claim shall be Disallowed without an Objection thereto having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors, the Liquidation Trust, or the Liquidation Trustees.  Distributions under the

Combined Plan and Disclosure Statement shall be made on account of any Allowed Claim that is payable pursuant to one of the Debtors' insurance policies solely up to the amount of, and in full and complete satisfaction of, the portion of such Allowed Claim that is within the deductible or self-insured retention under such insurance policy.  Except as provided in this Section 14.9, no Entity shall have any other recourse against the Debtors, the Estates, the Liquidation Trust, or any of their respective properties or assets on account of such deductible or self-insured retention under an insurance policy.

## ARTICLE  XV.
## EXECUTORY CONTRACTS AND LEASES

### 15.1    Executory Contracts and Unexpired Leases Deemed Rejected

On the Effective Date, all of the Debtors' Executory Contracts and Unexpired Leases will be deemed rejected as of the Effective Date in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except to the extent (a) the Debtors previously have assumed, assumed and assigned, or rejected such Executory Contract or Unexpired Lease, (b) prior to the Effective Date, the Debtors have filed a motion to assume, assume and assign, or reject an Executory Contract or Unexpired Lease on which the Bankruptcy Court has not ruled, (c) an Executory Contract and Unexpired Lease is identified in the Plan Supplement as an Executory Contract or Unexpired Lease to be assumed or assumed and assigned pursuant hereto, or (d) Executory Contracts and Unexpired Leases under which the counterparty has consented to the extension of the time by which the Debtors must assume or reject to a date beyond the Effective Date.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all assumptions, assignments, and rejections of Executory Contracts and Unexpired Leases pursuant to this Section 15.1, the Plan Supplement, and sections 365(a) and 1123 of the Bankruptcy Code. Assumptions, assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  If certain, but not all, of a contract counterparty's Executory Contracts and Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order will be a determination that such counterparty's Executory Contracts and Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and Unexpired Leases that are being assumed pursuant to the Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection by the Confirmation Objection Deadline on the grounds that their agreements are integrated and not severable.

### 15.2    Bar Date For Rejection Damages

If the rejection by the Debtors of an Executory Contract or an Unexpired Lease pursuant to Section 15.1 hereof results in damages to the other party or parties to such Executory Contract or Unexpired Lease, a Claim for such damages arising from such rejection shall not be enforceable against the Debtors or their Estates or agents, successors, or assigns, unless a Proof of Claim is filed with the Claims Agent **so as to actually be received on or before** the Rejection Bar Date.

Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or Unexpired Lease hereunder and that fails to timely do so shall be forever barred, estopped, and enjoined from asserting such Claim, and such Claim shall not be enforceable against the Liquidation Trust, the Liquidation Trustees, the Debtors, the Estates, and their respective properties, and the Liquidation Trust, the Liquidation Trustees, Debtors, the Estates, and their respective properties shall be forever discharged from any and all Liabilities with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All such Claims shall, as of the Effective Date, be subject to the permanent injunction pursuant to Section 18.4 hereof and the Confirmation Order.

## ARTICLE  XVI.
## CONDITIONS PRECEDENT TO THE CONFIRMATION AND THE EFFECTIVE DATE

**16.1    Conditions Precedent to Confirmation of the Combined Plan and Disclosure Statement**

The following are conditions precedent to confirmation of the Combined Plan and Disclosure Statement:

(a)    The Plan Support Agreement shall not have been terminated;

(b)    The Bankruptcy Court shall have entered the Confirmation Order, in a form and substance reasonably acceptable to the Committee, and the Confirmation Order shall have become a Final Order;

(c)    The final version of all of the schedules, documents, and exhibits, including the Plan Supplement, shall have been filed in form and substance acceptable to the Committee in its reasonable discretion; and

(d)    No breach or failure to comply with the terms of the Definitive Documents, the Confirmation Order or any other material Final Order of the Bankruptcy Court shall have occurred and be continuing.

**16.2    Conditions Precedent to the Effective Date**

The Effective Date shall not occur, and the Combined Plan and Disclosure Statement shall not become effective with respect to the Debtors, unless and until the following conditions are satisfied in full or waived in accordance with Section 16.3 hereof:

(a)    The Plan Support Agreement shall not have been terminated;

(b)    No breach or failure to comply with the terms of the Definitive Documents, the Confirmation Order, or any other material Final Order of the Bankruptcy Court shall have occurred and be continuing;

(c)    The conditions to confirmation delineated in Section 11.1 hereof shall have either been satisfied or waived in accordance herewith;

(d)      All documents required hereunder shall have been delivered'

(e)      The Confirmation Order in form and substance reasonably satisfactory to the Committee shall have been entered by the Bankruptcy Court, and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto;

(f)      The Debtors and the Liquidation Trustees shall have executed the Liquidation Trust Agreement;

(g)      All actions and all agreements, instruments, or other documents necessary to implement the terms and provisions hereof are effected or executed and delivered, as applicable;

(h)      The Professional Fee Escrow shall have been established and fully funded in the amount of the Professional Fee Reserve Amount; and

(i)      All authorizations, consents, and regulatory approvals, rulings, letters, no-action letters, opinions, or documents, if any, that are necessary to implement the Combined Plan and Disclosure Statement or that are required by the applicable Debtor entity or applicable law, regulation, or order, in connection with the Consummation of the Combined Plan and Disclosure Statement shall have been obtained and not revoked.

## 16.3 Waiver of Conditions Precedent to the Effective Date

Each of the conditions precedent in Section 16.2 hereof may be waived, in whole or in part, by the Debtors, with the consent of the Committee, without leave or order of the Bankruptcy Court and without any formal action on the part of the Bankruptcy Court. The Debtors and the Liquidation Trustees reserve the right to assert that any appeal from the Confirmation Order shall be moot after the Effective Date.

## 16.4 Satisfaction of Conditions

Except as expressly provided or permitted herein, any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. In the event that one or more of the conditions specified in Section 16.2 hereof shall not have occurred or otherwise been waived pursuant to Section 16.3 hereof, (a) the Confirmation Order shall be vacated, (b) the Debtors and all Holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (c) the Debtors' obligations with respect to Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors.

## ARTICLE XVII.
## EFFECT OF CONFIRMATION

**17.1    Compromise and Settlement of Claims, Equity Interests, and Controversies**

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant hereto, the provisions hereof shall constitute a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Allowed Equity Interest or any Distribution to be made on account of such Allowed Claim or Allowed Equity Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Equity Interests, and is fair, equitable, and reasonable.  In accordance with the provisions hereof, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Liquidation Trustees may compromise and settle Claims against the Liquidation Trust and Causes of Action against other Entities.

**17.2    Binding Effect**

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Combined Plan and Disclosure Statement, the Plan Supplement, and the Confirmation Order shall bind (a) any Holder of a Claim against, or Equity Interest in, the Debtors and such Holder's respective successors and assigns (whether or not the Claim or Equity Interests are Impaired hereunder, whether or not such Holder has voted to accept the Combined Plan and Disclosure Statement, and whether or not such Holder is entitled to a Distribution hereunder), (b) all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described herein, (c) each Entity acquiring property hereunder or under the Confirmation Order, and (d) any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant hereto regardless of whether any Holder of a Claim or debt has voted hereon.

**17.3    Reservation of Causes of Action/Reservation of Rights**

Except with respect to the exculpation in Section 18.1 hereof, nothing contained herein shall be deemed to be a waiver or the relinquishment of any Causes of Action that the Debtors or the Liquidation Trust, as applicable, may have or may choose to assert against any Entity, and such Causes of Action are hereby preserved pursuant to section 1123 of the Bankruptcy Code, including, without limitation, any and all avoidance or equitable subordination actions, recovery Causes of Action and Objections to Claims under sections 105, 502, 510, 542 through 551, and 553 of the Bankruptcy Code, as well as all Causes of Action based upon fraud, theft, conversion, unfair competition, tortious interference, breach of fiduciary duty, common law tort, and similar and related legal theories and Causes of Action.

## ARTICLE XVIII.
### EXCULPATION, INJUNCTION, AND RELATED PROVISIONS

**18.1    Exculpation**

**None of the Debtors-in-Possession and the current or former directors, officers, employees, Affiliates, agents, accountants, financial advisors, investment bankers, restructuring advisors, attorneys, representatives, and other Professionals of or to the Debtors and the Debtors-in-Possession who served or were employed in such capacities after the Petition Date, and each of their respective agents and representatives, the Released Parties, the Committee, the members of the Committee and the Professionals retained by the Committee shall have or incur any Liability for any Claim, Cause of Action, or other assertion of Liability for any act taken or omitted to be taken in connection with or arising out of the Chapter 11 Cases, the sale of the Debtors' Assets, the formulation, dissemination, implementation, approval, confirmation, consummation, or administration hereof, property to be distributed hereunder, or any other act or omission in connection with or arising out of the Chapter 11 Cases, the Combined Plan and Disclosure Statement, or any contract, instrument, document or other agreement related thereto; _provided_, _however_, that the foregoing shall not affect the Liability of any Entity resulting from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, actual fraud, or gross negligence. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, discharges, and any other applicable law or rules protecting such Entities from liability.**

**18.2    Releases by Debtors, the Estates, the Liquidation Trust, and the Liquidation Trustees; Third Party Releases**

**Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and in consideration of the services of the Released Parties, (a) the Debtors, (b) their respective Estates, (c) the Liquidation Trust, and (d) the Liquidation Trustees shall release, waive, and discharge unconditionally and forever each of the Released Parties from any and all Claims, Causes of Action, and Liabilities whatsoever (including those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising in law, equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence: (i) taking place before the Petition Date in connection with the Debtors; and (ii) in connection with or arising out of the Debtors' Chapter 11 Cases, the pursuit of confirmation of the Combined Plan and Disclosure Statement, the Consummation thereof, the administration thereof or the property to be distributed thereunder; _provided_, that the foregoing shall not operate as a waiver of or release from any Causes of Action resulting from the willful misconduct, actual fraud, or gross negligence of any Released Party arising under chapter 5 of the Bankruptcy Code.**

**In addition, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and in consideration of the services of the Released Parties, the settlements and compromises contained herein, and the Distributions to be made pursuant to the Combined Plan and Disclosure Statement, (a) each of the Debtors and (b) all Holders**

66

**of Claims or Equity Interests, who (1) vote in favor of the Combined Plan and Disclosure Statement or (2) (A) abstain from voting, are not entitled to vote, or vote to reject the Combined Plan and Disclosure Statement and (B) do not opt out of the this release on a timely submitted Ballot or the Opt-Out Election Form shall be deemed to have released and discharged each Released Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' prepetition operations and activities, existing or hereinafter arising in law, equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence taking place before the Effective Date.**

**For the avoidance of doubt, no Insider that is not a Released Party, including, without limitation, James Alexander, Lu Hua, Dan Schatt, Joseph Podulka, and Daniyal Inamullah, will receive a release or exculpation of any kind hereunder, whether from the Debtors or otherwise.**

## 18.3    Avoidance Actions/Objections

Except with respect to the exculpation in Section 18.1 hereof and the releases in Section 18.2 hereof, in the Confirmation Order, or by Final Order of the Bankruptcy Court, as applicable, from and after the Effective Date, the Liquidation Trustees shall have the right to prosecute any and all avoidance or equitable subordination actions, recovery Causes of Action, and Objections to Claims under sections 105, 502, 510, 542 through 551, and 553 of the Bankruptcy Code that belong to the Debtors or a Debtor-in-Possession, as well as all Causes of Action, including, without limitation, all Causes of Action based upon fraud, theft, conversion, unfair competition, tortious interference, common law tort, breach of fiduciary duty and similar and related legal theories and Causes of Action.

## 18.4    Injunction

**Except as otherwise provided herein, all Entities that have held, hold, or may hold Claims against or Equity Interests in the Debtors or their Estates that arose prior to the Effective Date are permanently enjoined, solely with respect to any such Claims or Equity Interests, from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, their Estates, the Liquidation Trust, or the Liquidation Trustees; (b) enforcing, attaching, collecting, or recovering, by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, their Estates, the Liquidation Trust, or the Liquidation Trustees; (c) creating, perfecting, or enforcing, in any manner, directly or indirectly, any Lien or encumbrance against the Debtors, their Estates, the Liquidation Trust, or the Liquidation Trustees; (d) except to the extent permitted by sections 362(b), 553, 559, 560, or 561 of the Bankruptcy Code, asserting any right of setoff, subrogation, or recoupment against the Debtors, their Estates, the Liquidation Trust, or the Liquidation Trustees; (e) pursuing any Claim or Cause of Action released pursuant to the Combined Plan and**

Disclosure Statement; or (f) taking any actions which interfere with the implementation or Consummation hereof.

The rights afforded herein and the treatment of all Claims and Equity Interests shall be in exchange for and in complete satisfaction of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtors, any of their respective Assets, properties, or Estates, or the Liquidation Trust.

Notwithstanding any language to the contrary contained herein and/or the Plan Confirmation Order, no provision of this Plan or the Plan Confirmation Order shall (i) preclude the United States Securities and Exchange Commission ("SEC") from enforcing its police or regulatory powers or (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceeding, or investigations against any Entity other than the Debtors.

**18.5    Terms of Stays and Injunctions**

The stay arising under section 362(a) of the Bankruptcy Code and the injunctions set forth in Section 18.4 hereof or provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date, shall permanently remain in full force and effect.

### ARTICLE XIX.
### RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters in connection with, arising out of or related to the Chapter 11 Cases and the Combined Plan and Disclosure Statement pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including to:

(a)    Hear and determine pending applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance of cure amounts and Claims resulting therefrom;

(b)    Determine any and all adversary proceedings, applications and contested matters;

(c)    Hear and determine all applications for compensation and reimbursement of expenses under sections 330, 331 and 503(b) of the Bankruptcy Code;

(d)    Hear and determine any Claim Objections (including requests for estimation) in respect of Disputed Claims, in whole or in part;

(e)    Enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)    Issue such orders in aid of execution hereof, to the extent authorized by section 1142 of the Bankruptcy Code;

(g)     Consider any amendments to or modifications hereof or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including the Confirmation Order;

(h)     Hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Combined Plan and Disclosure Statement, the Confirmation Order, the Liquidation Trust Agreement, any transactions or payments contemplated hereby or thereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

(i)     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any request by the Debtors), prior to the Effective Date or request by the Liquidation Trustees after the Effective Date for an expedited determination of tax issues under section 505(b) of the Bankruptcy Code;

(j)     Hear and determine all disputes involving the existence, scope, and nature of the discharges granted under the Combined Plan and Disclosure Statement, the Confirmation Order or the Bankruptcy Code;

(k)     Issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any Entity with the Consummation, implementation, or enforcement of the Combined Plan and Disclosure Statement, the Confirmation Order or any other order of the Bankruptcy Court;

(l)     Determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     Hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

(n)     Recover all Assets of the Debtors and property of the Debtors' Estates, wherever located;

(o)     Enforce the terms of the Liquidation Trust Agreement and to decide any claims or disputes which may arise or result from, or be connected with, the Liquidation Trust Agreement, any breach or default under the Liquidation Trust Agreement, or the transactions contemplated by the Liquidation Trust Agreement;

(p)     Enforce the exculpation granted and injunctions issued pursuant to the Combined Plan and Disclosure Statement and the Confirmation Order;

(q)     Enter a final decree closing the Chapter 11 Cases; and

(r)     Hear any other matter not inconsistent with the Bankruptcy Code.

**ARTICLE XX.**
**MISCELLANEOUS PROVISIONS**

**20.1    Effectuating Documents and Further Transactions**

On or before the Effective Date, and without the need for any further order or authority, the Debtors shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Plan and Disclosure Statement.  The Liquidation Trustees are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of Combined Plan and Disclosure Statement and any securities issued pursuant to the Combined Plan and Disclosure Statement.

**20.2    Date of Distributions and Other Actions**

In the event that any payment or act hereunder is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**20.3    Withholding and Reporting Requirements**

In connection with the Combined Plan and Disclosure Statement and all Distributions hereunder, the Liquidation Trustees shall comply with all applicable withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding, payment, and reporting requirements.  Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution hereunder shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution. The Liquidation Trustees have the right, but not the obligation, to refrain from making a Distribution until such Holder has made arrangements satisfactory to the Liquidation Trustees for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Liquidation Trust in connection with such Distribution.

**20.4    Corporate Action**

On the Effective Date, all matters provided for hereunder that would otherwise require approval of shareholders, directors or managers of one or more of the Debtors shall be in effect from and after the Effective Date pursuant to the applicable general business law of the states in which the Debtors are incorporated or organized, without any requirement of further action by the shareholders, directors or managers of the Debtors.

**20.5    Modification of the Combined Plan and Disclosure Statement**

Alterations, amendments, or modifications hereof or hereto may be proposed in writing by the Debtors, with the consent of the Committee, at any time prior to the Confirmation Date;

provided, that the Combined Plan and Disclosure Statement, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with section 1125 of the Bankruptcy Code.  The Combined Plan and Disclosure Statement may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation; provided, that the Combined Plan and Disclosure Statement, as altered, amended, or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Combined Plan and Disclosure Statement, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifications. A Holder of a Claim that has accepted the Combined Plan and Disclosure Statement prior to any alteration, amendment, or modification will be deemed to have accepted the Combined Plan and Disclosure Statement, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Holders of the Claims.

Prior to the Effective Date, the Debtors, with the consent of the Committee, may make appropriate technical adjustments and modifications hereto without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not materially change the treatment of Holders of Claims or Equity Interests.

**20.6   Revocation or Withdrawal of the Combined Plan and Disclosure Statement**

The Debtors-in-Possession reserve the right to revoke or withdraw the Combined Plan and Disclosure Statement, with the consent of the Committee, prior to the Confirmation Date. Subject to the foregoing sentence, if the Debtors revoke or withdraw the Combined Plan and Disclosure Statement prior to the Confirmation Date, then the Combined Plan and Disclosure Statement shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors.

**20.7   Plan Supplement**

The Plan Supplement and the documents contained therein shall be filed with the Bankruptcy Court no later than ten (10) calendar days before the deadline for voting to accept or reject the Combined Plan and Disclosure Statement; provided, that the documents included therein may thereafter be amended and supplemented, prior to execution, so long as such amendment or supplement does not materially and adversely change the treatment of Holders of Claims.  The Plan Supplement and the documents contained therein are incorporated into and made a part hereof as if set forth in full herein.

**20.8   Payment of Statutory Fees**

On or before the Effective Date, all fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Combined Hearing, shall be paid in Cash.  Following the Effective Date, all such fees shall be paid by the Liquidation Trustees from the Liquidation Trust Assets until the earlier of the conversion or dismissal of the

applicable Chapter 11 Case under section 1112 of the Bankruptcy Code, or the closing of the applicable Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.  For the avoidance of doubt, the U.S. Trustee Fees shall be deemed part of the Liquidation Trust Expenses.

**20.9   Dissolution of the Committee**

On the Effective Date, except as provided in this Section 20.9, the Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to, arising from or in connection with the Chapter 11 Cases, and the retention or employment of the Debtors' and Committee's attorneys, accountants, and other agents, if any, shall terminate, except for purposes of Filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith, or any appeal of the Confirmation Order.

**20.10   Continued Confidentiality Obligations**

Pursuant to the terms thereof, members of and advisors to the Debtors and the Committee, any other holder of a Claim or Interest and their respective predecessors, successors and assigns shall continue to be obligated and bound by the terms of any confidentiality agreement executed by them in connection with this Chapter 11 Case or the Debtor, to the extent that such agreement, by its terms, may continue in effect after the Confirmation Date.

**20.11   Exemption from Transfer Taxes**

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection herewith, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection herewith, including the issuance of any stock, any merger agreements, or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated hereunder shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**20.12   Expedited Tax Determination**

The Debtors and the Liquidation Trustees are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtors for any and all taxable periods (or portions thereof) ending after the Petition Date through and including the Effective Date.

**20.13   Exhibits/Schedules**

All exhibits and schedules hereto, including the Plan Supplement, are incorporated into and are a part of the Combined Plan and Disclosure Statement as if set forth in full herein.

**20.14   Substantial Consummation**

On the Effective Date, the Combined Plan and Disclosure Statement shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

## 20.15    Severability of Combined Plan and Disclosure Statement Provisions

In the event that, prior to the Confirmation Date, any term or provision hereof is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, at the request of the Debtors have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, Impaired or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

## 20.16    Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without giving effect to its principles of conflict of law that would require application of the law of another jurisdiction.

## 20.17    Reservation of Rights

If the Combined Plan and Disclosure Statement is not confirmed by a Final Order, or is confirmed and does not become effective, the rights of all parties in interest in the Chapter 11 Cases are and will be reserved in full.  Any concessions or settlements reflected herein, if any, are made for purposes of the Combined Plan and Disclosure Statement only, and if the Combined Plan and Disclosure Statement does not become effective, no party in interest in the Chapter 11 Cases shall be bound or deemed prejudiced by any such concession or settlement.

## 20.18    Computation of Time

In computing any period of time prescribed or allowed by the Combined Plan and Disclosure Statement, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

## 20.19    Post-Confirmation Reporting

Following confirmation of the Combined Plan and Disclosure Statement, the Liquidation Trustees shall file reports of its activities and financial affairs with the Bankruptcy Court, on a quarterly basis, within thirty (30) calendar days after the conclusion of each such period; provided that the Liquidation Trustees' obligation to file such reports with the Bankruptcy Court shall terminate automatically upon the closing of the Chapter 11 Cases.  Any such reports shall

be prepared substantially consistent with (both in terms of content and format) the applicable Bankruptcy Court and U.S. Trustee guidelines on such matters.

**20.20  Notices**

All notices, requests and demands to or upon the Debtors or the Liquidation Trustees must be in writing (including by facsimile transmission) to be effective and, unless otherwise expressly provided hereunder, will be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received during the normal business hours of the Liquidation Trustees (otherwise any such notice shall be deemed to have been received on the next Business Day) and telephonically confirmed, addressed as follows:

If to the Debtors:

> Cred Inc.
> Attn:   Matthew K. Foster, Chief Restructuring Officer
> Sonoran Capital Advisors, LLC
> 1733 N Greenfield Road, Suite 10
> Mesa, Arizona 85205

> *with a copy to:*

> PAUL HASTINGS LLP
> 200 Park Avenue
> New York, New York 10136
> Attn:   G. Alexander Bongartz, Esq.

> *and*

> PAUL HASTINGS LLP
> 600 Travis Street, 58th Floor
> Houston, Texas 77002
> Attn:   James T. Grogan, Esq.

> *and*

> COUSINS LAW LLC
> Brandywine Plaza West
> 1521 Concord Pike, Suite 301
> Wilmington, Delaware 19803
> Attn:   Scott D. Cousins, Esq.

If to the Liquidation Trustees:

> Cedric de Lisser
> Michael Michelin
> Christopher Moser

74

c/o MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York 10173
Attn:   Tim Walsh, Esq.
        Darren Azman, Esq.

After the Effective Date, the Liquidation Trustees may, in their sole discretion, notify Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Liquidation Trustees are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

*[Remainder of page intentionally left blank.]*

Dated: March 10, 2021
       Wilmington, Delaware

Respectfully submitted,

**CRED INC.**

(on behalf of itself and the other Debtors and
Debtors-in-Possession)


By:      */s/ Matthew K. Foster*
Name:  Matthew K. Foster
Title:   Chief Restructuring Officer