**mwe.com**

David R. Hurst
Attorney at Law
dhurst@mwe.com
+1 302 485 3930

April 26, 2021

The Honorable John T. Dorsey
United States Bankruptcy Judge
United States Bankruptcy Court
 for the District of Delaware
Wilmington, Delaware, 19801

Re:   *In re Cred Inc., et al.*, Case No. 20-12836 (JTD)

Dear Judge Dorsey,

      This firm is counsel to the Cred Inc. Liquidation Trust (the "Trust"), the successor-in-interest to the Official Committee of Unsecured Creditors (the "Committee")[1] of Cred Inc. and its affiliated debtors (collectively, the "Debtors"). This Court is well-versed in the history between and among James Alexander, the Debtors, and the Trust, which culminated in the Bankruptcy Court entering an emergency order requiring Alexander to sit for a deposition and provide comprehensive discovery to the Trust and the Debtors [Docket No. 486] (the "Emergency Order"). As detailed below, Alexander has taken the position that he will not sit for his continued deposition until the Contempt Motion (as defined below) currently pending before the United States District Court for the District of Delaware (the "District Court") is withdrawn or resolved. That position is inconsistent with this Court's Emergency Order and, accordingly, the Trust requests that the Bankruptcy Court hold a status conference to clarify what the Trust considers the Emergency Order's clear mandate—that Alexander must immediately sit for his continued deposition.

      The Trust raised this issue during the April 21, 2021 hearing in these cases. The Bankruptcy Court agreed that the Trust could submit a letter regarding the dispute between the parties regarding Alexander's refusal to be deposed, and requested that the letter address whether the Bankruptcy Court has jurisdiction over this matter while the Contempt Motion remains pending. Because the Trust merely seeks clarification of the Emergency Order—and not a finding of contempt or any other sanction—this is well within the jurisdiction of the Bankruptcy Court, which issued the Emergency Order. For the reasons that follow, the Trust respectfully requests that the Bankruptcy Court schedule a status conference at the Court's earliest convenience to consider this discovery dispute.

---

[1] For purposes of this Letter, the Committee will be referred to as the Trust.



US practice conducted through McDermott Will & Emery LLP.

Letter to the Honorable John T. Dorsey
April 26, 2021
Page 2

I.    **Procedural Background**

Following a presentation concerning Alexander's violations of a California state court order by moving and liquidating at least 100 of the Debtors' Bitcoin, the Bankruptcy Court issued the Emergency Order on February 5, 2021. At the February 5, 2021 hearing, Your Honor stated that "[i]t is time for Alexander to start answering some difficult questions and do so in a way that gives the parties and the Court the ability to understand what's going on here." Docket No. 645, Ex. D ("Feb. 5, 2021 Hr'g Tr.") at 23:23-24. In relevant part, the Emergency Order (which "so ordered" the Bankruptcy Court's rulings on the record of the February 5, 2021 hearing) required Alexander to "sit for [a] deposition at the committee and the debtors' time, whatever time of their choosing." *See* Feb. 5, 2021 Hr'g. Tr. at 31:10-13. The Emergency Order also required Alexander to turn over the Debtors' cryptocurrency, to submit a detailed declaration, and to comply with comprehensive discovery.

At every turn, Alexander has stalled, refused to comply with discovery, or provided incomplete and at times provably false information. The parties have been engaged in an ongoing dispute concerning Alexander's compliance with written discovery. As a result, the Trust ultimately filed a motion for contempt seeking significant penalties (the "Contempt Motion"), which is currently before the District Court. The issues concerning written discovery have been briefed in connection with the Contempt Motion and will not be rehashed here.[2] Suffice it to say, Alexander has not complied with the Emergency Order's provisions concerning written discovery and document production.

On February 9, 2021, Alexander sat for a scheduled deposition with the Debtors and the Trust pursuant to the Emergency Order. Contempt Mot., ¶¶ 52-53. From the outset of the deposition, Alexander was obstructive and uncooperative. For example, Alexander claimed he did not remember whether he had left the country within the last six months (although the bank records that he produced reflect that he took a trip to Istanbul, paid for with the Debtors' funds, only weeks prior), and for 20 minutes Alexander refused to identify his job responsibilities except for "financial services." Docket No. 645, Ex. G ("Feb. 9, 2021 Dep. Tr.") at 65:22-66:27; 27:7-29:13.

Additionally, throughout the deposition, Alexander repeatedly asked for breaks and refused to answer questions clearly. The deposition continued until Alexander was asked to provide the location of hundreds of thousands of dollars derived from Alexander's improper liquidation of the Debtors' cryptocurrency. During this line of questioning, Alexander continued his obstructive behavior, responding to direct questions about the missing funds by stating "that question remains open." *Id*. at 115:5-117:3.

During that questioning, Alexander requested that the parties take a five-minute break, citing shortness of breath. *Id*. at 114:8-13; 118:3-6. Counsel to the Trust agreed to the five-minute break, but explained to Alexander that the answers he has to provide were not going to go away. *Id*. at 118:13-18.

---

[2]    The Trust respectfully refers the Bankruptcy Court to the Contempt Motion for a detailed description of the Trust's efforts to obtain meaningful discovery from Alexander and supporting documents. Contempt Mot., ¶¶ 27-64.



During the break, Alexander filed personal bankruptcy with a filing that clearly had been prepared prior to and perhaps during the deposition. When the deposition recommenced, Alexander's counsel informed the Debtors and the Trust of the bankruptcy filing, instructed Alexander to cease answering questions, and took the position that the automatic stay prevented the deposition from going forward. *Id*. at 119:4-124:7.

The Trust was forced to seek emergency relief from the automatic stay in Alexander's personal bankruptcy case, then pending in the Central District of California. On February 16, 2021, the California bankruptcy court conducted an emergency hearing and granted relief from the automatic stay to immediately "un-pause" Alexander's obligations to comply with the Emergency Order. *Id*., Ex. J at 51:5-13. The order lifting the automatic stay specifically lists Alexander's obligations pursuant to the Emergency Order, including attendance at a scheduled deposition. Docket No. 645, Ex. K ("Movants are granted relief from the automatic stay . . . to enforce the [Emergency Order] . . . which requires . . . Mr. Alexander to attend a scheduled deposition.")

As explained in greater detail in the Contempt Motion, Alexander's noncompliance with the Emergency Order continued despite the stay being lifted to enforce the Emergency Order. As a result, on March 15, 2021, the Trust filed the Contempt Motion, which seeks entry of an order: (i) finding Alexander in contempt for failing to comply with the Emergency Order; and (ii) issuing a bench warrant for Alexander's arrest and detention until he complies. Contempt Mot., ¶ 69.

On March 17, 2021, the Bankruptcy Court held a status conference regarding the Contempt Motion. At that status conference, the Bankruptcy Court instructed the Trust to file a motion to withdraw the reference for the Contempt Motion because: (i) there is a question about whether an Article I court has authority to incarcerate Alexander; and (ii) there are outstanding allegations that Alexander may be a fugitive from the United Kingdom. *See* Docket No. 670, Ex. B (March 17, 2021 Hr'g. Tr.) at 14:4-11.

On March 23, 2021, the Trust filed a motion to withdraw the reference of the Contempt Motion, which was granted by the District Court on March 24, 2021. *See Official Committee of Unsecured Creditors v. Alexander*, Case No. 21-cv-417, Docket No. 4 (D. Del. March 24, 2021). The Contempt Motion currently is pending before the District Court.

The parties continued to exchange letters and arguments concerning Alexander's compliance with written discovery. The Trust merely sought Alexander's compliance with written discovery prior to taking his deposition. As it finally became obvious that Alexander would not meaningfully comply with written discovery, the Trust served a notice of deposition on April 16, 2021. Docket No. 713. In response to the notice, counsel to Alexander provided a letter stating that "Mr. Alexander will not be made available to sit for deposition until such time as the Official Committee of Unsecured Creditors' Motion for Contempt is withdrawn or resolved."

The Emergency Order requires Alexander to, among other things, "sit for [a] deposition at the committee and the debtors' time, whatever time of their choosing." *See* Feb. 5, 2021 Hr'g. Tr. at 31:10-



Letter to the Honorable John T. Dorsey
April 26, 2021
Page 4

13. This language is unambiguous. Notwithstanding, Alexander seeks to add conditions to the Emergency Order, requiring that the Trust withdraw the Contempt Motion or wait for adjudication of the Contempt Motion by the District Court before Alexander will subject himself to a Court-ordered deposition. Accordingly, the Trust is requesting a status conference with the Bankruptcy Court to address these issues.

**II.     The Bankruptcy Court Has Jurisdiction to Interpret its Emergency Order**

Pursuant to Bankruptcy Code section 105(a), bankruptcy courts have the power to make "any determination necessary or appropriate to enforce or implement court orders." 11 U.S.C. § 105(a); *see In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 266 (3d Cir. 1991) (quoting *In re Radco Merchandising Services, Inc.*, 111 B.R. 684, 688-89 (N.D. Ill. 1990) (Bankruptcy Code section 105(a) "gives the bankruptcy court 'the power and the jurisdiction to enforce its valid orders.'")). Moreover, "[i]t is well-settled that a bankruptcy court retains jurisdiction to interpret and enforce its prior orders, especially where . . . the bankruptcy court expressly retains jurisdiction to do so." *In re NE Opco Inc.*, 513 B.R. 871, 875 (Bankr. D. Del. 2014); *see Travelers Indem. Co. v. Bailey,* 557 U.S. 137 (2009) ("The Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); *In re SelectBuild Ill., LLC*, No. 09-12085, 2015 WL 3452542, at *6 (Bankr. D. Del. May 28, 2015); *In re Weiand Automotive Industries*, 612 B.R. 824, 856 (Bankr. D. Del. 2020) (noting that one-sided decisional authority supports the bankruptcy court's jurisdiction to enforce its own orders.).

In addition to the Bankruptcy Court's inherent power to enforce and interpret the Emergency Order under Bankruptcy Code section 105(a), the Court also expressly retained such jurisdiction. *First*, in the Emergency Order, the Bankruptcy Court retained jurisdiction "with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order." *Cred, Inc., et al. v. Alexander*, Adv. No. 20-51006 (JTD), Docket No. 19, ¶ 2 (Bankr. D. Del. Feb. 5, 2021). *Second*, in the Confirmation Order, the Bankruptcy Court retained jurisdiction "of all matters in connection with, arising out of, or related to the Chapter 11 Cases . . . ." Docket No. 629, ¶ 33.

Here, the Trust is only asking the Bankruptcy Court to clarify the Emergency Order's requirement that Alexander sit for his continued deposition now. The Trust is not seeking a finding of contempt or any other penalty for Alexander's failure to comply with the Emergency Order; such matters will be considered by the District Court in its adjudication of the Contempt Motion. The Trust sought to withdraw the reference of the Contempt Motion because of the Bankruptcy Court's concern regarding its authority to incarcerate Alexander. *See* March 17, 2021 Hr'g. Tr. at 14:4-11 ("On the contempt motion, because it is asking for Mr. Alexander's incarceration, there are serious questions about whether or not a bankruptcy court as an Article [I] court has the authority to do that. And to avoid those issues and also because . . . if Mr. Alexander is in fact a fugitive from the U.K., it resulted in further criminal allegations against him, then I think it's important that this by heard by the district court and not by me."). The issue of civil contempt and the imposition of sanctions are sought in the Contempt Motion, which has been withdrawn to the District Court. *See Official Committee of Unsecured Creditors v. Alexander*, Case No. 21-cv-417, Docket No. 4 (D. Del. March 24, 2021) ("The *Contempt Motion* is hereby withdrawn . . . .") (emphasis added). This Court has retained jurisdiction to



Letter to the Honorable John T. Dorsey
April 26, 2021
Page 5

enforce the terms of the Emergency Order. *NE Opco Inc.*, 513 B.R. at 875 ("[i]t is well-settled that a bankruptcy court retains jurisdiction to interpret and enforce its prior orders, especially where . . . the bankruptcy court expressly retains jurisdiction to do so.")  Notably, the District Court's order withdrawing the reference of the Contempt Motion provides that the District Court only retains jurisdiction with respect to the withdrawal order, not the Emergency Order. *See Official Committee of Unsecured Creditors v. Alexander*, Case No. 21-cv-417, ECF No. 4 (D. Del. March 24, 2021) ("This Court shall retain jurisdiction to resolve any disputes arising from or related to *this* Order, and to interpret, implement, and enforce the provisions of *this* Order.") (emphasis added).  For the foregoing reasons, the Trust submits that this Court has jurisdiction to interpret its Emergency Order and clarify that Alexander is required by such order to sit for a deposition now, regardless of the status of the Contempt Motion.

### III.     Alexander's Deposition Must Continue Immediately to Avoid Severe Prejudice to the Trust and its Beneficiaries

The Bankruptcy Court's action is necessary to ensure that Alexander's deposition moves forward immediately.  The Trust brought the Contempt Motion to compel Alexander's compliance with the Emergency Order.  As opposed to trying to comply with the Emergency Order to avoid the risk of severe penalties, Alexander has conversely sought to use the Contempt Motion as an excuse to refuse to sit for a deposition.  The Bankruptcy Court should not tolerate Alexander's most recent antics to avoid testifying under oath.  Each day that passes, Alexander may be transferring the Debtors' cryptocurrency, more of the Debtors' cash may be spent, and other assets may be dissipated to fund Alexander's personal expenses.

As the Bankruptcy Court is aware, the assets in question and the transfers thereof involve cryptocurrency, which is easily transferred and difficult to trace.  To make matters worse, certain of the cryptocurrency transactions present here are even more difficult to trace because many of the transactions were "off exchange" transactions where cryptocurrency is traded privately between parties (as opposed to through cryptocurrency exchanges).  *See* Contempt Mot., ¶¶ 76-80.  It is immediately necessary for Alexander to continue the deposition and answer questions regarding these transactions, which will allow the Trust to track these transactions, identify the transferees, and attempt to prevent any further transfers.  *Id*.  At any given moment, further transactions may be conducted, which will make it increasingly more difficult for the Trust to recover the assets.

The Emergency Order required Alexander to "provide an explanation for each of the transfers subsequent to the initial transfer of all the bitcoin, as well as an explanation for why he liquidated the Bitcoin and where that money is located."  *See* February 5, 2021 Hr'g. Tr. at 35:2-6.  Due to Alexander's refusal to provide the required detail, the Trust is left with bank statements reflecting hundreds of thousands of dollars in transactions related to the Debtors' cryptocurrency, and no understanding of why payments to consultants, foreign hotels, and Alexander himself were made.  Alexander has made repeated dubious assertions that he considered this spending to be "business expenses" related to the operation of Cred Capital.  This excuse is odd to say the least, especially given



Letter to the Honorable John T. Dorsey
April 26, 2021
Page 6

that Cred Capital was not conducting any actual business during much of the time period during which Alexander was transferring and spending hundreds of thousands of the Debtors' dollars.

Since the Trust filed its Contempt Motion, Alexander has produced relevant information piece by piece in response to the Trust's requests and correspondence. As one example, and in response to a letter from the Trust, on March 30, 2021, Alexander produced a Second Supplemental Declaration regarding the July 1-16, 2020 and January 16-17, 2021 transactions, as well as additional account statements for Alexander's accounts at JP Morgan and Wells Fargo. Despite Alexander submitting a declaration and other account statements previously, Alexander's March 30 production contained account statements and transactions from accounts that he previously had not disclosed. Each time Alexander produces information or is questioned, new accounts are revealed, additional suspicious transactions are found, and other leads for following the Debtors' missing assets are uncovered. The Trust is unwilling to continue to accept this trickle of information.

Alexander's piecemeal responses raise additional urgent questions. During his section 341 examination, Alexander did not answer whether he currently owns or has access to foreign bank accounts, or accounts in the name of aliases he has used previously. When asked directly if he had owned or had access to any foreign bank accounts in the last four years, Alexander answered "Not that I'm aware of." *See* Alexander 341 Examination ("341 Tr.") at 68:21-23. When asked if he had access to any other any bank accounts in 2020, Alexander replied "I don't recall." *Id*. at 59. When asked if he had any bank accounts in various names that he has used in the past (*e.g.*, James Alexander Necropolous, James Nelson Alexander, and James Alexander Warnery), Alexander replied "I don't recall." *Id*. at 59:17-61:5; 62:13-15; 67:18-22. Alexander has also refused to identify and turn over the full proceeds of the Debtors' cryptocurrency that he liquidated on January 17, 2021.

It is unknown how many cryptocurrency accounts Alexander owns and controls and whether he has divulged all of his cryptocurrency holdings. During a recorded Zoom call with the Trust for the purpose of transferring the Debtors' cryptocurrency back to the Debtors, Alexander represented that he only had one Coinbase account, stating that he"[does] not personally have another Coinbase account." On the same call, he also stated that he did not have access to another Coinbase account. However, Alexander subsequently produced records for *two* Coinbase accounts. During his section 341 examination, when asked if he had access to any other Coinbase accounts except the two he had previously disclosed, Alexander answered "Not that I'm aware of." *Id*. at 70:12-15. Alexander now asserts that he has turned over complete account histories for both of these Coinbase accounts. However, a review of the Coinbase records Alexander produced indicates that there is at least $325,208.68 derived from the recent January 17, 2021 liquidation of the Debtors' Bitcoin that cannot be reconciled. The account statements indicate that additional transactions involving this outstanding sum likely took place after February 8, 2021, the date of the account statements provided by Alexander. This outstanding sum is directly traceable to the Debtors' cryptocurrency and the Trust deserves the opportunity to question Alexander regarding the present location of these funds. The Trust has continuously requested this information from Alexander and he has not provided this information.



Letter to the Honorable John T. Dorsey
April 26, 2021
Page 7

     Similarly, Alexander has refused to specify where the substantial amount of cash in his possession in early February ended up. During his deposition, Alexander admitted that he had $60,000 in cash in the trunk of his car. *See* Feb. 9, 2021 Dep. Tr. at 59:22-60:13. This $60,000 is only a portion of at least $170,000 in documented cash withdrawals. While under oath, because there is no related $60,000 deposit into the DIP account, Alexander was asked by the examiner if he could identify where he deposited those funds. Alexander replied "I don't recall." Alexander also refused to answer questions from the Trust about the $60,000 that was in the trunk of his car during his deposition and where it was currently located. Three weeks later, Alexander's lawyer submitted a letter, which had not been signed by Alexander, indicating that $20,000 in cash was paid to a bankruptcy lawyer and another $10,000 was spent on "miscellaneous expenses which Mr. Alexander cannot specifically recall at this time." The same letter also states that "Alexander cannot recall whether or not he had any other cash in his possession in the time period from February 1, 2021 to February 15, 2021." If Alexander is really taking these positions, he must say so under oath.

     A deposition also is urgently required to determine whether remaining proceeds of the Debtors' cryptocurrency are being used for personal expenses. Despite Alexander stating on his bankruptcy schedules that he had not provided any gifts over $600 in the previous two years, he admitted during his section 341 examination that he provides "support" payments to his wife. 341 Tr. at 86:16-18. The section 341 examination also revealed that Alexander recently co-signed as a guarantor on the lease for his wife's new Porsche Spyder. *Id*. at 76:2-77:16. That vehicle is valued at roughly $100,000. Further, his wife's social media account reveals a new residence in Hawaii, frequent purchases of designer goods, and a trip on a private jet. A deposition is urgently needed to determine whether the proceeds of the Debtors' cryptocurrency are being used for these purposes. When asked if he purchased any jewelry for his wife in the past two years, Alexander responded "I don't recall." *Id.* at 74:25-75:6. When asked if he purchased bags in excess of $500 for his wife in the last two years, Alexander again answered "I don't recall." *Id.* at 78:10-13.

*[Remainder of Page Intentionally Left Blank]*



Letter to the Honorable John T. Dorsey
April 26, 2021
Page 8

      For the foregoing reasons, the Trust respectfully requests that the Bankruptcy Court schedule a status conference to clarify any confusion that may exist regarding the Emergency Order's requirement that Alexander immediately sit for his continued deposition, without conditions.

                                          Respectfully,

                                          */s/ David R. Hurst*

                                          David R. Hurst

cc:      Geoffrey Grivner, Esq.
          Mark Pfeiffer, Esq.
          David B. Golubchik, Esq.
          Joseph J. McMahon, Jr., Esq.

