FILED
2021 MAY 12 AM 11:55
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re: | Chapter 11 |
|---|---|
| CRED INC., *et al.*, | Case No. 20-12836 (JTD) |
| Debtors.[1] | (Jointly Administered) |

**REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM OF DONLIN, RECANO & COMPANY, INC.**

1. This Request for Payment of Administrative Expense Claim (the "**Administrative Expense Claim**") against the above captioned reorganized Debtors (the "**Debtors**"), is filed by and on behalf of Donlin, Recano & Company, Inc. ("**DRC**") for obligations owing by the Debtors to DRC under that certain Standard Claims Administration and Noticing Agreement dated as of November 4, 2020 (the "**Engagement Agreement**"). A copy of the Engagement Agreement is attached hereto as **Exhibit A**.

2. On November 8 2020, the Debtors filed the *Debtors' Application For Entry Of An Order, Pursuant To 28 U.S.C. § 156(C), Authorizing The Retention And Appointment Of Donlin, Recano & Company, Inc. As Claims And Noticing Agent For The Debtors, Nunc Pro Tunc To The Petition Date* [Docket No. 9] (the "**Employment Application**"). On November 10, 2020, the Court entered the *Order Authorizing Retention And Appointment Of Donlin, Recano & Company, Inc. As Claims And Noticing Agent For The Debtors, Nunc Pro Tunc To The Petition Date* [Docket No.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

28] (the "**Retention Order**").  A copy of the Retention Order is attached hereto as **Exhibit B**.

3. The Retention Order provides that "[t]he Debtors are authorized to compensate DRC in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by DRC and the rates charged for each, and to reimburse DRC for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for DRC to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses. . . " Retention Order at ¶ 6.  The Retention Order further provides that "[p]ursuant to section 503(b)(1)(A) of the Bankruptcy Code, DRC's fees and expenses under this Order shall be an administrative expense of the Debtors' estates." Retention Order at ¶ 9.

4. Pursuant to the terms of the Engagement Agreement, the Debtors owe DRC $22,086.38 for claims agent/noticing services rendered during the period April 1, 2021 through April 30, 2021. In addition, DRC asserts an unliquidated claim for fees and expenses accruing after April 30, 2021.  A copy of the invoice supporting DRC's administrative claim is attached hereto as **Exhibit C**.

5. DRC reserves the right to: (a) amend and/or supplement this Administrative Expense Claim at any time, including after the bar date, and in any manner, (b) to file any additional administrative expense claim for any additional claim against the Debtors which may be based on the same or additional documents or grounds of liability.

6. This Administrative Expense Claim is being filed to protect DRC from forfeiture of its claims. The filing of this Administrative Expense Claim is not and shall not be

deemed or construed as: (a) a waiver or release by DRC of any rights against any person, entity or property; (b) a consent by DRC to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving DRC; (c) a waiver or release of DRC's right to trial by jury in this Court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statue or the United States Constitution; (d) a consent by DRC to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a waiver or release of DRC's right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a United States District Court Judge; (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Administrative Expense Claim, any objection thereto or other proceeding which may be commenced in these cases against or otherwise involving DRC; or (g) an election of remedies.

Dated: Brooklyn, New York
May 11, 2021

Respectfully submitted,

**DONLIN, RECANO & COMPANY, INC.**

By: ______________________________

Roland Tomforde
Chief Operating Officer
Donlin, Recano & Company, Inc.
6201 15th Avenue
Brooklyn, NY 11219
Telephone: (212) 481-1411
Facsimile: (212) 481-1416
E-mail: rtomforde@donlinrecano.com

# EXHIBIT A

## DONLIN, RECANO & COMPANY, INC.

## ENGAGEMENT AGREEMENT

DONLIN RECANO
An AST Company

# STANDARD CLAIMS ADMINISTRATION AND NOTICING AGREEMENT

## TERMS AND CONDITIONS

**Donlin, Recano & Company, Inc**. (hereinafter called "DRC") agrees to provide Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC, (hereinafter called the "Client"), including but not limited to any and all bankruptcy cases filed by any affiliate of Client and Client agrees to purchase Services, (as defined below) upon the terms and conditions and other provisions stated herein. Client agrees and understands that none of the services constitute legal advice.

**1. SERVICES:** DRC agrees to provide the Client with consulting services regarding noticing and claims management and reconciliation, and any other services agreed upon by the parties or otherwise required by applicable law, government regulations, or court rules or orders. A more detailed description of the types of services offered by DRC, as well as the fees charged for such services, is annexed hereto as Schedule A.

**2. CHARGES**: All charges shall be based upon the time and materials incurred by DRC, billed at the DRC then prevailing standard rate unless another rate schedule is specifically and mutually agreed upon herein. DRC reserves its rights to adjust its standard rates in January of each year to reflect changes in the business and economic environment. In the event that rates are based other than on time and materials, and such other basis for rates is set forth herein, the Client agrees to pay, in addition to those rates, for all charges, incurred by DRC as a result of Client error or omission as determined by DRC. Such charges shall include but shall not be limited to re-runs and any additional clerical work, phone calls, travel expenses, or any other disbursements. When possible, DRC will notify Client in advance of any additional charges. Checks are accepted subject to collection and the date of collection shall be deemed the date of payment. Any check received from Client may be applied by DRC against any obligation owing by Client to DRC, and an acceptance by DRC of any partial payment shall not constitute a waiver of DRC's right to pursue the collection of any remaining balance. DRC requires advance deposits for all noticing, newspaper publishing or other significant expenditures as defined by DRC. In addition, Client shall reimburse DRC for all actual out-of-pocket expenses reasonably incurred by DRC. The out-of-pocket expenses may include, but are not limited to, postage, delivery services, travel, meals and other similar costs and expenses. In addition to all charges for services and materials hereunder, Client shall pay to DRC all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by DRC or paid by DRC to taxing authorities. This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income. In the event the Client files for protection pursuant to chapter 11 of title 11 of the United States Code, the parties intend that DRC shall be employed pursuant to 28 U.S.C §156(c), and that all fees and expenses due under this agreement shall be paid as administrative expenses of the Client's chapter 11 estate(s). In the event the Client's bankruptcy case(s) is converted to a chapter 7 case(s), any unpaid fees and costs with respect to this Agreement shall be treated as a chapter 11 administrative expense claim.

**3. TRANSPORTATION OF DATA**: Data submitted by the Client to DRC for processing shall be

transported at the Client's risk and expense to and from the DRC office. In the event the Client fails to deliver the input data to DRC at the time scheduled, the Client agrees that DRC may extend, as necessary, the time for the completion of processing of such data. Client further agrees that the time for the completion or processing of such data may be extended because of the following holidays in addition to any Bank holidays recognized in the city in which DRC is located: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. In any event, DRC does not warrant or represent that shipment or availability dates will be met, but will use its best efforts to do so. If DRC is required to stay open to perform required tasks on such days, an additional mutually agreed upon cost may be required by DRC.

**4. EVERGREEN RETAINER & INVOICES**: At the commencement of this engagement, the Client shall pay to DRC an advance payment retainer (the "Retainer") in the amount of $50,000. The Retainer shall be an "evergreen" retainer and shall be applied to the payment of the final invoice from DRC for this engagement. DRC may apply the Retainer to any other invoice in its absolute discretion, and upon notice thereof from DRC, the Client shall replenish the Retainer. Invoices for pre-petition services shall be paid in full, and may be satisfied, in the absolute discretion of DRC, out of the Retainer, which shall be replenished upon notice thereof to the Client. DRC, in its absolute discretion, may suspend or discontinue services after filing of a petition if pre-petition invoices are not paid in full, or if the Retainer is not replenished when request therefore is made. DRC may require the Client to increase the Retainer if the average amount of monthly invoices for three consecutive months is 10% greater than the amount of the Retainer. Client shall pay the charges set forth in Schedule A, attached hereto. DRC shall invoice the Client monthly for all services rendered during the preceding month. Charges for a partial month's service shall be prorated based on a thirty (30) day month. Terms are net 20 days following the date of billing. Failure to pay any fees, costs or other amounts to DRC shall be a breach of this Agreement (a "Failure to Pay"). Notwithstanding anything else contained in this Agreement, in the event of a Failure to Pay, DRC reserves the right to withhold reports and materials of the Client, in addition to all other remedies available to DRC. Upon a Failure to Pay, DRC may assess a late charge at a rate of one and one-half percent (1-1/2%) per month or the highest rate permitted by law, whichever is less, on all unpaid amounts until paid in full. DRC shall also have the right, at its option, to terminate this agreement for non-payment of invoices after 30 days from the date unpaid invoices are rendered (a "Non-Payment Breach"). If the invoice amount is disputed, notice shall be given to DRC within ten (10) days of receipt of the invoice by the Client. The undisputed portion of the invoice will remain due and payable. Late charges shall not accrue on any amounts in dispute. Notwithstanding anything contained in this agreement to the contrary, a Failure to Pay shall under no circumstances be construed as an agreement by DRC to reduce or waive DRC's fees and expenses. The Client shall not agree or otherwise consent to a unilateral reduction or waiver of DRC fees and expenses without the explicit written consent of DRC and any such agreement or consent to such reduction or waiver by the Client without DRC's explicit written consent shall be deemed null and void and constitute a breach of this Agreement (a "Material Breach"). Notwithstanding anything contained in this agreement to the contrary, upon the occurrence of a Material Breach, DRC shall have the right, at its option, to terminate this agreement upon five (5) business days notice to the Client.

**5. STORAGE**: Client shall assume the risks and DRC shall not be responsible for any damages, liability or expenses incurred in connection with any delay in delivery of or damage to cards, disks, magnetic tapes or any input data furnished by Client unless DRC has agreed in writing to assume such

responsibility. Forms storage at DRC beyond a normal 90 day supply will be billed at standard warehousing rates established by DRC.

**6. E-MAIL COMMUNICATIONS**: DRC and the Client and its agents acknowledge that they may wish to communicate electronically with each other at a business e-mail address. However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus-free. It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents, whether received on disk or otherwise.

**7. SUPPLIES**: All supplies shall be furnished at Client's expense.

**8. WARRANTY AND RELIANCE**: Client acknowledges and agrees that DRC will take direction from the Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to services being provided under this Agreement. Client and DRC agree that DRC may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client. DRC shall have the right to rely on the accuracy of all data provided by the Client and the Client Parties to DRC. Client is responsible for the accuracy of all programs, data and other information it submits to DRC. The DRC warranty under this agreement shall be limited to the re-running at its expense, of any inaccurate reports provided that such inaccuracies were caused solely as a result of performance hereunder and provided further that DRC shall receive written notice of such inaccuracies within thirty (30) days of delivery of such report. If said notice is not made to DRC within the prescribed time limit Client is due and liable for all charges. Client agrees that the foregoing constitutes the exclusive remedy available to it.

**9. TERM**: This agreement shall be effective from the date upon which it is accepted by DRC as set forth herein and shall remain in force until terminated by either party upon thirty days' written notice to the other party or by DRC upon occurrence of a Non-Payment Breach or a Material Breach, as defined in paragraph 4 above. In the event that a chapter 7 trustee, chapter 11 trustee or chapter 11 liquidating trustee is appointed, this agreement will remain in effect until an order of the Bankruptcy Court is entered discharging DRC from service and responsibility under this Agreement. The payment obligation and the indemnity obligation set forth in sections 4 and 11 herein, respectively, shall survive termination of this Agreement. In the event this Agreement is terminated, DRC shall coordinate with the Client and, to the extent applicable, the Office of the Clerk of the Bankruptcy Court, for an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for such orderly transfer. Client agrees to pay for such services in accordance with DRC's then existing fees for such services. If termination of this Agreement occurs following entry of an order by the Bankruptcy Court approving DRC's retention under 28 U.S.C. § 156 (c), then the Client shall immediately seek entry of an order (in form and substance reasonably acceptable to DRC) that discharges DRC from service and responsibility under this Agreement and 28 U.S.C. § 156 (c).

**10. TERMS OF AGREEMENT**: The terms of this Agreement prevail over any and all terms contained in Client's purchase order or authorization and no waiver, discharge, or modification of the terms of this Agreement shall bind DRC unless in writing and signed by an authorized representative of DRC.

**11. INDEMNIFICATION**: The Client shall indemnify and hold DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs, obligations, judgments, causes of action, charges (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), arising out of or relating to (a) this Agreement or DRC's rendering of services pursuant hereto (including any erroneous instructions or information provided to DRC by the Client or the Client Parties for use in providing services under this Agreement), (b) any breach or alleged breach of this Agreement by Client, or (c) any negligence or willful or reckless actions or misconduct of Client or Client Parties with respect to this Agreement, other than Losses resulting solely from DRC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Parties. The Client shall notify DRC in writing promptly of the institution, threat or assertion of any claim of which the Client is aware with respect to the services provided by DRC under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of DRC and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to DRC's liabilities.

**12. CONFIDENTIALITY:** Each of DRC and the Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five (5) business days' written notice to the other party, release the required information.

**13. OWNERSHIP OF PROGRAMS**: Unless otherwise agreed in writing, all programs developed by DRC in connection with any services to be performed under this Agreement shall remain the sole property of DRC. All programs and/or systems documentation in the possession of DRC which DRC has agreed in writing to return to the Client, prepared for the Client by DRC, shall be returned to the Client upon demand providing all charges for such programming and/or systems documentation have been paid in full.

**14. SYSTEMS IMPROVEMENTS:** DRC's policy is to provide continuous improvements in the quality of service to its clients. DRC, therefore, reserves the right to make changes in operating procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the DRC data center serving the Client, so long as any such changes do not materially interfere with ongoing services provided to the Client in connection with the Client's chapter 11 case.

**15. UNUSUAL MEASURES**: Where the Client requires measures that are unusual and beyond the

normal business practice and hours of DRC such as, but not limited to, CPA Audit, Errors and Omissions Insurance, and/or Off-Premises Storage of Data, the cost of such measures, if provided by DRC, shall be charged to the Client. Said charges may be required in advance if DRC deems it appropriate.

**16. JURISDICTION.** In the event that Client commences a case under title 11 of the United States Code, this Agreement shall be subject to approval by the United States Bankruptcy Court for the district in which the Client commences its case (the "Bankruptcy Court") and such court shall retain jurisdiction over all matters regarding this Agreement.

**17. FORCE MAJEURE.** Whenever performance by DRC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reasons of any other matter beyond DRC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**18. NOTICE.** Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery to such courier, as follows: if to DRC, to: Donlin, Recano & Company, Inc., 6201 15th Avenue, Brooklyn, NY 11219, Attention: Nellwyn Voorhies, Esq.; if to the Client, to: G. Alexander Bongartz, Esq., James T. Grogan, Esq., Paul Hastings, LLP, 200 Park Avenue, New York, NY 10166.

**19. GOVERNING LAW.** This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

**20. SEVERABILITY.** All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

**21. ASSIGNMENT.** This Agreement and the rights and obligations of DRC and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.

**22. GENERAL:** The terms and conditions of this Agreement may be modified by DRC upon one (1) month's prior written notice to Client. Client will not employ any DRC employee within two (2) years from the termination of this Agreement. The term "this Agreement" as used herein includes any future written amendments, modifications, supplements or schedules duly executed by Client and DRC. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. A facsimile copy, photocopy or imaged copy of this Agreement shall be considered an original copy. The Client shall file an application

with the Bankruptcy Court seeking approval of this Agreement (the "Application"), the form and substance of which shall be reasonably acceptable to DRC. If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

Accepted and Approved:

Donlin, Recano & Company, Inc.
6201 15th Avenue
Brooklyn, New York 11219

By: ________________________

Signature: ________________________

Title: ________________________

Date: ________________________

Accepted and Approved:

Cred Inc.
Cred (US) LLC
Cred Capital, Inc.
Cred Merchant Solutions LLC
Cred (Puerto Rico) LLC

By: Dan Schatt

Signature: [signature]

Title: CEO

Date: 11/4/20

This Agreement is subject to the terms and conditions set forth herein. Client acknowledges reading and understanding it and agrees to be bound by its terms and conditions and further agrees that it is the complete and exclusive statement of the Agreement between the parties, which supersedes all proposals oral or written and other prior communications between the parties relating to the subject matter of this Agreement.

DONLIN RECANO
An AST Company

**SCHEDULE A**
**Cred Inc.**
**Fee Schedule**

| Professional Service | Hourly Rates |
|---|---|
| Executive Management | No charge |
| Senior Bankruptcy Consultant | $175 - $205 |
| Case Manager | $160 - $175 |
| Consultant/Analyst | $130- $155 |
| Technology/Programming Consultant | $95 - $120 |
| Clerical | $35 - $45 |
| **Noticing Service** | |
| Laser Printing/ Photocopies | $.10 per Image |
| Personalization/ Labels | WAIVED |
| Fax (Incoming) | WAIVED |
| Fax Noticing | $.08 per Page |
| Postage and Overnight Delivery | At Cost |
| Electronic Noticing | WAIVED |
| Publication Services | At Cost |
| **Solicitation, Balloting, Schedule/SOFA** | |
| Print and Mail Ballots/Plan Disbursements | Print/hourly fees above – Plan/DS media varies |
| Set-up Tabulation & Vote Verification | $90 - $195 as needed |
| Public Securities Solicitation | $90 - $225 per Hour |
| Schedule/SOFA preparation | $90 - $225 per Hour |
| **Claims Docketing and Management** | |
| Website Development | WAIVED |
| Web Hosting | WAIVED |
| Creditor Data Storage/ Electronic Document Storage | $.08 per record monthly |
| Document Imaging | $.08 per Image |
| Electronic Claims filing | No Set-up charge or per claim charge |
| **Data Room Services** | |
| DRC DocuLinks™ Virtual Data Room Services | Hosting WAIVED |
| Data Room Development | $90 per Hour |
| **Miscellaneous** | |
| Escrow Agent Services | Competitive Interest Rates |
| Out-of-Pocket Expenses (including any required travel) | At Cost |
| Call Center Operators | $65 per hour |

**EXHIBIT B**

**DONLIN, RECANO & COMPANY, INC.**

**RETENTION ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | **Re: Docket Nos. 9** |

**ORDER AUTHORIZING RETENTION AND APPOINTMENT OF DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING AGENT FOR DEBTORS, *NUNC PRO TUNC* TO PETITION DATE**

Upon the application (the "Application")[2] of the debtors and debotrs in possession (the "Debtors"), for an order authorizing the retention and appointment of Donlin, Recano & Company, Inc. ("DRC") as claims and noticing agent, under 28 U.S.C. §156(c), Section 105(a) of the Bankruptcy Code2 and Local Rule 2002-1(f); and upon the Voorhies Declaration submitted in support of the Application; and this Court having found that it has jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. § 1334; and this Court having found that venue of these cases and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that it may enter a final order consistent

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

with Article III of the United States Constitution; and it appearing that notice of the Application has been given as set forth in the Application and that such notice is adequate and no other or further notice need be given; and a hearing having been held to consider the relief requested in the Application; and upon the record of the hearing on the Application and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Application is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1. The Application is granted as set forth herein.

2. The Debtors are authorized to retain DRC effective *nunc pro tunc* to the Petition Date, under the terms of the Engagement Agreement attached hereto as **Exhibit 1**, and DRC is authorized and directed to perform the Claims and Noticing Services as described in the Application.

3. DRC shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in the Chapter 11 Cases, if any, and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

4. DRC is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

5. DRC is authorized to take such other action to comply with all duties set forth in the Application.

6. The Debtors are authorized to compensate DRC in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by DRC and the rates charged for each, and to reimburse DRC for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for DRC to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7. DRC shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel for any official committee, if any, monitoring the expenses of the Debtors and any party-in-interest who requests, in writing directed to the claims agent, service of the monthly invoices.

8. If any dispute arises relating to the Engagement Agreement or DRC's monthly invoices, the parties shall meet and confer in an attempt to resolve such dispute, and the parties may seek resolution of the matter from this Court if resolution is not achieved.

9. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, DRC's fees and expenses under this Order shall be an administrative expense of the Debtors' estates.

10. DRC may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount of $50,000, and thereafter, DRC may hold its retainer

under the Engagement Agreement during the Chapter 11 Cases as security for the payment of fees and expenses under the Engagement Agreement.

11. The Debtors shall indemnify DRC under the terms of the Engagement Agreement subject to the following modifications:

(a) Subject to the provisions of subparagraphs (c) and (d) below, the Debtors are authorized to indemnify, and shall indemnify, DRC in accordance with the Engagement Agreement and to the extent permitted by applicable law, for any claim arising from, related to, or in connection with DRC's performance of the services described in the Engagement Agreement;

(b) DRC shall not be entitled to indemnification, contribution, or reimbursement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

(c) Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense to the extent that it is either (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from that person's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of DRC's contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order; and

(d) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Cases, DRC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Agreement, including without limitation the advancement of defense costs, DRC must file an application before this Court, and the Debtors may not pay any such amounts to DRC before the entry of an order by this Court approving

the payment. This subparagraph (d) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for payment by DRC for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify DRC. All parties in interest shall retain the right to object to any demand by DRC for indemnification, contribution or reimbursement.

12. DRC shall comply with all relevant statutory provisions and rules of procedure, including local rules of procedure, general orders, and applicable guidelines.

13. Debtors' counsel shall notify both the Clerk's office and DRC within seven (7) days of an order dismissing or converting the Debtors' cases.

14. In the event DRC is unable to provide the services set out in this Order, DRC will immediately notify the Clerk and Debtors' counsel and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtors' counsel.

15. The Debtors may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by DRC that is not specifically authorized by this Order.

16. The Debtors and DRC are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

17. DRC shall not cease providing claims processing services during the Chapter 11 Cases for any reason, including nonpayment, without an order of the Court.

18. At the end of the Chapter 11 Cases or upon termination of DRC's services, the Debtors or the Trustee must obtain a termination order to terminate the services of DRC. DRC is

responsible for archiving all claims with the Federal Archives Record Administration, if applicable.

19. In the event of any inconsistency between the Engagement Agreement, the Application and the Order, the Order shall govern.

20. Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**Dated: November 10th, 2020**
**Wilmington, Delaware**

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

DONLIN RECANO
An AST Company

# STANDARD CLAIMS ADMINISTRATION AND NOTICING AGREEMENT

## TERMS AND CONDITIONS

**Donlin, Recano & Company, Inc**. (hereinafter called "DRC") agrees to provide Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC, (hereinafter called the "Client"), including but not limited to any and all bankruptcy cases filed by any affiliate of Client and Client agrees to purchase Services, (as defined below) upon the terms and conditions and other provisions stated herein. Client agrees and understands that none of the services constitute legal advice.

**1. SERVICES:** DRC agrees to provide the Client with consulting services regarding noticing and claims management and reconciliation, and any other services agreed upon by the parties or otherwise required by applicable law, government regulations, or court rules or orders. A more detailed description of the types of services offered by DRC, as well as the fees charged for such services, is annexed hereto as Schedule A.

**2. CHARGES**: All charges shall be based upon the time and materials incurred by DRC, billed at the DRC then prevailing standard rate unless another rate schedule is specifically and mutually agreed upon herein. DRC reserves its rights to adjust its standard rates in January of each year to reflect changes in the business and economic environment. In the event that rates are based other than on time and materials, and such other basis for rates is set forth herein, the Client agrees to pay, in addition to those rates, for all charges, incurred by DRC as a result of Client error or omission as determined by DRC. Such charges shall include but shall not be limited to re-runs and any additional clerical work, phone calls, travel expenses, or any other disbursements. When possible, DRC will notify Client in advance of any additional charges. Checks are accepted subject to collection and the date of collection shall be deemed the date of payment. Any check received from Client may be applied by DRC against any obligation owing by Client to DRC, and an acceptance by DRC of any partial payment shall not constitute a waiver of DRC's right to pursue the collection of any remaining balance. DRC requires advance deposits for all noticing, newspaper publishing or other significant expenditures as defined by DRC. In addition, Client shall reimburse DRC for all actual out-of-pocket expenses reasonably incurred by DRC. The out-of-pocket expenses may include, but are not limited to, postage, delivery services, travel, meals and other similar costs and expenses. In addition to all charges for services and materials hereunder, Client shall pay to DRC all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by DRC or paid by DRC to taxing authorities. This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income. In the event the Client files for protection pursuant to chapter 11 of title 11 of the United States Code, the parties intend that DRC shall be employed pursuant to 28 U.S.C §156(c), and that all fees and expenses due under this agreement shall be paid as administrative expenses of the Client's chapter 11 estate(s). In the event the Client's bankruptcy case(s) is converted to a chapter 7 case(s), any unpaid fees and costs with respect to this Agreement shall be treated as a chapter 11 administrative expense claim.

**3. TRANSPORTATION OF DATA**: Data submitted by the Client to DRC for processing shall be

transported at the Client's risk and expense to and from the DRC office. In the event the Client fails to deliver the input data to DRC at the time scheduled, the Client agrees that DRC may extend, as necessary, the time for the completion of processing of such data. Client further agrees that the time for the completion or processing of such data may be extended because of the following holidays in addition to any Bank holidays recognized in the city in which DRC is located: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. In any event, DRC does not warrant or represent that shipment or availability dates will be met, but will use its best efforts to do so. If DRC is required to stay open to perform required tasks on such days, an additional mutually agreed upon cost may be required by DRC.

4. **EVERGREEN RETAINER & INVOICES**: At the commencement of this engagement, the Client shall pay to DRC an advance payment retainer (the "Retainer") in the amount of $50,000. The Retainer shall be an "evergreen" retainer and shall be applied to the payment of the final invoice from DRC for this engagement. DRC may apply the Retainer to any other invoice in its absolute discretion, and upon notice thereof from DRC, the Client shall replenish the Retainer. Invoices for pre-petition services shall be paid in full, and may be satisfied, in the absolute discretion of DRC, out of the Retainer, which shall be replenished upon notice thereof to the Client. DRC, in its absolute discretion, may suspend or discontinue services after filing of a petition if pre-petition invoices are not paid in full, or if the Retainer is not replenished when request therefore is made. DRC may require the Client to increase the Retainer if the average amount of monthly invoices for three consecutive months is 10% greater than the amount of the Retainer. Client shall pay the charges set forth in Schedule A, attached hereto. DRC shall invoice the Client monthly for all services rendered during the preceding month. Charges for a partial month's service shall be prorated based on a thirty (30) day month. Terms are net 20 days following the date of billing. Failure to pay any fees, costs or other amounts to DRC shall be a breach of this Agreement (a "Failure to Pay"). Notwithstanding anything else contained in this Agreement, in the event of a Failure to Pay, DRC reserves the right to withhold reports and materials of the Client, in addition to all other remedies available to DRC. Upon a Failure to Pay, DRC may assess a late charge at a rate of one and one-half percent (1-1/2%) per month or the highest rate permitted by law, whichever is less, on all unpaid amounts until paid in full. DRC shall also have the right, at its option, to terminate this agreement for non-payment of invoices after 30 days from the date unpaid invoices are rendered (a "Non-Payment Breach"). If the invoice amount is disputed, notice shall be given to DRC within ten (10) days of receipt of the invoice by the Client. The undisputed portion of the invoice will remain due and payable. Late charges shall not accrue on any amounts in dispute. Notwithstanding anything contained in this agreement to the contrary, a Failure to Pay shall under no circumstances be construed as an agreement by DRC to reduce or waive DRC's fees and expenses. The Client shall not agree or otherwise consent to a unilateral reduction or waiver of DRC fees and expenses without the explicit written consent of DRC and any such agreement or consent to such reduction or waiver by the Client without DRC's explicit written consent shall be deemed null and void and constitute a breach of this Agreement (a "Material Breach"). Notwithstanding anything contained in this agreement to the contrary, upon the occurrence of a Material Breach, DRC shall have the right, at its option, to terminate this agreement upon five (5) business days notice to the Client.

5. **STORAGE**: Client shall assume the risks and DRC shall not be responsible for any damages, liability or expenses incurred in connection with any delay in delivery of or damage to cards, disks, magnetic tapes or any input data furnished by Client unless DRC has agreed in writing to assume such

responsibility. Forms storage at DRC beyond a normal 90 day supply will be billed at standard warehousing rates established by DRC.

6. **E-MAIL COMMUNICATIONS**: DRC and the Client and its agents acknowledge that they may wish to communicate electronically with each other at a business e-mail address. However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus-free. It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents, whether received on disk or otherwise.

7. **SUPPLIES**: All supplies shall be furnished at Client's expense.

8. **WARRANTY AND RELIANCE**: Client acknowledges and agrees that DRC will take direction from the Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to services being provided under this Agreement. Client and DRC agree that DRC may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client. DRC shall have the right to rely on the accuracy of all data provided by the Client and the Client Parties to DRC. Client is responsible for the accuracy of all programs, data and other information it submits to DRC. The DRC warranty under this agreement shall be limited to the re-running at its expense, of any inaccurate reports provided that such inaccuracies were caused solely as a result of performance hereunder and provided further that DRC shall receive written notice of such inaccuracies within thirty (30) days of delivery of such report. If said notice is not made to DRC within the prescribed time limit Client is due and liable for all charges. Client agrees that the foregoing constitutes the exclusive remedy available to it.

9. **TERM**: This agreement shall be effective from the date upon which it is accepted by DRC as set forth herein and shall remain in force until terminated by either party upon thirty days' written notice to the other party or by DRC upon occurrence of a Non-Payment Breach or a Material Breach, as defined in paragraph 4 above. In the event that a chapter 7 trustee, chapter 11 trustee or chapter 11 liquidating trustee is appointed, this agreement will remain in effect until an order of the Bankruptcy Court is entered discharging DRC from service and responsibility under this Agreement. The payment obligation and the indemnity obligation set forth in sections 4 and 11 herein, respectively, shall survive termination of this Agreement. In the event this Agreement is terminated, DRC shall coordinate with the Client and, to the extent applicable, the Office of the Clerk of the Bankruptcy Court, for an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for such orderly transfer. Client agrees to pay for such services in accordance with DRC's then existing fees for such services. If termination of this Agreement occurs following entry of an order by the Bankruptcy Court approving DRC's retention under 28 U.S.C. § 156 (c), then the Client shall immediately seek entry of an order (in form and substance reasonably acceptable to DRC) that discharges DRC from service and responsibility under this Agreement and 28 U.S.C. § 156 (c).

**10. TERMS OF AGREEMENT**: The terms of this Agreement prevail over any and all terms contained in Client's purchase order or authorization and no waiver, discharge, or modification of the terms of this Agreement shall bind DRC unless in writing and signed by an authorized representative of DRC.

**11. INDEMNIFICATION**: The Client shall indemnify and hold DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs, obligations, judgments, causes of action, charges (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), arising out of or relating to (a) this Agreement or DRC's rendering of services pursuant hereto (including any erroneous instructions or information provided to DRC by the Client or the Client Parties for use in providing services under this Agreement), (b) any breach or alleged breach of this Agreement by Client, or (c) any negligence or willful or reckless actions or misconduct of Client or Client Parties with respect to this Agreement, other than Losses resulting solely from DRC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Parties. The Client shall notify DRC in writing promptly of the institution, threat or assertion of any claim of which the Client is aware with respect to the services provided by DRC under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of DRC and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to DRC's liabilities.

**12. CONFIDENTIALITY:** Each of DRC and the Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five (5) business days' written notice to the other party, release the required information.

**13. OWNERSHIP OF PROGRAMS**: Unless otherwise agreed in writing, all programs developed by DRC in connection with any services to be performed under this Agreement shall remain the sole property of DRC. All programs and/or systems documentation in the possession of DRC which DRC has agreed in writing to return to the Client, prepared for the Client by DRC, shall be returned to the Client upon demand providing all charges for such programming and/or systems documentation have been paid in full.

**14. SYSTEMS IMPROVEMENTS:** DRC's policy is to provide continuous improvements in the quality of service to its clients. DRC, therefore, reserves the right to make changes in operating procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the DRC data center serving the Client, so long as any such changes do not materially interfere with ongoing services provided to the Client in connection with the Client's chapter 11 case.

**15. UNUSUAL MEASURES**: Where the Client requires measures that are unusual and beyond the

normal business practice and hours of DRC such as, but not limited to, CPA Audit, Errors and Omissions Insurance, and/or Off-Premises Storage of Data, the cost of such measures, if provided by DRC, shall be charged to the Client. Said charges may be required in advance if DRC deems it appropriate.

**16. JURISDICTION.** In the event that Client commences a case under title 11 of the United States Code, this Agreement shall be subject to approval by the United States Bankruptcy Court for the district in which the Client commences its case (the "Bankruptcy Court") and such court shall retain jurisdiction over all matters regarding this Agreement.

**17. FORCE MAJEURE.** Whenever performance by DRC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reasons of any other matter beyond DRC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**18. NOTICE.** Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery to such courier, as follows: if to DRC, to: Donlin, Recano & Company, Inc., 6201 15th Avenue, Brooklyn, NY 11219, Attention: Nellwyn Voorhies, Esq.; if to the Client, to: G. Alexander Bongartz, Esq., James T. Grogan, Esq., Paul Hastings, LLP, 200 Park Avenue, New York, NY 10166.

**19. GOVERNING LAW.** This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

**20. SEVERABILITY.** All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

**21. ASSIGNMENT.** This Agreement and the rights and obligations of DRC and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.

**22. GENERAL**: The terms and conditions of this Agreement may be modified by DRC upon one (1) month's prior written notice to Client. Client will not employ any DRC employee within two (2) years from the termination of this Agreement. The term "this Agreement" as used herein includes any future written amendments, modifications, supplements or schedules duly executed by Client and DRC. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. A facsimile copy, photocopy or imaged copy of this Agreement shall be considered an original copy. The Client shall file an application

with the Bankruptcy Court seeking approval of this Agreement (the "Application"), the form and substance of which shall be reasonably acceptable to DRC. If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

Accepted and Approved:

Donlin, Recano & Company, Inc.
6201 15th Avenue
Brooklyn, New York 11219

By: ______________________

Signature: ______________________

Title: ______________________

Date: ______________________

Accepted and Approved:

Cred Inc.
Cred (US) LLC
Cred Capital, Inc.
Cred Merchant Solutions LLC
Cred (Puerto Rico) LLC

By: Dan Schatt

Signature: [signature]

Title: CEO

Date: 11/4/20

This Agreement is subject to the terms and conditions set forth herein. Client acknowledges reading and understanding it and agrees to be bound by its terms and conditions and further agrees that it is the complete and exclusive statement of the Agreement between the parties, which supersedes all proposals oral or written and other prior communications between the parties relating to the subject matter of this Agreement.

DONLIN RECANO
An AST Company

**SCHEDULE A**
**Cred Inc.**
**Fee Schedule**

| Professional Service | Hourly Rates |
|---|---|
| Executive Management | No charge |
| Senior Bankruptcy Consultant | $175 - $205 |
| Case Manager | $160 - $175 |
| Consultant/Analyst | $130- $155 |
| Technology/Programming Consultant | $95 - $120 |
| Clerical | $35 - $45 |
| **Noticing Service** | |
| Laser Printing/ Photocopies | $.10 per Image |
| Personalization/ Labels | WAIVED |
| Fax (Incoming) | WAIVED |
| Fax Noticing | $.08 per Page |
| Postage and Overnight Delivery | At Cost |
| Electronic Noticing | WAIVED |
| Publication Services | At Cost |
| **Solicitation, Balloting, Schedule/SOFA** | |
| Print and Mail Ballots/Plan Disbursements | Print/hourly fees above – Plan/DS media varies |
| Set-up Tabulation & Vote Verification | $90 - $195 as needed |
| Public Securities Solicitation | $90 - $225 per Hour |
| Schedule/SOFA preparation | $90 - $225 per Hour |
| **Claims Docketing and Management** | |
| Website Development | WAIVED |
| Web Hosting | WAIVED |
| Creditor Data Storage/ Electronic Document Storage | $.08 per record monthly |
| Document Imaging | $.08 per Image |
| Electronic Claims filing | No Set-up charge or per claim charge |
| **Data Room Services** | |
| DRC DocuLinks™ Virtual Data Room Services | Hosting WAIVED |
| Data Room Development | $90 per Hour |
| **Miscellaneous** | |
| Escrow Agent Services | Competitive Interest Rates |
| Out-of-Pocket Expenses (including any required travel) | At Cost |
| Call Center Operators | $65 per hour |

# EXHIBIT C

## OUTSTANDING INVOICE

## RELATING TO ADMINISTRATIVE CLAIM

**DONLIN RECANO**
**An AST Company**

Tel: 212.481.1411
Fax: 212.481.1416
www.donlinrecano.com

May 07, 2021

Scott Wiley
Chief Financial Officer
Cred, Inc.

**Re: Cred, Inc.**

Mr. Wiley:

Enclosed please find our **Invoice #1467-6** in the amount of $22,086.38 for services rendered to Cred Inc., et al. during April, 2021 in connection with its Chapter 11 filing.

This invoice includes the cost for performing 7 services to approximately 8,936 parties in interest via First Class mail and Email. A chart of all mailings is included for your information.

You may make your check payable to Donlin, Recano & Company, Inc. and forward it to the address below or, if you prefer, you may wire payment as per the following instructions:

| | |
|---|---|
| Account #: | 590872834 |
| Account Name: | Donlin, Recano & Company, Inc. |
| Bank Name: | HSBC Bank USA |
| ABA #: | 021 001 088 |

Feel free to call if you have any questions or are in need of further information. Best regards.

Sincerely,

Nellwyn Voorhies
President

Enclosures
1467

cc: G. Alexander Bongartz, Esq.
James T. Grogan, Esq.
Paul Hastings, LLP
200 Park Avenue
New York, NY 10166

email: alexbongartz@paulhastings.com scott@mycred.io

**Cred Inc., et al.**
**Mailings for - April, 2021**

| Item # | Date | Description | Mailing # | Total | First Class | USPS | FedEx | Email | Fax |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Apr-05 | Fourth Monthly Fee Statement by Sonoran Capital Advisors LLC for Compensation Earned and Expenses Incurred for the Period March 1, 2021 Through and Including March 31, 2021 (Docket No. 697) | 89 | 77 | 11 | 0 | 0 | 66 | 0 |
| 2 | Apr-06 | (Docket 698) Certificate of No Objection Regarding Fourth Monthly Application of Cousins Law LLC for Payment of Compensation and Reimbursement of Expenses for the Period From February 1, 2021 Through February 28, 2021 (No Order Required) | 90 | 81 | 11 | 0 | 0 | 70 | 0 |
| 3 | Apr-14 | Certification of Counsel Regarding Scheduling of Omnibus Hearing Date (Docket No. 705) | 91 | 81 | 11 | 0 | 0 | 70 | 0 |
| 4 | Apr-16 | Fifth Monthly Application of Paul Hastings LLP for Payment of Compensation and Reimbursement of Expenses for the Period from March 1, 2021 through March 31, 2021 (Docket No. 710) Fifth Monthly Application of Cousins Law LLC for Payment of Compensation and Reimbursement of Expenses for the Period from March 1, 2021 through March 31, 2021 (Docket No. 711) Fourth Monthly Application of Donlin, Recano & Company, Inc. for Compensation for Services Rendered and Reimbursement of Expenses as Administrative Advisor to the Debtors for the Period March 1, 2021 through March 31, 2021 (Docket No. 712) | 92 | 81 | 11 | 0 | 0 | 70 | 0 |
| 5 | Apr-20 | Notice of Effective Date (Docket No. 730) | 93 | 8,454 | 1,738 | 0 | 0 | 6,716 | 0 |
| 6 | Apr-21 | DI 735 - CNO re Fourth Monthly Fee Application of MACCO Restructuring Group LLC; DI 736 - CNO re Fourth Monthly Fee Application of Paul Hastigs LLP | 94 | 81 | 11 | 0 | 0 | 70 | 0 |
| 7 | Apr-23 | Monthly Operating Report (Docket No. 743) | 95 | 81 | 11 | 0 | 0 | 70 | 0 |
| | | **Total** | | **8,936** | **1,804** | **0** | **0** | **7,132** | **0** |

**DONLIN, RECANO & COMPANY, INC. ('DRC')**
**Cred Inc., et al.**
**Invoice # 6 - April, 2021**

| | |
|---|---|
| **I. System Usage** | |
| A. Database Storage (April) | |
| (7,442 creditors @ $0.08/creditor) | 595.36 |
| B. Programming | |
| 37.6 hours @ $120.00/hour | 4,512.00 |
| (database updates, downloads to Excel, e-notification miscellaneous tasks, noticing database, noticing files parsing and uploading, programming, reports/exhibits website updates) | |
| C. Electronic Document Storage (April) | |
| (21,559 images @ $0.08/image) | 1,724.72 |
| **SUB TOTAL - System Usage** | **6,832.08** |
| **II. Support Services** | |
| A. Data Entry 2.3 hours @ $45.00/hour | $103.50 |
| (claims, RPOs,etc.) | |
| B. Photocopies | |
| (19,509 pages @ $0.10/page) | 1,950.90 |
| C. Scanning | |
| (582 images @ $0.08/image) | 46.56 |
| D. Labels | |
| Laser Print 85 pages @ $0.10/page | 8.50 |
| E. Administrative Services | |
| 9.0 hours @ $65.00/hour | 585.00 |
| (Call Center) | |
| 30.7 hours @ $45.00/hour | 1,381.50 |
| (case administration, claims processing, claims shipping creditor updates, filing, mail processing, photocopying & mailing RPO processing, scanning) | |
| **SUB TOTAL - Support Services** | **4,075.96** |
| **III. Consulting Fees (See Exhibit A for details)** | |
| 12.7 hours @ $205.00/hour | 2,603.50 |
| 18.9 hours @ $175.00/hour | 3,307.50 |
| 18.6 hours @ $155.00/hour | 2,883.00 |
| **SUB TOTAL - Consulting Fees** | **8,794.00** |
| **IV. Out Of Pocket Expenses** | |
| Pacer | 279.40 |
| Postage | 1,474.38 |
| USPS Pick Up and Delivery | 491.82 |
| Vendor – Translation Services | 138.74 |
| **SUB TOTAL - Out Of Pocket Expenses** | **2,384.34** |
| **TOTAL CHARGES - April, 2021** | **$22,086.38** |

**Exhibits A**

**DONLIN, RECANO & COMPANY, INC. ('DRC')**
**Cred Inc., et al.**
TimeSheets - John Burlacu - April, 2021

**III.CONSULTING FEES**

| DATE | ACTIVITY | HOURS |
|---|---|---|
| 04-01 | Responded to creditor distribution inquiry (0.1). | 0.1 |
| 04-07 | Responded to creditor distribution inquiry (0.1). | 0.1 |
| 04-26 | Reviewed and notarized affidavit of service for mailing no. 94 (0.2). | 0.2 |
| | Total Hours - April, 2021 | **0.4** |
| | Total Charges @ 205.00/hour | **$82.00** |

**Exhibits A**

**DONLIN, RECANO & COMPANY, INC. ('DRC')**
**Cred Inc., et al.**
TimeSheets - Edward Calderon - April, 2021

**III.CONSULTING FEES**

| DATE | ACTIVITY | HOURS |
|---|---|---|
| 04-05 | Directed service of Fourth Monthly Fee Statement by Sonoran Capital Advisors LLC for Compensation Earned and Expenses Incurred for the Period March 1, 2021 Through and Including March 31, 2021 (Docket No. 697). (1.0) Assemble affidavit of service in connection re same. (0.4) Ensured Declaration was accurately scanned/OCRed/filed in DRC database for future reference and forwarded same for filing with USBC (0.3) Coordinated service to ensure accuracy / completeness and ability to testify to same. (0.4) | 2.1 |
| 04-06 | Quality assurance verification for (Docket 698) Certificate of No Objection Regarding Fourth Monthly Application of Cousins Law LLC for Payment of Compensation and Reimbursement of Expenses for the Period From February 1, 2021 Through February 28, 2021 (No Order Required). | 0.2 |
| 04-14 | Directed service of Certification of Counsel Regarding Scheduling of Omnibus Hearing Date (Docket No. 705). (1.0) Assemble affidavit of service in connection re same. (0.4) Ensured Declaration was accurately scanned/OCRed/filed in DRC database for future reference and forwarded same for filing with USBC (0.3) Coordinated service to ensure accuracy / completeness and ability to testify to same. (0.4) | 2.1 |
| 04-16 | Quality assurance verification for Fifth Monthly Application of Paul Hastings LLP for Payment of Compensation and Reimbursement of Expenses for the Period from March 1, 2021 through March 31, 2021 (Docket No. 710); Summary of Fifth Monthly Application of Cousins Law LLC for Payment of Compensation and Reimbursement of Expenses for the Period from March 1, 2021 through March 31, 2021 (Docket No. 711); Fourth Monthly Application of Donlin, Recano & Company, Inc. for Compensation for Services Rendered and Reimbursement of Expenses as Administrative Advisor to the Debtors for the Period March 1, 2021 through March 31, 2021 (Docket No. 712). . | 0.4 |
| 04-20 | Quality assurance verification for Notice of Effective Date (Docket No. 730). | 0.4 |
| 04-21 | Quality assurance verification for DI 735 - CNO re Fourth Monthly Fee Application of MACCO Restructuring Group LLC; DI 736 - CNO re Fourth Monthly Fee Application of Paul Hastings LLP. | 0.3 |
| 04-23 | Quality assurance verification for Monthly Operating Report (Docket No. 665). | 0.3 |
| | Total Hours - April, 2021 | **5.8** |
| | Total Charges @ 205.00/hour | **$1,189.00** |

**Exhibits A**

**DONLIN, RECANO & COMPANY, INC. ('DRC')**
**Cred Inc., et al.**
TimeSheets - Andrew Logan - April, 2021

**III.CONSULTING FEES**

| DATE | ACTIVITY | HOURS |
|---|---|---|
| 04-08 | Attend to filing of electronic correspondences (0.1). | 0.1 |
| 04-08 | Review court docket re necessity of case website updates (0.2). | 0.2 |
| 04-09 | Follow up on DRC's termination and re-direction of case website (0.4). | 0.4 |
| 04-14 | Review court docket re necessity of case website updates (0.2). | 0.2 |
| 04-15 | Attend to update to case website with omnibus hearing information (0.1). | 0.1 |
| 04-16 | Supervise and verify 80 edits to claim database. | 0.4 |
| 04-19 | Attend to update to case website with hearing agenda (0.1). | 0.1 |
| 04-19 | Attend to update to case website with effective date and notice thereof, administrative expense claims, rejection damages claims and professional fee claims bar dates and proofing of same (0.4). | 0.4 |
| 04-21 | Review court docket re necessity of case website updates (0.1). | 0.1 |
| 04-30 | Attend to update to case website with scheduled hearing information and hearing agenda (0.2). | 0.2 |
| 04-30 | Supervise and verify 22 edits to claim database. | 0.1 |
| | Total Hours - April, 2021 | **2.3** |
| | Total Charges @ 205.00/hour | **$471.50** |

**Exhibits A**

**DONLIN, RECANO & COMPANY, INC. ('DRC')**
**Cred Inc., et al.**
TimeSheets - Roland Tomforde - April, 2021

**III.CONSULTING FEES**

| DATE | ACTIVITY | HOURS |
|---|---|---|
| 04-05 | Supervise AOS filing and verify accuracy regarding mailing #89 | 0.1 |
| 04-06 | Supervise AOS filing and verify accuracy regarding mailing #90 | 0.1 |
| 04-08 | Generated case cost estimate in anticipation of effective date | 0.4 |
| 04-09 | Generate, review and verify accuracy of weekly mailings activity and print services | 0.6 |
| 04-09 | Supervise and validate incoming overnight packages for processing. | 0.2 |
| 04-14 | Supervise AOS filing and verify accuracy regarding mailing #91 | 0.1 |
| 04-15 | Supervise and validate incoming overnight packages for processing. | 0.2 |
| 04-16 | Supervise and verify 18 edits to creditor database. | 0.1 |
| 04-16 | Generate, review and verify accuracy of weekly mailings activity and print services | 0.6 |
| 04-16 | Supervise AOS filing and verify accuracy regarding mailing #92 | 0.1 |
| 04-19 | Supervise and validate incoming overnight packages for processing. | 0.2 |
| 04-20 | Supervise AOS filing and verify accuracy regarding mailing #93 | 0.1 |
| 04-21 | Supervise AOS filing and verify accuracy regarding mailing #94 | 0.1 |
| 04-23 | Generate, review and verify accuracy of weekly mailings activity and print services | 0.9 |
| 04-23 | Supervise AOS filing and verify accuracy regarding mailing #95 | 0.1 |
| 04-30 | Supervise and verify 69 edits to creditor database. | 0.3 |
| | Total Hours - April, 2021 | **4.2** |
| | Total Charges @ 205.00/hour | **$861.00** |

**Exhibits A**

**DONLIN, RECANO & COMPANY, INC. ('DRC')**
**Cred Inc., et al.**
TimeSheets - Calvin Dickson - April, 2021

**III.CONSULTING FEES**

| DATE | ACTIVITY | | HOURS |
|---|---|---|---|
| 04-01 | Responded to creditor inquiries re status of claims. | | 0.3 |
| 04-14 | Responded to creditor inquires re status of claims. | | 0.3 |
| 04-15 | Responded to creditor inquiries re status of claims. | | 0.3 |
| 04-29 | Responded to creditor inquiries re status of claims. | | 0.4 |
| | | Total Hours - April, 2021 | **1.3** |
| | | Total Charges @ 175.00/hour | **$227.50** |

**Exhibits A**

**DONLIN, RECANO & COMPANY, INC. ('DRC')**
**Cred Inc., et al.**
TimeSheets - Sung Kim - April, 2021

**III.CONSULTING FEES**

| DATE | ACTIVITY | HOURS |
|---|---|---|
| 04-07 | Ensure notary of affidavits of service for mailing nos. 89 and 90 (0.4). | 0.4 |
| 04-19 | Ensure notary of affidavit of service for mailing no. 92 (0.2). | 0.2 |
| 04-20 | Ensure notary of affidavit of service for mailing no. 91 (0.2). | 0.2 |
| 04-21 | Directed service of Certificate of No Objection re Fourth Monthly Fee Application of MACCO Restructuring Group LLC; and Certificate of No Objection re Fourth Monthly Fee Application of Paul Hastings LLP to ensure accuracy/completeness and ability to testify to same if required (1.4). Drafted affidavit of service re same (0.4). Assemble affidavit of service in connection re same (0.2). E-filed affidavit of service in connection with same (0.2). | 2.2 |
| 04-22 | Ensure notary of affidavit of service for mailing no. 93 (0.2). | 0.2 |
| 04-26 | Ensure notary of affidavit of service for mailing no. 95 (0.2). | 0.2 |
| | Total Hours - April, 2021 | **3.4** |
| | Total Charges @ 175.00/hour | **$595.00** |

**Exhibits A**

**DONLIN, RECANO & COMPANY, INC. ('DRC')**
**Cred Inc., et al.**
TimeSheets - Rommel Mapa - April, 2021

**III.CONSULTING FEES**

| DATE | ACTIVITY | HOURS |
|---|---|---|
| 04-01 | Verified email containing newly filed claims. | 0.1 |
| 04-09 | Attend to issue re status of claim processing. | 0.1 |
| 04-09 | Reviewed latest docket entries to update files. | 0.2 |
| 04-15 | Verified email of newly filed claims. | 0.2 |
| 04-20 | Reviewed Notice of Effective Date. | 0.2 |
| 04-21 | Researched/responded to creditor inquiries | 0.5 |
| 04-26 | Researched/responded to creditor inquiries | 0.2 |
| 04-29 | Attend to issue re responses to creditor inquiries | 0.1 |
| 04-30 | Ensured accuracy of scanning report | 0.1 |
| | Total Hours - April, 2021 | **1.7** |
| | Total Charges @ 175.00/hour | **$297.50** |

**Exhibits A**

**DONLIN, RECANO & COMPANY, INC. ('DRC')**
**Cred Inc., et al.**
TimeSheets - Winnie Yeung - April, 2021

**III.CONSULTING FEES**

| DATE | ACTIVITY | HOURS |
|---|---|---|
| 04-01 | Reviewed email notification of newly filed claims. | 0.3 |
| 04-02 | Reviewed claims register in excel format and matched scheduled claims to corresponding filed claims (0.8). Updated database as required re amended claims (0.2). | 1.0 |
| 04-09 | Reviewed claims register in excel format and matched scheduled claims to corresponding filed claims. | 0.7 |
| 04-09 | Followed up with J. Grogan and M. Wilson of Paul Hastings re request for creditor matrix, filed/scheduled claims register and Core/2002 List from J. Demma of Stretto (0.2). Attended to open issues re website Re-Direct to Stretto from T. Vandell of Stretto (0.3). | 0.5 |
| 04-09 | Prepared instructions to transfer/upload Customers' data from DRC website to claims database for electronically filed claims. | 0.4 |
| 04-09 | Prepared instructions to upload address information for Customers requested hard copy service (0.2). Researched/verified creditor records updated (0.2). | 0.4 |
| 04-12 | Reviewed claims register in excel format and matched scheduled claims to corresponding filed claims (0.4). Updated database as required (0.3). | 0.7 |
| 04-12 | Followed up with J. Demma of Stretto re request for data files in excel format. | 0.2 |
| 04-20 | Followed up with M. Wilson of Paul Hastings LLP re service of Notice of Effective Date (0.2). Prepared mailing instructions re service of Notice of Effective Date upon all creditors and parties on master service list via email and first class mail (1.5). Proofed mailing files and followed up re same (0.5). Researched/updated creditor records and attended to open service issues (1.1). | 3.3 |
| 04-20 | Reviewed claims register in excel format and matched scheduled claims to corresponding filed claims. | 0.5 |
| 04-21 | Reviewed exhibit pages to be included in Affidavit of Service (0.7). Researched/updated database as required re redaction flags for Customers (0.4). Prepared excel file and instructions to update creditor information for Customers with same CINs (0.8). | 1.9 |
| 04-22 | Prepared final .pdf file of AOS for Notice of Effective Date Docket No. 730 (0.8). Followed up re court filing (0.2). | 1.0 |
| 04-27 | Prepared/posted current Master Service List in .xls and word format on client website. | 0.5 |
| 04-27 | Followed up re motion to terminate Donlin's services. | 0.2 |
| 04-29 | Prepared instructions to create excel file containing all creditor records (0.3). Reviewed/emailed requested file to J. Demma of Stretto (0.4). | 0.7 |
| 04-29 | Followed up with G. Steinman of McDermott Will & Emery LLP re posting Trust Letter on case website. | 0.2 |
| | Total Hours - April, 2021 | **12.5** |
| | Total Charges @ 175.00/hour | **$2,187.50** |

**Exhibits A**

**DONLIN, RECANO & COMPANY, INC. ('DRC')**
**Cred Inc., et al.**
TimeSheets - Tina Carr - April, 2021

**III.CONSULTING FEES**

| DATE | ACTIVITY | HOURS |
|---|---|---|
| 04-02 | Responded to creditors E-mail correspondence. | 0.4 |
| 04-15 | Researched/responded to creditor inquiries | 0.3 |
| 04-21 | Researched/responded to creditor inquiries | 0.3 |
| | Total Hours - April, 2021 | **1.0** |
| | Total Charges @ 155.00/hour | **$155.00** |

**Exhibits A**

**DONLIN, RECANO & COMPANY, INC. ('DRC')**
**Cred Inc., et al.**
TimeSheets - Robin Charles - April, 2021

**III.CONSULTING FEES**

| DATE | ACTIVITY | HOURS |
|---|---|---|
| 04-09 | Answered creditors' inquires (0.3) | 0.3 |
| 04-23 | Answered creditor inquires (0.7) | 0.7 |
| | Total Hours - April, 2021 | **1.0** |
| | Total Charges @ 155.00/hour | **$155.00** |

**Exhibits A**

**DONLIN, RECANO & COMPANY, INC. ('DRC')**
**Cred Inc., et al.**
TimeSheets - Delicia A. Chung - April, 2021

**III.CONSULTING FEES**

| DATE | ACTIVITY | HOURS |
|---|---|---|
| 04-16 | Directed service of Fifth Monthly Application of Paul Hastings LLP for Payment of Compensation and Reimbursement of Expenses for the Period from March 1, 2021 through March 31, 2021 (Docket No. 710); Summary of Fifth Monthly Application of Cousins Law LLC for Payment of Compensation and Reimbursement of Expenses for the Period from March 1, 2021 through March 31, 2021 (Docket No. 711); Fourth Monthly Application of Donlin, Recano & Company, Inc. for Compensation for Services Rendered and Reimbursement of Expenses as Administrative Advisor to the Debtors for the Period March 1, 2021 through March 31, 2021 (Docket No. 712). (1.2) Assemble affidavit of service in connection re same. (0.4) Ensured Declaration was accurately scanned/OCRed/filed in DRC database for future reference and forwarded same for filing with USBC (0.3) Coordinated service to ensure accuracy / completeness and ability to testify to same. (0.4) | 2.3 |
| 04-23 | Directed service of Monthly Operating Report (Docket No. 743). (1.1) Assemble affidavit of service in connection re same. (0.4) Ensured Declaration was accurately scanned/OCRed/filed in DRC database for future reference and forwarded same for filing with USBC (0.3) Coordinated service to ensure accuracy / completeness and ability to testify to same. (0.4) | 2.2 |
| | Total Hours - April, 2021 | **4.5** |
| | Total Charges @ 155.00/hour | **$697.50** |

**Exhibits A**

**DONLIN, RECANO & COMPANY, INC. ('DRC')**
**Cred Inc., et al.**
TimeSheets - Jolly Estrada - April, 2021

**III.CONSULTING FEES**

| DATE | ACTIVITY | HOURS |
|---|---|---|
| 04-01 | Review all recent docket entries for updates | 0.3 |
| 04-02 | Updated/verified website case information. Ensured consistency between DRC and court websites. | 0.3 |
| 04-07 | Filed affidavit of service with the Court. | 0.3 |
| 04-08 | Filed affidavit of service with the Court. | 0.3 |
| 04-08 | Review all recent docket entries for updates | 0.3 |
| 04-09 | Updated/verified website case information. Ensured consistency between DRC and court websites. | 0.3 |
| 04-12 | Updated/verified website case information. Ensured consistency between DRC and court websites. | 0.3 |
| 04-12 | Review all recent docket entries for updates | 0.3 |
| 04-13 | Review all recent docket entries for updates | 0.3 |
| 04-14 | Review all recent docket entries for updates | 0.3 |
| 04-14 | Updated/verified website case information. Ensured consistency between DRC and court websites. | 0.3 |
| 04-15 | Review all recent docket entries for updates | 0.3 |
| 04-16 | Updated/verified website case information. Ensured consistency between DRC and court websites. | 0.3 |
| 04-19 | Filed affidavit of service with the Court. | 0.3 |
| 04-19 | Review all recent docket entries for updates | 0.3 |
| 04-20 | Review all recent docket entries for updates | 0.3 |
| 04-21 | Filed affidavit of service with the Court. | 0.3 |
| 04-21 | Review all recent docket entries for updates | 0.3 |
| 04-21 | Updated/verified website case information. Ensured consistency between DRC and court websites. | 0.3 |
| 04-22 | Review all recent docket entries for updates | 0.3 |
| 04-22 | Updated/verified website case information. Ensured consistency between DRC and court websites. | 0.3 |
| 04-22 | Prepared files for update of creditor data. Updated/verified the website case information data in light of NOA's. | 0.4 |
| 04-22 | Filed affidavit of service with the Court. | 0.3 |
| 04-23 | Review all recent docket entries for updates | 0.3 |
| 04-23 | Updated/verified website case information. Ensured consistency between DRC and court websites. | 0.3 |
| 04-26 | Review all recent docket entries for updates | 0.3 |
| 04-26 | Filed affidavit of service with the Court. | 0.3 |
| 04-26 | Updated/verified website case information. Ensured consistency between DRC and court websites. | 0.3 |
| 04-27 | Review all recent docket entries for updates | 0.3 |
| 04-29 | Updated/verified website case information. Ensured consistency between DRC and court websites. | 0.3 |
| 04-30 | Review all recent docket entries for updates | 0.3 |
| | Total Hours - April, 2021 | **9.4** |
| | Total Charges @ 155.00/hour | **$1,457.00** |

**Exhibits A**

**DONLIN, RECANO & COMPANY, INC. ('DRC')**
**Cred Inc., et al.**
TimeSheets - Lillian Jordan - April, 2021

**III.CONSULTING FEES**

| DATE | ACTIVITY | HOURS |
|---|---|---|
| 04-05 | Responded to creditor inquiries (Call Center). | 0.3 |
| | Total Hours - April, 2021 | **0.3** |
| | Total Charges @ 155.00/hour | **$46.50** |

**Exhibits A**

**DONLIN, RECANO & COMPANY, INC. ('DRC')**
**Cred Inc., et al.**
TimeSheets - Roderick Wong - April, 2021

**III.CONSULTING FEES**

| DATE | ACTIVITY | HOURS |
|---|---|---|
| 04-06 | Quality assurance verification for Mailing number 88.(.1) | 0.1 |
| 04-06 | Directed service of (Docket No. 698) Certificate of No Objection Regarding Fourth Monthly Application of Cousins Law LLC for Payment of Compensation and Reimbursement of Expenses for the Period From February 1, 2021 Through February 28, 2021 (No Order Required). (1.0) Assemble affidavit of service in connection re same. (0.3) Ensured Declaration was accurately scanned/OCRed/filed in DRC database for future reference and forwarded same for filing with USBC (0.4) Coordinated service to ensure accuracy / completeness and ability to testify to same. (0.3) | 2.0 |
| 04-13 | Quality assurance verification for Mailing number 90, 89.(.1) | 0.1 |
| 04-20 | Quality assurance verification for Mailing number 91.(.1) | 0.1 |
| 04-27 | Quality assurance verification for Mailing number 94, 93, 95.(.1) | 0.1 |
| | Total Hours - April, 2021 | **2.4** |
| | Total Charges @ 155.00/hour | **$372.00** |



DONLIN RECANO
An AST Company

Tel: 212.771.1126
Fax: 212.481.1416
www.donlinrecano.com

FILED
2021 MAY 12 AM 11:55
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

May 11, 2021

Office of the Clerk
United States Bankruptcy Court
District of Delaware
824 North Market Street, 3rd Floor
Wilmington, DE 19801

**Re: Cred Inc., et al. – Case No. 20-12836 (JTD)**

Dear Clerk of Court:

Please find enclosed for filing on the in the above referenced case, a *Request For Payment Of Administrative Expense Claim Of Donlin, Recano & Company, Inc.* We would appreciate if you would file the enclosed on the court docket on our behalf and return a filed stamped copy to our attention in the enclosed returned self-addressed federal express envelope. Please note that we are not requesting a hearing date or time at this time for this pleading.

Should you have any questions, please do not hesitate to contact me directly at 203-895-6525.

Sincerely

/s/ Andrew Logan
Andrew Logan
Senior Managing Director

Enclosures