## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 20-12836 (JTD) |
| CRED INC., *et al.*,[1] | (Jointly Administered) |
| Debtors. | **Obj. Deadline: June 3, 2021 at 4:00 p.m. (ET)** |
| | **Hearing Date: June 17, 2021 at 2:00 p.m. (ET)** |

### MOTION OF ROBERT J. STARK, EXAMINER, FOR ENTRY OF ORDER (I) DISCHARGING EXAMINER; (II) INCREASING FINAL BUDGET FOR INVESTIGATION; (III) GRANTING RELIEF FROM THIRD-PARTY DISCOVERY; (IV) APPROVING THE DISPOSITION OF DOCUMENTS AND INFORMATION; AND (V) GRANTING RELATED RELIEF

Robert J. Stark, in his capacity as the Court-appointed examiner (the "**Examiner**") in the above-captioned Chapter 11 cases of Cred, Inc. and its affiliated debtors and debtors-in-possession (collectively, "**Cred**" or the "**Debtors**"), by and through his undersigned counsel, files this motion (the "**Motion**") seeking entry of an order, substantially in the form attached hereto as **Exhibit A**: (i) discharging the Examiner; (ii) increasing the final budget for the Investigation (defined below); (iii) granting the Examiner and his Professionals (defined below) relief from third-party discovery; (iv) authorizing the disposition of documents and information related to the Investigation; and (v) granting certain related relief, including exculpating the Examiner and his Professionals in connection with the Investigation and the Examiner Report (each as defined below).  In support of this Motion, the Examiner states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

## PRELIMINARY STATEMENT

1.      On March 8, 2021, the Examiner filed his report containing his findings and conclusions respecting Cred, its business and operations, certain key personnel, and the precise events precipitating its bankruptcy.   The report was the product of an intensive 8-week investigation that included analyzing voluminous documentary evidence (e.g., 55 gigabytes of data, 13,000 unique documents) and conducting interviews of nearly two dozen witnesses (with some witnesses interviewed more than once).   The Examiner's goal was to collect and analyze the available evidence, provide an objective view of the pertinent facts, and enable the Court and all stakeholders to better understand why Cred failed and who might be responsible for such failure.   Responding to concerns raised by stakeholders, the Examiner endeavored to complete the investigation and file his report within a condensed 8-week timeframe so as to prevent potential delay (and attendant cost) in the administration of the case.

2.      The investigation was challenging.   It involved serious allegations of misconduct (and, potentially, fraud); a host of complex factual and legal issues; a highly sophisticated yet still emerging and evolving area of commerce (i.e., cryptocurrency); many millions in assets and transactions; complex (and, at times, opaque) investment strategies; substantial cross-border dealings (including, specifically in China); failed (and allegedly fraudulent) investments; comingling of assets; insider transactions; and other challenging (and technical) attributes. Matters were further complicated by certain extraordinary issues that came to light and events that transpired during the investigative process.   In short, the Examiner and his professionals had to (i) conduct a thorough investigation into a broad array of (at times, complex) issues; (ii) collect, analyze, and synthesize a significant amount of information; (iii) prepare and submit detailed findings; and (iv) do so within only 8 weeks.

3.      Despite these challenges, the Examiner and his professionals timely delivered a fulsome report that provided "great information" for the Court and "everybody else involved in this case." *See* March 11, 2021 Hr'g Tr. at 33:21-25 (Court: "[B]efore I hung up, I was going to give my thanks to Mr. Stark and his team … for the great work you did on that report.  It was excellent, done in a very short period of time, provided great information for me, and I'm sure for everybody else involved in this case.  So, I appreciate the effort and the amount of work that went into that over a very short period of time.").[2]

4.      At the confirmation hearing in respect of Cred's Chapter 11 plan, counsel to the Examiner informed the Court that the Examiner intended to file a motion seeking, among other things, a discharge and exculpation of the Examiner and his professionals.  This is that motion. Through this motion, the Examiner seeks entry of an Order:

(i)      finding that the Examiner has satisfied his obligations under the Examination Order (defined below) and discharging the Examiner;

(ii)     increasing the final budget for the investigation to an amount up to approximately $1.76 million[3] (with the allowance of any fees and expenses of the Examiner and his professionals subject to final approval by the Court);

(iii)    granting the Examiner and his professionals relief from third-party discovery;

(iv)     authorizing the disposition of documents and information related to the investigation; and

(v)      granting the Examiner certain related relief, including exculpating the Examiner and his professionals in connection with the investigation and the report.

5.      As set forth herein, the relief requested in this Motion respecting discharge and exculpation, relief from third-party discovery, and the disposition of the investigative record is customary and substantially similar to relief granted to examiners in other bankruptcy cases,

---

[2]      A copy of the March 11, 2021 hearing transcript is attached hereto as **Exhibit B**.

[3]      The Examiner reserves the right to supplement this amount to include fees and expenses incurred post-effective date in connection with any hearings on this Motion and the Examiner's and his professionals' final fee applications.

including cases before this Court. Respecting the request to increase the investigation budget, the Examiner submits that such increase is warranted under the circumstances.

6. First, the investigation and report provided a definite and material benefit to the estates. They provided the Court and all stakeholders with an objective assessment of Cred's business, operations, and the circumstances of its bankruptcy, and thereby instilled confidence in the Chapter 11 process. Further, the Examiner's report contains detailed findings (supported by documentary evidence) that may give rise to potential claims and causes of action inuring to the benefit of the estates. Additionally, the investigation addressed certain key issues that, as the Debtors stated at the confirmation hearing, were "very pertinent" to confirmation of Cred's Chapter 11 plan (e.g., the Debtors' books and records and the appropriateness of substantive consolidation, the plan releases). At the confirmation hearing, both the Debtors (in their presentation) and the Court (in its ruling confirming the plan) cited the Examiner's report extensively. *See In re Cred Inc., et al.*, Mar. 11, 2021 Hr'g Tr. at 12:1-8, 12:23-13:10, 14:3-15, 16:1-8, 22:13-23, 23:11-16, 24:14-21, 29:1-10, 29:17-22.

7. Second, as set forth above and herein, the scope of the investigation encompassed myriad complex issues and the analysis of substantial information. The extent and complexity of certain issues (e.g., the condition of Cred's books and records, comingling of assets, Cred's hedging strategy, issues respecting Mr. James Alexander) did not become known to the Examiner until well into the investigatory process. Moreover, the Examiner agreed to add certain issues to the scope of the already underway investigation (e.g., the plan releases) at the urging of multiple parties in interest.

8. Third, in response to input from case constituents, the Examiner committed to completing the investigation and submitting his report within a very short time period (8 weeks)

so as to not delay consideration of Cred's Chapter 11 plan and avoid potential incremental administrative costs.

9.      Finally, the Examiner and his Professionals endeavored to minimize the fees and costs associated with the Investigation.  The Examiner coordinated with the Committee and the Debtors regarding the investigation to avoid duplication of effort and costs.  The Examiner notes that, if not for his appointment, the investigation work would likely have been performed at the expense of the estates by the Committee, the Debtors, and/or the liquidation trustee.  The Examiner and the senior members of the investigation team judiciously focused their time and effort on only the most critical aspects of the investigation, and delegated the more time-intensive work (e.g., document review, legal and factual research) to attorneys with lower rates. In this respect, it bears observing that the Examiner himself did not bill for all of his time on the engagement, and the time that he did bill was focused on issues that would most concretely benefit the estates (i.e., determining the focus and scope of the investigation and preparing the final report).

10.     Prior to filing this Motion, the Examiner shared a draft of same with counsel to the Debtors, counsel to the Liquidation Trust (and counsel to the since-dissolved Official Committee of Unsecured Creditors), and the Office of the United States Trustee.

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

11.     The United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the

meaning of 28 U.S.C. § 157(b)(2).[4]  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408

and 1409.  The statutory predicates for the relief sought herein are Bankruptcy Code Sections

105(a) and 1106(b).

**RELEVANT FACTUAL BACKGROUND**

**A.**    **General Case Background.**

12.    On November 7, 2020 (the "**Petition Date**"), each of the Debtors commenced

Chapter 11 cases by filing voluntary petitions for relief under Chapter 11 of title 11 of the United

States Code (the "**Bankruptcy Code**") in the Bankruptcy Court.

13.    On December 3, 2020, the Office of the United States Trustee for the District of

Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the

"**Committee**") in the Debtors' Chapter 11 cases.  *See* ECF No. 120.

**B.**    **Examination Order.**

14.    On December 4, 2020, the U.S. Trustee filed its *Motion for Entry of an Order

Directing the Appointment of a Trustee, or in the Alternative, (I) Directing the Appointment of an

Examiner, or (II) Converting the Cases to Chapter 7 Cases* [ECF No. 133] (the "**Examiner

Motion**").  On December 18, 2020, the Court conducted a hearing with respect to the Examiner

Motion.

15.    On December 23, 2020, the Court entered its *Order Denying in Part, and

Granting in Part, the Trustee/Examiner Motions* [ECF No. 281] (the "**Examination Order**"),

pursuant to which the Court granted the U.S. Trustee's request for the appointment of an

examiner pursuant to Bankruptcy Code Section 1104(c).  *See* Examination Order ¶ 2.

---

[4]    In accordance with Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Examiner confirms his consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent such consent, cannot enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

16.     The Examination Order provided, among other things, that the Examiner would investigate any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the Debtors of or by current or former management of the Debtors, and otherwise perform the duties of an examiner set forth in Bankruptcy Code Sections 1106(a)(3) and 1106(a)(4) (the "**Investigation**").  *See* Examination Order ¶ 4.

17.     The Examination Order further required the Examiner to file a proposed work plan and budget in respect of the Investigation within 7 business days of appointment.  *See* Examination Order ¶ 14.

**C.     Appointment of Examiner; Submission of Work Plan.**

18.     On January 7, 2021, the U.S. Trustee filed its motion to approve the appointment of Robert J. Stark, as Examiner [ECF No. 330], which the Court granted on January 8, 2021 [ECF No. 338].

19.     On January 20, 2021, the Examiner timely filed his proposed work plan in respect of the Investigation [ECF No. 376] (the "**Initial Work Plan**"), which the Court approved on January 28, 2021 [ECF No. 431] (the "**Initial Work Plan Order**").  The Examiner subsequently submitted an amendment to the work plan [ECF No. 552] (the "**Work Plan Amendment**"), which amendment was approved by the Court on March 9, 2021 [ECF No. 613] ("**Work Plan Amendment Order**").  The Work Plan identified the below specific topics for the Investigation:

(a)     the Debtors' business and operations prior to the Petition Date, including allegations of insider transactions and comingling of corporate and client accounts;

(b)     the facts, circumstances, decisions, and events surrounding the substantial losses experienced by the Debtors prior to the Petition Date, including in connection with the liquidation of certain hedge positions;

(c)     the facts, circumstances, decisions, and events surrounding the Debtors' relationship and dealings with moKredit, including any investments made in, and/or outstanding debts owed by, moKredit;

(d)     equity sponsor Lu Hua's transfer of certain cryptocurrency to the Debtors prior to the Petition Date and the nature of such transaction(s);

(e)     the facts, circumstances, decisions, and events surrounding the Debtors' purported QuantCoin investment and the losses associated therewith; and

(f)     the facts, circumstances, decisions, and events surrounding the Debtors' dealings with James Alexander.

20.     The Work Plan also provided that the Examiner intended to prepare and file a report at the conclusion of the Investigation in accordance with Bankruptcy Code Section 1106(b).  As discussed further below, following discussions with and input from the Debtors and the Committee, the Examiner determined to complete the Investigation and file the Examiner Report prior to the confirmation hearing in respect of the Debtors' proposed Chapter 11 plan.

21.     The Initial Work Plan provided for an initial proposed budget of $800,000 for the Investigation.  *See* Initial Work Plan ¶ 11(iii).  Given that, at the time that the Initial Work Plan was submitted, the Examiner did not yet know, among other things, the volume and complexity of the information and issues relevant to the Investigation, and that the Debtors' books and records were in such a state of disarray, the Initial Work Plan and the order approving the same reserved the Examiner's right to seek modifications to the proposed budget.  *See* Initial Work Plan ¶¶ 11(iii), 13; Initial Work Plan Order ¶ 2.

22.     In order to assist the Examiner in the discharge of his duties, the Examination Order permitted the Examiner to retain counsel and other professionals in respect of the Investigation, subject to Court approval.  *See* Examination Order ¶ 11.  In connection with the Investigation, the Examiner retained Brown Rudnick LLP and Ashby & Geddes, P.A. as counsel,

and Ankura Consulting Group, LLC, as financial advisors (collectively, the "**Professionals**"), which retentions were approved by the Court.  *See* ECF Nos. 517, 518, 630.

23.     In connection with its retention of Ankura, the Examiner filed the Work Plan Amendment, pursuant to which, among other things, the Examiner sought to increase the Investigation budget to $925,000.  The Work Plan Amendment was approved by Order of this Court, and, as with the Initial Work Plan, both the Work Plan Amendment and the order approving the same reserved the Examiner's right to seek further modifications to the proposed budget if appropriate.  *See* Work Plan Amendment ¶¶ 11, 12; Work Plan Amendment Order ¶ 2.

**D.     The Examiner's Investigation.**

24.     At the outset of the Investigation, the Examiner promptly met and conferred with key stakeholders (including the Debtors, the Committee, and the U.S. Trustee) to understand their views respecting the scope and timing for the Investigation.  Following these discussions, the Examiner developed the Initial Work Plan described above and determined to complete the Investigation by the first week of March—i.e., within only 8 weeks of his appointment—so as to not delay consideration of the Debtors' proposed Chapter 11 plan.

25.     The Examiner attempted to balance these significant time constraints against the need to conduct as fulsome and thorough of an Investigation as practicable under the circumstances, providing sufficient information regarding the Investigation topics and otherwise satisfying the requirements of the Examination Order.  During the condensed Investigation period, the Examiner:

  (a)  collected and analyzed approximately 13,000 documents (55 gigabytes of data) from the Debtors, the Committee, and other parties;

  (b)  interviewed 23 witnesses (some more than once), including (but not limited to) Daniel Schatt (founder, co-owner, director, former CEO), Lu Hua (founder, co-owner, director, former CEO), James Alexander (former Chief Capital Officer), Matthew Foster (Chief Restructuring Officer),

Scott Wiley (interim Chief Financial Officer), Joseph Podulka (former Chief Financial Officer), Daniel Wheeler (former General Counsel), and Daniyal Inamullah (former Vice President of Capital Markets); and

(c)    drafted and submitted his Report.

26.    Throughout the Investigation period, the Examiner met and conferred with the Debtors, the Committee, the U.S. Trustee, and other stakeholders.  In response to these discussions, the Examiner determined to add to the scope of the Investigation issues respecting the estate releases proposed under the Debtors' Chapter 11 plan.

27.    The Examiner also received information from and interviewed additional stakeholders in the case, including the Ad Hoc Committee of Lenders [ECF No. 546], and responded to enquiries from government regulators.

**E.    The Examiner's Report; Confirmation Hearing.**

28.    On March 8, 2021, the Examiner timely filed the *Report of Robert J. Stark, Examiner* [ECF No. 605] (the "**Examiner Report**").  The Examiner Report (which was filed without any redactions) provided a detailed and objective account (supported by documentary evidence and citations) of the facts and circumstances surrounding Cred's collapse.

29.    The confirmation hearing with respect to the Debtors' *Modified First Amended Combined Plan of Liquidation and Disclosure Statement of Cred Inc. and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code* [ECF No. 619] (as may be amended or modified from time to time, the "**Chapter 11 Plan**") went forward on March 11, 2021.

30.    At the confirmation hearing, the Debtors noted that the Examiner Report was "very pertinent" to consideration of the Chapter 11 Plan, and cited the Report to support confirmation, including specifically, in respect of the need for limited substantive consolidation given the state of the Debtors' books and records (which, among other things, would reduce

administrative expenses) and the propriety of the Plan releases.  *See* Mar. 11, 2021 Hr'g Tr. at 12:1-8, 12:23-13:10, 14:3-15, 16:1-8.

31.     At the March 11th hearing, the Bankruptcy Court confirmed the Chapter 11 Plan and thereafter entered its *Order Confirming and Approving on a Final Basis the Modified First Amended Combined Plan of Liquidation and Disclosure Statement of Cred Inc. and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code* [ECF No. 629] (the "**Confirmation Order**").  The Court cited to the Examiner Report numerous times in confirming the Plan, including specifically in determining that limited substantive consolidation and the Plan releases were appropriate.  *See* Mar. 11, 2021 Hr'g Tr. at 22:13-23, 23:11-16, 24:14-21, 29:1-10, 29:17-22.

32.     The Examiner and his Professionals attended the confirmation hearing and made themselves available to the Court and other parties in interest to address any questions or comments in respect of the Examiner Report.   The Court thanked the Examiner and his Professionals for the "great work" they did and the "excellent" report, particularly given the "very short period of time" for the Investigation.  *See* Mar. 11, 2021 Hr'g Tr. at 33:18-25 ("Well, you stole my thunder, Mr. Carty, because … I was going to give my thanks to Mr. Stark and his team, including yourself, for the great work you did on that report. It was excellent, done in a very short period of time, provided great information for me, and I'm sure for everybody else involved in this case.  So, I appreciate the effort and the amount of work that went into that over a very short period of time.").

**F.     The Investigation Documents.**

33.     In connection with the Investigation, the Examiner and his Professionals obtained documents and information from the Debtors, the Committee, and other parties (the

"**Investigative Record**").  As noted, the Investigative Records includes approximately 13,000 documents and 55 gigabytes of data.  In order to minimize costs and the potential for delay, a significant portion of the Investigative Record is located in separate databases maintained by certain of the Debtors' professionals, with the Examiner and his Professionals granted exclusive permission to access and search such databases.

34.    The Examiner Report contains specific references and citations to certain documents within the Investigative Record.  These documents are contained in the *Compendium of Exhibits to Report of Robert J. Stark, Examiner* (the "**Compendium of Exhibits**").  Certain documents cited in the Examiner Report and included in the Compendium of Exhibits are subject to assertions of confidentiality.  The Examiner has filed a sealed (and redacted) form of the Compendium of Exhibits, along with a motion seeking authority to file the Compendium of Exhibits under seal.  *See* ECF Nos. 716, 717, 718.

35.    In connection with the Investigation, the Examiner and his Professionals also created notes, documents, outlines, chronologies, and/or memoranda, including with respect to witness interviews, which information is protected by the attorney-client privilege and/or work product protection (the "**Privileged Materials**").

## RELIEF REQUESTED

36.    Through this Motion, the Examiner seeks entry of an order, substantially in the form attached hereto as **Exhibit A**, (i) discharging the Examiner; (ii) increasing the final budget for the Investigation; (iii) granting the Examiner and his Professionals relief from third-party discovery; (iv) authorizing the disposition of documents and information related to the Investigation; and (v) granting the Examiner certain related relief, including exculpating the Examiner and his Professionals in connection with the Investigation and the Examiner Report.

## BASIS FOR RELIEF

**A.    Discharge of Examiner.**

37.    The Examiner has completed his Investigation and filed the Examiner Report with the Court, thereby satisfying his duties and obligations under the Examination Order. Accordingly, the Examiner requests entry of an Order discharging him from any further obligations under the Examination Order, or any further commitments or representations with respect to his duties as the Examiner.

**B.    Increase in Investigation Budget.**

38.    The Examiner seeks an increase in the Investigation budget to an amount up to approximately $1.76 million.  Contemporaneous with the filing of this Motion, the Examiner and his Professionals have filed their final fee applications.  As set forth in such fee applications, the Examiner and his Professionals incurred aggregate fees and costs of approximately $1.76 million in conducting the Investigation, preparing and filing the Examiner Report, and related issues respecting the Debtors' Chapter 11 cases, broken down as follows[5]:

|     |     |     |
| --- | --- | --- |
| (a) | Brown Rudnick: | $1,564,946.57 |
| (b) | Ashby & Geddes: | $32,150.73 |
| (c) | Ankura: | $160,962.38 |

39.    The Examiner respectfully requests that the final budget for the Investigation be revised to an amount up to $1.76 million, with the allowance of fees and expenses of the Examiner and his Professionals subject to final approval by the Court.

40.    The Examiner submits that the requested increase in the Investigation budget is warranted for the following reasons:

---

[5]    The following amounts reflect fees and expenses incurred through the effective date of the Chapter 11 Plan, as set forth in the applicable final fee applications.  The Examiner and his Professionals reserve their rights to supplement these amounts to include post-effective date fees and expenses incurred.

(i)     <u>Material Benefit to the Estates</u>.  The Investigation and Examiner Report provided an actual, demonstrable, and material benefit to the estates.  First, the Examiner sifted through the "dueling narratives" presented in the case regarding Cred's demise, provided the Court and all stakeholders with a detailed and objective account of the reasons for Cred's bankruptcy, and instilled confidence in the Chapter 11 process.  Second, the Examiner Report and Compendium of Exhibits contain detailed findings (supported by documentary evidence) that may give rise to potential claims and causes of action inuring to the benefit of the estates.  Third, the Examiner investigated issues that were "very pertinent" to the Debtors' Chapter 11 Plan (e.g., potential estate claims and causes of action against certain released parties, the Debtors' books and records and issues implicating substantive consolidation), and the Examiner Report was cited by the Debtors and the Court numerous times regarding these issues in considering confirmation of the Plan.  *See* Mar. 11, 2021 Hr'g Tr. at 12:1-8, 12:23-13:10, 14:3-15, 16:1-8, 22:13-23, 23:11-16, 24:14-21, 29:1-10, 29:17-22.

(ii)    <u>Volume and Complexity of Issues and Information</u>.  As described herein, the Investigation encompassed myriad complex issues and involved the analysis of a significant amount of information (13,000 documents, 55 gigabytes of data), including technical and complex information respecting Cred's investment strategies, and witness interviews (23 witnesses, some interviewed more than once).  The Examiner marshalled and synthesized all of this information and distilled it into a detailed, cohesive, and accessible report.  Further, the complexity of many issues (e.g., the chaotic condition of Cred's books and records, comingling of assets, Cred's hedging strategy, issues respecting Mr. James Alexander) did not become known to the Examiner until well into the investigatory process.  And, the Examiner agreed to add certain issues to the scope of the Investigation (e.g., plan release issues) at the urging of certain parties in interest.

(iii)   <u>Time Constraints</u>.   The Examiner and his Professionals conducted the Investigation under severely compressed time constraints.  After receiving input from the Debtors and Committee, the Examiner committed to completing the Investigation and filing his Report in advance of the early March confirmation hearing, so as to not delay consideration of the Plan and the potential incurrence of additional administrative expenses resulting from delay.

(iv)    <u>Efforts to Minimize Costs</u>.  The Examiner coordinated with the Committee and the Debtors regarding the Investigation to avoid duplication of effort and costs.  If not for the Examiner's appointment, the investigation work performer by the Examiner would likely have been performed at the expense of the estates by the Committee, the Debtors, and/or the liquidation trustee.  The Examiner and his Professionals endeavored to staff the matter in an efficient and effective manner, and minimize fees where practicable.  In this respect, it bears observing that the Examiner himself billed modestly on this matter, and focused his efforts on issues that would provide the most benefit to the estate (i.e., determining the focus and scope of the investigation and preparing the final report).  Meanwhile (and as set

forth more fully in the Examiner's final fee application), work that required the most time commitment (e.g., document review and research) was delegated to attorneys with lower billable rates.

## C.    Relief from Third-Party Discovery.

41.    It is possible that the Examiner may receive requests from third parties for all or portions of the Investigative Record and/or Privileged Materials.[6]  It is also possible that third parties may seek testimony from the Examiner or his Professionals.  As set forth below, the Examiner requests that the Court enter an Order prohibiting and enjoining such third-party discovery.

42.    A Court-appointed examiner "performs his duties at the request of the court, for the benefit of the debtor, its creditors and shareholders, and not to 'fuel the litigation fires of third party litigants.'"  *In re New Century TRS Holdings, Inc.*, 407 B.R. 558, 566 (Bankr. D. Del. 2009) (quoting *In re Baldwin United Corp.*, 46 B.R. 314, 316 (Bankr. S.D. Ohio 1985)).  Thus, absent extraordinary circumstances, an examiner's files should remain confidential.  *See In re Baldwin United Corp.*, 46 B.R. at 317; *New Century TRS Holdings*, 407 B.R. at 566-67 (absent extraordinary circumstances, examiner file should remain confidential and protected from disclosure); *In re FiberMark, Inc.*, 330 B.R. 480, 505 (Bankr. D. Vt. 2005) (examiner materials not filed publicly remain confidential).

43.    Moreover, the Examiner has filed his Report and the accompanying exhibits (subject to a request to seal certain exhibits).  The public may have an interest in the Investigation, but that interest lies in the actual Examiner Report and the conclusions set forth therein, not in the underlying investigative documents.  *See Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank. & Trust Co. of Chi. (In re Ionosphere Clubs)*, 156 B.R. 414, 435 (S.D.N.Y. 1993)

---

[6]    The Examiner has already received an informal request for information from one entity.

(affirming bankruptcy court's denial of request for examination records; the "public interest is in the Report and the Examiner's conclusions, not in the Record upon [sic] the conclusions are based.").  In addition, it would be inequitable for the Examiner to be burdened with the costs of potentially onerous discovery requests.

44.    For these reasons, courts (including this Court) have previously granted substantially similar relief precluding third-party discovery against examiners and their professionals.  *See, e.g., Order Approving Examiner's Motion for Entry of an Order Discharging the Examiner and Granting Related Relief*, in *In Samuels Jewelers, Inc.*, Case No. 18-11818 (KJC) (Bankr. D. Del. May 2, 2019) (a copy of this order is attached hereto as **Exhibit C**); *Order Approving Motion of Court-Appointed Examiner, Kenneth N. Klee, Esq., for Order (I) Discharging Examiner; (II) Granting Relief from Third-Party Discovery; (III) Approving the Disposition of Certain Documents and Information; and (IV) Granting Certain Ancillary Relief*, in *In re Tribune Company, et al.*, Case No. 08-13141 (KJC) (Bankr. D. Del. Aug. 26, 2010) (a copy of this order is attached hereto as **Exhibit D**); *Order (I) Discharging the Examiner; (II) Relieving the Examiner and His Professionals from Discovery Obligations; (III) Approving Disposition of Certain Documents and Information; (IV) Approving Certain Wind Down Tasks of the Examiner and His Professionals; and (V) Granting Related Relief*, in *In re Caesars Entertainment Operating Co., Inc., et al.*, Case No. 15-01145 (ABG) (Bankr. N.D. Ill. July 20, 2016) (a copy of this order is attached hereto as **Exhibit E**); *Order Discharging Examiner and Granting Related Relief*, in *In re Lehman Brothers Holdings, Inc., et al.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. July 13, 2010) (a copy of this order is attached hereto as **Exhibit F**).

45.    Consistent with these cases, the Examiner requests that the Court enter an order providing that the Examiner and his Professionals are not obligated to respond to, object to, or

seek a protective order in respect of any formal or informal discovery request relating to the Examiner Report, the Investigation, the Investigative Record, the Privileged Materials, the Debtors, the Debtors' Chapter cases, or any other documents or information obtained by the Examiner in connection with the Investigation, including, but not limited to, any request for production of documents, requests for admissions, interrogatories, subpoenas *duces tecum*, trial subpoenas, requests for testimony (through subpoena, notice of deposition, request for Bankruptcy Rule 2004 examination, or otherwise), or any other form of discovery (including under Bankruptcy Rule 2004).

**D.** **Disposition of Investigation Documents.**

46. The Examiner and his Professionals request the authority to dispose of all or any portion of the Investigative Record and/or the Privileged Materials that are in their respective possession, custody, or control. As noted above, a complete and unsealed copy of the Examiner Report has already been filed publicly. Copies of all documents in the Investigative Record and which are cited in the Examiner Report (i.e., the unsealed Compendium of Exhibits) have been provided to the Debtors, the Committee, the U.S. Trustee, and the Court and, pursuant to the confirmed Chapter 11 Plan, the Examiner understands that such materials and information have been or will be transferred to the liquidation trust, thereby preserving such information for the benefit of the estates.

47. Following discussions with the U.S. Trustee, the Examiner has agreed to preserve the Investigative Record and Privileged Materials for a period of 2 years following entry of any Order granting this Motion (unless such period is extended by order of this Court for cause, on notice to the Examiner and his Professionals).

E.       **Exculpation of Examiner and Professionals.**

48.      The Examiner requests entry of an Order exculpating the Examiner and his

Professionals in connection with the Investigation and the Examiner Report.  A bankruptcy

examiner "constitutes a court fiduciary and is amenable to no other purpose or interested party."

*See In re Baldwin United Corp.*, 46 B.R. 314,316 (Bankr. S.D. Ohio 1985) (quoting *In re Hamiel*

*& Sons, Inc.*, 20 B.R. 830, 832 (Bankr. S.D. Ohio 1982)).  An examiner serves as a non-

adversarial, "quasi-judicial" officer and "thus is protected by absolute immunity." *See In re*

*Kovalesky v. Carpenter*, 1997 WL 630144, at *4 (S.D.N.Y. Oct. 9, 1997) (an examiner is

"considered a quasi-judicial officer similar to a trustee, receiver, referee, conservator, special

master, magistrate or prosecutor—and thus is protected by absolute immunity."); *Baldwin*

*United*, 46 B.R. at 317 (examiner "is entitled to some immunity from the whirlwind of litigation

commonly attendant to large Chapter 11 cases.").

49.      An exculpation of the Examiner and his Professionals is necessary to avoid

inappropriate, unnecessary, and wasteful collateral litigation regarding the Investigation and the

Examiner Report.  Accordingly, the Examiner requests entry of an Order exculpating the

Examiner and his Professionals and providing that neither the Examiner nor any of his

Professionals shall have or incur any liability for any action, omission, statement, or

representation arising out of, in connection with, or in any way relating to the Investigation, the

Examiner Report, or the Debtors' Chapter 11 cases, subject to standard carve-outs for any act or

omission that is determined, by a final order, to have constituted willful misconduct, fraud, or

gross negligence.

50.      The exculpation requested herein is substantially similar to the exculpation

provisions contained in the Confirmation Order and the Debtors' Chapter 11 Plan.  *See*

Confirmation Order ¶ 24; Chapter 11 Plan § 18.1.  Moreover, similar exculpations have been granted to examiners and their professionals in similar circumstances.  *See, e.g., In Samuels Jewelers, Inc.*, Case No. 18-11818 (KJC) (Bankr. D. Del. May 2, 2019) (**Exhibit C**); *In re Tribune Company, et al.*, Case No. 08-13141 (KJC) (Bankr. D. Del. Aug. 26, 2010) (**Exhibit D**); *In re Caesars Entertainment Operating Co., Inc., et al.*, Case No. 15-01145 (ABG) (Bankr. N.D. Ill. July 20, 2016) (**Exhibit E**); *In re Lehman Brothers Holdings, Inc., et al.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. July 13, 2010) (**Exhibit F**).

## NO PRIOR REQUEST

51.     The Examiner has not previously requested the relief set forth in this Motion.

## RESERVATION OF RIGHTS

52.     The Examiner reserves the right to amend or supplement this Motion prior to any hearing with respect thereto, and to supplement the final amount of the budget for the Investigation to include post-effective date fees and expenses incurred in connection with this Motion and the final fee applications of the Examiner and his professionals.

## NOTICE

53.     Notice of this Motion has been provided to the following parties: (i) counsel to the Debtors; (ii) the Office of the United States Trustee; (iii) counsel to the Committee and Liquidation Trust; and (iv) all parties requesting notice pursuant to Bankruptcy Rule 2002.  The Examiner submits that, in light of the nature of the relief requested, no other or further notice need be given.


*[Remainder of page intentionally left blank.]*

## CONCLUSION

**WHEREAS**, the Examiner respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A**, (i) discharging the Examiner; (ii) increasing the final budget for the Investigation; (iii) granting the Examiner and his Professionals relief from third-party discovery; (iv) authorizing the disposition of documents and information; and (v) granting the Examiner certain related relief, including exculpating the Examiner and his Professionals in connection with the Investigation, the Examiner Report, and the Debtors' Chapter 11 cases.

Dated:  May 14, 2021

**ASHBY & GEDDES, P.A.**

*/s/ Gregory A. Taylor*
Gregory A. Taylor (DE Bar No. 4008)
Katharina Earle (DE Bar No. 6348)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Tel:  (302) 654-1888
Email: gtaylor@ashbygeddes.com
       kearle@ashbygeddes.com

-and-

**BROWN RUDNICK LLP**
Andrew M. Carty (admitted *pro hac vice*)
Michael W. Reining (admitted *pro hac vice*)
Seven Times Square
New York, NY 10036
Tel: (212) 209-4800
Email: acarty@brownrudnick.com
       mreining@brownrudnick.com

*Counsel to Robert J. Stark, Examiner*
