**<u>EXHIBIT B</u>**

```
 1              UNITED STATES BANKRUPTCY COURT
                   DISTRICT OF DELAWARE
 2

 3   IN RE:                      .  Chapter 11
                                 .  Case No.: 20-12836 (JTD)
 4   CRED INC., et al.,          .
                                 .  (Jointly Administered)
 5                               .
                                 .  Courtroom 7
 6            Debtors.           .  824 Market Street
                                 .  Wilmington, Delaware 19801
 7                               .
                                 .  Thursday, March 11, 2021
 8   . . . . . . . . . . . . . .    3:01 p.m.

 9        TRANSCRIPT OF HYBRID TELEPHONIC/VIDEO HEARING
               BEFORE THE HONORABLE JOHN T. DORSEY
10                 UNITED STATES BANKRUPTCY JUDGE

11   APPEARANCES:

12   For the Debtors:          Scott D. Cousins, Esquire
                               COUSINS LAW, LLC
13                             1521 Concord Pike
                               Suite 301
14                             Wilmington, Delaware 19803

15                             -and-

16                             James T. Grogan, Esquire
                               PAUL HASTINGS, LLP
17                             600 Travis Street
                               58th Floor
18                             Houston, Texas 77002

19   (APPEARANCES CONTINUED)

20   Electronically
     Recorded By:              Jason Spencer, ECRO
21
     Transcription Service:    Reliable
22                             1007 N. Orange Street
                               Wilmington, Delaware 19801
23                             Telephone: (302) 654-8080
                               E-Mail:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording:
25   transcript produced by transcription service.
```

1   <u>APPEARANCES (CONTINUED)</u>:

2   For the Debtors:            Irena M. Goldstein, Esquire
                                PAUL HASTINGS, LLP
3                               200 Park Avenue
                                New York, New York 10166

4

5   For the US Trustee:         Timothy J. Fox, Esquire
                                UNITED STATES DEPARTMENT OF JUSTICE
6                               OFFICE OF THE UNITED STATES TRUSTEE
                                J. Caleb Boggs Federal Building
7                               844 King Street
                                Suite 2207, Lockbox 35
8                               Wilmington, Delaware 19801

9

10  For James Alexander:        Mark Pfeiffer, Esquire
                                BUCHANAN INGERSOLL & ROONEY
                                700 Alexander Park
11                              Suite 300
                                Princeton, New Jersey 08540-6347

12

13  For Robert J. Stark:        Andrew M. Carty, Esquire
                                BROWN RUDNICK, LLP
14                              7 Times Square
                                New York, New York 10036

15

16  For the Committee:          Timothy W. Walsh, Esquire
                                MCDERMOTT WILL & EMERY
17                              340 Madison Avenue
                                New York, New York 10173

18

19

20

21

22

23

24

25

1                              <u>INDEX</u>

2  <u>MOTIONS</u>:                                              <u>PAGE</u>

3  Agenda
   Item 1:  Final Confirmation of Joint Plan and Disclosure   3
4            Statement

5            Court's Ruling                              31

6

7                              <u>INDEX</u>

8  <u>EXHIBITS</u>:                                             <u>PAGE</u>

9  1) Voting declaration                                 7

10 2) Declaration of Matthew K. Foster                   7

11 3) Declaration of Grant Lyon                          7

12 Transcriptionist's Certificate                        36

13

14

15

16

17

18

19

20

21

22

23

24

25

1      (Proceedings commenced at 3:01 p.m.)

2              THE COURT:  Good afternoon.

3              Can everyone hear me okay?

4      (No verbal response)

5              THE COURT:  Okay.  This is Judge Dorsey.  We're on

6  the record in Cred, Inc., Case Number 20-12836.

7              I will go ahead and turn it over to debtors'

8  counsel.

9              Can we -- hold on one second.

10      (Pause)

11              THE COURT:  I apologize.  I had to move down to

12  Courtroom Number 7 because my courtroom audio is not working

13  and is being repaired.  So, we're trying to figure out how to

14  do this where I don't look like I'm glowing.

15      (Pause)

16              THE COURT:  We'll just go ahead.

17              I'll go ahead and turn it over to debtors' counsel

18  while we're trying to work on the lighting.  If you see the

19  lighting flickering on and off, you'll know why.

20              MR. COUSINS:   Good afternoon, Your Honor.  Scott

21  Cousins.  Can you hear me okay?

22              THE COURT:  I can, thank you.

23              MR. COUSINS:  I am not Scott Jones.  There's too

24  many Scotts on this deal.

25              And, Your Honor, if I may say, you do look

1  glowing, especially on this very auspicious occasion.

2       (Laughter)

3            MR. COUSINS:  We are pleased to be at confirmation

4  today and I'll turn it over to, unless the Court has any

5  preliminary questions, I'll turn it over to Mr. Grogan.

6            THE COURT:  No, go ahead.  Thank you.

7            Mr. Grogan, you're on mute.  You're still on mute.

8            MR. GROGAN:  I apologize.  Can you hear me now?

9            THE COURT:  There you go.  Yes, thank you.

10           MR. GROGAN:  Thank you, Your Honor.

11           Your Honor, first of all, I'd like to thank the

12  Court and the Court's staff for making today available to us.

13  This has been a challenging case, I think, from the beginning

14  and we are deeply appreciative of the Court's availability

15  over the past four months to get this case to the point where

16  we're at now, where we're able to propose a largely

17  consensual Chapter 11 plan.

18           As we noted in our brief in support of the

19  confirmation, the plan has been accepted by wide majorities

20  of the impaired classes.  We filed an amended voting

21  declaration at Docket Number 606.  According to the

22  solicitation agent, Donlin Recano, the plan has been accepted

23  in Class 4, which is the general unsecured claims class at

24  almost 80 percent accepting -- 79.91 percent, exactly.

25           I'd also note that we had broad participation in

1  the voting process with over $110 million worth of claims

2  voted.  At the Class 5 convenience claims class, we had over

3  95 percent acceptances with over $125,000 of convenience

4  claims voting.

5          Your Honor, the plan is a product of several

6  months of negotiations and hard work between the debtors and

7  the committee and their advisors.  As part of this, you know,

8  I'd like to let the Court know that Mr. Lyon, our independent

9  and sole director for Cred, is on the line today.  Mr. Lyon

10  submitted a declaration in support of confirmation.

11          In addition, our chief restructuring officer, Mr.

12  Matthew Foster is on the Zoom call, and Mr. Foster also

13  submitted a declaration in support of confirmation.  Mr.

14  Lyon's declaration was filed at Docket Number 595-2 and Mr.

15  Foster's declaration was filed at Docket Number 595-1.  As

16  noted in the declarations, we believe that the plan satisfies

17  all of the confirmation requirements set forth in Chapter 11,

18  including the requirements of Section 1129 of the Bankruptcy

19  Code.

20          The plan has been filed in good faith.  The plan

21  is the product of arm's-length negotiations between the

22  debtors and the committee.  The committee supports the plan.

23  The committee offered a letter in support of the plan.

24          As we noted in the plan supplement, three members

25  of the committee have been appointed to serve as the

1  liquidating trustees for the debtors.  They will be tasked

2  with managing the case from this point forward if the Court

3  confirms the plan.  They will be inheriting all of the

4  available assets of the debtors, including the cryptocurrency

5  that we have on hand, the causes of action that the estates

6  possess, and any other assets of the estates.  And the plan

7  provides for an efficient and beneficial mechanism for the

8  distribution of the value of those assets to our creditors.

9           Your Honor, at this point, I'd like to go ahead

10  and move into evidence the declarations that we filed in the

11  record.  That would be the voting declaration at Docket

12  Number 606, Mr. Foster and Mr. Lyon's declarations at 595-1

13  and 595-2.

14           THE COURT:  Is there any objection?

15       (No verbal response)

16           THE COURT:  They're admitted, without objection.

17       (Voting Declaration received in evidence)

18       (Foster Declaration received in evidence)

19       (Lyon Declaration received in evidence)

20           MR. GROGAN:  Thank you, Your Honor.

21           Your Honor, unless you have any questions, I'm

22  going to cede the virtual podium to my colleague, Ms. Irena

23  Goldstein, who is going to take the Court through some

24  modifications that we made to the plan and the confirmation

25  order in order to resolve almost all of the objections and

1  then also, Ms. Goldstein will address two remaining

2  objections to the confirmation of the plan.

3          THE COURT:  All right.  That's fine.

4          Ms. Goldstein?

5          MS. GOLDSTEIN:  Good afternoon, Your Honor.

6          THE COURT:  I did receive and look, and I have

7  reviewed those blacklines, so thank you.

8          MS. GOLDSTEIN:  Oh, thank you.

9          So, as Mr. Grogan stated, there were four formal

10  objections filed to the plan by the United States Government,

11  the U.S. Trustee, Upgrade Ya, and I'm forgetting one.  But

12  then the ad hoc committee --

13          THE COURT:  Mr. Alexander.

14          MS. GOLDSTEIN:  Yeah, Mr. Alexander, and the ad

15  hoc committee of Bitcoin lenders submitted an informal

16  objection.

17          We were able to resolve the ad hoc committee of

18  Bitcoin lenders', Upgrade Ya's objection, and the United

19  States Government's objection through modifications to the

20  plan and confirmation order.

21          With respect to the revised plan, it is now at

22  619-1, and the redlined plan is at Docket 619-2.  And the

23  current confirmation order is at Docket 620-1.

24          Most of the changes are cleanup changes, although,

25  there were some changes that they're mentioning on the

1  record; perhaps most importantly, we increased the recoveries

2  for holders of Class 5 convenience claims from 20 to 30

3  percent.  This change was due to the debtors' success in

4  recovering assets from Mr. Alexander and their asset

5  managers, which have meaningfully increased the debtors'

6  estate's distributable assets.

7         The debtors and committee have also agreed to make

8  changes to the plan and confirmation order to resolve

9  concerns raised by the ad hoc committee of Bitcoin lenders,

10  Upgrade Ya, the United States, and the U.S. Trustee.

11         To resolve the ad hoc committee's concerns, the

12  debtors inserted paragraphs 43 through 45 to the confirmation

13  order and expanded the trust advisory board to include two

14  members of the ad hoc committee.

15         Paragraph 43 of the confirmation order reserves

16  the right of all creditors to seek to have the amount of

17  their claims valued on a date other than the petition date.

18         Paragraph 44 requires the liquidation trustees to

19  use their best efforts to make cryptocurrency distributions.

20         And paragraph 45 provides that the members of the

21  ad hoc committee are not agreeing to any third-party

22  releases.

23         Article 12.2(b) of the plan regarding the

24  responsibilities of the liquidation trustees, as well as

25  assets, as well as Article 12.2(f) regarding the trust

1 advisory board, have also been amended to take account of the

2 expanded trust advisory board and address the ad hoc

3 committee's concerns.

4       To resolve Upgrade Ya's objection, the debtors

5 have incorporated Upgrade Ya's comments to paragraph 29 and

6 45 of the confirmation order and Article 14.7 of the plan.

7       Paragraph 29 of the confirmation order regards the

8 terms of stays and injunctions provided under the Bankruptcy

9 Code and the plan, and we have amended the language to

10 provide that the automatic stay shall remain in effect until

11 these cases are closed or dismissed or the Court enters an

12 order granting stay relief.

13       Paragraph 45 of the confirmation order regards the

14 plan's release provisions and we amended it to explicitly

15 state that no direct causes of action were being released by

16 the plan, except as provided in Article 18.2 of the plan,

17 which concerns the debtor and the third-party releases.

18       Finally, Article 14.7 of the plan has been amended

19 to clarify that the liquidation trustees cannot deem Upgrade

20 Ya's claim disallowed under Section 502(d) until there is a

21 final determination that it receives an avoidable transfer,

22 but may still deem any claim as disputed.

23       To resolve the United States' issues, the debtors

24 inserted paragraph 46 of the confirmation order, which

25 addresses all of the concerns raised by the Government in its

1  objection at Docket Number 568.

2         And as I stated earlier, and I will discuss later,

3  we did make some changes to the third-party release language

4  in the plan to address certain concerns of the U.S. Trustee.

5         So, that leaves us with the two objections:  the

6  objection of Mr. Alexander, which I think can be resolved

7  pretty quickly, and the United States Trustee, which had the

8  more fulsome objection.

9         Mr. Alexander states that he is the sole director

10 of Cred Capital and objects to the plan, to the extent it

11 seeks to administer and substantively consolidate Cred

12 Capital's assets with those of the other debtors.  I think

13 Mr. Alexander referenced in his objection:

14        "It is the law of these cases that the certificate

15 of incorporation of Cred Capital was improperly filed and

16 that his unauthorized appointment of himself as director is

17 void."

18        Further, not only does Mr. Alexander lack standing

19 because he is not the director or shareholder of Cred

20 Capital, he also lacks standing because he's a Chapter 7

21 debtor and only the Chapter 7 Trustee has standing to seek

22 relief with respect to Mr. Alexander's alleged ownership

23 interest in Cred Capital; therefore, we think that Mr.

24 Alexander's objection should be overruled.

25        The U.S. Trustee objected to the plan on a number

1  of different bases.  The first objection, which I think has

2  been mooted, was he asked that he felt that the confirmation

3  hearing should be delayed to allow the examiner to file his

4  report.  But the examiner filed his report on March 8th,

5  we've all had an opportunity to review it, and it does

6  address issues that are very pertinent to the plan; most

7  notably, the examiner did not find any causes of action

8  against the released parties under the plan.

9         But the U.S. Trustee also objects to plan Sections

10 12.2 and 17.1, arguing that they constitute improper releases

11 of the debtors and the settlements embodied in the plan are

12 improper because the creditors are not parties thereto.  The

13 U.S. Trustee's argument flies in the face of settled law.  As

14 the Court stated in, In re Exide Technologies, 303 B.R. 48,

15 66 (Bankr. D. Del. 2003):

16        "A plan may include a provision that settles or

17 adjusts any claim belonging to the debtor or the estate."

18        Section 12.2 is a settlement of any claims the

19 debtors or creditors may have against the debtor or

20 intercreditor disputes as a result of the debtors' failure to

21 properly reflect their assets and liabilities in their books

22 and records.

23        The disclosure in the combined plan and disclosure

24 statement regarding the state of the debtors' books and

25 records upon filing, as amplified by the declaration of

1  Matthew Foster, the debtors' chief restructuring officer, and

2  confirmed by the examiner in his report, adequately sets

3  forth the grounds for the limited substantive consolidation

4  of the debtors' estates.

5          And that's what the settlement is, the substantive

6  consolidation.  Rather than incur the costs and the fees

7  trying to figure out which asset belonged to which debtor and

8  which creditor has a claim against which debtor, we

9  substantively consolidated the estates for voting and

10  distribution purposes.

11          Section 17.1 of the plan states that the plan

12  shall constitute a good faith compromise of all claims,

13  equity interests, and controversies.

14          The plan reflects the result of arm's-length

15  negotiations among the creditors' committee, the debtors, and

16  with the ad hoc committee of Bitcoin lenders.  After

17  resolving the objections filed by Upgrade Ya and the United

18  States, the plan constitutes a compromise with those

19  entities, as well.

20          Further, the creditors are party to the

21  settlements because they had the opportunity to vote on the

22  plan, and as Mr. Grogan stated, they overwhelmingly accepted

23  it; moreover, no party with a financial stake in the debtors

24  has objected to the aforementioned settlement.

25          The U.S. Trustee also objects to the debtors'

1  release and the third-party release in the plan; again, the

2  U.S. Trustee's objection should be overruled.

3          First, it must be noted that the debtor release

4  and the third-party release are very narrow in scope.  The

5  only persons being released are the debtors, and the

6  committee's professionals, the independent director, the

7  chief restructuring officer and his staff at Sonoran Capital

8  Advisors, and their respective agents and representatives.

9  Further, as I stated earlier, the examiner has concluded in

10 his March 8th report, Docket Number 605, on pages 10 to 11

11 that:

12          "The examiner did not become aware of any facts

13 that, in his opinion, would give rise to any viable estate

14 claims or causes of action against any of the released

15 parties," including Paul Hastings.

16          Further, the plan makes explicitly clear that the

17 persons responsible for the debtors' problems outlined in the

18 examiner report are not being released, being Mr. James

19 Alexander, Luke Foy (phonetic), Dan Schatt (phonetic), Joseph

20 Padusa (phonetic), Danielle Enamoula (phonetic), and

21 accordingly, these plan releases do not deprive the debtors'

22 creditors of any valuable causes of action.

23          As the Court stated in, In re Spansion, 426 B.R.

24 114, 143 (Bankr. D. Del. 2010):

25          "A debtor may release claims in a plan pursuant to

1    Bankruptcy Code Section 1123(b)(3)(A) if the replies is a

2    valid exercise of the debtors' business judgment, is fair,

3    reasonable, and in the best interests of the estate."

4              "Indeed, like in these Chapter 11 cases, the Court

5    found that although there is no evidence of any potential

6    claims here, it is not unreasonable for the debtors to

7    provide a broad release of its claims in return for

8    creditors' agreement to the plan."  Id at n.48.

9              Corporate courts often apply what is referred to

10   as the Zenith factors in determines whether a release is

11   appropriate.  The U.S. Trustee asserts the debtors have not

12   met their burden under the Zenith test, but that is simply

13   incorrect.

14             The first factor, the identity of interests, is

15   satisfied because the debtors and the release party share the

16   common goal of confirming the debtors' plan in an expeditious

17   manner.

18             Indeed, in Zenith, the Court found that the

19   released parties:

20             "Were instrumental in formulating the plan and

21   therefore share an identity of interest in seeing the plan

22   succeed."

23             In Re Zenith Electronics Corp., 241 B.R. 92, 111

24   (Bankr. D. Del. 1999).

25             The second factor, the substantial contribution by

1  the released parties is met.  While the released parties,

2  except for Paul Hastings, have not contributed any new

3  capital, they did spend a considerable amount of time

4  negotiating, formulating a plan, and recovering assets for

5  the benefits of the debtors' estate.  While this may be the

6  responsibility of debtors and their directors and officers

7  and the committee in a normal case, as set forth in the

8  examiner's report, these certainly are not normal cases.

9       The released parties took responsibility for

10  negotiating a plan and obtaining assets for the debtors that

11  despite the debtor not having followed basic corporate

12  formality, not to mention the actions of Mr. Alexander in

13  pilfering the debtors' assets.

14       Despite these infirmities, the parties were able

15  to formulate a plan and bring it to confirmation within four

16  months which is pretty spectacular, given the state of the

17  debtors at the time of the filing and how much in crisis they

18  were.

19       Paul Hastings, on the other hand, has returned

20  $300,000 of prepetition compensation, in addition to

21  providing the aforementioned services.

22       The third factor, whether the releases are

23  essential to the success of the plan is met, because as set

24  forth in Matthew Foster's declaration, the releases were

25  integral to the committee's and the debtors' agreement to

1  enter into the plan support agreement and to a consensual

2  plan.

3         The fourth factor is met, the agreement of the

4  substantial majority of creditors to support the releases,

5  because as set forth in the voting declaration, the vast

6  majority of Class 4 and Class 5 general unsecured creditors

7  in both, amount and numerosity, voted in favor of the plan.

8  With the exception of the United States Government, no

9  unimpaired creditor exercised its opt-out rights or objected

10 to the plan.

11        The Spansion Court found:

12        "The silence of the unimpaired classes on the

13 issue of releases to be persuasive."

14        426 B.R. 144.

15        We believe that this Court should also find it

16 persuasive.

17        Moreover, in, In re Indianapolis Downs, LLC, 486

18 B.R. 286, 304 (Bankr. D. Del. 2013), the Court placed great

19 weight on the fact that the creditors voted in favor of the

20 plan and approved the releases, notwithstanding that the

21 debtors did not satisfy all the Zenith factors.

22        Finally, even though the U.S. Trustee urges that

23 creditors are not likely to receive a distribution and

24 somehow tries to imply that that means these releases are not

25 consensual, notwithstanding that the creditors voted

1  overwhelmingly in favor of the plan, we should point out that

2  the debtors' liquidation analysis shows that Class 4

3  creditors and Class 5 creditors are getting a 30 percent

4  distribution.

5          While it's not guaranteed for Class 4 creditors,

6  we're certainly in a different place than we were, and

7  Class 4 creditors voted to confirm the plan.

8          Finally, the third-party releases should be

9  approved.  The Delaware Bankruptcy Court routinely deems

10  third-party releases as consensual if creditors or equity

11  holders do not exercise their right to opt-out of the

12  releases and with respect to parties who vote in favor of the

13  plan.  In this regard, I point the Court to pages 28 to 29 of

14  the debtors' confirmation brief for a list of cases deeming

15  that a creditor consented to the release by not opting out of

16  the release, which includes a case before this Court, In re

17  Global Eagle Entertainment, Case Number 20-11835.

18          The U.S. Trustee, on the other hand, cites to In

19  re Emerge Energy Services LP, 2019 WL 7634308, Bankruptcy

20  District of Delaware, 2019, in support of his contention that

21  opting out does not equal consent.  But even the Court in

22  that case conceded that her position, quote, is a minority

23  amongst the judges of this district, end quote, Id 18.

24          Further, in response to the U.S. Trustee, the

25  debtors limited the parties who were providing the third-

1  party releases to solely holders of claims and equity

2  interests as opposed to the broader formulation in the

3  original plan.  For these reasons, the consensual third-party

4  releases should be approved.

5           The U.S. Trustee objected to certain governance

6  issues with respect to the liquidation trust, which we

7  believe we have resolved, pursuant to the modifications in

8  the plan, but are obviously open to listening if he has

9  additional comments.

10           Finally, the U.S. Trustee objected to the

11  prospective nature of the indemnification provided to the

12  liquidation trustees under the liquidation trust.  This is

13  market practice and consistent with indemnification

14  provisions of bylaws of Delaware corporations.

15           There are thousands of creditors here and it is

16  unlikely that any person would agree to serve as a

17  liquidating trustee without protections in place.  It doesn't

18  require payment up front.  It's only if they get sued and

19  they didn't act in bad faith or in gross negligence, entitled

20  to indemnification.

21           For the following reasons, therefore, and as set

22  forth in our confirmation brief and in the declarations, we

23  believe that the objection should be overruled, and the plan

24  should be confirmed.  Thank you.

25           THE COURT:  Thank you, Ms. Goldstein.

1          Let me go ahead and hear -- oh, Mr. Pfeiffer has
2    his hand up.

3          Go ahead, Mr. Pfeiffer.

4          MR. PFEIFFER:  Good afternoon, Your Honor.  Mark
5    Pfeiffer for James Alexander.

6          I do not want to burden the record.  The Court is
7    very familiar with my client's position and has already
8    decided against my client.  I would only ask that the Court
9    take judicial notice of the declaration that Mr. Alexander
10   has filed at Docket Number 407, which sets forth his factual
11   position in this matter.

12         THE COURT:  All right.  I will take judicial
13   notice of his position and I have reviewed it, along with the
14   objection that you filed, Mr. Pfeiffer, and I will overrule
15   that objection, as you point out yourself in the objection,
16   it's the law of the case and it is that Mr. Alexander is not
17   the sole owner of the debtor at issue and, therefore, his
18   motion is without merit or his objection is without merit, I
19   should say.

20         All right.  Let me hear from the U.S. Trustee.

21         MR. FOX:  Good afternoon, Your Honor.  May I
22   please the Court?

23         Timothy Fox on behalf of the United States
24   Trustee.  I'm pinch-hitting for my colleague, Mr. McMahon
25   today, as he had a scheduling conflict.  So, I apologize in

1    advance if I'm not quite as familiar with some of the

2    intricate facts of these cases as he would have been if he

3    had been presenting our objection.

4            Your Honor, the U.S. Trustee filed an objection to

5    this plan and articulated a fair number of bases for that

6    objection, some of which are still live, and I believe some

7    of them have been resolved by modifications to the plan.

8    I'll attempt to walk through what I think are the most

9    pressing live issues and to the extent Your Honor has any

10   questions about others, please feel free to interject and ask

11   if that may still be an issue or to what extent it has been

12   resolved.

13           I'll start, Your Honor, with the issue of the

14   settlement provisions in the plan and their overbreadth from

15   the U.S. Trustee's perspective.  Your Honor, it's important

16   to note what while the debtors have the ability under

17   Section 1123 to settle any causes of action that the debtors

18   own, it isn't *carte blanche* under a plan mechanism to settle

19   the claims of other parties that are not directly involved in

20   settlement negotiations.

21           Where the U.S. Trustee has objected to this

22   provision is the fact that a global settlement is different

23   than a settlement among parties and had this provision been

24   limited to those parties that were actively at the

25   negotiating table and had affirmatively settled, that would

1  be one thing, but to try to apply it to the entire universe

2  of creditors or parties in interest in these cases is

3  inappropriate because Section 1123 and Section 1129 do not

4  permit the settlement of other parties' claims.

5        While those parties may be bound by the plan, if

6  it is confirmed, that's through the confirmation standards of

7  1129, not the more permissive standard for settlements under

8  9019.  So, result, the provisions, as currently included in

9  the modified plan are still objectionable and still in need

10  of modification or revision in order to be confirmed by Your

11  Honor at this point in time.

12        Your Honor, moving on, the -- yes?

13        THE COURT:  Well, let me just rule on these as we

14  go along, because I'm going to overrule that objection.  I

15  think the objection goes to the question, as Ms. Goldstein

16  said, whether or not the debtors are going to be

17  substantively consolidated.  And given the examiner's report

18  which shows the absolute mess that the debtors' records are

19  in and all of the actions taken by some of the officers and

20  directors of the debtors prepetition, which resulted in

21  losses to the debtors, I think there's no question in this

22  case that substantively consolidating these debtors is

23  appropriate.  So, I'll overrule that objection.

24        MR. FOX:  MR. FOX:  Your Honor, may I raise one

25  point in rebuttal before that ruling becomes final?

1          And that's that for the substantive consolidation,

2     shouldn't that finding be that the case law provided by Owens

3     Corning is satisfied for substantive consolidation, rather

4     than applying a more broad power under 1123 and deeming the

5     global settlement as appropriate among the parties?

6          I think if the debtors satisfy their evidentiary

7     burden under Owens Corning, then that finding might be

8     appropriate, but I still would assert that it may not be

9     proper under the current mechanism that the debtors are

10    employing.

11         THE COURT:  Well, I think the record does show

12    that the debtors have met the requirements of Owens Corning

13    based on the evidence they presented, as well as the

14    examiner's report, so I will overrule the objection based on

15    the debtors' meeting the requirements of Owens Corning for a

16    substantive consolidation.

17         MR. FOX:  Thank you.  I appreciate that

18    clarification, Your Honor.

19         So, then, moving on, with respect to the debtor

20    releases, Your Honor heard from the debtors how they believe

21    that the standards articulated by Master Mortgage and Zenith

22    have been satisfied.

23         The U.S. Trustee's objection at paragraphs 14

24    through 25 articulated the view of the U.S. Trustee that

25    those factors were not met.  The voting does show that there

1   is some support from the creditors here, so I won't focus on

2   that factor, as that looks to be satisfied; however, the

3   other factors, notwithstanding the Paul Hastings contribution

4   of the retainer, still leave a little bit to be desired.

5          Although these cases are unusual, it's not clear

6   that the sweat-equity of the parties that are receiving the

7   releases is a substantial enough contribution to merit the

8   releases that are being requested here, so, Your Honor, the

9   U.S. Trustee would still assert that the debtor releases are

10  overly broad and do not satisfy the requirements of

11  applicable case law, with respect to those debtor releases.

12         THE COURT:  Well, I think the releases are

13  actually quite narrow.  It's limited to only the debtors' and

14  the committee's professionals, basically.  And in this case,

15  I think, given the hornet's nest that the professionals in

16  this case walked into with all the things that were going on

17  with this debtor, including what appears to be fraud,

18  misrepresentations, outright theft of funds, perhaps, based

19  on the examiner's report, I think the work they did in this

20  case went above and beyond what would ordinarily be required

21  of professionals in a case.

22         And as far as I know -- and correct me if I'm

23  wrong, Mr. Fox -- but I believe it's only the professionals

24  who are getting released.  None of the -- except for -- with

25  the exception -- well, I guess you could consider them

1  professionals -- the independent director who was brought in

2  and the advisors to the debtors who were brought in

3  prepetition to assist this company with trying to figure out

4  what happened in this case.

5         And as with counsel, those two individuals did

6  yeomen's work in trying to get this case moving forward and

7  figuring out what happened, which went, again, above and

8  beyond the call of duty.

9         So, I think the releases are appropriate.  I think

10 they have met the Master Mortgage and Zenith requirements and

11 I will approve them.

12        Unless you can point to me, other than those

13 individuals, someone else who's getting released, Mr. Fox.

14        MR. FOX:  No, Your Honor, I believe your

15 assessment is correct, and I understand your ruling on this

16 issue.

17        THE COURT:  Okay.  Thank you.

18        MR. FOX:  MR. FOX:  So then, moving on to the

19 third-party releases.  This item presents a little bit more

20 of a unique challenge, given the solicitation that was done

21 in these cases and where we are here today for confirmation.

22 As Your Honor is aware, there is a little bit of a split with

23 respect to the position that our bench has taken on

24 consensual third-party releases and the mechanics used for

25 parties that are subject to those releases, to manifest their

1  consent or assent to those releases.

2        While Indianapolis Downs and Spansion provide a

3  little bit more permissive approach to parties manifesting

4  consent to the releases, Judge Walrath's decision in

5  Washington Mutual, as well as Judge Owens' opinion in Emerge

6  Energy, do require a higher indicia of consent or assent from

7  the parties to be bound by the third-party releases.

8        Here, I think the facts, as shown in the voting

9  declaration at Docket Item 606, do indicate that

10 notwithstanding the fact the plan provided for parties to be

11 bound by the releases if they voted to accept, there appear

12 to have been about 155 parties that were in both, Class 4 and

13 Class 5, that notwithstanding checking the box to accept the

14 plan, also sought to opt-out of the plan.

15       I think that fact illustrates how the mechanics

16 here used for the opt-out may not be the most favorable or

17 best method of allowing parties, even that are voting on

18 plan, to identify whether or not they want to consent or

19 grant the releases.  As Judge Owens' opinion in Emerge

20 detailed, for parties that are given the chance to opt-out

21 and abstain from voting and do not return a ballot, those

22 parties, you know, it's difficult to say, have expressed

23 consent to the releases.

24       And I'd note that in that same voting declaration,

25 there were at least four parties that did return a ballot to

1  opt-out, but there could have been many more than chose not

2  to return a ballot because they didn't believe that the

3  recovery would be sufficient to justify spending the time to

4  review the plan and the related materials and send in the

5  ballot, only to indicate that they were opting out of the

6  releases.

7         So, Your Honor, I believe that this issue has not

8  come up directly before Your Honor in previous cases.  I was

9  the trial attorney that was assigned to the Global Eagle case

10  and for numerous reasons, did not lodge an objection to the

11  provisions there; however, here in this case, especially with

12  the thicket of issues that existed prepetition, to

13  (indiscernible) parties that either abstained from voting on

14  the plan and failed to opt-out of the releases or voted to

15  accept the plan, but also manifested an intent to try and

16  opt-out of the releases, I think it's appropriate to consider

17  whether or not the mechanics for the release provisions here

18  really are -- evidence a consent or an assent to the terms of

19  those third-party releases.

20         And, Your Honor, consistent with the filed

21  objection, would request that the third-party release

22  provisions be at least denied in part with respect to parties

23  that either rejected the plan, that were in a voting class or

24  that, you know, a voting class abstained and did not return a

25  ballot.

1          THE COURT:  No, I'm trying to find -- where's the

2   release provision?  I'm trying to find it.  I keep skipping

3   over it for some reason.

4          MR. FOX:  I believe it's in Section 18.2 of the

5   plan and if you're looking at the redline, it begins on page

6   78 of 94.  It would be page 76 or so, in the clean version.

7          THE COURT:  Well, this, I mean the way I read this

8   third-party release provision, it also is very narrow.  The

9   third-party release only applies to -- and correct me if I'm

10  wrong -- shall be deemed to have released and discharged each

11  released party, and I believe that's it, right.

12          It's only the released parties who are getting the

13  third-party release?

14          MR. FOX:  After the modification, I believe that's

15  correct, Your Honor.

16          I apologize for talking over debtors' counsel.

17          THE COURT:  And the released parties are defined

18  as only the people we've already talked about, right:  the

19  professionals --

20          MS. GOLDSTEIN:  Correct.

21          THE COURT:  -- Mr. Lyon, and the other debtors'

22  professionals.  So, I mean, this is an extremely, extremely

23  narrow release and I think the debtors did a good job of

24  laying out that it certainly does not cover the people who

25  are considered to be the bad actors here.

1            And I also note that the examiner's report

2    indicated that none of the released parties, based on his

3    investigation, would have any liable causes of action against

4    them in any event.  So, in this case, given the extremely

5    limited nature of the release or the extremely limited nature

6    of the parties who are getting a release in this case, and

7    given the fact that people who voted on the plan were given

8    the option to opt-out, I am going to overrule the objection.

9    I think it is appropriate.  I think they did have an

10   opportunity to opt-out if they chose to.

11           And if you're talking about, you know, I'm not

12   going to set a precedent here for every single case in front

13   of me, but if we were talking about releases that were going

14   to some third-party financial provider, for example, that

15   might be a different issue that I'd have to consider on a

16   case-by-case basis.

17           But in this case, given these are very limited

18   people who are getting a release and the fact that people had

19   the option to opt-out of those and the fact that the

20   examiner's report indicated that there was no indication of

21   any potential causes of action against them, in any event, I

22   am satisfied that that release is appropriate.

23           MR. FOX:  Thank you, Your Honor.

24           I'll note at this time that with respect to the

25   governance issues, the changes that were made as part of the

1   modified plan and the plan supplement obviate that portion of

2   the U.S. Trustee's objection, which leaves only the issue

3   relating to the liquidation trustees' indemnification.

4           And I'll note at the outset that this was

5   originally articulated as being an exculpation, which Your

6   Honor is aware that the applicability of exculpation

7   provisions needs to be limited to estate fiduciaries and the

8   U.S. Trustee would further add that it should be within the

9   time frame from the petition date to the effective date of a

10  plan and not be prospective for "yet to occur" conduct post-

11  effective date for the plan.

12          I would ask for just confirmation from debtors'

13  counsel that the changes identifying this as indemnification

14  are meant to make it consistently with outside corporate

15  governance-type protections and not seek to expand the

16  exculpation beyond what is established case law in this

17  jurisdiction.  And if that's the case, then I believe this

18  issue is also moot.

19          MS. GOLDSTEIN:  That's correct.  The exculpation

20  clause in the plan just deal with post-bankruptcy conduct.

21          THE COURT:  Does that answer your question,

22  Mr. Fox?

23          MS. GOLDSTEIN:  It was during the pendency of the

24  Chapter 11.

25          MR. FOX:  Okay.  I thank you for that

1  confirmation, and I believe that with that, at this point the

2  issues raised in the U.S. Trustee's objection have either

3  been overruled by Your Honor or resolved by changes to the

4  modified plan and the further representations of debtors'

5  counsel during this hearing.

6            THE COURT:  Okay.  Thank you, Mr. Fox.

7            All right.  Does anyone else wish to be heard?

8            MR. WALSH:  Your Honor, if I may, just real

9  briefly, Tim Walsh from McDermott Will & Emery, on behalf of

10 the committee.

11           We echo the debtors' arguments in support of the

12 plan.  As Your Honor is aware, we did submit a letter in

13 support of the plan and the committee is fully behind this

14 plan.

15           THE COURT:  Thank you, Mr. Walsh.

16           Anyone else?

17      (No verbal response)

18           THE COURT:  Okay.  Well, I am satisfied based on

19 the record presented that the debtors' plan complies with all

20 the requirements of the Code, that it was presented and

21 negotiated in good faith, and it is beneficial to all of the

22 constituencies that make up the creditors base and the

23 debtors in this particular case.  So, I am pleased to be able

24 to confirm and I will enter the order.

25           Do we have an uploaded clean version from the

1    redline that was presented, Ms. Goldstein?

2              MS. GOLDSTEIN:  Yes.  I have to find the docket

3    number.

4              THE COURT:  Okay.  As long as it's there, that's

5    fine.

6              MS. GOLDSTEIN:  620-1.

7              THE COURT:  Okay.  620-1.

8              All right.  We will go ahead and get the order

9    entered as soon as we hang up.

10             Is there anything else that we have for today?

11             MR. CARTY:  Your Honor, Andrew Carty from Brown

12   Rudnick.  Can I be heard briefly?

13             THE COURT:  Go ahead, Mr. Carty.  Go ahead.

14             MR. CARTY:  Good afternoon, Your Honor.

15             I have with me in the virtual courtroom, Robert

16   Stark -- I think he is having some technical difficulties

17   with his video, but I believe he is available in the virtual

18   courtroom -- my colleague Patrick Gilman and my co-counsel,

19   Gregory Taylor from Ashby & Geddes.

20             Your Honor, as you know, we filed our report on

21   Monday, March 8th at ECF 605.  It was a fairly lengthy and

22   detailed report.

23             As we noted in the report, we viewed our mandate,

24   in large measure, as sifting through the facts and the

25   dueling narratives and presenting Your Honor and all

1   stakeholders with an objective analysis of what we believe

2   happened here in these cases.  We think the report

3   accomplishes that objective.

4           You know, it was a pretty intensive effort,

5   thousands and thousands of documents, 23 witness interviews,

6   and a significant amount of work in a very short time frame,

7   approximately eight weeks.

8           We promised to get it on file before the

9   confirmation hearing and fortunately, we were able to achieve

10  that goal, in large part, because of the significant

11  cooperation we received from many of the case constituents

12  and case professionals.  So, we would like to extend our

13  thanks to them: debtors' counsel, committee counsel, the U.S.

14  Trustee's Office, and Your Honor's chambers, as well.

15          I do want to -- first off, if Your Honor has any

16  questions regarding the report, we'd be happy to address

17  them; if not --

18          THE COURT:  Well, you stole my thunder, Mr. Carty,

19  because I was going to -- before I hung up, I was going to

20  give my thanks to Mr. Stark and his team, including yourself,

21  for the great work you did on that report.  It was excellent,

22  done in a very short period of time, provided great

23  information for me, and I'm sure for everybody else involved

24  in this case.  So, I appreciate the effort and the amount of

25  work that went into that over a very short period of time.

1          But I don't have any questions, because it was a

2    have comprehensive report and I appreciate it greatly.

3          MR. CARTY:  Excellent, Your Honor.

4          And so, with that, I'll conclude with we do expect

5    to file a motion in the near term, you know, seeking entry of

6    an order that we satisfied our obligations, discharging us.

7    We will likely be seeking an exculpation.  We'll file that on

8    notice to folks, so if folks want to respond, they'll have

9    that opportunity.  But I just wanted to give Your Honor a

10   heads-up that that will likely be coming across your docket

11   soon.

12         THE COURT:  Okay.  Thank you, Mr. Carty.  I

13   appreciate that and I am sure that we will have no issue with

14   getting that order entered.

15         MR. CARTY:  Thank you, Your Honor.

16         THE COURT:  All right.  Anything else for today?

17         MR. COUSINS:  Your Honor, just briefly.

18         We are in the process of uploading the order.

19   It's on the docket, but we will upload it within the next

20   five minutes.

21         THE COURT:  Okay.  Thank you, Mr. Cousins.

22         All right.  Well, thank you all very much.  I will

23   add my congratulations, again, on getting this thing to this

24   point so quickly.  The case presented a lot of challenges for

25   everybody involved and I appreciate the hard work that

1   everybody put into it and congratulations on getting the case

2   confirmed.

3            Thank you, all.  We are adjourned.

4        (Proceedings concluded at 3:47 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          CERTIFICATION

2              I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7

8

9    /s/ William J. Garling                    March 16, 2021

10   William J. Garling, CET**D-543

11   Certified Court Transcriptionist

12   For Reliable

13

14

15

16

17

18

19

20

21

22

23

24

25