**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CRED INC., *et al.*, | Case No.: 20-12836 (JTD) |
| Debtors.[1] | Jointly Administered |
| | Ref. Nos. 786 and 787 |

**OBJECTION OF UPGRADEYA INVESTMENTS, LLC TO THE INTERIM RELIEF REQUESTED IN THE EMERGENCY MOTION OF THE CRED INC. LIQUIDATION TRUST TO (I) ENFORCE THE CHAPTER 11 PLAN AND CONFIRMATION ORDER AND (II) ENJOIN UPGRADEYA INVESTMENTS, LLC FROM PROSECUTING THE CIVIL ACTION AND SIMILAR CLAIMS IN OTHER FORUMS**

UpgradeYa Investments, LLC ("UpgradeYa"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the interim relief requested in the *Emergency Motion of the Cred Inc. Liquidation Trust to (I) Enforce the Chapter 11 Plan and Confirmation Order and (II) Enjoin UpgradeYa Investments, LLC from Prosecuting the Civil Action and Similar Claims in Other Forums* [D.I. 786] (the "Emergency Injunction Motion"). In support of this Objection, UpgradeYa submits the *Declaration of Christman Rice in Support of the Objection of UpgradeYa Investments, LLC to the Interim Relief Requested in the Emergency Motion of the Cred Inc. Liquidation Trust to (I) Enforce the Chapter 11 Plan and Confirmation Order and (II) Enjoin UpgradeYa Investments, LLC from Prosecuting the Civil Action and Similar Claims in Other Forums* (the "Rice Declaration") attached hereto as **Exhibit A**, and respectfully states as follows:

---

[1] The debtors (collectively, the "Debtors") in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

{1311.001-W0064989.}

## PRELIMINARY STATEMENT[2]

The Trust asks this Court to provide it with extraordinary relief (*i.e.*, staying the Civil Action in its ***entirety*** pending a ruling on its Emergency Injunction Motion (the "Interim Relief")) ***without*** (i) following the requisite procedures for what is in essence a request for the issuance of a preliminary injunction,[3] (ii) identifying any factual basis for such extraordinary relief – other than the risk of potential depletion of D&O insurance proceeds, which is irrelevant when such proceeds are not property of the Debtors' estates and the Trust is not a known beneficiary under the corresponding D&O policies or (iii) providing any basis for, or legal analysis in support of, the Interim Relief requested. As the movant and the party bearing the burden of proof, the Trust's failure to adhere to proper procedure or articulate sufficient (or, with respect to the Corporate 3rd Party Defendants, any) factual and legal grounds for the Interim Relief requires this Court to deny the Trust's request.

Moreover, the Trust has not established (and cannot establish), among other things, the requisite ***immediate irreparable*** harm necessary to permit this Court to grant the preliminary injunctive relief it requests. With respect to the D&O Defendants, the Trust's concern that the D&O insurance proceeds may be depleted is a red herring. The D&O insurance proceeds are not property of the Debtors' estates and it is the D&O Defendants – not the Trust or the estates – that are the beneficiaries of the applicable D&O policies. Because this is the case, the Trust cannot rely on the potential depletion of the D&O policies by the beneficiaries to create immediate irreparable harm where there otherwise is none. Despite the various infirmities with respect to the

---

[2] Terms utilized but not otherwise defined in this Preliminary Statement shall have the meanings ascribed to them in the body of this Objection.

[3] While not naming it a request for a preliminary injunction, the Interim Relief seeks to stop the continuation of the Civil Action in its entirety until this Court rules on its Emergency Injunction Motion on a final basis. Such a request is tantamount to, and substantively the same as, requesting the imposition of a preliminary injunction.

relief requested, as explained in the MTS Objection, UpgradeYa is prepared to extend all applicable deadlines and proceedings in the Civil Action for the benefit of the D&O Defendants until thirty (30) days after the Court rules on the Emergency Injunction Motion, thus resolving the only concern the Trust has articulated for needing a preliminary injunction and providing more relief than the Trust requested with respect to such defendants. A revised proposed form of order granting this relief is attached hereto as **Exhibit B** (the "Narrowed Preliminary Injunction PFO").[4]

The other defendants to the Civil Action (the "Corporate 3rd Party Defendants") are all non-debtor third party companies over which this Court does not have jurisdiction. While the Trust requests an interim stay of the Civil Action with respect to these defendants as well, the Trust has not articulated a single reason – let alone any immediate irreparable harm – that would necessitate the imposition of a preliminary injunction with respect to these defendants. By contrast, as set forth in the Rice Declaration, UpgradeYa will suffer immediate harm if this Court on a purported "emergency basis" abruptly halts the entirety of the Civil Action.

As such, for these reasons and as more fully set forth herein, the Court should either deny the request for the Interim Relief outright or, at most, grant the Interim Relief solely with respect to the D&O Defendants as set forth in the Narrowed Preliminary Injunction PFO.

**RELEVANT BACKGROUND**

1. On November 25, 2020, UpgradeYa filed the *Motion of UpgradeYa Investments, LLC for Relief from Stay Under Bankruptcy Code Section 362* [D.I. 89] (the "RFS Motion")[5] seeking to have certain Bitcoin it pledged as Collateral returned to it or, in the event the Debtors

---

[4] A blackline identifying the changes made to the Trust's proposed form of order (the "Trust's Preliminary Injunction PFO") submitted as Exhibit A to the Emergency Injunction Motion is attached hereto as **Exhibit C**.

[5] Terms utilized but not otherwise defined herein shall have the meanings ascribed to them in the RFS Motion and the supplemental briefing thereon.

were no longer in possession of UpgradeYa's Collateral, authority to pursue claims against non-debtor third parties for the damages it suffered at their hands. The Debtors and the Official Committee of Unsecured Creditors (the "Committee") opposed the relief requested.

2. Following a trial and supplemental briefing on the RFS Motion, on February 26, 2021, the Court entered the *Memorandum Order* [D.I. 565] (the "RFS Order") concluding that "[c]laims against non-debtor third parties, such as those that UpgradeYa represents it will pursue, do not generally fall within the purview of Section 362(a) and UpgradeYa is free to pursue such claims." RFS Order, p. 4.

3. On March 11, 2021, the Court entered the *Order Confirming and Approving on a Final Basis Modified First Amended Combined Plan of Liquidation and Disclosure Statement of Cred Inc. and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code* [D.I. 629] (the "Confirmation Order").

4. In resolution of certain objections UpgradeYa and others asserted with respect to the proposed Plan and the release and injunction provisions set forth therein, counsel to the Debtors and the Committee (now counsel to the Trust) negotiated and agreed to the inclusion of the following pertinent language in paragraph 45 of the Confirmation Order:

> Clarification of Releases & Injunction. Notwithstanding anything to the contrary in this Order or in the Combined Plan and Disclosure Statement, including Sections 18.2, 18.4 and 18.5 thereof, nothing in this Order or in the Combined Plan and Disclosure Statement shall constitute a release of, or injunction against, individual direct claims or causes of action that a Creditor may possess against any Person or Entity other than the Debtors, unless such Creditor is deemed to release such individual direct claim or causes of action against a Released Party pursuant to Section 18.2 of the Plan. For the avoidance of doubt, no Creditor may pursue claims or causes of action that were property of the estate as of the Petition Date.

Confirmation Order, ¶ 45.

5.  On April 7, 2021, consistent with the RFS Order and paragraph 45 of the Confirmation Order, UpgradeYa filed a complaint in the Supreme Court of the State of New York, County of New York (the "Civil Action") asserting direct claims and causes of action against certain non-debtor third parties, including certain former directors and officers of the Debtors (collectively, the "D&O Defendants").

6.  On May 24, 2021, the Trust filed the Emergency Injunction Motion requesting this Court "(A) enter the Proposed Interim Order temporarily staying the Civil Action pending the final adjudication of [the Emergency Injunction Motion] and (B) enter the Proposed Final Order (i) enforcing the terms of the Plan and Confirmation Order and (ii) enjoining, barring, and/or estopping UpgradeYa from prosecuting the Civil Action and similar claims and causes of action in other forums." Emergency Injunction Motion, ¶ 40.

7.  Contemporaneously therewith, the Trust filed the *Motion to Shorten Time for Notice of Emergency Motion of the Cred Inc. Liquidation Trust to (I) Enforce the Chapter 11 Plan and Confirmation Order and (II) Enjoin UpgradeYa Investments, LLC from Prosecuting the Civil Action and Similar Claims in Other Forums* [D.I. 787] (the "Motion to Shorten") asking the Court to consider the Interim Relief requested by the Emergency Injunction Motion on an expedited basis.

8.  On May 26, 2021, UpgradeYa filed the *Objection of UpgradeYa Investments, LLC to Motion to Shorten Time for Notice of Emergency Motion of the Cred Inc. Liquidation Trust to (I) Enforce the Chapter 11 Plan and Confirmation Order and (II) Enjoin UpgradeYa Investments, LLC From Prosecuting the Civil Action and Similar Claims in Other Forums* [D.I. 791] (the "MTS Objection").[6]

---

[6] The factual background and legal arguments set forth in the MTS Objection are incorporated herein by reference.

9.      On May 28, 2021, the Court granted the Motion to Shorten scheduling a hearing on the Interim Relief for June 4, 2021, with objections to such relief to be presented at or filed prior to such hearing.

**OBJECTION**

A.   **The Interim Relief Must Be Denied Because the Request for Such Relief is Procedurally Improper**

10.     In order to seek a preliminary (or permanent) injunction, the Trust is required to file an adversary proceeding; it cannot proceed by general motion practice.  *See* Fed. R. Bankr. P. 7001(7), (9) (requiring an adversary proceeding "to obtain an injunction or other equitable relief" except when a plan provides for the relief and "to obtain a declaratory judgment relating to any of the foregoing").  Courts have held that preliminary injunctions, like other forms of injunctive relief provided for by Bankruptcy Rule 7001, that are attempted to be commenced by motion instead of an adversary proceeding fail on procedural grounds.  *See In re Innovative Communication Co., LLC*, 2008 U.S. Dist. LEXIS 39739, at *19-20 (D.V.I. April 30, 2008), *aff'd*, 2008 U.S. Dist. LEXIS 43986 (D.V.I. June 3, 2008)  ("By requesting injunctive relief by motion in the underlying contested matters rather than by commencing an adversary proceeding against the Trustees, [plaintiff] has failed to comply with the requirements of Rule 7001."); *see also Feld v. Zale Corp. (In Re Zale Corp.)*, 62 F.3d 746, 763 (5th Cir. 1995) ("Including a matter governed by Rule 7001 in another matter already before the court, however, does not satisfy the procedural rules required by Rule 7001.").

11.     The Trust has not articulated (and cannot articulate) any basis that would exempt the Trust from adhering to the requirements of Bankruptcy Rule 7001, in which pleading requirements must be satisfied and procedural protections in favor of defendants must be provided.  Consequently, when a movant requests the imposition of injunctive relief without initiating an

adversary proceeding, the request should be denied as procedurally improper. *See, e.g.*, *In re Fairchild Corp.*, 2009 Bankr. LEXIS 3815 at *29-30 (Bankr. D. Del. Dec. 1, 2009) (denying requests for declaratory judgment and injunction regarding non-debtor defendants in a state court action on the grounds that entry of such relief "requires initiation of an adversary proceeding" (citing Fed. R. Bankr. P. 7001(9))); *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990) (holding that a Rule 7001 matter "commenced by motion rather than by complaint will be dismissed"); *In re Garnett*, 47 B.R. 170, 171-72 (Bankr. E.D.N.Y. 1985) (denying request of a debtor for an injunction to stay state court action against non-debtor third parties on the grounds that such request requires commencement of an adversary proceeding pursuant to Bankruptcy Rule 7001(7)).

12. Thus, since the Trust has failed to initiate an adversary proceeding as required by Bankruptcy Rule 7001, has failed to satisfy pleading requirements necessitated by the filing of a complaint, and has failed to permit UpgradeYa to avail itself of the procedural protections mandated by the rules of civil litigation, the Interim Relief requested to preliminarily enjoin the Civil Action from continuing must be denied.

**B.    The Trust Has Failed to Identify Any Factual or Legal Bases Sufficient
to Justify the Extraordinary Imposition of a Preliminary Injunction**

13. The Third Circuit has held that "[a] preliminary injunction is an ***extraordinary*** remedy granted in ***limited*** circumstances." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (internal citation omitted, emphasis added). A movant seeking issuance of a preliminary injunction "must establish that (A) they are likely to succeed on the merits of their claims, (B) they are likely to suffer irreparable harm without relief, (C) the balance of harms favors them, and (D) relief is in the public interest." *Id.* The Third Circuit has held that it is the party seeking a preliminary injunction that bears the burden of proof. *Reilly v. City of Harrisburg*, 858 F.3d 173,

176 (3d Cir. 2017), *as amended* (June 26, 2017) (stating that moving party bears the burden).

14. The Trust does not mention, let alone address, any of the aforementioned factors in the Emergency Injunction Motion. In fact, the Trust has failed to articulate (and cannot articulate) any factual or legal bases sufficient to permit this Court to grant it the extraordinary relief of issuing a preliminary injunction to halt the Civil Action in its entirety. The Trust's only purported reason and analysis to justify its request to temporarily stay *all* proceedings in the Civil Action appears in paragraph 12 of its Preliminary Statement:

> the inclusion of the D&O Defendants puts the Debtors' insurance policies at risk of depletion to the detriment of the Debtors' other creditors. Indeed, the Debtors' insurance carrier has already been placed on notice of the Civil Action. Accordingly, the Trust respectfully requests that the Court enter the [Trust's] Proposed Interim Order to stay the Civil Action pending this Court's determination of whether the claims are derivative.

Emergency Injunction Motion, ¶ 12. Despite being the movant and the party bearing the burden of proof, in the context of its request for the Interim Relief, the Trust makes no further factual allegations, provides no legal basis and fails to cite a single case in support of its position that the entire Civil Action should be stayed on an interim basis until the Court rules on a final basis on the Emergency Injunction Motion. If the Trust had factual and legal bases to support its request for Interim Relief, it was required to so inform this Court and UpgradeYa in a properly filed complaint and related motion or, at the very minimum, in the Emergency Injunction Motion. Since the Trust failed to do so, the Court must deny the Trust's unsupported and baseless request for the Interim Relief.

15. Even if the Court were to consider the Interim Relief requested without the Trust articulating any factual or legal basis in support thereof (which it should not as the Trust is the party with the burden of proof – not the Court or UpgradeYa), the Interim Relief must be denied.

In determining whether to issue a preliminary injunction, the Third Circuit has explained that:

> a movant for preliminary equitable relief must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief. If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.

*Reilly v. City of Harrisburg*, 858 F.3d at 179 (internal footnotes omitted). For the reasons that follow, all four factors balance in favor of denying the Interim Relief.

16. First, the Trust has not articulated a reasonable probability of success on the merits. To establish a likelihood of success on the merits, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." *Punnett v. Carter,* 621 F.2d 578, 583 (3d Cir. 1980) (quoting *Oburn v. Sharp,* 521 F.2d 142, 148 (3d Cir. 1975)). The Trust has not made any showing that it has a reasonable probability of prevailing on the merits.[7]

17. The Civil Action is comprised of UpgradeYa's direct claims against non-debtor third parties. Each of the claims asserted in the Civil Action were identified and explained in the supplemental briefing on the RFS Motion. In the RFS Order, this Court held that "[c]laims against

---

[7] As part of its analysis regarding the direct versus derivative nature of the claims asserted in the Civil Action, counsel to the Trust continues to fail to appreciate that the conversion claims stem from bad acts committed **before** UpgradeYa's Collateral allegedly was commingled in the Debtors' concentration account at Fireblocks and, as such, its extensive argument regarding the traceability of UpgradeYa's Collateral is irrelevant. Counsel to the Trust also continues to ignore that fact that not only is UpgradeYa uniquely situated from the six thousand two hundred and forty-nine (6,249) CredEarn creditors, but it is also in a distinct position from at least one (1) of the other thirteen (13) CredBorrow creditors. Specifically, the Other CredBorrow Agreement included a number of provisions that are not included in or directly contradict the terms of the UpgradeYa CredBorrow Agreement, including provisions expressly transferring title of the Other CredBorrow Creditors' cryptocurrency upon transfer of such collateral to the Debtors and outlining the risks of the transaction, including, among other things, that the collateral could be stolen. *See*, Supplemental Brief [D.I. 396], ¶¶ 23-26.

non-debtor third parties, *such as those that UpgradeYa represents it will pursue*, do not generally fall within the purview of Section 362(a) [(*i.e.*, they are not actions against the Debtors or the Debtors' Property)] *and UpgradeYa is free to pursue such claims*." RFS Order, p. 4 (emphasis added). In light of this and the fact the Trust has not made any showing that it has a reasonable probability of prevailing on the merits, this factor weighs in UpgradeYa's favor.

18. Second, the Trust also has failed to meet its burden of demonstrating it will suffer *immediate irreparable* harm if the Interim Relief is denied. In order to demonstrate irreparable harm, a plaintiff must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction *must be the only way* of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (emphasis added). Further, "[t]he availability of adequate monetary damages belies a claim of irreparable injury." *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). "We have long held that an injury measured in solely **monetary** terms cannot constitute **irreparable harm**." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009) (emphasis in original). The Third Circuit has explained that:

> Establishing a risk of irreparable harm is not enough. A *plaintiff has the burden of proving a 'clear showing of immediate irreparable injury*.' The 'requisite feared injury or harm must be irreparable – not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'

*Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86, 91-92 (3d Cir. 1992) (quoting *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)) (emphasis added).

19. The only "harm" the Trust has alleged in support of the Interim Relief is its allegation that the Civil Action against the D&O Defendants "puts the Debtors' [D&O] insurance policies at risk of depletion to the detriment of the Debtors' other creditors." Emergency Injunction

Motion, ¶ 12. However, as previously explained, the D&O insurance proceeds are *not* property of the estates and the Trust is not a known beneficiary under the applicable D&O policies. *See Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. 9, 17 (Bankr. E.D.N.Y. 1999) (stating D&O policy "proceeds belong to the assignee or beneficiary and not to the policy owner's bankruptcy estate."). Courts in this district consistently have "recognized that 'the proceeds of the Debtor's [D&O] insurance policy are not property of the estate' because the estate's interest in the proceeds is defined by the terms of the policies and in no way superior to the interest of other, non-debtor parties intended to be benefited by the policies." *Santa Fe Minerals, Inc. v. BEPCO, L.P. (In re 15375 Mem. Corp.)*, 382 B.R. 652, 689 (Bankr. D. Del. 2008) (quoting *In re World Health Alternatives, Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007)). "In essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection." *In re First Cent. Fin. Corp.,* 238 B.R. at 16. It is the officers and directors who are typically the beneficiaries under a D&O policy and not the debtor's estate. *See id.* at 17 (stating D&O policy "proceeds belong to the assignee or beneficiary and not to the policy owner's bankruptcy estate.").

20. Additionally, the Trust's duty to maximize recovery for its beneficiaries "does not freely translate into a superseding right to recover [D&O] insurance proceeds, which are not property of the estate, before all others." *Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. 9, 21-22 (Bankr. E.D.N.Y. 1999) (refusing to enjoin personal causes of actions possessed by shareholders and stating that the shareholders' direct claims "should not be held hostage to the Trustee's mismanagement suit."); *see also Miller v. McDonald (In re World Health Alternatives, Inc.)*, 369 B.R. 805 (Bankr. D. Del. 2007). Because the D&O insurance proceeds are not property of the Debtors' estates and the Trust is not a known beneficiary thereunder, risk of potential

depletion of such D&O policies is not an *immediate irreparable* harm that can justify the extraordinary remedy of imposing a preliminary injunction to halt the Civil Action with respect to the D&O Defendants and the Corporate 3rd Party Defendants.  The Trust, the Debtors' estates and their creditors cannot be harmed by the depletion of something they do not own or in which they do not have a property interest.[8]

21.  Thus, The Trust has failed to meet the gateway factors of demonstrating that it can win on the merits and that is more likely than not to suffer *immediate irreparable* harm and, as such, the request for the Interim Relief must be denied.

22.  The final two factors, harm to others which will occur if the preliminary injunction is granted and whether the injunction would serve the public interest, are only considered by the Court if the "threshold" of the first two "gateway factors are met."  *Reilly v. City of Harrisburg*, 858 F.3d at 179.  While UpgradeYa asserts that the Trust cannot meet this threshold, the final two factors weigh in UpgradeYa's favor as well.

23.  Unlike the Trust, UpgradeYa will be harmed by the issuance of a preliminary injunction halting the entirety of the Civil Action.  As set forth in the Rice Declaration, the litigation with respect to the Corporate 3rd Party Defendants has progressed well beyond the litigation with the D&O Defendants.  The Corporate 3rd Party Defendants and UpgradeYa are actively engaged in voluntary discovery and are currently negotiating briefing schedules.  *Rice Declaration*, ¶¶ 16-17.  Additionally, as explained in the Rice Declaration, if the Civil Action is

---

[8] Additionally, UpgradeYa is not seeking to circumvent or impede the Trust's pursuit of its direct claims against the D&O Defendants or the Corporate 3rd Party Defendants to the extent it has its own direct claims against such parties. The Trust (like UpgradeYa) is free to pursue any of its own direct claims it has against such parties.  Mere apprehension regarding the continuation of the Civil Action or any concern that UpgradeYa's pursuit of its direct claims may impede the Trust from pursuing its own claims is insufficient to warrant enjoining the Civil Action.  *See Campbell Soup Co.*, 977 F.2d at 92 ("[I]njunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties.  Nor will an injunction be issued 'to restrain one from doing what he is not attempting and does not intend to do.'") (citing *Continental Group, Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980)).

enjoined now, the Civil Action, which has already been underway for more than two (2) months now, would likely be immediately disrupted, and resuming the discovery and deadline scheduling process would force UpgradeYa to incur additional fees and expenses getting back up to speed following the Court's ruling on the Emergency Injunction Motion. *Id.* at ¶ 18. As such, it is UpgradeYa – not the Trust – that will suffer immediate harm if a preliminary injunction is imposed. Thus, this factor weighs in UpgradeYa's favor.

24. With respect to the last factor, in the context of bankruptcy proceedings, the public interest element focuses on promoting the debtor's successful reorganization. *See Broadstripe, LLC v. Nat'l Cable Television Coop., Inc. (In re Broadstripe, LLC)*, 402 B.R. 646, 659 (Bankr. D. Del. 2009) (explaining in the context of the public interest factor that "[i]n the face of the potential for significant injury to the Debtors' business value and reorganization efforts and the potential loss of service to its customers, the public interest favors granting the requested injunctive relief to enable the Debtors to attempt to reorganize in chapter 11."); *Rickel Home Ctrs., Inc. v. Baffa (In re Rickel Home Ctrs., Inc.),* 199 B.R. 498, 501 (Bankr. D. Del. 1996) ("[T]here is a strong public interest in promoting a successful Chapter 11 reorganization."); *Back v. LTV Corp. (In re Chateaugay Corp.),* 201 B.R. 48, 72 (Bankr. S.D.N.Y. 1996) ("Public policy, as evidenced by chapter 11 of the Bankruptcy Code, strongly favors the reorganization and rehabilitation of troubled companies and the concomitant preservation of jobs and going concern values."), *aff'd,* 213 B.R. 633 (S.D.N.Y. 1997).

25. Here, the Trust lacks any basis to argue that a preliminary injunction halting the entirety of UpgradeYa's Civil Action promotes a successful reorganization that would be in the public's interest. First, as anyone involved in these cases can attest, it is beyond dispute that the Debtors were unable to reorganize and were forced to liquidate. And even then, the Debtors' Plan

was confirmed nearly three (3) months ago and went effective shortly thereafter. *See Notice of (A) Entry of Order Confirming the First Amended Combined Joint Plan of Liquidation and Disclosure Statement of Cred Inc. and its Subsidiaries under Chapter 11 of the Bankruptcy Code and (B) the Occurrence of the Effective Date* [D.I. 730]. In this context, it is useful to consider the request for an injunction in *In re Continental Airlines*, in which the Court articulated the concern that "the litigation [at issue] will directly affect the debtor and, more particularly, the debtor's assets or its ability to pursue a successful plan of reorganization under Chapter 11." *In re Continental Airlines*, 177 B.R. 475, 479 (D. Del. 1993). In *Continental,* the Court's focus was on the debtors successfully confirming a plan, which the Debtors here already have accomplished. *Id.* at 481 ("Facts before the bankruptcy court support its conclusion that, since the parties-defendant to these actions include various Continental officers and directors who are heavily involved in Continental's reorganization efforts and since discovery in those actions would impose burdens both on the directors and on Continental, defense of these actions would substantially detract from the directors' reorganization efforts and would hinder Continental's ability to emerge successfully from bankruptcy under a confirmed plan of reorganization."). Here, not only has the Plan already been confirmed and gone effective, but none of the defendants in the Civil Action, including the D&O Defendants, are current employees of the Debtors' estates or the Trust and none are necessary to the Trust's wind-down of the Debtors' estates. Thus, this factor weighs in UpgradeYa's favor.[9]

---

[9] However, there are certain other issues of great public interest at play here, not the least of which is the ability of a non-debtor party to pursue legal remedies against non-debtor third parties in the forum of its choosing, free from the imposition of the automatic stay or onerous conditions not provided for in the Bankruptcy Code. Indeed, in resolution of certain objections UpgradeYa and others had to the proposed Plan and the release and injunction provisions set forth therein, counsel to the Debtors and the Committee (now counsel to the Trust) negotiated and agreed to the inclusion of paragraph 45 of the Confirmation Order (quoted above), which expressly provides that creditors, such as UpgradeYa, are ***not*** enjoined from pursuing their direct claims and causes of action. Confirmation Order, ¶ 45. UpgradeYa, by means of the Civil Action, is now pursuing the claims it obtained this carveout to protect. Despite this, the Trust now seeks to nullify this heavily negotiated provision of the Confirmation Order. As such, the

26.     In sum, the Trust has failed to meet its burden to show that the extraordinary relief it requests – a preliminary injunction – should be granted. All of the applicable factors disfavor issuing the Interim Relief. Thus, for the reasons stated herein and in the MTS Objection, the Court should deny the Interim Relief or, at most, narrow the scope of the relief to only the D&O Defendants as proposed in the Narrowed Preliminary Injunction PFO.

## RESERVATION OF RIGHTS

27.     UpgradeYa expressly reserves, and does not waive, any and all of its rights, claims, causes of action, rights of set off, remedies, and defenses, in any and all courts, under law or in equity, in connection with interim and final relief requested in the Emergency Injunction Motion, the Agreement, the Line of Credit, the Collateral, and the CredEarn Agreement under such applicable documents, the Bankruptcy Code, applicable law or otherwise against the Debtors' estates, the Trust, any successor in interest to the Debtors' estates or the Trust, the Litigation Targets, the D&O Defendants, the Corporate 3rd Party Defendants, and any and all third-parties, including, but not limited to, the right to seek recovery from any applicable insurance policies. Additionally, UpgradeYa reserves all rights to supplement this Objection and to submit further evidence and argument in any subsequent submission or at any hearing with respect to the Emergency Injunction Motion.

[*Remainder of Page Intentionally Left Blank*]

---

imposition of a preliminary injunction under these circumstances will harm and hinder future good-faith negotiations among the Debtors' creditors as the public will lack full faith that such negotiated provisions will be respected by the Trust and enforced. Thus, granting the Interim Relief is not in the public interest and this factor further weighs in UpgradeYa's favor.

## CONCLUSION

WHEREFORE, UpgradeYa respectfully requests that the Court either deny the Interim Relief requested in the Emergency Injunction Motion or, at most, grant the Interim Relief solely as set forth in the Narrowed Preliminary Injunction PFO and grant such other relief as may be necessary or proper.

| | |
|---|---|
| Dated: June 3, 2021<br>Wilmington, Delaware | **LANDIS RATH & COBB LLP**<br><br>/s/ *Kimberly A. Brown*<br>Adam G. Landis (No. 3407)<br>Kimberly A. Brown (No. 5138)<br>Matthew R. Pierce (No. 5946)<br>Nicolas E. Jenner (No. 6554)<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Telephone:    (302) 467-4400<br>Facsimile:    (302) 467-4450<br>Email: landis@lrclaw.com<br>           brown@lrclaw.com<br>           pierce@lrclaw.com<br>           jenner@lrclaw.com<br><br>*Counsel to UpgradeYa Investments, LLC* |