# Schedule A

**Definitions**

1.  The terms "**all**," "**any**," and "**each**" shall each be construed as encompassed any and all.

2.  The connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3.  "**Audits**" means all audits of Cred's financial statements performed by Armanino, whether completed or not completed, including (i) complete and incomplete audits of any annual and quarterly financial statements; (ii) audits or reviews of any amended or restated annual and quarterly financial statements, and (iii) and opinion letters, work papers or other work product prepared by Armanino.

4.  "**Armanino**" or "**you**" means Armanino, LLP and its agents, officers, directors, employees, subsidiaries, affiliates, and all other persons or entities acting or purporting to act directly or indirectly on behalf of or under the control of Armanino, LLP.

5.  "**Bankruptcy Case**" means *Cred Inc. et al.*, Case No. 20-12836 (JTD) in the United States Bankruptcy Court for the District of Delaware.

6.  "**Board of Directors**" means the board of directors of Cred, including any committee or special committee thereof.

7.  "**Communication**" includes every conceivable manner or means of disclosure, transfer, or exchange of oral, electronic, digital, or written information between or among one or more persons or entities, including without limitation, writings, correspondence, meetings, conferences, conversations, dialogues, discussions, interviews, consultations, agreements, inquiries, and any other expressions or understandings, whether made face-to-face, by telephone, mail, facsimile, computer, email, or otherwise.

8.  "**Concerning**" means relating to, referring to, describing, evidencing, or constituting.

9.  "**Cred**" means the Debtors in the Bankruptcy Case, including Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC.

10. "**Governmental Entity**" means any (i) federal, state, local, municipal, or other government, (ii) governmental or quasi-governmental entity of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal) or (iii) body exercising, or entitled to exercise any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature, including any arbitral tribunal. For

the avoidance of doubt, this definition includes the DOJ, the SEC, and the IRS, as well as the office of any state attorney general or district attorney.

11. "**Document**" means any document or tangible thing, including, without limitation, every medium or matter (whether written, printed, electronic, or other) on which or through which information of any type is expressed, recorded, saved, preserved, or viewable. The term "document" as used herein is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

12. "**Director**" means anyone who served on the Board of Directors for Cred.

13. When referring to documents, to "**identify**" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

14. "**Officer**" means anyone who served as an officer of Cred.

15. The term "**person**" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

## Instructions for Requests for Production

1. The following Requests for Production (each a "**Request**," and collectively, the "**Requests**") are to be responded to in accordance with the Federal Rules of Bankruptcy Procedure.

2. These Requests are continuing in nature and require supplemental answers in the event you or your attorney discovers additional responsive information.

3. Each Request is for documents or communications in your possession, custody, or control. This includes documents or information possessed by you or your present or former attorneys, agents, subordinates, employees, representatives, and consultants.

4. Produce each document called for by the Requests in its entirety, including all attachments and enclosures, even if only a portion of the document is responsive to the request.

5. If you cannot provide a complete response to a Request, you must furnish as complete an answer as possible, and explain in detail the reasons for the incomplete response, and the information that is needed to provide a complete response.

6. If there are no documents in your possession, custody, and/or control that are responsive to a specific Request, you shall state so in writing and advise why this is the case.

7. For a document that no longer exists or that cannot be located, identify the document, state how, when, and why it passed out of existence, or when it could no longer be located, and the reasons for the disappearance. Also, identify each person having knowledge

about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document. For any responsive documents that have been deleted but are stored electronically on back-up tapes or other medium, you are requested to produce the back-up tapes in their native form. If you contend that any responsive documents have been deleted and not retained in any form, provide the information requested in this instruction, including the location, description, and custodian of any hard drives or other storage medium that contained the electronic document.

8. When identifying any such document, you must state the following:

    (a) The format of the document (e.g., Word, PDF).

    (b) The name of the document (e.g., letter, handwritten note).

    (c) The title or heading that appears on the document.

    (d) The date of the document and the date of each addendum, supplement, or other addition or change.

    (e) The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

    (f) The general subject matter of the document.

    (g) The addressee(s) and recipient(s) of the document.

9. If you encounter any ambiguity in construing any Request, or any definition or instruction relevant thereto, please set forth in your response the matter you deem ambiguous and the construction you have chosen or used in responding to the request.

10. In the event you file a proper and timely objection to any Request, please respond to all portions of that request that do not fall within your objection. For example, if a Request is objected to on the grounds that it is too broad because it asks for documents that you believe are not relevant to this lawsuit, please produce responsive documents that you admit are or may be relevant to this lawsuit.

11. If you withhold from production any document (or portion of any document) that is otherwise responsive to a Request on the basis of a claim of privilege, work product, or other ground, you must assert the privilege in accordance with applicable rules.

12. You shall produce all documents in the manner in which they are maintained in the usual course of your business or you shall organize and label the documents to correspond with the categories in this request. A Request for a document shall be deemed to include a

request for any and all file folders within which the document was contained, transmittal sheets cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

13. Electronically stored information ("**ESI**"), such as emails and Word documents, shall be produced in native format, with its original formatting and metadata intact.

14. ESI that cannot reasonably be viewed in image format, including without limitation, spreadsheet files (e.g., Excel), database files (e.g., Access), and presentation files (e.g., PowerPoint), must be produced in native format.

15. If and to the extent that ESI is maintained in a database or other electronic format, you shall produce along with the document(s) software that will enable access to the electronic document(s) or database as you would access such electronic document(s) or database in the ordinary course of your business.

16. Unless otherwise specified, the time period for the Requests shall be from January 1, 2017 to present.

## Requests for Production

1. All engagement letters, including final and draft versions, between Armanino and Cred.

2. Documents sufficient to determine all services provided to Cred by Armanino.

3. All Documents Concerning compensation paid to Armanino by Cred for any work performed by Armanino.

4. All Documents Concerning the Audits, including the audit plan, workpapers, audit manual, memoranda, confirmation letters, drafts, consents, management representation letters, and all other Documents you prepared or obtained in connection with any Audits, review, financial statement compilations, consents, or other audit services Armanino provided to Cred.

5. All Documents Concerning the compilation of financial statements, whether or not in connection with an Audit, workpapers, memoranda, letters, drafts, consents, management representation letters, and all other Documents you prepared or obtained in connection with any financial statements Armanino provided to Cred.

6. All Documents Concerning the tax returns that Armanino prepared for Cred, including all workpapers, memoranda, letters, drafts, consents, management representation letters, and all other Documents.

7. All Documents Concerning any other services Armanino provided to Cred.

8. All Communications Concerning the Audits, including:

    a. Communications among Armanino or any of its partners, principals, accountants, employee, or representatives;

    b. Communications between Armanino or any of its partners, principals, accountants, employee or representatives, and Cred or any of its officers or employees, the Board of Directors, or any Director;

    c. Communications among Cred or any of its officers, directors or employees;

    d. Communications with any counsel representing Cred; and

    e. Communications with any Governmental Entity regarding Cred.

9. All Documents that Armanino obtained from Cred.

10. All Communications between Armanino or any of its partners, principals, accountants, employee or representatives, and Cred or any of its officers or employees, the Board of Directors, or any Director

11. All Communications between Armanino and third parties Concerning Cred.

12. All Communications, whether internal or external, sent from or to any Armanino partner or employee related to any Governmental Entity investigation, inquiry, litigation, civil or administrative proceeding, enforcement action, or other matter Concerning Cred.

13. All Communications Concerning Cred between Armanino and any third parties, including any Governmental Entities and any of Cred's agents, insurers, creditors, auditors, attorneys, legal representatives, or intermediaries.

14. All Documents and Communications Concerning Armanino's ability to complete its Audit of Cred's financial statements for the year ending December 31, 2019.

15. All Documents and Communications Concerning the decision not to complete the Audit of Cred's financial statements for the year ending December 31, 2019.

## Topics for Examination

1. The facts and circumstances surrounding Armanino's retention as Cred's auditor.

2. Armanino's Communications with any third party regarding Cred.

3. The Audits and all other accounting services that Armanino provided to Cred.

4. Cred's audits, quarterly reviews, financials statement compilations, tax service or advice, consents, and/or any other audit or accounting services provided to Cred.

5. Armanino's Communications with Cred, its offers or employees, the Board of

Directors, or any Director Concerning Cred.

6. Armanino's Communications with third parties Concerning Cred.

7. All Communications Concerning Cred between Armanino and any of Cred's agents, insurers, creditors, auditors, attorneys, legal representatives, or intermediaries.

8. Cred's financial condition, including but not limited to its contingent liabilities and ability to continue as a going concern.

9. Cred's reported revenues and its revenue recognition practices and policies.

10. Cred's diligence and compliance procedures and processes.

11. The reasons why Armanino did not complete the Audit of Cred's financial statements for the year ending December 31, 2019.