# EXHIBIT 1

## Stipulation

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
| | ) | (Jointly Administered) |
| Debtors.[1] | ) | **Related to Docket Nos. 786, 802, 803, 809** |

**STIPULATION OF SETTLEMENT REGARDING (A) EMERGENCY MOTION OF THE CRED INC. LIQUIDATION TRUST TO (I) ENFORCE THE CHAPTER 11 PLAN AND CONFIRMATION ORDER AND (II) ENJOIN UPGRADEYA INVESTMENTS, LLC FROM PROSECUTING THE CIVIL ACTION AND SIMILAR CLAIMS IN OTHER FORUMS AND (B) ALL POTENTIAL CLAIMS BETWEEN AND AMONG UPGRADEYA AND THE DEBTORS' ESTATES**

This stipulation (the "Stipulation") is entered into by and between the Cred Inc. Liquidation Trust (the "Trust")[2] established in the above-captioned chapter 11 cases (the "Chapter 11 Cases") of Cred Inc. and its affiliated debtors (collectively, the "Debtors") and UpgradeYa Investments, LLC ("UpgradeYa"). The Trust and UpgradeYa are referred to in this Stipulation collectively as the "Parties," and each as a "Party." The Parties hereby stipulate and agree as follows:

## RECITALS

A. UpgradeYa and the Debtors are parties to that certain Loan and Security Agreement, dated April 20, 2020, pursuant to which the Debtors provided UpgradeYa with a $2

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number, as applicable, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), and Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, Suite 200, San Mateo, California 94401.

[2] Pursuant to section 12.3(e) of the *Modified First Amended Combined Joint Plan of Liquidation and Disclosure Statement of Cred Inc. and its Subsidiaries Under Chapter 11 of the Bankruptcy Code* [Docket No. 629-1] (as amended, the "Plan"), the Trust is the successor-in-interest to the Official Committee of Unsecured Creditors of Cred Inc., et al. (the "Committee"). References to the Trust herein are in some instances references to the Committee prior to the effective date of the Plan.

million line of credit allegedly secured by a deposit of 531.3004746 Bitcoin (BTC) (the "Collateral") that UpgradeYa transferred to the Debtors (the "CredBorrow Claim").

B. As set forth on the Form of Draw Certificate dated April 30, 2020 (the "Draw Certificate"), UpgradeYa drew the full $2 million line of credit (the "LOC Balance"). The CredBorrow Claim is secured by the LOC Balance. As such, pursuant to Article 10.3 of the Plan, UpgradeYa has a Class 3 Other Secured Claim in the amount of $2 million (the "Setoff Claim").

C. On August 14, 2020, the Debtors transferred 53.1200475 BTC to UpgradeYa (the "Prepetition Transfer").

D. UpgradeYa and the Debtors are also parties to that certain Line of Credit Agreement, dated April 20, 2020, pursuant to which UpgradeYa allocated $120,000 of a line of credit draw as a loan to the Debtors (the "CredEarn Claim" and, together with the CredBorrow Claim, "UpgradeYa's Claims").

E. On November 7, 2020 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

F. On November 25, 2020, UpgradeYa filed a motion for relief from the automatic stay to purportedly recover its Collateral or the value thereof [Docket No. 89] (the "Stay Relief Motion") by, among other things, pursuing claims against third parties. The Committee and the Debtors opposed the Stay Relief Motion. *See* Docket Nos. 116, 190.

G. On January 6, 2021, the United States Bankruptcy Court for the District of Delaware (the "Court") held a hearing on the Stay Relief Motion and ordered further briefing on the claims that UpgradeYa intended to pursue and why such claims are not property of the estate.

H. After the completion of the briefing, the Court was unable to make a determination of whether UpgradeYa's claims were direct or derivative and entered an order [Docket No. 565] (the "RFS Order") denying the Stay Relief Motion and stating that "[c]laims against non-debtor third parties, such as those that UpgradeYa represents it will pursue, do not generally fall within the purview of Section 362(a) and UpgradeYa is free to pursue such claims." RFS Order, p. 4.

I. On February 9, 2021, UpgradeYa filed proofs of claim numbers ECN-1058 and ECN-1061 (the "Proofs of Claim") in connection with UpgradeYa's Claims asserting the Debtors owe UpgradeYa 478.17 BTC on account of the CredBorrow Claim and $73,258.60 on account of the CredEarn Claim.

J. On March 11, 2021, the Court entered the *Order Confirming and Approving on a Final Basis Modified First Amended Combined Plan of Liquidation and Disclosure Statement of Cred Inc. and its Subsidiaries under Chapter 11 of the Bankruptcy Code* [Docket No. 629]. The Plan became effective on April 19, 2021 (the "Effective Date"). See Docket No. 730.

K. On the Effective Date, the Trust was established and all assets of the Debtors were transferred and assigned to the Trust. *See* Plan, § 12.3; Confirmation Order, ¶¶ 12-13.

L. On April 7, 2021, UpgradeYa filed a complaint in the Supreme Court of the State of New York, County of New York, asserting claims against various third parties connected to the Debtors and/or their business operations and dealings (the "Civil Action").

M. On May 24, 2021, the Trust filed the *Emergency Motion of the Cred Inc. Liquidation Trust to (I) Enforce the Chapter 11 Plan and Confirmation Order and (II) Enjoin UpgradeYa Investments, LLC from Prosecuting the Civil Action and Similar Claims in Other Forums* [Docket No. 786] (the "Emergency Motion"), which sought (i) an interim order staying

the Civil Action until final adjudication of the Emergency Motion and (ii) a final order enjoining UpgradeYa from prosecuting the Civil Action. UpgradeYa objected to the interim relief sought in the Emergency Motion. *See* Docket No. 802.

N. Although not raised in the Emergency Motion, the Trust asserts that UpgradeYa violated the automatic stay by filing the Civil Action (the "Alleged Stay Violation").

O. On June 4, 2021, the Court held an interim hearing on the Emergency Motion and entered an interim order staying the Civil Action. *See* Docket No. 809.

P. The final hearing on the Emergency Motion is currently set for August 4, 2021.

Q. The Parties desire to resolve all potential claims between the Parties, including, but not limited to, the Emergency Motion, the Prepetition Transfer, the Alleged Stay Violation, and UpgradeYa's Claims (the "Disputed Claims") without the need for further litigation.

**NOW, THEREFORE, UPON THE FOREGOING RECITALS, WHICH ARE INCORPORATED AS THOUGH FULLY SET FORTH HEREIN, IT HEREBY IS STIPULATED AND AGREED, BY AND BETWEEN THE PARTIES, THAT:**

1. This Stipulation shall have no force and effect unless and until approved by the United States Bankruptcy Court for the District of Delaware. This Stipulation shall be effective on the date of entry of an order approving the Stipulation (the "Order").

2. Withdrawal of the Civil Action. No later than three (3) business days after entry of the Order, UpgradeYa shall withdraw the Civil Action, without prejudice; *provided*, *however*, that UpgradeYa may re-initiate the Civil Action with one or more claims only if:

a. A final order is entered:

i. dismissing a claim brought by the Trust against one or more of the Civil Action defendants, which claim was raised by UpgradeYa in its complaint; or

ii. barring such claim from being brought by the Trust against one or more Defendants on the ground of *in pari delicto* or lack of standing;

   b.  The Trust fails to commence a legal action asserting one or more of such claims against one or more of the Civil Action defendants on or prior to November 7, 2022; or

   c.  The Trust commences a legal action asserting one or more of such claims against one or more of the Civil Action defendants on or prior to November 7, 2022, and such legal action is not resolved by October 7, 2023.

The Trust shall provide notice to UpgradeYa, in the manner provided in Paragraph 16 of this Stipulation, of the Trust's commencement of any legal action asserting one or more of such claims against one or more of the Civil Action defendants (the "Trust Actions") no later than thirty (30) calendar days of the commencement of any such legal action. The Trust shall have no further obligation to notify UpgradeYa of any other matters related to the Trust Actions.

  3.  Other than as set forth in Paragraph 2, UpgradeYa shall not commence or intervene in any action against any third party that relates in any way to the facts underlying the Civil Action.

  4.  Trust's Claims. In satisfaction of all of the Trust's claims against UpgradeYa, UpgradeYa shall pay thirty-eight (38) BTC to the Trust in accordance with the following payment schedule:

   a.  no later than three (3) business days after entry of the Order, UpgradeYa shall transfer nineteen (19) BTC to the Trust;

   b.  no later than sixty (60) calendar days after entry of the Order, UpgradeYa shall transfer nine and a half (9.5) BTC to the Trust; and

   c.  no later than one hundred and twenty (120) calendar days after entry of the Order, UpgradeYa shall transfer nine and a half (9.5) BTC to the Trust.

  5.  All payments made by UpgradeYa pursuant to this Stipulation shall be made in BTC.

  6.  The Setoff Claim. UpgradeYa shall be deemed to hold a valid and enforceable right of setoff under Bankruptcy Code section 553 on account of the Setoff Claim and shall be

entitled to retain the LOC Balance in satisfaction thereof. Accordingly, the Setoff Claim shall be deemed satisfied.

7. UpgradeYa's Claims. UpgradeYa's Claims shall be deemed allowed in the amount of 440.1804271 BTC (the "Allowed Claim").

8. The Trust shall use good faith efforts to make distributions to UpgradeYa pursuant to this Stipulation in BTC; however, there can be no assurance that the ability to make such distribution is guaranteed. If the Trust cannot make distributions to UpgradeYa in BTC, distributions will be made in cash consistent with the Plan.

9. The rights of UpgradeYa to assert that the cash value of the Allowed Claim as of a date other than the Petition Date, including, without limitation, on or after the Effective Date, whether under section 562 of the Bankruptcy Code or any other applicable law, are preserved and may be asserted in the claims administration process.

10. UpgradeYa represents and warrants that the Prepetition Transfer is the only transfer received by UpgradeYa or its affiliates, including, without limitation, employees, equity holders, subsidiaries, members, officers, representatives, and agents, from any Debtor in the ninety (90) days before the Petition Date.

11. Releases by UpgradeYa. Except for the rights, duties, and obligations created by this Stipulation, effective upon the entry of an Order approving this Stipulation, UpgradeYa, on behalf of itself and its predecessors, successors, assigns, attorneys, agents, representatives, officers, members, directors, shareholders, and employees acting, not in their individual capacities, but solely in their capacities as agents, professionals or representatives of UpgradeYa (collectively, the "UpgradeYa Parties"), shall and do hereby forever release, waive, disclaim, and discharge the Trust and the Debtors' estates, and, except as otherwise set forth herein, their

respective subsidiaries, affiliates, heirs, predecessors, successors, assigns, attorneys, agents, representatives, officers, members, directors, shareholders, and employees, not in their individual capacities, but solely in their capacities as agents, professionals or representatives of the Trust and the Debtors' estates (collectively, the "Trust Released Parties"), of and from any and all obligations, rights, claims, liabilities, damages, demands, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, controversies, costs, expenses, attorneys' fees, losses, cross-claims, counterclaims, controversies, bankruptcy claims, defenses, and claims of any kind, nature and character whatsoever existing as of the date of this Stipulation whether at law or equity, whether based on contract (including without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, recklessness, gross negligence and willful misconduct) or otherwise, foreseen or unforeseen, known or unknown, accrued or unaccrued, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, whether held directly or derivatively up to and including the date of this Stipulation including, but not limited to, those arising from, related to or which are in any way connected to the allegations, facts and circumstances underlying the Disputed Claims; *provided, however,* the Trust Released Parties shall not include any of the Civil Action defendants. For the avoidance of doubt, nothing in this Paragraph 11 shall be deemed to release (i) UpgradeYa's claims and causes of action asserted in the Civil Action against the defendants identified therein or (ii) UpgradeYa's rights to re-initiate the Civil Action as set forth in Paragraph 2.

12. Releases by the Trust. Except for the rights, duties, and obligations created by this Stipulation, effective upon the entry of an Order approving this Stipulation, the Trust Released Parties and all other persons that may be acting or have in the past acted, not in their individual

capacities, but solely in their capacities as agents, professionals or representatives of the Debtors or the Trust, including, without limitation, all present and former officers, directors, restructuring officers, professionals and employees (collectively, the "Trust Releasing Parties") shall and do hereby forever waive, release and discharge the UpgradeYa Parties of and from any and all obligations, rights, claims, liabilities, damages, demands, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, controversies, costs, expenses, attorneys' fees, losses, cross-claims, counterclaims, controversies, bankruptcy claims, defenses, and claims of any kind, nature and character whatsoever existing as of the date of this Stipulation whether at law or equity, whether based on contract (including without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, recklessness, gross negligence and willful misconduct) or otherwise, foreseen or unforeseen, known or unknown, accrued or unaccrued, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, whether held directly or derivatively up to and including the date of this Stipulation including, but not limited to, those arising from, related to or which are in any way connected to the allegations, facts and circumstances underlying the Disputed Claims.

13.    No Admission of Liability. Except as explicitly provided herein, nothing in this Stipulation, the negotiation of such Stipulation or the performance of obligations under this Stipulation shall be deemed or construed to be: (a) an admission as to the amount of, basis for, or validity of any particular claim between the Parties under the Bankruptcy Code or other applicable non-bankruptcy law; (b) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors'

estates; or (c) a waiver of any claims, causes of action, or defenses that may exist against any entity under the Bankruptcy Code or any other applicable law.

14.     Default. If an Event of Default (as defined below) occurs, the Trust shall provide written notice to UpgradeYa at the notice address in Paragraph 16 specifying the Event of Default.  UpgradeYa shall have five (5) business days after receipt of such written notice to cure the specified Event of Default.  If the Event of Default is not cured within the aforementioned time period: (i) any transfer of BTC pursuant to Paragraph 4 made before the Event of Default shall be retained by the Trust, and UpgradeYa shall not be entitled to setoff, recoupment, or counterclaim with respect to such transfer; (ii) Paragraphs 11 and 12 shall be rendered void and the Trust shall be permitted to bring any claim or cause of action against UpgradeYa, including, without limitation, claims pertaining to the Preferential Transfer, the Stay Relief Motion, and the Alleged Stay Violation; (iii) UpgradeYa shall not re-initiate the Civil Action in accordance with Paragraph 2 without the Trust's written consent or court order; and (iv) the Trust may commence an adversary proceeding against UpgradeYa for breach of this Stipulation, including, without limitation, for injunctive relief to enjoin UpgradeYa from re-initiating the Civil Action consistent with the obligations in Paragraph 2.  For the avoidance of doubt, all provisions of this Stipulation shall remain in full force and effect upon an Event of Default, except as provided in this Paragraph 14.

15.     Event of Default. As used herein, "Event of Default" shall include: (i) UpgradeYa's failure to comply with any obligation set forth in this Stipulation; and (ii) any false representation made in this Stipulation.

16.     Notice. All notices, requests, demands, claims, and other communications hereunder will be in writing, including by e-mail.  Any notice, request, demand, claim, or other

communication hereunder shall be deemed duly given: (a) when delivered personally to the recipient; (b) when sent by email, on the date of transmission to such recipient; or (c) one (1) business day after being sent to the recipient by reputable overnight courier service (charges prepaid) and addressed to the intended recipient as set forth below, or at any other address as the party may later designate by written notice.

If to the Trust:

Darren Azman<br>One Vanderbilt Avenue<br>New York, New York 10017<br>E-mail: dazman@mwe.com

If to UpgradeYa:

Kim Brown<br>919 Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>E-mail: brown@lrclaw.com

-and-

Jon Kortmansky<br>7 Times Square, 27th Floor<br>New York, NY 10036-6524<br>E-mail: kortmansky@braunhagey.com

17. Third Parties. No unaffiliated third parties hold any rights under this Stipulation, and this Stipulation does not grant any rights or remedies to any third parties.

18. Authority. Each of the undersigned represents that he or she is duly authorized to execute this Stipulation on behalf of the respective Party hereto and that each such Party has full knowledge and has consented to this Stipulation.

19. Counterparts. This Stipulation may be executed in counterparts, any of which may be transmitted by facsimile or electronic mail, and each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

20. Court Approval. This Stipulation is subject to approval of the Court, and the Parties agree to present the Stipulation to the Court for approval.

21. Final Order. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 9014 or otherwise, the terms and conditions of this Stipulation shall be immediately effective and enforceable upon entry of an Order approving this Stipulation.

22. Jurisdiction and Venue. This Stipulation and the rights and duties of the Parties hereunder shall be governed by and construed, enforced and performed in accordance with the Bankruptcy Code (to the extent applicable) and the laws of the state of Delaware, without giving effect to the principles of conflicts of laws that would require the application of the law of any other jurisdiction. The Parties (i) acknowledge and agree that the Bankruptcy Court shall have the exclusive jurisdiction over this Stipulation, and that any claims, causes of action or other legal proceedings in connection with or related in any manner to this Stipulation may be brought only before the Bankruptcy Court and (ii) expressly waive any right to trial by jury, if any.

23. Modifications. This Stipulation may not be amended or modified orally or by conduct occurring before or after its execution. All amendments and modifications must be in writing, signed by all Parties or their authorized representatives.

24. Entire Agreement. This Stipulation constitutes and contains the entire agreement and understanding among the Parties, and supersedes, extinguishes and replaces all prior negotiations, representations, promises, and proposed agreements, whether written or oral, on the subject hereof. It is understood and agreed that all understandings and agreements heretofore had between the Parties are merged in this Stipulation, which fully and completely expresses the Parties' agreement. The Parties acknowledge that they are not relying upon any statement, representation, promise, or discussion, whether written or oral, not embodied in this Stipulation, made by any other Party.

25. Construction. This Stipulation has been jointly drafted by the Parties at arms' length and each Party has had access to and the opportunity to consult with independent legal counsel and to comment fully on this Stipulation. No Party shall be deemed to be the drafter of this Stipulation for any purpose. Accordingly, this Stipulation shall be interpreted and construed in a neutral manner in accordance with the plain meaning of the language contained herein and shall not be presumptively construed against any Party.

26. Titles and Headings. All titles and headings contained in this Stipulation are for convenience of reference only and shall not be construed to limit or extend the terms of this Stipulation.

27. Voluntary Agreement. The Parties acknowledge that this Stipulation has been entered into freely and voluntarily, and that they have been represented (or have had the opportunity to be represented) by independent legal counsel of their own in connection with this Stipulation, including all negotiations which preceded the execution of this Stipulation.

28. No Waiver. Any failure or delay by any Party to exercise any right under this Stipulation, or to enforce any term of this Stipulation, or any breach thereof, including by agreement to refrain from enforcing any term or exercising any right, shall not be deemed a waiver of that term or right or any remedy hereunder; nor shall it reduce, limit or preclude any future exercise of any right or enforcement of any term herein.

[*Remainder of page intentionally left blank*]

**STIPULATED AND AGREED** to this 2nd day of August, 2021.

**MCDERMOTT WILL & EMERY LLP**

By: /s/ Darren Azman
Darren Azman (admitted *pro hac vice*)
1 Vanderbilt Avenue
New York, NY 10173-191001722
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

- and -

David R. Hurst (I.D. No. 3743)
The Nemours Building
1007 North Orange Street, 10th Floor
Wilmington, DE 19801
Telephone: (302) 485-3900
Facsimile: (302) 351-8711

*Counsel to the Cred Inc. Liquidation Trust*

**LANDIS RATH & COBB LLP**

By: /s/ Kimberly A. Brown
Adam G. Landis (No. 3407)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
Nicolas E. Jenner (No. 6554)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
brown@lrclaw.com
pierce@lrclaw.com
jenner@lrclaw.com

*Counsel to UpgradeYa Investments, LLC*