**<u>EXHIBIT B</u>**

<u>Proposed Redacted Form of Rule 2004 Motion</u>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | **Obj. Deadline: 8/19/21 at 4:00 p.m. (ET)** |
| | ) | **Hrg. Date: 8/26/21 at 3:00 p m. (ET)** |

**MOTION OF THE LIQUIDATION TRUST FOR ENTRY OF AN ORDER DIRECTING
WINSLOW CARTER STRONG TO (I) SIT FOR A RULE 2004 EXAMINATION AND
(II) PRODUCE DOCUMENTS IN RESPONSE TO A RULE 2004 SUBPOENA**

The Cred Inc. Liquidation Trust (the "Trust") established in the above-captioned chapter

11 cases (the "Chapter 11 Cases") of Cred Inc. ("Cred") and its affiliated debtors (collectively,

the "Debtors") hereby moves (the "Motion") pursuant to section 105(a) of title 11 of the United

States Code (the "Bankruptcy Code"), Rule 2004 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), and Rule 2004-1 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules") for entry of an order, substantially in the form attached hereto as **Exhibit A**, directing

Winslow Carter Strong to (i) sit for a Bankruptcy Rule 2004 examination and (ii) produce

documents in response to the Rule 2004 Requests (as defined herein). In support of this Motion,

the Trust respectfully represents as follows:

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax
identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred
Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third
Avenue, San Mateo, California 94401.

## JURISDICTION AND VENUE

1.       The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334, and the *Amended Standing Order of Reference* from the United States District Court for

the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the

meaning of 28 U.S.C. § 157(b)(2). In accordance with Local Rule 9013-1(f), the Trust confirms

its consent to the entry of a final order by the Court in connection with this Motion to the extent

that it is later determined that the Court, absent consent of the parties, cannot enter final orders or

judgments in connection herewith consistent with Article III of the United States Constitution.

2.       Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The statutory predicates for the relief sought herein are Bankruptcy Code section

105(a), Bankruptcy Rule 2004, and Local Rule 2004-1.

## BACKGROUND

**B.       General Background.**

4.       On November 7, 2020 (the "Petition Date"), the Debtors commenced the Chapter

11 Cases by filing petitions for relief under chapter 11 of the Bankruptcy Code.

5.       On March 11, 2021, the Court entered an order [Docket No. 629] confirming the

*Modified First Amended Combined Plan of Liquidation and Disclosure Statement of Cred Inc.*

*and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code* [Docket No. 629-1] (as amended,

the "Plan").[2]  The Plan became effective on April 19, 2021 (the "Effective Date"). *See* Docket

No. 730. On the Effective Date, the Trust was established and the Debtors' assets were

transferred and assigned to the Trust. *See* Plan, § 12.3. The Trust is being administered by the

Liquidation Trustees (as defined in the Plan). *See* Plan, § 12.3(a).

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

C.    **Relationship of the Parties**

6.    Cred and Mr. Strong are parties to that certain *Consulting Agreement*, dated February 11, 2020 (the "Consulting Agreement"), pursuant to which Mr. Strong agreed to provide certain consulting services to Cred, including proposing new customers for Cred's product offerings. Pursuant to the Consulting Agreement, Mr. Strong was entitled to receive a commission for each Potential Customer (as defined in the Consulting Agreement) he proposed and Cred accepted. A copy of the Consulting Agreement is attached hereto as **Exhibit B**.

7.    Cred and Mr. Strong are also parties to that certain *Transfer Certificate and Terms*, dated July 1, 2020 (the "Bond Purchase Agreement"), pursuant to which Cred voluntarily purchased that certain Bond # 2 Series 2020-1 Tranche 1 from Mr. Strong in exchange for a transfer of 516.39344262 BTC[3] from Cred to Mr. Strong. Cred executed such transfer to Mr. Strong on the same date (the "Suspect Transfer"). A copy of the Bond Purchase Agreement is attached hereto as **Exhibit C**.

8.    The Trust is currently investigating the Suspect Transfer, the propriety of certain consulting fees paid or owed to Mr. Strong under the Consulting Agreement, and the extent of Mr. Strong's involvement with the Debtors' business practices that ultimately led to the Debtors' collapse and these Chapter 11 Cases.

9.    In addition, the Trust believes that Mr. Strong may be in possession of documents and information that would assist the Trust with its investigation of claims against other third parties given Mr. Strong's role in referring customers to Cred.

---

[3]    As of the August 9, 2021, this is equal to approximately $23.8 million.

**D.      The Trust's Prior Attempts to Pursue a 2004 Examination of Mr. Strong**

10.      On June 18, 2021, the Trust issued a Rule 2004 subpoena to Mr. Strong, attached hereto as **Exhibit D**, requesting that Mr. Strong produce certain documents and sit for a deposition (the "Rule 2004 Requests"). Pursuant to the Rule 2004 Requests, Mr. Strong was directed to produce documents by July 1, 2021, and sit for a deposition on July 19, 2021.

11.      The Trust communicated with counsel to Mr. Strong via email and conducted an initial meet and confer phone call on June 25, 2021 to discuss the Rule 2004 Requests. Mr. Strong's counsel raised issues with certain specific requests. Mr. Strong's counsel agreed to comply with the Rule 2004 Requests if the Trust agreed to limit the scope of certain specific requests.

12.      On July 21, 2021, counsel to Mr. Strong and counsel to the Trust engaged in a subsequent meet and confer phone conference. During this phone call, Mr. Strong's counsel agreed that Mr. Strong would comply with the Rule 2004 Requests and the parties agreed on the scope of production. Specifically, the Trust agreed to limit the scope of production as requested by Mr. Strong's counsel during the June 25, 2021 meet and confer phone conference and Mr. Strong's counsel agreed to comply voluntarily pursuant to Del. Bankr. L.R. 2004-1(c).[4]  On that same date, the Trust delivered a written letter to Mr. Strong's counsel, in which the Trust offered to settle all potential claims against Mr. Strong in exchange for certain consideration from Mr. Strong. Although unnecessary, the settlement letter made clear that the Trust's investigation of claims related to Mr. Strong was continuing (including through the Rule 2004 Requests).

---

[4]      Contingent upon Mr. Strong's agreement to comply voluntarily under Del. Bankr. L.R. 2004-1(c), the Trust agreed to forego seeking discovery on requests 10, 12, 13, 14, and 15. Since Mr. Strong is no longer agreeing to comply voluntarily, the Trust seeks discovery on all requests contained in the Rule 2004 Requests.

13.     As of the date hereof, Mr. Strong has not produced any documents or agreed to sit for a deposition. Mr. Strong did not respond to the Trust's settlement offer.

14.     On August 7, 2021, the Trust sent one final request to Mr. Strong's counsel by email, attached hereto as **Exhibit E**, asking them to confirm that Mr. Strong would produce documents and sit for a deposition, as they had previously agreed to do. The Trust requested that Mr. Strong produce the requested documents by no later than August 13, 2021, and that Mr. Strong's counsel confirm by email no later than August 9, 2021. As of the date hereof, no such confirmation has been forthcoming from Mr. Strong's counsel. Accordingly, the Trust has no choice but to file this Motion to compel Mr. Strong's compliance with the Rule 2004 Requests.

## RELIEF REQUESTED

15.     By this Motion, the Trust requests entry of an order pursuant to Bankruptcy Rule 2004, in the form attached hereto as **Exhibit A**, directing Mr. Strong to (i) produce documents in response to the Rule 2004 Requests; and to (ii) sit for a deposition pursuant to Bankruptcy Rule 2004.

## BASIS FOR RELIEF REQUESTED

16.     Under Bankruptcy Code section 105(a), the Court maintains broad equitable powers to fashion an order or decree in aid of the enhancement of the value of the Debtors' estates for the benefit of all stakeholders. *See* 11 U.S.C. § 105(a). "On motion of any party in interest, the court may order the examination of any entity" and "the production of documents . . . may be compelled as provided in Rule 9016."  Fed. R. Bankr. P. 2004.

17.     "A Rule 2004 examination may be used to cover a wide range of subjects relating to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." *Simon v. FIA Card*

*Servs., N.A.*, 732 F.3d 259, 278 (3d Cir. 2013) (internal citations omitted). Discovery under Bankruptcy Rule 2004 includes, *inter alia*, any matter that may relate to the property and assets of the estate; the financial condition of the debtor; and any matter that may affect the administration of a debtor's estate. *See* Fed. R. Bankr. P. 2004(b); *see also In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 354 n.6 (3d Cir. 2007) (Bankruptcy Rule 2004 "allows parties with an interest in the bankruptcy estate to conduct discovery into matters affecting the estate."); *In re Wash. Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2010) ("[t]he purpose of the examination is to enable the trustee to discover the nature and extent of the bankruptcy estate.").

18.     In these Chapter 11 Cases, a Bankruptcy Rule 2004 examination is appropriate and necessary. The Trust is actively investigating potential claims against Mr. Strong and third parties, and believes that Mr. Strong is in possession of key documents and information that will allow the Trust to substantiate and pursue such claims.

19.     The Rule 2004 Requests are narrowly tailored and are appropriate in scope. The Trust's inquiry falls squarely within the permissible scope of discovery under Bankruptcy Rule 2004 and should be authorized.

20.     For the avoidance of doubt, the Trust has not yet commenced any litigation against Mr. Strong, and thus Rule 2004 is the appropriate (and only) vehicle for discovery at this stage. *See In re Wash. Mut., Inc.*, 408 B.R. 45, 53 (Bankr. D. Del. 2009) ("The 'pending proceeding' rule is predicated on there actually being a pending action involving the two parties."); *In re Millenium Lab Holdings II, LLC*, 562 B.R. 614, 629 (Bankr. D. Del. 2016) (citing and following *Wash. Mut.*).

21.     The Trust reserves the right to seek a further order of the Court in the event that the Trust subsequently determines that additional information is required.

## **LOCAL RULE 2004-1 CERTIFICATION**

22.     Attached hereto as **Exhibit F** is the Trust's certification of compliance with Del. Bankr. L.R. 2004-1(b).

## **NOTICE**

23.     Notice of the Motion has been provided to (i) Mr. Strong, (ii) counsel to Mr. Strong, and (iii) parties that have requested notice pursuant to Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Trust submits that no other or further notice is required.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Trust requests entry of an order in the form attached hereto as

**Exhibit A**, directing Mr. Strong to (i) produce documents in response to the Rule 2004 Requests;

and (ii) sit for a deposition pursuant to Bankruptcy Rule 2004.

Dated:   Wilmington, Delaware
        August 11, 2021

**MCDERMOTT WILL & EMERY LLP**

*/s/ David R. Hurst*
David R. Hurst (I.D. No. 3743)
1007 North Orange Street, 10th Floor
Wilmington, DE 19801
Telephone: (302) 485-3900
Facsimile:  (302) 351-8711

- and -

Darren Azman (admitted *pro hac vice*)
Joseph B. Evans (admitted *pro hac vice*)
1 Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5400
Facsimile:  (212) 547-5444

*Counsel to the Cred Inc. Liquidation Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Obj. Deadline: 8/19/21 at 4:00 p.m. (ET)** |
|  | ) | **Hrg. Date: 8/26/21 at 3:00 p m. (ET)** |

### NOTICE OF HEARING ON THE MOTION OF THE LIQUIDATION TRUST FOR ENTRY OF AN ORDER DIRECTING WINSLOW CARTER STRONG TO (I) SIT FOR A RULE 2004 EXAMINATION AND (II) PRODUCE DOCUMENTS IN RESPONSE TO A RULE 2004 SUBPOENA

TO:   (i) Mr. Strong, (ii) counsel to Mr. Strong, and (iii) all other parties that have requested notice pursuant to Del. Bankr. L.R. 2002-1(b)

PLEASE TAKE NOTICE that, on August 11, 2021, the Cred Inc. Liquidation Trust established in the above-captioned chapter 11 cases (the "Trust") filed the *Motion of the Liquidation Trust for Entry of an Order Directing Winslow Carter Strong to (I) Sit for a Bankruptcy Rule 2004 Examination and (II) Produce Documents in Response to a Rule 2004 Subpoena* (the "Motion") with the United States Bankruptcy Court for the District of Delaware (the "Court").

An objection, if any, to the Motion must be in writing, filed with the Court, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, and served upon undersigned counsel to the Trust, so that it is received on or before 4:00 p.m. (ET) on August 19, 2021.

*[Remainder of Page Intentionally Left Blank]*

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

A HEARING ON THE MOTION WILL BE HELD ON AUGUST 26, 2021 AT 3:00 P.M. (ET) BEFORE THE HONORABLE JOHN. T. DORSEY, UNITED STATES BANKRUPTCY JUDGE, UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 NORTH MARKET STREET, 5TH FLOOR, COURTROOM NO. 5, WILMINGTON, DE 19801.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated:  Wilmington, Delaware
        August 11, 2021

                             **MCDERMOTT WILL & EMERY LLP**

                             */s/ David R. Hurst*
                             David R. Hurst (I.D. No. 3743)
                             1007 North Orange Street, 10th Floor
                             Wilmington, DE 19801
                             Telephone: (302) 485-3900
                             Facsimile:  (302) 351-8711

                             - and -

                             Darren Azman (admitted *pro hac vice*)
                             Joseph B. Evans (admitted *pro hac vice*)
                             1 Vanderbilt Avenue
                             New York, NY 10017
                             Telephone: (212) 547-5400
                             Facsimile:  (212) 547-5444

                             *Counsel to the Cred Inc. Liquidation Trust*

# **EXHIBIT A**

Proposed Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## ORDER DIRECTING WINSLOW CARTER STRONG TO
## (I) SIT FOR A RULE 2004 EXAMINATION AND (II) PRODUCE
## DOCUMENTS IN RESPONSE TO A RULE 2004 SUBPOENA

Upon the motion (the "Motion")[2] of the Cred Inc. Liquidation Trust (the "Trust")

established in the above-captioned chapter 11 cases of Cred Inc. and its affiliated debtors for

entry of an order pursuant to Bankruptcy Code section 105(a), Bankruptcy Rule 2004, and Local

Rule 2004-1, directing Mr. Winslow Carter Strong to (i) sit for a Rule 2004 examination and

(ii) produce documents in response to the Rule 2004 Requests; and this Court having jurisdiction

to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and

1334(b) and the *Amended Standing Order of Reference* from the United States District Court for

the District of Delaware, dated February 29, 2012; and upon consideration of the Motion; and the

requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and finding that adequate notice of

the Motion having been given; and it appearing that no other or further notice need be given; and

the Court finding that Bankruptcy Rule 2004 examination of Mr. Strong is appropriate for the

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

reasons set forth in the Motion, and that the time for compliance with the subpoena for the production of documents is reasonable; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1.    The Motion is granted to the extent set forth herein.

2.    Mr. Strong shall respond to the Rule 2004 Requests, produce the requested documents, and schedule and sit for a Rule 2004 Examination via Zoom on or before fourteen (14) days after the date of this Order, or at such other time or location or in such other form as Mr. Strong and the Trust may hereafter agree.

3.    The Trust is authorized and empowered to take any and all actions necessary to implement the terms of this Order.

4.    The Trust's rights are reserved to request additional discovery and/or examination, including, without limitation, requests based on any information that may be revealed as a result of the discovery authorized pursuant to this Order.

5.    This Order is without prejudice to the right of the Trust to seek further discovery of any other entity.

6.    The terms and conditions of this Order shall be effective immediately and enforceable upon its entry.

7.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# EXHIBIT B

Consulting Agreement

**CONSULTING AGREEMENT**

This CONSULTING AGREEMENT (the "**Agreement**") is made and entered into effective as of the date set forth below (the "**Effective Date**"), by and between CRED (US) LLC, a Delaware corporation (the "**Company**"), and the undersigned consultant (the "**Consultant**"). The Company and Consultant are each referred to as a "**Party**," and are collectively referred to as the "**Parties**," to this Agreement.

**BACKGROUND**

The Company seeks to pursue various cryptocurrency and lending business opportunities to recognize value and improve financial performance. Consultant has professional contacts in the cryptocurrency sector who may be interested in crypto lending or crypto collateralized borrowing.

**AGREEMENT**

Now, therefore, in consideration of the promises and mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.     **Recitals**. The Recitals are hereby incorporated herein and made a part of this Agreement.

2.     **Consulting Services**.

        a.     Consultant will consult with Company on a non-exclusive basis, by proposing to Company the Potential Customers identified on **Schedule B** (each, a "**Potential Customer**") in connection with the borrowing or lending products offered by the Company (each, a "**Financial Transaction**").

        b.     The Company may, in its sole and absolute discretion, reject or accept any Potential Customer and/or Financial Transaction. Company has 30 days from time Consultant identifies Potential Customer's to Company to reject or accept Consultant's Potential Customer for purposes of this Agreement. If Company fails to reject Consultant's Potential Customer within said 30-day period, Consultant's Potential Customer will be deemed approved for purposes of this Agreement. Consultant may identify Potential Customers to Company via email sent to Company's designated agent for purposes of rejecting or accepting Consultant's Potential Customers and Company's designated agent is responsible for adding Consultant's Potential Customers to **Schedule B** under this Agreement.

        c.     All Potential Customers are to be identified on **Schedule B** attached hereto and incorporated by reference herein, and as such schedule may be amended or modified from time to time by the Company in accordance with paragraph 2(b). The Company, in its sole discretion, will determine which Potential Customers to contact.

DocuSign Envelope ID: E6E86668-E25A-4603-9179-6803FE1BD9F55

d.       Consultant represents and warrants that, if its activities under this agreement are deemed to be brokering, finding, arranging or any similar characterization, then Consultant has all necessary licenses and registrations necessary to engage in such activities.

e.       Consultant has no authority, and may not act, to bind the Company in any way to any third party.  Consultant has no authority to attend, participate in or assist in any negotiations between any Potential Customer and the Company.

f.       Consultant represents and warrants that it will comply with all state and federal lending, brokering and other laws applicable to Consultant.

g.       Consultant will review with the Company the identities of all Potential Customers before introduction to the Company.  Consultant may not present any Financial Transaction opportunity to any Potential Customer, participate in the preparation of any financial or sales materials regarding any Financial Transaction opportunity to any Potential Customer, or make any recommendations regarding, or field any questions about, any Financial Transaction opportunity to any Potential Customer.

h.       Consultant may not engage in any form of advertising in performing its duties under this Agreement.  This prohibition includes, but is not limited to, any general solicitation, including any public medium, mass mailing, any advertisement, article or notice published in any magazine, newspaper, or newsletter and any seminar or meeting where the attendees have been invited by any mass mailing, general solicitation or advertising.

i.       Consultant will report to the Company periodically and provide full and fair disclosure of all its activities relating to and/or in connection with the Company or any Financial Transaction.

j.       Consultant will work with the Company's counsel to achieve the objectives of this Agreement.

3.       **Fees and Expenses**.  In consideration of the services described above:

a.       Consulting Fee.  If the Company consummates a Financial Transaction with one or more Potential Customers, the Company will pay to Consultant a consulting fee (the "**Consulting Fee**") up to the percentage of the Aggregate Consideration of a Financial Transaction, as set forth in Schedule B as the same is amended periodically. The Consulting Fee will be paid to Consultant in cash in US dollars on a schedule to be agreed between the Parties, but no later than 30 days after the end term of any Financial Transaction.

b.       Expenses.  The Company will reimburse Consultant for any expenses incurred by Consultant which are pre-approved in writing by the Company.

4.       **Company to Control Transaction.**  The Company will determine the prices, terms and conditions of any Financial Transaction in its sole and absolute discretion.  The Company has sole authority to control all discussions and negotiations regarding any proposed or actual offering or sale of any loans or other Company products and services.  Nothing in this Agreement obligates the Company to actually lend, accept any pledge of collateral or consummate any transaction.  The

Company may terminate any negotiations or discussions at any time and reserves the right not to proceed with any loan or loan application.

5. **Indemnification**.

      a.     Each Party agrees to indemnify and hold harmless the other Party and its affiliates, directors, officers, members, employees, agents, consultants, attorneys, accountants, associates and other representatives (individually, an "**Indemnified Person**" and collectively, the "**Indemnified Persons**") from and against any and all losses, claims, damages, and liabilities, joint or several (and all actions, claims, proceedings and investigations in respect thereof) (collectively, "**Losses**"), caused by, related to or arising out of, directly or indirectly: (i) the indemnifying Party's gross negligence, bad faith or willful misconduct in connection with any Financial Transaction; (ii) any violation by the indemnifying Party of federal or state lending laws in connection with this Agreement or any Financial Transaction; or (iii) any breach by the indemnifying Party under this Agreement.   In addition, the Company will indemnify and hold harmless Consultant and its affiliates, directors, officers, members, employees, agents, consultants, attorneys, accountants, associates and other representatives from and against any and all Losses, caused by, related to or arising out of, directly or indirectly any Financial Transaction, except as provided in Section 5(c) below.

      b.     In case any litigation or proceeding is brought against any Indemnified Person under this Section, the indemnifying Party may assume the defense of such litigation or proceeding with counsel of its choice at its expense (in which case the indemnifying Party is not responsible for the fees and expenses of any separate counsel retained by such Indemnified Person, except in the limited circumstances described below).  Notwithstanding such election to assume the defense of such litigation or proceeding (1) such Indemnified Person may employ separate counsel and to participate in the defense of such litigation or proceeding, and (2) the indemnifying Party must bear the reasonable fees, costs and expenses of separate counsel if (but only if) the use of counsel selected by the indemnifying Party to represent such Indemnified Person would present such counsel with a conflict of interest under applicable laws or rules of professional conduct.

      c.     Notwithstanding the foregoing, the indemnifying Party will not be liable under this Section to the extent that any Loss is found in final judgment by a court of competent jurisdiction from which no appeal can be or is taken to have resulted from the gross negligence, bad faith, willful misconduct or fraudulent misrepresentation of the Indemnified Person(s).

      d.     In order to provide for just and equitable contribution, if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification in such case, then the Company, on the one hand, and Consultant on the other hand, must contribute to the Losses to which the Indemnified Persons may be subject in accordance with the relative benefits received by the Company, on the one hand, and Consultant on the other hand, and also the relative fault of the Company on the one hand and Consultant on the other hand, in connection with the statements, acts or omissions which resulted in such Losses and the relevant equitable considerations must also be considered. No person found liable for a

fraudulent misrepresentation is entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation.

6. **Term and Termination.** The term of this Agreement will commence on the Effective Date and will remain in effect for one year; provided, however, that Section 5 of this Agreement will survive for two years after the date of termination; provided further, that Sections 7 and 8 of this Agreement will survive in perpetuity. Further, in the event of termination, and for a period of one year after termination, the Consultant will be entitled to compensation outlined in Section 3 if the Company consummates a Financial Transaction with a Potential Customer identified per Schedule B, or as updated periodically.

7. **Confidentiality**.

a. Any and all proprietary information given by the one Party (Disclosing Party) to the other Party (Receiving Party) will be treated as confidential by the Receiving Party, and will not be copied, disclosed, or transferred by the Receiving Party to others, and will be used by the Receiving Party only for services under this Agreement, except for the following: (a) information that is generally available to the public (other than as a result of a disclosure by the Receiving Party) or was or becomes available from a third party to the Receiving Party on a non-confidential basis without a breach of a confidentiality obligation by the third party to the Disclosing Party, (b) as specifically consented to by Disclosing Party or (c) as required by law, regulation, legal process or regulatory authority. Company agrees that information relating to Consultant's Potential Customers must be treated as confidential and Company will not use information relating to Consultant's Potential Customers for purposes other than those contemplated under this Agreement and Company will not share information relating to Consultant's Potential Customers with any other parties.

b. All communications regarding any possible transactions, requests for due diligence or other information, requests for facility tours, product demonstrations, or management meetings, will be submitted or directed to the Company, and Consultant may not contact any employees, customers, suppliers or contractors of Company or its affiliates without prior express permission.

c. Nothing in this Agreement constitutes a grant of authority to the Consultant or any representative thereof to remove, examine or copy any particular document or types of information regarding the Company, and Company will retain control over the particular documents or items to be provided, examined or copied.

d. Upon termination of this Agreement in accordance with its terms, or at any time Company requests, Consultant must, upon Company's written demand, return to Company or destroy all documents and other materials previously provided to Consultant by Company.

8. **Publicity**. The Company will control all press releases or announcements to the public, the media or the industry regarding Cred's products and services. Except to Potential Customers in furtherance of this Agreement, Consultant will not disclose the fact that discussions or negotiations are taking place concerning a possible transaction involving Company, or the status or terms and conditions thereof.

DocuSign Envelope ID: E6E86668-F25A-4603-9379-68935A1BD9F55

9.    **Due Diligence**.  Neither Company, nor any of its directors, officers or shareholders, should, in any way rely on Consultant to perform any due diligence with respect to Company.  It is expressly understood and agreed that to the extent due diligence is conducted, it will be conducted by the Potential Customers.

10.    **Notices**.  All notices or other communications provided for by this Agreement must be given in writing and sent by email, facsimile transmission, overnight delivery, or email to the parties at their addresses set forth below. Any party may change an address or facsimile number by giving written notice to the other party.

11.    **Successors and Assigns**.  This Agreement is binding upon and inures to the benefit of Company, Consultant and their successors and assigns.  Notwithstanding the foregoing, the services by Consultant under this Agreement may not be assigned by Consultant.  Consultant may, however, assign the right to receive any consideration earned by Consultant under this Agreement, without the consent of Company.

12.    **Entire Agreement; Modification**.  This Agreement constitutes the entire understanding and agreement of the parties with respect to the subject matter hereof.  This Agreement may not be amended except by a written instrument signed by both parties hereto.

13.    **Governing Law; Arbitration**.  This Agreement must be governed by and construed in accordance with the laws of the state of Delaware, without regard to conflict of law rules.  Any controversy or claim arising out of or related to this Agreement, or breach of this Agreement, must be solely resolved by the federal, state and/or local courts of the State of Delaware, including the U.S. District Court for the District of Delaware, and both Company and Consultant consent to the jurisdiction of such courts, agree to accept service of process, and hereby waive any jurisdictional or venue defenses otherwise available to it.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date first set forth above.

"**Effective Date**": 02/11/20

**COMPANY:**

Cred (US) LLC

By: _Daniyal Inamullah_ _____
E0D6F47295EA426...
Daniyal Inamullah, VP of Capital Markets

Address:
2121 S. El Camino Real, Suite 500
San Mateo, CA 94403

**CONSULTANT:**

By: _Winslow Strong_ _____
D1B00B53037C403...
Name: Winslow Strong

Address:
100 Carr 115 Unit 778
_____

**SCHEDULE A**

**CONSULTING FEE**

Consulting Fee for a Financial Transaction with one or more Potential Customers:

    10% of the Aggregate Consideration of a "US LoC with CredEarn" transaction

    10% of the Aggregate Consideration of a "NON-US CredEarn" transaction

The term "**Aggregate Consideration**" means:

    <u>US LoC with CredEarn</u> – The total interest paid TO Company on the principal balance of the Financial Transaction.

    <u>NON-US CredEarn</u> – The total interest paid BY Company on the Financial Transaction.

# SCHEDULE B

## POTENTIAL CUSTOMERS

## EXHIBIT C

Bond Purchase Agreement

## TRANSFER CERTIFICATE AND TERMS

Income Opportunities (Luxembourg) S.A.
Attn: The Board of Directors
19, rue de Bitbourg
L-1273 Luxembourg
Grand Duchy of Luxembourg
Tel: (352) 27 44 41 839

      Re:    Transfer of Bond # 2 of Series 2020-1 Tranche 1 (the "Note") issued by Income Opportunities (Luxembourg) S.A Acting (the "Company") on behalf of its Compartment Cred Global Notes 1 (the "Issuer")

Ladies and Gentlemen:

The undersigned (the "Transferee") has agreed to purchase from WINSLOW CARTER STRONG (the "Transferor") the Note for the Purchase Price set forth below (Summary of Terms) upon the terms and on the basis of the representations, warranties and covenants specified herein.

1.    The Transferee acknowledges that it has received and read the Base Prospectus dated January 30, 2020, as amended or supplemented, including the general terms and conditions applicable to the Notes and that it has received and read the applicable Final Terms for the Note, attached herewith in Schedule 1, and confirms to be familiar with their content. By signing this Transfer Certificate, the Transferor agrees to adhere to the terms & conditions of the Note.

2.    The Transferee understands that the transfer of the Note and Transferee's obligation to pay the Purchase Price will only become effective upon registration of the transfer in accordance with the provisions of the relevant Transaction Documents and execution by the Issuer of the attached acknowledgement. At any time, the Issuer may request the Transferee to provide it with information with respect to AML and KYC, as well as about the origin of the funds. In particular, such request may occur before registration of the transfer of the Note.

3.    The Transferee confirms that it has completed and executed the Tax Form W-8BEN or Tax Form W8-BEN-E as set out in Schedule 2 and Schedule 3 of this Transfer Certificate in accordance with the instructions accompanying the Tax Form. Such Tax Form will be retained by the Company for its own records and will only be released by the Company in accordance with Clause 7 below.

4.    The Transferee confirms that it has sent a copy of the entire completed Transfer Certificate appropriately executed and any additional required documents, including the appropriate Tax Form as set out in Schedule 2 and Schedule 3 of this Transfer Certificate, to Cred Inc. (the "Arranger") via email to investorservices@mycred.io, and the original documents by overnight courier to:

Income Opportunities (Luxembourg) S.A.

-1-

Attn: The Board of Directors
19, rue de Bitbourg
L-1273 Luxembourg
Grand Duchy of Luxembourg
Tel: (352) 27 44 41 839

5.      The Issuer has appointed Cred Inc., a Delaware corporation ("Calculation Agent"), as its processing and calculation agent for purposes of making calculations and determinations as described in the Prospectus. Transferee understands and acknowledges that nothing in this subsection modifies Issuer's obligations under the Notes in any way and that Issuer's delivery of the principal and interest amounts stated in the Notes to Calculation Agent satisfies Issuer's obligations in full under the Note, this Transfer Certificate and all related documents. Transferee elects to have Calculation Agent repay the fiat principal and interest due to Noteholder under the purchased Note in the form of the cryptocurrency specified below and the cryptocurrency interest specified below.

The specified cryptocurrency to be received by Noteholder in lieu of the fiat principal and interest specified in the Notes:

[X]    BTC  [__]   ETH  [__]   Litecoin
[__]   UPUSD     [__]   LBA  [__]  XRP

The specified manner of paying principal and interest in cryptocurrency in lieu of fiat principal and interest on the Notes:

Principal: Noteholder is repaid cryptocurrency tokens
1-for-1 for each cryptocurrency token paid to purchase the Notes

Interest: Noteholder is paid an additional __((0 08 / 12) x 5))__ of a cryptocurrency token for each cryptocurrency token paid to purchase the Notes

Calculation Agent's calculation of cryptocurrency value is generally determined with reference to the closing price for such cryptocurrency as reported on www.Coinbase.com at 4 P.M. Eastern Time on the calculation date, as such price is adjusted by Calculation Agent to factor in intraday trading conditions and Calculation Agent's hedging and crypto transaction processing costs.

7.      Transferee information:

 Residence/Principal Business Address of the Noteholder:

Address: Cred Inc.
Telephone Number: 415.706.1374
Email: dan@mycred.io

Mailing address for receiving communications:

(Do not complete if same as above):

Address:_____
Telephone Number: _____
Email: _____

8.      The Transferee shall cooperate with the Issuer and the Arranger to provide in a timely manner any other information, form, disclosure, certification or documentation that the Issuer may reasonably request (including, without limitation, any information requested pursuant to Sections 1471-1474 of the US Internal Revenue Code of 1986 (the "Code") in order to maintain appropriate records and provide for withholding amounts, if any, relating to the Transferee's Note, or otherwise as the Issuer or Arranger deems reasonably necessary. In the event that the Transferee fails to provide any such information, or provides false information, regarding U.S. tax withholding, the Issuer and its respective direct or indirect shareholders, managers, officers, directors, employees, agents, service providers and their affiliates shall have no obligation or liability to the Transferee with respect to any U.S. tax matters or obligations that may be assessed against the Transferee or the Transferee's beneficial owners. The Transferee expressly acknowledges that such tax forms and withholding information may be provided to any withholding agent that has control, receipt or custody of the income of which the Transferee is the beneficial owner or any withholding agent that can disburse or make payments of the income of which is the beneficial owner. In addition, the Transferee consents to the use of any information provided by the Transferee for purposes of complying with Section 1471-1474 of the Code. Without limiting the generality of the foregoing, the Transferee agrees to waive, in accordance with Section 1471(b)(1)(F)(i) of the Code, any provision of foreign law that, absent such waiver, would prevent any reporting of information described in Section 1471(b) or (c) of the Code.

9.      Summary of Terms:

Face Amount:  $ USD 3,939,535

Interest Rate:    Eight per cent (8%) per annum

Purchase Price:  516.39344262 BTC  (crypto or fiat type and amount)

Effective Date:  July 1, 2020

This Transfer Certificate shall be governed by and construed in accordance with the laws of the Grand Duchy of Luxembourg and the courts of Luxembourg, Grand Duchy of Luxembourg shall have exclusive jurisdiction to hear and determine any suit, action or proceeding, and to settle any disputes, which may arise out of or in connection with this Transfer Certificate.

Signed in the City of <u>San Mateo</u>, State of <u>California</u>, as of July 1, 2020.

TRANSFEREE:

Cred Inc., a Delaware corporation

By: _Dan Schatt_ _____
91B4E836EB01469...
     Name:  Dan Schatt
     Title:  CEO

The Transferor acknowledges the foregoing terms.  By execution hereof, Transferor agrees that the Purchase Price shall not be paid until the Issuer has executed and delivered this Transfer Certificate.

TRANSFEROR:

WINSLOW CARTER STRONG

By: _Winslow Carter Strong_ _____
D1B00B53037C403...
     Name: Winslow Carter Strong

The Issuer acknowledges the foregoing terms.  By execution hereof, Issuer hereby waives any restriction on transfer on the Note.

ISSUER:

INCOME OPPORTUNITIES (LUXEMBOURG) S.A ACTING
ON BEHALF OF ITS COMPARTMENT CRED GLOBAL NOTES 1


By:_____
    Name: Andrew MacRitchie
    Title: Director A


By:_____
    Name: Elvin Montes
    Title: Director B

The Issuer acknowledges the foregoing terms.  By execution hereof, Issuer hereby waives any restriction on transfer on the Note.

ISSUER:

INCOME OPPORTUNITIES (LUXEMBOURG) S.A ACTING
ON BEHALF OF ITS COMPARTMENT CRED GLOBAL NOTES 1

By: _____
       Name: Andrew MacRitchie
       Title: Director A


By: _____
       Name: Elvin Montes
       Title: Director B

**Schedule 1**

**Final Terms for the Notes**

**Final Terms for the Notes dated January 30, 2020**

**Income Opportunities (Luxembourg) S.A.**

**(the "Company")**

**acting on behalf of its Compartment Cred Global Notes 1**

**Issue of USD 100,000,000 Notes**

**under the**

**Notes Issuance Programme**

Terms used herein shall be deemed to be defined as such for the purposes of the Terms and Conditions included in the Base Prospectus dated January 30, 2020 as amended or supplemented. This document constitutes the Final Terms for the Notes described herein and must be read in conjunction with the Base Prospectus. Full information on the Issuer and the Notes is only available on the basis of the combination of these Final Terms for the Notes and the Base Prospectus containing the Terms and Conditions. The Base Prospectus is available for inspection at, and copies may be obtained, free of charge, from, the Company's registered office at 19, rue de Bitbourg, L-1273 Luxembourg, Grand Duchy of Luxembourg.

Include whichever of the following apply or specify as "Not Applicable" (N/A). Note that the numbering should remain as set out below, even if "Not Applicable" is indicated for individual paragraphs or sub-paragraphs. Italics denote directions for completing the Final Terms.

References herein to numbered Conditions are to the Terms and Conditions of the relevant series of Notes and words and expressions defined in such Terms and Conditions shall bear the same meaning in these Final Terms for the Notes in so far as it relates to such series of Notes, save as where otherwise expressly provided.

**GENERAL**

| 1. | Issuer: | Income Opportunities (Luxembourg) S.A., acting on behalf of its Compartment Cred Global Notes 1 |
|---|---|---|
| 2. | Series Number of the Notes: | 1 |
| 3. | Tranche Number of the Series: | 1 |
| 4. | If Notes to be consolidated with Notes of existing Series: | No |
| 5. | Aggregate Number of Notes in the Series: | 2 |

| 6. | Aggregate Number of Notes in the Tranche: | 2 |
|---|---|---|
| 7. | Form of Notes: | Registered |
| 8. | (a) Issue Date: | January 31, 2020 |
| | (b) Interest Commencement Date: | February 1, 2020 |
| 9. | Date of board resolution approving the issue: | January 28, 2020 |
| | Nominal value per Note | USD 3,939,535 |
| | Number of Notes subscribed by the Noteholder | 1 |
| 10. | Issue Price | USD 3,939,535 |
| 11. | Maturity Date: | June 30, 2020 |
| 12. | Redemption Price at Maturity Date: | USD 3,939,535 |
| 13. | Compartment General Account: | Not Applicable |

**PROVISIONS RELATING TO INTEREST**

| 14. | Fixed Interest Rate: | Eight per cent. (8%) per annum |
|---|---|---|
| 15. | Interest Payment Date(s): | June 30, 2020 |
| 16. | Interest Period End Date(s): | At maturity |
| 17. | Other terms relating to the method of calculating interest for Fixed Rate Notes: | None |
| 18. | Day Count Fraction: | 30/360 |

**PROVISIONS RELATING TO SECURITY**

| 19. | Secured Notes: | Not Applicable |
|---|---|---|
| | | (*If applicable give details of security. If not applicable, delete the remaining sub-paragraphs of this paragraph*) |
| | (a) Beneficiary: | Winslow Carter Strong |
| | (b) specific details: | Not Applicable |

## PROVISIONS RELATING TO EARLY REDEMPTION

| 20. | Issuer Call: | Not Applicable |
|---|---|---|
|  | (b) Notice period (if other than as set out in the Conditions of the Notes): | Not Applicable |
| 21. | Early Redemption Amount payable on redemption for taxation reasons or on event of default and/or the method of calculating the same (if required or if different from that set out in Condition of the Notes): | An amount determined by the Calculation Agent, in its sole and absolute discretion, to be equal to the fair market value of the Notes immediately prior to the date of redemption. |

## GENERAL PROVISIONS APPLICABLE TO THE NOTES

| 22. | Global Note: | No |
|---|---|---|
| 23. | Listing and Trading: | The Paying Agent is: Cred Inc. No application has been made in relation with the listing and trading of the Notes |
| 24. | Ratings: | Not Applicable |
| 25. | Other final terms of the Notes: | Not Applicable |
| 26. | Governing Law: | Luxembourg Law |
| 27. | Additional selling restrictions: | Transfer only to Affiliates |

## OPERATIONAL INFORMATION

| 28. | ISIN Temporary Code of the Tranche: | Not Applicable |
|---|---|---|
| 29. | ISIN Permanent Code of the Series: | Not Applicable |
| 30. | Common Code: | Not Applicable |
| 31. | Clearing systems(s): | Not Applicable |

**Schedule 2**

**Tax Form W-8BEN**

| Form **W-8BEN** (Rev. July 2017) Department of the Treasury Internal Revenue Service | **Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding and Reporting (Individuals)** ▶ For use by individuals. Entities must use Form W-8BEN-E. ▶ Go to *www.irs.gov/FormW8BEN* for instructions and the latest information. ▶ Give this form to the withholding agent or payer. Do not send to the IRS. | OMB No. 1545-1621 |
|---|---|---|

**Do NOT use this form if:** | | **Instead, use Form:**
---|---|---
• You are NOT an individual | | W-8BEN-E
• You are a U.S. citizen or other U.S. person, including a resident alien individual | | W-9
• You are a beneficial owner claiming that income is effectively connected with the conduct of trade or business within the U.S. (other than personal services) | | W-8ECI
• You are a beneficial owner who is receiving compensation for personal services performed in the United States | | 8233 or W-4
• You are a person acting as an intermediary | | W-8IMY

**Note:** If you are resident in a FATCA partner jurisdiction (i.e., a Model 1 IGA jurisdiction with reciprocity), certain tax account information may be provided to your jurisdiction of residence.

**Part I    Identification of Beneficial Owner** (see instructions)

1 Name of individual who is the beneficial owner | 2 Country of citizenship

3 Permanent residence address (street, apt. or suite no., or rural route). **Do not use a P.O. box or in-care-of address.**

City or town, state or province. Include postal code where appropriate. | Country

4 Mailing address (if different from above)

City or town, state or province. Include postal code where appropriate. | Country

5 U.S. taxpayer identification number (SSN or ITIN), if required (see instructions) | 6 Foreign tax identifying number (see instructions)

7 Reference number(s) (see instructions) | 8 Date of birth (MM-DD-YYYY) (see instructions)

**Part II    Claim of Tax Treaty Benefits** (for chapter 3 purposes only) (see instructions)

9 I certify that the beneficial owner is a resident of _____ within the meaning of the income tax treaty between the United States and that country.

10 **Special rates and conditions** (if applicable—see instructions): The beneficial owner is claiming the provisions of Article and paragraph _____ of the treaty identified on line 9 above to claim a _____ % rate of withholding on (specify type of income): _____.

Explain the additional conditions in the Article and paragraph the beneficial owner meets to be eligible for the rate of withholding: _____

**Part III    Certification**

Under penalties of perjury, I declare that I have examined the information on this form and to the best of my knowledge and belief it is true, correct, and complete. I further certify under penalties of perjury that:

• I am the individual that is the beneficial owner (or am authorized to sign for the individual that is the beneficial owner) of all the income to which this form relates or am using this form to document myself for chapter 4 purposes,
• The person named on line 1 of this form is not a U.S. person,
• The income to which this form relates is:
(a) not effectively connected with the conduct of a trade or business in the United States,
(b) effectively connected but is not subject to tax under an applicable income tax treaty, or
(c) the partner's share of a partnership's effectively connected income,
• The person named on line 1 of this form is a resident of the treaty country listed on line 9 of the form (if any) within the meaning of the income tax treaty between the United States and that country, and
• For broker transactions or barter exchanges, the beneficial owner is an exempt foreign person as defined in the instructions.

Furthermore, I authorize this form to be provided to any withholding agent that has control, receipt, or custody of the income of which I am the beneficial owner or any withholding agent that can disburse or make payments of the income of which I am the beneficial owner. **I agree that I will submit a new form within 30 days if any certification made on this form becomes incorrect.**

**Sign Here** ▶ *Winslow Carter Strong*

Signature of beneficial owner (or individual authorized to sign for beneficial owner) | Date (MM-DD-YYYY)

Print name of signer | Capacity in which acting (if form is not signed by beneficial owner)

For Paperwork Reduction Act Notice, see separate instructions. | Cat. No. 25047Z | Form **W-8BEN** (Rev. 7-2017)

## Schedule 3

**Tax Form W-8BEN-E**

Form **W-9**
(Rev. October 2018)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
# Identification Number and Certification

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information.

**Give Form to the requester. Do not send it to the IRS.**

*Print or type.*
*See* **Specific Instructions** *on page 3.*

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Winslow Carter Strong

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only **one** of the following seven boxes.

☑ Individual/sole proprietor or single-member LLC    ☐ C Corporation    ☐ S Corporation    ☐ Partnership    ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ _____

**Note:** Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

100 Carr 115 Unit 778

**6** City, state, and ZIP code

Rincon PR 00677

Requester's name and address (optional)

**7** List account number(s) here (optional)

---

## Part I — Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

**Social security number**

| | | | – | | | – | 7 | 5 | 9 | 3 |

**or**

**Employer identification number**

| | – | | | | | | | |

---

## Part II — Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here** | Signature of U.S. person ▶  Winslow Carter Strong | Date ▶ 6/30/2020

---

# General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding, *later.*

Cat. No. 10231X

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting,* later, for further information.

**Note:** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien;

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;

• An estate (other than a foreign estate); or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States.

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items.

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

***Example.*** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 24% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the instructions for Part II for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See *Exempt payee code,* later, and the separate Instructions for the Requester of Form W-9 for more information.

Also see *Special rules for partnerships,* earlier.

## What is FATCA Reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See *Exemption from FATCA reporting code,* later, and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account; for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

# Specific Instructions

## Line 1

You must enter one of the following on this line; **do not** leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account (other than an account maintained by a foreign financial institution (FFI)), list first, and then circle, the name of the person or entity whose number you entered in Part I of Form W-9. If you are providing Form W-9 to an FFI to document a joint account, each holder of the account that is a U.S. person must provide a Form W-9.

a. **Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

**Note: ITIN applicant:** Enter your individual name as it was entered on your Form W-7 application, line 1a. This should also be the same as the name you entered on the Form 1040/1040A/1040EZ you filed with your application.

b. **Sole proprietor or single-member LLC.** Enter your individual name as shown on your 1040/1040A/1040EZ on line 1. You may enter your business, trade, or "doing business as" (DBA) name on line 2.

c. **Partnership, LLC that is not a single-member LLC, C corporation, or S corporation.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

d. **Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on line 2.

e. **Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulations section 301.7701-2(c)(2)(iii). Enter the owner's name on line 1. The name of the entity entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2, "Business name/disregarded entity name." If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

## Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, you may enter it on line 2.

## Line 3

Check the appropriate box on line 3 for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box on line 3.

| IF the entity/person on line 1 is a(n) . . . | THEN check the box for . . . |
| --- | --- |
| • Corporation | Corporation |
| • Individual<br>• Sole proprietorship, or<br>• Single-member limited liability company (LLC) owned by an individual and disregarded for U.S. federal tax purposes. | Individual/sole proprietor or single-member LLC |
| • LLC treated as a partnership for U.S. federal tax purposes,<br>• LLC that has filed Form 8832 or 2553 to be taxed as a corporation, or<br>• LLC that is disregarded as an entity separate from its owner but the owner is another LLC that is not disregarded for U.S. federal tax purposes. | Limited liability company and enter the appropriate tax classification. (P= Partnership; C= C corporation; or S= S corporation) |
| • Partnership | Partnership |
| • Trust/estate | Trust/estate |

## Line 4, Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space on line 4 any code(s) that may apply to you.

**Exempt payee code.**

• Generally, individuals (including sole proprietors) are not exempt from backup withholding.

• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.

• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space in line 4.

1—An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2—The United States or any of its agencies or instrumentalities

3—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

4—A foreign government or any of its political subdivisions, agencies, or instrumentalities

5—A corporation

6—A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or possession

7—A futures commission merchant registered with the Commodity Futures Trading Commission

8—A real estate investment trust

9—An entity registered at all times during the tax year under the Investment Company Act of 1940

10—A common trust fund operated by a bank under section 584(a)

11—A financial institution

12—A middleman known in the investment community as a nominee or custodian

13—A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
| --- | --- |
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 5[2] |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) written or printed on the line for a FATCA exemption code.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B—The United States or any of its agencies or instrumentalities

C—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i)

E—A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i)

F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G—A real estate investment trust

H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I—A common trust fund as defined in section 584(a)

J—A bank as defined in section 581

K—A broker

L—A trust exempt from tax under section 664 or described in section 4947(a)(1)

M—A tax exempt trust under a section 403(b) plan or section 457(g) plan

**Note:** You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

## Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns. If this address differs from the one the requester already has on file, write NEW at the top. If a new address is provided, there is still a chance the old address will be used until the payor changes your address in their records.

## Line 6

Enter your city, state, and ZIP code.

# Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN.

If you are a single-member LLC that is disregarded as an entity separate from its owner, enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note:** See *What Name and Number To Give the Requester,* later, for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at *www.SSA.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/Businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. Go to *www.irs.gov/Forms* to view, download, or print Form W-7 and/or SS-4. Or, you can go to *www.irs.gov/OrderForms* to place an order and have Form W-7 and/or SS-4 mailed to you within 10 business days.

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note:** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.

# Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if item 1, 4, or 5 below indicates otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see *Exempt payee code,* earlier.

**Signature requirements.** Complete the certification as indicated in items 1 through 5 below.

Form W-9 (Rev. 10-2018)                                                                                                                    Page **5**

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), ABLE accounts (under section 529A), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) other than an account maintained by an FFI | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 3. Two or more U.S. persons (joint account maintained by an FFI) | Each holder of the account |
| 4. Custodial account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 5. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee[1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner[1] |
| 6. Sole proprietorship or disregarded entity owned by an individual | The owner[3] |
| 7. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulations section 1.671-4(b)(2)(i)(A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 8. Disregarded entity not owned by an individual | The owner |
| 9. A valid trust, estate, or pension trust | Legal entity[4] |
| 10. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 11. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 12. Partnership or multi-member LLC | The partnership |
| 13. A broker or registered nominee | The broker or nominee |

| For this type of account: | Give name and EIN of: |
|---|---|
| 14. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 15. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulations section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or DBA name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships*, earlier.

**\*Note:** The grantor also must provide a Form W-9 to trustee of trust.

**Note:** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records From Identity Theft

Identity theft occurs when someone uses your personal information such as your name, SSN, or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Pub. 5027, Identity Theft Information for Taxpayers.

Victims of identity theft who are experiencing economic harm or a systemic problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at *spam@uce.gov* or report them at *www.ftc.gov/complaint*. You can contact the FTC at *www.ftc.gov/idtheft* or 877-IDTHEFT (877-438-4338). If you have been the victim of identity theft, see *www.IdentityTheft.gov* and Pub. 5027.

Visit *www.irs.gov/IdentityTheft* to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.



The present document is endorsed with an authorized ditigal signature in order to guarantee the authenticity of the origin and integrity of the information contained in this document.

**EXHIBIT D**

Rule 2004 Requests

# UNITED STATES BANKRUPTCY COURT

_____ District of Delaware _____

In re Cred Inc. *et al.* _____          Case No.  20-12836 (JTD)
                        Debtor

                                                Chapter 11 _____

## SUBPOENA FOR RULE 2004 EXAMINATION

To:  Winslow Strong _____
                    *(Name of person to whom the subpoena is directed)*

☑  *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure.  A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Zoom link to be provided. | July 19, 2021 at 12:00pm EST |

The examination will be recorded by this method: The deposition will be recorded by video via Zoom and a stenographer.

☑  *Production:*  You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

   See Schedule A attached hereto.  Documents to be produced to the offices of McDermott Will & Emery LLP
                                    415 Mission Street 5600, San Francisco, CA 94105-2533, or electronically
                                    to dhurst@mwe.com, jbevans@mwe.com, no later than July 1, 2021.

        The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 6/18/21 _____

              CLERK OF COURT
                                        OR
_____          /s/ David R. Hurst _____
   *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* the Official Committee of Unsecured Creditors, who issues or requests this subpoena, are: McDermott Will & Emery LLP, David R. Hurst
                                                                1007 North Orange Street, 10th Floor, Wilmington, DE 19801
                                                                dhurst@mwe.com, 1 (302) 485-3930

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

### PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows:_____

_____

_____ on *(date)* _____; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are $ _____ for travel and $_____ for services, for a total of $_____.

          I declare under penalty of perjury that this information is true and correct.

Date: _____

                                        _____
                                                    *Server's signature*

                                        _____
                                                    *Printed name and title*

                                        _____
                                                    *Server's address*

Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A)  Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B)  Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C)  Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D)  Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
...

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## SCHEDULE A

PLEASE TAKE NOTICE that pursuant to Rule 2004(c) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Rule 45 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9016 of the Bankruptcy Rules, and Rule 2004-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware, the Official Committee of Unsecured Creditors (the "Committee") of Cred, Inc.[1] ("Cred") appointed pursuant to section 1102 of title 11 of the United States Code §§ 101 *et seq.* (the "Bankruptcy Code") in jointly administered chapter 11 cases styled as *In re Cred, Inc., et al.,* No. 20-12836 (JTD) (Bankr. D. Del.), Winslow Strong must produce the following documents and information in response to the requests contained herein (the "Requests").

### DEFINITIONS

The following definitions of terms apply to all Requests.  Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1.      Any references to a corporation, partnership, proprietorship, association, organization, or any other business or legal entity (including any of the Debtors) shall be deemed to include the corporation's, partnership's, proprietorship's, association's, organization's, or other business or legal entities' agents, accountants, advisors, employees, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors, successors, assigns, or any other person acting or purporting to act on behalf of the

---

[1] "Cred" means Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC, and each of their predecessors, successors, subsidiaries, partners, principals, officers, directors, attorneys, managers, professionals, and other advisors, agents, employees, representatives, and persons acting or purporting to act on their behalf.

corporation, partnership, proprietorship, association, organization, or other business or legal entity.

2.      The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

3.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5.      "Strong" "You," or "Your," shall mean Winslow Strong.

6.      "Cred" means Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC, and each of their predecessors, successors, subsidiaries, partners, principals, officers, directors, attorneys, managers, professionals, and other advisors, agents, employees, representatives, and persons acting or purporting to act on their behalf.

7.      "Income Opportunities" means Income Opportunities (Luxembourg) S.A., and each of their predecessors, successors, subsidiaries, partners, principals, officers, directors, attorneys, managers, professionals, and other advisors, agents, employees, representatives, and persons acting or purporting to act on their behalf, including, but not limited to all Aequitas entities and Andrew Macritchie.

8.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings,

discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages,

Bloomberg, Telegram, WhatsApp, Groupme, WeWork, Signal, Dust, Slack, Proton, memoranda,

letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes,

videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind.

   9.  "<u>Concerning</u>" means relating to, referring to, describing, evidencing, or

constituting.

   10.  "<u>Cryptocurrency</u>" means all digital assets that are traded on a blockchain, this

definition is broadly defined to include all types of digital assets, including virtual currency,

tokens, ERC-20 compliant tokens, security tokens, utility tokens, stablecoins, and any other

digital assets.  This includes, but is not limited to, Bitcoin, Bitcoin Cash, Ethereum, U.S. Dollar

Coin, LBA Tokens, Tether (USDt), Dai, IDOL, XRP, Cardano, Polkadot, Binance Coin,

Litecoin, Chainlink, Stellar, Dogecoin, Aave, Uniswap, Wrapped Bitcoin, Bitcoin SV, EOS,

Monero, Maker, Cosmos, TRON, NEM, Synthetix, Tezos, THETA, Compound, VeChain, Neo

SushiSwap, Huobi Token, UMA, Elrond, IOTA, Solana, and any other digital asset.

   11.  "<u>Luxembourg Notes</u>" means the notes JST bought from Income Opportunities in

connection with the May 11, 2020 Transfer Certificate and Terms.

   12.  "<u>Documents</u>" is defined to be synonymous in meaning and equal in scope to the

usage of the term "documents or electronically stored information" in Federal Rule of Civil

Procedure 34(a)(1)(A).  For the avoidance of doubt, this may encompass all written, graphic, or

printed matter of any kind, however produced or reproduced, including all originals, drafts,

working papers, and non-identical copies, whether different from the originals by reason of any

notation made on such copies or otherwise, and all electronic, mechanical, or optical records or

representations of any kind or other data compilations from which information can be obtained

or translated, if necessary, through detection devices into reasonable usable form.  The term

"Documents" includes, but is not limited to:

a.   correspondence, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, notebooks, telegrams, journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments, analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intraoffice communications, pitchbooks, marketing materials, or offers;

b.   any written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, Groupme, WeWork, Signal, Dust, Slack, Proton, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind;

c.   notations in any form made of conversations, telephone calls, meetings, negotiations, or other communications;

d.   bulletins, circulars, schedules, lists, guides, printed matter (including newspapers, magazines and other publications, articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements, or worksheets;

e.   electronic, mechanical, or optical records or representations of any kind (including tapes, cassettes, discs, hard drives, recordings, voice mail, electronic mail, and computer-stored data or material), or transcriptions thereof; and

f.   all drafts, alterations, modifications, changes and amendments of any of the foregoing, and any material underlying, supporting, or used in the preparation of any document.

g.   A draft or non-identical copy is a separate document within the meaning of this term.

## INSTRUCTIONS

1.      The preceding definitions apply to these Instructions and each of the succeeding

Requests.

2.      All terms defined above shall have the meanings set forth therein, whether

capitalized in the Requests or not.

3.      You are required to produce all responsive documents in your possession,

custody, or control, wherever located, including without limitation those in the custody of your

representatives, agents, Professionals, affiliates, or anyone acting on your behalf.

4.      These Requests are for documents only to the extent they have not already been

provided to the Committee.

5.      These Requests are continuing requests pursuant to the Bankruptcy Rules. You

must supplement any production of documents that are received, discovered, or created after any

of your responses to the Requests, or that are otherwise within your possession, custody, or

control, wherever located, including without limitation those in the custody of your

representatives, agents, Professional, affiliates, or anyone acting on your behalf.

6.      If You object to any part of any Request, You must produce all documents that

are responsive to the portions of the Request to which You do not object. You also must state the

nature of, and grounds for, the objection.

7.      If You cannot comply with any Request in full, You must comply to the fullest

extent possible, and You should provide an explanation as to why full compliance is not

possible.

8.      Where You assert a claim of privilege in objecting to a Request and withhold a

responsive document on this basis, You must provide a privilege log setting forth (a) the nature

of the privilege being claimed, (b) the type of document being withheld, (c) the general subject matter of the document, (d) the date of the document, and (e) such other information sufficient to Identify the document, including, where appropriate, the author of the document, the title or subject line of the document, the addressee of the document, and, where not apparent, the relationship of the author and the addressee to each other.

9.      If a document contains both privileged and non-privileged material, You must disclose the non-privileged material to the fullest extent possible without thereby disclosing the privileged material.  If a party asserts a privilege to part of the material contained in a document, the party asserting the privilege must clearly indicate the portions as to which it claims the privilege. When a document has been redacted or altered in any fashion, You must Identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted documents.

10.      All documents produced in electronic format shall be in their native format and shall be OCR (Optical Character Recognition) capable and shall be produced with Relativity compatible load files.

11.      Additional special processing of certain electronically stored information shall be as follows:  Microsoft Excel spreadsheet fields shall not be converted to TIFF files and shall be produced in native format.  A placeholder TIFF image shall be created, Bates numbered, and the produced Excel file shall be renamed to match the Bates number on its corresponding placeholder page.  The exception shall be for redacted spreadsheets which shall be produced in TIFF format.  Images for the redacted spreadsheets shall display the content in the same manner

as if it were printed.  The extractable metadata and text shall be provided for native files, and OCR will be provided for the un-redacted portions of the documents.

12.     If any document called for by these Requests has been destroyed or discarded, You must Identify that document in writing by providing the following information: (a) any sender/author and any addressee; (b) any indicated or blind copies; (c) the document's date, subject matter, number of pages, and attachments or appendices; (d) all persons to whom the document was distributed, shown, or explained; (e) its date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (f) the persons who authorized and carried out such destruction or discard; and (g) whether any copies of the document presently exist and, if so, the name of the custodian of each copy.

13.     Any copy of a document that varies in any way whatsoever from the original or from any other copy of the document, whether by reason or any handwritten mark or other notation or any omission, is a separate document and must be produced, whether or not the original of such a document is within your possession, custody, or control. A request for any document includes a request for all drafts thereof, and all revisions and modifications thereto, including any red-lined versions or document comparisons, in addition to the document itself. Each document is to be produced in its entirety, without abbreviation or expurgation.

14.     In producing documents, all documents that are physically attached to each other, or segregated or separated from other documents, when originally located, should be produced as is. If no document exists that is responsive to a particular request, You must state so in writing.

15.     Except where otherwise specified, the Document Requests seek documents dated, created, or otherwise obtained on or between January 1, 2017 to the present.

## REQUESTS

1.      All documents and communications concerning Cred.

2.      All documents and communications concerning any referral payments from Cred, including but not limited to any bank account statements reflecting referral payments and/or deposits from Cred.

3.      All documents and communications concerning Income Opportunities and the Luxembourg Notes, including, but not limited to the Transfer Certificate and Terms with You and the associated Settlement Agreement and Mutual Release.

4.      All documents and communications concerning Income Opportunities and the Luxembourg Notes, including, but not limited to the following persons and entities:

        a.      Income Opportunities;

        b.      Aequitas;

        c.      Andrew Macritchie;

        d.      Barry M Gertz 2010 Trust, Barry M Gertz, Trustee;

        e.      Christian Community Foundation, Inc. dba WaterStone;

        f.      ACA Master Select Fund LP – AEQ;

        g.      Trust Capital Holdings;

        h.      REW Alt Income, LP;

        i.      Sandra J Gertz;

        j.      Hany Girgis;

        k.      Summer Girgis;

        l.      Michael Courts McChesney;

        m.      the Satire Management Group LLC;

        n.      the Sentry Foundation; Aequitas Enhanced Income Fund LLC;

o.       Société Générale Bank and Trust S.A.;

p.       Clearstream Banking S.A.; and

q.       Euroclear Bank S.A./N.V.

5.       All documents and communications with James Alexander.

6.       All documents and communications related to the Schedule 1 Final Terms for the Luxembourg Notes, dated January 30, 2020.

7.       All documents and communications related to the base prospectus, which identifies Income Opportunities, Luxembourg, SA as the issuer of the Luxembourg Notes.

8.       All documents, communications, and records concerning any transfer or payment of any kind in fiat, cryptocurrency, or any other asset, from Cred to You, directly or indirectly, from November 7, 2018 to the present.

9.       All documents and communications concerning MoKredit.

10.      Identify all cryptocurrency transactions in which the cryptocurrency was transferred from a digital wallet owned or controlled by Cred to a digital wallet that You own, have access to, or otherwise control.

11.      Documents sufficient to show all cryptocurrency transactions in which cryptocurrency was transferred from a digital wallet owned or controlled by Cred to a digital wallet that You own, have access to, or otherwise control.

12.      Identify all of Your:  (1) physical addresses of residences and places of business; (2) email addresses; (3) business and personal phone numbers; (4) social media websites that You have accounts with and all social media handles and/or screen names associated with each of Your social media accounts; (5) the messaging apps You use or have used to communicate with, including but not limited to iMessage, Bloomberg, Telegram, WhatsApp, Groupme, WeChat, Signal, Dust, Slack, QQ, or Proton, and, if applicable, identify all handles or screen

9

names associated with each of Your messaging app accounts; and (6) any other physical or electronic addresses or accounts that can be used to contact You.

13.     Provide a personal financial statement, which discloses all assets, including cash, cryptocurrency, interests in decentralized finance products, real property, outstanding mortgages, stocks, debts, securities, investments, bank account, automobiles, boats, and any other items of value exceeding $3,000.

14.     Identify each cryptocurrency exchange, digital wallet, decentralized finance product, third party custodian, and any other entity or person holding cryptocurrency that You own, have access to, or otherwise control.  Include the type and amount of each cryptocurrency that you own, have access to, or otherwise control.

15.     Identify all cryptocurrency that you own, have access to, or otherwise control.

**EXHIBIT E**

Email Dated August 7, 2021

## Evans, Joseph

| | |
|---|---|
| **From:** | Evans, Joseph |
| **Sent:** | Saturday, August 7, 2021 11:21 AM |
| **To:** | Dowd, Mary Joanne; Toof, Jackson |
| **Cc:** | Azman, Darren; Ashworth, Sam; Kratenstein, Andrew |
| **Subject:** | In re Cred Inc., et al., No. 20-bk-12836 (Bankr. D. Del.) |
| **Attachments:** | 21_6_18_Winslow Strong_2004 Examination Request.pdf; 21_6_18_Winslow Strong_2004 Cover Letter.pdf |

Counsel,

I write concerning the Trust's discovery request under Rule 2004 of the Federal Rules of Bankruptcy to Winslow Strong which has been outstanding since June 18, 2021.  Pursuant to that 2004 request, Mr. Strong was supposed to produce documents by July 1, 2021 and sit for a deposition on July 19, 2021.  The Trust has still not received any documents in response to that request.  We understand from our meet and confer phone call on July 21, 2021 that Mr. Strong would be complying with the 2004 request and we agreed upon the scope of production.  It has been over two weeks since we had that meet and confer call and over seven weeks since the Trust sent the subpoena to Mr. Strong.  The Trust cannot wait any longer.  The Trust requests Mr. Strong's document production by no later than **Friday, August 13, 2021**.  Please confirm by email on Monday, August 9, 2021.  Thanks.

Joe

JOSEPH B. EVANS
Partner
**McDermott Will & Emery LLP**  One Vanderbilt Avenue, New York, NY 10017-3852
**Tel** +1 212 547 5767    **Mobile** +1 917 841 4738    **Email** jbevans@mwe.com
Biography | Website | vCard | Twitter | LinkedIn
Mabel Albino, Assistant to Joseph B. Evans
**Tel** 212-547-5499    **Email** malbino@mwe.com

**\*\* We have moved. Please note our new address (above). \*\***

# **EXHIBIT F**

Local Rule 2004-1 Certification

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## LOCAL RULE 2004-1 CERTIFICATION

Pursuant to Local Rule 2004-1, the undersigned certifies as follows:

1.        Prior to filing the *Motion of the Liquidation Trust for Entry of an Order Directing Winslow Carter Strong to (I) Sit for a Rule 2004 Examination and (II) Produce Documents in Response to a Rule 2004 Subpoena* (the "Motion"),[2] the Trust issued the Rule 2004 Requests to Mr. Strong.

2.        Thereafter, counsel to Mr. Strong and counsel to the Trust met and conferred regarding the Rule 2004 Requests. Although an agreement was reached, Mr. Strong has produced no documents and has not agreed to a deposition date. Mr. Strong's counsel has not responded to any further email communications. *See* Local Rule 2004-1(b).

---

[1]      The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

[2]      Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Dated:  Wilmington, Delaware
        August 11, 2021

**MCDERMOTT WILL & EMERY LLP**

*/s/ David R. Hurst*
David R. Hurst (I.D. No. 3743)
1007 North Orange Street, 10th Floor
Wilmington, DE 19801
Telephone: (302) 485-3900
Facsimile:  (302) 351-8711

- and -

Darren Azman (admitted *pro hac vice*)
Joseph B. Evans (admitted *pro hac vice*)
1 Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5400
Facsimile:  (212) 547-5444

*Counsel to the Cred Inc. Liquidation Trust*