**EXHIBIT 6**

**Proposed Letter – Bittrex Global GmbH**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |

## REQUEST FOR INTERNATIONAL ASSISTANCE – LETTER OF REQUEST

The United States Bankruptcy Court for the District of Delaware (this "Court")

respectfully requests international judicial assistance to obtain evidence, under the Hague

Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial

Matters (the "Hague Convention"), to be used in the above-captioned chapter 11 cases (the

"Chapter 11 Cases") of Cred Inc. ("Cred") and its affiliated debtors (collectively, the "Debtors").

Based on the representations made by the Cred Inc. Liquidation Trust (the "Trust")

established in the Chapter 11 Cases, this Court has determined that Bittrex Global GmbH

("Bittrex") may be in possession of documents, information, and knowledge concerning material

facts that are relevant to the Trust's ongoing investigation and recovery of the Debtors' assets.

This Court requests the assistance described below:

| 1. Sender | Cred Inc. Liquidation Trust |
|---|---|
| | Represented by: |
| | McDermott Will & Emery LLP<br>David R. Hurst<br>1007 North Orange Street, 10th Floor |

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

| | |
|---|---|
| | Wilmington, Delaware 19801<br>dhurst@mwe.com<br>Telephone: (302) 485-3900<br>Facsimile: (302) 351-8711<br><br>Darren Azman<br>Joseph B. Evans<br>McDermott Will & Emery LLP<br>One Vanderbilt Avenue<br>New York, New York 10017<br>dazman@mwe.com<br>jbevans@mwe.com<br>Telephone: (212) 547-5400<br>Facsimile: (212) 547-5444 |
| 2. Central Authority of Requested State | Fürstliches Landgericht Court of Justice)<br>Spaniagasse 1<br>9490 Vaduz<br>Fürstentum Liechtenstein |
| 3. Person to whom the executed request is to be returned | Cred Inc. Liquidation Trust<br><br>Represented by:<br><br>McDermott Will & Emery LLP<br>David R. Hurst<br>1007 North Orange Street, 10th Floor<br>Wilmington, Delaware 19801<br>dhurst@mwe.com<br>Telephone: (302) 485-3900<br>Facsimile: (302) 351-8711<br><br>Darren Azman<br>Joseph B. Evans<br>McDermott Will & Emery LLP<br>One Vanderbilt Avenue<br>New York, New York 10017<br>dazman@mwe.com<br>jbevans@mwe.com<br>Telephone: (212) 547-5400<br>Facsimile: (212) 547-5444 |
| 4. Requesting judicial authority (Article 3, a) | United States Bankruptcy Court<br>District of Delaware<br>Judge John T. Dorsey<br>824 North Market Street<br>3rd Floor<br>Wilmington, Delaware 19801 |
| 5. To the competent authority of (Article 3, a) | Liechtenstein |

| | |
|---|---|
| 6.   Names of the case and any identifying number | In re: Cred, Inc. *et al.*, Case No. 20-12836 (JTD) |
| 7.   Names and addresses of the parties and their representatives (Article 3, b) | Cred Inc. Liquidation Trust<br><br>Represented by:<br><br>McDermott Will & Emery LLP<br>David R. Hurst<br>1007 North Orange Street, 10th Floor<br>Wilmington, Delaware 19801<br>dhurst@mwe.com<br>Telephone: (302) 485-3900<br>Facsimile: (302) 351-8711<br><br>Darren Azman<br>Joseph B. Evans<br>McDermott Will & Emery LLP<br>One Vanderbilt Avenue<br>New York, New York 10017<br>dazman@mwe.com<br>jbevans@mwe.com<br>Telephone: (212) 547-5400<br>Facsimile:  (212) 547-5444 |
| 8.  Evidence to be obtained or judicial act to be performed (Article 3, d) | It is respectfully requested that a judicial authority of Liechtenstein order Bittrex to produce copies of documents and compel testimony as described in Attachment 1 from:<br><br>Bittrex Global GmbH<br>Dr. Grass-Strasse 12<br>Vaduz, 9490<br>Liechtenstein |
| 9.  The fees and costs incurred that are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by | Cred Inc. Liquidation Trust<br><br>Represented by:<br><br>McDermott Will & Emery LLP<br>David R. Hurst<br>1007 North Orange Street, 10th Floor<br>Wilmington, Delaware 19801<br>dhurst@mwe.com<br>Telephone: (302) 485-3900<br>Facsimile: (302) 351-8711<br><br>Darren Azman<br>Joseph B. Evans |

|  | McDermott Will & Emery LLP<br>One Vanderbilt Avenue<br>New York, New York 10017<br>dazman@mwe.com<br>jbevans@mwe.com<br>Telephone: (212) 547-5400<br>Facsimile:  (212) 547-5444 |
|---|---|

In conformity with article 3 of the Hague Convention, the undersigned applicant submits this request in the above-titled action.  This Court presents its compliments to the judicial authorities of Liechtenstein and requests international judicial assistance to obtain evidence to be used in an investigation before this Court in the Chapter 11 Cases.  This Court requests the assistance described herein as necessary in the interests of justice.  The assistance requested is for the appropriate judicial authority in Liechtenstein to compel Bittrex to produce the documents detailed below.

## RELEVANT INFORMATION ABOUT THE BANKRUPTCY CASES

On November 7, 2020, the Debtors filed for bankruptcy by filing petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On March 11, 2021, the Court confirmed the plan of liquidation, and the plan became effective on April 19, 2021.  On that effective date, the Trust was established and the Debtors' assets, including all claims and causes of action, were transferred and assigned to the Trust.

The Debtors' business and the Chapter 11 Bankruptcy Cases involve various forms of cryptocurrency transactions, some of which the Trust has determined to be fraudulent or otherwise improper.  Accordingly, the Trust has undertaken a substantial investigation into these

transactions and the potential recovery of the Debtors' assets.  To assist with such recovery, the Trust retained one of the world's leading cryptocurrency tracing consultants.

The Trust has represented to this Court that it has uncovered evidence that the following person/entity may have information about stolen or improperly transferred cryptocurrency: Bittrex.  The information from Bittrex is not available by any other means and will be essential to the potential recovery of significant assets of the Debtors' estates.  Accordingly, the Trust now seeks targeted discovery to obtain information relevant to the Trust's ongoing investigation and recovery of assets.  Such discovery is particularly important given the ease and speed with which cryptocurrency assets may be moved or dissipated.

## <u>RELEVANCE OF THIS REQUEST TO THE ABOVE-CAPTIONED MATTER</u>

The entity subject to this request, Bittrex, is believed to be located in Liechtenstein. Based on the Trust's investigation, Bittrex is believed to have important information bearing on issues central to the investigation.  Namely, that the documents described below and potential testimony are relevant to identifying data and other information that is critical to the recovery of assets.

For the foregoing reasons and in the interests of justice, this Court therefore requests that an order is issued in accordance with the laws and procedures of the courts of Liechtenstein for the acquisition of documentary evidence in the Chapter 11 Cases.  The requests for documents and deposition testimony are described below.

## **SCHEDULING AND OTHER SPECIFIC REQUESTS**

It is respectfully requested by the below signed authority that the documents be produced to the Trust on or before 30 days after Bittrex is ordered to produce them to the Trust.  When required, this Court will provide similar assistance as requested herein, to the appropriate judicial authorities of Liechtenstein.


**Dated: _____, 2021**      **JOHN T. DORSEY**
         **Wilmington, Delaware**         **UNITED STATES BANKRUPTCY JUDGE**

## ATTACHMENT 1

## REQUEST FOR DOCUMENTS

### DEFINITIONS

The following definitions of terms apply to all Requests under the below heading "Requests." Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1.      Any references to a corporation, partnership, proprietorship, association, organization, or any other business or legal entity (including any of the Debtors) shall be deemed to include the corporation's, partnership's, proprietorship's, association's, organization's, or other business or legal entities' agents, accountants, advisors, employees, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors, successors, assigns, or any other person acting or purporting to act on behalf of the corporation, partnership, proprietorship, association, organization, or other business or legal entity.

2.      The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

3.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5.      "You" or "Your," shall mean Bittrex Global GmbH, and other entities affiliated with the cryptocurrency exchange commonly known as Bittrex, including, as applicable, its

1

predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

6.      "Account(s)" means any fiat or cryptocurrency depository, including, but not limited to any company or service that hosts or provides digital wallets or otherwise permits trading and storage of cryptocurrency (including cryptocurrency exchanges and cryptocurrency custodians), checking accounts, savings accounts, trust accounts, custodian accounts, money market accounts, investment accounts, transactional accounts, certificates of deposit, safety deposit boxes, and any other holder of assets or value of any kind, including cash, securities, debt instruments, precious metals, jewelry, important documents, deeds, or any other asset or medium of exchange.

7.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  This may encompass any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, Groupme, WeChat, Signal, Dust, Slack, Proton, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind.

8.      "Concerning" means relating to, referring to, describing, evidencing, or constituting.

9.      "Cred" means Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC, and each of their predecessors, successors,

subsidiaries, partners, principals, officers, directors, attorneys, managers, professionals, and other advisors, agents, employees, representatives, and persons acting or purporting to act on their behalf.

10.    "Cryptocurrency" means all digital assets that are traded on a blockchain, this definition is broadly defined to include all types of digital assets, including virtual currency, tokens, ERC-20 compliant tokens, security tokens, utility tokens, stablecoins, and any other digital assets.  This definition includes, but is not limited to, Bitcoin, Bitcoin Cash, Ethereum, U.S. Dollar Coin, Tether (USDt), Libra Token (LBA), Dai, IDOL, XRP, Cardano, Polkadot, Binance Coin, Litecoin, Chainlink, Stellar, Dogecoin, Aave, Uniswap, Wrapped Bitcoin, Bitcoin SV, EOS, Monero, Maker, Cosmos, TRON, NEM, Synthetix, Tezos, THETA, Compound, VeChain, Neo SushiSwap, Huobi Token, UMA, Elrond, IOTA, Solana, and any other digital asset.

11.    "Digital address" means the alphanumerical sequence that identifies a digital wallet.

12.    "Digital Wallet(s)" means the place in which cryptocurrency (and/or the keys that give access to cryptocurrency) is stored, including hosted wallets, non-hosted wallets, multi-sig wallets, and any other place in which cryptocurrency can be stored.

13.    "Documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A).  For the avoidance of doubt, this encompasses all written, graphic, or printed matter of any kind, however produced or reproduced, including all originals, drafts, working papers, and non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and all electronic, mechanical, or optical records or

representations of any kind or other data compilations from which information can be obtained

or translated, if necessary, through detection devices into reasonable usable form.  The term

"Documents" includes, but is not limited to:

<ol type="a">
<li>correspondence, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, notebooks, telegrams, journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments, analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intraoffice communications, pitchbooks, marketing materials, or offers;</li>
<li>any written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, Groupme, WeChat, Signal, Dust, Slack, Proton, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind;</li>
<li>notations in any form made of conversations, telephone calls, meetings, negotiations, or other communications;</li>
<li>bulletins, circulars, schedules, lists, guides, printed matter (including newspapers, magazines and other publications, articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements, or worksheets;</li>
<li>electronic, mechanical, or optical records or representations of any kind (including tapes, cassettes, discs, hard drives, recordings, voice mail, electronic mail, and computer-stored data or material), or transcriptions thereof; and</li>
<li>all drafts, alterations, modifications, changes and amendments of any of the foregoing, and any material underlying, supporting, or used in the preparation of any document.</li>
<li>A draft or non-identical copy is a separate document within the meaning of this term.</li>
</ol>

14.    "Records" means all documents and communications in any way related to an

Account, including emails, statements, applications, onboarding forms, communications,

correspondence, know your customer/anti-money laundering related documents, SWIFT records,

records reflecting transactions, checks (front and back), wire transfers, tax documents and filings, certificates of foreign status of beneficial owners, memoranda, notes, custodian agreements, trustee agreements, forms and/or related documents and communications, beneficiary agreements, forms and/or related documents and communications, and all other documents concerning the owners, signatories, beneficial owners, trustees, and all other persons associated with an Account in any way, and any other documents, communications, or bank records.

15.    "Suspect Transactions" means the transactions identified in Attachment 2, which were compiled by the Trust's cryptocurrency tracing consultant CipherTrace LLC.

16.    "Suspect Addresses" means the digital addresses identified in the Suspect Transactions.

17.    "Suspect Accounts" means all wallets and accounts associated with the Suspect Addresses.

## INSTRUCTIONS

1.    The preceding definitions apply to these Instructions and each of the succeeding Requests.

2.    All terms defined above shall have the meanings set forth therein, whether capitalized in the Requests or not.

3.    You are required to produce all responsive documents in your possession, custody, or control, wherever located, including without limitation those in the custody of your representatives, agents, Professionals, affiliates, or anyone acting on your behalf.

4.    These Requests are for documents only to the extent they have not already been provided to the Trust.

5.      If You object to any part of any Request, You must produce all documents that are responsive to the portions of the Request to which You do not object. You also must state the nature of, and grounds for, the objection.

6.      If You cannot comply with any Request in full, You must comply to the fullest extent possible, and You should provide an explanation as to why full compliance is not possible.

7.      Where You assert a claim of privilege in objecting to a Request and withhold a responsive document on this basis, You must provide a privilege log setting forth (a) the nature of the privilege being claimed, (b) the type of document being withheld, (c) the general subject matter of the document, (d) the date of the document, and (e) such other information sufficient to Identify the document, including, where appropriate, the author of the document, the title or subject line of the document, the addressee of the document, and, where not apparent, the relationship of the author and the addressee to each other.

8.      If a document contains both privileged and non-privileged material, You must disclose the non-privileged material to the fullest extent possible without thereby disclosing the privileged material.  If a party asserts a privilege to part of the material contained in a document, the party asserting the privilege must clearly indicate the portions as to which it claims the privilege. When a document has been redacted or altered in any fashion, You must Identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted documents.

9.      Additional special processing of certain electronically stored information shall be as follows:  Microsoft Excel spreadsheet fields shall not be converted to TIFF files and shall be

produced in native format.  A placeholder TIFF image shall be created, Bates numbered, and the

produced Excel file shall be renamed to match the Bates number on its corresponding

placeholder page.  The exception shall be for redacted spreadsheets which shall be produced in

TIFF format.  Images for the redacted spreadsheets shall display the content in the same manner

as if it were printed.  The extractable metadata and text shall be provided for native files, and

OCR will be provided for the un-redacted portions of the documents.  ESI and emails produced

pursuant to this request shall be produced in a searchable format with accompanying index that

states the following metadata:

    a.   BEG_NO (Bated number associated with first page of document);
    b.   END_NO (Bates number associated with last page of document);
    c.   CUSTODIAN (Who provided the document; usually a person. Only provide the names of custodians relevant to the specific matter; any superfluous names should be removed from metadata);
    d.   ATTACH_RANGE (Attachment range for parent email and children attachments);
    e.   FILE_EXT (File extension of native document);
    f.   FILE_NAME (Original file name of native document);
    g.   HASH (MD5 hash value of document or "de-duplication key");
    h.   AUTHOR (Author of document or email);
    i.   DATE_LAST_MOD (Date file was last modified: mm/dd/yyyy);
    j.   TIME_LAST_MOD (Time file was last modified: EST);
    k.   TITLE/SUBJECT (Information from title or subject line);
    l.   FROM (Author of email message);
    m.   TO (Recipient(s) of email message);
    n.   CC (Recipient(s) of Carbon Copies of email message);
    o.   BCC (Recipient(s) of Blind Carbon Copies of email message);
    p.   DATE_SENT (Sent date of email message: mm/dd/yyyy);
    q.   TIME_SENT (Sent time of email message: EST);
    r.   DATE_RCVD (Received date of email message: mm/dd/yyyy);
    s.   TIME_RCVD (Received time of email message: EST).

10.    If any document called for by these Requests has been destroyed or discarded,

You must Identify that document in writing by providing the following information: (a) any

sender/author and any addressee; (b) any indicated or blind copies; (c) the document's date,

subject matter, number of pages, and attachments or appendices; (d) all persons to whom the

document was distributed, shown, or explained; (e) its date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (f) the persons who authorized and carried out such destruction or discard; and (g) whether any copies of the document presently exist and, if so, the name of the custodian of each copy.

11.     Any copy of a document that varies in any way whatsoever from the original or from any other copy of the document, whether by reason or any handwritten mark or other notation or any omission, is a separate document and must be produced, whether or not the original of such a document is within your possession, custody, or control.  A request for any document includes a request for all drafts thereof, and all revisions and modifications thereto, including any red-lined versions or document comparisons, in addition to the document itself. Each document is to be produced in its entirety, without abbreviation or expurgation.

12.     In producing documents, all documents that are physically attached to each other, or segregated or separated from other documents, when originally located, should be produced as is.  If no document exists that is responsive to a particular request, You must state so in writing.

13.     Except where otherwise specified, the Document Requests seek documents, records, communications, and information dated between January 1, 2018 to the present.

## REQUESTS

1.      All documents, records, communications, or other information concerning the Suspect Transactions, Suspect Addresses, or the Suspect Accounts.

2.      All onboarding, know-your-customer and anti-money laundering information concerning the Suspect Addresses or Suspect Accounts, including, but not limited to, account opening documents, applications, onboarding forms, and any other information identifying the owners.

3.      All account statements and transaction records for the Suspect Transactions, Suspect Addresses, or Suspect Accounts.

4.      All internet protocol addresses associated with the Suspect Transactions, Suspect Addresses, or Suspect Accounts.

5.      All documents, records, or other information reflecting persons or entities that own or control the Suspect Addresses or Suspect Accounts, including signers, beneficiaries, joint owners, or partial owners.

6.      All documents, records, or other information reflecting the source of funds contained in the Suspect Addresses or Suspect Accounts, including deposit information.

7.      All documents, records, communications, account statements, or other information concerning the following persons and entities:

      a.      Cred
      b.      Cyber Quantum PTE, Ltd.
      c.      Cyber Quantum
      d.      Dan Schatt
      e.      Lu Hua
      f.      James Alexander
      g.      Aaliyah Wan
      h.      Daniyal Inamullah
      i.      James Podulka
      j.      Daniel Wheeler

k.      Chris Spadafora
l.      Heidi Ng
m.     Max Rokhline
n.      Jonathan Labovich
o.      MoKredit, Inc.
p.      MoKredit (Shanghai) Information Technology, Co. Ltd.
q.     MoKredit Technology (Hong Kong) Company Limited
r.      Shanghai Bestone Information Technology Co., Ltd.
s.      JST
t.      JST Capital
u.      JST Systems, LLC
v.      JST Alpha 1 Master Fund (Cayman)
w.    All email domains "@jstcap.com"
x.     All email domains "@mycred.io"

8.     All documents, records, communications, account statements, or other information concerning Accounts and Wallets associated with the email accounts al3xander.james@gmail.com and james@levelcapital.io.



**DATE OF TRANSLATION:** 9-Nov-21

**ELECTRONIC FILE NAME:** Cred Inc. Letters of Rogatory Bittrex Global GmbH

**SOURCE LANGUAGE:** English

**TARGET LANGUAGE:** German

**TRANSPERFECT JOB ID:** US1146545

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.
TRANSPERFECT GLOBAL HQ
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001

TCert v. 4.0

### VOR DEM KONKURSGERICHT DER VEREINIGTEN STAATEN FÜR DEN BEZIRK DELAWARE

| | | |
|---|---|---|
| | ) | |
| In Sachen: | ) | Chapter 11 |
| | ) | |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
| | ) | |
| Schuldner.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |

## ERSUCHEN UM INTERNATIONALE RECHTSHILFE – RECHTSHILFEERSUCHEN

Das Konkursgericht der Vereinigten Staaten für den Bezirk Delaware (United States Bankruptcy Court for the District of Delaware, das „Gericht") ersucht um internationale Rechtshilfe zur Vornahme einer Beweisaufnahme gemäß dem Haager Übereinkommen vom 18. März 1970 über die Beweisaufnahme im Ausland in Zivil- oder Handelssachen (das „Haager Übereinkommen"), die in den oben genannten Chapter-11-Fällen (die „Chapter-11-Fälle") der Cred Inc. („Cred") und der mit ihr verbundenen Schuldner (zusammen die „Schuldner") verwendet werden soll.

Basierend auf den Erklärungen des Cred Inc. Liquidation Trust (der „Trust"), der im Rahmen der Chapter-11-Fälle eingerichtet wurde, hat dieses Gericht festgestellt, dass die Bittrex Global GmbH („Bittrex") möglicherweise im Besitz von Dokumenten, Informationen und Kenntnissen über wesentliche Fakten ist, die für die laufenden Ermittlungen des Trusts und die Wiedererlangung der Vermögenswerte der Schuldner relevant sind. Das Gericht ersucht um die nachstehend beschriebene Rechtshilfe:

---

[1] Die Schuldner in diesen Chapter-11-Fällen, zusammen mit den letzten vier Ziffern ihrer jeweiligen US-Bundessteueridentifikationsnummer, sind folgende: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566). Die Postanschrift der Schuldner ist 3 East Third Avenue, San Mateo, California 94401, USA.

| | |
|---|---|
| 1. Absender | Cred Inc. Liquidation Trust<br><br>Vertreten durch:<br><br>McDermott Will & Emery LLP<br>David R. Hurst<br>1007 North Orange Street, 10th Floor<br>Wilmington, DE 19801, USA<br>dhurst@mwe.com<br>Tel.-Nr.: [+1] (302) 485-3900<br>Fax-Nr.: [+1] (302) 351-8711<br><br>Darren Azman<br>Joseph B. Evans<br>McDermott Will & Emery LLP<br>One Vanderbilt Avenue<br>New York, NY 10017, USA<br>dazman@mwe.com<br>jbevans@mwe.com<br>Tel.-Nr.: [+1] (212) 547-5400<br>Fax-Nr.: [+1] (212) 547-5444 |
| 2. Zentrale Behörde des ersuchten Staates | Fürstliches Landgericht<br>Spaniagasse 1<br>9490 Vaduz<br>Fürstentum Liechtenstein |
| 3. Person, an die das erledigte Ersuchen zurückgesandt werden soll | Cred Inc. Liquidation Trust<br><br>Vertreten durch:<br><br>McDermott Will & Emery LLP<br>David R. Hurst<br>1007 North Orange Street, 10th Floor<br>Wilmington, DE 19801, USA<br>dhurst@mwe.com<br>Tel.-Nr.: [+1] (302) 485-3900<br>Fax-Nr.: [+1] (302) 351-8711<br><br>Darren Azman<br>Joseph B. Evans<br>McDermott Will & Emery LLP<br>One Vanderbilt Avenue<br>New York, NY 10017, USA<br>dazman@mwe.com<br>jbevans@mwe.com<br>Tel.-Nr.: [+1] (212) 547-5400<br>Fax-Nr.: [+1] (212) 547-5444 |

| | |
|---|---|
| 4. Ersuchende gerichtliche Behörde (Artikel 3, a) | United States Bankruptcy Court<br>District of Delaware<br>Judge John T. Dorsey<br>824 North Market Street<br>3rd Floor<br>Wilmington, DE 19801, USA |
| 5. An die zuständige Behörde von (Artikel 3, a) | Liechtenstein |
| 6. Name des Falles und etwaige Identifikationsnummer | In Sachen: Cred, Inc. *et al*.,<br>Case No. 20-12836 (JTD) |
| 7. Namen und Anschriften der Parteien und ihrer Vertreter (Artikel 3, b) | Cred Inc. Liquidation Trust<br><br>Vertreten durch:<br><br>McDermott Will & Emery LLP<br>David R. Hurst<br>1007 North Orange Street, 10th Floor<br>Wilmington, DE 19801, USA<br>dhurst@mwe.com<br>Tel.-Nr.: [+1] (302) 485-3900<br>Fax-Nr.: [+1] (302) 351-8711<br><br>Darren Azman<br>Joseph B. Evans<br>McDermott Will & Emery LLP<br>One Vanderbilt Avenue<br>New York, NY 10017, USA<br>dazman@mwe.com<br>jbevans@mwe.com<br>Tel.-Nr.: [+1] (212) 547-5400<br>Fax-Nr.: [+1] (212) 547-5444 |
| 8. Vorzunehmende Beweisaufnahme oder gerichtliche Handlung (Artikel 3, d) | Es wird höflichst ersucht, dass eine gerichtliche Behörde in Liechtenstein anordnet, dass Bittrex die in Anlage 1 beschriebenen Kopien von Dokumenten vorlegt und Zeugenaussagen erzwingt von:<br><br>Bittrex Global GmbH<br>Dr. Grass-Strasse 12<br>Vaduz, 9490<br>Liechtenstein |
| 9. Die Gebühren und Kosten, die gemäß Artikel 14 Absatz 2 oder Artikel 26 des | Cred Inc. Liquidation Trust<br><br>Vertreten durch: |

3

| Übereinkommens erstattungsfähig sind, werden getragen von | McDermott Will & Emery LLP<br>David R. Hurst<br>1007 North Orange Street, 10th Floor<br>Wilmington, DE 19801, USA<br>dhurst@mwe.com<br>Tel.-Nr.: [+1] (302) 485-3900<br>Fax-Nr.: [+1] (302) 351-8711<br><br>Darren Azman<br>Joseph B. Evans<br>McDermott Will & Emery LLP<br>One Vanderbilt Avenue<br>New York, NY 10017, USA<br>dazman@mwe.com<br>jbevans@mwe.com<br>Tel.-Nr.: [+1] (212) 547-5400<br>Fax-Nr.: [+1] (212) 547-5444 |
|---|---|

Der unterzeichnete Ersuchende stellt dieses Ersuchen in der oben bezeichneten Klage gemäß Artikel 3 des Haager Übereinkommens.

Das Gericht begrüßt die gerichtlichen Behörden Liechtensteins und ersucht um internationale Rechtshilfe zur Vornahme einer Beweisaufnahme, die bei den Ermittlungen vor dem Gericht in den Chapter-11-Fällen verwendet werden soll.

Das Gericht ersucht um die hier beschriebene Rechtshilfe, die im Interesse der Justiz erforderlich ist. Das Rechtshilfeersuchen richtet sich an die zuständige gerichtliche Behörde in Liechtenstein, um Bittrex zur Vorlage der nachstehend aufgeführten Dokumente zu zwingen.

### **RELEVANTE INFORMATIONEN ÜBER DIE INSOLVENZFÄLLE**

Am 7. November 2020 stellten die Schuldner einen Antrag auf Konkurseröffnung gemäß Chapter 11, Title 11 des United States Code (der „Bankruptcy Code"). Am 11. März 2021 bestätigte das Gericht den Liquidationsplan, und der Plan trat am 19. April 2021 in Kraft. An diesem Tag des Inkrafttretens wurde der Trust gegründet und die Vermögenswerte der

4

Schuldner, einschließlich aller Forderungen und Klagegründe, wurden auf den Trust übertragen und an ihn abgetreten.

Die Geschäftstätigkeit der Schuldner und die Insolvenzfälle nach Chapter 11 beinhalten verschiedene Formen von Transaktionen in Kryptowährung, von denen der Trust einige als betrügerisch oder anderweitig unrechtmäßig eingestuft hat. Dementsprechend hat der Trust eine umfangreiche Untersuchung dieser Transaktionen und der möglichen Beitreibung der Vermögenswerte der Schuldner durchgeführt. Zur Unterstützung bei dieser Beitreibung hat der Trust eine der weltweit führenden Beratungsfirmen für die Rückverfolgung von Kryptowährungen beauftragt.

Der Trust hat dem Gericht gegenüber erklärt, dass er Beweise dafür festgestellt hat, dass die folgende natürliche/juristische Person Informationen über gestohlene oder unrechtmäßig übertragene Kryptowährung haben könnte: Bittrex.

Die Informationen von Bittrex sind auf keinem anderen Weg erhältlich und werden für die potenzielle Wiedererlangung von bedeutenden Vermögenswerten aus dem Nachlass der Schuldner wesentlich sein. Dementsprechend strebt der Trust nun eine gezielte Offenlegung an, um Informationen zu erhalten, die für die laufenden Ermittlungen des Trusts und die Wiedererlangung von Vermögenswerten sachdienlich sind. Eine solche Offenlegung ist angesichts der Leichtigkeit und Geschwindigkeit, mit der Vermögenswerte in Kryptowährung verschoben oder verschwinden können, besonders wichtig.

### RELEVANZ DIESES ERSUCHENS FÜR DIE OBEN BEZEICHNETE ANGELEGENHEIT

Es wird angenommen, dass Bittrex, die Gesellschaft, die Gegenstand dieses Ersuchens ist, in Liechtenstein ansässig ist. Basierend auf den Ermittlungen des Trusts wird davon

ausgegangen, dass Bittrex über wichtige Informationen verfügt, die für die Ermittlungen von

zentraler Bedeutung sind. Die unten beschriebenen Dokumente und potenziellen

Zeugenaussagen sind sachdienlich für die Identifizierung von Daten und anderen Informationen,

die für die Wiedererlangung der Vermögenswerte entscheidend sind.

      Aus den vorgenannten Gründen und im Interesse der Gerechtigkeit ersucht dieses Gericht

daher um den Erlass einer Anordnung gemäß den Gesetzen und Verfahren der

liechtensteinischen Gerichte für die Erbringung von Urkundenbeweisen in den Chapter-11-

Fällen. Das Ersuchen betreffend Dokumente und Zeugenaussagen wird im Folgenden

beschrieben.

### <u>FRIST UND ANDERE SPEZIFISCHE BITTEN</u>

      Die nachstehend unterzeichnete Behörde bittet höflich darum, dass die Dokumente

innerhalb von 30 Tagen nach der Anordnung an Bittrex, sie dem Trust vorzulegen, an den Trust

weitergereicht werden. Bei Bedarf wird dieses Gericht den zuständigen gerichtlichen Behörden

Liechtensteins die gleiche Rechtshilfe zukommen lassen, um die hier ersucht wird.


**Datum: _____ 2021**　　**JOHN T. DORSEY**
**　　　　Wilmington, Delaware**　　　　**KONKURSRICHTER DER VEREINIGTEN**
**　　　　　　　　　　　　　　　　　　STAATEN (UNITED STATES BANKRUPTCY**
**　　　　　　　　　　　　　　　　　　JUDGE)**

**ANHANG 1**

**DOKUMENTENERSUCHEN**

**BEGRIFFSBESTIMMUNGEN**

Die folgenden Begriffsbestimmungen gelten für alle Ersuchen unter der nachstehenden Überschrift „Ersuchen". Sofern hier nicht anders definiert, haben alle hier verwendeten Wörter und Ausdrücke ihre übliche Bedeutung und sind in ihrem gewöhnlichen Sinn auszulegen.

1.      Eine Bezugnahme auf eine Kapitalgesellschaft, eine Personengesellschaft, ein Unternehmen, einen Verband, eine Organisation oder eine andere geschäftliche oder juristische Person (einschließlich der Schuldner) schließt deren Vertreter, Wirtschaftsprüfer, Berater, Mitarbeiter, Rechtsanwälte, leitenden Angestellten, Direktoren, direkten oder indirekten Gesellschafter, Mitglieder, Vertreter, Tochtergesellschaften, Vorgänger, Nachfolger, Zessionare oder andere Personen, die im Namen der Kapitalgesellschaft, der Personengesellschaft, des Unternehmens, des Verbands, der Organisation oder der anderen geschäftlichen oder juristischen Person handeln oder zu handeln vorgeben, mit ein.

2.      Die Verwendung eines Substantivs im Singular schließt den Plural ein und umgekehrt, und ein Verb in einer beliebigen Zeitform gilt als Verwendung des Verbs in allen anderen Zeitformen.

3.      Die Begriffe „alle", „ein/e/es" und „jede/r/s" sind so zu verstehen, dass sie alle und jeden umfassen.

4.      Die Konjunktionen „und" und „oder" sind entweder disjunktiv oder konjunktiv auszulegen, wenn dies erforderlich ist, um alle Antworten, die andernfalls als außerhalb des Anwendungsbereichs des Offenlegungsersuchens liegend ausgelegt werden könnten, in den Anwendungsbereich des Ersuchens einzubeziehen.

1

5.      „Sie" oder „Ihr" bezeichnet die Bittrex Global GmbH und andere Unternehmen, die mit der allgemein als Bittrex bekannten Kryptowährungsbörse verbunden sind, einschließlich, soweit zutreffend, ihrer Vorgänger, Nachfolger, Partner, Joint Ventures, Tochtergesellschaften, verbundenen Unternehmen, Abteilungen, Direktoren, leitenden Angestellten, Auftraggeber, Treuhänder, Mitarbeiter, Vertreter, Beauftragten, Berater, Anwälte, Wirtschaftsprüfer, Buchhalter, Consultants oder anderer Personen, die jetzt oder früher unter der Kontrolle der Vorgenannten stehen oder in ihrem Namen handeln oder zu handeln vorgeben.

6.      „Konto (Konten)" bezeichnet jedes Depot für Fiat- oder Kryptowährungen, einschließlich Unternehmen oder Dienste, die digitale Wallets hosten oder bereitstellen oder anderweitig den Handel und das Speichern von Kryptowährung (auch Kryptowährungsbörsen und Kryptowährungsdepots) ermöglichen, Girokonten, Sparkonten, Treuhandkonten, Depotkonten, Geldmarktkonten, Anlagekonten, Transaktionskonten, Einlagenzertifikate, Schließfächer und aller anderen Inhaber von Vermögenswerten jeglicher Art, einschließlich Bargeld, Wertpapieren, Schuldtiteln, Edelmetallen und Schmuck, wichtiger Dokumente, Urkunden oder anderer Vermögenswerte oder Tauschmittel.

7.      „Kommunikation" bezeichnet die Übermittlung von Informationen (in Form von Fakten, Ideen, Anfragen oder anderem). Dies kann jede mündliche, schriftliche oder elektronische Übermittlung von Informationen ohne Einschränkung umfassen, einschließlich Sitzungen, Diskussionen, Gespräche, Telefonanrufe, E-Mail-Nachrichten, Textnachrichten, Chats, iMessages, Bloomberg, Telegram, WhatsApp, Groupme, WeChat, Signal, Dust, Slack, Proton, Memoranden, Briefe, Analystenberichte, Fernkopien, Telefaxe, Telexe, Konferenzen, Seminare, Nachrichten, Notizen, Videobänder, Fotografien, Mikrofilme, Mikrofiche, Magnetplatten oder andere Medien jeglicher Art.

8.      „Bezüglich" bedeutet in Bezug auf, sich beziehend auf, beschreibend, belegend oder bildend.

9.      „Cred" bezeichnet Cred Inc, Cred (US) LLC, Cred Capital, Inc, Cred Merchant Solutions LLC und Cred (Puerto Rico) LLC sowie deren Vorgänger, Nachfolger, Tochtergesellschaften, Partner, Auftraggeber, leitenden Angestellten, Direktoren, Anwälte, Manager, Fachleute und sonstigen Berater, Beauftragten, Mitarbeiter, Vertreter und Personen, die in ihrem Namen handeln oder zu handeln vorgeben.

10.      „Kryptowährung" bezeichnet alle digitalen Vermögenswerte, die auf einer Blockchain gehandelt werden, wobei diese Definition weit gefasst ist und alle Arten von digitalen Vermögenswerten umfasst, einschließlich virtueller Währungen, Token, ERC-20-konformer Token, Sicherheits-Token, Utility-Token, Stablecoins und anderer digitaler Vermögenswerte. Diese Definition umfasst unter anderem Bitcoin, Bitcoin Cash, Ethereum, U.S. Dollar Coin, Tether (USDt), Libra Token (LBA), Dai, IDOL, XRP, Cardano, Polkadot, Binance Coin, Litecoin, Chainlink, Stellar, Dogecoin, Aave, Uniswap, Wrapped Bitcoin, Bitcoin SV, EOS, Monero, Maker, Cosmos, TRON, NEM, Synthetix, Tezos, THETA, Compound, VeChain, Neo SushiSwap, Huobi Token, UMA, Elrond, IOTA, Solana und andere digitale Vermögenswerte.

11.      „Digitale Adresse" bezeichnet die alphanumerische Folge, die ein digitales Wallet identifiziert.

12.      „Digitale(s) Wallet(s)" bezeichnet den Ort, an dem Kryptowährung (und/oder die Schlüssel, die den Zugang zu Kryptowährung ermöglichen) gespeichert wird, einschließlich gehosteter Wallets, nicht gehosteter Wallets, Multi-sig-Wallets und anderer Orte, an denen Kryptowährung gespeichert werden kann.

3

13.     „Dokumente" ist synonym mit dem Begriff „Dokumente oder elektronisch

gespeicherte Informationen" in Federal Rule of Civil Procedure 34(a)(1)(A) und hat den gleichen

Geltungsbereich. Zur Klarstellung: Dies umfasst alle schriftlichen, grafischen oder gedruckten

Materialien jeglicher Art, wie auch immer sie hergestellt oder reproduziert werden,

einschließlich aller Originale, Entwürfe, Arbeitspapiere und nichtidentischer Exemplare,

unabhängig davon, ob sie sich von den Originalen durch Notizen darauf oder anderweitig

unterscheiden, sowie alle elektronischen, mechanischen oder optischen Aufzeichnungen oder

Darstellungen jeglicher Art oder andere Datensammlungen, aus denen Informationen gewonnen

oder bei Bedarf durch Erkennungsgeräte in eine vernünftig nutzbare Form übersetzt werden

können. Der Begriff „Dokumente" umfasst unter anderem:

- a.     Korrespondenz, Memoranden, Notizen, Kalender- oder Tagebucheinträge, Statistiken, Briefe, elektronische Post, Notizbücher, Telegramme, Journale, Protokolle, Tagesordnungen, Bekanntmachungen, Ankündigungen, Anweisungen, Diagramme, Zeitpläne, Anträge, Verträge, potenzielle Verträge, Vereinbarungen, potenzielle Vereinbarungen, Lizenzen, potenzielle Lizenzen, Bestellscheine, Bücher, Konten, Aufzeichnungen, Berichte, Studien, Umfragen, Experimente, Analysen, Schecks, entwertete Schecks, Überweisungsbestätigungen, Auszüge, Quittungen, Rücksendungen, Belege, Erklärungen, Gutschriften, Verkaufsbelege, Schuldscheine, Zusammenfassungen, Broschüren, Prospekte, Handbücher, Bekanntmachungen, Bescheinigungen, Zeichnungen, Pläne, bürointerne und büroübergreifende Mitteilungen, Pitchbooks, Marketingmaterial oder Angebote;
- b.     jede schriftliche oder elektronische Übermittlung von Informationen ohne Einschränkung, einschließlich Sitzungen, Diskussionen, Gespräche, Telefonanrufe, E-Mail-Nachrichten, Textnachrichten, Chats, iMessages, Bloomberg, Telegram, WhatsApp, Groupme, WeWork, Signal, Dust, Slack, Proton, Memoranden, Briefe, Analystenberichte, Fernkopien, Telefaxe, Telexe, Konferenzen, Seminare, Nachrichten, Notizen, Videobänder, Fotografien, Mikrofilme, Mikrofiche, Magnetplatten oder andere Medien jeglicher Art;
- c.     Notizen jeglicher Art von Gesprächen, Telefonaten, Sitzungen, Verhandlungen oder sonstigen Mitteilungen;
- d.     Bulletins, Rundschreiben, Zeitpläne, Listen, Leitfäden, Drucksachen (einschließlich Zeitungen, Zeitschriften und andere Veröffentlichungen, Artikel und Ausschnitte daraus), Pressemitteilungen, Computerausdrucke,

Fernschreiben, Fernkopien, Telexe, Rechnungen, Hauptbücher, Bilanzen, Jahresabschlüsse oder Arbeitsblätter;

e.     elektronische, mechanische oder optische Aufzeichnungen oder Darstellungen jeglicher Art (einschließlich Bänder, Kassetten, Platten, Festplatten, Mitschnitte, Voicemail, E-Mail und auf Computern gespeicherten Daten oder Materialien) oder Abschriften davon; und

f.     alle Entwürfe, Abwandlungen, Modifikationen, Änderungen und Ergänzungen der vorgenannten Dokumente sowie jegliches Material, das den Dokumenten zugrunde liegt, sie unterstützt oder bei der Erstellung der Dokumente verwendet wurde.

g.     Ein Entwurf oder ein nichtidentisches Exemplar ist ein separates Dokument im Sinne dieses Begriffs.

14.     „Aufzeichnungen" bezeichnet alle Dokumente und Mitteilungen, die in irgendeiner Weise mit einem Konto in Verbindung stehen, einschließlich E-Mails, Auszüge, Anträge, Onboarding-Formulare, Mitteilungen, Korrespondenz, Dokumente im Zusammenhang mit „Know your customer"/Geldwäschebekämpfung, SWIFT-Aufzeichnungen, Aufzeichnungen über Transaktionen, Schecks (Vorder- und Rückseite), Überweisungen, Steuerdokumente und -einreichungen, Bescheinigungen über den ausländischen Status von wirtschaftlichen Eigentümern, Memoranden, Notizen, Depotvereinbarungen, Treuhandvereinbarungen, -formulare und/oder damit zusammenhängende Dokumente und Mitteilungen, Begünstigtenvereinbarungen, -formulare und/oder damit zusammenhängende Dokumente und Mitteilungen sowie alle anderen Dokumente, die die Eigentümer, Unterzeichner, wirtschaftlichen Eigentümer, Treuhänder und alle anderen Personen betreffen, die in irgendeiner Weise mit einem Konto verbunden sind, sowie alle anderen Dokumente, Mitteilungen oder Bankunterlagen.

15.     „Verdächtige Transaktionen" bezeichnet die in Anhang 2 genannten Transaktionen, die von der Beratungsfirma des Trusts für die Rückverfolgung von Kryptowährungen, CipherTrace LLC, zusammengestellt wurden.

16.     „Verdächtige Adressen" bezeichnet die in den verdächtigen Transaktionen identifizierten digitalen Adressen.

17.    „Verdächtige Konten" bezeichnet alle Wallets und Konten, die mit den verdächtigen Adressen verbunden sind.

## ANWEISUNGEN

1.    Die vorstehenden Begriffsbestimmungen gelten für diese Anweisungen und jedes der nachfolgenden Ersuchen.

2.    Alle oben definierten Begriffe haben die darin festgelegte Bedeutung, gleich ob sie in den Ersuchen großgeschrieben sind oder nicht.

3.    Sie sind verpflichtet, alle Dokumente vorzulegen, die sich in Ihrem Besitz, in Ihrem Gewahrsam oder unter Ihrer Kontrolle befinden, unabhängig davon, wo sie sich befinden, einschließlich der Dokumente, die sich im Gewahrsam Ihrer Vertreter, Bevollmächtigten, Fachleute, verbundenen Unternehmen oder anderer in Ihrem Namen handelnden Personen befinden.

4.    Diese Ersuchen beziehen sich nur auf Dokumente, soweit sie dem Trust noch nicht übergeben wurden.

5.    Wenn Sie gegen einen Teil eines Ersuchens Einspruch erheben, müssen Sie alle Dokumente vorlegen, die zu den Teilen des Ersuchens gehören, gegen die Sie keinen Einspruch erheben. Zudem müssen Sie die Art und die Gründe für Ihren Einspruch angeben.

6.    Wenn Sie einem Ersuchen nicht in vollem Umfang nachkommen können, müssen Sie es so weit wie möglich erfüllen, und Sie sollten erklären, warum die vollständige Erfüllung nicht möglich ist.

7.    Wenn Sie sich bei Ihrem Einspruch gegen ein Ersuchen auf ein Recht berufen und auf dieser Grundlage ein einschlägiges Dokument zurückhalten, müssen Sie ein Protokoll zu dem Privileg vorlegen, das (a) die Art des beanspruchten Rechts, (b) die Art des

zurückgehaltenen Dokuments, (c) den allgemeinen Gegenstand des Dokuments, (d) das Datum des Dokuments und (e) andere, zur Identifizierung des Dokuments ausreichende Informationen enthält, gegebenenfalls einschließlich des Verfassers des Dokuments, des Titels oder der Betreffzeile des Dokuments, des Empfängers des Dokuments und, falls nicht ersichtlich, der Beziehung zwischen dem Verfasser und dem Empfänger zueinander.

8.      Enthält ein Dokument sowohl privilegiertes als auch nichtprivilegiertes Material, müssen Sie das nichtprivilegierte Material so weit wie möglich offenlegen, ohne dabei das privilegierte Material offenzulegen. Macht eine Partei ein Recht auf einen Teil des in einem Dokument enthaltenen Materials geltend, muss die das Recht geltend machende Partei die Teile, auf die sie das Recht beansprucht, deutlich angeben. Wenn ein Dokument in irgendeiner Weise geschwärzt oder geändert wurde, müssen Sie für jedes Dokument den Grund für die Schwärzung oder Änderung, das Datum der Schwärzung oder Änderung und die Person, die die Schwärzung oder Änderung vorgenommen hat, angeben. Jede Schwärzung muss auf den geschwärzten Dokumenten deutlich erkennbar sein.

9.      Für die zusätzliche besondere Verarbeitung bestimmter elektronisch gespeicherter Informationen gilt Folgendes: Microsoft Excel-Tabellenfelder werden nicht in TIFF-Dateien umgewandelt, sondern im nativen Format erstellt. Es wird ein Platzhalter-TIFF-Bild erstellt, das mit einer Bates-Nummer versehen wird, und die erstellte Excel-Datei wird so umbenannt, dass sie der Bates-Nummer auf der betreffenden Platzhalterseite entspricht. Eine Ausnahme bilden die geschwärzten Tabellen, die im TIFF-Format erstellt werden müssen. Die Bilder für die geschwärzten Tabellen müssen den Inhalt in der gleichen Art und Weise darstellen, als ob er gedruckt wäre. Die extrahierbaren Metadaten und der Text werden für native Dateien bereitgestellt, und für die nichtgeschwärzten Teile der Dokumente wird ein OCR erstellt. Die

aufgrund dieses Ersuchens vorgelegten ESI und E-Mails sind in einem durchsuchbaren Format

mit einem begleitenden Index zu erstellen, der die folgenden Metadaten angibt:

a. BEG_NO (Bates-Nummer entsprechend der ersten Seite des Dokuments);
b. END_NO (Bates-Nummer entsprechend der letzten Seite des Dokuments);
c. CUSTODIAN (Wer hat das Dokument vorgelegt; in der Regel eine Person. Geben Sie nur die Namen von Verwahrern an, die für die betreffende Angelegenheit relevant sind; alle überflüssigen Namen sollten aus den Metadaten entfernt werden);
d. ATTACH_RANGE (Anhangsbereich für übergeordnete E-Mail und untergeordnete Anhänge);
e. FILE_EXT (Dateierweiterung des nativen Dokuments);
f. FILE_NAME (Originaldateiname des nativen Dokuments);
g. HASH (MD5-Hash-Wert des Dokuments oder „De-Duplikationsschlüssel");
h. AUTHOR (Verfasser des Dokuments oder der E-Mail);
i. DATE_LAST_MOD (Datum der letzten Änderung der Datei: MM/TT/JJJJ);
j. TIME_LAST_MOD (Zeitpunkt der letzten Änderung der Datei: Zeitzone EST);
k. TITLE/SUBJECT (Informationen aus Titel oder Betreffzeile);
l. FROM (Autor der E-Mail-Nachricht);
m. TO (Empfänger der E-Mail-Nachricht);
n. CC (Empfänger der Kopien der E-Mail-Nachricht);
o. BCC (Empfänger der Blindkopien der E-Mail-Nachricht);
p. DATE_SENT (Datum des Versands der E-Mail-Nachricht: MM/TT/JJJJ);
q. TIME_SENT (Sendezeit der E-Mail-Nachricht: Zeitzone EST);
r. DATE_RCVD (Empfangsdatum der E-Mail-Nachricht: MM/TT/JJJJ);
s. TIME_RCVD (Empfangszeit der E-Mail-Nachricht: Zeitzone EST).

10.    Falls ein in diesen Ersuchen angefordertes Dokument vernichtet oder

weggeworfen wurde, müssen Sie dieses Dokument schriftlich identifizieren, indem Sie die

folgenden Angaben machen: (a) Absender/Verfasser und Empfänger; (b) angegebene Kopien

oder Blindkopien; (c) Datum, Gegenstand, Seitenzahl und Anhänge oder Anlagen des

Dokuments; (d) alle Personen, an die das Dokument verteilt, gezeigt oder erläutert wurde; (e) das

Datum der Vernichtung oder Aussonderung, die Art der Vernichtung oder Aussonderung und der

Grund für die Vernichtung oder Aussonderung; (f) die Personen, die die Vernichtung oder

Aussonderung genehmigt und durchgeführt haben; und (g) ob Kopien des Dokuments vorhanden

sind und, falls ja, den Namen des Verwahrers jeder Kopie.

11.     Eine Kopie eines Dokuments, die in irgendeiner Weise vom Original oder einer anderen Kopie des Dokuments abweicht, sei es aufgrund einer handschriftlichen Markierung oder eines anderen Vermerks oder einer Auslassung, gilt ein gesondertes Dokument und muss vorgelegt werden, gleich ob sich das Original in Ihrem Besitz, in Ihrem Gewahrsam oder unter Ihrer Kontrolle befindet oder nicht. Ein Ersuchen bezüglich eines Dokuments schließt zusätzlich zu dem Dokument selbst alle Entwürfe sowie alle Überarbeitungen und Änderungen daran ein, einschließlich aller rot unterstrichenen Versionen oder Dokumentenvergleiche. Jedes Dokument ist in seiner Gesamtheit, ohne Kürzungen oder Auslassungen, vorzulegen.

12.     Bei der Dokumentenvorlage sollten alle Dokumente, die physisch miteinander verbunden oder von anderen Dokumenten getrennt sind, so vorgelegt werden, wie sie ursprünglich gefunden wurden. Ist kein Dokument vorhanden, das für das bestimmte Ersuchen infrage kommt, müssen Sie dies schriftlich mitteilen.

13.     Sofern nicht anders angegeben, werden mit den Dokumentenersuchen Dokumente, Aufzeichnungen, Mitteilungen und Informationen aus der Zeit vom 1. Januar 2018 bis heute angefordert.

## ERSUCHEN

1.      Alle Dokumente, Aufzeichnungen, Mitteilungen oder sonstigen Informationen über die verdächtigen Transaktionen, die verdächtigen Adressen oder die verdächtigen Konten.

2.      Alle Informationen betreffend Onboarding, „Know your customer" und Geldwäschebekämpfung in Bezug auf die verdächtigen Adressen oder verdächtigen Konten, einschließlich Kontoeröffnungsdokumente, Anträge, Onboarding-Formulare und alle sonstigen Informationen zur Identifizierung der Eigentümer.

3.      Alle Kontoauszüge und Transaktionsunterlagen für die verdächtigen Transaktionen, verdächtigen Adressen oder verdächtigen Konten.

4.      Alle Internetprotokolladressen, die mit den verdächtigen Transaktionen, verdächtigen Adressen oder verdächtigen Konten verbunden sind.

5.      Alle Dokumente, Aufzeichnungen oder sonstigen Informationen, die natürliche oder juristische Personen widerspiegeln, die die verdächtigen Adressen oder verdächtigen Konten besitzen oder kontrollieren, einschließlich Unterzeichner, Begünstigte, Miteigentümer oder Teileigentümer.

6.      Alle Dokumente, Aufzeichnungen oder sonstigen Informationen, die die Herkunft der Gelder an den verdächtigen Adressen oder auf verdächtigen Konten widerspiegeln, einschließlich Informationen über Einzahlungen.

7.      Alle Dokumente, Aufzeichnungen, Mitteilungen, Kontoauszüge oder sonstigen Informationen über die folgenden natürlichen oder juristischen Personen:

      a.      Cred
      b.      Cyber Quantum PTE, Ltd.
      c.      Cyber Quantum
      d.      Dan Schatt
      e.      Lu Hua
      f.      James Alexander

g.  Aaliyah Wan
h.  Daniyal Inamullah
i.  James Podulka
j.  Daniel Wheeler
k.  Chris Spadafora
l.  Heidi Ng
m.  Max Rokhline
n.  Jonathan Labovich
o.  MoKredit, Inc.
p.  MoKredit (Shanghai) Information Technology, Co. Ltd.
q.  MoKredit Technology (Hong Kong) Company Limited
r.  Shanghai Bestone Information Technology Co., Ltd.
s.  JST
t.  JST Capital
u.  JST Systems, LLC
v.  JST Alpha 1 Master Fund (Cayman)
w.  Alle E-Mail-Domänen „@jstcap.com"
x.  Alle E-Mail-Domänen „@mycred.io"

8.  Alle Dokumente, Aufzeichnungen, Mitteilungen, Kontoauszüge oder sonstigen

Informationen über Konten und Wallets, die mit den E-Mail-Konten

al3xander.james@gmail.com and james@levelcapital.io in Verbindung stehen.

11

# Attachment 2

| | A | B | C | D |
|---|---|---|---|---|
| 1 | Asset | Amount | Digital Address | Transaction Hash |
| 2 | Omni | | jQZp | 3771 |
| 3 | Omni | | jQZp | 3771 |
| 4 | Omni | | jQZp | d56d |
| 5 | Omni | | jQZp | d611 |
| 6 | Omni | | jQZp | 1eeb |
| 7 | Omni | | jQZp | 109d |
| 8 | ETH | | 8df5 | 3f21 |
| 9 | ETH | | 8df5 | 5d70 |
| 10 | ETH | | 43ef | 75d5 |
| 11 | ETH | | b982 | 060b |
| 12 | ETH | | b982 | bc14 |