# EXHIBIT 12

**Proposed Letter – Muhammad Kamran Abdul Razzak Sabowala**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| CRED INC., *et al.*, | Case No. 20-12836 (JTD) |
| Debtors.[1] | (Jointly Administered) |

## REQUEST FOR INTERNATIONAL ASSISTANCE – LETTER OF REQUEST

The United States Bankruptcy Court for the District of Delaware (this "Court") respectfully requests international judicial assistance to obtain evidence to be used in the above-captioned chapter 11 cases (the "Chapter 11 Cases") of Cred Inc. ("Cred") and its affiliated debtors (collectively, the "Debtors").

Based on the representations made by the Cred Inc. Liquidation Trust (the "Trust") established in the Chapter 11 Cases, this Court has determined that Muhbammad Kamran Abdul Razzak Sabowala ("Mr. Sabowala") may be in possession of documents, information, and knowledge concerning material facts that are relevant to the Trust's ongoing investigation and recovery of the Debtors' assets. This Court requests the assistance described below:

| 1. Sender | Cred Inc. Liquidation Trust<br><br>Represented by:<br><br>McDermott Will & Emery LLP<br>David R. Hurst<br>1007 North Orange Street, 10th Floor<br>Wilmington, Delaware 19801<br>dhurst@mwe.com |
|---|---|

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

1

|  | Telephone: (302) 485-3900<br>Facsimile: (302) 351-8711<br><br>Darren Azman<br>Joseph B. Evans<br>McDermott Will & Emery LLP<br>One Vanderbilt Avenue<br>New York, New York 10017<br>dazman@mwe.com<br>jbevans@mwe.com<br>Telephone: (212) 547-5400<br>Facsimile: (212) 547-5444 |
|---|---|
| 2. Central Authority of Requested State | Ministry of Justice<br>Khalifa City (A), Sector 133, Street 12<br>P.O. Box 250<br>Abu Dhabi |
| 3. Person to whom the executed request is to be returned | Cred Inc. Liquidation Trust<br><br>Represented by:<br><br>McDermott Will & Emery LLP<br>David R. Hurst<br>1007 North Orange Street, 10th Floor<br>Wilmington, Delaware 19801<br>dhurst@mwe.com<br>Telephone: (302) 485-3900<br>Facsimile: (302) 351-8711<br><br>Darren Azman<br>Joseph B. Evans<br>McDermott Will & Emery LLP<br>One Vanderbilt Avenue<br>New York, New York 10017<br>dazman@mwe.com<br>jbevans@mwe.com<br>Telephone: (212) 547-5400<br>Facsimile: (212) 547-5444 |
| 4. Requesting judicial authority | United States Bankruptcy Court<br>District of Delaware<br>Judge John T. Dorsey<br>824 North Market Street<br>3rd Floor<br>Wilmington, Delaware 19801 |
| 5. To the competent authority of | United Arab Emirates |
| 6. Names of the case and any identifying number | In re: Cred, Inc. *et al.*,<br>Case No. 20-12836 (JTD) |

| | |
|---|---|
| 7. Names and addresses of the parties and their representatives (Article 3, b) | Cred Inc. Liquidation Trust<br><br>Represented by:<br><br>McDermott Will & Emery LLP<br>David R. Hurst<br>1007 North Orange Street, 10th Floor<br>Wilmington, Delaware 19801<br>dhurst@mwe.com<br>Telephone: (302) 485-3900<br>Facsimile: (302) 351-8711<br><br>Darren Azman<br>Joseph B. Evans<br>McDermott Will & Emery LLP<br>One Vanderbilt Avenue<br>New York, New York 10017<br>dazman@mwe.com<br>jbevans@mwe.com<br>Telephone: (212) 547-5400<br>Facsimile: (212) 547-5444 |
| 8. Evidence to be obtained or judicial act to be performed (Article 3, d) | It is respectfully requested that a judicial authority of the United Arab Emirates order Mr. Sabowala to produce copies of documents and compel testimony as described in Attachment 1 from:<br><br>Muhbammad Kamran Abdul Razzak Sabowala<br>50B Street<br>Meena Bazar<br>Dubai, United Arab Emirates |
| 9. The fees and costs incurred that are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by | Cred Inc. Liquidation Trust<br><br>Represented by:<br><br>McDermott Will & Emery LLP<br>David R. Hurst<br>1007 North Orange Street, 10th Floor<br>Wilmington, Delaware 19801<br>dhurst@mwe.com<br>Telephone: (302) 485-3900<br>Facsimile: (302) 351-8711<br><br>Darren Azman<br>Joseph B. Evans<br>McDermott Will & Emery LLP |

|  | One Vanderbilt Avenue<br>New York, New York 10017<br>dazman@mwe.com<br>jbevans@mwe.com<br>Telephone: (212) 547-5400<br>Facsimile: (212) 547-5444 |
|---|---|

This Court presents its compliments to the judicial authorities of the United Arab Emirates and requests international judicial assistance to obtain evidence to be used in an investigation before this Court in the Chapter 11 Cases. This Court requests the assistance described herein as necessary in the interests of justice. The assistance requested is for the appropriate judicial authority in the United Arab Emirates to compel Mr. Sabowala to produce the documents detailed below.

## RELEVANT INFORMATION ABOUT THE BANKRUPTCY CASES

On November 7, 2020, the Debtors filed for bankruptcy by filing petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On March 11, 2021, the Court confirmed the plan of liquidation, and the plan became effective on April 19, 2021. On that effective date, the Trust was established and the Debtors' assets, including all claims and causes of action, were transferred and assigned to the Trust.

The Debtors' business and the Chapter 11 Bankruptcy Cases involve various forms of cryptocurrency transactions, some of which the Trust has determined to be fraudulent or otherwise improper. Accordingly, the Trust has undertaken a substantial investigation into these transactions and the potential recovery of the Debtors' assets. To assist with such recovery, the Trust retained one of the world's leading cryptocurrency tracing consultants.

The Trust has represented to this Court that it has uncovered evidence that the following person/entity may have information about stolen or improperly transferred cryptocurrency: Mr.

Sabowala. The information from Mr. Sabowala is not available by any other means and will be essential to the potential recovery of significant assets of the Debtors' estates. Accordingly, the Trust now seeks targeted discovery to obtain information relevant to the Trust's ongoing investigation and recovery of assets. Such discovery is particularly important given the ease and speed with which cryptocurrency assets may be moved or dissipated.

### **RELEVANCE OF THIS REQUEST TO THE ABOVE-CAPTIONED MATTER**

The person/entity subject to this request, Mr. Sabowala, is believed to be located in United Arab Emirates. Based on the Trust's investigation, Mr. Sabowala is believed to have important information bearing on issues central to the investigation. Namely, that the documents described below and potential testimony are relevant to identifying data and other information that is critical to the recovery of assets.

For the foregoing reasons and in the interests of justice, this Court therefore requests that an order is issued in accordance with the laws and procedures of the courts of the United Arab Emirates for the acquisition of documentary evidence in the Chapter 11 Cases. The requests for documents and deposition testimony are described below.

## **SCHEDULING AND OTHER SPECIFIC REQUESTS**

It is respectfully requested by the below signed authority that the documents be produced to the Trust on or before 30 days after Mr. Sabowala is ordered to produce them to the Trust. When required, this Court will provide similar assistance as requested herein, to the appropriate judicial authorities of the United Arab Emirates.


**Dated: _____, 2021**        **JOHN T. DORSEY**
      **Wilmington, Delaware**                **UNITED STATES BANKRUPTCY JUDGE**

**ATTACHMENT 1**

**REQUEST FOR DOCUMENTS**

**DEFINITIONS**

The following definitions of terms apply to all Requests under the below heading "Requests." Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1. Any references to a corporation, partnership, proprietorship, association, organization, or any other business or legal entity (including any of the Debtors) shall be deemed to include the corporation's, partnership's, proprietorship's, association's, organization's, or other business or legal entities' agents, accountants, advisors, employees, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors, successors, assigns, or any other person acting or purporting to act on behalf of the corporation, partnership, proprietorship, association, organization, or other business or legal entity.

2. The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

3. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5. "You" or "Your," shall mean Muhbammad Kamran Abdul Razzak Sabowala including, as applicable, his agents, representatives, consultants, attorneys, auditors, accountants,

and any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf..

6. "Account(s)" means any fiat or cryptocurrency depository, including, but not limited to any company or service that hosts or provides digital wallets or otherwise permits trading and storage of cryptocurrency (including cryptocurrency exchanges and cryptocurrency custodians), checking accounts, savings accounts, trust accounts, custodian accounts, money market accounts, investment accounts, transactional accounts, certificates of deposit, safety deposit boxes, and any other holder of assets or value of any kind, including cash, securities, debt instruments, precious metals, jewelry, important documents, deeds, or any other asset or medium of exchange.

7. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise). This may encompass any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, Groupme, WeChat, Signal, Dust, Slack, Proton, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind.

8. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

9. "Cred" means Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC, and each of their predecessors, successors, subsidiaries, partners, principals, officers, directors, attorneys, managers, professionals, and other

advisors, agents, employees, representatives, and persons acting or purporting to act on their behalf.

10. "Cryptocurrency" means all digital assets that are traded on a blockchain, this definition is broadly defined to include all types of digital assets, including virtual currency, tokens, ERC-20 compliant tokens, security tokens, utility tokens, stablecoins, and any other digital assets. This definition includes, but is not limited to, Bitcoin, Bitcoin Cash, Ethereum, U.S. Dollar Coin, Tether (USDt), Libra Token (LBA), Dai, IDOL, XRP, Cardano, Polkadot, Binance Coin, Litecoin, Chainlink, Stellar, Dogecoin, Aave, Uniswap, Wrapped Bitcoin, Bitcoin SV, EOS, Monero, Maker, Cosmos, TRON, NEM, Synthetix, Tezos, THETA, Compound, VeChain, Neo SushiSwap, Mr. Sabowala Token, UMA, Elrond, IOTA, Solana, and any other digital asset.

11. "Digital address" means the alphanumerical sequence that identifies a digital wallet.

12. "Digital Wallet(s)" means the place in which cryptocurrency (and/or the keys that give access to cryptocurrency) is stored, including hosted wallets, non-hosted wallets, multi-sig wallets, and any other place in which cryptocurrency can be stored.

13. "Documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A). For the avoidance of doubt, this encompasses all written, graphic, or printed matter of any kind, however produced or reproduced, including all originals, drafts, working papers, and non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and all electronic, mechanical, or optical records or representations of any kind or other data compilations from which information can be obtained

or translated, if necessary, through detection devices into reasonable usable form.  The term "Documents" includes, but is not limited to:

    a.    correspondence, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, notebooks, telegrams, journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments, analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intraoffice communications, pitchbooks, marketing materials, or offers;

    b.    any written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, Groupme, WeChat, Signal, Dust, Slack, Proton, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind;

    c.    notations in any form made of conversations, telephone calls, meetings, negotiations, or other communications;

    d.    bulletins, circulars, schedules, lists, guides, printed matter (including newspapers, magazines and other publications, articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements, or worksheets;

    e.    electronic, mechanical, or optical records or representations of any kind (including tapes, cassettes, discs, hard drives, recordings, voice mail, electronic mail, and computer-stored data or material), or transcriptions thereof; and

    f.    all drafts, alterations, modifications, changes and amendments of any of the foregoing, and any material underlying, supporting, or used in the preparation of any document.

    g.    A draft or non-identical copy is a separate document within the meaning of this term.

14.    "Records" means all documents and communications in any way related to an Account, including emails, statements, applications, onboarding forms, communications, correspondence, know your customer/anti-money laundering related documents, SWIFT records, records reflecting transactions, checks (front and back), wire transfers, tax documents and filings,

certificates of foreign status of beneficial owners, memoranda, notes, custodian agreements, trustee agreements, forms and/or related documents and communications, beneficiary agreements, forms and/or related documents and communications, and all other documents concerning the owners, signatories, beneficial owners, trustees, and all other persons associated with an Account in any way, and any other documents, communications, or bank records.

15. "Suspect Transactions" means the transactions identified in Attachment 2, which were compiled by the Trust's cryptocurrency tracing consultant CipherTrace LLC.

16. "Suspect Addresses" means the digital addresses identified in the Suspect Transactions.

17. "Suspect Accounts" means all wallets and accounts associated with the Suspect Addresses.

**INSTRUCTIONS**

1. The preceding definitions apply to these Instructions and each of the succeeding Requests.

2. All terms defined above shall have the meanings set forth therein, whether capitalized in the Requests or not.

3. You are required to produce all responsive documents in your possession, custody, or control, wherever located, including without limitation those in the custody of your representatives, agents, Professionals, affiliates, or anyone acting on your behalf.

4. These Requests are for documents only to the extent they have not already been provided to the Trust.

5. If You object to any part of any Request, You must produce all documents that are responsive to the portions of the Request to which You do not object. You also must state the nature of, and grounds for, the objection.

6. If You cannot comply with any Request in full, You must comply to the fullest extent possible, and You should provide an explanation as to why full compliance is not possible.

7. Where You assert a claim of privilege in objecting to a Request and withhold a responsive document on this basis, You must provide a privilege log setting forth (a) the nature of the privilege being claimed, (b) the type of document being withheld, (c) the general subject matter of the document, (d) the date of the document, and (e) such other information sufficient to Identify the document, including, where appropriate, the author of the document, the title or subject line of the document, the addressee of the document, and, where not apparent, the relationship of the author and the addressee to each other.

8. If a document contains both privileged and non-privileged material, You must disclose the non-privileged material to the fullest extent possible without thereby disclosing the privileged material. If a party asserts a privilege to part of the material contained in a document, the party asserting the privilege must clearly indicate the portions as to which it claims the privilege. When a document has been redacted or altered in any fashion, You must Identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted documents.

9. Additional special processing of certain electronically stored information shall be as follows: Microsoft Excel spreadsheet fields shall not be converted to TIFF files and shall be

produced in native format. A placeholder TIFF image shall be created, Bates numbered, and the produced Excel file shall be renamed to match the Bates number on its corresponding placeholder page. The exception shall be for redacted spreadsheets which shall be produced in TIFF format. Images for the redacted spreadsheets shall display the content in the same manner as if it were printed. The extractable metadata and text shall be provided for native files, and OCR will be provided for the un-redacted portions of the documents. ESI and emails produced pursuant to this request shall be produced in a searchable format with accompanying index that states the following metadata:

   a. BEG_NO (Bated number associated with first page of document);
   b. END_NO (Bates number associated with last page of document);
   c. CUSTODIAN (Who provided the document; usually a person. Only provide the names of custodians relevant to the specific matter; any superfluous names should be removed from metadata);
   d. ATTACH_RANGE (Attachment range for parent email and children attachments);
   e. FILE_EXT (File extension of native document);
   f. FILE_NAME (Original file name of native document);
   g. HASH (MD5 hash value of document or "de-duplication key");
   h. AUTHOR (Author of document or email);
   i. DATE_LAST_MOD (Date file was last modified: mm/dd/yyyy);
   j. TIME_LAST_MOD (Time file was last modified: EST);
   k. TITLE/SUBJECT (Information from title or subject line);
   l. FROM (Author of email message);
   m. TO (Recipient(s) of email message);
   n. CC (Recipient(s) of Carbon Copies of email message);
   o. BCC (Recipient(s) of Blind Carbon Copies of email message);
   p. DATE_SENT (Sent date of email message: mm/dd/yyyy);
   q. TIME_SENT (Sent time of email message: EST);
   r. DATE_RCVD (Received date of email message: mm/dd/yyyy);
   s. TIME_RCVD (Received time of email message: EST).

10. If any document called for by these Requests has been destroyed or discarded, You must Identify that document in writing by providing the following information: (a) any sender/author and any addressee; (b) any indicated or blind copies; (c) the document's date, subject matter, number of pages, and attachments or appendices; (d) all persons to whom the

document was distributed, shown, or explained; (e) its date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (f) the persons who authorized and carried out such destruction or discard; and (g) whether any copies of the document presently exist and, if so, the name of the custodian of each copy.

11.     Any copy of a document that varies in any way whatsoever from the original or from any other copy of the document, whether by reason or any handwritten mark or other notation or any omission, is a separate document and must be produced, whether or not the original of such a document is within your possession, custody, or control.  A request for any document includes a request for all drafts thereof, and all revisions and modifications thereto, including any red-lined versions or document comparisons, in addition to the document itself. Each document is to be produced in its entirety, without abbreviation or expurgation.

12.     In producing documents, all documents that are physically attached to each other, or segregated or separated from other documents, when originally located, should be produced as is.  If no document exists that is responsive to a particular request, You must state so in writing.

13.     Except where otherwise specified, the Document Requests seek documents, records, communications, and information dated between January 1, 2018 to the present.

## REQUESTS

1. All documents, records, communications, or other information concerning the Suspect Transactions, Suspect Addresses, or the Suspect Accounts.

2. All onboarding, know-your-customer and anti-money laundering information concerning the Suspect Addresses or Suspect Accounts, including, but not limited to, account opening documents, applications, onboarding forms, and any other information identifying the owners.

3. All account statements and transaction records for the Suspect Transactions, Suspect Addresses, or Suspect Accounts.

4. All internet protocol addresses associated with the Suspect Transactions, Suspect Addresses, or Suspect Accounts.

5. All documents, records, or other information reflecting persons or entities that own or control the Suspect Addresses or Suspect Accounts, including signers, beneficiaries, joint owners, or partial owners.

6. All documents, records, or other information reflecting the source of funds contained in the Suspect Addresses or Suspect Accounts, including deposit information.

7. All documents, records, communications, account statements, or other information concerning the following persons and entities:

    a. Cred
    b. Cyber Quantum PTE, Ltd.
    c. Cyber Quantum
    d. Dan Schatt
    e. Lu Hua
    f. James Alexander
    g. Aaliyah Wan
    h. Daniyal Inamullah
    i. James Podulka
    j. Daniel Wheeler

        k.      Chris Spadafora
        l.       Heidi Ng
        m.     Max Rokhline
        n.      Jonathan Labovich
        o.      MoKredit, Inc.
        p.      MoKredit (Shanghai) Information Technology, Co. Ltd.
        q.      MoKredit Technology (Hong Kong) Company Limited
        r.       Shanghai Bestone Information Technology Co., Ltd.
        s.       JST
        t.       JST Capital
        u.      JST Systems, LLC
        v.       JST Alpha 1 Master Fund (Cayman)
        w.     All email domains "@jstcap.com"
        x.      All email domains "@mycred.io"

8.     All documents, records, communications, account statements, or other information concerning Accounts and Wallets associated with the email accounts al3xander.james@gmail.com and james@levelcapital.io.

# Attachment 2

| Asset | Amount | Digital Address | Transaction Hash |
|---|---|---|---|
| BTC | | BCGS | 0819 |
| BTC | | HzW5 | eb29 |
| BTC | | A1AX | ec95 |
| BTC | | Dcwm | adce |
| BTC | | ufFt | 3f52 |
| USDC | | f0be | 3279 |
| USDC | | 6ad2 | 17fd |
| USDC | | f0be | 88b1 |
| BTC | | NNsg | 260a |
| BTC | | ZzbH | b725 |
| BTC | | Dcwm | adce |
| BTC | | A1AX | ec95 |
| BTC | 11 89 | 3otG | 051b |
| BTC | 0 327 | jwVJ | 74e7 |
| BTC | 0 35 | AvJg | 6d57 |
| BTC | 0 04 | RHH7 | be43 |
| BTC | 10 873 | qrJL | 889f7 |
| BTC | 7 578 | qrJL | af3c |
| BTC | 23 775 | qrJL | 6441 |
| BTC | 23 708 | qrJL | 10cf |
| BTC | 14 264 | dVEr | 2709 |
| BTC | 19 | qrJL | 857c |
| BTC | 0 0538 | uKuN | 94ff |
| BTC | 70 | RbXm | de1b |
| BTC | 21 93 | RbXm | 34e9 |
| BTC | 40 | 9FMZ | e89d |
| BTC | 51 582 | QbTW | 6821 |
| BTC | 11 677 | pwxe | 475e |
| BTC | 0 059 | oEEE | 2653 |
| BTC | 0 111 | RBXq | 5180 |
| BTC | 4 663 | rhWn | 52d0 |
| BTC | 0 928 | nsj4 | ec51 |
| BTC | 1 478 | MrxN | 7111 |
| BTC | 0 187 | uyTi | 5b52 |
| BTC | 0 189 | cr8Z | 1146 |
| BTC | 0 00314 | tnHg | 8608 |
| BTC | 0 001 | tnHg | c5cb |
| BTC | 0 0033 | jXYe | 4a24 |
| BTC | 0 0061 | ziar | 24fe |
| BTC | 0 2605 | SLMu | 7f2a |
| BTC | 0 2881 | 7AG1 | a477 |
| BTC | 10 | zfhU | ed89 |
| BTC | 2 | zfhU | 3115 |
| BTC | 15 | zfhU | af5e |
| BTC | 1 397 | PHZq | d63f |