## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | **Obj. Deadline: 1/4/22 at 4:00 p.m. (ET)** |
| | ) | **Hrg. Date: 1/11/22 at 11:00 a.m. (ET)** |
| | ) | |
| | ) | **Related to Docket No. 356** |
| | ) | |

## MOTION OF THE CRED INC. LIQUIDATION TRUST TO COMPEL COMPLIANCE WITH SUBPOENAS UNDER RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

The Cred Inc. Liquidation Trust (the "Trust") established in the above-captioned

chapter 11 cases (the "Chapter 11 Cases") of Cred Inc. and its affiliated debtors (collectively, the

"Debtors" or "Cred"), by and through its undersigned counsel, respectfully moves this Court for

entry of an order, substantially in the form attached hereto as **Exhibit A**, compelling Earnity Inc.,

Earnity Financial Inc., and ET Trader Inc. (collectively, "Earnity") to comply with the

Subpoenas for Rule 2004 Examination dated August 11, 2021,[2] (the "Subpoenas"), to produce

all documents responsive to the Trust's document requests in the Subpoenas, to certify under

penalty of perjury that their document productions are complete, and to reimburse the Trust for

attorneys' fees and costs incurred in making this motion (the "Motion"). In support of the

Motion, the Trust respectfully represents as follows:

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

[2]    Copies of the three identical Subpoenas for Rule 2004 Examination of Earnity Inc., Earnity Financial Inc., and ET Trader Inc. are attached hereto as **Exhibit B**.

## PRELIMINARY STATEMENT

1.      Following Cred's bankruptcy, former Cred founder and Chief Executive Officer Dan Schatt ("Schatt"), former Cred Chief Financial Officer Joseph Podulka ("Podulka"), former Cred Chief Technology Officer Daniel Goldstein ("Goldstein"), and at least five to six other former Cred executives and employees secretly conspired to start a cryptocurrency business called Earnity.  Without disclosing the true nature of its business or that it was created by Schatt and other former Cred senior executives, Earnity, through its ultimate beneficial owner Domenic Carosa ("Carosa"), sought to purchase Cred's electronics, computers, and other assets from the Trust.

2.      The Trust uncovered the truth about Earnity during depositions of Schatt and Podulka, during which both former executives refused to answer any substantive questions about Earnity, refusing to even reveal its name.  The Trust separately learned Earnity's name and served the Subpoenas.  After being served, Earnity initially delayed, then agreed to comply with the Subpoenas, but ultimately refused to provide any information except for a list of former Cred employees it now employs and a copy of one consulting agreement.

3.      The Trust is investigating whether former Cred executives smuggled Cred's intellectual property to Earnity and Earnity sought to purchase Cred electronics to cover up the theft.  Earnity is hiding critical information pertinent to that investigation.

4.      The Subpoenas are not based on speculation.  As reflected in an October 26, 2020 email, less than two weeks before the bankruptcy filing, Schatt and Podulka planned to "rename or create new company" by keeping the "remaining team (and likely current investors)" and "the key will be segregating all of the unnecessary, risky, and unwanted parts of the company *away*

2

*from everything we want to keep*."[3] (Emphasis added.)  Earnity is this "new company" and the Trust needs to investigate what intellectual property Schatt, Podulka, and other former executives decided to "keep" for their new company.

5.      The Trust has the right to all of Cred's intellectual property.  Examining whether those assets have been converted is well within the broad scope of Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Accordingly, the Trust seeks an order compelling Earnity to comply with the Subpoenas and to reimburse the Trust for the unnecessary costs and expense it incurred in pursuing this discovery.

## JURISDICTION AND VENUE

6.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  In accordance with Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Trust confirms its consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3]      A copy of this email from Podulka to Schatt is attached hereto as **Exhibit C.**

8.      The statutory predicates for the relief sought herein are Federal Rules of Civil Procedure 45, section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rule 2004, and Local Rule 2004-1.

**BACKGROUND**

9.      On November 7, 2020, the Debtors commenced the Chapter 11 Cases by filing petitions for relief under chapter 11 of the Bankruptcy Code.  On March 11, 2021, the Court entered an order [Docket No. 629] confirming the *Modified First Amended Combined Plan of Liquidation and Disclosure Statement of Cred Inc. and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code* [Docket No. 629-1] (as amended, the "Plan").[4]  The Plan became effective on April 19, 2021 (the "Effective Date").  *See* Docket No. 730.  On the Effective Date, the Trust was established and the Debtors' assets were transferred and assigned to the Trust.  Plan § 12.3.  The Trust is being administered by the Liquidation Trustees (as defined in the Plan).  *Id.* § 12.3(a).

10.     The Trust is investigating all aspects and activities surrounding the transactions, conduct, and circumstances that ultimately led to Cred's collapse and these Chapter 11 Cases (the "Investigation").

11.     The Trust has deposed several key former Cred executives, including Schatt and Podulka.  During their depositions, Schatt and Podulka revealed that they had started a new cryptocurrency company that had hired many former Cred executives and employees.

12.     Schatt, Podulka and others had previously hidden this information from the Trust and initially refused to provide any information about this company, including even its name.

---

[4]      Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

4

Although the Trust had previously encountered Earnity, the Trust was unaware of the circumstances surrounding Earnity's formation and business until these depositions.

13.    Specifically, on July 13, 2021, Carosa, whom the Trust later learned was the ultimate beneficial owner of Earnity, purchased Cred furniture located in a San Francisco warehouse from the Trust.  The transaction details reflected the name "Earnity, Inc."  However, Carosa (later discovered to be Earnity's principal) did not disclose that Earnity was a new cryptocurrency company started by Schatt and Podulka or that Earnity employed at least eight to nine former Cred executives and employees.  Carosa later attempted to purchase computers, hard drives, and other electronics.  Thankfully, the Trust learned the truth about Earnity and did not agree to the purchase.

14.    On July 23, 2021, during the Podulka's deposition, the Trust discovered that Podulka had been secretly working on this new cryptocurrency company with Schatt, which Podulka and his counsel described as ████████████████.[5]  Podulka refused to answer basic questions about the new company, later discovered to be Earnity.  After Podulka deflected questions about his recent communications with Schatt—including by saying that he only spoke to him about "████████████████████████"—Podulka finally revealed that that he and Schatt had started this new venture that is similar to Cred:



---

[5]    *See* Podulka Dep. Tr., attached hereto as **Exhibit D**, at 217.



15.     Counsel for Podulka (who also represents Schatt and Earnity) shut down all questions concerning this "████" company.  It was clear from counsel's objections and directions to Podulka not to answer questions that counsel was well aware of Earnity, stating on the record that "████████████████████████████████."  Counsel even instructed Podulka not to reveal the company's name:



16.     According to Podulka, this company—later discovered to be Earnity—is associated with ████████████████████, including Schatt:



---

[6]     Ex. D at 215-17.

[7]     *Id.* at 217-218.



17.    At counsel's direction, Podulka refused to provide the name of the entity during his deposition or the names of any former Cred employees who work at Earnity:



18.    Following the Podulka deposition, the Trust sent requests to counsel for Podulka and Schatt concerning Earnity.  The Trust did not receive any responses prior to Schatt's deposition on July 28, 2021.  Using its own resources, the Trust identified information about Earnity, and asked Schatt questions about Earnity during his deposition.

19.    Like Podulka, Schatt refused to answer any questions concerning Earnity at his counsel's direction:[12]



---

[8]    *Id.* at 218.

[9]    *Id.* at 220.

[10]    *Id.* at 218.

[11]    *Id.* at 221.

[12]    Schatt Dep. Tr., attached hereto as **Exhibit E**, at 269-271.

DM_US 183022560-5.113270.0012



20.    On August 12, 2021 the Trust served the Subpoenas on Earnity, Inc., Earnity Financial, Inc., and ET Trader Inc.  The Subpoenas sought information concerning Cred's property—including intellectual property—that may be in Earnity's possession, custody, or control (the "Trust's Requests").  The Trust's Requests also attached a cover letter stating: "Please confirm via email or other writing no later than August 19, 2021, that Earnity will provide the requested information by August 25, 2021, designate a corporate representative by Wednesday September 1, 2021, and appear for a deposition on September 14, 2021."[13]  The Trust's Requests contained a compliance date of August 25, 2021.

21.    The Trust received no response by August 19, 2021.  The Trust's counsel contacted Earnity principal Carosa on August 20, 2021.  On August 25, 2021, the Trust's counsel received a voicemail from counsel for Earnity (also counsel for Podulka and Schatt) stating that Earnity would comply voluntarily with the Subpoenas.

22.    On August 25, 2021, Earnity's counsel requested additional time to respond to the Subpoenas.  The Trust's counsel responded that day, asking Earnity's counsel to "confirm that the Earnity entities will be complying with the subpoenas voluntarily under Local Rule 2004-

---

[13]    Earnity's Proof of Service and Cover Letter with Subpoenas, attached hereto as **Exhibit F**.

1",[14] to which Earnity's counsel replied "[c]onfirmed, subject to the reservation of rights of all available and appropriate objections."[15]   Accordingly, the Trust's counsel gave Earnity additional time to respond.

23.     On August 30, 2021, Earnity's counsel asked for even more time to respond.  The Trust's counsel responded agreeing to the additional time and stated the following:  "Your proposed dates are acceptable.  However, if Earnity intends to completely refuse to comply with any of the requests as opposed to making partial objections, we ask that you let us know in advance of your proposed dates.  We don't want to hold off on making any necessary applications if there are going to be complete refusals.  Thanks."[16]

24.     On September 10, 2021, Earnity served its responses and objections to the Subpoenas.[17]   To the Trust's counsel's surprise, Earnity objected to the Subpoenas in their entirety and refused to produce a single document and also claimed that it did not possess responsive documents concerning Earnity and Schatt, Podulka or Goldstein concerning the Debtors.[18]

25.     On September 23, 2021, the Trust sent a letter to Earnity's counsel in an attempt to confer regarding Earnity's refusal to produce documents.[19]   The letter stated, "pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, the trust is examining whether Cred's

---

[14]   Pursuant to Local Rule 2004-1(c)(i), "[a] motion under Fed. R. Bankr. P. 2004 is not required if the proposed examinee agrees to voluntarily appear or produce documents."

[15]   *See* Emails between Joseph Evans and Dan Glassman, attached hereto as **Exhibit G**.

[16]   *Id.*

[17]   Earnity's responses and objections are attached hereto as **Exhibit H**.

[18]   *See id.*

[19]   A copy of the September 23, 2021 letter is attached hereto as **Exhibit I**.

property-including intellectual property-is in the possession, custody, or control of Earnity."[20]

The letter also noted that Earnity's assertion that it is not in possession of any responsive

documents is not credible:

> Earnity responded that it "has no responsive documents in its possession between Earnity and Daniel Schatt, Joseph Podulka or Daniel Goldstein concerning the Debtors." (*See* Request 2) (emphasis added).  Mr. Schatt, Mr. Podulka, and Mr. Goldstein were key executives of Cred that are now key executives of Earnity. It cannot be that Earnity is not in possession, custody, or control of a single responsive document, communication, or other data concerning these three key executives.[21]

26.    The September 23, 2021 letter concluded as follows:

> The Trust's requests are not speculative.  Unbeknownst to the Trust, key former Cred executives Mr. Schatt, Mr. Podulka, and former Chief Technology Officer Daniel Goldstein started a new cryptocurrency company with other still undisclosed former Cred employees.  When asked about these issues during the deposition, Mr. Schatt and Mr. Podulka refused to answer any questions.  Both Cred and Earnity are in the cryptocurrency industry—an industry in which the value, security, and success of companies are tied to the strength of their technology.  Accordingly, the Trust is seeking to investigate whether any of its intellectual property is in Earnity's possession, custody, or control.  Mr. Schatt, Mr. Podulka, and whoever else is making the decisions at Earnity nonetheless continue to resist disclosing any information.  These objections are improper and must be withdrawn.[22]

27.    The Trust requested a response to its September 23, 2021 letter by September 30,

2021.  Earnity did not respond until October 7, 2021.[23]  In this response, Earnity's counsel

reiterated Earnity's refusal to cooperate.  Earnity's counsel claimed, without any support, that

Earnity has no information because comparing Earnity to Cred is "like comparing McDonalds to

---

[20]    *Id.*

[21]    *Id.* at 2-3.

[22]    *Id.* at 3.

[23]    A copy of the October 7, 2021 letter from Earnity is attached as **<u>Exhibit J</u>**.

Ritz Carlton."[24]  Earnity's counsel also asserted that "[j]ust because a document is relevant does not alone demonstrate good cause to burden a third party with production."[25]

28.     Finally, Earnity's counsel claimed that the production of documents would be burdensome and costly.  However, Earnity's counsel provided no support for this assertion, such as whether Earnity conducted any review of the Earnity email systems or otherwise conducted any meaningful search whatsoever for responsive electronic or hard copy documents.  Earnity flatly refuses to comply and otherwise claims it has no responsive documents.  Yet Schatt and Podulka previously represented (through the same counsel) that all of their responsive documents were located and produced.  That assertion turned out to be untrue.[26]

## ARGUMENT

**A.     The Court Should Compel Earnity to Comply with Cred's Subpoenas**

**(1)     Applicable Legal Standard**

29.     Earnity agreed to voluntarily produce documents in response to the Trust's Requests pursuant to Local Rule 2004-1,[27] thus obviating the need for the Trust to file a motion

---

[24]  Earnity agreed to provide the names of the Earnity employees and the contract with a compliance service. Other than these two minor concessions, Earnity refused to provide any other information.

[25]  Ex. J.

[26]  For example, Schatt and Podulka initially refused to provide all of their responsive mobile data and messages, claiming that they had produced everything in their possession, custody, or control.  It was not until the Trust sent a letter on July 19, 2021 (attached hereto as **Exhibit K**) confronting Schatt and Podulka with evidence that such responsive data existed and was in their possession that Schatt—but not Podulka—produced such information.  For example, Schatt produced screenshots of select SMS text messages, and did not include the obvious surrounding responsive messages.  Further, neither Schatt nor Podulka produced a single message on other messaging applications beyond SMS text such as from WhatsApp, Zoom, or Skype, while documents in the Trust's possession indicates that Schatt and Podulka utilized these messaging applications.  Even after that exchange, Schatt did not produce all responsive text messages and Podulka did not produce any information. The Trust sent another letter on July 26, 2021, demonstrating that, despite their claims to the contrary, Schatt and Podulka possessed responsive communications that they did not produce.  Schatt then produced some additional mobile communications.  Podulka still has not produced a single document or communication despite plainly possessing responsive documents, which the Trust will continue to address with his counsel.

[27]  *See* Ex. G.

DM_US 183022560-5.113270.0012

seeking leave to serve the Subpoenas.  *See* Local Rule 2004-1(c)(i) (a Rule 2004 motion "is not required if the proposed examinees agrees to voluntarily appear or produce documents.").

30.     However, where (as here) a party fails to produce a single document, despite its agreement to voluntarily produce documents, a motion to compel is warranted.  *See* Local Rule 2004-1(c)(ii) ("The party seeking or providing discovery" may move "for relief as provided under Fed. R. Civ. P. 36(a)(1), (3), (4), and (5.)."); *see also* Fed. R. Civ. P. 37(a)(3) (governing motions to compel); Fed. R. Civ. P. 45; *Simon v. FIA Card Servs.*, N.A., 732 F.3d 259, 268 (3d Cir. 2013) ("Bankruptcy Rule 9016 provides that Civil Rule 45 applies to subpoenas issued in a bankruptcy cases.").

31.     Indeed, courts regularly grant motions to compel where a party agrees to comply voluntarily with discovery requests and later refuses to provide the requested information.  *See, e.g.*, *In re Jarvar*, 2010 WL 1328222, at *7 (Bankr. D. Mont. Mar. 30, 2010) (granting a motion to compel due to the noncompliance in producing documents under an "informal agreement" between the parties); *In re Sanomedics, Inc.*, Case No. 16-21659-RAM (S.D. Fla. Mar. 26, 2018) (ECF Nos. 111, 115) (granting motion to compel a Rule 2004 subpoena after the producing party agreed to produce documents but failed to comply).  The Court should grant the Trust's motion here.

### (2)     The Trust's Requests are Well Within the Scope of Bankruptcy Rule 2004

32.     The Trust's Investigation includes *all* aspects surrounding the transactions, activities, and circumstances that ultimately led to the Debtor's collapse and the related Chapter 11 Cases.  Moreover, the Trust is continuously investigating claims against individuals and third parties for any discovered wrongdoing.

DM_US 183022560-5.113270.0012

33.     Accordingly, and as outlined further below, the Trust's Requests to Earnity fall directly within this scope as an examination may be used to cover a wide range of subjects relating to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate."  *Simon v. FIA Card Servs.*, N.A., 732 F.3d 259, 278 (3d Cir. 2013) (internal citations omitted).  Indeed, discovery under Bankruptcy Rule 2004 includes, *inter alia*, any matter that may relate to the property and assets of the estate; the financial condition of the debtor; and any matter that may affect the administration of a debtor's estate.  *See* Fed. R. Bankr. P. 2004(b); *see also In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 354 n.6 (3d Cir. 2007) (Bankruptcy Rule 2004 "allows parties with an interest in the bankruptcy estate to conduct discovery into matters affecting the estate."); *In re Wash. Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2010) ("[t]he purpose of the examination is to enable the trustee to discover the nature and extent of the bankruptcy estate.").

> **(i)     Requests Related to Earnity's Formation and Relationships Involving Cred, Cred's Contacts, and Cred's Customers (Requests 1, 5-9, 16-17)**

34.     The Trust is investigating whether Earnity is in possession of Cred's intellectual property, customer lists, and trade secrets.  The overlap between the formation of Earnity and the collapse of Cred, the line of business in which both Cred and Earnity were/are engaged, and the key players involved, makes Earnity an obvious target of the Trust's investigation of the "acts, conduct, or property or to the liabilities and financial condition of [Cred]."  *Simon*, 732 F.3d at 278.

35.     Notably, several of Cred's key executives discussed a potential new company immediately prior to Cred's collapse and stated that there were elements of Cred they wanted to keep.  For example, emails from Podulka to Schatt dated October 26, 2020, indicated a possible

strategy of starting "the company" anew:  "We could rename or create [a] new company . . .  I think the remaining team (and likely current investors) could rally around a more focused company.  The key will be segregating all of the unnecessary, risky, and unwanted parts of the company away from everything we want to keep."[28]

36.    The Trust issued specific requests aimed to understand Earnity's formation and the extent that Earnity's formation overlaps and/or resulted from Cred's collapse, including what "parts" of Cred its former executives would "want to keep."  The Trust also seeks to understand the extent of any relationships Earnity has with entities or individuals who had any particular role at Cred.  These requests include "[a]ll documents and communications concerning Cred"; "[a]ll Board Materials concerning Cred"; "[a]ll documents and communications concerning James Alexander, Scott Freeman, J.P. Thierot, Daniyal Inamullah, Daniel Wheeler, Lu Hua, Sally Zhang, Adnan Khakoo, Christopher Spadafora, Meghan Gardler, or Deleon De Metz"; "[a]ll documents and communications concerning MoKredit, JST, Uphold, Blockchain Advocacy Coalition, Universe Protocol Alliance, DBS Consulting, or Banxa."[29]  It is important for the Trust to investigate the circumstances and relationships between Cred's collapse and Earnity's formation, and whether Cred's resources were or are being improperly used by Earnity.

37.    To that end, the Trust issued specific requests aimed to uncover whether Earnity's operations affect Cred's customers, and whether Earnity is utilizing Cred's customer lists or investor lists that are strictly property of Cred.  These requests include "[a]ll customer lists, investor lists, or contact lists"; "[a]ll documents, communications, and records concerning any current or former CredEarn customers or investors"; "[a]ll documents, communications, and

---

[28]    Ex. C.

[29]    *See* Ex. B (Requests 1, 9, 16-17).

records concerning any current or former CredBorrow customers or investors"; and "[a]ll documents, communications, and records concerning any actual or potential Cred investor."[30] Similar requests have been found to be proper for a third party subpoena in similar circumstances. *See H&R Block E. Enterprises, Inc. v. Morris*, No. 06-cv-1328, 2006 WL 8429518, at *2 (N.D. Ga. Nov. 27, 2006) (directing third party entity formed by a former H&R Block employee to provide H&R Block: (1) documents sufficient to identify all customers/clients contacted, solicited, or called upon during the relevant time period; (2) documents sufficient to identify all customers, clients, or accounts which were provided services during the relevant time period, including customer or client lists; and (3) documents sufficient to identify all employees, volunteers, and advisors of the entity).

(ii)     **Requests Involving Cred Property and Cred's Former Employees (Requests 2-4, 11-15)**

38.     The Trust is responsible for the "[m]arshalling, marketing for sale, and liquidating the Estates' Assets."[31]  Such assets include "the assets of each of the Debtors, of any nature whatsoever, including . . . real and personal, tangible and intangible[.]"[32]

39.     As the Trust is charged with selling Cred's assets, the Trust may sell any of Cred's intellectual property, and the Trust is seeking to maximize the value of the asset sales.  To the extent any other entity, such as Earnity, has improperly taken and/or used such property without compensation, such improper possession or use diminishes the value of the intellectual property and thus damages the Trust and its beneficiaries.

---

[30]   *See* Ex. B (Requests 5-8).

[31]   *See* Plan, p. 47.

[32]   *Id.* at p. 2.

40.    Thus, the Trust is seeking to recover any property that is wrongfully in the hands of other entities, including Earnity, and has issued specific requests aimed to uncover the extent to which *any* of Cred's property is in Earnity's possession, custody, or control.  These requests include "[a]ll documents and communications concerning access to Cred's shared drives, Google Suite, GitHub, or any other information concerning Cred"; "[a]ll documents, communications, and records concerning source code, including a complete copy of Earnity's source code";  "[a]ll source code and smart contracts, including but not limited to source code and smart contracts concerning Earnity's cryptocurrency-related business"; "[a]ll source codes stored on any VCS, including, but not limited to, Github, Gitlab, and Bitbucket"; [a]ll documents, communications, and records concerning smart contracts, including, but not limited to documents concerning the administrator to all smart contracts and the private keys to the smart contracts."[33]

41.    Discovery requests involving intellectual property are proper where former employees of one party begin working for a competing or otherwise similar company. *See Weinschel Rng'g Co. v. Midwest Microwave, Inc.*, 297 A.2d 443, 445-46 (Del. Ch. 1972); *Philadelphia Gear Corp. v. Power Transmission Servs., Inc.*, 1991 WL 29957, at *3 (Del. Ch. Mar. 6, 1991).

42.    In *Weinschel*, the court granted a motion to compel discovery where the plaintiff's allegations "are grounded in the sequence of events surrounding the departure from Weinschel of key employees with access to important information and their subsequent employment by a new company." *Weinschel Rng'g Co.* 297 A.2d at 445.

43.    In *Philadelphia Gear Corp.*, two former employees of the plaintiff company resigned from the plaintiff company and incorporated their own competing company several

---

[33]    *See* Ex. B (Requests 11-15).

weeks later.  1991 WL 29957, at *1.  The plaintiff suspected that the employees improperly used proprietary information, and thus sought discovery to uncover such misappropriation.  *Id.*  The Delaware Chancery Court granted plaintiff's motion to compel, finding that information such as customer contacts, vendors, and pricing methods are all relevant and discoverable.  *Id.* at *3.

44.     Requests involving source code and other types of intellectual property are likewise proper.  *See Future Fibre Techs. Pty. Ltd. v. Optellios, Inc.,* No. 09-cv-346, 2010 WL 11479272, at *3 (D. Del. Sept. 22, 2010).  In *Optellios*, a patent dispute surrounded an alleged misappropriated trade secret and the issue as to who created the patent in question.  *Id.* at *3.  The plaintiff sought production of source code as "it will reflect the evolution and status" of the defendant and would assist in determining the true inventor of the patent.  *Id.*  The court denied the defendant's objection that the source code is a trade secret and beyond the scope of discovery, holding that the "source code in question could lead to admissible evidence."  *Id.*

45.     Finally, courts have ordered production of source code and other intellectual property from non-parties.  *See, e.g.*, *Optimize Tech. Sols., LLC. v. Staples, Inc.*, 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014) (ordering a third party's production of source code as "source code is directly relevant"); *MicroUnity Sys. Eng'g, Inc. v. Apple, Inc.,* No. 13-MC-80020 LHK PSG, 2013 WL 2384261, at *3 (N.D. Cal. May 30, 2013) (ordering third party to "produce the nine versions of its source code").

46.     In *Optimize,* the plaintiff sued several defendants alleging patent infringement, where one defendant used non-party Adobe Systems, Inc.'s "Recommendations" product on its website in an allegedly infringing manner.  *Optimize*, 2014 WL 1744651, at *1.  The plaintiff subpoenaed non-party Adobe and sought the product's source code.  *Id.*  Adobe filed a motion to

17

quash.  *Id.*  The court ordered production of Adobe's source code, holding that the "source code is directly relevant to infringement and is in Adobe's exclusive possession."  *Id.* at *2.

47.    Likewise, here, Earnity's source code is directly relevant to whether Earnity is improperly using Cred's intellectual property.  The source code and any applicable intellectual property belonging to Cred is in the exclusive possession of Earnity.

48.    Podulka's sworn testimony and the Trust's own independent investigation demonstrate that former Cred employees work for Earnity.  Indeed, Earnity's counsel has confirmed that there are approximately eight (8) to nine (9) former Cred employees now employed by Earnity.[34]  Accordingly, the Trust requested "[d]ocuments sufficient to show all persons hired by Earnity as employees" and "[a]ll documents, communications and contracts between Earnity and any individual or entity that is currently or formerly associated with Cred[.]"[35]

49.    Moreover, not only are there former Cred employees working for Earnity, three former ***key Cred executives*** are now key Earnity executives.  As a result, the Trust requested "[a]ll documents and communications with Daniel Schatt, Joseph Podulka, or [former Chief Technology Officer] Daniel Goldstein."[36]

50.    Former Cred Chief Information Security Officer Daniel Hummer also works at Earnity.  Hummer had "administrator" access over all of Cred's databases and cloud-based storage systems granting him access to more of Cred's information systems than nearly any other employee, save for Schatt and Podulka.

---

[34]    *See* Exs. D, J.

[35]    *See* Ex. B (Requests 3 and 4).

[36]    *Id.* (Request 2.)

18

51.    In short, it is important for the Trust to determine which former Cred employees and executives have joined Earnity so that the Trust can determine whether any of those individuals have delivered any of Cred's property and/or intellectual property to Earnity.

### (iii)    Requests Involving Earnity's Operations and Cred's Influence on Operations (Requests 10, 18-24)

52.    Finally, the Trust seeks information concerning Earnity's business operations, financials, and business plans.[37]  Considering that Earnity's formation coincides with Cred's collapse—and departing Cred executives promptly launched another cryptocurrency business—it is critical for the Trust to understand the circumstances surrounding the formation of this new company.

53.    Earnity's assertions that Cred is not entitled to this information are unconvincing. For example, Earnity asserts that "while Earnity is in the cryptocurrency industry, it is wholly unrelated to Cred and its business model is completely different."[38]  Earnity also claims that its "business model does not involve the borrowing or lending of cryptocurrencies [because] Earnity was not formed until months after Cred filed for bankruptcy and has not received and is not using any of Cred's assets."

---

[37]    *See id.* (Requests 10, 18-24.) These Requests include: "[a]ll documents and communications concerning the borrowing of cryptocurrency, lending of cryptocurrency, cryptocurrency hedge funds or asset managers, cryptocurrency trading, cryptocurrency hedging, decentralized finance, debt financing, and micro-loans"; "[a]ll documents and communications concerning Earnity's business plan, marketing strategy, or promotional materials, including presentations and slide decks"; "[a]ll documents and communications concerning Earnity's Board Materials, internal policies, procedures, and terms of conditions, including drafts thereof"; "[a]ll documents and communications concerning cryptocurrency and blockchain"; [a]ll documents and communications concerning actual, potential, solicited, or unsolicited investments by any third party in Earnity, including all documents provided to potential investors"; "[d]ocuments sufficient to show Earnity's capital structure and ownership structure, including the identity and ownership structure of each individual or entity listed thereon"; "[a]ll insurance policies held by Earnity"; "[a]ll audited or unaudited financial statements, trial balances, statements of assets and liabilities, or other documents indicating Earnity's financial condition."

[38]    *See* Ex. J.

DM_US 183022560-5.113270.0012

54.     These assertions are belied by the contemporaneous communications between the key Cred executives that formed Earnity.  As they stated in writing, Earnity's formation involved the components of Cred that its former executives "wanted to keep" and thought they could market to Cred investors.[39]  The Trust is entitled to know precisely which Cred information Earnity "kept" and the extent to which Earnity is improperly utilizing Cred's resources, assets, or property to carry out its business functions.

**B.     Earnity's Objections Are Meritless**

55.     Earnity claims that the Subpoenas contain requests that are all "irrelevant and overly broad in scope and therefore, outside the scope of Rule 2004".[40]  However, the discovery sought by the Trust is squarely within the scope of Bankruptcy Rule 2004 because "[t]he purpose of the examination is to enable the trustee to discover the nature and extent of the bankruptcy estate."  *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del 2009) ("A Rule 2004 examination is commonly recognized as more in the nature of a fishing expedition.") (internal citations omitted); *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (noting that "[u]nlike traditional discovery, which narrowly focuses on the issues germane to the dispute, the scope of Rule 2004 is broad and unfettered, and has been likened to a fishing expedition and an inquisition") (internal citations and punctuation omitted).  The Trust seeks information about Cred's intellectual property that may be in Earnity's possession, custody, or control, which serves the "legitimate goal[] of Rule 2004" including "discovering assets,

---

[39]    *See* Ex. C.

[40]    *See, e.g.,* Ex. H (Responses 3-8, 10, 12-24).

DM_US 183022560-5.113270.0012

examining transactions, and determining whether wrongdoing has occurred." *In re Washington Mut., Inc.*, 408 B.R. at 50.[41]

56.    Earnity's claim that it "has no responsive documents" to various requests is not credible.[42]  For example, the Trust requested "[a]ll documents and communications concerning Cred",[43] to which Earnity replied "Earnity has no responsive documents in its possession, custody, or control."[44]  It cannot be that the same employees in the same line of business, starting a new company after the previous cryptocurrency company filed for bankruptcy, would not have a single document concerning Cred.

57.    Indeed, Earnity purchased Cred's furniture and attempted to purchase Cred's electronics (perhaps to cover up the fact that former Cred executives and employees had taken intellectual property).  Earnity is also in possession of documents concerning discussions about hiring former Cred employees and making the decision to purchase Cred's electronics and furniture.[45]  It is simply not credible that this pseudo-Cred formed by Schatt and Podulka, which

---

[41]    Earnity claimed in its October 7, 2021 letter that a Rule 2004 examination must show "good cause by establishing that the proposed examination is necessary to establish the claim of the party seeking the examination, or… denial of such a request would cause the examiner undue hardship or injustice."  (*See* Ex. J.)  This argument fails because Earnity already agreed voluntarily to comply with the Trust's Subpoenas to avoid any 2004 motion practice.  Nonetheless, the Trust has demonstrated good cause that these examinations are necessary to "enable the [Trust] to determine the scope of viable claims that may exist on behalf of the [Trust] against potential third parties that may be culpable for causing such harm to the Debtors."  *In re Millennium Lab Holdings II, LLC*, 562 B.R. at 627 (granting a Rule 2004 motion when the trust argues good cause to determine the scope of viable claims that may exist, and noted the trust argued a "strong suspicion of wrongdoing").  To the extent that Earnity is improperly utilizing intellectual or other property that rightfully belongs to Cred, or the circumstances of Earnity's formation were the result of wrongdoing by Schatt, Podulka, or other key Cred executives related to Cred's collapse, presents good cause sufficient to warrant the Rule 2004 examination.  *See id.*

[42]    *See* Ex. H (Responses 1, 2, 5, 6, 9).

[43]    *See* Ex. B (Request 1).

[44]    *See* Ex. H (Response 1).

[45]    *See* Ex. G.

they and others planned before the bankruptcy, would not have a single email or document concerning Cred.

58.     Similarly, the Trust requested "[a]ll documents and communications with Daniel Schatt, Joseph Podulka, or Daniel Goldstein."[46]  Earnity responded that it "has no responsive documents in its possession between Earnity and Daniel Schatt, Joseph Podulka or Daniel Goldstein concerning the Debtors."[47]  This response too is not credible.  Schatt, Podulka, and Goldstein were key Cred executives and are now key Earnity executives.  Earnity must be in possession, custody, or control of responsive documents, communications, or other data concerning these three key executives.

59.     Earnity's confidentiality concerns are meritless.  Cred is not a competitor of Earnity.  Cred conducts no business operations, and the Trust was formed solely for recovering assets, winding up Cred's affairs, and selling its assets.

60.     To the extent that Earnity has any legitimate confidentiality concern, any confidential information may be designated "attorney's eyes only."  Earnity has already enlisted the "attorney's eyes only" protection when it agreed to produce a 1 page .pdf containing a list of 8-9 former Cred employees who work at Earnity "on the condition that the information remain confidential pursuant to an agreed confidentiality order and be marked as attorney's eyes only."[48]  Any confidentiality concern thus provides no basis to withhold documents.  *See In re Metiom, Inc.*, 318 B.R. 263, 271 (S.D.N.Y. 2004) (denying a stay of a 2004 Examination production of source code because the Court found no reason to question the Bankruptcy Court's determination

---

[46]  *See* Ex. B (Request 2).

[47]  *See* Ex. H (Response 2).

[48]  *See* Ex. J.

that "the potential for harm to [a non-party] is substantially if not entirely reduced or eliminated" by a proposed confidentiality agreement).

**C.      Earnity Should Reimburse the Trust for its Noncompliance**

61.      Local Rule 2004-1(c)(ii) allows Cred to seek relief under Fed. R. Civ. P. 37(a)(5).[49]  Under Federal Rule 37, "[i]f the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37.

62.      Earnity's delays, refusals, and baseless objections have caused the Trust needlessly to expend attorneys' fees and costs.  Earnity has no basis to withhold the information sought by the Trust.  If Earnity truly has nothing to hide, it should simply produce the information and, if necessary, mark it "attorney's eyes only."  Earnity has opted instead to impose unnecessary costs and expenses on the Trust, which is trying to investigate Cred's assets so that it can return funds to the many creditors who lost cryptocurrency with Cred.

---

[49]    Attorney's fees would also be warranted under F.R.C.P. 45(g).  *See generally, Sprint Nextel Corp. v. Ace Wholesale, Inc.*, No. 1:12-CV-2902-JEC, 2014 WL 4308355, at *1-2 (S.D.N.Y. Aug. 26, 2014) (finding the award of attorneys' fees proper for noncompliance with a subpoena pursuant to F.R.C.P. 45(g)); *Sell v. Country Life Ins. Co.*, No. CV-15-00353-PHX-DJH, 2017 WL 5713885, at *5 (D. Ariz. Feb. 27, 2017) (finding the award of attorney fees proper for noncompliance with a deposition where "Rule 45(g) authorizes contempt sanctions… for non-compliance with a subpoena"); *In re Corso*, 328 B.R. at 385 (affirming bankruptcy court's award of sanctions and attorney's fees for Rule 45 contempt).

DM_US 183022560-5.113270.0012

## CERTIFICATION OF COUNSEL

63.     As set forth above, counsel for the Trust has conferred with counsel for the

Discovery Parties in good faith via email in an effort to resolve this dispute, which efforts were

unsuccessful.

## NOTICE

64.     Notice of the Motion has been provided to (i) counsel to Earnity and (ii) parties

that have requested notice pursuant to Local Rule 2002-1(b).  In light of the nature of the relief

requested herein, the Trust submits that no other or further notice is required.

## NO PRIOR RELIEF

65.     No prior motion for the relief sought herein has been made to this or any other

court.

*[Remainder of Page Intentionally Left Blank]*

DM_US 183022560-5.113270.0012

WHEREFORE, the Trust respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, compelling Earnity to produce all documents responsive to the Trust's document requests, to certify under penalty of perjury that its document productions are complete, and to reimburse the Trust for attorney's fees and costs incurred in making the Motion, and granting any other relief this Court deems to be just and proper.

Dated: Wilmington, Delaware
       December 28, 2021

                                    **MCDERMOTT WILL & EMERY LLP**

                                    */s/ David R. Hurst*
                                    David R. Hurst (I.D. No. 3743)
                                    1007 North Orange Street, 10th Floor
                                    Wilmington, DE 19801
                                    Telephone: (302) 485-3900
                                    Facsimile:  (302) 351-8711

                                    - and –

                                    Darren Azman (admitted *pro hac vice*)
                                    Joseph B. Evans (admitted *pro hac vice*)
                                    1 Vanderbilt Avenue
                                    New York, NY 10017
                                    Telephone: (212) 547-5400
                                    Facsimile:  (212) 547-5444

                                    *Counsel to the Cred Inc. Liquidation Trust*