**EXHIBIT B**

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of **Delaware**

In re **Cred Inc.,** *et al.*

Debtor

Case No. **20-12836 (JTD)**

Chapter **11**

## SUBPOENA FOR RULE 2004 EXAMINATION

To: **Earnity Inc.**

*(Name of person to whom the subpoena is directed)*

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Zoom link to be provided. | September 14, 2021 at 10:00 AM EST |

The examination will be recorded by this method: _____

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See **Schedule A** attached hereto; documents to be produced to the offices of McDermott Will & Emery LLP 1007 North Orange Street, 10th Fl., Wilmington, DE 19801; Attn. David R. Hurst and Joseph B. Evans, dhurst@mwe.com, jbevans@mwe.com no later than **August 25, 2021**.

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: **8/11/21**

CLERK OF COURT

OR

_____        _____
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* **Cred Inc. Liquidation Trust** , who issues or requests this subpoena, are:

David R. Hurst, 1007 North Orange Street, 10th Fl., Wilmington, DE 19801, dhurst@mwe.com, (302) 485-3930

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*


Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## SCHEDULE A

PLEASE TAKE NOTICE that pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Rules 45 and 30(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9016 of the Bankruptcy Rules, Rule 2004-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware, and the requests contained herein (the "Requests") of the Cred Inc. Liquidation Trust (the "Trust") established in the chapter 11 cases of Cred, Inc., *et al.* (collectively, "Cred")[1] pursuant to section 1129 of title 11 of the United States Code §§ 101 *et seq.* (the "Bankruptcy Code") in the jointly administered chapter 11 cases styled as *In re Cred, Inc., et al.,* No. 20-12836 (JTD) (Bankr. D. Del.), Earnity (as defined below) must produce the following documents and information.

## DEFINITIONS

The following definitions of terms apply to all Requests.  Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1.    Any references to a corporation, partnership, proprietorship, association, organization, or any other business or legal entity (including any of the Cred entities) shall be deemed to include the corporation's, partnership's, proprietorship's, association's, organization's, or other business or legal entities' current or former agents, accountants, advisors, employees, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors, successors, assigns, or any other person

---

[1] "Cred" means Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC, and each of their predecessors, successors, subsidiaries, partners, principals, officers, directors, attorneys, managers, professionals, and other advisors, agents, employees, representatives, and persons acting or purporting to act on their behalf.

acting or purporting to act (or who acted or purported to act) on behalf of the corporation,

partnership, proprietorship, association, organization, or other business or legal entity.

2.      The use of any singular noun shall be construed to include the plural, and vice

versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

3.      The terms "all," "any," and "each" shall each be construed as encompassing any

and all.

4.      The connectives "and" and "or" shall be construed either disjunctively or

conjunctively as necessary to bring within the scope of the discovery request all responses that

might otherwise be construed to be outside of its scope.

5.      "Earnity" shall mean, individually and collectively, Earnity Inc., Earnity Financial

Inc., and ET Trader Inc., including, as applicable, their predecessors, successors, partners, joint

ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees,

agents, representatives, consultants, attorneys, auditors, accountants, consultants, or any other

person(s) now or heretofore under the control of the foregoing or acting or purporting to act on

their behalf.

6.      "Board Materials" shall mean all documents (including drafts) provided to or

considered by Earnity's Board of Directors or similar governing body.

7.      "Cred" means Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant

Solutions LLC, and Cred (Puerto Rico) LLC, and each of their predecessors, successors,

subsidiaries, partners, current or former agents, accountants, advisors, employees, attorneys,

officers, directors, direct or indirect shareholders, members, representatives, affiliates,

subsidiaries, predecessors, successors, assigns, or any other person acting or purporting to act (or

2

who acted or purported to act) on behalf of the corporation, partnership, proprietorship, association, organization, or other business or legal entity.

8.    "<u>Communication</u>" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, Groupme, WeChat, Signal, Dust, Slack, Proton, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind.

9.    "<u>Concerning</u>" means relating to, referring to, describing, evidencing, or constituting.

10.    "<u>Cryptocurrency</u>" means all digital assets that are traded on a blockchain, broadly defined to include all types of digital assets, including virtual currency, tokens, ERC-20 compliant tokens, security tokens, utility tokens, stablecoins, and any other digital assets.  This includes, but is not limited to, Bitcoin, Bitcoin Cash, Ethereum, U.S. Dollar Coin, Tether (USDt), Dai, IDOL, XRP, Cardano, Polkadot, Binance Coin, Litecoin, Chainlink, Stellar, Dogecoin, Aave, Uniswap, Wrapped Bitcoin, Bitcoin SV, EOS, Monero, Maker, Cosmos, TRON, NEM, Synthetix, Tezos, THETA, Compound, VeChain, Neo SushiSwap, Huobi Token, UMA, Elrond, IOTA, Solana, and any other digital asset.

11.    "<u>Documents</u>" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A).  For the avoidance of doubt, this may encompass all written, graphic, or printed matter of any kind, however produced or reproduced, including all originals, drafts,

3

working papers, and non-identical copies, whether different from the originals by reason of any

notation made on such copies or otherwise, and all electronic, mechanical, or optical records or

representations of any kind or other data compilations from which information can be obtained

or translated, if necessary, through detection devices into reasonable usable form.  The term

"Documents" includes, but is not limited to:

a.    correspondence, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, notebooks, telegrams, journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments, analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intraoffice communications, pitchbooks, marketing materials, or offers;

b.    any written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, Groupme, WeWork, Signal, Dust, Slack, Proton, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind;

c.    notations in any form made of conversations, telephone calls, meetings, negotiations, or other communications;

d.    bulletins, circulars, schedules, lists, guides, printed matter (including newspapers, magazines and other publications, articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements, or worksheets;

e.    electronic, mechanical, or optical records or representations of any kind (including tapes, cassettes, discs, hard drives, recordings, voice mail, electronic mail, and computer-stored data or material), or transcriptions thereof; and

f.    all drafts, alterations, modifications, changes and amendments of any of the foregoing, and any material underlying, supporting, or used in the preparation of any document.

4

g.    A draft or non-identical copy is a separate document within the meaning of this term.

12.    "Source Code" means computer instructions and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator, any text written in any high-level programming language defining firmware and/or software functionalities implemented on an integrated circuit, microcode, register transfer language ("RTL"), firmware, and hardware description language ("HDL"), or any code for a similar purpose, as well as any and all notes, annotations, and other comments of any type related thereto and accompanying the code. For avoidance of doubt, this includes source files, make files, intermediate output files, executable files, header files, resource files, library files, module definition files, map files, object files, linker files, browse info files, and debug files.

13.    "Records" means all documents and communications including emails, statements, applications, onboarding forms, communications, correspondence, know your customer/anti-money laundering related documents, SWIFT records, records reflecting transactions, checks (front and back), wire transfers, tax documents and filings, certificates of foreign status of beneficial owners, memoranda, notes, custodian agreements, trustee agreements, forms and/or related documents and communications, beneficiary agreements, forms and/or related documents and communications, and all other documents concerning the owners, signatories, beneficial owners, trustees, and all other persons associated with an Account in any way, and any other documents, communications, or bank records.

14.    "JST Capital" means JST Capital LLC (www.jstcap.com), including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys,

auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

15.     "MoKredit" means MoKredit (www.mokredit.com) or Mo9, ("Mo9"), including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

16.     "Uphold" means Uphold HQ Inc. (https://uphold.com/en-us), including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

17.     "VCS" means any version control system that assists in the management of changes in source code over time, including, but not limited to, GitHub, GitLab, and BitBucket.

18.     "Blockchain Advocacy Coalition" means the advocacy group named the Blockchain Advocacy Coalition (https://www.blockadvocacy.org/) including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

19.     "Universal Protocol Alliance" means the group named the Universal Protocol Alliance (https://www.universalprotocol.io/) including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers,

6

principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

20.    "DBS Consulting" means DBS Consulting LLC including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

21.    "Banxa" means Banxa Holdings Inc. including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

### INSTRUCTIONS

1.    The preceding definitions apply to these Instructions and each of the succeeding Requests.

2.    All terms defined above shall have the meanings set forth therein, whether capitalized in the Requests or not.

3.    Earnity is required to produce all responsive documents in Earnity's possession, custody, or control, wherever located, including without limitation those in the custody of Earnity's predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on their behalf.

7

4.      These Requests are for documents only to the extent they have not already been provided to the Trust.

5.      These Requests are continuing requests pursuant to the Bankruptcy Rules. Earnity must supplement any production of documents that are received, discovered, or created after any of Earnity's responses to the Requests, or that are otherwise within Earnity's possession, custody, or control, wherever located, including without limitation those in the custody of Earnity's representatives, agents, Professionals, affiliates, or anyone acting on Earnity's behalf.

6.      If Earnity objects to any part of any Request, Earnity must produce all documents that are responsive to the portions of the Request to which Earnity does not object. Earnity also must state the nature of, and grounds for, the objection.

7.      If Earnity cannot comply with any Request in full, Earnity must comply to the fullest extent possible, and Earnity should provide an explanation as to why full compliance is not possible.

8.      Where Earnity asserts a claim of privilege in objecting to a Request and withholds a responsive document on this basis, Earnity must provide a privilege log setting forth (a) the nature of the privilege being claimed, (b) the type of document being withheld, (c) the general subject matter of the document, (d) the date of the document, and (e) such other information sufficient to identify the document, including, where appropriate, the author of the document, the title or subject line of the document, the addressee of the document, and, where not apparent, the relationship of the author and the addressee to each other.

9.      If a document contains both privileged and non-privileged material, Earnity must disclose the non-privileged material to the fullest extent possible without thereby disclosing the privileged material.  If a party asserts a privilege to part of the material contained in a document,

8

the party asserting the privilege must clearly indicate the portions as to which it claims the privilege. When a document has been redacted or altered in any fashion, Earnity must identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted documents.

10.     All documents produced in electronic format shall be in their native format and shall be OCR (Optical Character Recognition) capable and shall be produced with Relativity compatible load files.

11.     Additional special processing of certain electronically stored information shall be as follows:  Microsoft Excel spreadsheet fields shall not be converted to TIFF files and shall be produced in native format.  A placeholder TIFF image shall be created, Bates numbered, and the produced Excel file shall be renamed to match the Bates number on its corresponding placeholder page.  The exception shall be for redacted spreadsheets which shall be produced in TIFF format.  Images for the redacted spreadsheets shall display the content in the same manner as if it were printed.  The extractable metadata and text shall be provided for native files, and OCR will be provided for the un-redacted portions of the documents.

12.     If any document called for by these Requests has been destroyed or discarded, Earnity must identify that document in writing by providing the following information: (a) any sender/author and any addressee; (b) any indicated or blind copies; (c) the document's date, subject matter, number of pages, and attachments or appendices; (d) all persons to whom the document was distributed, shown, or explained; (e) its date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (f) the persons who authorized and

9

carried out such destruction or discard; and (g) whether any copies of the document presently

exist and, if so, the name of the custodian of each copy.

13.     Any copy of a document that varies in any way whatsoever from the original or

from any other copy of the document, whether by reason or any handwritten mark or other

notation or any omission, is a separate document and must be produced, whether or not the

original of such a document is within Earnity's possession, custody, or control. A request for any

document includes a request for all drafts thereof, and all revisions and modifications thereto,

including any red-lined versions or document comparisons, in addition to the document itself.

Each document is to be produced in its entirety, without abbreviation or expurgation.

14.     In producing documents, all documents that are physically attached to each other,

or segregated or separated from other documents, when originally located, should be produced as

is. If no document exists that is responsive to a particular request, Earnity must state so in

writing.

15.     Except where otherwise specified, the Requests seek documents dated, created, or

otherwise obtained on or between January 1, 2020 to the present.

## REQUESTS

1.     All documents and communications concerning Cred.

2.     All documents and communications with Daniel Schatt, Joseph Podulka, or

Daniel Goldstein.

3.     Documents sufficient to show all persons hired by Earnity as employees,

contractors, subcontractors, directors, officers, or in any other capacity.

DM_US 181520786-7.113270.0012

4.      All documents, communications and contracts between Earnity and any individual or entity that is currently or formerly associated with Cred, including former directors, officers, employees, contractors, or subcontractors of Cred.

5.      All documents, communications, and records concerning any current or former CredEarn customers or investors.

6.      All documents, communications, and records concerning any current or former CredBorrow customers or investors.

7.      All customer lists, investor lists, or contact lists.

8.      All documents, communications, and records concerning any actual or potential Cred investor.

9.      All Board Materials concerning Cred.

10.      All documents and communications concerning the borrowing of cryptocurrency, lending of cryptocurrency, cryptocurrency hedge funds or asset managers, cryptocurrency trading, cryptocurrency hedging, decentralized finance, debt financing, and micro-loans.

11.      All documents and communications concerning access to Cred's shared drives, Google Suite, GitHub, or any other information concerning Cred.

12.      All documents, communications, and records concerning source code, including a complete copy of Earnity's source code.

13.      All source code and smart contracts, including, but not limited to source code and smart contracts concerning Earnity's cryptocurrency-related business.

14.      All source code stored on any VCS, including, but not limited to, Github, Gitlab, and Bitbucket.

11

15.     All documents, communications, and records concerning smart contracts, including, but not limited to documents concerning the administrator to all smart contracts and the private keys to the smart contracts.  This request includes a copy of all smart contracts and access to the private keys.

16.     All documents and communications concerning James Alexander, Scott Freeman, J.P. Thierot, Daniyal Inamullah, Daniel Wheeler, Lu Hua, Sally Zhang, Adnan Khakoo, Christopher Spadafora, Meghan Gardler, or Deleon De Metz.

17.     All documents and communications concerning MoKredit, JST, Uphold, Blockchain Advocacy Coalition, Universal Protocol Alliance, DBS Consulting, or Banxa.

18.     All documents and communications concerning Earnity's business plan, marketing strategy, or promotional materials, including presentations and slide decks.

19.     All documents and communications concerning Earnity's Board Materials, internal policies, procedures, and terms of conditions, including drafts thereof.

20.     All documents and communications concerning cryptocurrency and blockchain.

21.     All documents and communications concerning actual, potential, solicited, or unsolicited investments by any third party in Earnity, including all documents provided to potential investors.

22.     Documents sufficient to show Earnity's capital structure and ownership structure, including the identity and ownership structure of each individual or entity listed thereon.

23.     All insurance policies held by Earnity.

24.     All audited or unaudited financial statements, trial balances, statements of assets and liabilities, or other documents indicating Earnity's financial condition.

## SCHEDULE B

PLEASE TAKE NOTICE that pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Rules 45 and 30(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9016 of the Bankruptcy Rules, Rule 2004-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware, the Cred Inc. Liquidation Trust (the "Trust") established in the chapter 11 cases of Cred, Inc., *et al.* (collectively, "Cred")[2] pursuant to section 1129 of title 11 of the United States Code §§ 101 *et seq.* (the "Bankruptcy Code") in the jointly administered chapter 11 cases styled as *In re Cred, Inc., et al.,* No. 20-12836 (JTD) (Bankr. D. Del.) intends to conduct a Rule 2004 Examination of Earnity's designated corporate representative.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Earnity shall designate and produce at the deposition those of its officers, directors, managing agents, or other persons who consent to testify on Earnity's behalf, about those matters set forth in this notice under the heading "Topic of Examination" set forth in **Exhibit A** to **Schedule B**, based on the information known or reasonably available to Earnity. This deposition will examine what relation Earnity bears to Cred, and whether any assets or intellectual property belonging to Cred have been misappropriated for the benefit of Earnity.  Earnity shall designate to the Trust by September 1, 2021 whom Earnity is identifying as Earnity's corporate representative for purposes of the deposition.

---

[2] "Cred" means Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC, and each of their predecessors, successors, subsidiaries, partners, principals, officers, directors, attorneys, managers, professionals, and other advisors, agents, employees, representatives, and persons acting or purporting to act on their behalf.

# EXHIBIT A

## TOPICS OF EXAMINATION

1.      The relationship between Earnity and Cred.

2.      Any former Cred employees, executives, contractors, directors, or other persons that have been hired by Earnity.

3.      Any intellectual property in Earnity's possession that was derived, obtained, or misappropriated from Cred.

4.      The nature of Earnity's business, capital structure, equity holders, investors, and employees.

5.      All issues set forth in the requests for documents and information in **Schedule A**.

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of _Delaware_

In re _Cred Inc., et al._

Debtor

Case No. _20-12836 (JTD)_

Chapter _11_

## SUBPOENA FOR RULE 2004 EXAMINATION

To: _Earnity Financial Inc._

*(Name of person to whom the subpoena is directed)*

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Zoom link to be provided. | September 14, 2021 at 10:00 AM EST |

The examination will be recorded by this method: _____

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See **Schedule A** attached hereto; documents to be produced to the offices of McDermott Will & Emery LLP 1007 North Orange Street, 10th Fl., Wilmington, DE 19801; Attn. David R. Hurst and Joseph B. Evans, dhurst@mwe.com, jbevans@mwe.com no later than **August 25, 2021**.

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _8/11/21_

CLERK OF COURT

OR

_____                    _____
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* _Cred Inc. Liquidation Trust_ , who issues or requests this subpoena, are:

David R. Hurst, 1007 North Orange Street, 10th Fl., Wilmington, DE 19801, dhurst@mwe.com, (302) 485-3930

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

        I declare under penalty of perjury that this information is true and correct.

Date: _____

                                             _____
                                                          *Server's signature*

                                             _____
                                                          *Printed name and title*

                                             _____
                                                          *Server's address*

Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## SCHEDULE A

PLEASE TAKE NOTICE that pursuant to Rule 2004 of the Federal Rules of Bankruptcy

Procedures (the "Bankruptcy Rules") and Rules 45 and 30(b)(6) of the Federal Rules of Civil

Procedure, made applicable to this proceeding by Rule 9016 of the Bankruptcy Rules, Rule

2004-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of

Delaware, and the requests contained herein (the "Requests") of the Cred Inc. Liquidation Trust

(the "Trust") established in the chapter 11 cases of Cred, Inc., *et al.* (collectively, "Cred")[1]

pursuant to section 1129 of title 11 of the United States Code §§ 101 *et seq.* (the "Bankruptcy

Code") in the jointly administered chapter 11 cases styled as *In re Cred, Inc., et al.,* No. 20-

12836 (JTD) (Bankr. D. Del.), Earnity (as defined below) must produce the following documents

and information.

## DEFINITIONS

The following definitions of terms apply to all Requests.  Unless otherwise defined

herein, all words and phrases used herein shall be accorded their usual meaning and shall be

interpreted in their common, ordinary sense.

1.      Any references to a corporation, partnership, proprietorship, association,

organization, or any other business or legal entity (including any of the Cred entities) shall be

deemed to include the corporation's, partnership's, proprietorship's, association's,

organization's, or other business or legal entities' current or former agents, accountants, advisors,

employees, attorneys, officers, directors, direct or indirect shareholders, members,

representatives, affiliates, subsidiaries, predecessors, successors, assigns, or any other person

---

[1] "Cred" means Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC, and each of their predecessors, successors, subsidiaries, partners, principals, officers, directors, attorneys, managers, professionals, and other advisors, agents, employees, representatives, and persons acting or purporting to act on their behalf.

acting or purporting to act (or who acted or purported to act) on behalf of the corporation,

partnership, proprietorship, association, organization, or other business or legal entity.

2.      The use of any singular noun shall be construed to include the plural, and vice

versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

3.      The terms "all," "any," and "each" shall each be construed as encompassing any

and all.

4.      The connectives "and" and "or" shall be construed either disjunctively or

conjunctively as necessary to bring within the scope of the discovery request all responses that

might otherwise be construed to be outside of its scope.

5.      "Earnity" shall mean, individually and collectively, Earnity Inc., Earnity Financial

Inc., and ET Trader Inc., including, as applicable, their predecessors, successors, partners, joint

ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees,

agents, representatives, consultants, attorneys, auditors, accountants, consultants, or any other

person(s) now or heretofore under the control of the foregoing or acting or purporting to act on

their behalf.

6.      "Board Materials" shall mean all documents (including drafts) provided to or

considered by Earnity's Board of Directors or similar governing body.

7.      "Cred" means Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant

Solutions LLC, and Cred (Puerto Rico) LLC, and each of their predecessors, successors,

subsidiaries, partners, current or former agents, accountants, advisors, employees, attorneys,

officers, directors, direct or indirect shareholders, members, representatives, affiliates,

subsidiaries, predecessors, successors, assigns, or any other person acting or purporting to act (or

2

who acted or purported to act) on behalf of the corporation, partnership, proprietorship, association, organization, or other business or legal entity.

8.    "<u>Communication</u>" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, Groupme, WeChat, Signal, Dust, Slack, Proton, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind.

9.    "<u>Concerning</u>" means relating to, referring to, describing, evidencing, or constituting.

10.    "<u>Cryptocurrency</u>" means all digital assets that are traded on a blockchain, broadly defined to include all types of digital assets, including virtual currency, tokens, ERC-20 compliant tokens, security tokens, utility tokens, stablecoins, and any other digital assets.  This includes, but is not limited to, Bitcoin, Bitcoin Cash, Ethereum, U.S. Dollar Coin, Tether (USDt), Dai, IDOL, XRP, Cardano, Polkadot, Binance Coin, Litecoin, Chainlink, Stellar, Dogecoin, Aave, Uniswap, Wrapped Bitcoin, Bitcoin SV, EOS, Monero, Maker, Cosmos, TRON, NEM, Synthetix, Tezos, THETA, Compound, VeChain, Neo SushiSwap, Huobi Token, UMA, Elrond, IOTA, Solana, and any other digital asset.

11.    "<u>Documents</u>" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A).  For the avoidance of doubt, this may encompass all written, graphic, or printed matter of any kind, however produced or reproduced, including all originals, drafts,

working papers, and non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and all electronic, mechanical, or optical records or representations of any kind or other data compilations from which information can be obtained or translated, if necessary, through detection devices into reasonable usable form.  The term "Documents" includes, but is not limited to:

    a.    correspondence, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, notebooks, telegrams, journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments, analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intraoffice communications, pitchbooks, marketing materials, or offers;

    b.    any written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, Groupme, WeWork, Signal, Dust, Slack, Proton, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind;

    c.    notations in any form made of conversations, telephone calls, meetings, negotiations, or other communications;

    d.    bulletins, circulars, schedules, lists, guides, printed matter (including newspapers, magazines and other publications, articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements, or worksheets;

    e.    electronic, mechanical, or optical records or representations of any kind (including tapes, cassettes, discs, hard drives, recordings, voice mail, electronic mail, and computer-stored data or material), or transcriptions thereof; and

    f.    all drafts, alterations, modifications, changes and amendments of any of the foregoing, and any material underlying, supporting, or used in the preparation of any document.

4

g.      A draft or non-identical copy is a separate document within the meaning of this term.

12.      "Source Code" means computer instructions and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator, any text written in any high-level programming language defining firmware and/or software functionalities implemented on an integrated circuit, microcode, register transfer language ("RTL"), firmware, and hardware description language ("HDL"), or any code for a similar purpose, as well as any and all notes, annotations, and other comments of any type related thereto and accompanying the code. For avoidance of doubt, this includes source files, make files, intermediate output files, executable files, header files, resource files, library files, module definition files, map files, object files, linker files, browse info files, and debug files.

13.      "Records" means all documents and communications including emails, statements, applications, onboarding forms, communications, correspondence, know your customer/anti-money laundering related documents, SWIFT records, records reflecting transactions, checks (front and back), wire transfers, tax documents and filings, certificates of foreign status of beneficial owners, memoranda, notes, custodian agreements, trustee agreements, forms and/or related documents and communications, beneficiary agreements, forms and/or related documents and communications, and all other documents concerning the owners, signatories, beneficial owners, trustees, and all other persons associated with an Account in any way, and any other documents, communications, or bank records.

14.      "JST Capital" means JST Capital LLC (www.jstcap.com), including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys,

auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

15.    "Mokredit" means MoKredit (www.mokredit.com) or Mo9, ("Mo9"), including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

16.    "Uphold" means Uphold HQ Inc. (https://uphold.com/en-us), including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

17.    "VCS" means any version control system that assists in the management of changes in source code over time, including, but not limited to, GitHub, GitLab, and BitBucket.

18.    "Blockchain Advocacy Coalition" means the advocacy group named the Blockchain Advocacy Coalition (https://www.blockadvocacy.org/) including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

19.    "Universal Protocol Alliance" means the group named the Universal Protocol Alliance (https://www.universalprotocol.io/) including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers,

principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

20.     "DBS Consulting" means DBS Consulting LLC including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

21.     "Banxa" means Banxa Holdings Inc. including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

## INSTRUCTIONS

1.     The preceding definitions apply to these Instructions and each of the succeeding Requests.

2.     All terms defined above shall have the meanings set forth therein, whether capitalized in the Requests or not.

3.     Earnity is required to produce all responsive documents in Earnity's possession, custody, or control, wherever located, including without limitation those in the custody of Earnity's predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on their behalf.

7

4.      These Requests are for documents only to the extent they have not already been provided to the Trust.

5.      These Requests are continuing requests pursuant to the Bankruptcy Rules. Earnity must supplement any production of documents that are received, discovered, or created after any of Earnity's responses to the Requests, or that are otherwise within Earnity's possession, custody, or control, wherever located, including without limitation those in the custody of Earnity's representatives, agents, Professionals, affiliates, or anyone acting on Earnity's behalf.

6.      If Earnity objects to any part of any Request, Earnity must produce all documents that are responsive to the portions of the Request to which Earnity does not object. Earnity also must state the nature of, and grounds for, the objection.

7.      If Earnity cannot comply with any Request in full, Earnity must comply to the fullest extent possible, and Earnity should provide an explanation as to why full compliance is not possible.

8.      Where Earnity asserts a claim of privilege in objecting to a Request and withholds a responsive document on this basis, Earnity must provide a privilege log setting forth (a) the nature of the privilege being claimed, (b) the type of document being withheld, (c) the general subject matter of the document, (d) the date of the document, and (e) such other information sufficient to identify the document, including, where appropriate, the author of the document, the title or subject line of the document, the addressee of the document, and, where not apparent, the relationship of the author and the addressee to each other.

9.      If a document contains both privileged and non-privileged material, Earnity must disclose the non-privileged material to the fullest extent possible without thereby disclosing the privileged material.  If a party asserts a privilege to part of the material contained in a document,

8

the party asserting the privilege must clearly indicate the portions as to which it claims the privilege. When a document has been redacted or altered in any fashion, Earnity must identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted documents.

10.    All documents produced in electronic format shall be in their native format and shall be OCR (Optical Character Recognition) capable and shall be produced with Relativity compatible load files.

11.    Additional special processing of certain electronically stored information shall be as follows:  Microsoft Excel spreadsheet fields shall not be converted to TIFF files and shall be produced in native format.  A placeholder TIFF image shall be created, Bates numbered, and the produced Excel file shall be renamed to match the Bates number on its corresponding placeholder page.  The exception shall be for redacted spreadsheets which shall be produced in TIFF format.  Images for the redacted spreadsheets shall display the content in the same manner as if it were printed.  The extractable metadata and text shall be provided for native files, and OCR will be provided for the un-redacted portions of the documents.

12.    If any document called for by these Requests has been destroyed or discarded, Earnity must identify that document in writing by providing the following information: (a) any sender/author and any addressee; (b) any indicated or blind copies; (c) the document's date, subject matter, number of pages, and attachments or appendices; (d) all persons to whom the document was distributed, shown, or explained; (e) its date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (f) the persons who authorized and

9

carried out such destruction or discard; and (g) whether any copies of the document presently exist and, if so, the name of the custodian of each copy.

13.     Any copy of a document that varies in any way whatsoever from the original or from any other copy of the document, whether by reason or any handwritten mark or other notation or any omission, is a separate document and must be produced, whether or not the original of such a document is within Earnity's possession, custody, or control. A request for any document includes a request for all drafts thereof, and all revisions and modifications thereto, including any red-lined versions or document comparisons, in addition to the document itself. Each document is to be produced in its entirety, without abbreviation or expurgation.

14.     In producing documents, all documents that are physically attached to each other, or segregated or separated from other documents, when originally located, should be produced as is. If no document exists that is responsive to a particular request, Earnity must state so in writing.

15.     Except where otherwise specified, the Requests seek documents dated, created, or otherwise obtained on or between January 1, 2020 to the present.

## REQUESTS

1.     All documents and communications concerning Cred.

2.     All documents and communications with Daniel Schatt, Joseph Podulka, or Daniel Goldstein.

3.     Documents sufficient to show all persons hired by Earnity as employees, contractors, subcontractors, directors, officers, or in any other capacity.

10

4.      All documents, communications and contracts between Earnity and any individual or entity that is currently or formerly associated with Cred, including former directors, officers, employees, contractors, or subcontractors of Cred.

5.      All documents, communications, and records concerning any current or former CredEarn customers or investors.

6.      All documents, communications, and records concerning any current or former CredBorrow customers or investors.

7.      All customer lists, investor lists, or contact lists.

8.      All documents, communications, and records concerning any actual or potential Cred investor.

9.      All Board Materials concerning Cred.

10.     All documents and communications concerning the borrowing of cryptocurrency, lending of cryptocurrency, cryptocurrency hedge funds or asset managers, cryptocurrency trading, cryptocurrency hedging, decentralized finance, debt financing, and micro-loans.

11.     All documents and communications concerning access to Cred's shared drives, Google Suite, GitHub, or any other information concerning Cred.

12.     All documents, communications, and records concerning source code, including a complete copy of Earnity's source code.

13.     All source code and smart contracts, including, but not limited to source code and smart contracts concerning Earnity's cryptocurrency-related business.

14.     All source code stored on any VCS, including, but not limited to, Github, Gitlab, and Bitbucket.

11

15.     All documents, communications, and records concerning smart contracts, including, but not limited to documents concerning the administrator to all smart contracts and the private keys to the smart contracts.  This request includes a copy of all smart contracts and access to the private keys.

16.     All documents and communications concerning James Alexander, Scott Freeman, J.P. Thierot, Daniyal Inamullah, Daniel Wheeler, Lu Hua, Sally Zhang, Adnan Khakoo, Christopher Spadafora, Meghan Gardler, or Deleon De Metz.

17.     All documents and communications concerning MoKredit, JST, Uphold, Blockchain Advocacy Coalition, Universal Protocol Alliance, DBS Consulting, or Banxa.

18.     All documents and communications concerning Earnity's business plan, marketing strategy, or promotional materials, including presentations and slide decks.

19.     All documents and communications concerning Earnity's Board Materials, internal policies, procedures, and terms of conditions, including drafts thereof.

20.     All documents and communications concerning cryptocurrency and blockchain.

21.     All documents and communications concerning actual, potential, solicited, or unsolicited investments by any third party in Earnity, including all documents provided to potential investors.

22.     Documents sufficient to show Earnity's capital structure and ownership structure, including the identity and ownership structure of each individual or entity listed thereon.

23.     All insurance policies held by Earnity.

24.     All audited or unaudited financial statements, trial balances, statements of assets and liabilities, or other documents indicating Earnity's financial condition.

## **SCHEDULE B**

PLEASE TAKE NOTICE that pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Rules 45 and 30(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9016 of the Bankruptcy Rules, Rule 2004-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware, the Cred Inc. Liquidation Trust (the "Trust") established in the chapter 11 cases of Cred, Inc., *et al.* (collectively, "Cred")[2] pursuant to section 1129 of title 11 of the United States Code §§ 101 *et seq*. (the "Bankruptcy Code") in the jointly administered chapter 11 cases styled as *In re Cred, Inc., et al.,* No. 20-12836 (JTD) (Bankr. D. Del.) intends to conduct a Rule 2004 Examination of Earnity's designated corporate representative.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Earnity shall designate and produce at the deposition those of its officers, directors, managing agents, or other persons who consent to testify on Earnity's behalf, about those matters set forth in this notice under the heading "Topic of Examination" set forth in **Exhibit A** to **Schedule B**, based on the information known or reasonably available to Earnity. This deposition will examine what relation Earnity bears to Cred, and whether any assets or intellectual property belonging to Cred have been misappropriated for the benefit of Earnity.  Earnity shall designate to the Trust by September 1, 2021 whom Earnity is identifying as Earnity's corporate representative for purposes of the deposition.

---

[2] "Cred" means Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC, and each of their predecessors, successors, subsidiaries, partners, principals, officers, directors, attorneys, managers, professionals, and other advisors, agents, employees, representatives, and persons acting or purporting to act on their behalf.

## <u>EXHIBIT A</u>

## TOPICS OF EXAMINATION

1.      The relationship between Earnity and Cred.

2.      Any former Cred employees, executives, contractors, directors, or other persons that have been hired by Earnity.

3.      Any intellectual property in Earnity's possession that was derived, obtained, or misappropriated from Cred.

4.      The nature of Earnity's business, capital structure, equity holders, investors, and employees.

5.      All issues set forth in the requests for documents and information in **Schedule A**.

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of _Delaware_

In re _Cred Inc., et al._                    Case No. _20-12836 (JTD)_

                    Debtor                    Chapter _11_

## SUBPOENA FOR RULE 2004 EXAMINATION

To: _ET Trader Inc._

_(Name of person to whom the subpoena is directed)_

☒ _Testimony:_ **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure.  A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Zoom link to be provided. | September 14, 2021 at 10:00 A.M. EST |

The examination will be recorded by this method: _____

☒ _Production:_ You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See **Schedule A** attached hereto; documents to be produced to the offices of McDermott Will & Emery LLP 1007 North Orange Street, 10th Fl., Wilmington, DE 19801; Attn. David R. Hurst and Joseph B. Evans, dhurst@mwe.com, jbevans@mwe.com no later than **August 25, 2021**.

     The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _8/11/21_

                    CLERK OF COURT

                                   OR

          _____          _____
          _Signature of Clerk or Deputy Clerk_          _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
_ Cred Inc. Liquidation Trust _      , who issues or requests this subpoena, are:

David R. Hurst, 1007 North Orange Street, 10th Fl., Wilmington, DE 19801, dhurst@mwe.com, (302) 485-3930

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because:  _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

  My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date: _____

                                                    _____
                                                                          *Server's signature*

                                                    _____
                                                                       *Printed name and title*

                                                    _____
                                                                          *Server's address*


Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## SCHEDULE A

PLEASE TAKE NOTICE that pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Rules 45 and 30(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9016 of the Bankruptcy Rules, Rule 2004-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware, and the requests contained herein (the "Requests") of the Cred Inc. Liquidation Trust (the "Trust") established in the chapter 11 cases of Cred, Inc., *et al.* (collectively, "Cred")[1] pursuant to section 1129 of title 11 of the United States Code §§ 101 *et seq.* (the "Bankruptcy Code") in the jointly administered chapter 11 cases styled as *In re Cred, Inc., et al.,* No. 20-12836 (JTD) (Bankr. D. Del.), Earnity (as defined below) must produce the following documents and information.

## DEFINITIONS

The following definitions of terms apply to all Requests.  Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1.      Any references to a corporation, partnership, proprietorship, association, organization, or any other business or legal entity (including any of the Cred entities) shall be deemed to include the corporation's, partnership's, proprietorship's, association's, organization's, or other business or legal entities' current or former agents, accountants, advisors, employees, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors, successors, assigns, or any other person

---

[1] "Cred" means Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC, and each of their predecessors, successors, subsidiaries, partners, principals, officers, directors, attorneys, managers, professionals, and other advisors, agents, employees, representatives, and persons acting or purporting to act on their behalf.

acting or purporting to act (or who acted or purported to act) on behalf of the corporation, partnership, proprietorship, association, organization, or other business or legal entity.

2.      The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

3.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5.      "Earnity" shall mean, individually and collectively, Earnity Inc., Earnity Financial Inc., and ET Trader Inc., including, as applicable, their predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on their behalf.

6.      "Board Materials" shall mean all documents (including drafts) provided to or considered by Earnity's Board of Directors or similar governing body.

7.      "Cred" means Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC, and each of their predecessors, successors, subsidiaries, partners, current or former agents, accountants, advisors, employees, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors, successors, assigns, or any other person acting or purporting to act (or

2

who acted or purported to act) on behalf of the corporation, partnership, proprietorship, association, organization, or other business or legal entity.

8.     "<u>Communication</u>" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, Groupme, WeChat, Signal, Dust, Slack, Proton, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind.

9.     "<u>Concerning</u>" means relating to, referring to, describing, evidencing, or constituting.

10.     "<u>Cryptocurrency</u>" means all digital assets that are traded on a blockchain, broadly defined to include all types of digital assets, including virtual currency, tokens, ERC-20 compliant tokens, security tokens, utility tokens, stablecoins, and any other digital assets.  This includes, but is not limited to, Bitcoin, Bitcoin Cash, Ethereum, U.S. Dollar Coin, Tether (USDt), Dai, IDOL, XRP, Cardano, Polkadot, Binance Coin, Litecoin, Chainlink, Stellar, Dogecoin, Aave, Uniswap, Wrapped Bitcoin, Bitcoin SV, EOS, Monero, Maker, Cosmos, TRON, NEM, Synthetix, Tezos, THETA, Compound, VeChain, Neo SushiSwap, Huobi Token, UMA, Elrond, IOTA, Solana, and any other digital asset.

11.     "<u>Documents</u>" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A).  For the avoidance of doubt, this may encompass all written, graphic, or printed matter of any kind, however produced or reproduced, including all originals, drafts,

3

working papers, and non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and all electronic, mechanical, or optical records or representations of any kind or other data compilations from which information can be obtained or translated, if necessary, through detection devices into reasonable usable form.  The term "Documents" includes, but is not limited to:

a.   correspondence, memoranda, notes, calendar or diary entries, statistics, letters, electronic mail, notebooks, telegrams, journals, minutes, agendas, notices, announcements, instructions, charts, schedules, requests, contracts, prospective contracts, agreements, prospective agreements, licenses, prospective licenses, order forms, books, accounts, records, reports, studies, surveys, experiments, analyses, checks, cancelled checks, wire confirmations, statements, receipts, returns, vouchers, statements, credit memoranda, sales slips, promissory notes, summaries, pamphlets, prospectuses, manuals, brochures, announcements, certificates, drawings, plans, inter-office and intraoffice communications, pitchbooks, marketing materials, or offers;

b.   any written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, Groupme, WeWork, Signal, Dust, Slack, Proton, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind;

c.   notations in any form made of conversations, telephone calls, meetings, negotiations, or other communications;

d.   bulletins, circulars, schedules, lists, guides, printed matter (including newspapers, magazines and other publications, articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, telexes, invoices, ledgers, balance sheets, financial statements, or worksheets;

e.   electronic, mechanical, or optical records or representations of any kind (including tapes, cassettes, discs, hard drives, recordings, voice mail, electronic mail, and computer-stored data or material), or transcriptions thereof; and

f.   all drafts, alterations, modifications, changes and amendments of any of the foregoing, and any material underlying, supporting, or used in the preparation of any document.

4

g.    A draft or non-identical copy is a separate document within the meaning of this term.

12.    "<u>Source Code</u>" means computer instructions and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator, any text written in any high-level programming language defining firmware and/or software functionalities implemented on an integrated circuit, microcode, register transfer language ("RTL"), firmware, and hardware description language ("HDL"), or any code for a similar purpose, as well as any and all notes, annotations, and other comments of any type related thereto and accompanying the code. For avoidance of doubt, this includes source files, make files, intermediate output files, executable files, header files, resource files, library files, module definition files, map files, object files, linker files, browse info files, and debug files.

13.    "<u>Records</u>" means all documents and communications including emails, statements, applications, onboarding forms, communications, correspondence, know your customer/anti-money laundering related documents, SWIFT records, records reflecting transactions, checks (front and back), wire transfers, tax documents and filings, certificates of foreign status of beneficial owners, memoranda, notes, custodian agreements, trustee agreements, forms and/or related documents and communications, beneficiary agreements, forms and/or related documents and communications, and all other documents concerning the owners, signatories, beneficial owners, trustees, and all other persons associated with an Account in any way, and any other documents, communications, or bank records.

14.    "<u>JST Capital</u>" means JST Capital LLC (www.jstcap.com), including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys,

5

auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

15.    "Mokredit" means MoKredit (www.mokredit.com) or Mo9, ("Mo9"), including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

16.    "Uphold" means Uphold HQ Inc. (https://uphold.com/en-us), including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

17.    "VCS" means any version control system that assists in the management of changes in source code over time, including, but not limited to, GitHub, GitLab, and BitBucket.

18.    "Blockchain Advocacy Coalition" means the advocacy group named the Blockchain Advocacy Coalition (https://www.blockadvocacy.org/) including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

19.    "Universal Protocol Alliance" means the group named the Universal Protocol Alliance (https://www.universalprotocol.io/) including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers,

6

principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

20.     "DBS Consulting" means DBS Consulting LLC including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

21.     "Banxa" means Banxa Holdings Inc. including, as applicable, its predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants or any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on its behalf.

## INSTRUCTIONS

1.     The preceding definitions apply to these Instructions and each of the succeeding Requests.

2.     All terms defined above shall have the meanings set forth therein, whether capitalized in the Requests or not.

3.     Earnity is required to produce all responsive documents in Earnity's possession, custody, or control, wherever located, including without limitation those in the custody of Earnity's predecessors, successors, partners, joint ventures, subsidiaries, affiliates, divisions, directors, officers, principals, trustees, employees, agents, representatives, consultants, attorneys, auditors, accountants, consultants, or any other person(s) now or heretofore under the control of the foregoing or acting or purporting to act on their behalf.

7

4.      These Requests are for documents only to the extent they have not already been provided to the Trust.

5.      These Requests are continuing requests pursuant to the Bankruptcy Rules. Earnity must supplement any production of documents that are received, discovered, or created after any of Earnity's responses to the Requests, or that are otherwise within Earnity's possession, custody, or control, wherever located, including without limitation those in the custody of Earnity's representatives, agents, Professionals, affiliates, or anyone acting on Earnity's behalf.

6.      If Earnity objects to any part of any Request, Earnity must produce all documents that are responsive to the portions of the Request to which Earnity does not object. Earnity also must state the nature of, and grounds for, the objection.

7.      If Earnity cannot comply with any Request in full, Earnity must comply to the fullest extent possible, and Earnity should provide an explanation as to why full compliance is not possible.

8.      Where Earnity asserts a claim of privilege in objecting to a Request and withholds a responsive document on this basis, Earnity must provide a privilege log setting forth (a) the nature of the privilege being claimed, (b) the type of document being withheld, (c) the general subject matter of the document, (d) the date of the document, and (e) such other information sufficient to identify the document, including, where appropriate, the author of the document, the title or subject line of the document, the addressee of the document, and, where not apparent, the relationship of the author and the addressee to each other.

9.      If a document contains both privileged and non-privileged material, Earnity must disclose the non-privileged material to the fullest extent possible without thereby disclosing the privileged material.  If a party asserts a privilege to part of the material contained in a document,

8

the party asserting the privilege must clearly indicate the portions as to which it claims the privilege. When a document has been redacted or altered in any fashion, Earnity must identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted documents.

10.    All documents produced in electronic format shall be in their native format and shall be OCR (Optical Character Recognition) capable and shall be produced with Relativity compatible load files.

11.    Additional special processing of certain electronically stored information shall be as follows:  Microsoft Excel spreadsheet fields shall not be converted to TIFF files and shall be produced in native format.  A placeholder TIFF image shall be created, Bates numbered, and the produced Excel file shall be renamed to match the Bates number on its corresponding placeholder page.  The exception shall be for redacted spreadsheets which shall be produced in TIFF format.  Images for the redacted spreadsheets shall display the content in the same manner as if it were printed.  The extractable metadata and text shall be provided for native files, and OCR will be provided for the un-redacted portions of the documents.

12.    If any document called for by these Requests has been destroyed or discarded, Earnity must identify that document in writing by providing the following information: (a) any sender/author and any addressee; (b) any indicated or blind copies; (c) the document's date, subject matter, number of pages, and attachments or appendices; (d) all persons to whom the document was distributed, shown, or explained; (e) its date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (f) the persons who authorized and

9

carried out such destruction or discard; and (g) whether any copies of the document presently exist and, if so, the name of the custodian of each copy.

13.    Any copy of a document that varies in any way whatsoever from the original or from any other copy of the document, whether by reason or any handwritten mark or other notation or any omission, is a separate document and must be produced, whether or not the original of such a document is within Earnity's possession, custody, or control. A request for any document includes a request for all drafts thereof, and all revisions and modifications thereto, including any red-lined versions or document comparisons, in addition to the document itself. Each document is to be produced in its entirety, without abbreviation or expurgation.

14.    In producing documents, all documents that are physically attached to each other, or segregated or separated from other documents, when originally located, should be produced as is. If no document exists that is responsive to a particular request, Earnity must state so in writing.

15.    Except where otherwise specified, the Requests seek documents dated, created, or otherwise obtained on or between January 1, 2020 to the present.

## REQUESTS

1.    All documents and communications concerning Cred.

2.    All documents and communications with Daniel Schatt, Joseph Podulka, or Daniel Goldstein.

3.    Documents sufficient to show all persons hired by Earnity as employees, contractors, subcontractors, directors, officers, or in any other capacity.

10

4.      All documents, communications and contracts between Earnity and any individual or entity that is currently or formerly associated with Cred, including former directors, officers, employees, contractors, or subcontractors of Cred.

5.      All documents, communications, and records concerning any current or former CredEarn customers or investors.

6.      All documents, communications, and records concerning any current or former CredBorrow customers or investors.

7.      All customer lists, investor lists, or contact lists.

8.      All documents, communications, and records concerning any actual or potential Cred investor.

9.      All Board Materials concerning Cred.

10.     All documents and communications concerning the borrowing of cryptocurrency, lending of cryptocurrency, cryptocurrency hedge funds or asset managers, cryptocurrency trading, cryptocurrency hedging, decentralized finance, debt financing, and micro-loans.

11.     All documents and communications concerning access to Cred's shared drives, Google Suite, GitHub, or any other information concerning Cred.

12.     All documents, communications, and records concerning source code, including a complete copy of Earnity's source code.

13.     All source code and smart contracts, including, but not limited to source code and smart contracts concerning Earnity's cryptocurrency-related business.

14.     All source code stored on any VCS, including, but not limited to, Github, Gitlab, and Bitbucket.

11

15.     All documents, communications, and records concerning smart contracts, including, but not limited to documents concerning the administrator to all smart contracts and the private keys to the smart contracts.  This request includes a copy of all smart contracts and access to the private keys.

16.     All documents and communications concerning James Alexander, Scott Freeman, J.P. Thierot, Daniyal Inamullah, Daniel Wheeler, Lu Hua, Sally Zhang, Adnan Khakoo, Christopher Spadafora, Meghan Gardler, or Deleon De Metz.

17.     All documents and communications concerning MoKredit, JST, Uphold, Blockchain Advocacy Coalition, Universal Protocol Alliance, DBS Consulting, or Banxa.

18.     All documents and communications concerning Earnity's business plan, marketing strategy, or promotional materials, including presentations and slide decks.

19.     All documents and communications concerning Earnity's Board Materials, internal policies, procedures, and terms of conditions, including drafts thereof.

20.     All documents and communications concerning cryptocurrency and blockchain.

21.     All documents and communications concerning actual, potential, solicited, or unsolicited investments by any third party in Earnity, including all documents provided to potential investors.

22.     Documents sufficient to show Earnity's capital structure and ownership structure, including the identity and ownership structure of each individual or entity listed thereon.

23.     All insurance policies held by Earnity.

24.     All audited or unaudited financial statements, trial balances, statements of assets and liabilities, or other documents indicating Earnity's financial condition.

## SCHEDULE B

PLEASE TAKE NOTICE that pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Rules 45 and 30(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9016 of the Bankruptcy Rules, Rule 2004-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware, the Cred Inc. Liquidation Trust (the "Trust") established in the chapter 11 cases of Cred, Inc., *et al.* (collectively, "Cred")[2] pursuant to section 1129 of title 11 of the United States Code §§ 101 *et seq.* (the "Bankruptcy Code") in the jointly administered chapter 11 cases styled as *In re Cred, Inc., et al.,* No. 20-12836 (JTD) (Bankr. D. Del.) intends to conduct a Rule 2004 Examination of Earnity's designated corporate representative.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Earnity shall designate and produce at the deposition those of its officers, directors, managing agents, or other persons who consent to testify on Earnity's behalf, about those matters set forth in this notice under the heading "Topic of Examination" set forth in **Exhibit A** to **Schedule B**, based on the information known or reasonably available to Earnity. This deposition will examine what relation Earnity bears to Cred, and whether any assets or intellectual property belonging to Cred have been misappropriated for the benefit of Earnity.  Earnity shall designate to the Trust by September 1, 2021 whom Earnity is identifying as Earnity's corporate representative for purposes of the deposition.

---

[2] "Cred" means Cred Inc., Cred (US) LLC, Cred Capital, Inc., Cred Merchant Solutions LLC, and Cred (Puerto Rico) LLC, and each of their predecessors, successors, subsidiaries, partners, principals, officers, directors, attorneys, managers, professionals, and other advisors, agents, employees, representatives, and persons acting or purporting to act on their behalf.

## <u>EXHIBIT A</u>

## TOPICS OF EXAMINATION

1.      The relationship between Earnity and Cred.

2.      Any former Cred employees, executives, contractors, directors, or other persons that have been hired by Earnity.

3.      Any intellectual property in Earnity's possession that was derived, obtained, or misappropriated from Cred.

4.      The nature of Earnity's business, capital structure, equity holders, investors, and employees.

5.      All issues set forth in the requests for documents and information in **Schedule A**.