# Exhibit E

Références de dépôt

**B198395** - L150125279 - déposé le 15/07/2015

Helpdesk RCSL : (+352) 26 428-1 / helpdesk@rcsl.lu

Document émis électroniquement

Registre de Commerce
et des Sociétés

**Luxembourg**   R   C   S

# Immatriculation

## Société anonyme

**Données à inscrire**

| | | |
|---|---|---|
| ☑ Dénomination ou raison sociale | page 2 | ☑ Durée — page 3 |
| ☐ Enseigne(s) commerciale(s) | | ☑ Exercice social — page 3 |
| ☑ Forme juridique | page 2 | ☑ Administrateur(s) / Gérant(s) — page 4 |
| ☑ Siège social | page 2 | ☐ Délégué(s) à la gestion journalière |
| ☑ Objet social | page 2 | ☐ Personne(s) chargée(s) du contrôle des comptes |
| ☑ Capital social / Fonds social | page 2 | ☐ Fusion / Scission |
| ☑ Date de constitution | page 2 | ☐ Liquidation volontaire |

## Dénomination ou raison sociale

Dénomination ou raison sociale

Aequitas Income Opportunities (Luxembourg) SA

Le cas échéant, abréviation utilisée

## Forme juridique

Forme juridique

Société anonyme

Mention supplémentaire (le cas échéant)

## Siège social

Numéro          Rue
19              rue de Bitbourg

Code postal     Localité
1273            Luxembourg

## Objet social

Objet social (Indication)

3.1 La Société a pour objet exclusif de conclure une ou plusieurs opérations de titrisation conformément à la Loi sur la Titrisation et la Société pourra, dans ce contexte, assumer les risques, existants ou futurs, liés à la possession de biens meubles ou immeubles, corporels ou incorporels, de même que les risques résultant d'engagements assumés par des tiers ou inhérents à tout ou partie des activités réalisées par des tiers, dans une ou plusieurs opérations ou de façon régulière. La Société pourra assumer ces risques par l'acquisition de biens, l'octroi de garanties ou en s'engageant par tout autre moyen. Elle pourra aussi, dans la mesure prévue par la loi et les présents statuts, transférer ou disposer des titres et autres biens qu'elle détient, qu'ils soient présents ou futurs, dans une ou plusieurs opérations ou de façon régulière. La Société ne pourra pas émettre de valeurs mobilières en continu et au public.
3.2 La Société pourra, dans ce même contexte, acquérir, disposer et investir dans des prêts, valeurs mobilières, titres, actifs, obligations, billets à ordre, avances, actions, bons de souscriptions et autres valeurs mobilières. La Société pourra accessoirement, dans les limites de la Loi sur la Titrisation, octroyer en faveur de ses créanciers uniquement des gages et d'autres garanties et sûretés, de quelque nature que ce soit, à toute entité luxembourgeoise

☑ Objet social incomplet

## Capital social / Fonds social

Type
Fixe

Montant
45 000

Devise
USD (Dollar des Etats-Unis)

Etat de libération
Total

Pourcentage, le cas échéant

## Date de constitution

Date de constitution
06/07/2015

Document émis électroniquement

## Durée

Durée
Illimitée

Date de fin

## Exercice social

### Premier exercice ou exercice raccourci

Du
06/07/2015

Au
31/12/2015

### Exercice social

Du
01/01

Au
31/12

**Document emis electroniquement**

## Administrateur(s) / Gérant(s)

Régime de signature statutaire (indication)

Vis-à-vis des tiers, la Société sera valablement engagée en toute circonstance par les signatures conjointes d'un Administrateur A quelconque et d'un Administrateur B quelconque ou par la signature de l'administrateur unique, ou par les signatures conjointes ou la seule signature de toute(s) personne(s) à laquelle/auxquelles pareil pouvoir de signature aura été délégué par le conseil d'administration ou l'administrateur unique. Dans les limites de la gestion journalière, la Société sera valablement engagée vis-à-vis des tiers par la signature de toute(s) personne(s) à laquelle/auxquelles pareil pouvoir quant à la gestion journalière de la Société aura été délégué agissant seule ou conjointement conformément aux règles d'une telle délégation.

1 | Nouvel administrateur / gérant :

MacRitchie Andrew N.                                   page 5

2 | Nouvel administrateur / gérant :

Montes Elvin                                          page 6

3 | Nouvel administrateur / gérant :

Antoine Laetitia                                      page 7

**Document emis électroniquement**

## 1 | Nouvel administrateur / gérant :

### MacRitchie Andrew N.

Type de personne
Personne physique

## Personne physique

Nom
MacRitchie

Prénom(s)
Andrew N.

Date de naissance
13/09/1963

Lieu de naissance
Bellshill

Pays de naissance
Royaume-Uni

### Adresse privée ou professionnelle

Numéro
5300

Rue
Meadows Rd

Bâtiment

Etage

Code postal
OR 97035

Localité
Lake Oswego

Pays
Etats Unis d'Amérique

### Type de mandat

Organe social
Conseil d'administration

Fonction
Administrateur A

Pouvoir de signature (indication)

### Durée du mandat

Date de nomination
06/07/2015

Durée du mandat
Déterminée

Date d'expiration du mandat
JJ/MM/AAAA

ou

jusqu'à l'assemblée générale qui se tiendra en l'année
2020

Document émis électroniquement

**2** | **Nouvel administrateur / gérant :**

### Montes Elvin

Type de personne
Personne physique

## Personne physique

Nom
Montes

Prénom(s)
Elvin

Date de naissance          Lieu de naissance
12/04/1982                 Jiabong W Samar

Pays de naissance
Philippines

### Adresse privée ou professionnelle

Numéro          Rue
19              rue de Bitbourg

Bâtiment                                    Etage

Code postal     Localité
1273            Luxembourg

Pays
Luxembourg

### Type de mandat

Organe social
Conseil d'administration

Fonction
Administrateur B

Pouvoir de signature (indication)

### Durée du mandat

Date de nomination          Durée du mandat
06/07/2015                  Déterminée

Date d'expiration du mandat              jusqu'à l'assemblée générale qui se tiendra en l'année
JJ/MM/AAAA                  ou           2020

Document émis électroniquement

## 3 | Nouvel administrateur / gérant :

### Antoine Laetitia

Type de personne
Personne physique

## Personne physique

Nom
Antoine

Prénom(s)
Laetitia

Date de naissance
30/03/1973

Lieu de naissance
Woippy

Pays de naissance
France

### Adresse privée ou professionnelle

Numéro
19

Rue
rue de Bitbourg

Bâtiment

Etage

Code postal
1273

Localité
Luxembourg

Pays
Luxembourg

### Type de mandat

Organe social
Conseil d'administration

Fonction
Administrateur B

Pouvoir de signature (indication)

### Durée du mandat

Date de nomination
06/07/2015

Durée du mandat
Déterminée

Date d'expiration du mandat
JJ/MM/AAAA

ou

Jusqu'à l'assemblée générale qui se tiendra en l'année
2020

Registre de Commerce et des Sociétés
**B198395** - L150125279
déposé le 15/07/2015

**Aequitas Income Opportunities (Luxembourg) SA**
**Société anonyme de titrisation**
<u>Luxembourg</u>
CONSTITUTION DE SOCIÉTÉ
du 6 juillet 2015                    Numéro 829/2015

In the year two thousand and fifteen, on the sixth day of the month of July.

Before the undersigned Maître MARC LOESCH, notary residing in Luxembourg, Grand-Duchy of Luxembourg.

**There appeared:**

**Stichting Sentry,** a foundation organized under the laws of the Netherlands, having its registered office at Prins Hendridklaan 26, NI-1075 BD Amsterdam, The Netherlands and registered with the Dutch Chamber of Commerce under number 63629305

duly represented by Mrs Saniyé Tipirdamaz, lawyer, residing in Luxembourg,

by virtue of a proxy under private seal given in Amsterdam on 2 July 2015.

The proxy, after having been signed *ne varietur* by the proxyholder and the undersigned notary, shall remain attached to this deed in order to be registered therewith.

Such appearing party, represented as stated above, requested the notary to document the deed of incorporation of a *société anonyme*, which it wishes to incorporate and the articles of incorporation of which shall be as follows:

A. NAME – DURATION – PURPOSE – REGISTERED OFFICE
Article 1   Name

There is hereby established among the subscribers and all those who may become owners of the shares hereafter issued, a company in the form of a

Document émis électroniquement

*société anonyme*, under the name of "**Aequitas Income Opportunities (Luxembourg) SA**" (the "**Company**") which shall have the status of a securitisation company (*société de titrisation*) within the meaning of the law of 22 March 2004 on securitisation, as amended (the "**Securitisation Law**") and shall be subject to and governed by the Securitisation Law, the law of 10th August 1915 on commercial companies, as amended (the "**Companies Law**") as well as by the present articles of association.

### Article 2   Duration

The Company is incorporated for an unlimited duration. It may be dissolved at any time and without cause by a resolution of the general meeting of shareholders, adopted in the manner required for an amendment of these articles of association.

### Article 3   Purpose

3.1   The exclusive purpose of the Company is to enter into one or more securitisation transactions within the meaning of the Securitisation Law and the Company may, in this context, assume risks, existing or future, relating to the holding of assets, whether movable or immovable, tangible or intangible, as well as risks resulting from the obligations assumed by third parties or relating to all or part of the activities of third parties, in one or more transactions or on a continuous basis. The Company may assume those risks by acquiring the assets, guaranteeing the obligations or by committing itself in any other way. It may also, to the extent permitted by law and these articles of association, transfer or dispose of the claims and other assets it holds, whether existing or future, in one or more transactions or on a continuous basis. The Company will not be able to issue securities to the public on a continuous basis.

3.2   The Company may, in this same context, acquire, dispose and invest in loans, stocks, bonds, debentures, obligations, notes, advances, shares, warrants and other securities. The Company may, within the limits of the Securitisation Law, and in favor of its creditors only, grant pledges, other guarantees or security interests of any kind to Luxembourg or foreign entities and enter into securities lending activity on an ancillary basis.

3.3   The Company may open one or several compartments in accordance with Article 7 of these articles of association.

2

Document émis électroniquement

3.4    The Company may perform all transactions which are necessary or useful to fulfil and develop its purpose, as well as, all operations connected directly or indirectly to facilitating the accomplishment of its purpose in all areas described above. The assets of the Company may only be assigned in accordance with the terms of the securities issued to finance the acquisition of such assets.

### Article 4    Registered office

4.1    The Company's registered office is established in the city of Luxembourg, Grand Duchy of Luxembourg.

4.2    Within the same municipality, the Company's registered office may be transferred by a resolution of the board of directors.

4.3    It may be transferred to any other municipality in the Grand Duchy of Luxembourg by means of a resolution of the general meeting of shareholders, adopted in the manner required for an amendment of these articles of association.

4.4    Branches or other offices may be established either in the Grand Duchy of Luxembourg or abroad by a resolution of the board of directors.

### B.    SHARE CAPITAL – SHARES – REGISTER OF SHARES – OWNERSHIP AND TRANSFER OF SHARES

### Article 5    Share capital

#### Issued share capital

5.1.    The Company's issued share capital is set at forty-five thousand dollar (USD 45,000) consisting of forty-five thousand (45,000) shares having a nominal value of one dollar (USD 1) each.

5.2    Under the terms and conditions provided by law, the Company's issued share capital may be increased by a resolution of the general meeting of shareholders, adopted in the manner required for an amendment of these articles of association.

5.3    Any new shares to be paid for in cash will be offered by preference to the existing shareholder(s). In case of plurality of shareholders, such shares will be offered to the shareholders in proportion to the number of shares held by them in the Company's share capital. The board of directors shall determine the period of time during which such preferential subscription right may be

3

Document emis électroniquement

exercised. This period may not be less than thirty (30) days from the date of dispatch of a registered letter sent to the shareholder(s), announcing the opening of the subscription. However, subject to the terms and conditions provided by law, the general meeting of shareholders, called (i) either to resolve upon an increase of the Company's issued share capital (ii) or upon the authorisation to be granted to the board of directors to increase the Company's issued share capital, may limit or suppress the preferential subscription right of the existing shareholder(s) or authorise the board of directors to do so. Such resolution shall be adopted in the manner required for an amendment of these articles of association.

5.4    Under the terms and conditions provided by law, the Company's issued share capital may be reduced by a resolution of the general meeting of shareholders, adopted in the manner required for an amendment of these articles of association.

### Article 6   Shares

6.1    The Company's share capital is divided into shares, each of them having the same par value.

6.2    The Company may have one or several shareholders.

6.3    The death, legal incapacity, dissolution, bankruptcy or any other similar event regarding the sole shareholder, as the case may be, or any other shareholder shall not cause the Company's dissolution.

6.4    The Company may, to the extent and under the terms and conditions provided by law, repurchase or redeem its own shares.

6.5    The Company's shares are in registered form and may not be converted into shares in bearer form.

6.6    Fractional shares shall have the same rights on a fractional basis as whole shares, provided that shares shall only be able to vote if the number of fractional shares may be aggregated into one or more whole shares. If there are fractions that do not aggregate into a whole share, such fractions shall not be able to vote.

### Article 7   Compartments

7.1    The board of directors of the Company may create one or more compartments within the Company (the "**Compartment**" or the

"**Compartments**"). Each Compartment shall, unless otherwise provided for in the resolution creating such Compartment, contain a distinct part of the Company's assets and liabilities. The resolution creating one or more Compartments within the Company, as well as any subsequent amendments thereto, shall be binding as of the date of such resolution, including against any third party.

7.2   As between investors and creditors, each Compartment of the Company shall be treated as a separate entity. Rights of investors and creditors of the Company that (i) have, when coming into existence, been designated as relating to a Compartment or (ii) have arisen in connection with the creation, the operation or the liquidation of a Compartment are, except if otherwise provided for in the resolution of the board of directors having created the relevant Compartment, strictly limited to the assets of that Compartment and which shall be exclusively available to satisfy such investors and creditors. Creditors and investors of the Company whose rights are not related to a specific Compartment of the Company shall have no rights to the assets of any such Compartment.

7.3   Unless otherwise provided for in the resolution having created such Compartment, no resolution may be taken to amend the resolution having created such Compartment or to take any other decision directly affecting the rights of the investors or creditors whose rights relate to such Compartment, without the prior approval of all investors or creditors whose rights relate to this Compartment. Any decision taken in breach of this provision shall be void.

7.4   Each Compartment of the Company may be separately liquidated without such liquidation resulting in the liquidation of another Compartment or of the Company itself.

7.5   The Company may issue securities whose value or yield is linked to specific Compartments, assets or risks, or whose repayment is subject to the repayment of other instruments, certain claims or certain classes of shares.

7.6   Fees, costs, expenses and other obligations of the Company incurred on behalf of the Company will be general duties of the Company and will not be paid through the assets of a particular Compartment. In the event the fees, costs, expenses and other obligations mentioned above cannot be

5

Document emis électroniquement

funded otherwise, they shall be payable equally by existing Compartments in the Company during the period to which the fees relate (the "**Billing Period**"), except that for Compartments which have been existing for less time than the entire Billing Period, the portion of overhead costs charged to a Compartment shall be reduced pro rata temporis and the difference between the total overhead charged to a Compartment and the reduced pro rata temporis amount will be equally allocated to the other Compartments that have existed for the entire Billing Period.

### Article 8    Register of shares

8.1    A register of shares will be kept at the Company's registered office, where it will be available for inspection by any shareholder. This register of shares will in particular contain the name of each shareholder, his/her/its residence or registered or principal office, the number of shares held by such shareholder, the indication of the payments made on the shares, any transfer of shares and the dates thereof pursuant to article 9.4 of these articles of association as well as any security rights granted on shares.

8.2    Each shareholder will notify the Company by registered letter his/her/its address and any change thereof. The Company may rely on the last address of a shareholder received by it.

### Article 9    Ownership and transfer of shares

9.1    Proof of ownership of shares may be established through the recording of a shareholder in the register of shares. Certificates of these recordings will be issued and signed by the chairman of the board of directors, by any two of its members or by the sole director, as the case may be, upon request and at the expense of the relevant shareholder.

9.2    The Company will recognise only one holder per share. In case a share is owned by several persons, they must designate a single person to be considered as the sole owner of such share in relation to the Company. The Company is entitled to suspend the exercise of all rights attached to a share held by several owners until one owner has been designated.

9.3    The shares are freely transferable, subject to the terms and conditions of the law.

6

**Document émis électroniquement**

9.4    Any transfer of shares will become effective towards the Company and third parties either through the recording of a declaration of transfer into the register of shares, signed and dated by the transferor and the transferee or their representatives, or upon notification of the transfer to or upon the acceptance of the transfer by the Company, pursuant to which any director may record such transfer in the register of shares.

9.5    The Company, through any of its directors, may also accept and enter into the register of shares any transfer referred to in any correspondence or in any other document which establishes the transferor's and the transferee's consent.

**C.**        **GENERAL MEETING OF SHAREHOLDERS**

**Article 10  Powers of the general meeting of shareholders**

10.1  The shareholders exercise their collective rights in the general meeting of shareholders, which constitutes one of the Company's corporate bodies.

10.2  If the Company has only one shareholder, such shareholder shall exercise the powers of the general meeting of shareholders. In such case and to the extent applicable and where the term "sole shareholder" is not expressly mentioned in these articles of association, a reference to the "general meeting of shareholders" used in these articles of association is to be construed as a reference to the "sole shareholder".

10.3  The general meeting of shareholders is vested with the powers expressly reserved to it by law and by these articles of association.

**Article 11  Convening general meetings of shareholders**

11.1  The general meeting of shareholders of the Company may at any time be convened by the board of directors to be held at such place and on such date as specified in the notice of such meeting.

11.2  The general meeting of shareholders must be convened by the board of directors upon request in writing indicating the agenda, addressed to the board of directors by one or several shareholders representing in the aggregate at least ten per cent (10%) of the Company's issued share capital. In this case, the general meeting of shareholders must be convened by the board of directors or by the statutory auditor(s) in order to be held within a period of

7

Document emis electroniquement

one (1) month from receipt of such request at such place and on such date as specified in the convening notice of the meeting.

11.3  An annual general meeting of shareholders must be held in the municipality where the Company's registered office is located or at such other place as may be specified in the notice of such meeting, on the first Friday of June at 2 p.m. CET. If such day is a legal holiday, the annual general meeting of shareholders must be held on the previous following business day. The board of directors must convene the annual general meeting of shareholders within a period of six (6) months from closing the Company's accounts.

11.4  The convening notice for any general meeting of shareholders must contain the agenda of the meeting, the place, date and time of the meeting, and such notice is to be sent to each shareholder by registered letter at least eight (8) days prior to the date scheduled for the meeting.

11.5  One or several shareholders, representing in the aggregate at least ten per cent (10%) of the Company's issued share capital, may request the adjunction of one or several items to the agenda of any general meeting of shareholders. Such request must be sent to the Company's registered office by registered letter at least five (5) days prior to the date scheduled for the meeting.

11.6  If all the shareholders are present or represented at a general meeting of shareholders and if they state that they have been informed of the agenda of the meeting, the general meeting of shareholders may be held without prior notice.

**Article 12  Conduct of general meetings of shareholders**

12.1  A board of the meeting shall be formed at any general meeting of shareholders, composed of a chairman, a secretary and a scrutineer, each of whom shall be appointed by the general meeting of shareholders and who need neither be shareholders, nor members of the board of directors. The board of the meeting shall especially ensure that the meeting is held in accordance with applicable rules and, in particular, in compliance with the rules in relation to convening, majority requirements, vote tallying and representation of shareholders.

Document emis electroniquement

12.2 An attendance list must be kept at any general meeting of shareholders.

12.3 Quorum

No quorum shall be required for the general meeting of shareholders to validly act and deliberate, unless otherwise required by law or by these articles of association.

12.4 Vote

12.4.1     Each share entitles to one (1) vote, subject to the provisions of the law.

12.4.2   Unless otherwise required by law or by these articles of association, resolutions at a general meeting of shareholders duly convened will be adopted at a simple majority of the votes validly cast, regardless of the portion of capital represented. Abstention and nil votes will not be taken into account.

12.5 A shareholder may act at any general meeting of shareholders by appointing another person, shareholder or not, as his/her/its proxy in writing by a signed document transmitted by mail, facsimile, electronic mail or by any other means of communication, a copy of such appointment being sufficient proof thereof. One person may represent several or even all shareholders.

12.6 Any shareholder who participates in a general meeting of shareholders by conference-call, video-conference or by any other means of communication which allow such shareholder's identification and which allow that all the persons taking part in the meeting hear one another on a continuous basis and may effectively participate in the meeting, is deemed to be present for the computation of quorum and majority.

12.7 Each shareholder may vote at a general meeting of shareholders through a signed voting form sent by mail, facsimile, electronic mail or by any other means of communication to the Company's registered office or to the address specified in the convening notice. The shareholders may only use voting forms provided by the Company which contain at least the place, date and time of the meeting, the agenda of the meeting, the proposals submitted to the resolution of the meeting as well as for each proposal three boxes allowing the shareholder to vote in favour of or against the proposed resolution or to

9

Document émis électroniquement

abstain from voting thereon by marking the appropriate box with a cross. The Company will only take into account voting forms received prior to the general meeting of shareholders which they relate to.

12.8  The board of directors may determine all other conditions that must be fulfilled by the shareholders for them to take part in any general meeting of shareholders.

### Article 13  Adjourning general meetings of shareholders

Subject to the terms and conditions of the law, the board of directors may adjourn any general meeting of shareholders already commenced, including any general meeting convened in order to resolve on an amendment of the articles of association, to four (4) weeks. The board of directors must adjourn any general meeting of shareholders already commenced if so required by one or several shareholders representing in the aggregate at least twenty per cent (20%) of the Company's issued share capital. By such an adjournment of a general meeting of shareholders already commenced, any resolution already adopted in such meeting will be cancelled.

### Article 14  Minutes of general meetings of shareholders

14.1  The board of any general meeting of shareholders shall draw minutes of the meeting which shall be signed by the members of the board of the meeting as well as by any shareholder who requests to do so.

14.2  The sole shareholder, as the case may be, shall also draw and sign minutes of his/her/its resolutions.

14.3  Any copy and excerpt of such original minutes to be produced in judicial proceedings or to be delivered to any third party, shall be certified conforming to the original by the notary having had custody of the original deed, in case the meeting has been recorded in a notarial deed, or shall be signed by the chairman of the board of directors, by any two of its members or by the sole director, as the case may be.

### Article 15  Amendment of the articles of association

Subject to the terms and conditions provided by law, these articles of association may be amended by a resolution of the general meeting of shareholders, adopted with a majority of two-thirds of the votes validly cast at a meeting where at least half of the Company's issued share capital is present

10

Document emis electroniquement

or represented on first call. On second call, the resolution will be passed with a majority of two-thirds of the votes validly cast at the meeting, regardless of the portion of capital present or represented at the meeting. Abstention and nil votes will not be taken into account.

### D.        MANAGEMENT

### Article 16  Powers of the board of directors

16.1  The Company shall be managed by a board of directors consisting of three members at least, who need not be shareholders of the Company. In the case of several directors, they shall be named "Director A" or "Director B".

16.2  However, if the Company is incorporated by a single shareholder or if it is noted at a general meeting of shareholders that the Company has only one shareholder, the Company may be managed by a sole director until the general meeting of shareholders following the Company's awareness that several shareholders exist. If the Company has a sole director and to the extent applicable and where the term "sole director" is not expressly mentioned in these articles of association, a reference to the "board of directors" used in these articles of association is to be construed as a reference to the "sole director".

16.3  The board of directors is vested with the broadest powers to perform all acts of administration and disposition within the Company's purpose and the provisions of the Securitisation Law and the Companies Law. All powers not expressly reserved by the Companies Law or by these articles of association to the general meeting of shareholders, fall within the competence of the board of directors.

16.4  The board of directors may, unanimously, pass resolutions by circular means when expressing its approval in writing, by a signed document transmitted by mail, facsimile, electronic mail or by any other similar means of communication. The entirety will form the minutes giving evidence of the passing of the resolution.

16.5  In accordance with article 60 of the Companies Law, the Company's daily management and the Company's representation in connection with such daily management may be delegated to one or several members of the board of directors or to any other person, shareholder or not, acting alone or

11

Document émis électroniquement

jointly. Their appointment, revocation and powers shall be determined by a resolution of the board of directors. Such persons may be appointed in relation to one or more specific Compartments of the Company.

16.6  The Company may enter with any Luxembourg or foreign entity or individuals into management or advisory agreements according to which such entity or individuals or any other entity or individuals previously approved by it will supply the Company with recommendations and advice with respect to the conduct of the Company's business and the accomplishment of its purpose, and according to which such company may, on a day-to-day basis and subject to the overall control and ultimate responsibility of the board of directors of the Company, manage the Company's assets. The management or advisory agreements shall contain the rules governing the amendment or expiration of such agreements which are otherwise concluded for an unlimited period. Such management or advisory agreements may be entered into in relation to one or more specific Compartments of the Company.

16.7  The Company may also grant special powers by notarised proxy or private instrument to any person acting alone or jointly with others as agent of the Company.

### Article 17   Election of the chairman and the secretary of the Board of Directors

17.1    The board of directors must choose from among its members a chairman of the board of directors. It may also choose a secretary, who needs neither be a shareholder, nor a member of the board of directors.

### Article 18  Election and removal of directors and term of the office

18.1  Directors shall be elected by the general meeting of shareholders, which shall determine their remuneration and term of the office.

18.2  If a legal entity is elected director of the Company, such legal entity must designate an individual as permanent representative who shall execute this role in the name and for the account of the legal entity. The relevant legal entity may only remove its permanent representative if it appoints a successor at the same time. An individual may only be a permanent representative of one (1) director and may not be a director at the same time.

12

Document emis electroniquement

18.3  Any director may be removed at any time, without notice and without cause by the general meeting of shareholders.

18.4  The term of the office of a director may not exceed six (6) years and any director shall hold office until its/his/her successor is elected. Any director may also be re-elected for successive terms.

### Article 19  Vacancy in the office of a director

19.1  If a vacancy in the office of a member of the board of directors because of death, legal incapacity, bankruptcy, retirement or otherwise occurs, such vacancy may be filled, on a temporary basis, by the remaining board members until the next general meeting of shareholders, which shall resolve on a permanent appointment, as deemed suitable.

19.2  If, in case of plurality of shareholders, the total number of members of the board of directors falls below three (3) or below such higher minimum set by these articles of association, as the case may be, such vacancy must be filled without undue delay either by the general meeting of shareholders or, on a temporary basis, by the remaining board members until the next general meeting of shareholders, which shall resolve on the permanent appointment.

19.3  In case the vacancy occurs in the office of the Company's sole director, such vacancy must be filled without undue delay by the general meeting of shareholders.

### Article 20  Convening meetings of the board of directors

20.1  The board of directors shall meet upon call by the chairman or by any two (2) of its members at the place indicated in the notice of the meeting as described in the next paragraph.

20.2  Written notice of any meeting of the board of directors must be given to the directors twenty-four (24) hours at least in advance of the date scheduled for the meeting by mail, facsimile, electronic mail or any other means of communication, except in case of emergency, in which case the nature and the reasons of such emergency must be indicated in the notice. Such convening notice is not necessary in case of assent of each director in writing by mail, facsimile, electronic mail or by any other means of communication, a copy of such signed document being sufficient proof thereof. Also, a convening notice is not required for a board meeting to be held at a time and

Document emis electroniquement

location determined in a prior resolution adopted by the board of directors. No convening notice shall furthermore be required in case all members of the board of directors are present or represented at a meeting of the board of directors or in the case of resolutions in writing pursuant to these articles of association.

**Article 21  Conduct of meetings of the board of directors**

21.1  The chairman of the board of directors shall preside at all meeting of the board of directors. In his/her/its absence, the board of directors may appoint another director as chairman *pro tempore.*

21.2    Quorum

The board of directors can act and deliberate validly only if at least half of its members are present or represented at a meeting of the board of directors and only if at least one Director A and one Director B are present or represented at a meeting of the board of directors.

21.3    Vote

Resolutions are adopted with the approval of a majority of the members present or represented at a meeting of the board of directors. The chairman shall not have a casting vote.

21.4  Any director may act at any meeting of the board of directors by appointing any other director as his/her/its proxy in writing by mail, facsimile, electronic mail or by any other means of communication, a copy of the appointment being sufficient proof thereof. Any director may represent one or several of his/her/its colleagues.

21.5  Any director who participates in a meeting of the board of directors by conference-call, video-conference or by any other means of communication which allow such director's identification and which allow that all the persons taking part in the meeting hear one another on a continuous basis and may effectively participate in the meeting, is deemed to be present for the computation of quorum and majority. A meeting of the board of directors held through such means of communication is deemed to be held at the Company's registered office.

21.6  The board of directors may unanimously pass resolutions in writing which shall have the same effect as resolutions passed at a meeting of the board

14

Document emis electroniquement

of directors duly convened and held. Such resolutions in writing are passed when dated and signed by all directors on a single document or on multiple counterparts, a copy of a signature sent by mail, facsimile, e-mail or any other means of communication being sufficient proof thereof. The single document showing all the signatures or the entirety of signed counterparts, as the case may be, will form the instrument giving evidence of the passing of the resolutions, and the date of such resolutions shall be the date of the last signature.

21.7    Save as otherwise provided by law, any director who has, directly or indirectly, a proprietary interest in a transaction submitted to the approval of the board of directors which conflicts with the Company's interest, must inform the board of directors of such conflict of interest and must have his/her/its declaration recorded in the minutes of the board meeting. The relevant director may not take part in the discussions on and may not vote on the relevant transaction. Any such conflict of interest must be reported to the next general meeting of shareholders prior to taking any resolution on any other item. Where the Company has a sole director and the sole director has, directly or indirectly, a proprietary interest in a transaction entered into between the sole director and the Company, which conflicts with the Company's interest, such conflicting interest must be disclosed in the minutes recording the relevant transaction.

### Article 22  Minutes of meetings of the board of directors

22.1    The secretary or, if no secretary has been appointed, the chairman shall draw minutes of any meeting of the board of directors, which shall be signed by the chairman and by the secretary, as the case may be.

22.2    The sole director, as the case may be, shall also draw and sign minutes of his/her/its resolutions.

22.3    Any copy and any excerpt of such original minutes to be produced in judicial proceedings or to be delivered to any third party shall be signed by the chairman of the board of directors, by any two of its members or by the sole director, as the case may be.

### Article 23  Dealings with third parties

**Document emis électroniquement**

The Company will be bound towards third parties in all circumstances by the joint signatures of any Director A together with any Director B or by the signature of the sole director or by the joint signatures or by the sole signature of any person(s) to whom such signatory power has been granted by the board of directors or by the sole director. Within the limits of the daily management, the Company will be bound towards third parties by the signature of any person(s) to whom such power in relation to the daily management of the Company has been delegated acting alone or jointly in accordance with the rules of such delegation.

### E.      SUPERVISION

### Article 24  Auditors

The accounting data related in the annual report of the Company shall be examined by an independent auditor (*réviseur d'entreprises*) appointed by the board of directors and remunerated by the Company. The independent auditor shall fulfil all duties provided for by the Companies Law and the Securitisation Law.

### F.      FINANCIAL   YEAR   –   PROFITS   –   INTERIM DIVIDENDS

### Article 25  Financial year

The Company's financial year shall begin on first January of each year and shall terminate on thirty-first December of the same year.

### Article 26  Profits

26.1  Each year on the thirty-first of December, the accounts are closed and the directors shall prepare an inventory including an indication of the value of the Company's assets and liabilities. Each shareholder may inspect such inventory and balance sheet at the Company's registered office.

26.2  On separate accounts (in addition of the accounts held by the Company in accordance with the Companies Law and normal accounting practice), the Company shall determine at the end of each financial year, the result of each Compartment which will be determined as follows:

The result of each Compartment will consist in the balance of all income, profits or other receipts paid or due in any other manner in relation to the

16

Document émis électroniquement

relevant Compartment (including capital gains, liquidation surplus and dividends distribution) and the amount of the expenses, losses, taxes and other transfers of funds incurred by the Company during this exercise and which can regularly and reasonably be attributed to the management, operation of such Compartment (including fees, costs, corporate income tax on capital gain and expenses relating to dividend distribution).

26.3  From the annual net profits of the Company, five per cent (5 %) shall be allocated to the legal reserve. This allocation shall cease to be mandatory as soon and as long as such reserve amounts to ten per cent (10%) of the subscribed capital of the Company, as stated in Article 5 (*Share Capital*) or as increased or reduced from time to time as provided in Article 5.

26.4  The remainder of the annual net profits shall be distributed as dividends to the shareholders in accordance with the Securitisation law. Distributions may be paid in such currency and at such time and place as the board of directors shall determine from time to time.

26.5  Interim dividends may be distributed in compliance with the terms and conditions provided for by the Companies Law.

26.6  The general meeting of shareholders may decide to distribute stock dividends in lieu of cash dividends upon such terms and conditions as prescribed by the general meeting.

### Art. 27      Interim dividends – Share premium

27.1  Under the terms and conditions provided by law, the board of directors may proceed to the payment of interim dividends.

27.2  The share premium, if any, may be freely distributed to the shareholder(s) by a resolution of the shareholder(s) or of the director(s), subject to any legal provisions regarding the inalienability of the share capital and of the legal reserve.

### G. LIQUIDATION

### Art. 28      Liquidation of Compartments

Without prejudice to the provisions contained in Article 7 (Compartments), each Compartment of the Company may be put into liquidation and its securities redeemed by a decision of the board of directors of the Company.

17

### Article 29  Liquidation

29.1  In the event of the Company's dissolution, the liquidation shall be carried out by one or several liquidators, individuals or legal entities, appointed by the general meeting of shareholders resolving on the Company's dissolution which shall determine the liquidators'/liquidator's powers and remuneration.

29.2  The surplus resulting from the realisation of the assets and the payment of the liabilities shall be distributed among the shareholders proportionally to the shares of the Company held by them.

### H.        GOVERNING LAW

### Article 30  Governing law

All matters not governed by these articles of association shall be determined in accordance with the Companies Law and the Securitisation Law.

### TRANSITIONAL PROVISIONS

1)  The Company's first financial year shall begin on the date of the Company's incorporation and shall end on 31 December 2015.

2)  The first annual general meeting of shareholders shall be held in 2016.

3)  Interim dividends may also be made during the Company's first financial year.

### SUBSCRIPTION AND PAYMENT

**Stichting Sentry,** aforementioned, represented as state above, declares to subscribe, all the forty-five thousand (45,000) shares representing the share capital of the Company.

All the shares are entirely paid-up in cash, so that the amount of forty-five thousand dollar (USD 45,000) is as of now available to the Company, as it has been justified to the undersigned notary.

### DECLARATION

The undersigned notary herewith declares having verified the existence of the conditions provided for in article 26 of the Companies Law, and expressly states that they have all been complied with.

### EXPENSES

The expenses, costs, remunerations or charges in any form whatsoever incurred by the Company or which shall be borne by the Company in

18

connection with its incorporation are estimated at two thousand euros (EUR 2,000.-).

## GENERAL MEETING OF SHAREHOLDERS

The incorporating shareholder, representing the Company's entire issued share capital, immediately passed the following resolutions:

1. The number of members of the board of directors is fixed at three (3)

2. The following persons are appointed as members of the board of directors of the Company:

- As Director A: Mr Andrew N. MacRitchie, born on 13 September 1963 in Bellshill (United Kingdom), having his professional address at 5300 Meadows Rd Suite 400, Lake Oswego, OR 97035, United States of America

- As Director B: Mr Elvin Montes, born on 12 April 1982 in Jiabong W Samar (Philippines), having his professional address at 19, rue de Bitbourg, L-1273 Luxembourg

- As Director B: Mrs Laetitia Antoine, born on 30 March 1973 in Woippy (France), having his professional address at 19, rue de Bitbourg, L-1273 Luxembourg

3. The term of the office of the members of the board of directors shall end on the date when the general meeting of shareholders/sole shareholder, as the case may be, shall resolve upon the approval of the Company's accounts of the financial year 2019 or at any time prior to such date as the general meeting of shareholders/sole shareholder, as the case may be, may determine.

4. The address of the Company's registered office is set at 19, rue de Bitbourg, L-1273 Luxembourg, Grand Duchy of Luxembourg.

The undersigned notary who understands and speaks English, states herewith that, on request of the proxyholder of the appearing party, this deed is worded in English followed by a French translation. On the request of the same appearing proxyholder and in case of divergences between the English and the French texts, the English version will be prevailing.

Whereof this notarial deed is drawn up in Luxembourg, at the office of the undersigned notary, on the day named at the beginning of this document.

The document having been read to the proxyholder of the appearing party, the said proxyholder signed together with the notary this original deed.

**Suit la traduction en français du texte qui précède**

L'an deux mille quinze, le sixième jour du mois de juillet.

Par-devant Maître MARC LOESCH, notaire de résidence à Luxembourg, Grand-Duché de Luxembourg.

*A comparu:*

**Stichting Sentry**, une fondation organisée sous le lois des Pay-Bas, ayant son siège social à Prins Hendriklaan 26, NL-1075 BD Amsterdam, Pays-bas, inscrite auprès de la *Dutch Chamber of Commerce* sous le numéro 63629305,

ici dûment représentée par Madame Saniyé Tipirdamaz, avocate, résidant à Luxembourg,

en vertu d'une procuration sous seing privé donnée à Amsterdam le 2 juillet 2015.

La procuration, signée *ne varietur* par le mandataire et le notaire soussigné, restera annexée au présent acte pour être soumise avec lui aux formalités de l'enregistrement.

La comparante, représentée comme indiqué ci-dessus, a requis le notaire soussigné de dresser l'acte d'une société anonyme qu'elle déclare constituer et dont les statuts seront comme suit:

### A.    NOM – DURÉE – OBJET – SIÈGE SOCIAL

**Article 1   Nom**

Il est formé entre les souscripteurs et tous ceux qui deviendront propriétaires des actions ci-après créées, une société anonyme sous la dénomination de " **Aequitas Income Opportunities (Luxembourg) SA** " (la « **Société** ») qui aura le statut d'une société de titrisation conformément à la loi du 22 mars 2004 sur la titrisation, telle qu'elle a été modifiée (la « **Loi sur la Titrisation** ») et sera régie par les dispositions de la Loi sur la Titrisation, la loi du 10 août 1915 concernant les sociétés commerciales, telle qu'elle a été modifiée (la « **Loi sur les Sociétés** ») ainsi que par les présents statuts.

**Article 2   Durée**

La Société est constituée pour une durée illimitée. Elle pourra être dissoute à tout moment et sans cause par une décision de l'assemblée générale

20

des actionnaires, prise aux conditions requises pour une modification des présents statuts.

### Article 3    Objet

3.1    La Société a pour objet exclusif de conclure une ou plusieurs opérations de titrisation conformément à la Loi sur la Titrisation et la Société pourra, dans ce contexte, assumer les risques, existants ou futurs, liés à la possession de biens meubles ou immeubles, corporels ou incorporels, de même que les risques résultant d'engagements assumés par des tiers ou inhérents à tout ou partie des activités réalisées par des tiers, dans une ou plusieurs opérations ou de façon régulière. La Société pourra assumer ces risques par l'acquisition de biens, l'octroi de garanties ou en s'engageant par tout autre moyen. Elle pourra aussi, dans la mesure prévue par la loi et les présents statuts, transférer ou disposer des titres et autres biens qu'elle détient, qu'ils soient présents ou futurs, dans une ou plusieurs opérations ou de façon régulière. La Société ne pourra pas émettre de valeurs mobilières en continu et au public.

3.2    La Société pourra, dans ce même contexte, acquérir, disposer et investir dans des prêts, valeurs mobilières, titres, actifs, obligations, billets à ordre, avances, actions, bons de souscriptions et autres valeurs mobilières. La Société pourra accessoirement, dans les limites de la Loi sur la Titrisation, octroyer en faveur de ses créanciers uniquement des gages et d'autres garanties et sûretés, de quelque nature que ce soit, à toute entité luxembourgeoise ou étrangère et conduire, de manière accessoire, des opérations de prêt de titres.

3.3    La Société pourra ouvrir un ou plusieurs compartiments conformément à l'article 7 des présents statuts.

3.4    La Société pourra exercer toutes transactions nécessaires ou utiles à l'accomplissement de son objet, ainsi que toutes opérations facilitant directement ou indirectement l'accomplissement de son objet dans tous les domaines décrits ci-dessus. Les actifs de la Société pourront seulement être transférés conformément aux termes des valeurs mobilières émises pour financer l'acquisition de ces actifs.

### Article 4    Siège social

21

**Document émis électroniquement**

4.1      Le siège social de la Société est établi en la ville de Luxembourg, Grand-Duché de Luxembourg.

4.2      Le siège social pourra être transféré à l'intérieur de la même commune par décision du conseil d'administration.

4.3      Il pourra être transféré dans toute autre commune du Grand-duché de Luxembourg par une décision de l'assemblée générale des actionnaires, prise aux conditions requises pour une modification des présents statuts.

4.4      Il peut être créé, par une décision du conseil d'administration, des succursales ou bureaux, tant dans le Grand-duché de Luxembourg qu'à l'étranger.

**B.      CAPITAL SOCIAL – ACTIONS – REGISTRE DES ACTIONS – PROPRIETE ET TRANSFERT DES ACTIONS**

**Article 5    Capital social**

<u>Capital social émis</u>

5.1      La Société a un capital social émis de quarante-cinq mille dollar (USD 45.000), représenté par quarante-cinq mille (45.000) actions ayant une valeur nominale de un dollar (USD 1) chacune.

5.2      Aux conditions et termes prévus par la loi le capital social émis de la Société pourra être augmenté par une décision de l'assemblée générale des actionnaires, prise aux conditions requises pour une modification des présents statuts.

5.3      Toutes nouvelles actions à payer en espèces seront offertes par préférence aux actionnaires/à l'actionnaire existant(s). Dans le cas où plusieurs actionnaires existent, ces actions seront offertes aux actionnaires en proportion du nombre d'actions détenues par eux dans le capital social de la Société. Le conseil d'administration devra déterminer le délai pendant lequel ce droit de souscription préférentiel pourra être exercé. Ce délai ne pourra pas être inférieur à trente (30) jours à compter de la date de l'envoi d'une lettre recommandée aux actionnaires annonçant l'ouverture de la souscription. Toutefois, aux conditions requises par la loi, l'assemblée générale des actionnaires appelée à délibérer (i) soit sur une augmentation du capital social

22

Document émis électroniquement

émis de la Société, (ii) soit sur l'autorisation à donner au conseil d'administration d'augmenter le capital social émis de la Société, peut limiter ou supprimer le droit de souscription préférentiel des actionnaires/de l'actionnaire existant(s) ou autoriser le conseil d'administration à le faire. Une telle décision devra être prise aux conditions requises pour une modification des présents statuts.

5.4    Aux conditions et termes prévus par la loi, le capital social émis de la Société pourra être diminué par une résolution de l'assemblée générale des actionnaires qui devra être prise aux conditions requises pour une modification des présents statuts.

**Article 6    Actions**

6.1    Le capital social de la Société est divisé en actions ayant chacune la même valeur nominale.

6.2    La Société peut avoir un ou plusieurs actionnaires.

6.3    Le décès, l'incapacité, la dissolution, la faillite ou tout autre évènement similaire concernant tout actionnaire ou l'actionnaire unique, le cas échéant, n'entraînera pas la dissolution de la Société.

6.4    La Société pourra, aux conditions et termes prévus par la loi, racheter ou retirer ses propres actions.

6.5    Les actions de la Société sont émises sous forme nominative et ne peuvent être converties en actions au porteur.

6.6    Les fractions d'actions auront les mêmes droits que les actions entières sur une base proportionnelle, étant entendu qu'une ou plusieurs actions ne pourront voter que si le nombre des fractions d'actions peut être réuni en une ou plusieurs actions. Dans le cas où des fractions d'actions ne pourront pas être réunies en une action entière, de telles fractions d'actions ne pourront pas voter.

**Article 7    Compartiments**

7.1    Le conseil d'administration de la Société pourra créer un ou plusieurs compartiments au sein de la Société (le « **Compartiment** » ou les « **Compartiments** »). Sauf disposition contraire dans les résolutions créant un tel Compartiment, chaque Compartiment comprendra une partie distincte de l'actif et du passif de la Société. Les résolutions créant un ou plusieurs

23

Compartiments au sein de la Société, ainsi que toutes modifications subséquentes, seront obligatoires vis à vis des tiers, à compter de la date des résolutions.

7.2     Entre les investisseurs et les créanciers, chaque Compartiment de la Société devra être traité comme une entité séparée. Les droits des investisseurs et créanciers de la Société (i) qui lorsqu'ils sont nés, ont été désignés comme rattachés à un Compartiment ou (ii) qui sont nés de la création, du fonctionnement ou de la mise en liquidation d'un Compartiment sont, sauf disposition contraire dans les résolutions du conseil d'administration créant un tel Compartiment, strictement limitées aux biens de ce Compartiment et seront exclusivement disponibles pour satisfaire ces investisseurs et créanciers. Les créanciers et investisseurs de la Société dont les droits ne sont pas spécifiquement rattachés à un Compartiment déterminé de la Société n'auront aucun droit aux biens d'un tel Compartiment.

7.3     Sauf disposition contraire dans les résolutions de la Société créant un tel Compartiment, aucune résolution ne pourra être prise afin de modifier les résolutions ayant créé un tel Compartiment ou afin de prendre toute autre décision affectant directement les droits des investisseurs ou créanciers dont les droits sont rattachés à un tel Compartiment sans le consentement préalable de l'ensemble des investisseurs ou créanciers dont les droits sont rattachés à ce Compartiment. Toute décision prise en violation de cette disposition sera nulle et non avenue.

7.4     Chaque Compartiment de la Société pourra être liquidé séparément sans que cette liquidation n'entraîne la liquidation d'un autre Compartiment ou de la Société elle-même.

7.5     La Société pourra émettre des valeurs mobilières dont la valeur ou l'intérêt est lié à des Compartiments, biens ou autres engagements spécifiques, ou dont le remboursement dépend du remboursement d'autres instruments, de certains droits ou de certaines catégories d'actions.

7.6     Les frais, coûts, dépenses et autres obligations de la Société encourus pour le compte de la Société elle-même seront des obligations générales de la Société et ne seront pas payés par le biais des avoirs d'un Compartiment en particulier. Au cas où les frais, coûts, dépenses et autres

24

obligations mentionnées ci-dessus ne pourront pas être financés autrement, ils seront payables à parts égales par les Compartiments en existence dans la Société au cours de la période à laquelle les frais se rapportent (la «**Période de Facturation**»), sauf que pour les Compartiments qui ont été en existence depuis moins longtemps que l'ensemble de la Période de Facturation, la partie des frais généraux imputables à de tels Compartiments sera réduite pro rata temporis et la différence entre la partie totale des frais généraux imputable à un Compartiment et le montant réduit pro rata temporis sera allouée à parts égales aux Compartiments existants pour l'ensemble de la Période de Facturation.

### Article 8   Registre des actions

8.1     Un registre des actions sera tenu au siège social de la Société et pourra y être consulté par tout actionnaire de la Société. Ce registre contiendra en particulier le nom de chaque actionnaire, sa résidence, son siège social ou principal, le nombre d'actions qu'il détient, l'indication des sommes payées pour ces actions, tout transfert les concernant, les dates de ceux-ci selon l'article 9.4 des présents statuts, ainsi que toutes garanties accordées sur ces actions.

8.2     Chaque actionnaire notifiera son adresse à la Société par lettre recommandée, ainsi que tout changement d'adresse ultérieur. La Société peut considérer comme exacte la dernière adresse de l'actionnaire qu'elle a reçue.

### Article 9   Propriété et transfert d'actions

9.1     La preuve du titre de propriété concernant des actions peut être apportée par l'enregistrement d'un actionnaire dans le registre des actions. Des certificats de ces enregistrements pourront être émis et signés par le président du conseil d'administration, par deux administrateurs ou par l'administrateur unique, selon le cas, sur requête et aux frais de l'actionnaire en question.

9.2     La Société ne reconnaît qu'un seul propriétaire par action. Si une action est détenue par plus d'une personne, ces personnes doivent désigner un mandataire unique qui sera considéré comme le seul propriétaire de l'action à l'égard de la Société. Celle-ci a le droit de suspendre l'exercice de tous les droits attachés à une telle action jusqu'à ce qu'une personne soit désignée comme étant propriétaire unique.

9.3     Les actions sont librement cessibles, sous réserve des conditions et termes prévus par la loi.

9.4     Toute cession d'action sera opposable à la Société et aux tiers soit par l'enregistrement d'une déclaration de cession dans le registre des actions, datée et signée par le cédant et le cessionnaire ou leurs représentants, soit sur notification de la cession à la Société, ou par l'acceptation de la cession par la Société, en vertu desquelles tout administrateur peut enregistrer la cession dans le registre des actions.

9.5     La Société, par l'intermédiaire de n'importe lequel de ses administrateurs, peut aussi accepter et entrer dans le registre des actions toute cession à laquelle toute correspondance ou tout autre document fait référence et établit les consentements du cédant et du cessionnaire.

**C.      ASSEMBLEE GENERALE DES ACTIONNAIRES**

**Article 10  Pouvoirs de l'assemblée générale des actionnaires**

10.1     Les actionnaires de la Société exercent leurs droits collectifs dans l'assemblée générale des actionnaires, qui constitue un des organes de la Société.

10.2     Si la Société ne possède qu'un seul actionnaire, cet actionnaire exercera les pouvoirs de l'assemblée générale des actionnaires. Dans ce cas et lorsque le terme „actionnaire unique" n'est pas expressément mentionné dans les présents statuts, une référence à „l'assemblée générale des actionnaires" utilisée dans les présents statuts doit être lue comme une référence à „l'actionnaire unique".

10.3     L'assemblée générale des actionnaires est investie des pouvoirs qui lui sont expressément réservés par la loi et par les présents statuts.

**Article 11  Convocation de l'assemblée générale des actionnaires**

11.1     L'assemblée générale des actionnaires de la Société peut à tout moment être convoquée par le conseil d'administration pour être tenue aux lieu et date précisés dans l'avis de convocation.

11.2     L'assemblée générale des actionnaires doit obligatoirement être convoquée, selon le cas, par le conseil d'administration lorsqu'un ou plusieurs actionnaires représentant au moins dix pour cent (10%) du capital social émis de la Société en fait la demande écrite auprès du conseil d'administration ou

26

Document émis électroniquement

du/des commissaire(s) aux comptes, en indiquant l'ordre du jour. Dans ce cas, l'assemblée générale des actionnaires doit être convoquée par le conseil d'administration afin d'être tenue dans un délai d'un (1) mois à compter de la réception de cette demande aux lieux et date précisés dans l'avis de convocation.

11.3    Une assemblée générale annuelle des actionnaires doit être tenue dans la commune où le siège social de la Société est situé ou dans un autre lieu tel que spécifié dans l'avis de convocation à cette assemblée, le premier vendredi du mois de juin à 14 heures CET. Si ce jour est un jour férié, l'assemblée générale annuelle des actionnaires doit être tenue le jour ouvrable précédent. Le conseil d'administration doit convoquer l'assemblée générale annuelle des actionnaires dans un délai de six (6) mois à compter de la clôture des comptes de la Société.

11.4    L'avis de convocation à toute assemblée générale des actionnaires doit contenir l'ordre du jour, le lieu, la date et l'heure de l'assemblée, et cet avis doit être envoyé à chaque actionnaire par lettre recommandée au moins huit (8) jours avant la date prévue de l'assemblée.

11.5    Un ou plusieurs actionnaires représentant au moins dix pour cent (10%) du capital social émis de la Société peut requérir du conseil d'administration l'ajout d'un ou plusieurs points à l'ordre du jour de toute assemblée générale des actionnaires. Ces demandes doivent être envoyées au siège social de la Société par lettre recommandée au moins cinq (5) jours avant la date prévue de l'assemblée.

11.6    Si tous les actionnaires sont présents ou représentés à une assemblée générale des actionnaires et s'ils déclarent avoir été dûment informés de l'ordre du jour de l'assemblée, l'assemblée générale des actionnaires peut être tenue sans convocation préalable.

**Article 12  Conduite de l'assemblée générale des actionnaires**

12.1    Un bureau de l'assemblée doit être constitué à toute assemblée générale des actionnaires, composée d'un président, d'un secrétaire et d'un scrutateur, chacun étant désigné par l'assemblée générale des actionnaires, sans qu'il soit nécessaire qu'ils soient actionnaires ou membres du conseil d'administration. Le bureau de l'assemblée s'assure spécialement que

27

l'assemblée soit tenue conformément aux règles applicables et, en particulier, en accord avec celles relatives à la convocation, aux exigences de majorité, au décompte des votes et à la représentation des actionnaires.

12.2    Une liste de présence doit être tenue à toute assemblée générale des actionnaires.

12.3    <u>Quorum</u>

Aucun quorum n'est requis pour que l'assemblée générale des actionnaires agisse et délibère valablement, sauf exigence contraire dans la loi ou dans les présents statuts.

12.4    <u>Vote</u>

12.4.1    Chaque action donne droit à un (1) vote, sous réserve des dispositions de la loi.

12.4.2    Sauf exigence contraire dans la loi ou dans les présents statuts, les décisions d'une assemblée générale des actionnaires valablement convoquée seront adoptées à la majorité simple des votes valablement exprimés, quelle que soit la portion du capital présent ou représenté. L'abstention et les votes nuls ne seront pas pris en compte.

12.5    Un actionnaire peut agir à toute assemblée générale des actionnaires en désignant une autre personne, actionnaire ou non, comme son mandataire, par procuration écrite et signée, transmise par courrier, télécopie, courrier électronique ou par tout autre moyen de communication, une copie de cette procuration étant suffisante pour la prouver. Une personne peut représenter plusieurs ou même tous les actionnaires.

12.6    Tout actionnaire qui prend part à une assemblée générale des actionnaires par conférence téléphonique, vidéoconférence ou par tout autre moyen de communication permettant son identification et que toutes les personnes participant à l'assemblée s'entendent mutuellement sans discontinuité et puissent participer pleinement à l'assemblée, est censé être présent pour le calcul du quorum et de la majorité.

12.7    Chaque actionnaire peut voter à une assemblée générale des actionnaires à l'aide d'un bulletin de vote signé en l'envoyant par courrier, télécopie, courrier électronique ou tout autre moyen de communication au siège social de la Société ou à l'adresse indiquée dans la convocation. Les

28

actionnaires ne peuvent utiliser que les bulletins de vote qui leur auront été procurés par la Société et qui devront indiquer au moins le lieu, la date et l'heure de l'assemblée, l'ordre du jour de l'assemblée, les propositions soumises au vote de l'assemblée, ainsi que pour chaque proposition, trois cases à cocher permettant à l'actionnaire de voter en faveur ou contre la proposition, ou d'exprimer une abstention par rapport à chacune des propositions soumises au vote, en cochant la case appropriée. La Société ne tiendra compte que des bulletins de vote reçus avant la tenue de l'assemblée générale des actionnaires à laquelle ils se réfèrent.

12.8    Le conseil d'administration peut déterminer toutes les autres conditions à remplir par les actionnaires pour pouvoir prendre part à toute assemblée générale des actionnaires.

**Article 13   Report des assemblées générales des actionnaires**

Sous réserve des termes et conditions de la loi, le conseil d'administration peut reporter toute assemblée générale des actionnaires déjà engagée jusqu'à quatre (4) semaines, y compris toute assemblée générale des actionnaires convoquée pour décider d'une modification des statuts. Le conseil d'administration doit reporter toute assemblée générale des actionnaires déjà engagée si cela est demandé par un ou plusieurs actionnaires représentant au moins vingt pour cent (20%) du capital social émis de la Société. Par un tel report d'une assemblée générale des actionnaires déjà engagée, toute décision déjà adoptée lors de cette assemblée sera annulée.

**Article 14   Procès-verbaux des assemblées générales des actionnaires**

14.1    Le bureau de toute assemblée générale des actionnaires rédige le procès-verbal de l'assemblée, qui doit être signé par les membres du bureau de l'assemblée ainsi que par tout actionnaire qui en fait la demande.

14.2    De même, l'actionnaire unique, le cas échéant, rédige et signe un procès-verbal de ses décisions.

14.3    Toute copie et extrait de procès-verbaux destinés à servir dans une procédure judiciaire ou à être délivrés à un tiers, doivent être certifiés conformes à l'original par le notaire ayant la garde de l'acte authentique, dans le cas où l'assemblée a été inscrite dans un acte notarié, ou signés par le

29

président du conseil d'administration, par deux administrateurs ou par l'administrateur unique, le cas échéant.

### Article 15  Modification des statuts

Sous réserve des termes et conditions prévus par la loi, les présents statuts peuvent être modifiés par une décision de l'assemblée générale des actionnaires, adoptée à la majorité des deux tiers des votes valablement exprimés lors d'une assemblée où au moins la moitié du capital social émis de la Société est présente ou représentée au premier vote. Au second vote, la décision sera adoptée à la majorité des deux tiers des votes valablement exprimés lors de l'assemblée, quelle que soit la portion du capital présent ou représenté. L'abstention et les votes nuls ne seront pas pris en compte.

### D.        LE CONSEIL D'ADMINISTRATION

### Article 16  Pouvoirs du conseil d'administration

16.1    La Société sera administrée par un conseil d'administration se composant de trois membres au moins, qui ne doivent pas nécessairement être des actionnaires de la Société. Lorsqu'il y a plusieurs administrateurs, ils sont appelés "Administrateur A" ou "Administrateur B".

16.2    Cependant, si la Société est constituée par un actionnaire unique ou s'il est constaté lors d'une assemblée générale des actionnaires que toutes les actions émises par la Société sont détenues par un seul actionnaire, la Société pourra être administrée par un seul administrateur et ce, jusqu'à la première assemblée générale des actionnaires faisant suite au moment de la constatation par la Société que ses actions sont à nouveau détenues par plus d'un actionnaire. Dans le cas où la Société a un seul administrateur et lorsque le terme « administrateur unique » n'est pas expressément mentionné dans les présents statuts, une référence au « conseil d'administration » utilisée dans les présents statuts doit être lue comme une référence à « l'administrateur unique ».

16.3  Le conseil d'administration est investi des pouvoirs les plus larges pour passer tous actes d'administration et de disposition dans les limites de l'objet social de la Société et des dispositions de la Loi sur la Titrisation et de la Loi sur les Sociétés. Tous pouvoirs que la Loi sur les Sociétés ou les présents statuts ne réservent pas expressément à l'assemblée générale des actionnaires

30

sont de la compétence du conseil d'administration.

16.4    Le conseil d'administration pourra, à l'unanimité, prendre des résolutions par voie circulaire en exprimant son approbation au moyen d'une ou de plusieurs lettres, télécopies ou tout autre moyen écrit, l'ensemble des écrits constituant le procès-verbal faisant preuve de la décision intervenue.

16.5    Conformément à l'article 60 de la Loi sur les Sociétés, le conseil d'administration peut déléguer la gestion journalière de la Société ainsi que la représentation de la Société en ce qui concerne cette gestion, à un ou plusieurs administrateurs ou à toute autre personne, actionnaire ou non, susceptibles d'agir seuls ou conjointement. Le conseil d'administration détermine la désignation, les conditions de retrait et l'étendue des pouvoirs attachées à ces délégations de pouvoir. Ces personnes pourront être nommées relativement à un ou plusieurs Compartiments déterminés de la Société.

16.6    La Société pourra conclure des contrats de gestion ou de conseil avec toute entité luxembourgeoise ou étrangère ou tout individu selon lesquels l'entité ou individu ou toute autre entité ou individu ayant été préalablement approuvé(e) par elle fournira à la Société des recommandations et conseils relatifs à la conduite des affaires de la Société et à l'accomplissement de son objet, et suivant lesquels une telle société pourra gérer les biens de la Société, sur une base journalière et sujette au contrôle général et à la responsabilité ultime du conseil d'administration de la Société. Ces contrats de gestion ou de conseil contiendront les règles gouvernant leur modification et leur expiration, à défaut de quoi ils seront considérés comme conclus pour une durée illimitée. Ces contrats de gestion ou de conseil seront conclus en relation avec un ou plusieurs Compartiments de la Société.

16.7    La Société pourra également conférer des pouvoirs spéciaux par procuration notariée ou sous seing privé à toute personne agissant seule ou conjointement avec d'autres personnes comme mandataire de la Société.

**Article 17 Election du président et du secrétaire du Conseil d'Administration**

17.1    Le conseil d'administration doit choisir un président du conseil d'administration parmi ses membres. Il peut aussi choisir un secrétaire, qui peut n'être ni actionnaire ni membre du conseil d'administration.

31

Document emis electroniquement

## Article 18 Election et révocation des administrateurs et terme du mandat

18.1    Les administrateurs seront élus par l'assemblée générale des actionnaires, qui déterminera leurs émoluments et la durée de leur mandat.

18.2    Si une personne morale est nommée au poste d'administrateur de la Société, cette personne morale devra désigner une personne physique comme représentant permanent, qui exercera le mandat au nom et pour le compte de cette personne morale. La personne morale susvisée ne peut démettre son représentant permanent qu'à la condition de lui avoir déjà désigné un successeur. Une personne physique ne peut être le représentant permanent que d'un (1) administrateur et ne peut pas en même temps être lui-même administrateur.

18.3    Tout administrateur peut être révoqué à tout moment, sans préavis et sans cause, par l'assemblée générale des actionnaires.

18.4    La durée du mandat d'un administrateur ne peut excéder six (6) années et tout administrateur exercera son mandat jusqu'à ce que son successeur ait été élu. Tout administrateur sortant peut également être réélu pour des périodes successives.

## Article 19  Vacance dans le mandat d'un administrateur

19.1    Dans l'hypothèse où un poste d'administrateur devient vacant à la suite d'un décès, d'une incapacité juridique, d'une faillite, d'une retraite ou autre, cette vacance peut être provisoirement comblée par les administrateurs restant jusqu'à la prochaine assemblée générale des actionnaires, qui se prononcera sur une nomination permanente, si cela apparaît approprié.

19.2    Si, dans le cas où il existe plusieurs actionnaires, le nombre total des membres du conseil d'administration devient inférieur à trois (3) ou à un minimum supérieur fixé par les présents statuts, le cas échéant, cette vacance doit être comblée sans délai soit par l'assemblée générale des actionnaires soit, provisoirement, par les administrateurs restant jusqu'à la prochaine assemblée générale des actionnaires, qui se prononcera sur la nomination permanente.

19.3    Dans l'hypothèse où la vacance intervient dans le mandat de l'administrateur unique de la Société, cette vacance doit être comblée sans délai par l'assemblée générale des actionnaires.

Document émis électroniquement

### Article 20  Convocation des réunions du conseil d'administration

20.1    Le conseil d'administration se réunit sur convocation du président ou de deux (2) administrateurs au lieu indiqué dans l'avis de convocation tel que décrit au prochain alinéa.

20.2    Un avis de convocation écrit à toute réunion du conseil d'administration doit être donné à tous les administrateurs par courrier, télécopie, courrier électronique ou tout autre moyen de communication, au moins vingt-quatre (24) heures avant la date prévue pour la réunion, sauf s'il y a urgence, auquel cas l'avis de convocation devra mentionner la nature et les raisons de cette urgence. Il peut être passé outre à la nécessité de pareille convocation en cas d'assentiment écrit de chaque administrateur par courrier, télécopie, courrier électronique ou tout autre moyen de communication, une copie d'un tel document écrit étant suffisante pour le prouver. Un avis de convocation n'est pas non plus requis pour des réunions du conseil d'administration se tenant à des heures et à des endroits déterminés dans une résolution préalablement adoptée par le conseil d'administration. De même, un tel avis n'est pas requis dans le cas où tous les membres du conseil d'administration sont présents ou représentés à une réunion du conseil d'administration, ou dans le cas de décisions écrites conformément aux présents statuts.

### Article 21  Conduite des réunions du conseil d'administration

21.1    Le président du conseil d'administration préside à toute réunion du conseil d'administration. En son absence, le conseil d'administration peut provisoirement élire un autre administrateur comme président temporaire.

21.2    Quorum

Le conseil d'administration ne peut délibérer et agir valablement que si au moins la moitié de ses membres est présente ou représentée à une réunion du conseil d'administration et que si au moins un Administrateur A et un Administrateur B sont présents ou représentés à une réunion du conseil d'administration.

21.3    Vote

Document emis electroniquement

Les décisions sont prises à la majorité des votes des administrateurs présents ou représentés à chaque réunion du conseil d'administration. Le président de la réunion n'a pas de voix prépondérante.

21.4    Tout administrateur peut se faire représenter à toute réunion du conseil d'administration en désignant sous forme écrite par courrier, télécopie, courrier électronique ou tout autre moyen de communication tout autre administrateur comme son mandataire, une copie étant suffisante pour le prouver. Un administrateur peut représenter un ou plusieurs de ses collègues.

21.5    Tout administrateur qui prend part à une réunion du conseil d'administration par conférence téléphonique, vidéoconférence ou par tout autre moyen de communication permettant son identification et que toutes les personnes participant à la réunion s'entendent mutuellement sans discontinuité et puissent participer pleinement à cette réunion, est censé être présent pour le calcul du quorum et de la majorité. Une réunion qui s'est tenue par les moyens de communication susvisés sera censée s'être tenue au siège social de la Société.

21.6    Le conseil d'administration peut à l'unanimité prendre des résolutions écrites ayant le même effet que des résolutions adoptées lors d'une réunion du conseil d'administration dûment convoqué et s'étant régulièrement tenu. Ces résolutions écrites sont adoptées une fois datées et signées par tous les administrateurs sur un document unique ou sur des documents séparés, une copie d'une signature originale envoyée par courrier, télécopie, courrier électronique ou toute autre moyen de communication étant considérée comme une preuve suffisante. Le document unique avec toutes les signatures ou, le cas échéant, les actes séparés signés par chaque administrateur, constitueront l'acte prouvant l'adoption des résolutions, et la date de ces résolutions sera la date de la dernière signature.

21.7    Sauf si la loi en dispose autrement, tout administrateur qui a, directement ou indirectement, un intérêt patrimonial dans une transaction soumise à l'approbation du conseil d'administration qui est en conflit avec l'intérêt de la Société doit informer le conseil d'administration de ce conflit d'intérêts et doit voir sa déclaration enregistrée dans le procès-verbal de la réunion du conseil d'administration. Cet administrateur ne peut ni participer

34

aux discussions concernant la transaction en cause, ni au vote s'y rapportant. Tout conflit d'intérêts de ce type doit être rapporté à l'assemblée générale des actionnaires suivante, avant que toute décision concernant tout autre point ne soit prise. Lorsque la Société a un administrateur unique et que, dans une transaction conclue entre la Société et l'administrateur unique, celui-ci a, directement ou indirectement, un intérêt patrimonial qui est en conflit avec l'intérêt de la Société, ce conflit d'intérêt doit être divulgué dans le procès-verbal enregistrant la transaction en cause.

### Article 22  Procès-verbaux des réunions du conseil d'administration

22.1    Le secrétaire ou, s'il n'a pas été désigné de secrétaire, le président rédige le procès-verbal de toute réunion du conseil d'administration, qui est signé par le président et par le secrétaire, le cas échéant.

22.2    L'administrateur unique, le cas échéant, rédige et signe également un procès-verbal de ses résolutions.

22.3    Toute copie et extrait de procès-verbaux destinés à servir dans une procédure judiciaire ou à être délivrés à un tiers seront signés par le président, par deux administrateurs ou par l'administrateur unique, le cas échéant.

### Article 23  Rapports avec les tiers

Vis-à-vis des tiers, la Société sera valablement engagée en toute circonstance par les signatures conjointes d'un Administrateur A quelconque et d'un Administrateur B quelconque ou par la signature de l'administrateur unique, ou par les signatures conjointes ou la seule signature de toute(s) personne(s) à laquelle/auxquelles pareil pouvoir de signature aura été délégué par le conseil d'administration ou par l'administrateur unique. Dans les limites de la gestion journalière, la Société sera valablement engagée vis-à-vis des tiers par la signature de toute(s) personne(s) à laquelle/auxquelles pareil pouvoir quant à la gestion journalière de la Société aura été délégué agissant seule ou conjointement conformément aux règles d'une telle délégation.

### E.        SURVEILLANCE DE LA SOCIETE

### Article 24  Auditeurs

Les informations comptables liées au rapport annuel de la Société seront examinées par un réviseur d'entreprises nommé par le conseil d'administration

35

**Document emis électroniquement**

et rémunéré par la Société.

Le réviseur d'entreprises accomplira toutes les fonctions qui lui sont attribuées par la Loi sur les Sociétés et la Loi sur la Titrisation.

### F. EXERCICE – BENEFICES – DIVIDENDES PROVISOIRES

### Article 25 Exercice

L'exercice de la Société commence le premier janvier de chaque année et se termine le trente et un décembre de la même année.

### Article 26 Bénéfices

26.1    Chaque année, au trente et un décembre, les comptes sont arrêtés et les administrateurs dressent un inventaire comprenant l'indication des valeurs d'actif et de passif de la Société. Tout associé peut prendre connaissance de cet inventaire et du bilan au siège social.

26.2    Sur des comptes séparés (en plus des comptes tenus par la Société conformément à la Loi sur les Sociétés et la pratique comptable courante), la Société déterminera à la fin de chaque exercice social le résultat de chaque Compartiment comme suit:

Le résultat de chaque Compartiment sera le solde de tous revenus, profits ou autres produits payés ou dus sous quelque forme que ce soit, relatifs à ce Compartiment (y compris des plus-values, du boni de liquidation et des distributions de dividendes) et le montant des dépenses, pertes, impôts ou autres transferts de fonds encourus par la Société pendant cet exercice et qui peuvent être régulièrement et raisonnablement attribués à la gestion et fonctionnement de ce Compartiment (y compris honoraires, coûts, impôts sur plus-values, dépenses relatives à la distribution de dividendes).

26.3    Sur le profit annuel net de la Société, il est prélevé cinq pour cent (5 %) pour allouer à la réserve légale et ce, jusqu'à ce que cette réserve atteigne dix pour cent (10 %) du capital social, conformément à l'article 5 (*Capital Social*) ou tel qu'augmenté ou réduit périodiquement, conformément à l'article 5.

26.4    Le surplus des profits annuels nets sera distribué comme dividendes aux actionnaires conformément à la Loi sur la Titrisation. Le paiement de distributions se fera aux actionnaires à leurs adresses figurant dans

36

Document émis électroniquement

le registre des actionnaires. Les distributions seront payées dans la devise et aux moment et lieu que le conseil d'administration déterminera périodiquement.

26.5    Des acomptes sur dividendes pourront être versés conformément aux conditions prévues par la Loi sur les Sociétés.

26.6    L'assemblée générale des actionnaires pourra décider de distribuer des dividendes en actions au lieu de dividendes en espèces selon les conditions requises par l'assemblée générale.

### Article 27  Dividendes provisoires – Prime d'émission

27.1    Aux conditions et termes prévus par la loi, le conseil d'administration pourra procéder à la distribution de bénéfices provisoires.

27.2    La prime d'émission, le cas échéant, est librement distribuable aux actionnaires par une résolution des actionnaires/de l'actionnaire ou des administrateurs/de l'administrateur, sous réserve de toute disposition légale concernant l'inaliénabilité du capital social et de la réserve légale.

### G.       LIQUIDATION

### Article 28  Liquidation des Compartiments

Sans préjudice aucun aux dispositions de l'article 7 (Compartiments), chaque Compartiment de la Société pourra être mis en liquidation et ses valeurs mobilières pourront être rachetées par une décision du conseil d'administration de la Société.

### Article 29  Liquidation de la Société

29.1    En cas de dissolution de la Société, la liquidation sera effectuée par un ou plusieurs liquidateurs, personnes physiques ou morales, nommés par l'assemblée générale des actionnaires qui décide de la dissolution de la Société et qui fixera les pouvoirs et émoluments de chacun.

29.2    Le surplus résultant de la réalisation de l'actif et du paiement du passif sera distribué aux actionnaires proportionnellement au nombre d'actions de la Société qu'ils détiennent.

### H.       LOI APPLICABLE

### Article 30  Loi applicable

Pour tout ce qui n'est pas réglé par les présents statuts, les parties se réfèrent aux dispositions de la Loi sur les Sociétés et de la Loi sur la

Titrisation.

### DISPOSITIONS TRANSITOIRES

1) Le premier exercice social commencera le jour de la constitution de la Société et se terminera le 31 décembre 2015.

2) La première assemblée générale annuelle des actionnaires aura lieu en 2016.

3) Les bénéfices provisoires peuvent aussi être distribués pendant le premier exercice de la Société.

### SOUSCRIPTION ET PAIEMENT

**Stichting Sentry,** susnommée, représenté comme indiqué ci-avant, déclare souscrire les quarante-cinq (45) actions représentant le capital social de la Société.

Toutes les actions sont entièrement libérées en espèces, de sorte que la somme de quarante-cinq mille dollars (USD 45.000) est dès maintenant à la disposition de la Société, ce dont il a été justifié au notaire soussigné.

### DECLARATION

Le notaire soussigné déclare avoir vérifié l'existence des conditions énumérées à l'article 26 de la Loi sur les Sociétés et déclare expressément qu'elles sont remplies.

### FRAIS

Le montant des dépenses, frais, rémunérations et charges, sous quelque forme que ce soit, qui incombent à la Société ou qui sont mis à sa charge à raison de sa constitution sont évalués à environ deux mille euros (Eur 2.000,-)

### ASSEMBLEE GENERALE DES ACTIONNAIRES

L'actionnaire constituant, représentant l'intégralité du capital émis de la Société, prend immédiatement les résolutions suivantes:

1. Le nombre de membres au conseil d'administration a été fixé à trois (3).

2. Les personnes suivantes sont nommées administrateurs de la Société:

- En tant qu'administrateur A : Monsieur Andrew N. MacRitchie, né le 13 septembre 1963 à Bellshill (Royaume-Uni), ayant sa résidence professionnelle au 5300 Meadows Rd Suite 400, Lake Oswego, OR 97035, Etats-Unis

38

Document émis électroniquement

- En tant qu'administrateur B : Monsieur Elvin Montes, né le 12 Avril 1982 à Jiabong W Samar (Philippines), ayant sa résidence professionnelle au 19, rue de Bitbourg, L-1273 Luxembourg ; et

- En tant qu'administrateur B : Madame Laetitia Antoine, né le 30 Mars 1973 à Woippy (France), ayant sa résidence professionnelle au 19, rue de Bitbourg, L-1273 Luxembourg.

3. Le mandat des administrateurs se termine à la date à laquelle l'assemblée générale des actionnaires ou l'actionnaire unique, selon le cas, décide de l'approbation des comptes de la Société pour l'exercice social 2019 ou à toute date antérieure déterminée par l'assemblée générale des actionnaires ou par l'actionnaire unique, selon le cas.

4. L'adresse du siège social de la Société est fixée au 19, rue de Bitbourg, L-1273 Luxembourg, Grand-Duché de Luxembourg.

Le notaire soussigné qui comprend et parle l'anglais, constate que sur demande du mandataire de la comparante, le présent acte est rédigé en langue anglaise, suivi d'une traduction en français. Sur demande du même mandataire et en cas de divergences entre le texte anglais et le texte français, le texte anglais fait foi.

**Dont acte**

Fait et passé à Luxembourg, en l'étude du notaire soussigné, date qu'en tête des présentes.

Et après lecture faite et interprétation donné au mandataire de la comparante, celui-ci a signé avec le notaire le présent acte.

(Signé) S. Tipirdamaz, M. Loesch.

Enregistré à Grevenmacher A.C., le 9 juillet 2015.

GAC/2015/5850.

Reçu soixante-quinze euros.

75,00 €.

Le Receveur, signé G. SCHLINK.

Pour expédition conforme,

Mondorf-les-Bains, le 14 juillet 2015.

**Document emis electroniquement**

.

40