**EXHIBIT J**

# DEVELOPMENT AGREEMENT

**THIS DEVELOPMENT AGREEMENT** is made and entered into in this 31st of March, 2020 ("**Effective Date**"), by and between Cred LLC, whose principal place of business and mailing address at 2121 S. El Camino Real, Ste 500 San Mateo, CA 94403, ("Company"),; and 10Clouds sp. z.o.o, a corporation organized and existing under the laws of Poland, whose principal place of business and mailing address is Finlandzka 10, 03-903, Warsaw, Poland ("**Developer**").

Separately or jointly named as **"the Party"** or **"Parties"**

**WHEREAS,** the Company desires to engage the Developer from time to time pursuant to one or more Work Statements, to develop, create and deliver certain programming, design and development works, and;
**WHEREAS,** the Developer has the skills, know-how and ability and is interested in performing such development works, subject to the terms and conditions set forth in this Agreement herein:

**NOW, THEREFORE,** the Parties hereby agree as follows:

1. **Definitions**. For purposes of this Agreement (including any and all Schedules, Work Statements and amendments made to or incorporated herein now or in the future), the following capitalized terms shall have the following meaning:

    1.1. "The **Confidential Information**" means all non-public information, in any form whatsoever, tangible or intangible, including information in oral, visual or computer database form, disclosed by the Party to the other Party. The Confidential Information shall include any such information concerning past, present, or future ideas, research and development, know-how, trade secrets (including terms of business and payment, course of negotiations), inventions, formulas, specifications, compositions, manufacturing and production processes and techniques, technical data, code, technology and/or product designs, drawings, engineering and/or development specifications, business and marketing plans, forecasts and projections, financial data or any other business activities. The Confidential Information shall also include intellectual property and technology, including any processes, methodologies, procedures, trade secrets, software, software applications, tools, databases, systems architecture and design, machine-readable texts and files, literary works or other works of authorship, including documentation, reports, drawings, charts, graphics and other written documentation, whether or not owned by the Party, provided to the other Party by or through the Party. However, the Confidential Information shall not include information that (i) is publicly available or becomes publicly available through no act or omission of the Party, or anyone else on its behalf; (ii) is

legitimately obtained by the Party without restriction, from a source other than the other Party; or (iii) is explicitly approved for release by written authorization of the Party. Any combination of features shall not be deemed to be within the foregoing exceptions merely because individual features thereof are in the public domain or in the possession of the Party, but only if the combination itself and its principle of operation are in the public domain or in the possession of the Party. For the avoidance of doubt, the Deliverables shall be deemed confidential information.

1.2. "The **Deliverables**" means all code, documentation and other materials produced as a result of the Services and delivered to the Company by the Developer in the course of providing the Services pursuant to specific Work Statement.

1.3. "The **Intellectual Property**" means all intangible legal rights, titles and interests evidenced by or embodied in or connected or related to (i) all Inventions (whether patentable or unpatentable and whether or not reduced to practice), (ii) all trademarks, (iii) any work of authorship, regardless of copyrightability, all compilations, all copyrightable works, all copyrights (including financial copyrights, derivative rights, moral rights) (iv) all computer software (including data and related documentation), source code and any other related documentation.

1.4. "The **Specifications**" - shall mean the functional specifications for the Deliverables, as set forth in the applicable Work Statement.

1.5. "The **Work Statement**" **-** shall mean any written instrument as shall be agreed between the Parties from time to time, describing specific provisions of providing Services, in particular scope of Services and remuneration.

1.6. **"**The **Authorized representatives of the Parties"**: Developer: Maciej Cielecki and Michał Kłujszo, Company: Joe Podulka

1.7. "The **Developer's Staff" -** Developer's employees and subcontractors, independently of the legal relation binding them with Developer or regulating their cooperation.

2. **Services**.

2.1. The Developer agrees to provide to the Company the programming and developing services specified in any written Work Statement that shall, from time to time, be defined and executed jointly by the Parties and be made part of this Agreement. Such services are hereinafter referred to as "the **Services**". The initial Work Statement(s) agreed to by the Parties are set forth as attachments to this Agreement. Additional Work Statements, regardless of whether they relate to the same subject matter as the initial Work

      Statement(s), shall become effective upon execution by authorized representatives of both Parties defined above.

2.2. In performing the services, the Developer shall use its own software programs and internet connection, for which licenses the Developer is solely responsible.

2.3. The Developer is required to regularly provide the Company with work increments that can be tested by Company.

3. **Cooperation of the Company.** Company undertakes to cooperate in the manner agreed by the Parties from time to time, Company's cooperation pertains in particular to the following:

    3.1. performance of administrative duties; undertaking the tasks which Developer reasonably needs to be done to discharge its duties (at Developer's request);

    3.2. provision of all the necessary materials, information and access;

    3.3. ensuring the availability of duly qualified staff supporting Developer's rendering of services;

    3.4. notification in due time of all changes and events on Company's side that may exert an impact on the rendering of services;

    3.5. undertaking of necessary actions to procure cooperation of other suppliers for the benefit of Company whose cooperation is reasonably required to render the services;

    3.6. adherence to all legal regulations applicable to the performance of Company's duties; ensuring that the documentation and data/information supplied under the necessary cooperation with Developer are complete, correct and up-to-date on the date they are provided to Developer;

    3.7. ensuring Developer's staff has access to the network, infrastructure, software, data, appropriate server infrastructure for production server domain name, ssl certificate and access to any other services required for production use of the Deliverables;

    3.8. notification in due time of receipt of an invoice whose incorrect content may cause Company to refrain from making payment.

    3.9. Specific activities to be performed by the Company as a part of cooperation may be set forth in each relevant Work Statement.

    3.10. In the event that Company's failure to discharge the duty of cooperation:

        3.10.1. causes Developer not to perform the Services duly - then such action or omission of Developer will not be deemed to be a breach of the Agreement;

      3.10.2. causes Developer to fail to meet the deadlines for the performance of the Services, in particular, the timely delivery of Deliverables - then the dates for the performance of the services will be duly and reasonably shifted as agreed by the Parties and costs of the additional work shall be borne by The Company based on rates specified in the Work Statement, unless the Parties agree otherwise.

4. **Changes**. Changes in any Work Statement shall become effective only when a written change request is executed by authorized representatives of both Parties (otherwise null and void).

5. **Notice of Delay**. The Developer shall notify the Company promptly of any factor, occurrence, or event coming to its attention that may affect its ability to meet the requirements of any Work Statement issued under this Agreement, or that is likely to cause any material delay in delivery of the Deliverables. Such notice shall also be given in the event of any loss or reassignment of key employees, threat of strike, or major equipment failure.

6. **Delivery & Testing** The Developer shall work using a delivery method agreed by the Parties. Deliverables will be delivered to the Company in accordance with the applicable timeline set out in the applicable Work Statement.

7. **Support.** The Parties may agree within a Work Statement on the terms of support services to be provided by Developer to the Company and the terms thereof.

8. **Compensation**

    8.1. **Method of Payment**. Amounts, method of payment (on an hourly basis) and terms of payment for all Services to be performed and Deliverables to be delivered, shall be set forth in each relevant Work Statement.

    8.2. **Allocation of Cost and Compensation** If required for the purposes of proper allocation of the Compensation for (i) transfer of copyrights or other Intellectual Property rights and (ii) other services, the Company and the Developer may agree that the part of Compensation related to transfer of copyright shall be assessed and specified in each invoice according to the nature of work provided and copyrights transferred in particular parts of the projects to which particular invoices relate.

    8.3. **Taxes.** Prices set forth in any Work Statement issued hereunder shall include all taxes however designated and levied by any state, local, or government agency in Poland (including sales taxes and VAT). The Developer is obliged to pay its taxes according to the Polish tax law. If according to the law regulations of Poland the Developer or the Company in behalf of the Developer is obliged to submit/pay any additional taxes than the ones mentioned above the prices set forth in any Work Statement shall be increased accordingly by the amount of that potential additional tax.

8.4. **Delayed Performance**. If the Developer delays delivery of any milestone by more than thirty (30) days past the due date set forth in the applicable Work Statement for any reason not due to failure by the Company to provide essential materials or fulfillment of its obligations set out in Art. 3, or other delay by the Company, then the Company shall be entitled to terminate the applicable Work Statement and/or the Agreement and the Developer shall be solely entitled to receive the payments for the Services performed up to that point (based on the hourly basis described in the Work Statement).

8.5. **Expenses**. Except as expressly agreed otherwise in a Work Statement, the Developer shall bear all of its own expenses arising from its performance or its obligations under this Agreement and each Work Statement issued hereunder. The Company however shall cover all travel and accommodation expenses related to the services performed by the Developer in the Company's facilities. If not specified otherwise in the relevant Work Statement, such traveling and accommodation expenses are not included in the fees.

9. **Rights in Deliverables**. In order to optimize the development work and cost the Parties agree that the Developer may include in the Deliverables (i) preexisting code owned by the Developer for which copyrights rest with the Developer and the Company is granted non exclusive license on the fields of exploitation specified below and (ii) certain open source libraries and code. The Company shall be clearly informed about the open source code used and applicable licenses when relevant parts of Project are delivered for acceptance. If the Company wishes to have all code custom made for the project and copyrights transferred to the Company, this should be communicated before deciding on Work Statement and cost estimates. Subject to the above the Developer assigns, transfers and conveys to the Company all copyrights in Deliverables, provided that the Company has paid the invoice with the compensation covering the Services performed by creating the particular Deliverable. The transfer shall include (i) the permanent or temporary reproduction of a computer program in full or in part, by any means and in any form; (ii) the right of translation, adaptation, arrangement or any other modification of a computer program (iii) 3) the public dissemination, including letting for use or rental, of a computer program or a copy thereof the Developer grants the Company a non-exclusive, perpetual world wide right and license to use, execute, sublicense, reproduce, and prepare derivative works based upon such works subject to relevant licensing terms after the particular compensation has been paid by the Company. The Developer agrees to give the Company and any other person designated by the Company, reasonable assistance, at the Company's expense, required to perfect the rights defined in this Section on terms separately agreed between the Parties in writing.

10. **Visual Work.** The Developer retains the right, with the Company's hereby permission, to reproduce, publish, and display visual work including but not limited to the Developer's portfolio, websites, marketing materials, publications, and other media or exhibits for the purposes of

recognition, promotion, and advertising. The Company agrees that when asked, must properly identify the Developer as the creator of Work. The Company does not have the duty to display the Developer's name together with Work, but Company may not mislead others that Work was created by anyone other than the Developer.

11. **Confidential Information**. The Parties shall refrain from using or exploiting the Confidential Information for any purposes or activities other than for the performance of this Agreement. The Parties shall: (i) keep the Confidential Information confidential using at least the same degree of care they use to protect their own confidential information, which shall in any event not be less than a reasonable degree of care; and (ii) refrain from disclosing or facilitating disclosure of Confidential Information to anyone, without the other Parties prior written consent, except its employees and consultants with a need to know such information for the purposes of the performance of this Agreement, and will advise those of their employees and consultants to whom the Confidential Information is disclosed of their obligations under this Agreement with respect to the Confidential Information. Especially, the confidentiality obligation shall apply to all the information concerning the Parties' cooperation (including terms of business and payment, course of negotiations etc.), which shall be disclosed exclusively to such Parties representatives, board members and other managing / supervisory / executive employees, whose knowledge of the above information is crucial for the execution of the Agreement. The Parties shall obtain and maintain in effect written confidentiality agreements similar in scope to the provisions of this section with each of their employees and/or consultants who participate in any of the work being performed under this Agreement. If a Party is required by an order of a court, administrative agency, or other government body, to disclose Confidential Information, the Party shall provide the other Party with prompt notice of such order to enable the Party to seek a protective order or otherwise prevent or restrict such disclosure, and the Party shall reasonably cooperate with the other Party in its efforts to obtain such protective order at the sole cost and expense of the Party. The obligations of confidentiality under this Agreement shall survive the termination of this Agreement.

12. **Non Compete.** During the term of this Agreement and after one year of its termination or expiry (independently from the legal base of the termination or expiry) the Company shall not, without the prior written consent of the Developer, employ, hire or engage in any other way the Developer's Staff. The above clause applies to any direct, as well as intermediate possible cooperation.

13. **Warranties and Representations**. The Developer disclaims all warranties for the condition, durability or any other warranties, unless the Developer has expressly agreed to provide such warranty in an individual case and has denoted it as such warranty in writing. The Developer hereby represents and warrants that: (i) it has the requisite technical and professional knowledge, know-how, expertise, skills, talent and experience required in order to perform the Services in a professional and efficient manner; (ii) there are no restrictions, limitations, contractual obligations or

statutory obligations or restrictions or any other factor whatsoever which prevents or restricts or is likely to prevent or restrict the Developer from fulfilling all its obligations under this Agreement and the performance of the Services, and delivering the Deliverables in accordance with the time frame specified by Work Statements; (iii) the execution of this Agreement by the Developer and the performance of the obligations hereunder shall not constitute or result in an intentional breach of any other obligation, contractual or otherwise, of the Developer; (iv) all copyrightable matter assigned and/or licensed in accordance with this Agreement has been or will be created by persons who were employees and consultants of the Developer at the time of creation and the Developer has and will obtain agreements with its employees and consultants sufficient to allow it to provide the Company with the assignments and/or licenses provided for herein; and (v) all development work including but not limited to the Deliverables shall be prepared without knowingly (i.e. with the direct intent) breaching any third party Intellectual Property rights and (vi) in a workmanlike manner and with professional diligence and skill and will conform to the Specifications relating thereto. Unless expressly agreed otherwise in the applicable Work Statement, the Developer disclaims any and all warranty for any third party material included in the Deliverables in conformance with the applicable Work Statement including open source software, stock photos, pictures and similar materials.

14. **Indemnification**. The Developer agrees to indemnify, defend and hold harmless the Company and its successors and assigns, from any and all losses, liabilities, damages and claims, and all related costs and expenses, however up to the amount of the total compensation paid to the Developer according to this Agreement (including reasonable legal fees and disbursements and costs of investigation, litigation, settlement, judgment, interest and penalties) (collectively, "**Losses**") arising from, in connection with, or based on allegations whenever made of, culpable breach of any representation or warranty made by Developer under Section 13. (v).

15. **Limitation of Liabilities**. The Parties shall not be liable (whether under contract, tort (including negligence) or any other legal theory) for any indirect, special or consequential damages, including, any loss or damage to business earnings, lost profits or goodwill, suffered by any person, arising from and/or related with this agreement, even if such party is advised of the possibility of such damages.

   15.1. The limitations set forth above will not apply with respect to damages occasioned by: (A) the willful misconduct of the Developer; or (B) damages caused by Developer's breach of its obligations with respect to Confidential Information or Intellectual Property Rights.

   15.2. In no event shall the Developer's liability for any claims whether contractual, tort or other theory of liability, except for the breach of clause 10 of this Agreement, exceed the total

compensation paid to the Developer according to this Agreement for the time of claim notification.

16. **Term and Termination**

    16.1. **Term of the Agreement and the Work Statement**. The term of this Agreement shall begin on the Effective Date and shall continue unless terminated by any Party with a written notice to the other Party. The Agreement provisions shall be binding for all the Work Statements concluded during the validity of this Agreement. Work Statements concluded during the validity of this Agreement shall be binding till the execution of the works covered with such Work Statements, independently of the eventual termination of the Agreement.

    16.2. **Termination of the Work Statement**. Unless otherwise specified in the Work Statement, a concluded Work Statement can be terminated by either Party without cause:

        16.2.1. instantly upon a written notice to the other Party - within thirty (30) days from signing of this Development Agreement,

        16.2.2. upon a thirty (30) days written notice to the other Party - within the period from thirty one (31) to one hundred twenty (120) days from signing of this Development Agreement,

        16.2.3. upon a ninety (90) days written notice to the other Party - within the period from one hundred twenty(120) and more days from signing of this Development Agreement.

    16.3. **Termination for Breach**. Either Party may, by written notice of default to the other, terminate a concluded Work Statement if the other Party fails or refuses to fully comply with its material obligations under this Work Statement and Agreement and does not cure such default within fifteen (15) days of receipt of written notice from the non-defaulting Party. Especially, the Company's delay with payment exceeding thirty (30) days shall constitute a breach authorizing the Developer to terminate a concluded Work Statement.

    16.4. **Consequences of the Work Statement's Termination:** Upon receipt by the Party of notice of termination of the Work Statement, the Developer shall inform the Company of the extent of which performance has been completed through such date, and collect and deliver to the Company whatever work product then exists in a manner agreed with the Company. The Developer shall be paid for all work actually performed, including a prorated portion of the following milestone for work actually completed and delivered up to such termination date, if applicable, provided that such payment shall not be greater than the payment that would have become due if the work had been completed.

16.5. **Termination upon insolvency**. Effective immediately and without any requirement of notice, either party may, at its option, terminate this Agreement, concluded Work Statements and/or suspend its performance in the event that (i) the other party suffers loss of liquidity or (ii) becomes insolvent or (iii) the other party adopts a resolution for discontinuance of its business or for dissolution.

16.6. **Consequences**. Upon termination of this Agreement or a Work Statement, the Developer shall discontinue all further Services and shall promptly return to the Company all plans, drawings and other tangible property representing Intellectual Property and/or any such tangible property divulged by the Company and all copies thereof and shall delete any such disclosed information held by it in electronic form. Upon termination of this Agreement or a Work Statement, the Company shall promptly return to the Developer all plans, drawings and other tangible property representing Intellectual Property and/or any such tangible property divulged by the Developer which haven't been transferred to the Company according to this Agreement and all copies thereof and shall delete any such disclosed information held by it in electronic form. Upon expiration or termination of this Agreement, and at any time upon a Parties request, the other Party will promptly return or destroy, as directed by the Party, all copies of Confidential Information, including any notes, memoranda or other materials containing such Confidential Information or relating thereto, and all copies thereof, and will destroy or delete any Confidential Information that has been recorded or stored in any electronic medium. Notwithstanding the return of Confidential Information in accordance with this paragraph, all duties and obligations of the Parties under Section 10 will remain in full force and effect.

16.7. **Termination by both Parties**. Both Parties may jointly determine the conditions and consequences of termination of this Agreement and/or specified Work Statements.

17. **Miscellaneous**

17.1. **Independent Contractors**. It is further clarified that the Developer is an independent contractor of the Company under this Agreement and nothing herein shall be construed to create an employer/employee or joint venture relationship. Neither Developer nor its employees are entitled to any of the benefits or rights to which employees of the Company are entitled, and the Developer shall be solely responsible for all of its employees and agents and its labor costs and expenses arising in connection therewith.

17.2. **No Waiver**. No delay or omission by either Party hereto to exercise any right o*r* power occurrin*g* upon any noncompliance or default by the other Party with respect to any of the terms of this Agreement shall impair any such right or power or be construed to be a waiver thereof. A waiver by either of the Parties hereto of any of the covenants, conditions,

or agreements to be performed by the other shall not be construed to be a waiver of any succeeding breach thereof or of any covenant, condition, or agreement herein contained. Unless stated otherwise, all remedies provided for in this Agreement shall be cumulative and in addition to and not in place of any other remedies available to either Party at law, in equity, or otherwise.

17.3. **Severability**. If any term, clause or provision of this Agreement is construed to be or adjudged invalid, void or unenforceable, such term, clause or provision will be modified or severed in such manner as to cause this Agreement to be valid and enforceable while preserving to the maximum extent possible the terms, conditions and benefits of this Agreement as negotiated by the Parties, and the remaining terms, clauses and provisions will remain in full force and effect.

17.4. **Governing Law and Jurisdiction**. This Agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) is governed by and construed in accordance with the general rules of law in Poland. The Parties irrevocably agree that any dispute or claim arising out of this Agreement or its breach, termination or invalidity or relating thereto, shall be settled in English by arbitration by the Court of Arbitration at the Polish Chamber of Commerce (KIG) in Warsaw, according to the rules of arbitration of this Court.

17.5. **Survival**. The provisions of Section 1, 9, 10, 11, 13, 14 and 16 as well as any other provision of this Agreement that contemplates performance or observance subsequent to termination of this Agreement will survive termination of this Agreement and continue in full force and effect for the period set forth therein, or if no period is set forth therein, indefinitely.

17.6. **Precedence**. In the event of any conflict between any term within any Work Statements of and the terms of this Agreement, the terms of this Agreement shall govern and control. Provisions of Agreement may be overridden with applicable Work Statement provisions, if explicitly stated in such Work Statement.

17.7. **Headings**. The headings and sub-headings contained in this Agreement are for convenience and reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

17.8. **Entire Agreement**. This Agreement, together with the Work Statements issued from time to time, constitute the entire agreement between the Parties. No change, waiver, or discharge hereof shall be valid unless it is in writing and is executed by the Party against whom such change, waiver, or discharge is sought to be enforced.

17.9. **Amendment**. This Agreement may only be amended by an instrument in writing (otherwise null and void) signed by each of the Parties hereto.

17.10. **Counterparts**. This Agreement may be executed in any number of counterparts, all of which taken together will constitute one single agreement between the Parties.

17.11. **Notices.** All notices or other communications required or permitted to be given pursuant to this Agreement shall be in writing (unless otherwise stated in this Agreement) and shall be deemed as properly given or made on the date same if hand delivered or five days after mailing, if mailed first class registered mail, postage prepaid, or on the first business day after being sent if sent by facsimile to the respective addresses set forth in the preamble to this Agreement, or to such other address as either Party may have designated by similar notice given to the other Party.

17.12. **The Parties** jointly agree that after the completion of the cooperation according to this Agreement they will negotiate and evaluate the potential of concluding a separate written agreement regarding the Developers right to use the information about this business relationship (marketing).

**IN WITNESS THEREOF,** Company and Developer have caused this Agreement to be signed and delivered by their duly authorized officers, all as of the date hereinabove written.

|  |  |
|---|---|
| **Cred LLC** | **10Clouds sp. z.o.o** |
| By:   Joe Podulka | By: Maciej Cielecki, Michał Kłujszo |
| Title:   CFO | Title: Managing Partners |
| Date: | Date: |