IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **In re** ) | Chapter 11 |
| ) | |
| **CRED INC.,** *et al.,* ) | Case No. 20-12836 (JTD) |
| ) | (Jointly Administered) |
| **Debtors**[1] ) | |
| ) | **Obj. Deadline: February 2, 2023, at 4:00 p.m. (ET)** |
| ) | **Hearing Date: February 9, 2023 at 2:00 PM (ET)** |

**REPLY TO OBJECTIONS OF LOCKTON COMPANIES, LLC AND LOCKTON COMPANIES, LLC-PACIFIC SERIES AND UPHOLD HQ INC. TO MOTION OF THE TRUSTEES OF CRED INC. LIQUIDATION TRUST PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE FOR CLARIFICATION OF JULY 19, 2022 BENCH RULING REGARDING TRUST'S AUTHORITY <u>TO ACQUIRE CERTAIN THIRD-PARTY CLAIMS</u>**

The Trustees Cedric de Lisser, Christopher Moser, and Michael Michelin, ("**Trustees**") of The Cred Inc. Liquidation Trust (the "**Trust**") established in the chapter 11 bankruptcy cases (the "**Chapter 11 Cases**") of the above-captioned debtors (collectively, the "**Debtors**" or "**Cred**"), hereby submit this reply ("**Reply**") to the objections of Lockton Companies, LLC and Lockton Companies, LLC Pacific Series ("**Lockton**") and Uphold HQ Inc. ("**Uphold**" together with Lockton, the "**Defendants**" ) to the motion (the "**Clarification Motion** "), pursuant to Section 105 of Title 11 of the United States Code ("**Bankruptcy Code**"), for entry of an order, clarifying the Bankruptcy Court's July 19, 2022 bench ruling that the Trust can acquire third-party claims in

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

1

connection with the settlement of preference claims and prosecute those claims. In support of this Reply, the Trust respectfully states as follows[2]:

## PRELIMINARY STATEMENT

1. The only objectors to the Trust's innocuous request for a clarification of the July 19, 2022 Bench Ruling are Defendants, Lockton and Uphold, whom the Trustees have sued. Defendants object to the Clarification Motion to better their litigation positions in those pending actions. Through their coordinated oppositions, these Defendants seek to interfere with the Clarification Motion to prevent the Trust from recovering, in pending litigation, hundreds of millions of dollars in damages resulting from their misdeeds. Defendants try to give the appearance that their opposition is supported by a disinterested and objective non-party, the United States Trustee, which objected to the Trust's original Assignment Motion[3] (which issues were decided by the July 19, 2022 Bench Ruling), but the United States Trustee's office informed the Trust's counsel that they take no position on this Clarification Motion. Thus, these wrongdoers and targets of ongoing litigation by the Trust stand alone in voicing their self-interested objections.

2. Neither Lockton nor Uphold should be heard because they are speaking purely as Defendants. Lockton, which is not a creditor and did not appear in these chapter 11 cases prior to this dispute, has no standing to object to the Clarification Motion because it has no interest in the Debtors' cases other than to advantage itself in the Lockton Litigation. The Lockton Objection should therefore be disregarded.[4] Uphold likewise has no standing, since it also acts as a

---

[2] Given the overlap in the arguments in the two Objections, the Trustees believe that efficiency is best served by filing a consolidated reply as opposed to two separate replies. This Reply slightly exceeds the 15-page limit applicable to a single reply brief.

[3] All undefined capitalized terms used herein shall be given the meanings in the Clarification Motion.

[4] Out of an abundance of caution, the Trustees served the Clarification Motion on Lockton.

Defendant, not a creditor, in the Uphold Objection by coordinating with and joining in the objection of Lockton, a party whose liability is a potential source of recovery for Cred creditors.[5]

3. Even if the Objections can be heard, they are meritless because they deliberately misconstrue the relief sought here. In the Clarification Motion, the Trustees ask *only* for a clarification of the July 19, 2022 Bench Ruling that found that the Trustees can acquire third-party claims obtained through individual preference settlements and prosecute those claims against defendants. Yet Uphold mis-quotes the Trust's proposed Order (*see* 1070-2 at ¶2): it omits the word ***preference*** in the operative paragraph of the proposed order,[6] and then proceeds to argue over interpretations of the Plan, rather than the July 19, 2022 Bench Ruling.

4. Even worse, Lockton simply ignores the Trustees' request and manufactures a new one.[7] In the Lockton Objection, Lockton deletes the language that the Trust seeks an order "clarifying this Court's July 19, 2022 Bench Ruling that" and only includes the language that follows, claiming the Trust seeks a ruling that "the Trust can acquire third-party customer claims in connection with the settlement of preference claims and prosecute those claims." Lockton Objection at ¶ 32. The Trust has *not* asked this Court to determine the issues already resolved nor to determine that the Trust Assignors' assignments that are the subject of the Lockton Litigation

---

[5] *See* Uphold Objection ¶¶1,4.

[6] Uphold Objection at ¶ 2. Compare Uphold Objection to Trustees' proposed order which reads:

The July 19, 2022 Bench Ruling determined that, in accordance with the Plan and the Trust Agreement, the Trustees can acquire Third-Party Claims obtained through individual ***preference*** settlements, and, if valid grounds exist, prosecute those claims against defendants, including, without limitation, Lockton Companies LLC and Lockton Companies LLC Pacific Series.

(ECF 1070-2 ¶ 2) (emphasis added).

[7] Lockton erroneously contends that the "Trust is asking this Court to interpret the Plan." Lockton Objection at ¶ 1.

3

are valid.[8] The Trustees simply ask for clarification of what has already been decided by the Bankruptcy Court.

5. But there is no dispute as to what was at issue in the Assignment Motion in July 2022. The Assignment Motion requested that the Bankruptcy Court determine that the Trustees had authority to adjudicate third-party claims assigned to the Trust.[9] *See* Assignment Motion Proposed Order [ECF 1015-2]. Defendants agree that the "key issue" in the Assignment Motion was the authority of the Trust to pursue third-party claims. Lockton Objection at ¶ 22. *See also* Uphold Objection at ¶ 4. The Trust also asked for a 10% bump up to assignors of their allowed claim and that it be permitted to solicit creditors through a portal. [ECF 1015, ¶ 14].

6. The Bankruptcy Court clearly found, after hearing argument and considering briefing on the issue, that assignment and adjudication of third-party claims was permissible under the Plan, in particular, if the claims were assigned as part of a preference settlement. The Bankruptcy Court ruled that the Trust "*would seek -– could seek or could obtain assignment of third-party claims that it could then pursue* on behalf of all creditors of the estate."[10] *See* Clarification Motion at ¶ 20. The Bankruptcy Court also found that if this took place as part of a preference settlement, that was "something that *can be done*." *Id.* at ¶ 22 (emphasis added). The

---

[8] Lockton is free to challenge the assignments in the California District Court (assuming Lockton can convince that court that it has subject matter jurisdiction, which will be litigated) or in state court, but not here on this Clarification Motion.

[9] All parties who objected to the Assignment Motion understood the Trustee's request. *See* Uphold Plaintiffs Objection to the Assignment Motion at 5 [ECF 1029] (the Assignment Motion "seeks to accomplish two primary objectives: first, to allow the Trust to obtain assignments of third-party claims held by creditors. . ."); Uphold's Objection to the Assignment Motion at ¶ 2 [ECF 1027] (central to Uphold's objection to the Assignment Motion was its contention that the Trust had no authority to acquire third-party claims).

[10] As with any power or right granted the Trust under the Plan, once it is granted, the Trustees have discretion to make a cost-benefit analysis on the exercise of such right with the goal of doing what is best for the Trust.

request for a bump up of assignors' allowed claims and the solicitation of claims to be assigned through a portal, however, was denied without prejudice.

7. The determination that assignments were allowed was a necessary *predicate* for the Court's ultimate decision to deny a request to do so using a bump up, and deny without prejudice, a portal. Unless the Court had given permission to assign and adjudicate third-party claims under certain circumstances, the Court would not have needed to consider the bump up or solicitation issues. Therefore, the Bankruptcy Court's ruling about assignments in general is not dicta, but rather was a holding of the Bankruptcy Court's decision.[11]

8. In sum, the relief requested through the Clarification Motion is limited. The Trustees seek clarification of what this Court has already decided. There is no need to re-brief, re-interpret or re-decide issues already determined, much less take discovery on these issues that are not properly before the Court. The Bankruptcy Court found the Trust could assign and adjudicate third-party claims acquired in preference settlements in the July 19, 2022 Bench Ruling. To the extent Defendants challenge that decision, here or in other courts, the Trustees respectfully ask this Court to clarify that ruling.

**FACTUAL SUMMARY**

9. In the Lockton Litigation—which is pending in California D.C., not in this Court—the Trust seeks damages from Lockton suffered by the Trust Assignors, who are certain CredEarn customers, the proceeds of which will be shared by all pre-petition creditors. These customers crypto plus interest was supposed to be returned to them but never was, and customers in general lost over $160 million dollars that has not been repaid. The Trust Assignors represent $66 million

---

[11] Since the right to assign and adjudicate claims exists in the Plan, the Trust does not need special permission to exercise that right, and a formal ruling would not be necessary.

of this loss. The basis of the Trust Assignors' claims is that they relied on a false and misleading disclosure jointly drafted by Lockton and Cred and posted on Cred's website *with the Lockton logo*. A senior Lockton officer, Jeff Koo, coordinating with Dan Schatt ("**Schatt**") worked with Cred over a period of time to craft the false statement. The disclosure was littered with fraudulent statements that, in short, informed the Trust Assignors that they were insured for losses, and which Lockton knew were false. The Trust seeks over $66 million in damages.

10. Schatt, the Cred miscreant who worked with Lockton on the fraudulent misrepresentations, remained in his position when Cred filed for chapter 11 relief. Schatt's role at Cred and his responsibility for its downfall were the subjects of concern among parties in interest in the Cred Chapter 11 case. Eventually, an Examiner[12] was appointed, and assigned to investigate Cred's downfall and allegations of fraudulent activity, among other things, and to issue a report. The Examiner's Report, [ECF 605] issued in March 2021, described a host of reckless and fraudulent acts that Schatt was involved in. Among other things, the Examiner found that Schatt ignored conflicts of interest, hired an escaped prisoner as Cred's chief capital officer, signed critical documents for Cred without legal and due diligence review, and generally woefully failed to fulfill his fiduciary duties owed to Cred. *Id*. at 95-99. In short, according to the Examiner, Schatt's management failures were a major contributing factor in Cred's downfall. *Id*. at 10. Soon after the Examiner's Report was issued, a plan was promptly confirmed thereafter, with the goal of turning the assets, including claims of Cred and those assigned to Cred by third-party assignors, over to the Trust. Among those assets were third-party claims based on false insurance disclosure, which was an issue identified by the Examiner. *Id*. at 37-40; 98.

---

[12] [ECF 338]

11. Even though it is irrelevant to the Clarification Motion, Lockton makes a strange effort to use the Debtors' first day motion relating to insurance to influence this Court. Prior to the Examiner's discovery of the numerous misdeeds of Schatt, the Debtors—while still under Schatt's control—sought approval of a first day insurance-related motion.[13] Not yet aware of the causes of Cred's downfall, Shatt's contribution to it, and the lies made about the insurance coverage, the committee of unsecured creditors took the cautious approach of agreeing to let the Debtors maintain whatever insurance existed, however inadequate it later proved to be.

12. The more important point that the Lockton fails to mention is that it later became apparent that Schatt and Cred's management had grossly misrepresented the extent and amount of insurance coverage it had. For example, the Examiner's Report found that customers were pointed to or received insurance information that, according to certain customers, led them to believe that their crypto loans were fully protected by Cred's insurance policies, even though they were not. Examiner Report at 37-39 [ECF 605]. The Examiner specifically concluded that "[i]t appears that, in certain instances, Cred mischaracterized the nature of its insurance coverage." *Id*. at 98. The factual section of Lockton's Objection thus does no more than uncover another deceitful statement made by Schatt, Lockton's accomplice in the insurance misrepresentation.

13. The Trust commenced the Lockton Litigation in California State Court because the Trust concluded that there was no federal subject matter jurisdiction (*See* Clarification Motion at 2-3). Lockton in response removed the litigation to the California D.C. Court, purportedly under 28 U.S.C. § 1452.

14. The Trustees have advised Lockton that they intend to file by February 17, 2023, a motion with the California D.C. Court to remand and/or to abstain. Upon the filing of that motion,

---

[13] This refers to the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Maintain Insurance Policies, (B) Pay All Related Obligations, and (II) Granting Related Relief* [ECF 10].

Lockton's deadline to answer or move to dismiss the complaint will be stayed. The California D.C. Court has scheduled a Case Management Conference for April 13, 2023. Because the parties have not met and conferred under F.R.C.P. 26(f), discovery in the Lockton Litigation is not yet open.

## ARGUMENT

### A. Lockton Lacks Standing to Object to the Clarification Motion

15. Lockton is a defendant in a litigation commenced by the Trust. It objected to the Motion for the sole purpose of harming the Trust's case in the Lockton Litigation. Lockton is not a creditor of the Debtors, and it did not appear until it filed its objection. Under well-established caselaw, Lockton lacks standing to be heard on the Clarification Motion. To the extent Uphold joins in the objection of a party with no right to object, its objection must also be disregarded.[14]

16. In order to object to a bankruptcy motion, a party must have a "legally protected interest[] that could be affected by" the Clarification Motion. *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 212-13 (3d Cir. 2011). Bankruptcy courts in the Third Circuit have declined to confer standing on potential litigation targets who attempt to interpose an objection in bankruptcy proceedings for purposes of avoiding liability. For example, in *In re Sweeney*, 275 B.R. 730, 733 (Bankr. W.D. Pa. 2003), a chapter 7 trustee sought court authority to employ special counsel to pursue certain claims. The targets of those claims opposed the employment application. But the court held that the targets did not have the necessary standing to appear in the bankruptcy case. *See id.* ("unfortunately for the State Court Action Defendants, that they are named as parties in the State Court Action does not thereby also make them parties-in-interest with respect to the instant bankruptcy case.").

---

[14] Because Uphold's pleading also included a "reservation of rights," the Trust has responded to the contentions in the Uphold Objection notwithstanding the Trust's position that it should be disregarded as well.

17. The potential impact of the chapter 11 case on defendant's ability to assert defenses is not enough to confer standing on parties such as the Defendants here. *In re Flintkote Co.*, 486 B.R. 99, 118 (Bankr. D. Del. 2012), *aff'd*, 526 B.R. 515 (D. Del. 2014) ("Any liability of ITCAN's, as may be determined in suits pending in other courts, is the result of its own pre-petition conduct."); *In re Phillips*, 2012 WL 1232008, at *3 (Bankr. D.N.J. Apr. 12, 2012) ("Harrah's is free to proceed with the state court action unhampered by the process in the bankruptcy court and is free to assert whatever defenses it possesses in that action, including the defense of judicial estoppel, which is not precluded" by its lack of standing in bankruptcy court).

18. Courts across the country have also consistently found that when a defendant in a separate litigation appears in a bankruptcy case to advance its selfish interest in that litigation, it lacks standing to be heard on the bankruptcy controversy. *In re Campbellton-Graceville Hosp. Corp.*, 593 B.R. 663 (Bankr. N.D. Fla. 2018) (denying standing to a potential litigation target because the desire to "minimize or eliminate its own potential liability" at the expense of the creditors of the estate was insufficient to establish standing); *In re PlusFunds Grp., Inc.*, 2015 WL 1842224, at *4 (Bankr. S.D.N.Y. Apr. 21, 2015) (noting that the district court previously agreed that the trustee's targets in state court litigation had no standing in the chapter 11 case); *In re E.S. Bankest, L.C.*, 321 B.R. 590, 598 (Bankr. S.D. Fla. 2005) (stating that "[it] is appropriate for a court to examine the motivation of the party asserting party-in-interest standing" and denying standing to an entity attempting to appear in a chapter 11 case as a "litigation tactic" to reduce its exposure in a separate litigation) (citation omitted). As one bankruptcy court has aptly put, granting the target of a lawsuit standing in the bankruptcy case matter to decide whether it can be sued in the first place "is a very strange idea, a little like putting the fox in charge of the hen house." *In re*

9

*Miller*, 347 B.R. 48, 52 (Bankr. S.D. Tex. 2006) (holding "Merck is not a party interest merely on showing that the Trustee will sue Merck.").

19. Here, Lockton is by its own admission a stranger to these chapter 11 cases.[15] (*see* Lockton Objection at ¶ 4, n.2). Lockton's sole and transparent purpose in filing the objection to the Classification Motion is to minimize its liability in a separate lawsuit and try to hinder that lawsuit's progress. Settled law on standing does not tolerate this cynical use of the bankruptcy system.

20. The Lockton Objection should thus be disregarded as should Uphold's Joinder.

**B. Defendants Cannot Re-Litigate Issues by Ignoring the July 19, 2022 Bench Ruling Finding the Assignments Were Permissible Under the Plan**

21. The Bankruptcy Court explicitly determined that, pursuant to the Plan and the Liquidating Trust Agreement, the Trust could obtain assignments of and prosecute third-party claims obtained through preference settlements (the "**Assignment Ruling**"). While Lockton pejoratively describes that ruling as "a handful of comments," (Lockton Objection at ¶ 4), Lockton's effort to minimize the Bankruptcy Court's decision does not change its importance. In reaching the Assignment Ruling, the Bankruptcy Court considered and resolved any alleged ambiguities that may have existed in the Plan and the Liquidation Trust Agreement.

22. The Assignment Ruling also cannot be conflated with the Bankruptcy Court's ruling on the issue of the 10% bump up and notice procedures so as to create a "single issue," as Uphold argues. Uphold cannot redefine how the issues were presented to the Bankruptcy Court in in connection with the Assignment Motion: the Trust specifically requested the assignment

---

[15] Lockton claims that they did not receive notice of the Assignment Motion. Lockton Objection at ¶ 4. Since they are not a party-in-interest, no notice was necessary. There is certainly no requirement for a trust to serve all potential future targets of litigation.

10

authorization as a separate form of relief.[16] And the Bankruptcy Court authorized such assignments in connection with preference settlements, while denying a 10% bump up and deciding that the notice issue through a portal would be denied without prejudice to the Trust's right to adjust the notice process. This result was far from the "unqualified denial" that Defendants mischaracterize it. Uphold Objection at ¶ 3.

23. As set forth in the Clarification Motion, on July 19, 2022, after considering a myriad of arguments about how the Plan purportedly did not permit assignment of third-party claims (which arguments are repeated in the Objections), after stating "I think everyone is pretty clear on where I stand on this," the Court ruled: "[I]n terms of the authority of the Trust to acquire third-party claims, although it was not completely clear in the plan or the trust agreement, I think it was certainly implied that the Trust ***would seek -– could seek or could obtain assignment of third-party claims that it could then pursue*** on behalf of all creditors of the estate." (See Clarification Motion, at ¶ 20). Whether the Court found the assignment was allowed because the language in the Plan was clear or unclear, implied or explicit, debatable or not debatable, is of no consequence now. The Bankruptcy Court ruled the assignment of third-party claims is permissible, and Defendants' feigned ignorance this ruling should be disregarded.

24. The Court also decided the language in the Plan permitted the Trust to acquire third-party claims in a scenario "where you're trying to compromise a claim, *a preference action* you have against somebody." *See* Clarification Motion at ¶ 21 (quoting Transcript at 50 Lines 4-10) (emphasis added).[17] The Bankruptcy Court contrasted that with a situation in which there is a

---

[16] *See* Assignment Motion at ¶ 11 and proposed Order at [ECF 1015-2 at ¶¶ 3-4]; Proposed Order for Assignment Motion requesting an order finding ("[t]he Trust has authority to adjudicate assigned Third Party Claims pursuant to the Plan and Trust Agreement").

[17] *See also* at 51 Lines 18-19, 56 lines 3-4.

11

"blanket notice to all creditors," such as with the portal. The Court then found, in the context of settling a claim with a creditor, if "the trustee wants to settle it, and as a result they give some value to a third-party claim that's going to be assigned to the trust. I think that's something that ***can be done***. (Clarification Motion at ¶ 22). The Court added if it is done on a "one-off basis so it's more clear." (*Id.*).

25. Thus, all the arguments that Defendants include in the Objections were raised throughout the hearing and in the related pleadings (*e.g.*, the definition of assets of the Trust, and Plan section 12.3(b)(vii)'s language regarding assignment and costs of pursuing of third-party claims)[18] and rejected by the Court. *See* Transcript Tr. at 19, 20, 21, 49, 50, 51-52, 56, 67-68.

26. Contrary to Uphold's incorrect claim, the Assignment Ruling is ***not*** dicta. The Assignment Motion sought permission to obtain assignment of third-party claims held by creditors, in addition to seeking a 10% bump up to assignors and to solicit assignors through a portal. The Objections of Uphold and the Uphold Plaintiffs to the Assignment Motion admitted that the permissibility of the assignment was a central issue to be determined. Uphold Objection to Assignment Motion at ¶ 2 [ECF 1027] (erroneously arguing that "the authority to 'adjudicate' third party claims, however, does not vest the Trustees with the authority to acquire non-estate third-party claims"); Uphold Plaintiffs Objection to the Assignment Motion at 5 [ECF 1029] (the Assignment Motion "seeks to accomplish two primary objectives: first, to allow the Trust to obtain assignments of third-party claims held by creditors. . .").

27. The Assignment Ruling was a separate ruling and critical to the Court's ultimate decision on the Assignment Motion. Had the Bankruptcy Court concluded that the Plan did not

---

[18] These references are too numerous to make their citation useful. They are throughout the 69-page Transcript.

authorize the acquisition of third-party claims, the Court would have denied the Assignment Motion outright, and never reached the issue of a 10% bump up or the form of notice.

28. The Assignment Ruling, which had been extensively briefed to the Bankruptcy Court, was therefore a necessary step for the Court's ultimate decision. As such, the Assignment Ruling was not *dicta*. The two important tests to determine that a court's ruling is not dicta are: (i) whether the court considered the issue decided, *e.g.*, weighed the merits of the issue and heard argument from adversaries, and (ii) whether the ruling constitutes the foundation of the ultimate decision. *In re McDonald*, 205 F.3d 606, 612 (3d Cir. 2000) (only a judicial statement peripheral to the decision is dicta; a statement that serves as a necessary predicate for the court's ultimate decision is a holding, not dicta); *United States v. Delaware Dep't of Ins.*, 2021 WL 3012728, at *16 (D. Del. July 16, 2021), *report and recommendation adopted*, 2021 WL 4453606 (D. Del. Sept. 29, 2021) (a question "central to the resolution" of the matter before a court was not dicta); *In re MIG, LLC*, 543 B.R. 527, 533-34 (Bankr. D. Del. 2015) (the question that the court "had to first decide" was "essential to [its] holding" and was not dicta). The two criminal cases cited by Uphold only prove that point. *See Coleman v. Greene*, 845 F.3d 73, 76 (3d Cir. 2017) (dictum is "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding."); *United States v. Mallory*, 765 F.3d 373, 381 (statement was dictum because the issue, unlike the Assignment Ruling here, "was not a contested issue in that case").

29. In the Lockton Objection, Lockton simply and inappropriately argues that the Bankruptcy Court's decision was wrong. As an alternative to Uphold's mistaken characterization of the Assignment Ruling as dicta, Lockton flatly disagrees with the Bankruptcy Court's decision. They both seek to buttress their coordinated self-serving interpretation of the Assignment Ruling

by repeating arguments that the U.S. Trustee made at the July 19, 2022 hearing. But the United States Trustee now appropriately takes no position on the Clarification Motion. The Assignment Ruling is unaffected by Defendants' post-hoc and self-serving arguments.

30.   Even if the Bankruptcy Court did not "rule" that assignments to the Trust were permissible in connection with preference settlements, the Bankruptcy Court's statements certainly are reasonably understood to mean that it believed assignments were permitted under the Plan. *See In re Melinta Therapeutics, Inc.*, 623 B.R. 257, 263 n.26 (Bankr. D. Del. 2020) (prior judicial opinion was not dicta and to the extent that it was, it was persuasive on the issue presented). While Defendants argue that the Bankruptcy Court prohibited the assignment to the Trust of third-party claims in connection with preference settlements, or that a further order and hearing is necessary to permit the Trust to exercise its rights under the Plan, that is not the case. The Trust has that right without the need for notice or an order.

31.   Contrary to the arguments of Uphold (Uphold Objection at ¶¶ 5-6) and Lockton (Lockton Objection at ¶3), neither the Plan nor the Liquidation Trust require the Trust to obtain a Court order or send a notice to parties prior to the Trust acquiring third party claims, since that right has already been granted to the Trust in the Plan.[19] In fact, the creditors' committee in Cred's chapter 11 case noticed all parties that the Plan provided , "[u]nder the guidance of the Trust Advisory Board, the Liquidation Trustee" the Trust was authorized to "pursue a *comprehensive*

---

[19] This differs from the 10% bump-up and portal solicitation for which the Trust sought an order. Since the Trust has the right to acquire third-party claims, armed, at the very least with guidance from the Court, as to the permissible parameters, the Trust does not need to seek permission or give prior notice. The Trustees are free to use their discretion to litigate in a cost-effective way.

*and aggressive strategy* to recover value through various causes of action, including, *without limitation*," of . . . "third parties" (collectively, the "Causes of Action")."[20]

32.   In sum, the Trust has properly exercised its discretion to acquire the claims of the Trust Assignors against Lockton. A review of the Lockton Complaint demonstrates the significant value the Trust seeks to recover for all creditors from such assignment and pursuit of claims against Lockton.

**C. Discovery Is Unnecessary to Clarify the Bankruptcy Court's Decision: Defendants Seek It to Interfere with Trust's Litigation Against Them**

33.   Discovery, a tactic Defendants use to relitigate old issues and disrupt the Trust's pursuit of actions against them, is not necessary for this Court to clarify the July 19, 2022 Bench Ruling. Defendants cannot back-door their way into discovery to challenge the Trust's claims in their respective litigations.

34.   This Court has not been asked to address whether the Trustees' Complaint states claims for relief against Lockton, including the allegations about the assignments. Lockton should not be permitted to obtain premature discovery here, particularly since on a future motion to dismiss, the allegations in the Trustees' Complaint against Lockton will be accepted as true.[21] *Maya v. Centex Corp.*, 658 F.3d 1060, 1068-69 (9th Cir. 2011). Therefore, no discovery on this issue should be allowed in this Court.

35.   Defendants try to manufacture a basis for discovery by reopening every facet of the July 19, 2022 Bench Ruling so they can avoid liability. But the issues addressed at the prior hearing

---

[20] *See Notice of Filing of Letter of the Official Committee of Unsecured Creditors in Support of First Amended Combined Joint Plan of Liquidation and Disclosure Statement of Cred Inc. and its subsidiaries under Chapter 11 of the Bankruptcy Code*. [ECF 393-1 at 4] (emphasis added).

[21] Lockton is transparently attempting to circumvent the discovery limitations in the California D.C. Court. The required Rule 26(f) conference in that action has not been scheduled and is unlikely to take place before late March 2023 because the court has scheduled a Rule 16(b) conference for April 13, 2023. Lockton is not entitled to *serve* (let alone *obtain*) discovery until after the Rule 26(f) conference has concluded. *See* Fed. R. Civ. P. 26(d)(1).

were already decided. No discovery is necessary to clarify the Bankruptcy Court's decision. The only documents that need to be considered is the transcript and record of July 19, 2022 Bench Ruling, and the pleadings that relate to that decision.

36. Defendants also cite the Declaration of Cedric de Lisser as support for a supposed need for discovery. But that Declaration was submitted to the Court as background and to show the need for a Clarification on the narrow topic of an assignment and part of a preference settlement. The Court can also accept the Trustee's representations in the Clarification Motion on that issue that the Trust has obtained such assignments.

37. Moreover, the Defendants cannot create a purported basis for discovery by pretending the Court is now being asked to clear up a Plan "ambiguity." Lockton Objection, ¶ 40. The Court's findings in the July 19, 2022 Bench Ruling interpreted the Plan as a whole to describe its meaning, which was arguably not addressed sufficiently directly in the Plan. That does not mean the Bankruptcy Court found an ambiguity, though. The quotations about what the Trust's counsel said at the hearing are consistent with the Court's application of rules of contract interpretation, for which no extrinsic evidence was necessary.

**D. This Court Should Not Re-Consider Whether the Plan Permits Assignment Because the Trustees Have Not Requested Such Relief**

38. The Trustees have not asked this Court to re-consider, re-do, or re-evaluate the Plan provisions relating to assignment of third-party claims. The Trustees therefore believe such inquiry is not appropriate for the purposes of this Clarification Motion. Nor do the Trustees include argument on that point in the moving papers.

39. Nevertheless, as set forth above, the Defendants, who have been sued on third-party claims assigned to the Trust, seek to reopen the issue of assignment in connection with this

Clarification Motion. But if Lockton believes that the Trust Assignor claims have not been properly assigned to the Trust, it can argue that in the Lockton Litigation.

40. Any Plan interpretation was supported by the arguments of the Trust's general bankruptcy counsel, made last year in the Assignment Motion and Reply to the objections filed, attached as **Exhibits A** and **B** to the *Second Declaration of Angela J. Somers*, filed concurrently herewith. The request for clarification does not require re-opening the prior proceedings, and the Trustees respectfully request the Court confirm the Trustees' understanding of the July 19, 2022 Bench Ruling.

### E. The Trustees Gave Adequate Notice of the Motion

41. Lastly, Uphold claims that notice of the Motion was inadequate. *See* Uphold Objection at 5 (notice is inadequate because "the Trust is not seeking to 'clarify' a prior ruling of this Court."). This argument is premised on the incorrect contention that the Trustees are seeking much more than a clarification of the July 19, 2022 Bench Ruling regarding the authority of the Trust to acquire third party claims. But as explained above, the Trustees are only seeking this limited relief. Therefore, notice to the parties who were initially noticed for the Assignment Motion, in addition to Lockton, was adequate.

## CONCLUSION

**WHEREFORE**, the Trust respectfully requests that the Court (i) overrule the Objections and approve the Clarification Motion; and (ii) grant such other and further relief as is just and proper.

Dated: February 6, 2023

*/s/ Jonathan M. Kass*
**REID COLLINS & TSAI LLP**
Jonathan M. Kass (DE ID 6003)
300 Delaware Avenue, Suite 770
Wilmington, DE 19801-6600
(302) 467-1765
jkass@reidcollins.com

**REID COLLINS & TSAI LLP**
Angela J. Somers (*pro hac vice)*
Jeffrey Gross (*pro hac vice*)
Minyao Wang (*pro hac vice*)
420 Lexington Avenue
Suite 2731
New York, NY 10170
(212) 344-5200
asomers@reidcollins.com
jgross@reidcollins.com
mwang@reidcollins.com

*Special Counsel to the Trustees of the Cred Inc. Liquidation Trust*