# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CRED INC., *et al.*, | ) | Case No. 20-12836 (JTD) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | Obj. Deadline: 7/7/22 at 4:00 p.m. (ET) |
| | ) | Hrg. Date: 7/19/22 at 3:00 p.m. (ET) |

## MOTION OF THE CRED INC. LIQUIDATION TRUST FOR ENTRY OF ORDER APPROVING THIRD PARTY CLAIM ASSIGNMENT PROCEDURES

The Cred Inc. Liquidation Trust (the "Trust") established in the chapter 11 bankruptcy cases (the "Chapter 11 Cases") of the above-captioned debtors (collectively, the "Debtors") hereby submits this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), approving the Assignment Procedures (as defined herein). In support of this Motion, the Trust respectfully states as follows:

### JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This Motion involves a core proceeding as it concerns matters in connection with, arising out of, or related to the Plan (as defined herein) as to which this Court retained exclusive jurisdiction pursuant to Article XIX of the Plan and Paragraph 33 of the Confirmation Order (as defined herein). *See In re MPC Computers, LLC*, 465 B.R. 384, 393

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Cred Inc. (8268), Cred (US) LLC (5799), Cred Capital, Inc. (4064), Cred Merchant Solutions LLC (3150), Cred (Puerto Rico) LLC (3566). The Debtors' mailing address is 3 East Third Avenue, San Mateo, California 94401.

(Bankr. D. Del. 2012) (finding that the court has jurisdiction over an adversary proceeding involving claims assigned to the post-confirmation trust because the assignment of the claims was contemplated in the plan and trust agreement, and the confirmation order provides for the retention of jurisdiction).

2. In accordance with Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Trust confirms its consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A.    The Chapter 11 Cases**

4. On November 7, 2020, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On December 3, 2020, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). Docket No. 120.

5. After the Committee's appointment, the Committee undertook extensive efforts to move the cases expeditiously towards confirmation to reduce administrative expenses and begin its investigation into the estates' claims for the benefit of unsecured creditors. Accordingly, shortly after being appointed, the Committee began negotiations with the Debtors on a consensual resolution of the Chapter 11 Cases, which culminated into a plan support agreement term sheet [Docket No. 279] (the "Initial PSA").

6.      The Initial PSA contemplated a sale of all or part of the Debtors' assets under Bankruptcy Code section 363 consistent with the Bid Procedures Order. Following an unsuccessful sale process, the Committee and the Debtors entered into an amended plan support agreement under which, among other things, the Committee established case milestones to confirm a chapter 11 plan and an outside plan effective date of March 31, 2021. Docket No. 464.

**B.      The Chapter 11 Plan**

7.      On December 31, 2020, the Debtors filed the *Combined Joint Plan of Liquidation and Disclosure Statement of Cred Inc. and its Subsidiaries Under Chapter 11 of the Bankruptcy Code* [Docket No. 301] (as amended, the "Plan").

8.      A key issue for the Committee upon its appointment was whether the Trust should take assignment of potential claims that Cred's customers have against third parties for wrongdoing related to Cred (the "Third Party Claims"). These are claims that only Cred's customers—not the Trust—would have standing to pursue. To address this issue, one of the Trustees' responsibilities set forth in the Plan includes "[a]djudicating third-party claims assigned, purchased, or otherwise transferred to the Liquidation Trust." Plan, § 12.3(b)(vii).

9.      On March 11, 2021, the Court entered an order confirming the Plan. Docket No. 629. The Plan became effective on April 19, 2021 (the "Effective Date"). Docket No. 730. On the Effective Date, the Committee was dissolved and the Trust was established. The Debtors' assets were transferred and assigned to the Trust. *See* Plan, Art. 12.3. Three members of the Committee currently serve as Trustees of the Liquidation Trust (the "Trustees"). One Committee member and two creditors (who were not Committee members) currently serve on the Trust Advisory Board (the "TAB"). The Trust is governed by the Liquidation Trust Agreement [Docket No. 579-1] (the "Trust Agreement").

10.     Pursuant to the Trust Agreement, in connection with the administration of the Trust, the Trustees have the authority to "[a]djudicat[e] third-party claims assigned, purchased, or otherwise transferred to the Liquidation Trust." Trust Agreement, Art. 2.4(7).

C.    **Third Party Claim Assignment**

11.     Since the Effective Date, the Trust has worked diligently to evaluate and pursue certain actions to recover property for the benefit of creditors. During this process, the Trust continued to evaluate whether the assignment of Third Party Claims to the Trust would be in the best interests of creditors. After careful consideration, the Trustees, with the input and consent of the TAB, determined that there were meaningful benefits to pursuing such assignment, including: (i) the Trust's potential recoveries would likely increase, (ii) defendants would be more likely to engage in comprehensive global resolutions without the uncertainty of subsequent litigation by other third parties; and (iii) reduced risk of duplicative and inconsistent litigation.

12.     After the Trust determined that pursuing the assignment of Third Party Claims would be in the best interests of creditors, the Trust contacted certain of the largest creditors to gauge their interest in assigning their Third Party Claims.[2] The Trust received overwhelmingly positive feedback from such creditors in response to the Trust's proposal.

13.     Many of the creditors reside in countries around the globe. For that reason, the Trust also worked with its claims and noticing agent, Stretto, to determine the most efficient approach to opening communication channels to creditors to consummate the assignment of Third Party Claims. The development of this communication process is still ongoing.

---

[2]   The Trust has not completed its claim reconciliation process, and thus the size of creditors' claims was determined based on scheduled claims and filed proofs of claim.

**D.    The Assignment Procedures**

14.     After careful consideration, the Trustees, with the guidance of Trust professionals and consent of the TAB, developed the following procedures for the assignment of Third Party Claims (collectively, the "Assignment Procedures"):

    a.     Stretto will launch an online information distribution portal (the "Portal"). Information regarding how to access the Portal will be distributed to creditors via email and regular mail, as needed.[3]

    b.     Upon accessing the Portal, creditors will have the choice to opt-in to assigning their legal claims to the Trust.[4] Creditors that choose to opt-in to the legal claim assignment ("Assigning Creditors") will be provided with a Legal Claim Assignment and Assumption Agreement (the "Claim Assignment Agreement") to be executed and returned to the Trust.

    c.     If a creditor opts-in and returns an executed Claim Assignment Agreement to the Trust, all of such creditor's right, title, and interest in such claims and all rights to prosecute such claims in any proceeding will be assigned to the Trust. For the avoidance of doubt, the Trust will be the sole party with authority to prosecute assigned Third Party Claims, and any recovery by the Trust with respect to assigned Third Party Claims will flow exclusively to the Trust for the benefit of all creditors (not only the Assigning Creditors).

    d.     In consideration for assigning Third Party Claims to the Trust, Assigning Creditors will be entitled to a 10% increase of their allowed claim amount (*e.g.*, if an Assigning Creditor has an allowed claim equal to $100,000, the allowed claim will be automatically increased to $110,000). No other rights or priorities of claims will be altered.

---

[3]    During the Chapter 11 Cases, the Court authorized the Debtors to serve creditors by email and regular mail, as needed. *See* Docket No. 264. The Trust will use the same service schedule for distributing information regarding access to the Portal.

[4]    In addition to the Third Party Claims assignment process, the Trust also intends to use the Portal for other administrative tasks, including (i) accepting tax forms, (ii) completing distribution questionnaires, and (iii) providing updated contact information to the Trust.

5

**RELIEF REQUESTED**

15. The Trust respectfully requests entry of the Proposed Order approving the Assignment Procedures.

**BASIS FOR RELIEF REQUESTED**

A. **The Trust Has Authority to Pursue Assigned Third Party Claims**

16. Pursuant to the Plan and the Trust Agreement, the Trustees are authorized to "[a]djudicat[e] third-party claims assigned, purchased, or otherwise transferred to the Liquidation Trust." Plan, Art. 12.3; Trust Agreement, Art. 2.4(7); *see Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 510 (D. Del. 2012) (finding that a post-confirmation trustee (as opposed to a bankruptcy trustee) has standing to pursue assigned third party claims); *Grede v. New York Mellon*, 598 F.3d 899, 902 (7th Cir. 2003) (analogizing post-confirmation trustees to a reorganized debtor in that a reorganized debtor would be free to pursue third party claims and stating that the terms of the chapter 11 plan and trust agreement govern the duties of a trustee after bankruptcy).

17. Even if the Plan did not contemplate the assignment of Third Party Claims, a trustee "who obtains valid assignments of claims is not prevented from suing on those claims simply because the assignee is a creature of bankruptcy." *Taberna Capital Management, LLC v. Jaggi*, Case No. 08 Civ. 11355 (DLC), 2010 WL 1424002, at *3 (S.D.N.Y. April 9, 2010); *see Semi-Tech Litigation, LLC v. Bankers Trust Co.*, 272 F.Supp. 2d 319, 324 (S.D.N.Y. 2003) (the assignee having no claim of its own "is no different than in most cases, outside the bankruptcy context, in which assignees may sue on assigned claims . . . . The Court sees no basis for treating an assignee created by, or assignments made pursuant to, a Chapter 11 plan any differently."); *see generally Zazzali v. Eide Bailly LLP*, Case No. 1:12-CV-349-S-MJP, 2013 WL 6045978

6

(D.Id. Nov. 14, 2013) (agreeing with *Grede* and *Semi-Tech*). Accordingly, the Trust has authority to pursue and adjudicate assigned Third Party Claims. Notwithstanding such authority, out of an abundance of caution and before incurring expenses associated with Third Party Claims assignment, the Trust is requesting Court approval of the Assignment Procedures.

**B.    Third Party Claims Assignment and the Implementation of the Assignment Procedures are in the Best Interests of Creditors**

18.    The Trustees and the TAB are fiduciaries acting on behalf of the interests of all creditors. *See* Plan, Arts. 12.3(f)(i). Accordingly, decisions made by the Trustees and the TAB are made solely for the best interests of creditors. After careful consideration, the Trustees and the TAB determined that pursuing the assignment of Third Party Claims is in the best interests of creditors. Adjudicating such Third Party Claims will provide a number of potential benefits to creditors, including: (i) the Trust's potential recoveries for the benefit of creditors would likely increase, (ii) defendants would be more likely to engage in comprehensive global resolutions without the uncertainty of subsequent lawsuits, and (iii) reduced risk of duplicative and inconsistent litigation. Conversely, the Trustees and the TAB determined that the most significant risk of pursuing the Third Party Claims is the potential for increased expenses. However, such risk is mitigated for at least two reasons.

19.    *First*, the Trust will likely pursue the defendants that are subject to the Third Party Claims regardless of whether the Third Party Claims are assigned. To date, the Trust has conducted an extensive investigation of the Debtors' books and records, conducted numerous interviews, and examined thousands of documents received from third parties. Accordingly, the incremental expenses of pursuing Third Party Claims are likely to be nominal.

20. **Second**, the Trust will not pursue all Third Party Claims solely because such claims have been assigned. The Trust will continue to analyze the viability of Third Party Claims and the potential for recovery when determining whether to pursue such claims.

21. Based on the foregoing analysis, the Trust and the TAB unanimously agreed that the assignment of Third Party Claims could provide substantial benefits to creditors. After making that determination, the Trust needed to evaluate procedures to implement the Third Party Claims assignment that would inure to the benefit of creditors. There were two notable obstacles that the Trust needed to overcome.

22. **First**, incentivizing creditors to agree to assign legal claims to the Trust, notwithstanding that recoveries on such claims would be pooled for the benefit of all creditors. The Trustees and the TAB concluded that increasing the allowed claims of Assigning Creditors by 10% (subject to distributions in accordance with the Plan) provided sufficient incentive without significantly diluting distributable assets. Moreover, the Trustees and the TAB determined that the increase in potential recoveries combined with the potential for a global settlement prior to incurring litigation costs provided a greater potential benefit to creditors than a 10% increase in Assigning Creditors' allowed claims.

23. **Second**, given the location of creditors, the Trust needed to formulate a cost effective approach to effectuate the assignments. The Trustees and the TAB developed a creative solution to accomplish this goal through launching the Portal. Upon launching the Portal and providing access instructions, the Trust will be able to quickly (i) assess the scope of Assigning Creditors and (ii) effectuate valid assignments. The Portal will also provide a number of other benefits to creditors, including an open line of communication that will assist with accessing and providing information.

24. For the foregoing reasons, the assignment of Third Party Claims to the Trust and the implementation of the Assignment Procedures is in the best interests of creditors, and the Trustees' and TAB's decisions with respect thereto are a sound exercise of their business judgment. *See In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (KJC), 2013 WL 12324114, at *7 (Bankr. D. Del. July 9, 2013) (applying the business judgment standard to post-confirmation liquidating trustee's decision). Accordingly, the Trust respectfully requests that the Court approve the Assignment Procedures.

## NO PRIOR REQUEST

25. No previous request for the relief requested herein has been made to this or any other court.

## NOTICE

26. Notice of the Motion has been provided to parties that have requested notice pursuant to Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Trust submits that no other or further notice is required.

*[Remainder of Page Intentionally Left Blank]*

## **CONCLUSION**

**WHEREFORE**, the Trust respectfully requests entry of the Proposed Order approving the Assignment Procedures.

Dated: Wilmington, Delaware
June 23, 2022

**MCDERMOTT WILL & EMERY LLP**

*/s/ David R. Hurst*
David R. Hurst (I.D. No. 3743)
1007 North Orange Street, 10th Floor
Wilmington, DE 19801
Telephone: (302) 485-3900
Facsimile: (302) 351-8711

- and -

Darren Azman (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

*Counsel to the Cred Inc. Liquidation Trust*