## Exhibit A

```
 1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 2

 3   IN RE:                        .  Chapter 11
                                   .
 4   Cred Inc.,                    .  Case No. 22-10534 (CTG)
                                   .
 5                                 .  (Jointly Administered)
                                   .
 6                                 .  Courtroom No. 7
                                   .  824 Market Street
 7                                 .  Wilmington, Delaware 19801
                Debtor.           .
 8   . . . . . . . . . . . . . .   .  Thursday, February 9, 2023
                                      2:00 p.m.
 9
                           TRANSCRIPT OF HEARING
10            BEFORE THE HONORABLE CRAIG T. GOLDBLATT
                  UNITED STATES BANKRUPTCY JUDGE
11
     APPEARANCES:
12
     For the Cred
13   Liquidation Trust:        Jonathan Kass, Esquire
                               REID COLLINS & TSAI LLP
14                             300 Delaware Avenue, Suite 770
                               Wilmington, Delaware 19801
15
                               Angela Somers, Esquire
16                             REID COLLINS & TSAI LLP
                               420 Lexington Avenue
17                             Suite 2731
                               New York, New York 10170
18

19   (APPPEARANCES CONTINUED)

20   Audio Operator:          Theresa Mistretta

21   Transcription Company:   Reliable
                               The Nemours Building
22                             1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
23                             Telephone: (302)654-8080
                               Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
```

1    APPEARANCES (CONTINUED):

2    For Lockton:               Renita Sharma, Esquire
                                QUINN EMANUEL URQUHART & SULLIVAN
3                               51 Madison Avenue
                                22nd Floor
4                               New York, New York 10010

5    For Uphold HQ:             Michael Delaney, Esquire
                                BAKER & HOSTETLER LLP
6                               Key Tower
                                127 Public Square, Suite 2000
7                               Cleveland, Ohio 44114

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                    INDEX

2    MOTIONS:                                              PAGE

3    Agenda
     Item 1: Motion of the Trustees of the Cred Inc.        4
4            Liquidation Trust Pursuant to Section 105
5            of the Bankruptcy Code for Clarification
             of the July 19, 2022 Bench Ruling Regarding
6            Trust's Authority to Acquire Certain Third
             Party Claims (D.I. 1070, Filed 01/23/23)

7            Court's Ruling:                               49
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commence at 2:00 p.m.)

2              THE COURT:  Be seated.

3        (Participants confer)

4              THE COURT:  So good afternoon.  We are here in In

5    Re Cred, which is Case Number 20-12836.

6              I'm happy to hear from counsel.

7              MR. KASS:  Good afternoon, Your Honor.  Jonathan

8    Kass of Reid, Collins & Tsai.  Making -- arguing the motion

9    today will be my partner Angela Somers from the New York

10   office.

11             THE COURT:  Okay.  Very well.

12             MR. KASS:  With your permission.

13             THE COURT:  Certainly.

14             MS. SOMERS:  Good afternoon, Your Honor.  Angela

15   Somers, Reid, Collins & Tsai, on behalf of the Trustees of

16   the Cred Liquidation Trust.

17             The trust is here today for clarification of a July

18   19, 2022 bench ruling.  As explained in our pleadings, we are

19   here as a result of a notice of removal having been filed by

20   Lockton Companies in the District Court for the Northern

21   District of California.

22             In December of 2022, the trustees commenced a case

23   in California State Court against Lockton based solely on

24   state law claims.  The claims that were the basis of the suit

25   were those of CredEarn customers who lent their crypto to

1   Cred and never received payment back.

2        In making that loan, those customers relied on

3   blatantly false representations about insurance made by

4   Lockton and posted on Cred's website with the Lockton logo.

5   Certain of those customers were -- claims were assigned to

6   the trust.  Those are the claims pursued by the trustees in

7   this California litigation.

8        In California, Lockton seeks to remove the state

9   court case to Federal Court on the grounds that the plan

10  needs to be interpreted; and, therefore, related to

11  bankruptcy jurisdiction exists.  There are no other grounds

12  for federal court jurisdiction.

13        The trustees do not believe there is related to

14  jurisdiction based on the distant, rather than close, nexus

15  between the state law claims and Cred's bankruptcy case.  The

16  trust, therefore, did not want to take the risk of the case

17  being dismissed at a later point in time for lack of subject

18  matter jurisdiction and, therefore, commence the case in

19  California.

20        Lockton argues in the removal notice that the

21  Bankruptcy Court did not approve the assignment of third-

22  party claims to the trust.  Based on that faulty premise,

23  Lockton argues in the notice of removal, as part of the

24  Lockton litigation, the California District Court will need

25  to interpret the plan of reorganization of Cred; and, thus,

1  related to jurisdiction exists.

2        The trust was naturally surprised at this argument

3  because it understood this issue had been, in fact, resolved

4  by the Bankruptcy Court at the July 19, 2022 bench ruling.

5  The trust's general bankruptcy counsel -- and just for

6  clarity, we are special counsel for purposes of this

7  litigation -- which handled the issue -- and the client

8  attended -- all understood the result of the July 19 hearing.

9        The transcript is also clear that Judge Dorsey

10  decided that the trust could acquire third-party claims and

11  pursue them if done as part of preference settlements, and

12  that decision is not dicta.

13        The assignment motion, which was the motion heard

14  in July, specifically addressed assignments of third-party

15  claims.  In the proposed order submitted by the trust at that

16  time, the trust asked for a decision that the trust could

17  adjudicate assigned third-party claims, pursuant to the plan

18  and trust agreement.  The trust argued this point in the

19  assignment motion at the July 19 hearing.  While the trust

20  believed it had such authority in the plan, as belts and

21  suspenders, explicit authority was also squarely requested in

22  the assignment motion.

23        There were some additional features considered at

24  the July 19 hearing that the Judge did not approve.  Those

25  were more far-reaching.  They included a ten percent bumped

1  up -- bump-up of the allowed claim of customers who assign

2  their claims to the trust and the use of a portal to

3  generally solicit all creditors.

4          After much back-and-forth and debate on the plan's

5  language and the meaning of it and whether it authorized

6  acquisition of claims by the trust, Judge Dorsey decided the

7  following:

8          First, pursuant to the plan, the trustee has the

9  right to take an assignment of third-party claims and

10  adjudicate those claims.

11          In the transcript, Judge Dorsey ruled in connection

12  with the plan:

13          "I think, in terms of authority of the trust to

14  acquire third-party claims, the trust would seek, could seek,

15  or could obtain assignment of third-party claims, and it

16  could then pursue them on behalf of creditors of the estate."

17          Judge Dorsey also decided when the trust could and

18  could not exercise that right.  In response to the trust's

19  counsel saying why was the language in the plan in there if

20  the trust could not adjudicate assigned claims, Judge Dorsey

21  responded you can use that right -- and "that right" is not

22  literally what the Court said, but he's referring to that

23  right -- you can use that right in the scenario you gave me

24  where you're trying to compromise a claim, a preference you

25  have against some one.  And then he added:

1          "They say, hey, I got a third-party claim against

2    somebody, I'll give it to you in return for you forgiving my

3    preference, and you say okay.  Now you've got that claim."

4          He also ruled, with respect to acquisition of the

5    claims of individual claimants:

6          "I think that's something that can be done, but

7    it's done on a one-off basis, so it's clear."

8          Judge Dorsey then ruled that the trust could not

9    offer the creditors a ten percent bump-up of their allowed

10   claim.

11         He also ruled without prejudice that the trust

12   could not acquire the claims by soliciting creditors through

13   the portal that was proposed, rather than as part of a

14   preference settlement.

15         Judge Dorsey made clear this limitation on certain

16   assignments does not include preference targets.  I'm not

17   talking about preference targets, he said, I'm talking about

18   someone who is just a creditor of the estate.

19         These rulings are not dicta.  Having first decided

20   that the trust could acquire third party claims, and then

21   that acquisition was permissible on a one-off basis as part

22   of preference settlements, the Court addressed the remaining

23   issues of the bump-up and the portal.  The Court would never

24   have gotten to the second two issues without having decided

25   that assignment was permissible as part of the preference

1  settlements.

2          In deciding whether a court's statement is dicta,

3  courts consider the following:

4          Was the issue decided central to the Court's

5  resolution of the matter before the Court?

6          Was the issue decided a predicate for another

7  decision made by the Court; or, instead, was the issue

8  peripheral to the decision?

9          The cases we cite provide examples of why this

10  Court should conclude the assignments were not dicta.

11          In McDonald, the Third Circuit Court of Appeals

12  addressed the issue of whether, in a Chapter 13 case, a

13  wholly unsecured mortgage was subject to the Bankruptcy

14  Code's anti-modification clause of Section 1332(b)(2).

15          In doing this, the Third Circuit engaged in an

16  analysis of Nobelman, a Supreme Court case.  The Supreme

17  Court in Nobelman held that, when there was a single mortgage

18  on a property greater than the value of the property, the

19  debtor could not split the mortgage and treat the unsecured

20  part different than the secured part and, therefore, not

21  subject to the anti-modification clause.  In making this

22  decision, the Court foudn that Section 506(a) applied to an

23  under-secured mortgage because part of the claim was secured.

24  In McDonald, the debtor argued that, because 506 -- which is

25  a predicate to 1332, which refers to a secured claim -- did

1  not apply to a wholly unsecured mortgage, the anti-
2  modification provision did not apply.
3         The lender argued the 506 ruling was dicta, and the
4  Court found it was not dicta because it was a statement in a
5  judicial opinion that could not have been deleted without
6  seriously impeding the analytical foundation of the holding.
7         In Malinka (phonetic) -- and that's a bankruptcy
8  case in Delaware -- the movant shareholders sought to use
9  1444 of the Bankruptcy Code, and that's the section that
10 allows one to set aside a confirmation order.  And the
11 question was:  Can you do it only if there is fraud?  In
12 deciding the Chapter 11 issue, the Court looked to Fesk
13 (phonetic) a Third Circuit case, and that's a Chapter 13 case
14 -- Chapter 13 has a similar provision, which I'm sure you're
15 aware of, 1330, to set aside that confirmation order.
16        In determining the 1330 issue, the Court in Fesk
17 looked at 1144 and explored the history of the two code
18 sections and discussed them together.  The Fesk Court then
19 held grounds to set aside a confirmation order were limited
20 to situations where there was fraud.
21        The McDonald Court tried to argue that that
22 decision in Fesk did not apply because they're a Chapter 11
23 case and Fesk is a Chapter 13 case.  But because the Court
24 analyzed the two sections together, went into the legislative
25 history, included the reasoning in them, even in a case where

1  they were addressing a completely different code section not

2  applicable to Chapter 13 cases, the Court found that was not

3  dicta because it was important in the Court's reasoning.

4      These cases make clear the ruling of the Bankruptcy

5  Court here allowing the trust to obtain assignment of third-

6  party claims was not dicta; instead, it was essential to the

7  ultimate ruling.

8      Based on this, Your Honor might ask, well, why do

9  you need clarification.  That's a good question.  And the

10 answer is that a court has discretion to clarify its own

11 ruling.  And this is a bench ruling, so the ruling is

12 contained in a long transcript.  And the Bankruptcy Court is

13 particularly well suited to understand the record since it

14 understands bankruptcy issues and third-party assignments to

15 a bankruptcy-related trust.

16     We thought requesting clarification of the Court's

17 ruling was a better route that allowing Lockton to capitalize

18 on a nonissue to support its removal efforts.  While our

19 position seemed simple and straightforward, somehow Lockton

20 does not agree.  Whether or not Your Honor considers

21 Lockton's argument, the conclusion that the July 19 bench

22 ruling permitted the assignment as part of a preference

23 settlement should not change.  It's clearly supported by the

24 transcript.

25     This leads me to my next point, which is:  Should

1   this Court hear what Lockton has to say?  The trust believes

2   the answer to that question is unequivocally no.  This Court

3   should clarify the July 19, 2022 bench ruling without hearing

4   the arguments of Lockton because Lockton has no standing.

5            Most courts conclude that letting a defendant weigh

6   in on issues like this is like putting a fox in charge of the

7   henhouse.  We cite those cases; they include Sweeney

8   (phonetic), and Phillips (phonetic), and other outside the

9   Third Circuit.  In those cases, a party wanted to reopen a

10  case and defendants objected.  Those decisions point to

11  several cases and hold, in a state court litigation, where

12  the proceeds of an award will be distributed to creditors,

13  defendants have no standing to object to the reopening of a

14  case.

15           THE COURT:  Okay.  But if you're right on the

16  merits, it won't matter if I listen to them, right?

17           MS. SOMERS:  The merits of the --

18           THE COURT:  Your entitlement to the clarification.

19  If you're right that --

20           MS. SOMERS:  Yes.

21           THE COURT:  -- you're entitled --

22           MS. SOMERS:  Yes.  Yes.

23           THE COURT:  Right?  And so --

24           MS. SOMERS:  I agree with you.

25           THE COURT:  -- throwing them out on standing only

1  changes the outcome in a case in which you were wrong on the

2  merits --

3          MS. SOMERS:  Yes.

4          THE COURT:  -- right?

5          MS. SOMERS:  Yes, Your Honor, certainly.  And we're

6  not afraid to hear their argument.  We're -- that's why we

7  argued it fully in the briefs.  You know, if Your Honor would

8  like to hear it, he can hear it.

9          THE COURT:  Okay.  I understand.  I understand your

10 argument on standing.

11         MS. SOMERS:  Yes.

12         THE COURT:  I didn't -- and one of them is a

13 creditor, too, right?

14         MS. SOMERS:  Uphold --

15         THE COURT:  One of the objecting parties.

16         MS. SOMERS:  Uphold is definitely in a different

17 situation.  But as Your Honor sees from our papers, we're

18 arguing that, because they joined in the Lockton objection

19 and because they -- their entire objection is, you know,

20 similar to Lockton and intertwined with Lockton, that their

21 standing is equally as --

22         THE COURT:  But they are a creditor, right?

23         MS. SOMERS:  You're right --

24         THE COURT:  So that --

25         MS. SOMERS:  -- Your Honor.

1        THE COURT:  -- requires me to engage in like a

2   psychoanalysis about --

3        MS. SOMERS:  Yes.

4        THE COURT:  -- why it --

5        MS. SOMERS:  That --

6        THE COURT:  -- is that --

7        MS. SOMERS:  Your Honor, I admit that point.

8        THE COURT:  Okay.

9        MS. SOMERS:  Okay.  So I had a few other cases to

10  mention.  In Miller -- these are cases, you know, not in the

11  Third Circuit.  They say it's strange to give defendant a

12  voice as to whether or not they'll get sued.

13        In Campbell Gracewell Hospital (phonetic), the

14  Court found a desire to avoid getting sued is not a legally

15  protected right.

16        In ES Bankast (phonetic), the Court said a

17  defendant's -- a defendant is antithetical to creditors and

18  this view should not be heard.

19        And I know Your Honor argued Global Industrial, I

20  did notice that.

21        And in Flint Coat (phonetic), another case that

22  supports the debtors' position, they cited that case.  And

23  the Court there found the defendant, a litigation target with

24  a variety of claims against it, including fraudulent

25  conveyance, breach of fiduciary duty, and other claims, had

1  no standing to be heard on the debtor's motion to abandon the

2  alter ego claim.  And in that case, oddly, you would think

3  that the defendant is happy you're abandoning an alter ego

4  claim.  But what happened is, under state law, it enhanced

5  the claim of the other two plaintiffs.  You seem to be

6  familiar with this.  And so the Court said we're not going to

7  hear them as a party-in-interest.  Whatever liability the

8  defendant may have was already created by its conduct before

9  the petition and nothing here would change that.

10      Here, the trustees merely request that this Court

11  clarify what the Bankruptcy Court has determined.  The

12  decision was made.  Clarifying simply creates more certainty

13  as to what has already occurred.

14      And just, you know, one last point, which is, in

15  Global Industrial, we find that that further supports our

16  view because the situation there was so different with the

17  insurance policies going into the trust and the issues of

18  collusion between the claimants.  And so, of course, that's a

19  situation that's very different from ours.

20      We recognize that Uphold stands in a different

21  position.  You're right, Your Honor, you shouldn't have to

22  engage in a psychoanalysis of Uphold.  At the same time, I

23  don't think there's one scintilla of argument in Uphold's

24  claim that gives any deference or concern to a very valuable

25  cause of action that would be impacted by the lack of

1  clarification.  So that certainly creates some suspicion, I

2  will just say.

3          With that, Your Honor, I will just say that we feel

4  clarification is necessary and based on the record and within

5  the scope of 105.  And that concludes our --

6          THE COURT:  Okay.

7          MS. SOMERS:  -- main argument.

8          THE COURT:  Thank you, Ms. Somers.  That was --

9          MS. SOMERS:  You're welcome.

10         THE COURT:  -- helpful.

11         Let me hear from the party opposing the relief.

12         MS. SHARMA:  Thank you, Your Honor.  Renita Sharma

13  from Quinn Emanuel on behalf of Lockton.

14         Unless Your Honor prefers otherwise, I'd like to

15  begin by addressing the standing issue.

16         THE COURT:  Sure.

17         MS. SHARMA:  Lockton is a party-in-interest in this

18  particular motion, Your Honor.  The trustees' reading of

19  Section 1109 would limit parties-in-interest to enumerated

20  categories like creditors.  But "party-in-interest" is

21  deliberately a broader term, and the list of potential

22  parties in 1109(b) is not exclusive.

23         Contrary to the trustees' argument, Lockton is not

24  a stranger to this issue.  It has a legally protected

25  interest that could be affected by this proceeding; namely,

1  it -- the interest in whether the trustee is the correct

2  party to be bringing the claims brought in California.

3         THE COURT:  Okay.  But I think -- the way I take

4  the standing argument, for what it's worth, is -- isn't a

5  literal standing issue because, obviously, if you were to

6  prevail on it -- not an Article III standing issue.  You've

7  got a concrete stake, right?  It affects their ability to sue

8  you, and I understand that.

9         To me, the issue where I'm at least doubtful, but

10  I'm not -- I'm going to listen on the merits, in any event.

11  But the question -- the argument to me that -- at the end of

12  the day, the issue you're making, I think, is that the trust

13  is not permitted to bring these claims.

14         The trust -- you're invoking, essentially, the

15  trust documentation.  And that is about protecting the

16  beneficiaries of the trust.  It binds the beneficiaries of

17  the trust and the trustee and is an agreement among them

18  about their respective rights.  And whether the trustee is

19  exceeding its rights under the trust document, you're -- it's

20  a sort of zone of interest sort of analysis, right?  Which is

21  the trust document wasn't there to protect you; and so,

22  therefore, it's not for you to say that the trustee is

23  behaving in a manner that's inconsistent with the trust

24  documents.  If the trustee -- if the beneficiaries have a

25  problem with that, we'll hear them, but it's not for the

1  person against whom the trust is acting to say that -- to

2  enforce the trust agreement.  That's essentially the

3  argument.

4          Look, I -- I'm -- we have a creditor here, so I'm

5  not sure it makes any difference.  I think a joinder is a

6  joinder, and so I'm not sure it matters whether you have

7  standing or not, and I'm going to listen to you, in any

8  event.  But in any event, I do think that what you've said

9  about standing hasn't responded to the real concern about

10 standing.

11         MS. SHARMA:  Fair enough, Your Honor, and I won't

12 belabor the point if you're prepared to hear the rest of the

13 argument.  But I would make two points in response:

14         First is that it does actually impact Lockton's

15 ability to defend itself in California if it doesn't know

16 whether the right party is there.  You know, it's a very

17 different case in California if we don't have the bankruptcy

18 trustee.  First of all, we wouldn't have this issue about

19 capacity to sue at all.

20         Second of all, there are a number of questions that

21 Lockton has about the assignments themselves about which

22 we've sought discovery here and been denied, that we may not

23 get in California; things like the proofs of claim, which

24 were confidential here, and we haven't yet obtained.  The

25 trustee has, at a very basic level, not given us document

1  preservation notices, not given us the assignment information

2  itself, so we don't really know who we'll be fighting in

3  California and we may never get the opportunity to get those

4  documents if the issue is decided here and the California

5  Court decides that it's closed and that the bankruptcy issues

6  are sort of separate and apart from what we're fighting

7  there.

8          So Lockton is here, really, to make sure that our

9  issues -- that our rights are protected somewhere.  And if

10  Your Honor is prepared to hear us, I'll leave that part of

11  the argument aside.

12          THE COURT:  Okay.

13          MS. SHARMA:  In turning to the merits themselves,

14  Your Honor, the trustees' position is that they seek merely a

15  clarification of Judge Dorsey's remarks.  And obviously,

16  Lockton wasn't given notice of that motion, so did not

17  appear.  But having reviewed the transcript, it's clear to us

18  that the trustee is selectively reading Judge Dorsey's

19  remarks.

20          First of all and at a most basic level, the ruling

21  the Judge Dorsey made in July was to deny the trustees'

22  motion.  That was the only decision that was actually

23  reached.

24          And I think it's noticeable that, reviewing the

25  transcript, Judge Dorsey referred to the hearing as a

1    "conversation."  There was a lot of discussion in the hearing

2    about other hypothetical ways that the trustee could bring

3    certain claims that were assigned to it.

4         But at the end of the day, what Judge Dorsey ruled

5    was that they couldn't do it the way they had asked for in

6    that motion.  And if they would like to seek the assignment

7    of claims, they should come back and bring a motion before

8    him and give him the opportunity to --

9         THE COURT:  So --

10        MS. SHARMA:  -- rule on --

11        THE COURT:  -- let me --

12        MS. SHARMA:  -- it then.

13        THE COURT:  Let me ask this question, right?  The

14   trust is a post-bankruptcy entity.  We don't -- I don't have

15   a company that's in bankruptcy anymore, right?  And what

16   would be the reason why the trust would need -- I understand

17   if you want to mess with the respective entitlements of the

18   different claimants.  That implicates the claims allowance

19   process, that's done in bankruptcy.  I understand why you

20   would need court approval for that.  But if you just

21   otherwise want to acquire a claim, we're a post-bankruptcy

22   entity.  Why does it -- why would they need to come here

23   anyway?

24        MS. SHARMA:  Well, one, Your Honor, I would say

25   they did come here, which seems to imply that the trustee

1  thought they should seek authority.

2      THE COURT:   Okay.   But why -- maybe they were

3  wrong.

4      MS. SHARMA:   I think it goes back to many of the

5  issues raised by the U.S. Trustee in July, which were about

6  notice.   We're --

7      THE COURT:   Yeah, but that was because you were

8  affecting the relative slice of the pie that each of the

9  claimants had, and so that certainly required notice to the

10  two affected -- you were going to dilute the people who

11  didn't transfer and that required notice to them.   I get

12  that.

13      But let me ask this question.   I mean, is there any

14  conceptual difference between -- in terms of the need to come

15  to Bankruptcy Court, between a post-bankruptcy litigation

16  trust on the one hand and a reorganized debtor on the other?

17      MS. SHARMA:   In this particular circumstance, I

18  don't think so, Your Honor.

19      THE COURT:   Okay.   So imagine, a year ago, I

20  confirmed a plan for the Acme Widget Company, and the Acme

21  Widget Company made round widgets.   And the company wakes up

22  the next day and says I want to make square widgets.   Can a

23  competitor of its, who's also in the square widget business,

24  come into Bankruptcy Court and say, Judge, there's nothing in

25  the plan that says they can make square widgets?

1          MS. SHARMA:  I think, if the company was being

2    sued, it would give them an interest.  We're not just --

3          THE COURT:  No, but --

4          MS. SHARMA:  -- a third party.

5          THE COURT:  Forget your standing for a second.  Why

6    does -- we're post-bankruptcy and they've made a business

7    decision that this is what they want to do.  Why do they --

8    we're out of bankruptcy.  Why do they need to -- why do -- if

9    the debtor wants to change -- go into a new line of business,

10   that's -- post-reorganization, the reorganized debtor, post-

11   confirmation, wants to go -- post-effectiveness, wants to

12   enter a new line of business.  Why does that -- why is that

13   the Bankruptcy Court's business at all?

14         MS. SHARMA:  The debt -- the trustee is still bound

15   by the trust documents themselves, Your Honor.  And I would

16   say they came here pointing at a provision that says they

17   have the right to adjudicate.

18         THE COURT:  Okay.

19         MS. SHARMA:  And what Judge Dorsey said and what

20   trustees' counsel said was maybe we should have said

21   "acquire," we didn't, we said "adjudicate."  And to know what

22   "adjudicate" mean, you should look at the committee minutes,

23   you should look at extrinsic evidence.

24         And where we are now, Your Honor, no one has had

25   the opportunity to see the extrinsic evidence that was

1 pointed to before Judge Dorsey.  And so, conceptually, it may

2 make no difference.  And you know, maybe on a full record,

3 Your Honor concludes that it doesn't.  But here, where

4 they're simply seeking clarification of a ruling that we

5 don't think got to where they said it got, I don't think the

6 record is clear for you to then, there -- at this point, make

7 that decision.

8          THE COURT:  Okay.

9          MS. SHARMA:  Let me skip forward.

10          I then talked about some of the extrinsic evidence

11 that I think would be useful for this Court, and it's, as

12 you'd expect, much of the extrinsic evidence we sought in the

13 RFPs.

14          Just one other point I wanted to make.  The issue

15 of preference claims versus the ten percent bump, as

16 identified by the trustee, is sort of the nexus of Judge

17 Dorsey's argument.  There were actually other issues that he

18 identified with the plan that I think still occurred here

19 with the preference settlements; notably, that there could be

20 disparate treatment between the creditors.

21          That's, you know, still true.  And it's something

22 the trustees' counsel brought up in response to Judge

23 Dorsey's questions, that settling preference claims raises

24 the same disparate treatment issues that Judge Dorsey found

25 were a big problem with the ten percent bump; also, that

1  prosecuting the claims could decrease the distribution to

2  beneficiaries, which the U.S. Trustee identified.

3        And finally, there's the issue that the trust may

4  not be able to distribute the recoveries because the plan

5  treatment only talks about distributing the assets of the

6  estate.  So all of those sort of still arise on this current

7  plan and I think should be considered on a full record.

8        One other point I just wanted to clarify, Your

9  Honor -- and this isn't really an issue before you.  But the

10  trustee said there were no other grounds for federal

11  jurisdiction in Lockton's notice for removal, other than the

12  one we're talking about today.

13        Related to jurisdiction is the basis for the

14  removal motion, but there are actually three arguments

15  Lockton makes for removal.  Related to jurisdiction is a

16  question for California, so I won't belabor them.  But I just

17  wanted to point out that not all of our bases for removal are

18  implicated by your decision today.

19        THE COURT:  Okay.

20        MS. SHARMA:  I have nothing further unless Your

21  Honor has any questions.

22        THE COURT:  No.  Thank you very much.  Appreciate

23  it.

24    (Participants confer)

25        MR. DELANEY:  Unless you want to hear rebuttal

1    first.

2              THE COURT:  No, they should --

3              MR. DELANEY:  Do it all at once, I suppose.

4              Good afternoon, Your Honor.  Michael Delaney of

5    Baker Hostetler on behalf of Uphold.

6              And you know, we just want to kind of make a few

7    points.  We did join the objection that was raised by the

8    Lockton entities.  We also raised a couple further objections

9    in our joinder.

10             The first thing I would like to address is this

11   idea of standing.  I know the Court already addressed this.

12   But we are a creditor in the bankruptcy case and we are a

13   beneficiary of the liquidating trust.

14             THE COURT:  Right.  And -- but what's your response

15   to the assertion that, in wearing that hat, if you prevail

16   today, you are -- you're making yourself, at least in that

17   capacity, worse off?

18             MR. DELANEY:  In the sense that we might be losing

19   out on valuable claims?

20             THE COURT:  Yeah.

21             MR. DELANEY:  Well, Your Honor, I think that that

22   raises several issues.  As noted by counsel for Lockton,

23   under the terms of the plan, the plan does not provide for

24   the distribution of proceeds from third-party claims acquired

25   by the trust to beneficiaries of the trust.  So there's a

1  serious question.  This was raised by, not only Uphold, but

2  by the United States Trustee during the hearing on the

3  assignment procedures motion.

4        And you know, under that plan, it says that

5  beneficiaries will receive a pro rata portion of net

6  distributable assets.  "Net distributable assets" are the

7  proceeds from liquidating the assets of the estate and the

8  debtors, not assets acquired by --

9            THE COURT:  Right.

10           MS. SHARMA:  -- the liquidating trust.

11           THE COURT:  Unless you think that, if you acquire

12 these assets with assets that are otherwise property of the

13 estate, that that becomes proceeds of property of the estate

14 and, therefore, fits within the word "proceeds."

15           MR. DELANEY:  I mean, potentially.  But at the end

16 of the day, the third-party claims are not, quote, "assets,"

17 as defined under the plan.  So I don't see how that's

18 beneficial to the beneficiaries of the trust.

19           And as we raised in response to the acquisition --

20 to the assignment procedures motion, the only way to make it

21 beneficial would be to modify the plan.  And right now, we're

22 dealing with a plan --

23           THE COURT:  Okay.

24           MR. DELANEY:  -- that's been substantially

25 consummated for almost two years, so that's just

1  impermissible.

2      But you know, and then I think I -- I just want to

3  address -- there's some kind of suggestions that we're doing

4  this for litigation, you know, advantage or whatever.  The

5  reality is we're being sued for eight hundred plus million

6  dollars by the trust already.  That litigation involves no

7  third-party claims against it.  So the ruling here today does

8  not really affect us at a litigant, it affects us as a

9  beneficiary of the trust.  And we're objecting because we

10  believe that the trustee has exceeded the scope of its

11  authority under the trust agreement, that's why we're

12  objecting, and because there's no clear benefit to the

13  beneficiaries of the trust.  I mean, that's clear -- that's

14  the only reason we're here.

15      But to go back, I think that there's like a

16  fundamental issue with the motion, and that was hint -- that

17  was addressed by counsel for Lockton.  There is no bench

18  ruling that says that they get to acquire third-party claims

19  via a settlement of preference actions.  Now whether or not

20  the plan just authorizes them to do that anyways, that's a

21  separate point.  But if you look at the motion on the

22  assignment procedures, it is a motion seeking approval of

23  definitive procedures, a certain set of procedures, right?

24      The Court, unequivocally, without reservation or

25  qualification, denied that motion, except to say that it was

1  without prejudice to the trust bringing a subsequent motion.

2  And further, the Court, when ruling on this motion, was

3  discussing with the parties -- as the Court said, you know,

4  I'm kind of playing mediator now -- was discussing with the

5  parties different ways in which the parties might come to

6  some sort of understanding as to --

7          THE COURT:  Right.

8          MR. DELANEY:  -- the acquisition of third-party

9  claims.

10          THE COURT:  So, to the extent you're right and --

11  why couldn't one just treat this motion to clarify as that

12  motion?  Here we are.

13          MR. DELANEY:  Your Honor, I don't think that it

14  would be appropriate at this point.  Now, if the Court were

15  to -- a couple of reasons.  But if the Court were to continue

16  this and allow discovery I think that we could get to a point

17  where this is a motion to interpret the plan.

18          THE COURT:  If there were a factual dispute that

19  required discovery beyond just drawing an inference from what

20  the plan already says.

21          MR. DELANEY:  That is correct, Your Honor.  You

22  know, as the Court noted during the assignment procedures

23  hearing, this provision is, at best, ambiguous; the one that

24  they rely upon.  This -- you know, it doesn't say "acquire"

25  under the plan. It is ambiguous whether or not they have the

1  authority.

2         According to the notes there is nowhere in the

3  plan that say that they can acquire third-party claims.  Its

4  all inferred from this adjudication clause.  The trust has

5  never submitted any evidence as to what that really means.

6  Frankly, the trust can't submit evidence directly because

7  they are not the plan proponents, and the committee was not

8  the plan proponents.  The plan proponent was the debtors.

9         So, the only person's intentions that matters is

10  the debtors.  And we haven't had the opportunity to conduct

11  discovery about what the intention was of this provision.

12  But that said, I think the inference that they can acquire

13  third-party claims at all or, really, at large, you know,

14  there is indications that that is not what the intent was.

15  Although we do need discovery to get there, and we need the

16  intrinsic evidence to submit and interpret the plan

17  correctly, which hasn't been done and no party has had the

18  opportunity to do that, there is indicia that that is not

19  what was intended.

20         It is things like the definitions do not

21  incorporate the concept of acquiring third-party claims.

22  That the "liquidation trust assets" under the plan does not

23  incorporate third-party claims acquired by the trust.  And

24  that the distribution to creditors is from net distributable

25  assets.  That does not incorporate proceeds from third-party

1 claims acquired by the trust.

2       So, I do think that there is indicia that that is

3 not what was truly intended especially when you're talking

4 about comparing this plan to plans like Woodbridge. I mean

5 the trust counsel got up at the hearing, on the assignment

6 procedure motion, and said I have no idea how we would have

7 done this. Well, I do.  If you wanted to do it with any bump

8 or any procedures through the large-scale acquisition of

9 third-party claims, you pull-up a copy of the Woodbridge plan

10 and you put it in yours.  I mean that plan was confirmed, and

11 was deemed to be satisfactory under all applicable rules.

12 That is how you would have done it.

13       The plan was confirmed long before the plan in

14 this case was proposed. So, why didn't do that? I think that

15 that speaks volumes to the fact that it wasn't what was

16 intended.  Had it been what was intended, they certainly knew

17 how to do it.  But I'm kind of getting beyond the scope of

18 what we are here today for.

19       So, I think that because we don't -- back to my

20 point, I don't think that there is bench ruling that this

21 Court can kind of clarify.  I think that for several reasons:

22       One, as I noted, the relief requested in the

23 assignment motion was limited to the approval of those

24 procedures.  The idea of acquiring third-party claims via

25 preference settlements was not addressed in the motion at

1  all.  It was not addressed in the reply at all.  The reply

2  does refence preference actions, but it is in the form of an

3  example of how trustees can settle things.  It wasn't a, hey,

4  we can acquire third-party claims by settling preference

5  claims.

6          The first time its mentioned is during the hearing

7  while the parties were, kind of, batting around ideas about

8  how to resolve this after the Court really had found that the

9  proposed procedures were DOA because it violated the plan in

10 several ways.

11         So, I don't think that its fair to say that that

12 was a ruling of the Court, but there is other issues.

13 Because it wasn't raised in the motion nobody has briefed

14 this.  This has not been briefed by any party.  Whether or

15 not the acquisition of preference claims or third-party

16 claims, via preference settlements, is permissible under the

17 plan.  It hasn't been briefed. It hasn't been ruled on.  No

18 evidence has been presented about the meaning of the plan in

19 this regard.  That is really, kind of, incontestable.

20         There is another issue with finding that this

21 ruling is binding on anybody.  As the Court noted at the

22 hearing on the assignment procedures, notice of that motion

23 deficient. How do we have a binding ruling with a deficient

24 notice.  There is only one ruling that could be issued when

25 the notice is deficient, denial without qualification.  It

1   can be without prejudice, but it can't -- you can't grant,

2   you know, rights to a party when they don't properly notice

3   the motion.

4          So, I mean, I think that that kind of resolves the

5   issue about whether or not this can be a ruling at all.  But

6   even assuming that we look at those statements and think that

7   its somewhat of a finding, or ruling, or whatever, you know,

8   I believe its dicta.  What we're dealing with here is a

9   ruling by the Court saying, well, maybe you could kind of

10  acquire third-party claims via preference settlements, but

11  the ruling of the Court is denied without prejudice.

12         There is no order with findings of fact.  There is

13  no order saying that they can do this.  There is a docket

14  entry that says "denied without prejudice."  That is it, that

15  is the ruling of the Court.  And so I don't see how it's a

16  prerequisite to making an unqualified denial of the motion

17  especially given the fact that the issue of acquiring third-

18  party claims via preference settlements is not even raised in

19  the motion.  So, I mean we are like stretching here pretty

20  far to get to that kind of place.

21         I already addressed, kind of, the defect and

22  notice, and why that, kind of, hampers what can be done here.

23  You know, from our standpoint, and I am going to selfishly

24  talk about my client's rights, that there was no order

25  entered saying this is what the plan means.  We disagree with

1  that.  How could we protect our rights?  We have no order

2  from which we could appeal that finding.

3          Now this is like a after the fact, we're going to

4  try to sneak this ruling in.  What are we supposed to do?  If

5  the Court finds today that clarifies a prior ruling, I mean,

6  how do we appeal that?  It, essentially, denies us the right

7  to appeal.  Setting aside the defective notice, I mean it

8  denies us the right to have consideration of whether or not

9  that is a correct interpretation of the plan because there

10 has never been any finding of that factor or an appeal of an

11 order.

12         So, that kind of goes to, you know, if we reach a

13 conclusion, and going to Your Honor's point, that if there is

14 no ruling to clarify then this is truly a motion to interpret

15 the plan.  I think that that presents several issues.

16         So, first of all, I don't think that its properly

17 presented as such in the motion. I don't think its -- you

18 know, its not called a motion to interpret the plan.  They

19 don't present any substantiation for their requested relief

20 or the interpretation --

21         THE COURT:  Sure they do with Judge Dorsey, who

22 confirmed the plan, and he said on the record he thought it

23 meant.

24         MR. DELANEY:  I appreciate it, Your Honor, but

25 that was -- I think that goes back to it being dicta, but

1  that was a statement made when he was playing mediator when

2  deciding a motion that didn't raise the issue and at that

3  point the trust presented no evidence about the --

4          THE COURT:  Okay.  So whether its holding or dicta

5  strikes me as maybe the most bizarre thing I've ever heard

6  because this is a trial Judge's comments from the record,

7  from the bench.  So, the notion of holding versus dicta like

8  that matters when we've got an, otherwise, binding

9  determination and the question is, is this binding on you.

10         I find myself, as a trial level Judge that nothing

11  I say is really either holding or dicta because none of it

12  binds anyone other then the parties in front of me.  And so

13  to me the question isn't really is it holding of dicta, it

14  is, is this a reliable source of authority about what this

15  plan did.

16         It seems to me like it probably is regardless of

17  whether it was literally necessary to the decision or not.

18  And in any event, you know, as far as the decision he was

19  making went, Latin is not my first language, but the motion

20  that those comments were the *ratio decidendi* of his ultimate

21  ruling seems to make some sense to me.

22         So, I will hear you, but I guess it seems to me

23  like a dog chasing its tail kind of argument.

24         MR. DELANEY:  Well, Your Honor, I agree with you

25  that it is strange to talk about dicta in this context

1  because there is no order, there is no opinion. Its being

2  presented in the trust's motion as if it is an order and a

3  ruling, which it isn't.

4         So, when we responded we said even if the Court

5  would consider this ruling, which it's not, it's really dicta

6  because there was a denial of the motion, an unqualified

7  denial.  So to say -- when we're talking about like the Third

8  Circuit standard could it be deleted without effectively, you

9  know, altering the rational of the Court sure it can because

10 the Court said these procedures do not comport with the plan.

11 And the procedures did not entail the acquisition of third-

12 party claims via a settlement of preference actions.  It just

13 didn't.  It was a large scale Woodbridge, we're sending a

14 notice to everybody and getting a bump.

15         THE COURT:  So, what is your answer to the

16 annoying question that I asked your colleague about.  In

17 order to acquire these claims -- we've got a post-bankruptcy

18 entity. It decides its good for the beneficiaries of the

19 trust if it does this.  So, it goes and does this.  It

20 doesn't come get Court approval.  Why is it any different

21 than the reorganized debtor going into a new line of

22 business?

23         MR. DELANEY:  I don't think that is an annoying

24 question.  I think it's a great question.

25         THE COURT:  That will get you very far.

1    (Laughter)

2    MR. DELANEY:  You know, I think there's kind of

3  two points that I make.  In fact, I made notes because I

4  thought it was a good question.

5    The first is the trust is a creature that exists

6  solely within the confines of that trust agreement, four

7  corners. Nowhere in the trust agreement does it say that it

8  can acquire third-party claims; nowhere.  Now, you can say

9  its inferred from certain authority, but equally true there's

10  very contrary provisions in the plan that make it seem

11  inconsistent to interpret the trust agreement that way

12  including, I think, most importantly to this question you're

13  presenting, the fact that proceeds from the prosecution of

14  third-party claims acquired by the trust do not constitute

15  "assets" under the plan and, thus, are not distributable to

16  beneficiaries of the trust.

17    So, when we're talking about, you know, these very

18  valuable claims they may have monetary value in an objective

19  sense, but I don't see how they're beneficial to the

20  beneficiaries of the trust.  Further, you know, I think there

21  has been always this undercurrent of, well, we need to do

22  this or else all these defendants are going to get off scot

23  free.  I think that is kind of untrue.  The defendants are

24  the defendants.  If they want to get sued -- there's a

25  pending class action against Uphold arising out of these

1 | sorts of claims.

2 | Its ridiculous to suggest that the sole way these

3 | creditors are going to get compensated on their claims is by

4 | assigning them to the trust. Its just not a necessity under

5 | the trust.  It cannot -- I don't feel any reasonably

6 | extrapolated from the terms of the trust agreement.  Again,

7 | the trust is bound by the four corners of the document which

8 | does not say, does not say acquired.

9 | In fact, you know, Judge Dorsey noted that nowhere

10 | in the plan or trust agreement does it say that they can

11 | acquire third-party claims; nowhere.  There is this

12 | adjudication clause.  I mean how hard would it be to say, you

13 | know, powers of the trust acquire third-party claims.  This

14 | would have resolved everything. It doesn't say acquired.  It

15 | says adjudicate third-party claims which in this context only

16 | means third-party claims that constitute "assets."

17 | If you look at the definition of assets under the

18 | plan it does include third-party claims, but is third-party

19 | claims of the debtors and the estate.  So, to say that the

20 | right to adjudicate means acquire seems inconsistent with

21 | that definition.

22 | What we believe the proper reading of that clause

23 | is, is confirming that the trust has the ability to

24 | adjudicate, prosecute the third-party claims that constitute

25 | liquidation trust assets; those third-party claims that the

1  debtors and the estate had prior to confirmation.

2        So, you know, I think that when -- I apologize, I

3  know I have gone a little off task, but in answer to your

4  question do they need authority?  Only if -- I think the

5  answer to that is yes, they do need authority.  They need

6  authority in the trust agreement. Here, they don't have it.

7  I think the Court was pretty clear before that nowhere in the

8  trust agreement does it say they inquire third-party claims.

9  The Court, in fact, said that the Court was inferring the

10 ability to acquire third-party claims via settlement; not

11 finding that they had this authority under the four corners

12 of the trust agreement.

13        Further, we didn't have any evidence at the time

14 about what the intention was of the debtors, the plan

15 proponents, when they put in this adjudication clause.  All

16 we had was representation of the trust counsel, which was

17 previously the committee counsel, saying that there was a

18 bunch of back and forth, and that they demanded this, and

19 this is what they thought it meant.  But there was no actual

20 evidence other than his representation.

21        So, I think that that is a little problematic,

22 from my perspective, on finding that that is what it means.it

23 means.

24        THE COURT:  Okay.

25        MR. DELANEY:  But, you know, if we were to

1 interpret this, I think that there is kind of a couple issues

2 beyond whether or not this is teed up correctly.  I am

3 setting that aside.  They can, obviously, fix that.  We can

4 file additional briefing, whatever, and we can continue the

5 hearing.

6        I think there is, as noted by counsel for Lockton,

7 this is a vague provision, we need evidence.  So, we need

8 time for discovery.  So, if we're going to consider this --

9        THE COURT:  I understand your position on that.

10        MR. DELANEY:  I think the next one is considering

11 the question of whether or not the interpretation would

12 entail a modification of the plan because I think to

13 establish a benefit for beneficiaries, we're going to have to

14 either alter definitions under the plan or we're going to

15 have to change the assets that are distributable to

16 beneficiaries of the trust.  We feel that, you know, we are

17 going to have to tackle that question in some way shape or

18 form.  I suppose that can be at an interpretation hearing,

19 but I think its an issue that we need to address.

20        As counsel for Lockton noted, there was a host of

21 other issues that were identified by the Court including the

22 disclosure issues.  I think that from our standpoint the

23 disclosure issues are kind of important.  We are a

24 beneficiary.

25        THE COURT:  So, can I ask this question: Imagine

1  we've got a liquidating trust that inherits, under the plan,

2  the debtors receivables, okay.  The plan doesn't say anything

3  about the trust becoming a plaintiff in State Court.  Trust

4  sues to collect an unpaid receivable in State Court.

5  Defendant removes that action and says there's a federal

6  question here, Judge, because there is nothing in the plan

7  that says the trust can be a plaintiff in State Court.  The

8  trust comes to Bankruptcy Court and says, Judge, come on, I

9  don't need that language, but to the extent I need that

10  language give me that language.

11        What should the Judge do in that case?

12        MR. DELANEY:  Your Honor, we don't have a position

13  on the jurisdictional issue.  I mean that is not --

14        THE COURT:  No, I understand that.  I'm not asking

15  you to resolve the jurisdictional issue.  I am asking you to

16  address what is fundamentally, what I think, is a lot the

17  question in front of me which is the trust is taking some

18  action.  It's an action -- I know you may not agree with

19  this, but let's, for the purposes of the question, assume

20  that its an action that seems plausibly to run to the benefit

21  of the beneficiaries of the trust who are the original

22  creditors.

23        You have got, you know, the target of that lawsuit

24  pointing to provisions of the trust agreement to say you need

25  an express provision to authorize you to do that.  Like why

1  does this make sense?

2          MR. DELANEY:  Your Honor, I think I would agree

3  with your -- I would disagree with your example a little bit.

4  I don't think it's a hypothetical that is necessarily on all

5  four points with us because in your hypothetical the trust

6  was authorized, ostensibly, to collect on the AR which may,

7  in certain circumstances, require a lawsuit.  Here, we are

8  talking about acquiring new assets.

9          THE COURT:  I understand.

10         MR. DELANEY:  I think that that is the difference.

11  Like we said, I have no -- my client has no objection to them

12  prosecuting third-party claims that were assets of the estate

13  or the debtors.  That is clearly authorized under the plan.

14  We do not quibble with that.  We do not object to that.  The

15  plan does not say, however, that they can acquire third-party

16  claims.  And no finding on that has ever really been made.

17         That is really what I have to come back to, the

18  clarification.  There is nothing to clarify.  So, that is

19  kind of our position.  There is nothing to clarify.  So, this

20  is really an improper motion in that regard.

21         I think one other point or, I guess, two more

22  points.  I appreciate your time, Your Honor.  So, two more

23  points.

24         So, first, I don't view this motion as seeking

25  limited or innocuous relief.  The proposed order provides

1 | that they want the Court to find that they have the authority
2 | to acquire, really, any third-party claim pursuant to a
3 | preference settlement.  That wasn't the finding of the Court
4 | before, but setting that aside that is pretty broad relief.
5 | That isn't limited to Lockton.  That could affect my client.
6 | That could affect other parties.  It is pretty broad relief.
7 | The circumstances in which this motion comes
8 | before the Court is a little suspect.  They brought this
9 | motion only after the notice removal was filed.  Yet, they
10 | have apparently been acquiring claims.
11 | THE COURT:  Right, because they thought they had
12 | the authority to do it and didn't need anything further from
13 | the Bankruptcy Court.
14 | MR. DELANEY:  I suppose that is true, Your Honor,
15 | but still at the same time they were almost, you know,
16 | suggested by the Court to file a subsequent motion.  They
17 | were -- it was, you know, I think, pretty strongly suggested
18 | that they reach out to the other parties to discuss
19 | procedures that might be workable.
20 | We were never contacted.  You know, back shortly
21 | after that first hearing we reached out to the U.S. Trustee
22 | because we had not been contacted to see if they had been
23 | contacted.  And they had not been contacted at that time.
24 | We are a beneficiary of the trust.  We received no
25 | disclosures about what the trust is doing.  We asked for that

1  information which, you know, we believe they're obligated to

2  provide to us under applicable law.  They said no.  So, I

3  mean, we are really at a loss as to what is going on.  And,

4  you know, we feel that -- you know, I think that that is

5  something that beyond the relief directly requested in this

6  motion is kind of problematic and its not just limited to

7  this motion.

8          There is -- and we attached a transcript from

9  another hearing in the lawsuit that we're involved in where

10 it came to light, for the first time ever, that the trust is

11 settling claims with principal responsible parties without

12 any disclosure to anybody.  I mean, its -- we find it a

13 little troubling.

14          You know, going back to the scope of the readings

15 we don't see it as innocuous.  I mean this is pretty broad

16 relief that they are requesting.  And, frankly, it almost

17 rises to the level of an advisory opinion that they can

18 acquire almost any claim via preference without regard to

19 whether or not the claim is valid, whether or not the

20 preference is valid, and who knows what they are doing with

21 the claim that is asserted against the estate, how they're

22 allowing it, whether or not they're disregarding valid

23 objections to that claim.

24          So, I mean there aren't implications for

25 beneficiaries because if they just set this aside, if they

1  set aside the idea of third-party claims and prosecuted

2  preference actions against these people, and objected to

3  claims that might result in that party having no claim and

4  turning over significant money to the estate.

5          But they are getting a third-party claim in

6  exchange for what, we don't know, but it could be the full

7  allowance of an invalid claim, it could be the release of a

8  very valuable preference claim in exchange for what, a third-

9  party claim that may have no value.

10         So, I think that the opacity of the process is

11  troubling. And I don't think that the relief requested, you

12  know, should be granted because it could be broadly applied

13  in a lot of circumstances.  So, I think we find that to be

14  improper.

15         The last thing, very quickly, we do think notice

16  of this motion is deficient.  Under Local Rule 2002-(1)(b)

17  the relief requested may effect a large number of potential

18  targets of litigation, but they only served it on the 2002

19  list.  In response, the trustee said, well, we served on

20  everybody that we served the procedures motion on which

21  doesn't really help them considering that the Court found

22  that the procedure motion notice was deficient.

23         We think that this motion, if its going to be

24  heard, should be served on everybody.  Everybody should

25  receive notice of a motion to interpret the plan that

1  everybody voted for and given them a fair opportunity to

2  weigh-in on it.

3         With that, Your Honor, if you have any questions;

4  otherwise, I will cede the podium.

5         THE COURT:  Okay.  Thank you very much. I

6  appreciate it.

7         MR. DELANEY:  Thank you, Your Honor.  I appreciate

8  the time.

9         MS. SOMERS:  Your Honor, I think what's happening

10 here is the objectors see that there is a very clear path to

11 what happened here.  So, the style of argument is kind of

12 like a filibuster.  Let me just throw everything out, stir

13 everything up, see where I can get.

14        THE COURT:  Can I ask you this one question?

15        MS. SOMERS:  Yes.

16        THE COURT:  Does the trust take the position that

17 to the extent you recover on any of these assigned claims

18 that you are going to do anything with those proceeds other

19 then distribute them pro rata to the Court.

20        MS. SOMERS:  We're going to distribute them pro

21 rata to the Court.

22        THE COURT:  Okay.

23        MS. SOMERS:  First of all, I'd like to start with

24 many things that Uphold's counsel said are a little bit

25 exacerbating, most of them are, that they have taken

1   arguments made to the Court or questions that the Court asked

2   and turn them into decisions of the Court.  When we say

3   something is a ruling, we are referring to a ruling.  We are

4   not taking all the arguments and claiming that that was the

5   ruling.

6          The provision that they keep saying does not give

7   the right to acquire says that there is a right to -- the

8   trust is allowed, one of its powers is adjudicating third-

9   party claims assigned, purchased, or, otherwise, transferred

10  to the liquidation trust. And I am not really here to re-

11  argue the plan argument because that is the general counsel's

12  job, but I do feel like I have to clarify some of this stuff.

13         In addition, the causes of action includes third-

14  party claims that are instituted after the effective date.

15  And instituted can be many things including acquired or

16  implemented.  In addition, Exhibit A to the plan specifically

17  talks about tort claims and doesn't identify them as third-

18  party or debtor claims, but says all tort claims are covered.

19  And there are many, many other provisions of the plan that

20  support the Judge's decision, not our argument that he made.

21         In addition, the proposed order submitted in

22  conjunction with the assignment order had a specific

23  provision saying that the claims of -- that assigned claims

24  could be adjudicated.  So, as many times as they want to say

25  this was not a central issue, it was a central issue. And if

1  you look at the papers of Uphold and the other parties they

2  say it's a central issue.

3        The whole talk about disparate treatment and the

4  points to that effect the Judge did consider those and then

5  he said, hey, I don't have a problem with them when it comes

6  to a preference.  Yeah, disparate treatment could be a

7  problem in many contexts, but I don't have a problem when it

8  comes to a preference.  In addition, although they're

9  constantly citing the concerns of the U.S. Trustee, the U.S.

10 Trustees Office contacted us and told us they take no

11 position on this clarification.

12       In addition to that, they bring up the issue of

13 extrinsic evidence.  And at one point the committee counsel

14 even offered to give the Judge extrinsic evidence.  That is –

15 - I will find it, I believe its page 49 of the transcript.

16 Rather than say, yes, you know, we need to take extrinsic

17 evidence, the Judge came right back a few lines later and

18 said I have no problem with this when it comes to

19 preferences.  Its okay in a preference context.

20       So, anything the Judge said about leaving things

21 for another day or more notice needed was in conjunction with

22 the soliciting through a portal.  The Judge articulated some

23 concerns and said if you're going to change this you got to

24 come back to me, you know, I will reconsider it at that time.

25       I do not find the transcript to find that notice

1   was improper. This is just another one of those things that

2   the Court asked a question about that somehow Uphold's

3   counsel has transferred into a ruling.

4          The Judge's decision on the preference settlement

5   was basically a decision that talked about what the trust

6   agreement allowed in and of itself.  Exactly as Your Honor

7   has referred to it, like what are the confines, what can the

8   trust do on its own.  The Court said the trust can acquire

9   and adjudicate claims, and the trust said you can do it in a

10  preference context.

11         So rather than coming back to Court and trying to

12  recreate a motion the trust said let's be conservative.

13  These are the two ways that the Judge said we can acquire

14  claims, let's just acquire them in this way.  And that

15  limited the amount of claims that could be acquired, but the

16  trust accepted that as the Judge's ruling, and the easiest

17  way, and the most seamless way to have claims transferred to

18  the trust without anyone raising any questions.

19         Low and behold, questions have been raised.  Its

20  not surprising they're raised.  They're raised because these

21  are defendants and they don't want a party who has the

22  wherewithal to pursue the claims to pursue them.

23         I think that was it.  Let me just see if there was

24  any other point.

25         (Pause)

1        MS. SOMERS:  I think that's it, Your Honor.  Thank
2  you.

3        THE COURT:  Thank you.

4        I think I am prepared to rule.  So, the trustees
5  of the Cred Inc., liquidation trust now ask the Court to
6  clarify its July 19th, 2022 bench ruling. For the reason I am
7  going to describe, I am satisfied that the trust's
8  interpretation of that ruling is correct.

9        The Court denied the trustees motion to offer a 10
10 percent increase or bump-up of a signor's allowed claims in
11 exchange for an assignment of the creditors claims to the
12 liquidation trust.  Having reviewed the record, the trustees
13 motion will be granted because the Court is satisfied that
14 the Court, essentially, determined at that hearing that the
15 trustees can acquire third-party claims obtained through
16 individual settlements and that valid grounds exist to pursue
17 those claims against defendants.  I will explain that in a
18 little bit more detail.

19       So, Cred Inc., and its affiliates who are the
20 debtors, filed for bankruptcy in November 2020.  Judge Dorsey
21 approved the debtors combined joint plan of liquidation and
22 disclosure statement on March 11th, 2021. The plan became
23 effective in April 2021.  Under the plan, once the debtors
24 assets were transferred to the liquidation trust, the
25 liquidation trustees became responsible for liquidating the

1   assets and taking actions on behalf of the trust.  The trust

2   agreement also says that the trustees have the responsibility

3   to adjudicate third-party claims assigned, purchased, or,

4   otherwise, transferred to the liquidation trust.

5            On July -- I'm sorry, in June of 2022 the trustees

6   moved the Court basically raising two questions.  First,

7   whether the plan and trust agreement would authorize the

8   trust to acquire claims from creditors.  Second, whether the

9   trust proposed assignment here would be an impermissible

10  modification of the plan. That was the questions -- those

11  were the questions teed up for the hearing in July of 2022.

12  The Court denied the motion without prejudice.

13           In December, in California State Court, the

14  trustees brought a lawsuit against Lockton Companies,

15  asserting state law claims that included fraudulent

16  misrepresentation, fraud in the inducement, negligent

17  misrepresentation, etc., and claims under California Unfair

18  Competition Law.

19           The trust asserted those claims on behalf of

20  customers who had assigned their claims to the trust.

21  Lockton removed that action to District Court claiming it was

22  related to this bankruptcy case.  The notice of removal

23  points to different basis for related to jurisdiction

24  including that claims themselves belonged to the bankruptcy

25  estate, that the trust didn't have the authority to acquire

1  the claims, and that there was a need to construe this

2  Court's orders.

3          Before the Court today is the trustees motion to

4  clarify what the Court said in July of 2022.  Lockton has

5  objected to that motion.  Uphold HQ has filed a joinder in

6  the Lockton objection.  I am satisfied I've got jurisdiction

7  to hear this dispute under 28 U.S.C Section 1334(b) and the

8  principal that the Supreme Court articulated in <u>Travelers</u>

9  that a Court always has the authority to construe its prior

10  orders.

11          First, a word on standing.  I am not going to find

12  that the objecting parties lack standing and, therefore,

13  throw out -- grant the relief as if it were unobjected to

14  because no party with standing has objected. I am going to

15  hear this on the merits.

16          I will say, however, that the circumstances

17  certainly are reason to pause.  What we have got here is,

18  essentially, a dispute about a trust agreement created under

19  a plan.  The parties who are the -- the trust agreement is

20  intended to set forth the rights as between and among the

21  beneficiaries of the trust and the trustee.

22          When the trust takes action against a third-party

23  -- for a third-party defendant to object to the trust action

24  on the grounds that the trust action is not authorized by the

25  trust seems to be, essentially, outside the zone of interest

1   that were intended to be protected by the trust document.

2   They are, essentially, invoking the rights of other parties.

3          I am, nevertheless, going to hear it because it

4   was here joined by someone who is a creditor and that

5   creditor happens also to be a defendant.  The argument is

6   that that that creditor, Uphold, is acting in its capacity as

7   defendant, not its capacity as creditor.  I will say only I

8   don't think it's really within the traditional judicial role

9   to get inside the head of a party whose making an argument,

10  and second guess the reasons they're making it.

11         I will say that the facts are that if they were to

12  prevail it would benefit the creditor in its capacity as

13  defendant and not in its capacity as creditor. The only

14  argument I heard as to why, in its creditor capacity, it

15  would be benefited is this contention that, well, maybe the

16  proceeds of these actions won't be distributed to it, but the

17  trustee has disclaimed that.

18         So, I am not going to throw-out the argument on

19  the grounds of standing, but I will say that it strikes me as

20  dubious that the defendants, in an action initiated by the

21  trust, ought to be permitted to invoke limitations set forth

22  in the trust document that are there to benefit the

23  beneficiaries of the trust, not the targets of the trust

24  action.

25         I will also say that all of this feels to me like

1   something of a tempest in a tea pot because I am not sure --

2   it would be one thing if there was a trust agreement that

3   said the trust shall not do X.  There is no contention that

4   there is language in this trust agreement that says the trust

5   may not acquire third-party claims.

6           Its not at all obvious to me that it is that it

7   shouldn't be, essentially, implicit that the trust can accept

8   as prohibited by the trust can't, otherwise, exercise its own

9   business judgement to serve the purposes of the trust which

10  is to maximize the recovery to creditors.  And its not at all

11  obvious to me that this so-called clarification should even

12  be necessary but for the defendants inserting that issue into

13  the California litigation. And in view of the fact that they

14  have, as the Court presiding over the bankruptcy case out of

15  which the trust was created, it does seem to me appropriate

16  to offer a clarification.

17          I want to address the notion that notice of this

18  motion was not appropriate. I am not -- let me say this, the

19  parties who are here, and have shown-up to object have

20  received sufficient notice to appear and object.  To the

21  extent the order that I enter binds someone who didn't

22  receive notice and they want to come in and say that I

23  shouldn't be bound by that order because I lack notice,

24  nothing I am saying today precludes that at all.

25          Relief anyone gets from any Court is only as good

1   as the notice you provide.  And if there is anyone who didn't

2   get appropriate notice will hear them on the merits as to why

3   that relief shouldn't affect them.  So, I have gone and

4   reviewed the transcript of the July 19th hearing and based on

5   that review and the reasons I have set forth above I am

6   satisfied that it is correct to say that the trustees can

7   acquire third-party claims obtained through individual

8   preference settlements.  And if valid grounds exist,

9   prosecute those claims against defendants.

10          The objections to the trustees motion characterize

11  it as one that seeks to somehow alter what the plan does.

12  They contend that the Court can't resolve an ambiguity in the

13  plan without an evidentiary hearing in which the Court would

14  consider an effect of parole evidence about what the drafters

15  of the plan intended.  But its clear, from a review of the

16  July 19th, 2022 bench ruling, that Judge Dorsey didn't think

17  such evidence was required in order to reach the conclusion

18  that I reached today.

19          He said, and I'm just going to quote it:

20          "I think everyone is pretty clear on where I stand

21  on this.  I think in terms of the authority of the trust to

22  acquire third-party claims, although it was not completely

23  clear in the plan or the trust agreement, I think it was

24  certainly implied that the trust would seek, could seek, or

25  could obtain assignment of third-party claims it could then

1  pursue on behalf of all creditors of the estate."

2           He said that he was disinclined to say that he

3  would allow the trust to give a blanket 10 percent bump to

4  anybody who assigned their claims to the trust and,

5  therefore, deny the claim without prejudice.  But during the

6  hearing the Court asked if there are valuable third-party

7  claims out there nobody is going to be able to pursue them

8  because they can't afford to.  And the trustee has the

9  opportunity to go acquire the claims and pursue them for the

10 benefit of every creditor of the estate then why could that

11 not be done.

12          What he -- what Judge Dorsey went onto say at that

13 hearing, essentially, answered that question by saying on the

14 record that the trust would and could acquire third-party

15 claims because that authority is implied in the existing

16 documents.  Indeed, the Court said that the authority to

17 acquire and pursue those claims didn't need to be stated

18 expressly in the plan or trust agreement which is,

19 essentially, unsurprisingly I am not saying anything that I

20 don't think Judge Dorsey hasn't, essentially, said already.

21          In sum, I am satisfied that the trust construction

22 on both of the documents and of the what the Court decided is

23 correct. I will, therefore, grant the motion.

24          I will add only to the extent there is an

25 objection about the opacity of the way the trust is

1  conducting the business of the trust, you know, there the

2  plan and trust documents control and to the extent a

3  beneficiary, in its capacity as beneficiary, wants to raise

4  such a point that can be raised by appropriate motion, but

5  that I don't believe that those concerns are a reason not to

6  grant the motion that is now before me.  So, we will go ahead

7  and enter an appropriate order.

8         I know that when I rule one of the things I have

9  learned is that I don't make everybody happy.  So, my

10  question isn't is everyone thrilled.  Does anyone have

11  questions about that or is there anything else that I can do

12  that would be helpful or constructive in terms of giving

13  guidance?

14     (No verbal response)

15         THE COURT:  Okay.  If not, we will go ahead and

16  enter an appropriate order.  With that we are adjourned.

17  Thank you.

18     (Proceedings concluded at 3:13 p.m.)

19

20

21

22

23

24

25

1                          CERTIFICATION

2              We certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of our

5    knowledge and ability.

6

7    /s/ Mary Zajaczkowski                    February 9, 2023

8    Mary Zajaczkowski, CET-531

9    Certified Court Transcriptionist

10   For Reliable

11

12   /s/ Coleen Rand                          February 9, 2023

13   Coleen Rand, CET-341

14   Certified Court Transcriptionist

15   For Reliable

16

17

18

19

20

21

22

23

24

25